UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : Civil No. 3:02 CV 1107 (AVC) <br> : <br> : <br> : <br> : <br> : <br> : October 27, 2003 |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD. FOR A PROTECTIVE ORDER TO STAY DISCOVERY AS AGAINST THEM PENDING RESOLUTION OF THEIR PERSONAL JURISDICTION MOTIONS**

CRAIG A. RAABE (ct 04116)
EDWARD J. HEATH (ct 20992)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

WILLIAM L. WEBBER (ct 18369)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 739-5798

MARK P. EDWARDS (ct 23890)
CHARLES J. REITMEYER
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5769

Attorneys for Defendants
The Dow Chemical Company
Union Carbide Corporation,
Union Carbide Asia Pacific, Inc.,
Union Carbide Customer Services Pte. Ltd., and
Dow Chemical Pacific (Singapore) Pte. Ltd.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND FACTS ..................................................................................................... 2

III. ARGUMENT ........................................................................................................................ 5

    A. Standard For Issuing A Protective Order To Stay Discovery Pending Resolution Of A Motion To Dismiss For Lack of Personal Jurisdiction ............... 5

    B. The Foreign Defendants Have Raised A Substantial Question Of Whether The Court Can Exercise Jurisdiction Over Them .................................................. 6

    C. Plaintiffs Have Served Burdensome Discovery Requests On The Foreign Defendants That Should Await A Resolution Of The Threshold Personal Jurisdiction Issue .................................................................................................. 12

    D. Plaintiffs Would Not Be Unduly Prejudiced By A Stay Of Discovery ............... 14

IV. CONCLUSION ................................................................................................................... 16

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Bensmiller v. E.I. duPont de Nemours & Co.*, 47 F.3d 79 (2d Cir. 1995) ....................................8

*Birmingham Fire Ins. Co. v. KOA Fire & Marine Ins. Co.*,
    572 F. Supp. 962 (S.D.N.Y. 1983) ........................................................................................9

*Caribe Trailer Sys., Inc. v. Puerto Rico Mar. Shipping Auth.*, 475 F. Supp. 711
    (D.D.C. 1979) .......................................................................................................................10

*Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*,
    870 F. Supp. 21 (D. Conn. 1994) ...........................................................................................7

*Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209 (S.D.N.Y. 1991) .....................5

*Friedson v. Lesnick*, 91 CIV 2133, 1992 U.S. Dist. LEXIS 2773 (S.D.N.Y. Mar. 9, 1992)...........9

*Gandler v. Nazarov*, No. 94 Civ. 2272, 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994) ...............5, 6

*Goldlawr, Inc. v. Heiman*, 288 F.2d 579 (2d Cir. 1961),
    *rev'd on other grounds*, 369 U.S. 463 (1962) ....................................................................11

*Greene v. Sha-Na-Na*, 637 F. Supp. 591 (D. Conn. 1986) ...........................................................8

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .................10, 11

*Henry v. Offshore Drilling (W.A.) Pty., Ltd.*, 331 F. Supp. 340 (E.D. La. 1971) ..........................9

*Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012 (10th Cir. 1990) ......................9

*Industria Siciliana Asfalti v. Exxon Research & Eng'g, Co.*, No. 75 Civ. 5828,
    1977 WL 1353 (S.D.N.Y. Jan. 18, 1977) ..............................................................................9

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................8, 11

*Neato, Inc. v. Great Gizmos*, No. 3:99 CV 958, 2000 WL 305949 (D. Conn. Feb. 24, 2000) .......8

*Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*,
    45 F. Supp. 2d 1255 (D.N.M. 1999) .....................................................................................9

*Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127 (2d Cir. 1987) ................................................. 5

*Turan v. Universal Plan Ins. Ltd.*, 70 F. Supp. 2d 671 (E.D. La. 1999) ........................................ 9

*In re Vitamins Antitrust Litig.*, Misc. No. 99-197, 2001 U.S. Dist. LEXIS 25073
    (D.D.C. Oct. 30, 2001) .......................................................................................................... 11

*Ward v. Aetna Life Ins. Co.*, No. 98-CV-0542E, 1999 WL 222559
    (W.D.N.Y. Apr. 12, 1999) ..................................................................................................... 12

*Wehner v. Syntex Corp.*, 618 F. Supp. 37 (E.D. Mo. 1984) ............................................................ 6

