UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM GLOBAL
SERVICES PTE. LTD., and MEGAVISA
SOLUTIONS (S) PTE. LTD.,

      Plaintiffs,

-v-

THE DOW CHEMICAL COMPANY, and
UNION CARBIDE CORPORATION,

      Defendants.

Civil No. 302 CV 1107 (AVC)

**PLAINTIFFS' FIRST
REQUEST TO DEFENDANTS
FOR PRODUCTION OF
DOCUMENTS**

   PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Rule 39, plaintiffs MM Global Services Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively "Plaintiffs"), by their attorneys Thelen Reid & Priest LLP and Wiggin and Dana LLP, hereby request that defendant The Dow Chemical Company ("Dow") and defendant Union Carbide Corporation ("UCC") (collectively "Defendants") each produce for inspection and copying, in accordance with the Instructions and Definitions contained herein, the documents described below at the offices of Thelen Reid & Priest, LLP, 40 West 57th Street, New York, New York 10019, or at such a place an in such a manner as may be mutually agreed upon between counsel and parties within thirty (30) days after service of this Request.

## I. DEFINITIONS

   1.  For the definitions of "Communication," "Document," "Person," "Concerning," "Identify," "Parties," "All/Each," "And/Or," "Number" and for the rule of construction applicable to the use of singular or plural forms of words, the Defendants are

referred to the uniform definitions contained in Local Rule 39 of the District of Connecticut, which Local Rule is incorporated by reference herein. The term "Document" shall include electronic correspondence.

2. "**MMGS**" shall mean plaintiff MM Global Services Inc., a corporation organized and existing under the laws of Texas, maintaining at all relevant times a principal place of business in Houston, Texas, and its past and present officers, directors, shareholders, agents, representatives, employees, subsidiaries, divisions, parents, affiliates, predecessors, successors or assigns, and all persons acting directly or indirectly under its control.

3. "**MMGS-S**" shall mean plaintiff MM Global Services Pte. Ltd., a corporation that was organized and existing under the laws of Singapore, maintaining a principal place of business in Singapore, and its past and present officers, directors, shareholders, agents, representatives, employees, subsidiaries, divisions, parents, affiliates, predecessors, successors or assigns, and all persons acting directly or indirectly under its control.

4. "**MVS**" shall mean plaintiff MegaVisa Solutions (S) Pte. Ltd., a corporation organized and existing under the laws of Singapore, maintaining a principal place of business in Singapore, and its past and present officers, directors, shareholders, agents, representatives, employees, subsidiaries, divisions, parents, affiliates, predecessors, successors or assigns, and all persons acting directly or indirectly under its control.

5. "**MVMS**" shall mean MegaVisa Marketing Solutions Ltd. (f/k/a Visa Petrochemicals Pvt Ltd.), a corporation organized and existing under the laws of India, maintaining a principal place of business in Mumbai, India, and its past and present officers, directors, shareholders, agents, representatives, employees, subsidiaries, divisions, parents,

affiliates, predecessors, successors or assigns, and all persons acting directly or indirectly under its control.

6.  "**Dow**" shall mean defendant The Dow Chemical Company, a corporation organized and existing under the laws of Delaware, maintaining a principal place of business in Midland, Michigan, and its past and present officers, directors, shareholders, agents, representatives, employees, subsidiaries, divisions, parents, affiliates, predecessors, successors or assigns, and all persons acting directly or indirectly under its control.

7.  "**UCC**" shall mean defendant Union Carbide Corporation, a corporation organized and existing under the laws of New York, maintaining a principal place of business in Danbury, Connecticut, and its past and present officers, directors, shareholders, agents, representatives, employees, subsidiaries, divisions, parents, affiliates, predecessors, successors or assigns, and all persons acting directly or indirectly under its control.

8.  "**You**" or "**Your**" shall mean, as applicable, each Defendant and its past and present officers, directors, shareholders, agents, representatives, employees, subsidiaries, divisions, parents, affiliates, predecessors, successors or assigns, and all persons acting directly or indirectly under its control.

9.  "**1987 Agreement**" shall mean the letter agreement dated November 16, 1987 and referenced in paragraph 14 of the Complaint.

10. "**1993 Agreement**" shall mean the letter agreement dated April 5, 1993 from R. Natarjou to Mega Global Services, Inc. ("Mega Global").

11. "**1995 Agreement**" shall mean the letter agreement dated September 8, 1995 and referenced in paragraph 19 of the Complaint.

NY #484436 v8

12. **"2000 Agreement"** shall mean the letter agreement dated June 27, 2000 and referenced in paragraph 21 of the Complaint.

