## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES INC., MM GLOBAL SERVICES PTE. LTD., and MEGAVISA SOLUTIONS (S) PTE. LTD., | :<br>:<br>:<br>: |
| Plaintiffs, | : Civil No. 302 CV 1107 (AVC) |
| -v- | :<br>: |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., | :<br>:<br>:<br>:<br>:<br>: |
| | : October 31, 2003 |
| Defendants. | : |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL OF THE COURT'S ORDERS DENYING THE MOTIONS TO DISMISS THE FEDERAL ANTITRUST CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**

THELEN REID & PRIEST LLP
    Richard S. Taffet (ct 10201)
    875 Third Avenue
    New York, New York  10022-6225
    (212) 603-2000

WIGGIN & DANA LLP
    Robert M. Langer (ct 06305)
    Suzanne E. Wachsstock (ct 17627)
    One CityPlace
    185 Asylum Street
    Hartford, Connecticut  06103-3402
    (860) 297-3724

    Attorneys for Plaintiffs MM Global Services Inc., MM Global Services Pte. Ltd., and Megavisa Solutions (S) Pte. Ltd.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT .......................................................................................................................... 6

I. THIS CASE IS NOT APPROPRIATE FOR INTERLOCUTORY APPEAL ............ 6

II. DEFENDANTS FAIL TO MEET THE REQUIRED STANDARDS OF § 1292(b) ................ 9

    A.    The Orders Do Not Involve A Controlling Question Of Law ................................ 9

    B.    The Court's Orders Present No Issues On Which There Is A Substantial Ground For Difference Of Opinion ........................................................ 13

        1.    The Court applied the correct legal standard ............................................. 14

        2.    Defendants rely on inapplicable law ............................................................ 17

        3.    No grounds for a difference of opinion exist because of the factually complex inquiry on issues of subject matter jurisdiction ........... 19

    C.    An Immediate Appeal Of The Orders Will Not Materially Advance The Ultimate Termination Of The Litigation ...................................................... 20

III. CERTIFICATION IS NOT APPROPRIATE FOR ADDITIONAL REASONS .................... 21

CONCLUSION ...................................................................................................................... 21

# **TABLE OF AUTHORITIES**

## **CASES**

*Allied Princess Bay Co. v. Atochem N. Am., Inc.*,
    Civ. No. CV-91-4146, 1992 WL 135235 (E.D.N.Y. May 29, 1992) .........................10, 11

*Chatham Condo. Ass'ns v. Century Vill., Inc.*,
    597 F.2d 1002 (5th Cir. 1979) ...................................................................................12

*Cromer Fin. Ltd. v. Berger*,
    Nos. 00 Civ. 2284, 2498, 2001 WL 935475 (S.D.N.Y. Aug. 16, 2001) ...........................19

*Eurim-Pharm GmbH v. Pfizer Inc.*,
    593 F. Supp. 1102 (S.D.N.Y. 1984) ..............................................................................15

*Flor v. BOT Fin. Corp.*,
    79 F.3d 281 (2d Cir. 1996) ............................................................................................6

*Gen. Elec. Co. v. Latin Am. Imps., S.A.*,
    227 F. Supp. 2d 685 (W.D. Ky. 2002) ..........................................................................18

*Gross v. New Balance Athletic Shoe, Inc.*,
    955 F. Supp. 242 (S.D.N.Y. 1997) ................................................................................18

*Hartford Fire Ins. Co. v. California*,
    509 U.S. 764 (1993) .....................................................................................................16

*Hecht Co. v. S. Union Co.*,
    474 F. Supp. 1022 (D.N.M. 1979) ................................................................................13

*Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc.*,
    928 F. Supp. 287 (S.D.N.Y. 1996) ...............................................................................12

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*,
    511 F.2d 678 (4th Cir. 1975), rev'd on other grounds, 425 U.S. 738 (1976) ...................12

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 CIV. 1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) .......................................8

*In re MTBE Prods. Liab. Litig.*,
    174 F. Supp. 2d 4 (S.D.N.Y. 2001) ...................................................................8, 14, 20

