presented related to issues of duty in the tort context. The court declined § 1292(b) certification, reasoning as follows:

> Unquestionably, the questions of law to be decided will be better defined, and thus better resolved, by development of the record. . . . Defendants' motions to dismiss, however, asked me to rule on the issues of duty owed to various categories of plaintiffs at a very early stage of the litigation, on the pleadings alone and before any discovery. While the existence of duty is a question of law, the considerations that affect the issue of duty are factually complex, involving extensive inquiries into public policy, the relative expectations of the parties, and material concerns of equity, fairness, and risk allocation. Clearly the parties will be aided in briefing by a developed record after discovery, as will any appellate court that reviews my determinations.

Id. at *3.[9]

Defendants ignore this authority, and assert only the superficial position, without more, that subject matter jurisdiction is a controlling question of law.[10] They also ignore that this Court's subject matter jurisdiction rulings were made at the pleading stage, without Plaintiffs having had the benefit of a complete discovery record and without a full evidentiary hearing at which such evidence could be considered. Accordingly, the Court properly relied upon the well-pleaded allegations in the First Amended Complaint and the limited factual record presented. See 9/12/03 Ruling at 12; Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) ("court must credit the plaintiff's well-pleaded factual allegations, draw all reasonable inferences from them in her favor, and dispose of the [subject matter jurisdiction] challenge accordingly");

---

[9] See also Oneida Indian Nation, 622 F.2d at 628 ("the purpose of section 1292(b) is not to offer advisory opinions rendered on hypotheses which evaporate in the light of full factual development") (internal quotations and citation omitted); Nat'l Asbestos Workers Med. Fund, 71 F. Supp. 2d at 166-67 (denying § 1292(b) certification where causation issue required "highly fact specific inquiries" because "[a]ppeal at this stage of the litigation, before full development of the facts, would significantly undermine the ability of the trial and appellate courts . . . to fully consider [the relevant legal issue]"); Allied Princess, 1992 WL 135235, at *2 (holding interlocutory appeal inappropriate "because the facts of the case have not yet fully developed," and therefore "[j]udicial economy would not be advanced by appellate review at this time).

[10] See Defs. Mem. of Law at 7-9.

11

Williamson v. Tucker, 645 F.2d 404, 414 (5th Cir. 1981) (prior to 12(b)(1) dismissal when jurisdictional facts are in dispute, "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss. Thus, some courts have refused to grant such a motion before plaintiff has had a chance to discover facts necessary to establish jurisdiction. . . . Other courts have refused to uphold such a motion where . . . the plaintiff has had no opportunity to be heard on the factual matters underlying the jurisdiction").[11]

In these circumstances, there is no basis for appellate review at this time. The factual record is not complete, and the legal question of subject matter jurisdiction is not framed against a background of established facts. As a result, the Court of Appeals will be in no position to do anything more than return the matter to this Court and direct that Plaintiffs be afforded full discovery and a hearing.

Nor would it be appropriate for discovery to be limited to just jurisdictional issues. As respects Plaintiffs' federal antitrust claim, issues relating to jurisdiction and the merits are completely intertwined, and Plaintiffs should be permitted the opportunity to fully develop its case. See, e.g., Chatham Condo. Ass'ns v. Century Vill., Inc., 597 F.2d 1002, 1011 (5th Cir. 1979) (where factual and jurisdictional issues relating to an antitrust claim are intermeshed, dismissal for lack of subject matter jurisdiction is not favored); Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (holding that "federal claims should not be dismissed on motion for

---

[11] See also Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) ("the court cannot enter judgment if it appears that there is a material issue of disputed fact [relating to subject matter jurisdiction], but must await discovery and trial, during which plaintiff will have the opportunity to prove those material facts"); Hosp. Bldg. Co. v. Trs. of Rex Hosp., 511 F.2d 678, 680-81 (4th Cir. 1975), rev'd on other grounds, 425 U.S. 738 (1976) (stating that dismissal should be granted "sparingly and with caution," especially in antitrust cases, "because it may be difficult to plead more precisely the effects on interstate commerce until discovery has been had"); Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc., 928 F. Supp. 287, 290 (S.D.N.Y. 1996) (holding that where subject matter jurisdiction "is inextricably intertwined with the merits, deferral of the jurisdictional issues until the summary judgment stage is appropriate").

lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact").

