UNITED STATES DISTRICT COURT FILED
DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC.,  :          2003 NOV 17  P 4: 59
MM GLOBAL SERVICES PTE. LTD.,  :
and MEGAVISA SOLUTIONS (S)  :          US DISTRICT COURT
PTE. LTD.,  :          HARTFORD CT
    Plaintiffs,  :
      :
VS.  :          Civil No.   3:02CV1107(AVC)
      :
THE DOW CHEMICAL COMPANY,  :
UNION CARBIDE CORPORATION,  :
UNION CARBIDE ASIA PACIFIC, INC.,  :
UNION CARBIDE CUSTOMER  :
SERVICES PTE. LTD., and DOW  :
CHEMICAL PACIFIC (SINGAPORE)  :
PTE. LTD.,  :
    Defendants.  :

## MEMORANDUM OF DECISION RE THE DEFENDANTS' MOTION TO DISMISS

    This is an action for damages arising out of a business arrangement pursuant to which the plaintiffs purchased chemicals, polymers, and other products from the defendants and resold them to customers located in India.  The amended complaint alleges violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and common law tenents concerning breach of contract and negligent misrepresentation.

    The defendants, Union Carbide Asia Pacific, Inc. ("UCAP"), Union Carbide Customer Services Pte. Ltd. ("UCCS"), and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore"), move pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the action for want of personal jurisdiction.

    The issue presented is whether the court has personal jurisdiction over the defendants, UCAP, UCCS, and Dow Singapore.

For the reasons that hereinafter follow, the court concludes that it has personal jurisdiction with respect to UCAP. The motion to dismiss for lack of personal jurisdiction is therefore DENIED as to UCAP. The court concludes that it does not have personal jurisdiction over UCCS and Dow Singapore. The motion to dismiss is therefore GRANTED as to UCCS and Dow Singapore.

## FACTS

Examination of the amended complaint and supplemental documents, including affidavits and exhibits submitted in connection with the instant motion, set forth the following material facts. The defendant, Union Carbide Corporation ("Union Carbide") is engaged in the manufacture and sale of chemicals, polymers, and other specialty products to customers located in the United States and throughout the world. Union Carbide is incorporated in New York and has its corporate headquarters and principal place of business in Danbury, Connecticut.

In December 1984, lethal gas escaped from Union Carbide's plant in Bhopal, India. The leak caused the death of 3,800 persons and injured an additional 200,000. In February 1989, Union Carbide and its Indian affiliate were ordered to pay millions of dollars in damages arising from this tragedy

Union Carbide thereafter ceased selling products directly to customers in India. In 1987, Union Carbide appointed the plaintiff, Mega Vista Marketing Solutions Ltd ("MVMS") as a non-exclusive distributor to maintain Union Carbide's access to the Indian marketplace. In 1993, Union Carbide requested that MVMS form separate corporate affiliates and open offices outside India that would buy Union Carbide products in the United States and resell them to end-users in India.

2

Union Carbide formed the defendant, Union Carbide Asia, Pacific, Inc. ("UCAP") and the defendant, Union Carbide Customer Services Pte Ltd ("UCCS") to assist product sales in India. UCAP is a corporation organized under the laws of Delaware with a principal place of business in Singapore. UCCS is a corporation organized under the laws of Singapore with a principal place of business in Singapore.

In their course of dealing, UCAP and UCCS purchased Union Carbide products directly from Union Carbide in the U.S., or they would place purchase orders for the products through a centralized computer system based in Connecticut. These purchase orders created separate contracts between Union Carbide, UCAP, and UCCS. Union Carbide primarily produced these products in the Gulf States area of the United States. UCAP's 1993 annual sales figure in United States were $35,345,000, sales in the third quarter of 1997 were $20,397,870, and sales in December of 2000 were $76,284,000 in the United States. The sales figures for UCCS are not specified. UCAP representatives attended meetings, including training sessions, in Connecticut, and communicated with Union Carbide via e-mail regularly concerning day-to-day business decisions. UCAP maintained a voice mailbox at Union Carbide's headquarters in Danbury Connecticut.

On February 6, 2001, Union Carbide merged with a subsidiary of Dow and became a wholly owned subsidiary of Dow. Around this time, Dow created the defendant, Dow Chemical Pacific (Singapore) Private Ltd. ("Dow Singapore"). Dow Singapore is a wholly owed subsidiary of Dow and is incorporated in Singapore with a principal place of business in that country.

On May 30, 2003, the defendants, UCAP, UCCS, and Dow Singapore brought the present motion to dismiss this action against them for lack of personal jurisdiction.

