**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

F¡LED

MM GLOBAL SERVICES INC., MM GLOBAL :    2003 NOV 17 ᑭ 12: 18
SERVICES PTE. LTD., and MEGAVISA :
SOLUTIONS (S) PTE. LTD., :    US DISTRICT COURT
:          HARTFORD CT
              Plaintiffs, :    Civil No. 302 CV 1107 (AVC)
     -v- :
:
THE DOW CHEMICAL COMPANY, UNION :
CARBIDE CORPORATION, UNION CARBIDE :
ASIA PACIFIC, INC., UNION CARBIDE :
CUSTOMER SERVICES PTE. LTD., and DOW :
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., :
:    November 17, 2003
            Defendants. :

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF**
**DEFENDANTS UNION CARBIDE ASIA PACIFIC, INC., UNION**
**CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL**
**PACIFIC (SINGAPORE) PTE. LTD. FOR A PROTECTIVE ORDER**
<u>**TO STAY DISCOVERY AS AGAINST THEM**</u>

THELEN REID & PRIEST LLP
     Richard S. Taffet (ct 10201)
     875 Third Avenue
     New York, New York 10022-6225
     (212) 603-2000

WIGGIN & DANA LLP
     Robert M. Langer (ct 06305)
     Suzanne E. Wachsstock (ct 17627)
     One CityPlace
     185 Asylum Street
     Hartford, Connecticut 06103-3402
     (860) 297-3724

     Attorneys for Plaintiffs MM Global Services
     Inc., MM Global Services Pte. Ltd., and
     Megavisa Solutions (S) Pte. Ltd.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 2

ARGUMENT ............................................................................................................ 5

I.    THE AFFILIATE DEFENDANTS HAVE NOT DEMONSTRATED SUFFICIENT
      GROUNDS TO STAY DISCOVERY.................................................................. 5

      A.    A Stay Of Merits Discovery Is Not Warranted Because The Affiliate
            Defendants' Pending Personal Jurisdiction Motions Are Not Dispositive
            Of This Litigation ................................................................................... 7

      B.    The Discovery Sought Is Not Unduly Broad or Burdensome ................. 8

      C.    A Stay Of Merits Discovery As To The Affiliate Defendants Will
            Substantially Prejudice Plaintiffs ......................................................... 11

      D.    There Is No Compelling Legal Basis For The Affiliate Defendants'
            Motions To Dismiss For Lack Of Personal Jurisdiction ....................... 12

            1.    Section 12 of the Clayton Act establishes nationwide personal
                  jurisdiction over the Affiliate Defendants.................................. 13

            2.    Venue in Connecticut is proper pursuant to 28 U.S.C. § 1391
                  and § 12 of the Clayton Act ....................................................... 15

            3.    Jurisdiction over the Affiliate Defendants in the United States
                  comports with Constitutional due process principals ................ 16

            4.    The Court has supplemental jurisdiction over Plaintiffs' tort
                  and contract claims .................................................................... 17

            5.    The Connecticut long-arm statute also confers personal
                  jurisdiction over the Affiliate Defendants.................................. 18

CONCLUSION....................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

Assoc. Fe Y Allegria v. Republic of Ecuador, et al.,
No. 98 Civ 8650, 98 Civ 8693, 1999 WL 147716 (S.D.N.Y. Mar. 16, 1999)................................6

Ball v. Metallergie Hoboken-Overpelt, S.A., 902 F.2d 194 (2d Cir. 1990) ...................................13

Bates v. C&S Adjusters, Inc., 980 F. 2d 865 (2d Cir. 1992) ..........................................................15

Blankenship v. Hearst Corp., 519 F.2d 418 (9th Cir. 1975)............................................................6

Bd. Of County C'mmrs of Custer v. Wilshire Oil Co. of Texas,
523 F.2d 125 (10th Cir. 1975) .......................................................................................................14

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)................................................................17

Coca-Cola Bottling Co. of Lehigh Valley v. Grol,
No. 92-7061, 1995 WL 421900 (E.D. Pa. Mar. 8, 1993) ..................................................5, 6, 7, 12

Daniel v. Am. Bd. Of Emergency Med., 988 F. Supp. 127 (W.D.N.Y. 1997)..............................14

Dorfman v. Marriott Int'l Hotels, Inc.,
No. 99 Civ. 10496, 2002 WL 14363 (S.D.N.Y. Jan. 3, 2002).......................................................19

ESAB Group, Inc. v. Centricut Inc., 126 F.3d 617 (4th Cir. 1997)...............................................18

Gen. Elec. Co. v. Bucyrus-Erie, 550 F. Supp. 1037 (S.D.N.Y. 1982)..........................................14

Georgiadis v. First Boston Corp., 167 F.R.D. 24 (S.D.N.Y. 1996)................................................7

Go-Video, Inc. v. Akai Elec. Co., 885 F.2d 1406 (9th Cir. 1989)................................................14

Grappone, Inc. v. Subaru Of Am., Inc., 403 F. Supp. 123 (D.N.H. 1975) ...................................14

Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984) ...........................................17

Howard v. Galesi, 107 F.R.D. 348 (S.D.N.Y. 1985) .................................................................5, 6

In re Auto. Refinishing Paint Antitrust Litig.,
Civ. No. 1426, 2002 WL 31261330 (E.D. Pa. July 31, 2002).......................................................14

In re Chase Manhattan Corp. Secs. Litig.,
No. 90 Civ. 6092, 1991 WL 79432 (S.D.N.Y. May 7, 1991)..........................................................6

