**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD.,** | : | |
| **Plaintiffs,** | : | **Civil No. 3:02 CV 1107 (AVC)** |
| **v.** | : | |
| **THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,** | : | |
| **Defendants.** | : | **November 14, 2003** |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL OF THE COURT'S ORDERS DENYING THE MOTIONS TO DISMISS THE FEDERAL ANTITRUST CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**

CRAIG A. RAABE (ct 04116)
EDWARD J. HEATH (ct 20992)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

WILLIAM L. WEBBER (ct 18369)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 739-5798

MARK P. EDWARDS (ct 23890)
CHARLES J. REITMEYER
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5769

Attorneys for Defendants
The Dow Chemical Company,
Union Carbide Corporation,
Union Carbide Asia Pacific, Inc.,
Union Carbide Customer Services Pte. Ltd., and
Dow Chemical Pacific (Singapore) Pte. Ltd.

## TABLE OF CONTENTS

**Page**

**I. INTRODUCTION AND SUMMARY** ........................................................................ 1

**II. ARGUMENT** ........................................................................................................ 3

A. Subject Matter Jurisdiction Is A Controlling Question Of Law That Can Be Resolved Without Further Discovery. ............................................................ 3

B. Plaintiffs Have Failed to Counter the Case Law Demonstrating a Substantial Ground for Difference of Opinion ..................................................... 5

**III. CONCLUSION** ..................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984) ................................7, 8

*Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993) .............................................. 7-8

*Klinghoffer v. Achille Lauro*, 921 F.2d 21 (2d Cir. 1990),
*vacated on other grounds*, 937 F.2d 44 (1991) ......................................................................2

*Kruman v. Christie's International plc*, 284 F.3d 384 (2d Cir. 2001) .......................................2, 7

*Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920 (E.D.N.Y. 1985) ...................... 8-9

*McElderry v. Cathay Pacific Airways, Ltd.*, 678 F. Supp. 1071 (S.D.N.Y. 1988) ..................... 8-9

*In re Oxford Health Plans*, 182 F.R.D. 51 (S.D.N.Y. 1998) ........................................................2

*United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942
(7th Cir. 2003), *cert. denied*, 2003 WL 21938673 (Nov. 10, 2003) ..................................4

### FEDERAL STATUTES

15 U.S.C. § 6a ............................................................................................................ *passim*

28 U.S.C. § 1292(b) ..........................................................................................................2, 3, 6

## I. INTRODUCTION AND SUMMARY

Defendants, The Dow Chemical Company, Union Carbide Corporation, Union Carbide Asia Pacific, Inc., Union Carbide Customer Services Pte. Ltd., and Dow Chemical Pacific (Singapore) Pte. Ltd. (collectively, "Defendants"), submit this reply brief in support of their motion seeking certification for interlocutory appeal of the Court's orders of September 12 and 16, 2003, denying their motions to dismiss the federal antitrust claim of plaintiffs MM Global Services Inc., MM Global Services Pte. Ltd., and Mega Visa Solutions (S) Pte. Ltd. (collectively, "Plaintiffs").

Defendants are seeking an immediate appeal of a straightforward legal issue concerning the interpretation of subsection 1 of the Foreign Trade Antitrust Improvements Act ("FTAIA")[1/]: Does a federal court have subject matter jurisdiction over an antitrust claim that is premised *solely* on an alleged resale price-fixing conspiracy for goods sold only in India to Indian end-users, and that is not alleged to have had any actual, direct effect on prices in the United States?

In this inquiry, Plaintiffs' opposition brief does not seriously dispute, and thus effectively concedes, that:

1. The Court lacks diversity jurisdiction, and thus a successful interlocutory appeal would likely end the litigation in this Court. The proposed appeal therefore involves a "controlling question of law," and may "materially advance the

---

1/ Subsection 1 of the FTAIA provides that federal courts do not have subject matter jurisdiction over alleged anticompetitive conduct involving foreign commerce, unless that conduct has "a *direct, substantial, and reasonably foreseeable* effect" on (A) U.S. domestic commerce or U.S. import commerce with foreign nations, or (B) export commerce carried on by those operating in the United States. 15 U.S.C. § 6a(1) (emphasis added).

ultimate termination of the litigation."[2/]

2. The proposed appeal concerns this Court's jurisdiction over a complaint that alleges no *actual* and *direct* effect on U.S. prices, but rather an *intended* or *indirect* one flowing from the allegedly fixed prices in India. The appeal raises the question whether Plaintiffs can survive jurisdictional scrutiny by claiming that mere intended or indirect effects on domestic commerce somehow satisfy the requirements of subsection 1 of the FTAIA.

