UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM GLOBAL    :
SERVICES PTE. LTD., and MEGAVISA    :
SOLUTIONS (S) PTE. LTD.,    :
   :
                    Plaintiffs,    :   Civil No. 302 CV 1107 (AVC)
         -v-    :
   :
THE DOW CHEMICAL COMPANY, UNION    :
CARBIDE CORPORATION, UNION CARBIDE    :
ASIA PACIFIC, INC., UNION CARBIDE    :
CUSTOMER SERVICES PTE. LTD., and DOW    :
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,    :   December 4, 2003
   :
               Defendants.    :

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S DECISION RE THE DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

THELEN REID & PRIEST LLP
     Richard S. Taffet (ct 10201)
     875 Third Avenue
     New York, New York 10022-6225
     (212) 603-2000

WIGGIN & DANA LLP
     Robert M. Langer (ct 06305)
     Suzanne E. Wachsstock (ct 17627)
     One CityPlace
     185 Asylum Street
     Hartford, Connecticut 06103-3402
     (860) 297-3724

     Attorneys for Plaintiffs MM Global Services
     Inc., MM Global Services Pte. Ltd., and
     Megavisa Solutions (S) Pte. Ltd.

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT ............................................................................................................... 7

THE COURT SHOULD RECONSIDER THE DECISION ........................................ 7

      A.    The Decision Did Not Properly Consider Plaintiffs' Pleadings And
            Proof..................................................................................................................8

            1.    Jurisdictional facts relating to UCCS........................................................ 8

            2.    Jurisdictional facts relating to Dow Singapore ........................................ 9

      B.    Plaintiffs Should Be Permitted Discovery And A Hearing
            Concerning Personal Jurisdiction Over UCCS And Dow Singapore ....................10

CONCLUSION............................................................................................................ 12

i

## **TABLE OF AUTHORITIES**

### CASES

Atl. Mut. Ins. Co. v. CSX Expedition,
No. 00 CIV.7668, 2003 WL 21756414 (S.D.N.Y. July 30, 2003) ....................................11

Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 61 (D. Conn. 2000) ..................................7

Goldlawr, Inc. v. Heiman, 288 F.2d 579 (2d Cir. 1961)..................................................................1

In re Libel and Petition of Gemini Navigation, S.A.,
Civ. A. No. G-92-126, 1996 WL 544236 (S.D. Tex. Mar. 1, 1996)..................................11

In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204 (2d Cir. 2003) .....................................10

Rosenberg v. Inner City Broad. Corp.,
No. 99 CIV 9579, 2001 WL 995349 (S.D.N.Y. Aug. 30, 2001) .........................................7

### STATUTES

15 U.S.C. § 22 ............................................................................................................... *passim*

### OTHER

Fed. R. Civ. P. 12(b)(6)...................................................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and MegaVisa Solutions (S) Pte. Ltd. ("MVS") submit this memorandum in support of their motion for reconsideration of the Court's decision, dated November 17, 2003 (the "Decision"), granting the motion to dismiss of defendants Union Carbide Customer Services Pte. Ltd. ("UCCS") and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") for lack of personal jurisdiction, and denying the same motion by defendant Union Carbide Asia Pacific, Inc. ("UCAP") (UCCS, Dow Singapore and UCAP are hereinafter referred to collectively as the "Affiliate Defendants").

In essence, plaintiffs' claims against UCCS and Dow Singapore were dismissed based upon the Court's finding that insufficient evidence was presented to establish that these Affiliate Defendants transacted business in Connecticut sufficient to establish personal jurisdiction under § 12 of the Clayton Act, 15 U.S.C. § 22. See Decision at 8.[1]  As the Court observed, however, "[w]here there has been no discovery conducted, plaintiff need only assert 'facts constituting a prima facie showing of personal jurisdiction' to defeat a motion to dismiss." Decision at 4 (citations omitted).  Moreover, "[w]ith regard to a motion to dismiss for lack of personal jurisdiction, 'in the absence of an evidentiary hearing, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to the plaintiff,'" and "regardless of the controverting evidence put forth by the defendant, the court must resolve all doubts in the plaintiff's favor. (citations omitted.)'" Id.

