IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : : : : | |
| Plaintiffs, | : : | 3:02 CV 1107 (AVC) |
| v. | : : : | |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC. | : : : : | |
| Defendants. | : : : : | DECEMBER 24, 2003 |

**CERTAIN DEFENDANTS' CONSOLIDATED RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF THE COURT'S DECISION RE THE
DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Britt M. Miller (ct 25411)
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, IL 60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC 20006-1157
(202) 263-3000

*Attorneys for Union Carbide Customer Services Pte. Ltd. and
Dow Chemical Pacific (Singapore) Pte. Ltd.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT .....................................................................................................................4

I.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THIS COURT
     SHOULD RECONSIDER DISMISSAL OF UCCS AND DOW SINGAPORE
     AS DEFENDANTS IN THIS LITIGATION ........................................................4

II.  THE COURT PROPERLY FOUND THAT IT LACKED PERSONAL
     JURISDICTION OVER UCCS AND DOW SINGAPORE .................................6

     A.   UCCS Did Not Transact Business in Connecticut Such that it is
          Subject to This Court's Exercise of Personal Jurisdiction........................6

     B.   The Record is Devoid of Any Indication that Dow Singapore
          Transacted Business in Connecticut .........................................................8

III. JURISDICTIONAL DISCOVERY HERE WOULD AMOUNT TO AN
     UNJUSTIFIED FISHING EXPEDITION ............................................................9

CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Above the Belt, Inc. v. Mel Bohannon Roofing Co.*, 99 F.R.D. 99 (E.D. Va. 1983) ..................................................................................................................... 4

*Bertha Building Corp. v. National Theatres Corp.*, 248 F.2d 833 (2d Cir. 1957) ..................................................................................................................... 7

*Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 61 (D. Conn. 2000) ................ 4

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000) .................................................. 10

*Connecticut State Dept. of Social Servs. v. Thompson*, 2003 WL 21011133 (D. Conn. 2003) ........................................................................................................ 5

*Ferrand v. Credit Lyonnais*, 2003 WL 22741206 (S.D.N.Y. 2003) ............................ 5

*Hock v. Thipedeau*, 2003 WL 21003431 (D. Conn. 2003) ......................................... 5

*Houston v. Partee*, 1992 WL 32164 (N.D. Ill. 1992) ................................................. 1

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998) ......................................... 10

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ............................................ 8

*Rush v. Savchuck*, 444 U.S. 320 (1980) .................................................................... 7

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ................................ 4, 5, 6

**STATUTES**

Clayton Act § 12 ........................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 2

"No litigant has any business filing a motion that asks the Court to do its work [a] second time, by simply repeating the arguments that were made the first time around." *Houston v. Partee*, 1992 WL 32164, at *1 n.4 (N.D. Ill. 1992). For this reason, Union Carbide Customer Services Pte. Ltd. ("UCCS") and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") submit this Memorandum of Law in opposition to Plaintiffs' Motion for Reconsideration of the Court's Decision re: the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion").[1]

## INTRODUCTION

Plaintiffs ask this Court to "reconsider" its dismissal of their claims against UCCS and Dow Singapore, but neglect to provide any legally cognizable reason for that request.[2] They do not offer any new facts for consideration, or point to a change in the law since the matter was submitted to the Court. Significantly, they do not seek reconsideration of the Court's application of the *Goldlawr* "transacting business" test. *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration of the Court's Decision re: the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Pls. Mem.") at 1 n.1. Nor do plaintiffs seek reconsideration of this Court's finding that it lacked personal jurisdiction over UCCS and Dow

---

[1] By Order dated November 17, 2003 (referred to in this memorandum as "the Order"), this Court dismissed UCCS and Dow Singapore from this action. Thus, UCCS and Dow Singapore appear specially for the sole purpose of contesting the present Motion. The filing of this response is not intended as a waiver of any of UCCS's or Dow Singapore's claims that this Court lacks personal jurisdiction over them.

[2] Plaintiffs' request is also untimely. Local Rule 7(c) required Plaintiffs to file and serve their Motion within ten days of "the filing of the decision or order from which such relief is sought." Since the Order dismissing UCCS and Dow Singapore was filed on November 17, 2003, Plaintiffs' Motion was due to be filed and served on December 3, 2003 (November 27 and 28 are excluded from the calculation as court holidays). The Motion was neither filed nor served until mid-afternoon on December 4, 2003 when Plaintiffs' counsel presented it to Defendants' counsel at the status hearing.

