# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : : : : | |
| Plaintiffs, | : : | Civil No. 3:02 CV 1107 (AVC) |
| v. | : : | |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER  SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., | : : : : : : | |
| Defendants. | : | December 23, 2003 |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO RECONSIDER ORDER DENYING MOTIONS TO DISMISS FEDERAL ANTITRUST CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, IL  60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC  20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND BACKGROUND ............................................................ 1

ARGUMENT ....................................................................................................... 4

    A.    The September 12 Order Misconstrues The FTAIA And *Kruman*..................... 4

    B.    The September 12 Order Fails to Address Whether The Alleged Effects On U.S. Commerce Are Sufficiently Direct, Substantial, And Reasonably Foreseeable ............................................................................ 7

        1.    Plaintiffs have not sufficiently alleged a "direct" effect on U.S. commerce ....................................................................... 8

        2.    Plaintiffs have not sufficiently alleged a "substantial" effect on U.S. commerce ..................................................................11

        3.    Plaintiffs have not sufficiently alleged a "reasonably foreseeable" effect on U.S. commerce ...................................11

    C.    The September 12 Order Conflicts With Prior Decisions In Analogous Cases And With The Views Of The Federal Antitrust Enforcement Agencies ....................................................................................12

CONCLUSION ...................................................................................................15

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Dee-K Enters. v. Heveafil Sdn. Bhd.*, 299 F.3d 281 (4th Cir. 2002),
    *cert denied*, 123 S. Ct. 2638 (2003) ............................................................... 5, 10, 11

*Empagran S.A. v. F. Hoffman-La Roche, Ltd.*, 315 F.3d 338 (D.C. Cir.),
    *cert. granted*, 2003 WL 22734815 (2003) ................................................................. 3

*Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984) ............................... 9-12

*Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242 (S.D.N.Y. 1997) ........................... 9

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993) ..................................................... 10, 14

*'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987) ...................... 13

*In re Air Crash at Dubrovnik*, 2001 WL 777433, at *1 (D. Conn. 2001) ..................................... 4

*Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002) ............................................. *passim*

*Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920 (E.D.N.Y. 1985) ................. 11, 13

*Malik v. Meissner*, 82 F.3d 560 (2d Cir. 1996) ....................................................................... 9

*McElderry v. Cathay Pacific Airways, Ltd.*, 678 F. Supp. 1071 (S.D.N.Y. 1988) ........... 10, 12, 13

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ........................................... 11, 13

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ...................................................... 8

*S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.*,
    1997 WL 86413, at *9 (D. Del. 1997) ...................................................................... 13

*Toyota Motor Mfg., Inc. v. Williams*, 534 U.S.184 (2002) ........................................................ 11

*Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir. 2002) .................................... 9

*United States v. Fernandez-Antonia*, 278 F.3d 150 (2d Cir. 2002) ................................................ 7

*United States v. LSL Biotechnologies, Inc.*, 2002 WL 31115336, at *5
    (D. Ariz. 2002) ............................................................................................................. 5, 7

*Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002) ...................... 8

ii

**TABLE OF AUTHORITIES – Continued**

**Page**

**Statutes**

15 U.S.C. § 6a ................................................................................................................ *passim*

**Other Authorities**

*Extraterritorial Application of U.S. Antitrust Law:  What Is a "Direct, Substantial, and Reasonably Foreseeable Effect" Under the Foreign Trade Antitrust Improvements Act?*, 38 TEX. INT'L L.J. 11, 19 (2003).................................... 8, 10, 11

L. Greenhouse, "Justices Agree to Tackle Antitrust Case," *N.Y. Times*, Dec. 16, 2003, at C1 ..................................................................................................................... 3

U.S. Dep't of Justice and Federal Trade Comm'n, *Antitrust Enforcement Guidelines for International Operations*, 4 Trade Reg. Rep. (CCH) ¶ 13,107 (1995).................................................................................................................. 13, 14

## INTRODUCTION AND BACKGROUND

Pursuant to this Court's December 9 ruling, defendants respectfully seek reconsideration of the September 12, 2003 Order ("September 12 Order") (Ex. A).  The September 12 Order relies upon an improper legal standard to deny defendants' motion to dismiss plaintiffs' federal antitrust claim for lack of subject matter jurisdiction.

