Because the amended complaint alleges a <u>per se</u> violation of the Sherman Act, the anticompetitive effect of the alleged conduct is presumed. Because the amended complaint and evidentiary record support the conclusion that such conduct was directed at both the foreign and domestic market, the court concludes that it has jurisdiction. The amended complaint alleges that the defendants coerced the plaintiffs into agreeing to fix the resale price of Union Carbide products in India, and that they did so in order to "ensure that prices charged by [the] [p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-users. . . <u>in the United States</u> as well as in other jurisdictions. . .," and that,

> [a]s a direct and proximate result of [the] [d]efendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from <u>the United States</u> was improperly diminished and restrained. . .

Further, documentary evidence submitted in connection with the instant motion suggest that the defendants made pricing decisions for the Indian market based on anticipated domestic market consequences.[3] Because there is alleged antitrust conduct

---

[3] By way of illustration, the record reflects various e-mails and correspondence in which: (1) the defendants refused orders placed by the plaintiffs because of domestic market pricing concerns (Decl. of R. Taffet, Exh.D); (2) that the defendants examined competitive pricing during world strategy meetings (Decl. of R. Taffet, Exh. E); and (3) that the defendants considered the firmness of domestic prices before deciding whether to meet competitive pricing in the India market. (Decl. of R. Taffet, Exh.H).

directed at both domestic and foreign markets, the plaintiffs have established that their claim involves a direct, substantial and reasonably foreseeable effect on the domestic commerce of the United States and, accordingly, the motion to dismiss count one for lack of subject matter jurisdiction is denied.

## II

## The State Law Claims

### Choice of Law

The defendants next argue that, under choice of law analysis, the laws of India or Singapore apply to the plaintiffs' state law claims. Consequently, for those state law claims set forth in the amended complaint that are not recognized under the laws of India or Singapore, the defendants argue that dismissal is appropriate. With respect to the claims that are recognized under foreign law, i.e., the breach of contract claims and the misrepresentation claims, the defendants argue that the law of Singapore or India is controlling. In response, the plaintiffs maintain that, to the contrary, under Connecticut choice of law rules, Connecticut law governs their claims and therefore, neither dismissal nor application of foreign law is appropriate here.

In a diversity action, a federal court must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941). In Connecticut, the rule requires the court to select the local law of the state having the most significant relationship to the

occurrence and the parties to the dispute. <u>Reichhold Chemicals, Inc v. Hartford Accident & Indemnity Co.</u>, 243 Conn. 401, 408-14 (1997); <u>O'Connor v. O'Connor</u>, 201 Conn. 632, 652 (1986); Restatement (Second) of Conflict of Laws § 188.

1. The Contract Claims

The amended complaint alleges causes of action based on Connecticut common law precepts concerning breach of contract and breach of the implied covenant of good faith and fair dealing. In applying the most significant relationship test in disputes involving contracts, the court examines: (a) the place of contracting, which is the place where occurred the last act necessary to give the contract binding effect; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. <u>Reichhold Chemicals, Inc</u>, 243 Conn. at 409-10; <u>see also</u> Restatement (Second) of Conflict of Laws § 188(e).

Applying these factors, the court concludes that the law of Singapore governs the contract claims. The amended complaint alleges contract violations beginning in mid-1999 and then continuing until the end of the parties' relationship in 2002. During this period, the relationship among the parties was governed by the 1995 and 2000 letter agreements. The parties do not dispute that the last act necessary for these two agreements to become binding occurred in Singapore and, specifically, with

the confirmation letters that UCAP sent to MMGS and MVS from UCAP's offices in Singapore. Hence, the place of contracting is Singapore.

With respect to the second factor, i.e., the place of contract negotiation, there is simply no one place of contract negotiation. The plaintiffs negotiated the agreements from Singapore. Union Carbide claims to have negotiated them from Connecticut. With respect to the third factor, i.e., contract performance, there is, as well, no one place of contract performance. At least part of Union Carbide's contractual obligations were performed in Connecticut, as Union Carbide is headquartered in Danbury. The great majority of the performance contacts, however, occurred outside of the state of Connecticut and, specifically, in the Gulf states and Asia. In this regard, the products at issue were delivered to MMGS and MMGS-S in the Gulf states, and contract payments were made in the United States, though the amended complaint fails to identify any particular state or region.

