UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Civil No. 3:02 CV 1107 (AVC) |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC. | : | |
| | : | |
| | : | |
| Defendants. | : | December 31, 2003 |

BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED R. CIV. P. 12(c)

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, IL  60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC  20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   PLAINTIFF'S ANTITRUST ALLEGATIONS ............................................................... 2

III.  ARGUMENT .................................................................................................................... 3

    A.   Antitrust Standing Requires Antitrust Injury and Non-Speculative Damages............................................................................................................. 4

    B.   Plaintiffs' alleged injury is not antitrust injury ...................................................... 6

        1.   Plaintiffs allege injury in India only ......................................................... 6

        2.   Plaintiffs do not allege an effect on a relevant market............................... 9

        3.   Plaintiffs allege only speculative injury................................................... 10

IV.   CONCLUSION................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) .................................................................................... passim

*Balaklaw v. Lovell*, 14 F.3d 793 (2d Cir. 1994) .................................................................. 5, 6, 9

*Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982) ..................................................... 4, 5

*Borger v. Yamaha Int'l Corp.*, 625 F.2d 390 (2d Cir. 1980) ......................................................... 11

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ............................................................... 9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ....................................... 5, 6, 9

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537 (2d Cir. 1993) ............................................................................................................. 9

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................................... 4

*Connolly v. McCall*, 254 F.3d 36 (2d Cir. 2001) ........................................................................... 4

*Den Norske Stats Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002) ......................................................................... 8

*Elecs. Communications Corp. v. Toshiba Am. Consumer Prod., Inc.*, 129 F.3d 240 (2d Cir. 1997) .................................................................................................. 9

*F. Hoffman-LaRoche, Ltd. v. Empagran S.A.*, No. 03-724, 2003 WL 22734815 (cert. granted Dec. 15, 2003) ................................................................................. 2

*Fed. Paper Board Co. v. Amata*, 693 F. Supp. 1376 (D. Conn. 1988) ...................................... 3, 4

*Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994) ................................................................. 11, 12

*Kruman v. Christie's International PLC*, 284 F.3d 384 (2d Cir. 2002) ...................................... 1, 2

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................................................................................................................ 7

*Pfizer Inc. v. India*, 434 U.S. 308 (1978) ....................................................................................... 6

*Sakon v. Andreo*, Civ. No. 3:94CV1869(AVC) (D. Conn. 1998) .......................................... 4, 5, 9

*Sniado v. Bank Austria AG*, 2003 WL 22753144 (2d Cir. 2003) .................................................. 2

## TABLE OF AUTHORITIES — continued

**Page(s)**

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ..................................................................4, 9, 10

*Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438 (11th Cir. 1991) ...............................................6

*Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293 (3d Cir. 2002) ...............................2, 7, 8

*Valley Prods. Co. v. Landmark*, 128 F.3d 398 (6th Cir. 1997) ...................................................5, 12

**Statutes:**

15 U.S.C. § 15 ................................................................................................................................1, 4

15 U.S.C. §§ 4011-4016 ....................................................................................................................7

Fed. R. Civ. P. 12 (b)(1) ....................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1, 3, 12

Fed. R. Civ. P. 12(c) .........................................................................................................................1

FTAIA, Pub. L. No. 97-290, 96 Stat. 1234 (1982) ...........................................................................7

**Miscellaneous:**

Deputy Assistant Attorney General Makan Delrahim, "Department Of
   Justice Perspectives on International Antitrust Enforcement:  Recent
   Legal Developments and Policy Implications," 7 (Nov. 18, 2003),
   *available at* http://www.usdoj.gov/atr/public/speeches/201509.pdf. .......................................7

VII Areeda & Hovenkamp, *Antitrust Law* ¶1459c3 (2003).............................................................11

This Court is reconsidering whether it has subject matter jurisdiction to hear and rule upon plaintiffs' claims.[1]  But lack of subject matter jurisdiction is not the only barrier standing between these plaintiffs and the federal courthouse door:  the allegations contained in the First Amended Complaint (the "Complaint") make plain that plaintiffs lack antitrust standing to proceed under Section 4 of the Clayton Act, 15 U.S.C. § 15.  Put simply, they are not "the proper part[ies] to bring a private antitrust action" on the facts they allege.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) ("*AGC*").  Therefore, Dow Chemical Company, Union Carbide Corporation and Union Carbide Asia Pacific, Inc. (collectively "defendants")[2] have moved that this Court, pursuant to Fed. R. Civ. P. 12(c), grant judgment for defendants on the pleadings as to plaintiffs' first claim for relief.  Defendants submit this Memorandum of Law in support of their motion.

