The Supreme Court addressed the "sham" exception in Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49 (1993). The Court outlined the following two-part test in determining what constitutes "sham" litigation:

> first, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. . . . Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second prong of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor.

Id. at 60.

The conduct at issue includes the Manager lawsuit, the Hargraves lawsuit and the alleged zoning opposition. For the following reasons, the court concludes that this conduct is protected by the Noerr-Pennington doctrine.

With respect to the Manager lawsuit, the defendants argue that the case was settled in a court-supervised settlement through which the defendants obtained purchase of the subject property. Further, the defendants argue that they initiated the lawsuit on the advise of their counsel. The plaintiff responds that material issues of fact prevent the court from deciding whether the Manager litigation was a mere sham. The court disagrees.

---

though they privately acknowledged that the request was "bull"; and (3) the defendant developers hired attorneys to represent individual defendants who did have standing to oppose the zoning decisions, which attorneys failed to communicate a settlement offer by the plaintiff to the individual defendants. Id. at 891.

15

The parties to the Manager lawsuit settled their claims and the plaintiffs in that action, the defendants here, obtained the purchase of the parcel at issue which was virtually all they sought in that case. This outcome would not likely occur as the result of a baseless or "sham" lawsuit. Further, the plaintiff has failed to point to a specific factual issue with respect to this lawsuit, precluding the entry of judgment. The court concludes that the evidence of record does not support the conclusion that this lawsuit involved the type of blatant abuse described by the second circuit in <u>Landmarks Holding</u> and the Supreme Court in <u>Noerr</u> and <u>California Transport</u>, to fall within the sham exception. Therefore, the Manager lawsuit is subject to the Noerr-Pennington doctrine and cannot form the basis for the plaintiff's remaining tortious interference and CUTPA claims in this case.

With respect to the Hargraves litigation concerning the Chili's parcel on Main Street, in Glastonbury, the defendants argue that they did not institute this lawsuit and became involved only by virtue of their purchase of that parcel. Further, after a jury trial in that case, the defendants obtained a verdict in their favor in the amount of $125,000. The court concludes that there is no evidence that this lawsuit falls within the sham exception to the Noerr-Pennington doctrine and, therefore, it cannot form the basis for the plaintiff's remaining claims.

Aside from the foregoing lawsuits, the complaint also

16

alleges that the defendants' zoning opposition to several development projects was baseless and, therefore, falls within the sham exception to the Noerr-Pennington doctrine. First, with respect to the development of a Finast supermarket on Hebron Avenue, in Glastonbury, the defendants acknowledge that Tornaquindici opposed this development project before the zoning authority. Tornaquindici argues, however, that he opposed the plan because it was inconsistent with the Glastonbury Town Plan of Development and that numerous citizens opposed the plan for same reason. Further, the defendant cites the plaintiff's deposition testimony that he also thought that the Finast plan was inconsistent with the Town Plan of Development. Finally, and most importantly, the Glastonbury zoning authority rejected the proposal as inconsistent with the Town Plan of Development. The court concludes that the defendant's opposition to the development of a Finast supermarket on Hebron Avenue, in Glastonbury, is protected under the Noerr-Pennington doctrine and, therefore, cannot form the basis for the plaintiff's remaining claims.

With respect to the development of an Edwards supermarket-superstore at Somerset Square in Glastonbury, the defendants state that Tornaquindici did not oppose this zoning application and, in fact, he waived a right of first refusal that he held for a supermarket in Somerset Square. The remaining defendants concede that they opposed the application and appealed the decision on that plan of development. The defendants argue,

17

however, that the plaintiff himself opposed the Edwards proposal and spoke out publicly against it.

In response the plaintiff states that the defendant did testify against the Edwards proposal and that Randazzo appealed the zoning approval purportedly as trustee on behalf of both Andreo and Tornaquindici. Further, the plaintiff disputes the fact that the defendants released their right of first refusal.[13]

The court concludes that even if this zoning opposition fell within the sham exception to the Noerr-Pennington doctrine, the plaintiff has failed to provide evidence of the relevance of this conduct to the remaining claims for tortious interference and violation of CUTPA. Specifically, the plaintiff testified that neither he nor any of the plaintiffs were harmed by the zoning application and the zoning opposition to the Edwards proposal.[14]

---

[13] Specifically, the plaintiff states that, "the Defendants' right of first refusal for a 'supermarket' was initially given in consideration for the Defendants' agreement not to oppose or appeal the Somerset Square developers' zoning application." When the Somerset Square developers filed a bankruptcy petition, the defendants' right of first refusal was junior to the Bank of Boston's mortgage on the property. The defendants allegedly entered into an agreement with Bank of Boston under which the defendants would release their right of first refusal in exchange for the Bank not recording relevant documents or name the defendants. Further, the plaintiff states that "[w]hen it became public knowledge that the Bank of Boston had entered into an agreement with Edward's Supermarket approximately one month after the Defendants released their right of first refusal, the Defendants immediately launched a campaign against the application for zoning approval and, when that failed, they filed an appeal with the Connecticut Superior Court which was financed by Andreo."

[14] Specifically, the plaintiff testified as follows:

> Q [defendants' attorney]: . . . Were you or any of the other plaintiffs harmed by the

18

The defendants next argue that with respect to the development of Stop & Shop on New London Turnpike, in Glastonbury, they did not oppose the zoning application. The defendants state that the only evidence in support of application of the "sham" exception here is that the defendants, Tornaquindici and Andreo, told the plaintiff that they would not support the proposal. Further, the defendants state that the plaintiff did not support the Stop and Shop proposal. The plaintiff has failed to produce evidence that the defendants filed any opposition to this application or that any such opposition was a sham and, therefore, this application cannot form the basis of the plaintiff's remaining claims.

With respect to the defendants' lawsuits and zoning opposition, there is no evidence of extensive, persistent, and blatant abuse described by the second circuit in <u>Landmarks Holding</u> and the Supreme Court in <u>Noerr</u> and <u>California Transport</u>. The plaintiffs have failed to prove that the defendant's conduct was baseless and not reasonably calculated to influence the action of a governmental body. The court also concludes that based upon the plaintiff's testimony, the Edwards opposition and appeal cannot form the basis for the plaintiff's remaining claims. Further, with respect to the Stop & Shop proposal, the plaintiff has failed to provide evidence that the defendants

---

        zoning application and the zoning opposition
        to the Edwards proposal at Somerset Square?

    A [plaintiff]: No.

19

opposed that plan of development.

The only remaining alleged conduct that could form the basis of the plaintiff's remaining state law claims is the defendant's alleged acquisition of numerous parcels in the Glastonbury area. The plaintiff, however, has testified that he was not interested in acquiring any of the cites controlled by the defendants other than the Manager parcel.[15] Therefore, the court concludes that these property interests cannot form the basis of the plaintiff's remaining state law claims.

## CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (**documents numbered 145 and 156**) are granted. The clerk is directed to consider this case closed.

SO ORDERED this 15th day of April, 1998 at Hartford, Connecticut.

_____
Alfred V. Covello,
Chief United States District Judge

---

[15] See plaintiff's deposition testimony. Relevant excerpts at defendants' exhibits 11-16.

20