# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil No. 3:02 CV 1107 (AVC) |
| v. | : | |
| | : | |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | December 31, 2003 |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *F. HOFFMANN-LA ROCHE, LTD V. EMPAGRAN, S.A.*

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Britt M. Miller (ct 25411)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, IL  60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC  20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION AND FACTUAL BACKGROUND ............................................. 1

ARGUMENT ....................................................................................................... 5

    The Proceedings In This Case Should Be Stayed Pending The
    Supreme Court's Decision In *Empagran* ................................................... 5

    A.    Federal Courts Have Inherent Authority To Stay
         Proceedings Pending Before Them. ..................................................... 5

    B.    Courts In The Second Circuit Stay Proceedings When, As Here,
         The Disposition Of The Case Will Be Determined By A Decision
         Of The Supreme Court ......................................................................... 5

    C.    The More General Standard For A Stay Is Easily Satisfied Here ......... 8

         i.    Plaintiffs Will Not Be Prejudiced By A Stay ........................... 9

         ii.    A Stay Is In Defendants' Interest ............................................ 9

         iii.    A Stay Is In The Interest Of The Courts .................................. 11

         iv.    A Stay Is In The Interest Of Persons Not Parties To
            The Civil Litigation And In The Public Interest ...................... 12

CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420 (5th Cir. 2001), *cert. denied,* 534 U.S. 1127 (2002) ....................................................7, 8

*Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338 (D.C. Cir. 2003), *cert. granted*, 2003 WL 22734815 (U.S. Dec. 15, 2003) ................................... *passim*

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993)..............................................5

*Harris v. Schweiker*, 560 F. Supp. 1298 (S.D.N.Y. 1983)...............................................5

*In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) ...........................................................6, 8, 11

*Jugmohan v. Zola*, 2000 WL 222186 (S.D.N.Y. Feb. 25, 2000) .......................... 5-6, 8

*Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002)................................. *passim*

*Landis v. North Am. Co.*, 299 U.S. 248 (1936)..............................................................5

*Marshel v. AFW Fabric Corp.*, 552 F.2d 471 (2d Cir. 1977) ..........................5, 6, 8, 13

*United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942 (7th Cir.), *cert. denied*, 124 S. Ct. 533 (2003)..............................................................5, 11

**STATUTES**

15 U.S.C. § 6a .......................................................................................................... *passim*

28 U.S.C. § 1367(a) ......................................................................................................4

**MISCELLANEOUS**

L. Greenhouse, "Justices Agree to Tackle Antitrust Case," *N.Y. Times*, Dec. 16, 2003 ..........................................................................................................3, 4

MegaVisa Marketing & Solutions Ltd. website, http://www.megavisachem.com (visited on Dec. 22, 2003) .....................................9

## INTRODUCTION AND FACTUAL BACKGROUND

Earlier this month, the Supreme Court granted certiorari in *F. Hoffmann-La Roche Ltd. v. Empagran, S.A.*, 2003 WL 22734815 (U.S. Dec. 15, 2003).[1]  It has agreed to review the D.C. Circuit's holding that the Foreign Trade Antitrust Improvements Act (the "FTAIA") permits foreign plaintiffs "who are injured solely by [some] conduct's effect on foreign commerce" to sue under the Sherman Act, so long as the purportedly anticompetitive conduct also affected someone in the U.S., even if that someone is not the plaintiff in the case.  *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338, 341 (D.C. Cir. 2003).

The Solicitor General – speaking on behalf of the two federal agencies chiefly responsible for the enforcement of the nation's antitrust laws (the United States Department of Justice and the Federal Trade Commission) – already voiced its disagreement with the D.C. Circuit's approach in *Empagran*.  In an amicus brief filed in the Court of Appeals, the Solicitor General wrote:

> The government continues to adhere to the position set forth in its amicus brief in *Statoil* that the FTAIA bars a private suit when the plaintiff's claim *does not arise from the domestic effects* of the challenged anticompetitive conduct.

