3

## STATEMENT

This petition presents a frequently recurring question of exceptional importance that has divided the federal courts of appeals: whether plaintiffs may sue under U.S. antitrust law to remedy injuries arising from the effects of anticompetitive conduct on purely foreign commerce. A divided panel of the court below answered yes, holding that the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a, provides foreign plaintiffs with a U.S. antitrust remedy for injuries sustained entirely outside U.S. commerce. According to that ruling, foreign plaintiffs may assert U.S. antitrust claims so long as the conduct that caused their injury also affected U.S. commerce and the effects on U.S. commerce "give rise to 'a claim' by someone, even if not the foreign plaintiff who is before the court." App., *infra*, 4a.

The Second and Fifth Circuits previously have reached conflicting conclusions as to whether the FTAIA authorizes or prohibits Sherman Act claims arising solely from injuries sustained in foreign commerce. The D.C. Circuit's decision in this case expressly conflicts with the Fifth Circuit's decision and rejects the reasoning of the Second Circuit. It is also inconsistent with a recent Third Circuit ruling that foreign plaintiffs injured in purely foreign transactions lack standing to assert Sherman Act claims.

Review by this Court is warranted. The federal courts are divided over an important and frequently recurring question of the extraterritorial reach of the U.S. antitrust laws. Congress did not intend to have the federal antitrust laws regulate transactions between foreign buyers and foreign sellers in foreign countries. As the Solicitor General argued below as *amicus curiae* in support of en banc review, the D.C. Circuit's decision fundamentally misconstrues the FTAIA, threatens to undermine the U.S. government's antitrust enforcement efforts and will needlessly flood U.S. courts with foreign claims.

4

**1. Statutory Background.** Section 1 of the Sherman Act prohibits restraints of trade or commerce within the United States or "with foreign nations." 15 U.S.C. § 1. Section 4 of the Clayton Act provides a private remedy to persons injured "by reason of anything forbidden in the antitrust laws." § 15. Together, they establish a scheme of civil liability for injuries resulting from restraints on U.S. commerce. Neither statute expresses any concern with the effects of anticompetitive conduct on purely foreign commerce.

The FTAIA was enacted in 1982 to address concerns that unduly expansive projection of federal antitrust law would hinder U.S. global competitiveness. The FTAIA did not expand the jurisdictional reach of U.S. law to impose liability for injuries sustained in transactions entirely outside U.S. commerce. To the contrary, the FTAIA *limits* the extra-territorial scope of the Sherman Act. It states that the antitrust laws "shall not apply" to conduct involving commerce with foreign nations (excepting U.S. import commerce) unless such conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce *and* that domestic effect "gives rise to a claim" under the Sherman Act. 15 U.S.C. § 6a. Through the latter condition, Congress required that "the 'effect' providing the jurisdictional nexus must also be the basis for the injury alleged under the antitrust laws." H.R. Rep. No. 97-686, at 10-12 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487.

Until a 2002 decision by the Second Circuit, no court had ever held that the federal antitrust laws authorize claims seeking to remedy harms resulting solely from the effects of anticompetitive conduct on *non-U.S.* commerce. The D.C. Circuit has now also adopted that conclusion, holding that the FTAIA in effect *expanded* the extraterritorial reach of the Sherman Act. The Second Circuit and D.C. Circuit decisions both directly conflict with a 2001 ruling by the Fifth Circuit that claims seeking recovery for injuries resulting from the

5

foreign effects of anticompetitive conduct fall outside the jurisdictional scope of the Sherman Act. The decision below is also inconsistent with the Third Circuit's view that a plaintiff injured in purely foreign commercial transactions lacks standing to seek redress under U.S. antitrust law.

