18

legislative history shows that jurisdiction stripping is what Congress had in mind in enacting the FTAIA." *United Phosphorus, Ltd. v. ANGUS Chem. Co.*, 322 F.3d 942, 951 (7th Cir. 2003), *petition for cert. denied*, 72 U.S.L.W. 18 (Nov. 10, 2003) (No. 03-203).

In claiming support from the legislative history, the D.C. Circuit focused on a statement in the House Report that "the impact of the illegal conduct" need not "be experienced by the injured party *within* the United States." App., *infra*, 24a-25a (emphasis added). But this statement does not authorize an antitrust claim where the party's injury does not arise from an effect on *U.S. commerce*. It merely reiterates established law that injuries sustained abroad may be recoverable under U.S. antitrust law if the plaintiff was harmed while doing business in U.S. commerce. See, *e.g.*, *Pacific Seafarers, Inc. v. Pacific Far East Line, Inc.*, 404 F.2d 804, 816-17 (D.C. Cir. 1968) (holding that injuries of American companies excluded from federally-financed ocean shipping between foreign countries were actionable because they were injuries sustained in U.S. commerce). The court also wrongly inferred that, because parts of the House Report discussed only the sorts of U.S. effects that would be "sufficient," Congress must not have intended also to require that the plaintiff's claim arise from a U.S. effect. App., *infra*, 28a. Nothing in the fragments of the House Report cited by the D.C. Circuit justifies its holding that "foreign plaintiffs injured solely by the foreign effects of the anticompetitive conduct may sue, so long as the conduct also harms U.S. commerce." App., *infra*, 24a. To the contrary, the legislative history demonstrates that Congress sought to restrict, not expand, the application of U.S. law to foreign controversies.

**2. Deterrence Rationale.** Nor does the deterrence rationale invoked by the court of appeals justify its construction of the FTAIA. The court erred by elevating its own policy judgments about optimal antitrust deterrence over Congress's

19

intentions as expressed in the language of the FTAIA. The court was also wrong in its assumption that antitrust deterrence would be enhanced by authorizing persons injured outside U.S. commerce to recover damages under U.S. law.

To support its expansive reading of the FTAIA, the court cited "policies of deterrence" that it viewed as "emanating" from this Court's decision in *Pfizer*. App., *infra*, 4a, 30a-33a. But *Pfizer* simply held that a foreign state is a "person" entitled to sue under the Clayton Act. 434 U.S. at 320. *Pfizer* noted that its reading would advance deterrence, but it never suggested that U.S. antitrust law provides a remedy for injuries sustained outside U.S. commerce. To the contrary, the Court expressly stated that U.S. antitrust law should protect a foreign government that "enters *our commercial markets*." *Id.* at 318 (emphasis added).[4]

Congress has specifically prescribed what it views as sufficient deterrence, and that prescription does not include permitting claims by persons injured outside U.S. commerce. Over the years, Congress has steadily increased the criminal penalties that may be imposed on corporations for violations of the Sherman Act from $50,000 (prior to 1974) to $10,000,000 today. And actual penalties substantially exceed these amounts as a result of other provisions of the criminal code which authorize fines based on twice the corporation's pecuniary gain from price fixing or twice the victim's loss. See 18 U.S.C. § 3571. Indeed, one petitioner in this case has paid a $500 million criminal penalty to the U.S. government, the largest criminal fine ever obtained by the Department of Justice. App., *infra*, 68a. The court of appeals made no mention of the deterrent effect of these criminal sanctions (or

---

[4] Only this Court can provide the necessary clarification of its ruling in *Pfizer*, which has been read to have different meanings by the majority and dissenting opinions from the Second, Fifth and D.C. Circuits. See App., *infra*, 30a-32a; *Kruman*, 284 F.3d at 403; *HeereMac*, 241 F.3d at 430; *id.* at 434-35 (Higginbotham, J. dissenting).

20

the fines and prison terms imposed on individuals personally) in reaching its decision that additional civil liability was "necessary" for adequate deterrence. Nor did it consider the deterrent effect of civil damages claims under state laws that permit suits by indirect purchasers barred from asserting federal claims. It also ignored the substantial deterrent effect of civil claims under foreign laws and of foreign governmental enforcement proceedings, which in the case of the alleged vitamin cartel resulted in aggregate fines exceeding €855 million. See App., *infra*, 68a.

