UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES INC., MM GLOBAL SERVICES PTE. LTD., and MEGAVISA SOLUTIONS (S) PTE. LTD., | : <br> : <br> : <br> : |
| Plaintiffs, | : Civil No. 302 CV 1107 (AVC) |
| -v- | : |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., | : <br> : <br> : <br> : <br> : January 9, 2004 |
| Defendants. | : |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR RECONSIDERATION OF THE COURT'S
DECISION RE THE DEFENDANTS' MOTION TO
<u>DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

THELEN REID & PRIEST LLP
   Richard S. Taffet (ct 10201)
   875 Third Avenue
   New York, New York 10022-6225
   (212) 603-2000

WIGGIN & DANA LLP
   Robert M. Langer (ct 06305)
   Suzanne E. Wachsstock (ct 17627)
   One CityPlace
   185 Asylum Street
   Hartford, Connecticut 06103-3402
   (860) 297-3724

   Attorneys for Plaintiffs MM Global Services
   Inc., MM Global Services Pte. Ltd., and
   Megavisa Solutions (S) Pte. Ltd.

# TABLE OF CONTENTS

|    | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| PLAINTIFFS HAVE DEMONSTRATED A SOUND LEGAL BASIS FOR RECONSIDERATION OF THE DECISION | 2 |
| A. The Decision Did Not Properly Consider The Jurisdictional Facts Relating to UCCS | 3 |
| B. The Decision Did Not Properly Consider The Jurisdictional Facts Relating to Dow Singapore | 6 |
| C. Limited And Targeted Jurisdictional Discovery Is Warranted Under The Circumstances Here | 8 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

## CASES

<u>Above the Belt, Inc. v. Mel Bohannan Roofing Co.</u>, 19 F.R.D. 99 (E.D. Va. 1983) ...........3

<u>Schrader v. CSX Transp., Inc.</u>, 70 F.3d 255 (2d Cir. 1995) ...........3

## PRELIMINARY STATEMENT

Plaintiffs submit this reply in further support of their motion for reconsideration of the Court's decision, dated November 17, 2003 (the "Decision"), granting the motion to dismiss of defendants Union Carbide Customer Services Pte. Ltd. ("UCCS") and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") for lack of personal jurisdiction, and denying the same motion by defendant Union Carbide Asia Pacific, Inc. ("UCAP").

As set forth fully in plaintiffs' moving papers, reconsideration regarding the dismisal of UCCS and Dow Singapore is sought here because, respectfully, the Decision overlooks relevant jurisdictional evidence that was before the Court or fails to afford plaintiffs the benefit of all reasonable inferences that may be drawn from such evidence. Alternatively, plaintiffs request that they be allowed the opportunity, consistent with the established law and the Court's discretion, to conduct limited and targeted discovery regarding the substantiality of UCCS and Dow Singapore's purchases in Connecticut, and that the dismissal of UCCS and Dow Singapore be stayed pending such discovery. Such narrowly focused jurisdictional discovery would be particularly warranted here, where plaintiffs have not previously had the opportunity to conduct any discovery of UCCS or Dow Singapore.

The opposition of UCCS and Dow Singapore[1] presents no sustainable arguments against the relief sought by plaintiffs. They first argue that plaintiffs have failed to present any legally cognizable basis for seeking reconsideration because plaintiffs do not present any new evidence or any intervening change in the controlling law. The very cases cited and quoted in defendants' opposition, however, establish the legally cognizable basis for plaintiffs' motion. In fact, the

---

[1] Certain Defs' Consolidated Response In Opp. To Pltffs' Mot. For Reconsideration Of The Court's Decision Re The Defs' Mot. To Dismiss For Lack Of Pers. Juris. ("Defs' Opp."), dated 12/24/03.

1

applicable standard articulated by defendants clearly allows a party to seek reconsideration of a decision where a court, as here, has overlooked or misapprehended facts that might reasonably be expected to alter the conclusion reached by the court.

Defendants also contend, in a conclusory fashion, that there are no facts on the record that would support jurisdiction over UCCS and Dow Singapore. Here, defendants simply ignore the specific factual allegations and evidence submitted by plaintiffs that relate to each of UCCS and Dow Singapore individually. In fact, defendants utterly fail to rebut the record evidence cited and discussed in plaintiffs' moving papers. To the extent defendants argue that the jurisdictional facts attributable to one defendant cannot be used to establish jurisdiction over another defendant, defendants mistake plaintiffs' argument and, again, ignore the evidence that relates specifically to UCCS and Dow Singapore.

