## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM GLOBAL   :
SERVICES PTE. LTD., and MEGAVISA   :
SOLUTIONS (S) PTE. LTD.,   :
  :
      Plaintiffs,   :   Civil No. 302 CV 1107 (AVC)
    -v-   :
  :
THE DOW CHEMICAL COMPANY, UNION   :
CARBIDE CORPORATION, UNION CARBIDE   :
ASIA PACIFIC, INC., UNION CARBIDE   :
CUSTOMER SERVICES PTE. LTD., and DOW   :
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,   :   February 13, 2004
  :
     Defendants.   :

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION FOR PARTIAL JUDGMENT ON THE
## PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)

THELEN REID & PRIEST LLP
   Richard S. Taffet (ct 10201)
   Paul A. Winick (ct 21813)
   Alyson L. Redman (ct 25494)
   875 Third Avenue
   New York, New York  10022-6225
   (212) 603-2000

WIGGIN & DANA LLP
   Robert M. Langer (ct 06305)
   Suzanne E. Wachsstock (ct 17627)
   One CityPlace
   185 Asylum Street
   Hartford, Connecticut  06103-3402
   (860) 297-3724

   Attorneys for Plaintiffs MM Global Services
   Inc., MM Global Services Pte. Ltd., and
   Megavisa Solutions (S) Pte. Ltd.

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND.................................................................................... 3

ARGUMENT ....................................................................................................... 5

DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW THAT PARTIAL
JUDGMENT ON THE PLEADINGS IS WARRANTED HERE.................................................. 5

A.   Plaintiffs Have Adequately Pleaded  Antitrust Injury And Standing ...................6

     1.   Plaintiffs are not required to plead an effect on a relevant market
        because they allege a  *per se* violation of the antitrust laws ....................7

     2.   Plaintiffs have alleged injury in the United States..................................13

     3.   Plaintiffs' injury is not speculative ......................................................14

B.   Plaintiffs Are Efficient Enforcers Of The Antitrust Laws ................................17

CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Balaklaw v. Lovell,*
 14 F.3d 793 (2d Cir. 1994)......................................................................6, 12, 17

*Bigelow v. RKO Pictures,*
 327 U.S. 251 (1946)....................................................................................15

*Borger v. Yamaha Int'l Corp.,*
 625 F.2d 390 (2d Cir. 1980)............................................................................15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
 429 U.S. 477 (1977)..................................................................................6, 13

*Business Elecs. Corp. v. Sharp Elecs. Corp.,*
 485 U.S. 717 (1988).....................................................................................7, 8

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.,*
 996 F.2d 537 (2d Cir. 1993)............................................................................12

*In re Cardizem CD Antitrust Litig.,*
 332 F.3d 896 (6th Cir. 2003) .........................................................................16

*Cumis Ins. Soc'y, Inc. v. Windsor Bank & Trust Co.,*
 736 F. Supp. 1226 (D. Conn. 1990)....................................................................5

*George Haug Co. v. Rolls Royce Motor Cars,Inc.,*
 148 F.3d 136 (2d Cir. 1998)............................................................................5

*Greene v. Gen. Foods Corp.,*
 517 F.2d 635 (5th Cir. 1975), *cert. denied,* 424 U.S. 942 (1976).......................................9

*Hodges v. WSM,Inc.,*
 26 F.3d 36 (6th Cir. 1994) .............................................................................15

*National Soc'y of Prof'l Eng'rs v. United States,*
 435 U.S. 679 (1978) ....................................................................................8

*In re Nine West Antitrust Litig.,*
 80 F. Supp. 2d 181 (S.D.N.Y. 2000)................................................................8, 9

*Northern Pac. Ry. Co. v. United States,*
 356 U.S. 1 (1997).......................................................................................8, 9

*Pace Elec., Inc. v. Canon Computer Sys., Inc.*,
    213 F.3d 118 (3d Cir. 2000)..................................................................................6, 8, 9, 10

*Sakon v. Andreo*,
    Civ. No. 3:94CV1869 (AVC), Slip Op. (D. Conn. 1998)...................................12

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997)...........................................................................................................8

*Simpson v. Union Oil Co. of Cal.*,
    377 U.S. 13 (1964)...........................................................................................................9

*Sterling Interiors Group, Inc. v. Haworth, Inc.*,
    No. 94 Civ. 9216, 1996 WL 426379 (S.D.N.Y. 1996)......................................9, 11, 13, 14

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001)..................................................................................5, 12

*Turicentro S.A. v. American Airlines Inc.*,
    303 F.3d 293 (3d Cir. 2002)..................................................................................14

*Valley Prods. Co., Inc. v. Landmark, A Div. of Hospitality Franchise Sys., Inc.*,
    128 F.3d 398 (6th Cir. 1998) ................................................................................15

*Viacom Int'l Inc. v. Time Inc.*,
    785 F. Supp. 371 (S.D.N.Y. 1992) .......................................................................5

