# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM GLOBAL    :
SERVICES PTE. LTD., and MEGAVISA    :
SOLUTIONS (S) PTE. LTD.,    :
   :
                Plaintiffs,    :   Civil No. 302 CV 1107 (AVC)
   :
        -v-    :
   :
THE DOW CHEMICAL COMPANY, UNION    :
CARBIDE CORPORATION, UNION CARBIDE    :
ASIA PACIFIC, INC., UNION CARBIDE    :
CUSTOMER SERVICES PTE. LTD., and DOW    :   February 13, 2004
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,    :
   :
               Defendants.    :

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *F. HOFFMANN-LA ROCHE, LTD V. EMPAGRAN, S.A.*

THELEN REID & PRIEST LLP
     Richard S. Taffet (ct 10201)
     Paul A. Winick (ct 21813)
     Alyson L. Redman (ct 25494)
     875 Third Avenue
     New York, New York 10022-6225
     (212) 603-2000

WIGGIN & DANA LLP
     Robert M. Langer (ct 06305)
     Suzanne E. Wachsstock (ct 17627)
     One CityPlace
     185 Asylum Street
     Hartford, Connecticut 06103-3402
     (860) 297-3724

     Attorneys for Plaintiffs MM Global Services
     Inc., MM Global Services Pte. Ltd., and
     MegaVisa Solutions (S) Pte. Ltd.

# TABLE OF CONTENTS

**PAGE(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I. DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN OF
SHOWING THE NECESSITY FOR A STAY ......................................................................... 5

      A.    *Empagran* Will Not Be Dispositive Of This Case .................................................7

            1.    Defendants improperly presume the Supreme Court will rule
consistent with their position ....................................................................7

            2.    Supreme Court reversal in *Empagran* will not dispose of this case ............8

      B.    Defendants Have Not Shown They Will Suffer Hardship Or Inequity
Absent A Stay ......................................................................................................11

II.    A STAY OF INDEFINITE DURATION IS IMPERMISSIBLE ................................... 12

III.    PLAINTIFFS WILL SUFFER UNDUE PREJUDICE...................................................... 15

IV.    CONSIDERATIONS OF JUDICIAL ECONOMY COMPEL DENIAL OF THE
STAY MOTION .................................................................................................... 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Brzonkala v. Virginia Polytechnic Inst. & State Univ.,*
    169 F.3d 820 (4th Cir. 1999) ..........................................................................................14

*C3, Inc. v. United States,*
    4 Ct. Cl. 790 (1984) ........................................................................................................13

*Cherokee Nation of Oklahoma v. United States,*
    124 F.3d 1413 (Fed. Cir. 1997)......................................................................................15

*Clinton v. Jones,*
    520 U.S. 681 (U.S. 1997)...........................................................................................5, 15

*Cosmotek Mumessillik Ve Ticaret Limited Sirkketi v. Cosmotek USA, Inc.,*
    942 F. Supp. 757 (D. Conn. 1996)...............................................................................6, 15

*Den Norske Stats Oljeselskap AS v. Heeremac VOF,*
    241 F.3d 420 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002).......................7, 8, 9, 10

*Empagran S.A. v. F. Hoffman-LaRoche,*
    315 F.3d 338 (D.C. Cir. 2003), *cert. granted*, 2003 WL 22734815
    (U.S. Dec. 15, 2003) ................................................................................................ *passim*

*Ferromin Int'l Trade Corp. v. UCAR Int'l, Inc.,*
    153 F. Supp. 2d 700 (E.D. Pa. 2001) .............................................................................10

*Gold v. Johns-Manville Sales Corp.,*
    723 F.2d 1068 (3d Cir. 1983)......................................................................................6, 16

*Harris v. Schweiker,*
    560 F. Supp. 1298 (S.D.N.Y. 1983)...............................................................................14

*Howard v. Gutterman,*
    3 B.R. 393 (S.D.N.Y. 1980)............................................................................................15

*In re Literacy Works in Elec. Databases Copyright Litig.,*
    No. M-21-90, MDL 1379, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) .................6, 13, 14

*Jugmohan v. Zola,*
    No. 98 Civ. 1509, 2000 WL 222186 (S.D.N.Y. Feb. 25, 2000) .......................................14

*Kruman v. Christie's Int'l Plc,*
    284 F.3d 384 (2d Cir. 2002)................................................................................3, 5, 7, 9

*Landis v. North Am. Co.,*
    299 U.S. 248 (1936)........................................................................5, 6, 7, 11, 12

*Lindsey v. Trend Cmty. Mental Health Servs.,*
    88 F. Supp. 2d 475 (W.D.N.C. 1999) ....................................................12, 13, 16

*Marshel v. AFW Fabric Corp.,*
    552 F.2d 471 (2d Cir. 1977) ......................................................................14

*Metallgesellschaft AG v. Sumitomo Corp. of Am.,*
    325 F.3d 836 (7th Cir. 2003) .....................................................................8, 9

*Sierra Rutile Ltd. v. Katz,*
    937 F.2d 743 (2d Cir. 1991) ...............................................................5, 6, 7, 11

*Trujillo v. Conover & Co. Communications, Inc.,*
    221 F.3d 1262 (11th Cir. 2000) ....................................................................16

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
    322 F.3d 942 (7th Cir. 2002) .....................................................................8, 9

*United States v. $294,600*
    1993 U.S. Dist. LEXIS 14297 (E.D.N.Y. Sept. 23, 1993).................................12

*United States v. Morrison,*
    529 U.S. 598 (2000)..................................................................................14

## PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion of Defendants The Dow Chemical Company ("Dow"), Union Carbide Corporation ("UCC"), and Union Carbide Asia Pacific, Inc. ("UCAP") to Stay Proceedings Pending the United States Supreme Court's Decision in *F. Hoffman-LaRoche, Ltd. v. Empagran, S. A.*, 2003 WL 22734815 (U.S. Dec. 15, 2003) (granting certiorari).

No stay is warranted. Defendants have failed to meet their heavy burden of establishing the need for a stay, and a stay will cause significant prejudice to plaintiffs. Such prejudice is made patent by the fact that this case is already 20 months old, with essentially no progress having been made on the merits. Defendants have fostered such delay by filing motion after motion after motion, repeatedly making the same arguments that the Court previously considered and rejected in deciding prior motions. This motion is just another attempt by defendants to prevent plaintiffs from moving ahead with the merits of this case.

The transparency of defendants' intentions is most glaringly highlighted by the fact that regardless of how the Supreme Court rules in the *Empagran* case, that decision will *not* be dispositive of this matter. Defendants, yet again, seek to have this Court think that the only injury plaintiffs are complaining about occurred in India. But, as the Court has recognized in prior rulings in this case, the Amended Complaint explicitly alleges injury to plaintiffs *in the United States* flowing from the anticompetitive conduct engaged in by defendants *in the United States*. Indeed, one of the plaintiffs – MM Global Services Inc. – is and was at all relevant times a United States corporation and was directly injured by the United States effects of defendants'

1

price fixing conspiracy. Accordingly, irrespective of how the United States Supreme Court may decide the issue before it in *Empagran*, it will not affect this Court's jurisdiction over plaintiffs' antitrust claim.

