## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 3:02 CV 1107 (AVC) |
| v. | ) ) ) | March 1, 2004 |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Britt M. Miller (ct 25411)
MAYER, BROWN, ROWE & MAW LLP
190 S. LaSalle Street
Chicago, IL  60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC 20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 3

I.     PLAINTIFFS CONFIRMED THAT THE COMPLAINT ALLEGES INJURY IN
       INDIA ONLY ........................................................................................................ 3

II.    PLAINTIFFS CONFIRMED THAT THERE IS NO CONNECTION BETWEEN
       THEIR ALLEGED INJURY AND ANY ANTICOMPETITIVE EFFECT IN A
       MARKET WITH WHICH U.S. ANTITRUST LAWS ARE CONCERNED ................... 5

III.   PLAINTIFFS CONFIRMED THAT THEIR ALLEGED INJURIES ARE
       SPECULATIVE ..................................................................................................... 8

CONCLUSION ............................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page**

Cases

*Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519
  (1983).................................................................................................................. 2

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)................................. 6

*Borger v. Yamaha Int'l Corp.*, 625 F.2d 390 (2d Cir. 1980) ............................................ 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ...................... 4, 5, 6

*Cardizem CD Antitrust Litig., In re*, 332 F.3d 896 (6th Cir. 2003),
  *petition for cert. filed*, 72 U.S.L.W. 3393 (Nov. 24, 2003) (No. 03-779)................... 9

*DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996)......................................... 4

*Fed. Paper Board Co. v. Amata*, 693 F. Supp. 1376 (D. Conn. 1988)............................ 4

*Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994)............................................................ 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................. 4, 5

*Pace Elec., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118 (3d Cir. 2000) .......... 5, 6, 7

*Pfizer Inc. v. India*, 434 U.S. 308 (1978)........................................................................ 5

*Sever v. Glickman*, 2004 U.S. Dist. Lexis 373 (D. Conn. Jan. 9, 2004) ......................... 4

*Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 WL 426379 (S.D.N.Y. July 30, 1996)... 7, 8

*Timken Co. v. United States*, 341 U.S. 593 (1951), *overruled on other grounds, Copperweld
  Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ......................................... 5

*Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293 (3d Cir. 2002)................... 4, 5

*United States v. Colgate & Co.*, 250 U.S. 300 (1919) .................................................. 10

*Valley Prods. Co. v. Landmark*, 128 F.3d 398 (6th Cir. 1997)....................................... 9


Statutes

15 U.S.C. § 1........................................................................................................................ 1


Other Authorities

5A Wright & Miller, *Federal Practice and Procedure* § 1369 (2d ed. 1990)................ 2

Brief for the United States as Amicus Curiae Supporting Petitioners, *F. Hoffmann-La Roche Ltd.
  v. Empagran, S.A.* (No. 03-724), (filed Feb. 3, 2004) (available at 2004 WL 234125) ..... 2, 4, 5

VII Areeda & Hovenkamp, ANTITRUST LAW ¶ 1459c3 (2d ed. 2003) .......................... 8

## INTRODUCTION

With each brief they file, plaintiffs more clearly establish *with their own words* that they cannot plead or prove any anticompetitive effect on competition in the United States, or an injury that bears any relationship to such an effect. In so doing, they confirm that they cannot plead or prove that they have suffered antitrust injury. Thus, entirely apart from the question of whether this court has subject matter jurisdiction over their antitrust claim, plaintiffs have demonstrated conclusively that they lack antitrust standing, and are not entitled to pursue the claim.

Defendants' opening brief pointed out three fundamental ways in which plaintiffs' own pleadings demonstrated the absence of antitrust standing: (1) plaintiffs' alleged injuries, if any, occurred only in India; (2) plaintiffs alleged no anticompetitive effect on a United States market bearing any relationship to their alleged injuries; and (3) plaintiffs' allegations of injury, and of the alleged offense's causal relationship to it, are entirely speculative. Plaintiffs' opposition focuses overwhelmingly on the proposition that resale price maintenance agreements among firms engaged in U.S. commerce are *per se* violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and that dealers that are terminated for their refusals to enter into such illegal agreements may have actionable claims if the terminations cause them competitive harm. But as to the case they pled, plaintiffs' opposition only confirms that plaintiffs lack standing to bring it.

