## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil No. 3:02 CV 1107 (AVC)<br><br><br>March 1, 2004 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *F. HOFFMANN-LA ROCHE LTD V. EMPAGRAN, S.A.***

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 05103-3497
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Britt M. Miller (ct 25411)
MAYER, BROWN, ROWE & MAW LLP
190 South La Salle Street
Chicago, Illinois 60603
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.      THIS COURT SHOULD EXERCISE ITS DISCRETION TO CONTROL ITS OWN DOCKET AND SHOULD STAY PROCEEDINGS PENDING THE SUPREME COURT'S DECISION ....................................................... 2

      A.     Jurisdiction Is Not Just Another "Issue" to Be Decided – It Is a Threshold Issue, Dispositive of This Court's Authority to Proceed with Any Adjudication on the Merits ....................................................... 3

      B.     The Possibility that *Empagran* Will Be Reversed by the Supreme Court Reinforces the Need for a Stay Here ............................................. 4

      C.     If Reversed, *Empagran* Will Effectively Dispose of This Case ................ 6

II.     DEFENDANTS HAVE MET THEIR BURDEN OF ESTABLISHING THAT A STAY IS APPROPRIATE HERE ............................................................ 7

      A.     Plaintiffs Will Not Be Prejudiced by a Stay ............................................. 7

      B.     A Stay Is Unquestionably in Defendants' Interests ................................. 7

      C.     A Stay Is Unequivocally in the Interests of the Court ............................. 8

III.    THE REQUESTED STAY IS NOT INDEFINITE OR IMPERMISSIBLE ......... 9

CONCLUSION .................................................................................................................. 10

<u>**TABLE OF AUTHORITIES**</u>

**Page**

**CASES**

*Clow v. United States Dep't of Housing & Urban Dev.*, 948 F. 2d 614 (9th Cir. 1991) .................. 4

*de Atucha v. Commodity Exch., Inc.*, 608 F. Supp. 510 (S.D.N.Y. 1985) ...................................... 6

*Den Norske Stats Oljeselskap AS v. HeereMac VOF*, 241 F.3d 420
    (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002) ........................................................ 4

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 315 F.3d 338 (D.C. Cir.),
    *cert. granted*, 124 S. Ct. 966 (2003) ...................................................................................... 5

*Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984 ) ...................................... 5

*Ex parte McCardle*, 74 U.S. [7 Wall.] 506 (1869) .......................................................................... 3

*F. Hoffmann-LaRoche, Ltd. v. Empagran, S.A.*, Case No. 03-724 .................................................. 2

*Ferromin Int'l Trade Corp. v. UCAR Int'l, Inc.*, 153 F. Supp. 2d 700 (E.D. Pa. 2001),
    *appeal docketed sub nom. BHP N.Z., Ltd. v. UCAR Int'l, Inc.*,
    Nos. 01-3329, 01-3340, 01-3991 (3d Cir. Aug. 29, 2001) ......................................................... 5

*Galavan Supplements, Ltd. v. Archer Daniels Midland Co.*, 1997 WL 732498 (N.D. Cal. Nov.
    19, 1997) ...................................................................................................................................... 5

*Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900)............................................... 3

*Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002),
    *cert. dismissed*, 124 S. Ct. 27 (2003) ..................................................................................... 5

*Mansfield, C. & L.M. Ry. v. Swan*, 111 U.S. 379 (1884)................................................................. 3

*Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836 (7th Cir. 2003) ........................... 5

*Microsoft Corp. Antitrust Litig., In re*, 127 F. Supp. 2d 702 (D. Md. 2001) .................................. 5

*Optimum, S.A. v. Legent Corp.*, 926 F. Supp. 530 (W.D. Pa. 1996).............................................. 7

*Sealed Case, In re*, 131 F.3d 208 (D.C. Cir. 1997)........................................................................ 4

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)................................................. 1, 3, 10

*United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942 (7th Cir.),
    *cert. denied*, 124 S. Ct. 533 (2003) ....................................................................................... 5

