# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL    :
SERVICES PTE. LTD., and MEGA VISA    :
SOLUTIONS (S) PTE. LTD.,    :
    :
Plaintiffs,    :
    :    Civil No. 3:02 CV 1107 (AVC)
v.    :
    :
THE DOW CHEMICAL COMPANY, UNION    :
CARBIDE CORPORATION, UNION CARBIDE ASIA    :
PACIFIC, INC., UNION CARBIDE CUSTOMER    :
SERVICES PTE. LTD., and DOW CHEMICAL    :
PACIFIC (SINGAPORE) PTE. LTD.,    :
    :
Defendants.    :    March 31, 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR § 1292(b) CERTIFICATION OF ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
MAYER, BROWN, ROWE & MAW LLP
190 S. LaSalle Street
Chicago, IL 60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC 20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION AND BACKGROUND ............................................................... 1

ARGUMENT .......................................................................................................... 3

    A.   The Court's Order Involves A "Controlling Question Of Law"........................ 4

    B.   There Is "Substantial Ground For Difference Of Opinion" Over This
         Controlling Question Of Law ....................................................................... 5

    C.   An Immediate Appeal From This Court's Order May Materially Advance
         The Ultimate Termination Of This Litigation .............................................. 10

CONCLUSION....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Carnivale Bag Co. v. Slide-Rite Mfg. Corp.*, 1975 WL 958
(S.D.N.Y. Oct. 7, 1975) ............................................................................. 4, 6, 11

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786
(2d Cir. 1980)............................................................................................ 5

*EDO Corp. v. Newark Ins. Co.*, 1996 WL 684395 (D. Conn. May 22, 1996)......................... 4, 10

*Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984) ................................ 6, 7

*Franceskin v. Credit Suisse*, 214 F.3d 253 (2d Cir. 2000)................................................ 5

*Gryga v. Ganzman*, 1998 WL 229127 (E.D.N.Y. Apr. 7, 1998) ........................................... 10

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993)............................................. 8

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C.
1987) ..................................................................................................... 6

*International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388
(2d Cir. 1989)........................................................................................... 5

*Jensen v. Times-Mirror*, 647 F. Supp. 1525 (D. Conn. 1986) ........................................... 11

*John & Vincent Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162 (N.D.N.Y. 2001) ....................... 4, 9

*Karaha Bodas Co. v. Pertamina*, 313 F.3d 70 (2d Cir. 2002) ........................................... 5

*Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21 (2d Cir. 1990)....................................... 4, 5, 10

*Kontrick v. Ryan*, 124 S. Ct. 906 (2004) ............................................................... 10

*Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002)........................................... 8, 9

*Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920 (E.D.N.Y. 1985).......................... 6

*Malik v. Meissner*, 82 F.3d 560 (2d Cir. 1996)......................................................... 8

*McElderry v. Cathay Pac. Airways, Ltd.*, 678 F. Supp. 1071 (S.D.N.Y. 1988) ........................... 6

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988)........................................... 6

*Movielab, Inc. v. Berkey Photo, Inc.*, 1971 WL 242 (S.D.N.Y. Jan. 28, 1971)........................ 4, 10

## TABLE OF AUTHORITIES-Continued

**Page**

*New York v. Westwood-Squibb Pharmaceutical Co.*, 62 F. Supp. 2d 1035 (W.D.N.Y. 1999) ................................................................................ 11

*Padilla v. Rumsfeld*, 256 F. Supp. 2d 218 (S.D.N.Y. 2003) ......................... 5

*S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.*, 1997 WL 86413 (D. Del. 1997) ............................................................................ 6

*SCM Corp. v. Xerox Corp.*, 474 F. Supp. 589 (D. Conn. 1979) ................... 11

*Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711 (S.D.N.Y. 1995) .......... 5

*Sniado v. Bank Austria AG*, 352 F.3d 73 (2d Cir. 2003) ............................ 9

*St. Cyr v. INS*, 229 F.3d 406 (2d Cir. 2000) ........................................... 4

**Statutes and Rules**

15 U.S.C. § 1 ................................................................................... 2

15 U.S.C. § 6a(1) ...................................................................... 2, 8, 9

28 U.S.C. § 1292(b) ............................................................. 3, 5, 10, 12

28 U.S.C. § 1331(a)(3) ....................................................................... 5

Fed. R. App. P. 5(a)(3) ....................................................................... 4

