UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGAVISA SOLUTIONS (S) PTE. LTD., | : : : | Civil No. 3:02 CV 1107 (AVC) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -v- | : | |
| | : | |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACTIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., | : : : : : | April 21, 2004 |
| | : | |
| Defendants. | : | |
| | : | |

**OPPOSITION TO DEFENDANTS' MOTION FOR § 1292(B) CERTIFICATION
OF ORDER DENYING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace
185 Asylum Street
Hartford, CT 06103-3402
(860) 297-3724

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
399 Park Avenue
New York, New York 10022-4689
(212) 705-7729

THELEN REID & PRIEST LLP
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, New York 10022
(212) 603-2000

Attorneys for Plaintiffs MM Global Service, Inc., MM Global Services Pte. Ltd.,
and Megavisa Solutions (S) Pte. Ltd.

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT.......................................................................................................................6

    I.       Denial of Defendants' Motion to Dismiss Presents No Exceptional
              Circumstances Warranting Certification of Interlocutory Appeal............................6

    II.      Defendants Fail to Meet the Requirements of § 1292(b).........................................9

          A.     The March 18 Order Does Not Present a Controlling
                   Question of Law.............................................................................................9

          B.     There is "No Substantial Ground for Difference of Opinion"
                   Concerning the Standard for Determining the Direct, Substantial,
                   and Reasonably Foreseeable Effect of Defendants' Price Fixing
                   Conspiracy ...................................................................................................12

          C.     Interlocutory Certification Will Not Advance the Termination of
                   the Litigation But Will Further Delay It ......................................................17

CONCLUSION...................................................................................................................19

## TABLE OF AUTHORITIES

### CASES

*Allied Princess Bay Co. v. Atochem N. America, Inc.*, Civ. No. CV-91-4146,
1992 WL. 135235 (E.D.N.Y. May 29, 1992) .................................................10, 11, 13

*Carnivale Bag Co., Inc. v. Slide-Rite Manufacturing Corp.*, No. 74 Civ. 5574,
1975 WL. 958 (S.D.N.Y. Oct. 7, 1975) ...............................................................12, 18

*Cromer Finance Ltd. v. Berger*, Nos. 00 Civ 2284 and 2498, 2001 WL. 935475
(S.D.N.Y. 2001) .......................................................................................................16, 17

*In re Del-Val Finance Corp. Sec. Litigation*, 874 F. Supp. 81 (S.D.N.Y. 1995)..............13

*EDO Corp. v. Newark Insurance Co.*, Civ. No. H-90-951, 1996 WL. 684395 (D.
Conn. May 22, 1996) ......................................................................................................12

*Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984) .................13, 15

*Flor v. BOT Finance Corp.*, 79 F.3d 281 (2d Cir. 1996).......................................................7

*John and Vincent Arduini, Inc. v. NYNEX*, 129 F. Supp. 2d 162 (N.D.N.Y. 2001) ..........12

*Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21 (2d Cir. 1990)............................6, 12, 13

*Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863 (2d Cir. 1996).............................7, 10, 11

*Kregos v. The Latest Line, Inc.*, Civ. No. 50920398, 1997 WL. 835056 (D. Conn.
June 16, 1997)...................................................................................................................9

*Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920 (E.D.N.Y. 1985).............14

*In re MTBE Products Liability Litigation*, 174 F. Supp. 2d 4 (S.D.N.Y. 2001)............9, 13

*MM Global Servs., Inv. v. The Dow Chemical Co.*, 2004-1 Trade Cas. (CCH)
¶ 74,335 (D. Conn. 2004) ................................................................................................1

*MM Global Servs., Inv. v. The Dow Chemical Co.*, 283 F. Supp. 2d 689
(D. Conn. 2003) ........................................................................................................3, 4, 5

*Movielab, Inc. v. Berkey Photo, Inc.*, No. 70 Civ. 3800, 1971 WL. 242 (S.D.N.Y.
Jan. 28, 1971)..................................................................................................................12

*National Asbestos Workers Medical Fund v. Phillip Morris, Inc.*, 71 F. Supp. 2d
139 (E.D.N.Y. 1999).................................................................................................7, 11

*New York v. Westwood-Squibb Pharm. Co.*, 62 F. Supp. 2d 1035
    (W.D.N.Y. 1999) ...........................................................................................................18

*Oneida Indian Nation v. County of Oneida*, 622 F.2d 624 (2d Cir. 1980) ........................11

*Primavera Familienstigung v. Askin*, 139 F. Supp. 2d 567 (S.D.N.Y. 2001)...............8, 17

