THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, AND UNION CARBIDE ASIA PACIFIC, INC., <br><br> Defendants. | CIVIL ACTION <br> NO. 3:02 CV 1107 (AVC) <br><br> June 10, 2004 |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT
OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND ANSWERS TO INTERROGATORIES**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

THELEN REID & PRIEST LLP
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, NY 10022
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd. and Megavisa
Solutions (S) Pte. Ltd.*

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................................... ii
I. PRELIMINARY STATEMENT ....................................................................................... 1
II. ARGUMENT ..................................................................................................................... 2
    A. The Court Should Ignore Defendants' Attempts to Revive Legal Arguments Already Decided in Plaintiffs' Favor ................................................ 2
    B. The Relevant Geography in This Case Is Not Defined By Plaintiffs' Sales Territory .................................................................................................................. 4
    C. The Allegations and Hard Evidence of Defendants' Premerger Price Coordination (i.e., "Gun-Jumping") Entitle Plaintiffs to Discovery Regarding Dow's Premerger Marketing Activities and Strategy ......................... 4
    D. The Requested Discovery Concerning Bhopal Is Relevant and Not Unduly Burdensome for Defendants to Produce ............................................................... 5
    E. The Court Should Order Defendants to Respond to Discovery Concerning Plaintiffs' End User Customers with Whom They Communicated and the Substance of Those Communications .................................................................. 7
    F. Even Under Defendants' Constricted View of the Scope of Discovery Permitted by Rule 26, the Requested Discovery Is "Relevant." ........................... 8
    G. Defendants Have Not Proven That the Burden of Compliance Would Be "Undue." ................................................................................................................. 9
    H. Defendants' Convoluted Description of Their Self-Adjudged, "Appropriate" Search for Documents and Information Sidesteps Plaintiffs' Legitimate Inquiries. .............................................................................................. 10
III. CONCLUSION ................................................................................................................ 14

## TABLE OF AUTHORITIES

### CASES

*Chemical Bank v. Affiliated FM Insurance Co.*, 1994 WL. 89273 (S.D.N.Y. Mar. 16, 1994) .................................................................................................. 9

*Dana Commercial Credit Corp. v. National Finance Services Corp.*, No. 88 Civ. 3321, 1992 WL. 163184 (S.D.N.Y. June 24, 1992) ..................................... 9

*Fletcher v. Atex, Inc.*, 156 F.R.D. 45 (S.D.N.Y. 1994) ........................................................ 9

*Hansel v. Shell Oil Corp.*, 169 F.R.D. 303 (E.D. Pa.1996) ................................................ 10

*Lugosch v. Congel*, 218 F.R.D. 41 (N.D.N.Y. 2003) ........................................................... 8

*Milner v. National School of Health Tech.*, 73 F.R.D. 628 (E.D. Pa. 1977) ..................... 10

*In re PE Corp. Sec. Litigation*, 221 F.R.D. 20 (D. Conn. 2003) ......................................... 8

*Pierson v. Columbus McKinnon Corp.*, No. 02 Civ. 0917E, 2004 WL. 966177 (W.D.N.Y. Apr. 28, 2004) .................................................................................................. 9

*Rapkin v. Rocque*, 228 F. Supp. 2d 142 (D. Conn. 2002) .................................................... 4

*Segan v. Dreyfus*, 513 F.2d 695 (2d Cir. 1975) ................................................................... 9

*Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833 (S.D.N.Y. 1998) ...................... 6

LITDOCS/554968.1

### I. PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc., MM Global Services Pte. Ltd., and Megavisa Solutions (S) Pte. Ltd., hereby respond to the Combined Reply and Opposition filed by defendants The Dow Chemical Company ("Dow"), Union Carbide Corporation ("UCC"), and Union Carbide Asia Pacific, Inc. ("UCAP"), and submit this reply memorandum in further support of their motion to compel the production of documents and answers to interrogatories.

