# EXHIBIT 1

**M D Kripalani**

| | |
|---|---|
| **From:** | Cheung L (Lawrence) [cheungl@ucarb.com] |
| **Sent:** | Montag, 28. August 2000 15:32 |
| **To:** | 'Kripalani Moti - Megavisa Bombay' |
| **Subject:** | RE: Meeting with M. Wildi |

Dear Moti, please ignore the email it was sent wrongly to you.

Regards
Wendy Lim
for Lawrence Cheung

> ----------
> From:        M D Kripalani[SMTP:kripalani@megavisa.com]
> Sent: Monday, August 28, 2000 5:03 PM
> To:   lawrence cheung (E-mail)
> Subject:      FW: Meeting with M. Wildi
>
> To : Lawrence Cheung
>
> Dear Lawrence,
>
> I am referring to your message reproduced below regarding meeting with Mr.
> M. Wildi on September 4th at 2.00 p.m.  I am  little confused, as I am not
> aware, who Mr. M. Wildi is?  Is this message meant for us or is it sent
> through oversight to us?  Please clarify.
>
> I also sent you a message this morning asking for meeting time with John
> Yimonyies.  I however understand from Ajay that you had indicated to him
> Friday, 1st Sept.10.00 a.m. meeting with John Yimonyies.  Would appreciate
> if you will reconfirm this, so that we are together.
>
> Thanks and Best Regards,
> Moti Kripalani
>
> -----Original Message-----
> From:Cheung L (Lawrence) [SMTP:cheungl@ucarb.com]
> Sent: Monday, August 28, 2000 11:08 AM
> To:   'Kripalani Moti - Megavisa Bombay'; 'Mittal Ajay - Megavisa Bombay'
> Subject:      FW: Meeting with M. Wildi
>
>
> Dear Ajay and Moti, for your info
>
> Regards
> Lawrence Cheung
>
> > ----------
> > From:        Cheung L (Lawrence)
> > Sent:        Tuesday, August 22, 2000 12:00 PM
> > To: Yimoyines JP (John)
> > Cc: Neri RG (Ron)
> > Subject:      Meeting with M. Wildi
> >
> >
> > Dear John,

1

M 30802

> >
> > I have spoken to M. Wildi and we have tentatively set up a meeting in
> > his
> > office on Sept 4 at 2.00 p.m.
> >
> > Best regards
> > Lawrence Cheung
> >
>
>

M 30803

# EXHIBIT 2

DS 208688
CONFIDENTIAL

> margins are at historic lows. The idea that we are a specialty business
> is being challenged. Let's talk soon.
>
> John Yimoyines
>
> ———
>
> From:    Cheung L (Lawrence)
> Sent: Tuesday, January 11, 2000 5:27 AM
> To:    Yimoyines JP (John)
> Subject:   RE: Problems with Indian customers due to non shipment of
> material.
>
> Dear John
>
> I have read Ajay's e-mail of January 6th. The facts mentioned therein are
> no exaggerations as the UCAP Team has also been deeply involved with all
> the issues, working very hard alongside with the Megavisa Team, providing
> the guidance, direction and monitoring the progress on each customer.
>
> Ajay and his team have given us the impression that they have been and
> continue to be working very hard to reach amicable resolution with each
> individual complainant. He has assured us, not once but on several
> occasions, that he is in full control of the whole matter. Unless there
> are reasons to think otherwise, we have chosen to remain optimistic that
> Ajay and his team are capable of looking after the interest of both UCC
> and Megavisa and hence will seek the best avenues to resolve the many
> thorny issues without the need to go through any legal litigation. We
> believe that Ajay and his team have their own Indian ways of overcoming
> the problems which we, as outsiders, may not have a true understanding and
> appreciation of the local Indian culture.
>
> From a UCAP perspective, we have quickly adapted ourselves to meet and
> satisfy the needs of the Corporation and changed the way in which we
> conduct the W&C business in Asia. Our top most business priority is to
> ensure improved returns to the Corporation. Competitive market price,
> which differs from one geographical region to another, is no longer a
> business priority or consideration if improved returns to the Corporation
> are not there. We have thus changed our image from one of being very
> customer focused to one where we care more for returns to the Corporation.
>
> The market price of commodity PE in Asia has declined significantly to the
> pre-Asian crisis level. The market price of LLDPE and HDPE is below the
> USD600 level whist the HP-LDPE is below the USD700 mark. The continued
> downward trend in both the oil and feed stock prices have put a tremendous
> pressure on our Asian business. The developments in Asia is markedly
> different from the US market. As we continue to maintain our pricing
> level, unyielding to competitive pressure and market price in return for
> improved net backs to the Corporation, there is a crying urgency for UCC
> Danbury to provide guidance to abate our fast declining sales. If not,
> our guesstimate for the business in Q1, 2000 will be very low.
>
> With kind regards
> Lawrence Cheung
>
>
>

# EXHIBIT 3

| To: | Mitra, Ashish (P) |
|---|---|
| From: | Deo, Pramod |
| Cc: | Marathe, Atul Gollerkeri, Sharad |
| Bcc: | |
| Date: | 2001-05-10 04:53.50 |
| Subject: | FW: Megavisa Calcutta Branch |

Ashish,

Attached is my report on Megavisa Calcutta Branch Operations If you have any questions on this let me know.

Best regards,

Pramod Deo.

Attachments:

CALCUTTA.DOC

DI4000964

## MEGAVISA CALCUTTA BRANCH OPERATIONS – AN ASSESSMENT

### PREAMBLE

A visit was made to MegaVisa, Calcutta Branch office on May 8th & 9th, 2001 by Pramod Deo of Dow, Mumbai office. The purpose of the visit was to overview the operations of MegaVisa, Calcutta Branch office and make an assessment as regards its role in promotion of UCC products.

The information was gathered by visiting MegaVisa office and godown in Calcutta, having in-depth discussion with MegaVisa branch employees and by visiting customers doing business with MegaVisa for UCC products. The observations made during the visit are detailed below with the overall impression about MegaVisa, Calcutta.

A. *MegaVisa, Calcutta Branch Office*:- MegaVisa Marketing & Solutions Ltd., has been operating its branch office in Calcutta since 1987. They have been in the existing office premises since 1989.

- **Location**
  The office is located on the Raffi Ahmed Kidwai Road in the central business district area of Calcutta. The office location is very close (2-minute walk) from the famous Park Street which houses offices of reputed business establishments in Calcutta.

- **Area**
  The office has a carpet area of around 150 sq. ft. It has a rental outgo of around Rs.15000/- per month.

- **Office Infrastructure**
  The office has 3 telephone lines (out of which one is tele/fax line) and 1 fax machine. It has 2 computer terminals and one more will get added soon. Office has an Internet connection with can facilitate business correspondence via email with outside world.

