**EXHIBIT 6**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES INC., MM GLOBAL SERVICES PTE. LTD., and MEGAVISA SOLUTIONS (S) PTE. LTD., | : <br> : <br> : <br> : |
| Plaintiffs, | : Civil No. 302 CV 1107 (AVC) |
| -v- | : <br> : |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., | : <br> : <br> : <br> : February 13, 2004 <br> : |
| Defendants. | : |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *F. HOFFMANN-LA ROCHE, LTD V. EMPAGRAN, S.A.***

THELEN REID & PRIEST LLP
  Richard S. Taffet (ct 10201)
  Paul A. Winick (ct 21813)
  Alyson L. Redman (ct 25494)
  875 Third Avenue
  New York, New York 10022-6225
  (212) 603-2000

WIGGIN & DANA LLP
  Robert M. Langer (ct 06305)
  Suzanne E. Wachsstock (ct 17627)
  One CityPlace
  185 Asylum Street
  Hartford, Connecticut 06103-3402
  (860) 297-3724

Attorneys for Plaintiffs MM Global Services Inc., MM Global Services Pte. Ltd., and MegaVisa Solutions (S) Pte. Ltd.

# TABLE OF CONTENTS

**PAGE(s)**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

I. DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN OF SHOWING THE NECESSITY FOR A STAY ........................................................... 5

    A.    *Empagran* Will Not Be Dispositive Of This Case ................................................ 7

        1.    Defendants improperly presume the Supreme Court will rule consistent with their position ........................................................... 7

        2.    Supreme Court reversal in *Empagran* will not dispose of this case ............ 8

    B.    Defendants Have Not Shown They Will Suffer Hardship Or Inequity Absent A Stay ........................................................................................ 11

II.    A STAY OF INDEFINITE DURATION IS IMPERMISSIBLE ..................................... 12

III.    PLAINTIFFS WILL SUFFER UNDUE PREJUDICE .................................................. 15

IV.    CONSIDERATIONS OF JUDICIAL ECONOMY COMPEL DENIAL OF THE STAY MOTION .......................................................................................... 16

CONCLUSION ....................................................................................................................... 17

> same no matter which side of the debate we joined. These
> plaintiffs have not only alleged that the defendants engaged in
> a conspiracy that had direct, substantial, and reasonably
> foreseeable effect in U.S. domestic commerce; they also alleged
> that they themselves suffered injury in the United States as a
> result of physical copper transactions that took place within
> the United States or copper futures transactions on a U.S.
> exchange. This is enough we believe, to satisfy even the panel
> majority in *Den Norske*.

325 F.3d at 840-841. In particular, the Court pointed to the plaintiffs' allegations that: (i) they traded in New York, using the assistance of New York offices; (ii) those trades were regulated by the CFTC; and (iii) those trades were completed only after the New York traders contacted their LME counterparts for matching purposes. *Id.* at 842. Plaintiffs additionally alleged that they delivered physical copper to LME warehouses in the United States. *Id.* Accordingly, the Seventh Circuit held that "[t]hese ties are enough to satisfy the standards imposed by the FTAIA. They demonstrate that [plaintiffs] were injured in the U.S. market and that the alleged foreign activities had a direct, substantial, and reasonably foreseeable effect on U.S. non-import commerce." *Id.* at 842. *See also Ferromin Int'l Trade Corp. v. UCAR Int'l, Inc.*, 153 F. Supp. 2d 700, 706 (E.D. Pa. 2001) ("While the mere fact that goods were manufactured in the United States is insufficient to establish jurisdiction under the FTAIA, we find that the fact some of the electrodes [plaintiffs] purchased were invoiced in the United States satisfies the causal requirement that [plaintiffs] were injured as the result of higher prices for graphite electrodes in the United States market.").

Here, the allegations of the Amended Complaint are even more compelling. Plaintiffs here allege, and have submitted substantial evidence in connection with other motions showing: (1) that the transactions subject to defendants' price fixing conspiracy involved pricing decisions made in the United States for the purpose of maintaining prices in the United States for the

products involved; (2) plaintiffs, including MM Global Services, Inc., which is a U.S. corporation, took delivery of and title to the products in the United States; and (3) plaintiffs assumed the risk of loss for the goods in the United States.[12] In addition, plaintiffs' resale of goods and shipments to end-users was made from the United States.[13] It is also alleged that plaintiffs' injuries flowed directly from the U.S. effects of defendants' conduct, including the fact that plaintiffs were deprived of the ability to compete independently and free of the effects of defendants' price fixing conspiracy.[14]

B.  **Defendants Have Not Shown They Will Suffer Hardship Or Inequity Absent A Stay**

As observed above, the party seeking a stay must "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. *See also Sierra Rutile*, 937 F.2d at 750. Here, defendants fail to meet this requirement, seeking to justify the granting of a stay only upon a showing that a stay would be in their "interest."[15] Defendants' arguments, however, do not establish any hardship or inequity.

