UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., :
MM GLOBAL SERVICES PTE, LTD. :
and MEGA VISA SOLUTIONS (S) :
PTE., LTD., :
  Plaintiffs, :
   :
VS. : Civil No. 3:02cv 1107 (AVC)
   :
THE DOW CHEMICAL COMPANY, :
UNION CARBIDE CORPORATION, :
and UNION CARBIDE ASIA :
PACIFIC, INC. :
  Defendants. :

RULING AND ORDER ON THE DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

    This is an action for damages arising from a business arrangement pursuant to which the plaintiffs purchased chemicals, polymers, and other products from the defendants and resold them to customers located in India. The amended complaint alleges violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and common law tenets concerning breach of contract and negligent misrepresentation. On April 21, 2004, the defendants filed the within motion for a protective order (document no. 182). On May 7, 2004, the plaintiffs filed a cross-motion to compel (document no. 185) pursuant to Fed. R. Civ. P. 37. For the reasons that hereinafter follow, the defendants' motion for a protective order is GRANTED in part and DENIED in part.

FACTS

    The background giving rise to the instant action is more fully discussed in the court's September 12, 2003 decision. See MM Global Services, Inc. v. Dow Chemical Co., 283 F. Supp. 2d 689

(D. Conn. 2003). While familiarity is presumed, the facts are summarized as follows.

In 1984, the defendant, Union Carbide, a New York corporation headquartered in Connecticut, owned and operated a chemical plant in Bhopal, India. In December of that year, lethal gas escaped from the plant and caused the death of 3,800 persons and injuries to an additional 200,000. In February 1989, Union Carbide and its Indian affiliate were ordered to pay a total of $470 million for all civil claims arising from the tragedy.

In the aftermath of this tragedy, Union Carbide ceased selling products directly to customers in India and, in 1987, appointed the plaintiff, Mega Vista Marketing Solutions Ltd. ("MVMS") as a non-exclusive distributor to maintain Union Carbide's access to the Indian marketplace. MVMS is an Indian corporation, having its principal place of business in Mumbai, India.

Over the next several years, MVMS formed corporate affiliates with the purpose of assisting with product sales in India. The affiliates purchased Union Carbide products in the United States and resold them to end-users in India. The affiliates included the plaintiffs, Mega Global Services, Inc. ("MMGS"), Mega Vista Marketing Solutions, Ltd. ("MVMS"), Mega Global Services, Inc. - Singapore ("MMGS-S"), and Mega Vista Solutions (S) Pte Ltd ("MVS").

In August 1999, Union Carbide announced a plan of merger with the co-defendant herein, Dow Chemical Company ("Dow"). Dow

2

is a corporation organized under the laws of Delaware, with a principal place of business in Midland, Michigan. The amended complaint alleges that with the plan of merger, the need dropped for the re-sale services in India previously performed by MVMS, MVS, MMGS and MMGS-S. Consequently, the amended complaint alleges that Union Carbide and its affiliates ceased acting consistently with their alleged contractual and legal obligations and, in particular, undertook efforts to establish Dow, untainted by the Bhopal tragedy, in place of the plaintiffs as a direct seller of products to end-users in India.

On February 6, 2001, Union Carbide merged with a subsidiary of Dow and became a wholly owned subsidiary of Dow. At around this time, Dow also created the defendant, Dow Chemical Pacific (Singapore) Private Ltd. ("Dow Singapore"). Dow created Dow Singapore to effectuate sales of Union Carbide products to the plaintiffs and to further Union Carbide and Dow's relationship with the plaintiffs.

On January 16, 2002, Dow Singapore advised MVS that, effective March 31, 2002, MVS would no longer be a distributor for Union Carbide products other than wire and cable compounds. MVS refused to continue the relationship with Dow Singapore on those terms.

On June 25, 2002, the plaintiffs commenced this lawsuit against the defendants, Union Carbide and Dow, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and common law precepts concerning breach of contract and negligent misrepresentation, among other theories. The plaintiffs also

3

sued several Union Carbide/Dow affiliates, including the defendants Union Carbide Asia Pacific, Inc. ("UCAP") (Singapore), Union Carbide Customer Service Pte Ltd ("UCCS") (Singapore), and Dow Chemical Pacific Private Pte Ltd. (Singapore).[1]

In connection with the federal antitrust claim, the plaintiffs alleged that, from 1993 through March 2002, Union Carbide and Dow, directly and through their affiliates, compelled the plaintiffs to agree to engage in a price maintenance conspiracy with respect to the resale of Union Carbide products in India, and refused to accept orders or cancelled accepted orders if the prospective resale prices to end-users in India were below certain levels. According to the amended complaint, Dow and Union Carbide sought to "ensure that prices charged by [the] [p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-users . . . in the United States as well as in other jurisdictions . . . ," and that,

> [a]s a direct and proximate result of [the] [d]efendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from the United States was improperly diminished and restrained. . .

