```
MAYER
BROWN
ROWE
& MAW
```

Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel (202) 263-3000
Main Fax (202) 263-3300
www.mayerbrownrowe.com

June 14, 2004

**By Overnight Courier**
Richard S. Taffet, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Christopher J. Kelly
Direct Tel (202) 263-3285
Direct Fax (202) 263-5285
cjkelly@mayerbrownrowe.com

Re: MM Global Services et al. v. The Dow Chemical Company, et al.
Civil No. 3:02 CV (AVC)

Dear Richard:

I am writing to raise with you our objections to the depositions you have noticed in this matter, pursuant to F. R. Civ. P. 30(b)(6), for The Dow Chemical Company ("Dow"), Union Carbide Corporation ("UCC") and Union Carbide Asia Pacific ("UCAP") (collectively referred to as "Defendants"). Of course, we are looking forward to meeting and conferring with you about these objections so that, to the extent possible, we can agree on the appropriate scope of the depositions. Except where we discuss issues specific to a particular Defendant, the objections discussed below apply to each of the three Notices.

I.    **General Objections**

1.    The Supreme Court's decision today in *F. Hoffmann-La Roche Ltd. v. Empagran*, No. 03-724 (U.S. June 14, 2004)[1] makes clear that the U.S. courts lack subject matter jurisdiction over Plaintiffs' antitrust claim under the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a. Plaintiffs have not pled, and indeed cannot plead, that they suffered injury in U.S. commerce as a result of any alleged anticompetitive conduct having a direct, substantial, and reasonably foreseeable effect here. Plaintiffs also have failed to plead antitrust injury, and thus lack antitrust standing

---

[1] The opinion is available at
http://a257.g.akamaitech.net/7/257/2422/14june20041230/www.supremecourtus.gov/opinions/03pdf/03-724.pdf.

Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  Manchester  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw  P

Richard S. Taffet, Esq.
June 14, 2004
Page 2

as a matter of law. For all of these reasons, we object generally to the subject areas set forth in the Notices.

The following general and more specific objections supplement those stated above. As we predicted at the May 27 status, the Supreme Court's reversal of the decision of the Court of Appeals for the DC Circuit in *Empagran* has confirmed our position, rendering Plaintiffs' proposed causation discovery wholly irrelevant. There now is no just reason to try Plaintiffs' remaining foreign-law claims of negligent misrepresentation and breach of contract in the United States District Court. We will supplement the objections set forth here shortly with more fundamental ones reflecting the Court's lack of subject matter jurisdiction. In the meantime, we reserve all of our rights in that respect, including the right to challenge the propriety of further discovery in a matter where the Court lacks subject matter jurisdiction over Plaintiffs' claim.

2. In addition, the 33 subject areas of examination designated in Plaintiffs' notices go far beyond what is relevant to the claims and defenses at issue in this matter. The sheer number of these subject areas, themselves quite broad, makes it unreasonably burdensome for Defendants to find employees or officers sufficiently knowledgeable about them all, and makes it virtually impossible to conduct these depositions within a reasonable time. Many of these subjects are more appropriate for depositions of individuals than for corporate depositions under Rule 30(b)(6).

3. We incorporate by reference our general objections to Defendants' First and Second Sets of Interrogatories. In particular, we refer you to the following General Objections in the Responses and Objections of Defendant the Dow Chemical Company to Plaintiffs' Second Set of Interrogatories: General Objection 1, concerning the definition of "Products"; General Objection 2, concerning of the definition of "you" and "your"; General Objection 4, concerning the relevant time period; and General Objection 7, concerning the extent to which the interrogatories call for information from Defendants' non-party subsidiaries, affiliates and business units.

4. We also incorporate by reference our recent Motion for Protective Order and the briefs (dated April 21, 2004 and June 2, 2004) filed in support thereof. That motion is fully briefed and is pending before the Court. To avoid undue repetition, the specific objections contained in those court papers are not repeated below under each subject area, but are incorporated by reference.

5. We object to the gratuitous definition of the "Bhopal Tragedy" (Definition 6). Plaintiffs' definition of the "Bhopal Incident" in the first set of document requests

Mayer, Brown, Rowe & Maw LP

Richard S. Taffet, Esq.
June 14, 2004
Page 3

adequately defined the event, which has no relevance to any claim or defense in this case. The contrast between the two definitions once again illuminates this fact.

