THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD.,<br><br>                                    Plaintiffs,<br>v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, AND UNION CARBIDE ASIA PACIFIC, INC.,<br><br>                                    Defendants. | CIVIL ACTION<br>NO. 3:02 CV 1107 (AVC)<br><br>July 20, 2004 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION TO COMPEL COMPLIANCE WITH THE COURT'S JUNE 29, 2004 ORDER AND FOR SANCTIONS, AND OPPOSITION TO DEFENDANTS' MOTION FOR <u>RECONSIDERATION OF THE COURT'S DISCOVERY RULINGS</u>**

| | |
|---|---|
| BINGHAM McCUTCHEN LLP<br>Richard S. Taffet (ct 10201)<br>399 Park Avenue<br>New York, NY 10022-4689<br>(212) 705-7000 (tel)<br>(212) 752-5378 (fax) | WIGGIN AND DANA LLP<br>Robert M. Langer (ct 06305)<br>Suzanne E. Wachsstock (ct 17627)<br>One City Place<br>185 Asylum Street<br>Hartford, CT 06103<br>(860) 297-3724 (tel)<br>(860) 525-9380 (fax) |

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd. and Megavisa Solutions (S) Pte. Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

I.  PRELIMINARY STATEMENT ................................................................................... 1

II. RELEVANT BACKGROUND ...................................................................................... 2

    A.  Arguments Made, Considered, and Rejected Regarding Geographical Limitations on the Discovery Requests ............................................................... 2

    B.  Discovery Discussions Between Counsel After the June 29 Order ..................... 3

III. ARGUMENT .................................................................................................................. 4

    A.  Defendants' Motion Should Be Denied ................................................................ 4

    B.  The Court Should Set Firm Deadlines for Compliance ........................................ 8

    C.  Sanctions Should Be Imposed on Defendants and Their Counsel ........................ 9

IV. CONCLUSION ............................................................................................................. 11

## TABLE OF AUTHORITIES

### CASES

*ACLI Government Securities, Inc. v. Rhoades,*
    907 F. Supp. 66 (S.D.N.Y. 1995) ...........................................................................10

*Alvarado v. Manhattan Worker Career Center,*
    No. 01 Civ. 9288, 2002 WL 31760208 (S.D.N.Y. Dec. 10, 2002).......................9

*Cine Search Term End Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,*
    602 F.2d 1062 (2d Cir. 1979).................................................................................9

*Colon v. Tucciarone,*
    No. 3:02 Civ. 891 (PCD), 2003 WL 22439588 (D. Conn. Oct. 27, 2003) ...........5

*Compagnie Francaise D'Assurance Pour Le Commerce Exterior v. Phillips Petroleum Co.,*
    105 F.R.D. 16 (S.D.N.Y. 1984) .............................................................................7

*Dietrich v. Bauer,*
    No. 95 Civ. 7051, 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) .........................7

*Keller v. Mobil Corp.,*
    55 F.3d 94 (2d Cir. 1995).....................................................................................10

*Lethbridge v. British Aerospace PLC,*
    No. 89 Civ. 1407, 1990 WL 194915 (S.D.N.Y. Nov. 28, 1990) ...........................8

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,*
    179 F.R.D. 77 (D. Conn. 1998).............................................................................9

*Milltex Industries Corp. v. Jacquard Lace Co., Ltd.,*
    55 F.3d 34 (2d Cir. 1995).....................................................................................10

*National Hockey League v. Metropolitan Hockey Club, Inc.,*
    427 U.S. 639, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)........................................9

*Shrader v. CSX Transport,*
    70 F.3d 255 (2d Cir. 1995).....................................................................................5

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,*
    No. 01 Civ. 7983, 2002 WL 1835439 (S.D.N.Y. Jan. 14, 2002)..........................7

*Williams v. National Housing Exchange Inc.,*
    165 F.R.D. 405 (S.D.N.Y. 1996) ...........................................................................8

## STATUTES AND COURT RULES

Fed. R. Civ. P. 37 .................................................................................................................. 1, 9

