UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. | CIVIL ACTION <br> NO. 3:02 CV 1107 (AVC) <br><br> July 22, 2004 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
RENEWED MOTION TO DISMISS BASED ON
LACK OF SUBJECT MATTER JURISDICTION**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd.
and Megavisa Solutions (S) Pte. Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I. PRELIMINARY STATEMENT ................................................................................. 1

II. ARGUMENT ................................................................................................................ 3

    A. The Supreme Court's Decision in *Empagran* Does Not Compel Dismissal of the Sherman Act Claims in This Case ........................................................... 3

    B. Nothing in the Pleadings, Briefs, or Prior Orders Precludes Plaintiffs From Satisfying § 6a(2) .............................................................................................. 6

    C. Nothing in the *Empagran* Decision Defeats Plaintiffs' Standing to Bring Their Sherman Act Claim ................................................................................. 8

    D. Defendants' Renewed Arguments for Dismissal on the Basis of *Forum Non Conveniens* Are Meritless ......................................................................... 9

III. CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*Den Norske Stats Olijeselskap As v. HeereMac Vof*,
   241 F.3d 420 (5th Cir. 2001) ................................................................................5, 6

*Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*,
   542 U.S. __, 124 S. Ct. 2359 (2004) ............................................................... *passim*

*Konstantinidis v. Chen*,
   626 F.2d 933 (D.C. Cir. 1980) ......................................................................................6

*MM Global Services, Inc. v. Dow Chemical Co.*,
   No. 3:02 Civ. 1107 (AVC), 2004 WL 556577 (D. Conn. Mar. 18, 2004) ................5, 8

*Metallgesellschaft AG v. Sumitomo Corp. of America*,
   325 F.3d 836 (7th Cir. 2003) .........................................................................................6

*Pegram v. Herdrich*,
   530 U.S. 211, 120 S. Ct. 2143 (2000) ..........................................................................6

*Russell v. Rolfs*,
   893 F.2d 1033 (9th Cir. 1990) ......................................................................................7

*Wiwa v. Royal Dutch Petroleum Company*,
   226 F.3d 88 (2d Cir. 2000) .........................................................................................10

## STATUTES

15 U.S.C. § 6a(2) ............................................................................................... *passim*

## I. PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc., MM Global Services Pte. Ltd., and Megavisa Solutions (S) Pte. Ltd. (collectively, "plaintiffs") object to and oppose the renewal of previous, unsuccessful arguments to dismiss plaintiffs' antitrust claims for lack of subject matter jurisdiction. In their latest desperate move to avoid adjudication on the merits of plaintiffs' antitrust claims, defendants The Dow Chemical Company ("Dow"), Union Carbide Corporation ("UCC"), and Union Carbide Asia Pacific, Inc. ("UCAP") make good on their threat to move, again, for dismissal under Rule 12(b)(1) in light of a recent Supreme Court decision interpreting the FTAIA.[1] Precisely the same arguments were raised in support of defendants' December 31, 2003 "Motion to Stay Proceeding Pending the United States Supreme Court's Decision in *F. Hoffman-LaRoche, Ltd. v. Empagran, S.A.*" See Order dated March 18, 2004. These arguments failed to persuade the Court then and they remain unpersuasive. Defendants' renewed *forum non conveniens* arguments are just as hollow, while their inclusion of yet another iteration of their mantra that "plaintiffs lack antitrust standing" is totally unjustified by anything in the *Empagran* decision, which nowhere mentions antitrust standing.

Defendants' renewed attacks on plaintiffs' antitrust claims deploy their now-familiar methods of mischaracterizing and distorting not only the pleadings and the evidence, but also prior rulings of this Court, and now, the long-awaited *Empagran* decision itself. Their primary focus here, as in their Motion to Stay, is on the <u>second</u> prong of the FTAIA jurisdictional test, i.e., the determination under 15 U.S.C. § 6a(2) of whether the "direct, substantial, and reasonably foreseeable" domestic effects of defendants' price-fixing conspiracy "gave rise to" plaintiffs' Sherman Act claims. Plaintiffs have shown again and again, whenever defendants have asserted that reversal of *Empagran* by the Supreme Court would mandate dismissal of the Sherman Act

---

[1] *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 542 U.S. __, 124 S. Ct. 2359 (2004) (hereinafter "*Empagran*").

