UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC. <br><br> Defendants. | Civil No. 3:02 CV 1107 (AVC) <br><br><br> August 4, 2004 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS BASED ON LACK OF SUBJECT MATTER
JURISDICTION FOLLOWING THE SUPREME COURT'S DECISION
IN *F. HOFFMANN-LA ROCHE LTD. V. EMPAGRAN, S.A.***

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 05103-3497
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
190 South La Salle Street
Chicago, Illinois 60603
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

    I.    The Court Lacks Jurisdiction Over Plaintiffs' Antitrust Claim .................. 2

        A.    To establish jurisdiction, Plaintiffs' claim must arise from an effect on U.S. commerce, no matter where the conduct occurred ........................................................................................ 2

        B.    Plaintiffs' claim does not arise from an effect on U.S. commerce ............................................................................................ 4

    II.    Plaintiffs' Breach Of Contract And Negligent Misrepresentation Claims Should Be Dismissed On Forum Non Conveniens Grounds ......... 7

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Alfadda v. Fenn*, 159 F.3d 41 (2d Cir. 1998) ................................................................... 8

*F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 124 S. Ct. 2359 (2004) ..................... passim

*Kruman v. Christie's International PLC*, 284 F.3d 384
  (2d Cir. 2002), *cert. dismissed*, 124 S. Ct. 27 (2003) ................................................ 1, 5

*Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836
  (7th Cir. 2003) ................................................................................................................ 7

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ............................................................. 8

*Scottish Air Int'l, Inc. v. British Caledonian Group*, 81 F.3d 1224
  (2d Cir. 1996) ............................................................................................................... 10

*Shields v. Mi Ryung Constr. Co.*, 508 F. Supp. 891 (S.D.N.Y. 1981) ............................. 10

*Sniado v. Bank Austria AG*, 352 F.3d 73 (2d Cir. 2003) .................................................... 1

**Statutes:**

15 U.S.C. § 6a(1) ............................................................................................................ 1, 5

15 U.S.C. § 6a(2) ......................................................................................................... 1, 3, 5

28 U.S.C. § 1331 ................................................................................................................. 6

28 U.S.C. § 1332 ................................................................................................................. 6

## INTRODUCTION

Defendants' motion is not a "renewal of previous, unsuccessful arguments" that this Court "has already rejected," as Plaintiffs charge (Opp. 1, 6). Defendants' motion is based on a new and obviously significant development that has fundamentally changed the law in this Circuit — the Supreme Court's decision in *Empagran*. Plaintiffs admit that the Supreme Court "did reject the Second Circuit's approach in *Kruman*" (*id.* at 5), but they shrug it off as immaterial (*id.* at 7). In fact, the overruling of *Kruman* precludes subject matter jurisdiction and dooms Plaintiffs' antitrust claim.

Defendants' prior Rule 12(b)(1) motions to dismiss and for reconsideration addressed only whether the effect on U.S. commerce alleged by Plaintiffs — lack of price erosion in the U.S. — satisfied the "direct, substantial, and reasonably foreseeable" test of 15 U.S.C. § 6a(1). This Court ruled that it did. Defendants' current motion asks the Court for the first time to resolve whether Plaintiffs have satisfied the additional requirement in § 6a(2) that such an effect "gives rise to a claim." When *Kruman* was the law in this Circuit, Plaintiffs could satisfy § 6a(2) simply by alleging that the required effect on U.S. commerce gives rise to an antitrust claim by *someone*. *See Kruman*, 284 F.3d at 400. Now, after *Empagran*, Plaintiffs must specifically plead that such an effect gives rise to *their own* antitrust claim. *See Empagran*, 124 S. Ct. at 2372.[1]

Plaintiffs cannot satisfy that jurisdictional requirement. They allege only one effect on U.S. commerce: lack of price erosion for Products in the United States. They have not alleged (much less shown) that any such non-erosion of U.S. prices gave rise to

---

[1] In light of its overruling of *Kruman*, the Supreme Court vacated the Second Circuit's decision in *Sniado v. Bank Austria AG*, 352 F.3d 73 (2d Cir. 2003), which had followed *Kruman*. *See* 124 S. Ct. 2870 (2004).

