EXHIBIT 11

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE., LTD., | ) ) ) |
| Plaintiffs, | ) |
| v. | ) |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, AND UNION CARBIDE ASIA PACIFIC, INC., | ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION
NO. 3:02 CV 1107 (AVC)

May 18, 2004

To:     Craig A. Raabe, Esq.               Andrew S. Marovitz
        ROBINSON & COLE LLP               MAYER, BROWN, ROWE & MAW LLP
        280 Trumbell Street               190 South LaSalle Street
        Hartford, CT  06103-3597          Chicago, IL  60603

### NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(1) and (6),

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte., Ltd. ("MMGS-S"),

and MegaVisa Solutions (S) Pte., Ltd. ("MVS") (collectively, "plaintiffs") will take the

deposition upon oral examination of the Defendant, The Dow Chemical Company ("Dow"),

2030 Dow Center, Midland, Michigan 48674, through one or more officers, directors, managing

agents or other persons who consent to testify on its behalf as to the matters set forth on Exhibit

A attached hereto on July 9, 2004, commencing at 10:00 a.m. at the offices of Wiggin and Dana

LLP, One City Place, 185 Asylum Street, Hartford, Connecticut  06103 (or at some other

location mutually agreed to by the parties), before a notary public or other competent authority

and recorded by stenographer and/or videographer.  The deposition will continue from day to

day until completed.  You are invited to attend and cross-examine.

BINGHAM McCUTCHEN LLP

By: _____
Richard S. Taffet (ct 10201)

399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

THELEN REID & PRIEST LLP
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, NY  10022
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs

## EXHIBIT A

## DEFINITIONS

1.     **"You," "your,"** or **"Dow"** means The Dow Chemical Company, its officers, directors, agents, employees, representatives, counsel, parent corporation(s), subsidiaries, predecessors, successors, assigns, affiliates (and their officers, directors, agents, employees, representatives, counsel, parent corporation(s), subsidiaries, predecessors, successors, assigns, affiliates), and all persons acting or purporting to act on its behalf.

2.     **"Defendants"** means The Dow Chemical Company, Union Carbide Corporation ("UCC"), and Union Carbide Asia Pacific, Inc. ("UCAP").

3.     **"Plaintiffs"** means MM Global Services, Inc. ("MMGS"), MM Global Services Pte., Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte., Ltd. ("MVS").

4.     **"MVMS"** means MegaVisa Marketing Solutions Ltd. (f/k/a Visa Petrochemicals Pvt. Ltd.).

5.     **"Products"** means those products sold by Defendants to Plaintiffs and/or MVMS, including those identified in paragraph 14 of the Amended Complaint or products similar to and/or competitive with those products.

6.     **"Bhopal Tragedy"** means the events at UCC's plant in Bhopal, India, on December 3, 1983, which caused the death of approximately 3,800 people and injured hundreds of thousands more.

7.     **"Merger"** means the merger between Dow and UCC as defined in paragraph 12 of the Amended Complaint.

8.     **"Communication"** means every manner or means of disclosure, transfer, and exchange of information, and every disclosure, transfer, and exchange of information

3

including, but not limited to, any disclosure, transfer, and exchange of information made orally or in writing, in person or by telephone, by other electronic or mechanical means, mail, personal delivery, or otherwise. **"Communication"** includes any internal communications such as notes, memoranda, correspondence, or other documents prepared by or for any person for his, her, or its files, or other internal use.

9. **"Amended Complaint"** means the First Amended Complaint dated March 21, 2003 in the above-captioned action.

10. **"Document"** shall be construed in its broadest possible sense and means, without limitation, any written, printed, recorded or graphic matter of any kind as well as all other things subject to production pursuant to Fed. R. Civ. P. 34 including, but not limited to, correspondence, memoranda, minutes of any meetings, meeting agendas, reports, notes, schedules, tabulations, projections, checks, statements, returns, receipts, work papers, financial calculations and representations, accounting and diary entries, invoices, inventory sheets, ledgers, journals, trial balances, contracts, agreements, offers, notations of any sort of conversations, analyses, calendars, tape recordings, bulletins, printed matter, computer printouts, computer software, computer databases, electronic storage media, electronic mail (e-mail), microfiche, microfilm, memory chips, teletypes, telegrams, facsimiles, photographs and all other writings and recordings whether or not claimed to be privileged, in your possession, custody or control, its present or former officers, directors, agents, employees, representatives, counsel and all other persons or entities acting or purporting to act on its behalf. **"Document"** includes the original and all drafts and copies which differ in any respect from the original.

