# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL     :
SERVICES PTE. LTD., and MEGA VISA     :
SOLUTIONS (S) PTE. LTD.,     :
    :
         Plaintiffs     :
    :     Civil No. 3:02 CV 1107 (AVC)
    :
      v.     :
THE DOW CHEMICAL COMPANY, UNION     :
CARBIDE CORPORATION, and UNION CARBIDE     :
ASIA PACIFIC, INC.,     :
    :
    :
    :
         Defendants.     :     August 10, 2004

**COMBINED REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION OF THE COURT'S RULING AND ORDER ON DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND ORDER ON PLAINTIFFS' MOTION TO COMPEL AND RESPONSE TO PLAINTIFFS' CROSS-MOTION TO COMPEL COMPLIANCE WITH THE COURT'S JUNE 29, 2004 ORDER AND FOR SANCTIONS**

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 05103-3497
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
190 South La Salle Street
Chicago, Illinois 60603
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1157
(202) 263-3000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND BACKGROUND ................................................................................ 1

I.     The Court's Ruling Does Not Address Defendants' Specific Argument Concerning The Non-India/U.S. Geographical Scope of Plaintiffs' Discovery Requests ...................................................................................................................... 2

II.    At the Same Time That They Seek This Court's Clarification, Defendants Are Gathering Documents and Responding To Discovery Requested by Plaintiffs ............... 7

III.   Plaintiffs' Demand that All Depositions Take Place in Hartford Is Improper ............... 10

IV.   Plaintiffs' Request for Sanctions is Wholly Inappropriate .......................................... 12

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Ahern v. Trans Union LLC Zale Corp.*, 2002 WL 32114492 (D. Conn. Oct. 23, 2002)............... 6

*Alvarado v. Manhattan Worker Career Center*, 2002 WL 31760208
 (S.D.N.Y. Dec. 10, 2002)...................................................................................... 13

*Boomer v. Grant*, 2001 WL 1580237 (S.D.N.Y. Dec. 12, 2001) ..................................................... 8

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir.
 1979) ................................................................................................................... 13

*Colon v. Tucciarone*, 2003 WL 22439588 (D. Conn. Oct. 27, 2003)......................................... 6, 7

*Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*,
 105 F.R.D. 16 (S.D.N.Y. 1984) ................................................................................ 5

*Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000) ........................................................ 14

*F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 124 S. Ct. 2359 (2004) .......................................... 3

*In re PE Corp. Sec. Litig.*, 221 F.R.D. 20 (D. Conn. 2003)................................................... 4

*In re Perrier Bottled Water Litig.*, 138 F.R.D. 348 (D. Conn. 1991) ............................................. 6

*In re Surety Ass'n of Am.*, 388 F.2d 412 (2d Cir. 1967) ....................................................... 4

*Lugosch v. Congel*, 218 F.R.D. 41 (N.D.N.Y. 2003)......................................................... 4

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 179 F.R.D. 77 (D. Conn. 1998)....... 13

*Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34 (2d Cir. 1995) .................. 13, 14

*Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56 (S.D.N.Y. 1998) ...................... 12

*Scotch Game Call Co., Inc. v. Lucky Strike Bait Works, Ltd.*, 148 F.R.D. 65 (W.D.N.Y. 1993)... 9

*Segan v. Dreyfus Corp.*, 513 F.2d 695 (2d Cir. 1975) ...................................................... 6

*Shrader v. CSX Transp.*, 70 F.3d 255 (2d Cir.1995) ......................................................... 7

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98
 (S.D.N.Y. 2001) ................................................................................................. 11, 12

*Sniado v. Bank of Austria AG*, 2004 WL 1753473 (2d Cir. Aug. 5, 2004) ............................. 9, 10

*Snow Becker Krauss P.C. v. Proyectos e Instalaciones de Desalacion, S.A.*, 1992 WL 395598
 (S.D.N.Y. Dec. 11, 1992)........................................................................................ 11

*St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co. of Am.*, 1993 WL 267347
 (S.D.N.Y. July 12, 1993) ......................................................................................... 12

*Sykes Intern., Ltd. v. Pilch's Poultry Breeding Farms, Inc.*, 55 F.R.D. 138
 (D. Conn. 1972) ..................................................................................................... 10

*Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023 (S.D.N.Y. June 21, 2002)............ 4

*Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir. 2002) ....................................... 3

*Zakre v. Norddeutsche Landesbank Girozentrale*, 2003 WL 22208364

    (S.D.N.Y. Sept. 23, 2003) ................................................................................................. 11, 15

## Rules

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 4

Fed. R. Civ. P. 37(b)(2) ........................................................................................................... 12

## Secondary Authority

8 Wright and A. Miller, FEDERAL PRACTICE & PROCEDURE, § 2112 (1970) .......................... 10, 11

## INTRODUCTION AND BACKGROUND

Defendants have produced to Plaintiffs more than 80,000 pages of documents on a variety of substantive issues in this litigation.  They have identified dozens of individuals who may have knowledge responsive to Plaintiffs' interrogatories.  They have presented for deposition four separate witnesses to address the AMI computer system.   And, significantly, they have refrained from objecting to the expedited discovery schedule – which includes the production of documents, interrogatory answers and depositions – proposed for *Plaintiffs'* own motion to reconsider this Court's personal jurisdiction ruling dismissing two foreign Defendants. This is the undisputed factual background for Plaintiffs' charge that they have not received relevant documents or information as the parties litigate this action.

There is no doubt that this has been a hard-fought case following this Court's dismissal of nine of Plaintiffs' twelve causes of action from their Amended Complaint.  But it exceeds the bounds of legitimate, zealous advocacy for Plaintiffs now to argue that (1) Defendants and their counsel should be sanctioned for improperly asking the Court (within 10 business days of its Ruling) to reconsider a critical aspect of its June 29 decision, and that (2) Defendants have disregarded this Court's Ruling and have defined for themselves what will and will not be produced "when and if they get around to it." Pls. Mem. in Supp. of Cross-Mot. to Compel Compliance and Opp. to Defs. Mot. for Recons. at 1 ("Pls. Opp.").  Neither argument is true or is supported by the facts.

Defendants noted in their Opening Brief that this Court's Ruling did not specifically discuss whether documents about marketplaces other than the U.S. and Indian marketplaces – including countries like South Africa, Brazil, or Australia that have nothing to do with any alleged injury to Plaintiffs – must be located, reviewed and produced in an action concerning an Asian business dispute that Plaintiffs say implicates the Sherman Act.  Mem. in Supp. of Defs.

Mot. for Clarification and Partial Recons. at 4. Instead, the Court focused on whether Plaintiffs were entitled to certain U.S. documents, and found that such documents "outside of India" were probative of whether the relevant conduct "'ha[d] a direct, substantial, and reasonably foreseeable effect' *on U.S. commerce*." Ruling at 8 (Ex. 1) (emphasis added). Plaintiffs now have fastened onto the "outside India" language in their Opposition (at 2-3) – and have glossed over the "effect on U.S. commerce" point – to suggest that the Court actually ruled, without limitation, that all documents around the globe are discoverable. Respectfully, Defendants do not believe that the Court did any such thing. That is why Defendants' Motion is and was necessary, and it is why Defendants' Motion for Clarification should be granted and Plaintiffs' Motion should be denied.

## I.      The Court's Ruling Does Not Address Defendants' Specific Argument Concerning the Non-India/U.S. Geographical Scope of Plaintiffs' Discovery Requests.

The brief moment at the May 27 status conference when Plaintiffs shrugged off the notion that they were seeking worldwide discovery is gone. Plaintiffs now claim that they have "consistently argued that they are entitled to all documents and information concerning, among other matters, sales of the products *in all countries*." Pls. Opp. at 6. But as noted above, the Court's Ruling properly addressed the parties' central dispute: whether documents in the United States (and therefore "outside of India") are properly responsive in light of Plaintiffs' efforts to prove that the disputed conduct produced a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce, *not* on the commerce of South Africa, Brazil, or Australia. It did not consider – and cannot reasonably be said to have considered – the broader question of documents around the world. Indeed, the relevant section of the Court's Ruling does not name or consider a single country other than the United States and India, or explain how such documents possibly could be relevant to a proceeding under the Sherman Act. Ruling at 7-9 (Ex. 1).

