UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES INC., MM GLOBAL SERVICES PTE. LTD., and MEGAVISA SOLUTIONS (S) PTE. LTD., | : : : : |
| Plaintiffs, | : Civil No. 302 CV 1107 (AVC) |
| -v- | : : |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., | : : : : December 14, 2004 : : |
| Defendants. | : |



REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THELEN REID & PRIEST LLP'S
MOTION TO WITHDRAW AS COUNSEL AND FOR THE IMPOSITION OF
SECURITY PRIOR TO ANY RELEASE OF MEGAVISA'S FILES
TO SUCCESSOR COUNSEL AND
FOR THE IMPOSITION OF A CHARGING LIEN

Thelen Reid & Priest LLP
Attorneys for Plaintiffs
875 Third Avenue
New York, New York 10022

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 1

POINT I.    STATE LAW GOVERNS THE ISSUE OF WHETHER THELEN REID
            CAN PROPERLY ASSERT A RETAINING LIEN IN THIS ACTION ............... 3

POINT II.   UNDER CONNECTICUT LAW, THELEN REID IS ENTITLED TO
            A RETAINING LIEN ............................................................................................ 7

POINT III.  IMPOSITION OF A CHARGING LIEN IS APPROPRIATE UNDER
            CONNECTICUT LAW .......................................................................................... 8

## TABLE OF AUTHORITIES

### CASES

*Ciaramella v. Reader's Digest Ass'n, Inc.*,
    131 F.3d 320 (2d Cir. 1997)..................................................................................4

*Hauptmann v. Fawcett*,
    243 App. Div. 616, 277 N.Y.S. 621 (2d Dep't 1935)......................................8

*In re Gaston & Snow*,
    242 F. 3d 599 (2d Cir. 2001)..................................................................................4

*Marsh Day & Calhoun v. Solomon*,
    204 Conn. 639, 529 A.2d 702 (1987) ..........................................................5, 7, 8

*Misek-Falkoff v. International Business Machines Corp.*,
    829 F. Supp. 660 (S.D.N.Y. 1993) ......................................................................6, 7

*O'Melveny Myers v. Federal Deposit Insurance Corporation*,
    512 U.S.79, 114 S. Ct. 2048 (1994)..............................................................3, 4, 5, 6

*Pomerantz v. Schandler*
    704 F.2d 681 (2d Cir. 1983).....................................................................................6

*Pescatore v. Pan American World Airways, Inc.*,
    97 F.3d 1 (2d Cir. 1996)...........................................................................................4

*Resolution Trust Corp. v. Elman*,
    949 F.2d 624 (2d Cir. 1991).....................................................................................5

*Rivkin v. A J Hollander & Co.*,
    1996 WL 633217 (S.D.N.Y. 1996)......................................................................6, 7

*Wallis v. Pan American Petroleum Corp.*,
    384 U.S. 63, 86 S Ct. 1301 (1966).........................................................................3

*Wheeldin v. Wheeler*,
    373 U.S. 647, 83 S. Ct 1441 (1963).......................................................................3

*Woodward Governor Co. v. Curtiss-Wright Flight Systems, Inc.*,
    164 F.3d 123 (2d Cir. 1999)....................................................................................4

## STATUTES

12 U.S.C. § 1821(d) (13 (D)(i)) ...................................................................................................5

12 U.S.C. § 1822(a) .......................................................................................................................5

15 U.S.C. § 15 ................................................................................................................................5

## PRELIMINARY STATEMENT

Thelen Reid & Priest LLP ("Thelen Reid"), counsel of record for MM Global Services Inc., MM Global Services PTE. Ltd. and MegaVisa Solutions PTE. Ltd. (collectively, "MegaVisa") in the above captioned action (the "Action"), respectfully submits this reply memorandum of law in further support of its motion for an order: (a) granting Thelen Reid and the Thelen Reid attorneys who have individually appeared in this matter leave to withdraw as counsel of record; (b) requiring MegaVisa to post security, in the amount of all sums owed for legal services provided by Thelen Reid, prior to any release of MegaVisa files currently in Thelen Reid's possession to successor counsel; and (c) granting Thelen Reid a charging lien, in the amount owed for legal services provided by Thelen Reid, upon funds that may become due and owing to MegaVisa by virtue of any settlement or judgment obtained by MegaVisa in the Action. The court is also respectfully referred to the affidavit of Michael Elkin sworn to the 10th day of December, 2004 (hereinafter, the "Elkin Affidavit"), which is also submitted in further support of Thelen Reid's motion.

