UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL          :
SERVICES PTE. LTD., and MEGA VISA            :
SOLUTIONS (S) PTE. LTD.,                     :
                                             :
            Plaintiffs,                      :
                                             :    Civil No. 3:02 CV 1107 (AVC)
      v.                                     :
                                             :
THE DOW CHEMICAL COMPANY, UNION              :
CARBIDE CORPORATION, and UNION               :
CARBIDE ASIA PACIFIC, INC.,                  :
                                             :
            Defendants.                      :    February 18, 2005


THE DOW CHEMICAL COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL DISCOVERY RESPONSES

Craig A. Raabe (ct 04116)          Andrew S. Marovitz (ct 25409)
ROBINSON & COLE LLP                Dana S. Douglas (ct 25412)
280 Trumbull Street                MAYER, BROWN, ROWE & MAW LLP
Hartford, CT  05103-3497           190 South La Salle Street
(860) 275-8304                     Chicago, Illinois  60603
                                   (312) 782-0600

                                   Christopher J. Kelly (ct 25410)
                                   MAYER, BROWN, ROWE & MAW LLP
                                   1909 K Street, N.W.
                                   Washington, D.C.  20006-1157
                                   (202) 263-3000

# TABLE OF CONTENTS

Page

I.    FACTS .................................................................................................... 1

    A.    Interrogatory 17 – Alleged Interference with End-Users ...................................... 2

    B.    Statements of Sales Revenues to Government Agencies........................................ 6

    C.    Meet-and-Confer Issues ...................................................................................... 7

II.   ARGUMENT ........................................................................................... 8

    A.    Legal Standard ..................................................................................................... 8

    B.    Plaintiffs Must Provide Dow With The Presently Known Facts Underlying
        Their Negligent Misrepresentation Claim ........................................................... 9

    C.    Documents Provided To Governmental Bodies That Evidence Actual
        Revenues from End-Users Are Plainly Relevant In This Case............................ 13

    D.    Plaintiffs Must Respond to Dow's Requests to Clarify or Confirm Their
        Discovery Responses ......................................................................................... 18

        1.    Plaintiffs Must Confirm That They Were Not Authorized to Sell
            the Products in United States Commerce.................................................. 18

        2.    Plaintiffs Understand The Definition Of Competitive Products And
            Should Confirm That Understanding To Dow......................................... 21

        3.    Plaintiffs Should Be Required to Confirm Representations They
            Made During the Meet-and-Confer Session. ........................................... 23

III.  CONCLUSION......................................................................................... 23

# TABLE OF AUTHORITIES

Page

## CASES

*Abrahams v. Young & Rubicam*, 979 F. Supp. 122 (D. Conn. 1997) ............................................. 8

*Alexander v. F.B.I.*, 186 F.R.D. 54 (D.D.C. 1998) ........................................................ 17

*Bowles v. Safeway Stores*, 4 F.R.D. 469 (W.D.Mo.1945) ............................................. 11

*Connecticut Importing Co. v. Continental Distilling Corp.*, 1 F.R.D. 190 (D. Conn. 1940) ....... 17

*Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) ........................................... 12

*Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) ............................................ 9

*Halperin v. Berlandi*, 114 F.R.D. 8 (D. Mass. 1986)................................................... 16

*Hickman v. Taylor*, 329 U.S. 495 (1947)................................................................ 12

*Hyundai Merchant Marine v. United States*, 1991 WL 190563 (S.D.N.Y. Sept. 16, 1991) ........ 17

*In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420 (N.D. Ill. 1977) ......................................... 16

*In re PE Corp. Securities Litig.*, 221 F.R.D. 20 (D. Conn. 2003) ................................................. 13

*In re Savitt/Adler Litig*, 176 F.R.D. 44 (N.D.N.Y. 1997) ............................................... 13

*J. J. Delaney Carpet Co. v. Forrest Mills, Inc.*, 34 F.R.D. 152 (S.D.N.Y. 1963) .......................... 9

*Kreuzer v. American Academy of Periodontology*, 516 F. Supp. 1034 (D.D.C. 1981) ............... 16

*Novak v. Good Will Grange No. 127, Patrons of Husbandry, Inc.*, 28 F.R.D. 394 (D. Conn. 1961) ................................................................................................................ 11

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)........................................... 17

*Quadrozzi v. City of New York*, 127 F.R.D. 63 (S.D.N.Y. 1989) ................................................. 15

*Scott v. Arex, Inc.*, 124 F.R.D. 39 (D. Conn. 1989) ....................................................... 15

*Smith v. Logansport Community School Corp.*, 139 F.R.D. 637 (N.D. Ind. 1991) ..................... 17

*Stoner v. Walsh*, 772 F. Supp. 790 (S.D.N.Y.1991) ....................................................... 8

*Stonybrook Tenants Ass'n, Inc. v. Alpert*, 29 F.R.D. 165 (D. Conn. 1961) ............................... 9, 12

TABLE OF AUTHORITIES
(continued)

Page

*United States v. 216 Individually Cartoned Bottles*, 36 F.R.D. 695 (E.D.N.Y. 1965) ........... 10, 11

*United States v. Doyle*, 130 F.3d 523 (2d Cir. 1997)................................................................. 15

*United States v. West Virginia Pulp & Paper Co.*, 36 F.R.D. 250 (S.D.N.Y. 1964)................ 9, 10

*Weiss v. Chrysler Motors Corp.*, 515 F.2d 449 (2d Cir. 1975)....................................................... 11

*Yancey v. Hooten*, 180 F.R.D. 203 (D. Conn. 1998) ................................................................. 15

**OTHER AUTHORITIES**

8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, FEDERAL PRACTICE AND
  PROCEDURE § 2015 (2004)........................................................................................... 17

8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, FEDERAL PRACTICE AND
  PROCEDURE § 2174 (2004) .......................................................................................... 11

**RULES**

Fed. R. Civ. P. 11 ......................................................................................................................... 11

Fed. R. Civ. P. 26(b)(1)................................................................................................................. 8

Fed. R. Civ. P. 26(b), 1983 Advisory Committee Notes ............................................................. 17

Fed. R. Civ. P. 33(c) .................................................................................................................... 9

Fed. R. Civ. P. 33(c), 1993 Advisory Committee Notes ............................................................. 11

Fed. R. Civ. P. 33(d) ..................................................................................................................... 5

Fed. R. Civ. P. 34(a) .................................................................................................................... 9

