**BINGHAM McCUTCHEN**

Richard S. Taffet
Direct Phone: (212) 705-7729
Direct Fax:    (212) 752-5378
richard.taffet@bingham.com

January 13, 2005

**Via Federal Express**

Bingham McCutchen LLP
399 Park Avenue
New York, NY
10022-4689

212.705.7000
212.752.5378 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

The Honorable Alfred V. Covello
United States District Court
District of Connecticut
450 Main Street
Hartford, CT  06103

**Re:  MM Global Services et al. v. The Dow Chemical
      Company et al., No. 3:02 CV 1107 (AVC)**

Dear Judge Covello:

We submit this letter pursuant to your request, made during the status conference
call held on December 22, 2004, for a summary of plaintiffs' repeated disclosures
regarding the factual bases for their claim of negligent misrepresentation.  As
described below, such disclosures have been made in plaintiffs' pleadings, their
discovery responses and in the course of the ceaseless motion practice pursued by
defendants.  Indeed, the issue raised by defendants now regarding the purported
lack of particularity in plaintiffs' response to a specific interrogatory, is exactly
the same as one that was unsuccessfully raised by defendants in their motions for
a protective order, most recently on the motion adjudicated by the Court's June
29, 2004 Ruling and Order.

This showing lays bare the misstatements and mischaracterizations by defendants'
counsel, which we pointed out during our December 22 conference call with the
Court, that defendants have been deprived of adequate discovery responses, and
that they lack sufficient information to prepare for and participate in the
settlement conference with Judge Smith on January 18, 2005.

**Background**

The specific interrogatory at issue is Interrogatory No. 17 of The Dow Chemical
Company's Third Set of Interrogatories.  (A copy of plaintiffs' answers and
objections to Dow's Third Set of Interrogatories, dated December 2, 2004, are
attached at Tab A hereto.)  It seeks facts concerning defendants' "interference
with [plaintiffs'] business relationship" with end-user customers to whom
plaintiffs resold defendants' products subject to the price-fixing conspiracy that is

The Honorable Alfred V. Covello
January 13, 2005
Page 2

the subject of this case. The interrogatory asks for the identity of each person, to plaintiffs' knowledge, who took part in the interference; the injury caused to plaintiffs by the interference; and the method used by plaintiffs to calculate their damages resulting from the interference.

Bingham McCutchen LLP
bingham.com

Plaintiffs objected generally to this interrogatory to the extent it requested information previously provided to defendants, or which can be derived by defendants from documents previously produced in this case. Plaintiffs more specifically objected on the ground that discovery is continuing concerning defendants' communications with end-users (indeed defendants have been wholly non-responsive in producing documents in this regard), and as a result plaintiffs have not been able to yet fully ascertain the nature and extent of defendants' unlawful conduct and the effect of such conduct on plaintiffs' business relationships with end-users. Further, plaintiffs expressly reserved the right to modify and/or supplement their answer to the interrogatory.

As stated during the December 22 status conference call, and as explained more fully below, the information sought by Interrogatory No. 17 has been previously requested by defendants (repeatedly), and all information known by plaintiffs at the present time has been produced to defendants in great detail. Further, as with all discovery, to the extent additional information is discovered by plaintiffs as the case proceeds, they will as required by the Federal Rules of Civil Procedure supplement their response. Indeed, as also stated during the December 22 status conference call, plaintiffs fully anticipate that there are additional facts regarding the subject matter of Interrogatory No. 17, and that such information and documents reflecting such information are fully in the possession of defendants, who have failed to produce such discovery, notwithstanding repeated demands for it since 2002. Moreover, as commented above, the position now asserted by defendants should be viewed as transparently pretextual, because it is the same as was previously proffered as the basis for defendants' unsuccessful motions for protective orders, and in each instance the arguments were found wanting.

Thus, as set forth below, defendants' position that they are not in possession of the requested information, and that they therefore may be unable to participate in good faith in the settlement conference before Judge Smith on January 18, 2005, is nonsense.[1] It is a position offered either for the purpose of misleading the

---

[1] The arguments relating to the settlement conference are also a replay of the same approach taken by defendants in connection with the original settlement

(Footnote Continued on Next Page.)

The Honorable Alfred V. Covello
January 13, 2005
Page 3

Court or it is a confirmation of defendants' failure or refusal to review the record
in this case before baselessly accusing plaintiffs of not meeting their discovery
obligations. In either case, defendants' position is without merit, and reveals just
a continued refusal to engage in any good faith conduct in connection with this
lawsuit.[2]

Bingham McCutchen LLP
bingham.com

**Prior Disclosures**

A review of plaintiffs' prior disclosures in this case exposes the baselessness of
defendants' position.

