UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : <br> : <br> : <br> : |
| Plaintiffs, | : |
| | :     Civil No. 3:02 CV 1107 (AVC) |
| v. | : <br> : |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC., | : <br> : <br> : <br> : |
| Defendants. | :     March 21, 2005 |

### THE DOW CHEMICAL COMPANY'S REPLY
### IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 05103-3497
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
190 South La Salle Street
Chicago, Illinois 60603
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1157
(202) 263-3000

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

I.    PLAINTIFFS STILL HAVE NOT COMPLIED WITH THIS COURT'S ORDER REQUIRING THAT THEY SET FORTH THEIR KNOWLEDGE BEYOND THE ALLEGATIONS CONTAINED IN THEIR COMPLAINT (INT. NO. 17). ............ 2

II.    REPORTS OF SALES REVENUES TO GOVERNMENT AGENCIES ......................... 7

III.    SEVERAL MEET-AND-CONFER ISSUES REMAIN UNANSWERED. ...................... 7

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page

**CASES**

*Arbrahams v. Young & Rubicam*, 979 F. Supp. 122 (D. Conn. 1997) .......................................... 5

*Cagan v. Intervest Midwest Real Estate Corp.*, 1990 WL 179710 (N.D. Ill. Nov. 8, 1990) .......... 4

*Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162 (S.D.N.Y. 2004) ............................. 6

*Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) ............................................................ 5

*In re Savitt/Adler Litig*, 176 F.R.D. 44 (N.D.N.Y. 1997) ............................................................. 6

*Moccio v. Cablevision Systems Corp.*, 208 F. Supp. 2d 361 (E.D.N.Y. 2002) ............................ 4

*Stonybrook Tenants Ass'n, Inc. v. Alpert*, 29 F.R.D. 165 (D. Conn. 1961) .................................. 5

*Torah Soft Ltd. v. Drosnin*, 2001 WL 1425381 (S.D.N.Y. Nov. 14, 2001) .................................. 5

*United States v. 216 Individually Cartoned Bottles*, 36 F.R.D. 695 (E.D.N.Y. 1965) .................. 5

*United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958) ..................................................... 1

*Weiss v. Chrysler Motors Corp.*, 515 F.2d 449 (2d Cir. 1975) ..................................................... 6

**RULES**

Fed. R. Civ. P. 26(b), 1983 Advisory Committee Notes .............................................................. 5

## INTRODUCTION

"Modern instruments of discovery serve a useful purpose [and] together with pretrial procedures make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). The Court's February 7 Scheduling Order serves this interest by requiring Plaintiffs to "set[] forth [their] knowledge, *beyond the allegations contained in the Amended Complaint*, with respect to the nature of defendants' alleged interference with plaintiffs' business relationships with End-Users." Scheduling Order ¶ 3 (Feb. 7, 2005) (emphasis added) (Ex. 24).[1] So too do the parties' meet-and-confer sessions, as does correspondence designed to confirm lingering questions concerning discovery. Because Plaintiffs had neither complied with the Scheduling Order nor responded to Defendants' straightforward attempts to confirm remaining discovery questions, Defendants filed the pending Motion To Compel.

In response, instead of stating their knowledge about the negligent misrepresentation claim "beyond the allegations contained in the Amended Complaint," Plaintiffs charge that Dow's motion is now "moot" because Plaintiffs provided evidence about "defendants' tortious conduct" (Pls. Opp. at 1, 3) in a January 13 letter submitted to the Court. Ex. 9. But that letter largely repeats the allegations contained in the Amended Complaint (the "Complaint") itself, and does not comply with the Court's Order to provide information "beyond" those allegations. And Plaintiffs' Opposition never answers critical questions about three important interrogatories. Indeed, rather than provide the facts necessary to comply with this Court's Order (or with Rule 26), Plaintiffs attempt to divert the Court's attention with a rhetorical attack on Defendants,

---

[1] Exhibits 1-23 were attached to The Dow Chemical Company's Memorandum of Law in Support of Motion To Compel Discovery Responses ("Dow Mem."); Exhibit 24 is attached hereto.

seemingly blaming them for producing 1.3 million pages of documents in response to Plaintiffs' vast global discovery requests. Pls. Opp. at 1.[2] But Plaintiffs' shift in emphasis does not explain their failure to provide the most basic factual information underlying their claims, as required by this Court's February 7 Order. Defendants' motion to compel should be granted.

