# Exhibit 24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

2005 FEB -8  P 2: 23

DISTRICT COURT
[illegible] CT.

MM GLOBAL SERVICES, INC., MM GLOBAL
SERVICES PTE. LTD., and MEGAVISA
SOLUTIONS (S) PTE. LTD.,

            Plaintiffs,

v.

THE DOW CHEMICAL COMPANY, UNION
CARBIDE CORPORATION, and UNION CARBIDE
ASIA PACIFIC, INC.,

            Defendants.

Civil No. 3:02 CV 1107 (AVC)

### SCHEDULING ORDER REGARDING DISCOVERY

Pursuant to the direction of the Court during the telephone status conferences held herein on December 22, 2004 and on January 19, 2005, and good cause appearing therefor, it is hereby ORDERED:

1. By March 1, 2005, Defendants shall complete their production of documents from the locations specified in their October 15, 2004 letter to plaintiffs and in their December 14, 2004 letter to this Court (the "Letters")[1] that are responsive to the subject matters identified in the Letters. Upon production, defendants shall identify the location where the documents were found and undertake reasonable efforts to identify the general subjects of the documents produced, and shall provide that same information for documents that were produced by

---

[1] Copies of these two letters are attached as Exhibits A and B, respectively, and are incorporated herein by reference.

defendants since June 29, 2004. Also by March 1, Defendants shall supplement their interrogatory answers as described in the Letters.

2.    By March 1, 2005, plaintiffs shall complete the production of documents in response to defendants' previously served discovery requests and the supplementation of previously served interrogatories. Upon production, plaintiffs shall identify the location where the documents were found and undertake reasonable efforts to identify the general subject matter of the documents produced, and shall provide that same information for documents that were produced by plaintiffs since June 29, 2004.

3.    On or before the entry of this Order, plaintiffs shall provide the Court and defendants' counsel with a letter responding to Interrogatory No. 17 of The Dow Chemical Company's Third Set of Interrogatories, dated November 2, 2004, and which specifically sets forth plaintiffs' knowledge, beyond the allegations contained in the Amended Complaint, with respect to the nature of defendants' alleged interference with plaintiffs' business relationships with End-Users.

It is so ordered this 17th day of February, 2005, at Hartford, Connecticut.

Alfred V. Covello
United States District Judge



October 15, 2004

**BY FACSIMILE**

Richard S. Taffet, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Mayer, Brown, Rowe & Maw LLP
190 South La Salle Street
Chicago, Illinois 60603-3441

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Andrew S. Marovitz**
Direct Tel (312) 701-7116
Direct Fax (312) 706-8651
amarovitz@mayerbrownrowe.com

Re:   *MM Global Services, et al. v. The Dow Chemical Company, et al.*, Civil No. 3:02 CV 1107 (AVC)

Dear Richard:

Consistent with our commitments during the October 6 status and in our recent letters, we write to outline where we have been and to provide a protocol of where we are going with respect to the most relevant documents in this litigation that have not already been produced to the Plaintiffs.

Discovery propounded to Defendants in this matter can be separated into three sequential and relatively discrete but overlapping phases: party-related, personal jurisdiction-related, and End User and Product-related. The phases share commonalities of effort and burden in the preparation of responses,[1] but they also have differences that warrant recognition in assessing the efforts and burden involved in the investigation and preparation of Defendants' responses and production.

1. **Party-Related Discovery**

Party-related discovery previously focused on the production by Defendants of documents related to the Plaintiffs. Such material has been located and produced, not only from locations in the United States, but also from Europe, India and Singapore. This phase produced tens of thousands of pages of documents (including e-mails, business documents and letters) and numerous pages of accounting reports from multiple accounting environments related to transactions between the Plaintiffs and the Defendants. Defendants' efforts have included searching for records in record storage facilities, office locations and on electronic storage and

---

[1] Discovery in this global matter has been complicated by the fact that both Union Carbide Corporation ("UCC") and The Dow Chemical Company ("TDCC") made company-wide enterprise accounting system changeovers in the late 1990's, which was then followed by the merger transaction in 2001 that made UCC a wholly-owned subsidiary of TDCC. The merger transaction was then followed by major restructuring and reorganization of functional departments and global businesses. These events require Defendants to search for and produce responsive information resident in multiple unrelated system environments and in new business organizations.

Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles Manchester New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
October 15, 2004
Page 2

email systems. Specifically, record storage facilities in Singapore and the United States were searched for responsive documents from both UCC and TDCC. These efforts yielded approximately 40,000 documents. Documents and emails of key individuals were also collected and produced from offices in India, Singapore and elsewhere. Historic and current accounting systems were searched for information related to transactions between the Defendants and Plaintiffs. The UCC Archive Master Index was searched for the period 1993 to 1998; the On Demand archive of UCC's SAP R3 system was searched for the period 1998 to 2002 and the current SAP R2 system searched for 2002 to current. These efforts with respect to the accounting systems yielded hundreds of pages of responsive accounting reports.

2.  **Personal Jurisdiction-Related Discovery**

The recent personal jurisdiction discovery has confirmed the complexity of searching in multiple accounting systems within recently integrated and reorganized global businesses. As a result, Defendants will continue to review and supplement their personal jurisdiction-related responses as more information and documents are discovered. The following information sets forth the steps being taken to ensure the accuracy and completeness of the Defendants' responses related to personal jurisdiction:

<u>Accounting Systems Searches.</u> The various accounting systems' search criteria and methods are being reviewed to establish the accuracy and completeness of the responses filed to date by Defendants.

<u>Singapore Records Storage Searches.</u> We have initiated a search for travel-related documents sufficient to ascertain the extent to which Union Carbide Customer Services Pte. Ltd. ("UCCS") may have procured travel-related services in the State of Connecticut. Defendants' foreign records management systems do not possess electronic text search and filtering mechanisms. As a consequence, different tactics are being employed to confirm the accuracy and completeness of the relevant materials to be drawn from these locations. To the extent that they are available and helpful, records storage indices will be reviewed for possible identification of responsive documents. Contacts have been renewed with staff in the Pacific area and they will be consulted regarding any previously unreviewed, properly responsive travel-related documents.

<u>Human Resources Files.</u> We will be searching relevant human resources files to supplement the information already provided in the Defendants' personal jurisdiction interrogatory responses identifying persons with knowledge of transactions between TDCC or UCC on the one hand and UCCS or Dow Chemical Pacific (Singapore) Pte. Ltd. ("DCPS") on the other. In addition, we are seeking to identify additional persons, if any, not already identified in the interrogatory responses who may also have knowledge of these transactions.

In applying this approach Defendants intend, to the extent necessary, to supplement their personal jurisdiction responses prepared to date.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
October 15, 2004
Page 3

### 3. End User and Product-Related Discovery

This phase of discovery is the most recently undertaken, and is the result of the lists of Products and End Users provided by Plaintiffs to Defendants in July of this year. Investigation to identify and review documents related to the Products and End Users is ongoing; it commenced upon receipt of the lists from Plaintiffs. Global searches for documents and information relating to the over 150 Products are complicated by post-merger changes in product naming conventions which affected some of the Products. Finally, Product-focused searching adds additional required effort and burden because product searches are conducted independent of and in different system data sets than those used for entity searches.

In carrying out this phase of the discovery, our continued search for responsive documents will concentrate on the following types of files:

1. Strategic planning files regarding the Products.

2. E-mails from the persons identified in Plaintiffs' and Defendants' interrogatory answers.

3. Files concerning TDCC's acquisition of UCC.

4. Files of Board presentations and minutes.

5. Files devoted to Plaintiffs.

6. Files devoted to end-users in India and the United States.

7. Files devoted to documents evaluating competition regarding the Products.

8. Files devoted to presentations, budgets, forecasts and documents discussing competition for, market share of and pricing of the Products.

9. Marketing files for the Products.

10. Product-specific files.

11. Files devoted to trade associations.

12. Accounting systems data reflecting sales of the Products.

The following describes how we plan to carry out the continued search for responsive documents and information during this phase, concentrating on the enumerated files within the numerous locations where such files may exist:

<u>Accounting Systems Searches.</u> We will search the various accounting systems for information relating to the sales of Products.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
October 15, 2004
Page 4

<u>United States Records Center Searches.</u>  TDCC and UCC documents stored in hard copy, microfilm and microfiche are being searched utilizing the records management system's limited text search capabilities and other record management system features.  Specifically, searches utilizing the filtering capabilities of the records management system architecture are being conducted to isolate and reduce the total universe of documents to a manageable subset of potentially responsive documents that then can be systematically searched for the documents requested by Plaintiffs.  In this fashion, Defendants hope to avoid a repeat of the situation in which they reviewed 300+ of the over 1000 boxes of documents to provide responsive documents in an "unprioritized" search.

