UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL
SERVICES PTE. LTD., AND MEGAVISA
SOLUTIONS (S) PTE. LTD.,

                          Plaintiffs,

        v.

THE DOW CHEMICAL COMPANY, UNION
CARBIDE CORPORATION, UNION CARBIDE
ASIA PACIFIC, INC., UNION CARBIDE
CUSTOMER SERVICES PTE. LTD., AND DOW
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,

                          Defendants.

CIVIL ACTION
NO. 3:02 CV 1107 (AVC)

April 6, 2005

**APPENDIX**
**TO THE AFFIDAVIT OF ALICIA L. DOWNEY**
**IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE THE ORDER GRANTING**
**RULE 12(b)(2) MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**
**FOR LACK OF PERSONAL JURISDICTION**

**<u>VOLUME 1 OF 2</u>**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (FAX)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd.*
*and Megavisa Solutions (S) Pte. Ltd.*

# EXHIBIT A

CLOSE WINDOW                    PRINT PAGE

[Choose Font Size] ▒

UNION CARBIDE CORP /NEW/ filed this 10-Q on 05/12/1994.


UNITED STATES SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D C  20549
FORM 10-Q


(X)  QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
     EXCHANGE ACT OF 1934
For the quarterly period ended March 31, 1994

                              OR

( )  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
     EXCHANGE ACT OF 1934
For the transition period from              to


Commission File Number 1-1463


                    UNION CARBIDE CORPORATION
        (Exact name of registrant as specified in its charter)


     New York                                13-1421730

   (State or other jurisdiction of          (I.R.S. Employer
incorporation or organization)              Identification No.)


 39 Old Ridgebury Road,  Danbury, CT          06817-0001
(Address of principal executive offices)      (Zip Code)


                       203-794-2000
          Registrant's telephone number, including area code

        Union Carbide Chemicals and Plastics Company Inc.
_____
         (Former name, former address and former fiscal year,
                  if changed since last report.)


Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act of
1934 during the preceding 12 months (or for such shorter period that the
registrant was required to file such reports), and (2) has been subject to
such filing requirements for the past 90 days.      Yes    X    No _____


Indicate the number of shares outstanding of each of the issuer's classes of

common stock, as of the latest practicable date.

              Class                     Outstanding at April 30, 1994
Common Stock, $1 par value                   151,266,328 shares

              Total number of sequentially numbered pages in this filing,
                 including exhibits thereto:  16


                                   INDEX


PART I. FINANCIAL INFORMATION

                                                                PAGE
   Financial Statements

      Condensed Consolidated Statement of Income -
         Union Carbide Corporation and Subsidiaries -
         Quarter Ended March 31, 1994 and 1993......................    3

      Condensed Consolidated Balance Sheet - Union Carbide
         Corporation and Subsidiaries - March 31, 1994 and
         December 31, 1993...........................................    4

      Condensed Consolidated Statement of Cash Flows -
         Union Carbide Corporation and Subsidiaries -
         Quarter Ended March 31, 1994 and 1993......................    5

   Notes to Condensed Consolidated Financial Statements -
         Union Carbide Corporation and Subsidiaries..................   6-8

   Discussion and Analysis of Results of Operations
         and Financial Condition.....................................   9-10


PART II. OTHER INFORMATION

   Item 1.  Legal Proceedings........................................   11

   Item 4.  Submission of Matters to a Vote of Security Holders.....   11-13

   Item 6.  Exhibits and Reports on Form 8-K........................   13

   Signature.......................................................   14

   Exhibit Index...................................................   15

                       PART I. FINANCIAL INFORMATION

                     UNION CARBIDE CORPORATION AND SUBSIDIARIES
                     CONDENSED CONSOLIDATED STATEMENT OF INCOME

|  | Millions of dollars (Except per share figures) Quarter ended March 31, | |
|  | 1994 | 1993(a) |
|---|---|---|
| NET SALES | $ 1,126 | $ 1,193 |
| Deductions | | |
| Cost of sales, exclusive of depreciation and amortization shown separately below | 856 | 892 |
| Research and development | 32 | 37 |
| Selling, administration and other expenses(b) | 72 | 91 |
| Depreciation and amortization | 67 | 76 |
| Interest on long-term and short-term debt | 16 | 25 |
| Other expense (income) - net | 7 | 12 |
| INCOME BEFORE PROVISION FOR INCOME TAXES | 76 | 60 |
| Provision for income taxes | 23 | 20 |
| INCOME OF CONSOLIDATED COMPANIES | 53 | 40 |
| Plus: UCC share of net income from corporate investments carried at equity | 10 | 2 |
| INCOME BEFORE CUMULATIVE EFFECT OF CHANGE IN ACCOUNTING PRINCIPLE | 63 | 42 |
| Cumulative effect of change in accounting principle | - | (97) |
| NET INCOME (LOSS) | 63 | (55) |
| Preferred stock dividend, net of taxes | 2 | 2 |
| NET INCOME (LOSS) - COMMON STOCKHOLDERS | $ 61 | $ (57) |
| Earnings per common share | | |
| Primary | | |
| - Income | $ 0.39 | $ 0.28 |
| - Cumulative effect of change in accounting principle | $ - | $ (0.69) |
| - Net income | $ 0.39 | $ (0.41) |
| Fully diluted(c) | $ 0.37 | $ (0.41) |
| Cash dividends per common share | $ 0.1875 | $ 0.1875 |

(a) Restated to reflect the adoption of Statement of Financial Accounting Standards 112.

(b) Selling, administration and other expenses include:

| | | |
|---|---|---|
| Selling | $ 30 | $ 34 |
| Administration | 27 | 32 |
| Other expenses | 15 | 25 |
| | $ 72 | $ 91 |

(c) Fully diluted per share amounts for 1993 are antidilutive and accordingly, primary and fully diluted per share amounts are identical.

