UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL : 
SERVICES PTE. LTD., and MEGA VISA :
SOLUTIONS (S) PTE. LTD., :
:
      Plaintiffs, :
: Civil No. 3:02 CV 1107 (AVC)
      v. :
:
THE DOW CHEMICAL COMPANY, UNION :
CARBIDE CORPORATION, and UNION :
CARBIDE ASIA PACIFIC, INC., :
:
      Defendants. : April 27, 2005

**UNION CARBIDE CUSTOMER SERVICES PTE. LTD.'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE THE ORDER GRANTING RULE 12(b)(2) MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

      By order dated November 17, 2003, this Court dismissed all claims against Union Carbide Customer Services Pte. Ltd. ("UCCS") for lack of personal jurisdiction. UCCS was a corporation organized and existing under the laws of Singapore, with its principal place of business in Singapore.[1] It has not had any meaningful contacts with the forum. Nevertheless, Plaintiffs bring the current motion to vacate, purporting to have "new" evidence that demonstrates that personal jurisdiction over UCCS is proper.

      Plaintiffs' motion focuses exclusively on the venue clause of Section 12 of the

---

[1] UCCS ceased all major active operations in January, 2002. *See* Motion of UCCS to Dismiss for Lack of Personal Jurisdiction dated May 30, 2003, Declaration of Peter M. Jennings ("Jennings Dec.") ¶¶ 6-7.

Clayton Act. 15 U.S.C. § 22. But venue under Section 12 is only part of the analysis. Before this Court can exercise personal jurisdiction over UCCS, it must evaluate whether UCCS had minimum contacts with the forum such that maintenance of this suit would not offend traditional notions of fair play and substantial justice. Plaintiffs do not address this issue in their motion to vacate. Because their analysis is incomplete, they do not carry their burden of proving that personal jurisdiction over UCCS is proper. Moreover, Plaintiffs cannot demonstrate that personal jurisdiction comports with due process for the simple reason that UCCS has not had sufficient minimum contacts with the forum. As such, Plaintiffs' motion to vacate should be denied.

## BACKGROUND

UCCS was incorporated in Singapore in July 1993, and maintained its principal place of business in Singapore. *See* Jennings Dec. at ¶¶3-4. It has never been registered to do business in Connecticut or the United States, and has not had any offices, plants, facilities, employees or bank accounts in Connecticut or the United States. *Id.* at ¶¶8, 10, 11, 14, 15, 16. On January 18, 2002, UCCS entered into an Asset Sale and Purchase Agreement with Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") whereby Dow Singapore purchased essentially all of the assets of UCCS. *Id.* at ¶6. As of January 18, 2002, UCCS ceased all major active operations. *Id.* at ¶7.

In March of 2003, Plaintiffs filed their First Amended Complaint against Defendants the Dow Chemical Company ("TDCC"), Union Carbide Corporation ("UCC"), UCCS, Union Carbide Asia Pacific, Inc. ("UCAP"), and Dow Singapore, asserting, *inter alia*,

2

claims for violations of the Sherman Act, 15 U.S.C. § 1, breach of contract and negligent misrepresentation. From the start, Plaintiffs did not allege any jurisdictional basis for UCCS' inclusion in this matter; their complaint contained no assertion that UCCS transacted business in, or had minimum contacts with, the forum.

On November 17, 2003 this Court entered an order dismissing all claims against UCCS and Dow Singapore for lack of personal jurisdiction. With respect to UCCS, the Court found that Plaintiffs failed to satisfy the first clause of Section 12 of the Clayton Act, which relates to venue, inasmuch as UCCS did not transact business of a substantial nature in Connecticut. *See* November 17, 2003 Order, p. 8. The Court also held that the Connecticut long-arm statute, Conn. Gen. Stat. § 33-929(e), did not afford jurisdiction over UCCS, because, at most, Plaintiffs could demonstrate that UCCS placed purchasing orders through a centralized computer system, and this did not constitute "transacting business" within the meaning of the statute. The Court did not address UCCS' argument that the exercise of personal jurisdiction offended constitutional due process.[2]

