UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2005 MAY 23 P 5: 08
US DISTRICT COURT
HARTFORD CT

MM GLOBAL SERVICES, INC., MM GLOBAL )
SERVICES PTE. LTD., AND MEGAVISA )
SOLUTIONS (S) PTE. LTD., )
)
                                      Plaintiffs, )
)   CIVIL ACTION
             v. )   NO.  3:02 CV 1107 (AVC)
)
THE DOW CHEMICAL COMPANY, UNION )   May 23, 2005
CARBIDE CORPORATION, UNION CARBIDE )
ASIA PACIFIC, INC., UNION CARBIDE )
CUSTOMER SERVICES PTE. LTD., AND DOW )
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., )
)
                                      Defendants. )
)

**PLAINTIFFS' CONSOLIDATED REPLY BRIEF IN FURTHER SUPPORT OF
THEIR MOTION TO VACATE THE ORDER GRANTING
RULE 12(b)(2) MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT FOR
LACK OF PERSONAL JURISDICTION**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (FAX)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Services Pte. Ltd.
and Megavisa Solutions (S) Pte. Ltd.*

LITDOCS/602476.1

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................ 1

II. SUPPLEMENTAL FACTS RELEVANT TO RESPONDING TO UCCS'S AND DOW SINGAPORE'S OPPOSITIONS TO THE MOTION TO VACATE ..................... 3

III. ARGUMENT ................................................................................................................ 5

    A. UCCS and Dow Singapore Fail to Rebut the Conclusion That They Transacted Business of a Substantial Character with UCC/Dow in Connecticut ................................................................................................. 5

    B. Subjecting UCCS and Dow Singapore To Jurisdiction In This Court Is Consistent With Principles of Due Process ........................................... 7

        1. Both UCCS and Dow Singapore Have Sufficient "Minimum Contacts" With UCC/Dow in Connecticut to Satisfy Fifth Amendment Due Process Requirements .................................................. 7

        2. UCCS and Dow Singapore Fail to Show That Subjecting Them to Personal Jurisdiction in This Court Would be "Unreasonable." ................ 9

IV. CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir. 1999) ..................................................................................................................2

*Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987) .......................11

*Burger King Corp., v. Rudzewicz*, 471 U.S. 462 (1985) ..................................................8, 9

*Combustion Eng'g, Inc. v. NEI Int'l Combustion Ltd.,*, 798 F. Supp. 100 (D. Conn. 1992) ..........................................................................................................8

*Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A.*, 128 F. Supp. 2d 86, 92-93 (D. Conn. 2001) ..........................................................................................................7

*Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989)................................2

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ........................8

*In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.2d 288 (3d Cir. 2004) ...............2

*In re New Motor Vehicles Canadian Expert*, 307 F. Supp. 2d 145 (D. Me. 2004) ..............2

*Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161 (D. Conn. 1996) ......................7, 8

*Milne v. Catuongo Court Reporting Serv., Inc.*, 239 F. Supp. 2d 195 (D. Conn.. 2002) ......................................................................................................9, 10

*School District of Philadelphia v. Harper & Row Publishers, Inc.*, 267 F. Supp. 1006 (E.D. Pa. 1967)..................................................................................................5

*United States v. Burlington Industries, Inc.*, 247 F. Supp. 185 (S.D.N.Y. 1965).................6

*United States v. Scophony Corp. of America*, 333 U.S. 795 (1948) ....................................7

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .....................................7

LITDOCS/602476.1

## I. PRELIMINARY STATEMENT

Plaintiffs submit this reply to the separately filed oppositions of Union Carbide Customer Services Pte. Ltd ("UCCS") and Dow Chemical Pacific (Singapore) Pte. Ltd. ("Dow Singapore") to Plaintiffs' Motion to Vacate the Court's Order of November 17, 2003. Plaintiffs' moving brief shows that even on the partial record developed to date, it is beyond question that both UCCS and Dow Singapore "transacted business" with Connecticut-based Union Carbide Corporation ("UCC") substantial enough (in fact, totaling billions of dollars) to satisfy Section 12 of the Clayton Act.

