# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM )
GLOBAL SERVICES PTE. LTD., and )
MEGA VISA SOLUTIONS (S) PTE. LTD., )
)
      Plaintiffs, )
)
    v. )
)
THE DOW CHEMICAL COMPANY, )
UNION CARBIDE CORPORATION, and )
UNION CARBIDE ASIA PACIFIC, INC. )
)
      Defendants. )
)

Civil No. 3:02 CV 1107 (AVC)


June 21, 2005

---

## DEFENDANTS' COMBINED MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 05103-3497
(860) 275-8304

Nathan P. Eimer (ct 23693)
Scott Solberg (phv 0234)
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC 20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT ......................................................................................................... 8

     A.   The Federal Rules Protect Parties From Overly Broad And Duplicative
          Discovery ................................................................................................... 9

     B.   Defendants Are Substantially Prejudiced By Plaintiffs' Current Requests
          (Interrogatory Nos. 1-15 & Document Request No. 1) ........................................ 10

     C.   In Addition To Being Untimely, The Current Requests Seek Wholly
          Irrelevant Information (Interrogatory Nos. 1-15 & Document Request
          No. 1) ........................................................................................................ 12

     D.   A Number Of Plaintiffs' Requests Improperly Duplicate Plaintiffs'
          Previously-Served Discovery (Interrogatory Nos. 1-10, 13-22 &
          Document Request No. 1) ............................................................................. 15

     E.   Plaintiffs Should Bear The Costs Associated With Any Discovery That Is
          Permitted .................................................................................................... 16

III. CONCLUSION ..................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Bonnell v. Commonwealth Realty Trust*, 63 F.R.D. 616 (E.D. Pa. 1974), *aff'd*, 511 F.2d 1392 (3d Cir. 1975).................................................................................................. 10

*Cavaliere v. Margaretten & Co.*, No. 94 CV01928, 1996 WL 637834 (D. Conn. Mar. 28, 1996) ........................................................................................................................ 16

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16 (S.D.N.Y. 1984) ........................................................................ 16

*Cummings v. General Motors Corp.*, 365 F.3d 944 (10th Cir. 2004).......................... 10

*Data-Link Sys., Inc. v. Data Line Serv. Co., Inc.*, 148 F.R.D. 225 (N.D. Ind. 1992) ............ 10, 11

*F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 124 S. Ct. 2359 (2004) ............ 2, 14

*Grassi v. Info. Res., Inc.*, 63 F.3d 596 (7th Cir. 1995).................................................. 10

*Nonferrous BM Corp. v. Daniel Caron Ltd.*, No. 94 Civ. 7705, 1996 WL 208182 (S.D.N.Y. Apr. 26, 1996).......................................................................................... 16

*Olive Can Co. v. Martin*, 906 F.2d 1147 (7th Cir. 1990)............................................. 10

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)...................................... 12, 17

*Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302 (S.D.N.Y. 2003) ........................... 14

*Sec. Ins. Co. v. Trustmark Ins. Co.*, 218 F.R.D. 24 (D. Conn. 2003) ........................... 9

*Thompson v. United States Dep't of Housing & Urban Dev.*, 219 F.R.D. 93 (D. Md. 2003) ......................................................................................................................... 9

*Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204 (D. Md. 1985) ............................... 17

**Statutes**

Foreign Trade Antitrust Improvements Act, 15 U.S.C. §6a (1997) ........................ 2, 14

**Rules**

FED. R. CIV. P. 1 ............................................................................................................ 18

FED. R. CIV. P. 26(b) ...................................................................................................... 9

FED. R. CIV. P. 26(c) ...................................................................................................... 9

FED. R. CIV. P. 33(d) ................................................................................................................ 16

**Other Authorities**

Advisory Committee Notes to 1970 Amendment to FED. R. CIV. P. 34 ........................................ 9

Advisory Committee Notes to the 1983 Amendment to Rule 26(b) ........................................... 17

Jay E. Grenig & Jeffrey S. Kinsler, HANDBOOK OF FEDERAL CIVIL DISCOVERY AND
    DISCLOSURE § 1.130 (2004) ...................................................................................................... 9

## I.     INTRODUCTION

This 2002 case is about Defendants' relationship with their former, non-exclusive distributor in India – not, as Plaintiffs seem to think, about generating the most expensive document searches imaginable. From approximately 1987 to 2002, Plaintiffs purchased over 150 of Defendants' products (referred to in this litigation as "Products") from Defendants for resale in India. Pursuant to the parties' agreement, Plaintiffs were to sell Defendants' Products *only* in India; sales elsewhere would result in an automatic "terminat[ion] without any notice." Letter from Ron Neri to Sanjiv Sanghvi at 1 (June 27, 2000) (Ex. 1).

