UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. | CIVIL ACTION <br> NO. 3:02 CV 1107 (AVC) |

## DECLARATION OF ALICIA L. DOWNEY

Alicia L. Downey, declares as follows:

1. I am a partner in the firm of Bingham McCutchen LLP, co-counsel for plaintiffs in the above-captioned action. I submit this Declaration to put before the Court certain documents and facts in support of Plaintiffs' Cross-Motion to Compel Further Responses to Discovery, and to Remove "Counsel Only" Designations, and For Sanctions and in opposition to Defendants' Motion for Protective Order. Unless otherwise stated, I make this Declaration on personal knowledge.

**Relevant Documents**

2. Attached hereto as Exhibit A is a true copy of the Responses and Objections of Defendants The Dow Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific, Inc. to Plaintiffs' Third Set of Interrogatories and Fourth Requests for Production of Documents dated June 15, 2005.

LITDOCS/609950.1

3. Attached hereto as <u>Exhibit</u> <u>B</u> is a true and correct copy of the February 7, 2005 Scheduling Order.

4. Attached hereto as <u>Exhibit</u> <u>C</u> are true and correct copies of letters from defendants' counsel to plaintiffs' counsel dated January 12, January 14, March 1, March 4, March 10, May 6, May 23, and July 29, 2005.

5. Attached hereto as <u>Exhibit</u> <u>D</u> is a true and correct copy of the August 17, 2004 Order.

6. Attached hereto as <u>Exhibit</u> <u>E</u> is a true and correct copy of a letter from Andrew Marovitz to the Court, dated September 7, 2004.

7. Attached hereto as <u>Exhibit</u> F is a true and correct copy of a letter from Richard Taffet to Andrew Marovitz, dated October 8, 2004.

8. Attached hereto as <u>Exhibit</u> <u>G</u> is a true and correct copy of a letter from Andrew Marovitz to Richard Taffet, dated October 8, 2004.

9. Attached hereto as <u>Exhibit</u> <u>H</u> is a true and correct copy of a letter from Andrew Marovitz to Richard Taffet, dated October 15, 2004.

10. Attached hereto as <u>Exhibit</u> <u>I</u> is a true and correct copy of a letter from Andrew Marovitz to Richard Taffet dated October 22, 2004.

11. Attached hereto as <u>Exhibit</u> <u>J</u> is a true and correct copy of a Letter from Alicia Downey to Andrew Marovitz, dated November 17, 2004.

12. Attached hereto as <u>Exhibit</u> <u>K</u> is a true and correct copy of a letter from Alicia Downey to Andrew Marovitz dated December 2, 2004.

13. Attached hereto as <u>Exhibit</u> <u>L</u> is a true and correct copy of a letter from Andrew Marovitz to the Court, dated December 14, 2004.

14. Attached hereto as <u>Exhibit M</u> is a true and correct copy of a letter from Richard Taffet to the Court, dated December 21, 2004.

15. Attached hereto as <u>Exhibit N</u> is a true and correct copy of a letter from Richard Taffet to Andrew Marovitz, dated March 7, 2005.

16. Attached hereto as <u>Exhibit O</u> is a true and correct copy of a letter from Richard Taffet to Andrew Marovitz, dated March 9, 2005.

17. Attached hereto as <u>Exhibit P</u> is a true and correct copy of a letter from C. Kelly to Richard Taffet, dated May 20, 2005.

18. Attached hereto as <u>Exhibit Q</u> is a true and correct copy of a letter from Richard Taffet to the Court dated May 25, 2005.

19. Attached hereto as <u>Exhibit R</u> is a true and correct copy of a letter from Richard Taffet to Andrew Marovitz dated June 6, 2005.

20. Attached hereto as <u>Exhibit S</u> is a true and correct copy of an email from Andrew Marovitz to Richard Taffet, dated June 10, 2005, and the reply from Richard Taffet to Andrew Marovitz, dated June 13, 2005.

21. Attached hereto as <u>Exhibit T</u> is a true and correct copy of a letter from Alicia Downey to Andrew Marovitz, dated March 23, 2005.

22. Attached hereto as <u>Exhibit U</u> is a true and correct copy of the December 18, 2002 Stipulated Protective Order.

23. Attached hereto as <u>Exhibit V</u> is a true and correct copy of a letter from Alicia Downey to C. Kelly, dated October 4, 2004.

24. Attached hereto as <u>Exhibit W</u> is a true and correct copy of a letter from C. Kelly to Alicia Downey, dated October 29, 2004.

