questions, to which defendants responded.[13]   One disputed issue was the extent to which

defendants would be required to disclose which of their documents were responsive to which key

categories identified in the October 15 letter.   This matter came to a head after defendants

delivered several boxes of documents in November 2004.   Plaintiffs' counsel explained that the

disorganized manner in which the documents were produced made it impossible "to tell which of

your undertakings have been fulfilled."[14]   The letter further pointed out that the boxes contained

numerous documents that the parties had agreed should not be produced.   Moreover, defendants

still had not committed to a date certain for completing the discovery protocol they had proposed

for "this initial phase of merits discovery."   *Id.*

After another status conference with the Court, plaintiffs' counsel notified defendants in

writing of the apparent absence of certain key categories of documents, as well as other

deficiencies.[15]   By letter to the Court dated December 14, 2004, defendants represented that they

had "engaged a sophisticated electronic-discovery consultant to find relevant documents using

the October 15 discovery plan as a guide," and that they would be in a position to complete their

entire document production, including all responsive electronic documents, by February 2005.[16]

In reliance on defendants' counsel's representations, by letter dated December 21, 2004,

---

[13] *See* Downey Decl., Exhibit I, Letter from A. Marovitz to R. Taffet dated October 22, 2004.

[14] *See* Downey Decl., Exhibit J, Letter from A. Downey to A. Marovitz, dated November 17, 2004.

[15] *See* Downey Decl., Exhibit K, Letter from A. Downey to A. Marovitz dated December 2, 2004.

[16] *See* Downey Decl. Exhibit L, Letter from A. Marovitz to the Court, dated December 14, 2004 (emphasis added).   As set forth therein, defendants anticipated delivering the final results of their "records center searches," "product managers' documents," "merger-related documents," and various outstanding personal jurisdiction documents and interrogatory answers either "by the end of the month" (i.e., December 31, 2004) or at the latest, "before the settlement conference" scheduled for January 18, 2005. Ex. L, pages 1-2.   As it turned out, defendants did not meet any of these deadlines.

plaintiffs asked the Court to enter a scheduling order "for this phase of discovery."[17]

### C.    The February 7, 2005 Scheduling Order and Defendants' Response Thereto.

On February 7, 2005, the Court entered a Scheduling Order under which, on or before

March 1, 2005, defendants were ordered to "complete their production of documents . . . that are

responsive to the subject matters identified in the [October 15 and December 14] Letters" and to

"undertake reasonable efforts to identify the general subjects of the documents produced."[18]  The

timeline of defendants' deliveries to plaintiffs beginning March 1, 2005 was as follows:

1. March 1, 2005—21 boxes of paper documents and a hard drive containing over 1 million static electronic images in ".tif" format[19];

2. March 2, 2005—Second hard drive containing approximately 100,000 .tif images;

3. March 4, 2005—Third hard drive containing approximately 131,000 .tif images;

4. March 9, 2005—Fourth hard drive containing approximately 61,000 .tif images;

5. March 29, 2005—Fifth hard drive containing approximately 80,000 .tif images;

6. May 2, 2005—Sixth hard drive containing approximately 70,000 .tif images;

7. May 4, 2005—A letter from defendants' counsel identifying over 1,700 Bates numbers of "error messages" and "privileged" documents removed from the production and explaining that the defendants were investigating the cause of the error messages;

8. May 16, 2005—Letter from defendants' counsel identifying approximately 1,600 additional Bates numbers of error messages, with no further explanation of the problem;

---

[17] Downey Decl., Exhibit M, Letter from R. Taffet to the Court, dated December 21, 2004.

[18] Downey Decl. Exhibit B.

[19] Electronically generated and stored documents in "native," i.e., original format, such as an email in Microsoft Outlook, or a report in Microsoft Word, normally can be sorted into groups by searching for certain keywords, dates of creation, author, etc.  No special database programs are required to do this.  In contrast, converting such documents into .tif images is akin to taking a still photograph of each page. When all the meta data and other information is withheld, the result is a collection of images that afford no search capabilities at all.

- 12 -

9.  July 1, 2005—Nine CDs containing 21,783 electronic *files* (as opposed to .tif images) in native format;

10. July 1, 2005—An electronic, searchable index to defendants' document production, with date, author, recipient, title, and confidentiality designation fields (but not including a subject matter field, as plaintiffs had requested);

11. July 8, 2005—Ten CDs containing approximately 80,000 .tif images;

12. July 8, 2005—A revised index to defendants' production, updated to include additional documents (but still missing the required subject matter field);

13. July 22, 2005—Six CDs containing approximately 37,850 .tif images (asserted to be duplicates of previously produced documents);

14. July 22, 2005—A 157-page updated privilege/redaction log with approximately 2,000 entries;

15. July 22, 2005—A 45-page Attachment Report, cross-referencing over 2,000 formerly missing email attachments with previously produced emails (but which appears to be incomplete);[20]

16. July 25, 2005—Supplemental hard copy production of 295 pages;[21]

Defendants' subject matter designations in response to the February 7, 2005 Scheduling

Order are set forth in a series of letters, the most recent of which was faxed on July 29, 2005.

