document's restricted status.[44]

After the March 31, 2005 call with the Court, defendants delivered hard drives that would at least permit the plaintiffs' officers and employees to begin reviewing what were represented to be approximately 750,000 pages of non-restricted documents. Meanwhile, defendants represented that they would "conduct a document-by-document review of the remaining 'Confidential—Counsel Only' documents" and provide plaintiffs with "a list of the re-designated documents by the end of this month," i.e., by April 30, 2005.[45]

Defendants submitted the final results of their re-designation process on May 4, 2005. In a subsequent conference call, plaintiffs were told that there were approximately 37,000 remaining "Counsel Only" documents. Downey Decl. ¶ 38. With that understanding, plaintiffs turned their attention to further investigating the technical and substantive deficiencies in defendants' production, negotiating over the scope of the parties' respective 30(b)(6) notices of deposition, and conferring with opposing counsel about these and other matters.

At the June 21, 2005 status conference defendants' counsel conceded that they had not reviewed the electronic document production on a document-by-document basis, nor did they have any intention of doing so. Around the same time, in the course of plaintiffs' counsel's review of the remaining "Counsel Only" documents, it had become increasingly apparent that many documents appeared to be misdesignated.[46] The number of "Counsel Only" document entries shown on the production index is now 249,856—over half the total production. Downey

---

[44] *See* Downey Decl., <u>Exhibit X</u> at page 4, Letter from R. Taffet to the Court, dated March 29, 2005.

[45] Downey Decl., <u>Exhibit Y</u> at page 2, Letter from A. Marovitz to the Court, dated April 8, 2005.

[46] Such documents included, for example, an email explaining the dial-in process for a conference call. *See* DECW0001224 - DECW0001225.

Decl. ¶ 39.

By letter dated July 15, 2005, plaintiffs again challenged <u>all</u> of the designations and invited defendants to discuss the matter.[47] In a subsequent meet and confer, Mr. Marovitz stated that defendants' counsel refused to perform a document-by-document review of their "Counsel Only" documents. Downey Decl. ¶ 40. He was asked to disclose the criteria used to make the designations, but as of this writing, there has been no response. As far as plaintiffs' counsel is aware, defendants' position is that the burden should be on plaintiffs to identify and challenge every questionable document in turn.

### G.  Defendants Proposed No Less Burdensome Alternatives to Responding Fully and Completely to the Current Requests.

Plaintiffs served the Current Requests on May 16, 2005. On Wednesday, June 15, 2005, defendants served their Responses and Objections to the Current Requests, essentially refusing to provide substantive responses to all but a handful of the Requests. On the afternoon of Monday, June 20, 2005, defendants' counsel contacted plaintiffs' counsel by telephone and asked whether he would agree to "back off" from any of the Current Requests. When Mr. Taffet asked why, defendants' counsel stated that the parties appeared to be "at an impasse" and abruptly ended the call. On June 21, 2005, defendants filed their motion for protective order and served it by hand at the in-person status conference. In neither the prefiling call nor in their submission to the Court did defendants propose any less burdensome alternatives for responding to the Current Requests.

---

[47] Downey Decl., <u>Exhibit Z</u>, Letter from A. Downey to A. Marovitz and S. Solberg, dated July 15, 2005.

## III. ARGUMENT

### A. Defendants' Motion for Protective Order Should be Denied.

As stated in the June 29, 2004 Order: "[a] party may object to a request if it is 'overly broad' or 'unduly burdensome.' . . . To assert a proper objection on this basis, however, one must do more than 'simply intone [the] familiar litany that the interrogatories are burdensome, oppressive, or overly broad.' *Compagnie Francaise d'Assurance Pour Le Commerce Exterior v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Instead the objecting party must 'show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, unduly burdensome or oppressive.'" June 29, 2004 Order at 6 (emphasis added).

