In sum, there is no precedent for refusing to answer an interrogatory on the grounds that the party has already produced documents in response to previous document requests. Indeed, in a case such as this, where defendants took it upon themselves to produce documents in unusable form and to pad their production with thousands of extraneous and/or defective documents, and where they offer no specific information concerning why they would be unable to provide even partial written answers, they should be required to review their own production, find responsive information, and answer promptly, fully, and completely.

**B.  Defendants Should Be Compelled to Answer Interrogatories 1-29 and Document Requests 1-2 Fully and Completely.**

The disputed discovery requests seek relevant information and documents and, hence, defendants should be compelled to respond. The June 29, 2004 Order summarizes the liberal approach to be taken in determining whether a party's written interrogatories and document requests seek "relevant" information and documents:

> Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in pertinent part, that "[p]arties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed. R. Civ. P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for purposes of discovery. *See Daval Steel Prods. v. M/v Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). The term "reasonably calculated" as used in Rule 26 means "any possibility that the information sought may be relevant to the subject matter of the action." *Morse/Diesel, Inc. v. Fid. & Dep. Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988).[50]

As set forth in more detail below, each of the interrogatories and document requests at issue seeks relevant discovery not only with respect to the parties' substantive claims and defenses (e.g., Interrogatories 1-23), but also with respect to the possibility of spoliation of

---

[50] Defendants' Exhibit 25, at page 6.

evidence (Interrogatories 24-27), and the extent of defendants' electronic document search and retrieval efforts to date (Interrogatories 28-29). Document Request 1 is dependent on the interrogatories and is not addressed separately; Document Request 2 seeks production of all indices and reference tables used by defendants in searching for, producing, retrieving, and reviewing their document production.

### 1. Interrogatories 1-23 Seek Discoverable Facts Relevant to Merits Discovery on Plaintiffs' Antitrust and Tort Claims.

a.  Interrogatories 1-6 and 11-12 ask basic questions regarding the different channels used by defendants to distribute the Products at issue, including distributors (i.e., resellers such as plaintiffs who took title to the Products and resold them) and sales agents. For each distribution channel and Product, plaintiffs asked defendants for the names of the distributors and sales agents, the terms of their relationships with defendants, the prices at which Products were sold to or through them, and a description of the type of documents used in those transactions.

This is a case in which terminated distributors claim, among other things, that defendants engaged in unfair billing practices and applied their credit policies pretextually as part of a scheme to usurp the distributors' place in the market. *See, e.g.*, Amended Complaint ¶¶ 38-51. Plaintiffs also claim that defendants dictated the resale price of Products sold by plaintiffs. *E.g., id.* ¶¶ 27-30. Information and documents revealing who defendants' other distributors and agents were, and the terms on which they dealt with defendants, including obtaining price approvals, changes in billing practices, and credit terms, would allow comparison to defendants' treatment of plaintiffs during the relevant time period, and evoke evidence regarding circumstances in which plaintiffs were treated differently from or the same as other distributors. The actual prices at which the Products were sold through these channels, as well as to end users and other purchasers both in and outside of the United States, are obviously relevant to plaintiffs'

price-fixing claims, both as to liability and damages.

Defendants have repeatedly sought to bar plaintiffs from obtaining discovery about their global distribution of the products at issue, on the grounds that such information is "irrelevant." Now defendants again attempt to characterize plaintiffs' allegations as "geographically limited in scope," Combined Brief at 2, proclaiming that "the only areas directly relevant to Plaintiffs' claim are India and the United States," *id.* at 4. Yet the Court squarely rejected such objections in the June 29, 2004 and August 17, 2004 Orders.

