defendants. By contrast, it is inconceivable that defendants do not have substantially if not literally all of this information readily at their disposal. Likewise, Interrogatory 2 asks about the prices at which defendants sold the Products to their distributors. By chance, plaintiffs have happened across two documents entitled "Distributor Price List," issued by UCC in 1996. Were defendants simply to identify all similar documents by Bates number (which they presumably can do with their searchable document database), and verify that they produced all such lists,[48] and that the lists accurately state the prices at which they sold to their distributors, it might at least begin to answer the question posed, while eliminating hundreds of hours of fishing and guesswork on plaintiffs' part.

> 2. **Defendants' Submission Does Not Meet Their Burden of Proving, with Specificity, That Responding to Each Interrogatory and Each Document Request in the Current Requests Would Impose Undue Burden and Expense.**

To the extent there are any specific practical obstacles to responding to all or a portion of the Current Requests, defendants have not met their burden of identifying them, much less showing that those obstacles are unusual, extraordinary, or otherwise "undue." Of course collecting documents and gathering information from knowledgeable people within a large multinational company takes time and costs money. The Herr Declaration suggests no specific, concrete reasons, however, to excuse defendants entirely from having to respond to otherwise valid discovery requests.

After reciting the efforts and expenses defendants themselves chose to incur in abandoning their more limited protocol in favor of "dump truck discovery," Mr. Herr baldly

---

[48] To the extent that defendants respond that they only produced some but not all such documents in their possession, this fact would further beg the question as to what criteria they have been using to select and

(Footnote Continued on Next Page.)

states that his employer's historical activity "provides guidance regarding the effort that would be required in responding to the Current Requests." Herr Decl. ¶ 16. To the contrary, plaintiffs' review of the documents reveals that much of that historical activity entailed gathering, reviewing, and producing tens of thousands of non-responsive documents, marking them "Counsel Only," redacting them, withholding them as privileged, and correcting thousands of technical errors that caused unreadable spreadsheets and missing email attachments. A cursory inspection by defendants' counsel, <u>before</u> the investment of significant resources in copying, converting, indexing, correcting defects, loading documents onto hard drives and CDs, shipping them out, and supplementing the production again and again and again, would likely have eliminated tens of thousands of documents as non-responsive and saved defendants' time and resources. With this history, Mr. Herr's assertion cannot be credited. Unless defendants deliberately choose to undertake the same unsupportable process for tactical reasons, there is <u>no</u> likelihood that they would incur the same or greater amount of expenses responding to the Current Requests.

     Mr. Herr assumes, wrongly, that what is asked for are all documents pertaining to "every transaction" with defendants' distributors, sales agents, representatives, and customers in sales of the Products (by now, a familiar, limited universe of chemicals) as well as "every transactional record of Defendants for over 20 years for 153 Products globally." Herr Decl. ¶¶ 17-18. Based on these and other erroneous assumptions, he then speculates that compiling and reviewing such documents "would subject Defendants to even more burden than previously experienced," (¶ 16) their efforts would be "even more onerous" (¶ 18); and "the burden would be staggering" (¶ 22).

---

(Footnote Continued from Previous Page.)

produce documents to plaintiffs.

His assumptions are wrong, his conclusions are wrong, and his speculations carry no weight.

Moreover, Mr. Herr claims, in essence, that in an antitrust case such as this, a company such as Dow cannot reasonably be expected to collect information and documents "business-by-business, region-by region" to obtain responsive information about its competitors and competing products. *See, e.g., id.* at ¶ 19. He also suggests that defendants "have not compiled information responsive to Plaintiffs' requests in connection with this case," that therefore, "the burden associated with complying with these requests is equal among the parties." *Id.* at ¶¶ 19-21 (emphasis added). This statement is a non sequitur, and indeed, a reasonable inference is that responsive information might have been compiled, albeit not "in connection with this case" but that defendants refuse to disclose it.

