defendants could have saved information by copying it onto any other relatively inexpensive storage media).

Defendants' current responses to Interrogatories 24-29 are evasive and inadequate. Among other things, it is unclear if and when defendants ever put a "litigation hold" on potentially relevant electronic emails and other documents in time to avoid their routine destruction. Furthermore, where defendants have represented that they unilaterally decided which sources were most likely to contain responsive documents, the locations and servers that defendants elected not to search are as important to know as where they did search. As it now stands, the generalized answers offered by defendants suggest they did breach their duty to preserve potentially relevant documents. The extent to which this breach occurred, and the resulting prejudice to plaintiffs, if any, are valid subjects of discovery at this point in the case. No matter how discomfiting, these are not matters that defendants should be allowed to sweep under the rug.

### 3.    Defendants Should be Ordered to Produce All Indices, Databases, and Tables Responsive to Document Request No. 2.

Document Request 2 demands production of all existing "indices, databases, or reference tables prepared or used by defendants in connection with searching for, producing, retrieving or reviewing documents." Plaintiffs have a compelling need for defendants' fully searchable index and all other documents responsive to Request 2, if they are ever to make sense of the defendants' disastrous document production. Moreover, they should not have to pay for it or for the cost of any portion of defendants' compliance with the Current Requests, because the very necessity for such tools and such discovery arose from defendants' own tactical decisions in violation of their duties under the Court's Orders and Rule 34.

At the time the Current Requests were served, plaintiffs had no index whatsoever. They

LITDOCS/607896.1

were awaiting whatever sort of index defendants cared to provide, which was not delivered until July.  The production index they ultimately did provide does not offer the ability to search the text of documents by keywords, or to search by subject matter, type of document, or other criteria—all of which defendants apparently have at their disposal.  Installing the revised production index has been time-consuming and fraught with technical snags, and as noted above, thousands of entries still provide no hints as to the document's contents or subject matter.

The Court should reject any claim that indices and databases are immune from discovery as work product.  Many courts have ordered production of such "fact" work product in circumstances far less egregious than this case.  For example, in a case involving a production of only 100,000 pages, a Connecticut state court required production of an index and database on a showing of substantial need and undue hardship.  *Scovish v. The Upjohn Co.*, 15 Conn. L. Rptr. 446, 1995 WL 731755, *4 (Conn. Super. Ct. Nov. 22, 1995).  The court recognized that it was highly unlikely that attorney mental impressions or thought processes would be revealed, given that over 100,000 pages were produced.  *Id.* at *3; *see also Washington Bancorporation v. Said*, 145 F.R.D. 274, 278 (D.D.C. 1992) (noting that index cataloging thousands of documents virtually eliminates possibility that requesting party could glean litigation strategy); *Minnesota v. Philip Morris, Inc.,* 10.7 Tobacco Prods. Litig. Rep. 2.275, 2.279 (1995) (noting that the "sheer number of the documents identified in the indexes at issue provide protection").  Moreover, in cases where an index or database includes subjective information that might reveal an attorney's mental impressions or thought processes, courts will order production only of the objective components.  *Scovish*, 1995 WL 731755 at *4; *see also, e.g., Minnesota v. Philip Morris Inc.*, 606 N.W.2d 677, 682 (Minn. App. Ct. 2000) (allowing redaction and requiring production of

LITDOCS/607896.1

only objective portions of database).[52]

For all the reasons discussed above, plaintiffs have a substantial need for the indices, databases and tables sought in Request 2, and they would suffer undue hardship if defendants were not ordered to respond in full to this Request.

### C.    Appropriate Sanctions Include an Order Requiring Defendants to Pay Certain of Plaintiffs' Attorneys' Fees and Expenses.

As noted by the Court in March, it is within the Court's power to order defendants to pay the plaintiffs' attorneys' fees and expenses caused by their failure to comply with both the letter and the spirit of the Court's discovery orders. *See* Fed. R. Civ. P. 37(b)(E) (party or its counsel may be ordered to pay the aggrieved party's "reasonable expenses, including attorney's fees, caused by the failure" to comply with discovery order); *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 179 F.R.D. 77, 80 (D. Conn. 1998) ("[t]he mildest sanction is the reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate").

