FILED
2005 AUG 17 P 3:29

, DISTRICT COURT
   .RTFORD, CT.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. | CIVIL ACTION <br> NO. 3-02 CV 1107 (AVC) |

### DECLARATION OF AJAY MITTAL

Ajay Mittal declares as follows:

1. My name is Ajay Mittal and I am chairman of plaintiff Megavisa Solutions (S) Pte., Ltd. I make this Declaration on personal knowledge in support of Plaintiffs' Cross-Motion to Compel Further Responses and to Remove "Confidential—Counsel Only" Designations and for Sanctions, and in opposition to Defendants' Motion for Protective Order.

2. In April 2005, I sent two of Megavisa's officers to Bingham McCutchen's New York office for approximately three weeks to review non-restricted paper documents produced by defendants. Beginning in May 2005 my employees and I reviewed defendants' non-restricted electronic documents. The purpose of this review was to assist our counsel in preparing for depositions and assess the extent to which defendants had complied with the Court's discovery Orders.

3. I am informed that there were at least 75 boxes and more than 1,000,000 electronic images to review. I and my employees spent hundreds of hours in the aggregate

reviewing a substantial portion of the defendants' non-restricted hard copy and electronic document productions in New York and at our offices in India and Singapore, at an estimated out-of-pocket cost of at least $100,000.

4. The electronic documents were produced in the form of .tif images. We had no means of electronically sorting or searching them by keyword, author, title, date, recipients, departments, or other criteria. We had to open electronic folders labeled with only a Bates number range, then open files contained in the folders, and then view each and every image in each file in each folder, one image at a time. The process was tedious, time-consuming and disruptive to our small company's day-to-day operations.

5. My employees and I tried to determine which of the documents fell into the categories listed in the October 15, 2004 and December 14, 2004 Letters referenced in the Court's February 7, 2005 Scheduling Order. For the reasons set forth below, this proved to be an impossible task to complete.

6. In the course of our review, we discovered that the documents were not organized according to date, customer, product, or any other criteria that we could discern. We discovered thousands of electronic images, including blocks of as many as 2,825 consecutive images (e.g., DEAH 0001222-DEAH 0004046), that were either blank, almost blank, or unintelligible.

7. We discovered that hundreds of emails indicated that attachments were part of the message, but we were unable to locate the related attachments.

8. We discovered thousands of pages consisting of Excel spreadsheets that were unreadable, documents concerning the technical features of products, documents related to the booking and shipping of individual orders, and blank forms concerning administrative, personnel, and safety-related matters.

9. We discovered that the production included publicly available trade magazine articles, newsletters, and newspaper clippings. All of these were marked "confidential."

10. We estimate that at least 10% of all the electronic documents we reviewed were followed by multiple copies of the same document.

11. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed this 4th day of August 2005,

_____
Ajay Mittal