## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD., )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 3:02 CV 1107 (AVC)<br><br>October 11, 2005 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF IMPROPERLY WITHHELD AND REDACTED DOCUMENTS

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "plaintiffs") submit this memorandum in support of their motion for an Order compelling defendants to justify, with particularity, their withholding and/or redaction of thousands of responsive documents on the grounds that they are "privileged." As reflected on the face of their Privilege Log, defendants have invoked nonexistent privileges, and where they have expressly invoked the attorney-client or work product privileges, they have done so by repeatedly failing to identify attorneys as either the author or recipient, or to offer any other specific information that would provide a basis to conclude that the documents are in fact subject to any privilege. In addition, the Court should direct defendants to withdraw their privilege claims with respect to certain documents identified below, which defendants either improperly withheld or redacted on the basis of the attorney-client or work product privileges, or as to which they should be deemed to have waived any privilege claims. Finally, the Court should direct defendants to make Lawrence Cheung

available for further deposition examination, at defendants' expense, because of their admittedly improper redaction of a certain document authored by Mr. Cheung, about which plaintiffs have been unfairly precluded from obtaining relevant testimony.

### 1.    All of Defendants' Privilege Designations Are Suspect.

There are numerous facially improper entries on the Privilege Log for which defendants have offered no satisfactory explanation. *See* Declaration of Alicia L. Downey ("Downey Decl.") Ex. T ("Privilege Log"). For example:

(a)    Documents asserted to be work product concerning "Current Business Involving End User(s)" or "Current or Potential Business involving Product(s)," where there is no attorney identified as the author or recipient (*see, e.g.,* Privilege Log at page 1 (D00000008; D00000009-10; D00000011; D00000012-13; D00000014; D00000015-16; D00000017; D00000019-21; D00000022-23; D00000025); page 16 (D00418660-77); page 27 (D00456221-26; D00456227-30; D00456319-26; D00456327-34; D00456335-42; D00456343-50; D00459677-83; D00459684-88; page 28 (D00461656-57; D00463980-83; D00466183-84; D00466185; D00466186; D00466189; D00466190; D00468027-29; D00468211-29; D00468230-32); page 29 (D00470673; D00470675-76));

(b)    Documents asserted to be privileged communications "relaying legal advice," where the authors are not attorneys or where the authors are third parties, such as plaintiffs' principal, Ajay Mittal (*see, e.g.,* Privilege Log at page 3 (D00000246-247; D00000249-250); page 4 (D00000252; D00000253-254; D00000256-257; D00000260-263); page 5 (D00000273); page 8 (D00000413-413A; D00000440-440A; D00000485-487));

(c)    Documents withheld or redacted on the basis of references merely to "Protective Order" or "Protective Order re: proprietary info," not work product or the attorney-client privilege. These documents, according to the Log, concern subject matters such as "Field Seller Phone Numbers," "Product Lists," and "Marketing Report/Information," (*see, e.g.,* Privilege Log at page 9 (D00379016-18; D00379019-26; D00379540-544; D00379545-554; D00379555-561; D00379563-566); pages 10-14 (all entries); page 15 (D00417254-76; D00417277-87;

D00417288-300; D00417301-304; D00417305-14); page 16 (D00417334-37; D00417361-73; D00417374-85; D00417433-42; D00417334-37); page 17 (D00439122-24; D00439125; D00439197-99; D00439200; D00439272-74; D00439275-77); pages 18-25 (all entries)); and

    (d)    Documents asserted to be "Work Product," but that are also described as "Agreement[s]" with other companies, such as Lubrizol Corp. and Hercules Inc. (*see, e.g.,* Privilege Log at page 26 (D00450298-301); page 27 (D00456221-26; D00456227-30; D00456319-26; D00456327-34; D00456335-42; D00456343-50; D00459677-83; D00459684-88); page 33 (DEBK0025223)).[1]

    The Privilege Log does not disclose enough information to permit the conclusion that any privileges, whether legally cognizable or not, have been properly invoked. Yet, on August 31, 2005, defendants sought, for the third time this year, to "remove" additional, assertedly privileged documents from their electronic production, this time as to over 130 documents. Downey Decl. Ex. U. In response to plaintiffs' inquiries, defendants have refused to explain how so many documents could have been "inadvertently" produced, and why their claim of privilege comes so late. Indeed, after plaintiffs challenged these new assertions of privilege, defendants went back and withdrew their claims as to twenty-five, nearly 20%, of the documents. Downey Decl. Ex. V.

