UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. | CIVIL ACTION <br> NO. 3:02 CV 1107 (AVC) |

## DECLARATION OF ALICIA L. DOWNEY

Alicia L. Downey, declares as follows:

1.     I am a partner in the firm of Bingham McCutchen LLP, co-counsel for plaintiffs in the above-captioned action.  I submit this Declaration to put before the Court certain documents and facts in support of plaintiffs' Motion for Protective Order Against Producing Anil Mittal for Deposition.  Unless otherwise stated, I make this Declaration on personal knowledge.

**Relevant Documents**

2.     Attached hereto as Exhibit <u>A</u> is a true and correct copy of the Notice of Deposition of Anil Mittal dated August 31, 2005.

3.     Attached hereto as Exhibit <u>B</u> is a true and correct copy of a letter from Alicia L. Downey to Andrew S. Marovitz and Scott C. Solberg, dated September 9, 2005.

4.     Attached hereto as Exhibit <u>C</u> is a true and correct copy of a letter from Andrew S. Marovitz to Richard S. Taffet and Alicia L. Downey, dated October 5, 2005.

5.    Attached hereto as Exhibit D is a true and correct copy of the Notice of Deposition of MM Global Services, Inc., MM Global Services Ptd. Ltd., and Mega Visa Solutions (S) Pte. Ltd. dated March 24, 2005 for deposition on April 19, 2005.

6.    Attached hereto as Exhibit E is a true and correct copy of the Notice of Deposition of MM Global Services, Inc., MM Global Services Ptd. Ltd., and Mega Visa Solutions (S) Pte. Ltd. dated March 24, 2005 for deposition April 20, 2005.

**Relevant Facts**

7.    When counsel met and conferred by telephone on September 22, 2005, to discuss, among other things, plaintiffs' objections to producing Mr. Mittal, defendants' counsel stated they would take the objections under advisement. In a follow-up meet and confer call on September 30, 2005, defendants' counsel stated that they had decided not to withdraw the Notice, and would agree only to reschedule the date of the deposition and to accommodate Mr. Mittal's inability to travel overseas. Plaintiffs reiterated their request for an offer of proof and were told, in the call, that defendants' desire to take the deposition was based on evidence that Anil Mittal was involved in the operations of MMGS-S for approximately six months in 1993 and, further, that he sat on the Mittal Family Finance Committee. After being informed that this proffer did not justify the disruption and expense of taking Mr. Mittal's deposition overseas, defendants' counsel agreed to put their offer of proof into writing, and further stated that it would be "more expansive" than the disclosures he made in the call.

8.    In their Initial Disclosures under Rule 26(a)(1) and Answers to Interrogatories seeking the identity of persons with relevant knowledge of pertinent facts, neither plaintiffs nor defendants ever identified Anil Mittal.

9.    Although defendants have agreed to conduct Mr. Mittal's deposition overseas

rather than in Hartford, plaintiffs would still have to incur the expense of sending their counsel

overseas in order to prepare for and defend Mr. Mittal at deposition. That estimated expense

includes at least two full days of time merely for traveling back and forth, and two full days for

the preparation and defense of the deposition. Depending on the ultimate location of the

deposition, plaintiffs' expenses could easily amount to $50,000.

I declare, under the penalty of perjury, that the foregoing is true and correct.

Signed this 7th day of October 2005.

Alicia L. Downey

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM   :
GLOBAL SERVICES PTE. LTD., and   :
MEGAVISA SOLUTIONS (S) PTE. LTD.,  :
               :
     Plaintiffs,    : Civil No. 302 CV 1107 (AVC)
               :
   v.         :
               :
THE DOW CHEMICAL COMPANY, UNION : August 31, 2005
CARBIDE CORPORATION, UNION   :
CARBIDE ASIA PACIFIC, INC.,    :
               :
     Defendants.   :
               :
               :

To: Robert M. Langer      Richard S. Taffet
  WIGGIN AND DANA LLP   BINGHAM McCUTCHEN LLP
  One City Place       399 Park Avenue
  185 Asylum Street     New York, NY 10022-4689
  Hartford, CT  06103

  Alicia L. Downey
  BINGHAM McCUTCHEN LLP
  150 Federal Street
  Boston, MA 02110-1726

## NOTICE OF DEPOSITION

  PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30, Defendants The
Dow Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific,
Inc. (collectively, "Defendants") will take the deposition upon oral examination of Anil
Mittal. The deposition will take place before a notary public or other competent authority
on October 4, 2005 at 9:30 a.m. at the offices of ROBINSON & COLE LLP, 280

Trumbull Street, Hartford, CT 06103-3597. The deposition will be recorded by sound and visual means.

