UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>Defendants. | CIVIL ACTION<br>NO. 3:02 CV 1107 (AVC)<br><br>October 13, 2005 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO COMPEL PRODUCTION OF
WITNESSES FOR DEPOSITION PURSUANT TO RULE 30**

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "plaintiffs") submit this memorandum in support of an Order compelling defendant The Dow Chemical Company ("Dow") to produce Andrew Liveris, Michael Marinaccio Graham Fox, Muthukrishnan Ravi, Marcus Wildi, and Ashish Mitra (collectively, the "Dow Witnesses") for deposition in Hartford, Connecticut pursuant to a Notice of Deposition served on September 9, 2005. As set forth below, the facts establish, unequivocally, that all are "officers, directors, or managing agents" of Dow within the meaning of Rule 30(b)(1), and as such, they may and should be compelled to appear without resort to the procedures set forth in Rule 45.

## I. RELEVANT FACTS

On September 9, 2005, plaintiffs served a Notice of Deposition[1] calling for the production of six Dow executives. In a subsequent meet and confer telephone call among counsel, defendants asserted the following objections to compliance with the Notice:

### A. Defendants' Objections to Producing the Dow Witnesses.

Andrew Liveris is presently the president and CEO of Dow and a member of the corporation's board of directors. *See* http://www.dow.com/corpgov/leader/officers.htm. He is based in Midland, Michigan. He was identified in defendants' answers to various interrogatories as the Vice President, Specialty Chemicals, and/or Business Group President for Performance Chemicals for Dow.[2] Defendants have stated they will not produce him for deposition unless ordered by the Court. Downey Decl. at ¶ 13.

Michael Marinaccio was initially identified by Dow as follows:

> Former UCC Global Business Manager for Vinyl Acetate. Reported to Jim Flynn. Line of Business ("LOB") Managers Tyson Keel (Monomers) and Dicky Leung (Solvents/intermediates) reported to him. Currently employed by [Dow], 39 Old Ridgebury Road, Danbury, Ct 06817. Reports to Henry Proctor, who . . . reports to Lee McMaster, who is the Business Group President of the Chemicals Business Group.[3]

According to later-served interrogatory answers, he holds the positions of Global Business Director, Organic Intermediates, Solvents & Monomers; Senior Director, Executive

---

[1] *See* Declaration of Alicia L. Downey ("Downey Decl."), Ex. A (the "Notice").

[2] *See* Downey Decl., Ex. B, Dow Answers and Objections to Plaintiffs' First Set of Interrogatories dated November 6, 2002, at page 21; Ex. C, Dow's Supplemental Answers to Plaintiffs' Second Set of Interrogatories dated May 24, 2004, at page 7; Ex. D, Third Supplemental Answers of Dow, UCC, and UCAP to Personal Jurisdiction Interrogatories dated May 10, 2005, at page 12.

[3] Downey Decl. Ex. B, Dow Answers and Objections to Plaintiffs' First Set of Interrogatories dated November 6, 2002, at page 20.

Management, Organic Intermediates, Solvents & Monomers, for Dow.[4] Defendants have not stated an express objection to producing Mr. Marinaccio, but they have failed to provide any date upon which he will be made available irrespective of location. Downey Decl. at ¶ 14.

Graham Fox was identified in Dow's Initial Disclosures dated November 1, 2002, as an individual "likely to have discoverable information that Dow and UCC may use to support their defenses and claims."[5] He has been identified as the Area President and Regional General Manager and Commercial Director, Middle East & Indian Subcontinent, DCOMCO, Inc., which plaintiffs believe to be a wholly owned subsidiary of Dow.[6] Defendants have asserted that because Mr. Fox is not directly employed by any of them, they will merely attempt to assist in arranging for his availability, but only in Dubai and subject to the laws and rules of that jurisdiction, if any, applicable to taking pretrial testimony. Downey Decl. at ¶ 15.

