UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL :
SERVICES PTE. LTD. & MEGA VISA :
SOLUTIONS (S) PTE. LTD., :
 :
   Plaintiffs :
 : Civil No. 3:02 CV 1107 (AVC)
 :
   v. :
THE DOW CHEMICAL COMPANY, UNION :
CARBIDE CORPORATION & UNION CARBIDE :
ASIA PACIFIC, INC., :
 :
 :
 :
   Defendants. : November 1, 2005

MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO COMPEL
RETURN OF PRIVILEGED DOCUMENTS AND IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF IMPROPERLY WITHHELD AND
REDACTED DOCUMENTS

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  05103-3497
(860) 275-8304

Nathan P. Eimer (ct 23693)
Scott C. Solberg (phv 0234)
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL  60604
(312) 660-7600

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
71 S. Wacker Drive
Chicago, Illinois  60606
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C.  20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

**TABLE OF CONTENTS**

Page

I.      Introduction.................................................................................................... 1

II.     Facts ............................................................................................................... 3

III.    Plaintiffs' Refusal to Return Defendants' Inadvertently Produced Privileged
        Documents Violates This Court's Stipulated Protective Order and Well-
        Established Law. ............................................................................................. 7

IV.     Plaintiffs' Complaints About Defendants' Privilege Log Are Premature. ...... 13

        A.      Plaintiffs Have No Basis to Claim That Certain of the Entries Are Suspect....... 13

        B.      Defendants' Privilege Log Properly Includes And Describes
                Communications That Relay Legal Advice....................................... 16

        C.      Defendants Properly Redacted Non-Responsive, Sensitive Information
                From Documents, But Have Decided To Re-Produce These Documents To
                Avoid A Discovery Dispute.............................................................. 18

V.      The March 2002 Cheung Report and India Orders Emails Were Properly
        Redacted........................................................................................................ 19

        A.      Plaintiffs Have Waived Any Claim That They Are Prejudiced By the
                Redactions to Exhibit 92.................................................................. 20

        B.      Defendants Properly Assert Privilege Over The Redacted Content of
                Exhibit 92......................................................................................... 22

        C.      The India Orders Email Is Properly Redacted. ................................. 23

VI.     Conclusion .................................................................................................... 24

## I.    Introduction

Plaintiffs' Motion To Compel claims that Defendants waived privilege over a number of documents that were inadvertently included within their 1.5+ million-page production, and that Defendants inadequately described and/or logged a subset of those documents.  As a result, Plaintiffs steadfastly refuse to return the privileged documents to Defendants, and demand that this Court find a blanket waiver of privilege.  *See* Pls. Mem. at 1-2.

Plaintiffs' concession that they are retaining Defendants' privileged documents is nothing short of remarkable, for it is an admission that Plaintiffs are in violation of this Court's Stipulated Protective Order.  Almost three years ago, the parties signed and presented to the Court – and this Court entered – a Stipulated Protective Order (Dec. 18, 2002) (Ex. 1) to govern the substantial document productions that commercial cases of this sort generate.  The Stipulated Protective Order governed a range of topics, but notably addressed the very issue Plaintiffs now present to this Court in refusing to return the privileged documents to Defendants.  Paragraph R of the Stipulated Protective Order provides:

> Should a producing party determine that a document subject to privilege or immunity from discovery has been produced inadvertently, it shall bring that fact to the attention of the receiving party.  The inadvertently disclosed document and all copies shall be returned to the producing party.  Such disclosure shall not result in the waiver of any associated privilege.

*Id.*   Plaintiffs' refusal to return the privileged documents is in express violation of this Court's Order, as well as the governing ABA Opinions and state law protocols.  *See infra* at 13.  This time, Plaintiffs' aggressive discovery tactics have gone too far.  The defendants respectfully suggest that the Plaintiffs' tactics are yet another example of discovery litigation for its *in terrorem* effect rather than discovery geared toward preparing this case for trial.

-1-

Plaintiffs' Motion also serves as an example why parties are required to meet and confer before they bring routine discovery disputes to the Court for resolution. Not only have Plaintiffs violated this Court's Stipulated Protective Order, but they improperly filed their Motion before permitting the meet-and-confer process to reach conclusion. Had Plaintiffs completed the meet-and-confer process, they would have realized that one of the documents they put at issue – D00470673 – was authored by James Drake, a TDCC attorney, and that Defendants have decided to re-produce Document D00379016-18 without the redactions that Plaintiffs dispute. Had Plaintiffs completed the meet-and-confer process before filing their Motion, the Court would have been spared Defendants' recitation of these mundane details. Indeed, had Plaintiffs completed the meet-and-confer process in good faith, they would have discovered that (1) many of the documents Plaintiffs complain about are properly privileged and described on the Privilege Log; (2) Defendants are re-reviewing the documents on Defendants' Privilege Log to ensure that each and every document is properly privileged and described; (3) certain of the documents were inadvertently included on the Privilege Log even though they actually *were produced* to Plaintiffs; and (4) Defendants have decided to re-produce all non-privileged redacted documents in un-redacted format.

Plaintiffs cannot claim that they did not know that Defendants were taking these steps: Defendants told Plaintiffs as much six days before Plaintiffs filed their Motion. But rather than complete the meet-and-confer process in good faith and afford Defendants the opportunity to provide Plaintiffs with a revised Privilege Log, Plaintiffs charged ahead, violated this Court's Stipulated Protective Order and filed yet another premature Motion seeking unnecessary relief from this Court. Plaintiffs' Motion should be denied and Plaintiffs should be ordered to return

2

Defendants' privileged documents, consistent with the Stipulated Protective Order entered by this Court in December 2002, along with any other relief that the Court deems appropriate.

