UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>Defendants. | CIVIL ACTION<br>NO. 3:02 CV 1107 (AVC)<br><br>November 14, 2005 |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO COMPEL THE APPEARANCE OF ANIL MITTAL FOR DEPOSITION**

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "plaintiffs") seek an Order vacating the Notice of Deposition dated August 31, 2005 (the "Notice"), by which defendants[1] sought to depose Anil Mittal, a non-executive director of MMGS-S. In response to Plaintiffs' Motion for Protective Order, defendants have cross-moved to compel Mr. Mittal's deposition, in spite of the uncontested evidence that he has no relevant knowledge concerning any material issues presented by this case, and the certainty that the burden imposed by proceeding with his deposition would outweigh any benefit obtained.

---

[1] Defendants The Dow Chemical Company (Dow), Union Carbide Corporation (UCC), Union Carbide Asia Pacific, Inc. (UCAP), Union Carbide Customer Services Pte. Ltd., and Dow Chemical Pacific (Singapore) Pte. Ltd. will be collectively referred to throughout this Brief as "defendants."

## I.     PRELIMINARY STATEMENT

Defendants' initial proffer in support of their request to depose Anil Mittal was based on an asserted desire to learn more about the deliberations of the Mittal family finance committee over Ajay Mittal's request for a loan in early 2002. In further justification, they cited to Anil Mittal's experience while resident in MMGS-S's offices for six months in 1993 and the fact that he was the signatory, in his capacity as representative of the board of directors, of certain of MMGS-S's annual financial statements. *See* Plaintiffs' Brief in Support of Their Motion for Protective Order dated October 12, 2005 ("Pl. Initial Brief") at 2-3.

In support of Plaintiffs' Motion for Protective Order, the Declaration of Anil Mittal established that he had nothing to do with the Mittal family's decision to turn down his brother Ajay Mittal's request for funds. It further established that he had nothing to do with the plaintiffs other than serving in a nominal capacity on MMGS-S's board of directors and being present in the offices of MMGS-S for a six-month stint in 1993, where he worked under the direction of Ajay Mittal.[2] Defendants, seemingly undaunted by these facts, now assert that it is enough that Anil Mittal "might have" knowledge about matters that they presume, incorrectly, to be relevant. But the issues that defendants characterize as relevant are not, as a matter of law and fact, relevant at all. Furthermore, unsupported speculation about what kind of knowledge Anil Mittal "might have" does not justify the significant time and expense that would have to be devoted to taking and defending his deposition, which, out of consideration for his chronic medical

---

[2] Defendants' Memorandum in Support of Their Motion to Combined Motion to Compel and Opposition to Motion for Protective Order, dated November 2, 2005 ("Defs. Opp."), incorrectly asserts that Anil Mittal is a director and worked in the offices of plaintiff Megavisa Solutions (S) Pte Ltd. ("MVS"). *See* Defs. Opp. at 2. As alleged in the Amended Complaint, however, MVS was not even formed until 2000, and according to Anil Mittal's own Declaration, the only plaintiff company to which he ever had any formal relationship was <u>MMGS-S</u>. Declaration of Anil Mittal at ¶¶ 4-5. The MMGS-S financial statements that he signed (which in later years were also co-signed by Paresh Zaveri, whom defendants had the opportunity to depose on July 27, 2005)—and that are in defendants' possession—make his affiliation clear. Such careless disregard for the factual record reveals that defendants are clearly less concerned with obtaining useful discovery than with burdening plaintiffs and the Court with baseless and abusive discovery positions.

condition, must be done overseas. Defendants' cross-motion should be denied, and the Notice should be vacated.

## II.    ARGUMENT

### A. Defendants Should Be Precluded From Taking an Unnecessary Deposition About Irrelevant Matters.

The party seeking an order precluding the taking of its deposition "bears the burden of proving that the proposed deponent has nothing to contribute." *Speadmark Inc. v. Federated Dep't Stores*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997); *see also Hughes v. Lasalle Bank*, No. 02Civ.6384 (MBM) (HBP), 2003 WL 21910919, at *1 (S.D.N.Y. Aug. 8, 2003) (same); *Bell v. Guy*, No. CIV. 399CV02526PCD, 2000 WL 33381017, at *1 (D. Conn. Sept. 13, 2000) (same). Plaintiffs have met their burden in regard to Anil Mittal, and nothing in defendants' opposition—including their knee-jerk labeling of plaintiffs' particularized factual submissions as "vague," "stereotyped" and "conclusory"—proves the contrary.

