UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE, LTD.,<br><br>                         Plaintiffs,<br><br>              v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>                         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>CIVIL ACTION<br>NO. 3-02 CV 1107 (AVC)<br><br>November 15, 2005 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF ANDREW N. LIVERIS**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd.
and Megavisa Solutions (S) Pte. Ltd.*

## I.     PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "plaintiffs") hereby oppose Defendants'[1] Motion For Protective Order Precluding the Deposition of Andrew N. Liveris (the "Liveris Motion").[2] On September 9, 2005, plaintiffs served defendants with a Notice of Deposition, pursuant to Rule 30 of the Federal Rules of Civil Procedure, calling for the deposition of Mr. Liveris, among others. *See* Ex. A to October 13, 2005 Declaration of Alicia L. Downey ("Downey Decl."), filed October 13, 2005, concurrently with Plaintiffs' Motion to Compel the Production of Witnesses for Deposition. Defendants refused to produce Mr. Liveris, Dow's President and Chief Executive Officer, unless and until ordered by the Court. Downey Decl. at ¶ 13. Accordingly, on October 13, 2005, plaintiffs moved this Court to compel Mr. Liveris's deposition. Defendants responded, on November 1, 2005, with the Liveris Motion, in which they make it clear that they do not seek legitimate shelter from overreaching discovery— they seek to unfairly exempt Mr. Liveris from the rules. Defendants' obstructionary tactics should be promptly rejected.

This case involves injuries plaintiffs sustained both in the United States and in India as a direct result of, among other things, defendants' resale price-fixing conspiracy scheme in the

---

[1] Defendants The Dow Chemical Company ("Dow"), Union Carbide Corporation (UCC), Union Carbide Asia Pacific, Inc. (UCAP), Union Carbide Customer Services Pte. Ltd., and Dow Chemical Pacific (Singapore) Pte. Ltd. will be collectively referred to throughout this Brief as "defendants."

[2] Plaintiffs will be filing a separate Reply brief addressing defendants' continuing refusal to produce for deposition four other witnesses identified in the September 9, 2005 Notice of Deposition.

United States, which was effectuated both domestically and abroad.[3] As detailed in plaintiffs'

brief in support of their Motion to Compel, Andrew Liveris occupied, during the time period

relevant to plaintiffs' claims, various positions within the Dow organization, by virtue of which

he has substantial knowledge of facts pertaining to plaintiffs' claims. *See, e.g.,* Plaintiffs'

Motion to Compel at 5-6. In fact, defendants themselves acknowledge, echoing their discovery

responses, that Mr. Liveris "may 'have knowledge' regarding defendants' sales of Products to

their subsidiaries in Singapore (through which plaintiffs contend certain unlawful activities were

conducted)." *See* Liveris Motion at 4-5. The facts demand that plaintiffs be afforded an

opportunity to take his deposition, as defendants' own interrogatory answers and the deposition

testimony of Ronald Neri and, more recently, Dow executive John P. Yimoyines, all identify Mr.

Liveris as having engaged in and overseen the global marketing and sale of certain of the

Products, in addition to being deeply involved in pre- and post-merger strategic communications

and activities.

In support of their request for a protective order, defendants simply assert, without

elaboration, that any deposition of Mr. Liveris would impose too heavy burden on him and his

company. Their arguments rest on repeated assertions, including those set forth in Mr. Liveris's

Declaration, that he was not directly engaged in doing business with plaintiffs. Whether Mr.

Liveris was directly involved in defendants' business dealings with plaintiffs, however, is not the

question before the Court. Under the June 29, 2004 Order denying Defendants' Motion for

Protective Order and the Court's subsequent discovery rulings, it is clear that matters relevant to

this case not only include, but also go far beyond, defendants' and plaintiffs' direct business

---

[3] As recently observed by the Southern District of New York, plaintiffs' claims in this case arise from their purchase of goods in the United States, subject to defendants' resale price maintenance scheme. *Latino Quimica Amtex S.A. v. Akzo Nobel Chems. B.V.*, No. 03 Civ. 10321 (HB)(DF), 2005 U.S. Dist. LEXIS 19788, at *19, 38-39 (S.D.N.Y. Sept. 19, 2005).

