UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>Defendants. | CIVIL ACTION<br>NO. 3:02 CV 1107 (AVC) |

**SUPPLEMENTAL DECLARATION OF ALICIA L. DOWNEY**

Alicia L. Downey, declares as follows:

1.      I am a partner in the firm of Bingham McCutchen LLP, co-counsel for plaintiffs in the above-captioned action.  I submit this Supplemental Declaration to put before the Court certain documents in support of plaintiffs' Opposition to Defendants' Motion for Protective Order Precluding the Deposition of Andrew N. Liveris and in further support of Plaintiffs' Motion to Compel Production of Witnesses [including Mr. Liveris] Pursuant to Rule 30, filed October 13, 2005.  Unless otherwise stated, I make this Declaration on personal knowledge.

2.      Attached hereto as Exhibit 1 is a true and correct copy of relevant pages from the rough transcript of the deposition of John P. Yimoyines taken on November 9, 2005.

3.      During his deposition, Mr. Yimoyines named four vice presidents reporting to Mr. Liveris.  Based on my review of the record in this case, it does not appear that any of these individuals was ever identified by defendants in any of their answers to interrogatories as having

relevant knowledge of issues relating to any of the claims or defenses in this case. In contrast, Mr. Liveris himself was specifically identified in four sets of interrogatory answers served by one or more defendants as having relevant knowledge of Dow's global sales and marketing of certain of the "Products" (i.e., the products purchased from defendants and resold by plaintiffs): (1) Third Supplemental Responses and Objections of Defendants . . . to Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories, dated May 10, 2005, at page 12; (2) Supplemental Responses and Objections of Defendants . . . to Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories, dated October 6, 2004, at page 11; (3) Responses and Objections of Defendants . . . to Plaintiffs' First Set of Personal Jurisdiction Document Requests and Interrogatories dated August 23, 2004, at page 10-11; and (4) Supplemental Responses and Objections of Defendant the Dow Chemical Company to Plaintiffs' Second Set of Interrogatories, dated May 24, 2004, at page 7.

I declare, under the penalty of perjury, that the foregoing is true and correct.

Signed this 14th day of November 2005.

Alicia L. Downey

110905WA.TXT

ROUGH DRAFT

1

1              UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF CONNECTICUT
2

3

4     ---------------------------------------)
      MM GLOBAL SERVICES, INC., MM GLOBAL   ) No. 3:02 DV
5     1107
      SERVICES PTE. LTD., and MEGAVISA      )      (AVC)
6     SOLUTIONS (S) PTE. LTD.,              )
               Plaintiffs                   )
7     VS                                    )
      THE DOW CHEMICAL COMPANY, UNION       )
8     CARBIDE CORPORATION, UNION CARBIDE    )
      ASIA PACIFIC, INC., UNION CARBIDE     )
9     CUSTOMER SERVICE PTE. LTD., and DOW   )
      CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.)
10             Defendant                    )
      ---------------------------------------)
11

12

13

14            DEPOSITION OF:  JOHN P. YIMOYINES
                  DATE:   NOVEMBER 9, 2005
15            HELD AT:  BINGHAM MCCUTCHEN
                  ONE STATE STREET
16            HARTFORD, CONNECTICUT

17

18

19

20

21

22

23     Reporter: WENDY J. ALLEN, RPR, CRR, LSR #00221
              BRANDON SMITH REPORTING SERVICE
24                 44 Capitol Avenue
                  Hartford, CT 06106
25                 Tel (860) 549-1850


              Brandon Smith Reporting Service

                                   ROUGH DRAFT

                                        2

1     APPEARANCES:

Page 1

                                    110905WA.TXT
 2   REPRESENTING THE PLAINTIFF:

 3   RICHARD S. TAFFET, ESQ.
     BINGHAM McCUTCHEN
 4   399 Park Avenue
     New York, NY  10022-4689
 5
     ALICIA L. DOWNEY, ESQ.
 6   BINGHAM McCUTCHEN
     150 Federal Street
 7   Boston, MA  02110

