UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>　　　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION<br>　NO. 3:02 CV 1107 (AVC)<br><br><br>　November 16, 2005 |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL
PRODUCTION OF IMPROPERLY WITHHELD AND REDACTED DOCUMENTS
AND
OPPOSITION TO DEFENDANTS' CROSS-MOTION TO COMPEL RETURN OF
PRIVILEGED DOCUMENTS**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd.
and Megavisa Solutions (S) Pte. Ltd.*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   ARGUMENT ............................................................................................................... 8

    A.    Defendants Have Not Met The Burden of Proof Required to Justify Their
        Privilege Designations ........................................................................................... 8

    B.    Additional Evidence of Defendants' Abusive Privilege Designations
        Demonstrates That Their Purpose Was to Hide Relevant Discoverable
        Information ........................................................................................................... 12

    C.    The Court Should Consider Imposing Appropriate Sanctions to Punish
        Defendants' Prejudicial Abuse of the Attorney-Client Privilege ......................... 16

    D.    Plaintiffs Have Not Violated the Stipulated Protective Order or Their
        Ethical Obligations ............................................................................................... 17

III.  CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Amway Corp. v. Procter & Gamble Co.*, 2001 WL 1818698 (W.D. Mich. Apr. 3, 2001)........9, 17

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437 (S.D.N.Y. 1995)..10, 13

*Carfagno v. Jackson Life Ins. Co.*, 2001 WL 34059032 (W.D. Mich. Feb. 13, 2001)..................16

*Fisher v. United States*, 425 U.S. 391 (1976) ...............................................................................8

*Haid v. Wal-Mart Stores, Inc.*, 2001 WL 964102 (D. Kan. June 25, 2001) ..............................6, 16

*Hardy v. New York News Inc.*, 114 F.R.D. 633 (S.D.N.Y. 1987)................................................8, 9

*Hartman v. El Paso Natural Gas Co.*, 107 N.M. 679, 763 P.2d 1144 (1988)...............................18

*In re Copper Market Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001) .......................................10

*In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032 (2d
Cir. 1984) ....................................................................................................................8, 9

*In re Sealed Case*, 877 F.2d 976 (D.C. Cir. 1989).......................................................................18

*Koch Materials Co.  v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109 (D.N.J. 2002) ..............................9

*Ray Larsen Assoc., Inc. v. Nikko America, Inc.*, 1993 WL 307905 (S.D.N.Y. 1993) ....................9

*Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879 (S.D.N.Y. 1999) .................................8

*Smith v. Dow Chem. Co.*, 173 F.R.D. 54 (W.D.N.Y. 1997) ......................................................3, 16

*Steadfast Ins. Co. v. The Purdue Frederick Co.*, (Sup. Ct. at Stamford, XO8-02-
0191697S (Sept. 7, 2005)..............................................................................................11

*United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002) ...................13, 15

*United States v. Constr. Prod. Research, Inc.*, 73 F.2d 464 (2d Cir. 1996) ..................................16

*United States v. Int'l Brotherhood of Teamsters, et als.*, 119 F.3d 210 (2d Cir. 1997) ..................9

## STATUTES

28 U.S.C. § 1927................................................................................................................7

## OTHER AUTHORITY

ABA Formal Op. 92-368 (1992)........................................................................................18

Ct. Eth. Op. 96-4 (Mar. 14, 1996)....................................................................................18

Fed. R. Civ. P. 37..............................................................................................................7

## I.    PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. (MMGS), MM Global Services Pte. Ltd. (MMGS-S), and MegaVisa Solutions (S) Pte. Ltd. (MVS) (collectively, "plaintiffs") hereby reply to Defendants'[1] Opposition to Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents ("Defs. Opp."). Plaintiffs seek an Order compelling defendants to produce a Privilege Log sufficiently detailed to support their privilege claims, to withdraw their privilege claims from all documents that do not meet the strict legal standards applicable to privileged communications and work product, and to submit certain key documents for *in camera* review so that the Court might determine whether defendants properly redacted them. Plaintiffs further seek an order compelling defendants to produce Dow executive Lawrence Cheung for further deposition at defendants' expense, because plaintiffs were unable, because of defendants' misconduct, to question him about the full contents of a critical report he wrote.

In response, defendants cross-moved to compel plaintiffs to return certain documents that defendants maintain are attorney-client privileged communications that were allegedly produced "inadvertently." Notably, defendants refuse to allow the Court to review, *in camera*, unredacted copies of these documents, including those identified in plaintiffs' submission as the March 2002 Cheung Report and the India Orders Emails.