*Weinstein v. Norman M. Morris Corp.*, 432 F. Supp. 337 (E.D. Mich. 1977) ............................... 11

## FEDERAL AND STATE STATUTES

Fed. R. Civ. P. 26(c) ......................................................................................................................... 5

15 U.S.C. § 22 ......................................................................................................................... 7, 10, 11

Conn. Gen. Stat. Ann. § 33-920(b) .................................................................................................... 7

Conn. Gen. Stat. Ann. § 33-920(b)(2) ............................................................................................... 7

Conn. Gen. Stat. Ann. § 33-920(b)(6) ............................................................................................... 7

Conn. Gen. Stat. Ann. § 33-920(b)(11) ............................................................................................. 7

Conn. Gen. Stat. Ann. § 33-929(e) .................................................................................................... 7

## I. INTRODUCTION

Defendants, Union Carbide Asia Pacific, Inc. ("UCAP"), Union Carbide Customer Services Pte. Ltd. ("UCCS"), and Dow Chemical Pacific (Singapore) Pte. Ltd. (collectively, the "Foreign Defendants"), submit the following Memorandum of Law in Support of Their Motion for a Protective Order to Stay Discovery as Against Them Pending Resolution of Their Motions to Dismiss for Lack of Personal Jurisdiction.

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and Mega Visa Solutions (S) Pte. Ltd. ("MVS") have recently served on the Foreign Defendants 25 interrogatories and 86 document requests seeking vast amounts of discovery despite the fact that the Court has not yet determined whether it even has personal jurisdiction over those defendants.[1/]

The Foreign Defendants have moved to be dismissed from this case because the First Amended Complaint alleges no basis for this Court's exercise of personal jurisdiction over them. Those motions, which were filed on May 30, 2003, are still pending. None of the Foreign Defendants is incorporated in Connecticut, none has ever had any offices or other presence in the state, none transacts any business here, and the First Amended Complaint characterizes each Foreign Defendant as the *overseas* agent of its parent corporation in dealings with the Plaintiffs. Indeed, as this Court has found, "the only contact that [Plaintiffs'] case has to Connecticut is that it is the state where [defendant Union Carbide Corporation] is headquartered." (September 12, 2003 Order at 20 and 29).

---

1/ Copies of the two sets of interrogatories and two sets of document requests that Plaintiffs have served on the Foreign Defendants are attached hereto as Exhibits 1 and 2, respectively.

1

UCAP and UCCS are no longer active companies, but when they were, they, like Dow Singapore, had their principal places of business in Singapore. In addition, UCCS and Dow Singapore were both incorporated in Singapore. Moreover, the First Amended Complaint does not allege that any of UCAP, UCCS or Dow Singapore has transacted business in Connecticut (or elsewhere in the United States).

Because the Foreign Defendants have, at the least, raised a substantial question of whether the Court has jurisdiction over them, and Plaintiffs have, in the interim, served burdensome discovery requests that would improperly draw the Foreign Defendants further into this case, the Foreign Defendants seek a protective order staying all discovery as against them until their pending motions to dismiss have been decided.

## II.   BACKGROUND FACTS

The Foreign Defendants were added to this action in March, 2003, when Plaintiffs filed their First Amended Complaint. The original defendants were the parent corporation of UCAP and UCCS, *i.e.*, Union Carbide Corporation ("UCC"), and the parent of Dow Singapore, *i.e.*, The Dow Chemical Company ("Dow"). Of the five present Defendants, only UCC has any connection with Connecticut. UCC has its principal place of business in Danbury. (First Am. Compl., ¶ 9).

UCAP conducted its business in Singapore from the time of the company's incorporation in 1988 until it ceased all operations in January 2002. (Affidavit of Charles J. Hahn, ¶¶ 5, 7, and 8, Exhibit "A" to the Memorandum of Law in Support of Union Carbide Asia Pacific, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed May 30, 2003). Its business was to

distribute throughout the Asia-Pacific Rim products manufactured by UCC and UCC's international subsidiaries and affiliates. (*Id.*, ¶ 5).