13. **"Bhopal Incident"** shall mean the December 3, 1984 chemical leak at UCC's plant in Bhopal, India and the resulting effects therefrom.

14. **"Complaint"** shall mean the complaint dated June 25, 2002 and filed by Plaintiffs in the above captioned action.

15. **"Merger"** shall mean the merger involving UCC and Dow referenced in Paragraph 10 of the Complaint.

## II. INSTRUCTIONS

1. Each paragraph of this Request calls for the production of each responsive document that is in Your possession, custody or control.

2. If You withhold any document covered by this Request under any claim of privilege, it is requested that You furnish a list specifying for each such document the basis upon which privilege is claimed, the author(s) of the document, the name and job title of each recipient and the person to whom a copy or copies were furnished, the date, the general subject matter of the document and each paragraph of this Request to which such document is responsive.

3. Any term or phrase not defined in these Requests shall have the meaning ascribed to it in the Complaint or, if not defined there, its ordinary and usual meaning.

4. For purposes of this Request, the use of the singular form of a word includes the plural and vice versa.

5. Unless otherwise specified, the period covered by this Request is January 1, 1984 to the present (the "Relevant Period").

6. This Request shall be deemed continuing in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

NY #484436 v8

### III. DOCUMENTS REQUESTED

1. All documents sufficient to identify each part of Your business (whether a division, affiliate, subsidiary (direct or indirect), joint venture or other unit) (hereafter a "Business Unit") involved in the sale of Products to Plaintiffs.

2. All documents sufficient to identify for each Business Unit: (a) if a corporation, the date and jurisdiction of its incorporation; (b) each location at which it maintained or maintains an office; (c) a description of its business operations; (d) the geographic scope of its business operations; (e) its management structure and the identity of each Person involved in the sale of Products to Plaintiffs; (f) its responsibilities concerning the sale of Products to Plaintiffs; (g) its decision making capabilities concerning the sale of Products to Plaintiffs; and (h) its relationship with and reporting responsibilities to You.

3. All documents sufficient to identify as respects each Product: (a) its end-uses; (b) the Business Unit responsible for its manufacture or production; (c) the location(s) at which it was or is manufactured or produced; (d) the Business Unit responsible for its sale or other distribution; (e) the location(s) from which it was or is sold or otherwise distributed; and (f) the geographic market(s) to which it was or is sold or otherwise distributed, including without limitation India.

4. All documents concerning competition for or relating to Your, or any Business Unit's, sale or other distribution of Products, either directly or indirectly, to end-users: (a) in India; and (b) in markets other than India, including without limitation competition between UCC and Dow for the sale of Products, or products competitive with the Products, prior to the Merger.

5. All documents concerning Your, or any Business Unit's, evaluation or determination of pricing for Products sold or otherwise distributed in or to: (a) India; and (b)

markets other than India, including without limitation all analyses, studies, strategies, plans, presentations, profitability analyses, or global business plans concerning pricing throughout the world for Products.

6.  All documents concerning Dow or any Dow Business Unit's evaluation or consideration of pricing for products sold or otherwise distributed in competition with the Products, in or to: (a) India; and (b) markets other than India.

7.  All documents sufficient to identify all agents, sales representatives or distributors through which You or any Business Unit sold or otherwise distributed Products, or products competitive with the Products, to end-users outside the United States during the period prior to the Bhopal Incident, and the terms of Your or any Business Unit's relationship with each such Person.

8.  All documents sufficient to identify all agents, sales representatives or distributors through which You or any Business Unit sell or sold or otherwise distribute or distributed Products, or products competitive with the Products, to end-users outside the United States during the period subsequent to the Bhopal Incident, and the terms of Your or any Business Unit's relationship with each such Person.

9.  All documents concerning the reasons for any changes in the manner in which or through whom You or any Business Unit sold or otherwise distributed Products to end-users outside the United States following or as the result of the Bhopal Incident.

10.  All documents concerning any decision by UCC, or any Business Unit of UCC, not to sell Products in or to India.

11.  All documents concerning the establishment and operations of MVMS, including without limitation all documents concerning: (a) UCC employees becoming employed

or otherwise retained by MVMS; (b) directions given to MVMS concerning the operation of its business in connection with the Products; (c) the responsibilities to be undertaken by MVMS in connection with the Products; and (d) any investment by MVMS to support the sale of Products in or to India.

12. All documents concerning the 1987 Agreement, including without limitation concerning its subject matter, the Parties' obligations thereunder, negotiation of its terms, all drafts thereof and all communications relating thereto.

13. All documents sufficient to identify the Products sold through MVMS, including without limitation: (a) the location(s) at which such Products were manufactured or produced; (b) the volume of Products manufactured or produced at such location(s); and (c) the locations(s) from which such Products were originally shipped for sale to end-users in India.