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
    663 F. Supp. 494 (M.D.N.C. 1987) ..............................................................................17

*In re September 11 Litig.*,
    No. 21 MC 97, 2003 WL 22251325 (S.D.N.Y. Oct. 1, 2003) .........................6, 7, 8, 10, 11

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) ...............................................................................................6, 8

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) .........................................................................................6, 7, 10

*Kregos v. The Latest Line, Inc.*,
    Civ. No. 5-92-398, 1997 WL 835056 (D. Conn. June 16, 1997) ......................................11

*Kruman v. Christie's Int'l plc*,
    284 F.3d 384 (2d Cir. 2002) ..................................................................................15, 17, 19

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) .........................................................................................12

*Liamuiga Tours v. Travel Impressions, Ltd.*,
    617 F. Supp. 920 (E.D.N.Y. 1985) ...................................................................................18

*McElderry v. Cathay Pac. Airways, Ltd.*,
    678 F. Supp. 1071 (S.D.N.Y. 1988) ..................................................................................18

*Minn. Mut. Life Ins. Co. v. Ricciardello*,
    Civ. No. 3:96CV2387, 1998 WL 241216 (D. Conn. May 4, 1998) .................................14

*Mortensen v. First Fed. Sav. and Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) .............................................................................................12

*Movielab, Inc. v. Berkey Photo, Inc.*,
    No. 70 Civ. 3800, 1971 WL 242 (S.D.N.Y. Jan. 28, 1971) ..............................................13

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
    71 F. Supp. 2d 139 (E.D.N.Y. 1999) ................................................................7, 8, 11, 21

*Oneida Indian Nation v. County of Oneida*,
    622 F.2d 624 (2d Cir. 1980) .......................................................................................10, 11

*Primavera Familienstigung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001) ....................................................................7, 8, 20

*Ryan, Beck & Co., LLC v. Fakih*,
    275 F. Supp. 2d 393 (E.D.N.Y. 2003) ..................................................................7, 14, 17

*Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping*,
   752 F. Supp. 173 (S.D.N.Y. 1990) ..................................................................9, 13, 14

*S. Megga Telecomms. Ltd. v. Lucent Technologies, Inc.*,
   No. 96-357-SLR, 1997 WL 86413 (D. Del. Feb. 14, 1997) ...............................17

*Turicentro, S.A. v. Am. Airlines, Inc.*,
   303 F.3d 293 (3d Cir. 2002) ...............................................................................18

*Valentin v. Hosp. Bella Vista*,
   254 F.3d 358 (1st Cir. 2001) ...............................................................................11

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*,
   964 F.2d 85 (2d Cir. 1992) ....................................................................................7

*White v. Nix*,
   43 F.3d 374 (8th Cir. 1994) ................................................................................13

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ..............................................................................12

*WIXT Television v. Meridith Corp.*,
   506 F. Supp. 1003 (N.D.N.Y. 1980) ..................................................................13

## STATUTES

15 U.S.C. § 6a ...................................................................................................................5

28 U.S.C. §1292(b) .................................................................................................. *passim*

**PRELIMINARY STATEMENT**

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion of Defendants Dow Chemical Company ("Dow"), Union Carbide Corporation ("UCC"), Union Carbide Asia Pacific, Inc. ("UCAP"), Union Carbide Customer Services Pte. Ltd. ("UCCS") and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") for Certification for Interlocutory Appeal of the Court's Orders Denying the Motions to Dismiss the Federal Antitrust Claim for Lack of Subject Matter Jurisdiction.

Defendants simply have not met their burden of demonstrating that an interlocutory appeal pursuant to § 1292(b) is appropriate under the circumstances of this case. Interlocutory appeals are exceptional, and are certified only in the rare occasion that certain proscribed criteria are established. Here, in connection with the Court's subject matter jurisdiction rulings, Defendants have failed to satisfy any of the requisite criteria.