The cases sought to be relied upon by Defendants do not compel contrary conclusions. For example, in Hecht Co. v. S. Union Co., 474 F. Supp. 1022 (D.N.M. 1979), the district court certified for interlocutory appeal its denial of summary judgment concerning issues under the antitrust law Illinois Brick and "state action" doctrines. Certification occurred, however, only after a complete and detailed factual record had been developed. Id. at 1031. In contrast, here we are at the pleading stage and the factual record is, at best, nascent. Reliance on Movielab, Inc. v. Berkey Photo, Inc., No. 70 Civ. 3800, 1971 WL 242, at *1 (S.D.N.Y. Jan. 28, 1971), is likewise misplaced. There, the court recognized the case as "one of those rare cases where our decision involves a controlling question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from our decision would materially advance the ultimate termination of the litigation." Id. The case, however, did not involve the type of factually complex issues relating to subject matter jurisdiction as exist here.[12]

**B.    The Court's Orders Present No Issues On Which There Is A Substantial Ground For Difference Of Opinion**

Defendants likewise fall short as respects the second prong of the § 1292(b) standard, that there be a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Here, Defendants must establish that there is "substantial doubt" that the district court's order was correct. Shipping Corp. of India, 752 F. Supp. at 175. A mere regurgitation of the cases and arguments set forth in Defendants' original motion papers which were considered and rejected

---

[12] Defendants also cite White v. Nix, 43 F.3d 374, 376 (8th Cir. 1994), and WIXT Television v. Meridith Corp., 506 F. Supp. 1003, 1012 (N.D.N.Y. 1980). In White, however, the Eighth Circuit held that the district court's certification under § 1292(b) was improper in a § 1983 case, and Defendants only seek to rely upon dicta referencing the legislative history of § 1292(b), which has no bearing on the specifics of this case. Moreover, the WIXT case does not even concern issues under § 1292(b).

13

by the district court will not suffice.  Id.  See also Minn. Mut. Life Ins. Co. v. Ricciardello, Civ. No. 3:96CV2387, 1998 WL 241216, at *1 (D. Conn. May 4, 1998) ("[t]he fact that the parties disagree as to the interpretation of the law does not create a substantial difference of opinion").  Rather, Defendants must show that there is conflicting legal authority within the Second Circuit that would persuade the court that there is substantial doubt on the relevant issue of law.  Shipping Corp. of India, 752 F. Supp. at 175.[13]  Accordingly, "in determining whether a substantial ground for difference of opinion truly exists, a district court must analyze the strength of the arguments in opposition to the challenged ruling."  Ryan, Beck & Co., 275 F. Supp. 2d at 398 (internal quotations and citation omitted).

Defendants have not met, and they cannot meet, these standards.

### 1. The Court applied the correct legal standard

In an attempt to create a substantial ground for difference of opinion where none exists, Defendants argue that the Court's rulings "fail to fully reckon with the requirement of subsection 1 of the FTAIA that the alleged anticompetitive conduct have had a 'direct, substantial, and reasonably foreseeable effect' on domestic commerce."  Defs. Mem. of Law at 13.  Defendants, however, ignore the Court's clear consideration of this prong of the FTAIA.  In fact, the Court expressly acknowledged the limited reach of the Sherman Act, yet still found that Defendants' alleged conduct had a direct, substantial, and reasonably foreseeable effect on domestic commerce.  See 9/12/03 Ruling at 14-17.  There can be, therefore, no ground for dispute, and Defendants offer none, that this Court addressed exactly what is required under the first prong of the FTAIA.

---

[13] See also Ryan, Beck & Co., 275 F. Supp. 2d at 398 ("[d]isagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion") (internal quotations and citation omitted); In re MTBE Prods. Liab. Litig., 174 F. Supp. 2d at 8 ("[n]either disagreement outside this Circuit, nor the mere presence

Defendants further argue that the Court misapplied the Second Circuit's decision in Kruman v. Christie's Int'l plc, 284 F.3d 384 (2d Cir. 2002).[14] This argument, too, is simply unsupportable. Kruman makes crystal clear that the first prong of the FTAIA test is as expressly stated in the statute – whether Defendants' conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce, 284 F.3d at 402. As stated above, this is the test the Court here applied, and nowhere do Defendants even suggest – and indeed they cannot – that anything in Kruman, or in any other Second Circuit precedent, changed this standard.