## STANDARD

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of showing through actual proof that the court has jurisdiction over the defendant." Divicino v. Polaris Indus., 129 F. Supp. 2d 425, 428 (D. Conn. 2001) (citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566-567 (2d Cir. 1996)). "Where there has been no discovery conducted, plaintiff need only assert 'facts constituting a prima facie showing of personal jurisdiction' to defeat a motion to dismiss." Dan-Dee Int'l, Ltd. v. Kmart Corp., 2000 U.S. Dist. LEXIS 13411, No. CIV 99-11689, 2000 SL 1346865, at *2 (S.D.N.Y. Sept. 19, 2000) (quoting PDK Labs Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)); see also United States Surgical Corp. v. Imagyn Med. Techs., Inc., 25 F. Supp. 2d 40, 44 (D. Conn. 1998) (noting that the prima facie case of personal jurisdiction over a foreign defendant is established by showing that there is a statutory basis for exercising jurisdiction and that the exercise of jurisdiction over the foreign defendant satisfies due process).

With regard to a motion to dismiss for lack of personal jurisdiction, "in the absence of an evidentiary hearing, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to the plaintiff." Sherman Assocs. v. Kals, 899 F. Supp. 868, 870 (D. Conn. 1995); see also Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 768 (2d Cir. 1983); Divincino v. Polaris Indust., 129 F. Supp. 2d425, 428 (D. Conn. 2001). In addition, "regardless of the controverting evidence put forth by the defendant, the court must resolve all doubts in the plaintiff's favor." United States Surgical Corp. v. Imagyn Med. Techs., Inc, 25 F. Supp. 2d 20, 44 (citing A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)); see also Divicino, 129 F. Supp. 2d at 428.

4

## DISCUSSION

### 1. Personal Jurisdiction under the Clayton Act

The defendants, UCAP, UCCS, and Dow Singapore, first move to dismiss the federal antitrust action for lack of personal jurisdiction, arguing that they do not transact business in Connecticut, therefore the Court lacks jurisdiction over them under section 12 of the Clayton Act. Specifically, they argue that because there is no evidence that "UCAP or UCCS made purchases from Union Carbide in Connecticut," this "does not amount to 'transacting business' in Connecticut." Moreover, the defendants state that "the fact that UCAP and UCCS are wholly-owned subsidiaries of Union Carbide . . . is totally irrelevant for venue purposes."

The plaintiffs respond that "personal jurisdiction is proper so long as any venue statute, whether specific or general, is satisfied." In any event, the plaintiffs maintain that, "the Affiliate Defendants were involved in sufficient commercial dealings within Connecticut to meet the 'transacting business' requirement of § 12."

In Goldlawr Inc. v. Heiman, 288 F.2d 579, (2d Cir. 1961), the United States Court of Appeals for the Second Circuit held that "a suit against a corporation under the antitrust laws may be brought, namely, in a district where it is an inhabitant and also where 'it may be found or transacts business." Id. at 581, rev'd on other grounds, 369 U.S. 463 (1962). The "necessary effect" of the Clayton Act "was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only . . . in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'-- although neither residing nor 'found' therein." Eastman Kodak Co

5

v. Southern Photo Materials Co., 273 U.S. 359, 373 (1927)

In Eastman Kodak, the Supreme Court set out the test for determining when a corporation transacts business in a district for purposes of section 12 of the Clayton Act. A corporation is transacting business "if, in fact, in the ordinary and usual sense, it transacts business therein of any substantial character." Eastman Kodak Co v. Southern Photo Materials Co., 273 U.S. 359, 373 (1927). "The words 'transact business' are used in the 'practical, everyday business or commercial sense.'" United States v. Burlington Industries. Inc., 247 F. Supp. 185, 187 (S.D.N.Y. 1965) (quoting United States v. Scophony Corp., 333 U.S. 795, 807 (1948)). This test "is a practical and common-sense test, designed to facilitate plaintiff's choice of forum, and is applied under the particular facts presented by each case upon a liberal inquiry as to whether a corporation is involved in commercial dealings, in the ordinary and usual sense, of any substantial character in the proposed forum district." Turbine Engine Corp. v. Chromally American Corp., 265 F. Supp. 766, 767 (D. Conn. 1967).

In the instant case, the plaintiffs concede that the "Affiliate Defendants do not inhabit and are not found in Connecticut." Therefore, the issue is whether the defendants "transact business" of a "substantial character" in Connecticut.

**A.  Transacting Business and UCAP**

A corporation transacts business of a substantial character in a forum state if it buys "significant quantities" of merchandise from vendors. McCrory Corp. v. Cloth World, Inc., 378 F. Supp. 322, 324 (S.D.N.Y. 1974). The court in McCroy reasoned that "substantial purchasing activity [i.e. $286,000 over three years] can be the basis of a determination that a corporation 'transacts business' in a district, even if those purchases

6

were not related to the claim for relief." McCrory Corp. v. Cloth World, Inc., 378 F.