In re WRT Energy Sec. Litig.,
No. 96 Civ. 3610, 96 Civ. 3611, 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996)...................................5

Intel Corp. v. VIA Tech., Inc.,
No. C 99-03062, 2001 WL 777085 (N.D. Cal. Mar. 20, 2001).......................................................6

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1940).........................................................................17

Keystone Coke Co. v. Pasquale,
No. Civ.A. 97-6074, 1999 WL 46622 (E.D. Pa. Jan. 7, 1999).................................................5, 7, 12

Kingsepp v. Wesleyan Univ., 763 F. Supp. 22 (S.D.N.Y. 1991) ........................................................14

Kron Med. Corp. v. Groth, 119 F.R.D. 636 (M.D.N.C. 1988) ...........................................................6

Moran v. Flaherty, No. 92 Civ. 3200, 1992 WL 276913 (S.D.N.Y. Sept. 25, 1992) ........................5

Moss v. Hollis, No. B-90-177, 1990 WL 138531 (D. Conn. June 29, 1990) ....................................6

Paper Sys., Inc. v. Mitsubishi Corp., 967 F. Supp. 364 (E.D. Wis. 1997).......................................14

PDK Labs., Inc. v. Friedlander, 103 F.3d 1105 (2d Cir. 1997) ........................................................13

Sacody Techs., Inc. v. Avant, Inc., 862 F. Supp. 1152 (S.D.N.Y. 1994) .........................................15

Sherman Assoc. v. Kals, 899 F. Supp. 868 (D. Conn. 1995)............................................................13

Simpson v. Specialty Retail Concepts, Inc., 121 F.R.D. 261 (M.D.N.C. 1988)............................5, 7

Tower Air, Inc. v. Fed. Express Corp., 956 F. Supp. 270 (E.D.N.Y. 1996)......................................17

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135 (2d Cir. 2001)...........15

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751, F.2d 117 (2d Cir. 1984) ......19

**STATUTES**

Conn. Gen Stat. § 33-920.................................................................................................................16

Conn. Gen Stat. § 33-929 (e) .....................................................................................................16, 18

15 U.S.C. § 22 ....................................................................................................................... *passim*

28 U.S.C. § 1367.........................................................................................................................2, 17

28 U.S.C. § 1391..............................................................................................................................15

## OTHER

Fed. R. Civ. P. 26(c) ............................................................................................5, 6

Fed. R. Civ. P. 37..................................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion of Defendants Union Carbide Asia Pacific, Inc. ("UCAP"), Union Carbide Customer Services Pte. Ltd. ("UCCS") and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") (together, the "Affiliate Defendants") for a protective order to stay discovery as against them pending a decision on their personal jurisdiction motions.

The Affiliate Defendants have not and cannot meet their burden of demonstrating that a stay of discovery is warranted or appropriate.  First, the Affiliate Defendants' pending personal jurisdiction motions would not dispose of this action in its entirety.  This alone is sufficient grounds to deny the instant motion.

Moreover, a stay of merits discovery would cause substantial prejudice to Plaintiffs because it would undoubtedly delay the entirety of this action and jeopardize Plaintiffs' ability to seek relevant documents and deposition testimony from witnesses.  In addition, requiring the Affiliate Defendants to comply with their discovery obligations would not prejudice them or subject them to undue burden.  The discovery sought is properly focused on the claims in this case, and the Affiliate Defendants have already provided documents and information, even before they were named parties, in connection with the limited discovery that has proceeded on jurisdictional and venue issues.  Further, because merits discovery would proceed as respects Defendants Dow and UCC, a stay of discovery as to the Affiliate Defendants would create needless case management problems and increased litigation costs for the parties.

Lastly, the pending motions to dismiss have not raised a substantial question as to whether this Court has personal jurisdiction over the Affiliate Defendants. As fully explained in Plaintiffs' opposition to such motions and summarized below, the Affiliate Defendants' argument continues to ignore that § 12 of the Clayton Act confers personal jurisdiction over them in connection with Plaintiffs' federal antitrust claim, and that personal jurisdiction is likewise proper as to Plaintiffs' breach of contract and negligent misrepresentation claims under the doctrine of supplemental jurisdiction. See 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

The facts material to the instant motions are summarized as follows:

### The First Amended Complaint

The First Amended Complaint names the Affiliate Defendants, each of which is a wholly-owned subsidiary of UCC or Dow, as parties to this case and sets forth their roles in carrying out and furthering the unlawful conduct alleged against the original Defendants, Dow and UCC. Thus, the First Amended Complaint alleges that each of the Affiliate Defendants was dominated and controlled by either UCC or Dow and used to effectuate the relationship with Plaintiffs that gives rise to the alleged unlawful conduct.[1] UCAP, for example, was used by UCC to establish the contractual relationship with Plaintiffs,[2] and UCCS was used to further that relationship.[3] Likewise, Dow Singapore, in addition to being used to effectuate sales of products

---

[1] See, e.g., First Amended Complaint ("First Am. Compl."), ¶¶ 10, 11, 13.

[2] See First Am. Compl., ¶¶ 11, 21, 22.