3. This Court is the first to conclude that allegations of an anticompetitive agreement confined to an overseas market confer subject matter jurisdiction as defined by the FTAIA. Plaintiffs do not cite a single case that has construed the Sherman Act to apply to an anticompetitive agreement encompassing prices charged in a non-U.S. market only.

4. The Court cited and relied upon language in *Kruman v. Christie's International plc*, 284 F.3d 384, 401 (2d Cir. 2001), discussing subsection 2 of the FTAIA (the challenged conduct's domestic effect must "give[] rise to a claim" under the Sherman Act) rather than the more stringent requirements of subsection 1 (the challenged conduct's domestic effect must be "direct, substantial, and reasonably foreseeable"). *See Kruman*, 284 F.3d at 399, *citing* 15 U.S.C. § 6(a)(2).[3/]

5. Conclusory allegations of an adverse effect on United States domestic commerce are insufficient to withstand a proper Rule 12(b)(1) motion. A court may accept as true only non-conclusory, material factual allegations for purposes of resolving a subject matter jurisdiction challenge.

The parties, therefore, share substantial common ground on the motion for an immediate appeal. On the remaining issues, Plaintiffs have not raised any arguments that would prevent this Court from certifying its ruling for a prompt consideration by the Second Circuit. Defendants respectfully request that it do so on this dispositive threshold issue.

---

2/ 28 U.S.C. § 1292(b); *Klinghoffer v. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), *vacated on other grounds*, 937 F.2d 44 (1991); *In re Oxford Health Plans*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998).

3/ In *Kruman*, unlike in this case, the requirements of subsection 1 of the FTAIA were not at issue because there was no dispute that the plaintiffs had alleged a "direct, substantial, and reasonably foreseeable effect" on United States domestic commerce. 284 F.3d at 399 n.5. In *Kruman*, the alleged price-fixing conspiracy embraced fees charged on auctions held overseas and in the United States.

## II. ARGUMENT

### A. Subject Matter Jurisdiction Is A Controlling Question Of Law That Can Be Resolved Without Further Discovery.

Plaintiffs argue repeatedly that Defendants satisfy none of the three criteria for an interlocutory appeal because the Court's inquiry into subject matter jurisdiction involves a "complex factual determination" that must await the completion of all merits and jurisdictional discovery. (Plfs' Opposition Brief at 9, 11, 12). Absent full-blown discovery to build a complete factual record, Plaintiffs contend, the Second Circuit could not possibly resolve the subject matter jurisdiction question now, and thus Plaintiffs do not satisfy any of the criteria of 28 U.S.C. § 1292(b) for an interlocutory appeal. (*Id.* at 1, 2, 9-13, 19-20).

That argument might have some resonance in the context of a denial of a summary judgment motion, where conflicting evidence and inferences demanded further elucidation. But here, where Plaintiff is already being given the benefit of the well-pleaded allegations in its complaint, Plaintiffs seem to be suggesting they are entitled to more – to the benefit of some unpleaded, and for that matter unidentified, set of facts that might someday support an exercise of subject-matter jurisdiction. Plaintiffs offer no legal support for that argument. And even if there were, Plaintiffs fail to identify a single factual issue that requires further discovery on this dispositive legal issue. In truth, no additional discovery is needed to determine whether the factual allegations in Plaintiffs' own complaint satisfy the FTAIA's requirement of a "direct, substantial, and reasonably foreseeable effect" on United States domestic commerce. No amount of discovery can alter the fact that Plaintiffs allege a conspiracy to fix prices in India alone.