---

[1] The Decision considered whether UCCS and Dow Singapore transacted business in Connecticut based upon its reliance on Goldlawr, Inc. v. Heiman, 288 F.2d 579 (2d Cir. 1961).  As discussed in plaintiffs' opposing memorandum of law on this motion, substantial authority exists that the appropriate inquiry concerns a defendant's contacts with and its transaction of business generally in the United States as a whole.  See 7/3/03 Mem. of Law in Opp. to Defs. Mots. to Dismiss for Lack of Pers. Juris. ("Pers. Juris. Opp."), at 12-19.  Plaintiffs, however, while not waiving their rights in connection with this issue, do not presently seek reconsideration of this issue.

Consistent with this authority, plaintiffs respectfully submit that the Court should reconsider the Decision. At the time of the personal jurisdiction motion (as well as today), only limited discovery has been taken in this case. None of this discovery has related to issues of personal jurisdiction, nor has any discovery been taken from UCCS or Dow Singapore. Per force, plaintiffs, in opposing the motions to dismiss, were limited in the evidence they could present to establish that personal jurisdiction over the Affiliate Defendants is proper in this Court. Accordingly, rather than considering the limited evidentiary showing that plaintiffs were able to make as dispositive of these issues, the allegations in plaintiffs' pleadings and the evidence submitted should have been construed most favorably to plaintiffs. If it had been, plaintiffs submit a <u>prima facie</u> showing of personal jurisdiction over UCCS and Dow Singapore was made.

Further, the Court should, in reconsidering the Decision, stay any dismissal of UCCS and Dow Singapore pending limited discovery directed to the extent to which UCCS and Dow Singapore have transacted business in Connecticut for purposes of § 12 of the Clayton Act. Such discovery would go directly to the issue the Court found persuasive in finding personal jurisdiction over UCAP – i.e., that it purchased "significant quantities" of merchandise from UCC in Connecticut, <u>see</u> Decision at 6 – 8. UCCS and Dow Singapore themselves represent that they purchased merchandise from UCC in Connecticut, and indeed contracted for the purchase of such goods. The discovery that is necessary, and which plaintiffs have not yet had the opportunity to pursue, would simply go to determine the volume of such purchases.

## FACTUAL BACKGROUND

Plaintiffs filed their original complaint in this case in June 2002 only against defendants Dow and UCC, alleging federal and state antitrust claims, breach of contract claims, and various

tort claims. In response, on September 9, 2002, defendants Dow and UCC moved to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6) and on <u>forum</u> <u>non</u> <u>conveniens</u> grounds. Dow and UCC also

moved to dismiss Plaintiffs' antitrust claims for lack of subject matter jurisdiction. Dow and

UCC further sought to limit discovery at that time solely to issues involving <u>forum</u> <u>non</u>

<u>conveniens</u> and subject matter jurisdiction. The Court ordered that only such discovery should

proceed,[2] which it did, and no other discovery has been taken to date.

Plaintiffs then filed and served their First Amended Complaint, dated March 24, 2003,

naming the three Affiliate Defendants, UCAP, UCCS and Dow Singapore.[3] Among other things,

the First Amended Complaint alleged that each of the Affiliate Defendants carried out and

furthered the unlawful conduct alleged against the original Defendants, Dow and UCC.[4] Thus, it

is alleged that each of the Affiliate Defendants was dominated and controlled by either UCC or

Dow and was used to effectuate the conduct that gives rise to plaintiffs' claims.[5] For example, it

is alleged that UCAP and UCCS were "used by UCC to effectuate sales of Products to Plaintiffs

on behalf of UCC and to further UCC's contractual relationship with Plaintiffs, including as

performed in the United States."[6] Likewise, it is alleged that following the merger of UCC and

Dow, "Dow assumed operational responsibility for the sale of the Products, including to

Plaintiffs for resale to end-users in India,"[7] and thereafter, Dow Singapore was "used by Dow to

effectuate sales of Products to Plaintiffs and to further UCC and Dow's contractual relationship

---

[2] <u>See</u> Order, dated November 14, 2003.