1

Singapore under the Connecticut Long-Arm Statute; neither Plaintiffs' Motion nor their Memorandum even refers to that statute. Instead, Plaintiffs try a single argument that has already failed once: they claim that UCCS's attenuated contacts with Connecticut, and Dow Singapore's non-existent ones, are enough for this Court to exercise personal jurisdiction over the two entities pursuant to § 12 of the Clayton Act. And in case that argument falls short, Plaintiffs request another chance to obtain discovery on the subject from UCCS and Dow Singapore.

What Plaintiffs overlook is that, having considered all of the relevant facts and law, this Court expressly ruled that nothing in Plaintiffs' Complaint or in the record as a whole allowed for the exercise of personal jurisdiction over UCCS and Dow Singapore. Plaintiffs may disagree with that result, but they offer no basis for its reconsideration. Similarly, they have failed to make the *prima facie* showing necessary to obtain the discovery they seek; the record evidence conclusively shows that neither UCCS nor Dow Singapore has "transacted business" in Connecticut so as to subject it to personal jurisdiction there. Thus, any such discovery would not be "justified" (Pls. Mem. at 10), but rather would a futile waste of judicial resources, and would subject UCCS and Dow Singapore to precisely the kind of pretrial litigation that principles of personal jurisdiction are designed to forbid.

## BACKGROUND

Plaintiffs filed suit in this matter in June 2002, asserting federal and state antitrust claims, breach of contract claims, and various tort claims against two U.S.-based defendants – The Dow Chemical Company ("TDCC"), a Delaware corporation based in Midland, Michigan, and Union Carbide Corporation ("UCC"), a New York corporation based in Danbury, Connecticut. On September 9, 2002, TDCC and UCC moved to dismiss the entire original Complaint under Fed.

R. Civ. P. 12(b)(6) and on *forum non conveniens* grounds, and moved to dismiss Plaintiffs' antitrust claims for lack of subject matter jurisdiction.

Over the next seven months, the parties engaged in substantial discovery – a process that resulted in TDCC and UCC producing over 100,000 pages of responsive documents from both foreign and domestic locations, including their subsidiaries. On March 24, 2003, Plaintiffs filed their First Amended Complaint adding three new foreign defendants – Union Carbide Asia Pacific, Inc. ("UCAP"), a Delaware corporation based in Singapore; UCCS, a Singapore corporation based in Singapore; and Dow Singapore, another Singapore corporation based in Singapore. Shortly thereafter, on May 30, 2003, each of the newly-added defendants moved to dismiss for lack of personal jurisdiction.

On November 17, 2003, after examining "the amended complaint and supplemental documents, including affidavits and exhibits submitted in connection with [defendants'] motion[s]," Order at 2, this Court denied UCAP's motion to dismiss but granted those of UCCS and Dow Singapore. The Court determined that UCAP "transacted business" in Connecticut, citing UCAP's placement of "purchase orders with Union Carbide for Union Carbide/Dow products through a central computer system which Union Carbide controlled in Connecticut,"[3] and UCAP's United States sales of as much as $76,284,000 in December 2000. Order at 7. The Court noted also that "UCAP representatives attended meetings, held training sessions, and maintained a voicemail box in Connecticut." *Id*. As to UCCS, however, "plaintiffs' exhibits and affidavits" showed only an unsubstantiated amount of purchase orders "placed with Union

---

[3] Despite having received thousands of documents and having examined in depositions two individuals familiar with UCC's enterprise software and order entry systems, Plaintiffs have offered no evidence to support this allegation – which they presented to this Court – about the existence of a central computer system in Connecticut maintained for the processing of purchase orders placed by UCAP.

3

Carbide in Connecticut." *Id.* at 8. Because there was "no evidence that UCCS engaged in substantial purchasing activity," the Court held "that in the ordinary and usual sense of the term, UCCS does not transact business of a substantial character in Connecticut." *Id*. "Dow Singapore," the Court held, "does not transact business of a substantial nature in Connecticut," as "[t]he plaintiffs do not offer any proof that Dow Singapore had any contacts, substantial or not, within Connecticut." *Id*.

Plaintiffs now seek reconsideration of the determinations as to UCCS and Dow Singapore or, in the alternative, a stay of the Order pending completion of certain jurisdictional discovery.