Count I of the Amended Complaint ("Complaint" or "Cmplt.") should have been dismissed for failure to satisfy the jurisdictional requirements of the Foreign Trade Antitrust Improvements Act of 1982 (the "FTAIA"), 15 U.S.C. § 6a(1).  The FTAIA provides:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless –
>
> > (1)    such conduct has a direct, substantial, and reasonably foreseeable effect –
> >
> > > (A)    on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
> > >
> > > (B)    on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
> >
> > (2)    such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.
>
> If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a.

Count I  – the only federal claim in the action – fails as a matter of law to satisfy subsection (1) of the FTAIA, which precludes application of the Sherman Act to conduct that does not actually have a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce.  Here, plaintiffs allege that they were injured because of a purported resale price

arrangement for the resale of goods to end-user customers located *exclusively in India*. Letter from Defense Counsel William L. Webber to Plaintiffs Counsel Richard S. Taffet at 1 ("Plaintiffs have stipulated that all of their customers that pertain to this lawsuit are located in India") (Feb. 19, 2003) (Ex. B); *see* Response Letter from Plaintiffs' Counsel at 1 ("We generally agree with your memorialization of the Court's rulings, as far as it goes.") (Mar. 6, 2003) (Ex. C).

Instead of evaluating whether the allegations of resale price maintenance to end-users in India meet the first part of the FTAIA's actual statutory standard – by sufficiently alleging an actual "direct, substantial, and reasonably foreseeable effect" on U.S. commerce – the September 12 Order relies upon a very different test:

> To establish jurisdiction, a plaintiff need only demonstrate conduct directed at both domestic and foreign markets [that] actually reduced the competitiveness of a domestic market [or otherwise] mak[es] possible anticompetitive conduct that gives rise to a claim under the Sherman Act.

September 12 Order at 15 (internal quotation marks and ellipsis omitted) (Ex. A). The Court ruled that the Complaint satisfied those requirements because (1) plaintiffs' allegation of a *per se* violation means that anticompetitive effects are "presumed"; (2) plaintiffs alleged that defendants *intended* their purported agreement to fix resale prices in India to prevent price erosion in the United States and to diminish and restrain competition in the sale and resale of Union Carbide products in and from the United States; and (3) record evidence "suggest[s] that the defendants made pricing decisions for the Indian market based on anticipated domestic market consequences." *Id*. at 16. Each of these findings was driven by arguments made in plaintiffs' brief opposing dismissal. *See, e.g.,* Pls. Opp. To Defs.' Mot. To Dismiss at 23-27 (Nov. 12, 2002).

2

Defendants promptly filed a motion to certify the ruling for interlocutory appeal, noting that the Court had relied upon a standard not supported by the case law or the actual text of the FTAIA.  Denying the motion without prejudice, the Court requested that defendants file for reconsideration, raising the same arguments set forth in their certification motion and addressing whether the Complaint alleges with sufficient particularity the effects required by the FTAIA.  Order (Dec. 9, 2003) (Ex. D).  The Court contemporaneously directed plaintiffs, in response to this motion, to *specify* the substantial and reasonable foreseeable effects that they say preclude dismissal.  *Id.*

As demonstrated below, reconsideration is warranted.   The September 12 Order misconstrues both the FTAIA and the Second Circuit's decision in *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002),[1] and hence fails to evaluate under a proper standard whether

---

[1] Just last week, the United States Supreme Court granted *certiorari* to review a holding that the FTAIA permits defendants "who are injured solely by [some] conduct's effect on foreign commerce" to sue under the Sherman Act, so long as the purportedly anticompetitive conduct also affected someone in the U.S., even if that someone is not a plaintiff in the case.  *See Empagran S.A. v. F. Hoffman-La Roche, Ltd.*, 315 F.3d 338, 341 (D.C. Cir.), *cert. granted*, 2003 WL 22734815 (2003).  That is precisely the question at issue in the Second Circuit's *Kruman* case so heavily relied upon by plaintiffs here.  284 F.3d 384 (2d Cir. 2002).  As Linda Greenhouse wrote in *The New York Times* last week,

> The Supreme Court might have had an opportunity to take up this question last year, after the federal appeals court in New York issued a similar ruling [in *Kruman*] and permitted foreign customers of the Christie's and Sotheby's auction houses to sue in federal court, accusing them of fixing prices for their services at overseas auctions.  But that case was settled while a Supreme Court appeal was pending.   Other appeals courts, meanwhile, have retained the longstanding position that such cases may not be brought here.