There is also no link between Connecticut and the fourth consideration, that is, the location of the subject matter of the contract, i.e., the chemical products. With respect to the fifth consideration, i.e., the domicile, residence, nationality, place of incorporation and place of business of the parties, the relevant contacts point to Singapore. Specifically, three of four plaintiffs have offices in Singapore, three of five defendants have their principal place of business in Singapore

19

(including UCAP, Dow Singapore, and UCCS), and two of the four plaintiffs (MMGS-S and MVS), and two of the defendants (Dow Singapore and UCCS) are incorporated in Singapore. In sum, the only contact that this case has to Connecticut is that it is the state where one of five named defendants is headquartered. This is an insufficient basis for applying Connecticut law. See e.g., Patch v. Stanley Works, 448 F.2d 483, 491 (2d Cir. 1971)(applying foreign law because "all the substantial contacts- save only the defendant corporation's factory and offices [located in Connecticut] -are found in New Hampshire"). The contract claims are therefore governed by Singapore law.

   A.   Breach of Contract

The defendants next move to dismiss count two of the amended complaint alleging breach of contract. The defendants argue that the letter agreements are not contracts but simply letters that impose no obligations upon the plaintiffs to make purchases or upon the defendants to make sales and, hence, are void for want of mutuality of obligation. Further, the defendants assert that, to the extent the plaintiffs intend to base their breach of contract claim upon agreements for specific product shipments, the plaintiffs have failed to allege the essential elements for such a claim.

In response, the plaintiffs maintain that the letter agreements do constitute valid contracts and that, while certain terms were left to future agreement, such terms were agreed upon and reflected by invoices and other transactional documentation

and that, moreover, the parties' course of dealing reflects the parties' recognition that binding contractual obligations existed. Further, the plaintiffs assert that, contrary to the defendants' argument, the amended complaint sets forth the essential elements for the breach of contract claim under Fed. R. Civ.P. 8(a), in that, among other things, the defendant allegedly refused to fill orders that had already been accepted.

(i) The Letter Agreements

The court agrees with the defendants that the letter agreements do not constitute enforceable contracts as they are unenforceable for want of mutuality. As set forth above, Connecticut choice of law principles direct that the law of Singapore govern the contract claims. Under Singapore law, mutuality of obligation is necessary for a contract to be enforceable.[4] It is generally accepted in the common law of this country that agreements that impose no specific purchase obligation on a distributor cannot obligate a manufacturer to sell to the distributor. Billings Cottonseed, Inc v. Albany Oil Mill, Inc., 328 S.E.2d 426, 430 (Ga. App. 1985). In such cases, mutuality of obligation is lacking, and the agreement is

---

[4] The defendants have submitted the affidavit of one Edward Lam Chung Weng, an advocate and solicitor of the Supreme Court of the Republic of Singapore. In his statement at ¶ 15, Weng asserts that under the law of Singapore, if "a distribution agreement contains no provision, express or implied, requiring both parties to buy and sell from one another, Singapore courts will not impose liability on the supplier for refusing to accept orders from the distributor." The plaintiffs do not challenge the statement. Accordingly, the court concludes that under Singapore law, as with the common law found in the United States, mutuality is required for enforcement of an contract.

21

therefore unenforceable. <u>Kraftco Corporation v. Kolbus</u>, 274 N.E.2d 153, 156 (Ill.App. 1971) (holding that an alleged oral agreement between a manufacturer and a distributor lacked mutuality of obligation, and was enforceable where the distributor "had no obligation to sell any specific quantity and no obligation to meet any quotas"). "An agreement that does not expressly or impliedly require the distributor to purchase any amount of product from the manufacturer is more accurately characterized as an offer to buy, rather than a binding contract." <u>Parks v. Baldwin Piano & Organ Co.</u>, 262 F. Supp. 515, 519 (D. Conn. 1967) ("At most, the terms of this purported contract were binding only as to deliveries actually made under it.") <u>aff'd</u>, 386 F.2d 828 (2d Cir. 1967). Moreover, under current orthodoxy, an obligation cannot be constructed based on an illusory or indefinite promise, that is, a promise "cloaked in promissory terms, but which, on closer examination, reveals that the promisor is not committed to any act or forbearance." <u>See</u> Calamarie & Perillo, <u>The Law of Contracts</u>, § 4.12(b)(4) (Mutuality of Obligation and Illusory Promises) (2001).