**I.   INTRODUCTION**

A private party must have antitrust standing in order to assert a federal antitrust claim.  *See AGC,* 459 U.S. at 535 n.31.  Satisfying the legal requirements for antitrust standing, according to two recent decisions by the Second Circuit, is not the same as satisfying the legal requirements for subject matter jurisdiction.  In both of these recent cases – *Kruman v. Christie's*

---

[1] By Order dated September 12, 2003, this Court dismissed nine of the twelve counts in the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.  The same order denied Defendants' motion to dismiss the antitrust claim against them, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.  On December 9, 2003, the Court denied Defendant's Motion for Certification for Interlocutory Appeal of the denial of the Rule 12(b)(1) motion, but did so without prejudice to the motion's refiling "after the defendants have filed and served, and the court has ruled, on a motion for reconsideration."  Defendants timely filed their motion for reconsideration on December 23.

[2] By Order dated November 17, 2003, this Court dismissed Union Carbide Customer Services Pte. Ltd. ("UCCS") and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") from this action.

*International PLC*, 284 F.3d 384 (2d Cir. 2002), and *Sniado v. Bank Austria AG*, 2003 WL 22753144, at *4 (2d Cir. 2003)[3] – the Second Circuit rejected Foreign Trade Antitrust Improvement Act ("FTAIA") challenges to the court's subject matter jurisdiction but remanded for a determination of whether the plaintiffs had antitrust standing. *See Kruman*, 284 F.3d at 403 (remanding "so that the district court may examine [standing and venue] in the first instance"); *Sniado*, 2003 WL 22753144, at *4 (suggesting that plaintiff might lack standing even if subject matter jurisdiction existed and observing that it had remanded *Kruman* so that standing could be addressed "in the first instance"). While they "implicate[] many of the same issues," *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 307 (3d Cir. 2002) (dismissing foreign travel agents' claims on both grounds), antitrust standing and subject matter jurisdiction currently are separate questions in the Second Circuit. They therefore must be addressed separately.

Plaintiffs do not have antitrust standing because they lack its key element, antitrust injury, in three regards: first, because the injury they say that they suffered occurred entirely in India; second, because they allege injury only to themselves, not to competition in any market; and third, because the causal relationship between the alleged violation and the alleged injury is entirely speculative.

## II. PLAINTIFF'S ANTITRUST ALLEGATIONS

The Complaint alleges that UCC and Dow "compelled Plaintiffs to agree to engage in a resale price maintenance conspiracy for the Products." Complaint ¶ 27. Defendants "compelled" plaintiffs' agreement "by refusing to accept orders placed by Plaintiffs and by canceling accepted orders unless Plaintiffs agreed to maintain the minimum resale prices

---

[3] On December 15, 2003, the Supreme Court granted certiorari in *F. Hoffman-LaRoche, Ltd. v. Empagran S.A.*, No. 03-724, 2003 WL 22734815. As explained in Defendants' Motion To Stay Proceedings and their supporting brief (filed Dec. 31, 2003), *Empagran* may overrule *Kruman* (and *Sniado*).

required by defendants." *Id.*, ¶ 28.  According to the Complaint, defendants sought this agreement "to ensure that prices charged by Plaintiffs to end users in India for Products would not cause erosion to prices for the Products charged by UCC and Dow to end-users of Products in the United States as well as in other jurisdictions to which UCC and Dow sold Products from the United States." *Id.*, ¶ 29.