*See* SG Brief at 8 (Mar. 24, 2003) (emphasis added), *available at* http://www.usdoj.gov/atr/cases/f200800/200866.pdf.  In other words, a plaintiff may not rely upon harm to U.S. commerce to bring a Sherman Act claim if that plaintiff cannot show that *its* claim arises from the harm that *it* suffered in U.S. commerce.

The ability of this Court to consider Plaintiffs' federal claim here turns on the Supreme Court's decision in *Empagran*, because Count I does exactly what the Solicitor General, the

---

[1]    For the Court's reference, a copy of the Petition for a Writ of Certiorari in *Empagran* is attached hereto as Exhibit A.

Department of Justice and the Federal Trade Commission have criticized.  Plaintiffs' purported

injuries do not arise from any *domestic* effects of the conduct that they allege: a resale price

maintenance agreement for the sale of goods to customers *in India*.  First Am. Cmplt. ("Cmplt.")

¶ 53.  Two of the three Plaintiffs – MM Global Services Pte. Ltd. and Mega Visa Solutions (S)

Pte. Ltd. – are located in Singapore, not the United States (Cmplt. ¶¶ 5-6) – and all three

(including MM Global Services Inc.) stipulated "that all of their customers that pertain to this

[resale price maintenance] lawsuit are located in India."  Letter from Defense Counsel William

L. Webber to Plaintiffs Counsel Richard S. Taffet at 1 (Feb. 19, 2003) (Ex. B); *see* Response

Letter from Plaintiffs Counsel to Defense Counsel at 1 ("We generally agree with your

memorialization of the Court's rulings, as far as it goes.") (Mar. 6, 2003) (Ex. C).  While

Defendants vigorously deny that they committed unlawful, anticompetitive conduct, Plaintiffs'

antitrust claims – if any – arise as a result of alleged resale pricing in India and its concomitant

effects there, not in the United States.

Because their antitrust claim alleges a resale price maintenance scheme with effects only

in India, Plaintiffs rely heavily on the Second Circuit's *Kruman v. Christie's International PLC*,

284 F.3d 384 (2d Cir. 2002) decision for both their cause of action and their pending discovery

requests.  Plaintiffs cite *Kruman* for the proposition that the relevant inquiry is whether the

conduct at issue violates the Sherman Act, "not whether the plaintiff suffered injury as a result of

such conduct in domestic commerce[,] *Kruman*, 284 F.3d at 397-98."  Pls. Mem. in Opp. to

Defs. Mot. to Dismiss at 22 (Nov. 12, 2002).  By adopting this approach, Plaintiffs avoid the

necessary showing of domestic harm *to themselves*, and instead seek to prove their case through

records regarding products sold to end-users in the United States and around the world, without

regard to whether they suffered any injury or whether they ever had any relationship with any of

those end-users.  *See* Pls. Second Req. to Defs. for Produc. of Docs. (Oct. 15, 2003) (Ex. D).

Plaintiffs' reliance on *Kruman* for their approach is critical because the Supreme Court's

grant of certiorari in *Empagran* puts the entire *Kruman* analysis in jeopardy.  As Linda

Greenhouse wrote in *The New York Times* the day after the Supreme Court granted certiorari in

*Empagran*,

> The Supreme Court might have had an opportunity to take up this question last
> year, after the federal appeals court in New York issued a similar ruling [in
> *Kruman v. Christie's*] and permitted foreign customers of the Christie's and
> Sotheby's auction houses to sue in federal court, accusing them of fixing prices
> for their services at overseas auctions.  But that case was settled while a Supreme
> Court appeal was pending.  Other appeals courts, meanwhile, have retained the
> longstanding position that such cases may not be brought here.

L. Greenhouse, "Justices Agree to Tackle Antitrust Case," *N.Y. Times*, Dec. 16, 2003, at C1 (Ex.

E).