**2. Factual Background.** Respondents are five foreign companies located in Australia, Ecuador, Panama and Ukraine. They initiated this action in July 2000, alleging that a worldwide cartel of bulk vitamin distributors conspired to fix prices and allocate markets on a global basis in violation of the Sherman Act, and invoking the district court's jurisdiction under 15 U.S.C. § 15(a) and 28 U.S.C. §§ 1331, 1337. Respondents purport to represent a class of all foreign purchasers of vitamins from petitioners. They seek treble damages and injunctive relief based solely on vitamin purchases outside the United States. Respondents do not contend that they were injured in U.S. commerce.

The alleged vitamin cartel has prompted numerous criminal and civil proceedings both in the United States and abroad. In the United States, some petitioners have pled guilty to criminal antitrust violations and collectively paid $900 million in fines. See App., *infra*, 68a. In addition, more than 75 federal antitrust cases, including class actions, were consolidated for pretrial proceedings in the district court. The vast majority of the claims in those cases have now been settled, for amounts exceeding $2 billion. Lawsuits seeking damages for alleged violations of state law have also been filed. Outside the United States, record civil penalties exceeding €855 million have been assessed against some petitioners by the European Union, Canada, Australia and Korea. App., *infra*, 68a. Private civil suits for damages have also been filed in Canada, the United Kingdom, Germany, Belgium and the Netherlands, and class actions have been filed in Canada, Australia and New Zealand.

6

**3. The District Court Decision**. The district court dismissed plaintiffs' Sherman Act claims for lack of subject matter jurisdiction, explaining that the federal antitrust laws provide no remedy to "persons injured abroad in transactions otherwise unconnected with the United States." App., *infra*, 48a, 52a. The court relied on the plain meaning of the FTAIA to rule that the Sherman Act does not apply to claims arising from vitamin purchases outside the United States with no impact on U.S. commerce. *Id.* at 48a-52a. The district court noted that its construction of the FTAIA was supported by existing case law, including the Fifth Circuit's opinion in *Den Norske Stats Oljeselskap AS v. HeereMac v.o.f.*, 241 F.3d 420 (5th Cir. 2001), *cert. denied sub nom. Statoil ASA v. HeereMac v.o.f.*, 534 U.S. 1127 (2002). App., *infra*, 50a-51a. The Second Circuit had not yet issued its opinion adopting a contrary view of the FTAIA. *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002), *petition for cert. dismissed*, 71 U.S.L.W. 3169 (Aug. 8, 2003) (No. 02-340).

**4. The Court of Appeals Decision**. The court of appeals reversed the district court and held that the U.S. antitrust laws provide a remedy for injuries sustained in purely foreign commerce, expressly rejecting the Fifth Circuit's contrary ruling in *HeereMac*. The D.C. Circuit ruled that so long as "*someone*, even if not the foreign plaintiff who is before the court," has an injury arising from an effect of the defendant's conduct on U.S. commerce, every foreign plaintiff with a claim arising from a purely foreign effect can sue as well. App., *infra*, 4a, 19a-20a (emphasis added). The court of appeals agreed with the result, but not the reasoning, of the Second Circuit in *Kruman*. See *id.* at 19a-20a.

The D.C. Circuit did not rest its conclusion on the text of the FTAIA, which it believed has "no 'plain meaning'." App., *infra*, 4a. Instead, the court of appeals relied on selected statements in the House Report on the FTAIA that it regarded as "consistent" with its holding and more significant than

7

other statements in the House Report supporting the Fifth Circuit's construction of the statute. App., *infra*, 24a-30a. The most important consideration for the court, however, was its determination that, as a matter of policy, "suits by foreign purchasers harmed solely by a conspiracy's foreign effects are necessary to protect U.S. commerce from global conspiracies." App., *infra*, 32a. The court claimed support for this conclusion in "underlying policies of deterrence" that it found "emanating" from this Court's decision in *Pfizer Inc. v. Government of India*, 434 U.S. 308 (1978). App., *infra*, 4a, 32a-33a. This consideration also led the court to hold that respondents have standing to pursue their claims. See *id.* at 33a-37a.