Finally, as a matter of antitrust enforcement policy, the court of appeals' judgment is simply wrong. The federal agencies charged with enforcing the antitrust laws have already warned that the decision below will weaken, rather than enhance, deterrence. As the Solicitor General explained below, imposing treble damages liability for worldwide sales will discourage antitrust violators from disclosing criminal conduct under programs in the United States and other jurisdictions that provide amnesty from criminal prosecution. *Id.* at 78a-79a. Amnesty programs, "the number one source of leads for breaking up international cartels," promote deterrence by increasing the probability that illegal practices will eventually be detected. *Id.* at 78a. The court of appeals should not have allowed its own view of effective deterrence to override the assessment of the U.S. antitrust enforcement agencies.

### C. The Court of Appeals Ignored Antitrust Standing and Injury Requirements Recognized in This Court's Decisions.

A final, and conclusive, reason to reject the D.C. Circuit's expansive view of the U.S. antitrust laws is that, as the Solicitor General explained below, it conflicts with long-standing principles of standing and antitrust injury that "Congress incorporated [into] the FTAIA." App., *infra*, 75a.

21

Those "longstanding principles" require an antitrust plaintiff to show that it—and not some other person—suffered "an injury of the type the antitrust laws were designed to prevent." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111-13 (1986). A plaintiff's injury, to be actionable, must "flow[] from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. Subsection 1 of the FTAIA, under any of the statute's competing interpretations, makes clear that "a direct, substantial, and reasonably foreseeable effect" on U.S. commerce is necessary for foreign conduct to be unlawful. Accordingly, as a matter of antitrust standing, only injuries that "flow from" those U.S. effects are actionable. As the Third Circuit has recognized, injuries occurring "exclusively in foreign markets * * * are not of the type Congress intended to prevent through the [FTAIA] or the Sherman Act." *Turicentro*, 303 F.3d at 307. By expressly requiring that a claim must "arise from" a U.S. effect, the jurisdictional limitation of subsection 2 of the FTAIA is consistent with the standing requirement expressed by this Court in *Brunswick*. It requires that the plaintiff's injury "flow from" the U.S. effect that makes the defendant's conduct unlawful.

To reject that conclusion, as the court below did, is to read the FTAIA as an affirmative grant of standing to persons injured in foreign commerce *even though* their injuries *do not* flow from any U.S. effect. It turns the FTAIA into a silent partial repeal of the basic standing principles laid down by this Court in *Brunswick*, for the benefit of foreign plaintiffs. Subsection 2 should not be interpreted as having effected so dramatic a change, because its most natural reading comports with existing law and because Congress specifically disclaimed any intent to make such a change. See H.R. Rep. No. 97-686, at 11 ("[T]he Committee does not intend to alter existing concepts of antitrust injury or antitrust standing.").

22

### III. THE FREQUENTLY RECURRING QUESTION PRESENTED IN THIS CASE HAS EXCEPTIONAL PUBLIC IMPORTANCE.

As the Solicitor General stated in urging en banc rehearing by the court below, this case raises "an issue of exceptional and recurring importance regarding the scope of the antitrust laws." App., *infra*, 73a. R. Hewitt Pate, Assistant Attorney General of the Antitrust Division of the U.S. Department of Justice, has identified the question of "foreign jurisdiction" presented in this case as one that needs "clarification" by this Court. *Roundtable Conference with Enforcement Officials*, 71 ANTITRUST L.J. 333, 374-75 (2003).

In today's global economy, it will not be difficult to allege that a wide variety of foreign "conduct" has some "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. Indeed, as the Solicitor General has noted, foreign plaintiffs are bringing such claims with "increasing frequency." App., *infra*, 73a. If an antitrust claim need not arise from a U.S. effect, as the court below held, new cases from all over the world will flood the federal district courts. Foreign plaintiffs, attracted by the powerful lure of treble damages, attorneys' fees, liberal discovery, joint and several liability, class actions and jury trials, will "flock to United States federal courts" rather than pursue claims in their home countries under their own laws. *HeereMac*, 241 F.3d at 427-28. That risk is heightened by the uncabined character of the court of appeals' ruling. It is not limited to cases alleging "per se" antitrust violations, such as price-fixing or market-allocation agreements; it also permits foreign plaintiffs to pursue damages claims subject to a "rule of reason" analysis, monopolization claims and even challenges to mergers and joint ventures. As the Solicitor General has warned, the majority's position "would effect a sea change in the number and type of private actions permitted under the Sherman Act." App., *infra*, 79a.

23

Importing these cases into U.S. courts infringes the right of foreign nations to regulate their own markets according to their own laws and policies. A key motivation for enactment of the FTAIA was to "encourage our trading partners to take more effective steps to protect competition in their markets." H.R. Rep. No. 97-686, at 14. Congress's work has borne fruit. "[N]early 100 jurisdictions now have comprehensive antitrust laws," and "[n]early all" of these "now ban cartels either civilly or criminally." R. Hewitt Pate, *The DOJ International Antitrust Program—Maintaining the Momentum*, Speech Before the ABA Section of Antitrust Law, at 6, 8 (Feb. 6, 2003).[5] This "wave of antitrust legislation in European and other countries" (1 Fugate, FOREIGN COMMERCE AND THE ANTITRUST LAWS § 2.1, at 45 (5th ed. 1996)) counsels caution in extending the reach of United States antitrust laws.