Lastly, defendants argue that plaintiffs should not be afforded any jurisdictional discovery on the ground that such discovery is tantamount to an unjustified "fishing expedition" that would improperly burden foreign nationals, UCCS and Dow Singapore. This argument also falls short. Plaintiffs are seeking discovery on a narrow issue that would not impose any burden on UCCS and Dow Singapore.

## ARGUMENT

### PLAINTIFFS HAVE DEMONSTRATED A SOUND LEGAL BASIS FOR RECONSIDERATION OF THE DECISION

As acknowledged by defendants,[2] reconsideration of a decision is appropriate where "the moving party can point to controlling decisions or data that the court overlooked – matters in other words, that might reasonably be expected to alter the conclusion reached by the court." Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). See also Above the Belt, Inc. v.

---

[2] See Defs' Opp. at 4.

2

Mel Bohannan Roofing Co., 99 F.R.D. 99, 101 (E.D. Va. 1983) ("motion for reconsideration would be appropriate where, for example, the Court . . . has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law of facts since submission of the issue to the Court").[3] Thus, reconsideration is appropriate where a court, in making a decision, has overlooked facts on the record or has made an error in apprehending such facts.

In their moving papers, plaintiffs identified specific instances of controlling factual matters that the Decision overlooked or misapprehended that, when viewed in the light most favorable to plaintiffs,[4] might reasonably be expected to alter that Decision. Accordingly, defendants' argument that plaintiffs have not provided "any legally cognizable reason" for reconsideration, because they "do not offer any new facts for consideration, or point to a change in the law since the matter was submitted to the Court" is misplaced.[5] As is clear from the very cases referenced by defendants, that is not the standard to which plaintiffs are held.

### A. The Decision Did Not Properly Consider The Jurisdictional Facts Relating To UCCS

Defendants contend that the record is devoid of any facts that would support personal jurisdiction over UCCS.[6] In support of this argument, defendants mischaracterize plaintiffs' argument as a "conspiracy theory" of personal jurisdiction, stating that neither the law nor the facts support a finding of personal jurisdiction over UCCS based on facts attributable only to

---

[3] See Defs' Opp., at 4 & n.4.

[4] "With regard to a motion to dismiss for lack of personal jurisdiction, in the absence of an evidentiary hearing, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff. In addition, regardless of the controverting evidence put forth by the defendant, the court must resolve all doubts in the plaintiff's favor." Decision, at 4 (internal quotations and citations omitted).

[5] Defs' Opp., at 1, 5-6.

[6] See Defs' Opp., at 6.

UCAP.[7] Plaintiffs, however, are not asserting any such "conspiracy theory." Rather, plaintiffs have respectfully submitted that the Court either overlooked controlling evidence or allegations that establish personal jurisdiction over UCCS, or did not view such facts and allegations in the light most favorable to plaintiffs.

The jurisdictional facts relating to UCCS, as explained fully in plaintiffs' moving papers, are summarized as follows:[8]

- UCCS was dominated and controlled by UCC/Dow and was "used by UCC to effectuate sales of Products to Plaintiffs on behalf of UCC and to further UCC's contractual relationship with Plaintiffs, including as performed in the United States."[9]

- The affidavit of David Yap, UCCS's Area Credit Manager, states that in placing product orders for plaintiffs, "UCC would log in a purchase request from UCCS as an order and ship the goods in accordance with instructions from UCCS."[10]

- Again according to Mr. Yap, UCCS would approve an order from plaintiffs, download the order as a purchase order in UCC's computer system, and thereby create a separate contract between UCC and UCCS.[11]

- According to Mr. Yap, it is his belief that most of the contracts for the sale and delivery of UCC products were contracts between UCCS and the plaintiffs."[12]

- The Affidavit of Lawrence Cheung, a Dow Singapore sales director and formerly UCAP's area director, testifies that UCAP placed product orders with UCC and thereby contracted with UCC and Dow in Connecticut in the same manner as explained by Mr. Yap as respects UCCS.[13]

---

[7] Defs' Opp., at 7.

[8] See Pltffs' Mem. of Law, at 3, 5.

[9] First Amended Complaint ("Am. Compl."), ¶ 11. See Pltffs' Mem. of Law, at 3.