## OTHER

Richard A. Posner, "Antitrust Policy and the Supreme Court: An Analysis of the
    Restricted Distribution, Horizontal Merger and Potential Competition
    Decisions" 75 Colum. L. Rev. 282, 289-90 .......................................................9

## PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd.

("MMGS-S") and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "Plaintiffs") submit

this memorandum of law in opposition to the motion of defendants The Dow Chemical Company

("Dow"), Union Carbide Corporation ("UCC"), and Union Carbide Asia Pacific, Inc. ("UCAP")

for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

The instant motion is defendants' third attempt to challenge plaintiffs' pleading of an

antitrust claim on antitrust injury grounds.[1]  Despite the Court's denial of defendants' prior

motion under Fed. R. Civ. P. 12(b)(6),[2] defendants now seek to make further antitrust injury

arguments pursuant to Rule 12(c).  This time around, defendants assert three primary grounds:

(1) plaintiffs have failed to plead an effect on a relevant market; (2) plaintiffs have only alleged

injury in India; and (3) the causal relationship between plaintiffs' injury and defendants' antitrust

violation is speculative.[3]  For the same reasons that plaintiffs set forth the first two times

defendants raised this challenge, defendants' arguments here, too, are unsound.[4]  Consistent with

their prior arguments, defendants continue to disregard the *per se* nature of plaintiffs' antitrust

claim, as well as plaintiffs' clear allegations in the First Amended Complaint.

---

[1] *See* Defs.' Mem. of Law in Support of Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), dated Sept. 9, 2002 ("9/9/02, Defs.' Mem. of Law"), at 36-37.  *See also* Defs.' Mem. of Law in Support of Dow and UCC's Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), dated April 23, 2003 ("4/23/03, Defs.' Mem. of Law"), at 35-36.

[2] *See* Ruling On The Defendants' Motions To Dismiss, dated Sept. 12, 2003 ("Decision"), at 34 (denying defendants' motions to dismiss plaintiffs' federal antitrust claim for lack of subject matter jurisdiction *and* on 12(b)(6) grounds, *i.e.*, for lack of antitrust injury).

[3] *See* Brief in Support of Defs.' Mot. for Partial Judg. on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), dated December 31, 2003 ("Defs.' Brief"), at 2.

[4] *See* Pltffs.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), dated Nov. 12, 2002 ("11/12/02, Pltffs.' Opp."), at 36-40.  *See also* Pltffs.' Mem. of Law in Opp. to Defs.' Mots. to Dismiss Pursuant to 12(b)(6) and for Lack of Subj. Matter Juris., dated May 23, 2003 ("5/23/03, Pltffs' Opp."), at 10-11.

Plaintiffs have alleged a vertical minimum resale price fixing conspiracy, which is conduct that has long been considered *per se* illegal. Accordingly, plaintiffs are not required to allege or prove an anticompetitive effect on a relevant market to establish antitrust injury or even to ultimately succeed on such a claim. Further, plaintiffs allege plainly redressable antitrust injury – *i.e.*, their foreclosure from free and independent competition in the purchase of goods from defendants in, and in the resale of goods from, the United States – that is squarely within the areas of competition deemed necessary to protect under the *per se* prohibition against minimum resale price fixing. Moreover, as noted, such injury is alleged to have occurred in the United States. That defendants' resale price fixing conduct caused additional injury to plaintiffs' customers in India does not detract from the antitrust injury plaintiffs allege and that they suffered here.

Lastly, defendants' confused attempt to argue that plaintiffs have not alleged a causal connection between their injury and defendants' antitrust violation has no basis. To make this argument, defendants improperly rely upon cases entirely out of context by misconstruing and misapplying their holdings, and again misstate or disregard plaintiffs' well-pleaded allegations in the First Amended Complaint. Defendants' arguments are unsupportable for the simple reason that plaintiffs suffered antitrust injury in the U.S. as a direct result of defendants' enforcement of the price fixing conspiracy set forth in plaintiffs' pleading.

Thus, especially at this stage of the case, where all allegations are assumed to be true and inferences drawn in plaintiffs' favor, the First Amended Complaint more than adequately alleges antitrust injury.

## FACTUAL BACKGROUND

Plaintiffs filed their original complaint in this case in June 2002 against Dow and UCC. In response, specifically to plaintiffs' claim of resale price fixing under § 1 of the Sherman Act, 15 U.S.C. § 1, in the summer of 2002 Dow and UCC filed their initial motions to dismiss plaintiffs' federal antitrust claim, *inter alia*, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to allege antitrust injury. While these motions were *sub judice*, plaintiffs filed and served a First Amended Complaint, dated March 24, 2003, naming three additional defendants, UCAP, Union Carbide Customer Services Pte. Ltd. ("UCCS") and Dow Chemical Pacific (Singapore ) Pte. Ltd. ("Dow Singapore").[5]

In response to the First Amended Complaint, defendants Dow and UCC each filed another motion, dated April 23, 2003, to dismiss plaintiffs' Sherman Act claim pursuant to Fed. R. Civ. P. 12(b)(6), in part, again, for failure to allege antitrust injury. The additional defendants, UCAP, UCCS and Dow Singapore, then filed their own motions to dismiss plaintiffs' federal antitrust claim under Rule 12(b)(6) on the same grounds.[6] Dow and UCC's second round of antitrust injury arguments were identical to the arguments presented on their first motions, and the companion motions by UCAP, UCCS and Dow Singapore expressly adopted the arguments of Dow and UCC's 12(b)(6) motions.