Moreover, any attempt by defendants to predict how the Supreme Court will rule in *Empagran* is pure speculation. No doubt defendants' counsel has a view on how the Supreme Court should rule, in that is representing a party seeking to have the Supreme Court reverse the decision by the District of Columbia Circuit in that case. But appellees in *Empagran* clearly have a different view. Further, where as here, it is uncertain when the Supreme Court may decide the appeal, a stay of this case pending the Supreme Court decision would be indefinite and impermissible.

Nor have defendants shown, as they must, that proceeding with merits discovery will cause them hardship or inequity. To the contrary, as commented above, it is plaintiffs that will be prejudiced by a stay. Not only will plaintiffs suffer from the usual consequences of delay – loss of witness recollection and availability – but in this case a stay of discovery will also deprive plaintiffs of evidence that goes directly to the heart of defendants' pending motions concerning the Court's subject matter jurisdiction over plaintiffs' antitrust claim. Defendants time after time have argued, as they still are doing, that their price fixing conspiracy did not have a direct, substantial and reasonably foreseeable effect on United States commerce. Plaintiffs have shown the absence of any merit to this argument, most recently in their opposition to defendants' pending motion for reconsideration of the Court's September 12, 2003 ruling on subject matter jurisdiction. Yet, defendants are taking the position that no discovery of evidence relating to the effects of their price fixing conspiracy outside of India is relevant. Through this motion defendants take another approach to achieve the same goal – *i.e.,* to stop plaintiffs from obtaining

evidence showing the magnitude of defendants' price fixing conspiracy and the anticompetitive effects of that conspiracy in markets throughout the world, *including directly in the United States.*

Lastly, under the circumstances of this case, considerations of judicial economy do not favor issuance of a stay. Especially since a decision by the Supreme Court in *Empagran* will not be dispositive of this case, proceeding with discovery and allowing this case to advance will best serve the interests of justice and fairness.

## BACKGROUND

Defendants' primary argument for a stay is their now familiar, but yet to be successful, argument that "[p]laintiffs' purported injuries do not arise from any *domestic* effects of the conduct that they allege: a resale price maintenance agreement for the sale of goods to customers in India."[1] Accordingly, defendants assert, if the Supreme Court overturns the decision of the District of Columbia Circuit in *Empagran,* and rules that subject matter jurisdiction under the Foreign Trade Antitrust and Improvements Act ("FTAIA") requires a plaintiff to show that its injury resulted from the effects of the defendants' anticompetitive conduct on U.S. commerce, then plaintiffs' antitrust claim "is finished, because [p]laintiffs' allegation that [d]efendants established unlawful prices for the resale of goods to customers *in India* would not be cognizable here in the United States under the Sherman Act."[2] This is because, defendants continue, *Kruman v. Christie's Int'l Plc*, 284 F.3d 384 (2d Cir. 2002), which established that subject matter

---

[1] Brief In Support Of Defendants' Motion To Stay Proceedings Pending The United States Supreme Court's Decision In *F. Hoffman-La Roche, Ltd. v. Empagran, S.A.* ("Defs. Stay Br."), at 2.

[2] *Id.* at 3 (emphasis in original).

jurisdiction under the FTAIA does not require a plaintiff's injury to result from the effects on

U.S. commerce of the challenged anticompetitive conduct, "would cease to be good law."[3]

      This argument, however, continues to be based upon the incorrect position that plaintiffs

are alleging injury only in India.  To the contrary, as this Court has recognized in this case:

> [T]he amended complaint alleges that the defendants coerced the
> plaintiffs into agreeing to fix the resale price of Union Carbide
> products in India, and that they did so in order to ensure that
> prices charged by [the] [p]laintiffs to end users in India for [p]roducts
> would not cause erosion to prices for the [p]roducts charged by
> [Union Carbide] and Dow to end-users . . . *in the United States* as
> well as in other jurisdictions . . . , and that, [a]s a direct and
> proximate result of [the] [d]efendants fixing of minimum resale
> prices and other terms of sale, competition in the sale and resale
> of [Union Carbide] products in and from *the United States* was
> improperly diminished and restrained.[4]

      The Amended Complaint further alleges that the actual sales of products from defendants

to plaintiffs took place in the United States, with title and risk of loss for the goods passing to

plaintiffs in the United States,[5] and that as the result of defendants' price fixing plaintiffs have

been injured in their business and property – that is, that they have suffered antitrust injury as

required by § 4 of the Clayton Act.[6]  Plaintiffs have also shown, in successfully defeating

defendants' motions for dismissal of the Sherman Act claim pursuant to Fed. R. Civ. P.

12(b)(6),[7] that their injuries include being deprived of the ability to compete independently *in the*

---

[3] *Id.*

[4] Ruling On The Defendants' Motions To Dismiss, dated September 12, 2003 (the "Decision"), at 16 (internal quotations omitted, emphasis in original).

[5] *See, e.g.*, First Am. Compl., ¶¶ 20, 22-25, 27, 53.

[6] *See, e.g.*, First Am. Compl., ¶ 55 ("[p]laintiffs have suffered injury to their business and property, including by being deprived of the ability to compete independently in the purchase of products for resale in the United States, and in the resale of products from the United States to end-users in India, free of Defendants' price maintenance requirements").

[7] Notwithstanding the Court's denial of Defendants' Rule 12(b)(6) motion to the extent it related to antitrust injury issues, defendants have filed another motion under the guise of Rule 12(c) raising further arguments concerning antitrust injury.  Plaintiffs' opposition to that motion is being filed contemporaneously herewith.

*United States* in the purchase of defendants' products, free of defendants' price fixing, including

by plaintiff MM Global Service, Inc., which is a United States corporation.[8]

Thus, the injuries alleged by plaintiffs in connection with their antitrust claim flow

directly from the anticompetitive effects on United States commerce resulting from defendants'

price fixing conduct. Accordingly, any decision by the Supreme Court in *Empagran* will not be

dispositive of this Court's subject matter jurisdiction over plaintiffs' antitrust claim here. If the

Supreme Court affirms the D.C. Circuit's holding,[9] then *Kruman* will remain "good law." But

even if the Supreme Court overturns the D.C. Circuit's decision, and adopts the position asserted

by petitioners there (counsel for which include counsel for defendants here), that a plaintiff's

injuries must flow from the anticompetitive effect on U.S. commerce, subject matter jurisdiction

over plaintiffs' antitrust claim in this case would still exist because plaintiffs' injuries include

those flowing directly from the anticompetitive effects of defendants' price fixing conspiracy on

U.S. commerce.

## ARGUMENT

## I.

## DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN OF SHOWING THE NECESSITY FOR A STAY

On this motion defendants "bear[] a heavy burden of showing necessity for the stay."

*Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991); *see also Clinton v. Jones*, 520 U.S.