One point warrants special mention. Plaintiffs repeatedly claim that this Court previously rejected defendants' argument that plaintiffs failed to allege the antitrust injury necessary to antitrust standing. Plaintiffs' Opposition to Defendants' Motion for Partial Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("Opp."), at 1, 3-4. Plaintiffs' charge is unfounded, and reflects a misunderstanding of the difference between subject matter jurisdiction (a subject upon which the Court previously ruled and presently is reviewing) and antitrust standing of these plaintiffs to bring a claim (a subject upon which the Court never ruled). To be sure, defendants

disputed and continue to dispute this Court's subject matter jurisdiction over plaintiffs' antitrust claim. But the Court never decided the subsequent question: whether plaintiffs satisfy antitrust standing principles by demonstrating that they are the *"proper part[ies]* to bring a private antitrust action" on the facts they allege. *Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) (emphasis added). That ground of dismissal is separate from the question of subject matter jurisdiction. *See* Brief in Support of Defendants' Motion for Partial Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("Open. Br.") at 2 (citing *Kruman*'s remand to the district court for a consideration of standing even after finding subject matter jurisdiction); Brief for the United States as Amicus Curiae Supporting Petitioners at 6, *F. Hoffmann-La Roche Ltd. v. Empagran, S.A.*, 2004 WL 234125 (Feb. 3, 2004) (No. 03-724) ("U.S. Amicus Br.") ("Antitrust standing principles independently support the conclusion that foreign plaintiffs whose claims arise solely from a conspiracy's effects on foreign commerce cannot bring antitrust lawsuits in United States courts.").

*Nowhere* in the September 12 ruling on defendants' motion to dismiss did this Court discuss plaintiffs' inability to satisfy the antitrust injury requirement.[1] *See* Ruling on the Defendants' Motion to Dismiss, dated Sept. 12, 2003, at 2-3 (reciting issues addressed in Ruling); *id.* at 36-37 (summarizing Ruling). Consequently, as to antitrust injury and antitrust standing, there is no "law of the case." *See* Opp. at 5. Plaintiffs' assertion to the contrary is inaccurate. This Court writes on a clean slate, and defendants' motion should be granted.

---

[1]     Even had the Court ruled on antitrust injury and antitrust standing in addressing defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this motion pursuant to Rule 12(c) would be proper. See 5A Wright & Miller, *Federal Practice and Procedure* § 1369, at 533 (2d ed. 1990) (whereas Rule 12(b) motions are directed towards procedural shortcomings, Rule 12(c) motions go to "a determination of the substantive merits of the controversy").

## ARGUMENT

### I.    PLAINTIFFS CONFIRMED THAT THE COMPLAINT ALLEGES INJURY IN INDIA ONLY.

If there was any doubt that the only injury plaintiffs could have suffered occurred in India, plaintiffs' opposition brief erased it: "Here, plaintiffs have alleged, and the evidence supports, that the actual sales of products by defendants to them took place in the United States *for resale from the United States to India.*" Opp. at 13 (emphasis added).[2] Whether the sales took place in the United States or elsewhere does not matter; what does is that, by the plaintiffs' own words, the sales subject to the purported resale price maintenance were for resale to India. Plaintiffs do not allege that they had any right to sell defendants' products in the United States, or *anywhere* but in India. By definition, any resale terms on which plaintiffs and defendants agreed therefore could affect only Indian buyers. To the extent any such terms were not agreeable to Indian buyers, the result would be lost Indian sales. Similarly, the only sales defendants could disrupt by refusing or canceling an order from plaintiffs would be Indian. Plaintiffs have confirmed, then, that any injury they suffered was in India and only in India.