**STATUTES**

15 U.S.C. § 6a.............................................................................................................................. 6

28 U.S.C. § 1367(a) ...................................................................................................................... 2

# TABLE OF AUTHORITIES

**Page**

## OTHER AUTHORITIES

H.R. Rep. 97-686 (1982)...................................................................................................... 6

http://www.pbs.org/weta/washingtonweek/aroundthetable/greenhouse.html .................................. 9

L. Greenhouse, "Justices Agree to Tackle Antitrust Case," *N.Y. Times*, Dec. 16, 2003 ................. 9

Order, *BHP New Zealand Ltd. v. UCAR Int'l, Inc.*, Nos. 01-3329, 01-3340, 01-3991 (3d Cir. Dec. 31, 2003)............................................................................................................. 6

Robert L. Stern et al., SUPREME COURT PRACTICE § 1.3 (8th ed. 2002)........................................... 9

## INTRODUCTION

Plaintiffs' Opposition[1] is but another example of their relentless pursuit of a flawed legal theory. In opposing defendants' Motion for a Stay, plaintiffs argue yet again that their lawsuit can be brought under the nation's antitrust laws. But the question presented by this motion is not whether plaintiffs have established that they have antitrust standing to bring this action or that this Court has subject matter jurisdiction to hear it. As fully established in defendants' other Motions, plaintiffs have done neither.[2] Instead, the question is whether a district court should decide other aspects of a case while the threshold issue of subject matter jurisdiction remains unresolved. The answer to that question is plain: the Supreme Court has expressly denounced any assertion of this sort of "'hypothetical jurisdiction'" – whether it means a delay of a year or, as here, only four months. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (rejecting so-called "doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt").

There is no reason (indeed, it is wrong) for this case to speed ahead when the legal standard that governs plaintiffs' antitrust claim – and may well put them out of federal court – is to be announced in a few short months. Plaintiffs' ability to remain in this Court depends wholly

---

[1] Plaintiffs' Opposition to Defendants' Motion to Stay Proceedings Pending the United States Supreme Court's Decision in *F. Hoffmann-La Roche, Ltd v. Empagran, S.A.*, filed February 13, 2004 ("Pls. Opp.").

[2] Plaintiffs have failed to plead, much less prove, that they have suffered the "direct, substantial, and reasonably foreseeable effect" on U.S. commerce required for their federal antitrust claim to proceed. *See* Brief in Support of Defendants' Motion to Reconsider Order Denying Motions to Dismiss Federal Antitrust Claim for Lack of Subject Matter Jurisdiction, filed December 23, 2003 ("Defendants' Reconsideration Memorandum" or "Defs. Recon. Mem."), at 8-11; Defendants' Reply in Support of Motion to Reconsider Order Denying Motions to Dismiss Federal Antitrust Claim for Lack of Subject Matter Jurisdiction, filed February 20, 2004 ("Defendants' Reconsideration Reply" or "Defs. Recon. Reply"), at 6-9; Brief in Support of Defendants' Motion for Partial Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), filed December 31, 2003 ("Defendants' Summary Judgment Memorandum" or "Defs. SJ Mem."), at 6-12; Defendants' Reply in Support of Motion for Partial Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), filed March 1, 2004 ("Defendants' Summary Judgment Reply" or "Defs. SJ Reply"), at 3-8.

on their Sherman Act claim. That is the only federal claim they have (Count I); their other two claims – breach of contract (Count II) and negligent misrepresentation (Count V) – are governed by Singapore and Indian law, respectively. *See* Brief in Support of Defendants' Motion to Stay Proceedings Pending the United States Supreme Court's Decision in *F. Hoffmann-La Roche, Ltd. v. Empagran, S.A.*, filed December 31, 2003 ("Defs. Mem."), at 4; Order, dated Sept. 12, 2003, at 25, 31-32 (dismissing other Counts). Without Count I, plaintiffs never could have filed their claims in this Court because supplemental jurisdiction under 28 U.S.C. § 1367(a) would have been lacking.