**Other Authorities**

H.R. Rep. No. 97-686 (1982) ............................................................... 9

S. Rep. No. 85-2434 (1958) ............................................................... 11

U.S. Dep't of Justice and Federal Trade Comm'n, *Antitrust Enforcement Guidelines for International Operations*, 4 Trade Reg. Rep. (CCH) ¶ 13,107 (1995) ............................................................................................ 8

## INTRODUCTION AND BACKGROUND

Plaintiffs distributed products purchased from Singapore-based subsidiaries and Asian affiliates of defendant Union Carbide Corporation ("Union Carbide") to customers in India.[1] After Union Carbide merged with a subsidiary of defendant The Dow Chemical Company ("Dow"), the scope of plaintiffs' distribution relationship was reduced by non-party Dow India. Upset with this development, plaintiffs terminated their relationships with Dow India and former defendant Dow Singapore and immediately began soliciting distribution business from their competitors in the region. Meanwhile, Dow Singapore and Dow India sought collection from plaintiffs of over $1 million in unpaid invoices. The parties' relationship continued to sour, and efforts to resolve differences through the usual channels in Singapore and India failed. At that point, plaintiffs decided to transport their Asian business dispute to a United States court and seek to multiply potential damages by invoking the U.S. antitrust laws.

In June 2002, plaintiffs filed this lawsuit, alleging for the first time that for over nine years beginning in 1993, Dow and Union Carbide, the parent companies of Union Carbide Asia Pacific ("UCAP"), Union Carbide Customer Services ("UCCS"), and Dow Singapore, coerced plaintiffs into participating in a conspiracy to maintain resale prices in India.[2] In particular, plaintiffs contend that defendants refused to accept their orders, or canceled accepted orders, if

---

[1]    Contrary to the assumption in the March 18 Order (at 3), none of UCAP, UCCS, or Dow Singapore were created or established solely to do business with plaintiffs. Rather, each was a regional operating company serving a number of countries in the Asia Pacific rim, and each had an expansive customer base independent of plaintiffs. *Plaintiffs* were "established for the specific purpose of promoting and selling the Products in India." First Am. Cmplt. ¶ 7 (referencing plaintiffs' parent Mega Visa Marketing Solutions Ltd.).

[2]    UCAP, UCCS, and Dow Singapore were added as defendants in this suit after the parent companies had fully briefed three motions to dismiss and were awaiting an order from the court. UCCS and Dow Singapore were dismissed for lack of personal jurisdiction.

the prospective resale prices to customers in India were below specified levels. According to plaintiffs, defendants sought to maintain prices in India above those levels in part because they wished to prevent price erosion in the United States and other countries. Plaintiffs have not alleged that defendants actually agreed to restrain prices in the United States or that prices in the United States were in fact restrained. The remaining causes of action in the amended complaint allege violation of the Sherman Antitrust Act, 15 U.S.C. § 1, breach of contract, and negligent misrepresentation.

Defendants moved to dismiss the antitrust claim for lack of subject matter jurisdiction. Defendants argued that the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a(1), precludes jurisdiction over Sherman Act claims absent "direct, substantial, and reasonably foreseeable" effects on United States commerce and that the allegedly restrained resale prices in India produced no such effects. The Court denied defendants' motion on September 12, 2003. Defendants filed a motion to certify that order for interlocutory appeal. The Court denied that motion without prejudice to its refiling after defendants filed a motion for reconsideration. The Court granted defendants' motion for reconsideration on March 18, 2004 but again denied defendants' motion to dismiss.

In its March 18, 2004 order, the Court recognized that its initial decision denying defendants' motion to dismiss "misinterpreted" Second Circuit precedent by failing to require plaintiffs to show "direct, substantial, and reasonably foreseeable" effects on domestic U.S. commerce. Mar. 18 Order at 10. The Court also recognized that its initial decision should not have presumed jurisdiction based on plaintiffs' allegation of a *per se* violation. *Id.* at 11. Nevertheless, the Court found the FTAIA's effects test satisfied by plaintiffs' allegation of "a price fixing conspiracy for product sales in India that was intended to prevent erosion to prices

2

and, in this way, maintain artificially high prices for products that Union Carbide and Dow sold to end-users in the United States." *Id.* at 11-12.