*Ryan, Beck & Co. v. Fakih*, 275 F. Supp. 2d 393 (E.D.N.Y. 2003) .............................7, 13

*In re September 11 Litigation*, No. 21 MC 97, 2003 WL. 22251325
    (S.D.N.Y. Oct. 1, 2003) ...............................................................................................7, 8

*Shipping Corp. of India, Ltd. v. Am Bureau of Shipping*, 752 F. Supp. 173
    (S.D.N.Y. 1990)...........................................................................................................9, 13

*Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711 (S.D.N.Y. 1995)..........................13

*Sniado v. Bank Austria AG*, 352 F.3d 73 (2d Cir. 2003) .................................................2, 16

## FEDERAL STATUTES

15 U.S.C. § 6a(1) ......................................................................................... *passim*

28 U.S.C. § 1292(b) ..................................................................................... *passim*

## MISCELLANEOUS

James W. Moore, *Moore's Federal Practice*, ¶ 203.31[3] (3d ed. 1997) ..........................10

iii

## PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and Megavisa Solutions (S) Pte. Ltd. ("MVS") submit this memorandum of law in opposition to the motion of defendants The Dow Chemical Company ("Dow"), Union Carbide Corporation ("UCC") and Union Carbide Asia Pacific ("UCAP"), pursuant to 28 U.S.C. § 1292(b), to certify for interlocutory appeal this Court's March 18, 2004 Order (the "March 18 Order")[1] denying upon reconsideration defendants' motion to dismiss plaintiffs' antitrust claims for lack of subject matter jurisdiction. This is yet another in the continuing flurry of motions by defendants, many of them arguing the same points as raised here in different guise, and all seemingly aimed at nothing more than deflecting the Court's attention from the core issues of defendants' illegal price fixing conspiracy. Thus, this is the second time that defendants have sought interlocutory certification of an order denying a motion to dismiss plaintiffs' antitrust claims for lack of subject matter jurisdiction, and the infirmities of the first motion remain. Defendants simply fail to meet their heavy burden of demonstrating that an interlocutory appeal pursuant to § 1292(b) is appropriate in the circumstances of this case.

As an initial matter, absent from defendants' motion is any acknowledgement that certification of interlocutory appeals are exceptional, and granted only in rare occasions. Equally

---

[1]     Published at 2004-1 Trade Cas. (CCH) ¶ 74,335 (D. Conn. 2004).

absent is any showing why this is an exceptional circumstance. These failings existed in defendants' original § 1292(b) motion,[2] and remain here.

Defendants also continue in their failure to establish any of the required elements for obtaining § 1292(b) certification. They continue to ignore, for example, established Second Circuit authority that precludes any showing that the issues decided in the March 18 Order are "controlling question of law," even though they involve subject matter jurisdiction. Likewise, defendants continue to resort to tortured analysis and misdirection in arguing that a "substantial ground for difference of opinion" exists regarding the standard to be applied in determining whether defendants' price fixing conspiracy had a "direct, material and reasonably foreseeable" effect on United States commerce. No such difference of opinion exists, and the Second Circuit's recent decision in *Sniado v. Bank Austria AG,*[3] makes this clear. Finally, defendants, yet again, fail to show that an interlocutory appeal "will materially advance the ultimate termination of the litigation." As they did in their first § 1292(b) motion, defendants ignore that, although delayed by excessive motion practice, this case is still at an early stage, with a record that is still relatively unformed as to proof of, among other things, the full scope of defendants' price fixing conspiracy. Accordingly, any interlocutory certification would improperly place the Second Circuit in the position of considering factually complex issues on an incomplete record.

---

[2]    *See* Memorandum of Law in Opposition to Defendants' Motion for Certification for Interlocutory Appeal of the Court's Orders Denying the Motions to Dismiss the Federal Antitrust Claim for Lack of Subject Matter Jurisdiction, dated October 31, 2003 ("Pls. Orig. 1292(b) Opp.") at 6-9.

[3]    352 F.2d 73 (2d Cir. 2003).

## BACKGROUND

In its September 12, 2003 Ruling,[4] this Court denied the motion of Dow and UCC to dismiss plaintiffs' federal antitrust claims for lack of subject matter jurisdiction.[5] On October 10, 2003, defendants filed their first motion pursuant to 28 U.S.C. § 1292(b) for certification for interlocutory appeal of the September 12, 2003 Ruling. The Court denied without prejudice that § 1292(b) motion on December 9, 2003, and invited defendants to move for reconsideration of the September 12, 2003 Ruling. Defendants accepted the Court's invitation, and by the March 18 Order, the Court granted defendants' motion for reconsideration but denied the relief sought — *i.e.,* to dismiss plaintiffs' antitrust claims for lack of subject matter jurisdiction.