The parties have presented the Court with a garden-variety discovery dispute. Yet, in their prolix Combined Reply and Opposition, defendants do everything but address the fact that they simply have failed to comply with their discovery obligations to the prejudice of plaintiffs. They fail to acknowledge that even under their unfounded limited view of the present scope of Rule 26, all of the disputed discovery arises directly from the allegations of the Amended Complaint (e.g., ¶¶ 16–32), which they have repeatedly challenged to no avail. As a matter of law, fact, and common sense, nothing in defendants' lengthy submission undermines the conclusion that these allegations, and the type of proof necessary to establish the essential elements of plaintiffs' claims for price-fixing, breach of contract, and negligent misrepresentation together establish that the discovery requests at issue are reasonably designed to solicit material evidence relevant to the plaintiffs' claims.

Nor does the Combined Reply and Opposition raise any new substantive issues that would excuse defendants from producing the discovery sought. Defendants repeat the same arguments concerning antitrust injury, antitrust standing, antitrust subject matter jurisdiction, and the propriety of a stay pending the Supreme Court's decision in *Empagran* as have been previously briefed, rebutted, and rejected by the Court. Indeed, now it appears that defendants' arguments boil down simply to the position that they should not be required to provide discovery, because plaintiffs will not be able to prove their allegations at trial. Stated differently, defendants present the circular argument that because plaintiffs will not succeed on their claims, plaintiffs should be precluded from obtaining discovery that will prove their claims. The absurdity of this position is self-evident.

Defendants' arguments of undue burden also remain unavailing. Notwithstanding that plaintiffs previously pointed out the inadequacy of defendants' showing in this regard—most notably because of the absence of any sworn affidavits setting forth specific facts concerning the anticipated expense and time that compliance would entail—defendants fail to provide the requisite proof. Indeed, in the face of settled law, defendants deny they have any obligation to submit such proof, and, in essence, ask the Court to create a precedent under which large corporations with global operations may assert an "undue burden" objection, without providing the Court any basis upon which to find that the burden is "undue."

The various other points asserted in the Combined Reply and Opposition are just as hollow as the foregoing arguments. If nothing else, however, defendants' latest effort to delay discovery on the merits will have been successful for as long as it takes the Court to issue a decision on the fairly simple issues now before it. For that reason, now that the parties' respective motions have been fully briefed, plaintiffs request expedited consideration so that pretrial discovery may go forward as ordered.

## II.   ARGUMENT

### A.   The Court Should Ignore Defendants' Attempts to Revive Legal Arguments Already Decided in Plaintiffs' Favor.

Defendants waste the Court's and the parties' time in raising, yet again, their familiar legal arguments against the relevance of documents and information concerning their global marketing and pricing activities. In motion after motion, ever since this case began, they have made it abundantly clear that they believe that the allegations of the Amended Complaint fail to establish plaintiffs' antitrust standing and that the Court lacks subject matter jurisdiction because of insufficient allegations of adverse effects on U.S. competition. They have taken every opportunity to tell the Court that the U.S. Supreme Court's *Empagran* decision will surely doom plaintiffs' case. They have also tried to discourage the Court from allowing plaintiffs to obtain any more evidence in support of allegations of horizontal collusion "having no bearing on this case" (at least, in defendants' view). *See* Combined Reply and Opposition at 14.

The Court does not need to be reminded—although apparently defendants do—that every one of these arguments has been briefed, considered, and rejected:

- *Plaintiffs lack antitrust standing.* This argument was raised in defendants' Rule 12(b)(6) motions to dismiss, which were DENIED, by Order dated September 15, 2003. The allegations of the Amended Complaint (e.g., ¶¶ 22, 24, 25, 30, and 55) more than adequately establish plaintiffs' antitrust standing.