DI4000965

- **Licenses in Place**
  Legally the office is operating as a branch office of MegaVisa Marketing & Solutions Ltd. It is registered under Shops and Establishment Act and has the requisite Municipal licenses to operate as a business establishment. The branch office has Central Excise Registration Number and Sales Tax Number to enable it raise invoices for any sales undertaken from local stock. The branch also has bank account in HDFC bank where cheques can be deposited and funds can be transferred to and from Head Office.

- **Branch Reporting**
  The branch operation is administratively headed by Mr. Anish Ghosh based in Calcutta. Mr. Jalani from MegaVisa, Mumbai Head Office is responsible for overseeing the Branch Operations at Calcutta for administration purpose.

- **Future Plans**
  It was stated by branch people that MegaVisa is on the look out for a bigger and better office. They have plans to move to a new office which can accommodate 7 to 8 employees. This is more from the point of view of the portal business that MegaVisa is focussing on.

B.  _Branch Personnel_ :- The branch currently staffs 3 employees. Mr. Anish Ghosh who joined MegaVisa directly from UCC has been the founder member of the Calcutta office. The profiles of all the branch employees are covered here.

- **Mr. Anish Ghosh**
  Currently working as Manager joined MegaVisa in 1987 in Calcutta from UCC. He has over 20 years experience in the industry. Anish Ghosh is BSc (Chemistry) by qualification and has done a Post-graduate Diploma in Management. He has also attended various short-term management courses. He was also trained by UCC in Japan for over a week.

  Anish Ghosh started his career with Dupont agent in Calcutta and then moved on to Ion Exchange. He then joined UCC in its indenting business division in Calcutta.

- **Supratik Roy**
  Currently working as Asst. Manager – Marketing joined MegaVisa in Calcutta branch almost a decade ago. Supratik has over 12 years experience in industry.

  Supratik is B Tech in Polymers (which is a 3 years course after B.Sc Chemistry) from Calcutta University. He started his career with Dupont agent in Calcutta and then joined MegaVisa. He has been trained by UCC in Singapore

DI4000966

- **Joy Mukhopadhyay**
  Working as office assistant  Was hired as contract employee and was taken on MegaVisa roll in 1994.

  He started his career in MegaVisa as a stenographer and now also assists in office administration work

C. *Area Covered by MegaVisa, Calcutta Branch* :- The Branch Operations are responsible for doing business in West Bangal, Orissa, Bihar, Assam and other North Eastern states. They had made visits to Nepal & Bangladesh to explore business potential for specific products which were of interest to UCC then but never got involved actively in those countries

UCC has been operating in Nepal through their agent M/s. Tibrewalla and Sons Pvt. Ltd., based in Kathmandu (Tel nos. : 977-1-224749, Fax : 977-1-225493)

D. *Business conducted by MegaVisa, Calcutta:-* The branch people see good scope for promotion of UCC/DOW products in Paints, Packaging, Printing, Adhesive, Telecom industries. In year 2000 the branch did indenting business of the order of 1 MM USD and its ex-stock sales were around Rs.90 lac. Large parts of ex-stock sales were of Witco products, which are no longer there.

- **Major Products**
  The current focus of the branch operations is on the following major businesses
  - Vinyl Resins (total market 150 MT)
  - Wire and Cable (total market 17000 MT)
  - HEC (total market 70 MT)
  - Molecular Sieves belonging to UOP range (total market 80 MT)

  Apart from these there is also moderate potential for
  - Triton Series
  - Glutaraldehyde
  - Polyox

- **Ex-Stock v/s Indent Sales**
  Majority of the sales in the region are indent sales. Given below is the break up of 2001 sales plan based on ex-stock and indent sales.

| Product | Total Volume | Ex- Stock | Indent |
|---------|-------------|-----------|--------|
| Vinyl Resin | 100 MT | 35 MT | 65 MT |
| HEC | 60 MT | 10 MT | 50 MT |
| Wire & Cable | 1200 MT | Only indent sales subject to pricing support | |
| Molecular Sieves | 45 MT | 5 MT | 40 MT |

DI4000967

- **Major Customers**
  As stated the customers mostly belong to paint, printing, packaging, telecom sectors. Listed below are important customers for focussed businesses

  - Vinyl Resin – India Foils, Hindustan Seals
  - Wire & Cable – Hindustan Cables, Usha Beltron, Bihar Electronics
  - HEC – Berger, Jenson & Nicholson
  - Molecular Sieves – Haldia, Steels plants at Durgapur, Bokara, Rourkela etc.

- **Network of traders** :- All the sales are directly to end-users.

  The branch sees little value in operating through local traders.

E.  *Godown at Calcutta*  :- Godown is located in Chandni Street Area which is a wholesale market in Calcutta. The storage space (carpet) is around 120-150 sq. ft.

The godown is owned and managed by C&F agent (M/s. Alpha Assignments & Associates Ltd.) MegaVisa pays a fixed rental for godown plus the service charges for handling products for stock and sale.

The godown does not have any license for storage of chemicals & hazardous products due to its location   During the visit there was hardly any stock of products in the godown.

F.  *Customer Visits* :- We had planned to visit Berger Paints and Jenson & Nicholson Ltd with MegaVisa. Both these customers are key customers for UCC products handled by MegaVisa. We had a useful meeting with Berger, however, meeting with Jenson & Nicholson could not take place as the concerned person had to leave for factory for some urgent work.

Berger is buying HEC (almost 100% of their requirement) from UCC through MegaVisa. The purchase Manager at Berger Mr. Rajeev Mukherjee wanted to know the role of MegaVisa post UCC merger and said categorically that he would prefer to deal directly with Dow (as he has been doing already for epoxy resins)

Mr. Mukherjee also pointed out few pending business issues, which have not been satisfactorily resolved by MegaVisa for quite sometime.  He also passed on adverse remarks about the MegaVisa personnel he has been dealing with.

I did have a telephonic conversation with Mr. Prabal Ganguly of Jenson & Nicholson. He was keen to know about MegaVisa's role post UCC merger.

DI4000968

G.  *Overall assessment* - The MegaVisa office although in good locality is not in a good building.  The office interiors are done poorly and fail to give a good impression about the company.

The godown of MegaVisa is in wholesale market area, which is highly congested. The godown building is old and is in dilapidated condition. It is totally unfit to be used as a godown for storage of chemicals / Dow products.

The limited feedback received from an important customer like Berger Paints unfortunately portrayed MegaVisa personnel as opportunistic and non-committal.

Overall there is hardly any value that MegaVisa Calcutta Branch Operations can bring to Performance Chemicals Business.

H.  *Recommendations* : - The major customers should be handled directly by Dow, Mumbai office.

If required local traders or agents can be selectively involved to do the necessary follow up with customers locally.

* * * * * * * *

DI4000969

# EXHIBIT 4

To:        Mitra, Ashish
From:      Marathe, Atul
Cc:        Deo, Pramod; Gollerkeri, Sharad
Bcc:
Date:      2001-05-11 05:43:04
Subject:   Report on Megavisa's Hyderabad Office

---

Ashish

The attached is FYI.