First, defendants' belief that plaintiffs' claims will be adversely affected by the Supreme Court's decision in *Empagran* does not constitute hardship. As discussed above, how the Supreme Court may decide *Empagran* is pure speculation, and in all events the decision will not be dispositive of this case.

Second, while defendants bemoan the fact that they will have to provide discovery on the merits if no stay is issued, they do not demonstrate any quantum of effort in discovery that would be above and beyond that attendant to discovery in any case. Moreover, the facts here suggest

---

[12] *See* First Am. Compl., ¶¶ 20-25, 27, 53.

[13] *See id.*

[14] *See id.*, ¶¶ 30, 55.

[15] *See* Defs. Brief, at 9.

11

**EXHIBIT 7**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

MM GLOBAL SERVICES, INC.,
MM GLOBAL SERVICES PTE. LTD.,
and MEGA VISA SOLUTIONS (S) PTE. LTD.,

: Civil No. 3:02 CV 1107 (AVC)

Plaintiffs,

: November 6, 2002

v.

THE DOW CHEMICAL COMPANY
and UNION CARBIDE CORPORATION,

Defendants.

-----------------------------------------------------------------X

**PLAINTIFFS' ANSWERS TO DEFENDANTS'
FIRST SET OF INTERROGATORIES
RELATED TO JURISDICTIONAL AND VENUE ISSUES**

Pursuant to F.R.C.P. 26, 33 and 37, Plaintiffs MM Global Services Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S") and MegaVisa Solutions (s) Pte. Ltd. ("MVS") by their undersigned attorneys, Thelen Reid & Priest LLP and Wiggin and Dana LLP, hereby answer and object to Defendants' First Set of Interrogatories Related to Jurisdictional and Venue Issues (the "Interrogatories") in the above captioned action.

**GENERAL OBJECTIONS**

1.  Plaintiffs object to the Interrogatories to the extent they do not specify a time period and to the extent they seek information outside of the relevant time period.

2.  Plaintiffs object to the Interrogatories to the extent they seek information that is not in Plaintiffs' possession, custody or control.

3.  Plaintiffs object to the Interrogatories to the extent they seek information constituting privileged communications, attorney work-product or trial preparation.

Further, Plaintiffs state that all decisions concerning the price at which Products could be sold to Plaintiffs for resale to end-users was established and imposed upon Plaintiffs at the direction of Defendants' corporate managers in Connecticut. The persons directly involved in the establishment and enforcement of such pricing are included in those named individually or by title in the Answer to Interrogatory No. 1.

**Interrogatory No. 5:**

Describe in detail each fact that supports your allegation in Paragraph No. 92 of the Complaint that Defendants' conduct caused an adverse effect on competition in Connecticut.

Answer No. 5:

Subject to the general objections set forth above, Plaintiffs state Defendants' conduct caused an adverse effect on competition in Connecticut and the United States. Defendants' conduct involved the imposition and enforcement of a per se unlawful price fixing arrangement by requiring Plaintiffs to resell Products only at prices established by Defendants. Such illegally fixed resale prices were established in Connecticut and had a per se anticompetitive effect on competition within that State and throughout the United States. Moreover, as a result of Defendants' per se unlawful price fixing, Plaintiffs were required to pay artificially higher prices for the Products, and such prices were also established by Defendants in Connecticut and charged to Plaintiffs from that State and in other locations in the United States.

**Interrogatory No. 6:**

Describe in detail each fact that supports your allegation in Paragraph No. 109 of the Complaint that Defendants' resale price maintenance agreement "was entered into and effectuated at least in part in [Connecticut]."

Answer No. 6:

Subject to the general objections set forth above, Plaintiffs refer Defendants to their Answer to Interrogatory No. 5.