On April 23, 2003, the defendants moved to dismiss the antitrust claim, arguing that, because the amended complaint failed to allege antitrust conduct having a direct, substantial,

---

[1] On November 17, 2003, the court dismissed the amended complaint with respect to UCCS and Dow Singapore for want of personal jurisdiction.

4

and reasonably foreseeable effect on U.S. commerce, the court was without subject matter jurisdiction to hear the claim under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a(1). On September 12, 2003, the court denied the motion. On March 18, 2004, the court reconsidered that ruling but denied the relief requested, holding that the plaintiffs had sufficiently shown that the defendants' conduct had a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. On March 31, 2004, the defendants moved for certification of that ruling for interlocutory appeal pursuant to U.S.C. § 1292(b). On June 11, 2004, the court denied that motion.

## STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in pertinent part, that "[p]arties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed. R. Civ. P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991). The term "reasonably calculated" as used in Rule 26 means "any possibility that the information sought may be relevant to the subject matter of the action." Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988). A party may not object to a discovery request on the grounds that the information sought will be inadmissible at trial so long as the material requested could

lead to other information that may be relevant to the subject matter of the action. See id.

A party may object to a request if it is "overly broad" or "unduly burdensome." 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2174, at 297 (2d ed. 1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive, or overly broad." Compagnie Francaise D'Assurance Pour Le Commerce Exterior v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Instead, the objecting party must "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant and how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted).

## DISCUSSION

The defendants seek an order from this court barring the discovery of four categories of information. Specifically, the defendants seek the barring of: (1) documents relating to the sale of products made either outside of India or to non-plaintiffs; (2) documents concerning sabotage at a manufacturing facility in Bhopal, India owned by Union Carbide India Limited; (3) communications between any defendant and any end-user of products from the plaintiffs; and (4) documents in Dow's

6

possession relating to sales it transacted before its merger with Union Carbide in 2001.

### 1. Documents Relating to the Sale of Products made either Outside of India or to Non-Plaintiffs

The defendants argue that documents relating to the sale of products by defendants made either outside of India or to non-plaintiffs are irrelevant. Specifically, the defendants assert that the plaintiffs have alleged injury in India only and therefore "documents relating to pricing or sales made _outside_ India are wholly irrelevant to [the] [p]laintiff's claims that they were injured _in_ India because of resale price maintenance there" (emphasis in original). The defendants also argue that the documents are inappropriate because the plaintiffs lack standing to bring their Sherman Antitrust claim and therefore the plaintiffs "have not demonstrated any entitlement to demand documents that relate to injuries allegedly suffered by _others_ instead of by themselves" (emphasis in original). Finally, the defendants contend that even if the plaintiffs did have proper standing, their requests for documents relating to the sale of products outside of India would still be unnecessary "because [the] [p]laintiffs' stated purpose in seeking these kinds of documents has been to establish subject matter jurisdiction" and the court has already denied the defendants' motion to dismiss for lack of subject matter jurisdiction. Therefore, the defendants contend that the plaintiffs' request is unnecessary because the court has already established subject matter jurisdiction.

7

The plaintiffs contend that they have standing to bring their Sherman Act claim and therefore they are entitled to these documents. The plaintiffs also argue that the court should compel the defendants to produce these documents so that the plaintiffs can develop further proof that the court has jurisdiction because lack of subject matter jurisdiction can be raised at any time.

The court concludes that the defendants' motion for a protective order regarding this request should be denied. Pursuant to the FTAIA, the court lacks subject matter jurisdiction over antitrust conduct that involves trade or commerce with foreign nations unless "such conduct has a direct, substantial, and reasonably foreseeable effect" on U.S. commerce and "such effect gives rise" to the plaintiff's injury. 15 U.S.C. § 6a(1); see also F. Hoffmann-La Roche Ltd. v. Empagran S.A., 124 S. Ct. 2359 (2004). Therefore, the plaintiffs must have the opportunity to discover documents regarding the sales of products outside of India in order to prove that the defendants' conduct had an effect on U.S. commerce. Although this court denied the defendants' motion to dismiss for lack of subject matter jurisdiction, jurisdiction can be raised at any time. In its March 18, 2004 ruling on the defendants' motion for reconsideration, the court did not hold that the court indefinitely had jurisdiction over the case but noted that dismissing the case for lack of subject matter jurisdiction would be inappropriate "in the absence of additional discovery." MM

8

Global Services, Inc. v. Dow Chemical Co., 2004 WL 556557, at *6 (D. Conn. Mar. 18, 2004). The plaintiffs must still prove that the defendants' conduct had an effect on U.S. commerce. Therefore, the court concludes that, with regard to any documents concerning the sale of products outside of India or to non-plaintiffs, the motion for a protective order is DENIED.