6. We object to the use of a Rule 30(b)(6) deposition to obtain information about all "transactions," "orders" or "prices" (*e.g.*, subject areas 3, 13-17, 21, 23-25, 31) and *all* "communications" (*e.g.*, subject areas 26-28) as well beyond the ability of Defendants without guidance from Plaintiffs regarding the *specific* transactions, orders, prices or communications on which they seek information. Subject to their other objections, Defendants would be pleased to meet and confer with Plaintiffs on this objection to obtain specifics so that they can present witnesses who are competent to testify about the requests.

7. The absence of specific objections to specific subjects is not intended to and does not suggest that Defendants have corporate knowledge within those areas. A corporate representative will be presented if Defendants have corporate knowledge and any objections are resolved.

8. Each of these General Objections applies as if set out in full below in response to each specific request.

II.  **Specific Objections**

1. **Your relationship with each other Defendant and between and among you, each other Defendant, and your and their subsidiaries, divisions, operating units and affiliates, including without limitation the identity of board(s) of directors, officers and senior level management personnel, their duties, the person(s) to whom they had a reporting responsibility, and the subject matter for which they had such reporting responsibility.**

We object to this subject area because it covers information that is not relevant to any claim or defense in this case. In particular: (a) it is not limited to the Products as defined in Definition 5 of the Notice; (b) it is not limited to either India or the United States; (c) it is not limited to relationships among the Defendants in this case; and (d) it is not limited to entities that had any connection with Plaintiffs.

Mayer, Brown, Rowe & Maw  P

Richard S. Taffet, Esq.
June 14, 2004
Page 4

**2. The manufacture and sale of Products, including without limitation, the location of manufacture, procedures for the placement, processing and fulfillment of orders for Products, and the delivery of Products to purchasers.**

We object to this subject area because it calls for information not relevant to any claim or defense in this case. In particular, the subject area is not limited to the manufacture and sale of products in India and the United States. It also extends to logistical issues relating to a vast range of transactions bearing no conceivable relationship to any claim or defense in this case. In addition, to the extent this request were to be limited to the Products actually purchased by Plaintiffs, the sales documentation already provided to Plaintiffs generally identifies the country of origin of any Products actually purchased by Plaintiffs, the delivery address and means of shipment for Products purchased by Plaintiffs, and the persons involved in effecting the transaction of each specific purchase made by Plaintiffs. Because there are many different products within Plaintiffs' umbrella definition of "Products," Defendants would need a specific list of transaction numbers in order to select an appropriate Rule 30(b)(6) witness to address follow-up questions on any given transaction.

**3. Transactions relating to Products among or between you and any other Defendant or any of your or their subsidiaries, divisions, operating units or affiliates.**

We understand this subject area to concern transactions between the Dow and Union Carbide corporate families prior to the Merger -- for example, between Dow or a Dow subsidiary on the one hand and Union Carbide or a Union Carbide subsidiary on the other. Is that understanding correct? We object to the subject area in that, however interpreted, it calls for information not relevant to any claim or defense in the case. In particular, the subject area is not limited to Plaintiffs' claims of resale price maintenance, negligent misrepresentation, and breach of contract. Moreover, it is not limited to entities having some reasonable relationship to the manufacture or sale of the products in India or the United States.

**4. Your control over the business decisions, business policies, personnel deployments and other activities of any other Defendant or related to the activities of any of your or their subsidiaries, divisions, operating units or affiliates.**

We object to this subject area for two reasons. The first is because it is incomprehensible. The second is because, however interpreted, the subject area concerns information not relevant to any claim or defense in this case; it encompasses activities

Mayer, Brown, Rowe & Maw P

Richard S. Taffet, Esq.
June 14, 2004
Page 5

and entities having no conceivable relationship to India or the United States or to the Products.

> **5. Policies, guidelines or directives relating to the sale or distribution of Products, including without limitation relating to the allocation of Products to purchasers.**

We object to this subject area in that it covers information that is not relevant to any claim or defense in this case. In particular, it is not limited to the sale or distribution of products to Plaintiffs, and it is not limited to the sale or distribution of Products in India or the United States.

> **6. Your order entry processes for Products, including without limitation persons permitted access to order entry data and the responsibilities for accepting, rejecting or modifying orders and policies relating thereto.**

This subject area covers information not relevant to any claim or defense in this case. First, order data entry processes are not relevant to this case. Second, the subject area is not limited to order entry processes for orders from Plaintiffs (compare subject area 13 below), or to orders relating to India or the United States. In addition, even as to the orders that are the subject of this case, it will be unreasonably burdensome for Defendants to have to ascertain who, if anyone, would know what "persons [were] permitted access to order entry data."