28 U.S.C. § 1927 .................................................................................................................... 1, 9

## I. PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc., MM Global Services Pte. Ltd., and Megavisa Solutions (S) Pte. Ltd. (collectively, "plaintiffs"), oppose the motion of defendants The Dow Chemical Company, Union Carbide Corporation and Union Carbide Asia Pacific, Inc. (collectively, "defendants"), for reconsideration of the Court's discovery Order dated June 29, 2004 (the "June 29 Order"). The issue defendants claim requires "clarification" was thoroughly briefed, considered, and rejected by the Court. Their request that the Court reconsider the burden imposed by compliance with the June 29 Order is, once again, unsupported by affidavits or any other evidence establishing the extent of the claimed burden. Faced with defendants' continued defiance of their discovery obligations, plaintiffs now respectfully ask the Court to enforce the June 29 Order and impose sanctions under Fed. R. Civ. P. 37 and 28 U.S.C. § 1927, including but not limited to awarding plaintiffs their costs, including attorneys' fees, incurred in connection with and relating to the within opposition and cross-motion.

As they concede, defendants still refuse to comply with any discovery requests seeking documents and information concerning competitive issues outside India and the United States. This is not all they refuse to do, however. Even as to those requests no longer in dispute (whether as the result of the parties' compromises or the June 29 Order), defendants will not commit to compliance within a time certain. Instead, as they have done in the past, they have informed plaintiffs, in so many words, that documents and information will be provided when and if they get around to it. Furthermore, they have balked at identifying, in a timely fashion, those designees who will testify on the topics listed in plaintiffs' 30(b)(6) Notices of Deposition, and they have indicated their unwillingness to bring those designees to Connecticut for the depositions. In short, merits discovery remains at a halt while defendants presume to define what is "relevant" and play by self-promulgated rules totally at odds with the Federal Rules of Civil Procedure and this Court's orders and rulings.

Accordingly, defendants' motion should be swiftly denied and they should be compelled to produce all discovery pursuant to the June 29 Order no later than thirty (30) days from the date

the Court decides their motion and plaintiffs' cross-motion, and to designate within ten (10) days of such Order their 30(b)(6) witnesses and the subject matter(s) on which they will testify. To avoid defendants' next inevitable motion for protective order, the Court should also clearly state that unless the parties agree otherwise, all party depositions, including those under Rule 30(b)(6), must take place in Hartford, Connecticut.

## II.   RELEVANT BACKGROUND

### A.   Arguments Made, Considered, and Rejected Regarding Geographical Limitations on the Discovery Requests.

Defendants previously sought a protective order to bar, among other things, discovery concerning competition and the sales of products in jurisdictions other than India and to persons other than plaintiffs. Defendants argued that such requests were "wholly irrelevant" to plaintiffs' claims and that, in any event, plaintiffs' lack of antitrust standing deprived them of any right to discovery at all. *See, e.g.*, June 29 Order at 7; *see also* Defs. April 24, 2004 Brief in Support of Motion for Protective Order. Defendants further argued that plaintiffs had "no need" for discovery concerning sales outside of India because their motion to dismiss for lack of subject matter jurisdiction had been denied.[1] *Id.*

The June 29 Order reflects that the Court considered and rejected all of defendants' arguments for imposing such an artificially rigid geographical limitation on discovery. *See, e.g.*, June 29 Order at 6 ("defendants seek an order from this court barring the discovery of . . . documents relating to the sale of products made outside of India or to non-plaintiffs"); *id.* at 7 ("defendants assert that the plaintiffs have alleged injury in India only and therefore 'documents relating to pricing or sales made outside India are wholly irrelevant to Plaintiffs' claims'") (emphasis in original). The Court clearly and unequivocally denied defendants' request to impose any such geographical limitations. *See id.* at 8 ("plaintiffs must have the opportunity to discover documents regarding the sales of products outside of India"); *id.* at 9

---

[1] Of course, with the subsequent renewal, on July 1, 2004, of defendants' motion to dismiss for lack of subject matter jurisdiction, the premise of this argument disappeared.