1

claims in this case, that defendants are simply wrong. And in fact, just as plaintiffs predicted all along, the Supreme Court's narrow holding in the *Empagran* case does not support—let alone compel—dismissal of the antitrust claims in this case.

This case is factually and procedurally distinguishable from *Empagran* in many important ways. The Supreme Court did not address the application of § 6a(2) to claims of the sort presented here: claims by affiliated domestic and foreign plaintiffs against affiliated domestic and foreign defendants, to recover for antitrust injuries that are inextricably intertwined with the domestic effects of defendants' U.S.-based price-fixing conspiracy. If *Empagran* has any relevance whatsoever, it lies in the Supreme Court's repeated emphasis on the narrowness of its holding and the specifically limited factual assumptions on which that holding was based.

The argument that plaintiffs have pleaded themselves out of court or are otherwise "judicially estopped" to pursue their Sherman Act claims is absurd, if not downright disingenuous. As plaintiffs have pointed out before, the Amended Complaint contains specific allegations establishing more than sufficient causal links between plaintiffs' injuries and the domestic effects of defendants' misconduct to satisfy § 6a(2). *See, e.g.,* Am. Compl. ¶¶ 20-25, 27, 30, 53, 55. Defendants waste pages and pages of their brief deliberately conflating two entirely separate inquiries and attacking arguments never made, much less relied on by the Court.

Defendants' motion and arguments are duplicative of prior motions and arguments, and just as unavailing. The renewed motion to dismiss should therefore be denied, and, in light of their unreasonable and vexatious attempts to multiply these proceedings purely for the sake of delay, defendants' counsel should be required to seek leave of Court before filing any further Rule 12 motions prior to the close of discovery.

## II. ARGUMENT

### A. The Supreme Court's Decision in *Empagran* Does Not Compel Dismissal of the Sherman Act Claims in This Case.

On June 22, 2004, plaintiffs wrote to the Court objecting to defendants' announced intention to seek further delay of these proceedings and avoid merits discovery while they renewed their efforts to obtain a dismissal based on the *Empagran* decision. *See* Letter from Richard M. Taffet dated June 22, 2004, attached to Defs. Bf. as Exhibit 2. Anticipating plaintiffs' opposition to the instant motion, defendants take issue with a statement in Mr. Taffet's letter that *Empagran* is distinguishable from this case because it "involved wholly foreign players." Indeed, they find it "inexplicable" and make a great show of directing the Court's attention to the caption of the Amended Complaint in that case. *See* Defs. Br. at 9-10. They liken this case to *Empagran* by pointing out that the plaintiffs there named both foreign and domestic defendants and, like MM Global Services, Inc. in this case, plaintiffs included at least one U.S. company. As defendants well know, however, the claims before the Supreme Court were solely the antitrust claims brought by the foreign plaintiffs. *See Empagran*, 542 U.S. __, 124 S. Ct. 2359, 2363-64 (2004) ("petitioners moved to dismiss the suit as to the *foreign* purchasers (the respondents here) .... [T]he *domestic* purchasers transferred their claims to another pending suit and did not participate in the subsequent appeal") (emphases in the original). Furthermore, as noted in Mr. Taffet's March 17, 2004 letter to the Court, defendants' own counsel, in the *Empagran* Petition for Certiorari, framed the issue there as one involving "foreign companies that purchased vitamins from foreign sellers for use in foreign countries."[2] Thus, regardless of how the pleadings were originally captioned, *Empagran*, as decided by the Supreme Court, indeed involved the claims of "wholly foreign players."

Defendants next argue that plaintiffs are "demonstrably incorrect" in saying that

---

[2] *See* Petition for Certiorari at 8 (emphasis added), attached as Exhibit A to defendants' December 31, 2003 brief in support of their Motion to Stay ("hereinafter Cert. Petition").