*their* resale price maintenance claim. Instead, they argue that the pricing effect in India of Defendants' alleged resale price maintenance, the basis for their claim, had a rebound price effect in the U.S., but they never identify how any such rebound had an effect on them in the U.S. In any event, neither the FTAIA nor *Empagran* permits subject matter jurisdiction based on such a reverse rebound effect theory. Because Plaintiffs' claim does not arise from an effect on U.S. commerce, it must be dismissed.

## I. The Court Lacks Jurisdiction Over Plaintiffs' Antitrust Claim.

### A. To establish jurisdiction, Plaintiffs' claim must arise from an effect on U.S. commerce, no matter where the conduct occurred.

Plainly cognizant of the impact of *Empagran*, Plaintiffs dismiss the Supreme Court's ruling as "narrow" and try to distinguish it. Opp. 2. They argue that whereas *Empagran* addressed "'wholly foreign conduct'" and transactions "'entirely outside U.S. commerce,'" their claim addresses "the effects of numerous transactions occurring in the United States." *Id.* at 4 (emphasis omitted). In fact, this case is on all fours with *Empagran* in all relevant respects, an identity Plaintiffs try to hide by confusing the separate concepts of conduct, transaction, and effect.

The *Empagran* respondents alleged a global conspiracy with *conduct* taking place throughout the world, including the U.S. *See* Def. Open. Br. 11; *Empagran*, 124 S. Ct. at 2367 ("some of the anticompetitive price-fixing conduct alleged here took place in *America*"). That conduct produced *effects* in the form of supracompetitive vitamin prices both in the United States and in foreign countries. *Id.* at 2363. The *Empagran* respondents purchased vitamins in *transactions* that occurred solely in foreign countries. *Id.* at 2364. The Supreme Court held that, insofar as the respondents' claims arose from paying supracompetitive prices in those foreign transactions, the FTAIA precluded

2

jurisdiction. The Court reasoned that, if the only effects that harmed the respondents were the supracompetitive prices paid *outside* U.S. commerce, the effects *in* U.S. commerce did not give rise to the respondents' claim, as § 6a(2) requires. *Id.* at 2372.

Like the *Empagran* respondents, Plaintiffs here allege *conduct* by Defendants both in the U.S. (manufacturing, order processing, shipping, delivery, and meetings) and in a foreign country (resale price maintenance). Opp. 4. As in *Empagran*, that conduct allegedly produced *effects* in both the U.S. (lack of price erosion) and the foreign country (resale price floors and a consequent loss of sales). Am. Cmplt. ¶¶ 29-30. And as in *Empagran*, the *transactions* relevant to Plaintiffs' resale price maintenance claim — Plaintiffs' sales of Products to their customers — all took place in the foreign country (here, India). Def. Open. Br. 19-20. It follows ineluctably from *Empagran* that, insofar as it was the allegedly anticompetitive resale prices in India and not the lack of price erosion in the U.S. that gave rise to Plaintiffs' claim, jurisdiction is lacking.

Plaintiffs try to escape from the grip of *Empagran* by repeatedly misstating the FTAIA's jurisdictional test. Instead of focusing on whether the requisite *effect* on U.S. commerce gave rise to their claim, as the FTAIA and *Empagran* require, Plaintiffs' brief again and again looks to the location of Defendants' alleged *conduct*. *E.g.*, Opp. 5 (jurisdiction depends on the extent to which "domestic misconduct helps 'bring about' foreign injury"); *id.* at 6 (there must be jurisdiction if an "illegal conspiracy was formed and effectuated in the U.S."); *id.* at 8 (there is jurisdiction if "the formation and implementation" of the alleged conspiracy "occurred in the U.S."). Plaintiffs work so hard to shift the focus from effect to conduct because the effect giving rise to *their* claim, minimum resale prices that allegedly reduced their sales, occurred only in India. But

3

Plaintiffs cannot overcome the FTAIA and *Empagran* by misdirection. Because the *effect giving rise to their claim* was outside U.S. commerce, as demonstrated in Defendants' opening brief (at 19-21) and further in the next section, it is beyond the jurisdictional reach of the Sherman Act.

### B. Plaintiffs' claim does not arise from an effect on U.S. commerce.

The location of the effect giving rise to Plaintiffs' claim is indisputable. Plaintiffs admit as a "fact" that "plaintiffs were authorized to resell defendants' products only in India." Opp. 7. Hence, their brief's naked assertion that a "substantial aspect" of their "injury" occurred in the U.S. is just bluster. *Id.* at 8. Neither their Complaint nor their brief articulates injury other than lost sales in India due to resale price floors in India.