11. **"Person"** means a natural person, partnership, corporation, association, group, governmental or political entity or subdivision, organization, joint venture, team or group of natural persons.

12. **"Relating to"** means concerning, referring to, alluding to, responding to, in connection with, commenting upon, about, announcing, regarding, relevant to, explaining, discussing, memorializing, constituting, showing, evidencing, describing, reflecting, analyzing or involving.

13. **"Relevant Period"** means from January 1, 1993 through and including the present.

## INSTRUCTIONS

1. Any terms not defined herein have the meaning given in the Amended Complaint.

2. Unless otherwise specified in a particular request, the period of time encompassed by this notice is the Relevant Period.

3. **"And"** or **"or"** shall be construed disjunctively or conjunctively as necessary to make the request inclusive rather than exclusive.

4. The plural of any word used herein includes the singular and the singular includes the plural. The masculine gender of any word used herein includes the feminine and vice versa. The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

5. With respect to any document as to which a claim of attorney-client privilege or work product is asserted you are instructed to provide the following information in the form of a privilege log:

5

(a)     the nature of the privilege asserted or ground relied upon (e.g., attorney-client privilege or work product);

(b)     the type of document;

(c)     the general subject matter of the document;

(d)     the date of the document;

(e)     the author of the document;

(f)     each addressee and recipient of the document;

(g)     the number of pages of the document; and

(h)     the present location of the document.

## SUBJECT AREAS OF EXAMINATION

*Organization and Operations*

1.   Your relationship with each other Defendant and between and among you, each other Defendant, and your and their subsidiaries, divisions, operating units and affiliates, including without limitation the identity of board(s) of directors, officers and senior level management personnel, their duties, the person(s) to whom they had a reporting responsibility, and the subject matter for which they had such reporting responsibility.

2.   The manufacture and sale of Products, including without limitation, the location of manufacture, procedures for the placement, processing and fulfillment of orders for Products, and the delivery of Products to purchasers.

3.   Transactions relating to Products among or between you and any other Defendant or any of your or their subsidiaries, divisions, operating units or affiliates.

4.   Your control over the business decisions, business policies, personnel deployments and other activities of any other Defendant or related to the activities of any of your or their subsidiaries, divisions, operating units or affiliates.

5.   Policies, guidelines or directives relating to the sale or distribution of Products, including without limitation relating to the allocation of Products to purchasers.

6.   Your order entry processes for Products, including without limitation persons permitted access to order entry data and the responsibilities for accepting, rejecting or modifying orders and policies relating thereto.

7.   Forms of contracts, invoices or purchase orders relating to the sale or distribution of Products.

8.   Your document retention policy.

*Bhopal*

9.   Changes in your distribution of Products to India as a result of the Bhopal Tragedy.

10.  The basis for your contention that the Bhopal Tragedy was a result of sabotage.

*Plaintiffs and MVMS*

11.  The creation, formation and/or incorporation of MVMS and each Plaintiff.

12.  The 1987, 1993, 1995 and 2000 Letter Agreements as defined in the Amended Complaint.

13.  The placement, entry, processing, acceptance, and fulfillment of orders from Plaintiff or MVMS for Products, including without limitation the processes followed and the persons

7

involved and with responsibility therefor.

14.  Prices charged by Plaintiffs and/or MVMS to end-users for Products.

15.  Terms and conditions relating to the sale of Products to Plaintiffs and/or MVMS, including without limitation relating to credit terms and changes in credit terms, payment terms and conditions and changes thereof, freight and the shipment of Products to end users, the calculation of amounts to be paid by Plaintiffs or MVMS for Products, and insurance.

16.  The delivery of Products to Plaintiffs and/or MVMS, including without limitation the location of such deliveries, the place of manufacture for Products delivered to Plaintiffs and/or MVMS, the terms for such delivery and the persons with responsibility for such delivery.