This Court determined that "the plaintiffs must have the opportunity to discover documents regarding the sales of products outside of India in order to prove that the defendants' conduct *had an effect on U.S. commerce*." Ruling at 8 (emphasis added). Plaintiffs now say that means they are entitled to all documents located anywhere around the world because the alleged conspiracy was "directed toward and intended to be an integral part of defendants' worldwide efforts to control the prices of the products." Pls. Opp. at 6. These efforts, Plaintiffs speculate, were made "at least possibly, through a global horizontal conspiracy involving the world's largest chemical manufacturers." *Id.* But what Plaintiffs say may "at least possibly" have happened is not what they allege in their Amended Complaint, and is not even given a nod in this Court's Ruling. Nowhere in Plaintiffs' twelve-count Amended Complaint could one find allegations of worldwide horizontal collusion between Dow and UCC or of a "global horizontal conspiracy."

Further, U.S. antitrust laws simply do not serve to protect foreign plaintiffs, even ones who buy products in the United States, against lost sales *outside* the United States. *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 307 (3d Cir. 2002) (damages that "occurred exclusively in foreign markets . . . are not of the type Congress intended to prevent through the Foreign Trade Antitrust Improvements Act or the Sherman Act"). Nor can Plaintiffs state a cause of action based upon harm suffered by *others* in U.S. commerce. *See F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 124 S. Ct. 2359 (2004).[1] Plaintiffs, of course, were not even authorized to "sell[] any of these products outside of India." Letter from R. Neri, UCAP, to S. Sanghvi, Megavisa Solutions (June 27, 2000) (Ex. 6 at M 0009). In sum, Plaintiffs should not be permitted to justify overly broad discovery on the basis of allegations not made in their Amended

---

[1] This Court is currently considering the parties' fully briefed Motion To Dismiss based upon *Empagran*.

Complaint and not supported by settled law. *See, e.g., In re Surety Ass'n of Am.*, 388 F.2d 412,

414 (2d Cir. 1967) (plaintiffs may not "'roam in shadow zones of relevancy and . . . explore

matter which does not presently appear germane on the theory that it might conceivably become

so'"); *Lugosch v. Congel*, 218 F.R.D. 41, 45 (N.D.N.Y. 2003) (quoting *Surety Ass'n)*.

Faced with the fact that the requested discovery cannot be justified on the basis of law or

their own allegations, Plaintiffs resort to innuendo. They argue that Defendants' refusal to

search the records of each of their 350 subsidiaries and affiliates must mean that Defendants are

hiding "what must be egregiously damaging evidence." Pls. Opp. at 5. Such an argument is not

worthy of serious consideration. Defendants have asked this Court to clarify its Ruling because

documents about markets outside the U.S. and India are not even arguably discoverable – given

the allegations of Plaintiffs' own Amended Complaint, evidence as to sales and distribution of

the Products outside India and the United States simply is not "relevant to the claim or defense of

any party." Fed. R. Civ. P. 26(b)(1). Whether discovery would or would not be damaging to

Defendants is irrelevant if the discovery does not pertain to Plaintiffs' case. *See In re PE Corp.*

*Sec. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) ("discovery may not be used as a 'fishing

expedition to discover additional instances of wrongdoing beyond those already alleged'")

(quoting *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. June 21,

2002)). By Plaintiffs' logic, any party may make an overbroad discovery request, wait for its

opponent to object and then ask the Court to infer that the documents and information to which

the party is not entitled inevitably contain "what must be egregiously damaging evidence." Pls.

Opp. at 5. This approach finds no support in the Federal Rules or case law.

Plaintiffs ignore the irrelevance of the requested discovery and argue that because

Defendants have not submitted an affidavit in support of their burden objections, global

discovery should be allowed. Contrary to Plaintiffs' claims, Defendants have provided more

than enough support for their objections to the burdensomeness of Plaintiffs' requests.

Plaintiffs' argument is half right: a claim of undue burden may be deemed insufficient if the

movant simply claims undue burden instead of explaining the issue and reciting the facts. But

that is not the case here. *See* Defs. Reply in Supp. of Mot. for Protective Order and Opp. to Mot.

to Compel at 25-31. Specifically, Plaintiffs claim that they are entitled to a raft of sales

information about the Products from the four corners of the globe. But Defendants pointed out

(with exhibits) that 2003 sales in the Asia Pacific region alone reached $3.9 billion – over *350*

times the volume of product that was distributed through Plaintiffs ($11mm/year). *See id.* at 27

(Ex. 17); Ex. I to Pls. Opp. at DI 4000904. Defendants also directed the Court's attention to the

facts that Dow's subsidiaries in the Asia Pacific region *alone* employed 3400 people in over 13

countries – Singapore, Thailand, Taiwan, Vietnam, Australia, China, Hong Kong, Indonesia,

Japan, Korea, Malaysia, New Zealand, and the Philippines – and that the business conducted by

Plaintiffs was a mere fraction (1/354) of the enterprise run by the Dow Asia Pacific companies.