## STATEMENT OF FACTS

As more fully stated in the initial memorandum of law submitted with Thelen Reid's motion, Thelen Reid is no longer being asked to participate in any meaningful way in this litigation and has effectively been replaced as counsel for the plaintiffs by Bingham McCutchen. Not surprisingly, the plaintiffs have offered no opposition to that portion of Thelen Reid's motion wherein it seeks to withdraw as counsel, and it is respectfully requested that the motion to withdraw as counsel be granted.

The plaintiffs do, however, oppose Thelen Reid's request that MegaVisa post security, in the full amount of the sums owed for legal services provided by Thelen Reid, prior to any release of MegaVisa files currently in Thelen Reid's possession to Bingham McCutchen. Plaintiffs also oppose Thelen Reid's request for a charging lien. For the reasons set forth below, Thelen Reid is entitled to either full payment in the amount of $472,887.82 or an order (1) requiring plaintiffs to post a bond in the same amount; and (2) granting Thelen Reid a charging lien.

In their opposition papers, plaintiffs claim that the unpaid Thelen Reid invoices were excessive. See Declaration of Ajay Mittal dated December 1, 2004 at ¶ 3 (hereinafter the "Mittal Declaration"). Contrary to Mr. Mittal's declaration, the plaintiffs did not previously complain about excessive fees. Rather, they have repeatedly admitted in writing that they owe the money in full and were committed to paying their debts. See Elkin Affidavit at ¶¶ 3-9. As the Elkin Affidavit demonstrates, plaintiffs' complaints about rate increases and excessive fees did not arise until opposition papers were being prepared. It is also significant that Mr. Mittal does not claim an inability to pay Thelen Reid's fees.

2

## POINT I.

### STATE LAW GOVERNS THE ISSUE OF WHETHER THELEN REID CAN PROPERLY ASSERT A RETAINING LIEN IN THIS ACTION

Plaintiffs claim that "[t]he nature and extent of an attorney's lien in federal cases such as this is controlled by federal, not state, law" (Page 3 of Plaintiffs' Memorandum of Law in Opposition). They are wrong: There is no federal general common law, and Connecticut law governs the issue presented here of whether Thelen Reid may assert retaining and charging liens against the plaintiffs for non-payment of its invoices. O'Melveny Myers v. Federal Deposit Insurance Corporation, 512 U.S.79, 114 S. Ct. 2048, 2054 (1994). In the O'Melveny case, the Supreme Court of the United States was confronted with the question of whether federal or state law should govern certain legal issues in an action brought by the Federal Deposit Insurance Corporation ("FDIC") against former attorneys of a failed bank. In rejecting the FDIC's arguments that federal common law as opposed to state law governed the imputation of an officer's knowledge of fraud to a corporation, the Supreme Court stated:

> In answering the central question of displacement of [state] law, we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law." Id. at 85 [citations omitted; emphasis added]

The only exception, the Supreme Court noted to this rule involves those "few and restricted" situations "where there is a 'significant conflict between some federal policy or interest and the use of state law.'" Id. at 87, citing to Wheeldin v. Wheeler, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, (1963) and Wallis v. Pan American Petroleum Corp., 384 U.S., 63 68, 86 S Ct. 1301, 1034, (1966).