Fed. R. Civ. P. 37(a)(2)(A) ......................................................................................................... 18

## I.     FACTS

Since last summer, Defendants and their counsel have been reviewing more than one thousand boxes of documents and more than 50 gigabytes of electronic data to find documents Plaintiffs have requested relating to US and overseas sales of so-called "Products," the over 150 Union Carbide products that Plaintiffs claim were subject to their alleged resale price maintenance ("RPM") agreement with Defendants. They have done so, pursuant to this Court's Order, so that Plaintiffs could have an opportunity to review and test the facts that they say are relevant to their claims. *See* Order at 8 (June 29, 2004) ("plaintiffs must have the opportunity to discover documents regarding the sales of products outside of India in order to prove that the defendants' conduct had an effect on U.S. commerce."). This effort has been guided since mid-October by a protocol that assigned priority to categories of documents that Plaintiffs considered the "most relevant in this litigation." *See* Letter from Andrew S. Marovitz to Richard S. Taffet, at 3-5 (Oct. 15, 2004) (describing Defendants' search protocol) (Ex. 1).

Meanwhile, Defendants have sought a modest amount of discovery in return. To obtain substantive information beyond the Amended Complaint's notice pleading, The Dow Chemical Company ("Dow") served Plaintiffs with discovery requests focused on each of Plaintiffs' claims on November 2, 2004.[1] But Plaintiffs' December 2, 2004 response refused to produce pertinent documents or information in response to requests going to the heart of two of Plaintiffs' claims.[2] And although Dow repeatedly requested, both in correspondence and during the parties' meet-and-confer, that Plaintiffs provide additional information and clarify their answers, Plaintiffs have refused to do either. Consequently, a number of routine discovery issues remain needlessly unresolved.

---

[1] *See* The Dow Chemical Company's Second Set of Requests to Admit (Nov. 2, 2004) (Ex. 2); The Dow Chemical Company's Third Set of Interrogatories (Nov. 2, 2004) (Ex. 3); The Dow Chemical Company's Second Set of Document Requests on Merits Discovery (Nov. 2, 2004) (Ex. 4).

[2] They refused to produce these documents even after the parties met and conferred on December 16 to discuss their relevance. *See* Letter from Andrew S. Marovitz to Richard S. Taffet (Dec. 9, 2004) (summarizing issues raised by the discovery and Plaintiffs' responses) (Ex. 5); Letter from Andrew S. Marovitz to Richard S. Taffet (Dec. 20, 2004) (memorializing meet-and-confer) (Ex. 6).

### A.     **Interrogatory 17 – Alleged Interference with End-Users**

Plaintiffs claim that Defendants misled Plaintiffs about the future of their relationship

with the Defendants, while interfering with Plaintiffs' business relationships with the End-Users.

*See* Am. Cmplt. ¶¶ 38-49. Because of this alleged conduct, "[t]o date Plaintiffs have found it

impossible to reestablish relationships with such customers." *Id.* ¶ 44. Last July, at this Court's

direction, Plaintiffs provided Defendants with the names of the 161 End-Users at issue.[3]

However, for each specific End-User, Defendants had no other information about Plaintiffs'

allegations; for example, Defendants lacked information about who allegedly interfered with

Plaintiffs' relationship with that End-User, when and how that person interfered, what the

resulting harm to Plaintiffs was, and how Plaintiffs calculated that harm. Thus, to learn this

basic information, Dow served Plaintiffs with a Request to Admit:

> Separately for each (a) Defendant and former Defendant and (b) End-User
> identified in the list titled "End Users of Products" sent by Richard S.
> Taffet, Esq. to Andrew S. Marovitz, Esq. on July 6, 2004, admit that the
> Defendant or former Defendant never interfered with your business
> relationship with the End-User.

Ex. 2, ¶ 6. Anticipating that Plaintiffs might deny the Request to Admit with respect to some

End-Users, Dow simultaneously served Plaintiffs with corresponding Interrogatory No. 17,

which asked that

> For each End-User with respect to which you denied any part of The Dow
> Chemical Company's Request to Admit No. 6, identify that End-User,
> describe the nature of the interference with your business relationship with
> that End-User, including:
>
> (a)     the identity of each person who, to your knowledge, took part in
> that interference;
>
> (b)     the injury the interference caused to each Plaintiff, and as to such
> injury, the monetary value of that injury, excluding the portion of the
> injury that was attributable to any source other than the interference; and
>
> (c)     the method by which you calculated your response to (b),
> including any assumptions made in the process of calculating those

---

[3] *See* Letter from Richard S. Taffet to Andrew S. Marovitz (July 6, 2004) (Ex. 7); Order at 11 (June 29, 2004).

responses, and the identity of each document utilized in formulating your response.

Ex. 3, ¶ 17.

As it turned out, Plaintiffs denied the Request to Admit "*as to each End-User at issue.*" Pls. Answers and Objs. to The Dow Chemical Company's Second Set of Requests to Admit, ¶ 6 (Dec. 2, 2004) (Ex. 8) (emphasis added). In response to the interrogatory, however, Plaintiffs provided no new information as to how Defendants may have interfered with respect to *any* of the 161 End Users; instead, they by and large repeated the allegations of their Amended Complaint. *See infra* at 4 (Cols. 1-2) (comparing relevant language of Amended Complaint and interrogatory response).

After Dow raised this deficiency during the December 22, 2004 status conference, the Court instructed Plaintiffs to "specifically set[] forth plaintiffs' knowledge, *beyond the allegations contained in the Amended Complaint*, with respect to the nature of defendants' alleged interference with plaintiffs' business relationships with End-Users." Order ¶ 3 (Feb. 7, 2005) (emphasis added). Plaintiffs claim to have complied with this Order already by virtue of a letter to this Court. *See* Letter from Richard S. Taffet to Hon. A. Covello (Jan. 13, 2005) (the "January 13 letter") (Ex. 9). But that letter does not remedy any of these deficiencies.