1.    Plaintiffs' First Amended Complaint (attached at Tab C) at ¶¶ 32-
51. Defendants' tortious conduct is alleged with the inclusion of specific dates on
which specific conduct occurred and specific names of individuals who engaged

_____

(Footnote continued from Previous Page.)

conferences before Judge Smith on December 3, 2002, and on February 6 and
March 20, 2003. Then, too, defendants attempted to avoid their obligation to
partake in good faith settlement discussions by pretextually asserting that they
could not reasonably discuss settlement because they lacked specific information.
Just as that position was shown to be fallacious then, it remains equally so now.

[2] The nature of defendants' position is highlighted by their continuing failure to
produce documents and amend interrogatories consistent with their repeated
representations to plaintiffs and the Court. For example, since the December 22
conference call, notwithstanding defendants' ongoing statements of how much
effort is being exerted, only today were there additional boxes of documents
received. Similarly, notwithstanding plaintiffs' request, by letter dated November
22, 2004 (copy attached at Tab B), that defendants produce "merger-related"
documents in advance of the January 18 settlement conference, the only
documents produced (as acknowledged during the December 22 call) were of the
nature of the merger agreement between UCC and Dow and a list of pending
litigations identified during due diligence. No "merger related" documents
concerning competitive issues or how the merger was intended to affect and did
affect defendants' distribution of products and their relationship with plaintiffs
have been produced. Innumerable times it has been discussed, including with the
Court, that this is the type of "merger related" documents that are requested, yet
defendants could provide no assurances even during the December 22 call that
any further documents of this nature could be produced prior to March 1, 2005.

The Honorable Alfred V. Covello
January 13, 2005
Page 4

in such conduct. *See, e.g.* ¶ 41 (conduct of Ravi Muthukrishnan in February 2001 and on July 2, 2001); ¶ 42 (defendants' manipulation of billing practices in November 2001); ¶ 43 (defendants' manipulation of credit terms); ¶ 44 (conduct of Ashish Mitra in misrepresenting facts to plaintiffs' customers to undermine existing relationships); ¶ 47 (misrepresentations of Ravi Muthukrishan in December 2001, and by Ashish Mitra on December 27, 2001).

Bingham McCutchen LLP
bingham.com

The significance of these allegations has also been pointed out in plaintiffs' motion papers. *E.g.,* Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Defendants' Motion to Dismiss Plaintiffs' Antitrust Claims for Lack of Subject Matter Jurisdiction, May 23, 2003, at 9 (referencing Amend. Compl., ¶¶ 40 and 47); Memorandum of Law in Opposition to the Motions of Defendants Union Carbide Asia Pacific, Inc., Union Carbide Customer Services PTE Ltd., and Dow Chemical Pacific (Singapore) PTE Ltd. to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), July 3, 2003, at 13-14 (quoting Amend. Compl. ¶¶ 32, 33, 42 and 44), 15 & n. 34 (referencing Amend. Compl. ¶¶ 32, 33, 42, 43 and 86) and 16 (referencing Amend. Compl. ¶¶ 13, 48 and 49).

2.    Plaintiffs' Answers to Defendants' First Set of Interrogatories Related to Jurisdictional and Venue Issues, dated November 6, 2002 (attached at Tab D), at Answers to Interrogatories 9–11. Specific reference to the conduct of Messrs. Muthukrishnan and Mitra is discussed in Answer 9; to the manipulation of billing and credit terms in Answer 10, including by managers in Danbury, Connecticut identified in Answer 1; and to the manipulations of the billing and credit practices, as well as misrepresentations by defendants in Answer 11, including by John Yimoyines, Business Vice President of Wire and Cable in UCC's Performance Plastics Business Group and those reporting to him, and Messrs. Muthukrishanan and Mitra.

Defendants moved unsuccessfully to compel further answers to, *inter alia*, Interrogatories 9 and 10 in this round of discovery. In response, plaintiffs explained that they had identified and produced the documents that contained information in addition to that which was provided in the interrogatory answers, including as respects the source of defendants' misrepresentations, and that defendants' failure to produce responsive discovery limited plaintiffs' ability to provide more complete responses. *See* Plaintiffs' Memorandum in Opposition in Opposition to Defendants' Motion to Compel Discovery Responses and for a Protective Order, February 3, 2003, at 14-15, and Ex. 9 thereto.