I. **PLAINTIFFS STILL HAVE NOT COMPLIED WITH THIS COURT'S ORDER REQUIRING THAT THEY SET FORTH THEIR KNOWLEDGE *BEYOND* THE ALLEGATIONS CONTAINED IN THEIR COMPLAINT (INT. NO. 17).**

Plaintiffs' January 13 letter simply repeats Plaintiffs' charge that Defendants "tortiously interfered with Plaintiffs' business expectancies by refusing to fill orders and authorize new orders for reasons that were not justified," "purposely and intentionally implemented a series of substantial but unjustified [credit] modifications that they knew would and did cause tremendous financial difficulties for Plaintiffs," "contacted Plaintiffs' customers directly and informed them that Plaintiffs were experiencing financial difficulties," "altered well-established billing practices that was intended and which had the effect of adversely affecting Plaintiffs' cash flow" and "imposed a credit hold on shipments to Plaintiffs, and deliberately refused to release pending orders." *Compare* Complaint ¶¶ 33, 42-44 *with* January 13 Letter (Ex. 9) (containing same allegations without the additional, required specifics). The Letter provides no new facts about the interference with respect to the specific End-Users claimed by Plaintiffs or any of the most basic information underlying their claims. Indeed, the chart on page 4 of the Opening

---

[2]   Plaintiffs complain that Defendants produced the documents in a manner that made it difficult for Plaintiffs to handle (Pls. Opp. at 1), but Defendants produced their documents in electronic, .tif format so that Plaintiffs could load them into an electronic database or otherwise work with them, while maintaining the integrity of the massive production Plaintiffs demanded.

2

Memorandum details the substantial degree of overlap between the Complaint and the Letter, and demonstrates Plaintiffs' non-compliance with this Court's Order.[3]

Plaintiffs' Opposition does not address any part of the chart on page 4, nor does it refer to a single one of the 161 End-Users that Plaintiffs allege are the subject of their claim. Instead, Plaintiffs once again rely upon the most generic terms to describe Defendants' alleged conduct, without offering particulars about interference with End-Users and the damages sustained as a result of the alleged conduct. For example, Plaintiffs never identify the specific nature of the misconduct or purported tortious encounter with respect to Bergo Limited (a particular End-User, just to take an example). Likewise, Plaintiffs have not provided particulars regarding any alleged interference with Everest Organics (or with any of the other 161 End-Users that Plaintiffs allege are subject to their negligent misrepresentation claim);[4] indeed, they have provided no information whatsoever about who the relevant witnesses are at any of these 161 End-Users, so that Defendants could target their depositions and test the veracity of Plaintiffs' allegations.

In short, Plaintiffs' discovery responses wholly fail to provide any information regarding the "who, what, when, where and why" of any case: who was involved in the conduct, what conduct took place, when and where the alleged conduct occurred, and how the participants contributed to the alleged interference with respect to each of the End-Users that Plaintiffs identified months ago.

---

[3] For example, *compare* Complaint ¶ 42 ("Defendants' purposely and intentionally implemented a series of substantial but unjustified financial modifications that they knew would and did cause tremendous financial difficulties") *with* January 13 Letter at 4 (Ex. 9) ("Defendants purposely and intentionally implemented a series of substantial but unjustified credit modifications that they knew would and did cause tremendous financial difficulties for Plaintiffs") (citing Pls. earlier discovery answers).

[4] Defendants' Opening Memorandum (at 5-6) pointed out that Plaintiffs' January 13 Letter provides no information at all about approximately 94 of the End-Users, and only refers in passing to approximately 67. Plaintiffs' Opposition never responds to this point, either.