More specifically, TDCC's records management system records manual will be used to identify and locate specific document types likely to reside in files in the categories enumerated above, as well as date and record owner, to filter the total universe of documents to a manageable population of files likely to contain potentially responsive documents.  Once to this point, the potentially responsive documents found within these files will be reviewed to identify actually responsive documents.  Any non-privileged responsive documents not already produced to Plaintiffs would then be produced.

<u>India & Singapore Records Storage Searches.</u>  As I noted above with respect to personal jurisdiction-related discovery, Defendants' foreign subsidiaries' records management systems do not possess electronic text search and filtering mechanisms.  As a consequence, different tactics are being employed to confirm the accuracy and completeness of the relevant materials to be drawn from these locations during this phase.  To the extent that they are available and helpful, records storage indices will be reviewed for possible identification of files in the categories enumerated above.  Contacts have been renewed with staff in the Pacific area and they will be consulted regarding the continued search.

<u>Email Systems.</u>  Searches of Defendants' email systems are being prepared to ensure accuracy and completeness of Defendants' discovery responses.  Email and .pst files (to the extent available) of Defendants' employees identified in Defendants' interrogatory responses will be searched.  Similarly, emails and .pst files of additional employees of Defendants identified as having potentially responsive documents will be collected and reviewed for responsiveness using electronic document search and filtering techniques.  Any non-privileged responsive documents not already produced to Plaintiffs would be produced.

<u>Electronic Documents.</u>  File servers of Defendants and Dow subsidiaries will be screened to identify those servers that support activity related to the sale and distribution of Products to, End Users and to other customers in Singapore and the United States.  Once those servers are located, electronic document search and filtering techniques will be used to identify potentially responsive documents likely to reside in files in the categories enumerated above.  Such identified documents will be reviewed to identify actually responsive documents.  Non-privileged responsive documents that have not been produced already would be produced.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
October 15, 2004
Page 5

<u>Employee Files.</u> Employees who are still with Dow or one of its subsidiaries and are identified as holding potentially relevant positions or being the custodian of document files in any of the enumerated categories will be interviewed, and the identified document files will be collected. Non-privileged responsive documents found in those files and not already produced will be produced.

We hope that this plan will provide a basis for continued progress with meaningful discovery, while avoiding unnecessary time and expense. Even when focused as described above, this has been, and will continue to be, a costly and ambitious undertaking. We remain committed, however, to accommodating the parties' reasonable discovery needs and moving ahead with the case. We look forward to meeting and conferring with you Monday about this proposed plan, and getting your thoughts on it.

Very truly yours,

*Andrew S. Marovitz/CJK*
Andrew S. Marovitz

cc: Alicia Downey, Esq.        Craig Raabe, Esq.
    Robert Langer, Esq.        Christopher Kelly, Esq.

DCDB01 20674049.1 15-Oct-04 19:20



December 14, 2004

**BY COURIER**

The Honorable Alfred V. Covello
United States District Court
450 Main Street
Hartford, CT  06103

Re:   *MM Global Services et al. v. The Dow Chemical Company et al.*, No. 3:02CV1107 (AVC)

Mayer, Brown, Rowe & Maw LLP
190 South La Salle Street
Chicago, Illinois 60603-3441

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Andrew S. Marovitz**
Direct Tel (312) 701-7116
Direct Fax (312) 706-8651
amarovitz@mayerbrownrowe.com

Dear Judge Covello:

In connection with our telephonic status conference scheduled for later today (1:15 pm EST), we thought that it would be useful to provide some details in advance on several items that might be covered. Of course, we would be happy to address any issues that the Court or Plaintiffs may wish to add.