The Notes to Condensed Consolidated Financial Statements on Pages 6 through 8 should be read in conjunction with this statement.

UNION CARBIDE CORPORATION AND SUBSIDIARIES
CONDENSED CONSOLIDATED BALANCE SHEET

Millions of dollars

|                                         | March 31, 1994 | Dec. 31, 1993 |
|-----------------------------------------|---------------:|--------------:|
| ASSETS                                  |                |               |
| Cash and cash equivalents               | $    71        | $   108       |
| Notes and accounts receivable           | 905            | 689           |
| Inventories:                            |                |               |
|   Raw materials and supplies  | 104            | 104           |
|   Work in process             | 44             | 52            |
|   Finished goods              | 252            | 229           |
|                                         | 400            | 385           |
| Prepaid expenses                        | 201            | 247           |
|     Total current assets | 1,577     | 1,429         |
|                                         |                |               |
| Property, plant and equipment           | 5,690          | 5,626         |
| Less: Accumulated depreciation          | 3,267          | 3,206         |
|     Net fixed assets | 2,423         | 2,420         |
|                                         |                |               |
| Companies carried at equity             | 448            | 437           |
| Other investments and advances          | 85             | 137           |
|     Total investments and advances | 533 | 574      |
|                                         |                |               |
| Other assets                            | 341            | 266           |
|     Total assets    | $4,874         | $4,689        |
|                                         |                |               |
| LIABILITIES AND STOCKHOLDERS' EQUITY    |                |               |
| Accounts payable                        | $   316        | $   310       |
| Short-term debt                         | 162            | 24            |
| Payments to be made within one year on  |                |               |
|   long-term debt              | 12             | 11            |
| Accrued income and other taxes          | 163            | 189           |
| Other accrued liabilities               | 622            | 662           |
|     Total current liabilities | 1,275 | 1,196         |
|                                         |                |               |
| Long-term debt                          | 899            | 931           |
| Postretirement benefit obligation       | 499            | 489           |
| Other long-term obligations             | 486            | 379           |
| Deferred credits                        | 216            | 230           |
| Convertible preferred stock             | 148            | 150           |
| Unearned employee compensation          | (110)          | (114)         |
| UCC stockholders' equity:               |                |               |
|   Common stock authorized - 500,000,000 shares | |          |
|   Common stock issued    - 154,609,669 shares | 155 | 155     |
|   Additional paid-in capital  | 355            | 366           |
|   Equity adjustment from foreign currency |    |               |
|    translation           | (79)           | (84)          |
|   Retained earnings           | 1,099          | 1,067         |
|                                         | 1,530          | 1,504         |
|   Less: Treasury stock, at cost-3,487,318 shares | |        |
|     (4,062,189 shares in 1993) | 69   | 76            |
|     Total UCC stockholders' equity | 1,461 | 1,428     |
|     Total liabilities and stockholders' equity | $4,874 | $4,689 |

The Notes to Condensed Consolidated Financial Statements on Pages 6 through
8 should be read in conjunction with this statement.

UNION CARBIDE CORPORATION AND SUBSIDIARIES

CONDENSED CONSOLIDATED STATEMENT OF CASH FLOWS

|  | Millions of dollars<br>Quarter ended March 31, | |
|  | 1994 | 1993 |
|  | Increase (decrease) in<br>cash and cash equivalents | |
| OPERATIONS |  |  |
| Income from continuing operations | $   63 | $   42 |
| Noncash charges (credits) to net income |  |  |
|   Depreciation and amortization | 67 | 76 |
|   Deferred income taxes | 19 | 12 |
|   Other noncash charges (credits) | 18 | (1) |
| Investing debits to net income | (16) | (2) |
| Working capital(a) | (185) | (183) |
| Long-term assets and liabilities | 39 | 23 |
| Cash Flow From (Used for) Operations | 5 | (33) |
| INVESTING |  |  |
| Capital expenditures | (80) | (50) |
| Investments | (34) | - |
| Sale of investments | - | - |
| Sale of fixed and other assets | - | 13 |
| Cash Flow Used for Investing | (114) | (37) |
| FINANCING |  |  |
| Change in short-term debt (three months or less) | 138 | 56 |
| Repayment of long-term debt | (30) | (100) |
| Issuance of common stock | 23 | 25 |
| Repurchase of common stock | (28) | - |
| Payments of dividends | (31) | (28) |
| Other | - | (2) |
| Cash Flow From (Used for) Financing | 72 | (49) |
| Effect of exchange rate changes on cash and<br>  cash equivalents | - | - |
|   Change in cash and cash equivalents | (37) | (119) |
|   Cash and cash equivalents beginning-of-period | 108 | 171 |
| Cash and cash equivalents end-of-period | $   71 | $   52 |
| Cash paid for interest and income taxes |  |  |
|   Interest (net of amount capitalized) | $    9 | $   35 |
|   Income taxes | $    5 | $   21 |

---

(a) Net change in working capital by component (excluding cash and cash
equivalents, deferred income taxes and short-term debt):

| (Increase) decrease in current assets |  |  |
|   Notes and accounts receivable | $(107) | $  (51) |
|   Inventories | (20) | (23) |
|   Prepaid expenses | 6 | 11 |
| Decrease in payables and accruals | (64) | (120) |
| Working capital | $(185) | $(183) |

The Notes to Condensed Consolidated Financial Statements on Pages 6 through
8 should be read in conjunction with this statement.