On December 4, 2003, Plaintiffs filed a motion for reconsideration, which the

---

[2] In the same order, the Court denied UCAP's motion to dismiss for lack of personal jurisdiction, finding that UCAP transacted business with Connecticut within the meaning of Section 12 of the Clayton Act, and declining to conduct a due process inquiry due to UCAP's waiver of the issue. UCCS, for its part, has not waived its due process challenge. *See* Defendant Union Carbide Customer Services Pte. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction, pp. 17-19 (asserting that the exercise of jurisdiction under the Clayton Act would violate due process); Reply Brief in Support of Motion to Dismiss, p. 13 (noting that if Plaintiffs meet the "transacting business" requirement for venue under Section 12, due process would still need to be satisfied "at least as to UCCS").

3

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

Court granted to allow the parties to conduct additional jurisdictional discovery. *See* Order dated July 8, 2004. Since then, the parties have engaged in extensive discovery. Plaintiffs complain that the record is only partially developed, but Defendants have fully complied with the Court's discovery orders, and have disclosed all information requested by Plaintiffs. Plaintiffs' inability to locate factual support for its claim that personal jurisdiction over UCCS is proper is not due to Defendants' failure to comply with discovery; rather, it results from the simple fact that no such evidence exists. Moreover, it was Plaintiffs' choice to bring this motion now. If they actually believed that discovery was incomplete, they could have availed themselves of certain remedies. Because they did not, and chose instead to bring this motion, the Court should not entertain their complaints about the sufficiency of the record.

## ARGUMENT

It remains the Plaintiffs' burden to prove that this Court has personal jurisdiction over UCCS. *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1025 (2d Cir. 1997). Since the parties have conducted extensive jurisdictional discovery, Plaintiffs may no longer rest on prima facie allegations to satisfy their burden. They must aver particular facts that, if credited by the ultimate trier of fact, would suffice to establish personal jurisdiction. *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc.* 312 F.Supp.2d 247, 251 (D. Conn. 2004) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). If Plaintiffs' prima facie showing is not factually supported, or is based on conclusory allegations, the Court must uphold the dismissal of UCCS. *Ball*, 902 F.2d at 197 (noting that "*prima facie* showing must be factually supported"); *Barrett v. U.S.*, 646 F.Supp. 1345, 1350 (S.D.N.Y. 1986)

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

(citation omitted) (holding that a plaintiff's prima facie showing of personal jurisdiction cannot be based on mere conclusory statements).

## I. THE EXERCISE OF PERSONAL JURISDICTION OVER UCCS OFFENDS CONSTITUTIONAL DUE PROCESS.

Section 12 of the Clayton Act contains distinct venue and personal jurisdiction provisions:

> Any suit, action or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. As various courts have noted, the clause appearing before the semicolon relates to venue, while the clause that comes after the semicolon pertains to personal jurisdiction. *See Gen. Elec. Co. v. Bucyrus-Erie Co.*, 550 F.Supp. 1037, 1038 (S.D.N.Y. 1982) (noting that Section 12 consists of two clauses, "one relates to venue, the other to service and, as noted, personal jurisdiction"); *In re Tamoxifen Citrate Antitrust Litig.*, 262 F.Supp.2d 17, 21 (E.D.N.Y. 2003) (noting that Section 12 "provides both bases for venue and personal jurisdiction").

As is the case generally, venue and jurisdiction under Section 12 are analytically distinct principles. *RMS Titanic, Inc. v. Geller*, No. 3:99CV2401, 2000 WL 306997 at *2 (D.Conn. Jan. 10, 2000) ("[j]urisdiction and venue are closely related, but [the court] disagrees . . . that the two may actually be conflated into one concept"). "Personal jurisdiction 'goes to the court's power to exercise control over the parties,' while venue 'is primarily a matter of