Indeed, given that UCC's highest-level sales and marketing, financial, and logistical managers were all based in Connecticut, and that UCCS and Dow Singapore contracted with UCC/Dow to buy products under terms and processes determined, directed, and controlled by those managers, the Court need not even address the primary, yet misdirected, arguments of UCCS and Dow Singapore concerning the incidental involvement of out-of-state order takers, or the physical location of the UCC/Dow telephone and computer equipment.[1] The showing of UCCS's and Dow Singapore's "substantial purchasing activity," within the meaning of Section 12, the evidence of employees' Danbury voicemail and email addresses, and the evidence of regular business-related travel to Connecticut by UCCS and Dow Singapore directors, officers, and employees, allows plaintiffs to more than meet their burden of showing cause why the Court should vacate its November 2003 Order.

UCCS and Dow Singapore's renewed due process arguments are meritless. The

---

[1] Dow Singapore asserts that the evidence that UCC's computer system was not physically housed in Connecticut somehow "knocked the legs out from [plaintiffs'] most crucial allegations." *See* Dow Singapore Opposition at 9. Absent from the opposition briefs, however, is any authority for the notion that the physical location of a company's communications or order-taking system determines where that company "transacts business" for purposes of Section 12. The "crucial" fact relied on by Plaintiffs is that UCC/Dow senior management in Danbury directed and controlled the centralized, company-wide, global order entry and email communications and operations in all material respects, and as a result the transactions involved Connecticut intimately.

arguments are based on conclusory generalizations and cannot be sustained in view of the previously submitted and supplemental evidence of "minimum contacts" by UCCS and Dow Singapore with Connecticut, which together establish a basis for finding not only general but specific jurisdiction under any applicable standard.[2]

The evidence of "minimum contacts" is indisputably clear. Both UCCS and Dow Singapore have transacted millions of dollars in business with UCC/Dow in Connecticut. These transactions entailed more than purchases, including the provision of samples, negotiation and acceptance of returns, exchanges, issuance of credits, and other activities incident to such transactions. UCCS and Dow Singapore also regularly and systematically communicated directly with UCC/Dow in Connecticut by telephone and email about the pricing, fulfillment, allocation, delivery, and other terms governing not only these transactions but also the corresponding resale transactions to be effectuated through UCCS and Dow Singapore. A substantial portion of these resale transactions, of course, were the sales to plaintiffs that form the basis of the claims in this case.

Even beyond buying from UCC/Dow in Connecticut, audited financial statements reflect that UCCS paid commissions to and borrowed funds from UCC/Dow. See Exhibit L to the Affidavit of Alicia L. Downey ("Downey Aff.") submitted with the Motion to Vacate. In addition, there is evidence, including the previously submitted meeting agendas and emails that

---

[2] The argument that plaintiffs have "waived" this issue by not fully briefing it in support of their Motion to Vacate is particularly desperate. Plaintiffs' memorandum of law expressly incorporated by reference all of their previous arguments, which did address the due process issue. Another issue that Plaintiffs do not waive, but instead request the Court to reconsider, is their argument that the relevant contacts of foreign defendants, for both Section 12 and due process jurisdictional purposes, are those with the United States as a whole, not the state in which the district court sits. *See In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.2d 288, 296-98 (3d Cir. 2004) (collecting authorities); *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 718 (5th Cir. 1999); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989); *In re New Motor Vehicles Canadian Expert*, 307 F. Supp. 2d 145, 149-50 (D. Me. 2004) (following reasoning of *In re Automotive Refinishing Paint*). Under this standard, there can be no dispute that, simply by virtue of the regular and systematic order-placement communications with UCC/Dow that UCCS and Dow Singapore themselves emphasize, this Court has personal jurisdiction over them.

both UCCS and Dow Singapore communicated with UCC/Dow personnel in Connecticut by email, by telephone, and in person about global marketing strategies, credit policies, and other matters regarding the common business interests of defendants and their subsidiaries, including matters related to marketing of the very products at issue in this case. All of this evidence, properly viewed in its totality—not in the disjointed and selective fashion urged by UCCS and Dow Singapore—demonstrates that the exercise of personal jurisdiction over these two parties is not only proper, but compelled.