Plaintiffs' sales of the Products in this faraway part of the world were limited. During 2000, Plaintiffs sold approximately $8.15 million of Defendants' Products. *See* DECH0009430 (Ex. 2). Plaintiffs' commission on such sales typically fell within a range of 2%-5%, so they likely earned between $163,000 and $407,500 in commissions that year, an amount that pales in comparison to the $3.5 million in costs Plaintiffs already have imposed upon Defendants through their discovery demands in this litigation. Now Plaintiffs have devised additional ways to increase Defendants' litigation costs by serving yet another flurry of new discovery.

Plaintiffs claim that, in violation of the United States antitrust laws, Defendants forced them to fix the prices at which they resold Products to End Users in India. Plaintiffs further maintain that, somehow, as a result of the alleged resale price maintenance agreement, "competition in the sale and resale of Products in and from the United States was improperly diminished and restrained. . .," causing injury to Plaintiffs. Amended Compl. ¶ 30.

As to Plaintiffs' antitrust claim – at which most, if not all, the interrogatories and document requests that are the subject of this motion appear to be directed – what Plaintiffs *do not* allege is as important as what they do. Plaintiffs do not allege that Defendants engaged in a global price fixing conspiracy with their dozens of competitors worldwide as to the more than

150 different Products.  Rather, Plaintiffs claim that Defendants forced *them*, and not

Defendants' competitors, to fix resale prices in India.  This alleged conduct, in turn, somehow

affected commerce in the United States, and Plaintiffs were injured in the course of engaging in

U.S. commerce.[1]

Early on, Defendants sought dismissal of Plaintiffs' antitrust claim on the ground that

Plaintiffs could not demonstrate that Defendants' alleged misconduct had any adverse effect on

U.S. commerce or that Plaintiffs were injured in the course of U.S. commerce, as required under

the Foreign Trade Antitrust Improvements Act, 15 U.S.C. §6a (1997), and Supreme Court

precedent.  *See F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 124 S. Ct. 2359,

2366-67 (2004).  The Court denied Defendants' motion to dismiss, finding that Plaintiffs'

complaint stated an antitrust claim under the liberal standards of the Federal Rules because

Plaintiffs alleged that they were injured in the course of U.S. commerce – though it is difficult to

imagine how, as a matter of fact, that injury will be proven.  Thereafter, the Court, to give

Plaintiffs a full opportunity to discover any possible link, and over Defendants' objections,

ordered certain worldwide discovery as to Plaintiffs' antitrust claim.  *See* Court's June 29, 2004

Ruling and Order on the Defendants' Motion for a Protective Order.

Discovery ensued.  To comply with Plaintiffs' earlier requests (of which there have been

many),[2] Defendants spent months combing through document storage warehouses and archives

---

[1] Likewise, Plaintiffs' breach of contract and negligent misrepresentation claims are limited in geographic scope.
Plaintiffs' claim for breach of contract, which is governed by Singapore law, involves a discrete number of orders
for resale in India that Defendants allegedly accepted and did not fill.  Plaintiffs' negligent misrepresentation claim
relates to the termination of Plaintiffs' distributorship – which was carried out in India – and is governed by Indian
law.  *See* Court's Sept. 12, 2003 Ruling on Defendants' Motion to Dismiss.

[2] *See* Plaintiffs' First Request to Defendants for Production of Documents and Plaintiffs' First Set of Interrogatories
(Sept. 18, 2002) (Ex. 3); Plaintiffs' Second Request to Defendants for Production of Documents and Plaintiffs'
Second Set of Interrogatories (Oct. 15, 2003) (Ex. 4); Plaintiffs' Third Request for Production of Documents (Apr.
2, 2004) (Ex. 5); Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories (July 23, 2004)

located in the Asia-Pacific region, as well as in Michigan, New Jersey, Texas and Vermont, looking for responsive documents, traveled to India and collected responsive documents, traveled around the United States and contacted employees abroad to interview and collect documents from Defendants' Global Business Leaders, Product Managers and Marketing Managers, engaged vendors and undertook a comprehensive collection and review of electronic files located worldwide, and compiled over 2,500 pages of data from their accounting systems relevant to Plaintiffs' discovery requests.  Affidavit of William H. Herr, Managing Counsel, Legal Department, ¶¶ 5-14 (June 21, 2005 ) (Ex. 8).  This particular compilation required an especially great amount of work, as Defendants were forced to reconstruct electronic information from obsolete accounting systems.