25. Attached hereto as Exhibit X is a true and correct copy of a letter from Richard Taffet to the Court, dated March 29, 2005.

26. Attached hereto as Exhibit Y is a true and correct copy of a letter from Andrew Marovitz to the Court, dated April 8, 2005.

27. Attached hereto as Exhibit Z is a true and correct copy of a letter from Alicia Downey to Andrew Marovitz and Scott Solberg, dated July 15, 2005.

28. I attended an in-person status conference with Court and opposing counsel on October 6, 2004. During the conference, defendants' counsel, Andrew Marovitz and Dana Douglas, explained that their clients' search for responsive documents had been difficult and time-consuming because of the number of locations that needed to be searched and the manner in which their clients maintained their records. They stated that they were using a master index to determine which boxes of records in storage would be most likely to contain responsive information. The practical problem they faced was that their efforts to filter out non-responsive records still left a large quantity of documents to be reviewed.

29. Between March 2, 2005 and July 26, 2005, a period of almost five months, we received 21 boxes of paper documents and a total of 9 hard drives and 26 CDs containing hundreds of thousands of disorganized documents. The schedule of defendants' deliveries is as follows:

1. March 1, 2005—21 boxes of paper documents and a hard drive containing over 1 million static electronic images in ".tif" format;

2. March 2, 2005—Second hard drive containing approximately 100,000 images;

3. March 4, 2005—Third hard drive containing approximately 131,000 images;

4. March 9, 2005—Fourth hard drive containing approximately 61,000 images;

5. March 29, 2005—Fifth hard drive containing approximately 80,000 images;

6. May 2, 2005—Sixth hard drive containing approximately 70,000 images;

7. May 4, 2005—A letter from defendants' counsel identifying over 1,700 Bates numbers of "error messages" and "privileged" documents removed from the production and explaining that the defendants were investigating the cause of the "error messages";

8. May 16, 2005—Letter from defendants' counsel identifying approximately 1,600 additional Bates numbers of "error messages" with no further explanation of the problem;

9. July 1, 2005—Nine CDs containing 21,783 electronic *files* (as opposed to images) in "native" format;

10. July 1, 2005—An electronic, searchable index to defendants' document production, with date, author, recipient, title, and confidentiality designation fields;

11. July 8, 2005—Ten CDs containing approximately 80,000 images;

12. July 8, 2005—A revised electronic, searchable index to defendants' production, updated to include additional documents;

13. July 22, 2005—Six CDs containing approximately 37,850 images (asserted to be duplicates of previously produced documents);

14. July 22, 2005—A 157-page privilege/redaction log with approximately 2,000 entries;

15. July 22, 2005—A 45-page cross-reference list identifying over 2,000 formerly missing email attachments; and

16. July 25, 2005—Supplemental hard copy production of 295 pages.

30.     Since March 1, 2005, Bingham McCutchen attorneys in New York and Boston have devoted approximately 60% of their time in this case to the process of identifying and negotiating over gross technical and substantive deficiencies in defendants' discovery responses, at a cost to plaintiffs of approximately $300,000. This figure does not include counsel fees and expenses incurred in connection with plaintiffs' accompanying opposition to the motion for protective order and cross-motion for various forms of relief.

31.     From March 1, 2005 to July 7, 2005, when we were first able to begin using the

first version of the electronically searchable index provided by defendants, we had no way to review defendants' document production other than to look at every page and electronic image, one by one. The document review process was cumbersome and time-consuming, especially where, as the index itself now reveals, thousands of the documents are untitled or otherwise unidentifiable.

32. The lack of any means of searchability made it impossible to avoid reviewing tens of thousands of irrelevant or technically defective documents included in the production. Based on searches of the index performed under my direction, plaintiffs and their counsel waded, page by page, through at least 57,000 documents that appear to be invoices or purchase orders, 12,399 bills of lading, 14,414 certificates of analysis (i.e., product specifications presented to customs officials with other shipping documents), 2,685 certificates of origin, and 7,862 vessel booking advice transmittals. In the course of their review, plaintiffs and their counsel discovered numerous other non-responsive or defectively reproduced electronic documents:

- Blank or almost blank pages in clusters as long as 2,825 consecutive pages;
- Thousands of pages of indecipherable Excel spreadsheets
- Numerous documents concerning product-specific technical issues; and blank forms concerning administrative, personnel, or safety-related matters; and
- Hundreds of heavily (and some completely) redacted documents unaccompanied by any explanation disclosing the basis for the redactions.