*See* Downey Decl., Exhibits C1 to C8 (Letters dated January 12, January 14, March 1, March 4,

March 10, May 6, May 23, and July 29, 2005) (collectively, the "Designation Letters").

**D.      Plaintiffs' Efforts to Get Defendants to Address the Delays and Other Problems Created by the Timing and Manner of their Document Production.**

By letter dated March 7, 2005, after realizing that defendants' electronic documents were

non-searchable, plaintiffs' counsel reminded defendants' counsel of their prior requests for

documents in searchable format, and demanded production of the documents in that form, or at

---

[20] Downey Decl. ¶ 36.

[21] Downey Decl. ¶ 29.

least the underlying meta data, or other tools that would permit electronic sorting and searching.[22] The letter also pointed out that, contrary to defendants' protocol, it did not appear that defendants had searched the electronic files (including emails) created or maintained by numerous individuals identified in the parties' interrogatory answers as having relevant knowledge. Finally, plaintiffs asked defendants to provide their documents in a manner that would help keep "Counsel Only" documents segregated from review by plaintiffs' officers and employees. *Id.* By letter dated March 9, 2005, plaintiffs' counsel reiterated the above concerns and pointed out that the broad subject matter designations that appeared in the Designation Letters received thus far did not comply with the February 7, 2005 Scheduling Order.[23]

From March 1, 2005 until July 7, 2005, the lack of searchability made it impossible to avoid reviewing tens of thousands of irrelevant and technically defective documents included in the production. Based on firsthand review or according to the index provided by defendants, plaintiffs and their counsel viewed, page by page:

- At least 57,000 invoices and purchase orders;

- 12,399 bills of lading;

- 14,414 certificates of analysis (i.e., product specifications presented to customs officials with other shipping documents);

- 2,685 certificates of origin;

- 7,862 vessel booking advice transmittals;

- Thousands of documents, e.g., brochures, newsletters, emails, etc., concerning product-specific technical issues; and

---

[22] Downey Decl. <u>Exhibit N</u>, Letter from R. Taffet to A. Marovitz, dated March 7, 2005.

[23] Downey Decl. <u>Exhibit O</u>, Letter from R. Taffet to A. Marovitz, dated March 9, 2005.

LITDOCS/607896.1

- Numerous blank forms or spreadsheets concerning routine administrative, personnel, and safety-related matters, often appearing in sets of ten or more duplicates.[24]

In the course of their review, plaintiffs and their counsel also discovered thousands of defectively reproduced documents:

- Blank or almost blank pages in clusters as long as 2,825 consecutive pages (Downey Decl. ¶ 32; Mittal Decl. ¶ 6);

- Hundreds of emails indicating that attachments accompanied the original document, but the attachments were not produced or were not produced with the relevant email (Mittal Decl. ¶ 7);

- Thousands of pages of indecipherable Excel spreadsheets[25] (Downey Decl. ¶ 32; Mittal Decl. ¶ 8);

- Publicly-available trade magazine articles, newsletters, and newspaper clippings, primarily about technical matters (Mittal Decl. ¶ 9); and

- Hundreds of heavily (and some completely) redacted documents unaccompanied by any explanation disclosing the basis for the redactions (Downey Decl. ¶ 32).

Before and after the March 31, 2005 teleconference with the Court, plaintiffs reiterated their need for searchability tools or at least a meaningful index. Defendants took the position that they had no obligation to provide searchability or more detailed subject matter descriptions. At the same time, they never denied that <u>they</u> could electronically sort their documents by author, recipient, date, title, keywords, and other criteria.[26] Defendants will recall that during the March 31, 2005 conference call, the Court suggested that plaintiffs could move to be reimbursed

---

[24] Downey Decl. ¶ 32; Mittal Decl. ¶ 8.

[25] This was a repeat of the problem that arose in the fall of 2004 in connection with defendants' production of spreadsheets in response to personal jurisdiction discovery.

[26] *See* Downey Decl. <u>Exhibit A</u>, Defendants' Responses and Objections to the Current Requests, Answer to Doc. Req. No. 2, at page 32, referring to "Defendants' <u>fully searchable</u> document database."