Where a party's proof regarding the likely cost or time involved in compliance is inadequate, as it is here, that party must comply with relevant discovery requests. *See Ahern v. Trans Union LLC*, 3:01 Civ. 02313, 2002 WL 32114492, *1 (D. Conn. Oct. 23, 2002) ("the objecting party must show specifically how . . . each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden") (internal citations and quotation marks omitted); *Omega Engineering, Inc. v. Omega, S.A.*, 3:98 Civ. 2464 (AVC), 2001 WL 173765, *2 (D. Conn. Feb. 6, 2001) (same).

Defendants seek a protective order pursuant to Fed. R. Civ. P. 26(c) on the grounds that the plaintiffs' Current Requests are "completely inappropriate." *See* Combined Brief at 8. More particularly, they claim that the Current Requests are inappropriate for three mutually exclusive reasons: first, because it was their understanding that they would "engage in this massive search only once," and that the Requests are therefore somehow untimely, Combined Brief at 5; second, because the Requests "were implicated by the earlier requests," *id.* at 6; and third, because the

- 23 -

Requests are unduly broad and irrelevant, *id.* For the reasons set forth below, their submission does not meet the standards set forth above and defendants' motion should be denied.

### 1. The Requests Are Neither Untimely Nor Otherwise Prejudicial.

The cases cited by defendants regarding "eleventh hour discovery" are inapposite. No Scheduling Order or time standard prohibited plaintiffs from serving additional merits discovery. Depositions have barely begun, and no trial date is imminent. Moreover, it was always contemplated that after March 1, 2005, plaintiffs would assess whether the initial phase of production defined by defendants' implementation of their protocol was an adequate basis on which to go forward, or whether additional documentary discovery was necessary.

Before they filed their Motion for Protective Order on June 21, 2005, defendants never suggested that attempting to comply with an initial phase of merits discovery would immunize them from responding to all but the most "narrowly tailored" future interrogatories and document requests. Since they first advised the Court, on October 6, 2004, of specific practical obstacles they faced in connection with complying fully with all of plaintiffs' then-outstanding requests, defendants' subsequent discovery efforts were supposed to focus on producing documents responsive to a discrete list of key categories as an initial measure. Plaintiffs agreed to this less burdensome protocol with the express understanding it would be without prejudice to their right to obtain additional discovery on the merits.

As it turned out, additional discovery was necessary, in part, as a result of defendants' own actions. Contrary to defendants' assertion, plaintiffs did not silently "watch[ ] Defendants complete . . . a multimillion-dollar, massive effort to respond to discovery," *see* Combined Brief at 10, and then blindside defendants with new requests. Since November 2004, Plaintiffs have been objecting to the excess of non-responsive documents and the haphazard, disorganized state

of defendants' productions (both paper and electronic). They have repeatedly questioned why a process that was supposed to have been completed on or before March 1, 2005, has now extended through late July and may still not have been completed.

Defendants' glib response was and continues to be that the plaintiffs' broad merits discovery requests are to blame. In fact, defendants have only themselves to blame. They deliberately abandoned a protocol that they said was designed to save time and streamline discovery. Instead, they engaged in a "multimillion-dollar, massive effort" to create a situation in which the most important documents, assuming they were produced at all, are buried in the midst of tens of thousands of blank pages, magazine articles, certificates of chemical analysis, and other corporate flotsam and jetsam.

The Current Requests do no more than necessary to ensure that plaintiffs will have the information they need to prosecute their claims and rebut defendants' anticipated defenses. Indeed, at least some of the Current Requests might not have been necessary had defendants provided plaintiffs with documents in a form from which they could reasonably glean the requested information. But that is not what happened, as amply addressed above. In such circumstances, it is plaintiffs, not defendants, who deserve relief.

In fact, requiring defendants to respond to these additional requests can save time and further unnecessary expense. For example, to glean from the documents alone the identities of defendants' distributors (e.g., Current Requests, Interrogatory No. 1), plaintiffs could use the index to search for documents with the word "distributor" in the title. The result of such a search is a list of 903 documents. Any list of distributors plaintiffs could create, even after taking several hours to sort through and analyze those documents, would still be incomplete as to all of the distributors' identities, all the Products they sold, and the terms under which they dealt with