b.  Interrogatories 7-8 seek information about sales directly to end users in the United States and elsewhere. Facts concerning the timing, pricing, and volume of defendants' direct sales to plaintiffs' former customers and others in India are relevant to plaintiffs' tort claim, which alleges that defendants traded on the goodwill generated by plaintiffs' marketing efforts, and took steps to ensure that plaintiffs' customers would stop doing business with plaintiffs and deal directly with them instead. Direct sales to end users elsewhere are relevant because the case concerns defendants' global price-fixing efforts, which would be evidenced, in part, by comparing the prices at which different products were sold at different times through different channels.

c.  Interrogatories 9-10 ask defendants to identify, to the extent of their knowledge and belief, which products were sold in competition with the Products, who supplied them, where they were sold for end use, and the prices at which they were sold. Defendants' objection as to relevance ignores the fact that their own discovery requests demanded that plaintiffs identify substantially the same information. *See, e.g.*, Dow's Second Set of Interrogatories dated

November 2, 2004.[51] Based on the fervor with which defendants demanded earlier this year that plaintiffs respond more fully to interrogatories asking whether plaintiffs had ever bought or attempted to buy "Competitive Products," their refusal to answer these interrogatories and to reveal the basis for any claim they might have as to plaintiffs' duty to mitigate is inexplicable. Interrogatory 10, which asks defendants to identify any communications they had with suppliers of competing products, falls within the scope of the discovery expressly permitted by the June 29, 2004 Order. Defendants already lost that argument and they should not be permitted to revive it.

   d. Interrogatories 13-15 seek facts concerning certain communications about the Merger. The June 29, 2004 Order expressly permitted such discovery for a three year period leading up to the announcement of the Merger in 1999. In addition, plaintiffs are entitled, under the same Order, to obtain evidence of premerger control by Dow (i.e., "gun-jumping"); the integration process as it affected plaintiffs and other purchasers of the Products; and communications regarding the post-Merger state of competition for the sale of Products and Competitive Products.

   e. Interrogatories 16-17 seek facts concerning defendants' communications and transactions with plaintiffs' former customers, the "End Users." The June 29, 2004 Order clearly recognizes such facts as relevant and therefore discoverable.

   f. Interrogatories 18-23 relate generally to defendants' pretextual changes in billing practices, their application of credit policies, and the resulting cancelled and suspended orders,

---

[51] Of course, if the issue is defendants' confusion over the definitions of "Competition," or "Competitive Product" then plaintiffs will agree to adopt the same definition as that set forth in Dow's November 2, 2004 Interrogatories.

all of which are alleged as part of plaintiffs' tort claim. In addition to potentially discovering evidence that plaintiffs were singled out for improper reasons, the purpose of these interrogatories is to elicit more details about defendants' anticipated defenses to these allegations.

### 2. Interrogatories 24-29 Are Designed to Obtain More Detailed Information About Potential Spoliation of Evidence by Defendants.

Interrogatories 24-29 were necessitated by the manner in which defendants produced documents in response to the February 7, 2005 Scheduling Order and by their ongoing failure to cooperate in discovery. Having found numerous, inexplicable gaps in the production of certain key former employees' emails, plaintiffs are seeking discovery about the precise timing and manner of defendants' document searches, retrievals, and destruction of potentially relevant documents.

Defendants' artfully worded disclosures do not provide any specific information about their efforts to preserve and locate potentially relevant files and emails created or maintained by particular individuals. "The obligation to preserve documents that are potentially discoverable materials is an affirmative one that rests squarely on the shoulders of senior corporate officers." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598, 615 (D.N.J. 1997). The fact that a party's electronic document recycling practices are routine or are followed generally in the industry will not, in and of itself, ward off sanctions. *See Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1111 (8th Cir. 1988) (obligation to interrupt regular recycling practices arises if the party knows or should know that documents may be material to a future dispute); *In re Cheyenne Software, Inc. Sec. Litig.*, 1997 WL 714891, *1 (E.D.N.Y. 1997) (defendants sanctioned for continuing regular business practices that resulted in deletion of electronic evidence on hard drives, even though practice was not "entirely unreasonable," because

- 35 -