Mr. Herr is silent regarding the methodology by which he calculates it would cost defendants $4 million to respond to the Current Requests. He submits no estimates from his attorneys or outside vendors, but wants the Court to credit his *ipse dixit* calculation. There is no basis, therefore, for the Court to credit such an inflated estimate. Likewise, nothing supports Mr. Herr's conclusion that "the burden associated with complying with these requests is equal among the parties." Herr Decl. ¶¶ 19-21. In reality, the opposite is true. See Downey Decl. ¶ 32, 35 (describing productions' lack of search capability and limitations of production index). Mr. Herr fails to provide the Court with any specific facts—as opposed to conclusions "based on [his] experience generally"—about precisely why it would be unduly burdensome to respond to the Current Requests or even to suggest ways in which the requests might be narrowed to accommodate whatever specific, practical obstacles there may be to full compliance.

Mr. Herr's speculative assertions alone warrant denial of defendants' motion. Yet defendants' own submission puts the lie to their claim of undue burden and their contention that

- 28 -

LITDOCS/607896.1

the ability to glean responsive information from defendants' documents "is equal among the parties." Specifically, at the same time they argue that compliance with the Current Requests would force them to engage in a whole new round of searching for documents, they demonstrate, by way of the various samples appended to their motion papers, that they are reasonably able to derive responsive information from documents they produced.[49] They can do this because, unlike plaintiffs, defendants have a "fully searchable document database" that undoubtedly permitted them to locate these documents with relative ease. This is still another reason defendants' motion should be denied.

### 3. The Court Should Overrule Defendants' Objections That Certain Interrogatories are Duplicative of Prior Document Requests.

Although courts can limit duplicative discovery requests, "a claim of duplication is insufficient, unless <u>all</u> documentary material from which the interrogatory answers may be <u>conveniently</u> obtained has been previously provided." *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264-265 (N.D. Ill. 1979) (emphasis added). In *Folding Carton*, the court overruled an objection that certain interrogatories were duplicative, on the ground that "previous document requests and interrogatories would not <u>fully</u> provide the answers to these interrogatories." *Id.* at 265 (emphasis added). The court noted that merely quoting a section of an interrogatory to show that it is duplicative, as defendants do in this case, does not establish that the information sought was actually produced. *Id.*

The three cases cited by defendants in support of their argument that plaintiffs should "go fish" in the documents are inapposite. In *Cavaliere v. Margaretten & Co.*, No. 94 CV01928,

---

[49] Furthermore, they were able to do so thirty days after service of the Current Requests.

1996 WL 637834 (D. Conn. Mar. 28, 1996), the court denied a motion to compel responses to certain interrogatories because the responding party, unlike the defendants here, had sufficiently "identified the documents that contain the information sought." *Id.* at *1. Defendants likewise mistakenly rely on *Nonferrous BM Corp. v. Daniel Caron Ltd.*, No. 94 Civ. 7705, 1996 WL 208182 (S.D.N.Y. Apr. 26, 1996). There, the court ruled that the defendant had failed to provide a "<u>detailed</u> specification as to which documents contain the answers [to the interrogatory]." *Id.* at *1 (emphasis added). Furthermore, where the court found that the "defendant [would] be able to extract the information from the documents more quickly than [the] plaintiff, and with substantially less burden," the defendant was ordered to answer the interrogatory with a sworn answer, rather than merely identifying responsive documents.

The case of *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16 (S.D.N.Y. 1984), provides additional support for overruling defendants' objection. In that case, the defendant responded to 183 separately numbered interrogatories (with 500 subparts) by asserting generally that the information could be obtained from documents already produced. *Id.* at 42, 44. In granting the plaintiff's motion to compel, the court stated that what was then Rule 33(c) "does not allow a respondent to foist a mass of records on his interrogator when their deciphering is feasible only for one familiar with the records." *Id.* at 44. Indeed, the court noted, citing the Advisory Committee Note to the 1980 Amendment to Rule 33(c), that "[i]t is an 'abuse of the [Rule 33(c)] option' to merely direct the interrogating party to a mass of business records." *Id.*, citing also *In re MasterKey Litig.*, 53 F.R.D. 87, 90 (D. Conn. 1971). The court ordered the defendant to "respond by written answer or, if answer by provision of business records is proper under Rule 33(c), . . . to specify which records answer each interrogatory." *Id.* at 45.