Defendants violated the June 29, 2004 Order, August 17, 2004 Order, and February 7, 2005 Order by failing to produce all documents and information required thereunder in accordance with Rule 34 or as otherwise directed by the Court, by refusing to respond to interrogatories designed to seek information defined by the Court as relevant, and by interposing objections (e.g., as to the relevant geographic scope of plaintiffs' claims) that the Court

---

[52] *See also, e.g., Zakre v. Norddeutsche Landesbank Girozentrale,* 2004 WL 764895 (S.D.N.Y. 2004) (holding that failure to provide an index or to organize and label documents to correspond with plaintiff's specific requests could be rectified by providing the documents in a searchable format); *Rickles, Inc. v. Frances Denney Corp.,* 508 F. Supp. 4, 7-8 (D. Mass. 1980) (ordering production of "an index or orderly listing of the documents presented," where a party produced a "confused collection of business records, handwritten notes, invoices, and advertisements" and its "resistance to full and timely disclosure . . . [caused] needless waste of time and effort").

previously overruled.

Defendants told both plaintiffs and the Court that a systematic protocol would be followed, one designed to ensure that the most relevant documents that plaintiffs sought would be brought front and center. Instead, defendants burdened plaintiffs with the impossible task of sorting through a morass of unintelligible business records in hopes of finding the proverbial needle in a haystack. Having chosen not to comply with their own discovery and subject matter identification protocol, defendants were required, by default, to comply with Rule 34 of the Federal Rules of Civil Procedure by producing documents either as kept in the ordinary course of business or labeled and organized to correspond with plaintiffs' document requests. This they plainly did not do.

An "unindexed, document 'dump' does not meet [the producing party's] obligation to match documents with discovery requests as specifically as possible." *See In re Lorazepam & Clorazepate Antitrust Litig.*, 300 F. Supp. 2d 43, 47 (D.D.C. 2004); *see also Andritz Sprout-Bauer v. Beazer East, Inc.,* 174 F.R.D. 609, 629-30 (M.D. Penn. 1997) (holding that making 130,000 pages of documents available for review, where documents are separated only by colored sheets of paper and there is no discernable organization, violates Rule 34); *American Rockwool, Inc. v. Owens-Corning Fiberglas Corp.,* 109 F.R.D. 263, 266 (E.D.N.C. 1985) ("Directing the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery."); JAY E. GRENIG & JEFFREY S. KINSLER, HANDBOOK OF FED. CIV. DISCOVERY & DISCLOSURE § 9.41 (2d ed. 2002) (noting authority stating that a producing party has "a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials on to the discovering party along with the items actually sought under Rule 34."); FRANCIS H. HARE, JR. ET AL., FULL DISCLOSURE: COMBATING

- 39 -

STONEWALLING AND OTHER DISCOVERY ABUSES 117-140 (1995) (discussing "dump truck discovery" tactics).

In this case, defendants delivered over 462,000 randomly organized hard copy and electronic documents identified only by subject matter designations such as "documents related to, among other things, business activities." *See* Downey Decl. <u>Exhibit C1-C8</u>. They knew or reasonably should have known these designations would be useless. Defendants actively sought to hinder plaintiffs' ability to review and identify relevant documents, ensuring that the electronic documents would be unsearchable, while ignoring, for far too long, repeated complaints about the production of non-responsive, duplicative, and technically defective documents.

Regardless of whether their actions were deliberate or merely grossly negligent, defendants failed to produce documents at the time or in the manner required. *See Argo Marine Systems, Inc. v. Camar Corp.*, 755 F.2d 1006, 1015 (2d Cir. 1985) (upholding award of sanctions where plaintiff failed to produce documents covered by the court's discovery order); *Brick v. HSBC Bank USA*, 2004 WL 1811430, *5 (W.D.N.Y. 2004) (affirming sanctions award where law firm "got caught time and time again with having made misrepresentations about the completeness of what was provided"); *Invision Media Comm., Inc. v. Fed. Ins. Co.*, 2004 WL 396037, *8-9 (S.D.N.Y. 2004) (awarding sanctions for party's misleading statements regarding existence and location of evidence and failure to make reasonable inquiries); *In re LTV Steel Co., Inc.*, 307 B.R. 37, 46-47 (N.D. Ohio 2004) (awarding sanctions where creditor made continuously changing excuses for failing to comply with discovery requests).

Defendants were specifically asked to produce their electronic documents in the original electronic format as kept in the usual course of business. To the extent that defendants converted

- 40 -