    Under such circumstances, plaintiffs should not be required to accept defendants' privilege designations at face value.[2] The Court should direct defendants to produce a complete and accurate Privilege Log of all documents withheld or redacted on grounds of either the attorney-client or work product privilege, which specifies with particularity the factual basis on

---

[1] These examples in no way constitute an exhaustive list of the problematic entries on the Privilege Log.

[2] Indeed, defendants' conduct with regard to their "privileged" documents appears to be akin to their wholesale approach to designating documents as "Counsel Only." *See* Memoranda of Law and Declarations filed August 5 and October 3, 2005 in support of Plaintiffs' Cross-Motion to Compel Production of Further Discovery Responses, to Remove "Counsel Only" Designations and for Sanctions. Defendants' history of being unable to support restricted access to their documents with any facts warrants careful scrutiny of their privilege claims.

which defendants are invoking such privileges, including but not limited to: (i) the identity of any and all attorneys to whom allegedly privileged communications were directed or who prepared alleged "work product"; (ii) the specific subject matter of the allegedly privileged communications or work product; (iii) whether the communications specifically conveyed or requested confidential legal advice; and (iv) verifications by appropriate persons with knowledge that such communications were intended to be and in fact were kept confidential. Failing the production of a satisfactory submission within a reasonable period of time (i.e., ten days of entry of an Order by the Court), defendants should be compelled to produce all of their allegedly privileged documents in their entirety.

**2.    The Court Should Require Defendants to Withdraw Their Privilege Claims and Produce Certain Documents.**

Plaintiffs are not requesting *in camera* review of every one of the documents listed on defendants' Privilege Log. Defendants' systematic overdesignation makes that impossible. In light of recent events, however, there is a compelling need for the Court to order defendants to produce certain documents, or at least to submit them to *in camera* review, as soon as possible. At Dow executive Lawrence Cheung's deposition on August 5, 2005, plaintiffs introduced an email from defendants' business records as an exhibit. *See* Downey Decl. Ex. A (Plaintiffs' Exhibit 92). Mr. Cheung was the author of the email, and according to his own testimony described in more detail below, that email was not a privileged communication directed to counsel. Specifically, he testified that it contains no discussions of "legal strategy," and no lawyers were consulted in connection with its preparation. This document should have been produced in its entirety before plaintiffs took Mr. Cheung's deposition.

Almost two months after plaintiffs formally objected to the redaction of Exhibit 92 during Mr. Cheung's deposition, defendants produced a less-redacted, but still incomplete version, along with re-redacted versions of various other internal emails incorporating the contents of Exhibit 92. *See* Downey Decl. Ex. B (revised redacted version produced September

30, 2005); Ex. C through P (related internal emails).[3]  A comparison between the heavily redacted document that plaintiffs were forced to use in Mr. Cheung's deposition and the newly redacted version makes clear the disturbing extent to which defendants hid important, relevant facts casting light on the true nature of the parties' relationship and bearing directly on plaintiffs' claim for negligent misrepresentation.  Indeed, while questioning Mr. Cheung in deposition, plaintiffs' counsel was led to believe that the report covered only four "key points."  *See* Downey Decl. Ex. W, Cheung Dep. Tr. at 533 (Q. Okay, then your e-mail has four points, the fourth of which has been redacted. . . .")  As can be seen in the record, neither Mr. Cheung nor defendants' counsel made any attempt to correct that misimpression.  *Id.*

Until the newly redacted version was produced, plaintiffs had no idea that Exhibit 92 in fact contained three more "key points" and a lengthy discussion of "OPTIONS."  Plaintiffs' opportunity to question Mr. Cheung was truncated by defendants' overzealous redactions.  Now that the truth has been revealed, at least in part, defendants should further be ordered to produce Lawrence Cheung for additional examination in Hartford, Connecticut, to be conducted at defendants' expense.  Even if the Court disagrees and upholds defendants' latest redaction of Exhibit 92, plaintiffs should still be given the opportunity to examine Mr. Cheung about the new material that has been uncovered.

In addition to the March 2002 Cheung Report Documents, there is at least one other document as to which plaintiffs seek immediate relief.  In the course of their months-long "rolling production" of documents, defendants produced at least twelve copies (apparently maintained by different custodians), of a "string" of Dow internal emails set forth in a three-page document.  *See* Downey Decl. Ex. Q (the "India Orders Emails").  Defendants now seek to replace the unredacted copies they produced earlier this year with almost totally redacted copies.