Dated: August 31, 2005                    Respectfully submitted,

                                          *Dana S. Douglas*

Craig A. Raabe (ct 04116)                 Andrew S. Marovitz (ct 25409)
Edward J. Heath (ct 20992)                Dana S. Douglas (ct 25412)
ROBINSON & COLE LLP                       MAYER, BROWN, ROWE & MAW LLP
280 Trumbull Street                       71 S. Wacker Drive
Hartford, CT 05103-3497                   Chicago, Illinois 60606
(860) 275-8304                            (312) 782-0600

Nathan P. Eimer (ct 23693)                Christopher J. Kelly (ct 25410)
Scott Solberg (phv 0234)                  MAYER, BROWN, ROWE & MAW LLP
EIMER STAHL KLEVORN & SOLBERG LLP         1909 K Street, N.W.
224 South Michigan Avenue, Suite 1100     Washington, D.C. 20006-1157
Chicago, IL 60604                         (202) 263-3000
(312) 660-7600

*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

2

## CERTIFICATE OF SERVICE

I, Dana S. Douglas, hereby certify that I caused a true and correct copy of the foregoing NOTICE OF DEPOSITION to be served on August 31, 2005 by facsimile and overnight mail on the following attorneys of record:

Robert M. Langer
WIGGIN AND DANA LLP
One City Place
185 Asylum Street
Hartford CT 06103

Richard S. Taffet
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689

Alicia L. Downey
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726

Dana S. Douglas

3

**BINGHAM McCUTCHEN**

Alicia L. Downey
Direct Phone: (617) 951-8187
alicia.downey@bingham.com

September 9, 2005

**VIA FACSIMILE & FIRST-CLASS MAIL**

Andrew S. Marovitz, Esq.
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Scott C. Solberg, Esq.
Eimer Stahl Klevorn & Solberg LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

Re:  **MM Global Services, Inc., et als. v. The Dow Chemical
     Co., et als., No. 3:02 Civ. 1107 (AVC)**

Dear Counsel:

This is to invite you to meet and confer by telephone regarding the discovery issues raised in my letter to you dated August 31, 2005, and those set forth below. Please advise of your availability during the first part of next week, September 12-13, 2005.

1.    **Objections to Notices of Deposition**

a.    Anil Mittal

We are in receipt of a Notice of Deposition dated August 31, 2005, calling for the production of Anil Mittal. We assume that defendants' basis for this notice is Ajay Mittal's deposition testimony that Anil Mittal oversaw the operations of MM Global Services Pte. Ltd. for approximately six months in 1993. *See* Deposition of Ajay Mittal, July 27, 2005, at 54-55 ("Mittal Depo."). Anil Mittal's only connection to plaintiffs today is his capacity as a non-executive member of the board of directors of MM Global Services Pte. Ltd., which, as Ajay Mittal testified, has been inactive in the petrochemicals business for the past five years.

Plaintiffs object to producing Anil Mittal for deposition because he has no relevant, non-cumulative knowledge. Any relevant personal knowledge he has is equally available through the witnesses plaintiffs already designated to testify under FRCP Rule 30(b)(6), including Ajay Mittal. Indeed, in their responses to written discovery, neither plaintiffs nor defendants ever designated Anil Mittal as a potential witness. Plaintiffs have no plans to call him to testify at trial.

Bingham McCutchen LLP
150 Federal Street
Boston, MA
02110-1726

617.951.8000
617.951.8736 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

Andrew S. Marovitz, Esq.
Scott C. Solberg, Esq.
September 9, 2005
Page 2

Furthermore, Anil Mittal suffers from a chronic medical condition that constricts his travel substantially. Appearing for deposition in Hartford or anywhere else in the United States would cause him considerable physical hardship.

Bingham McCutchen LLP
bingham.com

Plaintiffs believe that any benefits that may result from this proposed deposition are clearly outweighed by its attendant burdens and lack of necessity. *See General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (relevant considerations to decision to permit deposition of corporate executive are possibility of harassment, potential disruption of business, and whether other witnesses have same knowledge); *Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) ("Unless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a redundant deposition of [a] highly-placed executive' while allowing other witnesses with the same knowledge to be questioned."); *Harris v. Computer Associates Intern., Inc.*, 204 F.R.D. 44, 46-47 (E.D.N.Y. 2001) (refusing to allow deposition of corporate officer where officer had no personal or unique knowledge of events in dispute and deposition would be unreasonably repetitive and burdensome).

If you still wish to pursue taking Anil Mittal's deposition, then we request that you provide us with an explanation of the relevant, necessary testimony you expect to obtain from this witness that you cannot obtain through other means.

b.     Navin Chandra

We are in receipt of a Notice of Deposition dated August 29, 2005, for a deposition of Mr. Navin Chandra, purportedly under FRCP Rule 30. Mr. Chandra is not presently employed by any plaintiff party or subsidiary or affiliate thereof. As Mr. Mittal testified, Mr. Chandra was the president (and later managing director) of Visa Petrochemicals in 1993 and remained employed by the company until 1998. *See* Mittal Depo., *supra*, at 17, 70-71. Given Mr. Chandra's present status, he is not subject to production pursuant to a Rule 30 deposition notice. *See, e.g., United States Fidelity & Guaranty Co., v. Braspetro Oil Services Co.*, 2001 WL 43607 (S.D.N.Y. 2001) (a non-party witness must be subpoenaed pursuant to FRCP Rule 45); *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994) (same).

Please be advised, however, that we have communicated with Mr. Chandra concerning his availability and willingness to make himself available for a deposition in this case. He advised us that he had already been contacted by Mr. Natarajan regarding such a possibility (we assume at your request), but that he

Andrew S. Marovitz, Esq.
Scott C. Solberg, Esq.
September 9, 2005
Page 3

had not yet decided whether he will appear for a deposition or travel to the United States for such a purpose. He advised that he is likely to decide these matters within the next 30 days. We have asked him to let us know as soon as he reaches any decision, and we will pass that on to you. In the meantime, we trust you will not seek to contact Mr. Chandra (either directly or through Mr. Natarajan) for such purposes, and that you will advise us if Mr. Chandra seeks to communicate directly with you.