Muthukrishnan Ravi (sometimes referred to by the parties as Ravi Muthukrishnan) is identified in Dow's Initial Disclosures as a person "likely to have discoverable information that Dow and UCC may use to support their defenses and claims."[7] According to defendants' most recent answers to interrogatories, he is a Country Manager for Dow Chemical International Ltd.[8]

---

[4] Downey Decl. Ex. C, Dow's Supplemental Answers to Plaintiffs' Second Set of Interrogatories dated May 24, 2004, at page 7; Ex. E, UCC's Answers and Objections to Plaintiffs' Second Set of Interrogatories dated May 24, 2004, at page 7.

[5] Downey Decl. Ex. F, Defendants' Initial Disclosures, at page 4.

[6] Ex. C, Dow's Supplemental Answers to Plaintiffs' Second Set of Interrogatories dated May 24, 2004, at page 7; Downey Decl. Ex. G, Dow Singapore's Third Supplemental Responses to Personal Jurisdiction Interrogatories dated May 10, 2005, at page 11; Downey Decl. Ex. H, UCCS's Supplemental Answers to Personal Jurisdiction Interrogatories dated October 6, 2004, at page 11.

[7] Downey Decl. Ex. F, Defendants' Initial Disclosures, at page 2.

[8] *See* Downey Decl. Ex. G, Dow Singapore's Third Supplemental Responses to Personal Jurisdiction Interrogatories dated May 10, 2005, at page 11.

During the relevant period, Mr. Ravi was employed by Dow India based in Mumbai.[9] Defendants have asserted that because Mr. Ravi is not directly employed by any of them, they will merely attempt to assist in arranging for his availability, but only in Singapore and subject to the laws and rules of that jurisdiction, if any, applicable to taking pretrial testimony. Downey Decl. at ¶ 16.

Marcus Wildi is based in Switzerland, where, according to a recent submission by Dow Singapore, he was once employed as Commercial Director, Wire & Cable for Dow itself, but more recently held the position of Commercial Vice President, Plastics, for Dow Europe, a wholly owned subsidiary of Dow.[10] Defendants have asserted that because Mr. Wildi is not currently directly employed by any defendant, they will merely attempt to assist in arranging for his availability, but only in Switzerland and subject to the laws and rules of that jurisdiction, if any, applicable to taking pretrial testimony. Downey Decl. at ¶ 17.

Ashish Mitra was identified in Dow's Initial Disclosures as a person "likely to have discoverable information that Dow and UCC may use to support their defenses and claims."[11] According to Dow Singapore's May 10, 2005 answers to interrogatories, he was at that time an Account Manager for Performance Chemicals for Dow Chemical International Pte. Ltd. (Dow India).[12] Defendants have now informed plaintiffs that Mr. Mitra has recently left his employment, and they have taken the position that because of his status as a former employee and because he was not directly employed by any defendant, they have no duty to produce him in response to the Notice. Downey Decl. at ¶ 18.

---

[9] See Downey Decl. Ex. B, Dow Answers and Objections to Plaintiffs' First Set of Interrogatories dated November 6, 2002, at page 15.

[10] Downey Decl. Ex. G, Dow Singapore's Third Supplemental Responses to Personal Jurisdiction Interrogatories dated May 10, 2005, at page 13.

[11] Downey Decl. Ex. F, Defendants' Initial Disclosures, at page 2.

[12] Downey Decl. Ex. G, Dow Singapore's Third Supplemental Responses to Personal Jurisdiction Interrogatories dated May 10, 2005, at page 12.

Notwithstanding these positions, defendants have not ruled out the use of testimony from these witnesses either on summary judgment or at trial. Counsel has stated that such testimony may be used, depending on the showings made by plaintiffs. Downey Decl. at ¶ 19. Given the admitted knowledge of these witnesses of facts directly relevant to this case (*see infra* at Section I.B-C), it is highly likely that evidence from these witnesses will be used by plaintiffs to establish defendants' liability. Based upon defendants' position, they would then seek to rebut such a showing with testimony from these witnesses, without having provided plaintiffs a reasonable opportunity to obtain their deposition testimony.

**B.   Defendants Admit That the Dow Witnesses Have Relevant Personal Knowledge.**

Mr. Mitra and Mr. Ravi are specifically alleged in the First Amended Complaint to have been involved in implementing defendants' plan to usurp plaintiffs' place in the Indian market for defendants' benefit. *See* First Amended Complaint ¶¶ 41, 44, 47. The Complaint further alleges that Dow utilized its foreign subsidiaries to effectuate that plan. *E.g., id.* ¶¶ 27, 41, 43, 44.