## II.     Facts

Defendants produced their first privilege log on February 13, 2003, along with a list of the names of attorneys who appear most frequently on the privilege log. Letter from M. Edwards to R. Taffet dated Feb. 13, 2003 (Ex. 2). The parties appeared for a status conference the following day, on February 14, 2003, during which the Court ordered the parties to complete their privilege and redaction logs. A log of the documents redacted by Defendants promptly followed on March 11, 2003. (Ex. 3).

By March 20, Plaintiffs still had not produced their privilege log. Letter from M. Edwards to P. Winick dated March 20, 2003 ("as for the materials that were ordered produced at the February 14, 2003 court conference, Defendants have already produced their redacted privilege log, as you know. We have received nothing from Plaintiffs.") (Ex. 4). A full two months after Defendants produced their privilege log and the Court ordered the parties to complete their logs, Plaintiffs finally produced a redaction/privilege log, which logged 100 documents – all but 6 of which use exactly the same privilege description. Letter from Alyson Redman to C. Reitmeyer dated April 14, 2003 (Ex. 5).

Plaintiffs first wrote Defendants on April 29, 2003 to raise questions about Defendants' first privilege and redaction logs. Letter from P. Winick to M. Edwards dated April 29, 2003 (Ex. 6). As a part of this letter – and consistent with their litigation tactics in this case – Plaintiffs contested *every entry* on Defendants' privilege and redaction logs. In accordance with their meet-and-confer obligations, Defendants notified Plaintiffs that they would review the

3

issues raised by Plaintiffs' letter and respond promptly. Letter from C. Reitmeyer to P. Winick dated May 9, 2003 (Ex. 7). That same month, Defendants provided Plaintiffs with a comprehensive explanation of Defendants' basis for claiming privilege over the questioned documents and provided supporting legal authority. Letter from C. Reitmeyer to P. Winick dated May 27, 2003 (Ex. 8). Defendants then revised their privilege and redaction logs in accordance with representations made in this letter. Letter from C. Reitmeyer to P. Winick dated September 5, 2003 (Ex. 9).

To date, Plaintiffs raised no additional issues with respect to the explanations provided in Defendants' May 27, 2003 letter or the descriptions included in the revised privilege and redaction logs. This is critical, because many of the documents about which Plaintiffs now complain in their Motion *were first described on Defendants' 2003 privilege and redaction logs and were the subject of Plaintiffs' April 27, 2003 letter*. For these documents, Plaintiffs waited 2½ years before re-raising the issue.

In July 2005, Defendants produced the most recent privilege log (the "Privilege Log") that is the subject of Plaintiffs' Motion.[1] This Privilege Log is 157 pages long and logs about 2,000 documents – many of them duplicates of one another or duplicative e-mails as part of an e-mail string – of the more than 1.5 million pages produced by Defendants in the case. Shortly after Defendants made their July 2005 supplemental productions and provided Plaintiffs with the Privilege Log, Defendants received an email from Plaintiffs' counsel identifying a potentially privileged document that had been produced. E-mail from A. Downey to A. Marovitz and D.

---

[1] Plaintiffs complain that Defendants supplemented their Privilege Log. Defendants produced the first version of the Privilege Log on July 1, 2005. Letter from D. Douglas to A. Downey dated July 1, 2005 (Ex. 11). Shortly after July 1, 2005, Defendants made a supplemental production. Accordingly, Defendants produced a Supplemental Privilege Log on July 22, 2005. Letter from D. Douglas to A. Downey dated July 22, 2005 (Ex. 12).

Douglas dated August 1, 2005 (Ex. 10).  Defendants reviewed the document, agreed with

Plaintiffs that it was privileged, and notified Plaintiffs the very next day that the document was,

indeed, privileged.  E-mail from D. Douglas to A. Downey dated August 2, 2005 (Ex. 13).

Defendants also informed Plaintiffs that they would review the entire electronic production that

contained the privileged document in order to determine whether other privileged documents had

been inadvertently produced.  *Id.*    Plaintiffs raised no objection to Defendants' intention to

review the 7,300 documents that were contained in the electronic productions at issue.

Defendants undertook the review of 7,300 electronic documents culled from their

databases and, within a month of discovering that privileged documents may have been

produced, sent Plaintiffs a letter identifying a list of documents Defendants believed to be

privileged.  Letter from D. Douglas to A. Downey dated August 31, 2005 (Ex. 14).  Defendants

also requested the return or destruction of those documents.  *Id.*    Despite the fact that the

Protective Order in this case specifically provides that privileged documents are to be promptly

returned to the producing party, Plaintiffs flatly refused to return the documents.    Worse,

Plaintiffs threatened to affirmatively review those privileged documents within 7 business days if

Defendants did not provide a basis for their claim of privilege as well as an explanation

regarding why those privileged documents were produced.  Letter from A. Downey to A.

Marovitz and S. Solberg dated September 9, 2005 (Ex. 15).

In this same September 9 letter, Plaintiffs lodge their first complaint about Defendants'

July 2005 Privilege Log.  The letter cites 9 Privilege Log entries and claims that those entries

insufficiently describe the basis for Defendants' assertion of privilege.  *Id.*    This letter also

demands that Defendants remove the redactions from Exhibit 92, which was introduced by

Plaintiffs during Lawrence Cheung's August 2005 deposition.[2]  Exhibit 92 is one of the documents that had been discussed during the 2003 meet-and-confer sessions on Defendants' privilege and redaction logs.  (Ex. 6).  Defendants promptly responded to Plaintiffs' request to meet and confer on the issues raised in their September 9, 2005 letter.  Letter from A. Marovitz to A. Downey dated September 12, 2005 (Ex. 16).