There was a good reason the parties never identified Anil Mittal as a person "having relevant knowledge"[3]: *He has no <u>relevant</u> knowledge.* Rather than sensibly acknowledging that plaintiffs' submission eliminated any possibility that defendants would obtain from Anil Mittal the information that they initially asserted would justify the burden and expense of his deposition (e.g., the reason why the Mittal family did not agree to Ajay Mittal's request for funds in January 2002), defendants have now been reduced to flights of fancy regarding:

- **The possibility that Anil Mittal "may have knowledge of the reasons for the recent assignment of Plaintiffs' claim" [Defs. Opp. at 3] and "background on 'Advent Manage Limited'" [Defs. Opp. at 10].** Whatever knowledge Anil Mittal may have about these matters, and there is no evidence that he has any, is irrelevant. As set forth in plaintiffs' initial and reply submissions in support of

---

[3] Contrary to defendants' distorted recounting of Ajay Mittal's deposition testimony (see Defs. Opp. at 7, n.4), nothing in that testimony identified Anil Mittal as a potential witness with knowledge of any matters bearing on this case.

their Motion for Substitution as Plaintiff, the assignment that gave rise to the request for substitution in no way altered the substantive rights of any party. *See* November 8, 2005 Reply in Further Support of Plaintiffs' Motion for Substitution. Neither plaintiffs' claims nor defendants' defenses would be affected by anything that Anil Mittal might say about the assignment, and therefore, his testimony on this subject is unnecessary.

- **The chance that, although he attests he was not personally involved, he might nevertheless know "what occurred and who participated in the discussions and decisions relating to Mega Visa Singapore's request for credit" [Defs. Opp. at 9] and "'other commitments' that the [Mittal family] Finance Committee had" [Defs. Opp. at 9].** First, there is no need to take another deposition to discover "what occurred," because that is already a matter of record; as Ajay Mittal testified and as set forth in the Declaration of his cousin Sunil Mittal filed with the Court under seal on or about November 4, 2005, the family did not loan any funds. The Declaration of Sunil Mittal, moreover, definitively answers the question of "who participated," by naming all those involved, as well as the reasons for the decision that was made. In all events, as set forth in Plaintiffs' November 4, 2005 Opposition to Defendants' Motion for Issuance of a Letter of Request, the assertion that the Mittal family's decision not to loan funds is relevant is premised on a fundamentally false characterization of plaintiffs' tort claim, one that bears no resemblance to the actual allegations of the Amended Complaint.[4] Furthermore, the undisputed sequence of events

---

[4] In the interest of brevity, plaintiffs will not repeat the arguments made in their November 4, 2005 submission, but incorporate those arguments by reference herein and respectfully refer the Court to that submission and the record evidence submitted in support thereof. The evidence includes a multitude of internal Dow communications that reflect that the termination of plaintiffs' distributorship was, since early 2001, a foregone conclusion having

makes Anil Mittal's testimony, like that of his other family members, wholly immaterial. As established by the proof submitted with plaintiffs' November 4, 2005 Opposition to Defendants' Motion for Issuance of a Letter of Request, Dow sent written notice of its decision to terminate plaintiffs' distributorship on January 17, 2002; Ajay Mittal testified that he made his loan request in the first week of January 2002. As a practical matter, regardless of the decision made by the Mittal family or their reasons, the business would not have been saved. Anil Mittal, like the other members of the Mittal family, including those who did participate in the decision not to loan funds, truly "has nothing to contribute" here. *See Spreadmark, supra.*

- **The possibility that he might have some "insight into the reasons why Mega Visa Singapore is no longer actively engaged in business" [Defs. Opp. at 10].** The purpose of a deposition of a layperson such as Mr. Mittal is to obtain admissible <u>facts</u> or information leading to the discovery of admissible <u>facts</u>—not "insight" (whatever defendants mean by that term) about irrelevant matters. More specifically, defendants' curiosity concerning "the reasons why [MMGS-S] is no longer actively engaged in business" is itself a mystery, since those reasons are not the subject of any known material dispute but are set forth in the Amended Complaint itself at ¶ 25 ("in 2000, MVS succeeded MMGS-S as respects all of MMGS-S's business activities and MVS and UCC entered a letter agreement, dated June 27, 2000 (the "2000 Agreement") restating the parties' relationship").[5] To the extent that defendants' eagerness to depose Anil Mittal on

---

nothing to do with their credit situation later in the year, and no amount of funds loaned to them would have changed the outcome.

[5] Defendants further propose to inquire why Anil Mittal attested to his information and belief, as opposed to direct knowledge, concerning the status of MMGS-S's business activities after 2000. There is no indication anywhere in their submission, however, as to how oral examination on this point might yield any relevant information, and, in fact, it will not.

this issue is based on nothing more than their misreading of his Declaration and confusing MMGS-S with MVS, that is further reason to deny their Motion to Compel.