-2-

dealings. By focusing their arguments so narrowly, defendants have fail to refute plaintiffs'

proffer as to the scope and relevance of Mr. Liveris's knowledge, and, hence, there is no basis on

which to vacate the Notice of Deposition.

## II.     ARGUMENT

### A.     Defendants Have Not Substantiated Their Need for an Order Depriving Plaintiffs of Their Right to Depose Mr. Liveris.

The party seeking an order precluding the taking of its deposition "bears the burden of

proving that the proposed deponent has nothing to contribute." *Speadmark Inc. v. Federated*

*Dep't Stores*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997); *see also Hughes v. Lasalle Bank*, No.

02Civ.6384 (MBM) (HBP), 2003 WL 21910919, at *1 (S.D.N.Y. Aug. 8, 2003) (same); *Bell v.*

*Guy*, No. CIV. 399CV02526PCD, 2000 WL 33381017, at *1 (D. Conn. Sept. 13, 2000) (same).

"The movant cannot just make 'broad allegations of harm, unsubstantiated by specific examples

or articulated reasoning' but must demonstrate that there is a particular need for the protection

due to the probability of significant harm." *First Fidelity Bancorporation v. Nat'l Union Fire*

*Ins. Co. of Pittsburgh*, Civ. A. No. 90-1866, 1992 WL 46881, at *3 (E.D. Pa. Mar. 5, 1992)

(cited in Liveris Motion at 10). This is a burden that defendants have not—and cannot—meet.[4]

Defendants attempt to shift their burden onto plaintiffs by asserting, falsely, that they

failed to "offer any evidence that Mr. Liveris is the sole source of information—or even a source

of information." Liveris Motion at 11 (emphasis omitted). Even if, contrary to the case law

cited above, this were plaintiffs' rather than defendants' burden, plaintiffs have offered more

than sufficient basis to overcome that burden. Plaintiffs have shown, based on defendants' own

---

[4] By contrast, plaintiffs have more than met this burden in their Motion for a Protective Order in connection with the deposition of Anil Mittal, where they have submitted uncontestable proof that he has no relevant knowledge. *See* Plaintiffs' Motion for Protective Order filed on or about October 12, 2005. Plaintiffs respectfully refer the Court to their briefing on that motion.

submissions and testimony, that Mr. Liveris personally knows <u>and</u> is likely to lead plaintiffs to discover relevant information. *See* Plaintiffs' Motion to Compel at 2, 5, 8. In particular, Mr. Liveris was directly and intimately involved in matters relating to premerger communications between Dow and UCC; after the merger, Mr. Liveris assumed responsibility for all of the defendants' worldwide sales and distribution of specialty chemical products, including sales to plaintiffs for resale in India, *id.*; as president of Dow's Performance Chemicals Business Group, he had global responsibility for products, including the Products at issue in this case. Moreover, defendants, through their index to the documents produced thus far in the case, have identified Mr. Liveris as being personally involved in more than 300 communications concerning such matters as the sale and distribution of the chemical and polymer products at issue (the "Products") in India and elsewhere, pricing of the Products, and defendants' business dealings with plaintiffs and other distributors of the Products.[5] All these issues are central to plaintiffs' claims in this action, and recognized as such in this Court's prior discovery Orders. *Id.* at 8.[6]

---

[5] Defendant's rhetoric to the contrary notwithstanding, 330 potentially relevant documents is no negligible amount. The fact that, in comparative terms, other witnesses received or authored more is irrelevant. Moreover, defendants' suggestion that because <u>plaintiffs</u> have not to date produced a significant number of documents bearing Mr. Liveris's name somehow erases the significance of the hundreds of such documents produced from defendants' files (see Liveris Motion at 3, 14), is ludicrous. The point of discovery is to obtain information likely to lead a party to the discovery of new relevant evidence, not simply to confirm facts and information already within that party's possession.