 8
     REPRESENTING THE DEFENDANTS:
 9
     ANDREW S. MAROVITZ, ESQ.
10   MAYER, BROWN, ROWE & MAW LLP
     71 South Wacker Drive
11   Chicago, IL  60606-4637

12   CRAIG A. RAABE, ESQ.
     ROBINSON & COLE
13   280 Trumbull Street
     Hartford, CT  06103-3597
14
     SARA A. ARONS, ESQ.
15   THE DOW CHEMICAL COMPANY
     2030 Dow Center
16   Midland, MI  48674

17

18

19

20

21

22

23

24

25


                    Brandon Smith Reporting Service

                                                    ROUGH DRAFT

                                                         3
 1                         I  N  D  E  X

 2
     WITNESS:
 3   PAGE:

 4   John Yimoyines
         Direct Examination by Mr. Taffet                5
                              Page 2

110905WA.TXT

10    BY MR. TAFFET:

11      Q    Do the acronyms IP C or SPP have any meaning

12    to you?

13      A    SPP is what I was talking about.   That

14    acronym, yes.

15      Q    And that had been run by a Mr. Lee McMaster?

16      A    Correct.

17      Q    And that went to the gentleman you identified?

18      A    McElvenny.   But again, not a direct, most of

19    it.

20      Q    Now, you also said that in your position as

21    business vice president the wire and cable compounds

22    you were responsible for the strategic direction.

23      A    Yes.

24      Q    What did you mean by strategic direction?

25      A    Set the strategy.


              Brandon Smith Reporting Service
                                          ROUGH DRAFT
                                                  79

1      Q    What does that mean?

2      A    Determine where the business is going.

3      Q    In what way?

4      A    Set a vision statement, you set a course,

5    you're the captain of the ship.

6      Q    Did you reflect these strategic positions in

7    written materials?

8      A    Yes.

9      Q    What type of written materials?

10      A    They would be in more in presentations that

11    would be given at various times.

12      Q    To whom?

              Page 71

110905WA.TXT

13    A    No first my management team, then to the

14    areas, sometime to the board.

15    Q    And how much did you prepare these

16    presentations?

17    A    Presentation was prepared whenever it was

18    needed, the strategy doesn't change all the time, you

19    set your strategy, two different questions I think.

20    Q    Sure.  Again, for the period starting in

21    February 7, 2001, can you recall how often you

22    prepared one of these strategy presentations?

23    A    We had a review which was then called the COB,

24    which was the corporate operating board of Dow in, I

25    believe it was that summer, that first summer, because

Brandon Smith Reporting Service

ROUGH DRAFT

80

1    we spent a lot of time and energy getting ready for

2    that.

3    Q    Do you recall any presentations past that?

4    A    Specifically no, but there are presentations.

5    Like I said, you'd take what you prepared and then you

6    PowerPoint, it's easy these days.

7    Q    And they still exist?

8    A    Yes.

9    Q    You mentioned you would make these to your

10   management team.  Who did you consider on your

11   management team?

12   A    Well, there was another structure, okay?

13   There was a strategy team for the wire and cable

14   business.  Okay?  So on my strategy team I had other

15   people.

Page 72

110905WA.TXT
ROUGH DRAFT

85

1    plaintiff Ungerleider?

2        A    I think we talked about this earlier, but

3    basically they ran the day-to-day business.

4        Q    On a global basis?

5        A    Right.

6                MR. MAROVITZ:  Objection to form.

7    BY MR. TAFFET:

8        Q    Now, you said that you would present the

9    strategies that were developed with the assistance of

10   the strategy team to the management team.  Did that

11   include people above your level to whom you reported

12   to?

13       A    Yes.  When I refer to management team in that

14   case, yes.

15       Q    That would be Mr. Kreinberg and his successor?

16       A    Mr. Kreinberg and his colleagues in this case.

17       Q    Who would be his colleagues?

18       A    The corporate operating board, we called it,

19   which was the various presidents of different Dow

20   businesses in that structure.

21       Q    And the or presidents for the Dow businesses

22   in that structure would be for other products besides

23   wire and cable?

24                MR. MAROVITZ:  Objection to form, and

25   foundation.