### *Defendants' Submission Misses the Mark While Conceding Their Misconduct*

Defendants offer no affidavits by the authors or recipients of documents in dispute attesting to any element of the applicable legal standard for privileged communications or work

---

[1] The Dow Chemical Company (Dow), Union Carbide Corporation (UCC), and Union Carbide Asia Pacific, Inc. (UCAP) are referred to herein as "defendants."

product. Instead, they offer a litany of misstatements, specious suppositions, and excuses, none of which mask the following concessions:

(a) Defendants concede their obligation to produce a new Privilege Log but they have yet to do so, even though plaintiffs pointed out obvious and pervasive defects in the July 27, 2005 Privilege Log nearly three months ago (see Defs. Opp. at 15);

(b) Defendants concede that "privilege designations [were] not properly applied during the processing of the electronic documents" (see Defs. Opp. at 8);

(c) Defendants concede that "reviewer and vendor mistakes were made" (see Defs. Opp. at 8);

(d) Defendants concede that their Privilege Log includes entries for documents that were voluntarily produced, but were nevertheless "mistakenly" identified as privileged (Defs. Opp. at 14, n.7);

(e) Defendants concede that they took it upon themselves, unbeknownst to plaintiffs, to redact nonprivileged "sensitive" information, while asserting on their Privilege Log that such information was privileged (see Defs. Opp. at 18; see also Supplemental Declaration of Alicia L. Downey, "Suppl. Downey Decl.," Ex. F at 2 ("Defendants expect to begin producing documents that had been redacted on grounds other than privilege next week.")); and

(f) Defendants concede that they over-redacted the March 2002 Cheung Report (Plaintiffs' Deposition Ex. 92, Initial Downey Decl. Ex. A), and that they produced a new version after Mr. Chueng's deposition, in which he disavowed the existence of any legal strategy discussion therein (Defs. Opp. at 20).

Little would be served by rebutting each and every misstatement in Defendants' Opposition, including complaints that plaintiffs did not engage in the meet and confer process for

as long as defendants would have liked, that plaintiffs' counsel issued a "threat to affirmatively review" defendants' newly designated "privileged" documents (Defs. Opp. at 6), that plaintiffs delayed loading defendants' July electronic production into their database for review (Defs. Opp. at 10), and that plaintiffs never identified specific documents at issue before filing their motion. All are untrue. The proper focus here is not the veracity of defendants' fanciful assertions about plaintiffs, but whether defendants have met their burden of proof with respect to the application of the attorney-client and work product privilege.

Specifically, the question is whether defendants have offered sufficient evidentiary facts establishing: "a summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose for preparing the document, the privilege or privileges asserted with respect to the document and how each element of the privilege is met as to that document." *See Smith v. Dow Chem. Co.*, 173 F.R.D. 54, 57-58 (W.D.N.Y. 1997) (granting plaintiff's motion to compel where information provided by Dow and other defendants was insufficient to enable the court to determine whether "researcher's privilege" applied).

### *The Court Now Has an Opportunity to Assess Defendants' Designations*

As of the date of this Reply, it is unnecessary for the Court to order defendants to produce two key documents at issue for *in camera* review, because their complete contents are submitted herewith. Suppl. Downey Decl. Ex. A1, B1. One of these documents reveals the full contents of the India Orders Emails, and was recently found in plaintiffs' document production. *See id.* Ex. E (Letter from A. Downey dated November 1, 2005). The other document is an unredacted version of the March 2002 Cheung Report. Plaintiffs happened across this document

3

even more recently. It was produced by defendants and indicates, given the presence of other redactions, that it was subjected to privilege review and voluntarily cleared for production. Suppl. Downey Decl. Ex. B1.

Neither of these documents have been identified by defendants as inadvertently produced privileged documents. Anticipating their hue and cry regarding the propriety of submitting such documents to the Court, however, plaintiffs state that they have refrained and continue to refrain from searching for or reviewing those documents identified by defendants as purportedly produced inadvertently. Plaintiffs never undertook, however, nor is it fair or realistic to expect them to undertake, policing defendants' entire document production for possibly privileged communications and averting their eyes from documents not specifically identified to them. The Court is invited to decide for itself whether some or all of the material that defendants redacted from these documents was in fact immune from discovery for being "privileged" or whether, as seems to be the case, the communications in question simply concerned business strategies and discussions.