UCCS was incorporated in Singapore five years later, in July 1993, and operated its business from there until ceasing all major active operations in January 2002. (Affidavit of Peter M. Jennings, ¶¶ 5-7, Exhibit "A" to the Memorandum of Law in Support of Union Carbide Customer Services Pte. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction). UCCS's business -- the trading of chemicals and plastics, and the manufacture of certain chemicals -- was conducted solely from Singapore. (*Id.*)

Dow Singapore, which was incorporated in Singapore in 1992, also conducts its business from Singapore. Dow Singapore distributes chemicals, plastics, and other chemical products primarily in Singapore, Malaysia, other Southeast Asian markets, and China. It also provides regional treasury and other management, operational and administrative services for various Dow entities in the Asia-Pacific region. (Declaration of Sam Ong, ¶¶ 4, 7, and 19, Exhibit "A" to the Memorandum of Law in Support of Dow Chemical Pacific (Singapore) Pte. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction).

From 1993 to 2001, UCAP and UCCS sold Products manufactured by UCC to the Plaintiffs. For that period, and from 2001 to 2002, Plaintiffs, in turn, succeeded one another as a non-exclusive reseller in India only of certain chemicals and polymers manufactured by UCC and, later, Dow (the "Products"). (First Am. Compl., ¶ 15).

Plaintiffs do not allege that the Foreign Defendants have transacted any business in Connecticut (or anywhere else in the United States). Instead, they contend that the Foreign

3

Defendants and non-party Dow India were *overseas* agents of Dow and UCC in connection with various of the parent corporations' dealings with the Plaintiffs.[2/]

On May 30, 2003, each of the Foreign Defendants moved to dismiss the First Amended Complaint on personal jurisdiction grounds. Those motions are still pending.

On September 12 and 16, 2003, the Court entered orders dismissing nine of the twelve claims asserted in the First Amended Complaint, as well as a portion of Plaintiffs' breach of contract claim. The only surviving claims are (1) an antitrust claim based on alleged resale price-fixing only in India, (2) a negligent misrepresentation claim, and (3) a claim for the breach of certain individual sales contracts for the Products.

Following those rulings, on October 15, 2003, Plaintiffs served on the Foreign Defendants two sets of interrogatories and two sets of document requests seeking discovery as to the three claims that remain in the case as well as the claims that have been dismissed. Plaintiffs have served on the Foreign Defendants the initial sets of interrogatories and document requests served in September 2002 on the original defendants, UCC and Dow, plus new sets of interrogatories and document requests that post-date the Court's recent rulings on the Defendants' Rule 12(b)(1) and 12(b)(6) motions to dismiss. *See* Exhibits 1 and 2 hereto.

---

2/ *See* September 12, 2003 Order at 27 ("The amended complaint alleges that Union Carbide, acting through its subsidiaries, the defendants, UCAP and UCCS, and the defendant Dow, acting through Dow Singapore, orchestrated a scheme to usurp the Plaintiffs' business in India and, in this way, injure the Plaintiffs in India."), and at 27-28 ("[T]he amended complaint alleges that Union Carbide of Danbury, Connecticut, acting through its subsidiaries UCAP and UCCS in Singapore, refused to authorize orders for Products that had been placed by the Plaintiffs, and arbitrarily declined to fill other orders . . . ."), and at 28 ("[T]he amended complaint alleges that . . . Dow of Michigan, acting through [non-party] Dow of India, and Union Carbide, acting directly and through its affiliate co-defendants in Singapore, undermined the Plaintiffs' relationships with the plaintiffs' customers . . .").

## III.  ARGUMENT

A.  **Standard For Issuing A Protective Order To Stay Discovery Pending Resolution Of A Motion To Dismiss For Lack of Personal Jurisdiction**

This motion is governed by Fed. R. Civ. P. 26(c), which provides in relevant part:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1)  that the disclosure or discovery not be had;
>
> (2)  that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; . . .

The Foreign Defendants seek a protective order in this instance to spare themselves from the potentially undue burden and expense of having to undertake discovery while it still remains unresolved whether they or any of them are properly before this Court.