14. All documents concerning the Parties' performance under the 1987 Agreement, including without limitation in connection with: (a) the placement, acceptance and fulfillment of orders for Products; (b) market or competitive analyses and information provided by or to MVMS; (c) communications with end-user customers of Products in India; and (d) pricing for the Products and all other terms and conditions of sale.

15. All documents concerning the termination of the 1987 Agreement.

16. All documents concerning the establishment and operations of Mega Global, including without limitation all documents concerning: (a) the incorporation of Mega Global in the United States; (b) the location of its offices in Houston, Texas; (c) directions to Mega Global concerning the operation of its business in connection with the Products; (d) the responsibilities to be undertaken by Mega Global in connection with the Products; and (e) any investment by Mega Global to support the sale of Products in or to India.

NY #484436 v8

17. All documents concerning the 1993 Agreement, including without limitation concerning its subject matter, the Parties' obligations thereunder, negotiation of its terms, all drafts thereof, and all communications relating thereto.

18. All documents sufficient to identify the Products sold to Mega Global including without limitation: (a) the location(s) at which such Products were manufactured or produced; (b) the volume of Products manufactured or produced at such location(s); (c) the location(s) from which such Products were last delivered to Mega Global; and (d) the location(s) at which title to such Products passed to Mega Global.

19. All documents concerning the Parties' performance under the 1993 Agreement, including without limitation in connection with: (a) the placement, acceptance and fulfillment of orders for Products; (b) Mega Global's payments for Products; (c) credit terms applicable to Mega Global; (d) pricing of Products; (e) market or competitive analysis and information provided by or to Mega Global; and (f) communications with end-user customers of Products in India.

20. All documents concerning the termination of the 1993 Agreement.

21. All documents concerning the establishment and operations of MMGS, including without limitation all documents concerning: (a) the incorporation of MMGS in the United States; (b) the location of its offices in Houston, Texas; (c) directions to MMGS concerning the operation of its business in connection with the Products; (d) the responsibilities to be undertaken by MMGS in connection with the Products; and (e) any investment by MMGS to support the sale of Products in or to India.

NY #484436 v8

22. All documents concerning the 1995 Agreement, including without limitation concerning its subject matter, the Parties' obligations thereunder, negotiation of its terms, all drafts thereof, and all communications relating thereto.

23. All documents sufficient to identify the Products sold to MMGS, including without limitation: (a) the location(s) at which such Products were manufactured or produced; (b) the volume of Products manufactured or produced at such location(s); (c) the location(s) from which such Products were last delivered to MMGS; (d) and the location(s) at which title to such Products passed to MMGS.

24. All documents concerning the Parties' performance under the 1995 Agreement, including without limitation in connection with: (a) the placement, acceptance and fulfillment of orders for Products; (b) MMGS's payments for Products; (c) credit terms applicable to MMGS; (d) pricing of Products; (e) market or competitive analyses and information provided by or to MMGS; and (f) communications with end-user customers of Products in India.

25. All documents concerning the establishment and operations of MMGS-S, including without limitation all documents concerning: (a) the incorporation of MMGS-S in Singapore; (b) the location of its offices in Singapore; (c) directions to MMGS-S concerning the operation of its business in connection with the Products; (d) the responsibilities to be undertaken by MMGS-S in connection with the Products; and (e) any investment by MMGS-S to support the sale of Products in or to India.

26. All documents sufficient to identify the Products sold to MMGS-S, including without limitation: (a) the location(s) at which such Products were manufactured or produced; (b) the volume of Products manufactured or produced at such location(s); (c) the

NY #484436 v8

location(s) from which such Products were last delivered to MMGS-S; and (d) the location(s) at which title to such Products passed to MMGS-S.

27.   All documents concerning: (a) the placement, acceptance and fulfillment of orders for Products sold by MMGS-S; (b) MMGS-S's payments for Products; (c) credit terms applicable to MMGS-S; (d) pricing of Products sold by MMGS-S; (e) market or competitive analyses and information provided by or to MMGS-S; and (f) communications with end-user customers of Products in India sold by MMGS-S.

28.   All documents concerning the termination of the 1995 Agreement.

29.   All documents concerning the establishment and operations of MVS, including without limitation all documents concerning: (a) the incorporation of MVS in Singapore; (b) the location of its offices in Singapore; (c) directions to MVS concerning the operation of its business in connection with the Products; (d) the responsibilities to be undertaken by MVS in connection with the Products; and (e) any investment by MVS to support the sale of Products in or to India.