First, Defendants have not shown that there is a controlling legal question, which it must do for purposes of § 1292(b). Where, as here, the legal issue presented – i.e., whether this Court has subject matter jurisdiction over Plaintiffs' federal antitrust claims consistent with the Foreign Trade and Antitrust Improvements Act ("FTAIA") – is dependent on a highly fact-intensive inquiry and where the factual record has not yet been fully developed, courts in this Circuit make clear that even issues relating to jurisdiction will not be deemed "controlling" for purposes of § 1292(b).

Second, Defendants have not met their burden of showing that there is a substantial difference of opinion as to a controlling question of law in connection with this Court's subject

matter jurisdiction rulings.  Consistent with the law of this Circuit applying the FTAIA, the Court considered whether Defendants' conduct was sufficient to confer this Court with jurisdiction because such conduct had a direct, substantial, and reasonably foreseeable effect on United States commerce, and whether such effect gave rise to a claim under the Sherman Act. Defendants do not, and cannot, dispute that this is the appropriate inquiry.  Rather, they argue only that the Court misconstrued Plaintiffs' pleading and misapplied the evidence presented by Plaintiffs.  These, however, are not grounds for certifying an interlocutory appeal.  Further, to the extent Defendants' position is that the Court's legal analysis is incorrect, it relies upon the same misdirected analysis of relevant cases and the same misconstruction of inapposite authority parroted in each of Defendants' prior briefs – arguments that this Court has already fully considered and properly rejected.  The fact-intensive inquiry concerning subject matter jurisdiction also precludes Defendants from showing a substantial difference of opinion concerning a controlling question of law.

Lastly, Defendants have not shown that an immediate appeal of this issue will materially advance the ultimate termination of this litigation.  At this stage, Plaintiffs' burden was to make a <u>prima</u> <u>facie</u> showing of subject matter jurisdiction through allegations in the pleadings.  Plaintiffs did that, and more.  Before the issue of subject matter jurisdiction is finally resolved, however, the court must consider a full factual record on the issues.  Accordingly, for this reason too, an appeal is untimely and unsupportable.

**FACTUAL BACKGROUND**

Plaintiffs filed their original complaint in this case in June 2002 against Dow and UCC. In response, specifically to Plaintiffs' claim of resale price fixing under § 1 of the Sherman Act, Dow and UCC filed their initial motion to dismiss for lack of subject matter jurisdiction on

2

September 9, 2002.  Briefing on this motion was completed as of December 12, 2002, prior to any discovery by Plaintiffs of Dow or UCC.

While this motion was <u>sub judice</u>, Plaintiffs filed and served a First Amended Complaint, dated March 24, 2003, naming three additional defendants, UCAP, UCCS and Dow Singapore.[1]  In response to the Amended Complaint, Defendants Dow and UCC filed another motion, dated April 23, 2003, to dismiss the Sherman Act claim alleged in the First Amended Complaint for lack of subject matter jurisdiction.  Defendants UCAP, UCCS and Dow Singapore then filed their own motion to dismiss Plaintiffs' federal antitrust claim for lack of subject matter jurisdiction on May 30, 2003.  Dow and UCC's second subject matter jurisdiction motion made the exact same arguments as were presented on their first motion, and the companion motion by UCAP, UCCS and Dow Singapore expressly adopted the arguments of Dow and UCC's second subject matter jurisdiction motion.[2]

Thus, Defendants have consistently sought to characterize this case as an Asian dispute, arguing that United States courts do not have jurisdiction to hear Sherman Act claims "involving primarily foreign conduct unless the alleged anticompetitive conduct has had the requisite anticompetitive effect on United States commerce."[3]  More specifically, Defendants have asserted that a resale price fixing conspiracy targeting sales to end-user customers in India cannot have the requisite "direct, substantial and reasonably foreseeable" effect on United States

---

[1] The First Amended Complaint, however, "did not alter the material facts as alleged in the original Complaint, nor did it modify Plaintiffs' causes of action set forth therein."  April 17, 2003 Ruling on the Defendants' Motion to Dismiss For Forum Non Conveniens, at 2.