Defendants' various attempts to minimize both the existence and significance of the evidence upon which the Court relied, and the allegations of the First Amended Complaint – primarily though regurgitating arguments already put before the Court – is likewise misguided.

First, Defendants suggest that the documentary evidence showing their express intent to affect domestic commerce by fixing resale prices to end-users in India is somehow irrelevant to the jurisdictional analysis.[15] As the Court properly recognized, however, this could not be further from the truth. Defendants' intent is highly relevant to the effects inquiry, because it makes clear that the conduct's domestic effect was reasonably foreseeable, indeed <u>actually foreseen</u>, and is hardly a simple ancillary effect of conduct directed solely abroad. Nor does a single case upon which Defendants seek to rely involve such evidence of a defendant's express intent to use pricing directed at a foreign market to wreak an anticompetitive effect upon United States commerce. Indeed, in Eurim-Pharm GmbH v. Pfizer Inc., 593 F. Supp. 1102, 1106 n.4 (S.D.N.Y. 1984), which is cited by Defendants,[16] the court states that "[t]he test is whether the

---

of a disputed issue that it is a question of first impression in this Circuit demonstrate a substantial ground for difference of opinion").

[14] See Defs. Mem. of Law, at 14-17.

[15] See Defs. Mem. of Law, at 17-19.

[16] See Defs. Mem. of Law, at 10, 18.

15

effect would have been evident to a reasonable person making practical business judgments" – a test that is surely satisfied by documents indicating that defendants themselves intended their actions to have such an effect.  See also Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796 (1993) ("it is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States") (emphasis added).

Second, Defendants' conclusory assertion that Plaintiffs' allegations of the requisite effects on United States commerce are "irreconcilable" with the facts pleaded is of no moment.[17] The Court's 9/12/03 Ruling specifically points out the relevant factual allegations, i.e., that the price fixing conspiracy was directed to ensuring that prices charged end-users in India would not erode prices charged end-users in the United States, and that the actual effect of the price fixing conspiracy was to diminish and restrain competition in the United States.  9/12/03 Ruling at 16. No other facts are pled that contradict these allegations, and Defendants point to none.

Lastly, Defendants' attempt to question the Court's discussion of the per se illegal nature of Defendant's conduct falls flat and is highly misleading.  The Court did not, as Defendants suggest, hold that the per se nature of Defendants' unlawful conduct itself confers jurisdiction.[18] To the contrary, after discussing the per se nature of Defendants' conduct, the Court carefully noted that "the reach of the Sherman Act . . . is limited," 9/12/03 Order, at 14.  It then went on to consider the intended and actual effects of the conduct in the United States.  See 9/12/03 Order, at 15-17.  The Court, therefore, correctly recognized that per se unlawful conduct, by definition, causes an adverse effect on competition, then also properly went on to consider whether that competitive effect was felt in the United States as well as abroad.  See 9/12/03 Order, at 15-16.

---

[17] See Defs. Mem. of Law, at 22.

16

### 2.     Defendants rely on inapplicable law

Perhaps most striking in Defendants' futile effort to convert the Court's reasoned ruling into a straw man is their reliance on numerous inapplicable cases from other circuits, as they did in their prior memoranda, disregarding the blackletter rule that a ground for difference of opinion for purposes of § 1292 must involve the law of the applicable jurisdiction.  See Ryan, Beck & Co., 275 F. Supp. 2d at 398.  The reason for this rule is apparent here, where the cases upon which Defendants seek to rely are grounded in legal principles rejected by the established law of the Second Circuit.

For example, in 'In' Porters, S.A. v. Hanes Printables, Inc., 663 F. Supp. 494 (M.D.N.C. 1987),[19] the basis for the district court's rejection of jurisdiction under the FTAIA was that "[a] foreign company that . . . fails to establish that it is within the class of injured United States exporters[] lacks a jurisdictional basis to sue under the Sherman Act."  Id. at 500.  Similarly, the district court's finding of no FTAIA jurisdiction in S. Megga Telecomms. Ltd. v. Lucent Technologies, Inc., No. 96-357-SLR, 1997 WL 86413 (D. Del. Feb. 14, 1997),[20] likewise hinged entirely on the fact that "[p]laintiffs' alleged injuries – lost sales to Lucent – are not injuries within the United States."  Id. at *9.