Supp. 322, 324 (S.D.N.Y. 1974) (citations omitted).  See U.S. v. Burlington Industries,

Inc., 247 F. Supp. 185, 187 (S.D.N.Y. 1965) ($2,000,000 in purchases over several years

was sufficient).  In Indian Head, the court held that the defendants who operated a film

library, had phone listings in the forum, had substantial sales and purchases in the forum,

and attended meetings in the forum transacted business under section 12 of the Clayton

Act.  Indian Head, Inc. v. Allied Tube & Conduit Corp., 560 F. Supp. 730 (S.D.N.Y.

1983).  There, the court determined that the fact that the defendant attended meetings in

the forum was "a significant factor in finding that [the defendant] transacts business" in

the forum.  Id. at 732.

In this case, UCAP placed purchase orders with Union Carbide for Union

Carbide/Dow products through a central computer system which Union Carbide

controlled in Connecticut.  UCAP's 1993 annual sales figure in United States were

$35,345,000, sales in the third quarter of 1997 were $20,397,870, and sales in December

of 2000 were $76,284,000 in the United States.  Because these figures exceed the sales

figures in Burlington and McCroy, the court concludes that UCAP was transacting

business in the district of Connecticut.  See, McCrory Corp. v. Cloth World, Inc., 378 F.

Supp. 322, 324 (S.D.N.Y. 1974); U.S. v. Burlington Industries, Inc., 247 F. Supp. 185,

187 (S.D.N.Y. 1965).  Moreover, UCAP had additional business transactions with

Connecticut.  UCAP representatives attended meetings, held training sessions, and

maintained a voicemail box in Connecticut.  When viewed in their totality, the court

concludes that UCAP transacts business of a substantial character in Connecticut.[1]

**B. Transacting Business and UCCS**

UCCS does not transact business of a substantial nature in Connecticut. UCCS's contacts with Connecticut, according to the plaintiffs' exhibits and affidavits, consist of purchase orders which UCCS placed with Union Carbide in Connecticut. The record, however, does not state how much purchasing activity was done here. While these purchase orders establish some business transactions with Connecticut, there is no evidence that UCCS engaged in substantial purchasing activity. Therefore, the Court concludes that in the ordinary and usual sense of the term, UCCS does not transact business of a substantial character in Connecticut, and accordingly, the plaintiffs have failed to establish personal jurisdiction under section 12 of the Clayton Act.

**C. Transacting Business and Dow Singapore**

Dow Singapore does not transact business of a substantial nature in Connecticut. The plaintiffs do not offer any proof that Dow Singapore had any contacts, substantial or not, within Connecticut. Thus, the plaintiffs fail to establish jurisdiction.

**2. Connecticut's Long-Arm Statute**

The defendants, UCAP, UCCS, and Dow Singapore next move to dismiss the complaint against them on the grounds that there is no personal jurisdiction under

---

[1] After determining that the court has personal jurisdiction over UCAP, the next step is to determine if exercising that personal jurisdiction violates the constitutional precepts concerning Due Process. The Court concludes that because the defendants do not contend that this Court's exercise of personal jurisdiction over UCAP would violate Due Process, the exercise of jurisdiction over UCAP comports with the constitutional precepts concerning Due Process.

Connecticut's long-arm statute "because they lack. . . the requisite contacts with Connecticut." Specifically, they assert that "the plaintiff's argument that UCAP and UCCS contracted to purchase products from Connecticut does not support personal jurisdiction," and the fact that "UCAP's and UCCS's employees attending meetings at Union Carbide's Connecticut offices . . . does not constitute transacting business under the relevant long-arm statute." Finally, as to Dow Singapore, the defendants argue that Dow Singapore does not "transact business within the meaning of the relevant Connecticut long-arm statute."

The plaintiffs respond that "the Connecticut long-arm statute confers personal jurisdiction over the affiliate defendants." Specifically, they argue that the defendants do transact business within the meaning of the state's long-arm statute because the defendants "continuously and systematically placed orders with Union Carbide in Connecticut, through Union Carbide's computerized order processing system, and became parties to contracts based on Union Carbide's acceptance of such orders." Additionally, the plaintiffs assert that in accordance with "[t]he second prong of the Connecticut long-arm statute's inquiry . . . the Plaintiffs' claims related directly to conduct undertaken by Affiliate Defendants in Connecticut."

The portion of Connecticut's long-arm statute on which the plaintiffs base jurisdiction provides that: "[e]very foreign corporation which transacts business in this state in violation of section 33-920 . . . shall be subject to suit in this state upon any cause of acting arising out of such business." Conn. Gen. Stat. § 33-929(e). Section 33-920 provides, in relevant part that "[a] foreign corporation . . . may not transact business in this state until it obtains a certificate of authority from the Secretary of State." Conn.