[3] See First Am. Compl., ¶ 11.

from Dow and UCC in the United States, including in Connecticut, is alleged to have been used by Dow to control and exploit the relationship between Plaintiffs and UCC.[4]

Accordingly, the First Amended Complaint alleges that each of the Affiliate Defendants participated in and furthered, at the direction of UCC and Dow, the per se unlawful resale price maintenance conspiracy at issue.[5]  In addition, the Affiliate Defendants are alleged to have effectuated and participated in the breaches of contract and tortious conduct alleged in the First Amended Complaint, also at UCC and Dow's direction.[6]

**The Limited Record Establishes Personal Jurisdiction**

As explained more fully in Plaintiffs' opposition to the Affiliate Defendants' personal jurisdiction motions,[7] the limited factual record developed to date establishes that the Affiliate Defendants have continuously and systematically transacted business in the United States and in Connecticut specifically.

First, the Affiliate Defendants routinely placed Plaintiffs' Product orders with Defendants UCC and Dow through a centralized computer system accessed in Connecticut for approval, allocation and sale to the Plaintiffs in the United States.  In fact, the Affiliate Defendants have acknowledged that they continuously and systematically entered into contractual relationships in Connecticut with UCC and Dow for the purchase of Products for resale to Plaintiffs.[8]

Second, the Affiliate Defendants routinely took direction from UCC and Dow in Connecticut regarding Defendants' global sales strategy and regarding Plaintiffs' product

---

[4] See First Am. Compl., ¶¶ 13, 26.

[5] See First Am. Compl., ¶¶ 27, 29.

[6] See First Am. Compl., ¶¶ 33, et seq.

[7] See 7/3/03 Mem. of Law in Opp. to Defs. Mots. to Dismiss Pltffs' First Am. Compl. for Lack of Pers. Juris. ("Pltffs. Mem. of Law in Opp."), at 2-11.

[8] See Pltffs. Mem. of Law in Opp., at 4-6.

pricing, allocation and delivery. In connection with these activities, employees of the Affiliate Defendants regularly traveled to the United States, including Connecticut, and even held themselves out as being present in Connecticut by maintaining voicemail at UCC's offices in Connecticut.[9] Indeed, representatives of the Affiliate Defendants regularly participated in sales and strategy meetings in Connecticut, including in connection with the specific sale of products by UCC and Dow to Plaintiffs as well as credit issues with Plaintiffs. Such meetings addressed pricing, allocation and overall strategies that were established by UCC and Dow and then implemented by the Affiliate Defendants.[10]

Lastly, the presence of the Affiliate Defendants in Connecticut was in furtherance of a "top down" management structure whereby UCC and Dow directed and controlled all aspects of Affiliate Defendants' marketing and operational activities in connection with Plaintiffs.[11] Specifically, UCC and Dow required the Affiliate Defendants to submit regular reports concerning Plaintiffs' actual sales progress. These reports were sent to and reviewed by individuals located in Connecticut, and further demonstrate UCC and Dow's control over the Affiliate Defendants.[12] In addition, the Affiliate Defendants also communicated with UCC and Dow on a day-to-day basis in Connecticut regarding directions for pricing, product availability and allocation, and acted as conduits of information from UCC and Dow to Plaintiffs on such matters.[13]

Consistent with Defendants' "top down" integrated structure, documents and information in the possession and from the files of the Affiliate Defendants have already been produced in

_____

[9] See Pltffs. Mem. of Law in Opp., at 6-11.

[10] See Pltffs. Mem. of Law in Opp., at 6-7.

[11] See Pltffs. Mem. of Law in Opp., at 7-8.

[12] See Pltffs. Mem. of Law in Opp., at 8.

[13] See Pltffs. Mem. of Law in Opp., at 8-10.

connection with the discovery taken to date relating to venue and jurisdictional issues. Such

discovery involved the production of more than 30 boxes of documents. The Affiliate

Defendants acknowledge partaking in such discovery,[14] even though it was in response to

requests made only to UCC and Dow before the Affiliate Defendants were named parties.

## ARGUMENT

### I.

### THE AFFILIATE DEFENDANTS HAVE NOT DEMONSTRATED SUFFICIENT GROUNDS TO STAY DISCOVERY

Federal Rule of Civil Procedure 26(c) provides that a court may stay or otherwise limit

discovery "for good cause shown" to protect a party from, inter alia, oppression or undue burden

or expense. See In re WRT Energy Sec. Litig., No. 96 Civ. 3610, 96 Civ. 3611, 1996 WL

580930, at *1 (S.D.N.Y. Oct. 9, 1996); Howard v. Galesi, 107 F.R.D. 348, 350 (S.D.N.Y. 1985).

However, "[r]equests to stay discovery are rarely appropriate where resolution of the [pending]

motion to dismiss will not dispose of the entire case." Coca-Cola Bottling Co. of Lehigh Valley

v. Grol, No. 92-7061, 1995 WL 421900, at *2 (E.D. Pa. Mar. 8, 1993). See also Keystone Coke

Co. v. Pasquale, No. Civ.A. 97-6074, 1999 WL 46622, at *1 (E.D. Pa. Jan. 7, 1999) (stating that

"a stay is not, however, automatically granted whenever a motion to dismiss is pending and is

rarely appropriate when the pending motion will not dispose of the entire case"); Simpson v.

Specialty Retail Concepts, Inc., 121 F.R.D. 261, 263 (M.D.N.C. 1988) (same).

Further, the burden of establishing "good cause" is on the movant. Howard, 107 F.R.D.

at 350. Thus, stays of discovery are not automatic. Moran v. Flaherty, No. 92 Civ. 3200, 1992

---

[14] See Mem. of Law of Defs. for Protective Order to Stay Discover as Against Them Pending Resolution of Their Pers. Juris. Mots. ("Affl. Defs. Mem. of Law"), at 14-15.

WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992); In re Chase Manhattan Corp. Sec. Litig., No. 90

Civ. 6092, 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991).  Rather, under the liberal discovery

principles of the Federal Rules a defendant carries a heavy burden of showing why discovery

should be denied.  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).  See also

Moss v. Hollis, No. B-90-177, 1990 WL 138531, *1 (D. Conn. June 29, 1990) (holding that the

moving party must make a "strong showing" that any pending motions to dismiss will be

successful before stay of discovery will be granted).

In determining whether a movant has met its burden under Rule 26(c), courts consider the

breadth and burden of the discovery sought, the prejudice to plaintiff from a stay, and the

strength of any dispositive motion.  Howard, 107 F.R.D. at 350 (motion for stay of discovery

denied upon analysis of defendant's burden in responding to the document requests and the

likelihood of success on its motion to dismiss); see also Assoc. Fe Y Allegria v. Republic of

Ecuador, No. 98 Civ 8650, 98 Civ 8693, 1999 WL 147716, *1 (S.D.N.Y. Mar. 16, 1999) (motion

for protective order denied on finding that stay of discovery would prejudice to the plaintiffs);

Kron Med. Corp. v. Groth, 119 F.R.D. 636, 638 (M.D.N.C. 1988) ("[t]he moving party must

come forward with a specific factual showing that the interests of justice and considerations of

prejudice and undue burden to the parties require a protective order").

In addition, "[m]otions to stay discovery are not favored because when discovery is

delayed or prolonged it can create case management problems which impede the court's

responsibility to expedite discovery and cause unnecessary litigation expenses and problems."

Coca-Cola Bottling Co., 1995 WL 421900, at *2.  See also Intel Corp. v. VIA Tech., Inc., No. C

99-03062, 2001 WL 777085, at *7 (N.D. Cal. Mar. 20, 2001) ("[t]he further passage of time may

prejudice the ability of counsel to pin down the recollections of party witnesses"); Moss, 1990

6

WL 138531, at *1 n.2 (noting that the stay of discovery sought would result in significant delays in the court's docket); Georgiadis v. First Boston Corp., 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("[t]he passage of time always threatens difficulty as memories fade").

Here, the Affiliate Defendants have not satisfied their burden of showing "good cause" for staying discovery.

## A.    A Stay Of Merits Discovery Is Not Warranted Because The Affiliate Defendants' Pending Personal Jurisdiction Motions Are Not Dispositive Of This Litigation

As stated above, motions to stay discovery should not be granted where, as here, the pending motion to dismiss, if granted, will not dispose of the entire action. See Coca-Cola Bottling Co., 1995 WL 421900, at *2; Keystone Coke, 1999 WL 46622, at *1; Simpson, 121 F.R.D. at 263. The district court in Coca-Cola Bottling, for example, denied a motion to stay discovery as to just one defendant, reasoning "that the other defendants do not seek a stay of discovery nor have they made dispositive motions. Thus, even if the Court granted [the moving defendant's] motion, the action would continue." 1995 WL 421900, at *3. The district court in Keystone Coke followed suit where resolution of the pending motion to dismiss would not dispose of the entire case, reasoning as follows: "[e]ven if granted, the motion would only stay or dismiss the action with respect to [the moving defendant]. There are multiple defendants and the action would proceed with respect to the other parties. Since the other parties are proceeding with discovery, allowing [the moving defendant] alone to delay compliance with discovery could unfairly complicate and prolong litigation of this action." 1999 WL 46622, at *1.

So, too, here. Even if the Affiliate Defendants' personal jurisdiction motions were granted, this action, including discovery, would still continue as to Defendants Dow and UCC. Moreover, discovery of Dow and UCC would, consistent with their responses to Plaintiffs'

7

jurisdictional and venue discovery, also involve the production of documents and information

from the Affiliate Defendants.  For these reasons alone, the instant motion should be denied.

**B.    The Discovery Sought Is Not Unduly Broad Or Burdensome**

The Affiliate Defendants argue that Plaintiffs' discovery requests are unduly burdensome

in light of the Court's dismissal of certain of Plaintiffs' claims.[15]  This is not correct, and in all

events, if Defendants have objections to specific document requests or interrogatories, the proper

course would be to assert those objections and, consistent with Fed. R. Civ. P. 37, seek to resolve

them with Plaintiffs.  A stay of all discovery is not an appropriate means for addressing such

issues.

Affiliate Defendants' argument is also misplaced, because while the Court's September

12, 2003 and September 16, 2003 Rulings did dismiss nine of the twelve claims alleged in the

First Amended Complaint,[16] the factual underpinnings of Plaintiffs' remaining federal antitrust,

breach of contract, and negligent misrepresentation claims are no more narrow than if all of

Plaintiffs' claims remained.  Moreover, Plaintiffs' discovery requests are tailored specifically to

elicit facts relating to the remaining claims.

More specifically, Affiliate Defendants argue that Plaintiffs' discovery on their antitrust

claim is too broad because it "seek[s] discovery concerning Defendants' sales and pricing of the

Products <u>worldwide</u>, and without limitation to the Indian market."[17]  That Affiliate Defendants

actually make this argument is remarkable given Defendants' unceasing efforts for more than a

year to dismiss Plaintiffs' federal antitrust claim for lack of a "direct, substantial and reasonably

foreseeable effect" on United States commerce.  Now they would limit discovery to pricing

---

[15] <u>See</u> Affl. Defs. Mem. of Law, at 12-14.

[16] <u>See</u> 9/12/03 and 9/16/03 Rulings On The Defendants' Motions To Dismiss.