Moreover, Plaintiffs' argument that subject matter jurisdiction challenges in this area of the law should not be resolved against Plaintiffs at the pleading stage – but instead must await

the end of discovery[4/] – stands the FTAIA on its head by vitiating the statute's aim of ensuring that foreign antitrust claims like this one are not heard in the federal courts in the first place. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 952 (7th Cir. 2003) ("In short, FTAIA limits the power of the United States courts (and private plaintiffs) from nosing about where they do not belong. And the power of the courts is precisely what subject matter jurisdiction is about."), *cert. denied*, 2003 WL 21938673 (Nov. 10, 2003). In *United Phosphorus,* the Seventh Circuit rejected an argument like the one that Plaintiffs make here. The court said that, although lack of subject matter jurisdiction can be considered at any point in the litigation, the FTAIA presents a threshold issue of subject matter jurisdiction that "should be resolved early" and on a Rule 12(b)(1) motion, rather than on a Rule 56 motion after the close of discovery. *Id.* at 952.

Not surprisingly, then, the leading treatises recognize that interlocutory appeals are appropriate for resolving questions of subject matter jurisdiction. *See* 16 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2d § 3931 at 453 (1996) ("Among the categories of rulings that may be obviously suited for interlocutory appeal within the general criteria of the statute are those rejecting--or, without final judgment, accepting--challenges to subject-matter jurisdiction"); 19 J. Moore, *et al*., MOORE'S FEDERAL PRACTICE § 203.31[2] (3d ed. 1999) ("Of course, if resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling. Controlling questions of law that fall within this category of dispositive issues include . . . questions as to subject matter jurisdiction").

Plaintiffs have pled their best case. If it states a cause of action and the court has subject

4/ Plfs' Opposition Brief at 21.

matter jurisdiction, they are entitled to prove their allegations. But they cannot avoid a lack of subject matter jurisdiction if their own allegations do not vest the court with that jurisdiction. The jurisdictional significance of the well-pleaded allegations is a controlling question of law, resolution of that issue in this instance could effectively dispose of the case altogether, and therefore appellate review now would "materially advance the ultimate termination of the litigation."

Since the Court issued its rulings denying the Defendants' Rule 12(b)(1) motions, Plaintiffs have served document requests and interrogatories seeking aimless, intrusive discovery from Defendants concerning *worldwide* pricing, sales, profit, strategic planning, and production information, without any apparent limitation as to time period or geography. Given the serious doubts about the Court's power even to hear Plaintiffs' antitrust claim, it makes little sense to follow Plaintiffs' proposed course by immersing the parties in burdensome and directionless discovery when there is a rifle-shot legal issue whose resolution on an immediate appeal could end the case altogether.

### B. Plaintiffs Have Failed to Counter the Case Law Demonstrating a Substantial Ground for Difference of Opinion

Defendants demonstrated in their opening brief that the Court applied a new test for satisfying the FTAIA that, by effectively eliminating the FTAIA's requirement of a "direct, substantial, and reasonably foreseeable effect" on United States domestic commerce, expands subject matter jurisdiction in Sherman Act cases involving foreign commerce. (Defs' Opening Brief at 1-2, 14-17). The Court wrote:

> To establish jurisdiction, a plaintiff need only demonstrate conduct directed "at both domestic and foreign markets [that] actually reduced the competitiveness of a domestic market . . . [or]

> [otherwise] mak[es] possible anticompetitive conduct that 'gives rise to a claim' under the Sherman Act. *Kruman*, 284 F.3d at 401.

Order of September 12, 2003 at 15.

In response to that motion, Plaintiffs argue that the Court's test is entirely proper under the FTAIA. But whether the test is proper is not the sole issue for resolution by this Court, for Defendants did *not* file a motion for reconsideration. Instead, on a motion for certification, the relevant question is whether there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Plaintiffs seem to suggest that because (as they understandably view the matter) the Court was correct, there is no "ground for difference of opinion." But that is not and cannot be the standard. The premise of an interlocutory appeal is that a district court may decide a controlling issue of law, and yet, while reasonably certain that it is correct, nevertheless recognize that the issue is sufficiently subject to different views that the appellate court may reach a different result. Plaintiffs' discussion of Second Circuit authority ignores that: (1) the Court articulated an unprecedented test under the FTAIA for finding subject matter jurisdiction; and (2) it found subject matter jurisdiction to exist based on alleged facts that never before have been held to create such jurisdiction under the FTAIA. Those factors manifest the "substantial ground for difference of opinion" that warrants immediate appellate review.