[3] The First Amended Complaint, however, "did not alter the material facts as alleged in the original Complaint, nor did it modify Plaintiffs' causes of action set forth therein." Ruling on the Defendants' Motion to Dismiss For Forum Non Conveniens, dated April 17, 2003, at 2.

[4] <u>See</u>, <u>e.g.</u>, First Amended Complaint ("Am. Compl."), ¶¶ 10, 11, 13, 17, 21, 22, 26-27, 29, 33-35, 43.

[5] <u>See</u> Am. Compl., ¶ 10, 11, 13.

[6] <u>See</u> Am. Compl., ¶¶ 10, 11.

[7] <u>See</u> Am. Compl., ¶ 12.

with Plaintiffs, including as performed in the United States."[8]  In addition, Plaintiffs allege that

Dow Singapore was used by Dow "as its means of controlling and exploiting the relationship

between Plaintiffs and UCC."[9]

On May 30, 2003, each Affiliate Defendant filed its motion to dismiss for lack of

personal jurisdiction.  In support of their motions, each Affiliate Defendant filed an affidavit that

corroborated their relationship with UCC and Dow as alleged in the First Amended Complaint.

For example, UCAP's affidavit confirms that "[t]he business of UCAP was to sell and distribute

products manufactured by UCC . . .,"[10] and that on or about January 18, 2002, Dow Singapore

purchased essentially all of UCAP's assets.[11]  UCCS's affidavit states that it was in the business

of trading chemicals and plastics as well as the manufacturing of chemicals,[12] and that on or

about January 18, 2002, Dow Singapore purchased all of its assets.[13]  Dow Singapore's affidavit

states that its role is to "act as marketers and distributors of industrial chemicals, plastics and

other chemical products that are manufactured primarily by various Dow entities."[14]

On July 3, 2003, plaintiffs filed their opposition to the Affiliate Defendants' personal

jurisdiction motions, setting forth the relevant evidence that was available to them at that time.

In particular, plaintiffs submitted evidence showing that UCAP, UCCS and Dow Singapore

routinely placed plaintiffs' product orders with UCC and Dow for price approval and product

allocation through a centralized computer system housed and accessed in Connecticut.[15]  In

---

[8] See Am. Compl., ¶ 13.

[9] See Am. Compl., ¶ 26.

[10] See Affidavit of Charles J. Hahn, Director of UCAP, sworn to on May 29, 2003 ("Hahn Aff."), at ¶ 5.

[11] Id. at ¶ 7.

[12] See Affidavit of Peter M. Jennings, Director of UCCS, sworn to on May 28, 2003 ("Jennings Aff."), at ¶ 5.

[13] Id. at ¶ 7.

[14] See Affidavit of Sam Ong, Finance Director of Dow Singapore, sworn to on May 26, 2003 ("Ong Aff."), at ¶ 17.

[15] See Pers. Juris. Opp., at 3-6 & nn.9-17, and evidence cited there.

addition, plaintiffs pointed out that, at least according to the Affiliate Defendants, each of them

placed orders and contracted with UCC or Dow in Connecticut for products that were ultimately

sold to plaintiffs.[16]

To make this showing, plaintiffs offered as evidence affidavits from representatives of

the Affiliate Defendants that had been made in connection with previous motions in this case, or

in a Singapore action that has since been terminated.  For example, an affidavit of David Yap,

UCCS's Area Credit Manager, states that in placing product orders for plaintiffs, "UCC would

log in a purchase request from UCCS as an order and ship the goods in accordance with

instructions from UCCS."[17]  According to Mr. Yap, as far as he knew, most of the contracts for

the sale and delivery of UCC products were contracts between UCCS and the plaintiffs.[18]  In

turn, UCCS, again according to Mr. Yap, would approve an order from the plaintiffs, download

the order as a purchase order in UCC's computer system, and thereby create a separate contract

between UCC and UCCS.[19]  Similarly, Lawrence Cheung, a Dow Singapore sales director and

formerly UCAP's area director, testified by affidavit that UCAP placed product orders with UCC

and thereby contracted with UCC and Dow in Connecticut in the same manner as explained by

Mr. Yap as respects UCCS.[20]  Following the merger of Dow and UCC in February 2001, Mr.