## ARGUMENT

I. **PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THIS COURT SHOULD RECONSIDER DISMISSAL OF UCCS AND DOW SINGAPORE AS DEFENDANTS IN THIS LITIGATION.**

The standard for a motion for reconsideration is a strict one. "[T]he movant must demonstrate that newly discovered facts exist that require reconsideration, that there has been an intervening change in the law, or that the court has overlooked and thus failed to consider an aspect of the law presented by the [moving party] which, if left unredressed, would result in clear error or cause manifest injustice." *Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 61, 62-63 (D. Conn. 2000); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").[4]

---

[4] *Accord*, *Above the Belt, Inc. v. Mel Bohannan Roofing Co.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) ("The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since

(cont'd)

4

This means that a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F. 3d at 257; *see also Ferrand v. Credit Lyonnais*, 2003 WL 22741206, *1-2 (S.D.N.Y. 2003) (denying motions for reconsideration and reargument, finding that the court did not overlook any factual or legal matters asserted by plaintiff); *Hock v. Thipedeau*, 2003 WL 21003431 (D. Conn. 2003) (denying motion where plaintiff challenged court's interpretation of relevant precedent – essentially seeking reversal of the court's prior judgment without advancement of any new arguments); *Connecticut State Dep't of Social Services v. Thompson*, 2003 WL 21011133 (D. Conn. 2003) (denying motion to reconsider where argument was both previously raised by defendant and previously known by the court).

But relitigating an issue already decided is exactly what Plaintiffs attempt here. In their own words:

- "[R]ather than considering the limited evidentiary showing that plaintiffs were able to make as dispositive of these issues, the allegations in plaintiffs' pleadings and the evidence submitted should have been construed most favorably to plaintiffs. If it [sic] had been, plaintiffs submit a *prima facie* showing of personal jurisdiction over UCCS and Dow Singapore was made." (Pls. Mem. at 2.)

- "[T]he Court … did not give proper consideration to the alleged facts of the First Amended Complaint, or to the factual showing made in opposition to those defendants' personal jurisdiction motions." (*Id.* at 7.)

Indeed, Plaintiffs admit that *all* the evidence they have to support their claims (and all the evidence they recite in the present Motion) was already presented to this Court in the briefing on the foreign defendants' personal jurisdiction motions. *See, e.g.,* Pls. Mem. at 3 (relying on Plaintiffs' First Amended Complaint); *id.* at 4 (reiterating statements from affidavits submitted in

---

(… cont'd)

the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.").

5

connection with the original motions); *id.* at 5 (citing statements from the exhibits Plaintiffs submitted in opposition to the original motions).  Moreover, Plaintiffs fail to cite *any* legal authority on subject matter jurisdiction, let alone a controlling precedent that was not already fully discussed in the parties' earlier briefs – and thus fully considered by this Court in rendering its decision.  *See id.* at 8-10.  In sum, Plaintiffs offer no new facts, no law, new or old, and certainly no "controlling decisions or data that the [C]ourt overlooked."  *Shrader*, 70 F.3d at 257.  Rather, Plaintiffs simply ask the Court to "re-do" its work on the off-chance that repeating the same argument once more might yield a different result.  That is insufficient grounds for reconsideration.  Plaintiffs' motion should be denied.

II.  **THE COURT PROPERLY FOUND THAT IT LACKED PERSONAL JURISDICTION OVER UCCS AND DOW SINGAPORE.**

Even were this Court to indulge Plaintiffs' request for reconsideration and re-examine the record evidence, the result would be the same.  As demonstrated throughout UCCS's and Dow Singapore's memoranda in support of their motions to dismiss for lack of personal jurisdiction and in this Court's opinion, Plaintiffs have alleged no factual basis for the assertion of personal jurisdiction over either company.

    A.  **UCCS Did Not Transact Business in Connecticut Such that it is Subject to This Court's Exercise of Personal Jurisdiction.**

As this Court correctly held, UCCS is neither "found" nor "transacts business" in Connecticut such that it is subject to personal jurisdiction in that state.  Order at 8; *see also* Memorandum in Support of Union Carbide Customer Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("UCCS Mem.") at 15-18; Joint Reply Brief in Support of Union Carbide Asia Pacific, Inc.'s and Union Carbide Customer Services Pte. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction ("UCCS Reply") at 2-12.  As pointed out above, Plaintiffs' Memorandum presents no new facts or law which contradict that finding – or the showing by

6

UCCS upon which it was based.  Instead, Plaintiffs contend that because the Court ruled that UCAP "transacted business" in Connecticut by virtue of UCAP's purchases of product from Connecticut-based UCC, those *same sales* should be attributable to UCCS as well "[b]ased upon how the defendants structured their organization."  Pls. Mem. at 8.  For example, Plaintiffs speculate that sales to them reported in two UCAP sales reports "may . . . related to UCCS."  *Id*.