L. Greenhouse, "Justices Agree to Tackle Antitrust Case," *N.Y. Times*, Dec. 16, 2003, at C1 (Ex. E).  If the Supreme Court decides that plaintiffs may not pursue such claims, *Kruman* will no longer be good law and Count I of this case would need to be dismissed on grounds independent from this motion, because (as noted above) plaintiffs stipulated that the customers to whom they

(cont'd)

3

plaintiffs have sufficiently alleged a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. It also conflicts with previous decisions on similar facts and, significantly, with the published jurisdictional guidelines promulgated by the U.S. Department of Justice and the Federal Trade Commission.

Defendants' motion should be granted.

## ARGUMENT

There can be no dispute about the propriety of a motion for reconsideration here, where the Court has suggested that one be filed in lieu of a request for an immediate certification to the Second Circuit. *See* Order (Dec. 9, 2003) (Ex. D); *see In re Air Crash at Dubrovnik*, 2001 WL 777433, at *1 (D. Conn. 2001) (Covello, C.J.) (reconsidering earlier decision based upon defendants' position that "the court misapplied the relevant standard"). Reconsideration of the September 12 Order will permit this Court to apply the proper standard, as set forth in the FTAIA, and thereby provide for a just resolution on the jurisdictional issue posed by defendants' motion to dismiss.

### A. The September 12 Order Misconstrues The FTAIA And *Kruman*.

The FTAIA generally precludes extraterritorial application of the Sherman Act unless the challenged conduct (1) "has a direct, substantial, and reasonably foreseeable effect" on United States commerce and (2) "such effect gives rise to [an antitrust] claim." 15 U.S.C. § 6a. The relevant portion of defendants' motion to dismiss focused on subsection (1) of the FTAIA and demonstrated that plaintiffs' allegations do not involve any "direct, substantial, and reasonably foreseeable effect" on U.S. commerce.

_____

(… cont'd)

resold products all were located in India and their alleged injury would have derived from that foreign effect. This issue will be presented in a separate motion.

The September 12 Order fails to measure plaintiffs' antitrust claim against the requirements of subsection (1).  To satisfy those requirements, it is not enough to allege anticompetitive "conduct directed 'at both domestic and foreign markets'" (September 12 Order at 15 (Ex. A)).  Conduct "directed at" domestic markets does not necessarily produce "direct, substantial, and reasonably foreseeable" effects on those markets.  Nor can plaintiffs skirt the plain statutory language by alleging that the challenged conduct "actually reduced" competition in the U.S.  *Id*.  Rather, as the FTAIA expressly states, a plaintiff must sufficiently allege that such conduct had an effect on U.S. commerce that was "direct, substantial, and reasonably foreseeable."  The September 12 Order does not address whether plaintiffs have satisfied each of these effects requirements.  As shown below, plaintiffs have not.

Nor does plaintiffs' allegation of a *per se* violation mean that the "anticompetitive effect of the alleged conduct is presumed" (September 12 Order at 16) (Ex. A), as plaintiffs suggest.  A presumption of anticompetitive effect, whatever its significance in domestic cases, says nothing about satisfaction of the FTAIA's "different jurisdictional standards."  *United States v. LSL Biotechnologies, Inc.*, 2002 WL 31115336, at *5 (D. Ariz. 2002).  Where the conduct is domestic, courts look only to the "existence of interstate effects" to determine jurisdiction, whereas with foreign conduct courts look to the "magnitude" of such effects.  *Id.*  Plaintiffs' "*per se*" shortcut label does not speak to the required magnitude.  If alleging a *per se* violation were sufficient, "however foreign the conduct, United States courts would have jurisdiction without any showing whatsoever of an effect on United States commerce."  *Dee-K Enters. v. Heveafil Sdn. Bhd.*, 299 F.3d 281, 292 (4th Cir. 2002), *cert denied*, 123 S. Ct. 2638 (2003).  To allow a plaintiff to circumvent jurisdictional prerequisites in such fashion would abrogate the FTAIA in price-fixing cases.  That is not the law.