The amended complaint alleges contract breaches beginning in mid-1999 and continuing thereafter through 2002. The applicable letter agreements are the 1995 and 2000 agreements. Because the authenticity of these documents are not in dispute, the court may consider them at the Rule 12(b)(6) juncture. <u>See Shaw v. Digital Equip. Corp.</u>, 82 F.3d 1194, 1219-20 (1st Cir. 1996) (noting that written documents integral to a complaint, including contracts,

are not considered matters outside the pleadings for purposes of Rule 12(b)). Each of the agreements state, in relevant part:

> This is to confirm <u>Union Carbide's interest</u> in selling to [the plaintiff] from time to time effective as of 8th September, 1995, certain of Union Carbide's products for resale by [the plaintiff] to customers located in India.
>
> Each such sale, of course, <u>would be contingent upon the continuing interest of [the plaintiff] and Union Carbide and a mutual agreement on specific terms including volume, specifications, price, payment and delivery</u>. However, certain aspects of our dealings should be consistent such as the following.
>
> - Unless otherwise specified by the parties, all shipments under this contract shall be made on MMGS's behalf and in MMGS's name as shipper. . .
>
>       . . . .
>
> We sincerely <u>look forward to developing</u> a mutually beneficial relationship in the days ahead.

As set forth above, the letter agreements do not obligate Union Carbide to sell anything to the plaintiffs or require the plaintiffs to purchase any products from any of the defendants. The language of the letters is illusory, reflecting only Union Carbide's "interest" in selling products to the plaintiffs. The actual sale, as the letters make clear, would be contingent upon a future mutual agreement on specific contract terms. The letters set no purchase quotas nor require the plaintiffs to deal exclusively[5] in the defendants' products. Instead of obligating

---

[5] If the plaintiffs had promised to obtain the products <u>exclusively</u> from the defendants, a valid requirements contract may well have existed. "In the absence of such a promise [of exclusivity], or some other form of consideration, the requisite mutuality and consideration for a requirements contract is absent." <u>Billings Cottonseed, Inc v. Albany Oil Mill, Inc.</u>, 328

the defendants to make sales, the letter agreements merely state certain terms, i.e., transportation terms, that would apply if the parties later agreed on a particular sale. Consequently, the agreements reflect an indefinite arrangement, imposing no executory obligation on Union Carbide. While evidence of the parties' course of dealing may further define the undertaking at issue here, it cannot be employed to override the clear and unambiguous language of these agreements. See e.g., Crescent Oil & Shipping Services, Ltd. v. Phibro Energy, Inc., 929 F.2d 49, 52 (2d Cir. 1991). Such indefinite agreements as exist here, devoid of the fundamental requisite of mutuality of obligation, are not enforceable against Union Carbide and do not constitute binding contracts for breach of which an action for damages may be maintained. At most, the terms of the agreements were binding as to sales actually made.

(ii) Agreements for Specific Product Shipments

The court agrees with the plaintiffs that the amended complaint alleges with sufficient particularity a cause of action for breach of contract in connection with specific product

---

S.E.2d 426, 429 (Ga. App. 1985). Without an exclusive arrangement, "[t]he promise of the seller becomes merely an invitation for orders and a contract is not consummated until an order for a specific amount is made by the buyer." Id. (citing Propane Industrial v. Gen. Motors Corp., 429 F. Supp. 214, 219 (W.D. Mo. 1977)). See also Wood v. Lucy, Lady Duff-Gordon, 222 NY 88, 90-91, 118 NE 214, 214 (1917) and Uniform Commercial Code § 2-304 (implying promise on part of seller to use best efforts to supply goods -- a promise constituting valid consideration so as to defeat a claim of lack of mutuality -- where buyer agrees to deal exclusively in the seller's products)).

shipments that the defendants allegedly agreed to make under the letter agreements but refused to fill. As set forth above, Connecticut choice of law principles direct that the law of Singapore govern the contract claims. Under Singapore law, the elements of a cause of action for breach of contract are the same as exist under the common law of this country[6] and consist of allegations constituting: (a) the existence of a contract or agreement; (b) the defendant's breach of the contract or agreement; and (c) damages resulting from the breach. Chem-Tek, Inc. v. General Motors Corp., 816 F. Supp. 123, 130 (D. Conn. 1993). In this case, the amended complaint alleges that: (a) the plaintiffs and the defendants entered into a series of agreements whereby the plaintiffs purchased products from the defendants; (b) that the defendants breached their obligations and duties under these agreements by, among other things, failing to fill accepted orders and release accepted orders; and (c) that the plaintiffs suffered damages as a result. This constitutes a "short and plain statement of the claim" as required by Federal Rule of Civil Procedure 8(a).