Plaintiffs complain that the alleged agreement "improperly diminished and restrained" competition "in the sale and resale of Products in and from the United States" (*id.*, ¶ 30), by "artificially increasing and maintaining prices for or reducing the use or output of the Products sold in the United States for resale." *Id.*, ¶ 54.  "[A]s a result of such effect on competition Plaintiffs were injured by being precluded from effectively and fully competing and maximizing their sales of Products." *Id.*, ¶ 30.  Plaintiffs were "deprived of the ability effectively to compete independently in the purchase of products for resale in the United States,[4] and in the resale of the Products from the United States to end users in India free of Defendants' price maintenance requirement," and "required to resell the Products at artificially inflated prices directly caused by Defendants' unlawful and anticompetitive conduct." *Id.*, ¶ 55.

**III.   ARGUMENT**

The standards applicable to a motion for judgment on the pleadings are the same as those for a motion to dismiss pursuant to Rule 12(b)(6).  *Fed. Paper Board Co. v. Amata*, 693 F. Supp. 1376, 1379 (D. Conn. 1988) (granting motion for judgment on the pleadings on, among other

---

[4] Presumably this was meant to say "the purchase of products *in the United States* for resale *in India*."  The Complaint shows amply that plaintiffs' very reason for existence was for resale of UCC's products into India.  *E.g.*, Complaint, ¶ 17 (MegaVisa Marketing Solutions was created "[t]o maintain access to the Indian market and to end-user customers in India," in order "to replicate the marketing service previously performed by UCC directly in India").  Plaintiffs allege nothing to suggest that they had contractual authority to sell the Products in *any* country other than India, let alone in the United States.

things, Sherman Act count alleging bribery and price-fixing scheme orchestrated by plaintiff's former employee) (citation omitted). Thus, judgment on the pleadings is not proper "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 197-98 (2d Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Fed. Paper Board Co.*, 693 F. Supp. at 1379 (reciting same test). The Court must "construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true." *Todd*, 275 F.3d at 197 (citing *Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001)). At the same time, the Court may not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." *AGC*, 459 U.S. at 526; *Todd*, 275 F.3d at 198 (quoting *AGC*). Under this standard, judgment for defendants on the pleadings is warranted; the Complaint demonstrates conclusively that plaintiffs lack antitrust standing.

## A. **Antitrust Standing Requires Antitrust Injury and Non-Speculative Damages**

"Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 477 (1982) (health-plan subscriber had antitrust standing to sue charging conspiracy between health plan and psychiatrists' association to exclude pyschologists' services where her injuries were "inextricably intertwined" with those of the psychologists); *Sakon v. Andreo*, Civ. No. 3:94CV1869(AVC), Slip Op. at 11 (D. Conn. 1998)(granting summary judgment against antitrust suit against grocers that allegedly stifled plaintiffs' development of real estate for rival supermarket-superstores) (quoting *McCready*) (copy attached as Exhibit A). Thus, in determining whether a plaintiff "is a person injured by reason of a violation of the antitrust laws within the meaning of § 4," *AGC*, 459 U.S. at 529, a court must determine "whether the plaintiff

is a proper party to bring a private antitrust action" – whether it has antitrust standing. *Id*. at 535 n.31. This determination "requires [the Court] to evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id*. at 535.

In *AGC*, a union alleged that an association of contractors and property owners had conspired not to hire unionized contractors and subcontractors. The Court acknowledged that the Union's allegation of "a causal connection between an antitrust violation and harm to the [plaintiff]" weighed in the union's favor as an antitrust plaintiff, as did the allegation "that the defendants intended to cause that harm." 459 U.S. at 537. But the Court looked also to additional factors, including "[t]he nature of the plaintiff's alleged injury" – *i.e.*, whether the plaintiff suffered antitrust injury, 459 US at 538[5] – and "whether a claim rests at bottom on some abstract conception or speculative measure of harm." 459 U.S. at 543 (quoting *McCready*, 457 U.S. at 475 n.11). Concluding that the additional factors "weigh heavily against judicial enforcement of the Union's antitrust claim," the Court reinstated the claim's dismissal. *Id*. at 545.