If the Supreme Court in *Empagran* agrees with the Solicitor General, the United States

Department of Justice and the Federal Trade Commission – that plaintiffs may not bring claims

under the Sherman Act if *their claim* does not arise from *the domestic effects* of the challenged

conduct – then Plaintiffs' antitrust claim here in *MM Global Services et al. v. The Dow Chemical*

*Company et al.* is finished, because Plaintiffs' allegation that Defendants established unlawful

prices for the resale of goods to customers *in India* would not be cognizable here in the United

States under the Sherman Act.  *Kruman* would cease to be good law, and Plaintiffs' federal claim

would have to be dismissed, as it could not satisfy the FTAIA. [2]

---

[2]      The FTAIA has two subparts: subpart (1), which requires that the conduct have a "direct,
substantial, and reasonably foreseeable effect" on domestic commerce, and subpart (2), which
requires that the effect "gives rise to a claim" under the Sherman Act.  15 U.S.C. § 6a.  While the
D.C. Circuit's decision in *Empagran* focused upon subpart (2) of the FTAIA, plaintiffs who wish

(cont'd)

3

Plaintiffs' antitrust claim (Count I) is the only federal claim pending in this Court. Indeed, it is the only claim pending here that is based upon American law. It is the hook by which Plaintiffs attempt to keep their other two remaining claims – breach of contract (Count II) and negligent misrepresentation (Count V) – in U.S. District Court, because this Court already has ruled that those claims are governed by Singapore and Indian law, respectively. Order at 25, 31-32 (Sept. 12, 2003). Without Count I, Plaintiffs would have been unable to rely upon the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Under these circumstances, a stay of the proceedings pending the outcome of the Supreme Court's decision in *Empagran* is the only appropriate course. Such a stay would be reasonably limited; briefing in *Empagran* is scheduled to be completed this Spring, and the case is expected to be decided "by late June." L. Greenhouse, "Justices Agree to Tackle Antitrust Case," *N.Y. Times*, Dec. 16, 2003, at C1 (Ex. E). This Court should stay the case so that the Supreme Court can articulate the appropriate legal standard for the threshold question: whether this Court has subject matter jurisdiction even to hear this case, a matter that is very much in dispute.

---

(… cont'd)

to allege a cognizable claim must satisfy *both* subparts of the FTAIA to avoid dismissal. Accordingly, even if the *Kruman* standard ultimately survives Supreme Court scrutiny in *Empagran*, Plaintiffs here still must satisfy subpart (1): that the alleged conduct had a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. That is an additional ground for dismissal, and is the subject of Defendants' Motion For Reconsideration, which was filed on December 23, 2003 and is currently pending before this Court.

4

## ARGUMENT

### The Proceedings In This Case Should Be Stayed
### Pending The Supreme Court's Decision In *Empagran*

**A.    Federal Courts Have Inherent Authority To Stay Proceedings Pending Before Them.**

The Supreme Court has recognized that a district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Stays are particularly appropriate pending resolution of Supreme Court proceedings that bear upon the case, because the Supreme Court's decision will create a "controlling interpretation of federal law" that "must be given full retroactive effect" in all cases under consideration at the time of the decision. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993). That is especially true here, where the Court's subject matter jurisdiction – its very power to consider and rule on the case – is at stake. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 951 (7th Cir.) (en banc) ("jurisdiction stripping is what Congress had in mind in enacting FTAIA"), *cert. denied*, 124 S. Ct. 533 (2003).

**B.    Courts In The Second Circuit Stay Proceedings When, As Here, The Disposition Of The Case Will Be Determined By A Decision Of The Supreme Court.**

Courts in the Second Circuit have recognized that a stay of limited duration is appropriate when a related case presenting a significant issue has been accepted by the Supreme Court:

> Postponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy. *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (case remanded with instructions to stay further proceedings pending Supreme Court decision in closely related case); *Harris v. Schweiker*, 560 F. Supp. 1298, 1301 (S.D.N.Y. 1983) (remand to Administrative Law Court with stay of proceedings pending Supreme Court decision ordered in interest of judicial economy without prejudice to claimant).