Judge Henderson dissented on the ground that "the plain language in subsection (2) of the FTAIA expressly limits jurisdiction to a claim which itself arises from the domestic antitrust effect required under subsection (1) of the statute." App., *infra*, 42a. She added that the Fifth Circuit's construction reflects the "more natural" reading of § 6a(2) and is "unambiguously supported" by the legislative history. *Id.* at 40a.

**5. The Position of the United States.** On petition for rehearing en banc, the court of appeals invited the Solicitor General to submit a brief expressing the views of the United States. In response, the Solicitor General urged en banc review to reverse the decision below.[1] He explained that this case raises "an issue of exceptional and recurring importance regarding the scope of the antitrust laws." App., *infra*, 73a. The Solicitor General disagreed with the panel's ruling, in part because the "most natural reading" of the FTAIA "is that

---

[1] *Brief of the United States and the Federal Trade Commission as Amici Curiae in Support of Petition for Rehearing En Banc, Empagran S.A., et al., v. F. Hoffmann-La Roche, Ltd., et al.*, 315 F.3d 338 (D.C. Cir. 2003) (No. 01-7115). The brief submitted by the Solicitor General is reproduced in the appendix to this petition. App., *infra*, 63a-82a.

8

the requisite anticompetitive effects on domestic commerce must give rise to the claim brought by the *particular plaintiff* before the court." *Id.* at 74a (emphasis in original). The Solicitor General also expressly rejected the opinion's deterrence rationale. "[C]onsiderations based on deterrence," the Solicitor General explained, "counsel *against* the panel's expansive interpretation of the FTAIA," because increasing the potential liability of antitrust offenders worldwide will discourage them from voluntarily disclosing misconduct to the Department of Justice under its corporate leniency program. *Id.* at 78a (emphasis in original).

Notwithstanding the position of the United States, the D.C. Circuit denied rehearing en banc by a 4 to 3 vote, with Judges Sentelle, Henderson and Randolph voting to grant rehearing and Judges Garland and Roberts not participating.

## REASONS FOR GRANTING THE PETITION

This Court should grant review to resolve the conflict among the courts of appeals over the meaning of an important federal statute and to make clear that Congress did not intend to authorize antitrust claims seeking recovery for injuries resulting from the effects of anticompetitive conduct on purely foreign commerce. Resolution of this fundamental and frequently recurring issue is critical to the administration of justice and to the U.S. government's antitrust enforcement efforts and relations with foreign nations.

## I.   THE COURT OF APPEALS' DECISION CON-FLICTS WITH DECISIONS OF OTHER CIRCUITS AND WITH THE VIEWS OF THE UNITED STATES.

The courts of appeals are sharply divided over the question presented in this petition. Both the D.C. Circuit in this case and the Second Circuit in *Kruman* expressly rejected the Fifth Circuit's holding in *HeereMac*. App., *infra*, 19a-20a;

9

*Kruman*, 284 F.3d at 396-98. The D.C. Circuit recognized the conflict over the meaning of the FTAIA, stating that "the Second and Fifth Circuits have split on this very question of statutory interpretation." App., *infra*, 14a. The Seventh Circuit has similarly noted the "conflict in the circuits" on this issue, *Metallgesellschaft AG v. Sumitomo Corp.*, 325 F.3d 836, 839 (7th Cir. 2003), as has the Third Circuit, see *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 306-07 (3d Cir. 2002) ("[T]he meaning of [the FTAIA] has split two of our sister circuits.").