Many countries, as a matter of public policy, have rejected treble damages as "one of the most unacceptable aspects of U.S. regulatory law." Hannah L. Buxbaum, *The Private Attorney General in a Global Age: Public Interests in Private International Antitrust Litigation*, 26 YALE J. INT'L L. 219, 251 (2001). That policy choice should be respected and not voided by U.S. courts. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (rejecting "parochial concept that all disputes must be resolved under our laws and in our courts"). Permitting foreign plaintiffs to reject the means chosen by their own nations to protect competition and instead seek treble damages in U.S. courts will vastly enlarge liability for transactions otherwise governed by foreign laws and is bound to lead to "conflict and resentment" and retaliatory legislation. See ABA Section of Antitrust Law, ANTITRUST LAW DEVELOPMENTS 1208-09 (5th ed. 2002) (discussing foreign "blocking statutes" that bar enforcement of U.S. treble damages judgments); see also

---

[5] Transcript available at www.usdoj.gov/atr/public/speeches/200736.pdf.

24

Spencer W. Waller, ANTITRUST AND AMERICAN BUSINESS ABROAD § 4:6 (3d ed. 2002) ("The perceived affront to sovereignty implicit in some forms of extraterritorial regulation has been the ground of many foreign governmental objections.").

The question presented in this case is, therefore, one of exceptional importance. Cartel conspiracy cases are massive, sprawling and expensive to litigate. The decision of the court of appeals, allowing such cases to be transported from around the globe to this country, not only compounds the burdens they impose on litigants and the U.S. judicial system but also infringes the sovereign prerogatives of foreign nations.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

<table>
<tr><td>STEPHEN M. SHAPIRO</td><td>ARTHUR F. GOLDEN</td></tr>
<tr><td>TYRONE C. FAHNER</td><td><em>Counsel of Record</em></td></tr>
<tr><td>ANDREW S. MAROVITZ</td><td>LAWRENCE PORTNOY</td></tr>
<tr><td>JEFFREY W. SARLES</td><td>CHARLES S. DUGGAN</td></tr>
<tr><td>MAYER, BROWN, ROWE &amp; MAW LLP</td><td>SHANNON A. ROGERS</td></tr>
<tr><td></td><td>DAVIS POLK &amp; WARDWELL</td></tr>
<tr><td>190 South La Salle Street</td><td>450 Lexington Avenue</td></tr>
<tr><td>Chicago, IL  60603</td><td>New York, NY  10017</td></tr>
<tr><td>(312) 782-0600</td><td>(212) 450-4000</td></tr>
<tr><td><em>Attorneys for Petitioner BASF Corporation</em></td><td><em>Attorneys for Petitioner F. Hoffmann-La Roche Ltd</em></td></tr>
</table>

25

PATRICK F. MCCARTAN
JOHN M. MAJORAS
DANIEL H. BROMBERG
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939

*Attorneys for Petitioner*
*Aventis S.A. (f/k/a Rhône-*
*Poulenc S.A.), Aventis*
*Animal Nutrition Inc. (f/k/a*
*Rhône-Poulenc Animal*
*Nutrition Inc.), Aventis*
*CropScience USA Inc. (f/k/a*
*Rhône-Poulenc Inc.) and*
*Hoechst Marion Roussel S.A.*

KENNETH PRINCE
STEPHEN FISHBEIN
RICHARD SCHWED
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

*Attorneys for Petitioner*
*BASF AG*

LAURENCE T. SORKIN
ROY L. REGOZIN
CAHILL GORDON & REINDEL
LLP
80 Pine Street
New York, NY 10005
(212) 701-3000

*Attorneys for Petitioner*
*Akzo Nobel Chemicals B.V.*
*and Akzo Nobel Inc.*

ROBERT PITOFSKY
BRUCE L. MONTGOMERY
FRANKLIN R. LISS
ARNOLD & PORTER
555 Twelfth Street, N.W.
Washington, DC 20004
(202) 942-5000

*Attorneys for Petitioner*
*Hoffmann-La Roche Inc.*
*and Roche Vitamins Inc.*

MICHAEL L. DENGER
MIGUEL A. ESTRADA
GIBSON, DUNN & CRUTCHER
LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

*Attorneys for Petitioner Daiichi*
*Pharmaceutical Co., Ltd.,*
*Daiichi Pharmaceutical*
*Corp. and Daiichi Fine*
*Chemicals, Inc.*