[10] See Affidavit of David Yap, sworn to on February 4, 2003 and submitted by Dow Singapore in connection with a now-terminated Dow Singapore action against MMGS-S in Singapore ("Yap Aff."), ¶ 15; Affidavit of R. Taffet, submitted with plaintiffs' Pers. Juris. Opp. ("Taffet Aff."), Exh. 40. See also Pltffs' Mem. of Law, at 5.

[11] See Yap. Aff., ¶ 13; Taffet Aff., Exh. 40. See also Pltffs' Mem. of Law, at 5.

[12] See Yap Aff., ¶ 8; Taffet Aff., Exh. 40. See also Pltffs' Mem. of Law, at 5.

[13] See Affidavit of Lawrence Cheung, Director of Dow Singapore, sworn to on August 29, 2002, and submitted in support of defendants UCC and Dow's Motion to Dismiss ("Cheung Aff."), ¶ 12; Taffet Aff., Exh. 41. See also Pltffs' Mem. of Law, at 5.

Based upon this evidence, as the Court found, UCCS placed orders for products with UCC in Connecticut that "establish some business transactions with Connecticut," but the Court declined to exercise personal jurisdiction over UCCS because "there is no evidence that UCCS engaged in <u>substantial</u> purchasing activity."[14] The gravamen of the Decision dismissing UCCS from this action was, thus, a deficiency regarding the quantum of UCCS's business shown, not that the evidence failed to show that UCCS transacted business in Connecticut.

However, based on the above-described facts, when such facts are construed in the light most favorable to plaintiffs, plaintiffs have made a <u>prima facie</u> showing of "<u>substantial</u> purchasing activity" sufficient to establish personal jurisdiction over UCCS. Defendants' affidavit testimony establishes that both UCAP and UCCS made purchases of product from and contracted with UCC and/or Dow in Connecticut.[15] Moreover, the Yap Affidavit testimony makes clear that it was UCCS that was involved with most of the contracts for sale and delivery of UCC products. The only reasonable and logical inference from this testimony is that UCCS in fact made more purchases from UCC in Connecticut than UCAP, whose purchase volumes the Court deemed sufficient to confer personal jurisdiction. Accordingly, if UCAP made substantial purchases from UCC in Connecticut sufficient to satisfy the Clayton Act's transacting business standard,[16] then UCCS, too, has made such substantial purchases. Notably, defendants do not dispute the specific evidence submitted by plaintiffs showing that UCCS purchased substantial volumes of product from UCC in Connecticut.

Thus, it is respectfully submitted that the Court overlooked or misapprehended these facts, and UCCS should consequently be reinstated as a defendant in this action. Alternatively,

---

[14] Decision, at 8 (emphasis added). <u>See also</u> Defs' Opp., at 3-4.

[15] <u>See</u> Yap Aff., ¶ 8; Taffet Aff., Exh. 40. <u>See also</u> Pltffs' Mem. of Law, at 5.

[16] <u>See</u> Decision, at 6-8.

UCCS should not be dismissed from this action until plaintiffs have had the opportunity to conduct narrow discovery targeted specifically at the substantiality of UCCS's purchase volumes from UCC in Connecticut.

### B. The Decision Did Not Properly Consider The Jurisdictional Facts Relating To Dow Singapore

As with UCCS, Defendants also argue that there is no evidence that Dow Singapore has any contacts with Connecticut that would confer personal jurisdiction over Dow Singapore here.[17] Specifically, defendants argue that Dow Singapore's assumption of UCAP's business operations "says nothing about whether Dow Singapore transacts business in Connecticut," because a defendant's contacts with the forum State must be assessed individually.[18] The known facts that plaintiffs provided to the Court in their original motion papers did exactly that, and demonstrate a proper basis for the assertion of personal jurisdiction over Dow Singapore.

The jurisdictional facts relating to Dow Singapore, as explained fully in plaintiffs' memorandum of law, are summarized as follows:[19]

- Following the merger of UCC and Dow, "Dow assumed operational responsibility for the sale of the Products, including to Plaintiffs for resale to end-users in India," and thereafter, Dow Singapore was "used by Dow to effectuate sales of Products to Plaintiffs and to further UCC and Dow's contractual relationship with Plaintiffs, including as performed in the United States."[20]

- Dow Singapore was used by Dow "as its means of controlling and exploiting the relationship between Plaintiffs and UCC."[21]

- By Dow Singapore's own admission, its role is to "act as marketers and distributors of industrial chemicals, plastics and other chemical products that are manufactured primarily by various Dow entities."[22]

---

[17] See Defs' Opp., at 8.