In opposition, plaintiffs have repeatedly demonstrated that the allegations in both the original and First Amended Complaint plainly allege antitrust injury in the United States

---

[5] The First Amended Complaint, however, "did not alter the material facts as alleged in the original Complaint, nor did it modify Plaintiffs' causes of action set forth therein." April 17, 2003 Ruling on the Defendants' Motion to Dismiss For Forum Non Conveniens, at 2.

[6] Each of UCAP, UCCS and Dow Singapore also filed motions to dismiss the First Amended Complaint for lack of personal jurisdiction. By decision dated November 17, 2003, this Court denied the motion as respects UCAP, but granted the dismissal of UCCS and Dow Singapore on personal jurisdiction issues. On December 4, 2003, plaintiffs filed a motion for reconsideration of the Court's decision dismissing UCCS and Dow Singapore, and such motion has been fully briefed by the parties and is currently *sub judice*.

3

resulting from defendants' *per se* unlawful resale price fixing conduct.[7]  Indeed, plaintiffs

pointed to the following allegations in the First Amended Complaint in support of their position:

> As a direct and proximate result of Defendants' fixing of minimum
> resale prices and other terms of sale, competition in the sale and
> resale of Products in and from the United States was improperly
> diminished and restrained, and as the result of such effect on
> competition Plaintiffs were injured by being precluded from
> effectively and fully competing and maximizing their sales of
> Products.[8]

> \*      \*      \*

> As a direct and proximate result of the foregoing anticompetitive
> effects [in the United States], Plaintiffs have suffered injury to
> their business and property, including by being deprived of the
> ability effectively to compete independently in the purchase of
> products for resale in the United States, and in the resale of the
> Products from the United States to end-users in India, free of
> Defendants' price maintenance requirements, and by being
> required to resell the Products at artificially inflated prices directly
> caused by Defendants' unlawful and anticompetitive conduct.[9]

Plaintiffs further demonstrated that it is precisely this type of injury to a market participant on the

distributor or reseller level that the *per se* prohibition against vertical resale price fixing is

intended to remedy.[10]

Defendants now raise their antitrust injury argument a third time, but this time pursuant

to Rule 12(c) for partial judgment on the pleadings.  Their arguments now are no more

supportable than they were previously, and their arguments relating to standing are equally

unavailing.

---

[7] *See* 11/12/02, Pltffs.' Opp., at 36-40.  *See also* 5/23/03, Pltffs.' Opp., at 10-11.

[8] First Am. Compl., ¶ 30.

[9] *Id.*, at ¶ 55.

[10] *See* 11/12/02, Pltffs.' Opp., at 36-40.  *See also* 5/23/03, Pltffs.' Opp., at 10-11.

## ARGUMENT

### DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW THAT PARTIAL JUDGMENT ON THE PLEADINGS IS WARRANTED HERE

As defendants acknowledge,[11] a motion brought pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings is governed by the same standards as a motion to dismiss pursuant to Rule 12(b)(6). *See Viacom Int'l Inc. v. Time Inc.*, 785 F. Supp. 371, 375 n.11 (S.D.N.Y. 1992). Thus, courts must construe plaintiff's allegations "in the light most favorable to the plaintiff, accepting the complaint's allegations as true." *Todd v. Exxon Corp.*, 275 F.3d 191, 197 (2d Cir. 2001).[12] "In antitrust cases in particular, the Supreme Court has stated that dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir. 1998) (quoting *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976)). Moreover, there are no heightened pleading requirements for antitrust claims. *See Todd*, 275 F.3d at 198. "A short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules." *Id.* (internal citations and quotations omitted).

Furthermore, although the Court is not precluded from reconsidering its prior decision rejecting arguments similar to those raised here, the law of the case doctrine counsels that "[o]rderly and efficient case administration suggests that questions once decided not be subject to continued argument." *Cumis Ins. Soc'y, Inc. v. Windsor Bank & Trust Co.*, 736 F. Supp. 1226, 1228 (D. Conn. 1990).

---

[11] Defs.' Brief, at 3.

[12] *See also* Decision, at 12 ("[w]hen ruling on a 12(b)(6) motion, the court must presume that all well-pleaded facts alleged in the complaint are true and draw all reasonable inferences from those facts in favor of the plaintiff").

A.    **Plaintiffs Have Adequately Pleaded
      Antitrust Injury And Standing**

It has long been established "that in order to have standing to prosecute private antitrust

claims, plaintiffs must show more than that the defendants' conduct caused them an injury."

*Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994). Rather, to state a claim for damages under

the antitrust laws, a plaintiff must allege that it has suffered antitrust injury, "'which is to say

injury of the type the antitrust laws were intended to prevent and that flows from that which

makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either

of the violations or of anticompetitive acts made possible by the violation.'" *Id.* (quoting

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). *See also Pace Elec.,*

*Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118, 120 (3d Cir. 2000) ("[i]n applying the antitrust

injury requirement, the Supreme Court has inquired whether the injury alleged by the plaintiff

'resembles any of the potential dangers' which led the Court to label the defendants' alleged

conduct violative of the antitrust laws in the first instance") (internal citations omitted).

As defendants acknowledge,[13] the Second Circuit employs a two-pronged analysis to

evaluate antitrust standing:

> As a necessary first step, courts must determine whether the
> plaintiff suffered an antitrust injury. If the answer to that question
> is yes, they must then determine whether any of the other factors,
> largely relating to the directness and identifiability of the plaintiff's
> injury, prevent the plaintiff from being an efficient enforcer of the
> antitrust laws.

*Id.* 798 n.9. Additional factors courts consider, in determining whether the plaintiff is an

"efficient enforcer" of the antitrust laws, include the following:

> (1) the causal connection between the alleged antitrust violation
> and the harm to the plaintiff; (2) the existence of an improper

---

[13] *See* Defs.' Brief, at 6.

motive; (3) whether the injury was of the type that Congress sought to redress with the antitrust laws; (4) the directness of the connection between the injury and alleged restraint in the relevant market; (5) the speculative nature of the damages; and (6) the risk of duplicative recoveries or complex apportionment of damages.

*Id.* (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

U.S. 519, 537-45 (1983).

Plaintiffs here are distributors injured in the United States by defendants' *per se* unlawful

resale price fixing conspiracy, and the First Amended Complaint more than adequately alleges

antitrust injury and standing.[14]  As discussed at length below, plaintiffs' injury is precisely the

type of injury that the *per se* prohibition against resale price fixing is intended to remedy.

Accordingly, not only have plaintiffs' alleged antitrust injury, they are also efficient enforcers of

the antitrust laws.

1.    **Plaintiffs are not required to plead an effect
      on a relevant market because they allege a
      *per se* violation of the antitrust laws**

Defendants argue that plaintiffs have failed to allege antitrust injury because the First

Amended Complaint does not allege an adverse effect on competition in a relevant market.[15]  In

so arguing, however, defendants continue to ignore the *per se* nature of the antitrust violation

lodged against them in this action.

The category for *per se* illegality in the antitrust context is reserved for "conduct that is

manifestly anticompetitive, that is, conduct that would always or almost always tend to restrict

competition and decrease output." *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717,

723 (1988) (internal quotations and citations omitted).  Indeed, conduct is considered *per se*

unlawful if it is the very type of agreement or practice "which because of [its] pernicious effect

---

[14] *See, e.g.*, First Am. Compl., ¶¶ 30, 55, 57.

[15] *See* Defs.' Brief, at 9-10.

on competition and lack of any redeeming virtue [is] conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm [it] ha[s] caused or the business excuse for [its] use." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). *See also State Oil Co. v. Khan*, 522 U.S. 3, 17 (1997) ("[s]ome types of restraints . . . have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*"); *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978) (agreements are *per se* illegal because their "nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality").

There is no denying that a vertical minimum price fixing scheme, as alleged in the First Amended Complaint,[16] is unlawful *per se* under § 1 of the Sherman Act.[17] *See State Oil*, 522 U.S. at 17 ("arrangements to fix minimum pricing [ ] remain illegal *per se*"); *Pace*, 213 F.3d at 120 n.2 ("[v]ertical minimum price fixing is, of course, *per se* unlawful under section 1 of the Sherman Act"); *In re Nine West Antitrust Litig.*, 80 F. Supp. 2d 181, 188 (S.D.N.Y. 2000) ("[a] vertical minimum price-fixing scheme is unlawful *per se* under § 1 of the Sherman Act").[18] Indeed, minimum resale price fixing schemes have long been judged *per se* unlawful[19] precisely

---

[16] *See, e.g.*, First Am. Compl., ¶¶ 27-30, 53-57.

[17] In contrast, non-price vertical restraints and maximum resale price restraints are judged under the rule of reason. *See Business Elecs.*, 485 U.S. at 724 ("[a]lthough vertical agreements on resale prices [are] illegal *per se* . . ., we have recognized that the scope of *per se* illegality should be narrow in the context of vertical restraints") (internal quotations and citations omitted); *State Oil*, 522 U.S. at 15 (1997) (stating that *maximum* resale price maintenance arrangements are not *per se* unlawful). Under the rule of reason analysis, "'the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.'" *Business Elecs.*, 485 U.S. at 723 (quoting *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)).

[18] *See also* Decision, at 14 ("An agreement between a manufacturer and a distributor to fix prices is *per se* illegal under the Sherman Act. *Per se* violations do not require a showing of deleterious impact on competition . . . [and] create a presumption of anticompetitive effect. This is so because of their pernicious effect on competition and lack of any redeeming virtue.") (internal quotations and citations omitted).