---

[8] *See* Pltffs.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), dated Nov. 12, 2002 ("11/12/02 Pltffs.' Opp."), at 36-40. *See also* Pltffs.' Mem. of Law in Opp. to Defs.' Mots. to Dismiss Pursuant to 12(b)(6) and for Lack of Subj. Matter Juris., dated May 23, 2003 ("5/23/03, Pltffs.' Opp."), at 10-11.

[9] Defendants characterize the D.C. Circuit's holding to be "that the Foreign Trade Antitrust Improvements Act (the "FTAIA") permits foreign plaintiffs 'who are injured solely by [some] conduct's effect on foreign commerce' to sue under the Sherman Act, so long as the purportedly anticompetitive conduct also affected someone in the U.S., even if that someone is not the plaintiff in the case." Def. Stay Br., at 1.

681, 708 (1997) ("[t]he proponent of a stay bears the burden of establishing its need"); *Landis v. North Am. Co.*, 299 U.S. 248, 256 (1936) ("the burden of making out the justice and wisdom of a departure from the beaten track lay heavily on the petitioners"). Further, "the supplicant of a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255. *See also Sierra Rutile*, 937 F.2d at 750 (commenting on the district court's failure to require moving party to show necessity as a reason for denying stay); *Cosmotek Mumessillik Ve Ticaret Limited Sirkketi v. Cosmotek USA, Inc.*, 942 F. Supp. 757, 761 (D. Conn. 1996) (stating that where the moving party has failed to meet the heavy burden of showing the necessity of a stay, "such deficiency would normally result in the denial of a stay").

Accordingly, "[a] stay may not be granted, despite the existence of *compelling* reasons to grant it, if defendants have not shown that plaintiff would not undergo undue hardship from the resulting delay." *Cosmotek,* 942 F. Supp. at 760 (emphasis added); *see also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983) (denying stay even where defendants may be seriously inconvenienced because "under the standard announced in *Landis* . . . the balance of hardship weighs in favor of the injured plaintiffs"). As a result, "[o]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law . . ." *Landis*, 299 U.S. at 255. This includes where, as here, a party seeks a stay pending a Supreme Court decision in another case. *In re Literacy Works in Elec. Databases Copyright Litig.*, No. M-21-90, MDL 1379, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) (citing *Landis* in considering a request for a stay pending a Supreme Court decision).

Here, defendants completely ignore their burden of showing the *necessity* for a stay consistent with the foregoing authority. They do so despite citing at least two cases, including

the Supreme Court's decision in *Landis*, which plainly describe the showing they must make to

overcome the presumption against a stay.  Moreover, the arguments they do make are premised

upon incorrect assumptions and positions, which when held even to the slightest scrutiny

collapse under their own weight.  For these reasons, as in *Sierra Rutile*, defendants' request for a

stay of the proceedings should be denied.

**A.**     *Empagran* **Will Not Be Dispositive Of This Case**

A fundamental defect in defendants' argument for a stay is their underlying presumption

that a decision by the Supreme Court in *Empagran* will be in favor of the position they support,

and assuming it is, that it will require dismissal of plaintiffs' antitrust claims here.  These

positions are without basis.

**1.     Defendants improperly presume the Supreme
Court will rule consistent with their position**

Defendants' arguments for a stay presume that the Supreme Court will adopt an

interpretation concerning § 6a(2) of the FTAIA consistent with the Fifth Circuit's position in

*Den Norske Stats Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420 (5th Cir. 2001), *cert. denied*,

534 U.S. 1127 (2002).  There, the Fifth Circuit held that subject matter jurisdiction under § 6a(2)

of the FTAIA will not exist if plaintiff's injury results solely from the impact of a defendant's

challenged conduct on foreign, and not United States, commerce.  *Id.* at 426-28.  The Fifth

Circuit, however, is the only Circuit to interpret subsection 2 of the FTAIA in this manner.  At

least three Circuits have taken a different position.

As plaintiffs have discussed at length in this case, the Second Circuit in *Kruman v.

Christie's Int'l Plc*, 284 F. 3d 384 (2d Cir. 2002), has established the rule in the Second Circuit

that to establish subject matter jurisdiction under § 6a(2), a plaintiff must show that the

challenged conduct's effect on domestic commerce gives rise to a claim under the Sherman Act, but not specifically to that particular plaintiff's claim. *Id.* at 397-98.

The D.C. Circuit in *Empagran* also expressly rejected the *Den Norske* interpretation of § 6a(2). *Empagran S.A. v. F. Hoffman-LaRoche*, 315 F.3d 338, 341 (D.C. Circuit 2003), *cert. granted*, 2003 WL 22734815 (Dec. 15, 2003). The D.C. Circuit ruled that so long as "someone, even if it is not the foreign plaintiff who is before the court," has an injury arising from an effect of a defendant's conduct on U.S. commerce, subject matter jurisdiction under subsection 2 of the statute exists. *Id.*

The Seventh Circuit has also commented, without coming to a definitive resolution, that its precedent "appears to point in the direction of the approach taken by the D.C. and Second Circuits." *Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836, 840 (7th Cir. 2003) (relying upon *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942 (7th Cir. 2002)).

Thus, it is far from a certainty that the Supreme Court will reverse the D.C. Circuit in *Empagran* and go against the weight of the other Circuits, including the Second, that have considered the question at hand. This is so despite the United States antitrust enforcement agencies' position in favor of a reversal.[10]

## 2. Supreme Court reversal in *Empagran* will not dispose of this case

More importantly, even if the Supreme Court reverses the D.C. Circuit's decision in *Empagran*, and adopts the Fifth Circuit's approach to subject matter jurisdiction under § 6a(2) of the FTAIA as explained in *Den Norske*, subject matter jurisdiction over plaintiffs' antitrust claim in this case will still exist. This is because plaintiffs' injuries resulted not only from the effects

---

[10] *See* Defs. Stay Br., at 1-3.

of defendants' price fixing conspiracy in foreign markets, but also from the effects of that conduct in U.S. commerce.

The Seventh Circuit's decision in *Metallgesellschaft*, 325 F.3d 836, is instructive. There the plaintiffs alleged a conspiracy directed to raising the price of copper and manipulating the London Metals Exchange (the "LME"). The plaintiffs, both non-U.S. companies, who bought copper future contracts from brokers in New York, Connecticut and London, claimed that they were injured by the conspiracy when the defendants cornered the market for physical copper available to satisfy copper future contracts, thereby causing plaintiffs to cover their positions at greatly inflated prices, including to LME warehouses in Long Beach, California. *Id.* at 837.

The defendants challenged plaintiffs' antitrust claim for lack of subject matter jurisdiction under the FTAIA. In considering the defendants' arguments, the Seventh Circuit observed that the district court had adopted the position that the FTAIA required plaintiffs to show conduct that affects the U.S. domestic market and, as stated in *Den Norske*, that plaintiffs' injuries arose out of the very same anticompetitive effect on the marketplace. The Seventh Circuit further recognized the contrary approach of *Kruman* and *Empagran*, which "draws a distinction between the effects on U.S. commerce that are necessary to support statutory coverage and the effects that would support the merits of a particular plaintiff's claim." *Id.* at 838-39.