Plaintiffs argue, however, that there was "[a]nother principal effect": the restraint on their "ability effectively to compete independently in the purchase of products for resale in the United States, and in the resale of the Products from the United States to end-users in India." Opp. at 13. The second portion of this "effect," of course, merely repeats the other "principal effect" on India. The first portion is nonsensical. Even assuming that there was a meaningful market in the "purchase of products for resale in the United States," plaintiffs were not in it, being in existence for the sole purpose of selling products in India. Moreover, plaintiffs – who

---

[2]    In fact, as discussed below, plaintiffs have failed to allege anything more than speculative injuries from the alleged resale price agreement between them and defendants. This portion of the argument assumes for the moment that they had adequately alleged injury.

were *not* exclusive distributors – can point to no factual allegation that restricts their freedom to purchase products from any source, including defendants' competitors, in the United States or elsewhere. "This conclusory statement, wholly unsupported by factual allegations, is simply insufficient to withstand a motion to dismiss," *Sever v. Glickman*, 2004 U.S. Dist. Lexis 373, at *14 (D. Conn. Jan. 9, 2004) (citing *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) ("complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)")), and thus also a motion for judgment on the pleadings, *see Fed. Paper Board Co. v. Amata*, 693 F. Supp. 1376, 1379 (D. Conn. 1988) (granting motion for judgment on the pleadings on, among other things, Sherman Act count).

Plaintiffs are left with an allegation of only Indian effect and injury. *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293 (3d Cir. 2002), discussed in defendants' opening brief at 7-8, is thus directly on point. The injuries the plaintiff foreign-based travel agencies incurred from the alleged collusion on their commissions "occurred exclusively in foreign markets. They are not of the type Congress intended to prevent through the Foreign Trade Antitrust Improvements Act or the Sherman Act." 303 F.3d at 307. Plaintiffs' opposition brief confirms that the same is true of plaintiffs' alleged injuries here.

Because their injuries "did not arise from anticompetitive effects on United States commerce," they "do[] not 'flow[] from that which makes the defendants' acts unlawful,' ... and therefore [are] outside the zone of interests protected by the antitrust laws." U.S. Amicus Br. at 28 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Citing several of the same authorities that appear in defendants' opening brief, the Solicitor General's *Empagran* brief concludes that injuries such as those plaintiffs have attempted to allege here are not the concern of U.S. antitrust laws. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 582 (1986); *Pfizer Inc. v. India*, 434 U.S. 308, 314 (1978); *Turicentro*, 303 F.3d at 307). "[T]o award treble damages and attorney's fees to a class of foreign plaintiffs whose injuries arise exclusively from a conspiracy's foreign anticompetitive effects would 'divorce antitrust recovery from the purposes of the antitrust laws without a clear statutory command to do so.'" *Id.* at 28-29 (citing *Brunswick Corp.*, 429 U.S. at 487; *Matsushita*, 475 U.S. at 582-84 & nn.6 & 7). The Solicitor General's conclusion that the plaintiffs in *Empagran* did not incur antitrust injury, and thus lacked antitrust standing, is equally applicable here.

## II.    PLAINTIFFS CONFIRMED THAT THERE IS NO CONNECTION BETWEEN THEIR ALLEGED INJURY AND ANY ANTICOMPETITIVE EFFECT IN A MARKET WITH WHICH U.S. ANTITRUST LAWS ARE CONCERNED.

In response to defendants' showing that plaintiffs failed to allege injury that is connected to anticompetitive harm to a market that U.S. antitrust laws protect, plaintiffs argue vehemently that vertical minimum resale price agreements are *per se* violations of Section 1 of the Sherman Act. Opp. at 7-10. Even assuming, however, that the minimum price agreement plaintiffs allege is in fact a *per se* Sherman Act violation,[3] they must also allege and prove facts supporting antitrust injury. *E.g., Pace Elec., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118, 120 (3d Cir. 2000) (antitrust injury allegations are required "even where, as in the instant case, the alleged acts of the defendants constitute a per se violation of the antitrust laws").