Because the Supreme Court is poised in *F. Hoffmann-LaRoche, Ltd. v. Empagran, S.A.*, Case No. 03-724, to rule on the underlying jurisdictional issue, it would be inappropriate for this Court to proceed with substantive adjudication of the case – including overseeing discovery – until the Supreme Court decides the jurisdictional and standing issues presented to it. Defendants have not asked this Court for a stay pending a ruling on some narrow, esoteric element of a Sherman Act violation. Instead, the Supreme Court's grant of certiorari has called into question the very power of this Court to hear this case. Defendants' Motion should be granted.

## ARGUMENT

**I.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO CONTROL ITS OWN DOCKET AND SHOULD STAY PROCEEDINGS PENDING THE SUPREME COURT'S DECISION.**

Plaintiffs do not quarrel with the well-settled proposition that it is within this Court's power to stay these proceedings pending the Supreme Court's decision. *See* Pls. Opp. at 5-7. Rather, plaintiffs attempt to convince the Court that a stay here is inappropriate because, they claim, (a) defendants have not borne their burden of demonstrating the necessity of a stay, *id.*; (b) defendants "presume" that the Supreme Court will reverse *Empagran, id.* at 7-8; and (c)

2

*Empagran* will not be dispositive of this case, *id.* at 8-11.  Plaintiffs are wrong in each respect.

>   **A.      Jurisdiction Is Not Just Another "Issue" to Be Decided – It Is a**
>   **Threshold Issue, Dispositive of This Court's Authority to Proceed**
>   **with Any Adjudication on the Merits.**

The theme that runs throughout much of plaintiffs' Opposition is that it is routine for

courts, in furtherance of judicial efficiency and other laudable goals, to decline to stay

proceedings pending an appellate court's ruling on a controlling issue of law.  *E.g.*, Pls. Opp. at

5-7.  Thus, plaintiffs argue, this Court should push on, regardless of the Supreme Court's review,

and conduct various proceedings (including managing the parties' current discovery disputes),

because "[o]nly in rare circumstances will a litigant in one case be compelled to stand aside

while a litigant in another settles the rule of law."  *Id.* at 6.  What plaintiffs' argument overlooks

is that this case presents the very circumstances that are required for a stay.

Subject matter jurisdiction is not just "another issue" to be decided.  It is not merely an

issue that can be set aside and ruled on independently of the remainder of the case.  Rather, it is a

threshold issue – one that is "inflexible and without exception." *Mansfield, C. & L.M. Ry. v.

Swan*, 111 U.S. 379, 382 (1884).  As the Supreme Court explained:

>   "the first and fundamental question is that of jurisdiction, first, of this court, and
>   then of the court from which the record comes.  This question the court is bound
>   to ask and answer for itself, even when not otherwise suggested, and without
>   respect to the relation of the parties to it."

*Steel Co.*, 523 U.S. at 94 (quoting *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449,

453 (1900)).  Further:

>   "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is
>   power to declare the law, and when it ceases to exist, the only function remaining
>   to the court is that of announcing the fact and dismissing the cause."

*Id.* (quoting *Ex parte McCardle,* 74 U.S. [7 Wall.] 506, 514 (1869)).  As Justice Scalia noted,

there are over "two centuries of jurisprudence affirming the necessity of determining jurisdiction

3

before proceeding to the merits." *Id.* at 98 (citing *Clow v. United States Dep't of Housing & Urban Dev.*, 948 F. 2d 614, 627 (9th Cir. 1991) (O'Scannlain, J., dissenting)).

Given the gravity of the issue before the Supreme Court and the impact its ruling will have on the jurisdictional and standing issues presented by these proceedings (regardless how it rules), a stay pending the Supreme Court's determination is the only judicious course. As the D.C. Circuit has held, "[i]f [a federal court is] without subject-matter jurisdiction over [a] case ostensibly before [it], then any pronouncement on any issue, even though that issue would itself be otherwise appealable, becomes a violation of [that court's] Article III limitations." *In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997). In these circumstances, the necessity of the requested stay is obvious and has been amply demonstrated.