The primary question addressed in the Court's order – whether price restraints in a foreign country allegedly intended to prevent price erosion in the United States constitute a "direct" effect on U.S. commerce within the meaning of the FTAIA – is a controlling question of law because resolving it in defendants' favor would terminate this litigation.    There are substantial grounds for reaching a different answer to that question, as many courts have on analogous facts and as this Court recognized by calling this a "close" question.  Mar. 18 Order at 11.  An immediate appeal may materially advance the ultimate termination of this litigation, not only because a ruling in defendants' favor would require dismissal and avoid an unnecessary waste of the Court's and parties' resources, but also because a ruling in plaintiffs' favor would prevent lingering uncertainty over the meaning of "direct" effects from clouding this litigation as it moves forward.

## ARGUMENT

Three requirements must be satisfied for an order to be certified for interlocutory appeal. An order is appropriately certified when it (i) "involves a controlling question of law," (ii) "as to which there is substantial ground for difference of opinion," and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."    28 U.S.C. § 1292(b).  An interlocutory appeal of this Court's March 18, 2004 order satisfies those criteria. Accordingly, the Court should amend its March 18, 2004 order to certify it for interlocutory appeal.[3]

_____

[3]    "If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend

(cont'd)

**A.    The Court's Order Involves A "Controlling Question Of Law."**

The first requirement for interlocutory appeal is that an order involve a "controlling question of law." The question addressed by this Court's order is whether plaintiffs' antitrust claim satisfies the jurisdictional requirements of the FTAIA. That is plainly a question of law. *See St. Cyr v. INS*, 229 F.3d 406, 409 (2d Cir. 2000) (subject matter jurisdiction is "a question of law"). That threshold legal question also is "controlling."

A question of law is controlling "if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); accord *EDO Corp. v. Newark Ins. Co.*, 1996 WL 684395, at *3 (D. Conn. May 22, 1996). Orders involving subject matter jurisdiction plainly satisfy this standard, as the Second Circuit stated in *Klinghoffer*, 921 F.2d at 24. Other courts in this Circuit also have recognized the controlling nature of threshold justiciability questions and certified orders involving them. *E.g., John & Vincent Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162, 175 (N.D.N.Y. 2001) (certifying order involving standing because "its resolution, either way, materially affects the outcome of the case"); *Carnivale Bag Co. v. Slide-Rite Mfg. Corp.*, 1975 WL 958, at *1 (S.D.N.Y. Oct. 7, 1975) (whether remote purchasers had standing to challenge alleged price-fixing was controlling issue of law because "the action would have ceased had the court found the applicable law to have been otherwise"); *Movielab, Inc. v. Berkey Photo, Inc.*, 1971 WL 242, at *1 (S.D.N.Y. Jan. 28, 1971) ("It cannot seriously be disputed that the question of our subject matter jurisdiction presents a controlling question of law").

---

(… cont'd)

its order, either on its own or in response to a party's motion, to include the required permission or statement." Fed. R. App. P. 5(a)(3).

4

Accordingly, the jurisdictional question addressed in this Court's order — whether plaintiffs' allegations satisfy the FTAIA's "direct, substantial, and reasonably foreseeable" effects test — is a controlling question of law.  In particular, plaintiffs' antitrust claim raises the question of what constitutes a "direct" effect for purposes of establishing jurisdiction under the FTAIA.  Do price restraints imposed only in a foreign country "directly" impair competition in the United States based on the defendants' alleged intent that prices in the U.S. not erode?  A negative answer to that question on appeal would terminate this action for lack of subject matter jurisdiction, making it a controlling question.[4]

**B.      There Is "Substantial Ground For Difference Of Opinion" Over This Controlling Question Of Law.**

The second requirement for interlocutory appeal is that there be a "substantial ground for difference of opinion" over the controlling question of law.  The Second Circuit standard provides that it is enough if "the issues are difficult and of first impression."  *Klinghoffer*, 921 F.2d at 25; accord *Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711, 718 (S.D.N.Y. 1995). See also *Padilla v. Rumsfeld*, 256 F. Supp. 2d 218, 223 (S.D.N.Y. 2003) (certifying order under § 1292(b) where circuit law was "not entirely settled and has not been applied to facts like those present here"); *Karaha Bodas Co. v. Pertamina*, 313 F.3d 70, 81 (2d Cir. 2002) (accepting interlocutory appeal involving interaction of federal and foreign law).