In their successive subject matter jurisdiction motions, the focus of defendants' unsuccessful arguments was that United States courts lack jurisdiction to hear plaintiffs' Sherman Act claims because defendants' price fixing conspiracy was not alleged or shown to have had a "direct, substantial, and reasonably foreseeable effect" on domestic commerce, as required under § 6(a)(1) of the FTAIA. In both the September 12, 2003 Ruling and the March 18 Order, the Court disagreed, although the Court, in its March 18 Order, acknowledged and corrected a legal error in the September 12, 2003 Ruling.[6]

---

[4]    Published at 283 F. Supp. 2d 689 (D. Conn. 2003).

[5]    By order dated September 16, 2003, UCAP's motion to dismiss plaintiffs' antitrust claim for lack of subject matter jurisdiction was denied on the same grounds as those detailed in the Court's September 12, 2003 Ruling.

[6]    *See* March 18 Order at 10-11.

In reaching the conclusion that plaintiffs have met their burden of establishing subject matter jurisdiction over their antitrust claims, as it did in the September 12, 2003 Ruling, the Court in the March 18 Order first considered plaintiffs' Amended Complaint, and specifically pointed to the allegation that "defendants coerced the plaintiffs into agreeing to fix the resale price of Union Carbide products in India, and that they did so in order to 'ensure that prices charged by [the] [p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-users . . . in the United States as well as in other jurisdictions.'"[7] The Court further quoted from the Amended Complaint that:

> [a]s a <u>direct</u> and proximate result of [the] [d]efendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from the <u>United States</u> was improperly diminished and restrained . . .[8]

Focusing on this alleged conduct — "conduct involving quite possibly the largest industrial chemical manufacturers in the world"[9] — the Court stated that "it is not a stretch in logic, and quite

---

[7]    *Id.*

[8]    *Id.* (emphasis added). *See also* 283 F. Supp. 2d at 698. In the March 18 Order the Court further stated that "[t]he amended complaint alleges a price fixing conspiracy for product sales in India that was intended to prevent erosion to prices and, in this way, maintain artificially high prices for products that Union Carbide and Dow sold to end-users in the United States." *Id.* at 11-12. The quotations from the Amended Complaint make clear, however, that not only do plaintiffs allege that such was defendants' intent, but also that they succeeded in achieving the intended effect on prices in the United States.

[9]    March 18 Order at 12.

LITDOCS:546233.2

foreseeable, to conclude that a conspiracy to fix prices in the India market might reasonably cause direct and substantial effects on the prices charged for the same product in the United States."[10]

This conclusion was reinforced by the Court's review of the evidentiary record, which the Court concluded "amply supports" the conclusion that defendants were "at all times" concerned with the profitability at which the products were sold in the United States.[11]

> Consequently, at this juncture, the court is of the opinion that the plaintiffs have, at the very least, presented a ***compelling case going far beyond speculation*** of direct, substantial, and foreseeable effect on domestic commerce. In the absence of additional discovery, it would be inappropriate to reach any conclusion to the contrary.[12]

Defendants now seek § 1292(b) certification of these conclusions by posing the question that would be the subject of appeal as: *"Do price restraints imposed only in a foreign country 'directly' impair competition in the United States based on the defendants' alleged intent that prices in the U.S. not erode?"*[13] By framing the proposed question for appeal in this manner, however, defendants ignore the relevant allegations and proof, as well as the Court's studied consideration thereof. Only in defendants' formulation do the Amended Complaint's allegations and the evidence show only an "intent" by defendants to reduce competition in the United States

---

[10]     *Id.* at 12-13.

[11]     *Id.* at 13. *See also* 283 F. Supp. 2d at 698 n.3.

[12]     March 18 Order at 13 (emphasis added).

[13]     Memorandum of Law in Support of Defendants' Motion for § 1292(b) Certification of Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction, dated March 31, 2004 ("Defs. Mem.") at 5.

LITDOCS:546233.2

through their price fixing conspiracy, rather than the actual effect that is pleaded and supported by the limited evidence available to date.[14]  Defendants' formulation also postulates a novel characterization of the "direct, substantial and reasonably foreseeable" test of § 6a(1) of the FTAIA by artificially isolating "directness" as a distinct and separate test, even though they point to no authority that has ever interpreted § 6a(1) in such a manner.  That defendants must take these steps itself shows the inappropriateness of § 1292(b) certification in this case.