- *There are insufficient allegations of anticompetitive effects in the United States resulting from defendants' alleged global price-fixing activities.* Defendants raised this argument in their Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss and motions for reconsideration, which were DENIED, by Orders dated September 12, 2003, September 15, 2003, March 18, 2004. The Amended Complaint specifically alleges that defendants imposed price requirements to prevent price erosion in the United States, and that as a result, competition in the United States was adversely affected. Am. Compl. at ¶¶ 29–30.

- *The Court lacks subject matter jurisdiction under 15 U.S.C. § 6a(1).* Defendants argued this in their Rule 12(b)(1) motions to dismiss and motions for reconsideration, which were DENIED, by Orders dated September 12, 2003, and March 18, 2004. As noted by the Court, "it is not a stretch in logic, and quite foreseeable, to conclude that a conspiracy to fix prices in the India market might reasonably cause direct and substantial effects on the prices charged for the same product in the United States." March 18 Order at 12–13.

- *Plaintiffs' Sherman Act claims will be eliminated by the U.S. Supreme Court's decision in* Empagran, *and therefore discovery, if not this entire case, should be stayed pending that decision.* Defendants argued this in their motion for stay, which the Court DENIED, by Order dated March 18, 2004. As plaintiffs have repeatedly pointed out, this case is factually distinct from *Empagran*, and therefore a Supreme Court decision disallowing the antitrust claim in that case would not dispose of the antitrust claim in this case.

As the defendants well know, the Court ordered "full merits discovery" to begin after it ruled on defendants' motions to dismiss. *See* Order dated November 20, 2002. Those rulings have been made, and defendants were ultimately unsuccessful in eliminating plaintiffs' federal antitrust claim. While that fact may be distasteful to defendants, there are no legal obstacles to <u>full</u> merits discovery, and plaintiffs' motion to compel should be granted on that basis.

B.  **The Relevant Geography in This Case Is Not Defined By Plaintiffs' Sales Territory.**

Without repeating the arguments set forth in plaintiffs' initial brief in support of their motion to compel, it is sufficient to point out that defendants' primary objection to discovery concerning their marketing activities outside India is the fact that plaintiffs' resale territory was limited to India. This argument is a *non sequitur*. As alleged in the Amended Complaint, and as recognized by the Court in its March 18, 2004 Ruling, plaintiffs' antitrust claim necessarily encompasses the effect of defendants' global price-fixing conduct on more than just the Indian market. The relevant effects include the prevention of price erosion in the U.S. market for the same products sold by plaintiffs. Without information about the totality of defendants' price-fixing conduct, regardless of geography, plaintiffs cannot prove the totality of the effects of that conduct on U.S. competition, nor can they fully ascertain the pricing and economic benchmarks needed to calculate their individual antitrust damages.

C.  **The Allegations and Hard Evidence of Defendants' Premerger Price Coordination (i.e., "Gun-Jumping") Entitle Plaintiffs to Discovery Regarding Dow's Premerger Marketing Activities and Strategy.**

Defendants argue that plaintiffs' interest in documents and information probative of premerger, horizontal collusion among the defendants represents a dramatic "shift" in the focus of this case. They are simply wrong. The Amended Complaint specifically alleges that prior to the consummation of the UCC/Dow merger, there was a resale price maintenance conspiracy imposed at Dow's urging and direction. *See* Am. Compl. ¶ 29. Defendants' "gun-jumping," therefore, is an issue raised squarely in the four corners of the pleadings, and, hence, discovery should be allowed.

Defendants cite only *Rapkin v. Rocque*, 228 F. Supp. 2d 142 (D. Conn. 2002), to support their argument that plaintiffs have the duty to tailor more narrowly any discovery requests with respect to the gun-jumping issue. In the *Rapkin* case, however, the requesting party plaintiff happened to be the former chief legal officer of the defendant corporation, and, thus, the court noted, he was in a unique position to narrow his discovery requests to solicit only specific issues

needed for his case—a distinguishing fact omitted from defendants' discussion.[1] In this case, plaintiffs are not able to state the issues more narrowly than as already set forth in the Amended Complaint; defendants' objections should be rejected for the simple reason that the requested documents and information are in the defendants' possession, and they are necessary to prove plaintiffs' case.