Thanks.

ATUL

---

Attachments:

add hyd.doc
hyd.doc

DI4000970

## Contact List

| No | Company | Telephone Nos. | Contact Persons |
|---|---|---|---|
| 1. | DRL | 3731946 | Mr. K. Subramanium<br>Asst. Manager -- Strategic Sourcing |
| 2. | Aurobindo | 3741083/84 | Mr. Shashi Kumaran<br>Manager Materials<br><br>Mr. Srinivas<br>Dy. Manager |
| 3. | Everest Organics | | Mr. Madhusadan Rao<br>Manager Materials<br><br>Ms. Srimati<br>Executive materials |
| 4. | Godavari Drugs | 7849700 | Mr. K.K. Jain<br>Executive Director |
| 5. | Gayatri Chemicals | 7733065 | Mr. Ravi<br>Executive Director<br><br>Mr. Ramalinga Raju<br>Manager Commercial |
| 6. | Global Drugs | 651380/02/03 | Mr. Bhaskar Rao<br>Executive Director<br><br>Mr. Subramanian<br>Manager Materials |
| 7. | Quinn India | 3743155/<br>3746255 | Mr. Prasad<br>Managing Director<br><br>Mr. Mohan<br>Executive Materials |
| 8 | ICI | 3078887/<br>3078169/<br>3077605 | |

DI4000971

May 10, 2001

## Meeting with Megavisa Hyderabad Office on May 08, 2001

*Participants:*

Mr. Venkatesh K.
Asst. Manager
MegaVisa Marketing & Solutions Ltd
1-6-504 Street No.9, Zamistanpur
Musherabad, Hyderabad – 500 020
Tel : 040 6571703
Fax : 040 7620006 '
Email : venkatkumbham@yahoo.com

**Atul Marathe – Dow India**

**Background of Hyderabad Office & the Staff :**

- Mr Venkatesh is with Mega Visa for last 2 ½ years. He is M.Sc in Chemistry and has also done his diploma in Import-Export Management.

- He used to operate from their earlier office at Himayat Nagar from September 1998 till September 1999

- He then moved to Mumbai office from October 1999 till March 2000. At that time MegaVisa had no office/ representative in Hyderabad.

- He again went back to Hyderabad in April 2000. He used to operate from his residence till they hired this place about 1 ½ months back.

- The present office space is just about 220 sq feet and is taken on lease.

- As a part of infrastructure – the office has a telephone line & fax line. Venkatesh uses laptop for connectivity. I was also told that they would be moving out of this office into a bigger place in another few months time. This is mainly for the portal business, which they are engaged in.

- **Reporting** – Functionally Venkatesh reports to Moti Kriplani for **Performance Chemicals** and W&C and to Mr Jalani for **Molecular Sieves**. However – for respective businesses he also has a reporting line to Ananthkumar and other Business Managers within Megavisa like · Shrikant Naik , Nishit Mehta, etc.

DI4000972

## Area of Operation & Business Focussed

- Venkatesh is a one-man army with no assistance to help  He covers all of Andhra Pradesh.  Apart from the main city other business areas include Secunderabad, Vishakhapatanam, Kakinada (Nagarjuna Fertilizer), Rajamundry (ONGC) & Kurnool (Rayalseema- now called Allied Chemical)

## Major Businesses Covered

- Currently Venkatesh spends most of his time for **Wire & Cable, EDA, Piperazine Crude, SVR & Molecular Sieves.**

- He mainly deals in UCC products (as mentioned above) and of **Millikan, USA for Polypropylene Classifier.**

## Business Generated

Hyderabad Office generates about **0.3 MM USD P.A.** of **Indent Sales**.  This includes EDA, Piperazine and Wire and Cable  With Wire and Cable being < than 10%.

- It also generates about **0.1 MM USD P.A.** of Indent Sales of **Molecular Sieves**

- Local Sales (through Chennai Office) is about Rs. 20 Lac P.A. this includes SVR and Molecular Sieves

- No warehouse facility or stock points

- There are no other channels to market used by Hyderabad office.

- May be due to lack of resources there is not much focus on businesses like Cellosize, Polyox, Amerchol, Surfactants and Glut.

- Currently some activity at Dr. Reddy's Lab on Carbowax and for Glut at Quinn India is on.

- Major Customers for Wire & Cable are – Hindustan Cables , GR Cables , Techno Cables , Gem Cables  and for Molecular Sieves are – BHEL , Annapurna Kenmore.

- Present key customer  contacts ( mainly for PIP & EDA )and telephone numbers are included separately

DI4000973

Assessment:

- From the Performance Chemicals stand point – the major customer segment for the Hyderabad Office - appears to be the Bulk Drug industry ( Pip , EDA , etc ) where Dow should already be having good contacts or established business relations e.g. DRL , Aurobindo , Global Drugs , etc.

- The second industry appears to be the fragmented coatings industry for SVRs. ICI Paints who used to have their R&D in Hyderabad has moved its center to different places : like Mumbai , Delhi , etc and there are no decision-makers involved in Hyderabad plant.

- Though it is good to have some local presence – this can also be achieved by having suitable local traders who can do the required follow up. **Since there is no local stock business – all the Indent Sales should in any case come to Dow India for direct handling.**

- If  Dow decides to handle the business  in Hedarabad direct – I do not see any problem / issue in doing so

DI4000974

# EXHIBIT 5

LITDOCS:538051.1

To:        Mitra, Ashish (P)
From:      Gollerkeri, Sharad
Cc         Deo, Pramod; Marathe, Atul
Bcc:
Date:      2001-05-15 05:17:11
Subject:   MegaVisa Chennai Branch Report.

Ashish,
Attached is the report on Mega Visa Chennai Branch .

Best Regards,
Sharad Gollerkeri
Performance Chemicals -India.
Ph: +91-22-524 5830.
Fax:+91-22-524 6390.

Attachments:

MegaVisa Chennai.DOC

DI400099&

## MEGAVISA CHENNAI BRANCH ASSESSMENT

**Background :**

It had been earlier decided in an internal meeting at Dow India that each sales person would visit a Branch office of Mega Visa to asses the operations .

Subsequently a visit was made to MegaVisa, Chennai Branch office on May 10th, 2001 by Sharad Gollerkeri of Dow, Mumbai office. The overview the operations of MegaVisa, Chennai Branch office as regards to its role in promotion of UCC products. & the information gathered by visiting MegaVisa office and godown in Chennai is given below.
Finally general observations , inferences & comments are added

A.    *MegaVisa, Chennai Branch Office:-*

MegaVisa Marketing & Solutions Ltd., has been operating its branch office in Calcutta since 1997 . The office is located on Anna Salai , this is the central Biz District Area in Chennai.