-7-

**EXHIBIT 8**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM GLOBAL : 
SERVICES PTE. LTD., and MEGAVISA :
SOLUTIONS (S) PTE. LTD., :
:
:
Plaintiffs, : Civil No. 302 CV 1107 (AVC)
-v- :
:
:
THE DOW CHEMICAL COMPANY, UNION :
CARBIDE CORPORATION, UNION CARBIDE :
ASIA PACIFIC, INC., UNION CARBIDE :
CUSTOMER SERVICES PTE. LTD., and DOW :
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., : February 6, 2004
:
Defendants. :

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO RECONSIDER ORDER DENYING
MOTIONS TO DISMISS FEDERAL ANTITRUST CLAIM
FOR LACK OF SUBJECT MATTER JURISDICTION**

THELEN REID & PRIEST LLP
   Richard S. Taffet (ct 10201)
   875 Third Avenue
   New York, New York 10022-6225
   (212) 603-2000

WIGGIN & DANA LLP
   Robert M. Langer (ct 06305)
   Suzanne E. Wachsstock (ct 17627)
   One CityPlace
   185 Asylum Street
   Hartford, Connecticut 06103-3402
   (860) 297-3724

   Attorneys for Plaintiffs MM Global Services
   Inc., MM Global Services Pte. Ltd., and
   Megavisa Solutions (S) Pte. Ltd.

NY 573712 v2

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

ARGUMENT ...........................................................................................................................7

I.     THE COURT'S DECISION APPLIED THE
PROPER LEGAL STANDARD .................................................................................7

II.    THE FIRST AMENDED COMPLAINT ADEQUATELY ALLEGES
THAT DEFENDANTS' RESALE PRICE FIXING CONSPIRACY
HAD A DIRECT, SUBSTANTIAL, AND REASONABLY
FORESEEABLE EFFECT ON DOMESTIC COMMERCE ....................................10

III.   THE EVIDENCE DEMONSTRATES THAT DEFENDANTS'
CONDUCT HAD A DIRECT, SUBSTANTIAL AND REASONABLY
FORESEEABLE EFFECT ON DOMESTIC COMMERCE ....................................19

CONCLUSION .....................................................................................................................27

anticompetitive practice). This, too, clearly shows a "direct, substantial and reasonably foreseeable" effect on U.S. commerce. See Taffet Decl., Exh. 11 (defendants announcing price increase and advising employees to "watch for competitors' responses since this round, we are taking the lead"); Taffet Decl., Exh. 12 ("[a]gree . . . we not meet Akzo's latest prices . . . let Akzo have some business"); Taffet Decl., Exh. 10 (defendants directing North American employees to maintain price increase for product because all producers followed UCC's lead).

Because the Court has directed that plaintiffs identify all "substantial, and reasonably foreseeable" effects on domestic commerce resulting from defendants' per se unlawful resale price fixing conspiracy,[56] plaintiffs now submit additional documentary evidence plainly showing that defendants considered United States and other countries' prices when unlawfully fixing the prices to be charged to Indian end-users. Such new documentation includes:

- Memorandum prepared by plaintiffs reflecting discussions with Dicky Leung, a UCAP product director, wherein defendants rejected lower pricing concessions requested by plaintiffs because lower prices for sales to end-users in India would "lead[] to overall reduction of world prices of bulk commodity chemicals." See Taffet Decl., Exh. 13.

- Email from defendants directing plaintiffs, and others, to "keep moving prices UP." Defendants specifically sought a $100m/t price increase in order to be on par with U.S. and Canadian prices, which had already been increased by $100m/t. See Taffet Decl., Exh. 14.

- Emails from defendants rejecting plaintiffs' proposed orders on the basis that prices were too low, and informing plaintiffs that Indian prices cannot be lowered because defendants are attempting to implement a worldwide price increase. The emails further direct plaintiffs to help maintain the price increase, i.e., by not selling below the prices dictated by defendants. See Taffet Decl., Exhs. 15, 16.

These documents, together with the evidence submitted by plaintiffs previously, clearly reflect the direct correlation between the dynamics of the United States marketplace and prices sought to be controlled by defendants elsewhere in the world, including in India. In fact, for

---

[56] See 12/9/03 Order ("[i]n their response, the plaintiffs must identify all known [substantial and reasonably foreseeable effects within the meaning of 15 U.S.C. § 6(a)(1)]").