However, the court concludes that permitting discovery for a 20 year period is burdensome and unnecessary. Since the plaintiffs allege that starting in 1993, the defendants "compelled the plaintiffs to agree to engage in a price maintenance conspiracy with respect to the resale of Union Carbide products in India," the court orders the defendants to produce documents for this request beginning with January 1993 to the present.

### 2. Documents Concerning Sabotage at a Manufacturing Facility in Bhopal, India Owned by Union Carbide India Limited

The plaintiffs have also requested that the defendants produce documents showing that sabotage could have caused the Bhopal tragedy. In answering the complaint, the defendants alleged that the tragedy in Bhopal may have been the result of sabotage by Union Carbide workers. The plaintiffs argue that the court should compel the defendants to produce documents proving the possibility of this cause because the tragedy "plays a central role in the relationship of the parties and in the circumstances surrounding their contractual dealings," as well as in "the undisclosed intentions of [Union Carbide] and Dow to eliminate plaintiffs and have Dow sell directly to end-users in

9

India." The plaintiffs also assert that discovery concerning these allegations would go to issues of credibility because the plaintiffs' allegations of sabotage are unsupported by any known reports or findings.

The defendants argue that the request is irrelevant because the cause of the Bhopal tragedy does not prove any element of plaintiffs' breach of contract, negligent misrepresentation, or resale price maintenance claims.

The court concludes that the defendants' motion for a protective order regarding this request should be granted. Although the Bhopal incident is relevant to the plaintiffs' claims, whether negligence or sabotage caused the tragedy is not. Therefore, the court concludes that, with regard to documents concerning sabotage at the Bhopal manufacturing facility, the defendants' motion for a protective order is GRANTED.

### 3. Communications between any Defendant and any End-User of Products from the Plaintiffs

The plaintiffs have also requested that the defendants "[i]dentify each meeting or communication between any person employed by, representing or otherwise acting on behalf of a Defendant, and an end user of Products purchased from any Plaintiff or MVMS . . ." The defendants object to the request, arguing that the request fails to identify who these "end-users" are and the defendants assert that they "do not know the identity of each and every one of Plaintiffs' customers, much less those that Plaintiffs claim are relevant to their negligent misrepresentation claim . . ."

The plaintiffs contend that the defendants can determine the identity of the end-users because the "[d]efendants' own documents admit that in connection with every order placed by [the] plaintiffs with [the] defendants the identity of the end-user was revealed" and the "plaintiffs are entitled to have defendants disclose <u>all</u> evidence in their possession of <u>all</u> their contacts, with <u>all</u> the customers <u>who were contacted</u>" (emphasis in original).

The court concludes that the motion for a protective order concerning this request is GRANTED to the extent that the defendants do not have to comply with the request until the plaintiffs identify the end-users for whom they are seeking information. Once the plaintiffs identify the end-users, the defendants are to produce such requested documents.

### 4. <u>Documents in Dow's Possession Relating to Sales it Transacted Before its Merger with Union Carbide in 2001</u>

The plaintiffs have also requested that the defendants produce all sales documents between Dow and Union Carbide prior to their merger, beginning in 1984. The defendants argue that this request is "overreaching because the claims before this court could only concern Dow's post-merger activities" and the plaintiffs offer "no explanation of how documents created in the 1980s and early-mid 1990s could possibly be relevant to any of their claims."

The plaintiffs assert that they are entitled to such documents dated prior to the 2001 merger because "the Amended Complaint specifically alleges that Dow and UCC, <u>well before they</u>

11

merged in 2001, conspired with each other to maintain the unlawful retail price fixing conspiracy on which plaintiffs' Sherman Act claim is based" (emphasis in original). The plaintiffs note that in their amended complaint, they allege that the defendants announced their plan of merger in August 1999 and that "[a]t least since August 1999, the resale price maintenance conspiracy was imposed at the urging and direction of Dow."

The court concludes that the plaintiffs' request for pre-merger documents should be limited because communications between Dow and Union Carbide that occurred significantly before their agreement to merge are irrelevant. Since the plaintiffs have alleged that Dow and Union Carbide planned to merge in August 1999, the court holds that three years prior to this time is a sufficient period for discovery. The court therefore concludes that the defendants' motion for a protective order is GRANTED for all communications between Dow and Union Carbide prior to August 1996. The court orders the defendants to produce such documents dated August 1996 to the present.

## CONCLUSION

For the foregoing reasons, the motion for a protective order (document no. 182) is GRANTED in part and DENIED in part.

It is so ordered this 29th day of June, 2004 at Hartford, Connecticut.

*Alfred V. Covello*
Alfred V. Covello
United States District Judge