> **7. Forms of contracts, invoices or purchase orders relating to the sale or distribution of Products.**

This subject area is objectionable because it covers information not relevant to any claim or defense in this case. In particular, it is not limited to forms relating to the sale or distribution of Products to Plaintiffs, or even the sale or distribution of Products to India and the United States. Further, Defendants already have produced a substantial number of transaction documents, and are not sure about which such documents Plaintiffs seek to obtain further information. Without an identification of such documents, Defendants cannot designate the appropriate person to testify about them pursuant to Rule 30(b)(6). Further, because there are many different products within Plaintiffs' umbrella definition of "Products", Defendants would need a specific list of transaction numbers in order to select an appropriate Rule 30(b)(6) witness to address follow-up questions on any given transaction relating to a particular product or products.

Richard S. Taffet, Esq.
June 14, 2004
Page 6

**8.  Your document retention policy.**

Subject to our general objections, we have no specific objection to this subject area.

**9.  Changes in your distribution of Products to India as a result of the Bhopal Tragedy.**

This subject area, as we understand it, concerns changes in Union Carbide Corporation's distribution of Products into India in 1984, which you address in subject area 10 below, not the Bhopal Tragedy as defined above, which has no relevance to any claim or defense in this case. As noted above, we object to Plaintiffs' gratuitous definition of the Bhopal Tragedy and their evident attempt to bolster a tenuous commercial dispute with images of human suffering. Defendant Dow has no corporate knowledge on this subject apart from what is known by Defendants UCC and UCAP.

**10.  The basis for your contention that the Bhopal Tragedy was a result of sabotage.**

This subject area bears no relevance to any claim or defense in the case. We object to it for the reasons we set forth in connection with subject area 9.

**11.  The creation, formation and/or incorporation of MVMS and each Plaintiff.**

Aside from our general objections above, we have no objection to this subject area. Dow and UCC have no direct corporate knowledge on this subject apart from what is known by UCAP, and UCAP's present knowledge is limited.

**12.  The 1987, 1993, 1995 and 2000 Letter Agreements as defined in the Amended Complaint.**

Aside from our general objections above, we have no objection to this subject area. Dow and UCC have no direct corporate knowledge on this subject apart from what is known by UCAP.

Richard S. Taffet, Esq.
June 14, 2004
Page 7

**13. The placement, entry, processing, acceptance, and fulfillment of orders from Plaintiff or MVMS for Products, including without limitation the processes followed and the persons involved and with responsibility therefor.**

To the extent this subject area includes minutiae of data-entry, which bears no reasonable relationship to any claim or defense at issue in this case, we object to this subject area. Further, because there are many different products within Plaintiffs' umbrella definition of "Products", Defendants would need a specific list of transaction numbers in order to select an appropriate Rule 30(b)(6) witness to address follow-up questions regarding the "placement" "acceptance" and "fulfillment" of any given order relating to a particular product or products. If the request is limited to the general process flow for the taking and fulfillment of orders from Plaintiffs by Defendants' subsidiaries and affiliates in Singapore and later India, however, Defendants have no objection aside from the general objections above.

**14. Prices charged by Plaintiffs and/or MVMS to end-users for Products.**

Defendants do not know which sales to Indian customers underlie Plaintiffs' claims, nor do they have knowledge of all of the sales made by Plaintiffs or MVMS to all of their customers. Information concerning the prices Plaintiffs and/or MVMS charged end-users for Products is far more likely within the possession and control of Plaintiffs than of Defendants. To the extent that this subject area would require Defendants to generate information not already in their possession, we object to it.

**15. Terms and conditions relating to the sale of Products to Plaintiffs and/or MVMS, including without limitation relating to credit terms and changes in credit terms, payment terms and conditions and changes thereof, freight and the shipment of Products to end users, the calculation of amounts to be paid by Plaintiffs or MVMS for Products, and insurance.**

Defendants already have produced a substantial number of transaction documents, and are not sure about which such documents Plaintiffs seek to obtain further information. Without an identification of such documents, Defendants cannot designate the appropriate person to testify about relevant terms and conditions pursuant to Rule 30(b)(6). Further, because there are many different products within Plaintiffs' umbrella definition of "Products", Defendants would need a specific list of transaction numbers in order to select an appropriate Rule 30(b)(6) witness to address follow-up questions on any given transaction relating to a particular product or products.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
June 14, 2004
Page 8

16. The delivery of Products to Plaintiffs and/or MVMS, including without limitation the location of such deliveries, the place of manufacture for Products delivered to Plaintiffs and/or MVMS, the terms for such delivery and the persons with responsibility for such delivery.