2

("with regard to <u>any</u> <u>documents</u> <u>concerning</u> <u>the</u> <u>sale</u> <u>of</u> <u>products</u> <u>outside</u> <u>of</u> <u>India</u> or to non-plaintiffs, the motion for a protective order is DENIED") (emphasis added). Accordingly, the Order unambiguously directed defendants to produce documents "concerning the sale of products outside of India or to non-plaintiffs." *Id.*

### B. Discovery Discussions Between Counsel After the June 29 Order

On July 1, 2004, in a status conference conducted by telephone, the Court instructed the parties, in no uncertain terms, to proceed with merits discovery as directed by the June 29 Order. Accordingly, plaintiffs satisfied their obligation under the Order on July 6, 2004, with the transmission of a list of end user customers with whom defendants and their agents allegedly communicated about their future plans to market the products at issue.

Yet, in a subsequent discovery teleconference between counsel held on July 9, 2004, defendants stated their intention not to produce documents from any jurisdictions other than India and the United States. The reasons offered for this refusal were the burden of compliance[2] and the "irrelevance" of such documents, in spite of the clear directive of the June 29 Order. While strongly disagreeing with defendants' interpretation of the Order, plaintiffs offered to address the claimed burden by allowing defendants first to produce documents involving certain jurisdictions, with documents concerning others to follow on a "rolling" basis. Defendants rejected this offer.

In addition to objecting to discovery regarding jurisdictions other than India and the

---

[2] As set forth in Section III.A, *infra*, the absence of any evidentiary support for their claims of undue burden mandates the denial of defendants' motion for reconsideration. In any case, defendants' credibility regarding the supposed burden of compliance is suspect. Prior to the July 9 conference, defendants had complained that they were unduly burdened in having to respond to any discovery seeking information about the products at issue, and the manufacture, sale, and marketing of these products by defendants. In the July 9 meet and confer conference, defendants' counsel claimed that there were potentially <u>3,500</u> <u>products</u> involved, making it too burdensome to proceed any further. They claimed plaintiffs should shoulder the burden of providing <u>them</u> with the list of relevant products (i.e., the products their clients sold to plaintiffs) before they would have any obligation to search for, retrieve, and produce responsive documents and information. For the sake of moving discovery along, plaintiffs supplied a list of products at issue on July 13, 2004. As it turned out, the list contained <u>fewer</u> <u>than</u> <u>200</u> <u>products</u>.

United States, defendants refused to provide any definitive indication of when they would even start producing documents, including documents for which they are not now renewing their prior objection. Defendants' counsel tap-danced around the issue, offering only the response that he would be able to provide such documents and information "soon" and that the documents and information would be produced "in a reasonable time." Since the July 9 meet and confer conference, defendants have provided no further information in this regard.

Likewise, in response to the inquiry by plaintiffs' counsel concerning when defendants' Rule 30(b)(6) witnesses would be identified, to say nothing of when they would be available for deposition, defendants' counsel was equally noncommittal, stating that defendants were still in the process of identifying corporate designees to testify on the listed topics. Plaintiffs' counsel noted that the depositions could not proceed efficiently unless and until defendants produced the outstanding documents and information required under the June 29 Order and, in addition, identified who would testify and on what topics.

### III.  ARGUMENT

#### A.  Defendants' Motion Should Be Denied.

The June 29 Order imposed no geographical limitations whatsoever on the discovery sought by plaintiffs, which in turn unambiguously requested documents and information pertaining to any and all jurisdictions, not merely the United States and India. *See, e.g.*, Notice of Deposition of The Dow Chemical Company at 8 ("[c]ompetition relating to the sale of Products . . . in markets other than India"), ("[p]ricing of the Products sold, directly or indirectly. . . in or to other markets"), ("[t]he allocation of Products between or among purchasers in different geographic markets"), ("[t]he effect of sales. . . of Products in markets other than the United States...on the sale of Products in the United States"), attached as Exhibit 4 to Defs. Bf. Moreover, evidence submitted in prior motions has shown the global nature of defendants' alleged unlawful conduct, involving markets such as Europe and Asia-Pacific, as well as the United States and India.