3

*Empagran* involved "wholly foreign conduct." *See* Defs. Br. at 9. But the Supreme Court was careful to note that "the question presented assumes that <u>the relevant 'transactions occur[ed] entirely outside U.S. commerce.</u>'" 124 S. Ct. at 2364 (emphasis added). As defined by defendants' own counsel in their representation of the *Empagran* petitioners, the question presented to the Supreme Court was limited to "whether respondents . . . may pursue Sherman Act claims seeking recovery for [injuries sustained] in transactions occurring <u>entirely outside U.S. commerce</u>."[3] This case, in contrast, concerns the effects of numerous transactions occurring in the United States, including those that caused plaintiffs' alleged antitrust harm. In particular, as set forth in Plaintiffs' Opposition to Defendants' Motion to Stay at 8-11, the products purchased by plaintiffs from Union Carbide and later Dow were manufactured in the United States; plaintiffs' orders for such products were processed in the United States; decisions to fill or not to fill plaintiffs' orders were made by defendants in the United States; plaintiffs took possession of the products from Union Carbide and later Dow in the United States; title and risk of loss for such products passed to plaintiffs in the United States, and plaintiffs shipped the products to their customers from the United States. Defendants ignore, furthermore, the pleading and proof that the prices at which plaintiffs were permitted to resell the products in India were fixed by defendants in the United States. Thus, in this case, in direct contrast to *Empagran*, the relevant transactions occurred substantially <u>within</u> U.S. commerce.

Plaintiffs argued in their June 22 letter that *Empagran* involved "wholly foreign injury," a statement that defendants criticize as "highly misleading." But the Supreme Court emphasized and reemphasized that it based its decision upon the following assumption:

> The price-fixing conduct significantly and adversely affects both customers outside the United States and customers within the United States, <u>but the adverse foreign effect is independent of any adverse domestic effect</u>. .

---

[3] *See* Cert. Petition at i (emphasis added).

4

*Id.* at 2366. Thus, the Supreme Court did not address the type of significant domestic anticompetitive conduct that exists in this case, and certainly did not have before it the pleading and evidence that this Court has already held make it "quite foreseeable that a conspiracy to fix prices in the Indian market might reasonably cause direct and substantial effect on the prices charged for the same products in the United States." *MM Global Servs. Inc. v. Dow Chemical Co.*, No. 3:02 Civ. 1107 (AVC), 2004 WL 556577, at *6 (D. Conn. Mar. 18, 2004); June 11 Order at 2. To the contrary, the Supreme Court expressly left undecided the critical issue in this case: where the limits of jurisdiction under the FTAIA lie when alleged domestic misconduct helps "bring about" foreign injury. *Empagran*, 124 S. Ct. at 2372.

The Supreme Court also did not address precisely what facts would satisfactorily show, within the meaning of § 6a(2), that domestic effects "give rise to" or, in the Court's words, "help to bring about" plaintiffs' antitrust claim.[4] Defendants presume, since they must in order to prevail, that the statute demands a showing of foreign injury "flowing from" the United States effects, "*not the other way around.*" *See* Defs. Bf. at 18 (emphasis in original). The *Empagran* decision, however, was expressly limited to whether the Sherman Act conferred jurisdiction over foreign effects "entirely independent" of domestic effects; there is nothing in the case that precludes jurisdiction over domestic effects "flowing" to <u>and</u> from foreign effects.

Defendants' interpretation of *Empagran* is inaccurately self-serving in a number of other ways. While it did reject the Second Circuit's approach in *Kruman,* the Supreme Court did not expressly or implicitly "endorse" the Fifth Circuit's jurisdictional test in *Den Norske Stats Olijeselskap As v. HeereMac Vof,* 241 F.3d 420 (5th Cir. 2001). Rather, the Supreme Court created its own test, to be applied when and if "an independent foreign effect" <u>alone</u> "giv[es] rise

---

[4] The *Empagran* opinion notes that the respondents there conceded that the "claim" satisfying the second prong of § 6a was "not their claim; it is someone else's claim." 124 S. Ct. at 2371. In this case, plaintiffs have made no such concession. As set forth in the previous submissions, they have alleged, and the evidence will show, that their antitrust claims are causally linked to the "direct, substantial, and reasonably foreseeable" domestic effects of defendants' illegal conduct, and the injury complained of is theirs, suffered in the United States in addition to India.