It therefore is now clear – and this is the crucial point – that Plaintiffs do not (and cannot) allege a resale price maintenance scheme that prevented them from reselling any Products that they *actually purchased* and paid for in the U.S. To the contrary, Plaintiffs allege lost profits for the resale of Products that *they never purchased in the U.S. in the first place* because they could not prearrange a sale in India free from the alleged resale price maintenance. Am. Cmplt. ¶¶ 27, 28. At bottom then, even under this theory, when Plaintiffs allegedly took delivery of Products in the United States, they resold them at higher prices in India and suffered no injury.[2] And when Plaintiffs *did not* take delivery

---

[2] In the standing section of their brief, Plaintiffs declare that the Amended Complaint "specifically describes" Plaintiffs' "injury suffered in the United States." Opp. 8-9 (citing ¶¶ 22, 24-25, and 55). But none of the cited paragraphs references a resale of Products by Plaintiffs in the United States or any harm they purportedly suffered here. Paragraphs 22, 25, and 55 each references resales "to end-users in India" (*see also* Def. Open. Br. 19 n.4), and ¶ 24 does not reference resales at all. These paragraphs allege *purchases* by Plaintiffs in the United States, but offer no indication that any actual purchases gave rise to a resale price maintenance claim. Nor could they. That claim alleges that Plaintiffs were forced to sell the Products they purchased at high prices – *above* price floors set by Defendants. Plaintiffs do not allege any lost sales in the United States, a place in which they were not authorized to sell the Products.

in the United States – no purchases having been made because "Defendants' fixing of minimum resale prices" (*Id.* ¶ 30) allegedly prevented them from reselling the Products in India – Plaintiffs suffered purported lost profits injury for sales they lost *in India, not in the U.S.* The FTAIA and *Empagran* compel dismissal in these circumstances.

To avoid this inescapable conclusion, Plaintiffs claim that it suffices if their alleged harm was "inextricably intertwined" and had "sufficient causal links" with the domestic effect of Defendants' conduct. Opp. 2. But as explained earlier (*see* Def. Open. Br. 15), the Fifth Circuit in *Den Norske* rejected that very argument. Although Plaintiffs deny that the Supreme Court in *Empagran* endorsed the approach to jurisdiction taken in *Den Norske* (Opp. 5), the Court expressly stated that it "granted certiorari to resolve a split" between *Den Norske* and *Kruman*. 124 S. Ct. at 2364. The Court resolved the circuit split by, as Plaintiffs admit, "overrul[ing]" *Kruman*. Opp. 7. The Court did so by ruling, just as the Fifth Circuit did, that the FTAIA's "gives rise" requirement means that the domestic effect defined in § 6a(1) must "bring about" the plaintiffs' claim, notwithstanding the arguably broad "a claim" language in § 6a(2). 124 S. Ct. at 2372.

For the domestic effect to "bring about" the plaintiffs' claim, the path of causation must run *from* the effect in U.S. commerce *to* the plaintiffs' injury, not the other way around. *See* Def. Open. Br. 14-15; *Empagran*, 124 S. Ct. at 2372. Plaintiffs have not even alleged that the purported lack of price erosion in the U.S. "brought about" their resale price maintenance claim. *See* Def. Open Br. 20. In fact, they allege just the opposite. Plaintiffs' theory is that it was the resale price floors in India that in turn *brought about* stabilized prices in the United States. Am. Cmplt. ¶ 29; *see* Def. Open. Br. 16-17 (citing three Court Orders recognizing this theory). Nothing in the FTAIA or

5

*Empagran* grants jurisdiction where an effect in foreign commerce gives rise to a rebound effect in U.S. commerce that does not itself give rise to the plaintiff's claim.

For that reason, the question remanded in *Empagran*, whether the respondents' claim did in fact arise from the requisite effect on U.S. commerce (a question not decided by the court of appeals), has absolutely no bearing here. 124 S. Ct. at 2372. The *Empagran* respondents posited that high prices in the U.S. prevented them from obtaining lower prices in their own countries and hence that an effect on U.S. commerce gave rise to their claim. *Id.* Here, in contrast, Plaintiffs contend that an effect in India (minimum resale prices) gave rise to an effect in the U.S. (lack of price erosion). Am. Cmplt. ¶ 29. Even if Plaintiffs' allegations were true, the FTAIA would not authorize jurisdiction over *their* antitrust claim because it did not *arise from* the U.S. effect. That was the Supreme Court's holding in *Empagran*, and it mandates dismissal here.