17.  The availability or non-availability of Products for sale to Plaintiffs or MVMS, including without limitation decisions to make or not make Products available to Plaintiffs, decisions to accept or not accept orders for Products, the cancellation of accepted orders for Products, and all persons involved in any decisions regarding the foregoing and policies relating thereto.

18.  Disputes, including lawsuits, by end-users in India concerning the availability, sale, or delivery or non-availability, non-sale or non-delivery of Products, including without limitation involving entities named Finolex and Sterlite.

19.  The change in your relationship with Plaintiffs and/or MVMS effective March 31, 2002, including without limitation all reasons for such change and acts taken by you, any other Defendants, or any of your or their subsidiaries, divisions, operating units or affiliates.

*Competition*

20.  Competition relating to the sale of Products (a) in India, and (b) in markets other than India, including the United States, and including without limitation the identity of competitors, the definition of relevant markets, the nature of competition, and market shares.

21.  Pricing for Products sold, directly or indirectly (a) in or to India, and (b) in or to other markets, including the United States.

22.  The allocation of Products between or among purchasers in different geographic markets.

23.  Sales of Products in the United States, including without limitation persons and entities with responsibility for such sales, pricing of Products for such sales and availability of Products to fulfill orders for such sales.

24.  The effect of sales, and the terms of such sales, of Products in markets other than the United States, including without limitation in India, on the sale of Products in the United

8

States, including without limitation any effects relating to price, availability, allocation and market share.

25. The effect of sales, and the terms of such sales, of Products in the United States on the sale of Products in markets other than the United States, including without limitation India, and including without limitation any effects relating to price, availability, allocation and market share.

## *Communications*

26. Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs and/or MVMS.

27. Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any competitor in the sale of any Product, including without limitation pre-merger communication between or among Dow and UCC, or any of their respective subsidiaries, divisions, business units or affiliates, relating to the sale of Products, including without limitation prices, markets, customers, allocation and availability of Products.

28. Communications between any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any end-user customers of Plaintiffs or MVMS for Products.

## *The Merger*

29. The effect or contemplated effect of the Merger on the sale and distribution of Products (a) in or into India, and (b) in or into other markets, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.

30. The effect or contemplated effect of the Merger on the relationship between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs or MVMS, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.

31. The direct sale of the Products by any Defendant, including any of their subsidiaries, divisions, business units or affiliates, to end-user customers in India.

32. The Vimal Agency or Jigar Shah, with respect to sales of the Products in India.

## *Document Production*

33. Your search for and review of documents requested pursuant to Plaintiffs' First, Second and Third Requests for Production of Documents, including, but not limited to, the

persons who participated in and the location(s) of such search and review.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE., LTD., | ) | CIVIL ACTION NO. 3:02 CV 1107 (AVC) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | May 18, 2004 |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, AND UNION CARBIDE ASIA PACIFIC, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

To:    Craig A. Raabe, Esq.               Andrew S. Marovitz
       ROBINSON & COLE LLP               MAYER, BROWN, ROWE & MAW LLP
       280 Trumbell Street               190 South LaSalle Street
       Hartford, CT 06103-3597           Chicago, IL 60603

### NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(1) and (6), Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte., Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte., Ltd. ("MVS") (collectively, "plaintiffs") will take the deposition upon oral examination of the Defendant, Union Carbide Corporation ("UCC"), 39 Old Ridgebury Road, Danbury, Connecticut, through one or more officers, directors, managing agents or other persons who consent to testify on its behalf as to the matters set forth on Exhibit A attached hereto on July 7, 2004, commencing at 10:00 a.m. at the offices of Wiggin and Dana LLP, One City Place, 185 Asylum Street, Hartford, Connecticut 06103 (or at some other location mutually agreed to by the parties), before a notary public or other competent authority

and recorded by stenographer and/or videographer. The deposition will continue from day to day until completed. You are invited to attend and cross-examine.