*Id.* Defendants described in detail the incredibly burdensome process that Defendants would

have to undertake to engage in global discovery. *Id.* at 28-29. They did not " 'simply inton[e

the] familiar litany' that the [discovery requests] are burdensome, oppressive or overly broad,"

but instead offered specific "'evidence revealing the nature of the burden'" (*Compagnie*

*Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16,

42 (S.D.N.Y. 1984) (cited in Ruling at 6)), and therefore fully complied with their obligations.

Plaintiffs still have offered no response to the merits of these points, and their form-over-

substance argument should be rejected.

Indeed, other courts confronting similar issues have held similar discovery requests burdensome without basing their decisions on the submission of an affidavit or documents supporting the burdensome claim. *See, e.g., Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975) (the trial court properly refused to compel discovery seeking discovery of "virtually the entire business history of defendants for a period of several years"); *In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 352 (D. Conn. 1991) (finding a discovery requesting "'[a]ll documents which refer to, relate to, or contain information concerning . . . sales of Perrier manufactured, bottled or possessed at the Vergeze plant, to any division, subsidiary, parent, or affiliate of defendants" burdensome on its face). Here, Defendants have "clarif[ied] and explain[ed] their] objections" and have "provide[d] support for those objections" such that the burdensomeness objections are properly before the Court. *Ahern v. Trans Union LLC Zale Corp.*, 2002 WL 32114492, at * 2 (D. Conn. Oct. 23, 2002).

Finally, Plaintiffs argue that Defendants cannot even properly press their Motion for Clarification and Partial Reconsideration because, under *Colon v. Tucciarone*, 2003 WL 22439588, at *1 (D. Conn. Oct. 27, 2003), a motion for reconsideration "'should not be granted where the moving party seeks solely to relitigate an issue already decided.'" Pls. Opp. at 5 (quoting *Colon*). But Plaintiffs' treatment of *Colon* – and their reliance on a snippet from the opinion – overlooks the substance and the holding of the decision, which *grants* defendants' motion for reconsideration.

Indeed, Judge Dorsey's decision in *Colon* is an excellent example of why the motion now pending before this Court is proper. In *Colon*, defendants asked the Court to reconsider its denial of summary judgment on plaintiff's claims of malicious prosecution and unlawful search and seizure in connection with an arrest made by police officers of the City of Bridgeport. 2003 WL

-6-

22439588, at *1. After finding that the issue was properly raised by defendants, the Court

determined that because "Defendants' arguments were never explicitly ruled on," it was entirely

proper to seek reconsideration. *Id.*; *see also id.* (reconsideration may be granted when "the

moving party can point to controlling decisions or data that the court overlooked"). The Court

then *granted* the motion for reconsideration on the basis of its prior finding of probable cause,

and directed the clerk to close the file. *Id.* at 2. All Defendants ask here is the same careful

consideration of an issue that was not "explicitly ruled on" in the earlier Ruling. *See Shrader v.*

*CSX Transp.*, 70 F.3d 255, 257 (2d Cir.1995) (reconsideration was appropriate where the district

court's initial ruling did not address certain legislative history and case law).

## II.    At the Same Time That They Seek This Court's Clarification, Defendants Are Gathering Documents and Responding to Discovery Requested by Plaintiffs.

Plaintiffs' suggestion that Defendants are cavalierly treating the discovery process or this

Court's Ruling – or, as Plaintiffs' put it, Defendants will produce documents "when and if they

get around to it" (Pls. Opp. at 1) – is unfair and untrue. The facts are that Defendants already

have begun to gather documents that they have agreed to produce or that this Court has ordered

be produced (save for those documents subject to Defendants' pending Motion for Clarification).