3

The Second Circuit has recognized the severe limitations placed since O'Melveny upon the ability of a federal court to create federal rules. See, Pescatore v. Pan American World Airways, Inc., 97 F.3d 1, 10-11 (2d Cir. 1996); Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 323 (2d Cir. 1997); In re Gaston & Snow, 243 F. 3d 599, 606 (2d Cir. 2001). The Second Circuit has also rejected attempts to circumvent state law because a dispute between private parties had a tangential connection to a federal question claim. Woodward Governor Co. v. Curtiss-Wright Flight Systems, Inc., 164 F.3d 123, 128-129 (2d Cir. 1999).

In the Woodward Governor case, the Second Circuit upheld a decision of this Court dismissing the complaint for lack of subject matter jurisdiction. The case involved breach of contract claims on a sub-contract involving "test stands", used to test doors for fighter jets. In affirming the dismissal, the court rejected plaintiffs' contention that federal common law governed because the claims arose out of a subcontract related to a contract related to defense procurement. 164 F.3d at 126. The Second Circuit noted that, since O'Melveny, where a suit involves disputes between private parties[1], federal courts are reluctant to displace state law by finding a conflict with a federal interest. Id. at 127. The Court stated:

> Thus a plaintiff seeking to apply federal common law where the United States is not even a party faces a substantial burden in trying to demonstrate an actual, significant conflict between state law and a federal interest. See O'Melveny, 512 U.S. at 88, 114 S.Ct. 2048; B.F. Goodrich, 112 F. 3d at 88, 90.

Id. at 127.

The instant action was brought in federal court because one of twelve claims[2] brought by plaintiffs in this case alleged violations of the Federal Anti-Trust Statute (the "Sherman Act.")

---

[1] The underlying retaining lien dispute between the plaintiffs and Thelen Reid, both private parties, is analogous to the breach of contract claim between the sub-contractors in Woodward.

[2] All the rest are state law claims. Two, in fact, rely upon specific Connecticut statutes.

4

While the Sherman Act allows a prevailing plaintiff to recover "the cost of suit, including a reasonable attorneys fee" (15 U.S.C. § 15), it does not address fee arrangements between the attorney and client. The statute most certainly does not address the availability of a retaining lien to a party's counsel who is no longer being paid. In the absence of an explicit federal statutory provision, plaintiffs need to demonstrate that there is a <u>significant</u> conflict between a federal policy and the state law on retaining liens to justify the creation of a federal rule. <u>O'Melveny</u>, <u>supra</u>, at 85. There is, in fact, no such conflict as there are protections in Connecticut law to avoid prejudice to the plaintiff while affording counsel the protection of the retaining lien. Connecticut law allows a client who has made a showing of "need" for files subject to a retaining lien, to receive those files upon the client furnishing adequate security for payment. <u>Marsh Day & Calhoun v. Solomon</u>, 204 Conn. 639, 529 A.2d 702 (1987).

Plaintiffs' reliance upon <u>Resolution Trust Corp. v. Elman</u>, 949 F.2d 624, 627 (2d Cir. 1991) is misplaced. In <u>Elman</u>, the Second Circuit held that the explicit language of FIRREA required a law firm which was owed money by a bank that subsequently failed to present its claim to the RTC. Until the claim was acted on by that agency, FIRREA provided that no court would have jurisdiction over the firm's claim for payment. <u>Id.</u> at 627, citing to 12 U.S.C. § 1821(d) (13 (D)(i)). The Second Circuit also noted that while New York courts "frequently require the posting of security to justify transfer of papers that are subject to a retaining lien… FIRREA specifically prohibited ordering the RTC to post a bond as receiver. <u>See</u> 12 U.S.C. § 1822(a)" <u>Id.</u> Thus, the law firm's right to assert a retaining lien in that case and to receive security in return for a release of files was prohibited by statute. As noted above, the Sherman Act contains no such provisions that would defeat Thelen Reid's right to a retaining lien under Connecticut law.