Instead of straightforwardly answering the straightforward interrogatory, as called for by this Court's Order, the January 13 letter recycles the language of the Amended Complaint and then argues why Plaintiffs should not have to supplement the response further. The following chart illustrates this:

3

| Allegations in the Amended Complaint | Plaintiffs' Answer to Interrogatory No. 17 | Plaintiffs' January 13, 2005 Letter |
|---|---|---|
| UCC "improperly refused to authorize the placement of orders by Plaintiffs and arbitrarily declined to fill orders that had been placed and accepted" (¶ 33) | Defendants interfered with End-Users by "refusing to fill orders or authorize new orders for reasons that were not justified" | "Dow and UCC tortiously interfered with Plaintiffs' business expectancies by refusing to fill orders and authorize new orders for reasons that were not justified" |
| "Defendants purposely and intentionally implemented a series of substantial but unjustified financial modifications that they knew would and did cause tremendous financial difficulties" (¶ 42) | Defendants interfered with End-Users by "purposefully and intentionally implementing substantial but unjustified credit modifications that they knew would and did cause tremendous financial difficulties for Plaintiffs" | "Defendants purposely and intentionally implemented a series of substantial but unjustified credit modifications that they knew would and did cause tremendous financial difficulties for Plaintiffs" |
| "at this time Dow, acting through Dow India, and specifically through its marketing director in India, Ashish Mitra, contacted Plaintiffs' customers directly and informed them that Plaintiffs were experiencing financial difficulties" (¶ 44) | Defendants interfered with End-Users by "contacting Plaintiffs' customers directly and informing them that Plaintiffs were experiencing financial difficulties" | "At this time Dow caused its affiliates in India, including Ashish Mitra, to contact Plaintiffs' customers directly and inform them that Plaintiffs were experiencing financial difficulties" |
| "Defendants altered the billing practices that had been followed for many years, thereby making it impossible for Plaintiffs, for the first time, to make timely payments on invoices" (¶ 42)<br><br>"The modified billing arrangements combined with Dow's reduction of Plaintiffs' credit limit severely disrupted Plaintiffs' cash flow and led directly to delays in Plaintiffs' payments" (¶ 43) | Defendants interfered with End-Users by "altering well-established billing practices in a manner that was intended to and did adversely affect Plaintiffs' cash flow, which was used as a pretext to deprive Plaintiffs of Products that Plaintiffs had committed to their End-Users" | "Dow and UCC altered well-established billing practices that was intended and which had the effect of adversely affecting Plaintiffs' cash flow, which was also used as a pretext by Defendants to deprive Plaintiffs of Products committed by Plaintiffs to their customers"<br><br>"Dow and UCC altered well-established billing practices that was intended and which had the effect of adversely affecting Plaintiffs' cash flow" |
| "Defendants then imposed a credit hold on shipments to Plaintiffs, and deliberately refused to release pending orders" (¶ 43) | Defendants interfered with End-Users by "imposing unjustified credit holds on shipments to Plaintiffs" | "Dow and UCC then imposed a credit hold on shipments to Plaintiffs, and deliberately refused to release pending orders" |

4

The documents cited by the January 13 letter do not add any new information, and certainly do not provide sufficient information so that "the answer to an interrogatory may be derived or ascertained from the business records." Fed. R. Civ. P. 33(d). First, those documents mention only about 67 of the 161 End-Users, and the information they do provide regarding those 67 End-Users falls far short of answering Interrogatory No. 17. One such document, for example, contains an e-mail exchange about the End-User Asian Paints. E-mail from Arjun Samtani to Ajay Mittal (March 28, 2001) (Ex. 10).[4] The exchange mentions a Dow India employee's meeting with Asian Paints regarding pricing of certain products that Asian Paints had been purchasing from competitors, *not* from Dow India or Plaintiffs, and inquires about how any arrangements should be handled.[5] The document notes that Dow India is "evaluating MegaVisa as a distributor" following the deal, and advises that a decision will be made after that evaluation is complete. *Id.* at M 5118.

It is difficult to see how this document could support a claim for misrepresentation, particularly in light of the fact that it was transmitted on March 28, 2001 to Ajay Mittal, President of Plaintiffs' parent MegaVisa Marketing & Solutions Ltd. *See id.* at M 5118. Further, the document provides no information regarding the nature of any actual interference, such as anything said during the meeting at all about Plaintiffs (let alone that disparaged Plaintiffs), or whether Plaintiffs allege injury as a result of the meeting, or how they arrived at a calculation of any such injury.

---

[4] This document was listed in an earlier interrogatory response that the January 13 letter cites as providing information responsive to Interrogatory No. 17. *See* Ex. 9 at 5.

[5] In fact, as the e-mail indicates, Asian Paints was not even purchasing the Product in question, CELLOSIZE™ hydroxyethyl cellulose, from Plaintiffs at that time. *See* Ex. 10 at M 5120 ("I know that Asian Paints do not buy Cellosize . . . .").

As to the remaining 94 End-Users, the cited documents contain no additional information whatsoever. Plaintiffs have not even indirectly pointed to an encounter between a Defendant and any of those End-Users in which some alleged interference could have taken place. Thus, for example, with respect to Plaintiffs' business relationship with Accra Pac (India) Pvt. Ltd., the first End-User on Plaintiffs' list, Plaintiffs have provided no facts concerning what representative of a Defendant interfered with that relationship, how or when that representative interfered, what damage the interference caused, or how Plaintiffs calculated that damage.

**B.    Statements of Sales Revenues to Government Agencies**

To prepare its defense of Plaintiffs' antitrust claim, Dow requested a narrow set of documents pertaining directly to the amount of commerce affected by the alleged RPM agreement and to damages. Document Request No. 6 asks Plaintiffs to produce "[a]ll documents submitted to any governmental body, enforcement authority or tax authority that reflect or report amounts paid by End-Users for the Products." Ex. 4, ¶ 6. Plaintiffs have produced no documents in response to this request. While offering to look for (and presumably produce) responsive information related to *individual* transactions, Plaintiffs have refused to investigate – let alone produce – documents that reflect aggregate amounts paid by End-Users to Plaintiffs for the Products. *See* Letter from Alicia L. Downey to Andrew S. Marovitz, at 2-3 (Dec. 21, 2004) (agreeing to "inquire" of their clients whether documents "submitted to a government agency that revealed the price paid by an end user in connection with a specific transaction" exist, but refusing to inquire about "documents that reflect or report aggregate amounts paid by End-Users for the Products generally") (Ex. 11). Moreover, Plaintiffs to date have neither confirmed nor denied the availability of *any* documents reporting individual transactions to the government. Still, Plaintiffs have objected to the production of any such documents that are available on the

6

grounds that the documents are irrelevant to issues of the case and are duplicative of documents already produced by Plaintiffs.