The Honorable Alfred V. Covello
January 13, 2005
Page 5

Bingham McCutchen LLP
bingham.com

     3.    Plaintiffs' Answers and Objections to Defendants' First Set of Interrogatories on Merits Discovery, dated November 10, 2003 (attached at Tab E), at Answers to Interrogatories 7–9. Interrogatory 7 inquires about misrepresentations and omissions for which plaintiffs seek to hold defendants liable. In their answer, in addition to referring to Answers 9 and 10 to defendants First Set of Interrogatories Related to Jurisdictional and Venue Issues, plaintiffs direct defendants to approximately 790 pages of documents specifically identified by Bates number. Interrogatory 8 seeks the identification of each person having knowledge of the injuries and damages suffered by plaintiffs. In response, plaintiffs identify 101 individuals. Interrogatory 9 seeks the identification of the damages suffered by plaintiffs. Included in plaintiffs' response is the explanation of the methodology employed by plaintiffs to calculate their tort damages and the amount, at that time, of at least approximately $22.5 million. Plaintiffs further state in response to this interrogatory that they will produce documents, including financial records, supporting these calculations, which they subsequently did. *See* letter dated February 20, 2003 from Richard S. Taffet to William L. Webber [then defendants' counsel], without Exhibits (attached at Tab F). Plaintiffs have also provided defendants with all relevant financial statements, as acknowledged by defendants' counsel during the December 22, 2004 conference call. *See* transmittal letters from Richard S. Taffet to Andrew S. Marovitz, dated November 22 and 23, 2004 (attached at Tab G).

     4.    Plaintiffs' Supplemental Answers and Objections to Defendants' First Set of Interrogatories on Merits Discovery, dated April 30, 2004 (attached at Tab H), at Supplemental Answers 7 and 8. In Supplemental Answer 7, plaintiffs identify approximately an additional 160 documents produced by defendants that support plaintiffs' tort claim, bringing the total documents identified on this subject matter by Bates number to close to 1,000. In Supplemental Answer 8, plaintiffs provide specific information, pursuant to the parties' agreement, concerning the individuals with knowledge about the injuries and damages suffered by plaintiffs.

     5.    Discovery motions resulting in the June 29, 2004 Ruling and Order. In their briefing in opposition to defendants' most recent motion for a protective order and in support of their motion to compel, plaintiffs provided further explanations and identification of documents. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion for Protective Order and Memorandum in Support of Plaintiffs' Cross-Motion to Compel Production of Documents and Answers to Interrogatories, May 7, 2004, at 14-15 (discussion of April 26, 2001 memorandum concerning direct shipment by Dow to India as good way to proceed unaffected by Bhopal); 16 (explanation that defendants' own documents, including as submitted with memorandum, disclosed identity of plaintiffs'

The Honorable Alfred V. Covello
January 13, 2005
Page 6

Bingham McCutchen LLP
bingham.com

customers, and referencing Amend. Compl. ¶¶ 44 and 48); 19 & nn. 26 and 27
(discussion and identification of document concerning UCC and Dow plans prior
to consummation of merger to drop plaintiffs). *See also* Plaintiffs' Reply
Memorandum in Further Support of their Motion to Compel Production of
Documents and Answers to Interrogatories, June 10, 2004, at 7 & n. 3 (discussion
of evidence of defendants' contacts by defendants with plaintiffs' customers,
including specifically identified documents, and need for full discovery from
defendants on this issue).

6.      Letter from Richard S. Taffet to Andrew S. Marovitz, dated July 6,
2004 (attached at Tab I). This letter was provided to defendants pursuant to the
Court's June 29, 2004 Ruling and Order at 10-11, and identified for defendants a
list of plaintiffs' end-user customers (notwithstanding that defendants possessed
this information). Even in light of plaintiffs' immediate compliance with the
Court's June 29, 2004 Ruling and Order, defendants still have not produced the
documents and information relating to defendants' contacts with plaintiffs'
customers, the "merger-related" documents concerning defendants' plans to
eliminate plaintiffs, and other documents concerning defendants' tortious conduct
directed to plaintiffs' relationships with such customers, all as ordered by the June
29 Ruling and Order.

**Conclusion**

There can be no question that plaintiffs have met if not exceeded their obligations
under the discovery rules, including in connection with Interrogatory No. 17 of
Dow's Third Set of Interrogatories. As the case proceeds, defendants will have
the opportunity to explore the factual bases of plaintiffs' claim further through
depositions.[3] Defendants, however, have no ground to complain now regarding
the thoroughness and completeness of plaintiffs disclosures.

Moreover, defendants have been provided with more than sufficient information
to allow them to understand the bases for plaintiffs' tort claim and to prepare for
the January 18, 2005 settlement conference. Defendants' protestations to the
contrary are hollow and just a replay of prior arguments that were revealed to be

---

[3] Indeed, defendants themselves have indicated their intent to proceed with
depositions on these subject matters. *See* Notices of Deposition, dated August 10,
2004, to each plaintiff, attached hereto at Tab J.

The Honorable Alfred V. Covello
January 13, 2005
Page 7

nothing more than a ploy to avoid good faith participation in the Court ordered settlement process.

Respectfully submitted,

Richard S. Taffet

Bingham McCutchen LLP
bingham.com

cc:    Andrew S. Marovitz, Esq. (by Federal Express)
       Craig A. Raabe, Esq. (by Federal Express)
       Nathan P. Eimer, Esq. (by Federal Express)
       Robert M. Langer, Esq. (by Federal Express)
       Christopher J. Kelly, Esq. (by Federal Express)