Dow identified these deficiencies during the December 22, 2004 status conference, and the Court entered an Order requiring Plaintiffs to go beyond the allegations of the Complaint in their response to Interrogatory No. 17. Ex. 9. Instead of showing that their January 13 Letter complies with the Court's directives, Plaintiffs assert (without citation) that Dow previously lost this argument in prior discovery motions. Pls. Opp. at 3. Plaintiffs' statement is both unsupported and incorrect, for before this Motion and the status conference Dow never raised Plaintiffs' refusal to respond to Interrogatory No. 17's request for the facts underlying Plaintiffs' negligent misrepresentation claim. In fact, as this Court is well aware, most of the recent discovery proceedings have centered on Plaintiffs' requests for worldwide discovery and Defendants' herculean efforts to respond to that discovery.

Still, Plaintiffs argue that they should not have to disclose these legally required facts that support their claim because, later in discovery, Defendants could come across the same information during the deposition process, and that this procedure would be more convenient for Plaintiffs. Pls. Opp. at 4-5. There are two problems with this argument.

*First*, regardless of the information that Dow does or does not possess, one fact is certain: Dow does not possess information regarding what facts *Plaintiffs* contend support their claim. Dow should not have to read Plaintiffs' minds to discover those facts. *See Moccio v. Cablevision Systems Corp.*, 208 F. Supp. 2d 361, 380 (E.D.N.Y. 2002) (dismissing plaintiffs' antitrust claim where plaintiff failed to define the relevant market because the Court would not require defendants to "read Plaintiffs' minds to divine the same"); *Cagan v. Intervest Midwest Real Estate Corp.*, 1990 WL 179710, at *1 (N.D. Ill. Nov. 8, 1990) (striking vague answers to a complaint on the ground that "no reader is in a position to read [defendant's] mind to determine what it views as 'inconsistent with the terms [of the instrument at issue]'"); Fed. R. Civ. P. 26(b),

4

1983 Advisory Committee Notes ("the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case").

By Plaintiffs' logic, any time a party files a claim, the other side is left to wade through its own documents in an effort to guess the underlying facts. That approach does not comport with the law. *See Arbrahams v. Young & Rubicam*, 979 F. Supp. 122, 129 (D. Conn. 1997) (the "purpose of discovery is to find out additional facts about a well-pleaded claim") (*quoting Stoner v. Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y. 1991)); *United States v. 216 Individually Cartoned Bottles*, 36 F.R.D. 695, 701 (E.D.N.Y. 1965) (ordering defendant to respond to an interrogatory requesting a specification of a "basis" for a defense to a claim; plaintiff "is entitled to know the factual basis of th[e] defense").

*Second*, Plaintiffs' efficiency argument is insupportable. No doubt it is less costly for Plaintiffs to refuse to provide a written response, and then wait and see if Dow figures out who within Plaintiffs' organization knows the relevant information and then deposes that person to elicit it. But that is no legitimate justification for a refusal to respond to properly-served discovery. *See, e.g., Coulthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000) ("[t]he government may compel plaintiff, by interrogatories or otherwise, to declare what is the negligent conduct he alleges occurred and to reveal whatever evidence he relies on to show such negligence."); *Stonybrook Tenants Ass'n, Inc. v. Alpert*, 29 F.R.D. 165, 167 (D. Conn. 1961) ("the methods of discovery are complementary, rather than alternative or exclusive. A party may take both depositions and interrogatories, as long as he is not attempting to circumvent a ruling of the court, or to harass or oppress the adverse party").

Plaintiffs' own cases undermine their wait-and-see approach. For instance, *Torah Soft Ltd. v. Drosnin*, 2001 WL 1425381, at *3 (S.D.N.Y. Nov. 14, 2001) (quoted at Pls. Opp. at 5)

5

recognizes that a court may limit discovery, but then refuses to do so and instead orders production of the documents at issue. The court in *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167-68 (S.D.N.Y. 2004) (quoted at Pls. Opp. at 5), refused to compel production of documents that were duplicative of documents that *already had been produced* and that had marginal value in any event to plaintiffs' claims. The discovery sought was, in the words of Rule 26(b)(2), "unreasonably cumulative or duplicative."