1.   Status of Defendants' continuing document production efforts on the merits. This massive effort reflects literally thousands of hours of work by attorneys, paralegals, and others at The Dow Chemical Company ("TDCC"), its Singapore-based affiliates, Mayer, Brown, Rowe and Maw, Eimer Stahl Klevorn & Solberg, and outside consultants. Since October 15 – the date that we sent our discovery-plan letter to Plaintiffs' counsel – Mayer Brown has devoted over 3000 hours to document search and review, and Defendants' inside lawyers and paralegals have almost certainly devoted an additional 1500 hours to the work. Details of our efforts follow:

    A.   Records Center Searches. Since our status conference of November 19, 2004, Defendants completed the review of documents located at TDCC and Union Carbide records centers and have transmitted to Plaintiffs another 11 boxes of documents collected from those locations. The search was carried out consistent with the guidelines set forth in our October 15 letter. A limited number of records center documents are undergoing final review and copying and will be produced before the settlement conference.

    B.   Product managers' documents. Also consistent with the October 15 discovery plan, we have searched the files of the relevant product managers located at TDCC's headquarters in Midland, Michigan for responsive hard-copy documents. All but two of these persons are current or former global business directors, commercial directors and marketing managers; the other two were named in Plaintiffs' interrogatory responses. The documents currently are being reviewed and prepared for production, which we expect to complete by the end of the month. We also are in the process of obtaining documents from comparable personnel

Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  Manchester  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

The Honorable Alfred V. Covello
December 14, 2004
Page 2

at other locations in the United States. We plan to obtain, review and produce documents from these individuals before the settlement conference.

      C.    <u>Merger-related documents</u>. Defendants have produced all hard-copy merger files from the Midland records center. The review of additional merger files from other sources is well underway and should be completed by the end of December. Any other responsive merger-related documents found in our review of other types of files – for example, the files from the product managers – will be produced along with the other responsive documents found in those files.

      D.    <u>Electronic document review</u>. Defendants already have retrieved over 50 gigabytes of data from the network drives, e-mail and .pst files of 39 persons identified in interrogatory responses that may contain potentially relevant e-mails and other electronic documents. To tackle this overwhelming volume of documents, Defendants have engaged a sophisticated electronic-discovery consultant to find relevant documents using the October 15 discovery plan letter as a guide. This work is underway, and, with the help of their consultant, Defendants are developing searches that will reasonably enable Defendants to complete the review and production of electronic documents by February. The consultant's service is expected to cost Defendants very substantial sums, sums that do not include the attorney review time necessary to complete the production.

2.    <u>Status of personal jurisdiction issues</u>.

      A.    <u>Status of Defendants' document production efforts and updated interrogatory answers</u>.

          1.    We currently are reviewing travel and entertainment records from the Singapore records center. We plan to produce responsive travel documents by year-end, although production of the hard-copy files from Midland-based product managers (*see* above) will take precedence.

          2.    We also are reviewing human resources information relating to the persons listed in Defendants' responses to Plaintiffs' personal-jurisdiction interrogatories. We expect to update our interrogatory responses accordingly by the settlement conference.

      B.    <u>Reconsideration of the Court's personal jurisdiction ruling</u>. Once Plaintiffs have received and digested the discovery identified in 2(A) above, there will be no reason to delay briefing the personal jurisdiction motion. Accordingly, at the next status, the Court should be able to set dates for the filing of Plaintiffs' brief on the issue.

3.    <u>Status of Plaintiffs' document production and discovery responses</u>. Plaintiffs' responses to Defendants' discovery requests regarding the bases for Plaintiffs' negligent misrepresentation and resale price maintenance claims are inadequate. We outlined these inadequacies in a letter for Plaintiffs, but – as of this writing – have not received from Plaintiffs a substantive response to the issues raised or a date on which they are available to engage in a meet-and-confer session to discuss them. We trust that Plaintiffs will devote the same kind of substantial effort to their document production and discovery responses that Defendants are devoting even around the

The Honorable Alfred V. Covello
December 14, 2004
Page 3

holidays -- as detailed herein - so that *both* sides can proceed with the discovery phase of the case. If we cannot reach agreement on these requests, we would ask that they be considered during the next call with the Court.

We look forward to our call early this afternoon.

Respectfully yours,

*Andrew S. Marovitz/cag*

Andrew S. Marovitz


cc:  Richard S. Taffet, Esq.
     Robert M. Langer, Esq.
     Craig A. Raabe, Esq.
     Nathan P. Eimer, Esq.
     Christopher J. Kelly, Esq.