UNION CARBIDE CORPORATION AND SUBSIDIARIES
NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS

1.  Consolidated Financial Statements

In the opinion of management, the accompanying unaudited condensed consolidated financial statements include all adjustments necessary for a fair statement of the results for the interim periods.  These adjustments consisted of only normal recurring adjustments.  On April 27, 1994, stockholders voted to approve the merger of Union Carbide Corporation into Union Carbide Chemicals and Plastics Company Inc. (UCC&P).  The merger was effective May 1, 1994.  Immediately after the merger, UCC&P had the same consolidated assets, liabilities and stockholders' equity as the corporation.  UCC&P has changed its name to Union Carbide Corporation.  All references to Union Carbide Corporation, the corporation or UCC after the periods starting May 1, 1994 shall be a reference to the merged company.  The accompanying statements should be read in conjunction with the Notes to Financial Statements of Union Carbide Corporation and Subsidiaries ("the corporation") in the 1993 annual report to stockholders.


2.  Union Carbide Chemicals and Plastics Company Inc.

UCC has unconditionally guaranteed the payment of principal and interest on all debt of UCC&P registered with the Securities and Exchange Commission.  As of March 31, 1994, UCC had guaranteed $992 million of UCC&P debt.

The following is a financial summary of UCC&P and its consolidated subsidiaries:

| Millions of dollars | Quarter Ended March 31, | |
|---|---|---|
| | 1994 | 1993 |
| Net sales | $1,126 | $1,193 |
| Cost of sales | 856 | 880 |
| Depreciation and amortization | 67 | 76 |
| Income before accounting change | 67 | 40 |
| Cumulative effect of change in accounting principle | – | (97) |
| Net income (loss) | $   67 | $  (57) |

| | March 31, | Dec. 31, |
|---|---|---|
| | 1994 | 1993 |
| Current assets | $1,576 | $1,428 |
| Noncurrent assets | 3,296 | 3,256 |
| Total assets | $4,872 | $4,684 |
| Current liabilities | $1,464 | $1,418 |
| Noncurrent liabilities | 2,021 | 1,916 |
| Net assets | $1,387 | $1,350 |


3.  Common Stock

In the first quarter of 1993 the Board of Directors announced that it had authorized the repurchase of up to 10 million shares of UCC common stock over an unlimited period in order to minimize future earnings dilution due to common stock requirements under certain employee benefit plans.

Through March 31, 1994, the corporation had repurchased 4,839,700 shares at an average effective price of $20.07 per share.

In conjunction with the corporation's common stock buyback program, put options were sold in a series of private placements entitling the holders to sell 3,050,000 shares of common stock to UCC, at specified prices if the holders exercise the options. Since the inception of this program, through March 31, 1994, options representing 2,775,000 common shares expired unexercised, while options representing 275,000 shares remain outstanding. Premiums received on these options reduced the average price of repurchased shares to $20.07 per share from $20.42 per share.


4.  Commitments and Contingencies

The corporation has entered into three agreements for the purchase of ethylene related products and two agreements for the availability of terminal storage from facilities located in the U.S. and Canada. The net present value of the fixed and determinable portion of these obligations at March 31, 1994 totaled $465 million.

The corporation is subject to loss contingencies resulting from environmental laws and regulations, which include obligations to remove or mitigate the effects on the environment of the disposal or release of certain wastes and substances at various sites. The corporation has established accruals for those hazardous waste sites where it is probable that a loss has been incurred and the amount of the loss can be reasonably estimated. The reliability and precision of the loss estimates are affected by numerous factors, such as different stages of site evaluation, the allocation of responsibility among potentially responsible parties and the assertion of additional claims. The corporation adjusts its accruals as new remediation requirements are defined, as information becomes available permitting reasonable estimates to be made, and to reflect new and changing facts.

At March 31, 1994, the corporation had established environmental remediation accruals in the amount of $272 million. Approximately 30 percent of the corporation's environmental accrual at March 31, 1994 pertained to closure and postclosure costs for both operating and closed facilities. In addition, the corporation had environmental loss contingencies of $122 million.

The corporation had additional contingent obligations at March 31, 1994 of $102 million, principally related to discounted receivables from customers, guarantees of debt and litigation.



During the first quarter of 1994, the corporation reduced the carrying value of its stock in Union Carbide India Ltd. to zero. See Note 17 of Notes to Financial Statements in the corporation's 1993 Annual Report to Stockholders for information about suits and proceedings arising from or related to the December 3, 1984 methyl isocyanate incident at the plant at Bhopal, India, owned and operated by Union Carbide India Limited.

The corporation has provisionally joined the recent multi-billion dollar silicone breast implant litigation settlement agreement. Union Carbide's contribution to the settlement will be $138 million over the next several years. The corporation has previously taken before-tax charges

aggregating $35 million for this litigation.  Although insurance coverage is subject to issues as to scope and application of policies, retention limits, exclusions and policy limits, and the insurers have reserved their rights to deny coverage, the corporation believes that after probable insurance recoveries, the settlement will not have a material effect on the company's earnings in the future.  The corporation was not a manufacturer of breast implants but did supply generic bulk silicone materials to the industry.

The settlement is subject to fairness hearings and possible challenges that might delay implementation or require settlement terms to be reconsidered.  Both the corporation and the other companies which are parties to the agreement have the right to withdraw from the settlement if, in their individual judgment, there are too few recipients of breast implants covered by the final settlement.

In addition to the above, the corporation and its consolidated subsidiaries are involved in a number of legal proceedings and claims with both private and governmental parties.  These cover a wide range of matters including, but not limited to: product liability; governmental regulatory proceedings; health, safety and environmental matters; employment; patents; contracts and taxes.  In some of these legal proceedings and claims, the remedies that may be sought or damages claimed are substantial.