5

choosing a convenient forum.'" *Id.* (quoting *Leroy v. Great Western United Corp.*, 443 U.S. 1733 (1979)). Accordingly, before this Court can assert personal jurisdiction over a nonresident defendant like UCCS, it must conduct a complete jurisdictional analysis, separate and apart from whatever decision it may make as to venue. *RMS Titanic, Inc.*, 2000 WL 306997 at *2-3; *In re Tamoxifen*, 262 F.Supp.2d 17. Indeed, in its November 17, 2003 order, this Court recognized that satisfying the venue provision of Section 12 does not automatically confer personal jurisdiction over a nonresident corporate defendant; courts still must determine whether the exercise of personal jurisdiction comports with due process. *See* Order, p. 8, fn.1 (the "next step" after analyzing venue under Section 12 "is to determine if exercising that personal jurisdiction violates the constitutional precepts concerning Due Process").[3] The touchstone of *every* personal jurisdiction inquiry is whether the requirements of constitutional due process have been satisfied, and Section 12 of the Clayton Act is no exception. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 307 F.Supp.2d 145, 148 (D. Maine 2004); *In re Tamoxifen*, 262 F.Supp.2d 17.

Plaintiffs, by concentrating exclusively on Section 12's venue clause, fail to mention, let alone conduct, a due process analysis. As a consequence, they present no proof that UCCS had the requisite minimum contacts with the forum, nor do they attempt to explain

---

[3]Because the Court found that UCAP waived its due process challenge, this Court has yet to determine whether personal jurisdiction meets constitutional standards with respect to any of the three foreign defendants. Accordingly, Plaintiffs may not assert that the Court's November 17, 2003 order is in any way determinative of this issue.

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

why maintenance of this suit in this forum would not offend traditional notions of fair play and substantial justice. For this reason alone, the Court should deny Plaintiffs' motion to vacate.

Personal jurisdiction is proper under the due process clause only when the plaintiff demonstrates that the nonresident corporate defendant "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotations and citations omitted); *In re Tamoxifen*, 262 F.Supp.2d at 24 (performing due process inquiry in antitrust action). In the present case, this requires Plaintiffs to make two showings: 1) that UCCS has had minimum contacts with the forum; and 2) that maintaining this suit in the forum does not offend traditional notions of fair play and substantial justice. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98-99 (2d Cir. 2000); *United States Sec. and Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). Plaintiffs cannot make either showing.

1. **UCCS Does Not Have Sufficient Minimum Contacts With The Forum For Personal Jurisdiction.**

The concept of "minimum contacts" can be divided into two categories: contacts that create general jurisdiction and those that create specific jurisdiction. *Helicopteros*, 466 U.S. at 414; *In re New Motor Vehicles*, 307 F.Supp.2d 145 (discussing general and specific jurisdiction in the context of antitrust lawsuit). General jurisdiction exists where the forum exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 415, n.9. Alternatively, specific

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

jurisdiction is present where the forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* at 414 n.8.

### A. UCCS Does Not Have Systematic or Continuous Contacts with the Forum.

General jurisdiction over UCCS is lacking because UCCS has not had systematic or continuous contacts with the forum. *Helicopteros*, 466 U.S. at 415-16. To support a finding of general jurisdiction, Plaintiffs must show that UCCS' "contacts [were] 'continuous' and 'substantial' (single or isolated activities are insufficient), and at a level 'that a party who enjoys the benefits of conducting business in a particular forum should be willing to bear the correlative burden of submitting to the forum's courts.'" *In re New Motor Vehicles*, 307 F.Supp.2d at 150 (quoting *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 462-63 (1st Cir. 1990)); *see also Travelers Indem. Co. v. TEC Am., Inc.*, 909 F.Supp. 249, 251 (M.D. Pa. 1995) ("mere minimum contacts are not enough to establish general jurisdiction – the nonresident's contacts to the forum must be continuous and substantial") (internal quotation marks and citations omitted). "If such contacts do not exist in sufficient abundance, the general jurisdiction inquiry ends." *In re New Motor Vehicles*, 307 F.Supp.2d at 150.