Finally, the Court should swiftly reject the notion that notwithstanding the evidence of "minimum contacts," the exercise of personal jurisdiction over UCCS and Dow Singapore would be so "unreasonable" as to violate the Fifth Amendment. Indeed, UCCS's and Dow Singapore's arguments in this regard do little more than echo the unavailing *forum non conveniens* arguments that the Court twice rejected, first in its April 17, 2003 Order, and then again, in its March 24, 2004 Order on defendants' renewed motion.

## II.   SUPPLEMENTAL FACTS RELEVANT TO RESPONDING TO UCCS'S AND DOW SINGAPORE'S OPPOSITIONS TO THE MOTION TO VACATE

By way of a brief summary, the evidence submitted with plaintiffs' moving brief established the following:

- Audited financial statements and invoices show that UCCS and Dow Singapore each entered into contracts with Danbury-based UCC for millions of dollars of products before and after the merger with Dow became effective. Invoices for a significant number of these transactions specifically indicate, on their face, that UCC in Danbury, Connecticut was the seller. *See* Downey Aff., Exhibits C, D, and L.

- The transactions between UCCS and UCC/Dow in Connecticut, and those between Dow Singapore and UCC/Dow in Connecticut, included not only sales but also the processing of "samples, returns, [and] exchanges." *See* Downey Aff., Exhibit E, Dow/UCC/UCAP's Answer to First Personal Jurisdiction Interrogatory No. 1, at 9.

- Every order placed by UCCS or Dow Singapore with UCC during the relevant time period was processed by the Booking Department in Danbury. Many orders, including all bulk orders, were fulfilled under the direction and approval of Danbury-based Product Managers, Business Managers, and Business Directors.

*See* Downey Aff., <u>Exhibit F</u>, *cited in* Plaintiffs' moving brief at page 8.

- UCCS's Assistant Treasurer and at least one of its Marketing Managers maintained separate Singapore and Danbury email and/or voicemail addresses. Downey Aff., <u>Exhibits M</u> and <u>N</u>.

- UCCS and Dow Singapore directors, managers, and employees traveled on business to Danbury on multiple occasions to attend meetings, receive training, and to conduct business with UCC/Dow. *See* Downey Aff., <u>Exhibits O-U</u>, *cited in* Plaintiffs' moving brief at pages 10-12.

In addition to the above, UCCS's audited financial statements disclose not only "purchases from" but also "commissions paid to" the Holding Company, defined as UCC. *See, e.g.*, Downey Aff. <u>Exhibit L</u>, at L12, L28, L43. The statements also disclose substantial sales <u>by</u> UCCS <u>to</u> UCC. *See, e.g., id.* at L59 ($9,835,886), L73 ($4,521,280).[3]

On May 10, 2005, ten months after service of plaintiffs' personal jurisdiction discovery requests and almost two weeks <u>after</u> the filing of UCCS's and Dow Singapore's opposition papers, Dow Singapore and defendants The Dow Chemical Company ("Dow"), UCC, and UCAP served their respective Third Supplemental Responses and Objections to Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories.[4] See Supplemental Affidavit of Robert M. Langer ("Supp. Langer Aff."), <u>Exhibit A</u>. The Dow/UCC/UCAP Supplemental Responses establish the following:

- Five out of six "persons with knowledge of [UCC's or Dow's] sales to UCCS and Dow Singapore" were located in Danbury, Connecticut for as long as they were affiliated with UCC, and at least one person, Neal Whys, remained in Danbury, even after the merger with Dow. *See* Answer to Interrogatory No. 4.