In light of the broad subject matter and geographic bounds of Plaintiffs' requests, Defendants kept Plaintiffs' counsel and the Court informed of the massive scope of the search being undertaken and the types of documents being produced.  *See* Letter from Andrew S. Marovitz to Richard S. Taffet dated October 15, 2004 (Ex. 9) *and* Letter from Andrew S. Marovitz to Hon. Alfred V. Covello dated December 14, 2004 (Ex. 10).  These letters ultimately set the framework for the Court's February 7, 2005 Order (Ex. 11), which, in turn, set the parameters and timetable for the massive production.  They also detailed the types of files that would be searched, including files (to the extent they existed) that contained:

- strategic planning documents;
- e-mails from persons identified in the interrogatory answers;
- board presentations and minutes;
- documents regarding Plaintiffs;

(Ex. 6); and Plaintiffs' Third Set of Interrogatories and Fourth Request for Production of Documents ("Plaintiffs' Current Request") (May 16, 2005) (Ex. 7).

- documents regarding End Users in India and the U.S.;

- documents evaluating competition regarding the Products;

- presentations, budgets, forecasts and similar documents discussing competition for, market share of and pricing of the Products;

- marketing materials;

- Product-specific materials;

- trade association files; and

- accounting system data reflecting sales of the Products.

*See* Ex. 9 at 3 (identifying types of files to be searched and methodology). To ensure compliance with the March 1 production deadline, Defendants also utilized the services of an electronic discovery consultant and an electronic discovery services provider to help process the many gigabytes of data Defendants collected under the framework of the October 15 letter. The two vendors' services have cost Defendants over $2.5 million to date.

Now, nearly nine months after Defendants outlined their discovery plan and after millions of dollars in costs, Defendants have substantially completed their production and are on the eve of providing Plaintiffs with the last remaining pieces of information.[3]  *See* Ex. 10. As a result of thousands of hours of attorney and paralegal time, and $3.5 million in legal and vendor fees, 1.5 million pages of documents from North America, Europe, India and Asia have been produced, even though the only areas directly relevant to Plaintiffs' claim are India and the United States. Consistent with Plaintiffs' sweeping discovery requests, this comprehensive production includes documents related to the merger agreement (*see* D079881-927 (attached as Ex. 12)), competitive products (*see* DS252479-84, D065981-95 (attached as Ex. 13)),

---

[3] In light of the size of the production, there have been some lingering production issues – blank pages, documents in need of reformatting, missing attachments, *etc.* – that Defendants are investigating and, where appropriate, will address by providing a supplemental production. The Court anticipated that such issues might arise in a case like this when it denied Plaintiffs' request earlier this year for a certification of completeness of either side's production.

Defendants' distributors (*see* D344324-25 (attached as Ex. 14)), interactions with Plaintiffs (*see* DS251381, DI4002940-41 (attached as Ex. 15)), interactions with End Users (*see* DS222303 (attached as Ex. 16)), Defendants' order process and credit policies (*see* DI4001147 (attached as Ex. 17)), the manufacture and distribution of the Products (*see* DECH0002949-85 (attached as Ex. 18)), pricing of Products (*see* D066731-58 (attached as Ex. 19)), Defendants' market shares (*see* D66462-73 (attached as Ex. 20)), strategic business and marketing plans (*see* DECH0003465-88 (attached as Ex. 21)), highly sensitive customer information (*see* DEBH0009334-67 (attached as Ex. 22)), forward-looking business plans (*see* DI4000290-93 (attached as Ex. 23)), and routine transaction documents (*see* D19313, D19321, DS212502 (attached as Ex. 24)).

All along, it has been Defendants' understanding – and presumably the Court's – that Defendants would engage in this massive search only once, and that Plaintiffs, for their part, would request the major categories of relevant information either before or during (but certainly not after) Defendants completed this process. But now, after Defendants have substantially completed this process, Plaintiffs ask for more. On May 16, Plaintiffs served Defendants with another set of 29 interrogatories and two document requests (the "Current Requests") aimed at requiring Defendants to restart the entire document collection and review process and forcing Defendants to compile and organize for Plaintiffs the information contained in the documents Defendants have already produced. *See* Ex. 7.

By and large, Plaintiffs' Current Requests are not narrowly tailored to discover specific documents and information, but instead will require a costly additional search and a document-by-document review of the already-produced 1.5 million pages to pull information and compile it for Plaintiffs. In short, the effort that will be required will be prohibitively costly. The data

compilation Plaintiffs request is not simply a matter of pressing a few keystrokes on a computer and generating responsive information.  *See infra* at 7-8 (describing the project that would need to be undertaken to develop the requested information).  Indeed, to respond to Plaintiffs' Current Requests, Defendants would have to re-review materials and significantly expand the scope of the procedures outlined in the discovery plan.