33. I attended an in-person status conference with the Court on June 21, 2005. During the conference, Mr. Taffet described the delays and other problems that had been caused by the timing and manner of defendants' production and defendants' lack of cooperation in addressing the many technical and substantive deficiencies therein. Mr. Taffet questioned the

extent to which the production of documents had been overseen by defendants' counsel. Mr. Marovitz admitted that counsel had not reviewed all of defendants' productions before delivering them to plaintiffs and so they had been unaware of any problems with the productions until plaintiffs raised them. He tried to downplay the significance of the technical problems and other deficiencies as issues as "to be expected" in such a large production. He stated, however, that his clients were in the process of addressing issues such as the error messages, missing email attachments, and unreadable spreadsheets. He also told the Court that an index would be produced no later than July 1, 2005.

34. Defendants shipped an index on Friday, July 1, 2005, along with various other materials. Neither the July 1 index nor the revised version delivered a week later contained a "subject matter" field, as requested in Mr. Taffet's June 13 email.

35. The most recent version of the index indicates that at least 10,569 documents are titled "Unknown" or "Illegible" and over 5,751 documents have no titles at all. The subject matters of those documents cannot be discerned from the index and they are not included in any "title" search results with documents to which they may relate.

36. We recently discovered electronically-produced emails that appear to be missing attachments, but which are unaccounted for on the Attachment Report dated July 22, 2005. As of the date of this Declaration, our inquiries concerning this situation, including a request to be advised whether further attachment reports are forthcoming, have gone unanswered by defendants. In addition, plaintiffs are still working through technical problems caused by having to incorporate multiple productions into an existing database.

37. At the telephonic status conference on March 31, 2005, Mr. Taffet and I told the Court that defendants' systematic overuse of the "Confidential—Counsel Only" designation was

significantly hindering plaintiffs' ability to review the documents and prepare their case. After hearing both sides on the issue, the Court directed defendants to review their designations on a document-by-document basis.

38. Defendants submitted the final results of their re-designation of "Confidential—Counsel Only" more than a month later, on May 4, 2005. In a subsequent conference call with opposing counsel that I attended, I was told by defendants' counsel that there were approximately 37,000 remaining "Counsel Only" documents. With that understanding, we turned our attention to investigating the technical and substantive deficiencies in defendants production, negotiating over the scope of the parties' respective 30(b)(6) notices of deposition, and conferring with opposing counsel about these and other matters.

39. At the June 21, 2005 status conference, as noted above, it was revealed that defendants' counsel had not reviewed defendants' electronic document production on a document-by-document basis, nor had they any intention of doing so given the size of the production. Meanwhile, in the course of my review of the remaining counsel only documents, it had become increasingly apparent that many documents seemed to be misdesignated. As of the date of this Declaration, the total number of "Counsel Only" documents listed on the production index is 249,856.

40. My July 15, 2005 letter, <u>Exhibit Z</u> hereto, identified samples of misdesignated documents I had found and on that basis, plaintiffs challenged all of the designations. In a subsequent meet and confer, Mr. Marovitz told me that defendants' had not performed and, furthermore, had no intention of performing a document-by-document review of their "Counsel Only" designations. I asked him to disclose the specific criteria they used to make their designations, so we could discuss whether some blanket adjustments were warranted. He

declined to do so at that time, saying he would consider that request. As of the date of this Declaration, defendants have not responded further, and as far as I am aware, their current position is that the burden should be on plaintiffs' counsel to identify and challenge each and every questionable "Counsel Only" document one by one.

41.   I declare, under the penalty of perjury, that the foregoing is true and correct.

Signed this 5th day of August 2005.

*/s/ Alicia L. Downey*
Alicia L. Downey

## CERTIFICATE OF SERVICE

This is to certify that on this 5th day of August, 2005, a copy of the foregoing has been hand-delivered to the following:

Craig A. Raabe
Elizabeth A. Fowler
Stephen M. Deane
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

and sent via FedEx to the following:

Andrew S. Marovitz
Britt M. Miller
Dana S. Douglas
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC 20006

Nathan P. Eimer
Andrew G. Klevorn
Scott C. Solberg
Ryan S. Hedges
Vanessa G. Jacobsen
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

/s/ Suzanne E. Wachsstock
Suzanne E. Wachsstock

cc: The Honorable Alfred V. Covello (via hand delivery)
United States District Court
450 Main Street
Hartford, CT 06103