---

[3] For purposes of this Motion, plaintiffs will refer to Exhibit 92 and the related documents submitted herewith as the "March 2002 Cheung Report Documents."  This group of documents also includes all duplicates of the March 2002 Cheung Report Documents produced by defendants.  In the interest of lessening the burden on the Court, however, the duplicates are not included in this submission.

Defendants further demand the return or destruction of the unredacted versions, as well as an additional 101 documents as to which they have only recently claimed the privilege.[4] *See* Downey Decl. Ex. V (Letter from Dana S. Douglas dated September 29, 2005, listing Bates numbers of documents as to which defendants claim the right to withhold, in whole or in part, by invoking the attorney-client privilege, notwithstanding their prior production in July) (the "September 29, 2005 Letter"). There is little or no basis on which to conclude that all these documents are privileged, or even if they are, that defendants have not waived the privilege.

In particular, the India Orders Emails consist of a series of notes exchanged among Dow managers describing how "UCC products are being sold through Megavisa under a distributor agreement." *See* Downey Decl. Ex. Q. The first email in the string, which appears on the bottom of the third page, is from Arjun Samtani to Atsuko Serizawa. Neither of these individuals is, to plaintiffs' knowledge, an attorney. That communication, on which no attorney is copied, has been inexplicably blacked out in its entirety, as have the four subsequent emails in the string. The emails were apparently generated between July 3 and July 15, 2001, long before the existence of any claims asserted by plaintiffs against defendants, but in a critical period when Dow was secretly planning to terminate plaintiffs while simultaneously expressing to them great satisfaction with the relationship. These redacted portions, therefore, no doubt contain key admissions by defendants about the nature of the parties' relationship and, given the reference to "this decision" on page 1, possibly about the secret plan forming within Dow to terminate plaintiffs' distributorship. There is no evidence that the emails contain confidential legal advice, as opposed to communications of facts and business-related comments. Plaintiffs therefore

---

[4] As of the date of this submission, plaintiffs' counsel has taken the position that no previously produced documents will be returned or destroyed until plaintiffs have been shown some factual basis upon which to conclude that the documents (in whole or in part) are in fact immune from discovery, and even assuming that such a basis exists, that the documents were in fact produced inadvertently. Nevertheless, for the time being, plaintiffs' counsel have undertaken not to deliberately search for or review any of the documents in dispute.

request that the Court order defendants to withdraw their privilege claim, or at the very least, to submit the India Orders Emails to *in camera* review.

In the unlikely event that any portion of the India Orders Emails consists of privileged communications, the Court should nevertheless rule that defendants have waived the privilege by virtue of their own conduct. The Court should further rule that the same waiver applies to all of the previously produced documents that defendants are attempting now to re-designate as privileged. As set forth below, these documents were voluntarily produced months ago; defendants had ample time to conduct their review; and multiple copies of many of the documents (e.g., twelve copies of the India Orders Emails) were produced. These and other circumstances described herein establish that defendants either (a) knowingly and willingly produced these documents and have now simply changed their mind, or (b) failed to exercise reasonable care to prevent the documents from being produced. In either case, the Court should rule that the documents identified in the September 29, 2005 Letter, including the India Order Emails, have forever lost whatever protection to which they might otherwise be entitled.

## I.    RELEVANT FACTS

### A.    Defendants' Re-designations of "Privileged" Documents.

1.    Under the Stipulated Scheduling Order dated February 7, 2005, defendants were required, on or before March 1, 2005, to complete their production of certain documents responsive to plaintiffs' outstanding requests for production. Downey Decl. ¶ 12.

2.    After March 1, 2005, as plaintiffs' counsel began discovering an enormous quantity of redacted documents in defendants' electronic production, defendants were repeatedly asked, in meet and confer conferences and in correspondence, when they would be supplying a privilege log providing the basis for these redactions and identifying any responsive documents withheld entirely. Downey Decl. ¶ 12.

3.    On May 4, 2005, defendants' counsel sent a letter identifying eighty-seven "inadvertently produced" documents that, upon further review by counsel, were "removed" from

defendants' production on the grounds of privilege. Downey Decl. <u>Ex. R.</u> The list of re-designated documents included twenty-one documents that had been produced in hard copy, with the balance being electronic documents. In anticipation of receiving defendants' Privilege Log, plaintiffs did not challenge the re-designation of these documents, but for the time being accepted at face value defendants' representations that they were privileged. Downey Decl. ¶ 13.