Bingham McCutchen LLP
bingham.com

## 2.    Scheduling of 30(b)(6) Depositions of Defendants

We understand that Mr. Yimoyines is available November 8-9, 2005, and that Mr. Dillan is available from November 10-11, 2005. Because of prior scheduling commitments, November 8 is not available. The other days, however, are. In these circumstances, we propose to begin (and make every effort to complete) Mr. Yimoyines' deposition on November 9, and that Mr. Dillan follow on November 10-11. Alternatively, to avoid the need to call Mr. Yimoyines back if we do not complete his examination on November 9, please advise of his availability the following week.

Further, to avoid unwarranted delays in proceeding with the depositions of the other witnesses that you have said will be made available by defendants, we would like to take the depositions of Messrs. Babu, Kumar, Herr, and Ms. Watkins-Slaughter in our Hartford office on any four days in the ranges of October 10 and 11, 17 and 18, or 24 and 25. In addition, we are enclosing herewith a courtesy copy of a consolidated Notice of Depositions for certain of defendants' individual officers and employees, to be held on various dates in October and early November. Please confirm these dates at your earliest convenience.

## 3.    Scheduling of 30(b)(6) Depositions of Plaintiffs

This will acknowledge your confirmation of the September 29 date we suggested for the 30(b)(6) deposition of plaintiffs regarding the "Session 2" topics, as defined in the parties' 30(b)(6) correspondence. You requested that we leave open the possibility of continuing the deposition on September 30. At this time Mr. Mittal will be the sole representative designated to testify. We continue to believe that a second day (September 30) will not be necessary to cover the topics at issue. At the present time, however, we will leave open the possibility of continuing the deposition on these topics for at least some part of September 30, if necessary, but not as a result of time spent the prior day on subject matters other than those designated for this session or on other extraneous matters. We will

Andrew S. Marovitz, Esq.
Scott C. Solberg, Esq.
September 9, 2005
Page 4

likewise object to any attempts to duplicate questioning on the "Session 2" topics that you already addressed in the previous sessions.

### 4.     Deficiencies in Defendants' Compliance with Rule 30(b)(6)

Bingham McCutchen LLP
bingham.com

We are preparing a summary of the subject areas in which we believe defendants have so far failed to offer sufficiently knowledgeable deponents concerning noticed topics. We intend to provide this to you shortly, in the hope that the remaining 30(b)(6) designees will be prepared to fill these gaps and thus resolve this issue, or that defendants will promptly designate additional appropriate witnesses. If defendants refuse to cure these deficiencies or persist in disclaiming any corporate knowledge of certain topics (e.g., No. 14), please be advised that plaintiffs reserve all rights to seek to preclude or otherwise limit defendants' trial testimony on those topics.

We note that it is defendants' obligation under Rule 30(b)(6) to produce witnesses to testify about knowledge reasonably available to them, including knowledge not only provided by, but also available from, their subsidiaries and affiliates. *See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 2002 WL 1835439, *2 (S.D.N.Y. 2002) (concluding "that the scope of the entity's obligation in responding to a 30(b)(6) notice is identical to its scope in responding to interrogatories served pursuant to Rule 33 or a document request served pursuant to Rule 34, namely, it must produce a witness prepared to testify with the knowledge of the subsidiaries and affiliates if the subsidiaries and affiliates are within its control."); *United States v. Taylor*, 166 F.R.D. 356, 361-362 (M.D.N.C. 1996) ("Rule 30(b)(6) explicitly requires UCC to have persons testify on its behalf as to all matters known or *reasonably available* to it and, therefore, implicitly requires such persons to review all matters known or *reasonably available* to it in preparation for the Rule 30(b)(6) deposition.") (emphases added). This would include Dow India, Dow Singapore, and all other such entities.

As we are sure you recognize, there is overwhelming evidence in this case that Dow and UCC were routinely kept informed of the business strategies, operations, and finances of their foreign subsidiaries. I cited to you, in an earlier letter, passages from Dow's own website in which it acknowledges the amount of revenue generated by its "direct sales" in the Pacific region. So far, multiple witnesses have also testified about the authority that Dow and UCC held and exercised over their subsidiaries, and that UCAP held and exercised over its "affiliates." Indeed, it seems from defendants' privilege log, discussed in more detail below, that Dow's and UCC's in-house legal staff's clients included

Andrew S. Marovitz, Esq.
Scott C. Solberg, Esq.
September 9, 2005
Page 5

employees and officers of the foreign subsidiaries. Any asserted, purely technical "lack of knowledge" by virtue of corporate identity does not excuse defendants' noncompliance with Rule 30(b)(6).

Bingham McCutchen LLP

bingham.com

## 5.    Defendants' Claims of Privilege and/or Work Product.

Defendants have withheld, redacted, or demanded the return of a substantial number of documents on the basis of privilege or work product, while providing little or no information with which to determine that these classifications are proper. We have established, for example, that document number DEBJ0022016, which was marked Exhibit 92 during the deposition of Lawrence Cheung, was improperly redacted. Mr. Cheung's testimony was clear. His email in no way reflects any attorney-client communications, nor does it contain work product. Yet defendants still refuse to produce an unredacted version of Exhibit 92.