Each and every one of the Dow Witnesses was identified in defendants' own discovery responses as persons likely to have relevant personal knowledge of facts pertaining to various issues in this case:

Defendants' answers to interrogatories disclose that, as a Business Group President, Mr. Liveris "had global responsibility for products and groups of products." Downey Decl. Ex. D, at page 12. Mr. Liveris was also identified in Plaintiffs' Initial Disclosures as a potential witness. Downey Decl. Ex. J, at page 3. Further, testimony by the former president of UCAP, Ronald Neri, made clear that Mr. Liveris was an integral member of the joint Dow/UCC merger integration team, which, among other things, discussed global plans for the post-merger company in a "clean room" setting. Downey Decl. Ex. K (Neri Dep. at 90-91). Such subject matters relate directly to issues raised by plaintiffs concerning changes in the distribution of products as the result of the merger, and based on Mr. Neri's testimony, Mr. Liveris is a primary

source for such evidence. In addition, Mr. Liveris is an appropriate and necessary witness, because post-merger he assumed responsibility for all of the defendants' worldwide sales and distribution (which would include to plaintiffs for resale in India) of specialty chemical products. Downey Decl. Ex. K (Neri Dep. at 286-87).

Defendants' Initial Disclosures attribute to Mr. Fox personal knowledge of "Communications with Ajay Mittal regarding attempts to resolve the parties' post-Merger business disputes." Downey Decl. Ex. F at page 4. Defendants' answers to interrogatories state the following about him:

- Area Presidents such as he "had responsibility for the marketing of particular products or groups of products in a given region. Downey Decl. Ex. G, at pages 10-11; Ex. H at pages 9, 11.

- He was "involved in communications concerning the withdrawal of certain product offerings from those that had previously been sold to Mega Visa Solutions (S) Pte Ltd by UCAP and, later, Dow Singapore." Downey Decl. Ex. I, at pages 6-7.

Defendants' Initial Disclosures attribute to Mr. Ravi personal knowledge of subject matters such as "commercial dealings in India between Dow India and (a) Plaintiffs, (b) Mega Visa Marketing Solutions Ltd., (c) end-users of Products in India, and (d) defendant Dow, as well as the allegations of the Complaint with respect to Mr. Mathukrishnan [sic] and Dow India." Downey Decl. Ex. F at page 2.[13] Defendants' answers to interrogatories state the following about him:

- He is "the most knowledgeable individual responsible for integrating the operations of UCC's foreign subsidiaries that were involved in the sale of Products to Plaintiffs with the operations of Dow Singapore and Dow India after the Merger. Mr. Ravi is employed by Dow India [in Mumbai, India]." Downey Decl. Ex. B, at page 15.

- "Country Managers" such as Mr. Ravi were "aware of Dow Chemical Pacific's purchases of Products from [Dow] and UCC for resale in their respective countries." Downey Decl.

---

[13] In addition to being specifically identified in the First Amended Complaint, Mr. Ravi was also listed in Plaintiffs' Initial Disclosures as a person "likely to have discoverable information relating to" a number of relevant subject matters. Downey Decl. Ex. J, at pages 2-3, 4.

Ex. G, at pages 10, 12. In other words, he knows about the sale and distribution of Dow and UCC Products in India.

- He was "involved in communications concerning the withdrawal of certain product offerings from those that had previously been sold to Mega Visa Solutions (S) Pte. Ltd. by UCAP and, later, Dow Singapore." Downey Decl. Ex. I, at page 6.

Defendants' answers to interrogatories state the following about Mr. Wildi:

- He had "direct or indirect responsibility for assessing, evaluating, determining or establishing the price to be charged end-users of Products." Downey Decl. Ex. E, at pages 13-14 (Interrogatory 7), 15 (in final supplemental response, Mr. Wildi is identified as a person "having some responsibility for prices to be charged for the sale of Products to customers in India"). *Id.*

- Commercial Directors and Commercial Vice Presidents such as he "had responsibility for the marketing of particular products or groups of products in a given region," and/or "global responsibility for overseeing sales and marketing of their respective products or groups of products." Downey Decl. Ex. G, at pages 10, 13; Ex. H, at pages 9, 13.