The parties conducted the first meet-and-confer conference on the issues raised in Plaintiffs' letter on September 22, 2005.  During this conference, Plaintiffs complained about the list of privileged documents referenced in Defendants' August 31, 2005 letter and asked that redacted copies of those documents be produced.   D. Douglas Declaration ¶ 8 (Ex. 17). Defendants again requested the return of the inadvertently produced documents – a request that was again rebuffed – but at least were able to convince Plaintiffs to agree to notify Defendants if they planned to follow through with their threat to affirmatively review the documents.  *Id.* Defendants then shifted their attention to providing Plaintiffs with redacted copies of the documents listed in the August 30, 2005 letter.  *Id.*  During the redaction process, Defendants reconsidered their privilege claim.  *Id.*  Defendants re-produced redacted versions of the partially privileged documents to Plaintiffs on September 29, 2005 and identified the documents that were properly produced and the documents that were privileged in their entirety.[3]  Letter from D. Douglas to A. Downey dated September 29, 2005 (Ex. 18).

---

[2] Plaintiffs re-raised the redactions of the document introduced as Exhibit 92 during Mr. Cheung's deposition.  Had Plaintiffs been truly concerned about questioning Mr. Cheung about this document, *which was produced in 2002 and the subject of prior correspondence about redactions,* they could have raised the issue before Mr. Cheung's deposition so that Defendants could have reviewed the document and re-produced in time for use during Mr. Cheung's deposition.

[3] Plaintiffs focus on the number of inadvertently produced documents.  Considering that Defendants have produced over 1.5 million pages of documents – many of which were culled from electronic databases – a request for the return of 113 documents is not unreasonable.

Having received production copies of the redacted documents, Plaintiffs refocused their attack on Defendants' Privilege Log during the parties' September 30, 2005 meet-and-confer conference. Plaintiffs informed Defendants that they regarded a number of the Privilege Log entries to be inadequate. Defendants responded that they were reviewing the Privilege Log and would revise the entries for content and to include the inadvertently produced privileged documents. Defendants repeated their request for the return of their privileged documents. Plaintiffs, once again, refused to return or destroy these documents, demanding additional information from Defendants about the inadvertent production of the documents.

Defendants concluded the September 30, 2005 conference call with the understanding that they would continue to revise the Privilege Log in accordance with their meet-and-confer obligations; Plaintiffs would review the revised Privilege Log, and then decide whether to return Defendants' privileged documents or seek Court intervention. Defendants memorialized their understanding that the meet-and-confer process would continue on October 5, 2005. Letter from A. Marovitz to R. Taffet dated October 5, 2005 ("There remain several additional requests that we continue to work on, including an updated privilege log . . .") (Ex. 19). Instead of following through on this process, Plaintiffs charged ahead and sought Court intervention.

## III.    Plaintiffs' Refusal to Return Defendants' Inadvertently Produced Privileged Documents Violates This Court's Stipulated Protective Order and Well-Established Law.

After being notified that their 1.5 + million-page production included a number of electronically produced, privileged documents, Defendants addressed the issue, identified 113 such documents that were inadvertently produced last July and requested that Plaintiffs return them. Remarkably, instead of complying with the parties' Joint Stipulated Protective Order and

the ABA and Connecticut ethics opinions, Plaintiffs resorted to self-help by holding them hostage. Plaintiffs' conduct is wholly improper.

On August 1, 2005, Alicia Downey, counsel for Plaintiffs, notified counsel for Defendants that a potentially privileged document had been produced as a part of these productions. Email from A. Downey to D. Douglas and A. Marovitz dated August 1, 2005 (Ex. 10). Counsel for Defendants reviewed the document, determined that it was privileged, notified Plaintiffs the very next day that the document was privileged and requested its return.[4] Defendants also advised Plaintiffs that Defendants would be investigating whether other privileged documents had been inadvertently produced. Email from D. Douglas to A. Downey dated August 2, 2005 (Ex. 13). Defendants promptly conducted a review of over 7,000 documents that were produced during July and informed Plaintiffs on August 30, 2005 – within a month of Plaintiffs' notification that a privileged document had been produced – that additional privileged documents had been inadvertently produced.

Defendants discovered that these documents had been produced because (1) several authors of documents were not known at the time to be attorneys providing legal advice; (2) some privilege designations not properly applied during the processing of the electronic documents; and (3) several reviewer and vendor mistakes were made, despite the exercise of good faith and diligence. D. Douglas Declaration ¶ 5 (Ex. 17). What is more, Defendants acted quickly once Plaintiffs notified Defendants that a potentially privileged document had been produced. Within a month, Defendants reviewed over 7,000 documents, preliminarily

---

[4] Plaintiffs suggest that Defendants relied solely on their electronic discovery consultant to keep privileged documents from production. Pls. Br. at 15. This assertion is not true. Defendants worked with their electronic discovery consultant to select documents from electronic data that were likely to contain privileged documents. Defendants then conducted a document-by-document review of those documents. D. Douglas Declaration ¶ 3 (Ex. 17).

8

determined that 133 were privileged, and promptly notified Plaintiffs of the results of Defendants' investigation. *United States v. United Technologies Corp.*, 979 F. Supp. 108, 116 (D.Conn. Aug. 14, 1997) (privilege not waived where a "reasonable effort to sort through a huge volume of documents in order to withhold those that it considered privileged" and promptly requested the return of the privileged document).

The case law cited by Plaintiffs to support their argument that Defendants' production of privileged documents was not inadvertent provides no support for their argument. While *Eigenheim Bank v. Halpern*, 598 F. Supp. 988 (S.D.N.Y. 1984), held that the producing party had waived any claim to privilege over a small subset of documents, it issued its holding only after finding that the documents at issue had been identified as privileged by the producing party in a previous, substantially similar lawsuit where they also had been produced inadvertently. After the document's inadvertent production in the prior lawsuit, the document was then kept segregated with other confidential documents by the producing party's attorneys. And in that litigation, the document was produced in response to a specific request as one of only 30 documents. The "careless" treatment of that document waived its privilege. *Id.* at 991. Here, in contrast, there are no such circumstances. The 113 documents at issue were collected as a part of Defendants' 1.5 million page production; the documents were not segregated in any manner that would identify their privilege; and the documents had not been part of a substantially similar lawsuit where their production was at issue, and thus highlighted to Defendants' counsel.