- **The possibility that "there may be additional issues about which [he] can testify" [Defs. Opp. at 10].** By this utterly hollow argument, defendants make it clear that their primary purpose is to impose the maximum expense and inconvenience upon plaintiffs, their principal Ajay Mittal, and now, his immediate family, without any regard for whether their activities will further the purposes of legitimate discovery.

Defendants further argue that Anil Mittal's testimony would not necessarily be duplicative of that of Ajay Mittal and other witnesses to be called by defendants. This argument, however, relies on little more than the fact of Mr. Mittal's nominal director status and his membership in the Mittal family. As set forth above, neither of these facts supports, much less compels, the conclusion that he can offer testimony concerning or leading to relevant information.

The straw man argument that plaintiffs are using Rule 30(b)(6) as a "shield" against legitimate discovery can likewise be rejected. In the first place, plaintiffs have never argued that having fulfilled obligations under Rule 30(b)(6), they would be entitled to preclude defendants from seeking additional testimony concerning matters relevant to the case. Rather, plaintiffs have shown, and defendants have no basis to contest, that Ajay Mittal, for example, having directed his brother's activities in the short period of time in which he worked in the MMGS-S offices, necessarily has the same knowledge of the company's operations in that time period. His and Anil's knowledge is duplicative, and there is, in fact, no practical need to spend $50,000 or more to obtain duplicative testimony, especially about matters that defendants have not even identified as being the subject of any material dispute.

Defendants' third argument attacks plaintiffs' proof that the burden imposed by the proposed deposition will outweigh any real or potential benefit gained. This argument entangles

the specific issues raised by Plaintiffs' Motion for Protective Order with defendants' resentment at having to bring foreign witnesses whom <u>they</u> voluntarily designated to testify on their behalf under Rule 30(b)(6) to Hartford, Connecticut.  Obviously, Anil Mittal stands on far different footing than does Lawrence Cheung, a high-ranking UCAP and Dow executive, who was directly involved in events at issue and who wrote numerous relevant emails—some of which are currently the subject of pending motion practice for having been improperly withheld or redacted by defendants.[6]  Mr. Chueng was identified by defendants themselves in their Initial Disclosures (in fact, he is the first person they list) and in numerous interrogatory answers served by one or more defendants as a person with relevant personal knowledge.[7]  The same is true with respect to the five witnesses whose depositions plaintiffs are currently seeking to compel:  Dow CEO Andrew Liveris is identified by defendants in no less than four sets of interrogatory answers, and of the four foreign witnesses employed by defendants or under their control, three, Muthukrishnan Ravi, Ashish Mitra, and Graham Fox, were identified in Defendants' Initial Disclosures and in multiple interrogatory answers, while Marcus Wildi was identified in multiple interrogatory answers.[8]

Defendants must hope that by continuing to press for Anil Mittal's deposition, they might obtain relief from having to produce some or all of the witnesses (i.e., Liveris, Ravi, Mitra, Fox, and Wildi), whose appearance at deposition is the subject of Plaintiffs' October 13, 2005 Motion to Compel Production of Witnesses Pursuant to Rule 30.  Unlike Anil Mittal, however, these witnesses all have personal, firsthand knowledge of relevant matters, and, moreover, they are all likely to be called as witnesses at trial, either by defendants or by plaintiffs.  The Court

---

[6] *See* Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents, filed October 11, 2005, and materials submitted in support thereof.

[7] *See* Plaintiffs' Motion to Compel Production of Witnesses for Deposition Pursuant to Rule 30, filed October 13, 2005, and materials submitted in support thereof, including the Declaration of Alicia L. Downey, <u>Exs. B–I</u>.

[8] *See id.*

should therefore decline defendants' cynical invitation to compare apples to oranges. Anil Mittal has nothing to contribute to this case and his deposition would result in an enormous waste of time and resources. On that basis, plaintiffs' Motion for Protective Order should be granted and defendants' Cross-Motion to Compel should be denied.

## II.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in plaintiffs' initial submission in support of their Motion for Protective Order, the Court should vacate the Notice entirely, or, at the very least, vacate the Notice without prejudice to renewal upon a sufficient factual showing of need by defendants, and thereby avoid needless harassment, expense, and delay.

**MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD.,**

By: /s/ Alicia L. Downey
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY  10022-4689
Tel. (212) 705-7000
Fax. (212) 752-5378

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One CityPlace
185 Asylum Street
Hartford, CT  06103
Tel. (860) 297-3724
Fax. (860) 525-9380

## **CERTIFICATE OF SERVICE**

This is to certify that on this 15th day of November, 2005, a copy of the foregoing was sent by telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC 20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

/s/ Alicia L. Downey
Alicia L. Downey

cc: The Honorable Alfred V. Covello (via hand delivery)
United States District Court
450 Main Street
Hartford, CT 06103