[6] *See, e.g.,* Ruling and Order on Defendants' Motion for Protective Order dated June 29, 2004, at 8 (holding that the plaintiffs "must have the opportunity to discover documents regarding the sales of products outside of India in order to prove that the defendants' conduct had an effect on U.S. commerce"), and 11-12 (ordering defendants to produce documents relating to the planned merger of Dow and UCC dating from 1996, in light of plaintiffs' allegations of Dow's involvement in, and direction of, the resale price maintenance conspiracy well before the merger); *see also* August 17, 2004 Order on Motion for Clarification (holding that discovery relating to defendants' sales from all of their locations internationally "is probative and must be produced").

- 4 -

In his recent deposition, John P. Yimoyines, formerly Dow's business vice president for its Wire and Cable Compounds group, testified that after the merger in early 2001, Mr. Liveris was a member of Dow's Corporate Operating Board (referred to as the "COB"). *See* Supplemental Declaration of Alicia L. Downey ("Suppl. Downey Decl.") Exhibit 1 at 85-88 [77-79[7]] (Excerpt of rough transcript of deposition of J. Yimoyines taken on November 9, 2005, "Yimoyines Tr."). According to Mr. Yimoyines, as business vice president for Dow's Wire and Cable group after the merger, one of his responsibilities was to determine the "strategic direction" of the business and to present that strategy for review by the COB. *Id.* at 78-79 [71-72]. The COB was comprised of the business presidents for each of the product lines sold by Dow. *Id.* at 79-80, 85 [72, 77]. At the time, Mr. Liveris was the business president for Dow Performance Chemicals, a business group, which, like the Wire and Cable group, sold a number of chemical products that had been sold by UCC before the merger. *Id.* at 86-87 [78-79]

Mr. Yimoyines was able to testify at great length concerning the structure and personnel of his own Wire and Cable Compounds group both before and after the merger, but he admitted to having far less knowledge about Mr. Liveris's business group. *Id.* at 87-88 [79-80]. Notably, although Mr. Yimoyines was able to name four vice presidents reporting to Mr. Liveris, not one of them was ever identified by defendants in any of their answers to interrogatories as having relevant knowledge.[8] In contrast, Mr. Liveris himself was specifically identified in four sets of

---

[7] The pagination of the rough transcript includes the page numbers appearing in the text, followed, in brackets, by the page numbers appearing at the bottom of each printed page.

[8] The interrogatory answers in which Mr. Liveris's name appears include the following: (1) Third Supplemental Responses and Objections of Defendants . . . to Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories, dated May 10, 2005, at page 12; (2) Supplemental Responses and Objections of Defendants . . . to Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories, dated October 6, 2004, at page 11; (3) Responses and Objections of Defendants . . . to Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories dated August 23, 2004, at page 10-11; and (4)

- 5 -

interrogatory answers served by one or more defendants as having relevant knowledge of Dow's global sales and marketing of certain of the "Products" (i.e., the products purchased from defendants and resold by plaintiffs). Downey Suppl. Decl. ¶ 3.

In all events, it is not plaintiffs' burden to provide substantial evidence showing that Mr. Liveris is a likely source of relevant information. *See Speadmark*, 176 F.R.D. at 118. Indeed, any "suggestion that [the deposing party] ha[s] to make a detailed showing of [the witness]'s knowledge before [they] can depose him is . . . contrary to the Federal Rules of Civil Procedure." *Fears v. Wilhelmina*, No. 02 Civ. 4911(HB), 2003 WL 21737808, at *2 (S.D.N.Y. July 25, 2003) (denying protective order shielding president of defendant from deposition). Defendants bear the burden of showing that Mr. Liveris is not a potential source of discoverable information, and they have not done so, relying instead on misframing the relevant issues and baldly declaring that he is just too busy.

Defendants' key "evidence" in support of their Motion is an affidavit submitted by Mr. Liveris. This carefully worded document is strikingly circumspect, however, and so qualified as to be immaterial. Notably, Mr. Liveris does not state that he has no knowledge about matters relevant to plaintiffs' claims; rather, he testifies that he has "no firsthand knowledge regarding plaintiffs' allegations with respect to their claims." Liveris Aff. at ¶ 3 (emphasis added). Similarly, he states that he had "no involvement in or personal knowledge of" selectively described aspects of plaintiffs' claims. *Id*. at ¶ 4 (emphasis added). These assertions turn entirely on Mr. Liveris's definition of "involvement in" and "personal knowledge," and even "plaintiffs' claims."