Brandon Smith Reporting Service
ROUGH DRAFT

86

1                THE WITNESS:  Yes.

Page 77

110905WA.TXT
2    BY MR. TAFFET:

3        Q    So it would include Mr. McMaster at that time

4    who had responsibility for the SIM business?

5        A    At that time, yes, yes, plus other stuff,

6    though.  They were bigger than that.

7        Q    Okay.  Would it include the president who had

8    responsibility for the SPP product line?

9                MR. MAROVITZ:  Objection to form,

10   foundation.

11               THE WITNESS:  Yes.

12   BY MR. TAFFET:

13       Q    What was Mr. Liveris's role at the time?

14               MR. MAROVITZ:  Objection to foundation.

15               THE WITNESS:  At that time he was

16   president for Dow performance chemicals.

17   BY MR. TAFFET:

18       Q    What was included in the Dow performance

19   chemicals?

20               MR. MAROVITZ:  Same objection.

21   BY MR. TAFFET:

22       Q    Bucket?

23               MR. MAROVITZ:  Same objection.

24               THE WITNESS:  I'm sorry, bucket?

25   BY MR. TAFFET:


            Brandon Smith Reporting Service
                                        ROUGH DRAFT

                                            87

1        Q    Grouping.

2        A    What was that that group?  All of the

3    performance chemicals of the company.

4        Q    Let me ask you a question.

                    Page 78

110905WA.TXT
```
 5    A    Go ahead.

 6    Q    Was there anything included in that grouping

 7   that had formally been under the UCC umbrella

 8   pre-merger?

 9              MR. MAROVITZ:  Same objection.

10              THE WITNESS:  Yes.

11   BY MR. TAFFET:

12    Q    what?

13    A    The businesses that, not in their entirety,

14   but many of the businesses that were McMaster's former

15   portfolio why and Union Carbide.

16    Q    And who did Mr. Liveris report to at that

17   time?

18              MR. MAROVITZ:  Same objection.

19              THE WITNESS:  Mike Parker.

20   BY MR. TAFFET:

21    Q    Cast you sit here today can you tell me the

22   structure of Mr. Liveris's organization in the same

23   man they're you told me about your structure with the

24   strategy team and a managing team, et cetera?

25              MR. MAROVITZ:  Objection, foundation.


              Brandon Smith Reporting Service
                                          ROUGH DRAFT
                                              88

 1              THE WITNESS: No.

 2   BY MR. TAFFET:

 3    Q    who would be the best person to tell me about

 4   that?

 5              MR. MAROVITZ:  Same objection.

 6              MR. RAABE:  Object to the form.

 7              THE WITNESS:  The structure of his
```
Page 79

110905WA.TXT
8    organization?

9                 MR. TAFFET:  Yeah.

10                THE WITNESS:  Any of the people who were

11    in that organization.

12    BY MR. TAFFET:

13    Q    Who are they, do you even know, other than Mr.

14    Livers?

15                MR. RAABE:  Same objection.

16                THE WITNESS:  His vice presidents, I

17    mentioned McElvenny, there was a guy named Gary Doyle

18    in that organization, there was a Julie Fasone-Holder,

19    the vice president for him, I believe Pam Butcher was

20    also vice president in that organization.

21    BY MR. TAFFET:

22    Q    Now, you said you also distributed your

23    strategic documentation and positions to the areas.

24    A    Delivered, I'd say.

25    Q    What were you referring to as the areas?


                Brandon Smith Reporting Service
                                        ROUGH DRAFT

                                            89

1    A    Well, the areas?

2    Q    Yes.

3    A    Asia Pacific, Latin America, Europe, north

4    American America.

5    Q    You said you lived them, what do you mean?

6    A    We had a road show if you will, go out and

7    make a presentation.

8    Q    Did you have an expectation concerning how the

9    areas would implement the strategy?

10    A    Yes.

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of November, 2005, a copy of the foregoing was

sent by telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT  06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL  60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC  20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

/s/ Alicia L. Downey
Alicia L. Downey

cc:    The Honorable Alfred V. Covello (via hand delivery)
       United States District Court
       450 Main Street
       Hartford, CT  06103