### Defendants' Arguments Defy Logic and the Factual Record

Apart from the mounting evidence of defendants' perfidy with respect to improperly invoking privileges, their Opposition arguments are illogical and legally unsupported:

- On the one hand, they complain that plaintiffs' challenge to the designation of the March 2002 Cheung Report as privileged comes too late, and on the other, that Plaintiffs' Motion is procedurally defective for being premature. First, the Court should be disturbed by the notion that plaintiffs somehow waived any right to challenge the designation of the March 2002 Cheung Report by virtue of accepting former defense counsel's 2003 representations that it was privileged. Plaintiffs are not aware of, and defendants do not cite, any legal authority

4

supporting such a bizarre and inequitable doctrine. In all events, the recent challenge is based on the author's sworn testimony establishing that its contents were not privileged and revealing that counsel's representations were false. Second, it is obvious that absent motion practice, defendants would have delayed even longer than they already have in retracting their improper privilege designations. While depositions of defendants' witnesses have proceeded apace, plaintiffs still have no satisfactory privilege log, and thus, none of their requests for relief are premature.

- In an exercise of equally circular logic, defendants accuse plaintiffs of violating the Stipulated Protective Order, under which the parties agreed that "inadvertently" produced documents "subject to privilege or immunity from discovery" would be returned by the receiving party upon notice by the producing party. They concede, however, that on August 1, 2005, plaintiffs' counsel did just that, advising defendants of the discovery of a document marked "privileged and confidential" and bearing the indicia of confidential legal advice, and deleting it from the database at defendants' request.

- Ignoring the plain requirement of the Stipulated Protective Order that only "inadvertently" produced privileged documents need be returned, defendants fail to explain how they "inadvertently" produced multiple copies of the same document (e.g., the India Orders Emails, among others) and documents bearing evidence that they were specifically subjected to a privilege review. *See, e.g.,* Suppl. Downey Decl. Ex. B1. The Stipulated Protective Order contains a mechanism for protecting bona fide inadvertent disclosures of bona fide privileged documents. The Order in no way contemplates that parties may, by fiat, render discoverable material immune from discovery or that, after conducting a privilege review, they may change their minds and demand

protection for material they knowingly and voluntarily produced earlier. Rather than squarely address these uncomfortable facts, defendants premise their arguments on the false assumption that <u>they,</u> not the Court, are entitled to act as the sole judge of what is and is not privileged, and of what was or was not inadvertently produced. *See Haid v. Wal-Mart Stores, Inc.*, 2001 WL 964102, *2 (D. Kan. June 25, 2001) ("whether materials are privileged is for the court, not the defendant to decide, and the court has a right to insist on being presented with sufficient information to make that decision").

- Upon finding the unredacted version of the India Orders Emails in their own production, plaintiffs promptly inquired whether defendants would maintain their position that their document was properly redacted. *See* Suppl. Downey Decl. <u>Ex. E</u> (Letter from A. Downey, dated November 1, 2005). Defendants have declined to respond outside motion practice. *Id.*, <u>Ex. F</u> (Letter from D. Douglas dated November 10, 2005). Apart from undeniable facts compelling a finding of waiver, the redacted material in this document clearly shows a desire to hide highly relevant internal business discussions, not confidential legal advice.

- Defendants fail to explain how documents such as the March 2002 Cheung Report, which indicates on its face that no attorney was either the author or recipient, and where the author admitted in his deposition that no legal strategy is contained therein, can be immune from discovery. Their unwillingness to allow the Court to review this document *in camera* speaks volumes. In fact, as now evidenced by the unredacted version submitted herewith (Suppl. Downey Decl. <u>Ex. B1</u>), <u>nothing</u> in that document was properly redacted, and the reason for the

redactions had nothing to do with the attorney-client privilege and everything to do with bad faith discovery tactics, for which sanctions are appropriate.[2]

•      Defendants try mightily to persuade the Court that their conduct has been beyond reproach in all respects, while informing the Court that they will be withdrawing numerous unfounded "privilege" claims, generating a new Privilege Log, and producing additional documents.[3] This is no different from their conduct with respect to improperly designated "Counsel Only" documents. The pattern is clear: When defendants are called on to defend grossly abusive restrictions on access to their documents, they retreat, conceding their initial misconduct but nevertheless achieving their aim of imposing delay, inconvenience, and increased costs on plaintiffs.