"It is well-settled that a district court has discretion to halt discovery pending its decision on a motion to dismiss." *Gandler v. Nazarov*, No. 94 Civ. 2272, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994). *Accord Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (trial court did not abuse its "discretion in granting a protective order to prevent further discovery prior to its decision on the motion to dismiss"); *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991) (motion to stay discovery granted; "[t]he discovery requests are extensive and defendants' motions for dismissal do appear to have substantial grounds").  When, as here, the motions to dismiss are "potentially dispositive," and

5

"[are] not unfounded in the law," a protective order staying discovery as to the movants is usually warranted. *See, e.g., Gandler*, 1994 WL 702004, at *4 ("[B]ecause the adjudication of the pending motion to dismiss might avoid the need for costly and time-consuming discovery, all discovery in this case is hereby stayed pending resolution of defendant's motion to dismiss [for lack of personal jurisdiction]"); *Wehner v. Syntex Corp.*, 618 F. Supp. 37, 38 (E.D. Mo. 1984) ("The Court's stay on all discovery shall remain in effect, and a ruling on defendant Syntex Corporation's motion to dismiss for lack of personal jurisdiction shall be forthcoming . . . Following ruling on Syntex's motion the Court will issue an appropriate order relating to discovery.").

In this instance, the Court should exercise its discretion to stay discovery as to the Foreign Defendants. Because their jurisdictional challenge is substantial, the Foreign Defendants should be spared from having to respond to unduly burdensome and possibly altogether needless discovery sought by the Plaintiffs.

### B.   The Foreign Defendants Have Raised A Substantial Question Of Whether The Court Can Exercise Jurisdiction Over Them

The Foreign Defendants have, at the least, raised a serious question of whether this Court can exercise personal jurisdiction over them, and thus a stay of discovery as to them is warranted. The only claims of Plaintiffs that have survived the Defendants' Rule 12(b)(6) motions are those for (1) breach of a series of individual sales contracts, (2) negligent misrepresentation in India by employees of non-party Dow India, and (3) resale price-fixing in India only on products sold to Indian end-user customers. As the Court has already found, "the only contact that this case has to Connecticut is that it is the state where [UCC] is

headquartered," and thus it has held that Singapore and Indian law will govern the Plaintiffs' contract and tort claims, respectively. (September 12, 2003 Order at 20 and 29).

The Foreign Defendants have moved to dismiss because the First Amended Complaint does not allege that they have sufficient contacts with the forum in order to satisfy (1) the Connecticut long-arm statute, (2) the jurisdiction provision of the federal antitrust laws, *i.e.*, Section 12 of the Clayton Act, 15 U.S.C. § 22, or (3) the Due Process Clause of either the Fifth or Fourteenth Amendment of the U.S. Constitution.

Specifically, the Foreign Defendants have moved to dismiss the First Amended Complaint on the following grounds:

1.  The Connecticut long-arm statute cannot be satisfied here because the First Amended Complaint does not allege that UCAP, UCCS or Dow Singapore has transacted any business in Connecticut. The long-arm statute provides for personal jurisdiction over a foreign corporation only if it "transacts business" in the state, and the "cause of action [arises] out of such business." Conn. Gen. Stat. Ann. § 33-929(e) (2002). The provisions of the long-arm statute itself, plus interpretive case law, make it clear that "[t]he term 'transacting business' is not broadly interpreted in Connecticut." *Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*, 870 F. Supp. 21, 23 (D. Conn. 1994); Conn. Gen. Stat. Ann. § 33-920(b) (2002). For example, neither "transacting business in interstate commerce," nor "soliciting or obtaining orders . . . if the orders require acceptance" by the purchaser outside of Connecticut in order to form the contract, nor "carrying on . . . activities concerning internal corporate affairs" in Connecticut constitutes "transacting business" in Connecticut under the long-arm statute. Conn. Gen. Stat. Ann. § 33-920(b)(2), (6) and (11). In any event, Plaintiffs do not allege that the

7

Foreign Defendants have transacted any business in Connecticut, and the declarations accompanying the Foreign Defendants' motions to dismiss for lack of personal jurisdiction corroborate the absence of any transactional presence in Connecticut.