30.   All documents concerning the 2000 Agreement, including without limitation concerning its subject matter, the Parties' obligations thereunder, negotiation of its terms, all drafts thereof, and all communications relating thereto.

31.   All documents sufficient to identify the Products sold to MVS, including without limitation: (a) the location(s) at which such Products were manufactured or produced; (b) the volume of Products manufactured or produced at such location(s); (c) the location(s) from which such Products were last delivered to MVS; and (d) the location(s) at which title to such Products passed to MVS.

NY #484436 v8

32. All documents concerning the Parties' performance under the 2000 Agreement, including without limitation in connection with: (a) the placement, acceptance and fulfillment of orders for Products; (b) MVS's payments for Products; (c) credit terms applicable to MVS; (d) pricing of Products; (e) market or competitive analyses and information provided by or to MVS; and (f) communications with end-user customers of Products in India.

33. All documents concerning the termination of the 2000 Agreement.

34. All documents, including all communications, concerning the effect, or contemplated or anticipated effect, of the Merger on UCC's sale of Products, and Dow's sale of products in competition with the Products, to end-users in India, directly or indirectly.

35. All documents concerning any effect, or contemplated or anticipated effect, of the Merger on any Plaintiff's or MVMS's sale of Products to end-users in India, directly or indirectly.

36. All documents sufficient to identify the end-users in India to whom Dow sold, directly or indirectly, goods competitive with the Products prior to the Merger.

37. All documents concerning competition between Dow and UCC in the sale of Products and other products competitive with the Products to end-user customers in India prior to the Merger.

38. All documents concerning the effect, or contemplated or anticipated effect, of the Merger on competition relating to the sale of Products in or to India.

39. All documents concerning the integration or plans for integration of UCC and Dow operations and personnel involved with the sale of Products and products competitive with the Products in and to India in connection with or as the result of the Merger.

40. All documents concerning communications between either Defendant and any Plaintiff or MVMS concerning the Merger.

41. All documents concerning any effect or anticipated effect of the Merger on the relationship that existed between UCC and any Plaintiff or MVMS prior to the Merger.

42. All documents concerning the assignment of any agreements between any Plaintiff and any Defendant as the result of the Merger.

43. All documents concerning any decisions to not accept any orders or fill any accepted orders from any Plaintiff, Mega Global or MVMS for Products.

44. All documents concerning any dispute involving end-users of Products in India relating to the Products.

45. All documents not otherwise requested concerning Plaintiffs' or Mega Global's payment history for the purchase of Products.

46. All documents not otherwise requested concerning Plaintiffs' or Mega Global's credit in connection with their purchase of Products and any changes thereto.

47. All documents concerning communications by UCC or Dow, or any Business Unit of either, with or to end-users of Products in India during the period of August 1999 to the present, including without limitation all reports, notes or memorandums in preparation of or resulting from customer meetings.

48. All documents concerning communications between UCC or Dow, or any Business Unit of either, and any agents, sales representatives or distributors, other than Plaintiffs or MVMS, concerning the sale or potential sale of Products or products competitive to the Products to end-users in India.

NY #484436 v8

49.     All documents concerning any request or act by UCC or Dow, or any Business Unit of either, to obtain customer or market information in connection with the sale of Products to end-users in India, or the obtaining of such information from Plaintiffs, during the period of August 1999 to the present.

50.     All documents concerning the termination or planned termination of Defendants' relationship with Plaintiffs, including without limitation all electronic communications, correspondence, memorandums, meeting agendas and meeting notes concerning the W&C Products and the termination or planned termination of Defendants' relationship with Plaintiffs.

Dated: New York, New York
       September 18, 2002

THELEN REID & PRIEST LLP

By: *Susan B. McInerney* (signature)

Michael S. Elkin  (ct 23828)
Richard S. Taffet (ct 10201)
Susan B. McInerney (ct 23827)

40 West 57th Street
New York, New York 10019-4097
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN & DANA LLP
   Robert M. Langer (ct 06305)
   Suzanne E. Wachsstock (ct 17627)
   One City Place
   185 Asylum Street
   Hartford, Connecticut 06103-3402
   (860) 297-3724 (tel)
   (860) 525-9380 (fax)

## Certificate of Service

This is to certify that a copy of the foregoing Plaintiffs' First Request to Defendants for Production of Documents was mailed via Federal Express on this 18th day of September, 2002, to the following counsel of record:

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel.: (860) 275-8200
Fax: (860) 275-8299

Mark P. Edwards (ct 23890)
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 963-5769
Fax: (215) 963-5299

William L. Webber (ct 18369)
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 739-5798
Fax: (202) 739-3001


Susan B. McInerney