[2] By Order dated August 11, 2003, the Court denied Dow and UCC's original subject matter jurisdiction motion as moot.

[3] <u>See</u> 9/9/02 Mem. of Law in Support of Defs. Mot. to Dismiss the Antitrust Claims for Lack of Subj. Matter Juris., at 10 ("9/9/02 Mem. of Law").  <u>See</u> also 4/23/03 Mem. of Law in Support of Defs. Dow and UCC Mot. to Dismiss the Antitrust Claims for Lack of Subj. Matter Juris, at 1, 7-8 ("4/23/03 Mem. of Law"); 10/10/03 Mem. of Law in Support of Defs. Mot. for Cert. for Inter. Appeal of Court's Orders Denying Mots. to Dismiss the Fed. Antitrust Claim for Lack of Subj. Matter Juris., at 13 ("Defs. Mem. of Law").

3

commerce, as mandated by the FTAIA.[4]  Indeed, Defendants have argued that the conduct alleged in the First Amended Complaint in support of Plaintiffs' Sherman Act claim does not have any effect at all on commerce or competition in the United States.[5]

In opposition, Plaintiffs demonstrated that upon the allegations of their pleadings and the limited evidence available to them, Defendants engaged in a per se unlawful vertical resale price fixing conspiracy in violation of § 1 of the Sherman Act.  Plaintiffs further demonstrated that Defendants' price fixing conduct occurred in the United States and had an adverse effect upon United States commerce.  Thus, for example, Defendants were alleged and shown to have set the resale prices for Products sold to Plaintiffs in the United States and made sales of Products subject to the price fixing arrangement to Plaintiffs in the United States, and that such conduct was intended to and did in fact cause a significant anticompetitive effect on commerce in the United States by limiting Plaintiffs' ability to compete freely here and by raising prices for Products sold to others, including in the United States.  See, e.g., First Am. Compl. ¶¶ 29, 53-55, 112.  In this regard, Plaintiffs specifically alleged and provided evidence showing that the per se unlawful price fixing scheme had a direct, substantial and reasonably foreseeable effect on United States commerce, and that such an effect gave rise to a claim under the Sherman Act.

Accordingly, on September 12, 2003, this Court denied Dow and UCC's motion to dismiss Plaintiffs' antitrust claims (the "9/12/03 Ruling"), and on September 16, 2003 denied the motion by UCAP, UCCS and Dow Singapore on the same grounds.  In so doing, the Court expressly recognized Defendants' argument, which is the same as is made here, as: "[b]ecause the amended complaint alleges price fixing occurring in India that is not alleged to have a direct, substantial and reasonably foreseeable effect on the domestic commerce of the United States, the

---

[4] See 9/9/02 Mem. of Law, at 11, 14.  See also 4/23/03 Mem. of Law, at 2-3, 9; 10/10/03 Mem. of Law, at 2, 10-13.

court is deprived of subject matter jurisdiction over the claim by the Foreign Trade And Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a." 9/12/03 Ruling at 13. The Court's Ruling further recognized that the "reach of the Sherman Act . . . is limited," and that each part of the FTAIA needs to be met. Id. at 14-15.

The Court then rejected Defendants' arguments, holding that the per se unlawful nature of Defendants' conduct creates a presumption that such conduct has an anticompetitive effect, and "[b]ecause the amended complaint and evidentiary record support the conclusion that [Defendants'] conduct was directed at both the foreign and domestic market, the court . . . has jurisdiction." Id. at 16. The Court specifically pointed to the First Amended Complaint's allegation that the price fixing conspiracy was directed to "'ensure[ing] that prices charged by [the] [p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-users . . . in the United States as well as in other jurisdictions.'" Id. (emphasis in original). The Court further quoted from the First Amended Complaint that "[a]s a direct and proximate result of [the] [d]efendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from the United States was improperly diminished and restrained. . . ." Id. (emphasis in original).