But, as Defendants recognize,[21] the Second Circuit in Kruman, expressly rejected precisely this reading of the FTAIA.  In fact, the Second Circuit held that jurisdiction is based upon the conduct's effect on United States commerce and whether a claim could be raised in the United States, not upon whether the plaintiff's injury is suffered here.  284 F.3d at 399-401.  It is

---

[18] See Defs. Mem. of Law at 24-25.

[19] See Defs. Mem. of Law, at 10.

[20] See Defs. Mem. of Law, at 11, 21, 23.

[21] See Defs. Mem. of Law, at 15-16.

thus Defendants, and certainly not Plaintiffs or this Court, who misconstrue Kruman by conflating the two prongs of the FTAIA and relying on decisions that relate to the second prong – which Defendants concede is not at issue here[22] – and worse, reflect the directly contrary law of other jurisdictions. Defendants' cited cases are therefore of no precedential effect whatsoever, and certainly provide no basis for finding a substantial ground for difference of opinion here.

Defendants' other citations are equally inapt. Most involve factual scenarios vastly different from those at issue here.[23] Defendant's reliance on Gross v. New Balance Athletic Shoe, Inc., 955 F. Supp. 242 (S.D.N.Y. 1997), is particularly telling. Defendants cite Gross for the proposition that injury caused by a vertical price fixing scheme is "indirect" rather than "direct," as required by the FTAIA.[24] However, Gross did not even remotely involve the FTAIA, and makes no claim to speak to the meaning of the "direct, substantial, and reasonably foreseeable" prong of that statute. Worse, Defendants' discussion of this case again reflects its fundamental confusion with respect to the principles articulated by this Circuit in Kruman. At issue in Gross was whether indirect purchasers had standing under § 4 of the Clayton Act, which requires a plaintiff to show injury to its business or property, to challenge a resale price maintenance scheme; the court held that they did not. 955 F. Supp. at 245-47. But, once again, the Court in Kruman makes clear that this injury inquiry is precisely not the relevant one under the FTAIA in this Circuit. The relevant question under Second Circuit FTAIA precedent is

---

[22] See Defs. Mem. of Law, at 15-16.

[23] See, e.g., Liamuiga Tours v. Travel Impressions, Ltd., 617 F. Supp. 920 (E.D.N.Y. 1985) (plaintiffs only alleged harm to themselves and not to competition in general); Gen. Elec. Co. v. Latin Am. Imps., S.A., 227 F. Supp. 2d 685 (W.D. Ky. 2002) (same; motion for summary judgment); McElderry v. Cathay Pac. Airways, Ltd., 678 F. Supp. 1071 (S.D.N.Y. 1988) (same); Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293 (3d Cir. 2002) (plaintiffs failed to allege any domestic market effect whatsoever and tried to raise the claim for the first time on appeal). Moreover, Defendants quote Turicentro out of context. The language quoted by Defendants, Defs. Mem. of Law at 20, in fact related only to the question of whether defendants' activities constituted "import commerce" and thus fell outside the scope of the FTAIA. 303 F.3d at 302-03. Plaintiffs here raise no argument involving import commerce.

[24] See Defs. Mem. of Law, at 20-21.

whether the alleged conduct had a direct, substantial and foreseeable effect in United States commerce that gives rise to a claim under the Sherman Act, Kruman, 284 F.3d at 399-402, not whether that effect is sufficient to confer standing as a direct purchaser under the Clayton Act.[25]

### 3. No grounds for a difference of opinion exist because of the factually complex inquiry on issues of subject matter jurisdiction

Finally, certification of an interlocutory appeal is also inappropriate where, as here, the parties dispute a court's application of the applicable legal standards to the specific facts of the case. See, e.g., Cromer Fin. Ltd. v. Berger, Nos. 00 Civ. 2284 and 2498, 2001 WL 935475, at *2 (S.D.N.Y. 2001). In Cromer, the Southern District of New York considered a motion for interlocutory appeal involving challenges to the court's subject matter jurisdiction, as well as its personal jurisdiction over defendants. Noting that the parties did not dispute the court's articulation of the relevant legal standards, but that their "quarrel [wa]s with the application of those standards to the specific facts in this suit," id., the court held that, because Defendants' attempt to demonstrate a substantial ground for difference of opinion under § 1292(b) involved a "fact intensive" inquiry, defendants had not asserted "an appropriate basis for certification." Id. at *3-4.