Gen. Stat. § 33-920(a).  Section 33-920(b) lists certain activities which do not constitute transacting business in Connecticut.[2]

Connecticut's long-arm statute applicable to foreign defendants, section 33-929(e), provides that a court has personal jurisdiction over a defendant "upon proof of two conditions:  the transaction of business in this state, and a cause of action arising out of the transaction of such business."  Wilkinson v. Boats Unlimited, Inc., 236 Conn. 78, 86 (1996) (internal quotation marks omitted).  Courts have determined that the term " 'transacting business' is not broadly interpreted in Connecticut."  Chemical Trading Inc. v. Manufacture de Produits Chimiques de Tournan, 870 F. Supp. 21, 23 (D. Conn. 1994).  The second condition is that a plaintiff's suit must "bear . . . some connection with the business conducted by the foreign corporation in this state."  Lombard Bros., Inc. v. General Asset Mgmt. Co., 190 Conn. 245, 252 (1983) (citations omitted).

### A.  Connecticut's Long-Arm Statute and UCAP

In, Milne v. Catuongo Court Reporting Servs., Inc., 239 F. Supp. 2d 195 (D.

---

[2] Section 33-920 of the Connecticut General Statutes, provides, in relevant part that:

> (b) The following activities, among others, do not constitute transacting business within the meaning of subsection (a) of this section:  (1) Maintaining, defending or settling any proceeding:  (2) holding meetings of the board of corporate affairs;  (3) maintaining bank accounts;  (4) maintaining offices or securities or maintaining trustees or depositaries with respect to those securities;  (5) selling through independent contractors;  (6) soliciting or obtaining orders, whether by mail or though employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts;  (7) personal property;  (8) securing or collecting debts or enforcing mortgages and security interests in property securing  the debts;  (9) owning, without more, real or personal property;  (10) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature;  (11) transacting business in interstate commerce.

> (c) the lists of activities in subsection (b) of this section are not  exhaustive.

Conn. Gen. Stat. § 33-920(b), (c).

Conn. 2002), the court determined that a defendant who operated a Massachusetts based computer system and provided telephonic transcription services to Connecticut business did not transact business since the evidence did not indicate how often or to how many Connecticut businesses this system provided services.  In Electric Regulator Corp v. Sterling Extruder Corp, 280 F. Supp. 550, 554-555 (D. Conn. 1968), the court determined that purchase orders placed in Connecticut for products which are shipped elsewhere is "interstate commerce" and not "transacting business" under section 33-929(e).

In the instant case, UCAP is not transacting business within the meaning of section 33-920 and is not subject to personal jurisdiction under Connecticut's long-arm statute, section 33-929(e).  Although the plaintiff's affidavits suggest that UCAP's contacts with Connecticut consist of purchasing Union Carbide/ Dow products through a Connecticut-based centralized computer system, such activity does not constitute transacting business.  Section 33-920(b) explicitly provides that "interstate commerce" does not constitute transacting business.  Conn. Gen. Stat. § 33-920(b)(11).  Therefore, placing orders in Connecticut for shipment to the Singapore-based UCAP cannot constitute transacting business.  Moreover, there is no evidence as to the frequency of these purchases.  Further, the strategy meetings and training sessions UCAP attended in Connecticut do not constitute transacting business.  The statute excludes "holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs" from the definition of transacting business.  Conn. Gen. Stat. § 33-920(b)(2).  Since UCAP does not transact business in Connecticut within the meaning of § 33-929(e), the state's long-arm statute does not authorize personal jurisdiction over UCAP.

## B. Connecticut's Long-Arm Statute and UCCS

As stated above, placing purchasing orders through the centralized computer system in Connecticut is insufficient. Thus, UCCS does not transact business in Connecticut and is not subject to personal jurisdiction under Connecticut's long-arm statute.

## C. Connecticut's Long-Arm Statute and Dow Singapore

The plaintiffs do not offer any proof that Dow Singapore transacted any business, or had any contacts with Connecticut. Therefore, Connecticut's long-arm statute does not authorize personal jurisdiction over Dow Singapore.

## CONCLUSION

The Court concludes that it has personal jurisdiction over UCAP. Specifically, federal jurisdiction is authorized under Section 12 of the Clayton Act with supplemental jurisdiction authorized with respect to the state law claims under 28 U.S.C. § 1367. The Court does not have personal jurisdiction over UCCS or Dow Singapore. Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction is GRANTED as to UCCS (document # 100) and Dow Singapore (document # 96), and DENIED as to UCAP (document # 101).

It is so ordered this 17th day of November, 2003, at Hartford, Connecticut.



Alfred V. Covello
United States District Judge

12