[17] <u>See</u> Affl. Defs. Of Law, at 13 (emphasis in original).

conduct and its effect outside the United States. Clearly, this is an argument Affiliate

Defendants do not really subscribe to.

In addition, Plaintiffs have already presented evidence that has been considered by the

Court relating to how resale prices in India were determined based upon their effect on pricing in

other markets, ***including in the United States.*** If anything, therefore, all of the Defendants are

the ones who have made it necessary for Plaintiffs to pursue the discovery that is now being

sought in connection with the antitrust claims. Furthermore, the dismissal of Plaintiffs' claim

under the Connecticut Antitrust Act in no way lessens the discovery that Plaintiffs' require on

their federal antitrust claim.

As respects Plaintiffs' breach of contract claim, the Affiliate Defendants are simply

wrong that the Court's Rulings dismissed "a major portion of [Plaintiffs'] breach of contract

claim."[18] In fact, although the Court dismissed Plaintiffs' claim for breach of duty of good faith

and fair dealing because the law of Singapore does not recognize such a claim, Plaintiffs' breach

of contract claim remains wholly intact. The Court did hold that the parties' letter agreements do

not on their own constitute enforceable contracts,[19] but still concluded that "the terms of the

agreements were binding as to sales actually made."[20] The Court also agreed with Plaintiffs that

the First Amended Complaint "alleges with sufficient particularity a cause of action for breach of

contract in connection with specific product shipments that the defendants allegedly agreed to

make under the letter agreements but refused to fill."[21] Therefore, discovery relating to the letter

agreements and the specific Product orders for which Plaintiffs are claiming damages are

---

[18] See Affl. Defs. Mem. of Law, at 12.

[19] See 9/12/03 Ruling, at 21.

[20] See 9/12/03 Ruling, at 24.

[21] See 9/12/03 Ruling, at 25.

relevant to Plaintiffs' breach of contract claim, and Plaintiffs' factual and evidentiary burden to prove such claim has not been narrowed in any way by the Court's Rulings. Defendants have also placed in issue who among them was the actual contracting party or parties, and discovery into the relationship among all of them will, therefore, be necessary as well.

Lastly, the dismissal of Plaintiffs' tort claims other than the claim for negligent misrepresentation does not narrow the scope of discovery that Plaintiffs require and should be entitled to obtain. The required inquiry still involves communications between the Defendants concerning the decision to terminate Plaintiffs and have Dow and its affiliates sell the relevant products directly in and into India, including when and how that decision was made; the accuracy of statements and representations made to Plaintiffs by Defendants and their representative; the nature and extent of information that Defendants failed to disclose to Plaintiffs concerning on Defendants' plans for India and Plaintiffs' continuing business prospects; and all communications and dealings by the Defendants and all of Plaintiffs' customers. In addition, Defendants themselves have placed in issue which of them undertook such conduct, and under whose direction, and Plaintiffs must and should be able to obtain discovery from each of them in this regard.

Nor can Affiliate Defendants plausibly argue that they will be prejudiced by having discovery proceed as to them even while their personal jurisdiction motions remain under consideration. Even before being joined as parties to this action, the Affiliate Defendants admittedly participated in the jurisdictional and venue discovery conducted of Dow and UCC.[22] The Affiliate Defendants acknowledge that "UCC and Dow searched archives and files likely to have responsive information in the United States, Singapore, India and Europe, irrespective of

---

[22] See Affl. Defs. Mem. of Law, at 14-15.

whether any such documents or information happened to belong to UCAP, UCCS, Dow

Singapore or Dow India, rather than to UCC or Dow itself."[23]

It follows, therefore, that Defendants Dow and UCC, in proceeding with their own merits

discovery, will again conduct, or have the Affiliate Defendants conduct, a broad search for

responsive documents, whether such documents be located in the United States, in foreign

countries, or in the possession or files of the Affiliate Defendants. Under these circumstances, it

can hardly be burdensome for the Affiliate Defendants to comply in full with Plaintiffs'

discovery requests at this time. Indeed, it would likely be more burdensome for the Affiliate

Defendants to conduct such discovery piecemeal – first through Defendants Dow and UCC, and

then later, in their own right.

**C.    A Stay Of Merits Discovery As To The Affiliate Defendants**
       **Will Substantially Prejudice Plaintiffs**

The arguments of Affiliate Defendants to the contrary notwithstanding, a stay of

discovery would unduly prejudice Plaintiffs. The fact that Plaintiffs have already received

discovery from the Affiliate Defendants is not a mitigating factor. Discovery thus far has been

limited to jurisdictional and venue issues, while the discovery now at issue goes to the merits of

Plaintiffs' claims.

As a result, if discovery of the Affiliate Defendants is stayed discovery, on the merits will

have to proceed on two separate tracks – one for Defendants Dow and UCC and another for the

Affiliate Defendants. This will result in duplication of effort, unnecessary additional costs, and

significant delay in getting this case ready for trial. This is especially so because of the overlap

of issues relating to all Defendants and the required critical inquiry into the relationship of each

Defendant to the others. Thus, if a two-track discovery schedule existed, Plaintiffs would be

---

[23] See Affl. Defs. Mem. of Law, at 15.

prejudiced in their ability to depose Dow and UCC witnesses because substantial relevant documentary evidence from the Affiliate Defendants would not be available. Alternatively, these depositions would have to be taken again once full discovery responses were made by all of the Defendants.