Plaintiffs' contention that Defendants cite no authority in the Second Circuit contrary to this Court's interpretation of the FTAIA[5/] is wrong. First, Plaintiffs ignore that the Second Circuit itself provided guidance in *Kruman* concerning antitrust claims that are based on anticompetitive conduct encompassing only an overseas market. (*See* Defs' Opening Brief at 16-

---

5/ Plfs' Opposition Brief at 17-19.

17, 19-20). The *Kruman* court expressly stated that its decision interpreting subsection 2 of the FTAIA – utilizing the language this Court adopted as its test under subsection 1 – did not diminish in any way subsection 1's additional and more stringent requirement of a "direct, substantial, and reasonably foreseeable effect" on U.S. domestic commerce. 284 F.3d at 402. Foreseeing improper attempts to invoke federal jurisdiction, the Second Circuit took pains to explain that its decision in *Kruman* applied in instances "in which there were explicit agreements to fix prices in *both* foreign and domestic markets," but not when, as here, antitrust claims were built on allegations of mere indirect effects on our economy. *Id.* (emphasis added). Those other sorts of claims, the Second Circuit said, are barred by "another significant limit on the reach of the antitrust laws," *i.e.*, subsection 1 of the FTAIA, that "will likely prevent conduct that merely has an ancillary effect on our markets from being actionable under our antitrust laws." *Id.* The requirement that the domestic effects of overseas conduct be "direct, substantial, *and* reasonably foreseeable" (emphasis added) is precisely the limitation of the FTAIA that is at issue here, and is a requirement that Plaintiffs cannot satisfy.

Second, *Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102, 1104-07 (S.D.N.Y. 1984), which Plaintiffs inaccurately invoke,[6/] is not only on all fours with this case, but is

---

6/ *Eurim-Pharm* surely does not stand for Plaintiffs' assertion that intent is in any way determinative of the FTAIA effects test. Even assuming that actual intent to bring about an effect is probative of the effect's foreseeability, the FTAIA test is ultimately "a single objective test," *id.* at 1105, with two criteria besides foreseeability: directness and substantiality. Were intent sufficient to trigger jurisdiction, the allegations of Pfizer's orchestration of a global cartel, *see id.* at 1106, would have prevented dismissal. Similarly, although *Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993), pointedly reserved the question of interpretation of subsection 1 of the FTAIA for another occasion, *see* 509 U.S. at 796 n.23, the statement that "the Sherman Act applies to foreign conduct that was meant to produce *and* did in fact produce some substantial effect in the United States," *id.* at 796

directly contrary to this Court's ruling. Like Plaintiffs here, Eurim-Pharm was a foreign distributor of a product manufactured in the United States and elsewhere. Eurim-Pharm alleged that it had lost sales in an overseas market where Pfizer and its affiliates would sell the product only to those distributors who agreed to resell at prices prescribed by Pfizer. 593 F. Supp. at 1104. Although Eurim-Pharm alleged an indirect effect on domestic U.S. commerce, in that Pfizer's alleged anticompetitive conduct overseas inflated prices in the U.S., the court held that Eurim-Pharm "has utterly failed to establish that defendants' alleged foreign price-fixing and market allocation scheme resulted in an anticompetitive effect on United States domestic or import commerce." *Id*. at 1107. The court dismissed the complaint for lack of subject matter jurisdiction, and, in so doing, noted that "[t]his is precisely the type of case Congress sought to eliminate from United States antitrust jurisdiction" when it enacted the FTAIA. *Id. Eurim-Pharm* alone is thus sufficient to demonstrate the "substantial ground for difference of opinion" with this Court's holding that subject matter jurisdiction exists in the present case.