Cheung further testified that Dow Singapore took over the purchasing responsibilities of

---

[16] Id.

[17] See Affidavit of David Yap, sworn to on February 4, 2003 and submitted by Dow Singapore in connection with a now-terminated Dow Singapore action against MMGS-S in Singapore ("Yap Aff."), ¶ 15; Affidavit of R. Taffet, submitted in connection with plaintiffs' Pers. Juris. Opp. ("Taffet Aff."), Exh. 40.

[18] Id. at ¶ 8.

[19] Id. at ¶ 13.

[20] See Affidavit of Lawrence Cheung, Director of Dow Singapore, sworn to on August 29, 2002, and submitted in support of Defendants UCC and Dow's Motion to Dismiss ("Cheung Aff."), ¶ 12; Taffet Aff., Exh. 41.

UCAP,[21] and Dow Singapore thus continued to place product orders and contract with UCC and Dow in Connecticut under the same procedures previously followed by UCAP and UCCS.

In opposition to the personal jurisdiction motions, however, plaintiffs were only able to submit evidence showing the extent of UCAP's purported purchases from UCC in Connecticut. Thus, Exhibits 18 and 19 to the Taffet Affidavit submitted in connection with Plaintiffs' opposition to the personal jurisdiction motions include documents showing UCAP's purchase of different types of products that totaled in the tens of millions of dollars. For example, as part of Exhibit 19, proof was offered that just for the SIM product group, UCAP sold over $76 million of UCC products in 2000, of which nearly $1 million was ultimately sold to plaintiffs.[22] Similarly, included as part of Exhibit 18 to the Taffet Affidavit is a document showing that for the first three quarters of 1997, UCAP's Specialty Products Division sold approximately $59 million of UCC products, of which almost $2 million was ultimately sold to plaintiffs.[23]

Regarding UCCS and Dow Singapore, however, plaintiffs have not yet had the opportunity to obtain evidence showing the volume of the purported purchases made by UCCS or Dow Singapore from either UCC or Dow in Connecticut. As remarked, discovery has been limited to only forum non conveniens and subject matter jurisdiction issues.

Based upon the foregoing, the Court's Decision held that UCAP was subject to personal jurisdiction in this court under § 12 of the Clayton Act, because evidence was submitted showing the extent of its purchases in Connecticut. See Decision at 6 – 8. In connection with UCCS, however, the Court held that personal jurisdiction did not exist, notwithstanding evidence showing that UCCS placed orders with UCC in Connecticut, because "[t]he record . . . does not

---

[21] Id. at ¶ 11. See also Pers. Juris. Opp, at 5-6.

[22] See Taffet Aff, Exh. 19 at M33652.

[23] See Taffet Aff., Exh. 18 at M2375.

state how much purchasing activity was done here." Id. at 8. Regarding Dow Singapore, the

Court held that personal jurisdiction did not exist because "plaintiffs do not offer any proof that

Dow Singapore had any contacts, substantial or not, within Connecticut." Id.

## ARGUMENT

## <u>THE COURT SHOULD RECONSIDER THE DECISION</u>

Reconsideration of a ruling or decision is appropriate where "the moving party can point

to controlling decisions or data that the court overlooked – matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." Bristol Tech., Inc. v.

Microsoft Corp., 127 F. Supp. 2d 61, 62 (D. Conn. 2000) (quoting Shrader v. CSX Transp., Inc.,

70 F.3d 255, 257 (2d Cir. 1995)). See also Rosenberg v. Inner City Broad. Corp., No. 99 CIV

9579, 2001 WL 995349, *1 (S.D.N.Y. Aug. 30, 2001) ("[o]n a motion for reconsideration, the

moving party must demonstrate that the court did not consider controlling decisions or factual

matters that were put before it on the underlying motion") (quotations and citations omitted).

Here, plaintiffs respectfully submit that the Court, in reaching its conclusions regarding

UCCS and Dow Singapore, did not give proper consideration to the alleged facts of the First

Amended Complaint, or to the factual showing made in opposition to those defendants' personal

jurisdiction motions. In addition, given the procedural posture of this case, any decision to

dismiss plaintiffs' claims against UCCS and Dow Singapore for lack of personal jurisdiction

should be stayed pending discovery at least in connection with the extent of the admitted

purchases each of those Affiliated Defendants made in Connecticut.