If, as it seems, Plaintiffs are advocating the "conspiracy theory" of personal jurisdiction – the idea that the forum state contacts of one defendant can be attributed to another for purposes of establishing personal jurisdiction – their argument has been flatly rejected.  *See, e.g., Rush v. Savchuck*, 444 U.S. 320, 331-32 (1980) (holding that it is "plainly unconstitutional" to determine that a court has personal jurisdiction over one defendant by attributing to it *another* defendant's contacts with the forum – whether by virtue of a claimed "conspiracy" or otherwise) (emphasis added); *Bertha Building Corp. v. Nat'l Theatres Corp.*, 248 F.2d 833 (2d Cir. 1957) (holding that the mere presence of one co-conspirator within the jurisdiction does not render alleged co-conspirators outside the jurisdiction amendable to process).

Plaintiffs are also wrong on the facts.  Despite their rhetoric, they point to no record evidence that supports their attempt to attribute UCAP's alleged contacts in the United States to UCCS.  As the Court recognized, and Plaintiffs implicitly acknowledge, there is simply no basis in any of Plaintiffs' 41 exhibits to determine that UCCS transacted business in Connecticut to any significant degree.  The speculation that some unquantified number of orders "*may . . . relate*" to UCCS merely because UCCS, like UCAP, is a wholly-owned subsidiary of UCC, is no basis for any inference that UCCS placed so many orders onto UCC's central computer system that it "transact[ed] business of a substantial nature in Connecticut."  Order at 8.

      B.      **The Record is Devoid of Any Indication that <u>Dow Singapore Transacted Business in Connecticut.</u>**

Weaker still is Plaintiffs' argument with respect to Dow Singapore. The Court's holding that Plaintiffs "do not offer *any* proof that Dow Singapore had *any* contacts, substantial or not, within Connecticut" was entirely accurate. Order at 8 (emphasis added). The uncontradicted evidence before the Court indicates that Dow Singapore has no contacts whatever with Connecticut. *See, e.g.,* Declaration of Sam Ong (Appendix A to Memorandum in Support of Dow Chemical Pacific (Singapore) Pte. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction) ("Ong Decl."), ¶¶ 8-19. Nevertheless, Plaintiffs claim that the record "compel[s] the reasonable conclusion that Dow Singapore made 'substantial' purchases of products in Connecticut." Pls. Mem. at 9. In support of this renewed argument, Plaintiffs speculate that because Dow Singapore assumed UCAP's business relationship with them in early 2002, and because "UCAP was transacting business in Connecticut" before then, Dow Singapore too must have made enough purchases in Connecticut to have transacted business of a substantial nature. Pls. Mem. at 9-10. This evidence, Plaintiffs claim, was "overlooked" by the Court and would support a "*prima facie* showing of personal jurisdiction over Dow Singapore" had the Court duly considered it. *Id.* at 10.

The Court overlooked nothing in this regard. In determining whether personal jurisdiction exists, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). Applying that standard here – as the Court clearly did in its opinion – Dow Singapore's dismissal from this litigation must stand. Dow Singapore is fundamentally different from UCAP and UCCS; since its incorporation in 1992, it is been a wholly-owned subsidiary of TDCC, which is located in

8

Michigan, not Connecticut. See Ong Decl. ¶¶ 4, 20.[5] That Dow Singapore assumed UCAP's business relationship with Plaintiffs in 2002 says nothing about whether Dow Singapore transacts business in Connecticut. Plaintiffs offer no basis for utilizing UCAP's pre-2002 conduct as a proxy for Dow Singapore's business conduct thereafter. The Court therefore ruled correctly in finding that "plaintiffs fail[ed] to establish jurisdiction" over Dow Singapore.

### III. JURISDICTIONAL DISCOVERY HERE WOULD AMOUNT TO AN UNJUSTIFIED FISHING EXPEDITION.

Plaintiffs repeatedly complain that they had "limited discovery" with which to make their case, and that, had they been allowed to take broader discovery, they would have made a better showing. See, e.g., Pls. Mem. at 2, 3, 4, 6, 7, 9, 10, and 11. Plaintiffs submitted 41 exhibits in opposition to the foreign defendants' personal jurisdiction motions. And, though they would have this Court believe otherwise, they had far more than that with which to work. Plaintiffs' contention that the Court's order of dismissal should be stayed pending the completion of jurisdictional discovery regarding UCCS's and Dow Singapore's potential contacts with Connecticut, see Pls. Mem. at 10-11, is therefore meritless and should be denied.[6]

Plaintiffs argue that, shortly after TDCC and UCC moved to dismiss Plaintiffs' claims on September 9, 2002, those defendants "sought to limit discovery at that time solely to issues

---

[5] While it is incorrect that TDCC created Dow Singapore "[a]round th[e] time of TDCC's acquisition of UCC," see Order at 3, this scrivener's error is not material to the Court's determination that it lacks personal jurisdiction over Dow Singapore.