The September 12 Order's misapplication of the FTAIA resulted from a misconstruction of *Kruman*. As noted above, the Court ruled (at 15) that "a plaintiff need only demonstrate conduct directed 'at both domestic and foreign markets [that] actually reduced the competitiveness of a domestic market . . . [or] [otherwise] mak[es] possible anticompetitive conduct that "give[s] rise to a claim" under the Sherman Act.'" But the internally quoted language from *Kruman* and incorporated into this Court's test was not directed to subsection (1) of the FTAIA at all. Instead, it was directed to subsection (2).

In *Kruman*, unlike this case, the defendants did "not dispute that there was a 'direct, substantial, and reasonably foreseeable effect' on domestic commerce." 284 F.3d at 399 n.5. That effect flowed inexorably from the claimed violation, "explicit agreements to fix prices in both foreign and domestic markets." *Id*. at 402. For that reason, as the Second Circuit made clear, its decision in *Kruman* was focused on subsection (2) of the FTAIA. *Id*. at 399-400. Indeed, immediately following the language quoted by this Court, the Second Circuit noted that the effects test of subsection (1) provides "*another* significant limit" which it "did not address" because "the defendants did not argue that the effect of their conduct on domestic commerce was not direct, substantial, or reasonably foreseeable." *Id*. at 402 (emphasis added). Thus, the language from *Kruman*, quoted in the September 12 Order and essential to its jurisdictional test, had nothing to do with the issue presented by this motion.

Nevertheless, in referencing the FTAIA's *other* significant limit, the Second Circuit provided guidance for cases where, as here, satisfaction of the subsection (1) effects test is at issue. The court of appeals explained that the purpose of subsection (1) is to "prevent conduct that merely has *an ancillary effect* on our markets from being actionable under our antitrust laws." 284 F.3d at 402 (emphasis added). That is the question posed by defendants' motion to

6

dismiss, whether the conduct alleged by plaintiffs had a "direct, substantial, and reasonably foreseeable" — or merely an "ancillary" — effect on U.S. commerce.

**B.    The September 12 Order Fails to Address Whether The Alleged Effects On U.S. Commerce Are Sufficiently Direct, Substantial, And Reasonably Foreseeable.**

As subsection (1) of the FTAIA makes plain, the only way to determine whether the Sherman Act applies to plaintiffs' claim of resale price maintenance in India is to determine whether plaintiffs have sufficiently alleged "direct, substantial, and reasonably foreseeable" effects from that conduct on U.S. commerce. 15 U.S.C. § 6a. The FTAIA's use of the conjunctive "and" demonstrates Congress's intent that all three effects requirements be satisfied. *See United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002) (where statutory "requirements are conjunctive," claimant "must establish all three").

Furthermore, to prevent the FTAIA from becoming a dead letter, it is essential that such allegations be more than boilerplate. In today's global economy, it is not difficult to allege in sweeping fashion that a restraint *anywhere* in the world affects prices *everywhere*, including the U.S. But if that were enough to obtain jurisdiction over a claim based on price restraints abroad, the FTAIA would pose no barrier and American courts would be flooded with such claims. It was to prevent transforming our courts into world courts adjudicating such foreign controversies that Congress required that effects on the U.S. be "direct, substantial, and reasonably foreseeable." To implement Congress's intent and make the FTAIA meaningful, a plaintiff must allege facts that, if proven, would satisfy those criteria. *See LSL Biotechnologies*, 2002 WL 31115336, at *4 (FTAIA requires plaintiffs to satisfy "a higher standard" when pleading jurisdiction than in "standard commerce clause" cases). Plaintiffs have not come close to doing so here.