B. Breach of The Implied Covenant of Good Faith And Fair Dealing

In count three, the amended complaint alleges a cause of action for breach of the covenant of good faith and fair dealing that is implied in every contract. Because this cause of action is derivative of an action for breach of contract, see e.g.,

---

[6] Affidavit of Edward Lam Chung Weng, advocate and solicitor of the Supreme Court of the Republic of Singapore, at ¶¶ 6-8.

Alter v. Bogoricin, No. 97 Civ. 0662, 1997 WL 691332, *7 (S.D.N.Y. 1996); Union Trust Co. v. 714 Main Associates, No. 312088, 1993 WL 7562, *15 (Conn.Super.Ct, January 6, 1993), the same choice of law analysis applies to the implied covenant claim as applies to the breach of contract claim and, accordingly, the law of Singapore governs. As the law of Singapore does not authorize an action for breach of the implied covenant of good faith and fair dealing[7], dismissal is required. See e.g., Atlantic Richfield Co. v. ARCO-Globus Int'l Co., No. 95 Civ. 6361, 1996 WL 742863, *5 (S.D.N.Y. 1996) (dismissing common law claim alleging unfair competition because choice of law rules dictated that Russian law apply, and complaint did not articulate a basis for relief under Russian law).

    2.    The Tort Claims

The amended complaint also alleges causes of action based on Connecticut common law precepts concerning fraudulent misrepresentation, negligent misrepresentation, tortious interference with business expectancies, tortious interference with contractual relationship, and unfair competition. Connecticut's choice of law rules for tort claims require the court to apply the law of the state with the most significant relationship to the occurrence and the parties. O'Connor v. O'Connor, 201 Conn. 632, 652, 519 A.2d 13 (1986); see also Pollack v. Bridgestone/ Firestone, Inc., 939 F. Supp. 151, 153

---

[7] Affidavit of Edward Lam Chung Weng, advocate and solicitor of the Supreme Court of the Republic of Singapore, at ¶ 36.

(D. Conn. 1996). In making this determination, the court considers:

> a) the place where the injury occurred;
> b) the place where the conduct causing the injury occurred;
> c) the residence, place of incorporation and place of business of the parties; and
> d) the place where the relationship, if any between the parties is centered.

Id. "The court must also consider the relevant policies and interests of each state involved (citations omitted). These factors 'are to be evaluated according to their relative importance with respect to the particular issue.'" Pollack v. Bridgestone/ Firestone, Inc., 939 F. Supp. 151, 153 (D. Conn. 1996) (quoting Restatement (Second) Conflicts of Law § 145(2) (1971)).

Applying the above, the court concludes that the law of India governs the tort claims. The amended complaint alleges that Union Carbide, acting through it subsidiaries, the defendants, UCAP and UCCS, and the defendant Dow, acting through Dow Singapore, orchestrated a scheme to usurp the plaintiffs' business in India and, in this way, injure the plaintiffs in India. The place of injury is therefore India.

With respect to the second consideration, i.e., the place where the conduct causing the injury occurred, the amended complaint fails to point to any one location. In this regard, the amended complaint alleges that Union Carbide of Danbury Connecticut, acting through it's subsidiaries UCAP and UCCS in Singapore, refused to authorize orders for products that had been

27

placed by the plaintiffs, and arbitrarily declined to fill other orders, knowing that such actions would "severely damage[] [the] plaintiffs' relationships with long term strategic customers." Further, the amended complaint alleges that after the Union Carbide-Dow merger, Dow of Michigan, acting through Dow of India, and Union Carbide, acting directly and through its affiliate co-defendants in Singapore, undermined the plaintiffs' relationships with the plaintiffs' customers through misrepresentation and through modifications to their billing practices, and further induced the plaintiffs, through false statements, to disclose confidential client information for exploitation by Dow. This conduct, as set forth above, presumably occurred in multiple places, including India, Singapore, Michigan, and Connecticut. While the plaintiffs argue in their brief that the tortious conduct emanated from Union Carbide's headquarters in Connecticut, the amended complaint does not allege any such conduct as emanating exclusively from, or occurring solely in Connecticut. See e.g., O'Brien v. National Property Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (papers in response to a motion to dismiss cannot cure a defect in the pleadings). There is, accordingly, no one place of alleged tortious conduct.