The union's failure to allege antitrust injury was critical; its injuries were in the course of collective bargaining, not ones that "the antitrust statute was intended to forestall." *Id.* at 540; *see Brunswick*, 429 U.S. at 489. Moreover, the respondents had not "alleged any marketwide restraint of trade" indicating "that output has been curtailed or prices enhanced throughout an

---

[5] *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"); *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) (affirming summary judgment against anesthesiologist allegedly excluded by exclusive agreement between defendant hospital and rival anesthesiologists for lack of antitrust injury; "[i]t is now well settled" that antitrust standing requires antitrust injury); *Sakon v. Andreo*, Slip Op. at 8 (quoting *Balaklaw*); *see also Valley Prods. Co. v. Landmark*, 128 F.3d 398, 406 (6th Cir. 1997) ("*Valley Products*") (affirming dismissal of Sherman Act suit for lack of antitrust injury, and thus antitrust standing; "the case law makes it very clear that antitrust injury *is* a necessary component of antitrust standing") (emphasis in original).

entire competitive market"; instead, they had alleged only "predatory behavior directed at 'certain' parties." 459 U.S. at 539 n.40. The Court also noted that plaintiffs sought "highly speculative" damages on the antitrust claim; there was no allegation of actual losses to the Union in terms of collective-bargaining contracts lost, diminution in aggregate share of jobs or in membership or even that any firm was prevented from doing business with Union contractors or subcontractors. *Id*. at 542. The only non-speculative damages alleged were "flowing from breaches of the collective-bargaining agreements – injuries that would be remediable under other laws." *Id*. at 543.

Courts in the Second Circuit "have developed a two-pronged analysis" to consider the *AGC* antitrust standing factors:

> As a necessary first step, courts must determine whether the plaintiff suffered an antitrust injury. If the answer to that question is yes, they must then determine whether any of the other factors, largely relating to the directness and identifiability of the plaintiff's injury, prevent the plaintiff from being an efficient enforcer of the antitrust laws.

*Balaklaw v. Lovell*, 14 F.3d at 797 n.9 (citing *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449 (11th Cir. 1991) (holding no antitrust standing for plaintiff physician whose asserted damages from exclusion reflected continued supercompetitive prices). Here, plaintiffs' failure to allege antitrust injury makes the second prong irrelevant. But even under the second prong, plaintiffs' alleged injuries are so speculative that it is clear that plaintiffs are not "the proper part[ies] to bring an antitrust action." *AGC*, 459 U.S. at 535 n.31.

      **B.**    **Plaintiffs' alleged injury is not antitrust injury.**

           1.    Plaintiffs allege injury in India only.

The injuries "the antitrust laws were intended to prevent," *Brunswick*, 429 U.S. at 489, are injuries to competition in the United States. *See Pfizer Inc. v. India*, 434 U.S. 308, 314 (1978) ("Congress' foremost concern in passing the antitrust laws was the protection of

6

Americans").[6]  Competition in other countries' economies is not what United States antitrust laws are meant to protect, *see Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582 (1986) (United States antitrust laws "do not regulate the competitive conditions of other nations' economies"); to the contrary, under certain circumstances, they specifically countenance anticompetitive behavior directed exclusively at foreign markets.[7]

    The Court of Appeals for the Third Circuit applied this principle to an antitrust claim alleging foreign injury in *Turicentro*.  There, the plaintiff class of foreign travel agents alleged that the major U.S. airlines and their trade association had conspired to reduce their commissions on ticket sales.  *See* 303 F.3d at 297.  According to the complaint, the conspiracy "to fix commissions paid to foreign travel agents located outside the United States . . . was directed at reducing the competitiveness of . . . foreign travel agents, all of whom were foreign-based." *Id.* at 302.  The court held that the complaint was barred for two reasons:  first, by the FTAIA for failure to allege a "'direct, substantial, and reasonably foreseeable anticompetitive effect'" on United States commerce (*id.* at 306); and second, for lack of antitrust standing, in that plaintiffs had failed to allege antitrust injury.  "Plaintiffs' injuries occurred exclusively in foreign markets. They are not of the type Congress intended to prevent through the [FTAIA] or the Sherman Act."

---

[6] *See also* Deputy Assistant Attorney General Makan Delrahim, "Department of Justice Perspectives on International Antitrust Enforcement:  Recent Legal Developments and Policy Implications," 7 (Nov. 18, 2003) (encouraging class action lawsuits "by foreign plaintiffs who claim antitrust injuries from conduct outside the United States . . . . is not consistent with what the Supreme Court has repeatedly described as the paramount purpose of the United States antitrust laws, which is to protect consumers, competition, and commerce in the United States"), *available at* http://www.usdoj.gov/atr/public/speeches/201509.pdf.