*Jugmohan v. Zola*, 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000).  In *Jugmohan*, for example, the district court stayed the plaintiff's Violence Against Women Act ("VAWA") claim on the basis of a grant of certiorari in another case in which the lower court had struck down the VAWA as an unconstitutional exercise of Congress's power.  The *Jugmohan* court acknowledged the "recent grant" of certiorari in the related case, and considered "whether the constitutionality issue should be stayed pending the Supreme Court's decision."  *Id*.  After reciting the Second Circuit practice of staying such cases, the court concluded, "[u]ntil the Supreme Court rules on the constitutionality of the civil rights provision of VAWA, this Court declines to rule on the same issue.  Further proceedings in this case are stayed pending the *Brzonkala* decision."  *Id.*

Jugmohan followed the well-established precedent of *Marshel*.  There, the Second Circuit directed the district court to stay proceedings on the plaintiffs' claim for damages arising out of an attempt to convert stock from public to private ownership because the Supreme Court recently had heard argument in a closely related case.  The Second Circuit reasoned that the "question of liability for damages will, in all likelihood, turn upon the decision in *Green* [*v. Santa Fe Industries*].  Thus, the district court should stay further proceedings pending the resolution of *Green* by the Supreme Court."  552 F.2d at 472.

Not surprisingly, courts in the Second Circuit have cited *Marshel* with approval and have recognized that they should exercise their power to stay proceedings "when a higher court is close to settling an important issue of law bearing on the action."  *In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) (ordering stay pending disposition by the Supreme Court of case presenting related issue about electronic publication of materials).  Here, the decision that the Supreme Court will issue in *Empagran* will

6

be directly binding on the parties before this Court, and the issues presented in *Empagran* are inextricably intertwined with the controversy over the *Kruman*-driven finding of subject matter jurisdiction.

The majority opinion in the D.C. Circuit's *Empagran* decision discusses *Kruman* at length. *See* 315 F.3d at 346-47 (describing the conflict between *Kruman* and other cases regarding whether the "domestic effect must 'give rise to' the plaintiff's injury"); *id.* at 347-48 (summarizing *Kruman*'s reliance on the adequacy of *some* domestic effect to demonstrate a Sherman Act claim, without regard to whether the resulting injury actually arose in U.S. domestic commerce); *id.* at 346 (outlining the contrary Fifth Circuit's decision in *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420 (5th Cir. 2001) ("*Statoil*"), *cert. denied*, 534 U.S. 1127 (2002), which held that "federal antitrust laws do not apply to claims in which the plaintiff's injury does not arise from the conspiracy's anticompetitive domestic effect," or, more simply, that the domestic effect must "give rise to" the plaintiff's injury here in the United States).

Just as the court in *Empagran* recognized the relationship with *Kruman*, so too did the petitioners in *Empagran*, who made the circuit split a cornerstone of their successful petition for certiorari. *See* Petition for Certiorari at 8 ("The Court Of Appeals' Decision Conflicts With Decisions Of Other Circuits And With The Views Of The United States.") (Ex. A). Petitioners in *Empagran* explained the split among the Second, Third and Fifth Circuits on the issue, and noted that the "D.C. Circuit [in *Empagran*] generally agreed with the Second Circuit's holding in *Kruman*," but added that the Second Circuit went even farther than the D.C. Circuit by concluding that the FTAIA is satisfied whenever suit could be brought by the U.S. government, regardless of whether private litigants could sue. Petition for Certiorari at 11 (Ex. A).

7

Significantly, both petitioners and respondents in *Empagran* expressly recognized that *the case before this Court* raised the same issues that are being presented to the United States Supreme Court. *See* Resp'ts. Br. in Opp. at 14 (identifying *Empagran* and *MM Global* as "two international antitrust cases" that present preliminary FTAIA issues); Pet'rs. Reply at 5 (disagreeing that the Supreme Court should wait for *MM Global* to be fully adjudicated because the respondents offered no reason to believe that it "would add anything new to the analyses of the statute already conducted by" *Kruman*, *Statoil* and *Empagran*).