In *HeereMac*, the first court of appeals decision to interpret the FTAIA, the plaintiff, a Norwegian oil company, had alleged that an international price-fixing conspiracy by barge companies violated the Sherman Act by inflating both the plaintiff's operating costs in the North Sea and prices for barge services in the Gulf of Mexico, a U.S. market. 241 F.3d at 421. Because the plaintiff's claim arose exclusively from its North Sea contracting and not from any impact of the conspiracy on U.S. commerce, the court held that the plaintiff's claim fell outside the subject matter jurisdiction of the federal antitrust laws. *Id.* at 426. The court explained that "the plain language of the FTAIA precludes subject matter jurisdiction over claims by foreign plaintiffs against defendants where the situs of the injury is overseas and that injury arises from effects in a non-domestic market." *Id.* at 428. The Fifth Circuit found that plain meaning confirmed by the legislative history and applicable case law, as well as by the practical implications of the plaintiff's contrary reading, which "would open United States courts to global claims on a scale never intended by Congress." *Id.* at 431. Judge Higginbotham dissented, asserting that the source of the plaintiff's injury "is irrelevant" so long as the defendant's conduct harms U.S. commerce. *Id.* at 439.

In considering the petition for certiorari in *HeereMac*, this Court invited the views of the Solicitor General. The Solicitor

10

General's brief, submitted on behalf of the United States and the Federal Trade Commission, stated that the Fifth Circuit's decision was "consistent with the statutory text, history, and purposes" of the Sherman Act and agreed with its ruling "that the FTAIA requires that the anticompetitive effects on United States commerce must give rise to a plaintiff's claimed injuries."[2] The brief further observed that, at the time, no other federal court had adopted a contrary position.

Shortly after this Court denied review in *HeereMac*, the Second Circuit in *Kruman* adopted a view of the FTAIA directly contrary to the Fifth Circuit's interpretation. 248 F.3d at 390. The plaintiffs in *Kruman* were purchasers and sellers at foreign auctions who alleged an international conspiracy by the world's two largest auction houses to fix prices and commissions. The court concluded that, because the FTAIA amends the Sherman Act and not the Clayton Act, it does not bear on "what injury a plaintiff must suffer in order to bring suit," and thus could not be read to require that a plaintiff's injury arise from an effect on U.S. commerce. *Id.* at 397-98. In addition, according to the court, the use of the term "a claim" rather than "the plaintiff's claim" in subsection 2 of the FTAIA indicates that the Sherman Act reaches foreign conduct whenever a claim arising from a U.S. effect *could* be asserted, whether or not the plaintiff's claim *actually* arose from that U.S. effect. *Id.* at 400. A petition for certiorari filed in the *Kruman* case was dismissed after settlement by the parties.

The decision below adds to this conflict in the courts of appeals. The D.C. Circuit's determination that the FTAIA permits antitrust claims seeking to recover for harms

---

[2] *Brief of the United States and the Federal Trade Commission as Amici Curiae* at 5, 10-16, *Statoil ASA v. HeereMac v.o.f.*, 534 U.S. 1127 (2002) (No. 00-1842). The brief submitted by the Solicitor General in *HeereMac* is available at http://www.usdoj.gov/atr/cases/f9800/9844.pdf.

11

sustained in purely foreign commerce directly conflicts with the Fifth Circuit's construction of the statute. The D.C. Circuit found "no 'plain meaning'" in § 6a(2) of the FTAIA, expressly rejecting the Fifth Circuit's conclusion that "'a claim' plainly refers to the plaintiff's claim." App., *infra*, 4a, 19a. The D.C. Circuit generally agreed with the Second Circuit's holding in *Kruman*, but concluded that its reasoning that the FTAIA's conditions are met whenever suit could be brought by the U.S. government, whether or not any private litigant could sue, "reach[ed] too far." App. *infra*, 4a. This disagreement in the courts of appeals over the proper interpretation of the FTAIA calls for review by this Court.