26

D. STUART MEIKLEJOHN
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000

*Attorneys for Petitioner*
  *Eisai Co., Ltd., Eisai U.S.A.,*
  *Inc. and Eisai Inc.*

LAWRENCE BYRNE
GEORGE VUOSO
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200

*Attorneys for Petitioner*
  *Takeda Chemical*
  *Industries, Ltd. and*
  *Takeda Vitamin & Food*
  *USA, Inc.*

DONALD I. BAKER
W. TODD MILLER
CHRISTINE J. SOMMER
BAKER & MILLER PLLC
2401 Pennsylvania Ave., N.W.
Suite 300
Washington, DC  20037
(202) 637-9499

ALICE G. GLASS
SPECIAL COUNSEL
BAKER & MILLER PLLC
River Landing Farm
261 River Road
Lyme, NH  03768
(603) 795-4609

*Attorneys for Petitioners*
  *Chinook Group Ltd. and*
  *Cope Investments Ltd.*

PAUL P. EYRE
ERNEST E. VARGO
BAKER & HOSTETLER LLP
1900 East 9th Street
3200 National City Center
Cleveland, OH  44114
(216) 621-0200

*Attorneys for Petitioner*
  *Bioproducts Incorporated*

JAMES B. WEIDNER
KLAUS H. JANDER
FRED W. REINKE
CLIFFORD CHANCE US LLP
200 Park Avenue
New York, NY 10166
(212) 878-8000

*Attorneys for Petitioners*
  *EM Industries, Inc.,*
  *Merck KGaA and E. Merck*

JIM J. SHOEMAKE
KURT S. ODENWALD
MARY ANN OHMS
GUILFOIL, PETZALL &
  SHOEMAKE, LLC
100 South Fourth Street
St. Louis, MO  63102
(314) 241-6890

*Attorneys for Petitioners*
  *DuCoa, L.P. and DCV, Inc.*

27

DONALD C. KLAWITER
PETER E. HALLE
MORGAN, LEWIS &
    BOCKIUS, LLP
1111 Pennsylvania Avenue,
N.W.
Washington, DC 20004
(202) 739-3000

*Attorneys for Petitioners*
    *Degussa AG and*
    *Degussa Corp.*

JAMES R. WEISS
PRESTON, GATES & ELLIS LLP
1735 New York Avenue, N.W.
Washington, DC 20006
(202) 628-1700

*Attorneys for Petitioners*
    *DoCoa, L.P. and*
    *DCV, Inc.*

THOMAS M. MUELLER
MICHAEL O. WARE
MAYER, BROWN, ROWE &
    MAW LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

*Attorneys for Petitioners*
    *Lonza Inc., Lonza AG and*
    *Alusuisse-Lonza Group Ltd*
    *(n/k/a Alcan (Switzerland)*
    *Ltd)*

AILEEN MEYER
PILLSBURY WINTHROP LLP
1133 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 775-9800

SUTTON KEANY
BRYAN DUNLAP
PILLSBURY WINTHROP LLP
One Battery Park Plaza
New York, NY 10004
(212) 858-1000

*Attorneys for Petitioner*
    *Mitsui & Co., Ltd.*

KENNETH W. STARR
KAREN N. WALKER
KANNON K. SHANMUGAM
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
(202) 879-5000

*Attorneys for Petitioners*
    *Reilly Chemicals, S.A. and*
*Reilly Industries, Inc.*

MARK RIERA
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
Forty-Eighth Floor,
333 South Hope Street
Los Angeles, CA 90071
(213) 620-1780

*Attorneys for Petitioner*
    *Tanabe U.S.A. Inc.*

28

MOSES SILVERMAN
AIDAN SYNNOTT
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 373-3000

*Attorneys for Petitioners*
  *Sumitomo Chemical Co.,*
  *Ltd and Sumitomo*
  *Chemical America, Inc.*

MARTIN FREDERIC EVANS
GARY W. KUBEK
DEBEVOISE & PLIMPTON
919 Third Avenue
New York, NY  10022
(212) 909-6000

*Attorneys for Petitioner*
  *Nepera, Inc.*

KEVIN R. SULLIVAN
GRACE M. RODRIGUEZ
KING & SPALDING LLP
1730 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 737-0500

GRIFFIN B. BELL
JEFFREY S. CASHDAN
KING & SPALDING LLP
191 Peachtree Street, N.E.
Atlanta, GA  30303
(404) 572-4600

*Attorneys for Petitioner*
  *UCB Chemicals Corp.*