[18] Defs' Opp., at 8-9.

[19] See Pltffs' Mem. of Law, at 3, 6.

[20] Am. Compl., ¶¶ 12, 13. See also Pltffs' Mem. of Law, at 3-4.

[21] Am. Compl., ¶ 26. See also Pltffs' Mem. of Law, at 4.

6

- Lawrence Cheung, a Dow Singapore sales director and formerly UCAP's area director, testified by affidavit that following the merger of Dow and UCC in February 2001, Dow Singapore took over the purchasing responsibilities of UCAP, and Dow Singapore thus continued to place orders and contract with UCC and Dow in Connecticut under the same procedures followed by UCAP and UCCS.[23]

Based on this evidence, plaintiffs have made a <u>prima facie</u> showing that personal jurisdiction is proper as to Dow Singapore. Plaintiffs do not, as defendants suggest, purport to rely on evidence attributable to any other defendant. Rather, viewing this evidence in the light most favorable to plaintiffs, plaintiffs respectfully submit that if UCAP was found to transact substantial business in Connecticut by purchasing product from UCC in Connecticut, and Dow Singapore admittedly took over the entirety of UCAP's business operations, including its purchasing responsibilities, it is both reasonable and logical to infer that Dow Singapore continued to make purchases from UCC in Connecticut comparable to the volumes of UCAP.

Significantly, defendants' opposition brief does not dispute that Dow Singapore took over UCAP's role of purchasing product from UCC in Connecticut for resale to plaintiffs or other end-users. Nor can defendants dispute that Dow Singapore's purchase volumes are substantial enough to confer personal jurisdiction over them under the Clayton Act. In fact, in a prior submission to the Court in this action, defendants referenced a now-terminated Singapore lawsuit filed by Dow Singapore against plaintiff MegaVisa Solutions (S) Pte. Ltd. ("MVS") alleging that Dow Singapore was owed $1,097,710.28 by MVS for products purchased from Dow Singapore during a six-month period between October 2001 and March 2002.[24] Since plaintiffs purchased

---

[22] <u>See</u> Affidavit of Sam Ong, Finance Director of Dow Singapore, sworn to on May 26, 2003 ("Ong Aff."), ¶ 17. <u>See also</u> Pltffs' Mem. of Law, at 4.

[23] <u>See</u> Cheung Aff., ¶ 12; Taffet Aff., Exh. 41. <u>See also</u> Pltffs' Mem. of Law, at 5-6.

[24] <u>See</u> Defs' Mem. Of Law In Support Of Their Mot. To Dismiss The Antitrust Claims For Lack Of Subj. Matter Juris., dated September 9, 2002, at 2 & n.1. A copy of Dow Singapore's writ is attached hereto as Exhibit A.

approximately 95% of products from defendants in the United States,[25] it follows that Dow Singapore purchased over a million dollars in product during a six-month period from UCC in Connecticut solely in connection with its dealings with plaintiffs. This volume of purchases falls well within the parameters set forth in the Decision as to what constitutes substantial purchases for purposes of satisfying § 12 of the Clayton Act's transacting business standard.[26]

Thus, it is respectfully submitted that the Decision overlooked or misapprehended these facts, and Dow Singapore should consequently be reinstated as a defendant in this action. At the very least, plaintiffs should be afforded the opportunity to explore Dow Singapore's purchase volumes from UCC in Connecticut before dismissing Dow Singapore from this action.

### C.  Limited And Targeted Jurisdictional Discovery Is Warranted Under The Circumstances Here

Lastly, defendants contend that the jurisdictional discovery sought by plaintiffs would amount to an "unjustified fishing expedition,"[27] citing cases to show that obtaining "extensive" or "imposing, burdensome, wide-ranging" discovery from foreign nationals is not appropriate to determine whether personal jurisdiction over them exists.[28] Defendants' argument is entirely misplaced, because the limited and targeted discovery requested by plaintiffs is in fact quite the opposite of a fishing expedition and would not be burdensome to UCCS or Dow Singapore in any way.

---

[25] See Declaration of Sanjiv Sanghvi, dated November 11, 2002, ¶ 8, and Declaration of Paresh Zaveri, dated November 1, 2002, ¶ 9, submitted with plaintiffs' opposition to defendants' motions to dismiss the original Complaint.