[19] *See Business Elecs.*, 485 U.S. at 724 ("vertical agreements on resale prices have been illegal *per se* since *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S. Ct. 376, 55 L. Ed. 502 (1911)").

because of their presumed anticompetitive effects on end-user markets *and on market participants at the distributor level. See Sterling Interiors Group, Inc. v. Haworth, Inc.*, No. 94 Civ. 9216, 1996 WL 426379, at *19 (S.D.N.Y. 1996). As explained in *Sterling Interiors*, "[t]he anticompetitive dangers of minimum price arrangements flow both to customers who purchase at prices set higher than competitive levels, and to dealers who are effectively foreclosed from competing in the marketplace." *Id.* Thus, the effects sought to be avoided include not only preventing artificially increased prices to consumers, but also depriving resellers, such as plaintiffs here, of the ability to compete freely and independently in purchasing and reselling the products at issue at prices determined by the market rather than by suppliers like defendants here.[20]

Critically, the whole point of categorizing minimum resale price fixing as *per se* unlawful is to allow courts to presume anticompetitive effects "without elaborate inquiry as to the precise harm [it has] caused." *Northern Pac. Ry.*, 356 U.S. at 5. This applies equally in the context of antitrust injury. Thus, a plaintiff alleging a *per se* violation *need not show* "an actual, adverse effect on a relevant market *in order to satisfy the antitrust injury requirement*." *Pace*, 213 F.3d at 123 (emphasis added). *See also In re Nine West*, 80 F. Supp. 2d at 188-89 (for antitrust injury and standing purposes, plaintiffs "not required to prove market power in cases involving *per se*

---

[20] *See also Simpson v. Union Oil Co. of Cal.*, 377 U.S. 13, 20-21 (1964) (resale price maintenance unfairly oppresses dealers and takes away "the only power they have to be wholly independent businessmen"); *Pace*, 213 F.3d at 122 ([i]n *Simpson* "the Supreme Court considered a restitution on dealer independence with respect to pricing decisions to be an anticompetitive aspect of vertical minimum price fixing agreements, and one that the antitrust laws have an interest in forestalling"); *Greene v. Gen. Foods Corp.*, 517 F.2d 635, 656 (5th Cir. 1975) ("the condemnation of retail price maintenance is also premised upon respect for the autonomy of independent dealers in the chain of distribution"), *cert. denied*, 424 U.S. 942 (1976); *Sterling Interiors*, 1996 WL 426379 at *19 ("[t]he anticompetitive dangers of minimum price arrangements flow . . . to dealers who are effectively foreclosed from competing in the marketplace"); Richard A. Posner, "Antitrust Policy and the Supreme Court: An Analysis of the Restricted Distribution, Horizontal Merger and Potential Competition Decisions," 75 Colum. L. Rev. 282, 289-90 (1975) ("[a]ccording to the Court in *Simpson*, resale price maintenance is bad because it benefits the manufacturer and oppresses the dealer by taking from the latter the power to price competitively").

violations of the antitrust laws") (citing *NCAA v. Bd. of Regents of the Univ. of Oklahoma*, 468

U.S. 85, 109-10 (1984)).

The Third Circuit's decision in *Pace*, 213 F.3d 118, illustrates the application of the

antitrust injury requirement in the context, as here, of a distributor's minimum price fixing claim.

There, plaintiff, a wholesale inkjet printer dealer, sued its supplier alleging that it had "suffered

antitrust injury because it was terminated as a wholesale dealer after it sold Canon-brand

products at prices below the minimum resale price allegedly fixed by [its supplier]." *Id.* at 121.

It alleged further that its termination as a wholesale dealer caused it to suffer lost profits because

it could no longer obtain profits from selling Canon-brand products at dealer prices. *Id.* The

defendant argued that these allegations were insufficient to establish antitrust injury, urging that

the plaintiff "must allege facts demonstrating that its termination as an authorized dealer resulted

in an actual, adverse economic effect on competition in a relevant [ ] market." *Id.* at 123.

Rejecting defendant's argument – which is the same as defendants' argument here – the

Third Circuit held, consistent with Supreme Court precedent, that "these allegations suffice to

establish antitrust injury." *Id.* at 122. The Court explained:

> [W]e believe that requiring a plaintiff to demonstrate that an injury
> stemming from a *per se* violation of the antitrust laws caused an
> actual, adverse effect on a relevant market in order to satisfy the
> antitrust injury requirement comes dangerously close to
> transforming a *per se* violation into a cause to be judged under the
> rule of reason. . . . Were we to accept the defendants' construction
> of the antitrust injury requirement, we would, in substance, be
> removing the presumption of anticompetitive effect implicit in the
> *per se* standard under the guise of the antitrust injury requirement.

*Id.* at 123.[21]

---

[21] Moreover, even if plaintiffs were required to allege an actual adverse effect on competition to show antitrust injury, plaintiffs have certainly made such allegations, as discussed in detail in Pltffs.' Opp. to Defs. Mot. to Reconsider Order Denying Mots. to Dismiss Fed. Antitrust Claim for Lack of Subj. Matter Juris., dated February 6, 2004.