In *Metallgasellschaft*, however, the Seventh Circuit concluded that it did not have to definitively decide which approach is correct. *Id.* at 840.[11] The Seventh Circuit reached this conclusion because:

> [I]n our view the result in the case now before us would be the

---

[11] Although, as commented previously, the Court did indicate that the Seventh Circuit's prior decision in *United Phosphorous* "appears to point in the direction of the approach taken by the D.C. and Second Circuits." *Id.*

same no matter which side of the debate we joined. These
plaintiffs have not only alleged that the defendants engaged in
a conspiracy that had direct, substantial, and reasonably
foreseeable effect in U.S. domestic commerce; they also alleged
that they themselves suffered injury in the United States as a
result of physical copper transactions that took place within
the United States or copper futures transactions on a U.S.
exchange. This is enough we believe, to satisfy even the panel
majority in *Den Norske*.

325 F.3d at 840-841. In particular, the Court pointed to the plaintiffs' allegations that: (i) they

traded in New York, using the assistance of New York offices; (ii) those trades were regulated

by the CFTC; and (iii) those trades were completed only after the New York traders contacted

their LME counterparts for matching purposes. *Id.* at 842. Plaintiffs additionally alleged that

they delivered physical copper to LME warehouses in the United States. *Id.* Accordingly, the

Seventh Circuit held that "[t]hese ties are enough to satisfy the standards imposed by the FTAIA.

They demonstrate that [plaintiffs] were injured in the U.S. market and that the alleged foreign

activities had a direct, substantial, and reasonably foreseeable effect on U.S. non-import

commerce." *Id.* at 842. *See also Ferromin Int'l Trade Corp. v. UCAR Int'l, Inc.*, 153 F. Supp.

2d 700, 706 (E.D. Pa. 2001) ("While the mere fact that goods were manufactured in the United

States is insufficient to establish jurisdiction under the FTAIA, we find that the fact some of the

electrodes [plaintiffs] purchased were invoiced in the United States satisfies the causal

requirement that [plaintiffs] were injured as the result of higher prices for graphite electrodes in

the United States market.").

Here, the allegations of the Amended Complaint are even more compelling. Plaintiffs

here allege, and have submitted substantial evidence in connection with other motions showing:

(1) that the transactions subject to defendants' price fixing conspiracy involved pricing decisions

made in the United States for the purpose of maintaining prices in the United States for the

products involved; (2) plaintiffs, including MM Global Services, Inc., which is a U.S.

corporation, took delivery of and title to the products in the United States; and (3) plaintiffs

assumed the risk of loss for the goods in the United States.[12]  In addition, plaintiffs' resale of

goods and shipments to end-users was made from the United States.[13]  It is also alleged that

plaintiffs' injuries flowed directly from the U.S. effects of defendants' conduct, including the

fact that plaintiffs were deprived of the ability to compete independently and free of the effects

of defendants' price fixing conspiracy.[14]

**B.    Defendants Have Not Shown They Will Suffer
       Hardship Or Inequity Absent A Stay**

As observed above, the party seeking a stay must "make out a clear case of hardship or

inequity in being required to go forward." *Landis*, 299 U.S. at 255.  *See also Sierra Rutile*, 937

F.2d at 750.  Here, defendants fail to meet this requirement, seeking to justify the granting of a

stay only upon a showing that a stay would be in their "interest."[15]  Defendants' arguments,

however, do not establish any hardship or inequity.

First, defendants' belief that plaintiffs' claims will be adversely affected by the Supreme

Court's decision in *Empagran* does not constitute hardship.  As discussed above, how the

Supreme Court may decide *Empagran* is pure speculation, and in all events the decision will not

be dispositive of this case.

Second, while defendants bemoan the fact that they will have to provide discovery on the

merits if no stay is issued, they do not demonstrate any quantum of effort in discovery that would

be above and beyond that attendant to discovery in any case.  Moreover, the facts here suggest

---

[12] *See* First Am. Compl., ¶¶ 20-25, 27, 53.

[13] *See id.*

[14] *See id.*, ¶¶ 30, 55.

[15] *See* Defs. Brief, at 9.

that completing discovery would not work a hardship on defendants. Defendants (including the foreign-based affiliates) have provided the jurisdictional discovery allowed to date, which defendants claim has been substantial,[16] and no reason is apparent why incremental merits discovery cannot be provided. Sensibly, Dow, a large multi-national conglomerate, does not make any allegation that it would suffer financial hardship by providing discovery in this case.

Lastly, defendants argue that certain discovery requests are overbroad. Plaintiffs, needless to say, take a contrary position, and the parties are continuing to address these discovery issues, including with the Court's assistance. That being said, for purposes of this stay motion, defendants cannot seriously be arguing that a stay is the appropriate mechanism for challenging discovery requests. To the extent the parties have not been able to agree on specific discovery issues, we have already raised them, and will continue to raise them with the Court, and in no way can such matters be considered a hardship or inequity sufficient to support a stay.

## II.

## A STAY OF INDEFINITE DURATION IS IMPERMISSIBLE

Recognizing the unpredictability of litigation in both timing and outcome, the Supreme Court has stated that the grant of a stay is not favored where the claimed basis for a stay is that a decision in another case may settle a rule of law that might define the rights of parties in the case in which the stay is sought. *Landis*, 299 U.S. at 255-57. Further, a stay of immoderate or indefinite time frame is unlawful and an abuse of discretion. *Id.* at 257; *United States v. $294, 600*, 1993 U.S. Dist. LEXIS 14297 at *11-12 (E.D.N.Y. Sept. 23, 1993) (holding that a stay pending resolution of another case is indefinite); *Lindsey v. Trend Cmty. Mental Health Servs.*,

---

[16] *See* Letter from Dana S. Douglas to Paul A. Winick, dated Feb. 4, 2004, attached hereto as Exhibit A. In this letter, defendants stress that their document production has been substantial, at least insofar as it has concerned documents relating directly to plaintiffs or their transactions.

88 F. Supp. 2d 475, 477 (W.D.N.C. 1999) (denying stay pending a Supreme Court decision for indefiniteness); *C3, Inc. v. United States*, 4 Cl. Ct. 790, 792 (1984) (holding that a stay pending resolution of another case is indefinite). Thus, a stay is only appropriate where, after the moving party meets its burden, "a higher court is *close*" to deciding the relevant issue. *In re Literary Works*, 2001 WL 204212, at *2.