Consequently, plaintiffs still must prove that their "loss stems from a competition-

---

[3]       Defendants separately argued that the alleged resale price agreements do not fall within the reach of U.S. antitrust law, let alone constitute *per se* violations. But even if U.S. antitrust law applied, there would be a serious question whether the *per se* rule did as well. As Justice Frankfurter observed, "the circumstances of foreign trade may alter the incidence of what in the setting of domestic commerce would be a clear case of unreasonable restraint of trade. ... When as a matter of cold fact the legal, financial, and governmental policies deny opportunities for exportation from this country and importation into it, arrangements that afford such opportunities to American enterprise may not fall under the ban of a fair construction of the Sherman Law because comparable arrangements regarding domestic commerce come within its condemnation." *Timken Co. v. United States*, 341 U.S. 593, 605-06 (1951) (Frankfurter, J., dissenting from holding that conspiring with foreign subsidiaries violated Sherman Act), *overruled on other grounds, Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (emphasis in original). Conduct that affects only a foreign market cannot produce injuries "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp.*, 429 U.S. at 489. Thus, plaintiffs must demonstrate that their injuries are the product of some aspects of the alleged conduct that reduce competition *in a market protected by the antitrust laws*. They must allege and prove facts indicating that the alleged offense actually harmed competition here.

Plaintiffs have failed to do so. Nowhere does their brief explain how their alleged injuries relate to a U.S. market harmed by the alleged offense. Moreover, the cases they cite for their argument that they need not allege or prove any competitive market-wide harm are clearly inapplicable. *Pace*'s holding – "that a dealer terminated for its refusal to abide by a vertical minimum price fixing agreement suffers antitrust injury and may recover losses flowing from that termination," 213 F.3d at 124 – does not help plaintiffs, who have not alleged in any way that Dow terminated the distribution relationship for a "refusal to abide by" the alleged agreement. To the contrary, plaintiffs recently declared that "all indent orders placed by plaintiffs with defendants, which such orders involved plaintiffs' purchase of Products for resale to specific customers, were resold to end-users at a price that was set by the resale price maintenance conspiracy alleged in the First Amended Complaint." Plaintiffs' Answers and Objections to Defendants' First Set of Interrogatories on Merits Discovery, at 3 (Answer to Interrog. No. 12) (Jan. 12, 2004) (attached hereto as Exhibit A). Far from being victimized by the alleged anticompetitive conduct, plaintiffs, based on their own allegations, were complicit in the conspiracy that they have attempted to allege.

Further, *Pace* is not exactly what plaintiffs say it is: what the Third Circuit rejected was

the proposition that a plaintiff must show that its own injury "caused an actual, adverse effect on a relevant market in order to satisfy the antitrust injury requirement." 213 F.3d at 123. But the court also made clear that the plaintiff still must demonstrate that its loss "stemmed from any of the potential anticompetitive dangers which led the Court to label [the conduct in question] unlawful in the first instance." *Id.* at 124. "The issue, thus, is not whether the plaintiff's alleged injury produced an anticompetitive result, but, rather, whether the injury claimed resulted from the anticompetitive aspect of the challenged conduct." *Id.* Plaintiffs fail this test. They have utterly failed to allege a connection between the injury they claim and some aspect of the alleged agreements on Indian resale prices that would make such conduct a United States antitrust law violation. In addition, neither *Pace* nor the other case on which plaintiffs rely, *Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 WL 426379 (S.D.N.Y. July 30, 1996), involves allegations of effects in non-U.S. markets. Where the only geographic market involved is the United States, the only presumed market effects that could be connected to plaintiff's injury are domestic. But where a plaintiff alleges effects outside the United States, it does not follow that the plaintiff's injuries are linked to the presumed domestic effects.