**B.     The Possibility that *Empagran* Will Be Reversed by the Supreme Court Reinforces the Need for a Stay Here.**

Plaintiffs implicitly concede, as they must, that the Supreme Court might rule against the *Empagran* plaintiffs and decide that U.S. courts have no jurisdiction over claims like plaintiffs' and/or that plaintiffs lack standing to bring their claims in U.S. courts. *See* Pls. Opp. at 8. Still, plaintiffs argue that given the supposed "weight" of circuit decisions and because "it is far from a certainty that the Supreme Court will reverse the D.C. Circuit in *Empagran*," a denial of the stay is warranted. *Id.*

As an initial matter, in light of the grant of *certiorari*, it makes little difference where the "weight" of lower court authority lies. The Supreme Court is, of course, not bound by any of those decisions, and once it rules in *Empagran,* any circuit court opinion to the contrary is rendered meaningless. Plaintiffs are, in any event, incorrect in arguing that the "weight" of circuit authority is against defendants' position. Pls. Opp. at 7-8. The circuits are split on the issue, with the Fifth Circuit bearing out defendants' argument, *see Den Norske Stats Oljeselskap*

4

*AS v. HeereMac VOF,* 241 F.3d 420, 428 (5th Cir. 2001) (holding that "plain language" of

FTAIA precludes claims for overseas injury that "arises from effects in a non-domestic market"),

*cert. denied,* 534 U.S. 1127 (2002), and the Second Circuit lending support to plaintiffs'

interpretation of the second subparagraph of the FTAIA, *see Kruman v. Christie's Int'l PLC,* 284

F.3d 384, 397-98 (2d Cir. 2002) (allowing Sherman Act claims regardless of whether plaintiff

suffered injury as a result of violative conduct in domestic commerce), *cert. dismissed,* 124 S. Ct.

27 (2003).  The D.C. Circuit in *Empagran* adopted a similar approach, ruling that the FTAIA

permits foreign plaintiffs "who are injured solely by [some] conduct's effect on foreign

commerce" to sue under the Sherman Act, so long as the purportedly anticompetitive conduct

also affected "someone" (not necessarily the plaintiff) in the U.S. *Empagran S.A. v. F.*

*Hoffmann-LaRoche, Ltd.,* 315 F.3d 338, 341 (D.C. Cir.), *cert. granted,* 124 S. Ct. 966 (2003).[3]

Moreover, assuming plaintiffs are correct on their second point – that the outcome of the

Supreme Court's decision is quite "uncertain" – then why are plaintiffs so unwilling to wait four

months for a "certain" answer from the High Court, instead of embarking upon a path that may

result in the improper exercise of federal judicial power?  The Third Circuit recently declined to

run precisely that risk, suspending its disposition of an appeal from an Eastern District of

Pennsylvania decision aligned with *Heeremac* on the very basis advanced here – namely, the

---

[3]    Contrary to plaintiffs' suggestion, the Seventh Circuit did not, as plaintiffs suggest, adopt *Kruman* in its *Metallgesellshaft* opinion. Pls. Opp. at 8.  In fact, the Seventh Circuit declined to decide the issue, noting only that its decision in *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942 (7th Cir.), *cert. denied,* 124 S. Ct. 533 (2003), "appear[ed] to point in the direction of the approach taken by the D.C. and Second Circuits." *Metallgesellschaft AG v. Sumitomo Corp. of Am.,* 325 F.3d 836, 840 (7th Cir. 2003).  Notably missing from plaintiffs' discussion of "relevant" precedent is any mention of the myriad of district court decisions from the circuits that have sided with defendants' argument here. *See, e.g., Ferromin Int'l Trade Corp. v. UCAR Int'l, Inc.,* 153 F. Supp. 2d 700, 704-05 (E.D. Pa. 2001) (same), *appeal docketed sub nom. BHP N.Z., Ltd. v. UCAR Int'l, Inc.,* Nos. 01-3329, 01-3340, 01-3991 (3d Cir. Aug. 29, 2001); *Eurim-Pharm GmbH v. Pfizer Inc.,* 593 F. Supp. 1102, 1107 (S.D.N.Y. 1984 ) (same); *see also In re Microsoft Corp. Antitrust Litig.,* 127 F. Supp. 2d 702, 716 (D. Md. 2001) (dismissing for lack of standing); *Galavan Supplements, Ltd. v. Archer Daniels Midland Co.,* 1997 WL