---

[4]       Reversal on appeal would require dismissal not only of plaintiffs' antitrust claim but of their state-law claims as well.  Diversity jurisdiction is not available because there are alien parties on both sides of this litigation, and "the presence of aliens on two sides of a case destroys diversity jurisdiction."  *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980); accord *Franceskin v. Credit Suisse*, 214 F.3d 253, 257 (2d Cir. 2000); *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989). Plaintiffs cannot invoke 28 U.S.C. § 1331(a)(3), which provides for diversity jurisdiction if the action is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," because the *only* state-law claimants are Singapore companies.  MMGS, a Texas corporation, no longer existed at the time of the conduct underlying the state-law claims. See First Am. Cmplt. ¶¶ 25, 33-35, 38-43.

This Court recognized that the question whether the alleged price restraints in India had direct effects on U.S. commerce is a difficult one, stating that "the parties present a close contest." Mar. 18 Order at 11. Furthermore, defendants' briefs on reconsideration cited numerous cases finding no jurisdiction on analogous facts due to failure to satisfy the FTAIA's effects test. For example, the plaintiff in *Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102, 1104-06 (S.D.N.Y. 1984), alleged that Pfizer's prescribed resale prices caused the plaintiff, a foreign distributor, to lose sales in an overseas market and inflated prices in the U.S. for the same product. The court dismissed the complaint for lack of jurisdiction, explaining that a mere "spillover effect" of that type in the U.S. was insufficiently "direct" to provide Sherman Act jurisdiction. *Id.* at 1106-07. Indeed, the court noted, this was "precisely the type of case Congress sought to eliminate from United States antitrust jurisdiction when it amended the Sherman Act in 1982." *Id.* at 1107. See also *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 813 (9th Cir. 1988); *McElderry v. Cathay Pac. Airways, Ltd.*, 678 F. Supp. 1071, 1078 (S.D.N.Y. 1988); *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920, 925 (E.D.N.Y. 1985); *S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.*, 1997 WL 86413,*8-9 (D. Del. 1997); *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 499-500 (M.D.N.C. 1987). In each of these cases, an antitrust claimant in a vertical relationship with the defendant alleged conduct harming an overseas market with only conclusory assertions of anticompetitive effects on the domestic U.S. market. The dismissals of the antitrust claims in these cases provide substantial ground for difference of opinion as to whether this Court properly construed the FTAIA's effects test. See *Carnivale Bag*, 1975 WL 958, at *2 (division among courts on threshold issue in price-fixing cases "constitutes 'substantial ground for difference of opinion'").

6

Differing views are particularly likely because this Court found *intended* rather than *actual* effects to satisfy the FTAIA's "direct" effect requirement. As the Court summarized plaintiffs' claim, they alleged "a price fixing conspiracy for product sales in India that was *intended* to prevent erosion to prices and, in this way, maintain artificially high prices for products that Union Carbide and Dow sold to end-users in the United States." Mar. 18 Order at 11-12 (emphasis added). Further, according to the Court, the record supports the conclusion that Union Carbide was "concerned with" the "probability" of pricing effects on the U.S. *Id.* at 13.

The Court did not explain why defendants' intent or concern would constitute a "direct" effect on U.S. commerce. The Court referenced e-mails and correspondence in which defendants refused plaintiffs' orders for products to sell *in India*, directed plaintiffs to move prices up *in India*, "examined competitive pricing" during world strategy meetings (conduct common to all global sellers), and "considered" domestic prices before *setting prices in India*. Mar. 18 Order at 13. The Court failed to address defendants' showing that none of these documents says *anything* about actual price effects in the U.S. See Def. Reply Supporting Reconsideration Motion at 8-9. Plaintiffs might contend that this record suggests a *hoped*-for price effect in the U.S. But a hope is not an actual effect and, in any event, would be connected only indirectly to the alleged resale price maintenance in India. As in *Eurim-Pharm*, 593 F. Supp. at 1107, "the link between defendants' conduct abroad and the price [in] the United States is far from apparent."