## ARGUMENT

## I.

## DENIAL OF DEFENDANTS' MOTION TO DISMISS PRESENTS NO EXCEPTIONAL CIRCUMSTANCES WARRANTING CERTIFICATION OF INTERLOCUTORY APPEAL

At a minimum, a party requesting certification under § 1292(b) must establish three things:  (1) that an order involves a "controlling question of law"; (2) "as to which there is no substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  It is settled, however, that it is only the rare and exceptional case that will meet these standards, and even if a party meets the statutory elements a district court retains the discretion to deny certification.  Thus, cases appropriate for certification under 28 U.S.C. § 1292(b) are few and far between.  *See, e.g., Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (only "exceptional

---

[14]    In fact, as the Court observed in the March 18 Order, plaintiffs have alleged the actual anticompetitive effect of defendants' conduct in the United States.  *See, e.g.*, Amended Compl., ¶¶ 29, 30, 54 and 55; March 18 Order at 11-13.

circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment") (*citing Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)); *accord Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir. 1996) ("[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered").[15]

Immediate appeals, therefore, are "strictly limited," and for good reason. *See Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir. 1996); *Ryan, Beck & Co. v. Fakih*, 275 F. Supp. 2d 393, 395 (E.D.N.Y. 2003) ("[t]he final judgment rule generally prohibits piecemeal appeals, and thereby promotes a variety of institutional values underlying our federal judicial system.") (internal quotations and citations omitted).  Requiring cases to be "exceptional" before allowing interlocutory appeals also serves the important purposes of "ensur[ing] the efficient use of judicial resources," "preserv[ing] the distinct and vital role of the trial judge in the federal system," and "preserv[ing] unnecessary delay or harassment of the parties.*" Nat'l Asbestos Workers Med. Fund v. Phillip Morris, Inc.*, 71 F. Supp. 2d 139, 148-52 (E.D.N.Y. 1999). Equally important and especially relevant here, interlocutory appeals may "present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions.*" In re September 11 Litig.*, No. 21 MC 97, 2003 WL 22251325, at *1 (S.D.N.Y. Oct. 1, 2003).

---

[15]     *See* Pls. Orig. 1292(b) Opp. at 7 n.6.

Moreover, even if defendants could show that subject matter jurisdiction over plaintiffs' antitrust claims in this case was a close question, which it is not,[16] interlocutory certification is not appropriate. Certification under § 1292(b) should not be used as "a vehicle to provide early review of difficult rulings in hard cases." *Primavera Familienstigung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (internal quotations and citations omitted).

Further, even assuming that defendants could meet the statutory requirements for interlocutory certification, which they cannot, that would not be the end of the story. The district court judge has broad discretion to grant or deny a motion for interlocutory appeal, especially in cases such as this where the issue sought to be appealed involves complex factual issues and a record that is incomplete. *See In re September 11 Litig.*, 2003 WL 22251325, at *2-3 ("the district court judge has unfettered discretion to deny certification of an order or interlocutory appeal even when a party has demonstrated that the criteria of [§ 1292(b)] are met"); *In re MTBE Prods. Liab. Litig.*, 174 F. Supp. 2d 4, 7 (S.D.N.Y. 2001) ("even if the three legislative criteria of section 1292(b) appear to be met, district courts have unfettered discretion to deny certification if other factors counsel against it").

_____

[16]    Defendants seek to make much of the Court's comment in the March 18 Order that without presuming anticompetitive effects in the United States based upon the *per se* nature of the price fixing conspiracy, "the parties present a close contest." March 18 Order at 11. Defendants ignore the Court's conclusion, however, that at this juncture "plaintiffs have, at the very least, presented a compelling case . . . of direct, substantial, and foreseeable effects on domestic commerce." *Id.* at 13.

Here, as was the case with defendants' initial § 1292(b) motion,[17] defendants fail even to acknowledge, much less meet, their heavy burden of justifying interlocutory review.

## II.

### DEFENDANTS FAIL TO MEET THE REQUIREMENTS OF § 1292(b)

Defendants fail to establish a single one of the three essential statutory elements required by § 1292(b).