Indeed, there is already evidence permitting an inference of premerger coordination in the documents produced to date, a fact that further warrants plaintiffs' attempt to develop their proof in this area. In addition to the several documents cited in and attached to plaintiffs' initial submission, plaintiffs respectfully refer the Court to Exhibit 1, attached hereto, which indicates that as early as August and September of 2000, several months before the UCC/Dow merger closed, representatives of Dow (M. Wildi) and UCC (L. Cheung) were arranging to meet together with representatives of plaintiffs. This meeting ultimately did not take place, but at a minimum the document establishes that Dow and UCC, when still separate competitors, were engaged in discussions about distribution plans for their respective products. This is exactly what is alleged in the Amended Complaint, and plaintiffs are entitled to discover the full extent of all premerger communications of this nature between Dow and UCC.

### D. The Requested Discovery Concerning Bhopal Is Relevant and Not Unduly Burdensome for Defendants to Produce.

Defendants' opposition to disclosing information concerning the basis of their assertion that the Bhopal Incident was the result of "sabotage" is overwrought and in all events premature. They argue at great length that discovery into the underlying cause of the leak at Bhopal would not be probative of any essential element of plaintiffs' claims, and, hence, that they can simply refuse to respond. But the requested discovery does not ask defendants merely to restate their allegations that sabotage caused the leak, and plaintiffs are not going to ask this Court to decide

---

[1] See id. at 156 ("Because of Plaintiff's unique position as the former chief legal counsel, Plaintiff should be able to help narrow the scope of discovery.") (emphasis added).

"what caused the leak at Bhopal" as part of their case in chief. Rather, plaintiffs seek documents and information revealing the factual basis, if any, of <u>defendants' claim</u> of sabotage. As for the relevance of such discovery, defendants all but concede the fact that the Bhopal Incident was the *raison d'être* of the initiation and continuation of the parties' commercial relationship. Moreover, if, despite their allegation to the contrary, defendants do not have any documents or information tending to show that the cause of the Incident was sabotage (and not the criminal negligence with which UCC was charged by the Indian government), that fact could be used legitimately to impeach the credibility of defendants' witnesses. In short, the centrality of the Incident to the parties' course of dealing and the potential impeachment value of the requested discovery together warrant overruling defendants' objections at this early stage of the case.

Defendants' wholesale attempt to preclude Bhopal evidence from this case is also premature. Until the requested documents and information are produced, they cannot be offered into evidence. Until they are offered, the Court is in no position to determine, for purposes of trial, whether their prejudicial nature outweighs their probative value.[2] Nevertheless, defendants presume to decide that issue for the Court, insisting that responsive documents and information (to which only they have access) should never see the light of day in this case. Defendants suggest that the Court follow the decision in *Union Carbide Corp. v. Montell N.V.*, and rule that discovery regarding the Bhopal disaster would necessarily create prejudice and confusion that would outweigh its probative value. In the *Montell N.V.* case, however, UCC was the <u>plaintiff</u> and its actions were not at issue. *See* 28 F. Supp. 2d 833 (S.D.N.Y. 1998). Additionally, the opinion does not explain why in that case the evidence regarding the Bhopal disaster was only "of the slightest relevance," thus limiting its usefulness in this case.

---

[2] Defendants themselves concede that evidence that might not be admissible at trial may nevertheless be discoverable. *See* Combined Reply and Opposition at 4. Moreover, the 2000 Federal Rules advisory committee notes, so fondly cited by defendants, recognize that "information that could be used to impeach a likely witness, although not otherwise relevant to the claims and defenses, might be properly discoverable."