- **Address :**
  MegaVisa Marketing Solutions Ltd.
  7K Anna Salai, 560-562 Century Plaza, Anna Salai,
  Teynampet, Chennai 600018 , Ph # +91 44 432 3964/ 4332204
  Fax # +91 44 433 2573, Email chennai@megavisa.com

- **Office Details :**
  The office has a carpet area of around 400 sq. ft.  It has a rental outgo of around Rs.12000/- per month.
  The office has 3 telephone lines (out of which one is tele/fax line) and 1 fax machine .  It has 2 computer terminals including UPS System.  Office has an Internet    connection        &      access     to     email    correspondence.

DI4000996

The Chennai office is operating as a branch office of MegaVisa Marketing Soultions Ltd & it is registered under the the Superintendent Of Central Excise 473 Anna Salai Chennai , Bearing ECC No AAA CM4042MXD002 & Central Sales Tax Number 700718 dated 30/1/97. This enables them to raise Invoices for sale from local stocks.

The Branch operation is administratively headed by Mr. Ananth Kumar based in Chennai & is designated Asst: General Manager

*Branch Personnel* :-

The branch currently employs 4 people :

- . **Ananth Kumar** who joined MegaVisa joined in 1986-87 & has been one of the founder members of Visa Petro Chemicals Prior to take over by Mittals currently Designated as Asst Genreral Manager . Ananth Kumar is BSc (Chemistry) by qualification . He has responsibility for the UCC- SP&P (including SVR, HEC, Biocides ; Amerchol , etc on an all India basis. Reporting to Mr. Jalani from MegaVisa, Mumbai Head Office . Presently Ananth is located in Chennai because of Family relocation .

- **Sraman Raj Jain** Currently working as Marketing Executive joined MegaVisa in Chennai branch recently . Sraman has 2 years experience in industry. B.E Chemical from Bangalore University. handels the Nitriol range of products (non UCC) & Molecular Sieves .

- **Rajendran** Working as office assistant. Responsible for Wharehousing office administration work & accounts

- One Office Professional Cum Telephone Operator.

DI4000997

B.   *Area & Biz Covered by MegaVisa, Chennai Branch :-*

The Branch Operations are responsible for doing business in Tamil Nadu, Kerala & Karanataka. However Srilanka operations are not managed by Megavisa.
The branch is looking towards development of Biz of Nitriol range of products.

The Chennai Branch was started with the relocation of Mr Ananth Kumar from B'bay, & had projected a Biz potential of 2 MM USD. With MegaVisa loosing Witco agency (Nitriol is a substitute), & having set backs in Wire & Cable. Their revenues have Shrunk & are very less - (indicated 35 Lacs.)

The Product Mix Handled from Chennai Branch presently is as foll:
- Vinyl Resins (total market 90-100MT)
- Nitriol Range Market
- HEC (total market 10-12MT)
- Molecular Sieves belonging to UOP range

Majority of the sales in the region are indent sales or handled thru Bombay Stocks. In SVR. Mega Visa has lost a Major Direct Indent customer at B'lore Incowax which has Potential of 60MT/Year. The Stock & Sale thru Chennai Warehouse is approx 4-6 MT/Annum & 25-30 MT thru Traders like Vimal, Aroma & JK.
HEC biz is about 10-12 MT.
**Major Customers**
Listed below are important customers for focussed businesses.

- Vinyl Resin – IncoWax, CDC Carboline

- HEC – ICI Paints, Ricket & Coleman
- Molecular Sieves – Manali
- Glutaraldehyde- ICI & Balmer Laurie.

C.   *Godown* :- The Godown/ Wharehouse is located at Kattabomman Street Ambal Nagar, Ekkaouthangal, Chennai 97. The storage space (carpet) is around 30ft X 15. ft. (450 sqft) Closed with Shutter. The godown is leased by MegaVisa Engg Ltd.*During the visit there was hardly any stock of products in the godown.*

No Customer Visit were possible in Chennai as it was a Local Holiday on10[th]May01.

DI4000998

D.    *Overall assessment*:-

The MegaVisa office though small (400 sqft ) is located  in the Central Biz District of Chennai.

The Chennai Branch  has lost biz especially due to withdrawal of support by Witco . They have also lost key large account of Incowax  in SVR . The Stock & Sale thru Chennai office for SVR is 4-6 MT (from Direct MegaVisa Stocks.) . Sale of 25-30MT is done thru Traders/Distributors like Vimal , Aroma etc.

No major value provided by stock point observed .  Further , viability of Chennai branch operation  may be a serious concern  with the present level of Biz.  Ananth Kumars location to Chennai  appears to be more of a matter of personal convenience than biz . Incidentally Mega Visa has asked Ananth to Relocate to Mumbai within 10-15 days .

E.    *Recommendations*: -

The major customers should be assimilated into the Dow at the earliest.

* * * * * * * *

DI4000999

# EXHIBIT 6

To:          Mitra, Ashish (P); Marathe, Atul; Gollerkeri, Sharad; Deo, Pramod; Babu, Vipul (VH); Nayak,
Chandrakant; Shenoy, Sudhir; Bhavsar, Chirag; Itagi, K.p.
From:        Kumar, Mukul (M)
Cc:          Ravi, Muthukrishnan; Vora, Anand (K)
Bcc:
Date:        2001-09-05 03 40 39
Subject:     MEGAVISA Customers Update

Guys,

Please Update the enclosed file with names of Megavisa Customers for your business. Please also indicate payment term, I need to check whether we already have Liable Codes for these customers. If we do not have a liable code and if any direct sales are anticipated in future then a new liable code addition request needs to be originated from your end.

Chirag/Sudhir/K.P./Chandrakant,

Please add a separate worksheet if you have any such customers. If not then please send a negative confirmation.

regards,

Mukul Kumar
Dow India Treasury
*  91-22- 5978 533 * (Cell): 91 98200 29623
*91-22-523 1407 *mkumar@dow.com

Attachments:

Megavisa Customers.xls

DI4001402

# EXHIBIT 7





## ® NIKHIL ADHESIVES LTD.

39, Gundivali, Off Sir M. V. Road, Andheri (E), Mumbai-400 069.
Tel.: 834 2730 / 834 7973 • Fax: 91-22-835 0759 • E-Mail: nikhil_adhesives@hotmail.com

March 26, 2002

**Mega Visa Marketing & Solution Ltd.**
5th floor, "C" Wing, Twin Arcade,
Military Road, Marol, Andheri(East),
<u>Mumbai.</u>

Dear Ajay,

Received your letter dated 21st March regarding Dow and Mega Visa relationship. I was not surprised at this, if you recall sometime in early January this year, I had called you to say that Ashish Mitra whom we had first met with Moti Kriplani last year had talked to do business directly, bypassing Mega Visa. I was definitely surprised then as Mega Visa has been servicing UCC/Dow for such a long period and had developed their market for various products.

Any how since this decision has been taken we will have no choice but to deal with Dow directly, as they are among the few who have the products that we require regularly, in any case we will keep in touch with you to explore new business or sources in future.

Wishing you all the best.

Regards.