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : | |
| Plaintiffs, | : | |
| v. | : | Civil No. 3:02 CV 1107 (AVC) |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC. | : | |
| Defendants. | : | December 31, 2003 |

BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED R. CIV. P. 12(c)


Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, IL 60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC 20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## TABLE OF CONTENTS

                                                **Page**

I.  INTRODUCTION ............................................................................................... 1

II. PLAINTIFF'S ANTITRUST ALLEGATIONS ................................................. 2

III. ARGUMENT ....................................................................................................... 3

    A.  Antitrust Standing Requires Antitrust Injury and Non-Speculative Damages ................................................................................................... 4

    B.  Plaintiffs' alleged injury is not antitrust injury .......................................... 6

        1.  Plaintiffs allege injury in India only ................................................. 6

        2.  Plaintiffs do not allege an effect on a relevant market ..................... 9

        3.  Plaintiffs allege only speculative injury .......................................... 10

IV. CONCLUSION ................................................................................................. 13

required by defendants." *Id.*, ¶ 28. According to the Complaint, defendants sought this agreement "to ensure that prices charged by Plaintiffs to end users in India for Products would not cause erosion to prices for the Products charged by UCC and Dow to end-users of Products in the United States as well as in other jurisdictions to which UCC and Dow sold Products from the United States." *Id.*, ¶ 29.

Plaintiffs complain that the alleged agreement "improperly diminished and restrained" competition "in the sale and resale of Products in and from the United States" (*id.*, ¶ 30), by "artificially increasing and maintaining prices for or reducing the use or output of the Products sold in the United States for resale." *Id.*, ¶ 54. "[A]s a result of such effect on competition Plaintiffs were injured by being precluded from effectively and fully competing and maximizing their sales of Products." *Id.*, ¶ 30. Plaintiffs were "deprived of the ability effectively to compete independently in the purchase of products for resale in the United States,[4] and in the resale of the Products from the United States to end users in India free of Defendants' price maintenance requirement," and "required to resell the Products at artificially inflated prices directly caused by Defendants' unlawful and anticompetitive conduct." *Id.*, ¶ 55.

III.  **ARGUMENT**

The standards applicable to a motion for judgment on the pleadings are the same as those for a motion to dismiss pursuant to Rule 12(b)(6). *Fed. Paper Board Co. v. Amata*, 693 F. Supp. 1376, 1379 (D. Conn. 1988) (granting motion for judgment on the pleadings on, among other

---

[4] Presumably this was meant to say "the purchase of products *in the United States* for resale *in India*." The Complaint shows amply that plaintiffs' very reason for existence was for resale of UCC's products into India. *E.g.*, Complaint, ¶ 17 (MegaVisa Marketing Solutions was created "[t]o maintain access to the Indian market and to end-user customers in India," in order "to replicate the marketing service previously performed by UCC directly in India"). Plaintiffs allege nothing to suggest that they had contractual authority to sell the Products in *any* country other than India, let alone in the United States.

3

**EXHIBIT 10**

Case 3:02-cv-01107-AVC   Document 199-6   Filed 07/01/2004   Page 17 of 18

```
(3) From: VISA 3/26/99 6:00PM (1778 bytes: 53 ln)
To: DICKY LEUNG
Subject: C. J. SHAH & CO.
------------------------------ Message Contents ------------------------------
```

March 26, 1999

TO  : DICKY LEUNG
        J.
SUB : C. SHAH & CO.

I had a good meeting with C. J. SHAH & CO. (number 1 trader in India). He is also an authorised distributor for Eastmann Chemicals.

C.J. SHAH & Co. regularly imports BUTANOL, BUTYL ACETATE, VAM, 2-EHA & IPA (all parcels of 500 MT). The last parcels which he has imported were at the following prices:

|    | PRODUCT       | CIF PRICE   | SOURCE                        |
|----|---------------|-------------|-------------------------------|
| 1) | VAM           | USD 505/MT  | CELANESE                      |
| 2) | BUTYL ACETATE | USD 520/MT  | EASTMANN CHEMS.               |
| 3) | NBA           | USD 325/MT  | VINMAR CHEMS. (FINLAND ORIGIN)|
| 4) | 2-EH?.        | USD 355/MT  | ICC (RUSSIAN ORIGIN)          |
| 5) | IPA           | USD 370/MT  | EXXON                         |

Dicky, I have personally seen all the above offers.

N-BUTANOL : Customer is now interested in 500 MT parcel of N-BUTANOL, if offered at last purchase price, i.e. USD 325/MT CIF

BAM : We have offered customer a price of USD 700/MT CIF for 500 MT parcel.

Dicky, though we prefer to work with Vinyl Chemicals on exclusive basis, the slow response from them is forcing us to look at other opportunities.

Please advise on these 2 products if we are able to offer competitively at this price.

Other products, we will let you know as soon as customer floats enquiry.

Thanks & regards,

SHARAD MIRJI

M 4216