Defendants object to this category because the sales documentation already provided to Plaintiffs generally identifies the country of origin of any Products actually purchased by Plaintiffs, the delivery address and means of shipment for Products purchased by Plaintiffs, and the persons involved in effecting the transaction of each specific purchase made by Plaintiffs. Because there are many different products within Plaintiffs' umbrella definition of "Products," Defendants would need a specific list of transaction numbers in order to select an appropriate Rule 30(b)(6) witness to address follow up questions on any given transaction.

17. The availability or non-availability of Products for sale to Plaintiffs or MVMS, including without limitation decisions to make or not make Products available to Plaintiffs, decisions to accept or not accept orders for Products, the cancellation of accepted orders for Products, and all persons involved in any decisions regarding the foregoing and policies relating thereto.

Because there are many different products within Plaintiffs' umbrella definition of "Products" and each product line had its own management personnel that may have made decisions based on factual information specific to their line of business, Defendants would need a specific list of transaction numbers to identify one or more appropriate witnesses to address follow-up questions on any given transaction or proposed transaction with Plaintiffs.

18. Disputes, including lawsuits, by end-users in India concerning the availability, sale, or delivery or non-availability, non-sale or non-delivery of Products, including without limitation involving entities named Finolex and Sterlite.

This subject area concerns information irrelevant to any claim or defense in this case insofar as it concerns disputes that do not involve Plaintiffs and Defendants. The subject area appears to cover any dispute involving actual or aborted transactions and an end-user in India, without reference to the end-user's counterparty in the dispute. As noted above, Defendants do not know which sales to Indian customers underlie Plaintiffs' claims, nor do they have knowledge of all of the sales made by Plaintiffs or MVMS to all of their customers, and object to the subject area insofar as it purports to require Defendants to generate information not already in their possession. To the extent this

Richard S. Taffet, Esq.
June 14, 2004
Page 9

dispute is limited to the Finolex and Sterlite claims, Defendants have no objection other than the general objections set forth above.

> 19. The change in your relationship with Plaintiffs and/or MVMS effective March 31, 2002, including without limitation all reasons for such change and acts taken by you, any other Defendants, or any of your or their subsidiaries, divisions, operating units or affiliates.

Subject to our general objections above, we have no specific objection to this subject area.

> 20. Competition relating to the sale of Products (a) in India, and (b) in markets other than India, including the United States, and including without limitation the identity of competitors, the definition of relevant markets, the nature of competition, and market shares.

This subject area is objectionable to the extent that the "definition of relevant markets" is a legal issue, not a factual one, and thus is not appropriate for deposition testimony. The same is true of "market shares," which are necessarily a function of the legal determination as to relevant markets. In addition, Subject Area 20(b) explicitly covers information that is not relevant to any claim or defense in this case to the extent that it concerns the sale of Products other than in India and the United States.

> 21. Pricing for Products sold, directly or indirectly (a) in or to India, and (b) in or to other markets, including the United States.

Like the previous subject area, this one covers information that is not relevant to any claim or defense in this case insofar as it concerns pricing for products sold "in or to" areas other than India and the United States, and, with respect to those other areas, it is not limited to Defendants' pricing. In addition, none of the remaining Defendants sold products during the relevant time period "in or to India."

> 22. The allocation of Products between or among purchasers in different geographic markets.

This subject area is objectionable in that it calls for information not limited to the Defendants' "allocation of Products." It also is predicated on a legal conclusion as to "geographic markets," which is not an appropriate subject for deposition testimony. Further, it is unclear whether the subject area concerns allocation among the "different

Richard S. Taffet, Esq.
June 14, 2004
Page 10

geographic markets" themselves, or among purchasers within the "different geographic markets."

> 23. Sales of Products in the United States, including without limitation persons and entities with responsibility for such sales, pricing of Products for such sales and availability of Products to fulfill orders for such sales.

Defendants' objections to this category are fully set forth in their general objections above.