Defendants now attempt to avoid compliance with the Order by filing an unnecessary and

4

uncalled for motion, supposedly for "clarification," but actually for reconsideration.[3] As set forth in a case relied on by defendants, however, a motion for reconsideration is only appropriate if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *See Colon v. Tucciarone*, No. 3:02 Civ. 891 (PCD), 2003 WL 22439588, at * 1 (D. Conn. Oct. 27, 2003) (quoting *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995)). Moreover, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* That is exactly what defendants seek to do now. They cite no new points of controlling law. They do not argue that the Court overlooked facts that one could reasonably expect to alter the Court's decision. Instead they relitigate the same losing arguments made in support of their motion for protective order.

Defendants' arguments to the contrary collapse under their own weight. They argue now that rather than limiting the geographic scope of discovery to just India, it should be limited to just India and the United States. This is just another attempt by defendants to hide what must be egregiously damaging evidence based upon an artificially narrow geographic limitation that cannot be justified in light of the allegations in this case, the evidence already presented and, perhaps most importantly, this Court's prior rulings.

Faced with these circumstances, defendants seek to justify their instant motion by claiming that these overly strict limitations should be granted because the Court did not "specifically address the breadth of the discovery it was authorizing." *See* Defs. Bf. at 3. They attribute this failure to plaintiffs' purported representations to the Court during an unidentified status conference. *Id.* Besides rewriting history—again—what they ignore is that plaintiffs have

---

[3] Defendants apparently want more than just their discovery obligations redecided. The footnote in defendants' brief devoted to "correct[ing] a significant factual error" contained in the Order looks more like a premature submission of proposed conclusions of disputed fact that are the exclusive province of the jury to decide. *See* Defs. Bf. at 2, n.2. The Court properly assumed as true, for purposes of its Order, the facts as alleged by plaintiffs in the Amended Complaint. Defendants will have the opportunity to submit and argue for any contrary evidence at trial.

consistently argued that they are entitled to all documents and information concerning, among other matters, sales of the products in all countries. At no time have plaintiffs represented, conceded, or implied that they would limit their discovery requests concerning the sale of the products only to certain jurisdictions, and certainly not to India and the United States exclusively.[4] The June 29 Order clearly reflects the Court's recognition of plaintiffs' position and that the Court did in fact consider and decide that there would be no restrictions on the geographical scope of plaintiffs' requests. Thus, defendants' defective motion for reconsideration should be denied.

Even upon reexamination of the issue of the proper geographic scope of discovery, defendants still fail to acknowledge that plaintiffs specifically allege that their Sherman Act claims implicate all global markets in which defendants sold the products at issue.[5] Indeed, discovery to date has shown that defendants' centralized approach to distribution was created to ensure the interdependency of all global markets for the products. *See, e.g.,* Opp. to Defs. Personal Jurisdiction Mot. dated, July 3, 2003, at Exs. 2–34. Once again, therefore, defendants' arguments do nothing but ignore the claims and seek to narrow the issues in this case to the point that they bear no resemblance to the allegations in the Amended Complaint. This case simply is not limited, as defendants claim, to a conspiracy to maintain Indian resale pricing with tangential effects on United States commerce—it concerns a resale price fixing conspiracy formulated, implemented, and imposed in the United States, which was directed toward and intended to be an integral part of defendants' worldwide efforts to control the prices of the products, including, at least possibly, through a global horizontal conspiracy involving the world's largest chemical manufacturers.

---

[4] Plaintiffs have stated to defendants that they will consider factual showings why discovery for certain jurisdictions would be unrelated to the claims in this case, or would be excessively burdensome when compared to the weight of the evidence, but defendants have never made any effort to respond to such offers. *See* n.6, *infra*.