5

to" the plaintiff's claim. *See* 124 S. Ct. at 2363. There is nothing in the Supreme Court's decision defining what is "independent" foreign injury and what is "dependent" foreign injury, other than a statement that the Court assumed, for purposes of its decision, that the domestic effects did not "help to bring about" the foreign injury. *Id.* at 2372. Thus, the Seventh Circuit's *Metallgesellschaft* case remains instructive here because it addressed a situation involving even fewer domestic ties than those established by the facts of this case, and found that it would satisfy even the stricter *Den Norske* standard. *See Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836 (7th Cir. 2003) (holding there was jurisdiction, under both prongs of § 6a, over claims by foreign plaintiffs alleging a conspiracy by defendants to raise copper prices and manipulate the London Metals Exchange, where plaintiffs alleged that they suffered injury in the U.S. as a result of physical copper transactions that took place within the U.S. or copper futures transactions on a U.S. exchange).

Taken to its logical extreme, defendants' interpretation of *Empagran* clearly goes far afield of anything said or implied by the Supreme Court. According to defendants, if a foreign company comes to the U.S. and buys products subject to a price-fixing conspiracy imposed in the U.S., and sells the goods outside of the United States, then no jurisdiction exists—notwithstanding that the illegal conspiracy was formed and effectuated in the U.S. In sum, defendants reliance on *Empagran* as their ticket out of this Court is misplaced. Even a cursory review of that decision reveals no need to revisit arguments the Court has already rejected, and the defendants' renewed motion should be denied.

### B. Nothing in the Pleadings, Briefs, or Prior Orders Precludes Plaintiffs From Satisfying § 6a(2).

Defendants claim that the principle of judicial estoppel bars any opposition to dismissal under their interpretation of *Empagran*. The rule of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S. Ct. 2143 (2000). Because the rule is intended to prevent "improper use of judicial machinery," *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980), judicial estoppel "is an equitable

6

doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citation omitted).

There is no reason for the Court to invoke the doctrine here. In the first place, plaintiffs have consistently taken the position, as outlined above, that the pleadings and proof in this case fully satisfy <u>both</u> prongs of § 6a. The Court has not relied, therefore, on any argument that contradicts the opposition arguments set forth herein and in plaintiffs' previous submissions addressed to § 6a(2). Rather, the Court has repeatedly rejected or disregarded <u>defendants'</u> arguments at every turn. For example, over and over in this litigation, whether the issue is antitrust standing or subject matter jurisdiction under § 6a(1) or § 6a(2), defendants have tried to persuade the Court to dismiss this case based on the mere fact that plaintiffs were authorized to resell defendants' products only in India. In denying defendants' prior motions to dismiss, the motions for interlocutory review, and their most recent Motion to Stay, the Court has made it clear that this argument, for all purposes, is unpersuasive. Neither *Empagran* nor the doctrine of judicial estoppel magically transforms this argument into a winner in the context of § 6a(2).

Defendants also make much of the fact that the Second Circuit's *Kruman* decision concerning the application of § 6a(2) has been overruled. While *Kruman* was still good law, plaintiffs could and did properly cite it, among many other cases (*Empagran* included), in opposition to defendants' motions to dismiss, motion for stay pending the decision in *Empagran*, and motions for interlocutory appeal. Plaintiffs' claims never <u>depended</u> on the continued viability of *Kruman*, however, with respect to either prong of § 6a. More importantly, none of the Court's prior rulings require reconsideration in light of the effect of *Empagran* on *Kruman*, since the Court itself did not rely on the viability of that decision for purposes of assessing jurisdiction under § 6a(2).