Plaintiffs' observation that *Empagran* does not preclude "jurisdiction over domestic effects 'flowing' to and from foreign effects" is both incoherent and irrelevant. Opp. 5 (Pl. emphasis). First, courts exercise jurisdiction over "civil actions," not over effects. *See* 28 U.S.C. §§ 1331, 1332. Second, as explained above, Plaintiffs have alleged a domestic effect (lack of price erosion in the U.S.) flowing *from* a foreign effect (the imposed price floors in India). Plaintiffs have not alleged any effect flowing from the U.S. *to* India. Hence, Plaintiffs' pleading fails to satisfy the FTAIA's requirement, as clarified by the Supreme Court in *Empagran*, that Plaintiffs' alleged domestic effects must "give[] rise to" their alleged claim. Because the inverse proposition is not sanctioned by federal law, Plaintiffs' "to and from" statement is nothing more than an attempt to muddle this issue by erroneously suggesting that domestic effects flowing

6

"from" foreign effects are just as adequate as domestic effects flowing "to" foreign effects. They are not.

For the same reason, the Supreme Court's statement in *Empagran* that it was addressing only claims arising from an "independent foreign effect" lends no support to Plaintiffs' position. *See* 124 S. Ct. at 2363; Opp. 5. As previously explained, the *only* possible effect giving rise to Plaintiffs' claim was a purported loss of sales in India from allegedly being compelled to sell Products there at specified prices. That effect – if indeed it existed at all – "independently" and exclusively gave rise to Plaintiffs' antitrust claim. Any consequent effect in the U.S. could not have given rise to Plaintiffs' resale price maintenance claim, and thus cannot confer jurisdiction pursuant to the FTAIA.[3]

## II. Plaintiffs' Breach Of Contract And Negligent Misrepresentation Claims Should Be Dismissed On *Forum Non Conveniens* Grounds.

Defendants' opening brief (at 22-27) demonstrated that the relevant *forum non conveniens* factors weigh heavily in favor of adjudicating Plaintiffs' breach of contract and negligent misrepresentation claims in Singapore. Plaintiffs respond that the Court "need not even reach the *forum non conveniens* issue at all," based on its rulings on prior motions. Opp. 9. Plaintiffs fail to mention that those prior rulings were based on the Court's view that Singapore is an inadequate forum for U.S. antitrust claims. *See* Def. Open. Br. 24-25. Because *Empagran* requires the dismissal of Plaintiffs' antitrust claim for the reasons set forth *supra*, that rationale is moot. Significantly, Plaintiffs' brief does not suggest that Singapore would provide an inadequate alternative forum, nor does it

---

[3] Plaintiffs purport to find support for their position in *Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836 (7th Cir. 2003). Opp. 6. But Plaintiffs themselves describe *Metallgesellschaft* as involving "injury in the U.S." based on "transactions that took place within the U.S." *Id.* This case, in contrast, involves injury in India based on lost opportunities there.

7

address the related proceeding already conducted in Singapore by Plaintiff MVS-Singapore and former Defendant Dow Singapore. *See* Def. Open. Br. 27.

Plaintiffs also fail to account for other subsequent developments. At Plaintiffs' request, this Court currently is considering whether to reinstate two previously dismissed *foreign* Defendants, Union Carbide Customer Services Pte. Ltd. and Dow Chemical Pacific (Singapore) Private Ltd. Plaintiffs recently demanded (in their motion to compel discovery filed July 20) that all depositions be taken in Hartford. Adding foreign parties to be deposed in the U.S. – halfway around the world from their places of business – would plainly add to the inconvenience of litigating this case in this forum.

Plaintiffs also invoke a presumption in favor of a plaintiff's choice of forum. Opp. 9. But that presumption applies only where a plaintiff has filed in its home forum. "When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981); *accord Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998). None of the Plaintiffs is domiciled in Connecticut. *See* First. Am. Cmplt. ¶¶ 4-7. Hence, the presumption they invoke does not apply.