BINGHAM McCUTCHEN LLP

By: _____
Richard S. Taffet (ct 10201)

399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

THELEN REID & PRIEST LLP
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, NY  10022
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs

2

## EXHIBIT A

## DEFINITIONS

1.    **"You," "your,"** or **"UCC"** means Union Carbide Corporation, its officers, directors, agents, employees, representatives, counsel, parent corporation(s), subsidiaries, predecessors, successors, assigns, affiliates (and their officers, directors, agents, employees, representatives, counsel, parent corporation(s), subsidiaries, predecessors, successors, assigns, affiliates), and all persons acting or purporting to act on its behalf.

2.    **"Defendants"** means The Dow Chemical Company ("Dow"), Union Carbide Corporation, and Union Carbide Asia Pacific, Inc. ("UCAP").

3.    **"Plaintiffs"** means MM Global Services, Inc. ("MMGS"), MM Global Services Pte., Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte., Ltd. ("MVS").

4.    **"MVMS"** means MegaVisa Marketing Solutions Ltd. (f/k/a Visa Petrochemicals Pvt. Ltd.).

5.    **"Products"** means those products sold by Defendants to Plaintiffs and/or MVMS, including those identified in paragraph 14 of the Amended Complaint or products similar to and/or competitive with those products.

6.    **"Bhopal Tragedy"** means the events at UCC's plant in Bhopal, India, on December 3, 1983, which caused the death of approximately 3,800 people and injured hundreds of thousands more.

7.    **"Merger"** means the merger between Dow and UCC as defined in paragraph 12 of the Amended Complaint.

8.    **"Communication"** means every manner or means of disclosure, transfer, and exchange of information, and every disclosure, transfer, and exchange of information

3

including, but not limited to, any disclosure, transfer, and exchange of information made orally

or in writing, in person or by telephone, by other electronic or mechanical means, mail, personal

delivery, or otherwise. "**Communication**" includes any internal communications such as notes,

memoranda, correspondence, or other documents prepared by or for any person for his, her, or its

files, or other internal use.

      9.    "**Amended Complaint**" means the First Amended Complaint dated

March 21, 2003 in the above-captioned action.

      10.    "**Document**" shall be construed in its broadest possible sense and means,

without limitation, any written, printed, recorded or graphic matter of any kind as well as all

other things subject to production pursuant to Fed. R. Civ. P. 34 including, but not limited to,

correspondence, memoranda, minutes of any meetings, meeting agendas, reports, notes,

schedules, tabulations, projections, checks, statements, returns, receipts, work papers, financial

calculations and representations, accounting and diary entries, invoices, inventory sheets,

ledgers, journals, trial balances, contracts, agreements, offers, notations of any sort of

conversations, analyses, calendars, tape recordings, bulletins, printed matter, computer printouts,

computer software, computer databases, electronic storage media, electronic mail (e-mail),

microfiche, microfilm, memory chips, teletypes, telegrams, facsimiles, photographs and all other

writings and recordings whether or not claimed to be privileged, in your possession, custody or

control, its present or former officers, directors, agents, employees, representatives, counsel and

all other persons or entities acting or purporting to act on its behalf. "**Document**" includes the

original and all drafts and copies which differ in any respect from the original.

11.    **"Person"** means a natural person, partnership, corporation, association, group, governmental or political entity or subdivision, organization, joint venture, team or group of natural persons.

12.    **"Relating to"** means concerning, referring to, alluding to, responding to, in connection with, commenting upon, about, announcing, regarding, relevant to, explaining, discussing, memorializing, constituting, showing, evidencing, describing, reflecting, analyzing or involving.

13.    **"Relevant Period"** means from January 1, 1993 through and including the present.

## INSTRUCTIONS

1.    Any terms not defined herein have the meaning given in the Amended Complaint.

2.    Unless otherwise specified in a particular request, the period of time encompassed by this notice is the Relevant Period.

3.    **"And"** or **"or"** shall be construed disjunctively or conjunctively as necessary to make the request inclusive rather than exclusive.

4.    The plural of any word used herein includes the singular and the singular includes the plural. The masculine gender of any word used herein includes the feminine and vice versa. The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

5.    With respect to any document as to which a claim of attorney-client privilege or work product is asserted you are instructed to provide the following information in the form of a privilege log:

5

(a)    the nature of the privilege asserted or ground relied upon (e.g., attorney-client privilege or work product);

(b)    the type of document;

(c)    the general subject matter of the document;

(d)    the date of the document;

(e)    the author of the document;

(f)    each addressee and recipient of the document;

(g)    the number of pages of the document; and

(h)    the present location of the document.