The incredibly broad scope of Plaintiffs' requests – combined with the size and locations to be

searched that Plaintiffs themselves characterize as "the world's largest chemical manufacturers"

(Pls. Opp. at 6) – has not made this task simple or straightforward, but Defendants are

proceeding to fulfill their discovery obligations, just as they did when they produced four

separate deponents to address AMI[2] and when they produced more than 80,000 pages of

---

[2]    The labor-intensive task of finding, extracting and then producing the AMI data requested by Plaintiffs was described by Edward DeBor in his June 17 deposition. *See* Tr. 28-32 (Ex. 7). Generating the 12 pages of Plaintiff-specific data from the entire AMI system required substantial effort and a cessation of the use of AMI for customary business purposes during the extraction process. *Id.* at 32.

documents addressing a variety of substantive and *forum non conveniens* topics. *See supra* at 1.
Defendants presently are working to match the list of relevant "Products" supplied by Plaintiffs –
which reduced the number from the original 3500 – to Defendants' product codes, so that
relevant documents and data can be located (they are not centrally located or maintained) for
review and production, as appropriate.[3]  Defendants also are working to produce more data
regarding sales to *non*-Plaintiffs in India (as requested by Plaintiffs), and expect to supplement
their current production within the next 10 days.  The fact that Defendants intend to provide a
"rolling" production to Plaintiffs and have not yet provided Plaintiffs with a firm date for the full
completion of the document review is hardly grounds for a motion to compel filed only 21 days
after this Court's Ruling and only seven days after Defendants' Motion for Clarification.

Plaintiffs' demand for a thirty-day deadline in response to their requests for worldwide
discovery is even more inappropriate in light of the new jurisdictional discovery – document
production requests, interrogatories and deposition notices (*see* Ex. 8) – that Plaintiffs served in
support of *their* Motion for Reconsideration.  Defendants are proceeding expeditiously to
uncover, review and produce documents and information responsive to Plaintiffs' most recent
wave of discovery requests, and will timely meet-and-confer with Plaintiffs on any discovery
issues (if any) that those requests may raise. *Boomer v. Grant*, 2001 WL 1580237, at *1
(S.D.N.Y. Dec. 12, 2001) (plaintiff "may move to compel [only] after defendants respond to his
outstanding discovery requests or if they do not respond by the extended deadline set by the

---

[3]      More specifically, Defendants have initiated the process of determining the appropriate list of
product codes and the use of those codes to locate documents and information related to the Products.
Those documents – which may be invoices – may lead to the location of related sales records and
ultimately to the individual(s) responsible for the sale who, if still employed by a Defendant, could lead to
the custodian of the documents at the time the sale was made.  Following this maze through foreign
countries over a nine-year period, during which two multi-national corporations merged, is not as easy as
opening a file drawer and retrieving its contents.

Court"); *Scotch Game Call Co., Inc. v. Lucky Strike Bait Works, Ltd.*, 148 F.R.D. 65, 66 (W.D.N.Y. 1993) (awarding sanctions against party who denied a request for an extension to respond to discovery "[w]ithout explaining or justifying its position").

The same is true with respect to Plaintiffs' noticed 30(b)(6) depositions. Even while fully briefing their Motion To Dismiss (based upon *Empagran*), Defendants have expressed a willingness to meet-and-confer with Plaintiffs regarding the specific objections asserted with respect to Plaintiffs' 30(b)(6) Notice. *See* Letter from Andrew S. Marovitz to Richard S. Taffet (June 29, 2004) (Ex. 9) ("we remain willing to discuss our objections and any possible limitations that you might propose for your 30(b)(6) notices, even while the Court addresses the application of *Empagran*. Any such discussions would be without prejudice to our position that *Empagran* divests the Court of subject matter jurisdiction."); *see also* E-mail from Andrew S. Marovitz to Richard S. Taffet (June 20, 2004) (Ex. 10) (same). Plaintiffs steadfastly have contended that, despite the language contained therein, their deposition notices are not based upon the now-defunct *Kruman*, but they still have not conferred with Defendants about the remaining specific issues. Such a meet-and-confer session could take place while additional documents are being collected, as Plaintiffs have posited that the actual depositions will proceed most efficiently if they are conducted following the most recent wave of document production that Plaintiffs seek. Pls. Opp. at 4.[4] (Plaintiffs, of course, already have Defendants' 80,000+