5

Plaintiffs' reliance upon Misek-Falkoff v. International Business Machines Corp., 829 F. Supp. 660 (S.D.N.Y. 1993) is also misguided but for different reasons. The Misek case was decided before 1994 and is no longer good law in light of O'Melveny. Not surprisingly, plaintiffs have offered no federal cases decided since O'Melveny which denied an attorney the protections of a state law retaining lien under a federal common law theory.

The Misek case involved an application for a retaining lien brought by the former counsel of a plaintiff in a suit where the plaintiff had alleged discrimination under the Federal Rehabilitation Act and the Americans with Disabilities Act. The Misek court held that where a federal statute provides for fee shifting, a plaintiff should not be required to post a bond in order to obtain files because "[t]he fundamental purposes of legislation passed by congress should not be derailed because a party can or cannot post a bond in connection with transfer of litigation files." 829 F. Supp. at 664.

Misek runs afoul of O'Melveny for several reasons. First, neither the Federal Rehabilitation Act nor the American with Disabilities Act expressly prohibited the granting of retaining liens. Second, the court failed to demonstrate a significant conflict between federal policy and the state law on retaining liens to justify the creation of a federal rule. Under both New York and Connecticut law, there are exceptions to a retaining lien where the plaintiff can make "a clear showing of the need for the papers, the prejudice that would result from denying him access to them, and his inability to pay the legal fees or post a reasonable bond." Pomerantz v. Schandler, 704 F.2d 681, 683 (2d Cir. 1983). See, also Marsh, Day, 529 A.2d at 646. As noted above, there is no significant policy conflict which would justify new federal common law.

6

Misek is also distinguishable on its facts because the plaintiff's inability to post a bond appears to have been the underpinning of the Misek court rationale. Here, the plaintiffs have not alleged an inability to pay. Moreover, the Misek case also involved a situation where the former counsel had taken the case on a contingency basis. In Rivkin v. A J Hollander & Co. 1996 WL 633217 (S.D.N.Y. 1996)[3], the court interpreted the Misek court's rationale this way:

> In other words, where the federal statute provides for attorneys fees, plaintiff's counsel (who usually has taken the case on a contingency basis) is protected by the charging lien.
>
> 1996 WL 633217 *5

In the case at hand, Thelen Reid and the plaintiffs entered into a Retainer Agreement whereby the plaintiffs agreed to be billed on a monthly basis and to pay for legal services on an hourly rate. Thelen Reid did not take this case on a contingency basis and should not be made to wait any longer for its payment.

### POINT II.

### UNDER CONNECTICUT LAW, THELEN REID IS ENTITLED TO A RETAINING LIEN

As discussed at length in Thelen Reid's memorandum of law submitted in support of its motion, Connecticut recognizes that an attorney has a self-executing retaining lien on a client's files until outstanding fees are paid. Marsh, Day, supra, 204 Conn. at 642. As the Marsh court held, "when a client has shown a need for the files, courts have ordered release upon payment or furnishing of adequate security." Id., at 646. Under Connecticut law, the plaintiffs must pay or

---

[3] It is important to note as well that while the Rivkin court discussed Misek, it ultimately upheld a state retaining lien.

7

post security in order to gain release of their files; the instances where files would be released without the posting of security are "rare". Id. at p. 646, citing to Hauptmann v. Fawcett, 243 App. Div. 616, 277 N.Y.S. 621 (2d Dep't1935) (wherein papers were needed in defense of a capital murder case.) Here, as in the Marsh case, the plaintiffs have not demonstrated any circumstances that would allow an exception to the absolute protection of the retaining lien.

### POINT III.

### IMPOSITION OF A CHARGING LIEN IS APPROPRIATE UNDER CONNECTICUT LAW

Offering no case law to support their position, the plaintiffs also claim that it would be improper to allow Thelen Reid a charging lien in the full amount of what it is owed because "a fact-intensive dispute exists regarding the amount actually due Thelen for its reasonable services." Plaintiffs' Memorandum at p. 5. As demonstrated in the Elkin Affidavit, plaintiffs consistently admitted their debt in the past and were not heard to complain of Thelen Reid's fees until opposition papers to Thelen Reid's motion to withdraw were received. Should this Court, however, determine that a hearing is necessary to decide the amount of both the charging lien and the security needed to be posted by plaintiffs to gain release of the files, it is respectfully requested that the hearing be scheduled as soon as it can be accommodated by the Court's schedule. It is nonsense for plaintiffs to suggest that addressing these issues now would "derail" the litigation.