### C.    Meet-and-Confer Issues

Plaintiffs have refused to confirm that the parties' meet-and-confer resolved a number of mundane discovery issues. These issues include, among others, the inclusion of a typographical error in one of Plaintiffs' responses, Plaintiffs' understanding of the phrase "Competitive Products," and whether Plaintiffs have withheld documents on the basis of certain of Plaintiffs' objections. *See* discussion *infra* at 18-23. After reviewing Plaintiffs' objections and responses to the discovery requests at issue here, Dow outlined a number of deficiencies in them and requested a meet-and-confer session. *See* Ex. 5. The parties conducted the meet-and-confer telephonically on December 16, 2004 and, the following day, Dow's counsel provided Plaintiffs with a letter outlining its understanding of Plaintiffs' representations during the meet-and-confer and providing further clarification of certain of the requests at issue (as requested by Plaintiffs). *See* Letter from Andrew S. Marovitz to Richard S. Taffet (Dec. 17, 2004) (Ex. 12); Ex. 6.

Plaintiffs' response to the letter was puzzling. Plaintiffs took issue with a few points in the meet-and-confer letter, said nothing about others and then declared that "*unless otherwise stated below, we do not agree with your characterization of our positions or any of our statements.*" Ex. 11 at 1 (emphasis added). In an effort to avoid unnecessary motion practice, Dow wrote Plaintiffs another letter revisiting the issues from the telephonic conference that Plaintiffs' December 21 letter never addressed. Letter from Andrew S. Marovitz to Alicia L. Downey (Dec. 27, 2004) (Ex. 13). Plaintiffs responded that they were "reviewing it carefully and w[ould] respond in due course." Letter from Alicia L. Downey to Andrew S. Marovitz, at 1 (Dec. 28, 2004) (Ex. 14). Plaintiffs later confirmed that Dow should expect to receive a response

7

to its December 27, 2004 letter within a week of December 31, 2004. *See* Email from Richard S.

Taffet to Andrew S. Marovitz (Dec. 31, 2004) (Ex. 15).

On January 19, 2005, nearly three weeks after Plaintiffs had promised a response, Dow

reminded Plaintiffs that their response remained outstanding:

> On December 27, we wrote Alicia Downey a letter that sought confirmation of a few
> discovery points that we discussed with you just before the holidays. Alicia's letter of
> December 28 said that we would receive a response to those points "in due course," and
> your email of December 31 noted that we would receive a response during the following
> week. To date, we have not received a response, but would appreciate knowing by the
> end of the week where Plaintiffs stand on those issues.

Letter from Andrew S. Marovitz to Richard S. Taffet (Jan. 19, 2005) (Ex. 16).

Finally, nearly a month later, Plaintiffs purported to respond. *See* Letter from Alicia L.

Downey to Andrew S. Marovitz (Feb. 17, 2005) (Ex. 17). But the four-sentence letter provides

no information or clarification, even on the simplest questions. Instead, it states only that

Plaintiffs intend to comply with this Court's Order of February 7 "and with our prior

undertakings to supplement certain responses to Dow's written discovery requests." *Id.* The

letter concludes with the suggestion that "[i]f, after receiving these supplemental responses, you

still believe it necessary to revisit any of the matters raised in your December 27 letter, please

feel free to contact me." *Id.*

## II.    ARGUMENT

### A.    Legal Standard

The "purpose of discovery is to find out additional facts about a well-pleaded claim . . . ."

*Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 129 (D. Conn. 1997) (*quoting Stoner v.*

*Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y.1991)). To that end, "[p]arties may obtain discovery

regarding any matter, not privileged, which is relevant to the claim or defense of any party . . . ."

Fed. R. Civ. P. 26(b)(1). "Information that is reasonably calculated to lead to the discovery of

admissible evidence is considered relevant for the purposes of discovery." Order at 5 (June 29,

2004) (*citing Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991)). Thus, it is

proper to request the production of "any designated documents . . . which constitute or contain

matters within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a).

      Similar rules apply to interrogatories; they "may relate to any matters which can be

inquired into under Rule 26(b)(1) . . . ." Fed. R. Civ. P. 33(c). Interrogatories "enable a party to

ascertain facts and to procure evidence or secure information as to where pertinent evidence

exists and can be obtained. Interrogatories assist in narrowing issues and enabling the

interrogating party to determine what he will have to meet at trial." *Stonybrook Tenants Ass'n,*

*Inc. v. Alpert*, 29 F.R.D. 165, 167 (D. Conn. 1961). Thus, "it is permissible to inquire into

matters already within the interrogating party's own knowledge or as to the adverse party's

contentions or as to his mental operation in respect to relevant issues." *Id.*

      Dow does not ask the Court to order boundless discovery based upon a far-fetched theory

of relevance. Instead, these two requests call only for a statement of the facts underlying

*Plaintiffs' own* allegations, and a small set of documents Plaintiffs provided to governmental

bodies. This material is pivotal to Dow's ability to defend itself against Plaintiffs' claims. It is

unquestionably "relevant to the claim or defense of any party" under Rule 26(b)(1).

    **B.**    **Plaintiffs Must Provide Dow With The Presently Known Facts**
              **Underlying Their Negligent Misrepresentation Claim.**

      "It is not the office of an answer to an interrogatory to merely restate virtually in *haec*

*verba* the allegations of the complaint." *United States v. West Virginia Pulp & Paper Co.*, 36

F.R.D. 250, 251 (S.D.N.Y. 1964); *J. J. Delaney Carpet Co. v. Forrest Mills, Inc.*, 34 F.R.D. 152,

153 (S.D.N.Y. 1963) ("Incorporation by reference of portions of a deposition of a witness, much

of it discursive, or of allegations of a pleading is not a responsive answer."). But that is what the

Plaintiffs have done here. Like the Amended Complaint itself, Plaintiffs' interrogatory answer and the January 13 letter (collectively, the "response") fail to identify a single specific act of interference as to any specific End User, or to identify any individual allegedly involved in such interference. The response provides no times, dates, places or specific actions themselves. It adds virtually nothing to what is said in the notice-pleading Amended Complaint. Moreover, the response does not even purport to offer the requested information regarding the specific injuries Plaintiffs incurred due to the alleged acts of interference, the monetary value of those injuries, the method by which Plaintiffs calculated the monetary value, and the identity of documents used in responding to the interrogatory, all of which Interrogatory No. 17 expressly requested. *See supra* at 2-6.