*Convolve* actually supports Dow's request for the information through an interrogatory response. If Plaintiffs investigated their claim prior to filing (and prior to identifying the 161 End-Users that Plaintiffs claim were mistreated), it should not be burdensome for them to provide the facts. Dow, on the other hand, may or may not be able to guess which individuals have relevant information underlying Plaintiffs' claims. A proper response to Interrogatory No. 17 would provide a great benefit to the case as the response will narrow the issues and focus future discovery, including any future depositions. *See In re Savitt/Adler Litig*, 176 F.R.D. 44, 50 (N.D.N.Y. 1997) (plaintiff ordered to respond to interrogatory that was "completely focused on the allegations of plaintiffs' complaints, information to which defendants are entitled to prepare their defenses."). While Plaintiffs surely prefer that Defendants bear the entire burden of discovery in this case, that preference is unsupported in the law, which requires that Plaintiffs provide Dow with a fair response to Interrogatory No. 17 setting forth the responsive information. *See Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 457 (2d Cir. 1975) ("[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

Contrary to Plaintiffs' assertion, Dow has never asked Plaintiffs to use some complicated "form" or "rubric" (Pls. Opp. at 3-4) to provide the requested information. Instead, Dow simply asked for a clear statement of who took part in the interference with each End-User, the resulting

6

injury and damages, and the means by which Plaintiffs reached this conclusion. Interrogatory No. 17 is a straightforward request that asks for a straightforward answer. The ferocity with which Plaintiffs have repeatedly refused to provide this answer leads to no conclusion other than that there is no factual basis for their negligent misrepresentation claim. If Plaintiffs choose not to provide this information, those claims should be stricken.

## II.     REPORTS OF SALES REVENUES TO GOVERNMENT AGENCIES.

Plaintiffs objected to Document Request No. 6, refusing to produce "documents that reflect or report aggregate amounts paid by End-Users for the Products." Downey Letter at 2-3 (Ex. 11). Dow attempted to resolve this issue in its December 9 letter (Ex. 5) and in follow-up correspondence, but received no substantive response until Plaintiffs reversed course by providing responsive answers in their recently filed Supplemental Discovery Responses (Pls. Opp. Ex. B) and then confirmation in their Opposition itself (at 5-6). No further action is required on this issue. The filing of the Motion itself – along with this Court's February 7 Order – seems to have prompted Plaintiffs' response here.

## III.    SEVERAL MEET-AND-CONFER ISSUES REMAIN UNANSWERED.

Dow sent Plaintiffs a series of letters in late December 2004 to confirm what should have been easily verifiable points about Plaintiffs' production. *See* Letters from Dow's Counsel (Exs. 5, 6, 12, 13). Instead of responding in a straightforward fashion, Plaintiffs' counsel advised that

> unless otherwise stated below, we do not agree with your characterization of our positions or any of our statements

(Ex. 11 at 1), and then neglected to discuss key points of those letters, effectively denying them. It was only *after* Dow filed its Motion To Compel in February – two months after the parties conducted their meet-and-confer sessions – that Plaintiffs conceded nearly all of the points raised by the Motion. Pls. Opp. at 6. Indeed, Plaintiffs do not dispute that Dow's counsel wrote

7

Plaintiffs' counsel three times (Ex. 5 at 3, Ex. 6 at 2, Ex. 13 at 1) to confirm that Plaintiffs' response to Interrogatory No. 18 should simply have admitted that Plaintiffs did not resell any Products in the United States, but Plaintiffs never wrote back to confirm this fact – that is, until Plaintiffs finally did so in their recently filed Opposition Pls. Opp. at 7-8.[5]

Plaintiffs' eleventh-hour declaration about their document production, however, does not end the issue, for Plaintiffs still have not confirmed the key point: whether, *apart from documents*, they have any additional information responsive to the interrogatories that reflect purchases, solicitations or availability of Competitive Products.[6] For example, Plaintiffs still have not identified, without regard to documents,

- any *specific* efforts that they made to purchase any Competitive Products,
- any *specific* solicitations that they received from manufacturers to purchase any Competitive Products, or
- any *specific* Competitive Products that they knew were available to them,

---

[5] Plaintiffs' Opposition (at 6-8) similarly confirmed several of the most basic points about their production – points that were first raised by Dow in the December meet-and-confer sessions but that Plaintiffs refused to confront until Dow filed this Motion. These points were identified in Dow's Opening Memorandum (at 23). *See* Dow's Dec. 9 Letter at 1-5 (Ex. 5), Dow's Dec. 27 Letter at 1-2 (Ex. 13) (identifying each point). Now that Plaintiffs have responded following the filing of this Motion, no additional action is required on them.