While it is impossible at this time to determine with certainty the ultimate outcome of any legal proceedings and claims referred to in this note, management believes that adequate provisions have been made for probable losses with respect thereto and that such ultimate outcome, after provisions therefor, will not have a material adverse effect on the consolidated financial position of the corporation but could have a material effect on consolidated results of operations in a given quarter or year.  Should any losses be sustained in connection with any of such legal proceedings and claims, in excess of provisions therefor, they will be charged to income in the future.

DISCUSSION AND ANALYSIS OF RESULTS OF OPERATIONS
AND FINANCIAL CONDITION

Overview

For the quarter ended March 31, 1994 the corporation reported net income available to common stockholders of $61 million, or $0.39 per share primary ($0.37 per share fully diluted).  Improved volumes for the corporation's major businesses were largely offset by slight margin declines in commodity products.  The corporation continued to benefit from its cost reduction efforts and improved results in its joint ventures.

Results of Operations

Net income available to common shareholders was $61 million for the first quarter of 1994, compared to $40 million for the same period last year.  In addition, the corporation recorded a noncash after-tax charge of $97 million in the first quarter of 1993 as a result of adopting FAS 112.  As a result a net loss of $57 million was reported in the first quarter of 1993.

Sales decreased 6 percent in the first quarter of 1994 to $1.126 billion from

$1.193 billion in the first quarter of 1993 largely due to the absence of
sales from the OSi business, sold in July, 1993. On a comparative basis,
quarter to quarter, volumes improved for all the corporation's businesses,
especially ethylene oxide derivatives and polyethylene resins.

The corporation's variable margin was 46.7 percent in the first quarter 1994
versus 47.4 percent in the first quarter last year. Despite an increase in
volumes, lower prices in all businesses kept variable margin virtually the
same when the OSi business is excluded from first quarter 1993. Similarly,
gross margin in the first quarter of 1994 of 24.0 percent was lower than the
previous year's rate, but essentially flat excluding the OSi business.
Selling, administration and other expenses decreased $19 million, almost half
of which is attributable to the absence of the OSi business.

Other expense (income) - net for the first quarter of 1994 included the
following items: a $24 million charge for the writeoff of the corporation's
investment in India and associated costs; a $12 million loss on the proposed
sale of the corporation's uranium mill and certain uranium mines to Energy
Fuels, Ltd; a $24 million gain on the sale of its preferred stock investment
in OSi Specialties, Inc. Income from partnerships rose $16 million in the
first quarter of 1994 over the same period last year.

Interest expense decreased 36 percent in the first quarter of 1994 compared
with the first quarter 1993 as a result of slightly lower debt levels and
lower interest rates.

Earnings from the corporation's investments carried at equity totaled
$10 million in the current quarter versus $2 million in the comparable quarter
last year due primarily to an increase in UCC's share of earnings from UCAR
International, Inc.

Estimates of future expenses related to environmental protection for
compliance with Federal, state and local laws regulating solid and hazardous
wastes and discharge of materials to air and water, as well as for waste site
remedial activities, and of future capital expenditures relating to
environmental protection, have not changed materially since December 31, 1993.
The reliability and precision of the loss estimates are affected by numerous
factors, such as different stages of site evaluation, the allocation of
responsibility among potentially responsible parties and the assertion of
additional claims.

The corporation has provisionally joined the recent multi-billion dollar
silicone breast implant litigation settlement agreement. This litigation is
discussed in more detail in the "Commitments and Contingencies" footnote to
the financial statements on page 8 of this report on Form 10-Q.

Financial Condition - March 31, 1994

The corporation continued to benefit from its cost reduction efforts, improved
results from joint ventures and lower interest expense, all of which
contributed to positive cash flow from operations of $5 million in the first
quarter of 1994. In the first quarter of 1993 $33 million was used in
operations.

Cash flow used for investing of $114 million was significantly higher in 1994
due primarily to increased capital spending plus an investment in a Brazilian

ethylene company.

Cash flow from financing was $72 million for the first quarter 1994 as compared to $49 million used for 1993. Significant activities in the first quarter 1994 included the redemption of outstanding 5.3 percent sinking fund debentures due 1997 for $26 million and the repurchase of $28 million in common stock. Short-term borrowings increased by $110 million. In the first quarter of 1993, the corporation redeemed, for $12 million, its 15 percent senior debentures and $84 million of the outstanding $345 million of 7.5 percent convertible subordinated debentures with the remaining $261 million converted into common stock.

The corporation's ratio of debt to capital increased to 42.3 percent at March 31, 1994 from 40.3 percent at December 31, 1993. At March 31, 1994 there were no outstanding borrowings under the existing major bank credit agreement of $600 million.

Cash dividends to UCC common stockholders amounted to $28 million in the first quarter 1994 and $25 million in the first quarter of 1993.


PART II. OTHER INFORMATION


Item 1.  Legal Proceedings

         See Note 4 to the corporation's consolidated financial statements
         on page 7 and 8 of this 10-Q Report.

         On March 31, 1994, the U.S. Environmental Protection Agency (EPA)
         issued an administrative Complaint, Compliance Order and Notice
         of Opportunity for Hearing to the corporation alleging violations
         of the Resource Conservation and Recovery Act, as amended, and the
         Texas Solid Waste Disposal Act at the corporation's Texas City,
         Texas plant. EPA proposes to assess a civil penalty of $139,000.
         The corporation has requested a hearing and is contesting the alleged
         violations and proposed penalty.