Preliminarily, Plaintiffs attempt to distract and confuse the Court by providing a list of UCC's Connecticut-based employees' involvement in Connecticut-based functions. *See* Plaintiffs' Motion to Vacate pp. 7-9. The actions of UCC's Connecticut employees are in no way determinative of whether UCCS, a separate Singapore entity, had minimum contacts with the forum. "[A] subsidiary does not achieve continuous and systematic contacts with the United States solely by having a parent company located in the United States." *In re Motor*

8

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

*Vehicles Canadian*, 307 F.Supp.2d at 154, fn. 6; *Henry v. Offshore Drilling (W.A.) Pty., Ltd.*, 331 F.Supp. 340, 341 (E.D. La. 1971) (it is a "well established rule that the mere fact of the existence of a parent-subsidiary corporate relationship does not subject a foreign corporation to domestic jurisdiction") (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273-74 (6th Cir. 1998) (courts generally must presume that companies holding themselves out as parent and subsidiary are in fact separate entities). Therefore, Plaintiffs may not impute the actions of UCC to UCCS for jurisdictional purposes. *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990) ("it is unfair to impute to the dominated corporation the forum contacts of its alter ego").

In addition, the evidence Plaintiffs offer to support their motion to vacate – which consists primarily of some invoices purportedly reflecting purchases made by UCCS from UCC, and a few expense reports allegedly reflecting trips taken by UCCS employees to Connecticut – falls far short of demonstrating that UCCS had systematic and continuous contacts with the forum. Plaintiffs claim that they can prove that UCCS made purchases from UCC in Connecticut simply because some of the invoices they submit are stamped with UCC's Danbury, Connecticut address. However, the record reflects that these invoices are meaningless for purposes of this Court's minimum contacts analysis. For instance, the deposition of former UCC/Dow employee Christine Berti confirms that the presence of Danbury, Connecticut on the UCC invoice letterhead is immaterial:

> Q. [O]ther than the presence of Danbury, Connecticut in the letterhead of this invoice, does the invoice on it indicate anywhere the involvement of anyone in Danbury, Connecticut, in this order process?

9

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**

A. No, not to my knowledge, no.

Transcript of Deposition of Christine Berti dated October 1, 2004 ("Berti Dep."), pp. 66-67, Exhibit A. Indeed, according to Ms. Berti, "[t]he only two reasons for the invoice were to clear customs, as a customs clearance document, and as a document to trigger payment from the responsible party to make payment." *Id.* at p. 72.

There is further support in the record for the paucity of contacts between UCCS and the forum. The centralized computer system through which UCCS placed its orders was located in West Virginia, not Connecticut. Berti Dep., p. 32 (SAP R3 computer system located in West Virginia) and p. 36 (ISIS computer system located in West Virginia). Moreover, the orders UCCS inputted into the centralized computer system from Singapore were routed through UCC's customer service centers in Houston, Texas and Somerset, New Jersey, not Connecticut. *Id.* at pp. 16-18 (discussing UCC employees who handled international export customer service in New Jersey) and pp. 54-55 (discussing transmittal of orders via centralized computer system to UCC customer service representative in Houston, Texas). Overall, Ms. Berti description of UCCS' typical order process reveals that UCCS did not purchase products, either directly or indirectly, from the forum:

> Q. Am I correct that a customer service representative at UCCS in Singapore would initiate the order process in some way?
>
> ...
>
> A. They initiated the process in the system, but the customer in the region would have initiated the order with the salesman originally, and then that order would wind up at Union Carbide Customer Services in Singapore for processing in the system.

10

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**

> Q. What would the UCCS customer service representative physically do to place the order?
>
> ...
>
> A. The customer service rep at UCCS would enter in all the information that they had available to them from the customer.
>
> ...
>
> Q. And this is all within the R3 [computer] system?
>
> A. Within the R3 system. [T]he order would be then looked at by a customer service rep in Houston . . . and they would then view that order, and complete that order placing the order on the correct plant for sourcing.

*Id.*, pp. 92-94.