---

[3] These figures are in Singapore dollars.

[4] UCCS and Dow Singapore inexplicably claim in their opposition briefs that they and the defendants had by that time provided all requested personal jurisdiction information to plaintiffs. In the midst of the briefing of this motion, however, Dow Singapore and the Defendants were still in the process of supplementing their discovery responses—for the third time. Moreover, the supplemental responses still do not contain all the information that defendants, in correspondence and multiple discovery conferences, expressly undertook to provide, including but not limited to the dates of employment for the persons identified in their responses.

- The Business Directors for UCC's Industrial Performance Chemicals (IPC), Wire & Cable (W&C), and Solvents, Intermediates & Monomers (SIM) product groups all operated from Danbury. *Id.* These were products purchased by plaintiffs from UCCS and Dow Singapore for resale. See First Amended Complaint ¶ 14.

- The positions of Export Sales Manager, Global Business Manager, and International Business Manager for various relevant UCC/Dow product groups were based in Danbury. *See* Answer to Interrogatory No. 4.

### III.    ARGUMENT

**A.    UCCS and Dow Singapore Fail to Rebut the Conclusion That They Transacted Business of a Substantial Character with UCC/Dow in Connecticut.**

In determining whether Section 12 confers jurisdiction over UCCS and Dow Singapore, "the sum total of sundry relevant activities considered in light of the circumstances of the particular case is more the question than the predomination of one fact over another." *School Dist. of Philadelphia v. Harper & Row Publishers, Inc.*, 267 F. Supp. 1006, 1009 (E.D. Pa. 1967) (emphasis added). Here, Section 12 of the Clayton Act is satisfied by the sum total of the evidence of UCCS's and Dow Singapore's purchasing activity, the maintenance of Danbury email and voicemail addresses, and Connecticut travel by their directors, officers, and employees. Dow Singapore nevertheless baldly asserts that it and UCCS "simply had no contact with Connecticut" because the order fulfillment activity that took place in Connecticut in connection with their purchases "was invisible" to them.[5] These statements cannot be squared

---

[5] Dow Singapore's brief relies on numerous unsupported factual assertions to dispute the evidence submitted by plaintiffs. *See, e.g.*, Dow Singapore Opposition at pages 13-16. But if there is any dispute as to whether Connecticut-based UCC/Dow employees played only "incidental" roles with respect to the orders UCCS and Dow Singapore placed, the Court "must resolve all doubts" in the plaintiffs' favor. November 17, 2003 Order at 4 (citations omitted). In all events, as discussed herein, the evidence adduced by plaintiffs does not support Dow Singapore's characterization of the involvement of Danbury personnel in their transactions with UCC/Dow.

with the evidence. Invoices (Downey Aff. <u>Exhibits</u> <u>C</u> and <u>D</u>),[6] Document Transmittals (Downey Aff. <u>Exhibit</u> <u>K</u>) and emails (*see, e.g.*, July 3, 2003 Affidavit of Richard S. Taffet ("Taffet Aff.") <u>Exhibits</u> <u>6</u>, <u>7</u>, <u>8</u>, <u>10</u>, <u>11</u>, <u>14</u>, <u>16</u>, <u>17</u>, <u>36</u>; Downey Aff. <u>Exhibits</u> <u>M</u> and <u>N</u>), all of which have been previously submitted to the Court, provide proof of Dow Singapore's and UCCS's regular and systematic communications with UCC and activities in Danbury, Connecticut.