Plaintiffs' Current Requests demand the production of documents[4] and information that either (a) were implicated by the earlier requests or (b) are well beyond the scope of relevance and reasonableness in connection with their claims.  A few examples of absurdly broad requests (and there are many more) include:

- Interrogatory Nos. 1-3 demand that Defendants identify *every distributor around the world* to whom they sold Products over a 20-year time period, and "all facts," "all documents" and "all price[s]" for *every transaction* with those distributors;

- Interrogatory Nos. 4-6 demand that Defendants identify *every sales agent or representative around the world* to whom they sold Products over a 20-year time period, and "all facts," "all documents" and "all price[s]" for *every transaction* with those sales agents and representatives;

- Interrogatory Nos. 7-8 demand that Defendants identify *every end user in and outside of the United States* to whom they sold Products over a 20-year time period, and "all price[s]" for every transaction; and

- Interrogatory Nos. 11-12 demand that Defendants identify every sale made by *someone else* to a purchaser in or outside the United States over a 20-year time period, and for each such sale, the seller, the purchaser, the Product, the price and all documents concerning every such sale.

Ex. 7.

These requests are not narrowly tailored to discover specific documents and information, but instead will require a costly additional search and a document-by-document review of the

---

[4] Because Document Request No. 1 requests the production of each document identified in the Interrogatories, for simplicity's sake Defendants say that the Interrogatories demand the production of documents.

already-produced 1.5 million pages to pull information and compile it for Plaintiffs. In short, the effort that will be required will be prohibitively costly and will require Defendants to search for documents similar to those the Court directed Defendants to *stop* collecting during their months-long search last year in Midland, Michigan.

For example, in order to comply with the requests asking for information regarding Defendants' distributors, sales agents and representatives, Defendants would have to conduct a collection that effort that is even more onerous than Defendants' collection effort pursuant to the October 15 letter. Identification of Defendants' distributors, sales agents and representatives worldwide over a 20-year period would require Defendants to go business-by-business and region-by-region for each of the 153 Products at issue. Ex. 8, ¶ 18.

Compilation of the requested information regarding transactions with distributors, sales agents and representatives, and end users would require resuming the effort commenced last fall and then halted when the Court directed Defendants to stop looking for and producing responsive transactional documents. Going back to redo this document search would require Defendants to review the approximately 1,100 boxes at the UCC Records Center that had been identified as containing potentially responsive transactional materials. Countless more boxes also would have to be reviewed from TDCC's Records Center.[5] If, as it appears, Plaintiffs' definition of "end user" means "customer," then literally *every* transactional records of Defendants for the over 20 years covered by Plaintiffs' Current Requests for each of the 153 Products at issue would have to be collected globally and produced. *Id.*

Other requests are either duplicative or have no bearing whatsoever on whether Defendants allegedly forced Plaintiffs to conspire to fix resale prices in India, whether

---

[5] Defendants have not compiled the total number of TDCC boxes that would have to be reviewed for responsive transactional documents because the Court instructed Defendants to stop reviewing transactional documents before all the potentially responsive TDCC boxes were identified.

Defendants' alleged misconduct had the requisite adverse effect on U.S. commerce, and whether Plaintiffs, who could sell only in India, were injured in the course of U.S. commerce. For instance, new Interrogatory No. 19, which asks Defendants to "[s]tate all facts and identify [and thus produce, by virtue of new Document Request No. 1] all documents concerning Plaintiffs' payment history in connection with their purchase of Products" (Ex. 7 at 4), is duplicative of First Request No. 45, which already demanded that Defendants produce "[a]ll documents not otherwise requested concerning Plaintiffs' or Mega Global's payment history for the purchase of Products." Ex. 3. Interrogatory No. 10 requires Defendants to identify "each communication between [Defendants] and any supplier of a competitive product" (Ex. 7), despite the fact that the only antitrust count in this case charges that Defendants engaged in a resale price maintenance claim with Plaintiffs, *not* with other suppliers. The burden of complying with such requests – both in terms of time and cost – would be immense.

## II.    ARGUMENT

Defendants' Motion for a Protective Order should be granted,[6] as Plaintiffs' Current Requests are completely inappropriate. It is time for this case to move past expansive document reviews to development of the case by means of depositions and targeted discovery that is directly relevant to the claims and defenses of this litigation. To the extent that Plaintiffs continue to claim a need for the information and documents requested in their Current Requests, they should pay for any additional cost incurred responding to this discovery. Plaintiffs should not be permitted to serve such broad requests in a manner that would require Defendants to retrace steps already taken, or to derive information from the same documents that previously were produced to Plaintiffs.