4.      On May 16, 2005, defendants' counsel sent a letter identifying six more "inadvertently produced" documents to be "removed" from defendants' production on the grounds of privilege. Downey Decl. <u>Ex. S.</u> Still anticipating defendants' Privilege Log, plaintiffs did not challenge the re-designation of these documents, but again accepted at face value defendants' representations that they were privileged. Downey Decl. ¶ 13.

5.      Defendants produced a privilege log on July 1, 2005. Downey Decl. ¶ 14. Shortly thereafter, defendants indicated they would be producing additional documents and supplementing their Privilege Log. *Id.* Anticipating receipt of the supplemented Privilege Log, plaintiffs continued to forbear challenging defendants' re-designations. *Id.* Three weeks later, on or about July 22, 2005, defendants produced a new Privilege Log. Downey <u>Ex. T.</u>

6.      On August 31, 2005, defendants' counsel sent a letter asking plaintiffs to return or destroy more than 130 previously produced documents on the grounds that they were "inadvertently produced" privileged communications. Downey Decl., <u>Ex. U.</u> The letter provided no information concerning the explanation for the belated designation of these documents as "privileged."[5]

7.      According to the letter that accompanied the redacted documents shipped on September 29, 2005, defendants withdrew their privilege claim as to twenty-five of the documents that had been identified in the August 31, 2005 letter. Downey Decl. <u>Ex. V.</u>  Forty-

---

[5] Although the letter indicated that defendants would be producing certain of the documents in redacted form "shortly after the [Labor Day] holiday weekend," redacted versions were not actually delivered until September 30, 2005, with more following on October 3, 2005.

one documents remained re-designated and withheld as "privileged in their entirety," while the rest were produced in redacted form. *Id.*

8.     The newly redacted documents include twelve copies of the India Orders Emails. Downey Decl. Ex. Q. Some of the communications therein appear to be written by or sent to an addressee at "Dow Pacific Legal," but there is no basis on which to conclude that this person was an attorney rendering or being asked to render confidential legal advice. Moreover, the redacted portions of this document include communications on which no attorneys were the author or the recipient, including the first and possibly the most important email, dated July 3, 2001, from Arjun Samtani to Atsuko Serizawa. Downey Decl. Ex. Q at page 3.

**B.     The March 2002 Cheung Report**

9.     Exhibit 92, introduced at the deposition of Dow executive Lawrence Cheung on August 5, 2005, was identified by him as an email that he drafted and sent to six other Dow executives, none of whom is known to be an attorney. *See* Downey Decl. Ex. W, Cheung Dep. Tr. at 532-35 (Q: " . . . the purpose of this e-mail was to put down what you saw and what you heard? *Cheung: Yeah.* Q: And not to give any opinions? *Cheung: No.*"). Mr. Cheung testified that he did not recall discussing legal strategy in any way as part of the report set forth in his email (Downey Decl. Ex. W, Cheung Depo. Tr. at 570-71), and that he had had no discussions with any lawyer regarding Megavisa prior to the date of the email, March 3, 2002 (*id.* at 571). *See also id.* at 572 (prior to March 3, 2002, Mr. Cheung could not recall speaking with any attorney concerning the relationship with Megavisa). During the deposition, plaintiffs' counsel objected to the characterization of Exhibit 92 as privileged. *Id.* at 535, 572-73.

10.     On or about September 30, 2005, in response to demands made almost two months before, defendants produced a far less redacted but still incomplete version of Exhibit 92, at the same time maintaining, despite Mr. Cheung's testimony, that the remaining redacted portions were privileged. *See* Downey Decl. Ex. B. Along with the expanded, although still incomplete version of Exhibit 92, defendants produced newly redacted versions of documents

incorporating its contents. *Id.* Ex. C-P. The new version of Exhibit 92 contains substantially more material than the first version. Indeed, it appears that, rather than four "Key Points" in the summary of Mr. Cheung's conversations with plaintiffs and related internal discussions, which is all that is reflected on Exhibit 92, the report now discloses (at least partially) that there were seven "Key Points" and various "OPTIONS" presented for the consideration of the recipients.[6]
*Id.*