Defendants' privilege log further reflects the inadequacy of defendants' disclosures and the apparently systematic abuse of privilege and work product claims. For example, document number D00298a is an email from Marcus Wildi to Lawrence Cheung, allegedly regarding a discussion about legal advice *to be requested*. Plaintiffs are at a loss to understand how an email between two non-lawyers discussing whether they will speak to an attorney constitutes either an attorney-client communication or work product. Many of the communications listed in the log were apparently sent or copied to third parties. E.g., D00000008 (from Citibank); D00000017 (from State Bank of India); D00000440A (from Ajay Mittal). Furthermore, despite the existence of a protective order, many documents were inexplicably and improperly withheld or redacted because they contain "proprietary info re: non-responsive products and end users," "proprietary info re: sales data and forecasts," and the like. E.g., D00417254; D00417326, D00419230.    This conduct is entirely inconsistent with established legal standards, the discovery rules, and the Court's Orders. It also reveals a conscious attempt by defendants to withhold discoverable documents that go to the heart of plaintiffs' claims.

The problem has now been further exacerbated by Dana Douglas's letter dated August 31, 2005, requesting that plaintiffs return or destroy hundreds of allegedly inadvertently produced "privileged" documents. It would be a different matter if you told us that a handful of mistakenly produced attorney-client communications are actually marked "privileged" and were clearly intended to be treated as such. Instead, you have provided no factual basis whatsoever to support a request for the return of so many documents. Therefore, we have no basis to conclude that the belatedly asserted claim of privilege has any merit, and whether a return or

Andrew S. Marovitz, Esq.
Scott C. Solberg, Esq.
September 9, 2005
Page 6

destruction of the documents is appropriate. As a courtesy, however, to allow you time to provide us with the specific bases on which you assert a privilege for the documents identified in Ms. Douglas' August 31 letter, we will refrain from affirmatively retrieving and reviewing these documents ourselves for a period of seven business days from the date of this letter.

Bingham McCutchen LLP

bingham.com

With respect to both the newly identified "privileged" documents and all documents listed on defendants' privilege log, we must insist on more information than has been provided. In the case of alleged attorney-client communications, in many cases we cannot discern from the log the names of the attorneys receiving or sending the communications, whether the communications consist of confidential legal advice or requests therefor, or whether the documents in fact were actually designated by the author as "privileged" or "confidential" or the like. In other words, we have an insufficient basis on which to determine whether the privilege designations should be challenged. The same problem exists with respect to much of the alleged "work product" listed on the log.

The privilege and work product doctrines are quite narrow. But it appears to us—based on the information we discovered about Exhibit 92, the vaguely worded descriptions used on the privilege log, and the improbably large number of documents withheld or redacted—that the criteria you used did not make appropriate distinctions between discoverable and presumptively protected information.

In the hope of avoiding having to request *in camera* review by the Court of the hundreds of documents withheld from discovery by defendants on the grounds of the attorney client privilege, work product doctrine, or other questionable grounds, we would like to know the specific factual bases for each claim of privilege or work product asserted by defendants, including but not limited to the names of the attorneys involved, whether they were asked for or provided confidential legal advice in a particular communication, and the specific subject matter of the advice given. Likewise, the claims of work product need to be supported by much more detail, including the attorneys who prepared or directed the preparation of the asserted work product, its specific subject matter (e.g., a summary of facts or notes of a witness interview), and whether or not it sets forth an attorney's "mental impressions," etc. Where you are unable to make the required factual showing to support withholding or redacting of a document, including cases in which "privileged" communications or "work product" were shared with third parties, or "proprietary info" was improperly withheld or redacted, please produce the documents forthwith.

Andrew S. Marovitz, Esq.
Scott C. Solberg, Esq.
September 9, 2005
Page 7

### 6.    Other Matters

We received Scott's letter requesting various categories of documents that he believes are "missing" from plaintiffs' document production. In response to his letter and to Dana's earlier letter inquiring about certain additional financial statements, I would note that in some cases, the documents demanded were never previously requested. In other cases, it appears that discussions between the parties to resolve plaintiffs' timely written objections significantly reduced the scope of the relevant document request. While we undertake to investigate and formulate a more detailed response to these recent document demands, we would appreciate your letting us know, in the same manner that Dana did in her request, precisely which previously served document requests you believe remain unfulfilled—even in light of subsequent discovery agreements—with respect to each category listed in Scott's letter.

* * *

We would appreciate your immediate confirmation of your availability for a conference call early next week.

Very truly yours,

Alicia L. Downey

Enclosure

cc:    Nathan Eimer, Esq.
       Dana S. Douglas, Esq.
       Christopher J. Kelly, Esq.
       Craig A. Raabe, Esq.
       Richard S. Taffet, Esq.
       Robert M. Langer, Esq.