- He was "involved in communications concerning the withdrawal of certain product offerings from those that had previously been sold to Mega Visa Solutions (S) Pte. Ltd. by UCAP and, later, Dow Singapore." Downey Decl. Ex. I, at pages 6-7.

Defendants' Initial Disclosures attribute to Mr. Mitra personal knowledge of subject matters such as "Sale of chemicals/performance chemicals to Megavisa post-Merger through Singapore, and meetings with Megavisa personnel regarding those sales." Downey Decl. Ex. F at page 2. Defendants' answers to interrogatories state the following about him:

- He had "responsibility for assessing, evaluating or analyzing competition" of any of Dow India's "Products" sold in India during the past ten years. Downey Decl. Ex. B at page 5.

- He was "responsible for the sale of Dow India's Products to end-users in India during the period of August 1999 to the present." Downey Decl. Ex. B at 17-18.

- He was "involved in communications concerning the withdrawal of certain product offerings from those that had previously been sold to Mega Visa Solutions (S) Pte. Ltd. by UCAP and, later, Dow Singapore." Downey Decl. Ex. I, at page 6.

- Like other Account Managers, he "would have been aware of UCCS' purchases from Dow or UCC of Products for which they were responsible for sale to customers for which they were responsible." Downey Decl. Ex. H at pages 10-11; Ex. G at pages 11-12.

### C. Evidence From Defendants' Own Document Production Index Shows That the Dow Witnesses Were the Authors or Recipients of Thousands of Communications Concerning Relevant Matters.

Searches performed using defendants' document production index, which purports to list all of the documents produced by defendants to date, reveal that the Dow Witnesses have been identified by defendants as the authors or recipients of thousands of documents responsive to plaintiffs' document requests. Downey Decl. ¶ 20. The number of document "hits" for each witness varies, but in each case, the number reflects that these people were personally involved in numerous communications concerning such matters as the sale and distribution of the Products in India and elsewhere; pricing of the Products; and, of course, defendants' business dealings with plaintiffs and other distributors of the Products:

| Witness | Hits |
|---|---|
| Liveris: | 330[14] |
| Marinaccio | 2,500 |
| Fox | 1,873 |
| Ravi | 3,948 |
| Wildi | 3,377 |
| Mitra | 8,508 |

To the extent that defendants assert that each and every one of these documents is "irrelevant," plaintiffs would be pleased to provide specific examples to the Court in rebuttal.

---

[14] The relatively smaller number of documents sent from and to Mr. Liveris does not diminish the need for his deposition testimony. The documents that he either wrote or received suggest by their mere titles that he possesses highly pertinent information. Such titles include, "DOW in India," "IC price improvement plans," "Indian Pharma Market," "CALL TO ACTION--CHEMICALS AND PERFORMANCE CHEMICALS IN PACIFIC," "Lock-down highlights from A. Liveris," "MANUFACTURING OF ACETATES IN INDIA," and "Dowfax opportunity for India." Downey Decl. ¶ 21. This is in addition to the unique relevant knowledge that Mr. Liveris possesses, as established by deposition testimony taken to date. *See supra* at Section I.B.

### D.  Dow's Voluntary Production of Other Witnesses Employed by its Foreign Subsidiaries.

Defendants have already demonstrated that they exercise sufficient control over employees of their subsidiaries, including former employees, when and as they see fit to do so. For example, in designating corporate representatives to testify in Hartford in response to plaintiffs' Notices of Deposition pursuant to Rule 30(b)(6), defendants designated Lawrence Cheung (presently an employee of Dow Singapore) to appear on behalf of defendant UCAP. Also designated as a Rule 30(b)(6) witness on behalf of UCAP was Venketraman Moorthy, a former UCAP employee who retired effective January 1, 1999.[15] In addition, defendants have represented that Vipul Babu (a current employee of Dow India) and Mukul Kumar (also a current employee of Dow India) will be made available to testify in Hartford, notwithstanding their employment by Dow subsidiaries.