The remaining cases cited by Plaintiffs are no better. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 445 (S.D.N.Y. 1995), held that a paralegal's failure to remove privileged documents from a document production did not waive the documents' privilege where the paralegals were given clear instructions and attorneys were involved in the

substantive privilege review. *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46, 51 (M.D.N.C. 1987), found that the producing party did not meet its burden of showing inadvertent disclosure where the court was not informed of the "percentage of inadvertent disclosures compared to total documents and withheld documents"; the producing party chose to produce all of its files to opposing counsel rather than select responsive documents for production; and the producing party was under no "severe time constraints." Here, the Court has been informed each step of the way about the large number of documents involved in Defendants' production efforts. Unlike in *Parkway Furniture*, Defendants undertook to review large amounts of documents in response to Plaintiffs' broad discovery requests in a relatively short period of time. The case law cited by Plaintiffs simply does not support any argument that Defendants waived privilege over the 113 documents at issue as a result of Defendants' discovery conduct.

Moreover, Plaintiffs have suffered no prejudice as a result of the inadvertent production of these documents. The documents constitute a tiny percentage of the universe of Defendants' production; none of the documents were used as exhibits by Plaintiffs in any of the depositions they have taken to date; and most of the documents have little if any reference to Plaintiffs' claims. In fact, as Plaintiffs' Brief acknowledges, a good portion of the documents are duplicates of each other. Pls. Br. at 14 (the 113 documents at issue include "twelve copies of the India Order Emails"). What is more, recent correspondence from Plaintiffs strongly suggests that Plaintiffs did not even load the second July production until recently, which means that Plaintiffs did not even spend time reviewing a substantial portion of the documents at issue. Letters between Cynthia Guizetti and D. Douglas (Ex. 20); Letter from A. Downey to Counsel dated October 26, 2005 (referencing "ongoing difficulties" with Defendants' production index) (Ex.

21). The deletion of the 113 documents at issue from Plaintiffs' database is a task that could be easily performed by Plaintiffs' information technology department.[5]

Meanwhile, Plaintiffs continue to violate the Parties' Joint Stipulated Protective Order and the spirit of this state's ethics opinions by holding hostage Defendants' privileged documents. The law is clear that once a claim of privilege has been made, parties are required to promptly return the documents at issue, regardless of whether the parties think they may have a basis to claim they are entitled to production of the documents. ABA Formal Op. 92-368 (1992) ("A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them."); Ct. Eth. Op. 96-4 (Mar. 14, 1996) ("the ABA Committee on Ethics and Professional Responsibility takes the position that a lawyer may not normally hold on to and make use of confidential or privileged documents absent waiver or other proper legal authorization. The Connecticut Committee on Professional Ethics agrees.") (citing ABA Formal Op. 92-368). The ethical obligations within the state where lead Plaintiffs' counsel practices are no different. *See* NYCLA Eth. Op. 730, at 7 (July 19, 2002) ("A lawyer has ethical obligations upon receipt of inadvertently disclosed privileged information. If a lawyer receives information which the lawyer knows or believes was not intended for the lawyer and contains secrets, confidences or other privileged matter, the lawyer, upon recognition of same, shall, without further review or use thereof, notify the sender and * * * abide by sender's instructions regarding return or destruction of the information").

---

[5] As before, Defendants will offer the assistance of their information technology consultants if Plaintiffs need help deleting Defendants' privileged documents.

If this law were not sufficiently clear (and it is), the Court's Stipulated Protective Order – to which both parties agreed – is. As noted above, Paragraph R of the Joint Stipulated Protective Order provides:

> Should a producing party determine that a document subject to privilege or immunity from discovery has been produced inadvertently, it shall bring that fact to the attention of the receiving party. The inadvertently disclosed document and all copies shall be returned to the producing party. Such disclosure shall not result in the waiver of any associated privilege.

Ex. 1. Plaintiffs' unilateral decision that they need not comply with the terms of the Protective Order should not be tolerated.

Indeed, when twice faced with precisely the same choice, Defendants complied with the Stipulated Protective Order and returned documents that Plaintiffs claimed were privileged. When Defendants traveled to Plaintiffs' counsel's New York office to review Plaintiffs' production documents that had been sent from India, Defendants discovered numerous documents within one of the production boxes that included handwritten notes describing documents contained in the production that appeared to be communications between Plaintiffs and their attorneys. C. Reitmeyer Declaration ¶ 2 (Ex. 22). Defendants promptly notified Plaintiffs of the potential inadvertent production of privileged communications. *Id.* ¶ 3. Plaintiffs then redacted those documents and logged the communications on their Redaction/Privilege Log. *Id.* ¶ 4.

Plaintiffs again provided Defendants with privileged documents as part of an exhibit to Thelen Reid's Motion to withdraw as Counsel and for the Imposition of Security Prior to any Release of MegaVisa's Files to Successor Counsel and for the Imposition of a Charging Lien. Again, Defendants promptly returned the documents,

without question.  Letter from A. Marovitz to P. Winick dated Nov. 23, 2004 (Ex. 23);

Email from A. Marovitz to E. Maluf dated Nov. 24, 2004 (Ex. 24).