---

Supplemental Responses and Objections of Defendant the Dow Chemical Company to Plaintiffs' Second Set of Interrogatories, dated May 24, 2004, at page 7.

As noted above, whether Mr. Liveris ever directly did business with plaintiffs is not dispositive here. Defendants do not deny, for they cannot, that he has knowledge of Dow's global sales and marketing practices and policies in regard to the chemical products that were specifically sold to plaintiffs prior to the UCC/Dow merger, that he was an integral player in the integration of UCC and Dow as a result of the 2001 merger, and that he was a senior decisionmaker for the combined entity, with responsibility for the business unit that led the effort to terminate the relationship with plaintiffs following the merger so that Dow, untainted by Bhopal, could sell direct to customers in India. These and other matters within his direct, personal knowledge have been deemed by the Court to be relevant and there are no grounds on which defendants may directly or indirectly request reconsideration.

More broadly, defendants seek to have Mr. Liveris escape from being deposed by invoking his current position as CEO of defendant Dow, implying that his current position alone somehow is justification itself. The evidence reveals, however, that Mr. Liveris's relevant knowledge arose when he was in a lesser position, and defendants cannot be seriously contending that a party witness with such knowledge can avoid deposition simply by his later promotion up the corporate ladder. Such a rule would allow even greater discovery abuses than have already been practiced by defendants in this case.

The law in this Circuit is that "[h]ighly-placed executives are not immune from discovery[, and] the fact that [an executive] has a busy schedule cannot shield that witness from being deposed." *Six West Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001); *see also Gen'l Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (same); *Consol. Rail*, 1993 WL 364471, at *1; *First Fidelity*, 1992 WL at *4 ("[T]his court does not agree that the depositions [] are precluded simply because [deponents] are

high ranking executives."); *Less*, 53 F.R.D. at 647 ("[T]he fact that [deponent] is a very busy

executive should not bar his examination."); *Armstrong Cork Co. v. Niagra Mohawk Power

Corp.*, 16 F.R.D. 389, 390 (S.D.N.Y. 1954) ("I can see no harm in letting [the] depositions [of

two corporate Vice Presidents] proceed.") (cited in Liveris Motion at 10). Notably, neither

defendants nor Mr. Liveris himself offer any specific reason (such as longstanding travel plans or

other professional obligations that take him out of the country or otherwise render him

inaccessible for the next few months) why he cannot be available for a one-day deposition, other

than his self-proclaimed importance to the organization.

Defendants take liberties with the applicable precedent in an effort to bolster their

argument. This is reflected by their suggestion that the Supreme Court's holding in *Blue Chip

Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975), somehow calls into question a litigant's

right to depose senior corporate officials. Liveris Motion at 9. It does no such thing. In fact, the

lynchpin of the Court's reasoning in *Blue Chip Stamps* is that a plaintiff *is* entitled to depose

corporate officials—senior or otherwise—once his or her right of action has attached. 421 U.S.

at 741. The Court was concerned that an unbridled right to sue under the securities laws would

hand unscrupulous plaintiffs a blunt instrument to extort settlements from otherwise scrupulous

corporations. *Id.* at 729-30, 739-40. Once a plaintiff is allowed to sue, the Court reasoned, the

Rules' "liberal discovery provisions" afford that plaintiff substantial leverage, including "[t]he

prospect of extensive deposition of the defendant's officers and associates." *Id.* at 741. That

being so, the court was disinclined to disturb the balance of power by sanctioning a novel,

implied right of action under the securities laws. The Court's careful reasoning crumbles if, as

defendants contend, plaintiffs do not have a right under the Federal Rules to depose a corporate

- 8 -

defendant's officials. *Blue Chip* thus supports, rather than undermines, plaintiffs' right to depose Mr. Liveris.