In light of the above, the Court should grant Plaintiffs' Motion to Compel and deny Defendants' Cross-Motion. In addition, the Court should exercise its authority, under either or both of Rule 37(b)(2) and 28 U.S.C. § 1927, to sanction defendants and each of their counsel for systematically abusing the attorney-client and work product privileges. As demonstrated herein, improper designations were used to withhold documents that defendants were ordered to produce pursuant to the Court's June 29, 2004, August 17, 2004, and February 7, 2005 Orders. Sanctions

---

[2] Nor should the fact that plaintiffs possessed the unredacted version weaken their argument that defendants should be required to bring Mr. Cheung back for additional examination. As set forth in plaintiffs' Cross-Motion to Compel Further Responses to Discovery, to Remove "Counsel Only" Designations and for Sanctions, filed August 5, 2005, the manner of defendants' document production significantly hampers counsel's ability to locate relevant documents in timely fashion. The recent discovery of the full March 2002 Cheung Report in the electronic document files is but another concrete example of the prejudice caused by defendants' tardy and disorganized "document dump."

[3] In accordance with their usual practice, defendants have not committed to any definite deadline for the production of these documents.

are proper because the result of this intentional conduct has been an unconscionable subversion

of the discovery process and increased expense, delay, and prejudice to plaintiffs.

## II.    ARGUMENT

### A.    Defendants Have Not Met The Burden of Proof Required to Justify Their Privilege Designations.

In this case, defendants have the burden of establishing the attorney-client privilege by

"proving the facts upon which [their] claim is based." *See Shamis v. Ambassador Factors Corp.*,

34 F. Supp. 2d 879, 892 (S.D.N.Y. 1999); *Hardy v. New York News Inc.,* 114 F.R.D. 633, 643

(S.D.N.Y. 1987), citing *Fisher v. United States,* 425 U.S. 391 (1976).  The privilege attaches:

    (1)    where <u>legal</u> advice of any kind is sought
    (2)    from a professional legal advisor <u>in his capacity as such,</u>
    (3)    the communications relating to <u>that purpose,</u>
    (4)    made in confidence
    (5)    by the client,
    (6)    are at his instance permanently protected
    (7)    from disclosure by himself or by the legal advisor,
    (8)    <u>except the protection be waived</u> * * *.

*Hardy*, 114 F.R.D. at 643 (citations omitted, emphases added).  In response to plaintiffs' well-

founded challenge to their privilege claims, defendants were required, on a document-by-

document basis, to satisfy each and every one of the above elements, including the element of

non-waiver.

With respect to the substance of the communications at issue, "[t]he attorney-client

privilege is triggered only by a client's request for <u>legal,</u> as contrasted with <u>business</u> advice, and

is 'limited to communications made to attorneys <u>solely</u> for the purpose of the corporation seeking

legal advice and its counsel rendering it.'"  *Id.*, quoting *In re Grand Jury Subpoena Duces*

*Tecum,* 731 F.2d 1032, 1037 (2d Cir. 1984) (emphasis added).  "When the ultimate corporate

decision is based on both a business policy and a legal evaluation, <u>the business aspects of the</u>

decision <u>are</u> <u>not</u> <u>protected</u> <u>simply</u> <u>because</u> <u>legal</u> <u>considerations</u> <u>are</u> <u>also</u> <u>involved</u>." *Id.* at 643-44. *See also Amway Corp. v. Procter & Gamble Co.*, 2001 WL 1818698 (W.D. Mich. Apr. 3, 2001) (ordering production of documents where party had failed to meet "heavy burden" of providing a "clear showing" that in-house counsel was acting in a legal capacity and that document reflects legal, as opposed to business, advice).

Defendants' submission disregards the exacting, multi-element standard of proof it is their burden to carry and the bedrock rule that the attorney-client privilege is to be <u>narrowly</u>, not broadly, applied. *See United States v. Int'l Brotherhood of Teamsters, et als.*, 119 F.3d 210, 214 (2d Cir. 1997). Instead, they consume the Court's attention with a diatribe against the process by which plaintiffs brought their Motion and they ask the Court to accept, without the benefit of affidavits by document authors or recipients—and in the face of mounting evidence and admissions to the contrary—counsel's representations as to the application of privileges.

Defendants also have to prove that their production of the documents at issue was merely "inadvertent," not intentional or unreasonably careless. *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d. Cir. 1984); *Ray Larsen Assoc., Inc. v. Nikko America, Inc.*, 1993 WL 307905, *2 (S.D.N.Y. 1993) ("party claiming the attorney-client privilege . . . has the burden of establishing the existence of the privilege in all respects, and . . . the party will not meet this burden if it cannot show that it took reasonable steps to insure and maintain the confidentiality of privileged documents"). The excuses and explanations defendants now offer fail to rebut the evidence of waiver.