      2.     Even if the Plaintiffs were to have met the requirements of the Connecticut long-arm statute, the Court still could not exercise personal jurisdiction over any of the Foreign Defendants consistent with the Due Process Clause of the Fourteenth Amendment. *Bensmiller v. E.I. duPont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (both the state long-arm statute and the due process test must be satisfied), *citing Greene v. Sha-Na-Na*, 637 F. Supp. 591, 595 (D. Conn. 1986). To satisfy the requirements of the Due Process Clause, Plaintiffs would have to establish both that the Foreign Defendants have sufficient "minimum contacts" with Connecticut, and that the exercise of personal jurisdiction over them would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant has the requisite "minimum contacts" with the forum when it has "purposely availed itself of the privilege of conducting activities" in the forum. *Neato, Inc. v. Great Gizmos*, No. 3:99 CV 958, 2000 WL 305949, at *4 (D. Conn. Feb. 24, 2000).

Because Plaintiffs have not alleged any such conduct by the Foreign Defendants in Connecticut, and the declarations that the Foreign Defendants have submitted with their motions to dismiss confirm there has been no such conduct in this state, the requisite "minimum contacts" are missing. Accordingly, jurisdiction does not exist over the Foreign Defendants pursuant to the Due Process Clause of the Fourteenth Amendment.

3.      Plaintiffs fail in their attempt to bootstrap the requisite "minimum contacts" for the Foreign Defendants with Connecticut based either on allegations that UCC dominates and controls UCAP and UCCS, or that UCAP and UCCS were representatives of UCC.

Federal courts have rejected the notion that a foreign subsidiary not located in the forum can be subjected to suit merely because it is dominated and controlled by a corporate parent that is located in the forum. *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990) ("it is unfair to impute to the dominated corporation the forum contacts of its alter ego"); *Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*, 45 F. Supp. 2d 1255, 1259 (D.N.M. 1999) (same); *Turan v. Universal Plan Ins. Ltd.*, 70 F. Supp. 2d 671, 675 (E.D. La. 1999); *Industria Siciliana Asfalti v. Exxon Research & Eng'g, Co.*, No. 75 Civ. 5828, 1977 WL 1353, at *16 (S.D.N.Y. Jan. 18, 1977).

Similarly, Plaintiffs cannot subject UCAP or UCCS to this Court's jurisdiction based on allegations that they were agents or representatives of UCC. The actions of a principal in the forum do not give rise to jurisdiction over the principal's agent where, as here, the alleged agent is not present in the forum. *See, e.g., Friedson v. Lesnick*, 91 CIV 2133, 1992 U.S. Dist. LEXIS 2773, at *9 (S.D.N.Y. Mar. 9, 1992) (citing *Birmingham Fire Ins. Co. v. KOA Fire & Marine Ins. Co.*, 572 F. Supp. 962, 967 (S.D.N.Y. 1983)); *Henry v. Offshore Drilling (W.A.) Pty., Ltd.*, 331 F. Supp. 340, 343 (E.D. La. 1971).

Furthermore, neither a "reverse domination" theory nor an agency theory would have any conceivable application to Dow Singapore because its parent is Dow, and Dow is headquarted in Michigan, not Connecticut. In the particular circumstance of Dow Singapore, it is undisputed that there simply are no Connecticut contacts of its parent corporation on which Plaintiffs could

9

rely, even if it were permissible to do so. Dow, unlike UCC, is not headquartered in Connecticut.

      4.      Personal jurisdiction does not exist over the Foreign Defendants based on the federal antitrust claim. In order for Plaintiffs' resale price-fixing claim to provide any basis for personal jurisdiction over the Foreign Defendants, Plaintiffs would have to establish both that the requirements of Section 12 of the Clayton Act are met in Connecticut as for the Foreign Defendants, and that an assertion of personal jurisdiction would not violate the Due Process Clause of the Fifth Amendment. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

      Section 12 of the Clayton Act provides that any federal antitrust action against a corporation "may be brought not only in the judicial district whereof it is an *inhabitant*, but also in any district wherein it may be *found* or *transacts business*; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22 (1997) (emphasis added). None of the Foreign Defendants "inhabits" Connecticut because none is incorporated here. *Caribe Trailer Sys., Inc. v. Puerto Rico Mar. Shipping Auth.*, 475 F. Supp. 711, 716 (D.D.C. 1979). Likewise, no Foreign Defendant is "found" in Connecticut because none has ever had any facilities, employees or other presence in this state. *Id.* In addition, none of the Foreign Defendants has transacted business in Connecticut. (*See* Declaration of Charles J. Hahn, ¶¶ 11-17, Exhibit "A" to the Memorandum of Law in Support of Union Carbide Asia Pacific, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction; Affidavit of Peter M. Jennings, ¶¶ 8-16, Exhibit "A" to the Memorandum of Law in Support of Union Carbide Customer Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction;