The Court's Ruling also referenced specific evidentiary proof that was held to establish Defendants' conduct as having a direct, substantial and reasonably foreseeable effect on domestic commerce of the United States. Such evidence includes e-mails and correspondence showing that: Defendants refused orders placed by the Plaintiffs because of domestic market pricing concerns; Defendants examined competitive pricing during world strategy meetings; and

---

[5] See 9/9/02 Mem. of Law, at 11, 14-16. See also 4/23/03 Mem. of Law at 13; 10/10/03 Mem. of Law, at 5, 13.

5

Defendants considered the firmness of domestic prices before deciding whether to meet competitive pricing in the India market. Id. at 16-17 & n.3.

## ARGUMENT

### I.

### THIS CASE IS NOT APPROPRIATE FOR INTERLOCUTORY APPEAL

Section 1292(b) provides in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such order.

28 U.S.C. § 1292(b).

It is settled, however, that it is only the rare case that is appropriate for certification for interlocutory appeal under the statute. As explained by the Second Circuit, "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996). Thus, only "exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990) (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978)). See also Flor v. BOT Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996) ("use of this certification procedure should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of final judgment") (internal quotations and citations omitted); In re September 11 Litig., No. 21 MC 97, 2003 WL 22251325, at *2 (S.D.N.Y. Oct. 1, 2003) ("[t]he wisdom of federal practice, unlike the practice in many states, is

that cases are more swiftly processed and more economically run, and appellate decisions are more wisely made, if appeals await a final judgment in the district court"); Ryan, Beck & Co., LLC v. Fakih, 275 F. Supp. 2d 393, 395 (E.D.N.Y. 2003) ("[t]he final judgment rule generally prohibits piecemeal appeals, and thereby promotes a variety of institutional values underlying our federal judicial system.") (internal quotations and citation omitted).

As explained by the District Court for the Eastern District of New York in Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc., the rationale for allowing departure from the final judgment rule only in rare and exceptional circumstances is that it serves the important purposes of: (1) "ensur[ing] the efficient use of judicial resources;" (2) "preserv[ing] the distinct and vital role of the trial judge in the federal system;" and (3) "prevent[ing] unnecessary delay or harassment of the parties." 71 F. Supp. 2d 139, 148-52 (E.D.N.Y. 1999). Similarly, in In re September 11 Litig., the Southern District of New York explained that "[f]ederal practice is strongly biased against interlocutory appeals. Appeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." 2003 WL 22251325, at *1.

A district court, therefore, should "exercise great care in making a § 1292(b) certification," Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp., 964 F.2d 85, 89 (2d Cir. 1992), and § 1292(b) should not be used and was not intended as "a vehicle to provide early review of difficult rulings in hard cases." Primavera Familienstigung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (internal quotations and citations omitted).[6]

---

[6] It is not surprising, therefore, that courts have commented upon the paucity of certified interlocutory appeals. See, e.g., Koehler, 101 F.3d at 866 ("only about 100 cases a year are certified under § 1292(b), and of these only half are allowed"); Nat'l Asbestos Workers Med. Fund, 71 F. Supp. 2d at 161 ("[o]ver the past decade, there have been slightly more than 40,000 appeals heard by the court of appeals for the Second Circuit from final judgments. . . .

7

Rather, an interlocutory appeal "must be strictly limited to the precise conditions stated in the law." Klinghoffer, 921 F.2d at 25 (internal quotations and citations omitted). Moreover, "the district judge has unfettered discretion to deny certification of an order for interlocutory appeal even when a party has demonstrated that the criteria of [§ 1292(b)] are met." In re September 11 Litig., 2003 WL 22251325, at *2 (internal quotations and citations omitted). See also In re MTBE Prods. Liab. Litig., 174 F. Supp. 2d 4, 7 (S.D.N.Y. 2001) ("even if the three legislative criteria of section 1292(b) appear to be met, district courts have unfettered discretion to deny certification if other factors counsel against it") (internal quotations and citation omitted). In Nat'l Asbestos Workers Med. Fund, the court set forth additional considerations that courts should take into account when considering a motion for certification of an interlocutory appeal:

> (1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal.