The same conclusion is warranted here. Defendants themselves address the factually dependent analysis for determining subject matter jurisdiction under the FTAIA.[26] Accordingly,

---

[25] Defendants' attempt to rely on the DOJ/FTC International Guidelines, id. at 12, is equally unavailing. Illustrative Example C, Variant (1) of the Guidelines is factually distinguishable, as it involves a cartel agreement formed outside of the United States to fix prices outside of the United States and considered whether subsequent excess sales into the United States at below-market prices, leading ultimately to lower production output in the United States, could constitute a direct, substantial, and reasonably foreseeable effect on domestic commerce. This plainly indirect effect is clearly not the situation presented by Plaintiffs here. Moreover, the DOJ/FTC International Guidelines are not controlling precedent for purposes of the present motion under § 1292(b), and cannot properly be considered as evidencing a substantial ground for difference of opinion.

[26] See Defs. Mem. of Law at 4-5, 17-25.

19

as in Cromer, they cannot show a substantial ground for difference of opinion concerning this Court's subject matter jurisdiction rulings.

### C. An Immediate Appeal Of The Rulings Will Not Materially Advance The Ultimate Termination Of The Litigation

Defendants also cannot satisfy the third prong required for certification under § 1292(b) – that the interlocutory appeal of the issue presented will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). See also In re MTBE Prods. Liab. Litig., 174 F. Supp. 2d at 9 (certification "is inappropriate where it is unclear whether disposition of the certified issue would advance the ultimate termination of the case"). For the same reasons as discussed above establishing that there is no controlling question of law or substantial grounds for difference of opinion, an appeal at this stage will not materially advance the ultimate termination of this case.[27] In particular, the record as it presently exists is simply not ripe for any determination that subject matter jurisdiction over Plaintiffs' antitrust claims is lacking. Discovery has been very limited, and no hearing where all relevant evidence could be considered has been held.

Thus, rather than advance the ultimate termination of this litigation, an interlocutory appeal of the Court's rulings at this premature juncture, prior to the establishment of a full factual record and the district court's full consideration of the issue of subject matter jurisdiction in light of such a record, would actually delay the proceeding and potentially extend the time for trial.

---

[27] See Primavera, 139 F. Supp. 2d at 570 ("[a]lthough technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected").

20

## III.

## CERTIFICATION IS NOT APPROPRIATE
## FOR ADDITIONAL REASONS

As discussed above, see section I, supra, district courts have unfettered discretion to deny § 1292(b) certification, even if the three legislative criteria enunciated in the statute are met.

Here, there is no question that development of a full factual record would be beneficial, especially in connection with the issue of subject matter jurisdiction under the FTAIA. As Defendants' arguments assert, this is a developing area of law and the specific factual context of each case is significant for proper determination.

An interlocutory appeal of the Court's ruling also would not result in a final disposition of this case. As previously explained, at most, remand to the district court for additional factual development and further determination of the issue at trial is likely.

Thus, an interlocutory appeal at this time would serve no purpose but to cause unnecessary delay of this litigation and increase the parties' costs. Moreover, such an appeal would unnecessarily burden the Court's resources. See Nat'l Asbestos, 71 F. Supp. 2d at 148-49 ("[r]epeated interlocutory appeals in the same case would also stretch the already limited resources of the courts of appeals").

Accordingly, even if the Court were to find that the § 1292(b) criteria have been satisfied, which they clearly have not, consideration of the additional factors discussed above strongly weigh against certification at this premature stage of the litigation.

## CONCLUSION

For the foregoing reasons, Defendants' motion for certification for interlocutory appeal of the Court's orders denying the motions to dismiss the federal antitrust claims for lack of subject

matter jurisdiction should be denied.

                      THELEN REID & PRIEST LLP

            By: _____
                Richard S. Taffet (ct 10201)

                875 Third Avenue
                New York, New York  10022-6225
                (212) 603-2000 (tel)
                (212) 603-2001 (fax)

WIGGIN & DANA LLP
    Robert M. Langer (ct 06305)
    Suzanne E. Wachsstock (ct 17627)
    One CityPlace
    185 Asylum Street
    Hartford, Connecticut  06103-3402
    (860) 297-3724 (tel)
    (860) 525-9380 (fax)

Attorneys for Plaintiffs MM Global Services Inc., MM Global Services Pte. Ltd. and MegaVisa Solutions (s) Pte. Ltd.