A stay of discovery as to the Affiliate Defendants in these circumstances cannot be supported. See Keystone Coke Co. v. Pasquale, No. Civ.A. 97-6074, 1999 WL 46622, at *1 (E.D. Pa. Jan. 7, 1999) (denying motion to stay discovery as to one defendant in a multi-defendant action because allowing one defendant "alone to delay compliance with discovery could unfairly complicate and prolong litigation of this action"); Coca-Cola Bottling Co. of the Lehigh Valley v. Grol, 1995 WL 421900, at *2 (E.D. Pa. 1993) ("[m]otions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems").

**D.     There Is No Compelling Legal Basis For The Affiliate Defendants' Motions To Dismiss For Lack Of Personal Jurisdiction**

The Affiliate Defendants argue that their motion for a protective order should be granted because they have raised a serious question as to whether this Court has personal jurisdiction over them.[24] This argument, however, is premised entirely on the purported lack of minimum contacts each of them has with Connecticut. This is not the appropriate inquiry.[25] Rather, for personal jurisdiction under § 12 of the Clayton Act, which applies here, the issue is whether each of the Affiliate Defendants has sufficient minimum contacts with the United States as a whole,

---

[24] See Affl. Defs. Mem. of Law, at 1, 6-11.

[25] See Pltffs. Mem. of Law in Opp., at 12-21.

12

and not merely with Connecticut.[26]  Even on the current record, which the Affiliate Defendants

completely ignore, such contacts are conclusively established.

It is also clear that Plaintiffs' burden at this stage of the case is only to make a <u>prima facie</u>

showing that personal jurisdiction is proper.  <u>Ball v. Metallergie Hoboken-Overpelt, S.A.</u>, 902

F.2d 194, 197 (2d Cir. 1990); <u>Sherman Assoc. v. Kals</u>, 899 F. Supp. 868, 870 (D. Conn. 1995).[27]

Here, the Plaintiffs' First Amended Complaint and the evidence submitted in support of

Plaintiffs' opposition to the Affiliate Defendants' personal jurisdiction motions make, at a

minimum, a <u>prima facie</u> showing of personal jurisdiction over the Affiliate Defendants.[28]

**1.    Section 12 of the Clayton Act establishes nationwide
personal jurisdiction over the Affiliate Defendants**

The Affiliate Defendants do not even acknowledge, let alone attempt to refute, the

significant body of case law that indisputably confers personal jurisdiction over them under § 12

of the Clayton Act.  <u>See</u> 15 U.S.C. § 22.[29]  As explained in detail in Plaintiffs' memorandum of

law in opposition to the Affiliate Defendants' personal jurisdiction motions,[30] § 12 of the

Clayton Act "has been interpreted as authorizing the federal courts to exercise <u>nationwide</u>

---

[26] Moreover, the standard to comport with Constitutional due process requirements pursuant to § 12 of the Clayton Act is less rigorous than Connecticut's more restrictive long-arm statute.

[27] Moreover, in connection with a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) at the pleading stage, a court must construe all affidavits and other factual submissions in Plaintiffs' favor, and resolve all disputes in Plaintiffs' favor.  <u>See</u> PDK Labs., Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

[28] <u>See</u> Pltffs. Mem. of Law in Opp., at 11-12.

[29] Section 12 of the Clayton Act states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district court in which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

[30] <u>See</u> Pltffs. Mem. of Law in Opp., at 12-21.

13

personal jurisdiction over corporate antitrust defendants." <u>Kingsepp v. Wesleyan Univ.</u>, 763 F. Supp. 22, 24 (S.D.N.Y. 1991) (emphasis added).[31]

Thus, with respect to Plaintiffs' federal antitrust claim, all United States district courts where venue is proper have personal jurisdiction over any domestic or foreign defendant to the limits of the due process clause of the Fifth Amendment of the Constitution, which requires sufficient contacts with the <u>United States as a whole</u>, as opposed to any individual state. <u>See</u> <u>Paper Sys., Inc. v. Mitsubishi Corp.</u>, 967 F. Supp. 364, 369 (E.D. Wis. 1997) ("[w]hen Congress provides for nationwide (or world-wide) service of process, it invokes the power of the United States. The relevant contacts are those with the United States, not the state in which the district court sits") (internal quotations and citations omitted).[32]  Indeed, courts have consistently adopted an expansive interpretation of personal jurisdiction under § 12, holding that personal jurisdiction is proper so long as any venue statute, whether special or general, is satisfied. <u>See</u> <u>Gen. Elec. Co. v. Bucyrus-Erie</u>, 550 F. Supp. 1037, 1040, 1042-43 (S.D.N.Y. 1982); <u>Daniel v. Am. Bd. Of Emergency Med.</u>, 988 F. Supp. 127, 143 (W.D.N.Y. 1997); and <u>Kingsepp</u>, 763 F. Supp. at 24.[33]

---

[31] <u>See also</u> <u>Daniel v. Am. Bd. Of Emergency Med.</u>, 988 F. Supp. 127, 143 (W.D.N.Y. 1997) ("[w]here Congress has authorized nationwide federal jurisdiction, as under § 12 of the Clayton Act, the district court's jurisdiction is co-extensive with the boundaries of the United States") (internal quotations and citations omitted); <u>Paper Sys., Inc.</u>, 967 F. Supp. at 368 ("Congress has extended the federal court's powers to their constitutional limit to enforce the antitrust laws").