Third, Plaintiffs try to avoid other contrary FTAIA rulings of courts in this Circuit by mischaracterizing *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920 (E.D.N.Y. 1985), and *McElderry v. Cathay Pacific Airways, Ltd.*, 678 F. Supp. 1071 (S.D.N.Y. 1988) – both cited by Defendants – as inapposite. Plaintiffs assert that those cases were decided solely on grounds that the claimants in those cases alleged harm only to themselves, and not to competition generally. (Plfs' Opp. Brief at 18, n.23). Plaintiffs thereby suggest that the outcomes in those cases turned, not on a failure to satisfy subsection 1 of the FTAIA, as they did,

(emphasis added), quoted in Plfs' Opposition Brief at 16, could hardly mean that *either* an intent *or* an effect would suffice to create jurisdiction.

but on a lack of antitrust injury. As the Court can determine for itself, that characterization of those decisions is mistaken.

In *McElderry*, the court expressly stated that it was granting the motion to dismiss the antitrust claims because "[i]n sum, it cannot be concluded that Cathay Pacific's excess baggage charge system has a direct, substantial and reasonably foreseeable anticompetitive effect on United States commerce." 678 F. Supp. at 1078. In other words, the antitrust claim was dismissed for failure to satisfy subsection 1 of the FTAIA.

Likewise, in *Liamuiga Tours*, the court relied on subsection 1 of the FTAIA to dismiss the antitrust claims of a foreign plaintiff that alleged the defendants had monopolized the tourist business in St. Kitts. Because those claims rested solely on the foreign plaintiff's termination in St. Kitts by the U.S. defendant, the court dismissed it under subsection 1 of the FTAIA: "[E]liminating plaintiff from the [tour business] market has not been shown to have any direct, substantial, or reasonably foreseeable effect on competition among United States tour operations for the Caribbean . . ." 617 F. Supp. at 925. The *Liamuiga Tours* court, therefore, concluded that "there is no jurisdictional nexus for this Court to decide the claim under the Sherman Act," and dismissed it. *Id.*

In none of these cases did the court find that allegations of *intended* or *indirect* effects of any sort could ever substitute for allegations of *actual* "*direct*, substantial and reasonably foreseeable" effects, or that allegations of foreseeability alone could suffice to compensate for missing allegations of the required directness and substantiality. In holding that Plaintiffs have adequately alleged anticompetitive effects sufficient to satisfy subsection 1 of the FTAIA, this Court is in uncharted waters. Immediate appellate review will shed light on this important issue,

and will, if Defendants' position prevails, determine the outcome of the case, dramatically curtailing the time and expense that otherwise would have been imposed on the parties and the Court alike.

## III. CONCLUSION

For the reasons set forth above, and those set forth in their opening brief, Defendants respectfully request that the Court grant their motion, and modify the orders of September 12 and 16, 2003 to certify for interlocutory appeal the denial of Defendants' motions to dismiss the federal antitrust claim for lack of subject matter jurisdiction.

Respectfully submitted,

______________________________

CRAIG A. RAABE (ct 04116)
EDWARD J. HEATH (ct 20992)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

WILLIAM L. WEBBER (ct 18369)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 739-5798

MARK P. EDWARDS (ct 23890)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5769

Attorneys for Defendants
The Dow Chemical Company,
Union Carbide Corporation,
Union Carbide Asia Pacific, Inc.,
Union Carbide Customer Services Pte. Ltd., and
Dow Chemical Pacific (Singapore) Pte. Ltd.

**CERTIFICATE OF SERVICE**

Edward J. Heath hereby certifies that he caused a copy of the Reply Brief in Support of Defendants' Motion for Certification for Interlocutory Appeal of the Court's Orders Denying the Motions to Dismiss the Federal Antitrust Claim for Lack of Subject Matter Jurisdiction to be served this date upon the following:

Robert M. Langer, Esquire
Wiggin & Dana LLP
One City Place
185 Asylum Street
Hartford, CT 06103-3402
**(via hand delivery)**

Richard S. Taffet, Esquire
Thelen Reid & Priest LLP
875 Third Avenue
New York, New York 10022-6225
**(via overnight courier)**

Suzanne Wachstock, Esquire
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
**(via first-class mail, postage prepaid)**

Dated: November 14, 2003

____________________________________
EDWARD J. HEATH