A.    **The Decision Did Not Properly Consider**
      **Plaintiffs' Pleadings And Proof**

Plaintiffs respectfully submit that if the allegations of the First Amended Complaint and the proof submitted in opposition to the personal jurisdiction motions are viewed most favorably to plaintiffs, the conclusion that a prima facie showing of personal jurisdiction over UCCS and Dow Singapore in this case would be warranted.

1.    **Jurisdictional facts relating to UCCS**

As stated above, the First Amended Complaint alleges that UCCS was dominated and controlled by UCC to further UCC's business operations and to effectuate the conduct by UCC and Dow complained of in this case, and that it, like UCAP, was used by UCC to effectuate the sale of products to plaintiffs. As claimed by the Yap Affidavit, UCCS effectuated such sales by purchasing products from and contracting with UCC in Connecticut. The Jennings Affidavit submitted by UCCS corroborates this relationship, and the Decision recognizes that "these purchase orders establish some business transactions with Connecticut." Decision at 8.

Interestingly, however, UCCS's claimed activities in connection with products ultimately sold to plaintiffs is the same as for which UCAP takes credit. The evidence submitted showed the volume of purchases made by UCAP in Connecticut, but what is not clear, but which could be reasonably inferred from UCCS's own affidavit testimony, is that UCAP's purchases in Connecticut are equally attributable to UCCS. Thus, for example, as discussed above, Exhibit 18 to the Taffet Affidavit shows that sales of just one category of products, Specialty Products, to plaintiffs during the first three quarters of 1997 totaled almost $2 million. Based upon how the defendants structured their organization, these purchases may also relate to UCCS. Likewise, Exhibit 19 to the Taffet Affidavit shows almost $1 million of SIM Products sold to plaintiffs during 2000. Here too, such purchases may equally relate to UCCS. The Yap Affidavit supports

8

such a conclusion, because he states that it was UCCS that was contracting with UCC and purchasing products in Connecticut that were ultimately sold to plaintiffs.

That such evidence may not be conclusive, and in fact creates an ambiguity, should be of no moment. The evidence must be construed in plaintiffs' favor, and when it is, a patently reasonable conclusion is that UCCS made the same magnitude of purchases in Connecticut as UCAP. Alternatively, it could be inferred that UCCS's purchases were subsumed in those reported by UCAP, and if they were, they would still have been "substantial." To conclude otherwise would simply allow the ambiguity created by the Affiliate Defendants to be determinative, which is not a reasonable result, especially where, as here, there has been no opportunity to test the accuracy of any of the affidavit testimony submitted by the Affiliate Defendants on the personal jurisdiction motions through discovery, or to obtain specific factual evidence on these issues.

### 2.    Jurisdictional facts relating to Dow Singapore

The First Amended Complaint and the evidence submitted by Plaintiffs in opposition to the personal jurisdiction motion also compel the reasonable conclusion that Dow Singapore made "substantial" purchases of products in Connecticut. As alleged, Dow Singapore was used by Dow to effectuate sales of products to plaintiffs and to further UCC and Dow's contractual relationship with plaintiffs. Moreover, the affidavit testimony discussed above avers that Dow Singapore took over the operations of both UCCS and UCAP in early 2002. The Chueng Affidavit even expressly states that "Dow Singapore took over UCAP's commercial relationship with [plaintiffs] when the merger of Dow and UCC became effective."[24] Thus, to the extent it has been shown, as found by the Court, that UCAP was transacting business in Connecticut by

---

[24] Chueng Affidavit, ¶ 11.

making substantial purchases there, Dow Singapore's assumption of UCAP's (as well as

UCCS's) operations leads to the conclusion that Dow Singapore has also made substantial

purchases in Connecticut. This conclusion is particularly appropriate given plaintiffs' allegations

that the defendants engaged in conduct, at least starting in 2001, for the purpose of having sales

made directly by UCC/Dow, presumably through Dow Singapore, to plaintiffs' former

customers in India.[25]

The Decision, however, apparently has overlooked this evidence, and it has not,

therefore, been considered in a light most favorable to plaintiffs. If it had been, it too would

support a <u>prima facie</u> showing of personal jurisdiction over Dow Singapore.