[6] This is not the first time Plaintiffs have demanded more discovery to satisfy their own threshold obligations. Plaintiffs made a similar request for jurisdictional discovery in their original brief in opposition to the foreign defendants' personal jurisdiction motions. See Memorandum of Law in Opposition to Defendants Union Carbide Asia Pacific, Inc., Union Carbide Customer Services Pte. Ltd. and Dow Chemical Pacific (Singapore) Pte. Ltd.'s Motions to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction, at 1, 12. In granting UCCS's and Dow Singapore's Motions the Court thus has already rejected Plaintiffs' application. Plaintiffs have not offered any legitimate basis for this Court to revisit that decision.

9

involving *forum non conveniens* and subject matter jurisdiction." Pls. Mem. at 3. But what Plaintiffs fail to mention is that, in light of the broad language of the Court's November 14, 2002 Order, TDCC and UCC were obligated to – and, in fact, did – produce a much greater range of documents than would have been even arguably relevant to just the *forum non conveniens* and subject matter jurisdiction issues raised in TDCC's and UCC's motions to dismiss. TDCC and UCC produced over 100,000 pages of documents that were culled not only from the files of TDCC and UCC, but from a host of "related" corporations, including UCAP, UCCS and Dow Singapore. It is those very documents, of course, which Plaintiffs used in their effort to establish personal jurisdiction.

     Moreover, Plaintiffs' dissatisfaction with the discovery they obtained is insufficient grounds for subjecting UCCS and Dow Singapore – two Singapore-based companies – to needless and burdensome discovery. This is especially so given that all Plaintiffs offer in support of their request is the surmise that more evidence must be out there somewhere. But "imposing . . . burdensome, wide-ranging discovery against defendants from a foreign nation is not appropriate at a stage where the district court is trying to determine whether it has any power over the defendants." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946, 947 (7th Cir. 2000) ("Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists.") (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998)).

     Plaintiffs already have enjoyed extensive discovery and, as this Court ruled, failed to make their *prima facie* showing of personal jurisdiction. Their repeated request for additional discovery should be denied.

## CONCLUSION

This Court has already heard all of Plaintiffs' arguments, reviewed all of the record evidence and issued its decision. In their motion for reconsideration, Plaintiffs have offered nothing more than their own unsurprising opinion that, had this Court looked at the law and the evidence as they do, it would have reached a different result. But the standard for reconsideration is not disagreement.

Despite ample discovery on jurisdictional issues, Plaintiffs failed to show that UCCS and Dow Singapore "transact business" in Connecticut such that they are subject to personal jurisdiction. Plaintiffs have not shown any basis for reconsideration of that determination, or for further discovery from foreign nationals on the subject. Their Motion therefore should be denied in its entirety.

Respectfully submitted,

_____/s/_____

| | |
|---|---|
| Craig A. Raabe (ct 04116) | Andrew S. Marovitz (ct 25409) |
| Edward J. Heath (ct 20992) | Britt M. Miller (ct 25411) |
| ROBINSON & COLE LLP | MAYER, BROWN, ROWE & MAW LLP |
| 280 Trumbull Street | 190 S. La Salle Street |
| Hartford, CT 06103-3597 | Chicago, IL 60603-3441 |
| (860) 275-8304 | (312) 782-0600 |
| | |
| | Christopher J. Kelly (ct 25410) |
| | MAYER, BROWN, ROWE & MAW LLP |
| | 1909 K Street |
| | Washington, DC 20006-1157 |
| | (202) 263-3000 |

*Counsel for Union Carbide Customer Services Pte, Ltd. and  
Dow Chemical Pacific (Singapore) Pte. Ltd.*

11

## CERTIFICATE OF SERVICE

This is to certify that that a copy of the foregoing was served on this 24th day of December, 2003, as follows:

    Robert M. Langer, Esquire        Richard S. Taffet, Esquire
    Wiggin & Dana LLP              Thelen Reid & Priest LLP
    One City Place                     875 Third Avenue
    185 Asylum Street                New York, New York 10022-6225
    Hartford, CT 06103-3402       **(via overnight courier)**
    **(via hand delivery)**

    Suzanne Wachstock, Esquire
    Wiggin & Dana LLP
    400 Atlantic Street
    P.O. Box 110325
    Stamford, CT 06911-0325
    **(via first-class mail, postage prepaid)**

                            /s/
                          CRAIG A. RAABE