1.    **Plaintiffs have not sufficiently alleged a "direct" effect on U.S. commerce.**

The distinction between a direct and indirect effect is well established.  "[A]n effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity."  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (alleged effect of conduct in foreign country was "too remote and attenuated" to satisfy federal statute's "'direct effect'" requirement).  A limit on a statute's extraterritorial reach through a "direct effect" requirement "'ensures that jurisdiction may not be predicated on purely trivial effects in the United States'" from "'ripples caused by an overseas transaction'" that "'manage *eventually* to reach the shores of the United States.'"  *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 236 (2d Cir. 2002) (emphasis added).  Plaintiffs have neither alleged nor supported any "'immediate consequence'" (*Republic of Argentina*, 504 U.S. at 618) on prices in the U.S. from the alleged price restraints in India.

Any effects in the United States from price restraints in India are too "'speculative, generalized, immeasurable, and ultimately unverifiable'" to support jurisdiction.  *Virtual Countries*, 300 F.3d at 237 (citation omitted).  Plaintiffs have not alleged (nor could they allege) what commentators have recognized is a significant indicator of a direct effect — "the elimination or significant reduction of competition" in a U.S. market.  Richard W. Beckler & Matthew H. Kirtland, *Extraterritorial Application of U.S. Antitrust Law:  What Is a "Direct, Substantial, and Reasonably Foreseeable Effect" Under the Foreign Trade Antitrust Improvements Act?*, 38 TEX. INT'L L.J. 11, 19 (2003).  The Complaint does not specifically allege *any* price restraints in the United States, *any* relevant product sales in the United States or *any* harm to any consumers in the United States.  Indeed, plaintiffs have stipulated that they

8

made no sales of the relevant products in the United States (or anywhere other than India).  *See* Stipulation Letters (Exs. C and D).

Instead, plaintiffs allege only that defendants sought to "ensure" that prices in India would not cause price erosion in the U.S.  Cmplt. ¶ 29 (*quoted in* September 12 Order at 16) (Ex. A).  Such claimed remote "spillover effect[s]" are not "direct" effects within the meaning of the FTAIA.  *Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102, 1107 (S.D.N.Y. 1984); *see also Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 303 (3d Cir. 2002) (FTAIA subsection (1) not satisfied because "extra-territorial commission rates . . . did not *directly* increase or reduce imports into the United States") (emphasis added).  As in *Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 246-47 (S.D.N.Y. 1997), where purchasers who paid higher prices for athletic shoes because of allegedly fixed resale prices of *other* athletic shoes suffered only "indirect injury," plaintiffs here assert only "indirect injury" to U.S. commerce.  The only direct injury specified in the Complaint (¶¶ 29, 55) was to plaintiffs themselves in India.

Plaintiffs cannot substitute vague allegations of defendants' *intent* to "ensure" price stability in the U.S. for the requisite direct effects.  The FTAIA expressly states that conduct is actionable under the Sherman Act only if it "*has* a direct, substantial, and reasonably foreseeable effect" on United States commerce.  15 U.S.C. § 6a (emphasis added).  As demonstrated above, plaintiffs have alleged no facts indicating that the alleged price restraints in India *have* any direct effect on U.S. commerce.

To be sure, as the Court noted (September 12 Order at 16), the Complaint contains a conclusory allegation that competition was restrained in the U.S. "[a]s a direct and proximate result" of the alleged price restraints in India.  But "conclusory allegations" are insufficient to establish FTAIA jurisdiction.  *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  As in *Eurim-*

*Pharm*, 593 F. Supp. at 1107, the "link" between alleged "price-fixing only in a foreign market" and prices in the United States "is far from apparent," and the Complaint's boilerplate offers no clue as to how alleged price restraints in India affected actual prices in the U.S. *See McElderry v. Cathay Pacific Airways, Ltd.*, 678 F. Supp. 1071, 1077 (S.D.N.Y. 1988) (rejecting allegations of a direct anticompetitive effect on U.S. commerce as "conclusory" because "the complaint presents no facts in support of those allegations"); Beckler & Kirtland, *Extraterritorial Application*, *supra*, at 19 (only "a specific link to anticompetitive effect within the United States" will satisfy FTAIA's "'direct'" effect requirement) (citing cases).[2]