With respect to the third element, i.e., the residence, place of incorporation and place of business of the parties, the weight of the contacts point to Singapore. Although there are significant contacts in the United States generally and, in

particular, the Gulf states, the only contact that this case has to Connecticut is that it is the state where Union Carbide is headquartered.

The last element, i.e., the center of the parties' relationship -- is India. The purpose of the parties' relationship was the resale of chemical products in India. Moreover, the amended complaint alleges that Dow and Union Carbide conducted business with the plaintiffs through the non-party subsidiary, Dow India, in India, and through defendants UCAP, UCCS, and Dow Singapore for the purpose of generating sales in India. Based on a review of the factors set forth above, and the relevant policies and interests of each state involved, the court concludes that the law of India governs the causes of action arising in common law tort.

    1.    Tortious Interference with Business Expectancies, Tortious Interference with Contractual Relationships, Unfair Competition, CUTPA, and the Connecticut Antitrust Act.

In counts six, seven, and eight, the amended complaint alleges violations of common law precepts concerning tortious interference with business expectancies, tortious interference with contractual relationships, and unfair competition. Because the law of India does not provide a similar basis for relief[8], dismissal is required under Federal Rule of Civil Procedure 12(b)(6). See e.g., Atlantic Richfield Co. v. ARCO-Globus Int'l

---

    [8] Affidavit of Som Mandal at ¶¶ 18 and 22. Mandal is a member of the Supreme Court Bar Association of India and the Delhi High Court Bar Association.

Co., No. 95 Civ. 6361, 1996 WL 742863, *5 (S.D.N.Y. 1996) (dismissing common law claim alleging unfair competition because choice of law rules dictated that Russian law apply, and complaint did not articulate a basis for relief under Russian law).

Further, in counts nine, ten, eleven, and twelve, the amended complaint alleges violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b, and the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-26 and 35-28(a). Because these causes of action are based upon elements of unfair competition similar to that which is found in the common law of unfair competition, the same choice of law analysis applies to the CUTPA and Connecticut antitrust claims as applies to the tort claims. See e.g., Emhart Industries, Inc. v. Duracell International, Inc., 665 F. Supp. 549, 568 (M.D. Tenn. 1987) (applying choice of law analysis applicable to tort claims to CUTPA claim). As the law of India does not authorize an action for unfair trade practices or antitrust, dismissal is required as well for the CUTPA claims and the Connecticut antitrust claim. See C.A. Westel de Venezuela v. American Telephone and Telegraph Co., No. 90 Civ. 6665 (PKL), 1992 WL 209641, *13 (S.D.N.Y. Aug. 17, 1992) (dismissing state unfair competition claim because the applicable Venezuelan law did not recognize that claim); USGI, Inc. v. Michele Limited Partnership, No. Civ. B-88-229 (JAC), 1991 WL 152445, *4 (D. Conn. Jan. 26, 1991) (a CUTPA claim can be asserted only "when choice of law

principles indicated applicability of Connecticut law.").

2. Fraudulent Misrepresentation/Non-Disclosure and Negligent Misrepresentation

The defendants next move to dismiss counts four and five of the amended complaint alleging causes of action for fraudulent misrepresentation/non-disclosure and negligent misrepresentation. In counts four and five, the amended complaint alleges that the defendants misrepresented and/or failed to disclose material facts relating to: (a) the plaintiffs' continuing status under the contractual agreements; (b) the actual purpose behind the defendants' desire to obtain the plaintiffs' confidential customer information; and (c) the defendants' plans for distributing products directly to the plaintiffs' customers. The defendants maintain that dismissal of these claims is required because, even if there existed some form of contractual relationship between the parties, that relationship created no special duty requiring disclosure of their allegedly true intentions, and that, in any event, to the extent the plaintiffs relied on any alleged misrepresentation, such reliance was unjustified.