[7] The Export Trading Company Act of 1982, which is Title III of the same act that also contained the FTAIA, Pub. L. No. 97-290, 96 Stat. 1234 (1982), provides limited antitrust immunity to export ventures that register with the federal government and represent that their activities will "result in neither a substantial lessening of competition or restraint of trade within the United States nor a substantial restraint of the export trade of any competitor of the applicant." *See* 15 U.S.C. §§ 4011-4016.

*Id*. at 307.  Consequently, Turicentro's injuries were not antitrust injuries, and the claims therefore were not cognizable under the Sherman Act.  *Id*.  *See also Den Norske Stats Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420, 427 (5th Cir. 2001) (foreign plaintiff suffering entirely foreign injuries from foreign effects of international cartel lacked antitrust standing), *cert. denied*, 534 U.S. 1127 (2002).

      Here, too, the alleged injuries, if they occurred at all, "occurred exclusively in foreign markets."  303 F.3d at 307.  The sales plaintiffs allegedly lost by virtue of rejected and unfilled orders were entirely in India.  The allegedly fixed resale prices were entirely to Indian customers.  Indeed, the very essence of the relationship between plaintiffs and defendants was to make sales into India.  Plaintiffs do not, and cannot, allege that they ever could have resold Products to customers anywhere outside India, let alone in the United States.  To be sure, plaintiff MM Global Services, Inc. is based in Houston, Complaint, ¶ 4, and all three plaintiffs say that they took delivery of the Products at the United States port.  *Id*., ¶¶ 4-6, 22-25.  But the Products were destined for sale in India, *e.g.*, *id.*, ¶¶ 4-6 (each plaintiff resold Products to "customers in India"); there was never any possibility that plaintiffs could redirect them back into domestic United States commerce.  Plaintiffs make no allegation that they ever made, attempted to make or even could have made, any sale of products in the United States.  Their profit opportunity depended solely upon buyers in India.  *See* Letter from Defense Counsel William L. Webber to Plaintiffs Counsel Richard S. Taffet at 1 ("Plaintiffs have stipulated that all of their customers that pertain to this lawsuit are located in India") (Feb. 19, 2003) (Ex. B); *see* Response Letter from Plaintiffs' Counsel at 1 ("We generally agree with your memorialization of the Court's rulings, as far as it goes.") (Mar. 6, 2003) (Ex. C).  Their alleged injuries are thus just as foreign to United States commerce as those alleged in *Turicentro*.  They are not ones that the United States antitrust laws

"were intended to prevent," 429 U.S. at 489, and thus do not constitute antitrust injury.  The Complaint therefore fails to state a claim upon which relief can be granted.

        2.    <u>Plaintiffs do not allege an effect on a relevant market.</u>

"The antitrust laws . . . were enacted for 'the protection of *competition*, not *competitors*.'" *Brunswick*, 429 U.S. at 488 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)(emphasis in original).  Consequently, "[a]n antitrust plaintiff must allege not only cognizable harm to herself, but an adverse effect on competition market-wide." *Todd*, 275 F.3d at 213 (citing *Elecs. Communications Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 242 (2d Cir. 1997) (affirming dismissal of terminated distributor's Sherman Act claims; exclusive agreement between manufacturer and other distributor foreclosed only competition under Toshiba brand name, not in an actual market for cellular phones); *see also Balaklaw*, 14 F.3d at 798 (no antitrust injury where plaintiff's injury "came as a result of [plaintiff's] losing out in the competition for an exclusive anesthesiology contract [with defendant hospital] and nothing more"); *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993)("[i]nsisting on proof of harm to the whole market fulfills the broad purpose of the antitrust law that was enacted to ensure competition in general, not narrowly focused to protect individual competitors"); *Sakon v. Andreo*, Slip Op. at 11-12 (real estate developer plaintiff lacks antitrust standing where it "has suffered an individual competitive injury and not a sufficient antitrust injury, that is, an injury to consumers in the market generally").