There should be no doubt, therefore, that the Supreme Court's decision in *Empagran* – and its clarification of the proper interpretation of the FTAIA – will affect the proceedings here. That is why implementation of the "practice exercised by the Second Circuit" of "[p]ostponing the final disposition of a case pending an upcoming decision by the United States Supreme Court" is the only appropriate course. *Jugmohan*, 2000 WL 222186, at *5 (*citing Marshel*, 552 F.2d at 472).

### C.    The More General Standard For A Stay Is Easily Satisfied Here.

Not only do *Marshel* and its progeny counsel for a stay in light of the Supreme Court's review of the *Empagran* case, but the more general standards for a stay support Defendants' motion. Courts generally consider the following factors in considering whether to grant a stay:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*In re Literary Works*, 2001 WL 204212, at *2. Each and every one of these factors supports issuance of a stay.

8

### i.     Plaintiffs Will Not Be Prejudiced By A Stay.

Plaintiffs seek an award of money damages, not injunctive relief, for each of the remaining three claims in this case.  *See* Cmplt. Wherefore Clause pp. 28-29.  Plaintiffs do not allege any existing relationship between the parties, and they boast a host of alternate suppliers for the products that they resell.  *See* MegaVisa Marketing & Solutions Ltd. website, *at* http://www.megavisachem.com (visited on Dec. 22, 2003).  Plaintiffs therefore will suffer no damage if asked to wait until June for the Supreme Court to clarify whether Plaintiffs have the right to be in federal court in the first instance.

Indeed, if the Supreme Court declares in *Empagran* that – contrary to *Kruman* – the FTAIA bars Sherman Act lawsuits unless the domestic effect must "give rise to" the plaintiff's injury here in the United States, then Plaintiffs will have devoted substantial resources in attorney time and money to a claim that cannot be brought under the Sherman Act.  That is hardly in Plaintiffs' interest.

### ii.     A Stay Is In Defendants' Interest.

Defendants share an interest in avoiding the expenditure of unnecessary time and substantial resources in defending a claim that, in their view, has no business in U.S. courts.  Granting a stay here will permit the Supreme Court to consider this threshold issue and provide clarity in the legal standard for the parties (and this Court) to apply to this case.

In addition, only three of Plaintiffs' twelve claims have survived preliminary motions to dismiss.  Two of those must proceed under foreign law (*see* Order at 25, 31-32 (Sept. 12, 2003)), and the third is called into serious question by the grant of certiorari in *Empagran*.  Granting a stay here will help organize these issues for the future disposition of the case.

Equally important, Plaintiffs have attempted to exploit this Court's ruling (based upon *Kruman*) that they need not show any domestic harm *to themselves* to survive dismissal.  As a result, they have demanded that Defendants produce in discovery the pricing records of products sold or distributed by Defendants to *any end-user around the world*, without regard to whether Plaintiffs ever had any relationship with those end-users.  Remarkably, none of the following requests contain any scope limitation at all: in Plaintiffs' own words, Defendants must produce:

> All documents not otherwise requested concerning prices for or pricing of Products sold or distributed, directly or indirectly, to end users.

> All documents concerning Your profit margins or losses (including net profit or loss margins, gross profit or loss margins, pre-tax profit or loss margins, post-tax profit or loss margins, and any other type of profit or loss margin) in connection with the sale or distribution, directly or indirectly, of Products.

> All documents concerning Your market share or anticipated market share for the sale or distribution of Products or products competitive with Products, directly or indirectly, to end users.

> All documents not otherwise requested concerning competition or anticipated competition in the sale or distribution of Products.