In addition, the D.C. Circuit's ruling that respondents have standing is inconsistent with the Third Circuit's decision in *Turicentro* that plaintiffs whose injuries occurred exclusively in foreign markets lack standing. 303 F.3d at 307. In *Turicentro*, the Third Circuit affirmed dismissal of antitrust claims by foreign travel agents who alleged that airlines had conspired to fix their commissions. The plaintiffs had not alleged any harm to U.S. commerce from the alleged conspiracy and thus failed to satisfy even the first condition of the FTAIA. *Id.* at 304-06. In addition, the court ruled, the plaintiffs lacked standing, based on the principle set forth in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487 (1977), that the plaintiff's injury must "flow from that which makes the defendant's acts unlawful." *Id.* at 307. Because the plaintiffs' injuries occurred exclusively in foreign markets, the Third Circuit held that they were "not of the type Congress intended to prevent through the [FTAIA] or the Sherman Act." *Id.* at 307.

There now are four conflicting opinions from the courts of appeals as to whether the U.S. antitrust laws reach the effects of anticompetitive conduct on foreign commerce. These opinions, together with two dissenting opinions, comprehensively set forth the competing considerations of law and

12

policy. The United States government and the Federal Trade Commission have provided their views on this recurring question of importance.[3]  This circuit conflict is now ripe for the Court's resolution, and this case provides an ideal vehicle for resolving the conflict.

## II.  THE COURT OF APPEALS MISCONSTRUED THE FTAIA.

The FTAIA does not permit claims seeking to recover for injuries resulting from the effects of anticompetitive conduct on foreign commerce. The court of appeals' contrary ruling is refuted by the FTAIA's text, especially when read in light of essential canons of construction and the statute's purpose. The court below disregarded these key determinants of statutory meaning, relying instead on a misreading of the legislative history and its own policy judgment that its ruling was "necessary to protect U.S. commerce from global conspiracies." App., *infra*, 32a. That judgment is unsupported by any law or precedent of this Court and has been criticized by the federal agencies responsible for antitrust enforcement. Finally, the court's construction of the FTAIA is inconsistent with longstanding principles of U.S. antitrust law.

---

[3] The recurring nature of the question is evidenced by the large and growing number of cases in which the district courts have addressed the issue. In addition to *HeereMac*, *Kruman* and this case, see, *e.g.*, *Sniado v. Bank Aus., AG*, 174 F. Supp. 2d 159, 170 (S.D.N.Y. 2001) (dismissing for lack of subject matter jurisdiction); *Ferromin Int'l Trade Corp. v. UCAR Int'l, Inc.*, 153 F. Supp. 2d 700, 704-05 (E.D. Pa. 2001) (same), *appeal docketed sub nom. BHP N.Z., Ltd. v. UCAR Int'l, Inc.*, Nos. 01-3329, 01-3340, 01-3991 (3d Cir. Aug. 29, 2001); *Eurim-Pharm GmbH v. Pfizer Inc.*, 593 F. Supp. 1102, 1107 (S.D.N.Y. 1984) (same); see also *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 716 (D. Md. 2001) (dismissing for lack of standing); *Galavan Supplements, Ltd. v. Archer Daniels Midland Co.*, No. C97-3259 FMS, 1997 WL 732498, at *4 (N.D. Cal. Nov. 19, 1997) (same); *de Atucha v. Commodity Exch., Inc.*, 608 F. Supp. 510, 518 (S.D.N.Y. 1985) (same).

13

### A. The FTAIA Does Not Authorize Claims Seeking to Remedy Injuries Sustained in Purely Foreign Commerce.

The restrictive nature of the FTAIA is made clear by its text, by canons of statutory construction that discourage the extraterritorial projection of U.S. law without a clear textual mandate and by the statute's evident purpose.