[26] See Decision, at 6-7 (citing case law holding that purchases of $286,000 over three years can be the basis of a determination that a corporation "transacts business" under § 12 of the Clayton Act). See also Pltffs' Mem. Of Law In Opp. To Certain Defs' Mot. To Dismiss For Lack Of Pers. Juris., dated July 3, 2003, at 20.

[27] Defs' Opp., at 9.

[28] Defs' Opp., at p. 10.

As discussed above, the Decision is clear that personal jurisdiction over UCCS and Dow Singapore would be proper, for the same reasons that personal jurisdiction is proper as to UCAP, if they purchased "significant quantities" of merchandise from UCC in Connecticut. See Decision, at 6-8. The discovery plaintiffs seek is entirely within the parameters of this narrow, but controlling, factual issue framed by the Decision: the volume of purchases that defendants admittedly made from UCC in Connecticut.

Moreover, the discovery should be obtainable from defendants UCC and Dow, the parties from whom the purchases were purportedly made.[29] UCC and Dow are both domestic corporations,[30] and are now actively engaged in discovery in this action. If the Court were to grant plaintiffs' narrow discovery request, any additional burden on defendants would be negligible at best. Nothing in defendants' argument contradicts these assertions.

Defendants also attempt to make much of the fact that large numbers of documents have been produced, including from the files of UCCS and Dow Singapore, as a result of the limited forum non conveniens and subject matter jurisdiction discovery taken to date.[31] The volume of discovery that has been produced to date and from whom is irrelevant, however, as such discovery does not go to the substantiality of purchases made from UCC in Connecticut by UCCS and Dow Singapore.[32] Tellingly, defendants have not argued that documents demonstrating these facts have already been produced to plaintiffs. Nor do defendants argue that

---

[29] If Dow and UCC are unable to respond to plaintiffs' discovery, plaintiffs reserve their right to seek such discovery from UCCS and Dow Singapore if the Court permits.

[30] The two cases cited in support of defendants' "fishing expedition" argument relate specifically to discovery of foreign nationals. See Defs' Opp., at 10. Given that the necessary discovery can be obtained from defendants UCC and Dow, these cases are unavailing.

[31] See Defs' Opp., at 9-10.

[32] Moreover, the discovery to date was directed only at UCC and Dow, and pre-dated the inclusion of UCCS and Dow Singapore as parties in this action. At the defendants request, this discovery was further limited to issues pertaining to forum non conveniens and subject matter jurisdiction issues.

9

such information is not readily ascertainable. The discovery to date simply has not been directed to the sales volumes critical to the Court's Decision on defendants' motion to dismiss for lack of personal jurisdiction. Accordingly, defendants' claim that a sizeable quantity of documents has already been produced is simply a red herring.

There is no reason for the Court to await further discovery before ruling on the instant motion. However, if the Court deems further discovery necessary, defendants will not be burdened by the narrowly focused discovery plaintiffs seek.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in plaintiffs' memorandum of law, plaintiffs' motion for reconsideration of the Decision should be granted.

THELEN REID & PRIEST LLP

By: *Richard Taffet /ALR*
Richard S. Taffet (ct 10201)
875 Third Avenue
New York, New York 10022-6225
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN & DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace
185 Asylum Street
Hartford, Connecticut 06103-3402
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs MM Global Services Inc., MM Global Services Pte. Ltd. and MegaVisa Solutions (s) Pte. Ltd.

10

## WRIT OF SUMMONS
## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Case No.            : S1035/2002/C
Date of Filing      : 02/09/2002
Time of Filing      : 10:29:18
Doc Control No.     : 314603/E



EDWARD LAM
Solicitors for the Plaintiffs

(Assistant Registrar/ Registrar's Name)
(Assistant Registrar/Registrar)
Supreme Court
Singapore

Between

DOW CHEMICAL PACIFIC (SINGAPORE)
PRIVATE LIMITED
(REGN. NO. 199206043M)

...Plaintiffs

And

MEGAVISA SOLUTIONS (SINGAPORE) PTE LTD
(REGN NO. 200005347K)

...Defendants

To :  The Defendants and its solicitors
      Messrs Khattar Wong & Partners
      80 Raffles Place, #25-01
      UOB Plaza 1,
      Singapore 048624
      (Ref.: LC/ECP/jk/20029650)