The decision by the Southern District of New York in *Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 WL 426379, *1 (S.D.N.Y. 1996), is in accord. There, plaintiff, a furniture retailer, alleged a minimum resale price fixing conspiracy against its supplier, a furniture manufacturer. Defendant manufacturer moved to dismiss the antitrust complaint, *inter alia*, on the ground that the dealer's complaint did not adequately allege antitrust injury. The court rejected this argument, holding that by virtue of the plaintiff's dealership status and the nature of a minimum price fixing scheme, plaintiff had alleged antitrust injury:

> The anticompetitive dangers of minimum price arrangements flow both to customers who purchase at prices set higher than competitive levels, and to dealers who are effectively foreclosed from competing in the marketplace. Plaintiff falls in the second category. As a nonparticipating dealer precluded from submitting competitive bids and soliciting customers as part of [the defendant's] effort to implement the scheme, plaintiff has alleged injury arising from that scheme's anticompetitive characteristics.

*Sterling Interiors*, 1996 WL 426379 at *19.

Plaintiffs' allegations here concerning their antitrust claim, likewise, set forth injury arising from the anticompetitive characteristics of defendants' minimum resale price fixing conspiracy, and therefore are sufficient to allege antitrust injury. Specifically, plaintiffs allege that they were deprived of the ability to compete effectively in the purchase in and resale of defendants' products from the United States, and when they were able to obtain defendants' products, they were required to resell them at artificially inflated prices.[22] The First Amended Complaint precisely describes plaintiffs' antitrust injury as follows:

> Plaintiffs have suffered injury to their business and property, including by being deprived of the ability effectively to compete independently in the purchase of products for resale in the United States, and in the resale of the Products from the United States to end-users in India, free of Defendants' price maintenance

---

[22] *See, e.g.*, First Am. Compl., ¶¶ 30, 55, 57.

requirements, and by being required to resell the Products at artificially inflated prices directly caused by Defendants' unlawful and anticompetitive conduct.[23]

Moreover, plaintiffs' inability to compete effectively occurred because "Defendants enforced and compelled Plaintiffs' agreement to the minimum resale price . . . by refusing to accept orders placed by Plaintiffs and by canceling accepted orders unless Plaintiffs agreed to maintain the minimum resale prices required by defendants."[24]

The cases cited by defendants are in no way to the contrary. In support of their argument that plaintiffs lack antitrust standing for failure to allege an anticompetitive effect on a relevant market, defendants rely heavily on the Second Circuit's opinion in *Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001). *Todd*, however, is distinguishable for the simple reason that it did not involve a *per se* violation of the antitrust laws; rather, the Second Circuit's holding and analysis of the antitrust injury issue was in the rule of reason context. *Id.* at 199. Indeed, before undertaking the antitrust injury analysis, the Second Circuit was careful to determine that the antitrust violation alleged in *Todd* – *i.e.*, unlawful information exchanges with competitors in violation of § 1 of the Sherman Act – fell within the rule of reason and not the *per se* category. *Id.* at 198-99. As discussed above, plaintiffs in this action have alleged a *per se* violation of the antitrust laws, and as such, are not required to allege an anticompetitive effect on a relevant market. The rule of reason analysis defendants rely upon in *Todd*, accordingly, has no bearing here.[25]

---

[23] *Id.* at ¶ 55.

[24] *Id.* at ¶ 28. *See also id.* at ¶¶ 35, 39.

[25] The other cases cited by defendants, *see* Defs.' Brief, at 9, are likewise distinguishable. *See Balaklaw v. Lovell*, 14 F.3d 793 (2d Cir. 1994) (involving alleged section 1 violation that was not *per se* unlawful); *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537 (2d Cir. 1993) (same); *Sakon v. Andreo*, Civ. No. 3:94CV1869 (AVC), Slip Op. (D. Conn. 1998) (same).

## 2.    Plaintiffs have alleged injury
in the United States

Defendants further argue that plaintiffs have not alleged antitrust injury because the alleged injuries to plaintiffs' business occurred in India.[26]  As such, defendants continue, plaintiffs' injuries cannot have been those that "the [United States] antitrust laws were intended to prevent."[27]  Defendants are wrong.  Plaintiffs have plainly alleged injury suffered in the United States of the type the antitrust laws are intended to forestall.

As discussed in detail above, *see supra* at 8-9 & n.19, the anticompetitive effects of a *per se* unlawful resale price fixing conspiracy flow to both consumers in end-user markets and market participants at the distributor or reseller level.  *See, e.g., Sterling Interiors*, 1996 WL 426379, at *19 ("[t]he anticompetitive dangers of minimum price arrangements flow both to customers who purchase at prices set higher than competitive levels, and to dealers who are effectively foreclosed from competing in the marketplace"); and *supra* n.19.  Here, plaintiffs have alleged, and the evidence supports, that the actual sales of products by defendants to them took place in the United States for resale from the United States to India.[28]  Thus, one effect of defendants' resale price fixing conduct was harm to plaintiffs in connection with the resale of products to customers in India.  This was not, however, the only effect.  Another principal effect of the resale price fixing conspiracy occurred here – *i.e.*, the restraint on plaintiffs' "ability effectively to compete independently in the purchase of products for resale in the United States, and in the resale of the Products from the United States to end-users in India."[29]  This is precisely

---

[26] *See* Defs.' Brief, at 6-9.