Courts, therefore, look to the specific circumstances of each case in evaluating whether a stay will be of an indefinite duration. In *Lindsey*, for example, the court denied a motion for a stay pending a Supreme Court decision because, the court acknowledged, "there is no guarantee that the Supreme Court will dispose of this case during its next term, a fact that would lead to further delay if a stay is granted." 88 F. Supp. 2d at 477. The court further explained that it could "find no reason to allow the case to further languish," because it had already been pending for two years with "no discovery ha[ving] occurred," and a "stay would further impair the [p]laintiffs' access to the courts." The district court also observed that "by the time the case is ready for trial, the Supreme Court may have rendered its decision." *Id.*

The situation here should be guided by *Lindsey*. This case has been pending for approximately 20 months, and the parties have not yet even started merits discovery. Moreover, despite defendants' contention, supported only by the observation of a reporter,[17] there is no guarantee the Supreme Court will issue a decision in *Empagran* during the current term of the Court. To date, only the submission of petitioners' and respondents' briefs has been scheduled. The schedule for oral argument has not been set, and there is no assurance that it will be for the current term.[18] The Supreme Court, thus, is far from issuing a decision.

---

[17] Defs. Brief, at 4.

[18] *See* Supreme Court Docket Sheet attached hereto as Exhibit B. On February 9, 2004, our firm contacted the office of the Supreme Court Clerk. We were advised that no scheduling has taken place in *Empagran* beyond the briefing

Even the cases relied upon by defendants are in accord. In *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977), a stay was granted where the Supreme Court had already heard arguments. In *Literary Works*, a stay was granted where the Supreme Court had scheduled oral arguments and, significantly, where all defendants and a majority of plaintiffs were in favor of a stay. 2001 WL 204212, at *3. In *Harris v. Schweiker*, the court did not even stay the litigation. 560 F. Supp. 1298, 1301 (S.D.N.Y. 1983). Instead, the court remanded the case, holding that it would be stayed pending a Supreme Court decision, *only* if the Administrative Law Judge found the claimant would not suffer hardship during the pendency of a stay. *Id.* at 1301. For the reasons discussed *infra*, plaintiffs in this case will be prejudiced if a stay issues.

Lastly, *Jugmohan v. Zola*, No. 98 Civ. 1509, 2000 WL 222186 (S.D.N.Y. Feb. 25, 2000), relied upon heavily by defendants, is equally distinguishable from the circumstances of this case. Despite defendants' reliance on the court's language that it was staying the case "[i]n light of the Supreme Court's recent grant of certiorari" in the related matter of *Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820 (4th Cir. 1999), it is significant that the Supreme Court had already heard oral arguments more than a month before the stay was granted.[19]

Thus, even leaving aside the fact that *Empagran* is not dispositive of this case, where the Supreme Court's grant of certiorari is so recent, only one month ago, and where no schedule has been set for oral arguments, the stay requested by defendants here would be for an indefinite period, and is therefore impermissible.

---

schedule, and that no decision had yet been made by the Court whether to hear argument in the case during the current term.

[19] The decision granting the stay in *Jugmohan* is dated February 25, 2000, approximately six weeks after oral arguments were heard by the Supreme Court in the *Brzonkala* matter on January 11, 2000. *See United States v. Morrison*, 529 U.S. 598 (2000).

## III.

## PLAINTIFFS WILL SUFFER UNDUE PREJUDICE

A stay may not be granted where plaintiffs will suffer undue prejudice from the resulting delay. *Cosmotek*, 942 F. Supp. at 760. It is defendants' burden to show that plaintiffs will not suffer undue prejudice as a result of the requested stay. *Id.* Defendants have failed to do so here, where prejudice to plaintiffs is practically inevitable. They simply argue that a stay will not prejudice plaintiffs because monetary damages are sought here, not injunctive relief.[20] Not surprisingly, defendants' argument ignores settled law.

The Supreme Court has recognized that a stay "delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Clinton v. Jones*, 520 U.S. 681, 707-08 (1997). *See also Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1418 (Fed. Cir. 1997) (denying stay where "[w]ith the passage of time, memories will fade, litigation costs will balloon, and resolve will dwindle"); *Howard v. Gutterman*, 3 B.R. 393, 394 (S.D.N.Y. 1980) (a stay "would frustrate rather than advance judicial administration [because] [a]s time progresses, evidence becomes stale, memories fade, and the search for truth necessarily becomes more elusive").

This is particularly the case where, as here, "hardship [to plaintiffs] may include the danger that evidence supporting the [] claim may grow stale, become unavailable, or be lost, particularly when the dispute is of an *international nature*." *Cosmotek*, 942 F. Supp. at 761 n.4. (emphasis added).

---

[20] *See* Defs. Stay Brief, at 9.

15

Thus, whether plaintiffs' claims are for monetary damages or injunctive relief is of no moment. The effect defendants seek to achieve by this motion – depriving plaintiffs of the ability to proceed with this case – is exactly the prejudice to plaintiffs courts uniformly recognize. The need to proceed here is even more urgent because of the international aspects of this case and the heightened risks of prejudice that exists in such circumstances.

## IV.

### CONSIDERATIONS OF JUDICIAL ECONOMY COMPEL DENIAL OF THE STAY MOTION

Defendants have failed to show hardship in being required to go forward, or that plaintiffs will not suffer prejudice if a stay is issued. Where that is the case, "the interest of judicial economy alone are insufficient to justify such an indefinite stay." *Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1265 (11th Cir. 2000); *see also Gold*, 723 F.2d at 1075-76 (3d Cir. 1983) (same).

Further, because any decision in *Empagran* will not be dispositive of this case, a stay here would only prevent the efficient resolution of this matter. As in *Lindsey*, allowing the completion of discovery would serve the purposes of justice and fairness to the plaintiffs by advancing this case, which is already some 20 months old, with discovery far from complete. 88 F. Supp. 2d at 477. Nor would any public interest or the interests of persons not parties to the litigation be harmed by denying a stay and allowing merits discovery to proceed.

## CONCLUSION

For the reasons set forth above, defendants' motion to stay proceedings pending the

Supreme Court's decision in *Empagran* should be denied.

THELEN REID & PRIEST LLP

By:

Richard S. Taffet (ct 10200)
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, New York 10022-6225
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN & DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace
185 Asylum Street
Hartford, Connecticut 06103-3402
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs MM Global Services Inc.,
MM Global Services Pte. Ltd. and MegaVisa
Solutions (s) Pte. Ltd.