*Sterling* is not merely distinguishable from this case; in fact, it shows eloquently why plaintiffs lack antitrust injury and antitrust standing. The terminated dealer there alleged that the termination had actually harmed it, for "Sterling was ... 'locked in, and at the mercy of Haworth.' ... Since Haworth's furniture was not interchangeable with that of other companies, Sterling was virtually compelled to continue selling it in order to keep its consumer base satisfied.... Sterling, a fledgling start-up, could not afford to lose that business." 1996 WL 426379, at *3. As an alleged "nonparticipating dealer precluded from submitting competitive bids and soliciting customers as part of Haworth's effort to implement the scheme" amounted to

antitrust injury; Sterling fell into the class of "dealers who are effectively foreclosed from competing in the marketplace" through resale price agreements. *Id.* at 19.

*Sterling* does not suggest that a dealer could gain antitrust standing to challenge a resale price maintenance agreement merely by being a party to it, or even by being terminated by the manufacturer looking to obtain or enforce such an agreement. Instead, it finds antitrust injury in connection with a specific set of facts that reflect foreclosure. Plaintiffs have alleged nothing like that here. They have alleged nothing to suggest that, when a defendant allegedly refused to sell a Product to them, they could not simply find another source for that product. Their failure to do so simply confirms, as discussed below, that their alleged injuries are speculative.

## III.    PLAINTIFFS CONFIRMED THAT THEIR ALLEGED INJURIES ARE SPECULATIVE.

Plaintiffs have failed to counter the point that their allegations leave both the fact and the extent of their injury entirely open to speculation. First, they attempt to avoid the clear import of *Borger v. Yamaha Int'l Corp.*, 625 F.2d 390, 399 (2d Cir. 1980), discussed in defendants' opening brief at 11, by treating it as nothing more than a damages case. But they offer no authority for why a dealer or distributor's available alternatives are not directly relevant to whether a termination or refusal to deal caused actionable antitrust injury. *Sterling*'s account of the terminated dealer's dependence on Haworth's furniture clearly suggests that the outcome would have been different had the product in question been a mere commodity. As Areeda and Hovenkamp, whom plaintiffs ignore, point out, the issue of whether a plaintiff's injuries were the result of causes other than the alleged offense – such as, for example, a failure to seek reasonable alternative sources of supply – goes to causation, and thus to antitrust injury and antitrust standing: "The availability of reasonable mitigation breaks the causal nexus between the defendant's wrong and the plaintiff's loss." VII Areeda & Hovenkamp, ANTITRUST LAW

8

¶ 1459c3, at 181 (2d ed. 2003). Plaintiffs have failed to show that the causal nexus even exists.

More generally, plaintiffs have completely failed to allege how the alleged resale price agreement harmed them. As noted above, they now contend that all their orders earmarked for particular customers were subject to the alleged agreement, but they do not allege that any consummated sale was the source of injury to themselves – as would be the case if the allegedly fixed prices led those customers to order fewer units, reducing total profits. To the contrary, plaintiffs' allegations would mean that they likely made *more* profits on the consummated sales than they would have absent the alleged offense. As to the allegedly canceled and rejected orders, plaintiffs are silent about whether they lost the sales, or in fact made the sales using supply from other sources. Thus, even accepting the complaint's allegations, plaintiffs have not alleged or shown that the alleged resale price agreement injured them at all.

Plaintiffs also attempt to deflect *Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994), and *Valley Prods. Co. v. Landmark*, 128 F.3d 398 (6th Cir. 1997), by misinterpreting *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003), *petition for cert. filed*, 72 U.S.L.W. 3393 (Nov. 24, 2003) (No. 03-779). But *Cardizem* neither overrules nor undermines the earlier Sixth Circuit cases. *Cardizem* rejected the defendants' argument that there could be no antitrust injury resulting from a standstill agreement between the parties to a patent infringement action merely because the alleged infringer *could* unilaterally decline to produce its allegedly infringing product during the litigation. 332 F.3d at 912. The court distinguished both *Hodges* and *Valley Products*, noting that, in each case, a defendant's unilateral acts *did* cause the harm complained of. *Id.* at 913-14. This was so even though the unilateral conduct was "'linked to an alleged violation of the antitrust laws,'" and in *Hodges*, was allegedly carried out to "police[] the[] illegal agreement." 332 F.3d at 913 (quoting *Valley Prods.*, 128 F.3d at 403) .