Supreme Court's pending ruling in *Empagran*.  *See* Order, *BHP New Zealand Ltd. v. UCAR Int'l, Inc.*, Nos. 01-3329, 01-3340, 01-3991 (3d Cir. Dec. 31, 2003) (attached hereto as Exhibit A).  It is thus plaintiffs' expressed "uncertainty" as to the result and its potential ramifications that counsel in favor of a stay.  Defendants have "presumed" nothing as to outcome, nor do they need to in order to secure a stay.

### C.    If Reversed, *Empagran* Will Effectively Dispose of This Case.

In arguing that their claims will survive an *Empagran* reversal (and hence that no stay is warranted here), plaintiffs improperly focus on the locus of the alleged *conduct* rather than the locus of the *effects* of that conduct, Pls. Opp. at 10-11, and complain, for the first time, that their injuries "include being deprived of the ability to compete independently *in the United States* in the purchase of defendants' products," *id.* at 4-5.  *These* facts, plaintiffs argue, are enough to "satisfy the standards imposed by the FTAIA."  *Id.* at 10.  But plaintiffs' "facts" are irrelevant and their reliance on the Seventh Circuit's decision in *Metallgesellschaft*, 325 F.3d 836, is misplaced.  As discussed in Defendants' Reconsideration Reply (at 2), "it is the situs of the effects, as opposed to the conduct, that determines whether United States antitrust law applies" (quoting H.R. Rep. 97-686, at 5 (1982)).  Similarly, as detailed in Defendants' Summary Judgment Reply (at 3-5), plaintiffs' argument flies in the face of their admission that their sales, and hence the effect of defendants' alleged conduct on those sales, occurred *only* in India. [4]

---

732498, at *4 (N.D. Cal. Nov. 19, 1997) (same); *de Atucha v. Commodity Exch., Inc.*, 608 F. Supp. 510, 518 (S.D.N.Y. 1985) (same).

[4]    Even if plaintiffs could establish the requisite "effects" under the FTAIA (which they cannot – *see generally* Defs. Recon. Mem. at 7-12; Defs. Recon. Reply at 6-9), plaintiffs' identification of MM Global Services, Inc. as the only U.S. plaintiff who was allegedly "directly injured by the United States effects" of defendants' actions (Pls. Opp. at 1), effectively seals the jurisdictional fate of the other two plaintiffs, who cannot piggyback their foreign claims on alleged domestic injuries to MM Global Services, Inc. *See* 15 U.S.C. § 6a (when jurisdiction over a Sherman Act claim rests on a claimed "effect ... on *export* trade or export commerce ... of a person engaged in such trade or commerce in the United States," the Sherman Act "shall apply to such conduct *only for injury to*

## II.    DEFENDANTS HAVE MET THEIR BURDEN OF ESTABLISHING THAT A STAY IS APPROPRIATE HERE.

There is no dispute that five factors must be balanced by this Court in determining whether or not to issue the requested stay:  prejudice to plaintiffs, prejudice to defendants, the interests of the court, interests of third parties, and the interests of the public.  *See* Defs. Mem. at 8.  Plaintiffs do not take serious issue with defendants' showing with respect to the last two elements – interests of third parties and the public.  Rather, they quarrel with the first three elements and disagree as to the outcome of the balancing test.  An objective balancing of the relevant factors, however, tips the scales decisively in favor of a stay.