Although the Court recognized that plaintiffs' allegations arguably "amount to little more than activities directed at a foreign market with domestic spillover effects – effects that are not direct" – it opined that "even spillover effects that cause artificially inflated prices can rise to direct and substantial over time." Mar. 18 Order at 12. There is substantial ground for believing that the Second Circuit would take a different view, especially in light of the Supreme Court's

statement that Sherman Act jurisdiction requires conduct that "did *in fact* produce some substantial effect in the United States" (*Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993)); the FTAIA's language limiting Sherman Act jurisdiction to conduct that "*has* a direct, substantial, and reasonably foreseeable effect" on U.S. commerce (15 U.S.C. § 6a(1)); the view of federal antitrust enforcers that it is insufficient for Sherman Act jurisdiction that U.S. prices "may ultimately be affected" by a cartel agreement to restrain prices abroad (U.S. Dep't of Justice and Federal Trade Comm'n, *Antitrust Enforcement Guidelines for International Operations*, 4 Trade Reg. Rep. (CCH) ¶ 13,107 (1995)); and the Second Circuit's own prior ruling that the direct effect requirement prevents "conduct that merely has an *ancillary* effect on our markets from being actionable under our antitrust laws" (*Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 402 (2d Cir. 2002)).

To be sure, the Amended Complaint contains a boilerplate allegation that "competition in the sale and resale of [Union Carbide] products in and from the United States was improperly diminished and restrained [as] a direct and proximate result of defendants fixing of minimum resale prices and other terms of sale." Quoted in Mar. 18 Order at 11. But "conclusory allegations" are insufficient to meet plaintiffs' jurisdictional burden. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). The Amended Complaint does not allege *any* price restraints in the U.S., *any* relevant products sales in the U.S., or *any* harm to consumers in the U.S. In fact, plaintiffs have stipulated that they sold no relevant products in the U.S. See Def. Motion for Reconsideration, Exs. C and D. If plaintiffs *could* have alleged price restraints in the U.S., they plainly *would* have done so just as they did with respect to India.

There also is substantial ground for a differing opinion as to this Court's focus on defendants' alleged *conduct* rather than the *effects* of that conduct. According to the Court, the

nature of the conduct "necessarily informs, though indirectly, the issue of whether the effects of such conduct are direct, substantial, and reasonably foreseeable for jurisdiction under FTAIA § 6a(1)." Mar. 18 Order at 12. But "it is the situs of the effects, as opposed to the conduct, that determines whether United States antitrust law applies." H.R. Rep. 97-686, at 5 (1982); accord *Kruman*, 284 F.3d at 395. This Court cited the Second Circuit's *Sniado* opinion for the proposition that courts "must adopt a broad view of the proscribed conduct when considering effects under 6a(1)." Mar. 18 Order at 12, citing *Sniado v. Bank Austria AG*, 352 F.3d 73, 78 (2d Cir. 2003). But *Sniado* did not address the § 6a(1) effects test, remanding to the district court for examination of that issue. See Def. Reply Supporting Reconsideration Motion at 3-4. And the "broad" view expressed in *Sniado* was that a conspiracy "to fix fees for exchanges of European currencies *in Europe and the United States*" was conduct subject to the Sherman Act. 352 F.3d at 78. Here, in contrast to global cartel cases like *Sniado* and *Kruman*, plaintiffs have not alleged that defendants fixed or otherwise restrained any prices in the United States.

Of course, to certify its order for interlocutory appeal, this Court need not question the correctness of its decision. If that were the standard, orders would rarely if ever be certified. See *Arduini*, 129 F. Supp. 2d at 175 (certifying order although not finding movant's arguments "persuasive"). Instead, there need be only substantial ground for a differing opinion as to whether alleged price restraints imposed solely in a foreign country and meant to prevent price erosion in the U.S. constitute a "direct" effect within the meaning of the FTAIA. As demonstrated above, there is substantial ground for an opinion on the meaning of "direct" in 15 U.S.C. § 6a(1) that would produce a different result than reached by this Court.

9

**C.    An Immediate Appeal From This Court's Order May Materially Advance The Ultimate Termination Of This Litigation.**

The final requirement for § 1292(b) certification is that an interlocutory appeal may materially advance the ultimate termination of the litigation. That requirement is satisfied here.

On the one hand, if defendants prevail on appeal and the Second Circuit finds Sherman Act jurisdiction to be lacking, that would be the end of plaintiffs' antitrust case. As noted above (footnote 2), such a ruling also would end this lawsuit because the antitrust claim is plaintiffs' sole basis for federal jurisdiction. See *Klinghoffer*, 921 F.2d at 25 (ruling that would terminate lawsuit satisfies this prong of the § 1292(b) test); *EDO Corp.*, 1996 WL 684395, at *4 (certifying appeal that could result in "ending this action").