### A.    The March 18 Order Does Not Present a Controlling Question of Law.

Before interlocutory certification will be considered, an order must present a "controlling question of law." 28 U.S.C. § 1292(b). A "controlling question of law" may be one that "substantially affects a large number of cases," or "one which would terminate the action if the district court's order was reversed." *Shipping Corp. of India, Ltd. v. Am Bureau of Shipping*, 752 F. Supp. 173, 175 (S.D.N.Y. 1990). Although jurisdictional issues *may* be controlling questions of law, they are not silver bullets. Courts have consistently held that a question of law is not controlling, even if jurisdictional matters are at issue, when, as here, the issue involves complex factual determinations. Rather, the § 1292(b) standard "requires that the certified order must present a clear-cut question of law ***against a background of established facts***." *Kregos v. The*

---

[17]    *See* Pls. Orig. 1292(b) Opp. at 6-9.

*Latest Line, Inc.*, Civ. No. 50920398, 1997 WL 835056, at *2 (D. Conn. June 16, 1997) (*quoting*

James W. Moore, *Moore's Federal Practice*, ¶ 203.31[3] (3d ed. 1997) (emphasis added)).[18]

Defendants assert that the "controlling question of law" is whether their price fixing

conduct had a "direct, substantial and reasonably foreseeable" effect on domestic commerce

within the meaning of § 6a(1) of the FTAIA. *See* Defs. Mem. at 5. They argue that this is a

"controlling question of law," however, based only on the position that if the Second Circuit

adopts their interpretation of § 6a(1), as well as their inaccurate and incomplete characterization

of the allegations and evidence in this case and the Court's March 18 Order, it will dismiss

plaintiffs antitrust claims accordingly.[19]   This argument is misplaced.

At its core, defendants' position is simply that they disagree with the Court's March 18

Order, and they think the Second Circuit should be given an opportunity, sooner rather than later,

to see the issue their way.  Their impatience, however, does not make even a threshold

---

[18]   *Accord Allied Princess Bay Co. v. Atochem N. Am., Inc.,* Civ. No. CV-91-4146, 1992 WL 135235, *3 (E.D.N.Y. May 29, 1992) ("[i]nterlocutory appeal is only appropriate when the question arises in a sufficiently developed factual context to sharply define the legal issues raised. Without this limitation, it cannot be said with reasonable certainty that the question, as presently framed by [the moving party], is indeed controlling"). *See also Koehler*, 101 F.3d at 866 ("since the exercise of personal jurisdiction over a foreign parent corporation through a resident subsidiary is a question of law which turns on a thorough examination of the facts, . . . we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance").

[19]   Defendants further argue that reversal on appeal of the March 18 Order would dispose of plaintiffs' tort and contract claims because diversity jurisdiction does not exist. *See* Defs. Mem. at 5, n.4). This is erroneous. At the present time, "alien parties" are not on both sides of this litigation. Each of Dow, UCC and UCAP are U.S. corporations, and the Amended Complaint has been dismissed for lack of personal jurisdiction as respects the foreign defendants Union Carbide Customer Services Pte. Ltd and Dow Chemical Pacific (Singapore) Pte. Ltd., although plaintiffs' motion for reconsideration of the personal jurisdiction decision is pending.

jurisdictional question "controlling." This is particularly true where defendants ignore the

authority, as they did in their initial § 1292(b) motion,[20] holding that interlocutory certification is

not appropriate where, as here, there is less than a fully developed record. Indeed, the March 18

Order contemplates that additional discovery will be taken relative to the direct, substantial and

reasonably foreseeable effects on U.S. commerce of defendants price fixing conspiracy.[21] In

these circumstances § 1292(b) certification is not appropriate. An appellate court should not,

through an interlocutory appeal, be asked to make decisions on an incomplete record. *See*

*Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 867 (2d Cir. 1996) (district court improvidently

granted interlocutory order on denial of motion to dismiss on personal jurisdiction grounds

because record on which appellate court had to rely was incomplete and issue was question of

law that turned on thorough examination of facts). Thus, at this stage, as in *Koehler,* the Second

Circuit would be in no position to do anything more than remand this case and direct that

plaintiffs be afforded the opportunity to conduct full discovery and a hearing on the issue

(whether at trial or otherwise), as already contemplated by the March 18 Order.[22]

---

[20]     *See also* Pls. Orig. 1292(b) Opp. at 9-13.

[21]     *See* March 18 Order at 13 ("[i]n the absence of additional discovery, it would be inappropriate to reach any conclusion to the contrary").