Defendants are presumably quite able, although unwilling, to produce the requested documents and information concerning their allegation of sabotage at Bhopal. The weighing of the probative value and prejudicial effect of such evidence is a matter for another day. In the absence of any real obstacle to compliance, defendants should be compelled to respond.

E. **The Court Should Order Defendants to Respond to Discovery Concerning Plaintiffs' End User Customers with Whom They Communicated and the Substance of Those Communications.**

The stated reasons for defendants' continued refusal to provide documents and information about their interactions with plaintiffs' customers are incoherent. Defendants claim they cannot respond until plaintiffs identify all the relevant customers and contacts, but as a matter of plain common sense, that information belongs to defendants alone. Plaintiffs are not asking defendants to guess at anything they do not already know. The simple fact is, as set forth in detail in plaintiffs' initial brief at 15–17, the documents produced to date offer <u>some</u> evidence of <u>some</u> contacts by defendants with <u>some</u> of plaintiffs' customers.[3] In connection with their negligent misrepresentation claim, however, plaintiffs are entitled to have defendants disclose <u>all</u> evidence in their possession of <u>all</u> their contacts, with <u>all</u> the customers <u>who were contacted</u>. Plaintiffs are entitled to this discovery, regardless of whether a particular contact furthered defendants' scheme of misrepresentation, or proximately caused plaintiffs to incur damages. Those issues will be for the jury to decide. Rather than blaming plaintiffs for not answering their own discovery requests, defendants can and should simply respond to the discovery.

---

[3] Were any further proof needed that defendants, contrary to their argument, had intimate knowledge of plaintiffs' end user customers and were communicating with them about plaintiffs unbeknownst to plaintiffs, see attached: <u>Exhibit</u> <u>2</u> (January 11, 2000 email, numbered DS208688, referring to "the UCAP Team [having been] deeply involved with all the issues, working very hard alongside with the Megavisa Team, providing the guidance, direction and monitoring the progress on each customer."); <u>Exhibits</u> <u>3, 4, 5</u> (three May 2001 reports, numbered D14000964-69; D14000970-74, D14000995-99, prepared by defendants, regarding Megavisa branch offices and incorporating customer Contact Lists for each branch); <u>Exhibit</u> <u>6</u> (2001 email, numbered D14001402, from Dow forwarding names of "Megavisa Customers" to replacement resellers); and <u>Exhibit</u> <u>7</u> (March 26, 2002 letter from customer U. Sanghvi of Nikhil Adhesives, recalling that Dow representative A. Mitra had spoken him "last year . . . to do business directly, bypassing Mega Visa . . . .").

F.  **Even Under Defendants' Constricted View of the Scope of Discovery Permitted by Rule 26, the Requested Discovery Is "Relevant."**

Defendants' argument concerning the scope of permitted discovery after the 2000 amendments to Rule 26 is just plain wrong. Defendants cite *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20 (D. Conn. 2003), for the unremarkable proposition that a requesting party's discovery requests must be "germane to a claim or defense alleged in the pleading." *Id.* at 24. Plaintiffs' discovery requests clearly meet this standard. As established in plaintiffs' initial brief, each of the disputed requests is directly linked to a specific factual allegation in the Amended Complaint. Indeed, defendants themselves acknowledge, at page 15 of the Combined Reply and Opposition, that plaintiffs specifically alleged premerger pricing collusion between Dow and UCC in the Amended Complaint. Labeling the allegation a "groundless smear," however, is no basis on which to deny discovery reasonably calculated to prove the truth of that allegation. Moreover, even if plaintiffs' requests did not so clearly fall within the scope of presumptively relevant discovery by virtue of the pleadings alone, plaintiffs have demonstrated "good cause" for each and every contested request.