Umesh Sanghvi.
( Nikhil Adhesives Ltd. )

M 08891

# EXHIBIT 8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : Civil No. 3:02 CV 1107 (AVC) <br> : |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., | : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : May 24, 2004 |

### SUPPLEMENTAL RESPONSES AND OBJECTIONS OF DEFENDANT THE DOW CHEMICAL COMPANY TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

The Dow Chemical Company ("Dow"), by and through its attorneys and pursuant

to Fed. R. Civ. P. 33, hereby submits its supplemental responses and objections to

Plaintiffs' Second Set of Interrogatories.

### GENERAL OBJECTIONS

1.      Dow objects to the Second Set of Interrogatories on the grounds that they

are vague, ambiguous and overly broad in their use of the term "Products." The term

"Products" as defined in Plaintiffs' First Amended Complaint, and as used in the Second

Set of Interrogatories, identifies broad categories of chemicals and polymers, each of

which includes a large number of individual products that are irrelevant to this litigation.

2.      Dow objects to the definition of "you" and "your" as overly broad and

unduly burdensome.

3.      Dow objects to each Interrogatory to the extent that it calls for information protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection from discovery. To the extent that any information or documents subject to a privilege or otherwise protected from discovery are supplied in response to these Interrogatories, such production is inadvertent and not intended as a waiver.

4.      Dow objects to Plaintiffs' instruction as to the relevant time period on the grounds that it seeks information not relevant to any claim or defense in the case, is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome. Unless otherwise stated herein, the relevant time period for Dow's responses will be February 6, 2001 to March 31, 2002.

5.      Dow objects to each Interrogatory and to Plaintiffs' Definitions and Instructions to the extent they purport to impose upon Dow obligations greater than those required by Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Connecticut.

6.      Dow objects to the Second Set of Interrogatories to the extent they purport to require Dow to gather potentially responsive information from its foreign subsidiaries that have been dismissed by the Court for lack of personal jurisdiction.

7.      Dow objects to Plaintiffs' Second Set of Interrogatories on the grounds that they are overly broad, unduly burdensome and irrelevant to the extent they purport to require Dow to gather information from subsidiaries, affiliates and business units that are not parties to, or at issue in, this litigation.

8.     Dow incorporates by reference the general and specific objections asserted in its Answers and Objections to Plaintiffs' First Set of Interrogatories.

9.     Dow objects to Plaintiffs' Second Set of Interrogatories to the extent they seek information and/or documents beyond the custody, possession, or control of Dow and/or seek information and/or documents currently in Plaintiffs' possession, thus making the Requests unduly burdensome.

10.     Dow objects to Plaintiffs' Second Set of Interrogatories on the ground of undue burden to the extent that they seek publicly-available information.

11.     Nothing herein shall be construed as an admission by Dow regarding the competence, admissibility, relevance of any fact or document, or as an admission of the truth or accuracy of any characterization or document of any kind sought by Plaintiffs' Second Set of Interrogatories. Dow reserves its right to challenge the competency, relevance, materiality, and admissibility of any documents Dow produces in response to any interrogatory at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action. Furthermore, whether Dow answered part or all of any particular Interrogatory is not intended and should not be construed as a waiver by Dow of all or any objection to such interrogatory.

12.     Dow's provision of information in response to these Interrogatories is not an indication or admission that such information was known to or possessed by Dow during the term period to which the information pertains. Nor is the provision of such information herein an indication or admission that the information reflects the activities of Dow. Certain of the information provided herein pertains to the activities of other

- 3 -

entities, such as Union Carbide Corporation ("UCC"), as well as various subsidiaries or affiliates of Dow or UCC operating abroad.

13.     These general objections are incorporated by reference into Dow's responses to each of Plaintiffs' Second Set of Interrogatories. The fact that an answer is given or documents provided does not waive any general or specific objection.

14.     Dow's response that documents will be produced or have been produced means that Dow will produce, or has produced, documents responsive to an interrogatory if they exist, are in Dow's possession, custody or control, and are not privileged or otherwise protected from discovery.

15.     Dow expressly reserves its right to subsequently produce responsive material or modify these responses as necessary.

## INTERROGATORIES

1.     Identify, to the extent not previously provided, all information responsive to each interrogatory set forth in Plaintiffs' First Interrogatories, attached hereto at Tab A.

### RESPONSE:

Dow objects to this Interrogatory to the extent it seeks information that exceeds the scope of the three claims that remain in this case after the Court's rulings of September 12 and 15, 2003. Dow objects that it is improper for Plaintiffs to incorporate, in their entirety, a set of interrogatories that was (1) served prior to the dismissal of nine out of twelve of Plaintiffs' initial claims, (2) already responded and objected to by Defendants, and (3) already addressed by the Court, without Plaintiffs first narrowing those interrogatories to what remaining discovery Plaintiffs now need in this case.

Subject to and without waiving these or its General Objections, Dow is willing to consider, as part of the meet and confer process, a narrowed Interrogatory that reflects the claims still at issue in this litigation.

**SUPPLEMENTAL RESPONSE:**

During the parties' December 3, 2003 discovery conference, Plaintiffs clarified that this Request was served to ensure that an appropriate search for information was made in response to Plaintiffs' First Interrogatories. Dow confirms that such a search was conducted.

2.    Identify the responsibilities in connection with the sale of Products of each person identified in Request Nos. 31 and 32, or in documents responsive thereto, of Plaintiffs' Second Request To Defendants For Production Of Documents of even date.

**RESPONSE:**

Dow objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense of any party, is unreasonably cumulative and duplicative of other discovery provided to Plaintiffs, and is unduly burdensome. Dow further objects to this Interrogatory on the grounds that it is so vague and ambiguous as to the definition and scope of the phrase "responsibilities in connection with the sale of Products" that Dow cannot meaningfully respond to this Interrogatory. Dow also objects to this Interrogatory on the grounds that the burden and expense of identifying the "responsibilities" of each person identified in documents produced by Dow responsive to Requests 31 and 32 of Plaintiffs' Second Set of Document Requests outweighs its likely benefit, if any.

Subject to and without waiving the these or its General Objections, Dow asks
Plaintiffs to provide a more specific definition of the phrase "responsibilities in
connection with the sale of Products" and otherwise narrow the scope of this
Interrogatory to "responsibilities" that are relevant to the three remaining claims in this
litigation.