> 24. The effect of sales, and the terms of such sales, of Products in markets other than the United States, including without limitation in India, on the sale of Products in the United States, including without limitation any effects relating to price, availability, allocation and market share.

Subject to our general objections above, we have no specific objection to the subject area if it is limited to the effect of sales of Products in India, and the terms of such sales, on the sale of Products in the United States. However, the effect of sales of Products in areas other than India, or the terms of such sales, on the sale of Products in the United States, is not relevant to any claim or defense in this case. To the extent that this subject area covers the effect of such sales outside India and their terms, it is objectionable. However, none of the remaining Defendants sold products "in or to India" during the relevant time period.

> 25. The effect of sales, and the terms of such sales, of Products in the United States on the sale of Products in markets other than the United States, including without limitation India, and including without limitation any effects relating to price, availability, allocation and market share.

This subject area is, by definition, completely irrelevant to any claim or defense in this case, and is objectionable in its entirety. The complaint does not allege that prices of Products in the United States had any anticompetitive effect on the sale of Products in India; nor would any such effect give rise to a cause of action under U.S. antitrust law.

26. **Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs and/or MVMS.**

This subject area includes information not relevant to any claim or defense in this case in that it is not limited to communications relating to the Products or even the dispute at all.

27. **Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any competitor in the sale of any Product, including without limitation pre-merger communication between or among Dow and UCC, or any of their respective subsidiaries, divisions, business units or affiliates, relating to the sale of Products, including without limitation prices, markets, customers, allocation and availability of Products.**

This subject area calls for information not relevant to any claim or defense in this case in that it: (a) concerns communications among competitors, which are not relevant to the alleged resale-price-maintenance agreement between Defendants and Plaintiffs; and (b) is not limited to the sale of Products in India and the United States.

28. **Communications between any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any end-user customers of Plaintiffs or MVMS for Products.**

As noted above, Defendants do not know which sales to Indian customers underlie Plaintiffs' claims, nor do they have knowledge of all of the sales made by Plaintiffs or MVMS to all of their customers, and object to the subject area insofar as it purports to require Defendants to generate information not already in their possession. In addition, we object to the subject area insofar as it extends to communications not relating to the actual or contemplated sale of Products in India.

29. **The effect or contemplated effect of the Merger on the sale and distribution of Products (a) in or into India, and (b) in or into other markets, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.**

By definition, this subject area is not relevant to any claim or defense in this case, which concerns alleged resale price maintenance, not a merger review. Subject area 19

Mayer, Brown, Rowe & Maw

Richard S. Taffet, Esq.
June 14, 2004
Page 12

already addresses the change in Defendants' business relationship with Plaintiffs and MVMS. Moreover, the subject area explicitly extends to the sale and distribution of Products in areas other than India and the United States. We therefore object to this subject area in its entirety.

> 30. The effect or contemplated effect of the Merger on the relationship between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs or MVMS, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.

As with subject area 29, this merger-focused subject area does not call for information relevant to any claim or defense in the case Plaintiffs have brought. Again, subject area 19 already covers the change in the business relationship between Defendants and Plaintiffs and MVMS, so to the extent that this subject area could be read to include relevant information, it is duplicative.

> 31. The direct sale of the Products by any Defendant, including any of their subsidiaries, divisions, business units or affiliates, to end-user customers in India.

As noted above, we therefore object to the subject area insofar as it purports to require Defendants to generate information not already in their possession. Furthermore, during the relevant time period, none of the Defendants themselves made sales directly to end-user customers in India.

> 32. The Vimal Agency or Jigar Shah, with respect to sales of the Products in India.

Subject to our general objections above, none of Defendants had a business relationship with the Vimal Agency or Jigar Shah.

> 33. Your search for and review of documents requested pursuant to Plaintiffs' First, Second and Third Requests for Production of Documents, including, but not limited to, the persons who participated in and the location(s) of such search and review.

Defendants' objections to this category are fully set forth in their general objections above.

Mayer, Brown, Rowe & Maw L

Richard S. Taffet, Esq.
June 14, 2004
Page 13

As I mentioned above, we look forward to meeting and conferring with you in order to discuss our objections to these Notices and see whether we can come to some agreement on the appropriate scope of the depositions you are seeking to take. Please let me or Andy Marovitz know when a good time would be for a meet-and-confer. Best regards.

Sincerely,

Christopher J. Kelly

cc: Andrew S. Marovitz, Esq.
Craig A. Raabe, Esq.
Robert M. Langer, Esq.