[5] Nor can defendants continue to delay merits discovery on the pretense that they are unable to determine the "products" at issue. As noted, *supra*, plaintiffs have supplied a list of the specific products that were purchased by them from defendants and that are at issue in this case.

Nor does defendants' restated request for relief from what they claim to be the "enormous burden" of compliance hold water. It is, in fact, stunning in its hubris. While defendants persist in claiming that compliance is unduly burdensome, they still refuse to proffer any admissible facts supporting that conclusion. The June 29 Order specifically states that, in seeking a protective order on grounds of undue burden, defendants had to do more than "simply intone [the] familiar litany that the [discovery requests] are burdensome, oppressive, or overly broad." *See* June 29 Order at 6, quoting *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984). They had to "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant and how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations and quotations omitted, emphasis added). Since there were no such affidavits or evidence offered in support of defendants' original motion (or in their reply after plaintiffs pointed out this fatal deficiency), there is no reason, even now, for the Court to reconsider its decision.[6]

There should be no question, furthermore, about defendants' obligation to retrieve relevant documents and information from all of their subsidiaries and affiliates, regardless of any unsupported claims of undue burden. *See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 Civ. 3016, 2002 WL 1835439, at *4 (S.D.N.Y. Aug. 8, 2002) ("the same principle that is applied to interrogatories and document requests should also be applied to determine the scope of a party's obligation in responding to a Rule 30(b)(6) notice of deposition . . . in all cases, the responding party should be obligated to produce the information under its control."); *Dietrich v. Bauer*, No. 95 Civ. 7051, 2000 WL 1171132, at *3 (S.D.N.Y.

---

[6] As recently as the July 9 discovery conference, plaintiffs' counsel offered to consider any facts relating to undue burden that defendants could provide. None were offered then, and none have been offered since, including in connection with defendants' instant motion. Indeed, defendants' counsel made clear during the July 9 conference that it remained defendants' position, notwithstanding settled law, that they did not need to make the required factual showing of undue burden.

Aug. 16, 2000) ("[n]umerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with that subsidiary"); *Lethbridge v. British Aerospace PLC*, No. 89 Civ. 1407, 1990 WL 194915, at *1 (S.D.N.Y. Nov. 28, 1990) (holding that same principle applies where subsidiary is not owned directly but by an intermediate corporation that is itself a wholly-owned subsidiary of the parent corporation).

### B. The Court Should Set Firm Deadlines for Compliance.

Defendants' most recent motion and their refusal to proceed with merits discovery as described above reveals their intent to continue their deliberate pattern of delay that has marked this litigation from the outset. Merits discovery has been a particularly painful process. On October 15, 2003, *nine months ago*, plaintiffs served their second request for production of documents and second set of interrogatories. Plaintiffs' third request for documents was served on April 2, 2004, more than *three months ago*. And, on May 18, 2003, more than *two months ago*, plaintiffs served their Rule 30(b)(6) deposition notices. In each case defendants objected, filed motions and took it upon themselves to impose a *de facto* stay of merits discovery. Now, however, subject to certain limitations immaterial here, the Court has made clear—in the June 29 Order and during the July 1 teleconference—that defendants must comply with their discovery obligations. Yet, when asked when they would do so, defendants have offered only vague, open-ended, and ultimately hollow responses.

In these circumstances, and in the interest of fairness and efficiency, defendants should be compelled to comply with the June 29 Order by no later than thirty (30) days from this Court's decision on the instant motion and cross-motion. This is more than reasonable. *See Williams v. Nat'l Housing Exchange Inc.*, 165 F.R.D. 405, 409 (S.D.N.Y. 1996) (ordering defendants to respond to all outstanding discovery within 30 days). Furthermore, defendants should be compelled to designate their 30(b)(6) witnesses for each of the requested subject matters listed in the Notices of Deposition, as limited by the June 29 Order, within ten (10) days

of the Court's decision on this motion and cross-motion. Likewise, to avoid any ambiguity, and no doubt further motions from defendants concerning where these depositions will be held, the Court should direct that they be conducted in Hartford, Connecticut.