In further attacking subject matter jurisdiction under § 6a(2), defendants correctly point out that plaintiffs pleaded and presented evidence that at this juncture, as the Court has twice stated, "present[s] a compelling case going far beyond speculation of direct, substantial and foreseeable effects" on prices in the United States from the price fixing conspiracy. *See MM*

7

*Global,* 2004 WL 556577, at *6; *id.* Order Denying Motion for Leave to Certify for Appeal, June 11, 2004 ("June 11 Order"), at 2. But as they have continually done, defendants omit or mischaracterize allegations establishing that defendants' unlawful conduct—i.e., the formation and implementation of defendants' price fixing agreement—occurred in the U.S., as did a substantial aspect of both the foreign and domestic plaintiffs' injury.

Even more egregious are defendants' misuse of this Court's prior rulings, in which they rely upon findings and rulings that were clearly confined to the first prong of the FTAIA, as if they also disposed of the issues addressed by the Supreme Court concerning the second prong. *See, e.g.,* Defs. Br at 16. Indeed, this Court's March 18, 2004 decision expressly states that it granted the motion for reconsideration to address the first prong of the FTAIA. Selectively quoting from that decision is neither material nor helpful here.

    **C.    Nothing in the *Empagran* Decision Defeats Plaintiffs' Standing to Bring Their Sherman Act Claim.**

After their fanciful exposition of the Supreme Court's holding in *Empagran* and equally fanciful invocation of the doctrine of judicial estoppel, defendants detour to revisit their prior challenge to plaintiffs' standing to bring their antitrust claims. The *Empagran* decision does not even mention antitrust standing, much less announce new law justifying the filing of a badly disguised supplemental brief in support of defendants' pending motion to dismiss under Rule 12(c). Arguments that plaintiffs lack standing are out of place and out of time in proceedings to revive the issue of subject matter jurisdiction.

But even if lack of standing were properly before the Court on the instant motion, there are a multitude of reasons, all of which plaintiffs have submitted to this Court in prior briefs, why defendants' attack on standing must fail. In the interest of sparing the Court from duplicative treatment of this issue, plaintiffs respectfully incorporate by reference the detailed arguments in Plaintiffs' Opposition to Defendants' Motion for Partial Judgment on the Pleadings, dated February 13, 2004. As set forth therein, the Amended Complaint specifically describes plaintiffs' antitrust injury (*see, e.g.,* Am. Compl. ¶¶ 30, 55), as well as injury suffered in the United States of the type against which the antitrust laws are directed (*see, e.g., id.* ¶¶ 22,

8

24, 25, and 55). Plaintiffs' standing is also supported by substantial documentary evidence tending to prove anticompetitive effects of defendants' price fixing activities in the United States and elsewhere outside of India. Both the pleadings and the evidence establish antitrust standing, and there is nothing in *Empagran* that states or implies anything to the contrary.

> D. **Defendants' Renewed Arguments for Dismissal on the Basis of *Forum Non Conveniens* Are Meritless.**

Defendants try mightily to persuade the Court, for the third time, to jettison this case from the docket on grounds of *forum non conveniens*. As a threshold matter, to the extent that dismissal on this ground assumes that the Court lacks jurisdiction over the two foreign plaintiffs' antitrust claims, that assumption is wrong for the reasons set forth above. Moreover, defendants have no basis whatsoever, under *Empagran*, to demand dismissal of the Sherman Act claims of the domestic plaintiff, MM Global Services, Inc., thus leaving at least one viable federal antitrust claim remaining for adjudication by this Court. The Court therefore need not even reach the *forum non conveniens* issue at all, much less consider, for the third time, the same arguments it rejected in its Order dated March 24, 2004 ("Having considered the renewed motion, the court nevertheless concludes that, for the same reasons set forth in the April 17, 2003 decision, the motion is DENIED.").