Plaintiffs offer no valid reason for keeping the case in Connecticut, given that most of the witnesses relevant to the breach of contract and negligent misrepresentation claims are in Asia. *See* Def. Open. Br. 26. They say "the parties have exchanged a significant number of documents" (Opp. 10), but never explain how those exchanges would unravel if this case should proceed in Singapore. Nor do they acknowledge that the vast majority of these documents – including the transaction documents – originated

8

in Singapore or India, and that the authors and prior custodians of these documents still reside in these countries. Plaintiffs' 30(b)(6) earlier deposition notices (Ex. 11) seek discovery on topics addressed by these foreign documents. For example, with respect to order processing, Plaintiffs request a deponent to testify about "[t]he placement, entry, processing, acceptance and fulfillment of orders from Plaintiff or MVMS for Products, including without limitation the processes followed and the persons involved with and with responsibility therefore." *Id.* (Category 13). Responding to this discovery under Plaintiffs' terms would require Defendants to identify the order processing personnel from Singapore, as well as the individuals from non-party Dow India who met with Plaintiffs to discuss order processing after the merger transactions. It also would require knowledgeable individuals to travel to Connecticut to discuss the details of the Asian business transactions underlying this lawsuit. *See* Ex. 12 (collecting sample documents). Equally burdensome is Plaintiffs' request for a corporate deponent to testify about the "[t]erms and conditions relating to the sale of Products to Plaintiffs and/or MVMS, including without limitation relating to credit terms and changes in credit terms, payment terms and conditions and changes therefore, freight and the shipment of Products to end users, the calculation of amounts to be paid by Plaintiffs or MVMS for Products, and insurance." Ex. 11 (Category 15). As Plaintiffs are aware from the more than 80,000 pages of documents produced by Defendants in 2002 and 2003 pursuant to this Court's order allowing *forum non conveniens* discovery, the changes in Plaintiffs' credit terms were a function of review by non-party Dow India's treasury department. Defendants thus have been requested to fly individuals knowledgeable about Dow India's review to Connecticut, to testify about the documentation previously produced from India

9

regarding Plaintiffs' credit status, credit terms, and multiple credit holds for nonpayment. *See* Ex. 12.

While Plaintiffs contend that certain Defendants have business operations in Connecticut, they do not contend that any such operations had anything to do "with the events at issue in this litigation." *Shields v. Mi Ryung Constr. Co.*, 508 F. Supp. 891, 894 (S.D.N.Y. 1981) (dismissing on *forum non conveniens* grounds although "two of the defendant corporations do business [in] this district"). They contend that relevant witnesses and documents are located in the U.S. (Opp. 10), but they do not deny that *most* are in Asia. *See* Def. Open. Br. 26. Finally, Plaintiffs belittle the importance of this Court's choice of Singaporean and Indian law to govern these claims. Opp. 10. But "[w]hen deciding a *forum non conveniens* motion, a court may properly rely on the difficulties attending the resolution of questions of foreign law." *Scottish Air Int'l, Inc. v. British Caledonian Group*, 81 F.3d 1224, 1234 (2d Cir. 1996). There is no good reason to burden this Court with the task of construing unfamiliar bodies of law when an adequate forum with much greater familiarity with those bodies of law is available.[4]

## CONCLUSION

The Amended Complaint should be dismissed with prejudice.

Dated: August 4, 2004               Respectfully submitted,

                                    *[signature]*
                                    One of Defendants' Attorneys

---

[4] Plaintiffs offer but a *pro forma* response to our showing that *Empagran* is consistent with Defendants' pending motion for judgment on the pleadings based on lack of standing. Opp. 8-9. We therefore stand on our opening brief and motion papers without further comment.

| | |
|---|---|
| Craig A. Raabe (ct 04116) | Andrew S. Marovitz (ct 25409) |
| Edward J. Heath (ct 20992) | Dana S. Douglas (ct 25412) |
| ROBINSON & COLE LLP | MAYER, BROWN, ROWE & MAW LLP |
| 280 Trumbull Street | 190 South La Salle Street |
| Hartford, CT  05103-3497 | Chicago, Illinois  60603 |
| (860) 275-8304 | (312) 782-0600 |

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C.  20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

13192798

## CERTIFICATE OF SERVICE

This is to certify that that a copy of the Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss was sent on this 4th day of August, 2004, as follows:

Richard S. Taffet, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Suzanne Wachsstock, Esq.
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

Robert M. Langer, Esq.
Wiggin & Dana LLLP
CityPlace
185 Asylum Street
Hartford, CT 06103

_____
Craig A. Raabe