## SUBJECT AREAS OF EXAMINATION

### *Organization and Operations*

1.  Your relationship with each other Defendant and between and among you, each other Defendant, and your and their subsidiaries, divisions, operating units and affiliates, including without limitation the identity of board(s) of directors, officers and senior level management personnel, their duties, the person(s) to whom they had a reporting responsibility, and the subject matter for which they had such reporting responsibility.

2.  The manufacture and sale of Products, including without limitation, the location of manufacture, procedures for the placement, processing and fulfillment of orders for Products, and the delivery of Products to purchasers.

3.  Transactions relating to Products among or between you and any other Defendant or any of your or their subsidiaries, divisions, operating units or affiliates.

4.  Your control over the business decisions, business policies, personnel deployments and other activities of any other Defendant or related to the activities of any of your or their subsidiaries, divisions, operating units or affiliates.

5.  Policies, guidelines or directives relating to the sale or distribution of Products, including without limitation relating to the allocation of Products to purchasers.

6.  Your order entry processes for Products, including without limitation persons permitted access to order entry data and the responsibilities for accepting, rejecting or modifying orders and policies relating thereto.

7.  Forms of contracts, invoices or purchase orders relating to the sale or distribution of Products.

8.  Your document retention policy.

### *Bhopal*

9.  Changes in your distribution of Products to India as a result of the Bhopal Tragedy.

10. The basis for your contention that the Bhopal Tragedy was a result of sabotage.

### *Plaintiffs and MVMS*

11. The creation, formation and/or incorporation of MVMS and each Plaintiff.

12. The 1987, 1993, 1995 and 2000 Letter Agreements as defined in the Amended Complaint.

13. The placement, entry, processing, acceptance, and fulfillment of orders from Plaintiff or MVMS for Products, including without limitation the processes followed and the persons involved and with responsibility therefor.

14. Prices charged by Plaintiffs and/or MVMS to end-users for Products.

15. Terms and conditions relating to the sale of Products to Plaintiffs and/or MVMS, including without limitation relating to credit terms and changes in credit terms, payment terms and conditions and changes thereof, freight and the shipment of Products to end users, the calculation of amounts to be paid by Plaintiffs or MVMS for Products, and insurance.

16. The delivery of Products to Plaintiffs and/or MVMS, including without limitation the location of such deliveries, the place of manufacture for Products delivered to Plaintiffs and/or MVMS, the terms for such delivery and the persons with responsibility for such delivery.

17. The availability or non-availability of Products for sale to Plaintiffs or MVMS, including without limitation decisions to make or not make Products available to Plaintiffs, decisions to accept or not accept orders for Products, the cancellation of accepted orders for Products, and all persons involved in any decisions regarding the foregoing and policies relating thereto.

18. Disputes, including lawsuits, by end-users in India concerning the availability, sale, or delivery or non-availability, non-sale or non-delivery of Products, including without limitation involving entities named Finolex and Sterlite.

19. The change in your relationship with Plaintiffs and/or MVMS effective March 31, 2002, including without limitation all reasons for such change and acts taken by you, any other Defendants, or any of your or their subsidiaries, divisions, operating units or affiliates.

*Competition*

20. Competition relating to the sale of Products (a) in India, and (b) in markets other than India, including the United States, and including without limitation the identity of competitors, the definition of relevant markets, the nature of competition, and market shares.

21. Pricing for Products sold, directly or indirectly (a) in or to India, and (b) in or to other markets, including the United States.

22. The allocation of Products between or among purchasers in different geographic markets.

23. Sales of Products in the United States, including without limitation persons and entities with responsibility for such sales, pricing of Products for such sales and availability of Products to fulfill orders for such sales.

24.  The effect of sales, and the terms of such sales, of Products in markets other than the United States, including without limitation in India, on the sale of Products in the United States, including without limitation any effects relating to price, availability, allocation and market share.

25.  The effect of sales, and the terms of such sales, of Products in the United States on the sale of Products in markets other than the United States, including without limitation India, and including without limitation any effects relating to price, availability, allocation and market share.