---

[4]      Proceeding in this fashion also would have the likely benefit of providing the parties with interim guidance from this Court regarding the viability of Plaintiffs' Sherman Act claim in the wake of *Empagran* and the Second Circuit's resulting vacation of its previous decision in *Sniado v. Bank Austria AG* and its affirmance of the district court's dismissal of plaintiff's antitrust claim there based upon lack of subject matter jurisdiction under section 6a(2) of the FTAIA. *See Sniado*, 2004 WL 1753473, at *3 (2d Cir. Aug. 5, 2004) ("Finally, because the amended complaint is facially insufficient to establish jurisdiction, we decline Sniado's invitation to remand for discovery."). Indeed, Plaintiffs' alleged injury here is even more attenuated than Sniado's. As demonstrated in the Motion To Dismiss (*Empagran*) briefs currently pending before this Court, Plaintiffs allege that they suffered damage as a result of

(cont'd)

page production of documents – documents that relate both to merits issues and *forum non conveniens* issues. As previously noted, Defendants are not aware of the existence of any documents in their possession, custody or control relating to Plaintiffs or their transactions with Defendants that have not been produced, and Defendants already have contacted the foreign subsidiaries' counsel to discuss scheduling depositions to be held in Singapore and/or India.)

**III.    Plaintiffs' Demand That All Depositions Take Place in Hartford Is Improper.**

Without citing authority, Plaintiffs demand that this Court enter an order requiring that all party depositions take place in Hartford, Connecticut. Pls. Opp. at 9. Plaintiffs do not cite any supporting authority for their position, which is completely undermined by the relevant cases.

The "normal" rule is that a "*plaintiff* will be required to make himself available for examination in the district in which he has brought suit." 8 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2112, at 405 (1970) (emphasis added). Since the plaintiff "selected the forum, he will not be heard to complain about having to appear there for a deposition." *Id.*; *see Sykes Int'l, Ltd. v. Pilch's Poultry Breeding Farms, Inc.*, 55 F.R.D. 138, 139 (D. Conn. 1972) (officers of plaintiff corporation in England could be required to come to "the forum chosen by the plaintiff for bringing this action, for the taking of their depositions").

*There is no such rule for defendants.* Because the defendant does not choose the forum, there is "a presumption in favor of taking depositions of a [defendant] corporation in its principal

---

(… cont'd)

purported resale price maintenance that cost them sales in India, and that those lost sales led to a lack of price erosion in the U.S. Reply Mem. in Supp. of Defs. Mot. to Dismiss at 6 ("Defs. Reply"). That "rebound" price effect theory is far more remote than the theory advanced by Sniado and rejected by the Second Circuit – at least Sniado's theory recognized that his overseas injury flowed from the effect on U.S. commerce, not the other way around. Here, Plaintiffs only suffered purported resale price maintenance damage in India when they did *not* obtain Products sourced from the U.S. *See* Defs. Reply at 4-6. When they actually did obtain Products, they actually resold them at a higher price in India, and therefore suffered no damage.

place of business." *Snow Becker Krauss P.C. v. Proyectos e Instalaciones de Desalacion, S.A.*,

1992 WL 395598, at *3 (S.D.N.Y. Dec. 11, 1992) (citing 8 FEDERAL PRACTICE AND PROCEDURE

§ 2112, at 410). This presumption may only be overcome in "'peculiar' circumstances favoring

depositions at a different location." *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt.*

*Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001). In order to determine whether such peculiar

circumstances exist, courts look at "cost, convenience, and litigation efficiency" of holding the

depositions outside of the witnesses' districts. *Id.* Likewise, the convenience of witnesses

outweighs the convenience of counsel. *Zakre v. Norddeutsche Landesbank Girozentrale*, 2003

WL 22208364, at *2 (S.D.N.Y. Sept. 23, 2003) (noting that "[w]hile it is true that all counsel

would be inconvenienced by traveling to Germany, 'the convenience of counsel is less

compelling than any hardship to the witnesses'") (quoting *Six West Retail Acquisition, Inc.*, 203

F.R.D. at 108).