Thelen Reid did not take on this representation on a contingency basis and it would be inequitable to make the firm wait until plaintiffs prevail on the merits of its anti-trust claim until a determination of the attorneys' fees to which they are entitled is made by the court. Plaintiffs' also ignore the fact that the anti-trust claim is but one of twelve asserted by plaintiffs in this case. Moreover, plaintiffs agreed to pay Thelen Reid on a monthly basis. They should not be able to

8

avoid their contractual obligations through a smokescreen of manufactured complaints about Thelen Reid's fees. A timely hearing would "derail" nothing. Depositions have not even begun in this case.

Finally, plaintiffs' request to delay the determination of the size of the charging lien appears to be a tactical decision in light of the fact that the Court has scheduled a settlement conference for January 18, 2005. Should the case settle before the charging lien is in place, plaintiffs will have successfully frustrated Thelen Reid's right to the charging lien. It is respectfully submitted that such an outcome would be manifestly unfair.

**WHEREFORE**, Thelen Reid & Priest moves this Court to grant the following: (a) an order permitting Thelen Reid leave to withdraw as counsel; (b) an order requiring MegaVisa to post security prior to the release of MegaVisa's files currently in Thelen Reid's possession; and (c) an order granting Thelen Reid a charging lien in the amount of Thelen Reid's fees and disbursements upon funds that may become due and owing to MegaVisa by virtue of a settlement or judgment in this action.

Dated: December 14, 2004

> Respectfully submitted,
>
> THELEN REID & PRIEST LLP
>
> By: _____
> Paul A. Winick (ct 21813)
> 875 Third Avenue
> New York, New York 10022-6225
> (212) 603-2000 (tel)
> (212) 603-2001 (fax)
>
> Attorneys for Plaintiffs MM Global Services Inc., MM Global Services Pte. Ltd. and MegaVisa Solutions (s) Pte. Ltd.

## CERTIFICATE OF SERVICE

This is to certify that on this 14th day of December, 2004, a copy of the Reply Memorandum of Law In Further Support of Thelen Reid & Priest LLP's Motion to Withdraw as Counsel and For The Imposition of Security Prior To Any Release Of MegaVisa's Files To Successor Counsel And For The Imposition Of A Charging Lien and Affidavit of Michael S. Elkin has been sent via FedEx to the following:

BINGHAM McCUTCHEN LLP
Richard S. Taffet, Esq.
Alicia L. Downey, Esq.
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

WIGGIN & DANA LLP
Robert M. Langer, Esq.
Suzanne E. Wachsstock, Esq.
Steven Bruce Malech, Esq.
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

ROBINSON & COLE LLP
Craig A. Raabe, Esq.
Edward J. Heath, Esq.
Elizabeth A. Fowler, Esq.
Stephen M. Deane, Esq.
280 Trumbull Street, 28th Floor
Hartford, CT 06103

EIMER STAHL KLEVORN & SOLBERG, LLP
Andrew G. Klevorn, Esq.
Nathan P. Eimer, Esq.
Ryan S. Hedges, Esq.
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604

MAYER, BROWN, ROWE & MAW LLP
Christopher J. Kelly, Esq.
1909 K. Street
Washington, D.C. 20006-1157

MAYER, BROWN, ROWE & MAW, LLP
Andrew S. Marovitz, Esq.
Britt M. Miller, Esq.
Dana S. Douglas, Esq.
1901 South LaSalle Street
Chicago, IL 60603

_____
Paul A. Winick (ct 21813)

1