In short, Plaintiffs' response to Interrogatory 17 "supplies no facts not disclosed by the complaint nor does it clarify or narrow the broad issues posed by the complaint." *West Virginia Pulp & Paper Co.*, 36 F.R.D. at 251 (citations omitted). It fails to disclose, as the Rule requires, "the factual basis" of Plaintiffs' claims. *United States v. 216 Individually Cartoned Bottles*, 36 F.R.D. 695, 701 (E.D.N.Y. 1965) (ordering defendant to respond to an interrogatory requesting a specification of a "basis" for a defense to a claim; plaintiff "is entitled to know the factual basis of th[e] defense"). Their response is plainly insufficient.

Plaintiffs' counsel contend that they do not have to provide the detail requested in the Interrogatory because (1) discovery is ongoing, (2) Plaintiffs have not yet received all of Defendants' documents regarding End-Users, and (3) the requested information could be discovered through depositions. *See* Ex. 9 at 2, 6. None of these contentions is supported by applicable law, let alone by this Court's Order that Plaintiffs provide responsive information beyond that which is contained in the Complaint.

10

It is black letter law that when responding to an interrogatory, a party must provide information within its possession, or that it can obtain with a reasonable effort, at the time the response is served. 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2174 (2004) ("As a general rule a party in answering interrogatories must furnish information that is available to it and that can be given without undue labor and expense."). That discovery may be ongoing does not excuse Plaintiffs' obligation to provide Dow with the information that they already possess. *216 Individually Cartoned Bottles*, 36 F.R.D. at 702. In fact, the Advisory Committee Notes to the 1993 amendments to Fed. R. Civ. P. 33(c) specifically contemplated that a party may be required to supplement an interrogatory response: "the fact that additional time may be needed to respond to some questions (or to some aspects of questions) should not justify a delay in responding to those questions (or other aspects of questions) that can be answered within the prescribed time."[6]

Moreover, it is patently insufficient to refuse to respond to an interrogatory on the grounds that the propounding party possesses the information. *See Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975) ("It is no objection to interrogatories . . . that the information sought is within the knowledge of the interrogating party.") (*quoting Bowles v. Safeway Stores*, 4 F.R.D. 469, 470 (W.D.Mo.1945)); *Novak v. Good Will Grange No. 127, Patrons of Husbandry, Inc.*, 28 F.R.D. 394, 396 (D. Conn. 1961) ("That information sought is within the knowledge of the inquiring party is not ground to sustain objections to

---

[6] At bottom, Plaintiffs' contention that they need not articulate specific facts beyond the Amended Complaint's allegations because discovery is continuing suggests that even at this date, they do not know any facts to support these allegations. Even when they filed the Amended Complaint, they should have known some supporting facts, in light of their obligation to investigate the basis of allegations prior to making them. *See* Fed. R. Civ. P. 11. If, in response to this Court's Order of February 7, 2005, Plaintiffs do not recite even some facts elicited by that investigation, one must conclude that either they are defying the Court's Order or that there simply are no facts to recite. If so, the claim should be stricken or summary judgment should be granted. At this time, however, Defendants seek an order compelling an adequate response to Interrogatory No. 17 on the chance that Plaintiffs are in possession of some facts that, until now, they have refused to reveal.

interrogatories") (citations omitted). In fact, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Weiss*, 515 F.2d at 457 (*quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). An important part of discovery is the determination of facts upon which the other side bases its claim. *See Coulthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000) ("[t]he government may compel plaintiff, by interrogatories or otherwise, to declare what is the negligent conduct he alleges occurred and to reveal whatever evidence he relies on to show such negligence."). That is doubly important here, where Defendants simply do not know which of their acts, in Plaintiffs' minds, constitute actionable interference with respect to any of the 161 End-Users with whom Defendants allegedly interfered.[7]

Plaintiffs additionally objected to providing the specific factual bases of their allegations (in response to Interrogatory No. 17) on the grounds that Dow can discover the requested information through depositions. *See* Ex. 11 at 2 ("If [defendants] have specific questions concerning specific customers, a deposition is better suited to obtain the information."). That contention is mistaken, both factually and legally. Factually, Dow seeks the basics of Plaintiffs' claims, basics that Defendants then can use to guide subsequent discovery. Legally, it is insufficient to reply that such basic facts – already known to Plaintiffs and their counsel (who must have known them prior to filing this lawsuit) – can be withheld on the ground that the information might also be discovered through depositions. *Stonybrook Tenants Ass'n*, 29 F.R.D. at 167 ("the methods of discovery are complementary, rather than alternative or exclusive. A party may take both depositions and interrogatories, as long as he is not attempting to circumvent a ruling of the court, or to harass or oppress the adverse party").

---

[7] Plaintiffs' reference to numerous documents cited in prior discovery responses is far from providing this information. *See* Ex. 9.

12

Dow narrowly drafted Interrogatory No. 17 to discover the facts that are at the heart of Plaintiffs' negligent misrepresentation claim. Instead of simply providing those facts, as requested, forthrightly and fairly, Plaintiffs continue to choose to rebuff such efforts – even in the face of the Court's Order. This tactic denies Dow "access to facts that are essential to a fair presentation of the case." *In re PE Corp. Securities Litig.*, 221 F.R.D. 20, 24 (D. Conn. 2003); *see also In re Savitt/Adler Litig*, 176 F.R.D. 44, 50 (N.D.N.Y. 1997) (plaintiff ordered to respond to interrogatory that was "completely focused on the allegations of plaintiffs' complaints, information to which defendants are entitled to prepare their defenses."). This Court should not allow it. If the reason for Plaintiffs' abject failure to respond to this straightforward interrogatory is because they are aware of no facts supporting their allegations of interference, then they should say as much, so that their negligent misrepresentation claim can be disposed of swiftly by summary judgment, without any further waste of this Court's time and the parties' resources. If, however, they can point to a fact reflecting interference, or any degree of damage resulting therefrom, they must do so in response to this Interrogatory. This Court should not condone Plaintiffs' wait-and-see approach to discovery. Dow respectfully requests that the Court compel the Plaintiffs' response so that Plaintiffs can choose between disclosing what facts they know, refusing to disclose them at the risk of having their claim stricken, and acknowledging that in truth they know of no facts bearing out their allegations of interference.

**C.     Documents Provided To Governmental Bodies That Evidence Actual Revenues from End-Users Are Plainly Relevant In This Case.**

Plaintiffs allege that they "were compelled to participate in an anticompetitive and *per se* unlawful conspiracy imposed and enforced by Defendants and directed to maintaining minimum resale prices to be charged end-users to whom Plaintiff resold the Products." Am. Cmplt. ¶ 1. Dow vigorously denies this allegation; in order to prepare its defense of this claim, Dow

13

requested a narrow set of documents pertaining directly to Plaintiffs' Sherman Act claim and the

issue of damages. Document Request No. 6 asks Plaintiffs to produce

> All documents submitted to any governmental body, enforcement authority or tax
> authority that reflect or report amounts paid by End-Users for the Products.