[6] Plaintiffs' charge that Dow "will not disclose" its definition of "Competitive Products" is odd, given that Dow expressly defined the term in the "Definitions and Instructions" section of its requests:

> "Competitive Product" means, for any Product, a product that was, at any time between January 1, 1993 and the present, offered, marketed or sold in competition with, or as an alternative to, that Product.

Ex. 3 at 1. Dow even added in a follow-up letter that it was comfortable with Plaintiffs' definition of a "Competitive Product" as a "product that serves the same basic purpose or function as a Product that they sold to End-Users." December 20 Letter from Dow's Counsel at 1 (Ex. 6). None of this is mentioned in Plaintiffs' Opposition.

all of which were required by the discovery requests that Plaintiffs seek to avoid. *See* Ex. 3 at 2-3 (Interrogatory Nos. 14-16). This outstanding discovery remains highly probative of Plaintiffs' allegations of injury on each of their claims. The fact that Plaintiffs have steadfastly refused to provide this information speaks volumes about the legitimacy of their antitrust claim here.

## CONCLUSION

Despite their rhetoric, Plaintiffs still have not complied with this Court's February 7 Order regarding Interrogatory No. 17 or with the straightforward requests regarding Competitive Products in Interrogatory Nos. 14-16 (Ex. 3). Defendants spent months chasing documents worldwide to respond to Plaintiffs' far-reaching discovery requests, while Plaintiffs refused to provide the most basic information about their claims. Discovery is a two-way street; Plaintiffs should be compelled to provide complete and fair responses to Dow's discovery requests.

For all of the foregoing reasons, Dow's Motion to Compel Discovery Responses should be granted. Plaintiffs should be compelled to fully and completely answer Interrogatory Nos. 14-17 or have their claims stricken.

Respectfully submitted,

| | |
|---|---|
| Craig A. Raabe (ct 04116) | Andrew S. Marovitz (ct 25409) |
| Marion B. Manzo (ct 22068) | Dana S. Douglas (ct 25412) |
| ROBINSON & COLE LLP | MAYER, BROWN, ROWE & MAW LLP |
| 280 Trumbull Street | 190 S. La Salle Street |
| Hartford, CT 06103-3597 | Chicago, IL 60603-3441 |
| (860) 275-8304 | (312) 782-0600 |
| | |
| | Christopher J. Kelly (ct 25410) |
| | MAYER, BROWN, ROWE & MAW LLP |
| | 1909 K Street |
| | Washington, DC 20006-1157 |
| | (202) 263-3000 |

*Attorneys for Defendant The Dow Chemical Company*

9

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was sent via fax and mail this 21st day of March, 2005, by first-class mail, postage prepaid, to the following counsel:

Alicia L. Downey, Esq.
Bingham McCutchen, LLP
150 Federal Street
Boston, MA  02110-1726

Richard S. Taffet, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY  10022-4689

Suzanne Wachsstock, Esq.
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325

Robert M. Langer, Esq.
Steven Bruce Malech, Esq.
Wiggin & Dana LLP
One CityPlace
185 Asylum Street
Hartford, CT  06103

Christopher J. Kelly, Esq.
Mayer Brown Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

Nathan P. Eimer, Esq.
Andrew G. Klevorn, Esq.
Ryan S. Hedges, Esq.
Eimer Stahl Klevorn & Solberg, LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL  60604

Michael S. Elkin, Esq.
Susan B. McInerney, Esq.
Alyson L. Redman, Esq.
Thelen Reid & Priest LLP
875 Third Avenue
New York, NY  10022-6225

_____
Marion B. Manzo