Item 4.  SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS

         (a)  Annual Meeting - April 27, 1994

         (b)  Proxies for the meeting were solicited pursuant to Regulation
              14A. There was no solicitation in opposition to the
              management's nominees as listed in the proxy statement. All of
              the management's nominees as listed in the proxy statement were
              elected, the vote on said proposal being as follows:

                              Shares Voted

         Directors            Shares For        Shares Withheld

         John J. Creedon      131,990,427         1,696,792
         C. Fred Fetterolf    132,104,509         1,582,710
         Joseph E. Geoghan    132,131,971         1,555,248

| | | |
|---|---|---|
| Rainer E. Gut | 132,108,367 | 1,578,852 |
| James M. Hester | 131,946,875 | 1,740,344 |
| Vernon E. Jordan, Jr. | 131,730,158 | 1,957,061 |
| William H. Joyce | 131,965,025 | 1,722,194 |
| Robert D. Kennedy | 131,873,912 | 1,813,307 |
| Ronald L. Kuehn, Jr. | 132,124,298 | 1,562,921 |
| C. Peter McColough | 131,945,553 | 1,741,666 |
| Rozanne L. Ridgway | 132,071,127 | 1,616,092 |
| William S. Sneath | 130,382,563 | 3,304,656 |

Item 4.    SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS (Continued)

(c)    Other matters voted upon.

Proposal to Eliminate Holding Company

Shareholders approved the merger of the corporation into its wholly owned subsidiary, Union Carbide Chemicals and Plastics Company Inc.

The vote was:

FOR - 132,002,261 or 78.44 percent of the shares outstanding (99.39 percent of the shares voted).

AGAINST - 805,782 or 0.48 percent of the shares outstanding (0.61 percent of the shares voted).

ABSTAIN - 879,176 shares.

Approval required an affirmative vote of two-thirds of the shares outstanding.

Proposal to Ratify the Appointment of Auditors

Shareholders ratified the appointment of KPMG Peat Marwick to conduct the annual audit of the financial statements of the corporation and its consolidated subsidiary companies for the year ending December 31, 1994.

The vote was:

FOR - 131,802,714 or 99.15 percent of the shares voted.

AGAINST - 1,129,114 or 0.85 percent of the shares voted.

ABSTAIN - 755,391 shares.

Proposal on the 1994 Union Carbide Long-Term Incentive Plan

Shareholders approved management's proposal to adopt the 1994 Union Carbide Long-Term Incentive Plan.

The vote was:

FOR - 99,900,451 or 59.36 percent of the shares outstanding

(75.62 percent of the shares voted).

AGAINST - 32,202,274 or 19.14 percent of the shares
outstanding (24.38 percent of the shares voted).

ABSTAIN - 1,584,494 shares.

Approval required an affirmative vote of a majority of the
shares outstanding.

Item 4.  SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS (Continued)

Proposal on CERES Principles

Shareholders voted against a shareholder proposal requesting the
corporation to endorse the CERES Principles for corporate
environmental accountability.

The vote was:

FOR - 6,154,284 shares or 6.16 percent of the shares voted.

AGAINST - 93,772,755 shares or 93.84 percent of the shares
voted.

ABSTAIN - 7,765,467 shares.

BROKER NON-VOTE - 25,994,713 shares.

Proposal on Environment/Safety Hazards

Shareholders voted against a shareholder proposal that the
shareholders request the corporation to make publicly available
a report (prepared at reasonable cost, omitting proprietary
information, and made available by September 1994), sufficiently
comprehensive to permit interested persons to assess:
(a) environmental and safety hazards to the communities
surrounding its chemical plants, such as risks and consequences
of chemical accidents, preventative measures, and plans to
reduce the use of toxics; (b) communities' rights to inspect
facilities with regard to these hazards; (c) corporate policy
and procedures in these areas.

The vote was:

FOR - 12,299,874 shares or 12.25 percent of the shares voted.

AGAINST - 88,087,879 shares or 87.75 percent of the shares
voted.

ABSTAIN - 7,304,753 shares.

BROKER NON-VOTE - 25,994,713 shares.

Item 6.  Exhibits and Reports on Form 8-K

(a)  Exhibits.

The following exhibit is filed as part of this report:

11  -  Computation of Earnings Per Share.


(b)  No reports on Form 8-K were filed for the three-months ended
March 31, 1994.




SIGNATURE


Pursuant to the requirements of the Securities Exchange Act of 1934, the
Registrant has duly caused this report to be signed on its behalf by the
undersigned thereunto duly authorized.

                        UNION CARBIDE CORPORATION
                              (Registrant)


Date:  May 12, 1994                 By:      John K. Wulff
                                             JOHN K. WULFF
                                      Vice-President, Controller
                                        and Principal Accounting
                                                Officer



                            EXHIBIT INDEX


| Exhibit No. | Exhibit | Page No. |
| --- | --- | --- |
| 11 | Computation of Earnings Per Share | |




                                              Exhibit 11

UNION CARBIDE CORPORATION AND SUBSIDIARIES
COMPUTATION OF EARNINGS PER SHARE
(In millions of dollars except per share amounts)