Notably, the record demonstrates one simple fact: that UCCS simply inputted orders from Singapore into a centralized computer system located in West Virginia. As discussed above, what UCC did with the order from that point on is irrelevant for purposes of this Court's due process inquiry. UCC's actions are not demonstrative of *UCCS'* minimum contacts with the forum, and cannot be imputed to UCCS for jurisdictional purposes. Indeed, "it is [the defendant's] own acts, not the acts of another, that establish the jurisdictional minimum contact with a state." *Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882, 890 (S.D. Tex. 1993); *Helicopteros*, 466 U.S. at 417 ("[u]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). Because Plaintiffs do not offer a shred of

11

meaningful evidence that demonstrates that UCCS purchased products in the forum, they fail to make the requisite showing of minimum contacts.

Moreover, the Supreme Court has succinctly noted that "mere purchases, even if they occur at regular intervals, are not enough to warrant a [forum's] assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros,* 466 U.S. at 417 (finding that purchasing helicopters, equipment and training services from forum for substantial sums did not constitute minimum contacts). Notwithstanding the fact that Plaintiffs cannot show that UCCS purchased any products from the forum, Plaintiffs fail to demonstrate that any of UCCS' alleged purchase transactions are related to Plaintiffs' claims. *See also Structural Panels, Inc. v. Texas Aluminum Indus., Inc.* 814 F.Supp. 1058, 1066-67 (M.D. Fla. 1993) (defendant's purchases of a large volume of products from the forum state over a period of five years did not create general jurisdiction); *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425, 1436 (N.D. Ind. 1994) (citing *Helicopteros* for the proposition that purchase-related transactions are insufficient for a finding of general jurisdiction); *In re New Motor Vehicles*, 307 F.Supp.2d at 150 (purchasing vehicles parts from the United States will not support general jurisdiction).

Furthermore, the fact that some of UCCS' employees made a few business trips to Connecticut does not support a finding of personal jurisdiction. Courts have routinely held that a foreign corporation's isolated trips to the forum do not constitute "minimum contacts" for jurisdiction purposes. *Helicopteros,* 466 U.S. at 416 (sending personnel and officers to the forum for training sessions and contract negotiations was insufficient to warrant personal

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**

jurisdiction over nonresident corporate defendant); *In re New Motor Vehicles*, 307 F.Supp.2d at 150 (evaluating general jurisdiction under the Clayton Act, and holding that "attending general meetings in the United States . . ., without more, will not support general jurisdiction"); *In re Ski Train Fire in Kaprun, Australia on November 11, 2000*, 342 F.Supp.2d 207, 213 (S.D. N.Y. 2004) ("occasional and apparently random visits to a forum state by officers of a foreign corporation are insufficient to establish general jurisdiction"); *accord* Philip E. Areeda & Hebert Hovenkamp, IA *Antitrust Law* ¶ 271c, c2, at 340, 342 (2d ed. 2000) (citations omitted) (a few meetings, isolated visits, attendance at trade association meetings (at least when not related to the litigation's subject matter), sponsorship of national advertising, and purchase of American parts by a foreign corporation are insufficient contacts for personal jurisdiction).[4]

Moreover, the very evidence Plaintiffs rely on to prove that UCCS traveled to Connecticut is questionable. Several of the expense reports and travel documents they submit actually reflect trips made by UCAP employees to Connecticut, and Plaintiffs admit that they do not know if these trips even occurred on behalf of UCCS. *See, e.g.,* Downey Aff., Exhibit O

---

[4] Plaintiffs also claim that two UCCS employees maintained voicemail boxes and/or email addresses at UCC in Connecticut. However, as to one of these individuals, Wilson Foo, Plaintiffs proffered the very same document upon which they presently rely in their opposition to UCAP's motion to dismiss for lack of personal jurisdiction, and, at that time, identified Wilson Foo as a UCAP Regional Manager. *Compare* Plaintiffs' Motion to Vacate, Affidavit of Alicia Downey ("Downey Aff.") Exhibit M (email from Wilson Foo) and Memorandum of Law in Opposition to Defendants UCAP, UCCS and Dow Singapore's Motions to Dismiss Plaintiffs' First Amended Complaint For Lack of Personal Jurisdiction dated July 3, 2003, Affidavit of Richard S. Taffet, Exhibit 38 (same). Plaintiffs cannot use this same evidence against UCCS. In any event, even if these employees maintained voicemails or emails in Connecticut, Plaintiffs provide no authority for the proposition that such action in the forum, by itself, constitutes a "minimum contact" for personal jurisdiction purposes.