Dow Singapore's argument that such activity is insufficient for establishing jurisdiction under Section 12, because it does not demonstrate that the purchasing activity was "directed by Dow Singapore to Connecticut," misses the point. As a threshold matter, there is no "state-of-mind standard" under Section 12 that requires a party's business transactions to be intentionally directed to the forum state. Indeed, Dow Singapore's attempt to distinguish the cases relied on by plaintiffs (and the Court in its November 17, 2003 Order) ignores the millions (if not billions) of dollars of transactions involving Danbury, Connecticut that occurred during the relevant period, between UCC as the seller, and UCCS and Dow Singapore as the buyers.[7] Order takers and factories may have been located elsewhere, but Connecticut-based executives, managers, and operations personnel were involved day-to-day in significant, meaningful ways in all or substantially all of these transactions. In short, under the "practical, nontechnical, business

---

[6] UCCS claims that invoices on Danbury letterhead are "meaningless." UCCS Opposition at 9-10. At the same time, they admit that their own witness testified that those very documents were used "as a customs clearance document and as a document to trigger payment from the responsible party." UCCS Opposition at 10 (emphasis added). Thus, by their own admission such documents are not "meaningless" for purposes of the transactions to which they relate.

[7] Indeed, Dow Singapore's attempt to distinguish this case from *United States v. Burlington Industries, Inc.*, 247 F. Supp. 185, 187-88 (S.D.N.Y. 1965), falls especially flat. As described by Dow's 30(b)(6) witness, the UCC order takers in Houston are little different in the scope of their decision-making authority as to pricing, allocation, delivery, logistics, or credit terms, from the passive representatives in the *Burlington Industries* case. Downey Aff., <u>Exhibit</u> <u>F</u> at 94-100 ("The customer service rep at UCCS would enter in all the information they had available to them from the customer . . . . The order would then be looked at by a customer service rep in Houston . . . they would then review that order, and complete that order placing the order on the correct plant for sourcing."). As noted above, all shipping and logistics were arranged by the Booking Department in Danbury, and whenever product was scarce or in the case of all bulk orders, business managers in Danbury made allocation decisions. Allocation decisions were in turn communicated to the customer service reps by the inventory planners. *See id.*

standard supplied by 'or transacts business' in" Section 12, UCCS and Dow Singapore "transacted business" in the State of Connecticut, specifically, with UCC. *Cf. United States v. Scophony Corp. of Am.*, 333 U.S. 795, 810 (1948).

UCCS and Dow Singapore are likewise mistaken in their position that the evidence of travel to Connecticut by their employees and the use of Danbury email and voicemail addresses is too sparse to establish jurisdiction under Section 12 or otherwise. Plaintiffs have not argued, nor do they now, that six business trips or two voicemail boxes, by themselves, warrant vacating the November 17, 2003 Order. But the documentary evidence of routine business travel, which neither UCCS nor Dow Singapore can credibly represent as reflecting all of the trips to Connecticut undertaken by their directors, officers and employees, is simply one aspect of business relationships replete with regular communications and contacts by UCCS and Dow Singapore with Danbury. Likewise, the evidence of Danbury email and voicemail addresses is one of many highly relevant factors.

The totality of the evidence of UCCS's and Dow Singapore's uncontested transactions and communications with UCC/Dow in Danbury, combined with the evidence of their physical and virtual presence in the State, more than satisfy Section 12. On that basis, the Court should vacate the November 17, 2003 Order.

> **B.      Subjecting UCCS and Dow Singapore to Jurisdiction in This Court Is Consistent With Principles of Due Process.**
>
> > **1.      Both UCCS and Dow Singapore Have Sufficient "Minimum Contacts" With UCC/Dow in Connecticut to Satisfy Fifth Amendment Due Process Requirements.**