---

[6] On June 20, 2005, Plaintiffs' counsel represented that Plaintiffs intend to stand by their requests as served.

### A.    The Federal Rules Protect Parties From Overly Broad And Duplicative Discovery.

The Federal Rules of Civil Procedure permit discovery of non-privileged matters that are "relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Discovery is not boundless, however, and may be limited in the court's discretion. *See Sec. Ins. Co. v. Trustmark Ins. Co.*, 218 F.R.D. 24, 27 (D. Conn. 2003) ("An overly broad request may justify issuance of a protective order precluding irrelevant discovery."); Jay E. Grenig & Jeffrey S. Kinsler, HANDBOOK OF FEDERAL CIVIL DISCOVERY AND DISCLOSURE § 1.130 (2004) ("Protective orders are a necessary corollary to the scope of discovery permitted by Rule 26(b)(1)."). Thus, a court may curb otherwise proper discovery where, for instance, it determines that "the discovery sought is unreasonably cumulative or duplicative" or the "burden or expense of the proposed discovery outweighs its likely benefit. . ." FED. R. CIV. P. 26(b)(2)(i), (iii).

In certain instances, such as the present case, courts may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (1) that the disclosure or discovery not be had . . . [or] (4) that certain matters not be inquired into . . . ." FED. R. CIV. P. 26(c).[7] The court also can "shift the cost, in whole or part, of burdensome and expensive Rule 34 discovery to the requesting party; it can limit the number of hours required by the producing party to search for electronic records; or it can restrict the sources that must be checked." *Thompson v. United States Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 99 (D. Md. 2003); *see also* Advisory Committee Notes to 1970 Amendment to FED. R. CIV. P. 34 ("[T]he courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs.").

---

[7] "The court may act upon its own initiative after reasonable notice or pursuant to a motion [such as the one this memorandum accompanies] under Rule 26(c)." FED. R. CIV. P. 26(b)(2).

9

**B.     Defendants Are Substantially Prejudiced By Plaintiffs' Current Requests (Interrogatory Nos. 1-15 & Document Request No. 1).**

There is no excuse for Plaintiffs to have watched Defendants complete what they knew was a multimillion-dollar, massive effort to respond to discovery, and at the end say "we have some more requests, so do it again." The time to request broad categories of additional documents and information was long over before the parties got to this point. Now that the parties are about to begin moving the case forward by preparing for and taking depositions, it is too late to make the types of requests made by Plaintiffs here.

The law is clear that while discovery is broad, a party cannot structure its discovery requests in any way it sees fit, particularly when its opponent already has expended considerable resources – both human and economic – complying with earlier, sweeping requests. *See Data-Link Sys., Inc. v. Data Line Serv. Co., Inc.*, 148 F.R.D. 225, 228 (N.D. Ind. 1992) (an "eleventh hour" request "seeking to expand the scope of its earlier requests . . . would clearly represent nothing more than harassment"); *Cummings v. General Motors Corp.*, 365 F.3d 944, 953-54 (10th Cir. 2004) (upholding denial of a motion to compel where discovery was "overly broad in scope, duplicative of prior requests and unduly burdensome," and recognizing that "numerous miscommunications and unnecessary disputes have been caused by Plaintiffs' failure to frame precise discovery requests and notices in accordance with the provisions of the rules.").[8] Contrary to this well-established rule, in serving the Current Requests, Plaintiffs have structured their discovery requests in a manner that is unreasonably costly to Defendants.

---

[8] *See also Grassi v. Info. Res., Inc.*, 63 F.3d 596, 604 (7th Cir. 1995) (upholding denial of motion to compel where it was not an abuse of discretion to "determin[e] that plaintiffs should have requested these documents at some earlier point during the four years of discovery that preceded this trial"); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1152-53 (7th Cir. 1990) (holding that the district court did not abuse its discretion in denying further discovery where five years of discovery had already taken place and plaintiffs were on notice of the issue in question); *Bonnell v. Commonwealth Realty Trust*, 63 F.R.D. 616, 617-18 (E.D. Pa. 1974) (upholding denial of motion to compel second set of interrogatories and document requests where much of the requested information had been previously produced in response to earlier discovery requests, significant time had lapsed since the filing of the complaint and the case was close to trial), *aff'd*, 511 F.2d 1392 (3d Cir. 1975).