## II.    ARGUMENT

### A.    Defendants Have Abused the Attorney-Client Privilege in Order to Withhold Important Documents.

Because the attorney-client privilege "stands in derogation of the public's 'right to every man's evidence, . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *United States v. Int'l Brotherhood of Teamsters, et als.*, 119 F.3d 210, 214 (2d Cir. 1997), quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.), *cert denied*, 414 U.S. 867 (1973). The privilege may be invoked "to hold secret only those communications made in confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege." *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943 (2d Cir. 1992) (emphasis added), citing *Fisher v. United States*, 425 U.S. 391, 403 (1976). The essential elements of the privilege are: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the

---

[6] The newly disclosed contents of Mr. Cheung's report also put the lie to his deposition testimony in which he denied that the report included a recommendation that Dow take the Wire and Cable distributorship away from Megavisa. Compare Downey Decl. Ex. W, Cheung Dep Tr. at 536 (Q: [Mr. Wildi says] . . . I agree with you that we should strongly consider taking the W&C distributorship away from MV." Was that what you had told Mr. Wildi? *Cheung: No. I don't recall I told Wildi on that. I really don't know why he has this understanding."*), with Ex. B, at page 2, where Cheung writes: "I don't believe that we could or we should continue the business relationship with MV with the current development. In fact, it could be a golden opportunities [*sic*] to cut off MV that Dow W&C can re-establish the appropriate strategies in India as we can deal with Indian customers direct now and the import duty is coming down."

purpose of obtaining or providing legal advice." *United States v. Int'l Brotherhood*, 119 F.3d at 473.

Moreover, even in cases where a communication itself is privileged, "the underlying information or substance of the communication is not . . . so privileged." *In re Six Grand Jury Witnesses*, 979 F.2d at 945. Likewise, factual information, including information developed in anticipation of litigation, is not protected by the attorney-client privilege. *Id.*

To invoke the work product privilege, "a party must generally show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (emphasis added) (affirming rejection of attorney-client and work product privilege claims where privilege log entries did not support allegations of privilege). *See also* Fed. R. Civ. 26(b)(3). The party claiming immunity from discovery must "provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d at 473, quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993). To that end, the Privilege Log provided by defendants should have "provide[d] sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *Cf. id.* The cursory, indeed cryptic, descriptions on their Privilege Log are no less deficient that those that were rejected in *United States v. Constr. Prods. Research, Inc.*, cited above. Absent a "specific explanation of why the document is privileged," defendants' privilege claims should be overruled. *See* 73 F.3d at 474 (emphasis added, citation omitted).

As revealed on the face of their Privilege Log, defendants have not met these requirements. Indeed, they have abusively asserted claims of privilege by going so far as to invoke nonexistent privileges, to avoid producing documents concerning relevant matters. Such subject matters include their business dealings with the End Users, plaintiffs' former customers, i.e., "Current Business Involving End User(s)," "Current and Potential Business involving Product(s)", in addition to "Product Lists" and "Marketing Report/Information." If all these

documents are in fact responsive, then there appears, at least on the record, to be no basis on which defendants should be permitted to withhold them in whole or in part.

Stark evidence of defendants' systematic abuse of privileges is reflected in their withholding of at least four facially improper categories of documents:

1.      Documents asserted to be work product, where there is no attorney identified as the author or instigator, are not work product.  If defendants insist otherwise, they should be required to explain, as to every "work product" entry, precisely why that designation is appropriate.

2.      Documents asserted to be privileged communications "relaying legal advice," where the authors are not attorneys or where the authors are third parties, such as plaintiffs' principal, Ajay Mittal, cannot be privileged.  Defendants should be required to withdraw their claim of privilege and produce these documents.

3.      Documents withheld based on references to "Protective Order" or "Protective Order re: proprietary info," do not invoke a recognized privilege.  Defendants should either offer evidence sufficient to satisfy such a requirement or be directed to produce these documents immediately.

4.      Documents asserted to be "work product," but that are described as "Agreement[s]" with other companies such as Lubrizol Corp. and Hercules Inc., are *a fortiori* discoverable, even if they were drafted or negotiated by counsel.  If defendants take a contrary position, they should provide some factual basis and legal authority for doing so.

Whether as the result of incompetence or a deliberate effort to withhold relevant information, the Privilege Log is defective in all material respects.  Defendants should be required to justify all of the privileges invoked on their Privilege Log and, if cannot do so, they immediately should produce in the most convenient form (i.e., electronically if the documents are now available in that format) all improperly withheld and redacted documents.