Bingham McCutchen LLP
bingham.com

LITDOCS/614316.1

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE., LTD., | ) | CIVIL ACTION NO. 3:02 CV 1107 (AVC) |
| Plaintiffs, | ) | |
| v. | ) | |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, AND UNION CARBIDE ASIA PACIFIC, INC., | ) | September 9, 2005 |
| Defendants. | ) | |

To:  Craig A. Raabe, Esq.
     ROBINSON & COLE LLP
     280 Trumbell Street
     Hartford, CT 06103-3597

Andrew S. Marovitz
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606

Scott C. Solberg, Esq.
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

## NOTICE OF DEPOSITIONS

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30, Plaintiffs MM Global

Services, Inc. ("MMGS"), MM Global Services Pte., Ltd. ("MMGS-S"), and MegaVisa

Solutions (S) Pte., Ltd. ("MVS") (collectively, "plaintiffs") will take the following depositions

upon oral examination, commencing at 9:00 a.m. at the offices of Bingham McCutchen LLP,

One State Street, Hartford, Connecticut 06103, before a notary public or other competent

authority and recorded by stenographer and/or videographer.

| | |
|---|---|
| Graham Fox | October 7, 2005 |
| Andrew Liveris | October 19, 2005 |
| Ravi Muthukrishnan | October 20, 2005 |

| Michael Marinnacio | October 21, 2005 |
|---|---|
| Ashish Mitra | November 1, 2005 |
| Marcus Wildi | November 2, 2005 |

The depositions will continue from day to day until completed.  You are invited to attend and cross-examine.

BINGHAM McCUTCHEN LLP


By: _Alicia L. Downey_

Alicia L. Downey (ct 22066)

Richard S. Taffet (ct 10201)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)


## CERTIFICATION

I hereby certify that a copy of the foregoing was sent via telecopier and first-class mail on this 9th of September 2005 to the following counsel of record:

Craig A. Raabe, Esq.
ROBINSON & COLE LLP
280 Trumbell Street
Hartford, CT  06103-3597

Andrew S. Marovitz
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL  60606

Scott C. Solberg, Esq.
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

_Alicia L. Downey_

MAYER
BROWN
ROWE
& MAW

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Andrew S. Marovitz**
Direct Tel (312) 701-7116
Direct Fax (312) 706-8651
amarovitz@mayerbrownrowe.com

October 5, 2005

Richard S. Taffet, Esq. (By Facsimile)
Bingham McCutchen LLP
399 Park Avenue
New York, NY  10022-4689

Alicia L. Downey, Esq. (By E-Mail)
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726

Re:    *MM Global Services, et al. v. The Dow Chemical
       Company, et al.*, Civil No. 3:02 CV 1107 (AVC)

Dear Richard and Alicia:

I write to follow-up on a few issues regarding our recent meet-and-confer sessions.

1.    In light of Ajay Mittal's unavailability for his scheduled deposition last month due to
other business, Plaintiffs will produce Mr. Mittal in Hartford for three days of deposition on
December 14-16.  Defendants have not agreed that three days is sufficient to cover all of the
30(b)(6) topics for which Mr. Mittal has been designated.

2.    Plaintiffs have asked for "a written proffer concerning the need to depose Anil Mittal."
Downey Letter at 2 (Aug. 31, 2005).  As Alicia noted, Anil Mittal oversaw the operations of MM
Global Services Pte. Ltd. in 1993.  Downey Letter at 1 (Sept. 9, 2005).  We further understand
that Mr. Mittal served as a director of the company from 1996-2002; indeed, he signed (on behalf
of the company) several reports that were produced in this litigation.  Anil Mittal also was a
member of the Mittal Finance Committee to which Ajay Mittal directed his request for credit –
and which denied that request for credit – following Ajay Mittal's inability to receive all of the
credit that he demanded from Defendants.  Plaintiffs now cite Defendants' decisions on the
extension of credit to Plaintiffs as a basis for their tort claim in this litigation.

All that said, while we are happy to provide some of the reasons that we wish to depose Mr.
Mittal (this list is not intended to be exhaustive), it is not Defendants' burden to "establish any
need to impose on Mr. Mittal or add to the time and expense already being spent on discovery."
Downey Letter at 2 (Aug. 31, 2005).  In light of all of these circumstances, any such burden to
prevent Mr. Mittal's deposition is Plaintiffs'.  Still, based upon your representations that Mr.
Mittal does not travel to the United States and does not stay in hotel rooms, we have agreed to

Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  Manchester  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
Alicia L. Downey, Esq.
October 5, 2005
Page 2

accommodate him and take his deposition in London – where he has an apartment and where other depositions of other overseas witnesses in this case might be taken – or in India. You have not responded to that offer. Please let us know whether you intend to make him available or whether you will move for a protective order.

3.    As we advised, we will make available to Plaintiffs certain documents that Defendants previously produced but that Plaintiffs can no longer find. We mentioned last week that we would be pleased to make those hard copy documents available for your inspection where they are presently located: in our offices in Chicago. You have requested that we reproduce them in Hartford, which we will do provided that Plaintiffs agree to reimburse Defendants for the shipping costs to and from Chicago, as we do not have a set of the documents presently located in Hartford, and had no plans to send them there. Please let us know how you wish to proceed. Once we know whether we will be shipping the boxes to Hartford or you will be coming to Chicago, we can arrange dates for your inspection.

4.    During last week's meet-and-confer, Plaintiffs committed to find some support for their statement that the parties previously agreed that Plaintiffs would not need to produce monthly financial statements. (This topic was raised, again, in Dana Douglas's July 25, 2005 letter.) Plaintiffs also asked Defendants to describe why annual statements are insufficient.

Plaintiffs have provided insufficient detail to support the annual, 1993-2000 general sales data that they declare supports their claim for damages (*see* Taffet Letter Tab 9 (Feb. 20, 2003)). We need monthly sales data to help us replicate and understand the damages alleged, and to determine with more particularity the reasons for any lost profits claimed by Plaintiffs. We need more detailed data – not merely on an annual basis – to help us do that. In light of the highly specific sales figures demanded by Plaintiffs and actually produced by Defendants, we see no justification for Plaintiffs' decision to withhold relevant information that bears directly upon the purported value of their businesses and their claim for damages.