On multiple occasions defendants have also arranged to procure affidavits by employees of their subsidiaries in aid of various legal arguments they have submitted to the Court. *E.g.*, Affidavits of Lawrence Cheung dated August 29, 2002; Affidavit of Sam Ong dated May 20, 2003; Affidavit of Ng Siew Kwan dated August 28, 2002.

### II.  ARGUMENT

### A.  There Is No Basis To Avoid the Depositions of Andrew Liveris and Michael Marinaccio.

Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition. Fed. R. Civ. P. 30(b)(1). "Highly-placed executives are not immune from discovery[, and] the fact that [an executive] has a busy schedule cannot shield that witness from being deposed." *Six West Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001), citing *Consolidated Rail Corp. v. Primary Industries Corp.*, No. 92 Civ. 4927,

---

[15] For the convenience of Mr. Moorthy, the parties agreed to conduct his deposition in New York City.

1993 WL 364471, at * 1 (S.D.N.Y. Sept. 10, 1993) (internal punctuation omitted).

Here, both Mr. Liveris and Mr. Marinaccio are employed directly by Dow, and both are sufficiently high in the ranks of management that defendants cannot stop plaintiffs from compelling their individual depositions under Rule 30(b)(1). As far as Mr. Marinaccio is concerned, defendants have already conceded as much. To the extent defendants attempt to argue otherwise as to Mr. Liveris, that argument is belied by the fact of his personal knowledge of relevant information, as indicated by defendants' own sworn interrogatory answers and the other evidence obtained to date. As noted above, Mr. Liveris not only possesses unique relevant information, given his role in the "clean room" discussions regarding the integration of Dow and UCC, but he also assumed responsibility for the global distribution post-merger for one of the key product segments purchased and resold by plaintiffs.

Defendants should be directed to produce both of these witnesses for deposition.

### B.   Graham Fox, Muthukrishnan Ravi, Marcus Wildi, and Ashish Mitra Are "Managing Agents" of Dow Within the Meaning of Rule 30(b)(1).

Defendants have taken the position that they have no duty under Rule 30 to produce individuals employed by Dow's foreign subsidiaries because the subsidiaries are not named as parties. In Mr. Mitra's case, plaintiffs have also been informed that he is no longer employed by any Dow entity. These facts, however, assuming they are true, do not vitiate Dow's duty to produce these individuals in response to the Notice. Whether a person is a "managing agent" of a corporate party, and therefore subject to a notice of deposition under Rule 30, does not turn on fine lines drawn between intimately related corporate entities. Indeed, "[t]he term 'managing agent' should not be given too literal an interpretation." *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96 (S.D.N.Y. 1968). The requirement that a corporate party ensure that individual officers, directors, and managing agents appear in response to a properly issued Notice pursuant to Rule 30 "may also be imposed . . . if the witness is effectively under the control of the party, as when the witness is a close relative, or a former corporate employee subject to some continuing corporate control due, for example, to continued work for the corporation or a

subsidiary." 7 MOORE'S FEDERAL PRACTICE - CIVIL § 30.21 (Matthew Bender 2005) (emphasis added).

Factors used by courts in determining whether an individual is a corporate party's "managing agent" include:

1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters;

2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party;

3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination;

4) the general responsibilities of the individual respecting the matters involved in the litigation; and

5) whether the individual can be expected to identify with the interests of the corporation.

See *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985); *cf. Colonial Capital Co. v. General Motors Corp.*, 29 F.R.D. 514, 516-17 (D. Conn. 1961).

Although the examining party bears the burden of establishing the status of the witness, the burden is "modest," and <u>all doubts are to be resolved in favor of the examining party</u>." *Dubai Islamic Bank v. Citibank, N.A.*, 2002 WL 1159699 (S.D.N.Y. May 31, 2002) (emphasis added), citing *Sugarhill Records*, 105 F.R.D. at 170; *Boss Mfg. Co. v. Hugo Boss AG*, 1999 WL 20828, *4 (S.D.N.Y. Jan. 13, 1999); *United States v. Afram Lines (USA) Ltd.*, 159 F.R.D. 408, 414 (S.D.N.Y. 1994). This burden is satisfied by "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." *Dubai Islamic Bank*, *supra* at *4 (citations omitted).