In sum, while both parties to this litigation inadvertently produced privileged documents,

only Plaintiffs have purposefully refused to return them and, instead, have attempted to exploit

their production.   Plaintiffs' deliberate conduct violates the letter of the parties' Stipulated

Protective Order and the spirit of Connecticut's ethics opinions.  The Court should put a stop to

this abuse, and accordingly, Defendants request that the Court order Plaintiffs to return the 113

inadvertently produced privileged documents.

**IV.    Plaintiffs' Complaints About Defendants' Privilege Log Are Premature.**

Of the nearly 2,000 entries on Defendants' Privilege Log, Plaintiffs highlight a small

handful of entries to support their argument that Defendants' Privilege Log descriptions are

inadequate.[6]  While claiming that the Privilege Log "does not disclose enough information to

permit the conclusion that any privileges, whether legally cognizable or not, have been properly

invoked," Plaintiffs demand the wholesale production of these documents despite the fact that

Plaintiffs never provided Defendants with the list of documents that they now provide the Court.

Had Plaintiffs brought these same documents to Defendants' attention, numerous of the issues

presented to the Court would have been resolved without the need for Court intervention.

**A.    Plaintiffs Have No Basis to Claim That Certain of the Entries Are Suspect.**

As a threshold matter, the Privilege Log appropriately describes the purportedly

"suspect" documents referenced by Plaintiffs.   For example, Plaintiffs claim that the entry

---

[6] As set forth in Defendants' Combined Surreply in Support of Motion for a Protective Order and in Opposition to Cross-Motion to Compel, Plaintiffs' privilege log is far *less* descriptive than Defendants' privilege log.  *See* Defendants' Combined Surreply in Support of Motion for a Protective Order and in Opposition to Cross-Motion to Compel Further Responses to Discovery, to Remove "Counsel Only" Designations, and for Sanctions at 18-20.

describing privileged document D00470673 is suspect because there is no attorney identified as the author or recipient. But, in fact, the Privilege Log entry describing D00470673 identifies the author of the document as James J. Drake, in-house counsel for TDCC. D. Douglas Declaration ¶ 14 (Ex. 17). Defendants' revised Privilege Log also will list the document as privileged on the grounds that it was authored by in-house counsel for TDCC and provides legal advice regarding a business dispute with an End-User. *Id.* Had Plaintiffs brought this document (and others like it) to Defendants' attention prior to filing their Motions, Defendants would have been able to provide this explanation to Plaintiffs, and Plaintiffs might not have felt the need to file their motion.[7]

Moreover, Plaintiffs would like this Court to believe that a document can be privileged only if it contains the name of one of Defendants' in-house attorneys. For example, Plaintiffs assert that "there is no attorney identified as the author or recipient [of] . . . D00468230-32," yet the privilege log identifies George S. Cary as one of the document's authors and states that the document is privileged because it provides legal advice on a business relationship with an end user. But Mr. Cary is a partner at a law firm that serves as outside counsel for TDCC. D. Douglas Declaration ¶ 15 (Ex. 17). Plaintiffs cannot seriously suggest that documents in Defendants' possession that were provided to them by outside counsel for the purpose of providing legal advice are not privileged.

A number of the documents cited by Plaintiffs do not bear the name of an attorney on the face of the document, but contain a header or footer that indicated the privileged nature of the

---

[7] Indeed, Defendants' review of the documents cited in Plaintiffs' Motion revealed that a handful of documents had been previously produced in their entirety to Plaintiffs but were mistakenly identified on the Privilege Log as privileged. *See* D00000008, D00000009-10, D00000011, D00000014-13, D00000014, D00000015-16, D00000017, D00000019-21, D00000022-23, and D00000025. Defendants' revised Privilege Log will not list these documents as privileged. D. Douglas Declaration ¶ 17 (Ex. 17).

document.[8]   Thus, document D00466189 contains a footer on each page that states "Privileged

and Confidential Attorney Work Product; Evaluation Material Submitted Under Confidentiality

and Joint Defense Agreement."   As described by the Privilege Log, the document presents

information prepared at the direction of counsel regarding current business involving certain of

the Products.   The revised Privilege Log will provide the additional information that the

document relates to a legal dispute regarding business involving certain of the Products.   D.

Douglas Declaration ¶ 16 (Ex. 17).   D00456221-26 is a draft contract that was prepared by or

provided to Dow's Global Legal Department for attorney review and comment.[9]   *Diversified*

*Group, Inc. v. Daugerdas*, 304 F. Supp.2d 507, 514 (S.D.N.Y. 2003) ("The disclosure to an

attorney of drafts of documents ultimately intended to be released to the public is protected by

the attorney-client privilege where 'th[e] [drafts] reflect client confidences [and] the legal advice

and opinions of attorneys, all of which is protected by the attorney-client privilege.'"), *quoting*

*Muller v. Walt Disney Prods.*, 871 F. Supp. 678, 682 (S.D.N.Y.1994); *United States Postal*

*Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 163 (E.D.N .Y.1994) (drafts of

documents "may be considered privileged if they were prepared with the assistance of an

attorney for the purpose of obtaining legal advice and/or contain information a client considered

but decided not to include in the final version").   In each instance, these descriptive labels along

---

[8] Documents D00418660-77, D00456221-26, D00456227-30, D00456319-26, D00456327-34, D00456335-42, D00456343-50, D00466183-84, D00466185; D00466186, D00466189, D00466190, D00468211-29, D00468230-32, D00470675-76 fall into this category.  To be sure, a header or footer identifying a document as "Privileged" does not, by itself, make it so, but it does suggest that careful consideration be given to the document as potentially privileged.