Further, cases like the one at bar, where a plaintiff's claims implicate questions of company-wide policy, are "readily distinguishable" from the cases cited by defendants, where the testimony of a senior corporate official would plainly have been irrelevant or unhelpful. *Six West*, 203 F.R.D. at 105-06. In *Six West*, plaintiffs suing under the antitrust laws sought to compel the depositions of certain of defendants' high-ranking officers. The court ordered the depositions, noting that the case before it raised company-wide questions necessitating depositions of senior corporate officials. In so doing, it distinguished cases like those upon which defendants heavily rely, in which no company-wide policy was at issue. *Id.* at 105 (distinguishing *Thomas v. IBM Corp.*, 48 F.3d 478, 483 (10th Cir. 1995) (cited in Liveris Motion at 11)).[9] Here, likewise, plaintiffs allege a UCC/Dow policy to fix resale prices that was manifest in the particular conduct to which defendants subjected plaintiffs before their ultimate termination—not simply a low-level or one-time incident about which senior officials could possess no useful information.

---

[9] The *Thomas* court recognized that a senior IBM official's testimony "could be relevant" to a claim of company-wide discrimination, but nevertheless affirmed an order foreclosing the testimony because plaintiff "did not allege [such a claim] in her complaint." *Thomas*, 48 F.3d at 483 (accord, *Six West*, 203 F.R.D. at 105). Other cases upon which defendants rely that similarly did not implicate questions of corporate policy include: *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002) (individual gender discrimination); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) (products liability); *Cantor v. The Equitable Life Assurance Soc. of the U.S.*, No. Civ. A. 97-5711, 1998 WL 544962 (E.D. Pa. Aug. 27, 1998) (insurance claim termination); *Stone v. Morton Int'l, Inc.*, 170 F.R.D. 498 (D. Utah 1997) (individual age discrimination); *Baine v. Gen'l Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991) (products liability); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) (products liability); *In re Daisy Mfg. Co.*, 17 S.W.3d 654 (Tex. 2000) (products liability); and *Liberty Mut. Ins. Co. v. Superior Court*, 13 Cal. Rptr. 2d 363 (Cal. Ct. App. 1993) (worker's compensation). Here, by contrast, plaintiffs allege a company policy to fix resale prices and pre- and post-merger communications among defendants about which Mr. Liveris will be uniquely positioned to testify.

The *Six West* court also distinguished cases where discovery of senior corporate officials was denied because, by virtue of some procedural quirk, discovery was limited to a "narrow threshold inquiry"—rather than, as in this case, relevant to a wide range of both procedural and merits-based issues. *Id*. (distinguishing *Filetech, S.A. v. France Telecom*, S.A., No. 95 Civ. 1848, 1999 WL 92517 (S.D.N.Y. Feb. 17, 1999)). Defendants ignore these important distinctions, relying on a host of other cases distinguishable on the same grounds.[10] *See* Liveris Motion at 8-15. Mr. Liveris is plainly a proper source for deposition testimony on a number of issues specifically identified by plaintiffs herein and in their moving papers.

### III.    CONCLUSION

For all of the reasons enumerated above and in plaintiffs' Motion to Compel Production of Witnesses, plaintiffs respectfully request that this Court compel Mr. Liveris's deposition in Hartford, Connecticut in accordance with the Notice, and deny defendants' Motion for a Protective Order.

---

[10] *See, e.g., In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2003) (appeal mooted by deponent's consent to deposition; deposition sought of adversary's trial counsel); and *Juliano v. ITT Corp.*, Civ. No. 90-1575 (CSF), 1991 WL 3303 (D.N.J. Jan. 2, 1991) (finding that factual discovery sought would plainly be irrelevant because issue to which discovery allegedly related was one Judge alone could decide).

- 10 -

Respectfully submitted,

**BINGHAM McCUTCHEN LLP,**

Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

- 11 -

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of November, 2005, a copy of the foregoing was

sent by telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC 20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

/s/ Alicia L. Downey
Alicia L. Downey

cc:    The Honorable Alfred V. Covello (via hand delivery)
United States District Court
450 Main Street
Hartford, CT 06103