First, as a matter of law, it is not reasonable to produce documents, as defendants admit they did, without first knowing whether the authors or recipients are attorneys. *See Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 119 (D.N.J. 2002) (finding waiver

9

where producing party did not investigate author of document before production). Second, defendants cannot excuse their production by blaming their third party vendor for not properly applying privilege designations during electronic processing.[4] Defendants further provide no specific explanations of how or why "mistakes were made." Who reviewed the documents before they were shipped to plaintiffs? Were they attorneys? What protocols were in place, if any, to ensure diligence? Conclusory assertions by a single attorney that defendants, their counsel, their consultants, and their vendors, were all "diligent" are an insufficient basis for finding the requisite inadvertence, where the record otherwise demonstrates reckless production practices.

Defendants assert that they reviewed 7,300 documents within one month and then "promptly" notified plaintiffs of 113 allegedly privileged documents (many of them duplicates) that had been produced. Def. Opp. at 9. Approximately one month later, they retracted their privilege claim from 25 of those documents. Initial Downey Decl. Ex. V. The case law strongly suggests that reviewing the equivalent of approximately three boxes of documents in thirty days is neither prompt nor diligent when a party is on notice that privileged communications have been produced. *Compare In re Copper Market Antitrust Litig.,* 200 F.R.D. 213, 222 (S.D.N.Y. 2001) (notifying opposing counsel of inadvertent production within four days held reasonable); *Bank Brussels,* 160 F.R.D. at 445 (notifying opposing counsel "[a]s soon as plaintiffs' counsel

---

[4] Defendants misrepresent the holding in *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437 (S.D.N.Y. 1995), by suggesting that clear instructions to paralegals (or in this case, a third party vendor) and attorney "involvement" is sufficient. Def. Opp. at 9-10. In fact, in that case, attorneys had completed all of the substantive privilege review and compiled a list of documents that were to be removed before production. 160 F.R.D. at 444. The paralegals' roles were limited to culling those previously-identified documents from the production copies and replacing them with slip sheets identifying their intentional removal. *Id.* The court agreed that paralegals could be entrusted with such clerical tasks, but identification of privileged documents was within the exclusive domain of the attorneys. *Id.* at 445.

were alerted to the production" of privileged documents).  Defendants also cannot deny that they produced multiple copies of many documents and that this is a factor weighing heavily in favor of a finding of waiver.  *See* Plaintiffs' Initial Brief at 15.

Understandably anxious to avoid scrutiny of their lack of reasonable care, on November 15, 2005, defendants filed a letter with the Court purporting to submit additional legal authority in support of their position, *Steadfast Ins. Co. v. The Purdue Frederick Co.*, (Sup. Ct. at Stamford, XO8-02-0191697S (Sept. 7, 2005) ("Slip Op.").  Defendants assert that this case stands for the "principle" that "the Court should not engage in an analysis of a claimed waiver," when a stipulated protective order indicates that inadvertent disclosure shall not constitute a waiver of any associated privilege and that inadvertently disclosed documents are to be returned to the producing party.  *See* November 15, 2005 letter from C. Raabe to the Court.  Mr. Raabe's letter is misleading, however, because there is no such "principle."  The court in the *Steadfast* case ruled that it would not be "an appropriate case to analyze under the *Harp v. King* standard which requires a 'a detailed court inquiry'" of the circumstances of an alleged waiver.  Slip. Op. at 4.  And that was because (in contrast to this case), the parties there had expressly agreed that if one of them moved to compel production of a privileged document asserted to have been inadvertently produced, "the fact or circumstances of the inadvertent production could not be used as a ground for such an order."  *Id.*, quoting the parties' Amended Stipulation and Protective Order; *see also id.* at 1-2, n.1.  No such provision exists in the Stipulated Protective Order in this case.  Accordingly, the *Steadfast* case does not stand for the proposition offered by Mr. Raabe.  If anything, it is fully consistent with plaintiffs' position.

In another transparent attempt to shift the focus away from their own unacceptable conduct, defendants recall occasions where plaintiffs inadvertently produced privileged

11

documents that defendants returned upon request. Their examples include the unauthorized service by plaintiffs' former law firm of privileged documents in support of that firm's motion against plaintiffs for the imposition of security and for a charging lien. At that time, of course, as defendants were well aware, Thelen Reid's interests were hostile to plaintiffs and their actions could not be deemed as having waived any privilege. Furthermore, it cannot be said that plaintiffs ever undertook anything like what now appears to be defendants' purposeful and systematic effort to hide material evidence by means of false privilege claims.