Declaration of Sam Ong, ¶¶ 7-19, Exhibit "A" to the Memorandum of Law in Support of Dow Chemical Pacific (Singapore) Pte. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction). Therefore, Plaintiffs cannot have the benefit of the worldwide service of process provision contained in Section 12, because the Foreign Defendants do not meet any of that statute's "inhabitant," "found" or "transacts business" provisions.  15 U.S.C. § 22 (1997); *Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 581 (2d Cir. 1961), *rev'd on other grounds*, 369 U.S. 463 (1962); *GTE New Media Servs. Inc.*, 199 F.3d at 1351.

Even if the Plaintiffs were to have satisfied the requirements of Section 12 of the Clayton Act, this Court still would lack personal jurisdiction over the Foreign Defendants under the Due Process Clause of the Fifth Amendment.  *GTE New Media Servs. Inc.*, 199 F.3d at 1347; *Weinstein v. Norman M. Morris Corp.*, 432 F. Supp. 337, 341 (E.D. Mich. 1977).  The Due Process Clause requires that the Foreign Defendants have sufficient "minimum contacts" with Connecticut to establish personal jurisdiction, and that the exercise of jurisdiction over them would not offend "traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

As explained at page 8 of this brief, none of the Foreign Defendants has the constitutionally required "minimum contacts" with Connecticut.

Furthermore, an exercise of jurisdiction over them would offend "traditional notions of fair play and substantial justice."  *See, e.g.*, *GTE New Media Servs. Inc.*, 199 F.3d at 1347 (citing *International Shoe*, 326 U.S. at 316); *In re Vitamins Antitrust Litig.*, Misc. No. 99-197, 2001 U.S. Dist. LEXIS 25073, at *38 (D.D.C. Oct. 30, 2001); *Weinstein*, 432 F. Supp. at 341.  There is no alleged wrongdoing in Connecticut by the Foreign Defendants, none of them resides here,

11

and their presence is not required to achieve complete relief, if any is merited, for Plaintiffs' claims against the original defendants, UCC and Dow. Given the Foreign Defendants' lack of contacts with Connecticut, the burden of requiring them to defend this case in Connecticut would not comport with traditional notions of fair play and substantial justice.

### C. Plaintiffs Have Served Burdensome Discovery Requests On The Foreign Defendants That Should Await A Resolution Of The Threshold Personal Jurisdiction Issue

By granting this motion for a protective order, the Court would spare the Foreign Defendants the potentially needless expense and burden of responding to Plaintiffs' discovery requests. *See Ward v. Aetna Life Ins. Co.*, No. 98-CV-0542E, 1999 WL 222559, at *1 (W.D.N.Y. Apr. 12, 1999) ("[W]here there is a lack of personal jurisdiction over a defendant, a court ordinarily may not exercise power over that party."). Plaintiffs have recently served on the Foreign Defendants two sets of 25 interrogatories and two sets of 86 document requests. (*See* Exhibits 1 and 2 hereto). Therefore, absent a protective order, the Foreign Defendants will be involved in full-blown discovery *before* it has been determined whether they even belong in this Court.

The nature and extent of the discovery burdens in this case -- assuming Plaintiffs have their way -- are coming into sharper focus, and they are considerable. Notwithstanding the dismissal of 9 of the 12 claims originally asserted by Plaintiffs, including their tortious interference, fraud, unfair competition and CUTPA claims, as well as a major portion of their breach of contract claim, Plaintiffs have served discovery requests on the Foreign Defendants that make no concession to the Court's rulings on the Defendants' Rule 12(b)(6) motions. Instead, Plaintiffs propound discovery requests that presuppose all of the original claims remain

12

viable.