71 F. Supp. 2d at 163.[7]

Defendants do not even acknowledge this settled authority, or the heavy burden they face in establishing this case as exceptional and as one of the rare instances where an interlocutory

---

During that same period, only 138 interlocutory orders were certified under section 1292(b) for appeal, of which the court of appeals agreed to hear only 93"); In re Lloyd's Am. Trust Fund Litig., 1997 WL 458739, *3 (S.D.N.Y. Aug. 12, 1997) (noting that in 18 years, the court had only granted 2 out of 23 motions for certification).

[7] See also Klinghoffer, 921 F.2d at 24 ("in exercising our discretion under the statute, we may properly consider the system-wide costs and benefits of allowing the appeal"); Primavera, 139 F. Supp. 2d at 570 ("[t]he efficiency of both the district court and the appellate court are to be considered, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case").

appeal should be certified by the district court.[8] Nor can they meet the rigorous standard that is required. They fail to establish any of the requisite elements stated in the statute, and clearly bring this motion for the exact reasons as have been recognized as improper under § 1292(b) – delay, harassment, and to increase the expense of this litigation for Plaintiffs.

## II.

### DEFENDANTS FAIL TO MEET THE REQUIRED STANDARDS OF § 1292(b)

As quoted above, certification under § 1292(b) is appropriate only when, at a minimum: (1) an order involves a "controlling question of law," (2) "as to which there is a substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Here, Defendants cannot show that any of these criteria are met, much less all of them.

**A.     The Orders Do Not Involve A Controlling Question Of Law**

A controlling question for § 1292(b) purposes may be "one that substantially affects a large number of cases," or "one which would terminate the action if the district court's order was reversed." Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping, 752 F. Supp. 173, 175 (S.D.N.Y. 1990). Under certain circumstances, jurisdictional issues may be controlling questions of law. That, however, is not always the case.

For example, courts consistently hold that a question of law is not controlling – even when it involves a court's subject matter jurisdiction over a claim or personal jurisdiction over a party – when the issue is subject to further determination in the district court or involves complex factual determinations. These holdings are consistent with the principle that "[i]nherent in the

---

[8] Indeed, Defendants wrongly seem to suggest, relying upon a single Ninth Circuit decision, that certification of

9

requirements of section 1292(b) is that the issue certified be ripe for judicial determination." Oneida Indian Nation v. County of Oneida, 622 F.2d 624, 628 (2d Cir. 1980). Accordingly, "[i]nterlocutory appeal is only appropriate when the question arises in a sufficiently developed factual context to sharply define the legal issues raised. Without this limitation, it cannot be said with reasonable certainty that the question, as presently framed by [defendants], is indeed controlling." Allied Princess Bay Co. v. Atochem N. Am., Inc., Civ. No. CV-91-4146, 1992 WL 135235 * 3 (E.D.N.Y. May 29, 1992) (internal quotations and citation omitted). See also Kregos v. The Latest Line, Inc., Civ. No. 5-92-398, 1997 WL 835056, at *2 (D. Conn. June 16, 1997) (the § 1292(b) standard "requires that the certified order must present a clear-cut question of law against a background of established facts") (quoting 19 James W. Moore et al., Moore's Federal Practice ¶ 203.31[3] (3d ed. 1997)).

Thus, the Second Circuit in Koehler v. Bank of Bermuda Ltd., held that the district court had improvidently granted an interlocutory appeal of an order denying a defendant's motion to dismiss for lack of personal jurisdiction because the case was still at the preliminary stage and the issue of personal jurisdiction was factually complex. 101 F.3d at 867 (2d Cir. 1996). As explained by the Second Circuit, "since the exercise of personal jurisdiction over a foreign parent corporation through a resident subsidiary is a question of law which turns on a thorough examination of the facts, . . . we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance." Id. at 866.

The decision in In re September 11, although not involving a jurisdictional issue, is to similar effect. There the Southern District of New York was asked to certify an interlocutory appeal of a motion to dismiss prior to the development of a factual record, where the question

---

interlocutory appeals is freely given. See Defs. Mem. of Law at 7.