[32] As further explained by the district court in <u>Paper Sys., Inc.</u>, the ability to reach foreign violators of our antitrust laws, such as UCCS and Dow Singapore, is especially important because such cases "may pose problems for any one district court to obtain jurisdiction over all the defendants if left to state long arm statutes." 967 F. Supp. at 368. The same principles apply to domestic corporations, such as UCAP. <u>See</u> <u>Daniel</u>, 988 F. Supp. at 198 ("a corporation which resides within the boundaries of the United States is subject to personal jurisdiction under nationwide service of process without regard to state jurisdiction statutes," and "the corporation need not have minimum contacts with the state in which the district court that would exercise jurisdiction sits") (internal quotations and citations omitted).

[33] Other circuit courts hold similarly. <u>See</u> <u>Go-Video, Inc. v. Akai Elec. Co.</u>, 885 F.2d 1406, 1411 (9th Cir. 1989); <u>Bd. Of County C'mmrs of Custer v. Wilshire Oil Co. of Texas</u>, 523 F.2d 125, 131 (10th Cir. 1975); <u>In re Auto. Refinishing Paint Antitrust Litig.</u>, Civ. No. 1426, 2002 WL 31261330, at *7 (E.D. Pa. July 31, 2002); <u>Paper Sys., Inc.</u>, <u>supra</u>, 967 F. Supp. 364; <u>Grappone, Inc. v. Subaru Of Am., Inc.</u>, 403 F. Supp. 123, 133 (D.N.H. 1975).

Accordingly, the Affiliate Defendants' argument, which is entirely premised on their insufficient contacts with Connecticut,[34] is completely misguided and conceals the real inquiry the Court must address – whether the Affiliate Defendants have sufficient minimum contacts with the United States as a whole to confer jurisdiction. Plaintiffs have easily satisfied their burden in demonstrating that the Affiliate Defendants have the requisite minimum contacts with the United States to satisfy the Clayton Act's jurisdictional provision.[35]

### 2. Venue in Connecticut is proper pursuant to 28 U.S.C. § 1391 and § 12 of the Clayton Act

Plaintiffs also show in their opposition to the Affiliate Defendants' personal jurisdiction motions that venue is proper in Connecticut under the general federal venue statute set forth in 28 U.S.C. § 1391, as well as the special venue provision set forth in § 12 of the Clayton Act.

With respect to Affiliate Defendants UCCS and Dow Singapore, venue in this Court is proper under § 1391(d), which simply provides that "[a]n alien may be sued in any district." 28 U.S.C. § 1391(d). Venue in this Court is also proper under § 1391(b) as to UCAP, a domestic corporation, because, "a substantial part of the events or omissions giving rise to the claim[s] alleged occurred" in this jurisdiction. 28 U.S.C. § 1391(b) (2002).[36]

Moreover, venue in this Court is proper for all Affiliate Defendants under the special venue provision of § 12 of the Clayton Act, which permits a suit to be brought in any judicial

---

[34] See Affl. Defs. Mem. of Law, at 1-2, 6-13.

[35] See 9/12/03 Ruling, at 19 (recognizing that performance of the relevant contracts occurred, in part, in the Gulf states region of the United States and that contract payments were made in the United States). See also Pltffs. Mem. of Law in Opp., at 3, 24.

[36] See Bates v. C&S Adjusters, Inc., 980 F.2d 865, 868 (2d Cir. 1992) (a single communication transmitted into the district in which the cause of action is filed, given a sufficient relationship between the communication and the cause of action, is sufficient to establish venue); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 153 (2d Cir. 2001) (venue proper over a foreign defendant, not physically present in a jurisdiction, which sends communications into that district as part of contract negotiations (interpreting identical language of §1391(f)); Sacody Techs., Inc. v. Avant, Inc., 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) (telephone, correspondence and fax communications concerning agreement in issue sufficient to establish venue where one party to communications was resident in the district) (interpreting identical language of §1391(a)(2)) See also First Am. Compl., ¶ 3.

district where a defendant is an inhabitant, where it is found, or where it transacts business.  15

U.S.C. § 22.  Although the Affiliate Defendants may not inhabit or be found in Connecticut,

there is no denying that they transact business here, as that phrase is used in the statute.  Indeed,

all of the Affiliate Defendants are involved in sufficient commercial dealings within Connecticut

to meet the "transacting business" requirement of § 12.  For example, they systematically and

continuously effectuated orders, entered into contracts, and participated in meetings, all within

Connecticut and all in connection with transactions involving Plaintiffs.  They also have held

themselves out as having a presence for transacting business in Connecticut.[37]

Under these circumstances, it is clear that venue is proper in this Court under either the

general federal venue statute or the Clayton Act's specific venue provision.  As such, Plaintiffs

may properly avail themselves of § 12 of the Clayton Act's nationwide service of process and

jurisdictional provisions, and personal jurisdiction is plainly proper in this Court.

### 3.    Jurisdiction over the Affiliate Defendants in the United States comports with Constitutional due process principles

Jurisdiction over the Affiliate Defendants also comports with Constitutional due process

principles under the Fifth Amendment, as § 12 of the Clayton Act mandates, and no attempt is

made on this motion to argue to the contrary.  Rather, the Affiliate Defendants once again

completely ignore the relevant case law and mistakenly focus solely on a purported lack of

contacts with Connecticut.[38]

Plaintiffs have shown that the Affiliate Defendants' contacts with the United States are

more than sufficient to establish "minimum contacts" for both specific and general jurisdiction

---

[37] See Pltffs' Mem. of Law in Opp., at 19-21.  Note also that the "transacting business" standard under § 12 of the Clayton Act is less arduous than the standard under Connecticut's long-arm statute, which requires both that (1) the foreign corporation transacted business in Connecticut in violation of § 33-920; and (2) the cause of action arose our of the transaction of such business.  See Conn. Gen. Stat. §§ 33-920, 33-929(e); Pltffs. Mem. of Law in Opp., at 30-31.