**B.   Plaintiffs Should Be Permitted Discovery And A Hearing
<u>Concerning Personal Jurisdiction Over UCCS And Dow Singapore</u>**

Prior to dismissing UCCS and Dow Singapore from this action for lack of personal

jurisdiction, plaintiffs should be allowed to take limited discovery from them on that issue and

be heard at an evidentiary hearing or at trial. <u>See</u> In re Magnetic Audiotape Antitrust Litig., 334

F.3d 204, 207-08 (2d Cir. 2003) (holding that "the district court improperly denied plaintiffs the

opportunity to engage in limited discovery . . . prior to dismissing [defendant]," where plaintiff

had made some showing that jurisdictional facts exist or where the district court appeared to

have overlooked jurisdictional facts on the record). Allowing limited jurisdictional discovery is

further justified in the instant circumstances because of the narrow issue identified by the Court

as dispositive – i.e., the substantiality of purchases made in Connecticut by UCCS and Dow

Singapore. The Decision recognizes that UCCS did make purchases in Connecticut and the only

question is how much. The evidence, as discussed above, also allows the inference that Dow

---

[25] <u>See</u> Am. Compl. at ¶¶ 39-49.

Singapore made such purchases. The discovery required, therefore, would be limited to those purchases and their extent.

A recent decision from the Southern District of New York is instructive on this issue. In Atl. Mut. Ins. Co. v. CSX Expedition, the district court originally dismissed the action as to a particular defendant for lack of personal jurisdiction. No. 00 CIV.7668, 2003 WL 21756414, *1 (S.D.N.Y. July 30, 2003). Upon motion for reconsideration, the district court stayed its ruling dismissing the defendant, "to allow plaintiff to take jurisdictional discovery to explore whether the Court has personal jurisdiction over [the defendant]." Id.[26] See also In re Libel and Petition of Gemini Navigation, S.A., Civ. A. No. G-92-126, 1996 WL 544236, *1 (S.D. Tex. Mar. 1, 1996) (partially granting motion for reconsideration of dismissal for lack of personal jurisdiction to allow plaintiff to conduct jurisdictional discovery).

Plaintiffs here, at a minimum, should be afforded the same opportunity. As commented, the discovery will be narrowly targeted and should not delay this action at all. Indeed, much of the discovery should be obtainable from UCC and Dow, the parties from whom the purchases were purportedly made, and these defendants are still in the case with discovery proceeding as to them. Thus, the extent of discovery on personal jurisdiction issues that will be necessary from UCCS and Dow Singapore should be even more focused, and no delay in these proceedings should occur. To the contrary, allowing the limited discovery and hearing requested now will allow the Court to most efficiently determine the personal jurisdictional issues for UCCS and Dow Singapore based upon a full record, rather than on the limited evidence that exists now.

---

[26] The district court allowed plaintiffs just over two months to conduct jurisdictional discovery, after which plaintiff was allowed to submit further papers in opposition to the motion to dismiss to which defendant was permitted to respond.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration of the Decision should be granted.

THELEN REID & PRIEST LLP

By: _____

Richard S. Taffet (ct 10201)
875 Third Avenue
New York, New York  10022-6225
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN & DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace
185 Asylum Street
Hartford, Connecticut  06103-3402
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs MM Global Services Inc.,
MM Global Services Pte. Ltd. and MegaVisa
Solutions (s) Pte. Ltd.

12

## CERTIFICATE OF SERVICE

I, Paul A. Winick, hereby certify that I caused true and correct copies of the foregoing

Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration of the Court's

Decision Re the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction to be served

this date on the following:


Craig A. Raabe, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut 06103
(BY HAND)

Andrew S. Marovitz, Esq.
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, Illinois 60603
(BY HAND)

William L. Webber, Esq.
Morgan Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(BY U.S. MAIL)


Dated: December 4, 2003

Paul A. Winick