The record documents referenced by the Court, reflecting "domestic market pricing concerns," "examin[ing] competitive pricing during world strategy meetings," and "consider[ing] the firmness of domestic prices before deciding whether to meet competitive pricing in the India market" (September 12 Order at 16 n.3), do not redress plaintiffs' failure to allege direct injury to U.S. commerce from the alleged price restraints in India. None of these documents indicates that the pricing in India *actually had any effect whatsoever* on prices in the United States. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) (Sherman Act applies to foreign conduct only if it "did in fact produce some substantial effect in the United States"). Plaintiffs' speculation that there might be such a relationship is insufficient to allow an antitrust case to go forward under the FTAIA standards. *See Dee-K*, 299 F.3d at 295 (a "handful of faxes [and] contacts with the United States" were "mere drops in the sea of conduct that occurred in Southeast Asia").

---

[2] Significantly, the Complaint never identifies how *plaintiffs* actually were injured by the alleged resale price maintenance agreement. They do not identify specific lost customers, or articulate how – as non-exclusive distributors – they were unable to supply their Indian customers with product manufactured by others.

2.    **Plaintiffs have not sufficiently alleged a "substantial" effect on U.S. commerce.**

"'Substantial'" means "'considerable'" or "'to a large degree.'"  *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 196 (2002).  A statute's use of "substantial" as a modifier thus "clearly precludes . . . minor effects."  *Id*. at 197.  Cases construing the FTAIA make clear that "'injury to the market or to competition in general'" is required, "'not merely injury to individuals or individual firms.'"  Beckler & Kirtland, *Extraterritorial Application*, *supra*, at 18, quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988). The Complaint does not specifically aver that alleged price restraints in India produced *any actual* effects on U.S. customers at all, let alone "substantial" price effects in the U.S. or otherwise harmed "competition in general."  To the contrary, as in *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920, 925 (E.D.N.Y. 1985), the Complaint alleged "substantial" effects only in a foreign country, whereas "at best domestic consequences are speculative."  Speculative effects in the U.S., even if desired by defendants (which defendants deny), are insufficient.  As in *Dee-K*, 299 F.3d at 285, an *intent* to affect prices in the U.S. by restraining prices abroad does not show "a substantial effect in the United States."  Zero *actual* effects, by any definition, do not satisfy the requirement of substantiality.

3.    **Plaintiffs have not sufficiently alleged a "reasonably foreseeable" effect on U.S. commerce.**

The FTAIA's foreseeability requirement is an objective criterion, as demonstrated by the fact that Congress modified "foreseeable" by "reasonably."  15 U.S.C. § 6a.  As the court in *Eurim-Pharm*, put it:  "The objective nature of [FTAIA's] test is evident from the use of 'reasonably' and 'foreseeable.'  The test is whether the effect would have been evident to a reasonable person making practical business judgments, not whether actual knowledge or intent

11

can be shown." 593 F. Supp. at 1106 n.4; *accord McElderry*, 678 F. Supp. at 1077. The September 12 Order erred by suggesting that allegations of "*anticipated* domestic market consequences" are sufficient to satisfy the subsection (1) effects test. September 12 Order at 16 (emphasis added).

It would not have been reasonable to anticipate that alleged contractual restraints on resale prices of goods resold by these plaintiffs in distant India would affect prices and competition in the United States in any "practical business" sense. And, significantly, plaintiffs never allege that the products they sold to end-users in India actually were subject to arbitrage or resale again, from India to the United States. In any event, the FTAIA's objective foreseeability requirement precludes reliance on snippets of language derived from thousands of pages of records to weave together some subjective hope that prices could be upheld. And plaintiffs have not alleged – and cannot reasonably allege – how such an effect would be reasonably foreseeable from the remote conduct alleged in the Complaint.

### C.    The September 12 Order Conflicts With Prior Decisions In Analogous Cases And With The Views Of The Federal Antitrust Enforcement Agencies.

The September 12 Order fails to recognize that, since the FTAIA was enacted, federal courts and the U.S. Government consistently have rejected the jurisdictional applicability of the Sherman Act to complaints raising allegations similar to those raised by plaintiffs here.