The court concludes that amended complaint fails to state a claim for fraudulent misrepresentation/non-disclosure, but sufficiently alleges a cause of action for negligent misrepresentation. As previously discussed, Connecticut choice of law principles direct that the law of India govern the tort claims. Indian law recognizes a cause of action for fraudulent

31

and negligent misrepresentation,[9] with the elements of these claims being the same as exist under the common law of this country.[10]

A. Fraudulent Misrepresentation/Non-Disclosure

To prevail on a claim of fraudulent misrepresentation/non-disclosure, the plaintiffs are required to prove: (a) a material misrepresentation or omission for which the party has a duty to disclose; (b) an intent to defraud; (c) reasonable reliance on the representation; and (4) damages as a result. See Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995). "The key element in a case of fraudulent non-disclosure is that there must be circumstances which impose a duty to speak." Jackson v. Jackson, 2 Conn.App. 179, 194, 478 A.2d 1026 (1984). Usually, parties that deal with one another at arms length do not have a duty to explain or disclose to each other their understanding of the terms of a written contract. Topf v. Warnaco, Inc., 942 F. Supp. 762, 769 (D. Conn. 1996). In this case, the amended complaint alleges that the "[d]efendants owed a duty to [the] [p]laintiffs" but fails to allege any facts indicating that the parties had a special/fiduciary or confidential relationship or that they were dealing with one another other than at arms-length. Accordingly,

---

[9] Affidavit of Som Mandal at ¶ 7. Mandal is a member of the Supreme Court Bar Association of India and the Delhi High Court Bar Association.

[10] Affidavit of Edward Lam Chung Weng, advocate and solicitor of the Supreme Court of the Republic of Singapore, at ¶¶ 6-8.

32

the court concludes that the defendants were not under a duty to disclose their understanding of the agreements and, therefore, dismissal is required for the claim of fraudulent misrepresentation/non-disclosure.

    B.   Negligent Misrepresentation

To prevail on a claim of negligent misrepresentation, the plaintiffs must prove that, in the course of business, profession, or employment, (a) the defendants supplied false information for the plaintiffs' guidance; (b) that the defendants failed to exercise reasonable care or competence in obtaining or communicating the information; and (c) that the plaintiffs justifiably relied upon the information to their detriment. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 217-18, 520 A.2d 217 (1987) (citing §552 of the Restatement (Second) of Torts). Unlike a cause of action for fraudulent misrepresentation/non-disclosure, "no special relationship is required to state a claim of negligent misrepresentation." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575, 657 A.2d 212, 221 (Conn. 1995).

The defendants have argued that the claim of negligent misrepresentation should be dismissed because, as with the claim of fraudulent misrepresentation, the amended complaint fails to allege a special relationship imposing a duty to disclose on the defendants, or justifiable reliance on the part of the plaintiffs. Although the court agrees with the defendants that the amended complaint fails to allege facts supporting a special

33

relationship, no such relationship is required to state a claim for negligent misrepresentation. See <u>Williams Ford, Inc. v. Hartford Courant Co.</u>, 232 Conn. 559, 575, 657 A.2d 212, 221 (Conn. 1995). Further, because the amended complaint sufficiently alleges that the plaintiffs reasonably relied on the defendants' alleged misrepresentations and omissions, and the reasonableness of that reliance is, in the end, an issue of fact exceeding the scope for dismissal under Fed. R. Civ. P. 12(b)(6), the motion to dismiss count five alleging negligent misrepresentation is denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss count one of the amended complaint alleging violations of the Sherman Antitrust Act (document no. 81) is DENIED. The motion to dismiss the amended complaint (document no. 78) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to the claim of: (1) breach of the implied covenant of goof faith and fair dealing (count three); (2) fraudulent misrepresentation (count four); (3) tortious interference with business expectancies (count six); (4) tortious interference with contractual relationships (count seven); (5) unfair competition (count eight); (6) violations of the Connecticut Unfair Trade Practices Act (counts nine, ten and eleven); and (7) violations of the Connecticut Antitrust Act (count twelve). The motion is DENIED with respect to the claim of: (1) breach of contract; and (2) negligent misrepresentation.

It is so ordered this 12th day of September, 2003 at Hartford, Connecticut.

*Alfred V. Covello*
_____
Alfred V. Covello
United States District Judge