*Todd* provides an instructive contrast to the Complaint here:  The plaintiff there made specific allegations of "anticompetitive effects the [defendant petroleum companies' alleged information] exchanges have had on [white-collar] salaries market-wide." 275 F.3d at 214.  They included assertions, among other things, that: "salary levels across the integrated oil and

9

petrochemical industry have been artificially depressed" through "reduced competitive incentives"; "Exxon . . . used the information to reduce its salaries 4.1% between 1987 and 1994 in comparison to the Six Majors, . . . and to reduce its salary index in relation to the competition from 110.7% in 1987 to 107.0% in 1993"; and "that [plaintiff] received compensation 'materially below' what she would have received in an 'uncontaminated marketplace.'" *Id.*.

Here, in contrast, plaintiffs allege no facts supporting a cognizable effect on United States competition as a whole. As noted above, the Complaint asserts that the alleged resale price maintenance was motivated by a desire to prevent "erosion" in prices outside India, including in the United States. But an allegation as to intent "is not a panacea that will enable any complaint to withstand a motion to dismiss." *AGC*, 459 U.S. at 537. And whatever the intent plaintiffs allege for the purported resale price agreement, its entire effect, such as it is, is in India. In fact, plaintiffs do not allege that the prices at which they resold Products in India prevented even *Indian* consumers from obtaining Products at competitive prices, let alone that *American* consumers were unable to do so. In the absence of such critical allegations, the conclusory assertion that the purported agreement "improperly diminished and restrained" competition "in the sale and resale of Products in and from the United States" (Complaint ¶ 30) fails to allege the required "adverse effect on competition market-wide." *Todd*, 275 F.3d at 213.

   3. <u>Plaintiffs allege only speculative injury.</u>

Even more fundamentally, the plaintiffs have not alleged facts that indicate that they were harmed at all by the alleged agreement. The only conceivable source of injury alleged is the rejected and unfilled orders. But even as to those orders, plaintiffs have not alleged facts showing that the alleged agreement caused their injury.

10

First, they have not alleged that they lacked alternative sources of supply for the customers whose orders were rejected or unfilled.[8]  This leaves a critical gap in the causal chain between the alleged violation and any alleged damages.  "To the extent that the plaintiff could reasonably avoid a loss, that loss flows from its own choice rather than from the defendant's violation.  The availability of reasonable mitigation breaks the causal nexus between the defendant's wrong and the plaintiff's loss." VII Areeda & Hovenkamp, *Antitrust Law* ¶1459c3 (2003); *see also Borger v. Yamaha Int'l Corp.,* 625 F.2d 390, 399 (2d Cir. 1980) (reversing antitrust judgment for plaintiff audio-equipment dealer alleging agreement between Yamaha and rival dealers not to sell to plaintiff; "Under [plaintiff's] duty to mitigate damages, it would have been remiss if it had not taken reasonable steps to merchandise substitute lines. . . . To the extent that [plaintiff's] profits from the sale of other products increased as a result of its diverted emphasis or would have increased had reasonable sales efforts been taken, [plaintiff] was not entitled to recover from Yamaha.")(citations omitted).  Without allegations as to whether plaintiffs mitigated or even *attempted* to mitigate their damages, and whether plaintiffs ultimately made the intended sales of Products to customers in India, plaintiffs have failed to allege that the alleged violation has caused them any injury, let alone antitrust injury.

Similarly, plaintiffs have failed to allege that they would not have been in the same position even without the alleged violation.  This too is fatal to their cause of action, for "[i]f Plaintiff would have suffered the same injury without regard to the allegedly anticompetitive acts of Defendants, Plaintiff has not suffered an antitrust injury." *Hodges v. WSM, Inc.*, 26 F.3d 36,

---

[8] The same would be true even if Plaintiffs had alleged a more general failure to make sales because of the alleged resale price agreement; there is no allegation that Plaintiffs sought or failed to find alternative sources of supply.  Indeed, as pointed out in the brief in support of defendants' Motion to Stay Proceedings at 8, a visit to plaintiffs' website (http://www.megavisachem.com) reveals conclusively that plaintiffs have ample sources for alternatives to the Products at issue here.