Pls. Second Req. to Defs. for Produc. of Docs. at 4 (Oct. 15, 2003) (Ex. D).  Since serving their requests, Plaintiffs have continued to fish for information wholly irrelevant to the transactions in which they participated, on the grounds that they need some evidence to support their allegation that some resale price maintenance regime had the "requisite 'direct, substantial and reasonably foreseeable effect' on domestic commerce" (Letter from Plaintiffs Counsel Paul A. Winick to Defense Counsel Andrew S. Marovitz at 1 (Dec. 19, 2003) (Ex. F), even if it had no such effect on them.  If unchecked, similar unbounded requests are likely to be made during the deposition phase of the case – all regarding a matter that the Supreme Court may practically bar from consideration in this case.  (The requested discovery has no relevance whatsoever to Plaintiffs' breach of contract or negligent misrepresentation claims under Singapore and Indian law,

10

respectively.)  Defendants would be severely prejudiced if subjected to discovery on a claim for

which this Court lacks subject matter jurisdiction.

### iii.    A Stay Is In The Interest Of The Courts.

This factor weighs overwhelmingly in favor of a stay.  Federal courts are courts of

limited jurisdiction and, in light of the fact that the FTAIA is a "jurisdiction stripping" statute,

*United Phosphorus*, 322 F.3d at 951, it hardly makes sense to devote scarce judicial resources to

a case when a Supreme Court opinion issued by June 2004 may require dismissal of the only

federal claim in the lawsuit.

Several issues currently pending before the Court likely would be mooted if the Supreme

Court reverses *Empagran*.  For example, Defendants asked this Court to reconsider its ruling on

subsection (1) of the FTAIA.  *See* Motion To Reconsider & Supporting Brief (filed Dec. 23,

2003).  Plaintiffs' inability to satisfy subsection (1) will become irrelevant if the Supreme

Court's decision precludes Plaintiffs from satisfying the other necessary part of the FTAIA,

subsection (2), because Plaintiffs' damages did not arise from any domestic effects of the alleged

resale price maintenance agreement.  Plaintiffs' effort to persuade the Court to order Defendants

to produce documents that relate to U.S. transactions with which they had no involvement, again

in an effort to satisfy subsection (1), would be similarly moot.  *See* supra at 9-11.

The Supreme Court will provide this Court and the parties with valuable (and binding)

guidance on the proper interpretation of the FTAIA.  It is in this Court's interest to stay this case

so that it can receive that guidance, so that the Court can properly define the scope of its subject

matter jurisdiction.  *See In re Literary Works*, 2001 WL 204212, at *3 ("It would be an

inefficient use of time and resources of the court and the parties to proceed in light of a pending

11

U.S. Supreme Court decision that all agree will significantly impact this multidistrict litigation.").

      **iv.**    **A Stay Is In The Interest Of Persons Not Parties To The Civil Litigation And In The Public Interest.**

Wide-ranging discovery of non-parties in the United States launched by Plaintiffs – in an effort to fill in the factual gaps of their pleadings and to address the absence of any domestic harm – is hardly in the interest of non-parties, particularly when the Supreme Court may act in *Empagran* to bar such claims (and therefore to bar such discovery) by June 2004. And the filing of lawsuits in American courts by Plaintiffs here undermines the public's interest in open access to the courts for claims properly brought under American law. Granting a stay here will ensure that the parties do not clog the courts with a lawsuit in which this Court lacks subject matter jurisdiction to hear the only federal cause (Count I) still in the case.

## CONCLUSION

Defendants' motion plainly satisfies all of the requirements for a stay.  This Court should follow the Second Circuit's well-established precedent in *Marshel* and stay these proceedings until the Supreme Court decides *Empagran*.  A decision is expected by June 2004.

Respectfully submitted,

_____

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Britt M. Miller (ct 25411)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, IL  60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC  20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

13

## CERTIFICATE OF SERVICE

    Craig A. Raabe hereby certifies that he caused a copy of the Defendants' Motion To Stay Proceedings to be served this date upon the following:

Robert M. Langer, Esquire            Richard S. Taffet, Esquire
Wiggin & Dana LLP                  Thelen Reid & Priest LLP
One City Place                       875 Third Avenue
185 Asylum Street                New York, New York  10022-6225
Hartford, CT  06103-3402        **(via overnight courier)**
**(via hand delivery)**

Suzanne Wachstock, Esquire
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
**(via first-class mail, postage prepaid)**

Dated:  December 31, 2003           _____

                             CRAIG A. RAABE