**1. Statutory Text.** As the Solicitor General has argued, "the most natural reading" of the FTAIA is that it does not allow claims to remedy harms arising from the foreign effects of anticompetitive conduct. App., *infra*, 74a. The preamble's negative mandate—that the Sherman Act "shall not apply"—precludes U.S. antitrust scrutiny of conduct involving foreign commerce "unless" two conditions are satisfied, each of which is tied to an effect on U.S. commerce. 15 U.S.C. § 6a. First, the conduct must have a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. § 6a(1). Second, "such effect" must "give[] rise to a claim" under the Sherman Act. § 6a(2). These conditions are followed by a concluding proviso that confirms the FTAIA's restrictive purpose: although the Sherman Act may apply to export trade with foreign nations, it does so only in the case of "a person engaged" in such trade "*in the United States*" and "*only* for injury to export business *in the United States*." § 6a (emphasis added.).

This cumulative language of limitation repeatedly returns to domestic effects as the sole concern of U.S. antitrust law. It cannot plausibly be read to *expand* the jurisdictional reach of that law to the foreign effects of anticompetitive conduct. As the Solicitor General explained in urging en banc rehearing below, "[the FTAIA's] text contains no hint of a statutory purpose to permit recovery where the situs of injury is entirely foreign and the injury exclusively arises from a conspiracy's effect on foreign commerce." App., *infra*, 75a.

14

The court of appeals theorized that the phrase "a claim" instead of "the plaintiff's claim" in subsection 2 created an "ambiguity" as to the FTAIA's meaning. App., *infra*, 19a-20a. But as the Solicitor General has stated, "the most natural reading of Section 6a(2)'s requirement that 'such effect gives rise to a claim' is that the requisite anticompetitive effects on domestic commerce must give rise to the claim brought by the *particular plaintiff* before the court." App., *infra*, 74a (emphasis in original). This Court has refused to use "[t]he article 'a'" to determine a provision's meaning, *National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 500 (1998), or to "ascrib[e] to one word a meaning so broad that it…[gives] unintended breadth" to a statute, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995). See also *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) (surrounding language indicated that Congress intended "a precise and narrow application" of statutory provision). If Congress had intended the FTAIA to authorize *everyone* to bring an antitrust suit so long as *someone* could, it surely would have said so by a definite statement, not by using an indefinite article in an otherwise restrictive provision.

The significance ascribed to the "a claim" language is also refuted by its origins. The bill initially reported by the Judiciary Committee required that an effect on domestic commerce must be "the basis of the violation alleged under this Act." H.R. Rep. No. 97-686, at 1 (text of bill as reported). Chairman Rodino explained that this language was changed to state that the effect must "give[] rise to a claim" only as a "minor clarification," because technically an "effect" does not give rise to a "violation" but rather to "a claim." *Id.* at 18. This explanation confirms that the presence of the indefinite article "a" before "claim" was not intended to usher in a new wave of global antitrust litigation in U.S. courts. *Id.* at 2 (describing FTAIA "as a simple and straightforward clarification of existing American law").

15

The structure of the FTAIA further demonstrates that the claim before the court must arise from the effects produced by the conduct at issue on U.S. commerce. By first excluding from the reach of the Sherman Act all conduct without such effects and then requiring that those effects "give[] rise to a claim," Congress made clear that a claim under the Sherman Act *must* seek to remedy a U.S. effect. The court below disregarded this deliberate juxtaposition. See *Holloway v. United States*, 526 U.S. 1, 6 (1999) (courts must consider "placement" of statutory phrase).

**2. Canons of Construction**. Established canons of construction reinforce the restrictive meaning of the FTAIA. A statute may not be construed to prescribe U.S. law extraterritorially absent a "clearly expressed" intent by Congress. *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). As the court of appeals recognized (App., *infra*, 20a), the FTAIA contains no language, much less "clear" language, expressing an intent by Congress to enlarge the extraterritorial application of the Sherman Act to prescribe a remedy for harms sustained in purely foreign transactions.

Federal laws must also be construed to avoid substantial constitutional difficulties whenever possible. See, *e.g.*, *Solid Waste Agency v. United States Army Corps of Eng'rs*, 531 U.S. 159, 173-74 (2001). Given that the Commerce Clause permits Congress to regulate trade "with foreign nations," it is far from clear that it would permit the construction of the FTAIA by the court below. See *HeereMac*, 241 F.3d at 426 n.18 (questioning Congress's power "to regulate purely foreign commerce"). This constitutional concern weighs against any construction of the FTAIA that would result in U.S. regulation of purely foreign commercial transactions.