[27] Defs.' Brief, at 6 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

[28] *See* First Am. Compl., ¶¶ 22, 24, 25.

[29] *Id.* at ¶ 55.  Stated another way, a distributor has standing to bring an antitrust claim because it suffers injury through a decrease in revenues and profits as a result of the compelled supracompetitive resale price, and a

the competitive injury that the prohibition against resale price fixing is intended to remedy. *See Sterling Interiors*, 1996 WL 426379, at *19.

The only case defendants cite in support of their argument to the contrary, *Turicentro S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir. 2002),[30] is distinguishable on its facts. There, the Third Circuit rejected a horizontal price fixing claim on, *inter alia*, antitrust injury grounds because the "plaintiffs' injuries occurred exclusively in foreign markets." *See id.* at 307. To the contrary, here, plaintiffs' alleged injuries are directly related to the United States marketplace and in fact occurred in the United States, because plaintiffs were prevented from competing freely and independently in the purchase of goods in, and reselling of goods from, the United States. That defendants' *per se* unlawful resale price fixing scheme also caused additional anticompetitive harm in India does not bar plaintiffs' antitrust claim here.

### 3.    Plaintiffs' injury is not speculative

Lastly, defendants claim that plaintiffs have not alleged antitrust injury because they "have not alleged facts that indicate that they were harmed at all by the alleged agreement."[31]  In particular, defendants appear to be arguing that to properly plead an antitrust claim, including antitrust injury, plaintiffs must plead (i) that they could not have mitigated their damages, and (ii) that they would not have been in the same position even without the alleged violation.[32]  Here again, defendants are wrong.

First, there simply is no requirement at the pleading stage for a plaintiff to allege whether it did or did not attempt to mitigate its damages.  Certainly, whether a plaintiff has attempted to

---

concomitant decrease in quantity sold. Here, that effect occurred upon plaintiffs' purchases in and sales from the United States. *See id.* at ¶¶ 20, 22-25, 27.

[30] *See* Defs.' Brief, at 7-8.

[31] Defs.' Brief, at 10.

[32] *See* Defs.' Brief, at 10-11.

mitigate its damages is not in any way relevant to an antitrust injury or standing inquiry. The one Second Circuit case that defendants seek to rely upon, *Borger v. Yamaha Int'l Corp.*, 625 F.2d 390 (2d Cir. 1980),[33] does not even remotely address these issues, especially at the pleading stage. Rather, the portion of *Borger* that discusses the conventional notion of a plaintiff's duty to mitigate damages relates solely, as one would imagine, to the proper measure of damages after an antitrust violation has been proven at trial. *Id.* at 398-99. Beyond their misplaced reliance on *Borger*, defendants do not and cannot cite a single case that connects a plaintiff's duty to mitigate damages to the issue of whether a plaintiff has suffered antitrust injury or has standing, and defendants certainly cite no authority for the proposition that mitigating damages must be pleaded for such purposes.[34]

Equally unavailing is defendants' argument that to have standing in this action plaintiffs must allege that they would not have been in the same position even without the alleged violation.[35] In support of this argument, defendants seek to rely upon two Sixth Circuit cases,[36] and importantly, do not cite any Second Circuit precedent. Moreover, the Sixth Circuit has

---

[33] *See* Defs.' Brief, at 11.

[34] To the extent defendants are trying to argue that plaintiffs lack standing because *damages* may be speculative, rather than plaintiffs' injury, this argument also must fail. The United States Supreme Court has stated:

> The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . . The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights.

*Bigelow v. RKO Pictures*, 327 U.S. 251, 265 (1946).

[35] *See* Defs.' Brief, at 11-12.

[36] The Sixth Circuit's decisions in *Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994), and *Valley Prods. Co., Inc. v. Landmark, A Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398 (6th Cir. 1998), which defendants rely upon exclusively, each found that a plaintiff did not suffer antitrust injury because the defendants had taken action, independent from the conduct alleged to violate the antitrust laws, that it was lawfully entitled to take. For example, in *Hodges*, the court concluded that plaintiff's injury was caused by defendant's lawful refusal to permit plaintiff to enter its premises, and not from the alleged market division conspiracy. 26 F.3d at 38-39. Likewise, in *Valley Prods.*, the court found that plaintiff did not suffer antitrust injury as a result of the alleged tying arrangement;

recently revisited its holdings in the same two cases cited by defendants and rejected precisely
the interpretation of the antitrust injury standard that defendants attempt to exploit here.