17

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of February, 2004, a copy of the foregoing has been

hand-delivered to the following:

> Craig A. Raabe, Esq.
> Edward J. Heath, Esq.
> Elizabeth A. Fowler, Esq.
> Robinson & Cole LLP
> 280 Trumbull Street, 28th Floor
> Hartford, CT 06103

and sent via FedEx to the following:

> Andrew S. Marovitz
> Britt M. Miller
> Dana S. Douglas
> Mayer, Brown, Rowe & Maw LLP
> 190 South LaSalle Street
> Chicago, IL 60603

> Christopher J. Kelly
> Mayer, Brown, Rowe & Maw LLP
> 1909 K Street
> Washington, DC 20006-1157

_____
Alyson L. Redman

EXHIBIT A



Mayer, Brown, Rowe & Maw LLP
190 South La Salle Street
Chicago, Illinois 60603-3441

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Dana S. Douglas**
Direct Tel (312) 701-7093
dsdouglas@mayerbrownrowe.com

February 4, 2004

**VIA OVERNIGHT MAIL**

Paul A. Winick, Esq.
Thelen Reid & Priest LLP
875 Third Avenue
New York, NY  10022-6225

Re:    *MM Global Services, et al. v. The Dow Chemical*
      *Company, et. al.*, Civil No. 3:02 CV (AVD)

Dear Paul:

       I write to respond to your January 23, 2004 discovery letter, which in turn responded to
mine of January 5. As I noted in that earlier letter, we remain open to discussing any of these
discovery issues with you. While the final paragraph of your letter closes the door on such
discussions ("While we note your offer to discuss this issue with us, we do not believe that such
a discussion would be fruitful. . . ."), we want to reiterate our position, so that it is clear before
the February 9 status conference: several of the most fundamental discovery issues dividing the
parties will be controlled by the Supreme Court's coming decision in *F. Hoffman-La Roche Ltd.
v. Empagran.* A reversal by the Supreme Court in *Empagran* would require dismissal of
Plaintiffs' claims here, and therefore would moot these fundamental antitrust discovery issues.
What divides the parties are not simply garden-variety discovery disputes that properly can be
quickly resolved without the benefit of briefing; to the contrary, the ultimate resolution of even
the issues itemized below depends upon the disposition of the Motion To Stay and the other
motions currently pending before the Court, all in the shadow of *Empagran.* These are matters
of law, and Defendants believe that they bar Plaintiffs' claims.

       That said, we remain willing to narrow our differences – as we have done in the past – to
see what we can resolve by agreement pending disposition of those motions. To that end, we
have the following comments on your January 23 letter.

       You raise three preliminary points. First, in response to your question (and as we have
noted previously), we are attempting to determine whether any properly responsive information
exists within the AMI files. We hope to have an update on that by the February 9 status.

       Second, Defendants' foreign subsidiaries' production in response to the earlier document
requests has been substantial, not merely "selective." Specifically, I have been advised that
UCCS and Dow Singapore produced transaction records and documents relating to Plaintiffs, as
well as the relevant Canofiles; that Dow India produced documents concerning Plaintiffs' orders,

Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  Manchester  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent:  Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Paul A. Winick, Esq.
February 4, 2004
Page 2

the parties' dealings, products sold to Plaintiffs, credit and payment records and the impact of the Dow-UCC merger; and that Dow Chemical Asia Pacific's documents were produced along with Dow Singapore's documents. We are not aware of the existence of any documents in Defendants' possession, custody or control relating to Plaintiffs or their transactions with Defendants that have not been produced. Of course, certain documents responsive to Plaintiffs' most recent discovery requests to which Defendants have objected have not been produced (including requests for non-India end-user discovery and for certain non-Plaintiff related discovery). Still, as always, our investigation continues, and if additional properly responsive documents are found, they will be produced.

Third, your statement about the depositions of Kevin Goettl and Daniel Hein is incorrect. These deponents were produced in response to Mr. Taffet's October 13 letter requesting the depositions of a "[p]erson or persons knowledgeable to testify regarding the changes in 1998 and 2000 to UCC's enterprise software and order entry systems and the documents that otherwise would have been available at the time this lawsuit was filed but for such changes."[1] Mr. Hein testified during his deposition about the migration of data from the legacy system to the SAP R3 system and, to a lesser extent, about the migration of data from the SAP R3 system to the SAP R2 system. Mr. Goettl testified at length about the migration of data from the SAP R3 system to the SAP R2 system. To be sure, neither testified about documents that might be located in AMI, but that should have come as no surprise: my colleague Andy Marovitz asked you during the meet-and-confer calls before the depositions were conducted whether Plaintiffs would prefer to take the depositions after the AMI document search was completed, so that the depositions could cover that topic as well. You declined to proceed in that fashion so, to move things along, Defendants made their deponents available. Once the AMI issue is resolved, we'll be able to address your request for another deponent.

### STATUS OF AGREEMENTS REGARDING DEFENDANTS' RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION AND INTERROGATORIES

Your letter properly acknowledges the pending dispute regarding Plaintiffs' effort to discover information and documents regarding end-users that had no relationship whatsoever to them. In addition, we note the following:

Document Request No. 1: Plaintiffs question whether Defendants have produced all documents responsive to this request as a basis for asserting that the parties have not reached agreement. Defendants confirm that they are not aware of any non-privileged documents properly responsive to this Request that remain unproduced. *See supra* at 1. To the extent that any additional properly responsive, non-privileged documents are found within Defendants'

---

[1] Your January 23 letter changes that request, after the depositions were taken, to "the provisions made in the 1998 enterprise software system conversion for the preservation and archiving of information in connection with the upgrade."

Paul A. Winick, Esq.
February 4, 2004
Page 3

possession, custody or control, Defendants will produce them subject to their objections and the parties' agreements regarding the scope of the Request.

Document Request No. 2: No outstanding issues.

Document Request No. 3: No outstanding issues. Defendants confirm that they have agreed to respond to this Request with the limitation that "in connection with" means (a) decision makers, (b) persons with direct contact with Plaintiffs, and (c) persons with direct contact with end-user customers, with the exception of end-user customers having no relationship to Plaintiffs.

Document Request No. 4: Your January 23 letter offers a new limitation that does not appear in your previous letter. In addition, Defendants previously produced documents sufficient to identify the officers and senior level management personnel with involvement with the Products at issue as sold by Plaintiffs in India. We're not sure why you claim that a disagreement remains on this, when the limitation contained in your January 23 letter was not offered in your December 19 letter (and therefore was not responded to in our January 5 letter.)

Document Request No. 5: Defendants agree that Plaintiffs' proposed limitation to Document Request No. 5 does not address Defendants' objections to the overbreadth of the Request. Defendants assume that Plaintiffs' statement that the parties have not reached an agreement with respect to this Request means that Plaintiffs are not willing to consider Defendants' proposed suggestion to limit the Request to offices involved in the sale and distribution of Products to specifically defined end-users that are more relevant to the claims and defenses in this litigation.

Document Request No. 6: Defendants understood Plaintiffs, in the December 11 meet-and-confer, to agree to limit this Request to board of directors meeting minutes *concerning Plaintiffs or their purchases of Products*. Defendants maintain that this limitation is proper given the scope of the issues involved in the litigation. Plaintiffs now make clear that they are not satisfied with that limitation. Thus, the parties disagree.

Document Request No. 7: Defendants have not made a "blanket objection" to Document Request No. 7 as suggested by Plaintiffs. Rather, Defendants have agreed to produce documents concerning prices for or pricing of sales of Products sold to Plaintiffs for resale in India during the relevant time period. Indeed, Defendants' existing production contains many such documents. But any request for documents concerning prices for or pricing of Products sold or distributed to *any end-user*, irrespective of that end-user's location or relevant market, is not only overly broad, but it also is irrelevant to Plaintiffs' claims.