The allegations here – that the canceled and refused orders "enforced and compelled" the resale price maintenance agreement (Cmplt. at ¶ 28) – are similar.  Defendants unquestionably had the right to refuse unilaterally to sell to plaintiffs for any reason, including dissatisfaction with plaintiffs' resale prices.  "In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.  And, of course, he may announce in advance the circumstances under which he will refuse to sell."  *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) (affirming district court's decision sustaining demurrer against indictment).  Nothing in the complaint indicates that defendants' alleged refusals to accept or fulfill orders were anything other than lawful exercises of its right not to deal with plaintiffs on terms that it did not like.  *Hodges* and *Valley Products* remain applicable, and the injury alleged is not antitrust injury at all.

## CONCLUSION

Plaintiffs' opposition brief confirms what was clear from the pleadings:  that they have not alleged and cannot prove antitrust injury.  Plaintiffs therefore lack antitrust standing.  The Court should grant defendants' motion for partial judgment on the pleadings, and enter judgment for defendants on plaintiffs' antitrust claim.

Respectfully submitted,

Craig A. Raabe (ct 04116)  
Edward J. Heath (ct 20992)  
ROBINSON & COLE LLP  
280 Trumbull Street  
Hartford, CT  06103-3597  
(860) 275-8304

Andrew S. Marovitz (ct 25409)  
Britt M. Miller (ct 25411)  
MAYER, BROWN, ROWE & MAW LLP  
190 S. La Salle Street  
Chicago, IL  60603-3441  
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC 20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation, and Union Carbide Asia Pacific, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served on this date upon the following:

Robert M. Langer, Esquire
Wiggin & Dana LLP
One City Place
185 Asylum Street
Hartford, CT  06103-3402
(via hand delivery)

Richard S. Taffet, Esquire
Thelen Reid & Priest LLP
875 Third Avenue
New York, New York  10022-6225
(via overnight courier)

Suzanne Wachstock, Esquire
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(via overnight courier)

March 1, 2004

_____
Brien P. Horan



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM GLOBAL     :
SERVICES PTE. LTD., and MEGAVISA     :
SOLUTIONS (S) PTE. LTD.,     :   Civil No. 302 CV 1107 (AVC)
    :
    :
       Plaintiffs,     :
    -v-     :
    :
THE DOW CHEMICAL COMPANY, UNION     :
CARBIDE CORPORATION, UNION CARBIDE     :
ASIA PACIFIC, INC., UNION CARBIDE     :
CUSTOMER SERVICES PTE. LTD., and DOW     :
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,     :   January 12, 2004
    :
       Defendants.     :

## PLAINTIFFS' ANSWERS AND OBJECTIONS TO DEFENDANTS'
## FIRST SET OF INTERROGATORIES ON MERITS DISCOVERY

Pursuant to Federal Rules of Civil Procedure 26, 33 and 37, the Local Rules of this Court,

and the parties' Stipulated Protective Order dated December 17, 2002, Plaintiffs MM Global

Services Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and MegaVisa Solutions

(s) Pte. Ltd. ("MVS") by their undersigned attorneys, Thelen Reid & Priest LLP and Wiggin and

Dana LLP, hereby answer and object to The Dow Chemical Company's Second Set of

Interrogatories (the "Interrogatories") in the above captioned action.

## GENERAL OBJECTIONS

1.     Plaintiffs object to the Interrogatories to the extent they do not specify a time

period and to the extent they seek information outside of the relevant time period.

2.     Plaintiffs object to the Interrogatories to the extent they seek information that is

not in Plaintiffs' possession, custody or control.

NY #573216 v1

3.     Plaintiffs object to the Interrogatories to the extent they seek information constituting privileged communications, attorney work-product or trial preparation.

4.     Plaintiffs object to the Interrogatories to the extent they seek information not relevant to a claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence.