### A.    Plaintiffs Will Not Be Prejudiced by a Stay.

Defendants established in their opening brief (at 9) that plaintiffs will suffer no real hardship if required to wait for the Supreme Court's anticipated June ruling, and plaintiffs do not make much of a case to the contrary.  *See* Pls. Opp. at 15-16.  Because this matter has been pending for almost two years, plaintiffs say, it should proceed during the pendency of the Supreme Court's review because "prejudice to plaintiffs is practically inevitable."  *Id.* at 15.  In so arguing, however, plaintiffs never explain how waiting four months – especially given the gravity of the issue on review – impairs their position or how such a short delay will realistically result in "loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party," or any of the other horribles paraded by plaintiffs.  *Id.*

### B.    A Stay Is Unquestionably in Defendants' Interests.

It is simply false that proceeding with this case does not inflict "any hardship or inequity"

---

*export business in the United States*") (emphasis added); *see also Optimum, S.A. v. Legent Corp.,* 926 F. Supp. 530, 532 (W.D. Pa. 1996) ("a foreign company cannot demonstrate the domestic injury requirement by 'piggy-backing' onto the injury of a United States exporter").

on defendants. Pls. Opp. at 11. First, as demonstrated above (at 6), a reversal of *Empagran* will mandate the dismissal of plaintiffs' antitrust claim. Granting a stay protects defendants from being subjected to the Court's authority (and its substantive decisions) on Count I of plaintiffs' Complaint before the Supreme Court definitively decides whether federal jurisdiction exists. Second, plaintiffs cannot credibly argue that forcing defendants to produce documents that may be located around the world, and that relate to the sale of "Products" to *any end-user around the world*, is not a hardship on defendants, especially where the Court's power to order such discovery is in question. *See* Pls. Opp. at 11-12; *see also* Defs. Mem. at 10 (detailing the far-flung discovery that plaintiffs are seeking in an effort to shore up their FTAIA claims). Although defendants have produced relevant records of those affiliates and subsidiaries who had interactions with plaintiffs and that production has been substantial, Pls. Opp. at 12, plaintiffs' "incremental merits discovery," *id.*, is not limited to those affiliates and subsidiaries, nor is it limited to end-users who had relationships with plaintiffs. *See* Defs. Mem. at 10. Rather, plaintiffs have made unbounded requests including demanding the production of "all documents" related to the pricing of all "Products" to "end-users." *Id.* All of this may prove not only unnecessary, but also an unlawful exercise of judicial power in the event that the Supreme Court reverses.

## C.   A Stay Is Unequivocally in the Interests of the Court.

Plaintiffs proclaim (at 16) that "considerations of judicial economy compel denial of the stay motion," but then fail to discuss the issue at all. Rather than addressing the numerous points raised by defendants in their opening brief (at 11-12) which affirmatively demonstrate that a stay is in the interests of judicial economy, plaintiffs' baldly contend that "a stay here would only prevent the efficient resolution of this matter." Pls. Opp. at 16. Plaintiffs never explain why this Court, as a court of limited jurisdiction, should expend its own resources on claims that, by June,

the Supreme Court may decide cannot be brought in U.S. courts.  Nor do plaintiffs specifically

address why the Court should engage in all of the discovery and the briefing of discovery

motions that would become moot if the Supreme Court reverses *Empagran*.  Such a waste of

monies and effort can hardly be considered "efficient" or otherwise in the Court's interests.

## III.    THE REQUESTED STAY IS NOT INDEFINITE OR IMPERMISSIBLE.

Plaintiffs devote three pages of their Opposition arguing that because the Supreme Court

has yet to definitively set an argument date in *Empagran*, defendants' request for a stay should

be denied.  Pls. Opp. at 12-15.  Plaintiffs' argument is meritless.