On the other hand, if plaintiffs prevail on appeal, that would remove lingering uncertainty over whether defendants' alleged conduct produced a "direct" effect on U.S. commerce. See *Gryga v. Ganzman*, 1998 WL 229127, at *1 (E.D.N.Y. Apr. 7, 1998) (§ 1292(b) certification is warranted where the court of appeals' ruling, even if not resulting in reversal, will clarify parties' rights). Even if plaintiffs are deemed to have met their threshold burden, satisfaction of the FTAIA's jurisdictional requirements would be subject to continuing challenge as the evidentiary record is developed. As this Court twice stated in its March 18 order (at 11, 13), the validity of its decision was limited to "this juncture." And of course, subject matter jurisdiction may be challenged "at any time." *Kontrick v. Ryan*, 124 S. Ct. 906, 915 (2004).

Furthermore, there is no valid reason to waste the time and resources of the Court and parties in extensive and costly discovery that may prove unnecessary. See *Movielab, Inc. v. Berkey Photo, Inc.*, 1971 WL 242, at *1 (S.D.N.Y. Jan. 28, 1971) ("Unless an interlocutory appeal is permitted, the parties might be required to engage in prolonged and expensive litigation, with consequent burdens upon this court, before the issue could ultimately be

10

resolved"). Section 1292(b) is especially appropriate to "avoid protracted and expensive litigation" in "antitrust and similar protracted cases." S. Rep. No. 85-2434 (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5260. An appeal that ends a "lengthy and complicated" antitrust case may avoid "a number of time and expense-consuming stages," including discovery. *Carnivale Box*, 1975 WL 958, at *2; see also *New York v. Westwood-Squibb Pharmaceutical Co.*, 62 F. Supp. 2d 1035, 1046 (W.D.N.Y. 1999) (certification warranted because otherwise resources expended on discovery and trial may be expended "for naught").

Discovery in this case is certain to be lengthy and immensely costly given the numerous transactions over the nine years of the plaintiffs' distribution relationship with defendants' subsidiaries and affiliates, the far-flung locales of the parties, witnesses, and documents, and plaintiffs' steadfast intent to seek world-wide discovery regarding pricing and customers of products sold by any and all Dow subsidiaries (despite the fact that such information is unrelated to plaintiffs' current claims). Any trial of this matter would be complex and lengthy as well. See *SCM Corp. v. Xerox Corp.*, 474 F. Supp. 589, 593 (D. Conn. 1979) (certifying antitrust case for interlocutory appeal that might avoid "months of trial time"). There is no good reason to wait until after a trial to have the Second Circuit review this Court's order on subject matter jurisdiction and determine the meaning of "direct" effects for purposes of the FTAIA. Certification of an order involving a threshold issue of law such as subject jurisdiction "may save considerable judicial time," not only because it may preclude a trial but also because appellate resolution "would be required no matter the resolution after a full trial." *Jensen v. Times-Mirror*, 647 F. Supp. 1525, 1528 (D. Conn. 1986) (certifying order under § 1292(b)). In short, this case presents a classic situation for an interlocutory appeal.

## **CONCLUSION**

Defendants' 28 U.S.C. § 1292(b) motion for certification of this Court's March 18, 2004

order should be granted.

Respectfully submitted,

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
MAYER, BROWN, ROWE & MAW LLP
190 S. LaSalle Street
Chicago, IL  60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC 20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

12

## CERTIFICATE OF SERVICE

Brien P. Horan hereby certifies that he caused a copy of the Defendants' Memorandum of Law in Support of Motion for § 1292(b) Certification of Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction to be served this date upon the following:

Robert M. Langer, Esquire           Richard S. Taffet, Esquire
Wiggin & Dana LLP                   Bingham McCutchen LLP
One City Place                      399 Park Avenue
185 Asylum Street                   New York, NY 10022-4689
Hartford, CT 06103-3402             **(via overnight courier)**
**(via hand delivery)**

Suzanne Wachstock, Esquire
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
**(via first-class mail, postage prepaid)**

Dated:   March 31, 2004

_____
BRIEN P. HORAN