[22]     *See also Oneida Indian Nation v. County of Oneida,* 622 F.2d 624, 628 (2d Cir. 1980) ("the purpose of section 1292(b) is not to offer advisory opinions rendered on hypotheses which evaporate in the light of full factual development") (internal quotations and citation omitted); *National Asbestos Workers Med. Fund,* 71 F. Supp. 2d at 166-67 (denying § 1292(b) certification because "[a]ppeal at this stage of the litigation, before full development of the facts, would significantly undermine the ability of the trial and appellate courts . . . to fully consider [the relevant legal issue]"); *Allied Princess,* 1992 WL 135235, at *2 (holding interlocutory appeal

(footnote continued to next page)

None of the cases cited by defendants compel a different conclusion. For example, *Movielab, Inc. v. Berkey Photo, Inc.*, No. 70 Civ. 3800, 1971 WL 242, at *1 (S.D.N.Y. Jan. 28, 1971), did not involve factually intensive issues concerning subject matter jurisdiction, nor did *Klinghoffer v. S.C.C. Achille Lauro*, 921 F.2d 21, 23-24 (2d Cir. 1990). Defendants' arguments derive equally little support from *Carnivale Bag Co., Inc. v. Slide-Rite Mfg. Corp.*, No. 74 Civ. 5574, 1975 WL 958, at *2 (S.D.N.Y. Oct. 7, 1975) (determination of standing did not require factually intensive determination). And, unlike the circumstances presented here, where the record is not fully developed, the parties in *EDO Corp. v. Newark Ins. Co.*, Civ. No. H-90-951, 1996 WL 684395, at *3 (D. Conn. May 22, 1996), had conducted discovery and filed motions for summary judgment prior to the motion for interlocutory certification. *See also John and Vincent Arduini, Inc. v. NYNEX*, 129 F. Supp.2d 162, 175 (N.D.N.Y. 2001) (interlocutory certification granted more than two years into the pendency of the litigation and after summary judgment motion filed).

## B.   There Is "No Substantial Ground for Difference of Opinion" Concerning the Standard Applied for Determining the Direct, Substantial, and Reasonably Foreseeable Effect of Defendants' Price Fixing Conspiracy.

A party seeking interlocutory review must not only identify a controlling issue of law, it must also show that the question sought to be reviewed is one in which there is a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This requires defendants here to

_____

(footnote continued from previous page)

inappropriate "because the facts of the case have not yet fully developed," and therefore "[j]udicial economy would not be advanced by appellate review at this time").

establish that there is conflicting legal authority within the Second Circuit sufficient to persuade the Court that "substantial doubt" exists on the operative issue of law. *Shipping Corp. of India v. Am. Bureau of Shipping*, 752 F. Supp. 173, 175 (S.D.N.Y. 1990).[23] This they fail to do.

Defendants attempt to show a difference of opinion by citing some of the same cases they relied upon previously. *See* Defs. Mem. at 6. But, as previously shown by plaintiffs,[24] these cases are of no moment. First, to the extent that defendants continue to rely upon a number of cases from outside this Circuit, such cases carry no weight for purposes of this leg of the § 1292(b) test. *See Ryan, Beck & Co.,* 275 F. Supp. 2d at 398; *MTBE Prods. Liab. Litig.*, 174 F. Supp. 2d at 8. Second, and more relevant and fatal to defendants motion, is that cases decided by other courts within this Circuit raise no substantial grounds for a difference of opinion concerning this Court's application of the "direct, substantial and reasonably foreseeable" test of § 6a(1) of the FTAIA.

Defendants emphasize the decision in *Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984), as being in conflict with the March 18 Order and in need of reconciliation

---

[23]    Citing *Klinghoffer*, 921 F.2d at 25, defendants assert that if "the issues are difficult and of first impression," then a substantial ground for difference of opinion is established. The inquiry is not, however, as simplistic as defendants suggest. "A court is not bound to find reasonable cause for disagreement whenever authorities lack unanimity... 'District judges have not been bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression.'" *Allied Princess,* 1992 WL 135235, at *3 (quoting Wright & Miller, *Federal Practice and Procedure*, § 3930, at 157-58). "'[T]he order appealed from must concern something more than a novel and interesting issue about which there may be substantial disagreement.'" *Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711, 718 (S.D.N.Y. 1995) (quoting *In re Del-Val Fin. Corp. Sec. Litig.*, 874 F. Supp. 81, 83 (S.D.N.Y. 1995)).

[24]    *See* Pls. Orig. 1292(b) Opp. at 17-19.