For purposes of this case, relevant authority also establishes that the 2000 amendment to Rule 26(b)(1) did not narrow the scope of allowable discovery in any material way. In *Lugosch v. Congel*, 218 F.R.D. 41 (N.D.N.Y. 2003), cited by defendants, the court noted that its authority "to grant broader and more flexible discovery is still retained [after the 2000 Amendments and] the requirement of relevancy with regard to discovery matters should be construed liberally and with common sense." *Id.* at 45–46. Indeed, the court further explained, "the demarcation between what information is relevant to the claims and defenses and relevant to the subject matter cannot be defined with precision." *Id.* at 45. *See also In re PE Corp.*, 221 F.R.D. at 24 (declining to adopt defendants' narrow characterization of plaintiffs' claims in relation to their discovery requests).[4]

---

[4] Defendants attack plaintiffs' citations to cases predating the 2000 Amendment, even though they themselves cite several pre-2000 Amendment cases. In any event, as the court noted in *Lugosch*, "[s]ince

(Footnote Continued on Next Page.)

The dispute at hand does not require the Court to draw fine distinctions between the pre-amendment standard for discovery—i.e., "relevant to the subject matter involved" in the action—and the post-amendment standard, i.e., "relevant to the claim or defense of any party." Defendants' exhaustive treatment of these differences is a purely academic exercise with no impact on the outcome of the pending discovery motions. Plaintiffs' specific allegations, combined with the evidence discovered to date, establish that the scope of plaintiffs' discovery is proper under whatever standard defendants might urge the Court to adopt.

### G.   Defendants Have Not Proven That the Burden of Compliance Would Be "Undue."

In support of their "undue burden" objections, defendants' approach is to defy the clear legal authority requiring them to "establish the <u>factual basis</u> for the assertion through competent evidence." *See Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 54 (S.D.N.Y. 1994). In the Combined Reply and Opposition at pp. 24–25 and 29, defendants cite various cases in which courts denied motions to compel. These cases afford no basis, however, on which to grant defendants' motion for protective order here, where a party has made what must be a conscious tactical decision not to offer any proof establishing precisely why the disputed requests would be <u>unduly</u> burdensome.[5]

---

(Footnote Continued from Previous Page.)

the Court's role in determining relevancy on the subject matter has not changed since the 2000 Amendment, except for the party seeking the discovery having to show good cause, [courts] are permitted to seek some guidance from precedents prior to these amendments." *Id.* at 45-46.

[5] *See Segan v. Dreyfus*, 513 F.2d 695 (2d Cir. 1975) (denying plaintiff's motion to compel discovery where request was based on a single fraudulent transaction and plaintiff had yet to file more definite statement of his claims); *Pierson v. Columbus McKinnon Corp.*, No. 02 Civ. 0917E, 2004 WL 966177 (W.D.N.Y. Apr. 28, 2004) (slip opinion that does not disclose basis for denial of plaintiff's motion to compel); *Chemical Bank v. Affiliated FM Ins. Co.*, 1994 WL 89273 (S.D.N.Y. Mar. 16, 1994) (denying defendants' motion to compel production of unrelated entity's documents, where sole purpose for discovery was to develop potential defense concerning plaintiff's state of mind); *Dana Commercial Credit Corp. v. Nat'l Fin. Servs. Corp.*, No. 88 Civ. 3321, 1992 WL 163184 (S.D.N.Y. June 24, 1992) (in action to pierce defendant's corporate veil, plaintiff attempted to compel production of documents concerning defendant's other companies to prove a pattern of operating alter ego entities and in support of punitive damages claim for relief).

The Combined Reply and Opposition also improperly seeks to shift the burden of proof onto plaintiffs to justify the breadth of their requests as a precondition of defendants' compliance with their obligation to submit competent evidence of the asserted "undue burden." Not surprisingly, defendants cite no precedent for such a one-sided approach to discovery. There is no case in which a court has held that because global corporations may have multiple locations and generate many documents, they, unlike other litigating parties, need not make the requisite showing of specific facts on which to find that burdensome discovery is "unduly" burdensome. The five dense pages of argument devoted to this issue in the Combined Reply and Opposition do nothing to mask the lack of support for defendants' objection—especially when documents and information from subsidiaries around the globe have already been produced on forum non conveniens issues when <u>defendants</u> thought they would be useful.