## SUPPLEMENTAL RESPONSE:

During the parties' December 3, 2003 discovery conference, Plaintiffs agreed to
narrow this Request to the identification of the job title (or brief description of duties, if
the job title is substantially different) for each individual identified in Document Request
No. 31. The information provided pertains only to the relevant time period and does not
suggest that any individual listed below is currently employed by Dow. Dow also states
that discovery is ongoing and investigation continues. Consistent with the parties'
agreement and without waiving any of its objections, Dow answers as follows

| Vipal Babu | Account Manager, BS&M, Polyethylenes & Wire & Cable, Dow Chemical International Private Ltd. |
|---|---|
| Charles Bell | Global Human Resources Director, The Dow Chemical Company |
| Lawrence Cheung | Senior Regional Sales Manager, BS&M, Polyolefins & Marketing & Sales; Senior Regional Commercial Manager, BS&M, Polyolefins & Marketing & Sales, Dow Chemical Pacific (Singapore) Pte. |
| Pramod Dharnidhar Deo | Account Manager, BS&M, Performance Chemicals, Dow Chemical International Private Ltd. |
| Kevin Dillan | Business Director, BS&M, Ethyleneamines/Oxide Derivatives; Senior Director, Executive Management, The Dow |

| | Chemical Company |
|---|---|
| Wilson Foo | Marketing Manager, BS&M, Performance Chemicals/Oxide Derivatives, Dow Chemical Pacific (Singapore) Pte. |
| Graham Fox | Regional General Manager; Commercial Director, Middle East & Indian Subcontinent, DCOMCO Inc. |
| Sharad Gollerkeri | Specialty Account Manager, Liquid Separations and Performance Chemicals; Dow Chemical International Private Ltd. |
| Gary Honson | Senior Market Manager, BS&M, Performance Chemicals, Dow Chemical (Australia) Ltd. |
| Allan (Tison) Keel | Customer Interface Commercial Leader, Chemicals & Performance Chemicals, The Dow Chemical Company |
| Mukul Kumar | Credit Manager, Treasury-India; CFS Analyst, Treasury-India, Dow Chemical International Private Ltd. |
| Kit Cheong Dicky Leung | Senior Marketing Manager, BS&M, Organics Intermediates Solvents & Monomers, Dow Chemical Pacific (Singapore) Pte. Ltd. |
| Andrew N. Liveris | Business Group President, Performance Chemicals, The Dow Chemical Company |
| Atul Avinash Marathe | Senior Account Representative, BS&M, Performance Chemicals, Dow Chemical International Private Ltd. |
| Michael Marinaccio | Global Business Director, Organic Intermediates, Solvents & Monomers; Senior Director, Executive Management, Organic Intermediates, Solvents & Monomers, The Dow Chemical Company |
| Lee McMaster | Business Group President, Chemicals Business Group, The Dow Chemical Company |
| Ashish Mitra | Senior Account Manager, BS&M, Specialties Europe; Manager, BS&M, Chemicals Env. Ops. & Lic Marketing & Sales, Dow Chemical International Private |

| | Ltd. |
|---|---|
| Paul Wing Fong Ng | CFS Analyst, Treasury, South Asia Treasury, Dow Chemical Pacific (Singapore) Pte. Ltd. |
| Ng Siew Kwan | Credit Manager, Singapore & Malaysia, Dow Chemical Pacific Singapore, Ltd. |
| Horacio Percossi | Director, R&D, Performance Chemicals GB Leadership Team, Dow Europe S.A. |
| Albert Poh | Senior Marketing Manager, BS&M, Performance Chemicals, Dow Chemical Pacific (Singapore) Pte. Ltd. |
| Muthukrishnan Ravi | Senior Leader, Executive Management, Middle East & India Region, DCOMCO Inc. Hong Kong |
| Roziahwattie Rozli | Customer Service Representative, BS&M, Dow Chemical Pacific Singapore, Ltd. |
| Arjun P. Samtani | Managing Director, Business Director, Industrial & Performance Chemical Products, The Dow Chemical Company Asia Pacific |
| Juergan Voelker | Sales Director, BS&M, Chemicals Env Ops & Lic Marketing & Sales, Dow Deutschland Inc. |
| Anand Vora | Senior Finance Analyst, Treasury-India; Regional Finance Director, Treasury Management, Middle East, Dow Chemical International Private Ltd. |
| N.A. Wyhs | Director, BS&M, Organic Intermediates, Solvents & Monomers, The Dow Chemical Company |
| Markus Wildi | Commercial Director, Polyethylene, Dow Europe |
| John Yimoyines | Business Vice President, Wire & Cable Compounds, The Dow Chemical Company |

3.    Identify each meeting or communication between any person employed by, representing or otherwise acting on behalf of a Defendant, and an end user of

Products purchased from any Plaintiff or MVMS, and for each such meeting or communication state with particularity its date, the persons attending, sending or receiving the communication, and the subject matter discussed.

**RESPONSE:**

Dow objects to this Interrogatory on the grounds that it is overly broad and vague, seeks information that is not relevant to any claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is cumulative and duplicative of discovery already produced by Dow in this litigation, and is unduly burdensome. It is not possible for Dow to "identify each meeting or communication" between any employee or representative of Dow and any "end user of Products purchased from Plaintiff or MVMS." Moreover, Plaintiffs have refused to identify either (a) the alleged misrepresentations that purportedly form the basis of Plaintiffs' claim for negligent misrepresentation, or (b) the end-user customers whose relationships with Plaintiffs allegedly were adversely affected by those alleged misrepresentations, such that Dow cannot possibly identify, with any specificity, the particular meetings or communications, if any, that may be responsive to this Interrogatory and relevant to this case.

Dow further objects to this Interrogatory because it is premature. Plaintiffs possess documents and information concerning the "end users" of Dow products purchased from Plaintiff and/or MVMS and Plaintiffs have not yet produced that discovery to Dow. Dow therefore objects to Interrogatory No. 3 to the extent that it seeks information and/or documents currently in Plaintiffs' possession or that can be obtained just as easily by Plaintiff as by Dow, thus making the Interrogatory unduly burdensome.

**SUPPLEMENTAL RESPONSE:**

The Request for an identification of all communications for a multi-year period remains hopelessly broad. Without waiving any of its objections, Dow has produced non-privileged documents in its possession, custody or control that reflect meetings and/or communications between itself and end users of Products that Dow knew at the time purchased the same Products from a Plaintiff or MVMS. If additional responsive, non-privileged documents are located in the transaction documents, they will be produced.

4.    Identify with particularity the process followed by each Defendant in connection with receiving, entering, accepting, processing and filling orders for Products from each Plaintiff and any other purchaser of Products.

**RESPONSE:**

Dow objects to this Interrogatory on the grounds that it is vague and overbroad, seeks information that is not relevant to any claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is cumulative and duplicative of discovery already produced by Dow in this litigation, and is unduly burdensome. As an initial matter, Interrogatory No. 4 seeks information that is not within Dow's possession, custody, or control. Moreover, Interrogatory No. 4 is so vague and ambiguous as to the definition and scope of the term "process" that Dow cannot meaningfully respond to this Interrogatory. Finally, it is not possible, and thus it is unreasonably burdensome, for Dow to describe "with particularity" the manner in which it conducted its sales procedures with respect to every single purchaser of Dow's Products over the time period at issue.

Subject to and without waiving these or its General Objections, Dow is willing to consider, as part of the meet and confer process, a narrowed Interrogatory that reflects the claims still at issue in this litigation.