### C. Sanctions Should Be Imposed on Defendants and Their Counsel.

Federal Rule of Civil Procedure 37(b)(2) authorizes the Court to impose sanctions for the violation of discovery orders and unjustified noncompliance with discovery requests. "An award of sanctions under Rule 37 should effectuate its three purposes: (1) obtaining compliance with discovery orders; (2) ensuring the disobedient party does not benefit from non-compliance; and (3) providing a general deterrent in the particular case and litigation in general." *Alvarado v. Manhattan Worker Career Center*, No. 01 Civ. 9288, 2002 WL 31760208, at *8 (S.D.N.Y. Dec. 10, 2002); *see also Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 179 F.R.D. 77, 80 (D. Conn. 1998) ("Rule 37 sanctions must be available 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent'"). This Court has wide discretion in determining whether to impose sanctions. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976). Moreover, the Second Circuit has stated that Rule 37 should be used as a "credible deterrent rather than a 'paper tiger.'" *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1064 (2d Cir. 1979).

Rule 37 specifically provides that the party who fails to obey an order will not only be compelled to obey the order, but the party or its counsel may be ordered to pay the aggrieved party's "reasonable expenses, including attorney's fees, caused by the failure" Fed. R. Civ. P. 37(b)(E); *see also Martinelli*, 179 F.R.D. at 80 ("[t]he mildest sanction is the reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate").

Sanctions may also be imposed in the Court's discretion under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*See also Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 37-38 (2d Cir. 1995) (finding sanctions appropriate where a party's actions are "entirely without color" and motivated by "improper purposes" such as delay); *ACLI Government Securities, Inc. v. Rhoades*, 907 F. Supp. 66, 68 (S.D.N.Y. 1995) ("an award of sanctions is proper 'when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay'") (quoting *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995)).

Here, imposing sanctions on defendants and their counsel under any or all of the foregoing authority is appropriate. Plaintiffs have been put to significant unnecessary expense in responding to motion after motion after motion. The instant motion for reconsideration, as discussed above, is plain abuse. Not only do defendants just ignore the unambiguous holding of the Court's June 29 Order, they do so by offering arguments exactly as were presented previously, except now they are willing to concede that they are obligated to provide both India- and U.S.-related discovery. As remarked, this continues to be an artificial limitation unsupported by any relevance argument and baseless in light of defendants' repeated refusal (now for the third time) to offer any specific factual support for their burden contention.

Moreover, even as to the discovery that is not in any way implicated by defendants' instant motion, defendants continue in their intransigent refusal to comply with their discovery obligations. Rather than taking whatever steps are needed to gather the requested documents and information, they instead file yet another motion and require plaintiffs to file this cross-motion. At a minimum, therefore, sanctions should be imposed by awarding plaintiffs their costs, including attorneys' fees, incurred in connection with or relating to the instant motion and cross-motion.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration should be denied, and defendants should be directed, as requested herein, to comply with the Court's June 29 Order. Furthermore, plaintiffs should be awarded sanctions and be compensated for their costs, including attorneys' fees, incurred in connection with and related to the instant motion and cross-motion.

Respectfully submitted,

**BINGHAM McCUTCHEN LLP**

_Richard S. Taffet /s/ gcr_
Richard S. Taffet (ct 10201)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

LITDOCS/560794.1

11

## CERTIFICATE OF SERVICE

This is to certify that on this 20th day of July, 2004, a copy of the foregoing has been hand-delivered to the following:

Craig A. Raabe, Esq.
Edward J. Heath, Esq.
Elizabeth A. Fowler, Esq.
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

and sent via FedEx to the following:

Andrew S. Marovitz
Britt M. Miller
Dana S. Douglas
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, IL 60603

Christopher J. Kelly
Mayer, Brown, Rowe & Maw LLP
1909 K Street
Washington, DC 20006-1157



_____
Robert M. Langer

\15726\1\44335.9