Second, even when the renewed *forum non conveniens* arguments are assessed independently of mistaken assumptions about the impact of *Empagran* on this case, there are no compelling reasons for the Court to reverse its original exercise of discretion in denying (twice) defendants' previous motions. Plaintiffs are not inconvenienced by litigation here and, consistent with prevailing law, their choice of forum should be given substantial deference.[5] Indeed, over the course of time, compelling reasons have arisen for keeping the case in this Court through final adjudication. The case has been pending and actively litigated in this Court for

---

[5] The Second Circuit recognizes that a plaintiff's choice of forum should only be disturbed if the factors favoring the alternative forum are "compelling." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000).

9

almost two years. The parties have exchanged a significant number of documents already, and full merits discovery is now getting under way. The docket shows that defendants have certainly not been hampered in their ability to file motion after motion seeking all variety of relief.

Furthermore, regardless of the current location of their headquarters, defendants are domestic companies with the economic means and demonstrated ability, through counsel located in Chicago, Washington, D.C., and Connecticut, to participate fully in litigation in this Court. As previously held by the Court, defendants have simply failed to meet their heavy burden of showing that any other jurisdiction is <u>decidedly</u> more convenient with regard to the location of witnesses and documents. Notwithstanding defendants' vague suggestions to the contrary, Singapore is no more convenient or adequate a forum than Connecticut. Indeed, the Dow website reveals that Dow has at least one manufacturing plant in the State, while Union Carbide has two "Business Centers," in Danbury and Oxford, respectively.[6] As previously established by plaintiffs' earlier submissions to the Court, there are crucial witnesses and documents in Connecticut and elsewhere in the United States, in Singapore and also in India. *See, e.g.,* Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss for *Forum Non Conveniens*, dated November 12, 2002; Response to Motion of Defendants to Dismiss Plaintiffs' First Amended Complaint on *Forum Non Conveniens* Grounds, dated July 3, 2003.

The choice of law makes little difference in this context. Even in the theoretical absence of plaintiffs' Sherman Act claims, this Court, as it has previously ruled, can apply foreign law just as well as a Singapore court can apply Indian law, or an Indian court can apply Singapore law. In short, none of the arguments presented by defendants in support of their prior *forum non conveniens* motions is any stronger, while none of the arguments made by plaintiffs is any weaker. There is no new law, and there are no new facts justifying reconsideration of these issues. Defendants' motion should be denied.

---

[6] *See* http://www.dow.com/facilities/namerica/connect.htm.

### III. CONCLUSION

Through an endless series of procedural motions, defendants have now managed to extend the preliminary phase of this case for an unconscionable amount of time. Plaintiffs' antitrust claims, however, are and should remain in this Court. There was no legal basis for their dismissal before the Supreme Court decided *Empagran*, and there is no legal basis for their dismissal now.

Dated: July 22, 2004                                Respectfully submitted,

                                                    **BINGHAM McCUTCHEN LLP**

                                                    *Richard S. Taffet* /s/gcr
                                                    _____
                                                    Richard S. Taffet (ct 10201)
                                                    399 Park Avenue
                                                    New York, NY 10022-4689
                                                    (212) 705-7000 (tel)
                                                    (212) 752-5378 (fax)

                                                    -and-

                                                    WIGGIN AND DANA LLP
                                                    Robert M. Langer (ct 06305)
                                                    Suzanne E. Wachsstock (ct 17627)
                                                    One City Place
                                                    185 Asylum Street
                                                    Hartford, CT 06103
                                                    (860) 297-3724 (tel)
                                                    (860) 525-9380 (fax)

LITDOCS/559810.1

## CERTIFICATE OF SERVICE

This is to certify that on this 22nd day of July, 2004, a copy of the foregoing has been hand-delivered to the following:

Craig A. Raabe, Esq.
Edward J. Heath, Esq.
Elizabeth A. Fowler, Esq.
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT  06103

and sent via FedEx to the following:

Andrew S. Marovitz
Britt M. Miller
Dana S. Douglas
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, IL  60603

Christopher J. Kelly
Mayer, Brown, Rowe & Maw LLP
1909 K Street
Washington, DC  20006-1157

_____
Robert M. Langer

\15726\1\44335.10