## *Communications*

26.  Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs and/or MVMS.

27.  Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any competitor in the sale of any Product, including without limitation pre-merger communication between or among Dow and UCC, or any of their respective subsidiaries, divisions, business units or affiliates, relating to the sale of Products, including without limitation prices, markets, customers, allocation and availability of Products.

28.  Communications between any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any end-user customers of Plaintiffs or MVMS for Products.

## *The Merger*

29.  The effect or contemplated effect of the Merger on the sale and distribution of Products (a) in or into India, and (b) in or into other markets, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.

30.  The effect or contemplated effect of the Merger on the relationship between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs or MVMS, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.

31.  The direct sale of the Products by any Defendant, including any of their subsidiaries, divisions, business units or affiliates, to end-user customers in India.

32.  The Vimal Agency or Jigar Shah, with respect to sales of the Products in India.

*Document Production*

33.  Your search for and review of documents requested pursuant to Plaintiffs' First, Second
     and Third Requests for Production of Documents, including, but not limited to, the
     persons who participated in and the location(s) of such search and review.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE., LTD., | ) CIVIL ACTION ) NO. 3:02 CV 1107 (AVC) ) |
| Plaintiffs, | ) |
| v. | ) |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, AND UNION CARBIDE ASIA PACIFIC, INC., | May 18, 2004 ) ) ) |
| Defendants. | ) ) |

To:   Craig A. Raabe, Esq.                    Andrew S. Marovitz
      ROBINSON & COLE LLP              MAYER, BROWN, ROWE & MAW LLP
      280 Trumbell Street                    190 South LaSalle Street
      Hartford, CT  06103-3597          Chicago, IL  60603

**NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(1) and (6),

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte., Ltd. ("MMGS-S"),

and MegaVisa Solutions (S) Pte., Ltd. ("MVS") (collectively, "plaintiffs") will take the

deposition upon oral examination of the Defendant, Union Carbide Asia Pacific, Inc. ("UCAP"),

8 Shenton Way, 22-01 Temasek Tower, Singapore 068811, through one or more officers,

directors, managing agents or other persons who consent to testify on its behalf as to the matters

set forth on Exhibit A attached hereto on July 8, 2004, commencing at 10:00 a.m. at the offices

of Wiggin and Dana LLP, One City Place, 185 Asylum Street, Hartford, Connecticut  06103 (or

at some other location mutually agreed to by the parties), before a notary public or other

competent authority and recorded by stenographer and/or videographer. The deposition will

continue from day to day until completed. You are invited to attend and cross-examine.

BINGHAM McCUTCHEN LLP

By: _____

Richard S. Taffet (ct 0201)

399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

THELEN REID & PRIEST LLP
Paul A. Winick (ct 21813)
Alyson L. Redman (ct 25494)
875 Third Avenue
New York, NY 10022
(212) 603-2000 (tel)
(212) 603-2001 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

Attorneys for Plaintiffs

## EXHIBIT A

## DEFINITIONS

1. **"You," "your," or "UCAP"** means Union Carbide Asia Pacific, Inc., its officers, directors, agents, employees, representatives, counsel, parent corporation(s), subsidiaries, predecessors, successors, assigns, affiliates (and their officers, directors, agents, employees, representatives, counsel, parent corporation(s), subsidiaries, predecessors, successors, assigns, affiliates), and all persons acting or purporting to act on its behalf.

2. **"Defendants"** means The Dow Chemical Company ("Dow"), Union Carbide Corporation ("UCC"), and Union Carbide Asia Pacific, Inc.

3. **"Plaintiffs"** means MM Global Services, Inc. ("MMGS"), MM Global Services Pte., Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte., Ltd. ("MVS").

4. **"MVMS"** means MegaVisa Marketing Solutions Ltd. (f/k/a Visa Petrochemicals Pvt. Ltd.).

5. **"Products"** means those products sold by Defendants to Plaintiffs and/or MVMS, including those identified in paragraph 14 of the Amended Complaint or products similar to and/or competitive with those products.

6. **"Bhopal Tragedy"** means the events at UCC's plant in Bhopal, India, on December 3, 1983, which caused the death of approximately 3,800 people and injured hundreds of thousands more.