For example, in *Snow Becker Krauss*, plaintiffs noticed depositions in the forum where

plaintiffs filed their action and asserted that the forum of the pending suit was a reasonable

location for the depositions because defendants retained counsel in the forum and representatives

of the defendants travel to the forum. 1992 WL 395598, at *3. Defendants moved for a

protective order, arguing that the presumption that depositions should be taken in the place of

defendants' business should apply. *Id.* at *1, *2 The court agreed with defendants, noting "that

discovery disputes may arise does not justify, in the eyes of this Court, requiring depositions to

be taken in the forum; such a conclusion would collapse the presumption in favor of deposing

corporate defendants in their place of business and amounts to overprotection of a court's

interest." *Id.* at *3. Indeed, the court reasoned that "[w]hile surely Plaintiff would prefer to

avoid paying the expense of travel to Spain, it is a cost it must bear in initiating this action." *Id.*

-11-

Likewise, the court in *Six West Retail* rejected plaintiffs' attempt to have depositions of two of defendants' corporate executives taken in the forum. 203 F.R.D. at 108. The court reasoned that plaintiff's burden of traveling to Japan for the depositions did not outweigh the presumption that the deposition is taken at the residence of the witness. *Id.* (requiring depositions to take place in Japan where plaintiffs were represented by "seasoned litigators from a law firm with nationwide offices, [who] ha[d] substantial resources and experience to accomplish this").

Finally, it is particularly odd that Plaintiffs demand that officials working for foreign entities travel halfway around the world to attend depositions in Hartford while they assert, in connection with their *forum non conveniens* submissions, that litigating this case in Connecticut would not overly inconvenience the witnesses.[5]  Plaintiffs cannot have it both ways here.

## IV.    Plaintiffs' Request for Sanctions Is Wholly Inappropriate.

Federal Rule of Civil Procedure 37(b)(2) allows a court in its discretion to impose sanctions where a party has unjustifiably refused to comply with a discovery order. That has not come close to happening here. First, filing a motion for reconsideration within ten days of the Ruling does not constitute a refusal to comply, particularly where, as here, the parties disagree about the scope of the Ruling. Second, *Defendants* initiated and engaged in conferences with Plaintiffs to discuss the scope of the Court's Ruling and to develop a plan to start the rolling

---

[5]      Plaintiffs also suggest that the Court order Defendants to produce witnesses from the foreign subsidiaries in Hartford, Connecticut. As noted above, the appropriate location for any such witness is at the place of that witness' employment. This presumption carries particular weight where the witness is employed by a non-party to the litigation. *See, e.g., Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56, 63-64 (S.D.N.Y. 1998) (quashing a subpoena that required employees of a foreign nonparty corporation to appear for a deposition in New York because "the deposition must take place in, the district where the witness is"); *St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co. of Am.*, 1993 WL 267347, at *1-*2 (S.D.N.Y. July 12, 1993) (quashing a New York subpoena served on an employee of the defendant corporation because he was not an officer of the corporation and because the subpoena required him to travel more than 100 miles from his home or work).

production of documents that are not subject to the Motion for Reconsideration. Plaintiffs'

request for sanctions is wholly improper and constitutes little more than an effort to raise the

stakes and temperature of the case.

Even the case law cited by Plaintiffs demonstrates that they have not provided a

legitimate basis for sanctions. For example, *Cine Forty-Second Street Theatre Corp. v. Allied

Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (Pls. Opp. at 9) provides that

sanctions may be appropriate where the court determines that counsel engaged in "gross

professional negligence" in his interpretation of "his duty to the court." There is no such claim

here. Similarly, *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 179 F.R.D. 77, 80-82

(D. Conn. 1998) (Pls. Opp. at 9) awarded sanctions where the opposing party failed to produce

requested documents during trial, thus prejudicing the opposing party. Here, the Court's Ruling

is only a little more than a month old, and is squarely the subject of a timely motion for

reconsideration. Likewise, *Alvarado v. Manhattan Worker Career Center*, 2002 WL 31760208,

at *8 (S.D.N.Y. Dec. 10, 2002) (Pls. Opp. at 9) found that sanctions were appropriate where the

party "variously offered no or disingenuous explanations for his failure to comply with numerous

orders of this court" and "repeatedly ignored clear, comprehensible and reasonable orders of this

court." Plaintiffs have not, nor can they, point to specific and numerous rulings that have been

ignored by the Defendants. In fact, the entire basis for Defendants' motion is that the parties

cannot agree about the specifics of the Court's Ruling, and that Defendants – not Plaintiffs –

have asked the Court for guidance so that they *can* reasonably comply.