Ex. 4, ¶ 6.

This straightforward request asks for a clearly defined set of documents that directly bear

upon facts that Plaintiffs themselves put at issue – the prices they charged to End-Users. Yet

Plaintiffs have ducked production of these documents by distorting the subject of the Request.

While offering to look for (and presumably produce) responsive information related to *individual*

transactions, Plaintiffs have refused to investigate – let alone to produce – documents that reflect

aggregate amounts paid by End-Users to Plaintiffs for the Products. Ex. 11 at 2-3 (agreeing to

"inquire" of their clients whether documents "submitted to a government agency that revealed

the price paid by an end user in connection with a specific transaction" exist, but refusing to

inquire about "documents that reflect or report aggregate amounts paid by End-Users for the

Products generally"). But if no documents reporting individual transactions to the government

exist, documents reflecting or reporting aggregate amounts are especially important.

Not knowing whether any responsive documents exist, Plaintiffs have made no

suggestion that the collection of the requested documents would be unduly burdensome. Instead,

Plaintiffs have objected to the production of any extant documents on the grounds that they are

irrelevant to issues of the case and are duplicative of documents Plaintiffs already produced.

Plaintiffs are mistaken. Documents provided by the Plaintiffs to governmental bodies that state

the amounts reported to have been paid by End-Users for the Products are highly probative of

Plaintiffs' RPM claim because they are Plaintiffs' statements to government officials of their

actual income based on the prices they claim were affected by the alleged RPM agreement. That

they were produced to a governmental agency makes them a reliable source of information on this crucial issue. *See United States v. Doyle*, 130 F.3d 523, 546 (2d Cir. 1997) ("the fact that . . . business documents were filed with a government agency . . . implies some endorsement of their veracity by the filer"). Courts have ordered the production of financial records of the plaintiff with a far more remote relationship to the issues in the case. *See, e.g., Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989) ("[t]ax returns and other information regarding income are discoverable if relevant to the issues in a lawsuit."); *see also Yancey v. Hooten*, 180 F.R.D. 203, 215 (D. Conn. 1998) (requiring production where "the requested financial information *could lead* to the discovery of admissible evidence") (emphasis added). Here, where "price, costs, and customers" are "at the heart of . . . any . . . antitrust proceeding," these documents are especially significant. *Quadrozzi v. City of New York*, 127 F.R.D. 63, 75 (S.D.N.Y. 1989) (imposing sanctions against plaintiffs where they refused to disclose any documents relating to price, costs, and customers).

It is unclear why Plaintiffs have tried to shield from discovery *any* reports to government authorities about actual prices at which they sold the Products to End-Users (instead of agreeing to produce them as confirmation of the prices at which they informed Defendants they were selling such Products to End-Users). Plaintiffs have not suggested that it would be overly burdensome for them to locate, duplicate and produce such documents.[8] But during the meet-and-confer session, Plaintiffs' counsel objected even to conducting a search for documents responsive to Document Request No. 6, on the grounds that the production of government filings would be duplicative of information already produced in the litigation. This argument does not

---

[8] Any objection on Plaintiffs' part to the burden of locating and producing a narrow subset of documents like this would be unsustainable in the face of Defendants' ongoing search for and production of broad ranges of documents with little, if any, relevance to Plaintiffs' claims.

excuse Plaintiffs from searching for those documents – particularly when one considers that

Plaintiffs cannot know whether those documents actually are duplicative without first locating

and reviewing them. *See Halperin v. Berlandi*, 114 F.R.D. 8, 11-12 (D. Mass. 1986) (ordering

the production of defendants' tax returns even though the information on the returns could be

derived from other sources). Nor can Plaintiffs object to the production of such relevant

information on the ground that it would be difficult to derive individual, transactional prices

from aggregated data about the Products – that is an issue for the experts to determine, and not

Plaintiffs.

Because these documents are probative of the difference between the actual price and the

price in the absence of the alleged unlawful conduct, they are directly related to the issue of

Plaintiffs' damages. In general, documents reflecting the finances of an antitrust plaintiff are

particularly relevant to the calculation of damages. *See Kreuzer v. American Academy of*

*Periodontology*, 516 F. Supp. 1034, 1041 (D.D.C. 1981) (ordering antitrust plaintiff dentist to

produce accounting and patient records where he claimed defendant's anticompetitive practices

caused him to lose patients, thus making such records probative of "injury or economic

damages"); *see also In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 430 (N.D. Ill. 1977)

(ordering production of plaintiffs' financial documents where defendants contended that the

financial documents "are relevant and necessary for use by defendants' experts and

economists").

Further, if Plaintiffs' governmental filings reflect a differential between the price

Plaintiffs told Defendants they were charging End-Users and the prices that they actually

charged End-Users, those filings are plainly relevant to the amount of damages and necessary for

the impeachment of Plaintiffs' witnesses. 8A Charles A. Wright, Arthur R. Miller, & Richard L.

16

Marcus, FEDERAL PRACTICE AND PROCEDURE § 2015 (2004) ("Inconsistent statements . . . being themselves admissible evidence, cannot be excluded from the scope of discovery."); *see also Connecticut Importing Co. v. Continental Distilling Corp.*, 1 F.R.D. 190, 192 (D. Conn. 1940) (ordering production of plaintiff's tax returns where "they might prove useful to the defendant on the cross-examination of plaintiff's witnesses.") (citation omitted). Dow will not have the opportunity to discover whether such a disparity exists without production of documents responsive to Document Request No. 6. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance should be interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *see also* Fed. R. Civ. P. 26(b), 1983 Advisory Committee Notes ("the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case").

In any event, Plaintiffs are not entitled to withhold relevant information or documents on the basis that they do not approve of the use to which Defendants might put those documents. *See Alexander v. F.B.I.*, 186 F.R.D. 54, 59 (D.D.C. 1998) ("Plaintiffs may not arrogate to themselves the power to determine what constitutes a relevant document . . . .") (*citing Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 648 (N.D. Ind. 1991) (party cannot withhold documents from production based on its own "*ex parte* determination of relevancy.")); *see also Hyundai Merchant Marine v. United States*, 1991 WL 190563, at *2 (S.D.N.Y. Sept. 16, 1991) ("The relevance of particular documents is often not easy to determine in isolation and certainly cannot be unilaterally determined by the party opposing production.").