|  | Quarter Ended March 31, | |
|  | 1994 | 1993 |
|---|---|---|
| Earnings Per Share - Primary | | |
| Income | $ 63 | $ 42 |
| Less:  Preferred stock dividend | 3 | 3 |
| Net income for primary income calculation | 60 | 39 |
| Cumulative effect of accounting change | - | (97) |
| Net income (loss) - common stockholders | $ 60 | $ (58) |
| | | |
| Weighted average number of common and common equivalent shares applicable to primary earnings per share calculation | | |
| Weighted average number of shares outstanding | 151,062,192 | 136,962,535 |
| Dilutive effect of stock options | 3,935,953 | 3,327,285 |
| | 154,998,145 | 140,289,820 |
| | | |
| Earnings per share - primary | | |
| Income | $ 0.39 | $ 0.28 |
| Cumulative effect of accounting change | - | (0.69) |
| Net income (loss) - common stockholders | $ 0.39 | $(0.41) |
| | | |
| Earnings Per Share Assuming Full Dilution | | |
| Income | $ 63 | $ 42 |
| Plus:  Interest on convertible debentures - (net of taxes) | - | 4 |
| Less:  Additional ESOP contribution resulting from assumed conversion of preferred stock | - | - |
| Income for fully diluted income calculation | 63 | 46 |
| Cumulative effect of accounting change | - | (97) |
| Net income (loss) for fully diluted income calculation | $ 63 | $ (51) |
| | | |
| Weighted average number of common and common equivalent shares applicable to fully diluted earnings per share calculation | | |
| Weighted average number of shares outstanding | 151,062,192 | 136,962,535 |
| Dilutive effect of stock options | 3,935,953 | 3,544,081 |
| Shares issuable upon conversion of UCC convertible debentures | - | 18,180,776 |
| Shares issuable upon conversion of UCC convertible preferred stock | 16,649,512 | 16,857,754 |
| | 171,647,657 | 175,545,146 |
| | | |
| Per share assuming full dilution | | |
| Income | $ 0.37 | $ 0.26 |
| Cumulative effect of accounting change | - | (0.55) |
| Net income (loss) | $ 0.37 | $(0.29)* |

*   Fully diluted per share amounts are not presented in the Condensed
    Consolidated Statement of Income where amounts are antidilutive.

 10kWIZARD
SEC POWER SEARCH

# FORM 10–K

## UNION CARBIDE CORP /NEW/ – UK

**Filed: March 20, 1997 (period: December 31, 1996)**

Annual report which provides a comprehensive overview of the company for the past year

Securities and Exchange Commission, Washington, D.C. 20549

Annual Report on Form 10-K for the year ended December 31, 1996.
Filed pursuant to Section 13 of the Securities Exchange Act of 1934.
Commission file number 1-1463

Union Carbide Corporation
1996 10-K

Union Carbide Corporation                Tel. (203) 794-2000
39 Old Ridgebury Road                    State of incorporation: New York
Danbury, Connecticut 06817-0001          IRS identification number: 13-1421730

Securities registered pursuant to Section 12(b) of the Act:

Class of security:                 Registered on:

Common Stock ($1 par value)        New York Stock Exchange
                                   Chicago Stock Exchange, Incorporated
                                   The Pacific Stock Exchange Incorporated

Share Purchase Rights Plan         New York Stock Exchange

Securities registered pursuant to Section 12(g) of the Act:
                        NONE

Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act of
1934 ("the Act") during the preceding 12 months, and (2) has been subject to
such filing requirements for the past 90 days. Yes X   No

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405
of Regulation S-K is not contained herein, and will not be contained, to the
best of registrant's knowledge, in definitive proxy or information statements
incorporated by reference in Part III of this Form 10-K or any amendment to
this Form 10-K.

At February 28, 1997, 126,741,112 shares of common stock were outstanding.
Non-affiliates held 125,958,321 of those shares, of which the aggregate market
value was $5.952 billion.

Documents incorporated by reference:

Annual report to stockholders for the year ended December 31, 1996 (Parts I
and II)
Proxy statement for the annual meeting of stockholders to be held on April 23,
1997 (Part III)

## Table of Contents

Part I
Item 1:  Business ....................................................... 1
Item 2:  Properties ..................................................... 3
Item 3:  Legal Proceedings ............................................. 4
Item 4:  Submission of Matters to a Vote of Security Holders ............ 4

Part II
Item 5:  Market for Registrant's Common Equity and Related Stockholder
         Matters ....................................................... 5
Item 6:  Selected Financial Data ....................................... 5
Item 7:  Management's Discussion and Analysis of Financial Condition and
         Results of Operations ......................................... 5
Item 8:  Financial Statements and Supplementary Data .................... 5
Item 9:  Changes in and Disagreements with Accountants on Accounting and
         Financial Disclosure ......................................... 5

Part III
Item 10: Directors and Executive Officers of the Registrant ............. 6
Item 11: Executive Compensation ........................................ 8
Item 12: Security Ownership of Certain Beneficial Owners and Management .. 8
Item 13: Certain Relationships and Related Transactions ................. 8

Part IV
Item 14: Exhibits, Financial Statement Schedules, and Reports on Form 8-K . 9
Signatures ............................................................. 12
Exhibit Index ......................................................... 13

Cautionary statement for the purposes of the "safe harbor" provisions of the
Private Securities Litigation Reform Act of 1995: All statements in this Form
10-K report that do not reflect historical information are forward looking
statements. These include statements incorporated herein by reference to the
1996 annual report to stockholders. Important factors that could cause actual
results to differ materially from those discussed in such forward looking

contingent obligations at Dec. 31, 1996, totaling $64 million, of which $36 million related to guarantees of debt.