(UCAP expense report); Exhibit P (email from "VK Moorthy at UCAP" discussing trip to Danbury); Plaintiffs' Motion to Vacate at p. 15, n.19 (acknowledging that travel documents are ambiguous as to whether they relate to UCAP or UCCS trips). To get around this fatal flaw, Plaintiffs ask the Court to assume that these trips must have been taken, in part, on behalf of UCCS, because, according to them, UCC and its subsidiaries were so interconnected that "they all must have discussed UCCS business in the course of their visits to Danbury." *Id.* This is pure speculation. Plaintiffs may not rely on conclusory allegations to prove personal jurisdiction. *Barrett*, 646 F.Supp. at 1350 (citation omitted). If they are unable to aver particular facts demonstrating the existence of minimum contacts by UCCS, they cannot ask the Court to invent them.

### B. Specific Jurisdiction Over UCCS Is Absent Because UCCS' Alleged Contacts With The Forum Are Unrelated To Plaintiffs' Claims.

Plaintiffs have not alleged that specific jurisdiction over UCCS is present, and accordingly, have waived this argument. However, it is clear that Plaintiffs cannot prove that UCCS is subject to this Court's specific jurisdiction. To justify specific jurisdiction, Plaintiffs must satisfy a two-part test. First, they "must show that their claims arise out of or relate to [UCCS'] contacts with the forum state." *Savage v. Scripto-Tokai Corp.*, 147 F.Supp.2d 86, 91 (D. Conn. 2001) (citing *Helicopteros*, 466 U.S. 408). Second, Plaintiffs must demonstrate "that [UCCS] 'purposefully directed' its activities at residents of the forum . . . and that [UCCS] could reasonably foresee being haled into court there." *Id.* (citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (court cannot exercise personal

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

jurisdiction unless defendant purposefully directed activities at forum state and litigation results from alleged injuries that arise out of or relate to those activities).

Overall, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "The cornerstones of purposeful availment are voluntariness and forseeability of being haled into the forum's courts." *In re New Motor Vehicles*, 307 F.Supp.2d at 151; *Burger King*, 471 U.S. at 474 ("'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there'") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Requiring purposeful availment ensures "that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (internal quotation marks and citation omitted).

Plaintiffs cannot satisfy either element of the specific jurisdiction test. Neither of the two alleged "contacts" at issue – UCCS' alleged purchases of products from UCC and its isolated trips to Connecticut – is related to this litigation. As to the alleged purchases, as noted above, Plaintiffs cannot demonstrate that these purchases occurred in the forum. Moreover, there is no evidence that the bundle of invoices Plaintiffs submit are in any way connected to their claims. Plaintiffs do not even identify which, if any, of these purchases might be relevant to this dispute. Likewise, no causal nexus exists between UCCS' purported travels and Plaintiffs claims. Indeed, Plaintiffs cannot demonstrate the purpose of nearly all of these trips, and where

15

they can, their own description reveals that they were wholly unrelated to this matter. *See* Plaintiffs' Motion to Vacate, p.11(d.) (alleging that UCCS employees traveled to Connecticut to attend computer training sessions).

Plaintiffs also cannot establish that UCCS purposefully availed itself of the benefits and protections of U.S. law based on its attenuated, intermittent contacts with the forum. None of its actions were purposefully aimed at residents of the forum, such that UCCS could reasonably "expect, by virtue of the benefits [it] received, to be subject to the court's jurisdiction based on these contacts." *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001). By routing orders through a centralized computer system located in West Virginia, or traveling, on occasion, to Connecticut, UCCS could not reasonably foresee being brought into court in the forum. *See, e.g., Creighton Ltd. v. State of Qatar*, 181 F.3d 118, 128 (D.C. Cir. 1999) ("purchaser who selects an out of state seller's goods or services based on their economic merit does not thereby purposefully avail itself of the seller's state law, and does not merely by purchasing from the seller submit to the laws of the jurisdiction in which the seller is located or from which it ships its merchandise") (quoting *Health Communications Inc. v. Mariner Corp.*, 860 F.2d 460, 464-65 (D.C. Cir. 1988)). Indeed, any purchases made by UCCS were intended for customers in Asia, not the forum.