This Court is permitted to maintain personal jurisdiction over the foreign defendants "so long as there exist 'minimum contacts' between the defendants and the forum," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980), and the minimum contacts are such that [a nonresident defendant] would reasonably anticipate being hauled into court there." *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161, 164 (D. Conn. 1996). *See Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A.*, 128 F. Supp. 2d 86, 92-93 (D. Conn. 2001). As

plaintiffs pointed out in their initial opposition to the Motions to Dismiss, determining whether the requisite "minimum contacts" exist to subject a defendant to suit requires "a qualitative examination of the relationship between the defendant, the forum, and the litigation." *Combustion Eng'g, Inc. v. NEI Int'l Combustion Ltd.,*, 798 F. Supp. 100, 105 (D. Conn. 1992). As in the analysis of jurisdiction under Section 12, "the due process inquiry rests upon the totality of the circumstances rather than any mechanical criteria." *Inset Sys.,* 937 F. Supp. at 165.

Both UCCS and Dow Singapore contest jurisdiction by the same method of argument. First, they selectively slice individual examples of their business activities with UCC/Dow in Connecticut away from the totality of the evidence. Then they hold each small slice up to scrutiny as if it were argued as the sole basis for jurisdiction. Not surprisingly, according to them, they win every time. The premises of these arguments, however, are false, and they defy the legal mandate to assess the totality of the circumstances. *See Inset Sys.,* 937 F. Supp. at 165. Thus, these arguments fail.

Specific jurisdiction exists because plaintiffs' causes of action clearly "arise out of or relate to" UCCS's and Dow Singapore's purposeful conducting of business with UCC/Dow in Connecticut. *See Burger King Corp., v. Rudzewicz,* 471 U.S. 462, 471 (1985). According to defendants, UCCS and Dow Singapore "sold the Products to Plaintiffs" and then "Plaintiffs resold the Products to end-user customers in India." *See* Answer and Affirmative Defenses of Defendant The Dow Chemical Company to the First Amended Complaint, ¶ 14 (September 29, 2003); Defendant Union Carbide Asia Pacific, Inc.'s Answer and Additional Defenses to Plaintiffs' First Amended Complaint, ¶ 14 (December 3, 2003). Accordingly, UCCS and Dow Singapore purportedly bought products from UCC to fulfill orders placed by plaintiffs. *See* Affidavit of David Yap, ¶ 15, Taffet Aff. Exhibit 40. Thus, relying on defendants' own admissions, virtually every transaction at issue in this case was "related to" or "arising out of" sales from UCC/Dow to either UCCS or Dow Singapore, which, as shown, involved an extensive regular and systematic relationship between each of them and this forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). This is the case

specifically in connection with the transactions giving rise to the claims in this case. UCCS and Dow Singapore engaged in ongoing contacts with Connecticut sufficient to establish specific jurisdiction over each of them. *See Burger King, supra.*

Moreover, properly viewing the totality of the circumstances described above and in plaintiffs' previous submissions, UCCS's and Dow Singapore's respective contacts with UCC/Dow and their contacts with this forum were sufficiently "continuous and systematic" to establish general jurisdiction over each of them. *See Milne v. Catuongo Court Reporting Serv., Inc.*, 239 F. Supp. 2d 195, 204 (D. Conn. 2002). In arguing to the contrary, UCCS and Dow Singapore overlook, or seek to have the Court overlook, the evidence that UCCS's own employees held themselves out, and by implication their company, as having a presence in Connecticut. By the same token, they try to deny that they transacted any business with anyone in the State, despite the overwhelming evidence of millions of dollars in transactions necessarily involving both Danbury personnel and themselves. This Court has general jurisdiction over UCCS and Dow Singapore in such circumstances.

### 2. UCCS and Dow Singapore Fail to Show That Subjecting Them to Personal Jurisdiction in This Court Would be "Unreasonable."

For all the reasons previously argued and for the additional reasons set forth herein, it would not be unreasonable or unfair if this Court were to exercise personal jurisdiction over both UCCS and Dow Singapore. Where the requisite minimum contacts have been established, it is the defendant that must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Courts examine five factors in determining whether personal jurisdiction offends "traditional notions of fair play and substantial justice": 1) the burden on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining the most efficient resolution of the controversy; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive

policies. *Milne*, 239 F. Supp. 2d at 205. Understandably, neither UCCS nor Dow Singapore urges the Court to examine these five factors at any length.