It would be one thing if the discovery requests sought targeted, newly relevant categories of information or if they could be answered with the touch of a button. But neither is true here. Ex. 8, ¶ 22. As demonstrated above, the requests as drafted are absurdly broad, seek to require Defendants to collect exactly the types of documents that the Court instructed Defendants to stop collecting last October, and do not reflect the kind of targeted follow-up that one might anticipate at this stage of the litigation. Preparing responses to these broad (and in many instances irrelevant) requests for information would be unfairly burdensome and labor-intensive because Defendants would have to collect and compile information from routine transaction documents that were specifically excluded from Defendants' document production after Plaintiffs complained that they did not want Defendants to produce these types of documents and the Court instructed Defendants to stop producing them. As discussed above, the affidavit of William Herr, TDCC's Managing Counsel, shows clearly that the expenses would be in the range of $4 million. *Id.*

There have been no new facts elicited in the past few months that justify such broad requests on a wholesale basis. Instead, the Current Requests revert to Plaintiffs' strategy of demanding broad ranges of documents related to sales of Products worldwide over a 20-year "Relevant Period." From Plaintiffs' perspective, of course, the Current Requests have the added benefit of ensuring that Defendants will have to focus their efforts on responding to a constant stream of demands from Plaintiffs instead of devoting the necessary time and resources to discovering facts relevant to Plaintiffs' case. In a nutshell, Plaintiffs waited for Defendants to finish their earlier massive search before demanding that they start another one. Just as in *Data-Link Systems*, the service of these new requests on the eve of completion of document discovery in this case is "nothing more than harassment." 148 F.R.D. at 228. Because the burden and

expense that would be associated with undertaking this process clearly is undue, entry of a

protective order is warranted. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)

("Under [the federal] rules, the presumption is that the responding party must bear the expense of

complying with discovery requests, but he may invoke the district court's discretion under Rule

26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including

orders conditioning discovery on the requesting party's payment of the costs of discovery.").

### C.    In Addition To Being Untimely, The Current Requests Seek Wholly Irrelevant Information (Interrogatory Nos. 1-15 & Document Request No. 1).

Only three of Plaintiffs' causes of action remain pending: an antitrust claim (Count I), a

claim for breach of contract (Count II) and a claim for negligent misrepresentation (Count V).

The majority of Plaintiffs' latest round of discovery covers four subject areas that purportedly are

meant to discover information somehow related to Plaintiffs' antitrust claim: (1) sales of

Products through distributors and sales agents globally; (2) sales of Products to End Users in

India and end users globally; (3) information regarding competitive products and competition

globally; and (4) communications that took place between announcement and closing of TDCC's

acquisition of UCC, regarding the acquisition's contemplated effect on competition and

distribution of Products, as well as the integration of the TDCC and UCC businesses.[9]

These requests have little relevance to Plaintiffs' antitrust claim. That claim states that

"[a]s a direct and proximate result of [the] defendants' fixing of minimum resale prices and other

terms of sale, competition in the sale and resale of [Union Carbide] Products in and from the

United States was improperly diminished and restrained, and as a result of such effect on

---

[9] Specifically, these requests ask Defendants to: (1) identify distributors and sales agents and representatives to or through which Defendants sold Products and the terms of that relationship (Third Interrogatory Nos. 1 & 4); (2) state the prices at which Defendants sold Products to the identified distributors and sales agents and representatives (Ex. 7, Nos. 2 & 5); and (3) identify, by type (and produce, pursuant to Document Request No. 1), the documents used in transactions for Products between Defendants and the identified distributors and sales agents and representatives. (*Id.*, Nos. 3 & 6).

competition, [the] Plaintiffs were injured by being precluded from effectively and fully competing and maximizing their sales of Products." Amended Complaint ¶ 30. But Plaintiffs cannot demonstrate how information regarding Defendants' relationships with *other* distributors and sales agents and representatives across the globe are relevant to their claims.

Plaintiffs are not suing on behalf of some class of distributors or agents around the globe. Instead, as noted above, *they* claim that *they* were injured "by being precluded from effectively and fully competing and maximizing their sales of Products." Amended Complaint ¶ 30. Information regarding Defendants' relationships with *other* distributors and sales agents and representatives across the globe certainly has no bearing on whether Defendants forced Plaintiffs, and Plaintiffs alone, to participate in a resale price maintenance scheme with respect to End Users in India, or whether Plaintiffs were injured in U.S. commerce. Accordingly, it is not necessary for Plaintiffs to know the identity of distributors, sales agents and representatives used by Defendants worldwide; Defendants' agreements with these distributors, sales agents and representatives worldwide; the prices at which Defendants sold Products to those distributors, sales agents and representatives worldwide; or the related transaction documents worldwide.