**B.    The Court Should Order Production of Unredacted Copies of the March 2002 Cheung Report Documents and the India Orders Emails.**

Neither the March 2002 Cheung Report Documents nor the India Order Emails appear to contain privileged attorney-client communications. In fact, Mr. Cheung's testimony that he had not consulted counsel at any time before drafting and sending the March 2002 Report wholly precludes such a finding, as does the fact that he neither addressed nor sent his email to any attorney. The same appears to be true with respect to the comments and replies subsequently exchanged among his colleagues, since the lack of any legal involvement with Mr. Cheung's initial communication calls into question the subsequent redacting of all communications responding to or discussing its contents.

The India Order Emails, likewise, reflect communications among Dow businesspeople that on their face do not evidence the requesting or providing of confidential legal advice. At best, certain of the email messages subsumed within the document might have involved in-house counsel, but that is not clear, nor is it clear, assuming an attorney was involved, that it was in connection with rendering legal, rather than business advice.[7] *See, e.g., Sony Elecs., Inc. v. Soundview Technologies, Inc.*, 217 F.R.D. 104, 109 (D. Conn. 2002) (ruling that email report between two attorneys was not privileged, notwithstanding placement of "confidential attorney-client communication" notice on it, where the report concerned what happened at a public meeting).

Given the prejudicial effect on plaintiffs of defendants' withholding of newly revealed portions of Exhibit 92 (see Downey Decl. Ex. B), and the likelihood that withholding the remaining redacted portions will be equally if not more prejudicial to plaintiffs, defendants should be ordered to make Mr. Cheung available for additional examination in Hartford, at their cost, concerning the full text of Exhibit 92. As noted above, plaintiffs' counsel questioned Mr. Cheung about Exhibit 92 at some length, never knowing that more than half of the document had

---

[7] Of course, *in camera* review by the Court would be appropriate to fully assess defendants' privilege claims as to both the March 2002 Cheung Report Documents and the India Orders Emails.

been withheld. Neither Mr. Cheung nor defendants' counsel said a word as Mr. Cheung was questioned about the "four" points in his report. The new version of Exhibit 92 now reveals a wealth of additional comments about key internal conversations about Dow's intentions toward plaintiffs, which Mr. Cheung, as the author of the document, can and should explain.

## C.    Defendants Waived the Privilege Claim Over Belatedly Re-Designated Documents, Including the India Orders Emails.

Even if a properly supplemented privilege log reveals some basis for invoking the attorney-client privilege as to the 113 documents (including the twelve copies of the India Order Emails) as to which defendants now demand return or destruction, defendants should be found to have waived the privilege as to those documents. The question of whether the voluntary production, as has occurred here, of assertedly privileged documents constitutes waiver turns on whether the production should properly be considered "mere inadvertence" or something more. *Eigenheim Bank v. Halpern,* 598 F. Supp. 988, 991 (S.D.N.Y. 1984). Factors considered by courts in determining whether production was "inadvertent" and therefore excusable include: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the production, (4) the extent of the disclosure, and (5) overriding issues of fairness." *In re Copper Market Antitrust Litig.,* 200 F.R.D. 213, 222 (S.D.N.Y. 2001), citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y. 1985), *aff'd* 799 F.2d. 867 (2d Cir. 1986). It is the burden of the producing party to establish that production was "inadvertent." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1036 (2d. Cir. 1984); *Ray Larsen Assoc., Inc. v. Nikko America, Inc.,* 1993 WL 307905, *2 (S.D.N.Y. 1993) ("party claiming the attorney-client privilege . . . has the burden of establishing the existence of the privilege in all respects, and . . . the party will not meet this burden if it cannot show that it took reasonable steps to insure and maintain the confidentiality of privileged documents"); *Parkway Gallery Furniture v. Kittinger/Pennsylvania House Group,* 116 F.R.D. 46, 49 (M.D.N.C. 1987) (producing party bears burden of proving inadvertence).