5.    During the past week, we have sent you the attachment report, 60+ boxes of in-process documents that you requested, the redacted version of PX 92, other redacted documents and an updated list of privileged documents to be returned. There remain several additional requests that we continue to work on, including an updated privilege log, information on certain merger documents and bates ranges, and the need to obtain several deposition dates in addition to the ones recently provided and now confirmed in your most recent letter.

6.    Finally, we asked, both orally and in writing, for the return of privileged documents inadvertently produced and identified in recent correspondence. Plaintiffs have rejected those requests. We had intended to discuss this with you further, but see that you have presented this issue to the Court in Plaintiffs' recent Reply. Accordingly, we will respond directly to the Court at the appropriate time.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
Alicia L. Downey, Esq.
October 5, 2005
Page 3

Very truly yours,

Andrew S. Marovitz

cc:    Robert M. Langer, Esq.
       Craig A. Raabe, Esq.
       Nathan P. Eimer, Esq. & Scott Solberg, Esq.
       Christopher J. Kelly, Esq.
       Dana S. Douglas, Esq.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL     :
SERVICES PTE. LTD., and MEGA VISA     :
SOLUTIONS (S) PTE. LTD.,     :
    :
           **Plaintiffs**     :
    :  **Civil No. 3:02 CV 1107 (AVC)**
    :
           **v.**     :
THE DOW CHEMICAL COMPANY, UNION     :
CARBIDE CORPORATION, and UNION     :
CARBIDE ASIA PACIFIC, INC.,     :
    :
    :
    :
           **Defendants.**     :  **March 24, 2005**

To:    Robert M. Langer                 Richard S. Taffet
        WIGGIN AND DANA LLP         BINGHAM McCUTCHEN LLP
        One City Place                   399 Park Avenue
        185 Asylum Street             New York, NY  10022-4689
        Hartford CT  06103

        Alicia L. Downey
        BINGHAM McCUTCHEN LLP
        150 Federal Street
        Boston, MA  02110-1726

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6), Defendants The Dow
Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific, Inc.
(collectively, "Defendants") will take the deposition upon oral examination of MM Global
Services, Inc., MM Global Services Pte. Ltd., and Mega Visa Solutions (S) Pte. Ltd, through
their designated representative or representatives who consent to testify on the subject matters set
forth in Attachment A. The deposition will take place before a notary public or other competent
authority on April 19, 2005 at 9:30 a.m. at the offices of ROBINSON & COLE LLP, 280 Trumbull
Street, Hartford, CT  06103-3597. The deposition will continue from day to day until completed
and will be recorded by sound and visual means. You are invited to attend and conduct cross
examination.

Dated:  March 24, 2005                         By: _Vanessa G Jacobsen_____

Nathan P. Eimer (ct 23693)                     Andrew S. Marovitz (ct 25409)
Vanessa G. Jacobsen (phv 0036)                 Dana S. Douglas (ct 25412)
EIMER STAHL KLEVORN & SOLBERG LLP              MAYER, BROWN, ROWE & MAW LLP
224 South Michigan Avenue, Suite 1100          190 S. LaSalle Street
Chicago, IL  60604                             Chicago, IL  60603-3441
(312) 660-7600                                 (312) 782-0600

                                               Christopher J. Kelly (ct 25410)
                                               MAYER, BROWN, ROWE & MAW LLP
                                               1909 K Street
                                               Washington, DC  20006-1157
                                               (202) 263-3000

*Attorneys for Defendants Union Carbide*       *Attorneys for Defendants The Dow*
*Corporation and Union Carbide Asia*           *Chemical Company*
*Pacific, Inc.*

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

*Attorneys for All Defendants*

# ATTACHMENT A

## DEFINITIONS

Notwithstanding any definitions stated below, each word, term, or phrase used in this deposition notice is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. The terms "and" and "or" shall be read in the disjunctive, conjunctive, or both, as the case may be, consistent with an interpretation that results in the more extensive answer.

2. "Each" means each and every.

3. The term "document(s)" shall have the meaning employed in Rule 34(d) of the Federal Rules of Civil Procedure and includes, without limitation: (a) all writings of whatever type, nature or description, whether typed, handwritten, printed, or otherwise; (b) tape or other sound or video recordings, computer tapes, discs, and other electronic or mechanical recordings, however produced or reproduced; and (c) information stored in a computer, including archive files and backup tapes, whether or not ever printed out or displayed. A draft is a separate document from the final text and each non-identical copy is a separate document.

4. The term "person" includes the plural and the singular and includes without limitation any natural person, alive or deceased, any corporation, organization, partnership, joint venture, sole proprietorship, other business entity or association, foundation, trust and any government or governmental body, commission, department, committee, board, or agency.

5. The terms "Plaintiffs" or "Plaintiff" mean Plaintiffs MM Global Services, Inc., MM Global Services Pte. Ltd., and Mega Visa Solutions (S) Pte. Ltd., both collectively and individually, including their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, and other persons acting or purporting to act on their behalf.

6. The terms "Defendants" or "Defendant" mean The Dow Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific, Inc., both collectively and individually, including their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, and other persons acting or purporting to act on their behalf.