In this case, all five factors weigh in favor of treating the four subsidiary managers, including Ashish Mitra, as "managing agents" subject to deposition under Rule 30.

First, there can be no doubt that, by virtue of their high-ranking positions in Dow's global organization, all exercised senior managerial judgment and discretion during the relevant time period.[16]

Second, all of these witnesses, including Mr. Mitra, fully cooperated in the gathering and production of documents in their custody during the course of the named defendants' efforts to comply with their discovery obligations. *See* Downey Decl. Ex. L-S (subject matter and custodian designation letters identifying documents produced from the files of Messrs. Liveris, Marinaccio, Fox, Ravi, Wildi, and Mitra). They are no doubt equally prepared to take direction from Dow and its counsel in connection with appearing at a deposition in support of the defendants.

Third, these witnesses are obviously the persons best suited to testify about their own conduct and statements related to the events at issue, not just general facts about company operations and business dealings with plaintiffs and others about which other witnesses may be equally qualified to testify. They were there; they are eyewitnesses to key communications, meetings, and decisions, and there is no one with any higher authority whose depositions would be more appropriate.

Fourth, as to matters at issue in this litigation, these individuals all played key roles. Plaintiffs will be at a serious disadvantage in preparing their case if they are precluded as a practical matter from examining these witnesses. This is particularly the case given the significant volume of evidence concerning these witnesses, including documents in the nature of business records, that will likely be used to establish defendants' liability. Defendants have stated that they reserve the right to use testimony from these witnesses to rebut such a showing, not only further establishing their control over these witnesses, but also the illegitimacy of their

---

[16] If the Court harbors any doubt at all about Dow holding itself out and functioning as a single global entity, it need look no further than Dow's website, where the company presents detailed information about its facilities, operations, and personnel located around the world, including Asia Pacific: http://www.dow.com/facilities/asiapac/index.htm.

efforts now to prevent them from being deposed.

Fifth, it is beyond all doubt that the Dow witnesses' interests have always been, and still are, fully aligned with those of Dow. Mr. Mitra's status as a former employee is hardly dispositive. Defendants have already demonstrated, in the course of plaintiffs' taking of the depositions of Mr. Neri, Mr. Fisher, and Mr. Moorthy—none of whom have worked for defendants for at least four years—that they are able to exercise a significant degree of control over their former employees. They were involved in scheduling the depositions, speaking with them in advance, preparing them to testify, and representing them as their counsel at the deposition at defendants' expense. Mr. Neri and Mr. Moorthy were, in fact, presented as Rule 30(b)(6) witnesses on behalf of UCAP. There is no reason to believe that defendants do not have the same ability to ensure Mr. Mitra's presence at deposition.

In sum, these four witnesses may not, as a technical matter, be on Dow's domestic payroll, but all are nevertheless "managing agents" of Dow for the purposes of Rule 30. The Court should order them to be produced for depositions on the earliest possible dates.

C.  **All of the Dow Witnesses Should Be Required to Appear in Hartford, Connecticut.**

On September 1, 2004, the Court issued an Order directing that, absent agreement by the parties to the contrary, "Rule 30(b)(6) depositions will be held at the United States Courthouse in Hartford, Connecticut." The Court should issue the same directive with respect to the Dow witnesses sought to be deposed by the latest Rule 30 Notice.

"As a general rule, 'the party noticing the deposition usually has the right to choose the location.' . . . Where a corporation is involved as a party to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business." *Media Group, Inc. v. In-finity Prods., Inc.*, 2000 WL 303221 (D. Conn. 2000), quoting *Buzzeo v. Bd. of Educ.*, 178 F.R.D. 390, 392 (E.D.N.Y. 1998).