[9] Plaintiffs also assume that because the Privilege Log indicates the parties to a draft contract, the draft cannot be privileged.  The draft contracts at issue were revised by and contain comments from TDCC's in-house counsel regarding a proposed business transaction.  Defendants believe in good faith that these comments were made in the course of the provision of legal advice and were not shared with third parties.  Certain of these documents' Privilege Log entries state that they are privileged on work product grounds.  The revised Privilege Log will state that they are privileged on attorney-client privilege grounds.  D. Douglas Declaration ¶ 18 (Ex. 17).  Documents that fall within this category include (among others)  D00456221-26 and D00459684-88.

with the content of the documents led a document reviewer to determine in good faith that the documents are properly privileged, and thus they were properly included on the Privilege Log.

What Plaintiffs really appear to be complaining about is the fact that they have unanswered questions (which they never asked) about specific entries on the Privilege Log. But this complaint is exactly why the Court requires parties to meet and confer on discovery issues. Defendants do not have a crystal ball that informs them of entries on the Privilege Log that Plaintiffs question. Had Plaintiffs truly been interested in resolving this issue instead of generating another discovery dispute, they could have presented Defendants with the list of documents that is the subject of their Motion so that Defendants could have provided Plaintiffs with the information that they now tell the Court that they want. The fact that they did not speaks volumes.

### B.    Defendants' Privilege Log Properly Includes And Describes Communications That Relay Legal Advice.

Plaintiffs also complain (in section 1(b)) that there are a handful of documents identified as privileged communications "relaying legal advice" where the authors of the documents are not attorneys or where the authors are "third parties, such as plaintiffs' principal, Ajay Mittal." Plts. Br. at 2. But Plaintiffs' argument glosses over two key points.

First, Plaintiffs' Brief omits the fact that each of these entries contains the further description that the author is "relaying legal advice" regarding the "current claim involving Megavisa and/or related entities." It should be no surprise that no attorney is listed as the author of these documents, since the word "relay" refers to "[a]n act of passing something along from one person, group, or station to another." The American Heritage Dictionary of the English Language, Fourth Edition Copyright © 2000. All but three of the documents subject to this

complaint were withheld from production because they relay information about Plaintiffs' claim or information compiled at the request of an attorney to employees involved with Plaintiffs' claim.[10]    None of these documents was authored by Plaintiffs' principal, Ajay Mittal, as Plaintiffs' Brief incorrectly suggests.   While Plaintiffs no doubt would like to review these documents, internal distribution of or discussion about advice from counsel does not vitiate the communication's privilege.   *See Bank Brussels Lambert (Suisse)*, 160 F.R.D. at 442 ("Furthermore, the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation."); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976) ("A discussion between executives of legal advice should be privileged.").

Second, Plaintiffs' Brief also omits the fact that the last three documents subject to this complaint were not withheld from production at all.[11]   As clearly described by the Privilege Log, each of these documents was placed on the Privilege Log because privileged communications were redacted from them.   Ex. 25 (indicating that the documents were logged because of "redacted information").   The communications that Plaintiffs cite involving Ajay Mittal were left wholly intact and produced as documents responsive to Plaintiffs' discovery requests. Handwritten and typed notes to Defendants' attorneys regarding Plaintiffs' claims, however, were properly redacted, and those redactions are reflected on the Privilege Log.

No doubt Plaintiffs would like access to Defendants' counsel's internal thoughts and work product regarding the "current claim involving Megavisa and/or related entities."   But

---

[10] Documents D00000246-47, D000000249-50, D00000252; D00000253-54, D00000256-57, D00000260-63 and D00000273 fall into this category.

[11] Documents D00000413-413A, D00000440-440A and D00000485-87 fall into this category.

Plaintiffs should not be allowed to omit key language from the Privilege Log or the facts themselves to make such an argument.

**C.     Defendants Properly Redacted Non-Responsive, Sensitive Information From Documents, But Have Decided To Re-Produce These Documents To Avoid A Discovery Dispute.**

Plaintiffs next ask the Court to order production of documents that Defendants redacted on the basis that the documents contain information that is not responsive to Plaintiffs' discovery requests and is sensitive to Defendants.  Had Plaintiffs continued to engage in the meet-and-confer process in good faith, Defendants would have informed Plaintiffs that they have decided to produce these documents in un-redacted format to avoid precisely this dispute.

When Defendants started their document collection in this case, they redacted a subset of documents prior to their production.  These redactions were made because the redacted information was sensitive to Defendants and not responsive to Plaintiffs' discovery requests.  For example, certain employees' telephone numbers were redacted from documents.  *See* D00379545-554 (Ex. 26).  Likewise, sensitive information regarding the production capacity of plants that manufacture products that are not at issue in this litigation was redacted from documents.  D00417254-76 (Ex. 27).  Defendants redacted this information because (1) it is not properly responsive, (2) Plaintiffs have no legitimate need for this information[12] and (3) certain of the redacted information could be extremely damaging if it were inadvertently disclosed to Defendants' competitors.  While a Protective Order was entered in this case to protect against disclosure of information that is produced during discovery, that Protective Order has proved to be far from foolproof (evidenced by the fact that Plaintiffs have ignored the Protective Order's

---

[12] Plaintiffs, of course, cannot telephone Defendants' employees, because those are represented parties, nor should Plaintiffs have any interest in products that are not at issue in this litigation.

provision that inadvertently produced, privileged documents be promptly returned) and does not require that Defendants disclose non-responsive information to Plaintiffs.

As their collection efforts progressed, however, Defendants determined that approximately 110 gigabytes of electronic data was subject to production. Given the tight production timetable, it quickly became clear that Defendants would not be able to process the electronic data and review all of the documents in advance for the purpose of determining whether to redact non-responsive information from the documents before their production. As such, Defendants made the decision to cease redacting documents prior to their production.