In short, it is clear from their submission that defendants fail, or rather, refuse, to meet their burden of proof as to the privileged status of each of the documents that is the subject of their Cross-Motion, and, on that basis alone, their Cross-Motion should be denied and they should be ordered to produce all of the documents in their entirety. It is also clear, as defendants concede, that their Privilege Log was and still is inadequate and fell short of their obligations under the Rules. The Court should grant Plaintiffs' Motion to Compel, and in addition, if appropriate, order that defendants' defective privilege log waived their right to claim any privileges over all the documents listed therein.

**B.     Additional Evidence of Defendants' Abusive Privilege Designations Demonstrates That Their Purpose Was to Hide Relevant Discoverable Information.**

There is already more than sufficient basis in plaintiffs' initial submission and defendants' response for the Court to conclude that defendants embarked on a scheme to redact relevant nonprivileged business communications under the false guise that they are "privileged." Since plaintiffs filed their initial papers, however, yet more evidence has come to light:

**1.     Compare UNREDACTED Plaintiffs' Deposition Exhibit 150 [Suppl. Downey Decl. Ex. A1] with REDACTED India Orders Emails [*Id.* Ex. A2].** On November 1, 2005, plaintiffs notified defendants that the full contents of the India Orders Emails had already been

disclosed to Ajay Mittal in 2001, as reflected in a document produced by plaintiffs and appended

as an exhibit to one of their 2002 court filings, to which defendants raised no objection. Suppl.

Downey Decl. Ex. E. Any privilege attached to the communications therein was therefore

waived long ago. *See Bank Brussels,* 160 F.R.D. at 448 ("disclosure to any third-party will

constitute waiver").[5] Independent of this waiver, however, the emails that defendants redacted

were essentially business communications, not confidential legal analysis or advice. For

example:

> *From July 3, 2001 email from A. Samtani to A. Serizawa:*
>
> Background
> In the old UCC, all sales to India were made on a FAS basis with the title
> transfer taking place out of India. . . . *[page M5312]*
>
> Proposed Plan
> The plan, by Q4, 2001 is to have Dow India take the order from the customer
> (could be end user or Megavisa India [i.e., plaintiffs' Indian agent, non-party
> MVMS]) and enter in to Dow Europe . . . *[page M5309]*
>
> *From July 15, 2001 email from A. Serizawa to M. Wildi and others:*
>
> Currently in India, UCC products are being sold through Megavisa under
> distributor agreement.   . . . Some question was asked if Dow India can now sell
> to Megavisa India directly or not, which is the standard practice for Dow.
> However, upon consultation with legal, it was recommended not to change the
> current practice/order process in India for UCC products. *[page M5308]*

The two emails from Dow in-house counsel Edward Neunuebel likewise contain no

confidential legal analysis or advice, but instead merely communicate facts concerning the

parties' relationship:

> Ako, UCC products are to be sold to Megavisa per a distribution agreement.
> Megavisa resells into India. *[page M5313]*

and the company's position on the question of selling directly to India:

---

[5] This principle was likewise recognized and applied in one of the cases relied on by
defendants, *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1075, n. 6 (N.D. Cal.
2002) ("If an e-mail with otherwise privileged attachments is sent to a third party, Chevron loses
the privilege with respect to that email *and all of the attached emails*.") (emphasis in original).

Country management and I are against this idea at the present time due to the threat of litigation and the protest incident of a couple of months ago. *[page M5313]*

These communications are primarily concerned with the formation of business strategies, and as such, they are not immune from discovery, even absent an uncontestable waiver.

### 2.    Compare UNREDACTED DECO0013165-67 [Suppl. Downey Decl. **Ex. B1**] with REDACTED DEBJ0040982 [March 2002 Cheung Report, *Id.* **Ex. B2**].

Despite the evidence to the contrary, including Mr. Cheung's own deposition testimony, defendants still insist that they properly redacted the March 2002 Cheung Report to prevent disclosure of "privileged" communications. *See* Def. Opp. at 22. Among other things, defendants maintain they properly redacted the following:

> 6) Dow's positions
> BEST - Assuming both area & business legal opinions are positive that MV [Megavisa, i.e., plaintiffs] has no ground to claim as the cases have been considered closed as MV continues to represent us to sell W&C products and no action/discussion/meeting being requested since we settled with the two biggest customers one and half year ago. We will just terminate the Dow/MV relationship.
> WORST - Assuming legal opinions are not positive or uncertain on Dow's position on the UCC issues in India. MV teams up with the group of small customers & brought us to court. We may end up paying a lot more. . . .
>
>    . . .
>
> OPTIONS: . . .
> *Stay firm with MV & see if Mittal is willing to take the risk to bring Dow to court.
> *Take immediate legal action to sue MV in Singapore for the over dues & destroy MV's reputation in the market/industry
> *Negotiate with MV for a commercial settlement.