For example, in its September 12, 2003 and September 16, 2003 Orders, the Court dismissed that portion of the Plaintiffs' breach of contract which asserted that the parties' various letter agreements, plus a continuous course of dealing, somehow created a distributorship agreement that bound UCC and Dow to sell the Products to the Plaintiffs indefinitely and in whatever quantities Plaintiffs desired.  The Court has held that "the letter agreements do not constitute enforceable contracts as they are unenforceable for want of mutuality," and that "indefinite agreements as exist here, devoid of the fundamental requisite of mutuality of obligation, are not enforceable against Union Carbide and do not constitute binding contracts for breach of which an action for damages may be maintained."[3]  Nevertheless, Plaintiffs have served four interrogatories and 12 document requests directed specifically at the 1987, 1993, 1995 and 2000 letter agreements and the dismissed contract claim that was based on them. (Exhibit 1 hereto, Plaintiffs' First Set of Interrogatories, Nos. 4 through 7; Exhibit 2, Plaintiffs' First Request to Defendants for Production of Documents, Requests 12, 14, 15, 17, 19, 20, 22, 24, 28, 30, 32 and 33).

Similarly, despite the fact that Plaintiffs' federal antitrust claim is based solely on alleged resale price-fixing in India, and despite Plaintiffs' assertion that their harm was limited to lost sales in India,[4] Plaintiffs have served interrogatories and document requests that seek discovery concerning Defendants' sales and pricing of the Products *worldwide*, and without limitation to the Indian market.  (Exhibit 1 hereto, Plaintiffs' First Set of Interrogatories, Nos. 1(b), 2(b);

---

[3]  September 12, 2003 Order at 21 and 24.

[4]  First Amended Complaint, ¶ 30.

Exhibit 1, Plaintiffs' Second Set of Interrogatories, Nos. 6 and 7; Exhibit 2, Plaintiffs' First Request to Defendants for Production of Documents, Nos. 3(f), 4(b), 5(b), 6(b), 7, 8, 9; Exhibit 2, Plaintiffs' Second Request for Production of Documents, Nos. 3, 5, 6(a), 6(b), 7, 8, 9, 10, 11, 12, 13, 30).

Plaintiffs have also served other discovery requests that do seek information concerning sales in India, but encompass sales of products that were not even allegedly subject to the resale price-fixing agreement. (Exhibit 2, Plaintiffs' First Request to Defendants for Production of Documents, Nos. 36, 37, 48; Exhibit 2, Plaintiffs' Second Request for Production of Documents, Nos. 6(c); Exhibit 1, Plaintiffs' First Set of Interrogatories, Nos. 14 and 15).

Furthermore, notwithstanding the dismissal of all but three of Plaintiffs' claims, Plaintiffs are seeking leave of Court for an increase in the number of depositions that each side can take, from 20 to 35. (*See* Letter, dated October 13, 2003 from R. Taffet to Hon. Alfred V. Covello, Exhibit 3 hereto). In sum, rather than tailoring their discovery requests to address the few remaining claims and relevant issues, Plaintiffs have actually broadened the scope of their discovery demands, and encompass discovery of many issues that are no longer in the case.

In fairness to the Foreign Defendants, therefore, the Court should enter a protective order that would spare them from having to undertake any discovery unless and until it has been determined that they are properly before this Court.

### D.  Plaintiffs Would Not Be Unduly Prejudiced By A Stay Of Discovery

A stay of discovery as to the Foreign Defendants would not unduly prejudice the Plaintiffs, who have already received extensive discovery from *all* Defendants, including the Foreign Defendants. Plaintiffs served and received responses last year to the vast majority of the

interrogatories and document requests they propounded in their initial set of discovery requests. Plaintiffs served a total of 50 document requests and 15 interrogatories on UCC and Dow. The aim of those requests was to obtain discovery on the merits of each of the Plaintiffs' then-existing 12 claims, as well as on venue and jurisdiction issues. On October 23, 2002, the Court ruled that UCC and Dow must answer 39 of the 50 document requests in their entirety, plus parts of four other requests. The Court also ordered Dow and UCC to answer 11 of Plaintiffs' 15 interrogatories in their entirety, plus parts of two others. UCC and Dow complied with the Court's October 23, 2002, and in so doing gathered responsive documents and information from the Foreign Defendants.

UCC and Dow searched archives and files likely to have responsive information in the United States, Singapore, India and Europe, irrespective of whether any such documents or information happened to belong to UCAP, UCCS, Dow Singapore or Dow India, rather than to UCC or Dow itself.

Plaintiffs, therefore, have already received extensive venue, jurisdiction and merits discovery from all of the Defendants, including the Foreign Defendants. A stay of additional discovery would cause the Plaintiffs no hardship.