16

purposes. Specific jurisdiction is appropriate here because Plaintiffs' claims "arise out of or

relate to" the Affiliate Defendants' contacts with the United States. See Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 474 (1985).[39]  General jurisdiction is also appropriate here because the

Affiliate Defendants' contacts with the United States have been "continuous and systematic."

See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984).[40]  Moreover, the

Affiliate Defendants have not and cannot meet their burden of showing that jurisdiction in this

Court would "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1940).[41]

### 4.    The Court has supplemental jurisdiction over Plaintiffs' tort and contract claims

Concerning Plaintiffs' contract and tort claims, the exercise of supplemental jurisdiction

is clearly proper. See 28 U.S.C. § 1367.  First, as demonstrated above, this Court has original

jurisdiction over Plaintiffs' federal antitrust claims against the Affiliate Defendants.  Second, all

of Plaintiffs' claims derive from a common nucleus of operative fact. See Tower Air, Inc. v.

Fed. Express Corp., 956 F. Supp. 270, 287 (E.D.N.Y. 1996) (exercising supplemental

jurisdiction over plaintiff's state law contract, tort and fiduciary duty claims because those claims

arose out of the same joint venture agreement that formed the basis of plaintiff's federal antitrust

claims).  Third, none of the exceptions in § 1367(c) apply:  Plaintiffs' contract and tort claims do

not raise novel or complex issues of law, do not predominate over the federal antitrust claims,

and do not raise any other exceptional circumstances or compelling reasons for declining

jurisdiction.  Finally, considerations of judicial economy, convenience and fairness to litigants

---

[38] See Affl. Defs' Mem. of Law, at 11-12.

[39] See Pltffs' Mem. of Law in Opp., at 21-24.

[40] See Pltffs' Mem. of Law in Opp., at 22-24.

[41] See Pltffs' Mem. of Law in Opp., at 24-26

support the exercise of supplemental personal jurisdiction here. See ESAB Group, Inc. v. Centricut Inc., 126 F.3d 617, 628 (4th Cir. 1997) ("[t]he defendant will have to adjudicate the facts of the federal claim, and it could impose only a minimal burden to require the defendant to provide a defense on the factually-related state claim").

### 5. The Connecticut long-arm statute also confers personal jurisdiction over the Affiliate Defendants

For all of the foregoing reasons, contrary to the Affiliate Defendants' erroneous assertions, the Court need not determine whether the Connecticut long-arm statute reaches the Affiliate Defendants. But, even as to this inquiry, Affiliate Defendants cannot meet their burden of showing that a substantial question exists as to whether personal jurisdiction over them is proper here.[42]

First, the Affiliate Defendants have continuously and systematically transacted business in Connecticut, and Plaintiffs' causes of action arise out of the transaction of such business. See Conn. Gen. Stat. § 33-929(e). Indeed, by their own admission, the Affiliate Defendants continuously and systematically placed orders with UCC in Connecticut, through UCC's computerized order processing system, and became parties to contracts based upon UCC's acceptance of such orders. The evidence submitted in connection with Plaintiffs' opposition to the personal jurisdiction motion also shows that representatives of the Affiliate Defendants engaged in business within Connecticut by regularly attending sales, marketing and training meetings within the state. The Affiliate Defendants also repeatedly took further direction from UCC as part of the "top down" structure to implement the sales and marketing strategies learned within Connecticut. It is precisely this conduct from which Plaintiffs' claims arise.[43] In sum, the

---

[42] See Pltffs. Mem. of Law in Opp., at 29-32.

[43] See Pltffs. Mem. of Law in Opp., at 32.

Affiliate Defendants' activities in Connecticut giving rise to Plaintiffs' claims fall well within the ambit of the long-arm statute, despite the Affiliate Defendants' attempts to argue otherwise.

Jurisdiction over the Affiliate Defendants' state law claims is also proper because the Affiliate Defendants are "mere departments" of UCC and Dow, and UCC and Dow are themselves subject to personal jurisdiction in this Court.[44] See Dorfman v. Marriott Int'l Hotels, Inc., No. 99 Civ. 10496, 2002 WL 14363, at *2 (S.D.N.Y. Jan. 3, 2002) (holding that where a parent corporation is present within a state, its foreign subsidiaries may be subject to jurisdiction in that state "if the subsidiary is a 'mere department' of the parent").[45]

---

[44] See Pltffs. Mem. of Law in Opp., at 32-35.

[45] The Second Circuit, in Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-22 (2d Cir. 1984), outlines four factors relevant for determining whether one entity is a "mere department" of another: (1) common ownership; (2) financial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes in the selection of the subsidiary's executive personnel and fails to observe corporate formality; and (4) the degree of the parent's control over the subsidiary's marketing and operational policies. The first factor must be met, and the latter three are balanced in the court's assessment of the facts. Id. at 120.

## CERTIFICATE OF SERVICE

This is to certify that on this 17th day of November, 2003, a copy of the foregoing has been hand-delivered to the following:

Craig A. Raabe, Esq.
Edward J. Heath, Esq.
Elizabeth A. Fowler, Esq.
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT  06103

and sent via FedEx to the following:

Mark P. Edwards
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

William L. Webber
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004

Steven B. Malech