For example, as here, the plaintiff in *Eurim-Pharm*, a foreign distributor, alleged that Pfizer's prescribed resale prices and participation in a "worldwide cartel" caused the plaintiff to lose sales in an overseas market. 593 F. Supp. at 1104-06. The court dismissed the complaint for lack of jurisdiction, explaining that a mere "spillover effect" in the U.S. in the form of inflated prices for the same product was insufficient to constitute a "direct, substantial, and reasonably foreseeable" effect on U.S. commerce. *Id*. at 1106-07. Indeed, the court noted, this

was "precisely the type of case Congress sought to eliminate from United States antitrust jurisdiction when it amended the Sherman Act in 1982." *Id.* at 1107 That conclusion follows *a fortiori* here, where plaintiffs have not alleged a "worldwide cartel" but only an agreement to restrain resale prices in India.

All other cases we have located involving analogous allegations reached the same conclusion and dismissed for lack of jurisdiction. *See McGlinchy*, 845 F.2d at 813 (the only injury sufficiently pleaded was "to customers or potential customers located in Southeast Asia"); *McElderry*, 678 F. Supp. at 1078 (allegations regarding the defendant's excess baggage charge system were insufficient to show "a direct, substantial and reasonably foreseeable anticompetitive effect on United States commerce"); *Liamuiga Tours*, 617 F. Supp. at 925 (alleged elimination of Caribbean plaintiff from tour business market was insufficient to show "any direct, substantial, or reasonably foreseeable effect on competition among United States tour operations"); *S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.*, 1997 WL 86413, at *9 (D. Del. 1997) (Chinese plaintiffs' lost sales "are not injuries within the United States"); *'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 499-500 (M.D.N.C. 1987) (resale price-fixing claim by French plaintiff did not allege that products were resold in the U.S.). This uniform weight of authority in analogous cases provides a further basis for reconsideration of the September 12 Order.

A final and significant ground for reconsideration is that the Court's ruling conflicts with the views of the federal antitrust enforcement agencies in published guidelines that are consistent with the judicial rulings cited above. *See* U.S. Dep't of Justice and Federal Trade Comm'n, *Antitrust Enforcement Guidelines for International Operations*, 4 Trade Reg. Rep. (CCH) ¶ 13,107 (1995), *available at* http://www.usdoj.gov/atr/public/guidelines/internat.htm. One

example in those federal guidelines is instructive here, hypothesizing an agreement among cartel members to fix prices only in a foreign country.  *Id*., Illustrative Example C, Variant (1). Because the hypothetical cartel members still could charge whatever price they pleased in the United States, any effect from the agreement on prices in the U.S., according to the federal agencies, would be only indirect and insubstantial and thus not within the reach of the U.S. antitrust laws:

> The mere fact that the existence of U.S. sales or the level of U.S. prices may *ultimately be affected* by the cartel agreement is not enough for either *Hartford Fire* jurisdiction or the FTAIA.

*Id*. (emphasis added).  The lack of subject matter jurisdiction demonstrated by this illustration applies with even more force here, where the alleged harm has nothing to do with a cartel among co-manufacturers to fix prices.  Instead, plaintiffs here allege the existence of resale price maintenance in India and have not alleged any agreement to restrain prices in the U.S.

14

**CONCLUSION**

For the foregoing reasons, defendants' motion for reconsideration should be granted and plaintiffs' federal antitrust claim (Count I) should be dismissed for lack of jurisdiction.

Respectfully submitted,

_____/s/_____

Craig A. Raabe (ct 04116)                Andrew S. Marovitz (ct 25409)
Edward J. Heath (ct 20992)               MAYER, BROWN, ROWE & MAW LLP
ROBINSON & COLE LLP                      190 S. La Salle Street
280 Trumbull Street                      Chicago, IL  60603-3441
Hartford, CT  06103-3597                 (312) 782-0600
(860) 275-8304

                                         Christopher J. Kelly (ct 25410)
                                         MAYER, BROWN, ROWE & MAW LLP
                                         1909 K Street
                                         Washington, DC  20006-1157
                                         (202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

5023830

15