11

38 (6th Cir. 1994). *Hodges* affirmed the dismissal of an airport shuttle operator's antitrust suit alleging a market-allocation agreement between operators of airport shuttle and tour bus services.[9] The court held that it was not the alleged market-sharing agreement, but rather the defendant "Opryland's refusal to allow Plaintiff's vans on its property[,] which caused Plaintiff's injury." *Id.* In *Valley Products*, the same appellate court affirmed the Rule 12(b)(6) dismissal of a soap maker's tying claim against a major hotel franchisor. The franchisor had terminated the plaintiff's license to make amenities for its franchisees after deciding to license only two amenity suppliers and requiring franchisees to purchase from them. The Sixth Circuit agreed with the district court that what had injured the plaintiffs was not the alleged antitrust violation: "The loss of logoed amenity sales suffered by Valley upon cancellation of its vendor agreement flowed directly from the cancellation, as we see it; the sales losses would have been suffered as a result of the cancellation whether or not [the defendant franchisor] had entered into the alleged tying arrangements with the franchisees." 128 F.3d at 404.

Indeed, the Complaint even suggests that the rejections and unfilled orders *were not the result* of any agreement; instead, plaintiffs allege, the rejections and unfilled orders "compelled" an agreement. Complaint ¶ 28. This is fatal to plaintiff's antitrust claim. If the rejections and unfilled orders were not the result of the alleged agreement, then by definition they could not be part of the agreement's effect – rather, what allegedly injured plaintiffs was a unilateral refusal to sell to them.

---

[9] Plaintiffs alleged that, in exchange for an agreement by the shuttle operators not to transport passengers from the Nashville Airport to Opryland property, Opryland agreed to rent the operators' buses and vans for its own tours. *See* 26 F.3d at 37.

## IV.  CONCLUSION

Viewed closely, the Complaint alleges nothing more than common law claims.  At most, plaintiffs have alleged that, on some unidentified occasions, defendants either refused to accept or failed to fill orders for Products because of dissatisfaction with the prices defendants intended to charge their end-user customers.  Plaintiffs have not alleged that these acts injured them in any way, let alone that the acts caused marketwide harm, or injury that United States antitrust law is meant to address.  Their unidentified injuries are speculative, depending on external factors such as the availability of alternatives to defendants' Products.

Simply put, plaintiffs' own allegations demonstrate that they lack antitrust standing.  At bottom, plaintiffs are attempting to exploit this nation's antitrust laws to pursue a Singapore breach-of-contract damage action.  The Court therefore should enter judgment on Count I for defendants.

Respectfully submitted,

_____

| | |
|---|---|
| Craig A. Raabe (ct 04116) | Andrew S. Marovitz (ct 25409) |
| Edward J. Heath (ct 20992) | MAYER, BROWN, ROWE & MAW LLP |
| ROBINSON & COLE LLP | 190 S. La Salle Street |
| 280 Trumbull Street | Chicago, IL  60603-3441 |
| Hartford, CT  06103-3597 | (312) 782-0600 |
| (860) 275-8304 | |
| | Christopher J. Kelly (ct 25410) |
| | MAYER, BROWN, ROWE & MAW LLP |
| | 1909 K Street, N.W. |
| | Washington, DC  20006-1157 |
| | (202) 263-3000 |

*Attorneys for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## **CERTIFICATE OF SERVICE**

      Craig A. Raabe hereby certifies that he caused a copy of the Defendants' Motion To Stay Proceedings to be served this date upon the following:

| | |
|---|---|
| Robert M. Langer, Esquire<br>Wiggin & Dana LLP<br>One City Place<br>185 Asylum Street<br>Hartford, CT  06103-3402<br>**(via hand delivery)** | Richard S. Taffet, Esquire<br>Thelen Reid & Priest LLP<br>875 Third Avenue<br>New York, New York  10022-6225<br>**(via overnight courier)** |

      Suzanne Wachstock, Esquire
      Wiggin & Dana LLP
      400 Atlantic Street
      P.O. Box 110325
      Stamford, CT  06911-0325
      **(via first-class mail, postage prepaid)**


Dated:   December 31, 2003                                              
                                                                            CRAIG A. RAABE