**3. Statutory Context and Purpose**. Finally, the historical context supports the view of the FTAIA adopted by the Fifth Circuit. As this Court has stated, "American antitrust laws do not regulate the competitive conditions of other nations'

16

economies." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582 (1986). Historically, the antitrust laws have been interpreted to reach activities outside the United States in order to address the effects of those activities on U.S. commerce, see *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993); *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 444 (2d Cir. 1945), not their effects on foreign commerce. Indeed, as the Solicitor General has observed, when Congress enacted the FTAIA in 1982, it had never been suggested that an antitrust claim may arise from an injury incurred in purely foreign commerce. See App., *infra*, 80a ("We are unaware of any decision pre-dating the FTAIA that permitted such suits.").

Nothing in the FTAIA suggests a purpose to enlarge the extraterritorial scope of the federal antitrust laws beyond their 1982 bounds. To the contrary, the FTAIA reaffirms that the exclusive focus of the antitrust laws is a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. As the Solicitor General noted below, the FTAIA was prompted "by a perceived need to clarify the *limitations* of the Sherman Act's reach over international transactions." App., *infra*, 76a (emphasis added). Construed in light of its historical context, the FTAIA cannot plausibly be read to expand that reach. *Hartford Fire*, 509 U.S. at 796 n.23 ("The FTAIA was intended to exempt from the Sherman Act export transactions that did not injure the *United States economy*.") (emphasis added); see also *Pierce County v. Guillen*, 537 U.S. 129, 146 (2003) (plain meaning of amendment "was reinforced by [its] history").

Leading commentators have recognized that the FTAIA made clear that "the concern of the antitrust laws is protection of *American* consumers and *American* exporters, not foreign consumers or producers." IA Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW ¶ 272h, at 358-59 (2d ed. 2000) (emphasis in original). John Shenefield, head of the

17

Antitrust Division from 1977-1979, confirmed the statute's restrictive purpose, noting that Congress enacted the FTAIA to resolve uncertainties "in favor of denying jurisdiction" over "conduct affecting wholly foreign commerce" and to clarify that, "[i]n such cases, private litigants have no right to recover damages."    John H. Shenefield, *Thoughts on Extraterritorial Application of the United States Antitrust Laws*, 52 FORDHAM L. REV. 350, 364 (1983).

### B.   The Grounds Advanced by the Court Below Cannot Support Its Construction of the FTAIA.

The court of appeals found "no 'plain meaning'" in the text of the FTAIA. App., *infra*, 4a. It instead relied on legislative history and a policy judgment that its reading of the statute was "necessary to protect U.S. commerce from global conspiracies." *Id.* at 32a. Neither of these grounds can justify the court of appeals' decision. They are inadequate to supply the clear expression of congressional intent necessary to expand the extraterritorial application of U.S. law.

**1.    Legislative History Rationale**. The legislative history does not support the court of appeals' interpretation of the FTAIA. The House Report explains that subsection 2 of the statute was added in order "to require that the 'effect' providing the jurisdictional nexus"—*i.e.*, the "direct, substantial, and reasonably foreseeable" effect on U.S. commerce required by subsection 1—"must also be the basis for the injury alleged." H.R. Rep. No. 97-686, at 11-12. In addition, the House Report repeatedly refers to the protections afforded to foreign purchasers under the antitrust laws "*in the domestic marketplace*." *Id.* at 10 (emphasis added). By emphasizing the need for a "nexus" to "the domestic marketplace," Congress plainly sought to restrict Sherman Act litigation to claims involving injury incurred in U.S. commerce. As the Seventh Circuit has recognized, "the