In *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003), the Sixth Circuit
addressed the following issue on appeal:

> In determining whether Plaintiffs have properly pled antitrust
> injury, does the language of the Sixth Circuit's decisions in [*Valley
> Prods.*] and [*Hodges*] require dismissal of Plaintiff's antitrust
> claims at the pleading stage if Plaintiffs cannot allege facts
> showing that Defendants' alleged anticompetitive conduct was a
> "necessary predicate" to their antitrust injury; *i.e.*, that dismissal is
> required unless Plaintiffs plead facts showing that the alleged
> antitrust injury could not possibly have occurred absent
> Defendants' alleged anticompetitive conduct?

*Id.* at 900. In answering this question, the Sixth Circuit clarified that its prior decisions reflect
that "a plaintiff must allege *either*: (1) that the antitrust violation was 'a necessary predicate' to
their injury; *or* (2) that the defendants could injure plaintiffs only by engaging in the antitrust
violation." *Id.* at 912 (emphasis in original).

Even if plaintiffs here were required to meet the Sixth Circuit standard for pleading
antitrust injury, plaintiffs have clearly alleged that defendants' *per se* unlawful resale price fixing
conspiracy was "a necessary predicate" to their injury. For example, plaintiffs allege that
defendants compelled and enforced their agreement to minimum resale prices by refusing to
accept orders placed by plaintiffs below the prices set by defendants.[37] Plaintiffs further allege
that they were foreclosed from free and independent competition in the purchase of goods from
defendants in, and the resale of goods from, the United States.[38] Clearly, plaintiffs would not
have suffered such injury but for defendants' enforcement of their *per se* unlawful resale price

---

rather, plaintiff was injured solely by defendants' lawful termination of the parties' vendor agreement. 128 F.3d at
404.

[37] *See* First Am. Compl., ¶ 28.

fixing scheme. Defendants' disingenuous attempt to argue that plaintiffs were injured by a lawful refusal to sell to them is absurd, and ignores the allegations in the First Amended Complaint.

**B.     Plaintiffs Are Efficient Enforcers
          Of The Antitrust Laws**

Finally, as stated previously, courts in the Second Circuit have developed a two-pronged analysis to determine whether a plaintiff has antitrust standing. *See Balaklaw*, 14 F.3d at 798 n.9. If the court determines, on the first step, that plaintiff has suffered antitrust injury, the court must then continue to the second step to determine whether any additional factors prevent plaintiff from being an efficient enforcer of the antitrust laws. *Id.* Such additional factors include the following:

> (1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) the existence of an improper motive; (3) whether the injury was of the type that Congress sought to redress with the antitrust laws; (4) the directness of the connection between the injury and alleged restraint in the relevant market; (5) the speculative nature of the damages; and (6) the risk of duplicative recoveries or complex apportionment of damages.

*Id.* (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-45 (1983).

Here, there is simply no denying that plaintiffs are efficient enforcers of the antitrust laws. As explained in detail above, *see supra* at 12-13, plaintiffs' injuries here flow *directly* from the precise harm to competition that the antitrust laws are designed to prevent. As such, plaintiffs' injuries are neither speculative nor too distant in the causal chain to be redressed. Indeed, as respects defendants' *per se* unlawful resale price fixing conspiracy, plaintiffs are

---

[38] *See id.*, at ¶ 30.

likely to be the only enforcer of the antitrust laws. As defendants point out,[39] market participants who suffer injury exclusively in foreign markets lack standing to bring private antitrust claims in the U.S. Thus, the only other logical class of plaintiffs to redress defendants' Sherman Act violation, plaintiffs' resale customers and other end-users in the Indian marketplace, are effectively precluded from bringing their own claims.

Accordingly, the antitrust violation alleged here is one that has long been condemned and for which the antitrust laws have provided parties such as plaintiffs here redress. Moreover, plaintiffs' injuries as alleged are a direct consequence of defendants' anticompetitive conduct, and there is no risk of duplicative recoveries or complex apportionment of damages. Plaintiffs are the best party to seek redress for defendants' *per se* unlawful conduct.

---

[39] *See* Defs.' Brief, at 6-9.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c) should be denied.

THELEN REID & PRIEST LLP

By: _Richard Taffet_ /alk

Richard S. Taffet (ct 10200)
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, New York  10022-6225
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN & DANA LLP

Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace
185 Asylum Street
Hartford, Connecticut  06103-3402
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs MM Global Services Inc.,
MM Global Services Pte. Ltd. and MegaVisa
Solutions (s) Pte. Ltd.

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of February, 2004, a copy of the foregoing has been

hand-delivered to the following:

> Craig A. Raabe, Esq.
> Edward J. Heath, Esq.
> Elizabeth A. Fowler, Esq.
> Robinson & Cole LLP
> 280 Trumbull Street, 28th Floor
> Hartford, CT  06103

and sent via FedEx to the following:

> Andrew S. Marovitz
> Britt M. Miller
> Dana S. Douglas
> Mayer, Brown, Rowe & Maw LLP
> 190 South LaSalle Street
> Chicago, IL  60603

> Christopher J. Kelly
> Mayer, Brown, Rowe & Maw LLP
> 1909 K Street
> Washington, DC  20006-1157

Alyson L. Redman