Document Request Nos. 8 & 9: While the parties have failed to reach an agreement with respect to Document Request Nos. 8 and 9, Defendants dispute Plaintiffs' characterization of Defendants' responses to these Requests as "blanket objection[s]." Specifically, during the parties' December 3, 2003 discovery conference, Plaintiffs explained that these Requests were

Paul A. Winick, Esq.
February 4, 2004
Page 4

served as a "tool" to discover pricing information. Defendants already have produced pricing information as a part of the transaction documents.

Document Request No. 10: Again, Plaintiffs have incorrectly characterized Defendants' objection to Document Request No. 10 as a "blanket objection." While the parties have failed to reach an agreement regarding the proper scope of this Request, Defendants have offered to produce (and indeed have produced) responsive documents that relate to the sale of Products in India. Documents concerning competition or anticipated competition in the sale or distribution of Products outside of India, without limitation to the location of those Products' distribution, are irrelevant to Plaintiffs' claims, and any Request seeking the production of those documents is overly broad and unreasonably burdensome.

Document Request No. 11: Defendants restate that they have agreed to produce training seminar documents, programs, manuals or guidelines relating to (1) the sale of Products; (2) pricing of Products; (3) allocation of Products; and (4) certain payment/credit issues. Defendants will produce any such documents that apply generally, but not documents that apply specifically, to end-users outside of India. Defendants continue to object to the production of documents related to specific end-users outside of India as any such documents are unrelated to Plaintiffs' claims. For example, a guideline produced by Defendants relating to a specific end-user located in Latin America is clearly irrelevant to this litigation. Under Plaintiffs' Request, this document would be needlessly subject to production.

Document Request Nos. 12 & 13: Defendants already have produced a number of documents "sufficient to show" the procedures and methods for order entry and processing in connection with the sale or distribution of Products in India. Defendants object to producing documents regarding the procedures for order entry and processing in connection with the sale or distribution of Products outside India, none of which involved Plaintiffs. Plaintiffs have counterfactually defined "directly" to mean The Dow Chemical Company or Union Carbide Corporation, and "indirectly" to mean their subsidiaries, affiliates, distributors and agents. The reference to "distributors and agents," not contained in your previous letter, is far too broad.

Document Request Nos. 14 & 15: Defendants confirm that they have agreed to respond to Document Request Nos. 14 and 15, limited to documents sufficient to show (a) where the goods originated, and (b) who sold them. Such information is available from the transaction documents previously produced.

Document Request Nos. 16-21: Defendants have agreed to produce documents responsive to Document Request Nos. 16-21. Defendants have not agreed to waive their general and specific objections that pertain to each of these Requests. For example, Defendants will not produce documents responsive to these Requests that are protected from disclosure by the attorney-client privilege or work product doctrine. Defendants will confirm whether they have withheld any non-privileged documents under Defendants' general or specific objections.

Paul A. Winick, Esq.
February 4, 2004
Page 5

Document Request Nos. 22-23:  Defendants stand on their objections to these overly broad Requests seeking information not properly related to Plaintiffs' claims or to Defendants' defenses.

Document Request No. 24:  Plaintiffs' January 23 "narrowing" of this Request is, in fact, a radical expansion of it.   The original Request sought the production of "documents not otherwise requested concerning Plaintiffs' purchase of Products on credit."  Plaintiffs now say, in your January 23 letter, that Defendants should produce documents sufficient to show "the identity of individuals involved in decisions involving the credit of Plaintiffs and the substance of those decisions," where "substance" means "*all* terms, factors and considerations by Defendants in making credit decisions and all internal and external communications concerning such decisions."  This expansion is unwarranted.  Defendants nonetheless believe that they already have produced documents responsive to the original Request to the extent that those documents exist and are within their possession, custody or control.

Document Request No. 25:  *See* Document Request No. 1.

Document Request No. 26:  This request remains hopelessly broad as written (documents "concerning any statements made by any Defendant to any Plaintiff in connection with the sale or purchase of Products").  Defendants already have produced responsive documents, but to suggest that *all* documents "*concerning* any statements made by any Defendant to any Plaintiff" must be produced is a request that would be impossible to satisfy.

Document Request Nos. 27-28:  *See* Document Request No. 1.

Document Request No. 29:  We clearly are in dispute regarding this request.

Document Request No. 30:  *See* Document Request No. 1.

Interrogatory No. 1:  *See* Document Request No. 1

Interrogatory No. 2:  Defendants have agreed to provide the job title of the identified individuals.  If the identified individual's job title is ambiguous, Defendants will identify the individual's job responsibilities.

Interrogatory No. 3:  We clearly are in dispute regarding this Request, which is hopelessly broad.

Interrogatory No. 4:  Documents containing the information responsive to this Interrogatory are contained in the individual transaction documents that already have been produced.  Defendants continue to object to any production of information regarding other purchasers.

Paul A. Winick, Esq.
February 4, 2004
Page 6

Interrogatory No. 5: Defendants continue to object to any production of information regarding the order entry process for non-Plaintiffs as wholly irrelevant to the case. As noted in my earlier letter, Defendants agree to produce (and indeed already have produced) responsive information about individuals with decision-making authority or direct, non-trivial contact with Plaintiffs and end-users who Defendants know purchased Products from Plaintiffs in India. If that offer is unacceptable to Plaintiffs, then we have a disagreement.

Interrogatory Nos. 6 & 7: We have a dispute on these Requests, both of which are directed to transactions not involving Plaintiffs in locations where Plaintiffs do not sell the Products.

Interrogatory No. 8: In its September 12, 2003 Order, the Court "agree[d] with the defendants that the letter agreements do not constitute enforceable contracts as they are unenforceable for want of mutuality." Order at 21. Accordingly, the individuals with knowledge of any "contract" between a Plaintiff and Defendant will be those with knowledge of the orders reflected in the transaction documents already produced with regard to specific orders that Defendants agreed to make. Relevant individuals are listed within those transaction documents.

Interrogatory No. 9: We agree that there is no dispute with respect to this Request.

Interrogatory No. 10: Defendants understood that Plaintiffs were considering ways in which to narrow their Interrogatory to sufficiently address Defendants' objections. That said, Defendants have made a reasonable search for documents containing the requested information and documents identifying responsive orders have been produced.

Interrogatory No. 11: Defendants will, to the best of their ability, identify the locations of plants that produced the Products sold to Plaintiffs.

### STATUS OF AGREEMENTS REGARDING PLAINTIFFS' RESPONSES TO DEFENDANTS' REQUESTS FOR PRODUCTION AND INTERROGATORIES

In reliance on Plaintiffs' representation that they have not withheld any non-privileged documents under their general and specific objections, Defendants agree that there is no dispute concerning Document Request Nos. 1, 2, 5, 7-8, and 10-41.

Additionally, Plaintiffs agreed to confirm and promptly update, in necessary, the lists of documents provided in response to Interrogatory Nos. 1-7 and 11. We have not received any such confirmation or update to these Requests. Plaintiffs' exceptionally broad designations of documents in response to these Requests are inappropriate under Fed. R. Civ. P. 33(d).