5.     Plaintiffs object to the Interrogatories to the extent they are overly broad, unduly burdensome, or oppressive.

6.     Plaintiffs object to the Interrogatories to the extent they are ambiguous, vague or otherwise incomprehensible.

7.     Plaintiffs object to the Interrogatories to the extent they seek information that should be protected pursuant to a confidentiality agreement.

8.     Plaintiffs object to the Interrogatories to the extent they seek legal conclusions.

Plaintiffs will answer the Interrogatories on the basis of information currently known and reserve the right to modify and/or supplement the Answers contained herein, including based upon information obtained from Defendants in this case.

## SPECIFIC ANSWERS AND OBJECTIONS

The General Objections detailed above apply to and are hereby incorporated by reference into each of the following Specific Answers to Defendants' Interrogatories.

## Interrogatory No. 12:

If you denied any part of The Dow Chemical Company's Request To Admit No. 1, identify each order for a Product or Products that you actually resold to end-users at a price that was set by the resale price maintenance conspiracy alleged in your lawsuit.

NY #573216 v1

2

<u>Answer No. 12:</u>

Subject to the general objections set forth above, Plaintiffs state that all indent orders placed by Plaintiffs with Defendants, which such orders involved Plantiffs' purchase of Products for resale to specific customers, were resold to end-users at a price that was set by the resale price maintenance conspiracy alleged in the First Amended Complaint.  Plaintiffs further state that approximately 5% or less of the orders placed by them were for Products purchased for resale from inventory.  Although Defendants did not expressly compel Plaintiffs to resell products from Plaintiffs' inventory at prices set by the resale price maintenance conspiracy, Plaintiffs were required to report the resale prices for such inventory sales to Defendants on a monthly basis.

Plaintiffs further state, pursuant to Fed. R. Civ. P. 33(d), that Plaintiffs have produced and/or shall produce documents that concern information responsive to Interrogatory No. 12.  Without limitation, Plaintiffs specifically refer Defendants to Plaintiffs' individual order files that have already been made available to Defendants for inspection, evidencing each Product order that was sold by Plaintiffs to end-users at a price that was set by the resale price maintenance conspiracy alleged in the First Amended Complaint.

Plaintiffs further state that knowledge of and documents concerning the subject matter of Interrogatory 12 are also in the possession of Defendants.

<u>Interrogatory No. 13:</u>

If you denied any part of The Dow Chemical Company's Request To Admit No. 2, identify every statement that you made, in words or substance, to any end-user that your resale price of the Product to that end-user was set by the resale price maintenance conspiracy alleged in your lawsuit.

NY #573216 v1

3

<u>Answer No. 13:</u>

Subject to the general objections set forth above, Plaintiffs state that for all indent orders Plaintiffs advised all end-users that the price at which Products could be sold to them was determined by Defendants Union Carbide Corporation and/or The Dow Chemical Company.

Plaintiffs further state that knowledge of the subject matter of Interrogatory 13 is also in the possession of Defendants.

Dated: New York, New York
       January 12, 2004

As to the Objections:

THELEN REID & PRIEST LLP

By:  *Richard Taffet /mc*

Richard S. Taffet (ct 10201)
875 Third Avenue
New York, New York  10022-6225
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN & DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace
185 Asylum Street
Hartford, Connecticut  06103-3402
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs MM Global Services Inc.,
MM Global Services Pte. Ltd. and MegaVisa
Solutions (s) Pte. Ltd.

NY #573216 v1

4

## CERTIFICATE OF SERVICE

I, Alyson L. Redman, hereby certify that I caused true and correct copies of the foregoing

Plaintiffs' Answers And Objections To Defendants' First Set Of Interrogatories On Merits

Discovery to be served this date via Federal Express on the following:

Craig A. Raabe, Esq.                    Andrew S. Marovitz, Esq.
Robinson & Cole LLP                     Mayer, Brown, Rowe & Maw LLP
280 Trumbull Street                     190 South LaSalle Street
Hartford, Connecticut 06103             Chicago, Illinois  60603


Dated: January 12, 2003                 _Alyson Redman_
                                        Alyson L. Redman