Plaintiffs have offered nothing – no facts at all – to contradict *New York Times* Supreme

Court correspondent Linda Greenhouse's report of an April argument and a June decision.[5]  *See,*

*e.g.,* L. Greenhouse, "Justices Agree to Tackle Antitrust Case," *N.Y. Times*, Dec. 16, 2003, at C1

(attached as Exhibit E to Defs. Mem.).  It is a well-established norm of Supreme Court practice

that "the Court will not begin its summer recess until every case that has been orally argued

during the regular Term time has been resolved by written opinion or order."  Robert L. Stern et

al., SUPREME COURT PRACTICE § 1.3, at 9-10 (8th ed. 2002); *see also id.* at 14 ("After the last

cases are argued in April, the Court continues in session until all cases have been disposed of by

written opinions.").  In that the *Empagran* briefing schedule has been set and oral argument will

likely occur at the end of April – and thus final disposition in June – plaintiffs' criticism of an

"indefinite" stay, Pls. Opp. at 14, is based on nothing more than conjecture.

---

[5]     Ms. Greenhouse has been covering the Supreme Court for the New York Times since 1978.  *See*
http://www.pbs.org/weta/washingtonweek/aroundthetable/greenhouse.html.

## CONCLUSION

"The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co.*, 523 U.S. at 94-95. Without subject matter jurisdiction – without the power to hear plaintiffs' claims – this Court has no authority to "continue" proceeding with anything relating to plaintiffs' federal antitrust claim. *Id.* at 101.

Defendants' Motion for a Stay should be granted.


Dated: March 1, 2004                               Respectfully submitted,


Craig A. Raabe (ct 04116)                     Andrew S. Marovitz (ct 25409)
Edward J. Heath (ct 20992)                    Britt M. Miller (ct 25411)
ROBINSON & COLE LLP                           MAYER, BROWN, ROWE & MAW LLP
280 Trumbull Street                           190 South La Salle Street
Hartford, CT  05103-3497                      Chicago, Illinois  60603
(860) 275-8304                                (312) 782-0600

                                              Christopher J. Kelly (ct 25410)
                                              MAYER, BROWN, ROWE & MAW LLP
                                              1909 K Street, N.W.
                                              Washington, D.C.  20006-1157
                                              (202) 263-3000


*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

10

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served on this date upon the following:

Robert M. Langer, Esquire
Wiggin & Dana LLP
One City Place
185 Asylum Street
Hartford, CT  06103-3402
(via hand delivery)

Richard S. Taffet, Esquire
Thelen Reid & Priest LLP
875 Third Avenue
New York, New York  10022-6225
(via overnight courier)

Suzanne Wachstock, Esquire
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(via overnight courier)

March 1, 2004

_____
Brien P. Horan

Exhibit
A

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Nos. 01-3329, 01-3340 & 01-3991

BHP NEW ZEALAND LTD.;
NEW BHP STEEL PTY LTD.;
BHP STEEL (JLA) PTY LTD..;
BROKEN HILL PROPRIETARY COMPANY, LTD.,
Appellants

v.

UCAR INTERNATIONAL, INC.;
UCAR CARBON COMPANY, INC.;
SGL CARBON A.G.;
TOKAI CARBON CO., LTD.;
TOKAI CARBON U.S.A. INC.;
THE CARBIDE/GRAPHITE GROUP, INC.;
NIPPON CARBON CO., LTD.;
SEC CORPORATION

Before: SLOVITER, NYGAARD, and ALARCÓN*, Circuit Judges

ORDER

After consideration of the responses of the parties, it is hereby ordered that disposition of this case will await the Supreme Court's decision in F. Hoffman-LaRoche, et al. v. Empagran S.A., et al., No. 03-724; in which certiorari was granted on December 15, 2003.

By the Court,

_/s/ Dolores K. Sloviter_
Circuit Judge

Date: December 31, 2003
cc: See Page Two

---

* Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.