LITDOCS:546233.2

by the Second Circuit. The plaintiff in *Eurim-Pharm*, however, expressly conceded that "defendants' conduct lacks a direct, substantial and reasonably foreseeable effect" on U.S. commerce. *Id.* at 1106. The district court there also determined that defendants' conduct did not meet § 6a(1)'s requirements, because "plaintiff has failed to allege any facts demonstrating a causal connection between defendants' conduct in Europe and the price increase in the United States," and not even a "spillover" theory of effect could be sustained. *Id.* at 1106-07.[25] In contrast, here, as set out in the March 18 Order plaintiffs' allegations and the evidence submitted establish a direct causal connection between the fixed prices for products sold in India and the prices charged for the same products in the United States. The Court specifically quoted plaintiffs' allegations in this regard: "As a ***direct*** and proximate result of [the] [d]efendants fixing of minimum resale prices . . . competition in the sale and resale of [Union Carbide] product in and from the ***United States*** was improperly diminished and restrained."[26]

Defendants' effort to identify a conflict where there is none is also undermined by their mischaracterization of the March 18 Order as concluding that the allegations of the Amended Complaint and the evidence showed only that defendants had an *intent* to affect U.S. prices for

---

[25] The absence of allegations in *Eurim-Pharm* even to sustain a "spillover" effect confirms that it is in no way inconsistent with the Court's observation in the March 18 Order that Congress contemplated, when enacting the FTAIA, that "even spillover effects that cause artificially inflated prices can rise to direct and substantial over time." March 18 Order at 12. Certainly, given the nature of the pleading in *Eurim-Pharm,* it does not create a substantial ground for disagreement on this point.

[26] March 18 Order at 11, quoting the Amended Complaint (emphasis in original). The only other decision from a court in this Circuit relied upon by defendants, *Liamuiga Tours v. Travel Impressions, Ltd.,* 617 F. Supp. 920 (E.D.N.Y. 1985), is equally inapposite. There, the plaintiffs only alleged harm to themselves and not to competition in general in any market.

14

the products by fixing prices for products sold in India. They argue that a "substantial ground for a difference of opinion" exists regarding whether mere intent may establish the requisite "direct" effect on domestic commerce. *See* Defs. Mem. at 7. This is disingenuous and not at all the question presented by this case. The March 18 Order refers to the Amended Complaint's allegation that the purpose for defendants coercing the plaintiffs into agreeing to fix the resale price of Union Carbide products in India was "to 'ensure that prices charged by [the] [p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-user . . . in the United States as well as in other jurisdictions . . . .'"[27] Moreover, the Court stated that when focusing on the conduct alleged — "conduct involving quite possibly the largest industrial chemical manufacturers in the world" — "it is not a stretch in logic, and quite foreseeable, to conclude that a conspiracy to fix prices in the India market might reasonably cause direct and substantial effects on the prices charged for the same products in the United States."[28] Thus, far from focusing on just defendants' intent, the Court recognized the clear allegations and proof of an ***actual*** effect on domestic commerce.[29]

Defendants' attempt to create an issue for disagreement also falls short by their improperly narrow reading of the "direct" prong of § 6a(1)'s requirements. They offer no

_____

[27]    March 18 Order at 11.

[28]    *Id.* at 12-13.

[29]    Based upon *Eurim-Pharm,* defendants' intent is also pertinent to the immediate inquiry. The court there stated that "[t]he test is whether the effect would have been evident to a reasonable person making practical business judgments." 593 F. Supp. at 1106, n.4. This test would surely be satisfied by evidence showing merely that defendants themselves intended their actions to have such an effect.

15

authority (whether from this Circuit or otherwise) that dissects the § 6a(1) test in such a manner. Nor is such an approach consistent with the direction given recently in *Sniado v. Bank Austria AG*, 352 F.3d 73 (2d Cir. 2003). Contrary to defendants' assertion,[30] the Second Circuit there directly addressed the FTAIA's "direct, substantial and reasonably foreseeable" effects standard. In remanding the case to the district court, the Second Circuit gave explicit directions concerning how the "direct, substantial and reasonably foreseeable" test should be considered, which did not involve any analysis of the relevant conduct separately as being "direct," "substantial" and "reasonably foreseeable." *See id.* at 78. Rather the Second Circuit instructed that the conduct at issue must be interpreted "broadly" for § 6a(1) purposes, and that conduct for FTAIA purposes refers to "acts that are illegal under the Sherman Act, not to the specific acts that caused the plaintiff injury." *Id.* Thus, to determine whether the requirements of § 6a(1) are satisfied, the district court was directed to consider broadly the "entire alleged conspiracy." *Id.* This Court should reject defendants' attempt to rewrite *Sniado* to create a fictional ground for dispute.[31]

Finally, interlocutory certification is not appropriate here because the issue — even as posited by defendants — involves the application of a legal standard to specific facts. As previously briefed to the Court,[32] in *Cromer Fin. Ltd. v. Berger*, Nos. 00 Civ. 2284 and 2498,

---

[30]    Defs. Mem. at 9 ("*Sniado* did not address the § 6a(1) effects test").