H. **Defendants' Convoluted Description of Their Self-Adjudged, "Appropriate" Search for Documents and Information Sidesteps Plaintiffs' Legitimate Inquiries.**

Defendants claim to be "baffled" by plaintiffs requests for clarification of the extent and scope of the searches undertaken to date for documents and information that defendants agreed to produce. Any confusion on plaintiffs' part is the result of defendants' deliberate refusal, contrary to their obligation, to provide full and complete answers to interrogatories and to certify that they have diligently searched for <u>all</u> responsive documents in <u>all</u> locations. *Cf., e.g., Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa.1996) ("Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories. . . . If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information.") (internal citations and quotations omitted); *Milner v. Nat'l School of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977) ("Answers must be complete, explicit and responsive. If a party cannot furnish details, he should say so under oath, say why and set forth the efforts he used to obtain the information. He cannot plead ignorance to information that is from sources

within his control. If a party is a corporation, information in the hands of its agents and others within its control must be supplied.").

Although defendants have since supplemented some outstanding discovery requests, and there is some newly disclosed information contained in the Combined Reply and Opposition, their responses remain deficient in significant ways. In the first instance, the list of searched files on pages 29 and 30 of the Combined Reply and Opposition omits any mention of UCAP's files. Not only does this omission beg even more questions about defendants' diligence, but, as noted in plaintiffs' initial brief in support of its motion to compel, even a list such as this falls short of answering the questions repeatedly posed by plaintiffs concerning whether defendants have searched all of their subsidiaries' files, or only those they deemed "appropriate," and whether they have searched for all responsive documents.

Defendants' most recent supplemental production of documents, consisting primarily of photocopies of excerpts from Dow annual reports, offers no comfort in this regard. Unless defendants provide detailed information about where and how they searched for responsive documents, plaintiffs must assume that defendants are in possession of additional responsive documents but will not be bothered to look for, retrieve, review, and produce them.

Defendants' recent supplemental interrogatory answers likewise fail to cure all the various defects that existed when plaintiffs submitted their motion to compel.[6] *See* Exhibit 8 (Supplemental Responses and Objections of Dow to Plaintiffs' Second Set of Interrogatories, dated May 24, 2004); Exhibit 9 (Supplemental Responses and Objections of UCC to Plaintiffs' Second Set of Interrogatories, dated May 24, 2004); Exhibit 10 (Supplemental Responses and Objections of UCAP to Plaintiffs' Second Set of Interrogatories, dated May 24, 2004). For example, in Interrogatory 3, plaintiffs asked defendants to: "[i]dentify each meeting or communication between any person employed by, representing or otherwise acting on behalf of a

---

[6] In addition, the supplemental interrogatory answers are technically defective inasmuch as they are unverified.

Defendant, and an end user of Products purchased from any Plaintiff or MVMS, and for each such meeting or communication state with particularity its date, the persons attending, sending or receiving the communication, and the subject matter discussed." In their supplemental responses, rather than providing the information as they represented they would, defendants assert without basis that the Request "remains hopelessly broad" and that documents have been produced reflecting meetings and/or communications between defendants and plaintiffs' customers. On its face, this response does not answer the interrogatory, nor do defendants even identify the documents alluded to by Bates number or otherwise. As previously remarked, and as shown by the documents submitted by plaintiffs in connection with the instant motions, this is information that is clearly within the possession of defendants and they should be compelled to answer the straightforward question posed by Interrogatory 3.