**SUPPLEMENTAL RESPONSE:**

Without waiving its objections, Dow responds that the available details of each transaction with Plaintiffs regarding the Products are recorded in the individual transaction documents already produced. Dow further refers Plaintiffs to document DI4001147.

5.  Identify each person employed by, representing or otherwise acting on behalf of any Defendant with direct or indirect responsibility for receiving, entering, accepting, processing and filling orders of Products from any Plaintiff or any other purchaser, and for each such person state with particularity his/her responsibilities and the persons to whom he/she reports directly and indirectly.

**RESPONSE:**

Dow objects to this Interrogatory on the grounds that it is vague and overbroad, seeks information that is not relevant to any claim or defense of any party, is cumulative and duplicative of discovery already produced by Dow in this litigation, and is unduly burdensome. First, Interrogatory No. 5 is so vague and ambiguous as to the definition and scope of the term "indirect" that Dow cannot meaningfully respond to this Interrogatory. Moreover, it is not possible, and thus it is unreasonably burdensome, for Dow to identify "each person" directly or indirectly involved in the sale of each and every Dow product over the period at issue in this litigation, much less state "with

- 11 -

particularity his/her responsibilities" and/or the "persons to whom he/she reports [or presumably reported] directly or indirectly."

Subject to and without waiving these or its General Objections, Dow asks Plaintiffs to provide a more specific definition of the term "indirect" as it is used in this Interrogatory and narrow the scope of this Interrogatory to information that is relevant to the three remaining claims in this litigation.

### SUPPLEMENTAL RESPONSE:

Without waiving its objections, Dow responds that individuals with decision making authority or with direct contact with Plaintiffs and who were responsible for processing the Product transactions with Plaintiffs are identified in the individual transaction documents already produced. *See, e.g.,* Supplemental Response to Interrogatory No. 4, above. Further, Dow provided a lengthy list of job titles above in Supplemental Response to Interrogatory No. 2. Dow states that discovery is ongoing and investigation continues. At certain times, Roziahwattie Rozli, Jovin Sum, and Christina Yeo may have been responsible for processing the Product transactions with Plaintiffs.

6.    Identify each person employed by, representing or otherwise acting on behalf of any Defendant with direct or indirect responsibility for assessing, evaluating or analyzing competition for Products sold in or from the United States, and in or to any other country, and for each such person state with particularity his/her responsibilities and the persons to whom he/she reports, directly or indirectly.

### RESPONSE:

Dow objects to Interrogatory No. 6 on the grounds that it is vague and overbroad, seeks information that is not relevant to any claim or defense of any party, is cumulative

- 12 -

and duplicative of discovery already produced by Dow in this litigation, and is unduly burdensome. First, Interrogatory No. 6 is so vague and ambiguous as to the definition and scope of the phrases "indirect" and "assessing, evaluating or analyzing competition" that Dow cannot meaningfully respond to this Interrogatory. Moreover, it is not possible, and thus it is unreasonably burdensome, for Dow to identify "each person" directly or indirectly involved in Dow's competitive activities – both in the United States and abroad – over the period at issue in this litigation, much less state "with particularity his/her responsibilities" and/or the "persons to whom he/she reports [or presumably reported], directly or indirectly."

Subject to and without waiving these or its General Objections, Dow asks Plaintiffs to provide a more specific definition of the phrases "indirect" and "assessing, evaluating or analyzing competition" as they are used in this Interrogatory and narrow the scope of this Interrogatory to information that is relevant to the three remaining claims in this litigation.

7.    Identify each person employed by, representing or otherwise acting on behalf of any Defendant with direct or indirect responsibility for assessing, evaluating, determining or establishing the price to be charged end-users of Products, and for each such person state with particularity his/her responsibilities and the persons to whom he/she reports.

**RESPONSE:**

Dow objects to Interrogatory No. 7 on the grounds that it is vague and overbroad, seeks information that is not relevant to any claim or defense of any party, is cumulative and duplicative of discovery already produced by Dow in this litigation, and is unduly

- 13 -

burdensome. Like Plaintiffs' previous Interrogatories, Interrogatory No. 7 is so vague and ambiguous as to the definition and scope of the phrases "indirect" and "assessing, evaluating, determining or establishing the price to be charged" that Dow cannot meaningfully respond to this Interrogatory. And again, it is not possible, and thus it is unreasonably burdensome, for Dow to identify "each person" directly or indirectly involved in end-user pricing of Dow's products over the period at issue in this litigation, much less state "with particularity his/her responsibilities" and/or the "persons to whom he/she reports [or presumably reported], directly or indirectly."

In addition, Dow objects to this Interrogatory to the extent it seeks information that is not within Dow's possession, custody, or control. Plaintiffs and other third parties outside of Dow's control possess documents and information concerning their pricing of Dow products sold to end-users. Dow therefore objects to Interrogatory No. 7 to the extent that it seeks information and/or documents currently in Plaintiffs' possession or that can be obtained just as easily from third parties by Plaintiff as by Dow, thus making the Interrogatory unduly burdensome.

Subject to and without waiving these of its General Objections, Dow asks Plaintiffs to provide a more specific definition of the phrases "indirect" and "assessing, evaluating or analyzing competition" as they are used in this Interrogatory and narrow the scope of this Interrogatory to information that is relevant to the three remaining claims in this litigation. Plaintiffs are also referred to Dow's answers to Plaintiffs' First Set of Interrogatories, answers 8, 9 and 10.

**SUPPLEMENTAL RESPONSE:**

Without waiving its objections, Dow responds that individuals having some responsibility for prices to be charged for the sale of Products to customers in India are identified in the individual transaction documents already produced. *See, e.g.,* Supplemental Response to Interrogatory No. 4, above. Further, Dow provided a lengthy list of job titles above in Response to Interrogatory No. 2. Dow states that discovery is ongoing and investigation continues. Again without waiving its objections, Dow identifies the following individuals who had such authority at certain times: Vipal Babu, Lawrence Cheung, Pramad Deo, Graham Fox, Sharad Gollerkari, Gary Honson, Atul Avinash Marathe, Ashish Mitra, Horacio Percossi, Albert Poh, Arjun Samtani, Walter Scherrer, and Juergen Voelker.

8.    Identify each person employed by, representing or otherwise acting on behalf of any Defendant with knowledge of any contract between any Plaintiff and any Defendant, and for each such person state with particularity his/her responsibilities and the persons to whom he/she reports.