7. **"Merger"** means the merger between Dow and UCC as defined in paragraph 12 of the Amended Complaint.

8. **"Communication"** means every manner or means of disclosure, transfer, and exchange of information, and every disclosure, transfer, and exchange of information

3

including, but not limited to, any disclosure, transfer, and exchange of information made orally or in writing, in person or by telephone, by other electronic or mechanical means, mail, personal delivery, or otherwise. **"Communication"** includes any internal communications such as notes, memoranda, correspondence, or other documents prepared by or for any person for his, her, or its files, or other internal use.

9.    **"Amended Complaint"** means the First Amended Complaint dated March 21, 2003 in the above-captioned action.

10.    **"Document"** shall be construed in its broadest possible sense and means, without limitation, any written, printed, recorded or graphic matter of any kind as well as all other things subject to production pursuant to Fed. R. Civ. P. 34 including, but not limited to, correspondence, memoranda, minutes of any meetings, meeting agendas, reports, notes, schedules, tabulations, projections, checks, statements, returns, receipts, work papers, financial calculations and representations, accounting and diary entries, invoices, inventory sheets, ledgers, journals, trial balances, contracts, agreements, offers, notations of any sort of conversations, analyses, calendars, tape recordings, bulletins, printed matter, computer printouts, computer software, computer databases, electronic storage media, electronic mail (e-mail), microfiche, microfilm, memory chips, teletypes, telegrams, facsimiles, photographs and all other writings and recordings whether or not claimed to be privileged, in your possession, custody or control, its present or former officers, directors, agents, employees, representatives, counsel and all other persons or entities acting or purporting to act on its behalf. **"Document"** includes the original and all drafts and copies which differ in any respect from the original.

11.    **"Person"** means a natural person, partnership, corporation, association, group, governmental or political entity or subdivision, organization, joint venture, team or group of natural persons.

12.    **"Relating to"** means concerning, referring to, alluding to, responding to, in connection with, commenting upon, about, announcing, regarding, relevant to, explaining, discussing, memorializing, constituting, showing, evidencing, describing, reflecting, analyzing or involving.

13.    **"Relevant Period"** means from January 1, 1993 through and including the present.

## INSTRUCTIONS

1.    Any terms not defined herein have the meaning given in the Amended Complaint.

2.    Unless otherwise specified in a particular request, the period of time encompassed by this notice is the Relevant Period.

3.    **"And"** or **"or"** shall be construed disjunctively or conjunctively as necessary to make the request inclusive rather than exclusive.

4.    The plural of any word used herein includes the singular and the singular includes the plural.  The masculine gender of any word used herein includes the feminine and vice versa.  The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

5.    With respect to any document as to which a claim of attorney-client privilege or work product is asserted you are instructed to provide the following information in the form of a privilege log:

(a)     the nature of the privilege asserted or ground relied upon (e.g., attorney-client privilege or work product);

(b)     the type of document;

(c)     the general subject matter of the document;

(d)     the date of the document;

(e)     the author of the document;

(f)     each addressee and recipient of the document;

(g)     the number of pages of the document; and

(h)     the present location of the document.

6

## SUBJECT AREAS OF EXAMINATION

*Organization and Operations*

1.    Your relationship with each other Defendant and between and among you, each other Defendant, and your and their subsidiaries, divisions, operating units and affiliates, including without limitation the identity of board(s) of directors, officers and senior level management personnel, their duties, the person(s) to whom they had a reporting responsibility, and the subject matter for which they had such reporting responsibility.

2.    The manufacture and sale of Products, including without limitation, the location of manufacture, procedures for the placement, processing and fulfillment of orders for Products, and the delivery of Products to purchasers.

3.    Transactions relating to Products among or between you and any other Defendant or any of your or their subsidiaries, divisions, operating units or affiliates.

4.    Your control over the business decisions, business policies, personnel deployments and other activities of any other Defendant or related to the activities of any of your or their subsidiaries, divisions, operating units or affiliates.

5.    Policies, guidelines or directives relating to the sale or distribution of Products, including without limitation relating to the allocation of Products to purchasers.

6.    Your order entry processes for Products, including without limitation persons permitted access to order entry data and the responsibilities for accepting, rejecting or modifying orders and policies relating thereto.