Plaintiffs' citation to *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34 (2d

Cir. 1995) (Pls. Opp. at 10) actually supports Defendants' position. There, the Second Circuit

held that the district court abused its discretion when it awarded sanctions after finding that the

-13-

party failed to comply with a temporary restraining order and "vexatiously multiplied proceedings in the district court by filing several motions and appeals." *Id.* at 40-41. The *Milltex* court emphasized that in order to award sanctions for filing motions, the court must determine that the motion was "entirely without color." *Id.* at 41. Furthermore, it is inappropriate to award sanctions where counsel "arguably had an obligation to his client" to take the action at issue. *Id.*

That is particularly so when a party seeks clarification or reconsideration of a court order. In *Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000) – a case not cited by Plaintiffs – both parties contacted the judge's chambers to discuss his recent summary judgment ruling and to indicate a desire to file motions for reconsideration. *Id.* at 395. The judge's law clerk "granted permission to file the motions," but indicated that the proposed arguments "did not appear 'reasonably likely' to comply with the governing standards for filing motions for reconsideration" and that "the filing of any frivolous motion would result in sanctions." *Id.* The plaintiff filed a motion for reconsideration, which was denied. The court also imposed sanctions on the plaintiff for filing the motion under the court's "inherent supervisory power." *Id.* Reminding that it has "interpreted the bad faith standard restrictively," the Second Circuit reversed the order for sanctions. *Id.* at 396-97. Specifically, the court found that the district court's "conclusory determination that [plaintiff's] motion was filed in bad faith rested almost entirely on its lack of merit," and served as an inappropriate basis for the imposition of sanctions without an actual finding of bad faith supported by factual findings. *Id.*

Here, Defendants filed a well-founded motion to seek clarification of the geographical scope of the Court's Ruling, particularly in light of the fact that documents discussing markets other than India or the United States are not probative of Plaintiffs' Sherman Act claims (even

-14-

under the now discredited *Kruman*) and the now-vacated *Sniado* or of their sales (which were confined to India). Defendants' request for clarification on the scope of the Ruling was therefore entirely proper, and was not brought vexatiously or in bad faith – it was brought quickly, *before* Plaintiffs filed any motion – and with common sense, so that Defendants could avoid non-compliant actions. Furthermore, Defendants have offered compromises under which they would begin to produce documents as soon as they are located. *Zakre*, 2003 WL 22208364, at *1 (discovery sanctions were inappropriate where there was no evidence that a defendant refused to comply with discovery, and instead notified plaintiff that it was having difficulty responding because of "the large number and broad and ambiguous nature" of the requests, a response required consultation with a number of individuals, and there were "technical and cost issues" relating to obtaining the discovery). Plaintiffs' rejection of these offers and Defendants' reasonable request for reconsideration and clarification from the Court provide no basis whatsoever for Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, Defendants' motion for clarification and partial reconsideration should be granted in its entirety, and Plaintiffs' cross-motion to compel compliance and for sanctions should be denied.

Respectfully submitted,

| | |
|---|---|
| Craig A. Raabe (ct 04116) | Andrew S. Marovitz (ct 25409) |
| Edward J. Heath (ct 20992) | Dana S. Douglas (ct 25412) |
| ROBINSON & COLE LLP | MAYER, BROWN, ROWE & MAW LLP |
| 280 Trumbull Street | 190 S. La Salle Street |
| Hartford, CT 06103-3597 | Chicago, IL 60603-3441 |
| (860) 275-8304 | (312) 782-0600 |

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC  20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company,*
*Union Carbide Corporation, and Union Carbide Asia Pacific, Inc.*

5050799

## CERTIFICATE OF SERVICE

This is to certify that that a copy of the Combined Reply in Support of Defendants'
Motion for Clarification and Partial Reconsideration of the Court's Ruling and Order on
Defendants' Motion for a Protective Order and Order on Plaintiffs' Motion to Compel and for
Cross-Motion to Compel Compliance with the Court's June 29, 2004 Order and for Sanctions
was sent on this 10th day of August, 2004, as follows:

> Richard S. Taffet, Esq.
> Bingham McCutchen LLP
> 399 Park Avenue
> New York, NY  10022-4689
>
> Suzanne Wachsstock, Esq.
> Wiggin & Dana LLP
> 400 Atlantic Street
> P.O. Box 110325
> Stamford, CT  06911-0325
>
> Robert M. Langer, Esq.
> Wiggin & Dana LLLP
> CityPlace
> 185 Asylum Street
> Hartford, CT  06103

Craig A. Raabe