In sum, Dow requested the production of a discrete group of documents that are directly relevant to liability and damages on Plaintiffs' Sherman Act claim. Plaintiffs' wholesale refusal even to look for these documents (let alone produce them) cannot be justified.

**D.      Plaintiffs Must Respond to Dow's Requests to
            Clarify or Confirm Their Discovery Responses.**

It is common for parties engaged in civil litigation to meet-and-confer following the service of discovery responses so that disputed issues can be narrowed and ambiguous answers and objections can be clarified. Indeed, the meet-and-confer process is built into the rules. Fed. R. Civ. P. 37(a)(2)(A). But here, two months of Dow's repeated efforts to clarify a number of straightforward issues have elicited only Plaintiffs' offhand suggestion that Dow contact them if any questions remain after Plaintiffs comply with their unidentified "undertakings to supplement certain responses to Dow's written discovery requests." Ex. 17. This cryptic and dismissive response is inexplicable in light of Plaintiffs' earlier representation that "the remaining issues in dispute all appear to be resolvable well in advance of the March 1, 2005, reciprocal deadline for completing the present discovery stage." Ex. 14 at 1. Court intervention will be necessary to make it so.

**1.      Plaintiffs Must Confirm That They Were Not
            Authorized to Sell the Products in United States Commerce.**

A central goal of discovery is to narrow the issues of a case. In an attempt to do just that, Dow issued complementary discovery requests aimed to establish the fact that Plaintiffs were not authorized by Defendants to do business in the United States. Along those lines, Request to Admit No. 8 asks Plaintiffs to "[a]dmit that [they] were never authorized by Defendants, former Defendants or any of their affiliates to sell any of the Products in the United States." Ex. 2. Dow also served Plaintiffs with Interrogatories aimed at discovering the basis for any denial of this Request to Admit. Interrogatory No. 18 asks Plaintiffs to "[i]dentify each purchase from any

Defendant or former Defendant of a Product that you then sold in the United States." Ex. 3.

Likewise, Interrogatory No. 19 asks, "[i]f you denied any part of The Dow Chemical Company's

Request to Admit No. 8, identify the source of your authority to sell any of the Products in the

United States." *Id.*

Plaintiffs denied Request No. 8 and referred to that denial in their response to

Interrogatory No. 19. Instead of providing the straightforward answered called for by

Interrogatory No. 18, Plaintiffs replied with the puzzling answer that "[t]hey did not resell any

Products in the United States that had not been purchased from any Defendant or former

Defendant." Ex. 18. Dow raised with Plaintiffs the possibility that the response to Interrogatory

No. 18 contains a typographical error. *See* Ex. 6 at 2. Plaintiffs confirmed during the meet-and-

confer that the second "not" in their response was in fact a typographical error, but have yet to

confirm their representation in writing. *See* Ex. 11 at 1 ("Please note that unless otherwise stated

below, we do not agree with your characterization of our positions or any of our statements" and

providing no statement regarding Plaintiffs' answer to Interrogatory No. 18). Finding it difficult

to believe that Plaintiffs intended to retract their representation, Dow asked Plaintiffs *again* to

confirm that their response to Interrogatory No. 18 contains a typographical error:

> Plaintiffs' answer to Interrogatory No. 18 contains a typographical error – an extra "not"
> – and should read:
>
> Subject to the foregoing general objections, Plaintiffs respond that they did not resell any
> Products in the United States that had been purchased from any Defendant or former
> Defendant.

Ex. 13 at 1.

One and one-half months later, Plaintiffs still have neither confirmed that their answer to

Interrogatory No. 18 contains a typographical error nor served a corrected answer. This failure is

particularly inexplicable inasmuch as the documents in the case reflect this fact. Letter from R.

Neri, UCAP, to S. Sanghvi, Megavisa Solutions (June 27, 2000) (Ex. 19) ("If Megavisa sells any

of these products in any countries outside of India, the Distributorship arrangement with

Megavisa will forthwith be terminated without any notice.").

      Plaintiffs' response to Interrogatory No. 19 likewise is incomplete.  That interrogatory

asks Plaintiffs to "identify the source of your authority to sell any of the products in the United

States."  Ex. 3.  Instead of providing a straightforward answer to this straightforward question,

Plaintiffs objected to the term "authorize" on the grounds that it is vague and ambiguous.  (Ex.

18).  While it did not seem to Dow that there was anything vague or ambiguous about the

interrogatory, Dow acted to avoid this dispute by providing additional explanation:

> Plaintiffs claimed in an objection that the term "'authorized' is vague and
> ambiguous," and stated during the call that the term might include an
> authorization by silence (in other words, a failure to expressly prohibit).  While
> we disagree that the terms of the actual request, as served, are ambiguous, we
> would like to resolve this issue, if we can.  To address the point you raise, by
> using the word "authorized" in Request To Admit No. 8, we mean an
> authorization *by any affirmative statement or affirmative act* by Defendants,
> former Defendants or any of their affiliates.  Please advise whether this additional
> information permits Plaintiffs to answer the request and, if so, what Plaintiffs'
> answer is.

Ex. 12 at 1.  After receiving Dow's clarification of the term "authorize," Plaintiffs agreed that

"[i]f possible, we will undertake to provide an answer" to Interrogatory No. 19.  Ex. 11 at 2.  To

date, Plaintiffs have neither informed Dow whether they have found it "possible" to respond to

that interrogatory nor provided any supplementation of their response.

      The requests at issue are not difficult to answer – at most, they require simple

confirmation that Plaintiffs were not authorized to and did not sell any Product in the United

States.  Plaintiffs' continued failure to answer these straightforward requests makes clear that,

absent at least an Order by this Court, they have no intention to do so.

### 2. Plaintiffs Understand The Definition Of Competitive Products And Should Confirm That Understanding To Dow.

Plaintiffs engaged in similar gamesmanship by refusing to confirm their understanding of the meaning of "Competitive Products." That phrase is significant, as it is used in several requests to uncover facts about Plaintiffs' RPM claims and alleged damages arising therefrom. *See, e.g.*, Ex. 3, ¶ 16 (requesting identification of Competitive Products that were available for purchase, volumes and prices); Ex. 4, ¶¶ 1-3 (requesting documents relating to Competitive Products); Ex. 2, ¶¶ 3-5 (requesting admissions of facts regarding Plaintiffs' ability to purchase Competitive Products).