Litigation - The corporation is one of a number of defendants named in approximately 4,500 lawsuits, some of which have more than one plaintiff, involving silicone breast implants. The corporation was not a manufacturer of breast implants but did supply generic bulk silicone materials to certain manufacturers. Also, the corporation in 1990 acquired and in 1992 divested the stock of a small specialty silicones company that, among other things, supplied silicone gel intermediates and silicone dispersions for breast implants. In 1993 most of the suits that were brought in Federal courts were consolidated for pretrial purposes in the United States District Court, Northern District of Alabama. In 1994 the corporation provisionally joined a multibillion-dollar settlement of the claims consolidated in that court.
    The District Court later determined that the total amount of current claims likely to be approved for payment under the original settlement schedule would substantially exceed the funds available. Consequently, the defendants and the Plaintiffs' Negotiating Committee, at the request of the court, initiated negotiations to reconsider the structure and funding of the settlement. Subsequently, certain defendants, including the corporation, proposed, and the court approved, a revised settlement program. While the corporation cannot predict the number of claimants who will participate in the settlement, based on sample data prepared under supervision of the court, the corporation estimates that its maximum expenditures under the revised agreement should not exceed $100 million prior to insurance recovery. Although insurance coverage is subject to issues as to scope and application of policies, retention limits, exclusions and policy limits, and the insurers have reserved their right to deny coverage, the corporation believes that after probable insurance recoveries neither the settlement nor litigation outside the settlement will have a material adverse effect on the consolidated financial position of the corporation.
    In addition to the above, the corporation and its consolidated subsidiaries are involved in a number of legal proceedings and claims with both private and governmental parties. These cover a wide range of matters, including, but not limited to, product liability; governmental regulatory proceedings; health, safety and environmental matters; employment; patents; contracts, and taxes. In some of these legal proceedings and claims, the cost of remedies that may be sought or damages claimed is substantial.
    The corporation has recorded nonenvironmental litigation accruals of $194 million, and related insurance recovery receivables of $135 million. At Dec. 31, 1996, the corporation had nonenvironmental litigation loss contingencies of $53 million.
    While it is impossible at this time to determine with certainty the ultimate outcome of any legal proceedings and claims referred to in this note, management believes that adequate provisions have been made for probable losses with respect thereto and that such ultimate outcome, after provisions therefor, will not have a material adverse effect on the consolidated financial position of the corporation, but could have a material effect on consolidated results of operations in a given quarter or year. Should any losses be sustained in connection with any of such legal proceedings and claims in excess of provisions therefor, they will be charged to income in the future.


16. Subsequent Events

On Jan. 20, 1997, the corporation entered into a new credit agreement with a group of banks, replacing an existing $1 billion credit agreement. The new agreement also provides the corporation with $1 billion in credit for the next five years, but with the option, subject to certain conditions, to increase the available credit by $250 million and to extend the maturity date of the agreement by one year on a rolling basis. Several options are available to borrow at floating interest rates based on LIBOR (London Interbank Offered Rate) or CD (Certificate of Deposit Rate) on a revolving basis. The credit agreement contains covenants that place certain limits on the corporation's ability to merge with another entity, incur debt or create liens on assets. In addition, the credit agreement requires the corporation to meet leverage and interest coverage tests.
    On Jan. 22, 1997, the corporation established a medium term note program that allows for borrowings of up to $500 million. Notes issued under the program will have a maturity of nine months or longer and will bear interest at either a fixed or floating rate determined by reference to interest rate formulas. The notes will be subject to covenants that place certain limits on the corporation's ability to create liens on assets, engage in sale-leaseback transactions, and incur secured debt.
    On Jan. 30, 1997, a newly formed real estate investment trust subsidiary issued $250 million of preferred stock bearing a current dividend yield of 14 percent for 10 years and 1 percent thereafter. Domestic real estate with a fair market value of approximately $500 million will be mortgaged via intercompany debt in conjunction with this transaction. The preferred stock may be redeemed if, as a result of a change in tax laws, rules or regulations, dividends on the preferred stock or interest paid on the mortgage note is not fully deductible for Federal income tax purposes.


Management's Statement of Responsibility for Financial Statements

Union Carbide Corporation's financial statements are prepared by management, which is responsible for their fairness, integrity and objectivity. The accompanying financial statements have been prepared in conformity with

generally accepted accounting principles and, accordingly, include amounts that are estimates and judgments. All historical financial information in this annual report is consistent with the accompanying financial statements.

The corporation maintains accounting systems, including internal accounting controls monitored by a staff of internal auditors, that are designed to provide reasonable assurance of the reliability of financial records and the protection of assets. The concept of reasonable assurance is based on recognition that the cost of a system must not exceed the related benefits. The effectiveness of those systems depends primarily upon the careful selection of financial and other managers, clear delegation of authority and assignment of accountability, inculcation of high business ethics and conflict-of-interest standards, policies and procedures for coordinating the management of corporate resources and the leadership and commitment of top management.

The corporation's financial statements are audited by KPMG Peat Marwick LLP, independent certified public accountants, in accordance with generally accepted auditing standards. These standards provide for the auditors to consider the corporation's internal control structure to the extent they deem necessary in order to issue their opinion on the financial statements.

The Audit Committee of the board of directors, which consists solely of nonemployee directors, is responsible for overseeing the functioning of the accounting system and related controls and the preparation of annual financial statements. The Audit Committee recommends to the board of directors the selection of the independent auditors, subject to the approval of stockholders. The Audit Committee periodically meets with the independent auditors, management and internal auditors to review and evaluate their accounting, auditing and financial reporting activities and responsibilities. The independent and internal auditors have full and free access to the Audit Committee and meet with the committee, with and without management present.

/s/William H. Joyce                    /s/John K. Wulff
William H. Joyce                       John K. Wulff
Chairman, President and                Vice-President, Chief Financial
Chief Executive Officer                Officer and Controller

Danbury, Conn.
Jan. 17, 1997

                    Independent Auditors' Report

KPMG Peat Marwick LLP

To the Stockholders and Board of Directors of
Union Carbide Corporation:

We have audited the accompanying consolidated balance sheet of Union Carbide Corporation and subsidiaries as of Dec. 31, 1996 and 1995, and the related consolidated statements of income, stockholders' equity, and cash flows for each of the years in the three-year period ended Dec. 31, 1996. These consolidated financial statements are the responsibility of the company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Union Carbide Corporation and subsidiaries at Dec. 31, 1996 and 1995, and the results of their operations and their cash flows for each of the years in the three-year period ended Dec. 31, 1996, in conformity with generally accepted accounting principles.