2. **The Exercise Of Personal Jurisdiction Over UCCS Would Offend Traditional Notions of Fair Play and Substantial Justice.**

Because Plaintiffs cannot make the threshold showing of minimum contacts, it is unnecessary to evaluate whether personal jurisdiction is fair and reasonable. *Donatelli*, 893 F.2d at 465 ("if the constitutionally necessary first-tier minimum is lacking, the inquiry ends")

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

(cited in *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). Nevertheless, it is clear in this case that exercising jurisdiction over UCCS would be neither fair nor reasonable.

In deciding whether personal jurisdiction offends traditional notions of fair play and substantial justice, courts examines the following five factors: 1) the burden on the defendant; 2) the forum interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987).

An evaluation of these factors weighs heavily in favor of UCCS. UCCS will be severely burdened if it is forced to travel from Singapore to defend itself in the United States. *Asahi*, 480 U.S. at 114 ("the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders"). Indeed, the Supreme Court cautions that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115; *see also City of Monroe Employees Ret. Sys. V. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005) (acknowledging burden placed on Japanese defendant where circumstances might necessitate travel to the United States for trial or other litigation-related matters). Moreover, the forum's interests in adjudicating Plaintiffs' antitrust claim against UCCS are minimal given that any alleged injury occurred in

17

India, not the United States. In addition, UCCS' presence in this action is not required for Plaintiffs' to achieve complete relief, if any is warranted, because Defendants UCC and TDCC have not contested personal jurisdiction. The marginal addition of UCCS would add nothing to Plaintiffs' potential recovery. *Id.* (holding that the interests of United States and plaintiffs in reasonableness inquiry "are relatively light" given that key defendants, two corporate entities with substantial ongoing business affairs in the United States, conceded jurisdiction, and "the marginal addition of [the foreign defendant] would add little or nothing to the potential recovery should the plaintiffs ultimately prevail").

## CONCLUSION

For the reasons set forth herein, UCCS respectfully requests that the Court deny Plaintiffs' Motion to Vacate, and uphold its November 17, 2003 order dismissing all claims against UCCS for lack of personal jurisdiction.

Dated: _____

Respectfully Submitted,

_____
Craig A. Raabe (ct 04116)
Marion B. Manzo (ct22068)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

Nathan P. Eimer (ct 23693)
Scott C. Solberg (phv0234)
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL  60604
(312) 660-7600

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

## CERTIFICATE OF SERVICE

This is to certify that a copy of this Response to Plaintiffs' Motion to Vacate the Order Granting Rule 12(b)(2) Motions to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction was forwarded this 27th day of April, 2005, by first-class mail, postage prepaid, to the following counsel as follows:

Alicia L. Downey, Esq.
Bingham McCutchen, LLP
150 Federal Street
Boston, MA  02110

Richard S. Taffet, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY  10022-4689

Suzanne Wachsstock, Esq.
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325

Christopher J. Kelly, Esq.
Mayer Brown Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

Robert M. Langer, Esq.
Steven Bruce Malech, Esq.
Wiggin & Dana LLP
One CityPlace
185 Asylum Street
Hartford, CT  06103

Michael S. Elkin, Esq.
Susan B. McInerney, Esq.
Alyson L. Redman, Esq.
Thelen Reid & Priest LLP
875 Third Avenue
New York, NY  10022-6225

Andrew Marovitz, Esq.
Britt M. Miller, Esq.
Dana S. Douglas, Esq.
Mayer Brown Rowe & Maw LLP
190 South LaSalle Street
Chicago, IL 60603-3441

_____
Marion B. Manzo