With regard to the first factor, the claim of unreasonable burden is hollow. UCCS and Dow Singapore have had and will have no greater practical difficulty appearing in this Court than Singapore-based defendant UCAP. All three are close affiliates of defendants. Their personnel engaged in frequent travel and contacts with UCC/Dow while the company was headquartered in Connecticut. UCCS is represented by the same counsel as UCC and UCAP, while Dow Singapore is represented by the same counsel as Dow.

Second, the State of Connecticut, no less than the United States generally, has a strong, legitimate interest in adjudicating plaintiffs' antitrust claims. Plaintiffs allege, and the evidence previously submitted to the Court clearly establishes, that one of the State's largest corporate citizens, UCC/Dow, throughout the relevant time period, was involved in a *per se* illegal price-fixing conspiracy directed by and carried out through meetings and communications within, to and from UCC/Dow headquarters in the State.

Third, as previously argued with regard to efficiency, the Court has already determined that "if files and other relevant documents are located in Singapore, it should not be overly burdensome for the parties to transport these documents to this jurisdiction." *See* April 17, 2003 Ruling at 19. UCCS and Dow Singapore cannot seriously argue that it would be more efficient to force plaintiffs to file and pursue an identical case against them in some other forum. This case has been pending three years and merits discovery is under way. It has already been established in this case, in connection with defendants' *forum non conveniens* motions, that the efficient resolution of this controversy will not be hindered due to their locations in Asia. Even recently, in response to the personal jurisdiction discovery requests, UCCS and Dow Singapore claim they successfully searched locations in Singapore for responsive documents and information, produced "tens of thousands of pages of documents," and "arranged the depositions of two employees based in Asia." *See* Dow Singapore Opposition at 6.

Finally, the Court should reject any argument that there is any social policy that would be furthered by granting the motions to dismiss. Indeed, UCCS and Dow Singapore have not argued that the interstate judicial system has no interest in seeing an efficient resolution of this controversy involving a violation of a United States statute.[8] The shared interest of the states in seeing violations of federal antitrust law prosecuted is clearly implicated here. *See also* March 24, 2004 Order (noting that in prior decision, Court concluded that "based on a balancing of competing interest and policy considerations, the defendants . . . failed to demonstrate that this matter should be litigated in Asia").

## IV.    CONCLUSION

For all the reasons set forth above, the Court should vacate its November 17, 2003 rulings as to UCCS and Dow Singapore and deny their motions to dismiss for lack of personal jurisdiction.

Dated: May 23, 2005

Respectfully submitted,

WIGGIN AND DANA LLP

_____
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

---

[8] Dow Singapore discusses the facts of the Supreme Court's opinion in *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). In addition to other distinguishing facts making comparison to this case inappropriate, the interest of the State of Connecticut in this case, in which defendants engaged in *per se* illegal vertical price fixing through significant and continuous activities taking place within its borders, is greater than the interest of the State of California, in the *Asahi* case, in providing a forum for adjudicating a claim for indemnification between two entirely foreign companies.

-and-

**BINGHAM McCUTCHEN**
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of May, 2005, a copy of the foregoing has been hand delivered to the following:

Craig A. Raabe
Elizabeth A. Fowler
Stephen M. Deane
Marion B. Manzo
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

and sent via FedEx to the following:

Andrew S. Marovitz
Britt M. Miller
Dana S. Douglas
Mayer Brown Rowe & Maw LLP
190 South LaSalle Street
Chicago, IL 60603-3441

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC 20006

Nathan P. Eimer
Andrew G. Klevorn
Scott C. Solberg
Ryan S. Hedges
Vanessa G. Jacobsen
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

_____
Robert M. Langer

\15726\1\48318.4