Plaintiffs also rehash the issue of global sales to end users. Notwithstanding the fact that the issuance of a request pertaining to end users other than those listed by Plaintiffs as relevant to their claims violates at least the spirit if not the letter of this Court's June 29, 2004 Order,[10] these requests likewise are irrelevant to Plaintiffs' antitrust claim. Plaintiffs ask Defendants to identify each end user in and outside of the United States to which Defendants sold each Product, and to state the price at which Defendants sold the Product. Plaintiffs' Current Request Nos. 7 & 8 (Ex. 7). The Complaint, however, alleges that Plaintiffs were injured as resellers of the Products.

---

[10] That Order required Plaintiffs to identify the end users in India to whom they sold Products and about whom they sought discovery. Ruling and Order at 10-11 (June 29, 2004) (Ex. 25).

According to Plaintiffs, they were "injured by being precluded from effectively and fully competing and maximizing their sales of Products." Amended Compl. ¶ 29. But it is undisputed that Plaintiffs were only authorized to resell Products into the Indian marketplace. *See supra* at 1 (arrangement terminates if Mega Visa sells Products outside India).

Plaintiffs' case is not one of global price fixing, and their attempt to make it one is untenable. To be sure, Plaintiffs' antitrust claim is limited to two key areas: India – the only country in which Plaintiffs could resell Defendants' Products – and the United States, where Plaintiffs will have to demonstrate – pursuant to the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a, *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 124 S. Ct. 2359 (2004), and well-established principles of antitrust standing – that *they* were injured, consistent with this Court's June 29, 2004 Order. Ex. 25. As such, to prevail, Plaintiffs must show that *they* suffered injury as a result of the resale price maintenance scheme in which they allegedly participated with Defendants. Information regarding Defendants' relationships with distributors and sales agents and representatives across the globe (other than Plaintiffs), as well as sales to end users outside of India, has no bearing whether Defendants coerced Plaintiffs to participate in a resale price maintenance scheme with respect to End Users in India, or whether Plaintiffs were injured in U.S. commerce.[11] Thus, the Current Requests demand information and documents that are wholly irrelevant, and should be barred.

---

[11] Likewise, the requests aimed at communications that took place with non-Defendant competitors are irrelevant to Plaintiffs' claim. There is no reason why the content of these communications would be probative of an alleged resale price maintenance scheme among Defendants and Plaintiffs that injured Plaintiffs by costing them sales. *See Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 318-19 (S.D.N.Y. 2003). These requests do not tend to prove any injury experienced by Plaintiffs in U.S. commerce and they do not relate to Plaintiffs' conduct in setting prices as a distributor of UCC. They are wholly irrelevant here.

**D.    A Number Of Plaintiffs' Requests Improperly Duplicate Plaintiffs' Previously-Served Discovery (Interrogatory Nos. 1-10, 13-22 & Document Request No. 1).**

Even putting aside the irrelevant and burdensome nature of much of Plaintiffs' Current Requests, Plaintiffs' remaining discovery requests are redundant and demand information Defendants already have provided to Plaintiffs. A table of Plaintiffs' duplicative discovery requests is attached hereto as Exhibit 26.

Indeed, Plaintiffs' previously served document requests were so broad that they encompass most of the information requested in Plaintiffs' Current Requests. For example, First Document Request No. 7 (Ex. 3) requested all documents concerning prices for or pricing of Products sold or distributed, directly or indirectly, to end users. This request encompasses the information requested by Plaintiffs' Interrogatory Nos. 1, 2, 4, 5, 7 & 8. *See supra* at 6 (summarizing those requests). Similarly, Interrogatory No. 2 asks Defendants to state the price at which Defendants sold Products to the identified distributors. This information would have been produced under First Document Request No. 7 as documents relevant to indirect sales to end users. An example of such a document can be found at DEBT0016438-53. Ex. 27. Likewise, Third Interrogatory No. 13 asks Defendants to identify "all sales of Products by you to any End User in India from April 1, 2002 to the present. For each sale, identify the End User, the Product, the price charged and volume sold and all documents concerning the sale." Documents containing information responsive to this Interrogatory would have been produced under Second Request No. 30, which requested all documents concerning any End User to which any Mega Visa entity sold or distributed Products. Examples of these types of documents can be found at D027893, D027686-7. Ex. 28.