At the June 21, 2005 status conference with the Court, defendants' counsel admitted that no attorneys had reviewed the entire electronic document production; instead, they relied on their third-party production vendor to compile and reproduce the documents. *See* Declaration of Alicia L. Downey submitted in support of Plaintiffs' Cross-Motion filed August 5, 2005. Such conduct is not considered a reasonable precaution against production of privileged documents. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 445 (S.D.N.Y. 1995) (stating that use of paralegals was appropriate for culling previously identified privileged documents only where attorneys had already conducted substantive privilege review). Moreover, defendants have produced the <u>same</u> privileged documents, including the India Orders Emails multiple times, evidencing that this is not a situation where one or two documents slipped through the cracks. *See Eigenheim,* 598 F. Supp. at 991 (fact that privileged document was produced twice evidenced treatment of privilege was "so lax, careless, inadequate or indifferent to consequences as to constitute a waiver") (internal punctuation omitted). *See also* Downey Decl. <u>Ex. V</u> (September 29, 2005 letter from defendants' counsel, "Please note that certain of these documents are duplicates of each other.").

Certainly defendants were under no extraordinary time constraints that might excuse the significant degree of error they now claim, where they took it upon themselves, in violation of the Court's Orders, to produce documents on a rolling basis over the course of more than a year after June 29, 2004, when the Court granted plaintiffs' motion to compel. *See Parkway,* 116 F.R.D. at 51 (lack of severe time constraints and failure to request additional review time evidenced lack of reasonable precaution). Defendants had ample time in which to review their documents, and they have not suggested to plaintiffs that the documents in question were not in fact reviewed for privilege and affirmatively "cleared" for production by someone authorized to do so. Defendants also failed to rectify their inadvertent production in a timely manner, where they waited more than thirty days after producing their supplemented privilege log, and even longer after many of these documents were first produced, to identify supposedly inadvertent production errors.

The number of privileged documents in question may be small relative to the size of defendants' bloated document production, but that factor alone does not establish that defendants timely or properly invoked the privilege. Indeed, the size of the production in this case should only heighten defendants' duty of care to avoid inadvertent disclosure. It is unfair and unrealistic to ask plaintiffs to take the time to locate all copies of the newly re-designated documents in over 100 boxes and 1.5 million electronic images and to ensure that those that may already have been retrieved in connection with ongoing preparation of the case are replaced with redacted versions.

Finally, the interests of fairness surely compel a finding of waiver. Plaintiffs have been severely hindered in the preparation of their case by defendants' abusive discovery tactics. *See* Memoranda of Law and Declarations filed August 5 and October 3, 2005 in support of Plaintiffs' Cross-Motion to Compel Production of Further Responses to Discovery, to Remove "Counsel Only" Designations, and for Sanctions. Now in the midst of intensively preparing for and taking depositions of defendants' employees, plaintiffs should not be further burdened with curing defendants' production mistakes or, as is more likely the case, accommodating their whims regarding what is and is not privileged.

Viewed in the context of all the circumstances, the Court should conclude that defendants waived the privilege as to <u>all</u> newly re-designated "privileged" documents, and, hence, plaintiffs should be permitted free use of whatever evidence may be contained in the copies that were previously produced to them.[8]

---

[8] A finding by the Court that defendants waived their privilege claims as to these documents compels the same finding with regard to any and all issues that are the subject matters of these communications. *See Teachers Ins. and Annuity Ass'n of America v. Shamrock Broadcasting Co.*, 521 F.Supp. 638, 641 (S.D.N.Y. 1981); *cf. Sony Elecs.*, 217 F.R.D. 104, 108-09. Consequently, defendants must produce all documents they have withheld that concern such issues, regardless of whether they are privileged.

## III.    CONCLUSION

Defendants have systematically abused the attorney-client and work product privileges to withhold relevant documents and information. Plaintiffs anticipate that the production of the unredacted versions of the March 2002 Cheung Report Documents and the India Orders Emails will provide additional proof of this abuse. Where defendants' privilege claims appear to be based on less than good faith, and more on an intent to hide potentially damaging evidence from plaintiffs and the Court, they should be required to provide particularized information to support their claims. In all events, the Court should rule that any privilege claims are waived with respect to the 113 documents identified by defendants on September 29, 2005. For all the reasons set forth herein, therefore, the Court should grant the instant Motion in its entirety and award such other relief as it deems appropriate.

By: /s/ Richard S Taffet.

Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent via telecopier and first-class mail on this __th of October 2005 to the following counsel of record:

Craig A. Raabe, Esq.
ROBINSON & COLE LLP
280 Trumbell Street
Hartford, CT  06103-3597

Andrew S. Marovitz
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL  60606

Scott C. Solberg, Esq.
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

Christopher J. Kelly, Esq.
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