7. The term "Products" means the products listed in the attachment to Nia Cross' July 13, 2004 letter to Christopher J. Kelly.

8. The term "End-User" means any end-user to whom Plaintiffs sold Products, including but not limited to the entities listed in the attachment to Richard S. Taffet's July 6, 2004 letter to Andrew S. Marovitz.

3

9. For purposes of this deposition notice, the term "Relevant Time Period" means the time period of the conduct alleged in the Amended Complaint.

10. The terms "relate to" and "relating to" mean analyzing, containing, concerning, dealing with, constituting, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, showing, stating, summarizing, supporting, or in any way pertaining to the subject matter of the relevant deposition topic.

11. The term "communication(s)" means every manner or means of disclosure, transfer or exchange, including, but not limited to, oral conversations, telephone calls, electronic mail, facsimile transmissions, written correspondence, memoranda or notes, meetings, video conferences, or document transmittals.

## INSTRUCTIONS

1. Each noun used in the singular form shall be construed and applied so as to include the plural form also, and vice versa.

2. Each Subject Area of Examination shall be construed independently, and no Subject Area of Examination shall be viewed as limiting the scope of any other Subject Area of Examination.

## SUBJECT AREAS OF EXAMINATION

The matters upon which Plaintiffs' examination is requested are as follows:

1. The organization, structure and individuals within Plaintiffs' business units with responsibility for the sale, distribution or marketing of Products to End-Users.

2. The types, amounts and prices of Products that Plaintiffs sold, distributed or marketed to End-Users.

3. Arrangements and agreements with End-Users under which Plaintiffs sold, distributed or marketed Products.

4. Commissions and any compensation earned by Plaintiffs on sales of Products to End-Users.

5. Confidential and competitively sensitive information – including but not limited to customer information, marketing strategies and market data – obtained by any Defendant from any Plaintiff during the Relevant Time Period.

6. Meetings and/or communications between any Defendant and any End-User arranged by any Plaintiff during the Relevant Time Period.

7.  Actions taken by any Plaintiff at the direction of any Defendant to develop specialized marketing plans, invest in technology, create a sales infrastructure, train dedicated sales staff, maintain appropriate financial capabilities, enhance relationships with existing and potential customers or take any other business initiative.

8.  Communications between any Plaintiff and any Defendant regarding any Plaintiff's business relationship with any Defendant.

9.  Communications between any Defendant and any End-User regarding any Plaintiff, including but not limited to any Plaintiff's financial condition.

10. Communications between any Defendant and any End-User regarding any Product.

11. Communications and conduct of any Defendant allegedly aimed at destroying Plaintiff's business.

12. Each alleged misrepresentation and/or omission made by any Defendant that is the subject of Plaintiffs' lawsuit against Defendants.

13. Each instance of any Defendant's alleged interference with any Plaintiff's relationship with an End-User.

14. Damages – including but not limited to any lost sales, profits and/or customers – allegedly sustained by Plaintiff as a result of any misrepresentation or omission of material fact by Defendants.

15. Each Plaintiff's mitigation of the damages described in No. 14 above.

16. For each Product, the availability of alternative sources of supply other than Defendants after March 31, 2002.

17. For each Product, Plaintiff's efforts to secure alternative supply after March 31, 2002.

18. For each Product, each sale made or arranged by Plaintiffs after March 31, 2002, including, with respect to each sale, the amount of each Product sold, the source of supply of the Product, the price and other terms of the sale, the terms (including price) on which Plaintiff obtained the Product, and the amount of commission or profit Plaintiff received from the sale.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing NOTICE OF DEPOSITION to be served on March 24, 2005 by overnight mail on the following attorneys of record:

Robert M. Langer
WIGGIN AND DANA LLP
One City Place
185 Asylum Street
Hartford CT  06103

Alicia L. Downey
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726

Richard S. Taffet
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY  10022-4689


*Vanessa Jacobsen*

Vanessa G. Jacobsen

6

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., | : : : : | |
| **Plaintiffs** | : : | |
| | : | **Civil No. 3:02 CV 1107 (AVC)** |
| v. | : | |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC., | : : : : : | |
| | : : | |
| **Defendants.** | : | **March 24, 2005** |

To:   Robert M. Langer             Richard S. Taffet
      WIGGIN AND DANA LLP          BINGHAM McCUTCHEN LLP
      One City Place               399 Park Avenue
      185 Asylum Street            New York, NY  10022-4689
      Hartford CT  06103

      Alicia L. Downey
      BINGHAM McCUTCHEN LLP
      150 Federal Street
      Boston, MA  02110-1726

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6), Defendants The Dow Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific, Inc. (collectively, "Defendants") will take the deposition upon oral examination of MM Global Services, Inc., MM Global Services Pte. Ltd., and Mega Visa Solutions (S) Pte. Ltd, through their designated representative or representatives who consent to testify on the subject matters set forth in Attachment A.  The deposition will take place before a notary public or other competent authority on April 20, 2005 at 9:30 a.m. at the offices of ROBINSON & COLE LLP, 280 Trumbull Street, Hartford, CT  06103-3597.  The deposition will continue from day to day until completed and will be recorded by sound and visual means.  You are invited to attend and conduct cross examination.