"A number of factors, however, may overcome the presumption and persuade a court to permit the deposition of a corporate agent or officer to be taken elsewhere." *Rapoca Energy Co.,*

*L.P., v. AMCI Export Corp.*, 199 F.R.D. 191, 193 (W.D. Va. 2001). Such factors include: "[the] location of counsel for the parties in the foreign district[;] the number of corporate representatives a party is seeking to depose[;] the likelihood of significant discovery disputes arising that would necessitate resolution by the foreign court; whether the persons sought to be deposed often engage in travel for business purposes; whether defendant has filed a permissive counterclaim; and the equities with regard to the nature of the claim and the parties' relationship." *Id.*(citations omitted).

Because the Court still retains substantial discretion to direct that a deposition be conducted in the forum, "corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy." *Buzzeo*, 178 F.R.D. at 392. Considering all relevant factors in this case, Connecticut is the proper location for the depositions called for by the Notice.

First, counsel of record for the parties are already present in the State. The parties' non-Connecticut counsel frequently travel to the State for other discovery events and status conferences with the Court, and it would not be unduly burdensome for them to do so in connection with these depositions.

Second, plaintiffs are seeking depositions of six of Dow's managing agents. The depositions may easily be clustered on consecutive calendar days so that counsel and the witnesses travel only once to Connecticut for preparation and attendance at their examination.

Third, the unfortunate fact is that in all likelihood there will be discovery disputes requiring judicial intervention. Including this submission, there are at present no fewer than five discovery related motions pending with the Court. As the Court is well aware, there has been a need for frequent and close judicial monitoring of discovery in this case. Were depositions to take place on the other side of the world, it would be substantially impossible to reach the Court in time to resolve issues as they arose in the deposition.

Fourth, the foreign Dow witnesses, given the seniority of their positions, are likely to travel to the northern United States (or at least to Dow's Michigan headquarters) frequently enough that requiring their attendance at deposition in Hartford will not impose undue burden or expense on Dow.

Fifth, the equities, including the relative resources of the parties, weigh in favor of locating these depositions in Hartford. As reflected in numerous prior submissions to the Court, defendants have gone to extraordinary lengths to prevent plaintiffs from obtaining meaningful discovery, except as to matters that they perceive to be in their own interest. Accordingly, notwithstanding his employment by Dow Singapore, Lawrence Cheung traveled overseas to appear for deposition in Hartford as a 30(b)(6) witness to speak on behalf of UCAP. As noted above, defendants have also represented that they intend to produce at least two other employees of Dow's foreign subsidiaries, Vipul Babu and Mukul Kumar, to appear in Hartford. In the interest of fairness, they should not be allowed to pick and choose which "non-party" witnesses to produce and which to withhold, nor should they be allowed to claim that production of these witnesses in Hartford is unduly burdensome or unfair, when they have successfully brought and intend to bring other Rule 30 witnesses from Singapore and India to the forum.

## III.  CONCLUSION

Defendants' objections to producing the Dow Witnesses should be overruled and Dow should be compelled to produce each witness in Hartford, Connecticut for depositions in accordance with the Notice. Regardless of his rank in the company (and his understandable reluctance to be deposed), there is no valid basis whatsoever on which to preclude Mr. Liveris's deposition. As for the others, for purposes of Rule 30(b)(1), the distinctions that defendants have drawn between employees of Dow and those of the Dow subsidiaries involved here are meaningless. All of the Dow Witnesses are either directors or officers of Dow itself (as are Messrs. Liveris and Marinaccio) or "managing agents" of Dow (as are Messrs. Fox.

Muthukrishnan, Wildi, and Mitra).  For that reason, the Court should grant the instant Motion in its entirety.

                                **MM Global Services, Inc., MM Global Services Pte. Ltd., and MegaVisa Solutions (S) Pte. Ltd.**

By: *Alicia L. Downey /cmp*
Richard S. Taffet
Alicia L. Downey
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY  10022-4689
Tel. (212) 705-7000
Fax. (212) 752-5378

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing was sent via telecopier and first-class mail on this 13th of October 2005 to the following counsel of record:

Craig A. Raabe, Esq.
ROBINSON & COLE LLP
280 Trumbell Street
Hartford, CT  06103-3597

Andrew S. Marovitz
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL  60606

Scott C. Solberg, Esq.
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

Christopher J. Kelly, Esq.
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

*Cynthia M Duzzetti* /kp