Moreover, after Plaintiffs first complained about the descriptions of the redacted documents on September 9, 2005 (Ex. 15), Defendants went back to re-review those documents; consulted with the relevant people within Defendants' organizations; and have since decided to re-produce all of the documents that were redacted on grounds other than attorney-client or work-product privilege in order to avoid unnecessarily burdening the Court with yet another discovery dispute.[13] Had Plaintiffs continued to participate in the meet-and-confer process, they would have learned as much. Accordingly, the Court need not decide whether to compel the production of these documents.

## V.     The March 2002 Cheung Report and India Orders Emails Were Properly Redacted.

Plaintiffs claim that they were unable to fully question Mr. Lawrence Cheung during his deposition because one of the documents Plaintiffs used during the deposition was redacted.

---

[13] Plaintiffs list the following documents that fall within this category: D00379016-18, D00379019-26, D00379540-544, D00379545-554, D00379555-561, D00379563-566, D00419254-76, D00417277-87, D00417288-300, D00417301-304, D00417305-14, D00417334-37, D00417361-73, D00417374-85, D00417433-42, D00417334-37, D00439122-24, D00439125, D00439197-99, D00439200, D439272-74, D00439275-77, and the documents identified on pages 10 and 18-25 of Plaintiffs' Brief.

Plaintiffs' claim not only lacks merit but also is belied by their own conduct. Likewise, Defendants properly redacted privileged communications from the so-called India Orders Email – a document that discusses the terms of MegaVisa's agreement to sell products in India -- and Plaintiffs have provided no basis for the waiver of the document's privilege.

### A.    Plaintiffs Have Waived Any Claim That They Are Prejudiced By the Redactions to Exhibit 92.

Exhibit 92 was produced in redacted format to Plaintiffs *almost three years ago*, on December 19, 2002. The redactions were explained on Defendants' March 11, 2003 Privilege Log. Ex. 3. After Plaintiffs raised these redactions with Defendants on April 29, 2003 (Letter from P. Winick to C. Reitmeyer dated April 29, 2003 (Ex. 6)), Defendants explained the basis of the assertion of privilege over the redacted material and provided supporting legal authority. Letter from C. Reitmeyer to P. Winick dated May 27, 2003 (Ex. 8). To our knowledge, Plaintiffs did not respond to this letter or seek relief from the Court.

The next time Plaintiffs raised any issue with respect to Exhibit 92 was during Mr. Cheung's deposition – *more than two years later.* During Mr. Cheung's deposition, Plaintiffs introduced Exhibit 92 and asked Mr. Cheung whether he remembered the document. After Mr. Cheung testified that the un-redacted portions of his email memorialized what he had seen and heard during meetings with Plaintiffs but did not have any recollection about the redacted portions of the email, Plaintiffs' counsel demanded that Defendants' counsel review the redacted portions of the document to determine whether those portions reflected privileged information. (Ex. 28). Defendants complied with Plaintiffs' demand, reviewed the un-redacted copy of the document, determined that portions of the redactions should be changed, and reproduced the document and its many related copies in the production. Letter from D. Douglas to A. Downey

dated Sept. 30, 2005 (Ex. 29).  Now, Plaintiffs use this reproduction to ask that "defendants [] be ordered to make Mr. Cheung available for additional examination in Hartford, at their cost, concerning the full text of Exhibit 92." Pls. Br. at 13.

Plaintiffs' demand is manifestly unfair.  Defendants produced the document in redacted format *two and a half years* before Mr. Cheung's deposition.  The redactions to the document were described on a privilege log three months after it was initially produced in December 2002. Plaintiffs, as they are entitled, questioned the redactions to this document in April of 2003, and Defendants promptly provided further information regarding the assertion of privilege over the redacted material and supporting legal authority.  Plaintiffs then did nothing until August 2005 when they introduced the document as an exhibit during Mr. Cheung's deposition.  Plaintiffs cannot seriously suggest that their failure to follow-up on Defendants' explanation of the redactions more than two years earlier provides any basis to claim that Defendants waived any claim of privilege over this document or that Defendants should be forced to make Mr. Cheung available for additional examination.  Once Defendants' 2002 explanation regarding their assertion of privilege over the redacted content of Exhibit 92 went unchallenged, Defendants were entitled to proceed under the assumption that the dispute had been resolved.

What is more, Plaintiffs presumably determined which exhibits they planned to introduce during Mr. Cheung's deposition prior to the day of the deposition.  Plaintiffs' line of questioning on Exhibit 92 plainly shows that Plaintiffs introduced Exhibit 92 in part to contest Defendants' assertion of privilege over the redacted material of the document.  L. Cheung Dep. at 572 (Q: "Prior to March 3, 2002, did you speak with any attorney concerning the relationship with Megavisa?" A:  "I don't recall.") (Ex. 28).  Had Plaintiffs wanted to re-raise the redaction of Exhibit 92, they clearly could have done so in the days prior to Mr. Cheung's deposition so that

the issue could be resolved before Mr. Cheung arrived from Singapore in Hartford for his deposition.

Plaintiffs simply cannot be allowed to sit on a discovery issue for two years, re-raise issues during the middle of a deposition of an individual who has traveled all the way from Singapore to Hartford, and then leverage that issue to demand that Defendants re-produce the witness in Hartford for additional questioning at Defendants' expense.

**B.    Defendants Properly Assert Privilege Over The Redacted Content of Exhibit 92.**

Similarly misguided is Plaintiffs' suggestion that the redactions from Exhibit 92 are improper. While Plaintiffs highlight Mr. Cheung's testimony that he had not consulted with counsel prior to drafting Exhibit 92, that testimony does not fully resolve the question whether the material is privileged. Communications "that reflect matters about which the client intends to seek legal advice are protected" by the privilege. *See U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). The redacted content in Exhibit 92 does just that: it reflects communications from Mr. Cheung where he discusses legal strategy and advice to be sought from counsel.