The fact that Dow personnel were consulting and would continue to consult with counsel in connection with their planned termination of plaintiffs' distributorship is not privileged information; indeed, it is repeatedly disclosed in a plethora of communications circulated internally within Dow before and after Lawrence Cheung's email. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion for Issuance of Letter of Request filed November 4, 2005, and

supporting materials, which include numerous Dow internal emails dating from February 2001 through early 2002, referring to getting "legal clearance" before selling directly in India and terminating plaintiffs' distributorship. Defendants intentionally redacted comments that would portray them in a bad light and make it easier for plaintiffs to prove their claims, including but by no means limited to a proposal to "destroy MV's reputation in the market/industry."

Defendants cite a single case, *United States v. ChevronTexaco Corp.,* 241 F. Supp. 2d 1065 (N.D. Cal. 2002), for the notion that communications between nonlawyers discussing matters about which they <u>intend</u> to seek counsel are privileged. The court in *ChevronTexaco* wrote that the privilege "might protect . . . a communication in which an employee discusses her intent to seek legal advice about a particular issue." *Id.* at 1077. The court further recognized, however, that where "communications were not made primarily, if at all, for the purpose of seeking legal advice," they are not protected. *Id.* at 1078. To the extent that defendants read *ChevronTexaco* as permitting them to invoke broad protection over the type of business strategy proposals that appear in the March 2002 Cheung Report, and as to which Mr. Cheung himself denies were prepared in connection with developing legal strategies, they go far beyond the rules governing the attorney-client privilege in this Circuit.

3.    **Compare UNREDACTED DS 250528-29 [Suppl. Downey Decl. <u>Ex. C2</u>] to REDACTED D00300a-01 [*Id.* <u>Ex. C3</u>]** *(see <u>Ex. C1</u> for side-by-side comparison).* Defendants redacted a lengthy February 11, 2002 email message from Markus Wildi to Lawrence Cheung; no attorneys were copied on this email. *See* Downey Decl. <u>Ex. C3</u>. On its face, the redacted message is clearly not transmitting legal advice, nor is it work product of counsel. It is an internal communication between businesspeople who, faced with news of a claim by their soon-to-be-former distributor, are discussing how best to respond.

15

4.     **Compare UNREDACTED DECE0006463 [Suppl. Downey Decl. Ex. D2] with**

**REDACTED D00313a [Id. Ex. D3]** *(see Ex. D1 for side-by-side comparison).* Defendants

redacted a sentence from John Yimoyines's February 11, 2002 email to Marcus Wildi

concerning claims brought by former end users whose shipments were unilaterally cancelled by

UCC in 1999-2000:

> Lawrence is correct—the business felt that there was no basis for the
> complaints and wanted to fight the second one out in Indian court—we were
> over-ruled by the UCC legal department who escalated it to the UCC CEO.

This is yet another clear example of business communications, not confidential legal advice,

being redacted on the basis of false privilege claims.

**C.     The Court Should Consider Imposing Appropriate Sanctions to Punish Defendants'
        Prejudicial Abuse of the Attorney-Client Privilege.**

The evidence set forth above establishes a compelling need for the Court to order

defendants to justify, with particularity, each and every privilege claim they have made, and to

withdraw their claims as to the specific documents before the Court, including the March 2002

Cheung Report, India Orders Emails, and any other documents that defendants have not

satisfactorily proven to contain confidential attorney-client communications or work product.  If

defendants cannot or will not do so, then the Court should vacate all of defendants' privilege and

work product designations and compel the production of all documents withheld or redacted on

such grounds.  *See Carfagno v. Jackson Life Ins. Co.*, 2001 WL 34059032 (W.D. Mich. Feb. 13,

2001) ("Defendant's failure to provide the court with information of sufficient specificity to

permit the court to determine whether the privilege asserted applies to the withheld documents

provides an independent ground for finding a waiver of any privilege or immunity."), citing

*United States v. Constr. Prod. Research, Inc.*, 73 F.2d 464, 473-74 (2d Cir. 1996) and *Smith*, 173

F.R.D. at 57-58; *Haid*, 2001 WL 964102, *2 (upholding magistrate's denial of defendants'

request for twenty more days to produce revised privilege log, noting that "failure to produce a privilege log or production of an inadequate privilege log may be deemed a waiver of the privilege.").