Defendants agree that the parties have failed to reach a resolution of the parties' disputes concerning Defendants' Document Request Nos. 6, 9 and 42.

Paul A. Winick, Esq.
February 4, 2004
Page 7

     With respect to certain of the individual requests, Defendants state the following:

     **Document Request No. 3:** Defendants confirm that the parties have agreed that Plaintiffs will identify employees responsive to this Request and provide those employees' job titles and, if insufficiently descriptive, job descriptions.

     **Document Request No. 4:** The parties have not reached complete agreement with respect to Document Request No. 4. Plaintiffs continue to object to the production of board of directors minutes generated after March 21, 2002 that are relevant to this litigation. Defendants confirm that the parties have agreed to the production of board of directors minutes from January 1, 1993 until March 21, 2002 that are relevant to this litigation, including those discussing the sales of Products in India; Plaintiffs' relationships with customers; Plaintiffs' financial condition; and any board of directors minutes that contain information responsive to other document requests.

     **Interrogatory No. 6:** While the parties have not reached agreement, we will defer seeking further relief on this Request pending production of materials that we have discussed.

     **Interrogatory No. 8:** Plaintiffs will identify descriptive job titles and, to the extent that job titles are not sufficiently descriptive, job descriptions.

     **Interrogatory No. 10:** Plaintiffs are obligated to identify the specific orders responsive to Interrogatory No. 10. Plaintiffs' suggestion that the information responsive to this Interrogatory can be discovered through the review of thousands of pages of documents does not adequately meet Rule 33(d)'s threshold requirement that the burden of searching through the records for the requested information be substantially the same for both parties. In light of the fact that Plaintiffs placed or attempted to place these orders, it would be far less burdensome for Plaintiffs to list these orders than for Defendants to guess which of the thousands of documents referred to in Plaintiffs' response constitute the last ten orders Plaintiffs claim they placed or attempted to place.

*   *   *   *   *

     As noted above, we remain open to discussion in an effort to narrow any outstanding differences.

Sincerely,

*Dana S. Douglas*

Dana S. Douglas

EXHIBIT B

No. 03-724          Status: GRANTED
Title:
                    F. Hoffmann-LaRoche, Ltd., et al., Petitioners
                    v.
                    Empagran S.A., et al.
Docketed:           November 18, 2003
Lower Ct:           United States Court of Appeals for the District of Columbia Circuit
  Case Nos.:        (01-7115)
  Decision Date:    January 17, 2003
  Rehearing Denied: September 11, 2003


~~~Date~~~  ~~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~~
Nov 13 2003  Petition for a writ of certiorari filed. (Response due December 18, 2003)
Nov 14 2003  Brief of respondents Empagran S.A., et al. in opposition filed.
Nov 24 2003  Letter from counsel for the Federal Republic of Germany as amicus curiae received.
Nov 24 2003  Reply of petitioners F. Hoffmann-LaRoche Ltd., et al. filed. (Distributed)
Nov 25 2003  DISTRIBUTED for Conference of December 12, 2003.
Nov 26 2003  Motion for leave to file amicus brief filed by Chamber of Commerce of the United States.
Dec 1 2003   Brief amicus curiae of Federal Republic of Germany filed. (Distributed)
Dec 15 2003  Motion for leave to file amicus brief filed by Chamber of Commerce of the United States
             GRANTED. Justice O'Connor took no part in the consideration or decision of this
             motion.
Dec 15 2003  Petition GRANTED. Justice O'Connor took no part in the consideration or decision of
             this petition.
Jan 21 2004  Extension of time within which to file petitioners' brief on the merits and the joint
             appendix to and including February 3, 2004.
Jan 29 2004  Extension of time within which to file respondents' brief on the merits to and including
             March 15, 2004.
Jan 30 2004  Brief amicus curiae of The Business Roundtable filed.
Feb 3 2004   Brief amici curiae of Governments of the Federal Republic of Germany and Belgium
             filed.
Feb 3 2004   Brief amici curiae of Chamber of Commerce of the United States and Organization for
             International Investment filed.
Feb 3 2004   Brief amicus curiae of United States filed.
Feb 3 2004   Brief amici curiae of United Kingdom of Great Britain and Northern Ireland and
             Kingdom of the Netherlands filed.
Feb 3 2004   Brief amicus curiae of European Banks filed.
Feb 3 2004   Brief amicus curiae of Government of Japan filed.
Feb 3 2004   Joint appendix filed.
Feb 3 2004   Brief of petitioners F. Hoffmann-LaRoche Ltd., et al. filed.
Feb 3 2004   Brief amicus curiae of Canada filed.

---

~~Name~~~~~~~~~~~~~~~~~~~~    ~~~~~~~Address~~~~~~~~~~~~~~~~~~~    ~~Phone~~~
**Attorneys for Petitioner:**

Arthur F. Golden

Davis Polk & Wardwell

(212) 450-4000

450 Lexington Avenue
New York, NY  10017

Party name: F. Hoffmann-LaRoche Ltd., et al.

**Attorneys for Respondent:**

Michael D. Hausfeld

Cohen Milstein Hausfeld & Toll PLLC

(202) 408-4600

1100 New York Ave., NW
Suite 500, West Tower
Washington, DC  20005

Party name: Empagran S.A., et al.

**Other:**

Roy T. Englert Jr.

Robbins, Russell, Englert, Orseck & Untereiner LLP

(202) 775-4500

1801 K Street, NW
Suite 411
Washington, DC  20006

Party name: Chamber of Commerce of the United States

David C. Frederick

Kellogg Huber HansenTodd & Evans

(202) 326-7900

1615 M Street, NW
Suite 400
Washington, DC  20036

Party name: Federal Republic of Germany

Janet L. McDavid

Hogan & Hartson, LLP

(202) 637-5600

555 Thirteenth St., NW
Washington, DC  20004

Party name: The Business Roundtable

Edwin S. Kneedler

Acting Solicitor General

(220) 514-2201

Department of Justice
Washington, DC  20530

Party name: United States

| Ernest Gellhorn | Law Office of Ernest Gelhorn | (202) 319-7104 |
| | Suite 100 | |
| | 2907 Normanstone Lane, NW | |
| | Washington, DC  2008-2725 | |

Party name: United Kingdom of Great Britain and Northern Ireland and Kingdom of the Netherlands

| Carter G. Phillips | Sidley Austin Brown & Wood LLP | (202) 736-8000 |
| | 1501 K Street, NW | |
| | Washington, DC  20005 | |

Party name: European Banks

| Douglas E. Rosenthal | Sonnenschein Nath & Rosenthal | (202) 408-6400 |
| | 1301 K Street, NW | |
| | Suite 600, East Tower | |
| | Washington, DC  20005 | |

Party name: Government of Japan

| Homer E. Moyer Jr. | Miller & Chevalier Chartered | (202) 626-5800 |
| | 655 Fifteenth Street, NW | |
| | Suite 900 | |
| | Washington, DC  20005 | |

Party name: Canada