[31]    Defendants continued citation to the Department of Justice and Federal Trade Commission *Antitrust Enforcement Guidelines for International Operations* (*see* Defs. Mem. at 8), also remains misplaced. *See* Pls. Orig. 1292(b) Opp. at 19, n.23. Moreover, the *Enforcement Guidelines* postdate the enactment of the FTAIA by 13 years and therefore can, of course, provide no guidance regarding the intent of the statute.

[32]    Pls. Orig. 1292(b) Opp. at 19.

LITDOCS:546233.2

2001 WL 935475, at *2 (S.D.N.Y. 2001), a motion for interlocutory certification of a decision involving subject matter and personal jurisdiction was considered. Certification was denied, because, among other reasons, the issue was not what the correct legal standard was, but the "quarrel [wa]s with the application of those standards to the specific facts in this suit." *Id.* Moreover, because the inquiry was "fact intensive," it was not "an appropriate basis for certification." *Id.* at 3-4. Likewise, here, there is no issue that the relevant standard under § 6a(1) of the FTAIA is whether the effect of defendants' price fixing conspiracy had a "direct, substantial and reasonably foreseeable" effect on U.S. commerce. The question is whether the facts alleged and proven by plaintiffs to date meet that standard.

### C.   Interlocutory Certification Will Not Advance the Termination of the Litigation But Will Further Delay It.

Nor will interlocutory certification in any way advance the termination of this litigation. On the contrary, allowing an appeal to be taken now will only delay the ultimate disposition of this case. As the Court well knows, a full factual record has not been established, and the Court of Appeals will not be in a position at this juncture to consider all necessary and pertinent facts bearing on the issue of subject matter jurisdiction. Indeed, interlocutory certification could well result in nothing more than a remand for discovery and a hearing where all relevant evidence is presented. Such potential delay precludes a showing that an immediate appeal will "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b); *Primavera*, 139 F. Supp. 2d at 570 ("[a]lthough technically the question of whether there is a controlling issue of

17

law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected").[33]

Indeed, defendants' request for an immediate appeal would result in the worst sort of "piecemeal litigation." The interlocutory decision sought by defendants would be based upon a record reflecting limited and artificially truncated discovery, and could result in multiple and inconsistent results at the trial and appellate levels, depending on the state of the record at each time the issue of subject mater jurisdiction is considered. This is precisely the sort of result the cases interpreting § 1292(b) counsel against and discourage, and a result this Court can and should avoid by denying the instant motion.

---

[33]    Defendants' assertion that interlocutory certification may avoid unnecessary and costly discovery misses the point. *See* Defs. Mem. at 10, *citing Movielab, Inc.*, 1971 WL 242, at *1; *Carnivale Bag Co.*, 1975 WL 958, at *2; *New York v. Westwood-Squibb Pharm. Co.*, 62 F. Supp.2d 1035, 1046 (W.D.N.Y. 1999). In those cases courts granted interlocutory certification, in part, to avoid discovery unrelated to the issues presented in the proposed appeal. The circumstances of this case, however, present the opposition situation. Discovery is necessary before the factually intensive issue can be properly considered.

LITDOCS:546233.2

## CONCLUSION

Defendants should not be allowed to use extraordinary appellate procedures as a way to further delay this litigation and prevent an ultimate determination on the merits. For all the foregoing reasons, plaintiffs respectfully request that the Court exercise its unfettered discretion and deny defendants' motion for § 1292(b) certification of the March 18 Order.

Respectfully submitted,

By: _____

Richard S. Taffet (ct 10201)
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000 (tel)
(212) 752-5378 (fax)

THELEN REID & PRIEST LLP
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, New York 10022-6225
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace, 185 Asylum Street
Hartford, Connecticut 06103-3402
(860) 297-3724 (tel)
(860) 525-9380 (fax)

19

## CERTIFICATE OF SERVICE

This is to certify that on this 21st day of  April, 2004, a copy of the foregoing has been

hand-delivered to the following:

Craig A. Raabe, Esq.
Edward J. Heath, Esq.
Elizabeth A. Fowler, Esq.
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT  06103

and sent via FedEx to the following:

Andrew S. Marovitz
Britt M. Miller
Dana S. Douglas
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, IL  60603

Christopher J. Kelly
Mayer, Brown, Rowe & Maw LLP
1909 K Street
Washington, DC  20006-1157

_____
Robert M. Langer

\15726\1\44335.4