In Interrogatory 4, plaintiffs asked defendants to: "[i]dentify with particularity the process followed by each Defendant in connection with receiving, entering, accepting, processing and filling orders for Products from each Plaintiff and any other purchaser of Products." Here, again, defendants supplement their response by a vague reference to documents—"the available details of each transaction with Plaintiffs regarding the Products are recorded in the individual transaction documents already produced." Defendants do not identify a single transaction document by number or otherwise, but simply refer to another, single document that does not provide the requested description. Again, the information responsive to this Interrogatory is within defendants' possession; they said they would supplement their response to provide the information, and they have not. They should be compelled to give a full and complete answer.

In Interrogatories 5 and 7 plaintiffs seek the identity of each person employed, representing or otherwise acting on behalf of defendants in connection with, respectively, plaintiffs' orders and with the prices required to be charged by plaintiffs to its end user customers. In response to each Interrogatory, defendants refer to the transaction documents referenced, without identification, in the supplemental response to Interrogatory 4 and to the long list of names in the supplemental response to Interrogatory 2, which provides nothing but a name

and title. Then certain names are provided, but no information is stated, as requested, regarding the responsibilities of such persons, to whom they report, or who reports to them. At a minimum, such information should be compelled regarding the few individuals that are identified specifically in response to these Interrogatories.

In Interrogatory 8, defendants were asked to: "[i]dentify each person employed by, representing or otherwise acting on behalf of any Defendant with knowledge of any contract between any Plaintiff and any Defendant, and for each such person state with particularity his/her responsibilities and the persons to whom he/she reports." The supplemental responses do refer to certain documents by Bates number, but at the same time, assert a self-serving and inaccurate characterization of the Court's September 12, 2003 Order, and cite to the unidentified transaction documents referenced in the supplemental response to Interrogatory 4 and to "[r]elevant individuals" listed in response to Interrogatory 2. Plaintiffs are left to guess which of the individuals listed in response to Interrogatory 2 relate to the answer to this Interrogatory and what were their particular responsibilities concerning the subject matter inquired of.

Further, Interrogatory 10 asked defendants to "[i]dentify each order for Products proposed or placed by any Plaintiff that You rejected or declined to fill, and for each such order state the reasons for rejecting or not filling it, and identify each person with any responsibility or knowledge in connection with any such decision." In their supplemental responses, defendants do not even make a pretense of meeting their obligations, much less their representation that the responses would be supplemented with factual information. All that is stated is the patently inadequate response that defendants have made a "reasonable search for documents containing the requested information and documents identifying responsive orders have been produced."

These examples highlight defendants' purposeful efforts to undermine any meaningful discovery on the merits of this case. The Court should stand for this no longer, and compel defendants to respond fully to all outstanding discovery. Especially in light of defendants' ongoing conduct, they should also be directed to disclose and certify the details of their search efforts, and to do so expeditiously.

### III.   CONCLUSION

As the Court has acknowledged, the decisions on the parties' respective discovery motions will shape the course of this litigation through trial. The allegations in this international price-fixing case are far-reaching. It should hardly surprise defendants that discovery is likewise far-reaching. Defendants have successfully postponed their day of reckoning for long enough. Their motion for protective order should be denied, and plaintiffs' motion to compel should be granted.

June 10, 2004

Respectfully submitted,

**BINGHAM McCUTCHEN LLP**

_Richard S. Taffet_
Richard S. Taffet (ct 10201)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

THELEN REID & PRIEST LLP
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, NY 10022
(212) 603-2000 (tel)
(212) 603-2001 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of June, 2004, a copy of the foregoing Plaintiffs' Reply Memorandum in Further Support of Their Motion to Compel Production of Documents and Answers to Interrogatories has been hand-delivered to the following:

Craig A. Raabe, Esq.
Edward J. Heath, Esq.
Elizabeth A. Fowler, Esq.
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

and sent via FedEx to the following:

Andrew S. Marovitz
Britt M. Miller
Dana S. Douglas
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, IL 60603

Christopher J. Kelly
Mayer, Brown, Rowe & Maw LLP
1909 K Street
Washington, DC 20006-1157

/s/ Steven B. Malech
Steven B. Malech

\15726\1\44335.8