**RESPONSE:**

Dow objects to Interrogatory No. 8 on the grounds that it is vague and overbroad, seeks information that is not relevant to any claim or defense of any party, is cumulative and duplicative of discovery already produced by Dow in this litigation, and is unduly burdensome. First, it is not possible, and thus it is unreasonably burdensome, for Dow to identify "each person" employed by any Defendant who may have had *any* "knowledge" of "any contract" between Plaintiff and "any Defendant" over the period at issue in this litigation, much less state "with particularity his/her responsibilities" and/or the "persons

- 15 -

to whom he/she reports [or presumably reported]." Second, Dow objects to Interrogatory No. 8 on the ground that Plaintiffs have thusfar refused to identify any particular contracts upon which they purport to base their breach of contract claim, and, therefore, Dow is unable to identify the persons most knowledgeable about said alleged contracts. Furthermore, the names of the persons affiliated with any defendant who had the most direct knowledge concerning any contracts between any of the Defendants and any of the Plaintiffs appear on the transaction documents that already have been produced to Plaintiffs by Dow or UCC. For example, Plaintiffs are referred to documents produced as DS200000 to DS236036.

Subject to and without waiving the these or its General Objections, Dow asks Plaintiffs to provide a more specific definition of the term "knowledge" as it is used in this Interrogatory, identify the contracts Plaintiffs' allege form the basis for their breach of contract claim, and otherwise narrow the scope of this Interrogatory.

### SUPPLEMENTAL RESPONSE:

In its September 12, 2003 Order, the Court "agree[d] with the defendants that the letter agreements do not constitute enforceable contracts as they are unenforceable for want of mutuality." Order at 21. Accordingly, without waiving its objections, the individuals with knowledge of any "contract" between a Plaintiff and Defendant will be those with knowledge of the orders reflected in the transaction documents already produced with regard to specific orders that Defendants agreed to make. *See, e.g.* Supplemental Response to Interrogatory No. 4, above. Relevant individuals are listed within those transaction documents and in response to Interrogatory No. 2, above. Dow further refers Plaintiffs to documents produced as DI01499 to 23587.

- 16 -

9.    Identify each contract that existed between any Plaintiff and any

Defendant, and for each state the terms thereof.

**RESPONSE:**

Dow objects to Interrogatory No. 9 on the grounds that it is vague and overbroad,

seeks information that is not relevant to any claim or defense of any party, seeks

information not within Dow's possession, custody, or control, is cumulative and

duplicative of discovery already produced by Dow in this litigation, and is unduly

burdensome. Dow further objects to Interrogatory No. 9 on the ground that Plaintiffs

have thusfar refused to identify any particular contracts upon which they purport to base

their breach of contract claim, and, therefore, Dow is unable to identify the persons most

knowledgeable about said alleged contracts. Finally, inasmuch as Plaintiffs are the only

ones who presently know which contracts they claim have been breached, the

information sought by this Interrogatory is in the sole possession of Plaintiffs and

therefore beyond Dow's control.

**SUPPLEMENTAL RESPONSE:**

In its September 12, 2003 Order, the Court "agree[d] with the defendants that the

letter agreements do not constitute enforceable contracts as they are unenforceable for

want of mutuality." Order at 21. During the parties' December 3, 2003 discovery

conference, Plaintiffs agreed that the production of the individual transaction documents

and letter agreements satisfies this Request. Those materials have been produced. *See*

Supplemental Response No. 4, above. Further and without waiving its objections, Dow

directs Plaintiffs' attention to letter agreements at D00619 – D00620; D00613; D00618;

D00616 – D00617; D00614 – D00615; M0009 – M0010.

10.    Identify each order for Products proposed or placed by any Plaintiff that You rejected or declined to fill, and for each such order state the reasons for rejecting or not filling it, and identify each person with any responsibility or knowledge in connection with any such decision.

**RESPONSE:**

Dow objects to Interrogatory No. 10 on the grounds that it is vague and overbroad, seeks information that is not relevant to any claim or defense of any party, is cumulative and duplicative of discovery already produced by Dow in this litigation, and is unduly burdensome. As an initial matter, it is not possible, and thus it is unreasonably burdensome, for Dow to identify, for the period at issue in this litigation, "each order" by any Plaintiff that was not filled, why it was not filled, and "each person" with "knowledge" related to any such "unfilled" order. Moreover, Plaintiffs have refused to identify any orders for Dow products that Plaintiffs contend they proposed or placed and that Defendants purportedly rejected or declined to fill. Finally, inasmuch as Plaintiffs are the only ones who presently know which orders they claim were proposed or placed and that Defendants purportedly rejected or declined to fill as part of the conduct alleged in the Amended Complaint, the information sought by this interrogatory is in the sole possession of Plaintiffs and thus cannot be produced by Dow in response to these Interrogatories.

Subject to and without waiving the these or its General Objections, Dow asks Plaintiffs to identify the "orders" Plaintiffs' allege were rejected or otherwise not filled by Defendants, and otherwise narrow the scope of this Interrogatory.

## SUPPLEMENTAL RESPONSE:

Subject to and without waiving any of its objections, Dow states that it has made a reasonable search for documents containing the requested information and documents identifying responsive orders have been produced.

11.    Identify each plant or facility both in and outside the United States that manufactured or produced Products sold to any Plaintiff.

## RESPONSE:

Dow objects to Interrogatory No. 11 on the grounds that it vague and overbroad, seeks information that is not relevant to any claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome. First, it is unclear from the text of the Interrogatory whether Plaintiffs are asking for the manufacturing/production origin of the final Dow products or their feedstock chemicals. Second, it is unreasonably burdensome for Dow to identify manufacturing origin of each Dow "Product" (as that term is defined by Plaintiffs' First Amended Complaint"), or feedstock chemicals of each Product, that was sold to "any Plaintiff" during the period at issue in this litigation.

Subject to and without waiving the these or its General Objections, Dow asks Plaintiffs to provide a more specific definition of the terms "manufacturing" and "produced" as they are used in this Interrogatory and narrow the scope of this Interrogatory, identifying how the requested information is relevant to the three remaining claims in this litigation.

**SUPPLEMENTAL RESPONSE:**

Without waiving its objections, Dow states that its manufacturing facilities are identified on its website, www.dow.com. Dow further states that it is aware that UCC manufactured Products in Louisiana, New Jersey, Texas and West Virginia, and Dow has manufactured Products in Belgium and other European countries.

Dated: May 24, 2004

AS TO OBJECTIONS:

*Dana S. Douglas*

Andrew S. Marovitz
Britt M. Miller
Dana S. Douglas
MAYER, BROWN, ROWE & MAW LLP
190 South La Salle Street
Chicago, IL 60603
(312) 782-0600

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

Attorneys for Defendant
The Dow Chemical Company

## CERTIFICATE OF SERVICE

I, Dana S. Douglas, do hereby certify that I caused a true and correct copy of the

Supplemental Responses And Objections Of Defendant The Dow Chemical Company To

Plaintiffs' Second Set of Interrogatories to be served this date on the following:

<table>
<tr><td>Robert M. Langer<br>WIGGIN & DANA LLP<br>One City Place<br>185 Asylum Street<br>Hartford, CT 06103-3402</td><td>Richard S. Taffet<br>BINGHAM MCCUTCHEN LLP<br>399 Park Avenue<br>New York, N.Y. 10022</td></tr>
</table>

Dated:  May 24, 2004

Dana S. Douglas