7.    Forms of contracts, invoices or purchase orders relating to the sale or distribution of Products.

8.    Your document retention policy.

*Bhopal*

9.    Changes in your distribution of Products to India as a result of the Bhopal Tragedy.

10.    The basis for your contention that the Bhopal Tragedy was a result of sabotage.

*Plaintiffs and MVMS*

11.    The creation, formation and/or incorporation of MVMS and each Plaintiff.

12.    The 1987, 1993, 1995 and 2000 Letter Agreements as defined in the Amended Complaint.

13. The placement, entry, processing, acceptance, and fulfillment of orders from Plaintiff or MVMS for Products, including without limitation the processes followed and the persons involved and with responsibility therefor.

14. Prices charged by Plaintiffs and/or MVMS to end-users for Products.

15. Terms and conditions relating to the sale of Products to Plaintiffs and/or MVMS, including without limitation relating to credit terms and changes in credit terms, payment terms and conditions and changes thereof, freight and the shipment of Products to end users, the calculation of amounts to be paid by Plaintiffs or MVMS for Products, and insurance.

16. The delivery of Products to Plaintiffs and/or MVMS, including without limitation the location of such deliveries, the place of manufacture for Products delivered to Plaintiffs and/or MVMS, the terms for such delivery and the persons with responsibility for such delivery.

17. The availability or non-availability of Products for sale to Plaintiffs or MVMS, including without limitation decisions to make or not make Products available to Plaintiffs, decisions to accept or not accept orders for Products, the cancellation of accepted orders for Products, and all persons involved in any decisions regarding the foregoing and policies relating thereto.

18. Disputes, including lawsuits, by end-users in India concerning the availability, sale, or delivery or non-availability, non-sale or non-delivery of Products, including without limitation involving entities named Finolex and Sterlite.

19. The change in your relationship with Plaintiffs and/or MVMS effective March 31, 2002, including without limitation all reasons for such change and acts taken by you, any other Defendants, or any of your or their subsidiaries, divisions, operating units or affiliates.

*Competition*

20. Competition relating to the sale of Products (a) in India, and (b) in markets other than India, including the United States, and including without limitation the identity of competitors, the definition of relevant markets, the nature of competition, and market shares.

21. Pricing for Products sold, directly or indirectly (a) in or to India, and (b) in or to other markets, including the United States.

22. The allocation of Products between or among purchasers in different geographic markets.

23. Sales of Products in the United States, including without limitation persons and entities with responsibility for such sales, pricing of Products for such sales and availability of Products to fulfill orders for such sales.

24. The effect of sales, and the terms of such sales, of Products in markets other than the United States, including without limitation in India, on the sale of Products in the United States, including without limitation any effects relating to price, availability, allocation and market share.

25. The effect of sales, and the terms of such sales, of Products in the United States on the sale of Products in markets other than the United States, including without limitation India, and including without limitation any effects relating to price, availability, allocation and market share.

*Communications*

26. Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs and/or MVMS.

27. Communications between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any competitor in the sale of any Product, including without limitation pre-merger communication between or among Dow and UCC, or any of their respective subsidiaries, divisions, business units or affiliates, relating to the sale of Products, including without limitation prices, markets, customers, allocation and availability of Products.

28. Communications between any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and any end-user customers of Plaintiffs or MVMS for Products.

*The Merger*

29. The effect or contemplated effect of the Merger on the sale and distribution of Products (a) in or into India, and (b) in or into other markets, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.

30. The effect or contemplated effect of the Merger on the relationship between or among any Defendant, including any of their subsidiaries, divisions, business units or affiliates, and Plaintiffs or MVMS, including without limitation all communications between or among Dow and UCC, and their respective subsidiaries, divisions, business units and affiliates, relating to such subject matter.

31. The direct sale of the Products by any Defendant, including any of their subsidiaries, divisions, business units or affiliates, to end-user customers in India.

32. The Vimal Agency or Jigar Shah, with respect to sales of the Products in India.

*Document Production*

33.  Your search for and review of documents requested pursuant to Plaintiffs' First, Second and Third Requests for Production of Documents, including, but not limited to, the persons who participated in and the location(s) of such search and review.