Dow's discovery requests defined "Competitive Product" to mean, "for any Product, a product that was, at any time between January 1, 1993 and the present, offered, marketed or sold in competition with, or as an alternative to, that Product." Ex. 2 at 1. Plaintiffs objected to this definition of "Competitive Products" as "vague, ambiguous, and overbroad."[9] This objection is strained, in light of the fact that *Plaintiffs themselves* demanded discovery about Competitive Products without offering any definition of the term at all:

- "All documents not otherwise requested concerning Your market share or anticipated market share for the sale or distribution of Products or products competitive with Products, directly or indirectly, to end users." Pls. Second Req. to Defs. for Production of Documents, ¶ 9 (Oct. 15, 2003) (Ex. 20).

- "All documents concerning the manufacture, sale, offer for sale or distribution in any geographic market or territory by any person other than You of any products that are competitive with the Products." Pls. Third Req. to Defs. for Production of Documents, ¶ 1 (April 2, 2004) (Ex. 21).

- "All documents concerning competition between Dow and UCC prior to the Merger in connection with the sale of Products or products that are competitive with the Products in any geographic market or territory other than India." *Id.* ¶ 6.

---

[9] By comparison, Plaintiffs' Amended Complaint (at ¶ 51) alleges a far less precise understanding of "Competitive Product" – "alternative sources of supply for substitutes to the Products" – than was defined in Dow's discovery requests.

21

Further, their own Amended Complaint contains allegations about Competitive Products – it uses the phrase "alternative sources of supply for substitutes to the Products" (¶ 51) – without offering any kind of definition at all.

After a meet-and-confer call, Dow asked Plaintiffs to confirm their representation made during that call that Plaintiffs understood a "Competitive Product" to be "a product that serves the same basic purpose and function as a Product that they sold to End-Users." Ex. 6 at 1. After Plaintiffs refused to confirm their prior representation (*see* Ex. 11 at 1), Dow's counsel telephoned Plaintiffs' Counsel to ensure that

> Plaintiffs construed the phrase "Competitive Products," as defined in the discovery requests, to mean products that they understood serve the same basic purpose or function as Products that they sold to End-Users. Plaintiffs have conducted a reasonable search and have produced all such documents of which Plaintiffs are aware. They also have invited Defendants to inquire about specific Competitive Products, by name of product and supplier.

Ex. 13 at 1. Plaintiffs acknowledged receipt of the letter, but as discussed above, they never responded to its substance.

Plaintiffs' objection to Dow's definition is indefensible. In the first instance, the definition is abundantly clear:

> "Competitive Product" means, for any Product, a product that was, at any time between January 1, 1993 and the present, offered, marketed or sold in competition with, or as an alternative to, that Product"

Ex. 2. Second, as noted above, Plaintiffs themselves have used the same concept in drafting their own discovery. Third, Plaintiffs' own documents show that they were consciously in the business of selling the Products against Competitive Products. *See, e.g.*, Report from Moti Kripalani, at M 3290 (April 7, 2001) (providing information regarding competitors in the wire and cable market) (Ex. 22); e-mail from Shrikant Naik to Albert Poh (May 3, 2001) (requesting a price decrease because they "are facing stiff competition from Wacker & Solbin") (Ex. 23).

### 3.    Plaintiffs Should Be Required to Confirm Representations They Made During the Meet-and-Confer Session.

In addition to the aforementioned failures, Plaintiffs have failed to confirm several routine representations they made during the meet-and-confer process.  These representations include:

- Plaintiffs' use of the phrase "have produced and/or shall produce documents" in their discovery responses means that all responsive documents have been produced;

- Plaintiffs' statement in their interrogatory responses that they have produced "documents that concern information" is equivalent to a statement that they produced documents from which the answer "may be derived or ascertained" as required by Fed. R. Civ. P. 33(d);

- Plaintiffs' statement that they have not knowingly withheld responsive documents from production on the basis of their objections to Document Production Requests 1-5; and

- Plaintiffs' statement that their answers to Requests to Admit 3-7 would not change if Plaintiffs had never asserted their objections or that there is no need to resolve these objections because the substantive admissions or denials would remain the same regardless whether the objections were sustained or overruled.

Ex. 13 at 1-2. Dow raised each of these modest issues during the meet-and-confer process *to avoid* the need for judicial resolution of them.  Plaintiffs' silence in the face of Dow's repeated letters – coupled with their statement that, unless specifically admitted, "we do not agree with your characterization of our positions or any of our statements," (Ex. 11 at 1) – leaves Dow with no choice but to ask this Court to do what Plaintiffs would not.

## III.    CONCLUSION

Discovery should not be a one-way street.  While Defendants have spent months chasing documents worldwide in an effort to respond to Plaintiffs' far-reaching discovery requests, Plaintiffs have refused to respond to plainly relevant discovery requests and have employed every tactic to delay providing the most basic of information in response.  These tactics should

not be allowed.  For all of the foregoing reasons, Dow's Motion to Compel Discovery Responses should be granted in its entirety.

Respectfully submitted,

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, IL  60603-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC  20006-1157
(202) 263-3000

*Attorneys for Defendant The Dow Chemical Company*

## CERTIFICATE OF SERVICE

This is to certify that a copy of this Memorandum of Law in Support of Motion to Compel

Discovery Responses was forwarded this 18th day of February, 2005, by first-class mail, postage

prepaid, to the following counsel:

Alicia L. Downey, Esq.
Bingham McCutchen, LLP
150 Federal Street
Boston, MA  02110-1726

Richard S. Taffet, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY  10022-4689

Suzanne Wachsstock, Esq.
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325

Robert M. Langer, Esq.
Steven Bruce Malech, Esq.
Wiggin & Dana LLP
One CityPlace
185 Asylum Street
Hartford, CT  06103

Christopher J. Kelly, Esq.
Mayer Brown Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

Nathan P. Eimer, Esq.
Andrew G. Klevorn, Esq.
Ryan S. Hedges, Esq.
Eimer Stahl Klevorn & Solberg, LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL  60604

Paul A. Winick, Esq.
Michael S. Elkin, Esq.
Susan B. McInerney, Esq.
Alyson L. Redman, Esq.
Thelen Reid & Priest LLP
875 Third Avenue
New York, NY  10022-6225


_Brien P. Horan_

Brien P. Horan