                                        /s/ KPMG Peat Marwick LLP

KPMG Peat Marwick LLP
Stamford, Conn.
Jan. 17, 1997

                    Corporate Information

1997 Annual Meeting
The 1997 annual meeting of stockholders will be held on Wednesday, April 23, at the John C. Creasy Health Education Center, 24 Hospital Ave., Danbury, CT 06810, beginning at 10 a.m.

A notice of the annual meeting, a proxy statement and a proxy voting card are mailed to each stockholder in March, together with a copy of the current annual report.

General Offices

The general offices of Union Carbide Corporation are located at 39 Old
Ridgebury Road, Danbury, CT 06817-0001 (Telephone: 203-794-2000).
    Inquiries from the public about Union Carbide and its products and
services should be directed to the Corporate Information Center, Union Carbide
Corporation, Section N-0, 39 Old Ridgebury Road, Danbury, CT 06817-0001
(Telephone: 203-794-5300).

Stock Exchanges
Union Carbide stock is traded primarily on the New York Stock Exchange (ticker
symbol: UK). The stock is also listed on the Chicago and Pacific Stock
Exchanges in the U.S.

Stockholder Inquiries
Inquiries about stockholder accounts and dividend reinvestment should be
directed to Union Carbide Corporation, William H. Smith, manager, Shareholder
Services Department, Section G-1328, 39 Old Ridgebury Road, Danbury, CT 06817-
0001 (Telephone: 203-794-3350).

Stock Records and Transfer
The corporation acts as its own stock transfer agent through Shareholder
Services, which also maintains stockholder records, transfers stock and
answers questions regarding stockholders' accounts, including dividend
reinvestment accounts. Stockholders wishing to transfer stock to someone else
or to change the name on a stock certificate should contact Shareholder
Services for assistance. The Registrar is Chase Mellon Shareholder Service.

Dividend Reinvestment
Stockholders of record may purchase shares directly through Union Carbide's
Dividend Reinvestment and Stock Purchase Plan. Under the plan, shares may be
purchased from Union Carbide free of commissions and service charges.
    Requests for a prospectus that explains the plan in detail should be
directed to Shareholder Services (Telephone: 800-934-3350).

Form 10-K
A Form 10-K report for the year ended Dec. 31, 1996, will be available in
April 1997. A copy without exhibits may be obtained without charge by writing
to Union Carbide Corporation, Joseph E. Geoghan, secretary, 39 Old Ridgebury
Road, Danbury, CT 06817-0001.

Charitable Contributions Booklet
Union Carbide annually publishes a booklet that lists organizations receiving
charitable, educational, cultural or similar grants of $250 or more from the
corporation. The booklet is available on written request to the secretary.

Responsible Care Progress Report
This reports covers health, safety and environmental progress at Union
Carbide. Information includes performance data for U.S. and other worldwide
locations, Responsible Care goals and progress Carbide made in 1996 as it
completed full implementation of Responsible Care management practices in the
U.S. To obtain a copy, write to Union Carbide Corporation, Public Affairs
Department, Section L-4505, 39 Old Ridgebury Road, Danbury, CT 06817-0001
(Telephone: 800-552-5272).

Inquiries
Institutional investors, financial analysts and portfolio managers should
direct questions about Union Carbide to Union Carbide Corporation, D. Nicholas
Thold, director of investor relations, Investor Relations Department, Section
E-4286, 39 Old Ridgebury Road, Danbury, CT 06817-0001 (Telephone: 203-794-
6440).
    Financial journalists should direct questions to Union Carbide
Corporation, David N. Kernis, assistant director, communications, Public
Affairs Department, Section L-4502, 39 Old Ridgebury Road, Danbury, CT 06817-
0001 (Telephone: 203-794-6929).
    Information on Union Carbide also may be found on the company's home page
on the Internet at www.unioncarbide.com. Union Carbide's site provides
information in five categories: general, financial, business, Responsible Care
and recruitment.


                          Directors and Corporate Officers

Directors
John J. Creedon is retired president and chief executive officer of
Metropolitan Life Insurance Company. A Carbide director since 1984, he chairs
the Audit Committee and serves on the Compensation & Management Development,
Executive and Health, Safety & Environmental Affairs (HS&EA) Committees.

C. Fred Fetterolf is a retired director, president and chief operating officer
of Aluminum Company of America. A UCC director since 1987, he chairs the HS&EA
Committee and serves on the Audit, Compensation & Management Development and
Nominating Committees.

Joseph E. Geoghan is vice-president, general counsel and secretary of Union
Carbide, and has been a director since 1990. He serves on the Executive and
Public Policy Committees.

Thomas P. Gerrity has been dean at the Wharton School of the University of
Pennsylvania since 1990. He became a board member in February 1997 and is a
member of the Audit Committee.

Rainer E. Gut is chairman of Credit Suisse Group, Zurich, Switzerland, and

# EXHIBIT B

**UNION CARBIDE CORP /NEW/ filed this 10-K on 02/28/2003.**

Outline

Printer Friendly
Next Page »

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

### Annual Report Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

**FOR THE YEAR ENDED DECEMBER 31, 2002**

Commission file number 1-1463

# UNION CARBIDE CORPORATION
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **New York** | **13-1421730** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **39 Old Ridgebury Road, Danbury, Connecticut** | **06817-0001** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: **203-794-2000**

**Securities registered pursuant to Section 12(b) of the Act: None**

**Securities registered pursuant to Section 12(g) of the Act: None**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days. Yes ☒    No ☐.

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes ☐    No ☒.

At February 28, 2003, 1,000 shares of common stock were outstanding, all of which were held by the registrant's parent, The Dow Chemical Company.

The registrant meets the conditions set forth in General Instructions I(1)(a) and (b) for Form 10-K and is therefore filing this form with a reduced disclosure format.

### Documents Incorporated by Reference

None