While Defendants have not provided Plaintiffs with compilations of the information contained in their document production in the format of an interrogatory response, the Federal

15

Rules of Civil Procedure are clear that Defendants do not have to shoulder this burden. Under Federal Rule 33(d), where the burden of compiling information responsive to interrogatory requests is equal among the parties, the requesting party should bear the burden of compiling the requested information. *See Cavaliere v. Margaretten & Co.*, No. 94 CV01928, 1996 WL 637834, at *1 (D. Conn. Mar. 28, 1996) (denying plaintiff's motion to compel where defendant produced "the documents that contain the information sought by these interrogatories"); *Nonferrous BM Corp. v. Daniel Caron Ltd.*, No. 94 Civ. 7705, 1996 WL 208182, at *1 (S.D.N.Y. Apr. 26, 1996) (identification of documents containing information responsive to an interrogatory is a sufficient response); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 44 (S.D.N.Y. 1984) ("The idea behind the rule is that when the burden of deriving information from documents is equal between the parties, the interrogating party should bear the burden of compiling the information.").

These principles apply with particular force here, where Defendants already have spent considerable time, effort and money complying with their obligations under the Federal Rules. Defendants estimate that compiling the information requested by Plaintiffs would take months and cost in the range of $4 million. Ex. 8, ¶ 22. It is not Defendants' responsibility to expend further resources formulating Plaintiffs' case for them. It is Plaintiffs' responsibility to take the information provided to them by Defendants, analyze it and determine whether any of it supports their claims.

**E.    Plaintiffs Should Bear The Costs Associated With Any Discovery That Is Permitted.**

Plaintiffs' discovery tactics are exactly the type of behavior the Federal Rules aim to curb. Where, as here, "a closer look reveals that the [plaintiffs'] requests represent an attempt not just to nail down the core facts of the case, but also to pick every nit that a squad of lawyers

16

could possibly see in it," and where "[a]nswering these requests in a conscientious and timely [manner] would have taxed the powers of Hercules, even before he cleaned the Augean Stables," the Federal Rules not only permit, but demand, that Plaintiffs bear the costs. *Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204, 205 (D. Md. 1985); *see also* Advisory Committee Notes to the 1983 Amendment to Rule 26(b) ("The court must apply the [discovery] standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a devise to coerce a party, whether financially weak or affluent.").

No legitimate need justifies Plaintiffs' request for broad ranges of information and documents from far-flung places at this stage of the litigation. Plaintiffs repeatedly have complained about the magnitude of Defendants' production and that they have been unable to find the documents that they view as most relevant to their case. *See* Letter from Richard S. Taffet to Andrew S. Marovitz dated June 6, 2005 (Ex. 29). But Plaintiffs' difficulties derive from their own sweeping requests, which forced Defendants to produce a massive number of documents in response. For example, where Plaintiffs requested every document concerning prices for or pricing of Products sold or distributed, directly or indirectly, to end users (Second Request No. 7) (Ex. 4), they should not be heard later to complain that Defendants produced invoices and routine e-mail correspondence stating the sale price for a Product alongside with strategic business and marketing plans related to the Products.

Plaintiffs' broad, eleventh-hour requests will only drive up the cost of litigating this case. In the event that this Court permits any of that requested discovery to proceed, Plaintiffs should pay all of the associated costs. *See Oppenheimer Fund, Inc.*, 437 U.S. at 358 (a court may enter "orders conditioning discovery on the requesting party's payment of the costs of discovery").

## III.    CONCLUSION

Discovery under the Federal Rules is supposed to serve the "just, speedy and inexpensive determination of every action." FED. R. CIV. P. 1. Plaintiffs' Current Requests do just the opposite. For the reasons stated above, Defendants respectfully request that this Court grant their Motion for a Protective Order in its entirety.

Respectfully submitted,

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  05103-3497
(860) 275-8304

Nathan P. Eimer (ct 23693)
Scott Solberg (phv 0234)
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL  60604
(312) 660-7600

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
71 S. Wacker Drive
Chicago, IL  60606
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC  20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

18

## CERTIFICATE OF SERVICE

This is to certify that that a copy of the Memorandum of Law in Support of the Motion for

Protective Order was hand delivered on this 21st day of June, 2005, as follows:

     Richard S. Taffet, Esquire
     Bingham McCutchen LLP
     399 Park Avenue
     New York, NY  10022-4689

     Suzanne Wachsstock, Esquire
     Wiggin & Dana LLP
     400 Atlantic Street
     P.O. Box 110325
     Stamford, CT  06911-0325

     Robert M. Langer, Esq.
     Wiggin & Dana LLLP
     CityPlace
     185 Asylum Street
     Hartford, CT  06103

Craig A. Raabe