Dated:  March 24, 2005                    By:  _Vanessa Jacobsen_____

Nathan P. Eimer (ct 23693)                Andrew S. Marovitz (ct 25409)
Vanessa G. Jacobsen (phv 0036)            Dana S. Douglas (ct 25412)
EIMER STAHL KLEVORN & SOLBERG LLP         MAYER, BROWN, ROWE & MAW LLP
224 South Michigan Avenue, Suite 1100     190 S. LaSalle Street
Chicago, IL  60604                        Chicago, IL  60603-3441
(312) 660-7600                            (312) 782-0600

                                          Christopher J. Kelly (ct 25410)
                                          MAYER, BROWN, ROWE & MAW LLP
                                          1909 K Street
                                          Washington, DC  20006-1157
                                          (202) 263-3000

*Attorneys for Defendants Union Carbide*   *Attorneys for Defendants The Dow*
*Corporation and Union Carbide Asia*       *Chemical Company*
*Pacific, Inc.*

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
(860) 275-8304

*Attorneys for All Defendants*

## ATTACHMENT A

## DEFINITIONS

Notwithstanding any definitions stated below, each word, term, or phrase used in this deposition notice is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. The terms "and" and "or" shall be read in the disjunctive, conjunctive, or both, as the case may be, consistent with an interpretation that results in the more extensive answer.

2. "Each" means each and every.

3. The term "document(s)" shall have the meaning employed in Rule 34(d) of the Federal Rules of Civil Procedure and includes, without limitation: (a) all writings of whatever type, nature or description, whether typed, handwritten, printed, or otherwise; (b) tape or other sound or video recordings, computer tapes, discs, and other electronic or mechanical recordings, however produced or reproduced; and (c) information stored in a computer, including archive files and backup tapes, whether or not ever printed out or displayed. A draft is a separate document from the final text and each non-identical copy is a separate document.

4. The term "person" includes the plural and the singular and includes without limitation any natural person, alive or deceased, any corporation, organization, partnership, joint venture, sole proprietorship, other business entity or association, foundation, trust and any government or governmental body, commission, department, committee, board, or agency.

5. The terms "Plaintiffs" or "Plaintiff" mean Plaintiffs MM Global Services, Inc., MM Global Services Pte. Ltd., and Mega Visa Solutions (S) Pte. Ltd., both collectively and individually, including their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, and other persons acting or purporting to act on their behalf.

6. The terms "Defendants" or "Defendant" mean The Dow Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific, Inc., both collectively and individually, including their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, and other persons acting or purporting to act on their behalf.

7. The term "Products" means the products listed in the attachment to Nia Cross' July 13, 2004 letter to Christopher J. Kelly.

8. The term "End-User" means any end-user to whom Plaintiffs sold Products, including but not limited to the entities listed in the attachment to Richard S. Taffet's July 6, 2004 letter to Andrew S. Marovitz.

3

9. For purposes of this deposition notice, the term "Relevant Time Period" means the time period of the conduct alleged in the Amended Complaint.

10. The terms "relate to" and "relating to" mean analyzing, containing, concerning, dealing with, constituting, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, showing, stating, summarizing, supporting, or in any way pertaining to the subject matter of the relevant deposition topic.

11. The term "communication(s)" means every manner or means of disclosure, transfer or exchange, including, but not limited to, oral conversations, telephone calls, electronic mail, facsimile transmissions, written correspondence, memoranda or notes, meetings, video conferences, or document transmittals.

## INSTRUCTIONS

1. Each noun used in the singular form shall be construed and applied so as to include the plural form also, and vice versa.

2. Each Subject Area of Examination shall be construed independently, and no Subject Area of Examination shall be viewed as limiting the scope of any other Subject Area of Examination.

## SUBJECT AREAS OF EXAMINATION

The matters upon which Plaintiffs' examination is requested are as follows:

1. Each accepted order that any Defendant allegedly failed to fill or release.

2. For each order described in No. 1, above, the availability of sources of supply other than Defendants for any Product covered by that order, and the price at which that supply was available.

3. For each order described in No. 1 above, Plaintiffs' efforts to secure alternative supply for that order.

4. For each order described in No. 1, above, each Plaintiff's damages allegedly sustained as a result of any Defendant's failure to fill or release the order.

5. For each order described in No. 1, above, each Plaintiff's mitigation of the damages described in No. 4, above.

6. Communications between any Plaintiff and any Defendant with respect to any order described in No. 1, above.

7. Communications among employees or officers of any one or more Plaintiff concerning any order described in No. 1, above, including any Defendant's alleged failure to fill or release the order, any reason for the alleged failure to fill or release the order, and any action that any Plaintiff might undertake that would lead a Defendant to fill or release the order.

8. New orders Plaintiffs placed, or attempted to place, with any Defendant or affiliate of Defendant during time periods in which Plaintiffs had a credit hold placed on existing orders due to nonpayment for Products.

9. Plaintiff's credit worthiness during the Relevant Time Period, including but not limited to claims made by other parties against Plaintiff for failure to pay for services or goods, and disputes between other parties and Plaintiff relating to Plaintiff's credit.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing NOTICE OF DEPOSITION to be served on March 24, 2005 by overnight mail on the following attorneys of record:

Robert M. Langer
WIGGIN AND DANA LLP
One City Place
185 Asylum Street
Hartford CT 06103

Richard S. Taffet
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689

Alicia L. Downey
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726

Vanessa G. Jacobsen

6