Moreover, documents prepared by non-lawyers that discuss a corporation's legal strategy in anticipation of litigation are protected from disclosure by the work product doctrine. As set forth in Fed. R. Civ. P. 26(b)(3), a "court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney *or other representative of a party* concerning the litigation" (emphasis added). *See also Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 2001 WL 1180694, at *2 (D. Mass. Sept. 25, 2001) ("Thus the mental impressions, opinions, or litigation theory of a party's non-attorney employee may

22

qualify as opinion work-product when the party's non-attorney employee is acting on the party's behalf."); *Canel v. Lincoln National Bank*, 179 F.R.D. 224, 227 (N.D. Ill. 1998) ("And other courts considering this issue have held that 'opinion' work product protection extends to a party's representative").

Here, Mr. Cheung prepared the document in anticipation of a lawsuit with Plaintiffs. The document was authored on March 3, 2002 – *after* Megavisa ceased to distribute Defendants' chemical products (and only a few months before Plaintiffs filed this action). The un-redacted portions of the document clearly demonstrate that litigation was anticipated before the document was prepared. Ex. 30 ("The team believes that we should consult with the lawyers first & see if MV has the ground to create the legal case."). To the extent the document discusses business-related strategy, that content is left un-redacted. *Id.* ("Dow's target and options . . . to pay nothing or minimum to walk away from MV . . I don't believe that we could or should continue the business relationship with MV. . . ."). The only material that is redacted constitutes Mr. Cheung's impressions and opinions regarding possible litigation and associated strategy. *United States v. Adlman*, 134 F.3d 1194, 1199 (2d Cir. 1998) ("the policies underlying the work-product doctrine suggest strongly that work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision."). Defendants properly redacted that content.

### C. The India Orders Email Is Properly Redacted.

Plaintiffs concede (at 13) that the "India Orders Email" (described *supra* at 21) "might have involved in-house counsel" because the un-redacted text of the document shows that all of the communications but the last one were between a TDCC employee and Edward Neunuebel of "Dow Pacific Legal." Ex. 31. Plaintiffs complain, however, that it "is not clear" that an in-

house attorney is involved or that the communication "was in connection with rendering legal, rather than business advice." Pls. Br. at 13.

Plaintiffs are not "clear" about this information because they never asked for clarity. Indeed, Plaintiffs' Motion is the first time Plaintiffs have ever brought this particular document to Defendants' attention. Had Plaintiffs raised this document during a meet-and-confer session, Defendants would have confirmed that Edward Neunuebel served as the General Counsel of Dow Chemical Pacific Limited, Hong Kong.[14] Moreover, Defendants previously identified Mr. Neunuebel as one of their attorneys. Letter from M. Edwards to R. Taffet dated Feb. 13, 2003 ("the names of defendants' counsel that you will see most frequently on the log are as follows . . . E. Neueubel") (Ex. 2). Defendants' revised Privilege Log will describe the redacted text as requesting and providing legal advice regarding Defendants' business relationship with Megavisa. The text that is redacted from the last piece of correspondence on the document transmits Mr. Neunuebel's legal advice to other corporate employees, and is accordingly privileged. *See National Education Training Group, Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *3 (S.D.N.Y. June 10, 1999) ("Courts have also recognized that intra-corporate distribution of legal advice received from counsel does not necessarily vitiate the privilege, even though the legal advice is relayed indirectly from counsel through corporate personnel.").

## VI.    Conclusion

In their zeal to litigate discovery disputes, Plaintiffs have violated the Court's Stipulated Protective Order and well-established law and practice by refusing to return inadvertently

---

[14] A quick internet search for Mr. Neunuebel promptly identifies him as having served as counsel for Dow Chemical Pacific Limited, Hong Kong. While Plaintiffs certainly are not obliged to research whether individuals appearing on privileged documents are attorneys, they should at the very least ask for this information during the meet-and-confer process or before making serious charges against Defendants.

24

produced, privileged documents. Moreover, the bases that they cite for the compelled disclosure of these privileged documents fail to withstand the facts or law. Indeed, the lengths to which Plaintiffs have gone to generate issues – here, by sitting on a redacted document for more than 2 years and then complaining about those redactions during the middle of a deposition of a witness compelled to fly all the way from Singapore to Hartford – is highly revealing of Plaintiffs' litigation strategy.

WHEREFORE, Defendants request that the Court deny Plaintiffs' Motion to Compel the Production of Improperly Withheld and Redacted Documents, and grant the Cross-Motion to Compel the Return of Defendants' Privileged Documents, including the imposition of other relief that the Court deems appropriate.

Respectfully submitted,

Craig A. Raabe

*Counsel for Defendants The Dow Chemical Company,*
*Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a `copy of this Memorandum in Support of Defendants' Cross=-

Motion to Compel Return of Privileged Documents and in Opposition to Plaintiff's Motion to

Compel Production of Improperly Withheld and Redacted Documents was forwarded this 1st day

of November, 2005, by first-class mail, postage prepaid, to the following counsel:

Alicia L. Downey, Esq.
Bingham McCutchen, LLP
150 Federal Street
Boston, MA 02110-1726

Richard S. Taffet, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Suzanne Wachsstock, Esq.
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

Robert M. Langer, Esq.
Steven Bruce Malech, Esq.
Wiggin & Dana LLP
One CityPlace
185 Asylum Street
Hartford, CT 06103

Christopher J. Kelly, Esq.
Mayer Brown Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

Nathan P. Eimer, Esq.
Andrew G. Klevorn, Esq.
Ryan S. Hedges, Esq.
Eimer Stahl Klevorn & Solberg, LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604

Paul A. Winick, Esq.
Michael S. Elkin, Esq.
Susan B. McInerney, Esq.
Alyson L. Redman, Esq.
Thelen Reid & Priest LLP
875 Third Avenue
New York, NY 10022-6225

_____
Craig A. Raabe