Such an order would be the minimum appropriate sanction for defendants' egregious violations of fundamental rules of fair play in discovery. In view of the accumulating prejudice to plaintiffs caused by their inability to use the documents in question at depositions, other sanctions, in addition to reopening Mr. Cheung's deposition at defendants' expense, may be appropriate, including but not limited to directing defendants to reimburse plaintiffs for the expense incurred in bringing their motion and opposing defendants' cross-motion (*see* Fed. R. Civ. P. 37(b)(2)), or an order precluding defendants from contesting certain facts. *See, e.g., Amway Corp.*, 2001 WL 1818698, **9-10 (where defendant had previously advanced meritless claims of privilege or immunity, continuing abuse of privilege merited order establishing certain facts as true).

### D.    Plaintiffs Have Not Violated the Stipulated Protective Order or Their Ethical Obligations.

Defendants attempt to use the Stipulated Protective Order as a shield against plaintiffs' right to retain possession of relevant nonprivileged documents. As noted above, there is nothing in the Stipulated Protective Order that bars plaintiffs from challenging what appear to be (and what in many cases are now conceded to be) improper privilege designations. Furthermore, the Stipulated Protective Order, no less than the case law defining the scope of the privilege and the factors relevant to a finding of a waiver, creates no presumption or entitlement to the return of documents, where there is reason to believe that privilege claim is unwarranted or has been waived by non-"inadvertent" production.

In conjunction with their misinterpretation of the Stipulated Protective Order, defendants assert inapplicable ethical opinions as a basis for arguing that plaintiffs are required to "abide the instructions" of defendants and return documents on demand. Defendants neglect to mention, however, that these opinions recognize that where, as here, something more than "inadvertence" is shown, waiver of the privilege results, even under the so-called "lenient" rule. ABA Formal Op. 92-368, at 3 (1992).[6] A case distinguished in that ABA Opinion involved the "failure of counsel to spend any time reviewing the documents to be produced in discovery," a fact pattern echoed here. *Id.*, citing *Hartman v. El Paso Natural Gas Co.*, 107 N.M. 679, 763 P.2d 1144, 1152 (1988). The ABA Opinion also notes the minority rule that "[s]hort of compelled disclosure, . . . or equally extraordinary circumstances, [courts] will not distinguish between various degrees of 'voluntariness' in waivers of the attorney-client privilege," i.e., failure to treat privileged documents as anything less than the "crown jewels" results in waiver. *Id.*, citing *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) (citations omitted). Under either standard, defendants' conduct clearly went beyond mere inadvertence, and waiver resulted.[7]

### III.    CONCLUSION

For the reasons set forth above and in plaintiffs' initial moving papers, Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents should be granted in its entirety, and, in addition, defendants should be sanctioned appropriately for deliberately abusing privilege designations to withhold material evidence from plaintiffs. With respect to their

---

[6] Indeed, this opinion treats inadvertent production as outside the actual scope of the opinion, which focuses on situations where faxes, emails, and the like are unintentionally transmitted to the wrong individual.

[7] *See also* Ct. Eth. Op. 96-4 (Mar. 14, 1996) (in the context of determining permissible use of psychiatric records, agreeing with the ABA opinion that waiver of privilege allows an attorney to retain privileged documents).

asserted right to demand the return of newly re-designated documents, defendants

mischaracterize the facts, the Stipulated Protective Order, and applicable law.  Plaintiffs have

more than met their ethical obligations in this case and they have no obligation to return

discoverable, nonprivileged documents.  Defendants' Cross-Motion to Compel Return of

Privileged Documents should therefore be denied.

> **MM GLOBAL SERVICES, INC., MM**
> **GLOBAL SERVICES PTE. LTD., AND**
> **MEGAVISA SOLUTIONS (S) PTE. LTD.,**
>
> By: /s/ Alicia L. Downey
>
> Richard S. Taffet (ct 10201)
> Alicia L. Downey (ct 22066)
> BINGHAM MCCUTCHEN LLP
> 399 Park Avenue
> New York, NY  10022-4689
> Tel. (212) 705-7000
> Fax. (212) 752-5378
>
> -and-
>
> WIGGIN AND DANA LLP
> Robert M. Langer (ct 06305)
> Suzanne E. Wachsstock (ct 17627)
> One City Place
> 185 Asylum Street
> Hartford, CT  06103
> (860) 297-3724 (tel)
> (860) 525-9380 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of November, 2005, a copy of the foregoing was

sent by telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT  06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL  60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC  20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604


/s/ Alicia L. Downey
Alicia L. Downey

cc:     The Honorable Alfred V. Covello (via hand delivery)
        United States District Court
        450 Main Street
        Hartford, CT  06103