UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD.,<br>Plaintiffs,<br>v.<br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br>Defendants. | CIVIL ACTION<br>NO. 3:02 CV 1107 (AVC) |

### SUPPLEMENTAL DECLARATION OF ALICIA L. DOWNEY IN SUPPORT OF PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF IMPROPERLY WITHHELD AND REDACTED DOCUMENTS AND OPPOSITION TO DEFENDANTS' CROSS-MOTION TO COMPEL RETURN OF PRIVILEGED DOCUMENTS

Alicia L. Downey, declares as follows:

1. I am a partner in the firm of Bingham McCutchen LLP, co-counsel for plaintiffs in the above-captioned action. I submit this Declaration to put before the Court certain documents in support of plaintiffs' Reply in Further Support of Their Motion to Compel Production of Improperly Withheld and Redacted Documents and Opposition to Defendants' Cross-Motion to Compel Return of Privileged documents. Unless otherwise stated, I make this Declaration on personal knowledge.

2. Attached hereto as <u>Exhibit A1</u> is a true and correct copy of Plaintiffs' Exhibit 150, which was introduced at the deposition of John Yimoyines on November 10, 2005 and was produced by plaintiffs.

3. Attached hereto as <u>Exhibit A2</u> is a true and correct copy of the newly redacted India Orders Email, document number DEDC0037692-94, produced by defendants.

4. Attached hereto as <u>Exhibit</u> <u>B1</u> is a true and correct copy of document number DECO0013165-67, which was produced by defendants.

5. Attached hereto as <u>Exhibit</u> <u>B2</u> is a true and correct copy of the newly redacted March 2002 Cheung Report, document number DEBJ0040982-84, produced by defendants.

6. Attached hereto as <u>Exhibit</u> <u>C1</u> is a comparison of Plaintiffs' Exhibit 91 and document numbered D00300a, which were produced by defendants. <u>Exhibits</u> <u>C2</u> and <u>C3</u> are true and correct full-sized copies of Plaintiffs' Exhibit 91 and D00300a-01, respectively.

7. Attached hereto as <u>Exhibit</u> <u>D1</u> is a comparison of document number DECE0006463 and document numbered D00313a; which were produced by defendants. <u>Exhibits</u> <u>D2</u> and <u>D3</u> are true and correct full-sized copies of document numbers DECE0006463-65 and D00313a-315, respectively.

8. Attached hereto as <u>Exhibit</u> <u>E</u> is a true and correct copy of letter from Alicia L. Downey to Andrew S. Marovitz, Dana S. Douglas, and Scott C. Solberg dated November 1, 2005.

9. Attached hereto as <u>Exhibit</u> <u>F</u> is a true and correct copy of letter from Dana S. Douglas to Alicia L. Downey dated November 10, 2005.

I declare, under the penalty of perjury, that the foregoing is true and correct.

Signed this 15th day of November 2005.

*[signature]*
Alicia L. Downey

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of November, 2005, a copy of the foregoing was sent by telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC 20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

/s/ Alicia L. Downey
―――――――――――――――
Alicia L. Downey

cc:   The Honorable Alfred V. Covello (via hand delivery)
      United States District Court
      450 Main Street
      Hartford, CT 06103

**Exhibit A1**

---

From: "Shyam Pednekar" <shyam@megavisa.com>
To: "Ajay Mittal" <mittal@megavisa.com>
Sent: Thursday, July 19, 2001 11.30 AM
Subject: Fw: India Orders


----- Original Message -----
From: "Samtani, Arjun (AP)" <samtana@dow.com>
To: "'Ajay Mittal'" <mittal@megavisa.com>
Sent: Thursday, July 19, 2001 11:01 AM
Subject: FW: India Orders


> Ajay
>
> As per our discussion, it will be status quo for now. FYI, please.
>
> Rgds
> Arjun
> Tel : 65-7700-260
> Fax : 65-777-1269
> email : samtana@dow.com
>
> > -----Original Message-----
> > From: Serizawa, Atsuko
> > Sent: Sunday, July 15, 2001 11:30 PM
> > To: Vildi, Markus (M); Kaminaga, Takashi; Jewsbury, Kenneth
> > Cc: Neunuebel, Edward; Ho, Patrick (PP); Samtani, Arjun (AP); Leong,
> > Julinda (J); Chia, Weng-Lock (WL)
> > Subject: RE: India Orders
> >
> > Currently in India, UCC products are being sold through Megavisa under
> > distributor agreement. Actually Megavisa India, who has customers in
> > India and negotiates price, supply, etc, sends the orders to Megavisa
> > Singapore. Then Megavisa Singapore places orders to Dow Singapore under
> > FOB term.
> >
> > Some question was asked if Dow India can now sell to Megavisa India
> > directly or not, which is the standard practice for Dow.
> >
> > However, upon consultation with legal, it was recommended not to change
> > the current practice / order process in India for UCC products.
> >
> > Kaminaga-san, I have already discussed with Arjun who is aware of this
> > decision.
> >
> > Ako
> > Ako Serizawa
> > Pacific Customer Interface
> > TEL: 81-3-5460-2230
> > FAX: 81-3-5460-6249
> > E-mail: aserizawa@dow.com
> >
> >
> > -----Original Message-----
> > From: Neunuebel, Edward
> > Sent: Friday, July 06, 2001 11:58 PM
> > To: Serizawa, Atsuko

PLAINTIFF'S EXHIBIT 150

M 5308

09-Jul-02

```
>> Subject: RE: India Orders
>>
>> Country management and I are against this idea at the
>> present time due to the threat of litigation and the protest incident of a
>> couple of months ago.
>> Best regards,
>> Ed
>>
>> Edward R.J. Neunuebel     Dow Pacific Legal   -   Hong
>> Kong
>> Telephone: 852-2879-7385
>> E-mail: eneunuebel@dow.com
>> Fax: 852-2827-1007
>> Mail: 47th Floor, Sun Hung Kai Centre, Wanchai, Hong Kong,
>> Peoples Republic of China
>>
>> -----Original Message-----
>> From: Serizawa, Atsuko
>> Sent: Friday, July 06, 2001 10:16 PM
>> To: Neunuebel, Edward
>> Subject: RE: India Orders
>>
>> Ed, thank you very much for such a speedy reply.
>> Then how about this question?
>>
>> * Actually Megavisa India has customers in India and negotiates price,
>> supply, etc
>> * Then Megavisa India will send that to Megavisa Singapore
>> * Megavisa Singapore is placing orders to Dow Singapore
>>
>> Then let me ask you this.
>> * Since Megavisa Singapore is a dummy company who negotiates nothing
>> and owns nothing, Dow India now would like to do the business with
>> Megavisa India direct. Assuming they get Dow India credit approval (and I
>> think they do), can Dow India supply UCC NA products to Megavisa India?
>>
>>
>> Ako
>> Ako Serizawa
>> Pacific Customer Interface
>> TEL. 81-3-5460-2230
>> FAX: 81-3-5460-6249
>> E-mail: aserizawa@dow.com
>>
>>
>> -----Original Message-----
>> From: Neunuebel, Edward
>> Sent: Friday, July 06, 2001 8:50 PM
>> To: Serizawa, Atsuko
>> Subject: RE: India Orders
>>
>> Ako UCC products are to be sold to Megavisa per a
>> distribution agreement. Megavisa resells into India.
>>
>> Best regards,
>> Ed
>>
>>
>> Edward R.J. Neunuebel     Dow Pacific Legal   -
```

M 5313

09-Jul-02

```
>> Hong Kong
>> Telephone: 852-2879-7385
>> E-mail: eneunuebel@dow.com
>> Fax: 852-2827-1007
>> Mail: 47th Floor, Sun Hung Kai Centre, Wanchai,
>> Hong Kong, Peoples Republic of China
>>
>> -----Original Message-----
>> From: Serizawa, Atsuko
>> Sent: Friday, July 06, 2001 6:01 PM
>> To: Neunuebel, Edward
>> Subject: India Orders
>>
>>
>> Ed, please see the attached. Since you are an
>> expert on India, may I seek your legal advice on what was UCC's position
>> on material sent to India from UCC NA and whether Dow would continue
with
>> that position. In other words, UCC could not sell "UCC" products into
>> India, now Dow India (Actually DCPL) can sell UCC labeled products to
>> India?
>>
>> UCC's position is:
>> "It really does not matter which is the Selling
>> Company, whether Dow or Carbide, but as long as the Shipper on record
is
>> UCC NA or any UCC legal entities, shipment showing port of discharge as
>> "India" is not allowed. Thus CIF delivery terms to India ports is
>> disallowed. Shipper must be any Company other than UCC. If title
>> transfer has taken place between UCC NA to Dow NA & shipped out under
>> shipper "Dow", CIF terms is not an issue."
>>
>> Appreciate your advise.
>>
>>
>> Ako
>> Ako Serizawa
>> Pacific Customer Interface
>> TEL: 81-3-5460-2230
>> FAX: 81-3-5460-6249
>> E-mail: aserizawa@dow.com
>>
>> -----Original Message-----
>> From: Samtani, Arjun (AP)
>> Sent: Tuesday, July 03, 2001 4:06 PM
>> To: Serizawa, Atsuko
>> Subject: India Orders
>>
>> Ako san
>>
>> Re our talk yesterday. Here is the background and
>> future plans in which legal issues may play a part. This will also help
>> me to confirm my understanding. You may choose to get clarifications
from
>> legal (and other groups if required) as you think fit.
>>
>> Background
>> In the old UCC, all sales to India were made on a
>> FAS basis with the title transfer taking place out of India. Invoicing
>> was done by UCCS to MM Global Singapore (Megavisa Singapore) on a FAS
>> basis. MMG would then sell the product into India taking the credit
```

M 5312

09-Jul-02

```
risk
> > and also arranging for logistics. The physical flow of the product was
> > always from UCC plant/stocking point to customer in India. All
commercial
> > negotiations was done on a CIF basis and freight and commission was
backed
> > out to arrive at FAS basis. Currently, Dow Chemical Pacific S'pore is
> > doing the same thing for UCC products.
> >
> > Proposed Plan
> > The plan by Q4, 2001 is to have Dow India take the
> > order from the customer (could be end user or Megavisa India) and enter
> > into Dow Europe (Benelux or other company) irrespective of the source,
> > i.e. ex-UCC plant, Singapore tank etc. Credit approval would then be by
> > Dow India overseen by Dow Europe. All orders would be on a CIF basis.
> > Possible legal issue here is that if the product is shipped out of UCC
> > plant which still operates under UCC legal entity, shipper on record
would
> > be UCC although the invoicing would be done by Dow India. Also,
believe
> > UCC is still on R3 and will change to R2 in Q4 2001 to Q1 2002, so there
> > could be system disconnect as
> > both systems are on different platform.
> >
> > Rgd
> > Arjun
> > Tel  65-7700-260
> > Fax  65-777-1269
> > email : samtana@dow.com
> >
> >
> >
> >
>
```

M 5309

09-Jul-02

Exhibit A2

Page 1 of 3

| | |
|---|---|
| From: | "Serizawa, Atsuko" </O=DOW/OU=PACIFIC/CN=RECIPIENTS/CN=U709869> |
| To: | "Wildi, Markus (M)" <MWILDI@dow.com>; "Kaminaga, Takashi" <tkaminaga@dow.com>; "Jewsbury, Kenneth" <kjewsbury@dow.com> |
| Cc: | "Neunuebel, Edward" <eneunuebel@dow.com>; "Ho, Patrick (PP)" <pho@dow.com>; "Samtani, Arjun (AP)" <samtana@dow.com>; "Leong, Julinda (J)" <leongj1@dow.com>; "Chia, Weng-Lock (WL)" <WLCHIA@dow.com> |
| Sent: | Sunday, July 15, 2001 11:29 AM |
| Subject: | RE: India Orders |

Currently in India, UCC products are being sold through Megavisa under distributor agreement. Actually Megavisa India, who has customers in India and negotiates price, supply, etc, sends the orders to Megavisa Singapore. Then Megavisa Singapore places orders to Dow Singapore under FOB term.



Kaminaga-san, I have already discussed with Arjun who is aware of this decision.

Ako
Ako Serizawa
Pacific Customer Interface
TEL: 81-3-5460-2230
FAX: 81-3-5460-6249
E-mail: aserizawa@dow.com


-----Original Message-----
From: Neunuebel, Edward
Sent: Friday, July 06, 2001 11:58 PM
To: Serizawa, Atsuko
Subject: RE: India Orders

Edward R.J. Neunuebel     Dow Pacific Legal   -   Hong Kong
Telephone: 852-2879-7385
E-mail: eneunuebel@dow.com
Fax: 852-2827-1007
Mail: 47th Floor, Sun Hung Kai Centre, Wanchai, Hong Kong, Peoples Republic of China

-----Original Message-----
From: Serizawa, Atsuko
Sent: Friday, July 06, 2001 10:16 PM
To: Neunuebel, Edward
Subject: RE: India Orders

Confidential -

DEDC0037692



Ako
Ako Serizawa
Pacific Customer Interface
TEL: 81-3-5460-2230
FAX: 81-3-5460-6249
E-mail: aserizawa@dow.com

-----Original Message-----
From: Neunuebel, Edward
Sent: Friday, July 06, 2001 8:50 PM
To: Serizawa, Atsuko
Subject: RE: India Orders

Best regards,
Ed

---

Edward R.J. Neunuebel      Dow Pacific Legal  -   Hong Kong
Telephone: 852-2879-7385
E-mail: eneunuebel@dow.com
Fax: 852-2827-1007
Mail: 47th Floor, Sun Hung Kai Centre, Wanchai, Hong Kong, Peoples Republic of China

-----Original Message-----
From: Serizawa, Atsuko
Sent: Friday, July 06, 2001 6:01 PM
To: Neunuebel, Edward
Subject: India Orders



Confidential -   DEDC0037693



Ako
Ako Serizawa
Pacific Customer Interface
TEL: 81-3-5460-2230
FAX: 81-3-5460-6249
E-mail: aserizawa@dow.com

-----Original Message-----
From: Samtani, Arjun (AP)
Sent: Tuesday, July 03, 2001 4:06 PM
To: Serizawa, Atsuko
Subject: India Orders



Rgds
Arjun
Tel : 65-7700-260
Fax : 65-777-1269
email : samtana@dow.com

Confidential

DEDC0037694



-----Original Message-----
**From:** Cheung, Lawrence (L)
**Sent:** Saturday, March 02, 2002 4:36 PM
**To:** Yimoyines, John (JP); Wildi, Markus (M)
**Cc:** Fox, Graham (G); Ravi, Muthukrishnan; Babu, Vipul (VH); Tan, Horace (H); Cheung, Lawrence (L)
**Subject:** FW: Re: Dow/MV W&C distributorship & related issues


-----Original Message-----
**From:** Cheung, Lawrence (L)
**Sent:** Sunday, March 03, 2002 5:33 AM
**To:** Cheung, Lawrence (L)
**Subject:** Re: Dow/MV W&C distributorship & related issues

Dear Folks,
We have four rounds of meetings with MV last week and I would like to record the key points being discussed as below:

1) FEB 24 2002  Wildi M (Dow) & Cheung L (Dow) met with Zenyel C (MV Director)
Wildi showed concerns on the over dues and Zeynel explained to us the over dues were due to the changes of Dow system that MV did not receive invoices for a period of time. Zeynel emphasis again that MV is financially sound & the owner, Mittal family is a wealth & reputable family in Indian business society. Regarding the claims of historical W&C business, Zeynel believes that Mittal Ajay is angry with the Chemicals/Sp. Chemicals businesses' decisions & ways of negotiation as the market is taking about MV losing the distributorship with Dow and that could be the reason why MV is bringing all historical issues & asking for the compensation. Wildi & Cheung represented W&C business to state very clear to Zenyel that W&C has no intention to terminate the current distributor agreement up to this moment and the Chemicals/Sp. Chem. negotiation for termination should not affect W&C business at all. Wildi also told Zeynel that W&C may be forced to stop using MV if MV continue the unfriendly/unreasonable approach to deal the W&C issues.

2) FEB 26 2002   Mittal A ( MV ) Zenyel ( MV ) Ravi M ( Dow ) Fox G ( Dow )

1

Confidential                                                                                                                                DECO0013165

Mittal complained that no senior management cares about MV and requested to meet with Fox. Ravi arranged the meeting & Fox spent an hour to listen the same story about MV's 14 years relationship with UCC & the organization was established for all the UCC products in India. The termination could be a disaster to MV & all issues ( both historic & current for all products ) needed to be put on the table for negotiation. Fox told Mittal that Dow is a fair company & will pay if the claims are legitimate but Dow will stay firm if the claims are not real &/or not reasonable. MV was requested to prepare the related documents to prove the claims & submit to Dow management for further comments.

3) FEB 27 2002  Mittal A ( MV ) Moti ( MV ) Jalani ( MV ) Babu ( Dow ) Cheung L (Dow) Fox G (Dow - Just said Hello)
Zeynel & Moti arranged this breakfast meeting. Ajay started the discussion with giving us the background ( eg No invoices were issued due to SAP, Pacific to Europe ) of the invoices overdue. Cheung emphasis that there are no change on the W&C relationship between Dow & MV so far despite of the decision of Chemical/Sp. chemical businesses. Mittal explained that MV was set up & organized to run the completed product line of UCC products. The separation will cause a lot of issues such as resources, cash flow & organization. Hence, he felt the relationship would be so different & it would be appropriate to settle everything first before we proceed further. Cheung told Mittal that W&C is not ready to discuss the subject matter further as we cannot represent all other businesses for the settlement of the termination. Fox came the table to say Hello & said again that Dow will be fair to handle the case. Mittal wanted to give the W&C related documents to Fox but Fox told Mittal that the documents could be given to CHEUNG & Mittal will be given a reply later. CHEUNG received the package addressed to FOX & told MITTAL that we should continue to talk & be reasonable.

4) FEB 28 2002  RAVI ( Dow ) BABU (Dow ) CHEUNG ( Dow )
The team met at 10:00 am to discuss the case in more details. The team believes that we should consult with the lawyers first & see if MV has the ground to create the legal case. It seems that MV is trying the max. the one time monetary returns as Dow does not really need MV as much as UCC. CHEUNG seek RAVI's judgment on Mittal's financial position & RAVI pointed out that we should not assume Mittal is not financially sound but he doubt that Mittal will go to fight with Dow in court especially if we can take the immediate legal actions to bring MV to court in SINGAPORE on the over dues because it will cause a lot more money in Singapore for legal proceeding than India & may bring MV nowhere but very bad reputation in the industry. One consideration is that MV has JV with BDP in Asia & Dow is a big customer for BDP. It does not worth the legal battle if Mittal is a logical business man unless Mittal plans to walk away from the business. RAVI also commented to the team that to be fair to MITTAL, MV did pay back Dow based on the schedules agreed by both companies after discovering the invoicing problems/over dues.

5)  FEB 28 2002  FOX G ( Dow ) RAVI ( Dow ) BABU ( Dow ) CHEUNG ( Dow )
The team met with FOX again to summarize the key findings & determinate the general direction plus action plan. FOX reported the key areas of discussion with MITTAL on FEB 26. RAVI also mentioned that the legal opinion is that Chemical/Sp. Chemicals businesses are ready to terminate the distributorship with MV without any complications. Dow is ready to pay for the non compete clause if MV accepts (option to MV ). CHEUNG used 5-10 minutes to report on the history of MV's W&C business ( eg Asian crisis with high inventory forced us to move to India which was a swing market & why UCC decided not to ship later on eg prices moved up & UCC made more money to ship to other markets as well as the out of court settlement with one customer plus a commercial settlement with another big customer under the direction of the corporate management with the pressure of legal advice from Bob Butler .) FOX suggested that the team should consult with both the Dow lawyer in India & the PO&E business lawyer to seek legal opinion before we advice MV on our position. It seems to FOX that the ultimate decision of either settlement or other actions will still remain as the W&C business decision rather an area decision although RAVI will still be the focal point to communicate with them on the overall distributership issues. FOX will have to reply to MV on the documents provided by MV as the package was addressed to FOX.

6) Dow's positions
BEST - Assuming both area & business legal opinions are positive that MV has no ground to claim as the cases have been considered closed as MV continues to represent us to sell W&C products & no action/discussion/meeting being requested since we settled with the two biggest customers one and half year ago. We will just terminate the Dow/MV relationship.
WORST - Assuming legal opinions are not positive or uncertain on Dow's position on the UCC issues in India. MV teams up with the group of small customers & bought us to court. We may end up paying a lot more.

POSSIBLE DAMAGES - MV is aiming for US$300/MT or US$2 million for the claim of not shipping the contracted volume.On top of the US$2 million, MV also ask for the compensation of the plain that they shared for the two big accounts' settlement & the future losses of commission income.

7) Dow's target & options
TARGET - To pay nothing or minimum to walk away from MV without any current or future liability. I don't believe that we could or we should continue the business relationship with MV with the current development. In fact, it could be a golden opportunities to cut off MV that Dow W&C can re-establish the appropriate strategies in India as we can deal with Indian customers direct now and the import duty is coming down. ( Govt. just announced on FEB 28 that import duty will be

2

reduced by 7% from April 2002 & promised the import duty will come down to ASEAN level by 2004 ).
OPTIONS :
* Ship the balanced volume based on the contracted prices & settle all customers' issues. With this option, MV has no excuse to ask for the biggest portion of the claim. We could also earn back the reputation & relationship with all customers in India to prepare for future direct sales/market positioning. The reason why I put this as the first option is that Dow W&C has been pushing Pacific to take more Telecom volume in the last few weeks as we are running below capacity at our manufacturing sites. We have been requested to look into INDIA again with the same reasons as two-three years ago (eg India is an opportunistic market with huge swing volume potential but low netback pricing due to high import duty and very low possibilities for Indian customers to re-export the W&C compounds to interrupt other markets with the same duty reason).Instead to just give the products at current market prices away to Indian customers with netback not much different with the contracted prices that got us into trouble three years ago. It make more sense to make use of the volume to settle the problems and at the same time, rebuild our position. We need to negotiate with MV that BABU will have to go with MV to deal with all customers directly if we believe this option will work. Furthermore, I personally don't believe MV could have ground to claim the future losses of commission income & the historical shares of the compensation that paid to the two customers. Anyway, we have wait for legal dept. to comment.
* Stay firm with MV & see if Mittal is willing to take the risk to bring Dow to court.
* Take immediate legal action to sue MV in Singapore for the over dues & destroy MV's reputation in the market/industry
* Negotiate with MV for a commercial settlement.

8) Immediate action plan
*Yimonyines to advice the name of the business lawyer that the area lawyer can start working with her/him.
*RAVI/BABY/CHEUNG will form a team to continue dealing with MV, reporting the attitude changes and monitoring MV's payment performance ( not much for W&C ). Internally, the team will assist lawyers to understand the background, recent negotiations & the business/area related issues.
* FOX need to reply to MV that we received the package of documents & reply MV in due cources.
* Map a detailed action plan after receiving the lawyers' input

These are the key areas of discussion that I could recall after a short trip to India. By copy to the Graham, Ravi & Vipul, pls free feel to comment if I have missed any points.
We need your guidance and direction to proceed further.
Regards
Lawrence

Confidential                                                                                                                                    DECO0013167

**Exhibit B2**

| | |
|---|---|
| From: | Wildi, Markus (M) |
| Sent: | Sunday, March 03, 2002 1:39 PM |
| To: | Cheung, Lawrence (L) |
| Cc: | Yimoyines, John (JP) |
| Subject: | RE: Re: Dow/MV W&C distributorship & related issues |

Good summary. We should discuss in person next week. I agree with you that we should strongly consider taking the W&C distributorship away from MV. Lets first get input from the lawyers.

Regards,

*M. Wildi*

-----Original Message-----
| | |
|---|---|
| From: | Cheung, Lawrence (L) |
| Sent: | Sunday, March 03, 2002 5:36 AM |
| To: | Yimoyines, John (JP); Wildi, Markus (M) |
| Cc: | Fox, Graham (G); Ravi, Muthukrishnan; Babu, Vipul (VH); Tan, Horace (H); Cheung, Lawrence (L) |
| Subject: | FW: Re: Dow/MV W&C distributorship & related issues |

-----Original Message-----
| | |
|---|---|
| From: | Cheung, Lawrence (L) |
| Sent: | Sunday, March 03, 2002 5:33 AM |
| To: | Cheung, Lawrence (L) |
| Subject: | Re: Dow/MV W&C distributorship & related issues |

Dear Folks,
We have four rounds of meetings with MV last week and I would like to record the key points being discussed as below:

1) FEB 24 2002  Wildi M (Dow) & Cheung L (Dow) met with Zenyel C (MV Director)
Wildi showed concerns on the over dues and Zeynel explained to us the over dues were due to the changes of Dow system that MV did not receive invoices for a period of time. Zeynel emphasis again that MV is financially sound & the owner, Mittal family is a wealth & reputable family in Indian business society. Regarding the claims of historical W&C business, Zeynel believes that Mittal Ajay is angry with the Chemicals/Sp. Chemicals businesses' decisions & ways of negotiation as the market is talking about MV losing the distributorship with Dow and that could be the reason why MV is bringing all historical issues & asking for the compensation. Wildi & Cheung represented W&C business to state very clear to Zenyel that W&C has no intention to terminate the current distributor agreement up to this moment and the Chemicals/Sp. Chem. negotiation for termination should not affect W&C business at all. Wildi also told Zeynel that W&C may be forced to stop using MV if MV continue the unfriendly/unreasonable approach to deal the W&C issues.

2) FEB 26 2002  Mittal A ( MV ) Zenyel ( MV ) Ravi M ( Dow ) Fox G ( Dow )
Mittal complained that no senior management cares about MV and requested to meet with Fox. Ravi arranged the meeting & Fox spent an hour to listen the same story about MV's 14 years relationship with UCC & the organization was established for all the UCC products in India. The termination could be a disaster to MV & all issues ( both historic & current for all products ) needed to be put on the table for negotiation. Fox told Mittal that Dow is a fair company & will pay if the claims are legitimate but Dow will stay firm if the claims are not real &/or not reasonable. MV was requested to prepare the related documents to prove the claims & submit to Dow management for further comments.

3) FEB 27 2002  Mittal A ( MV ) Moti ( MV ) Jalani ( MV ) Babu ( Dow ) Cheung L (Dow) Fox G (Dow - Just said Hello)
Zeynel & Moti arranged this breakfast meeting. Ajay started the discussion with giving us the background ( eg No invoices were issued due to SAP, Pacific to Europe ) of the invoices overdue. Cheung emphasis that there are no change on the W&C relationship between Dow & MV so far despite of the decision of Chemical/Sp. chemical

1

Confidential - Counsel Eyes Only

DEBJ0040982

businesses. Mittal explained that MV was set up & organized to run the completed product line of UCC products. The separation will cause a lot of issues such as resources, cash flow & organization. Hence, he felt the relationship would be so different & it would be appropriate to settle everything first before we proceed further. Cheung told Mittal that W&C is not ready to discuss the subject matter further as we cannot represent all other businesses for the settlement of the termination. Fox came the table to say Hello & said again that Dow will be fair to handle the case. Mittal wanted to give the W&C related documents to Fox but Fox told Mittal that the documents could be given to CHEUNG & Mittal will be given a reply later. CHEUNG received the package addressed to FOX & told MITTAL that we should continue to talk & be reasonable.

4) FEB 28 2002  RAVI ( Dow ) BABU (Dow ) CHEUNG ( Dow )
The team met at 10:00 am to discuss the case in more details. The team believes that we should consult with the lawyers first & see if MV has the ground to create the legal case. It seems that MV is trying the max. the one time monetary returns as Dow does not really need MV as much as UCC. CHEUNG seek RAVI's judgment on Mittal's financial position & RAVI pointed out that we should not assume Mittal is not financially sound but he doubt that Mittal will go to fight with Dow in court especially if we can take the immediate legal actions to bring MV to court in SINGAPORE on the over dues because it will cause a lot more money in Singapore for legal proceeding than India & may bring MV nowhere but very bad reputation in the industry. One consideration is that MV has JV with BDP in Asia & Dow is a big customer for BDP. It does not worth the legal battle if Mittal is a logical business man unless Mittal plans to walk away from the business. RAVI also commented to the team that to be fair to MITTAL, MV did pay back Dow based on the schedules agreed by both companies after discovering the invoicing problems/over dues.

5) FEB 28 2002  FOX G ( Dow ) RAVI ( Dow ) BABU ( Dow ) CHEUNG ( Dow )
The team met with FOX again to summarize the key findings & determinate the general direction plus action plan. FOX reported the key areas of discussion with MITTAL on FEB 26. ███████████████████████████████
███████ Dow is ready to pay for the non compete clause if MV accepts (option to MV ). CHEUNG used 5-10 minutes to report on the history of MV's W&C business ( eg Asian crisis with high inventory forced us to move to India which was a swing market & why UCC decided not to ship later on eg prices moved up & UCC made more money to ship to other markets as well as the out of court settlement with one customer plus a commercial settlement with another big customer under the direction of the corporate management ████████████████
████████████████████████████████████████████████████████████
have to reply to MV on the documents provided by MV as the package was addressed to FOX. FOX will
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

7) Dow's target & options
TARGET - To pay nothing or minimum to walk away from MV without any current or future liability. I don't believe that we could or we should continue the business relationship with MV with the current development. In fact, it could be a golden opportunities to cut off MV that Dow W&C can re-establish the appropriate strategies in India as we can deal with Indian customers direct now and the import duty is coming down. ( Govt. just announced on FEB 28 that import duty will be reduced by 7% from April 2002 & promised the import duty will come down to ASEAN level by 2004 ).
OPTIONS :
* Ship the balanced volume based on the contracted prices & settle all customers' issues. With this option, MV has no excuse to ask for the biggest portion of the claim. We could also earn back the reputation & relationship with all customers in India to prepare for future direct sales/market positioning. The reason why I put this as the first option is that Dow W&C has been pushing Pacific to take more Telecom volume in the last few weeks as we are running below capacity at our manufacturing sites. We have been requested to look into INDIA again with the same reasons as two-three years ago (eg India is an opportunistic market with huge swing volume potential but low netback pricing due to high import duty and very low possibilities for Indian customers to re-export the W&C compounds to interrupt

Confidential - Counsel Eyes Only

DEBJ0040983

REDACTED

**Cheung, Lawrence (L)**

| | |
|---|---|
| From: | Cheung, Lawrence (L) |
| Sent: | Thursday, February 14, 2002 8:03 AM |
| To: | Ravi, Muthukrishnan; Wildi, Markus (M) |
| Cc: | Fox, Graham (G); Yimoyines, John (JP); Cheung, Lawrence (L) |
| Subject: | RE: Megavisa's settlement |

Dear Ravi,
Let's talk more & work together to resolve the issue. See you in two weeks time.
Regards
Lawrence

-----Original Message-----
From: Ravi, Muthukrishnan
Sent: Wednesday, February 13, 2002 10:26 PM
To: Wildi, Markus (M); Cheung, Lawrence (L)
Cc: Fox, Graham (G); Yimoyines, John (JP)
Subject: RE: Megavisa's settlement

Lawrence,
I have recd the originals of the claim from Mv and will forward the same to you.
I agree that MV has chosen artial discontinuation of Bz to time their request. But rest assured that this would have come up as and when you decide to discontinue the W&C bz.By the way we should also be prepared to sign a more structured and well defined agreement with MV in the short term. I can sense the unease in MV due to the loosely structured agreement that existed thus far

-----Original Message-----
From: Wildi, Markus (M)
Sent: Monday, February 11, 2002 11:15 AM
To: Cheung, Lawrence (L)
Cc: Ravi, Muthukrishnan; Fox, Graham (G); Yimoyines, John (JP)
Subject: RE: Megavisa's settlement

I take it from your below note that you are not aware of MV's claim that we owe them money ( over 2 million USD ) because they claim that you do  and we will have to negotiate with them or at least take a position. I agree with you that they are using this because we are canceling some of the products from their distributorship. Nevertheless. this will not go away on its own so we really need to get on top of this and have a position that the lawyers also agree upon . In line with this please read their claims carefully and put something on paper on the history , the communication that has been done with MV., any agreements or positions that we took to settle the dispute, in details what we have done to resolve this and at what customers, open issues, etc... We need to make that we have a position and that Ravi is up to date with all the information as he is the person communicating with them on the termination of the various products. We also want to make sure that we get our receivables ( not just the W&C). It may be a good idea to have a phone conference between yourself, Ravi and myself to go over the details. Also, you should probably spend some time with Ravi and perhaps make a joint call at MV during your next visit which I believe is later this month . in summary , it's make sure that we are very active on this issue, that we funnel the info via or together with Ravi back to MV, and that we have all the past and present info and a position. Since you have the history on this case you will need to be the focal point for our business. We need to make sure that we do not give MV any excuse not to pay their total receivables to Dow. Thanks for taking the lead on this.

Regards,

M. Wildi

-----Original Message-----
From: Cheung, Lawrence (L)
Sent: Monday, February 11, 2002 8:46 AM
To: Wildi, Markus (M)
Cc: Tan, Horace (H); Ungerleider, Howard (H); Yimoyines, John (JP); Ungerleider, Howard (H); Babu, Vipul (VH); Cheung, Lawrence (L)
Subject: RE: Megavisa's settlement

Dear Markus,
The W&C cases were caused by the change of the inventory position (17,000 MT to almost zero) in USA & the sudden increase of market prices (C4 at US$430 to US$700). Asia was also suffered the financial crisis & the UCC Team had decided to move the volume to India but subsequently UCC regretted the

DS 250528

---

**Yimoyines, John (JP)**

| | |
|---|---|
| From: | Ravi, Muthukrishnan |
| Sent: | Wednesday, February 13, 2002 8:26 AM |
| To: | Wildi, Markus (M); Cheung, Lawrence (L) |
| Cc: | Fox, Graham (G); Yimoyines, John (JP) |
| Subject: | RE: Megavisa's settlement |

I have recd the originals of the claim from Mv and will forward the same to you.
Lawrence,
I agree that MV has chosen artial discontinuation of Bz to time their request. But rest assured that this would have come up as and when you decide to discontinue the W&C bz.By the way we should also be prepared to sign a more structured and well defined agreement with MV in the short term. I can sense the unease in MV due to the loosely structured agreement that existed thus far

-----Original Message-----
From: Wildi, Markus (M)
Sent: Monday, February 11, 2002 11:15 AM
To: Cheung, Lawrence (L)
Cc: Ravi, Muthukrishnan; Fox, Graham (G); Yimoyines, John (JP)
Subject: RE: Megavisa's settlement

[REDACTED]

Regards,

M. Wildi

-----Original Message-----
From: Cheung, Lawrence (L)
Sent: Monday, February 11, 2002 8:46 AM
To: Wildi, Markus (M)
Cc: Tan, Horace (H); Ungerleider, Howard (H); Yimoyines, John (JP); Ungerleider, Howard (H); Babu, Vipul (VH); Cheung, Lawrence (L)
Subject: RE: Megavisa's settlement

Dear Markus,
The W&C cases were caused by the change of the inventory position (17,000 MT to almost zero) in USA & the sudden increase of market prices (C4 at US$430 to US$700). Asia was also suffered the financial crisis & the UCC Team had decided to move the volume to India but subsequently UCC regretted the decision & decided not to honor the contracts. The customers bought UCC to court & the Danbury legal dept. advised that we could not afford any risk in India & suggested we paid the claims. UCC decided to negotiate directly with customers instead of going via MegaVisa. UCC managed to settle some of  the claims at a big discounts & some of them were small that UCC decided not to take care of them. No action or follow up from MegaVisa since then.
I was not aware of the termination of the negotiation of their distributorship of W&C business. The attached communication seems related more to the termination of other chemical business but they used W&C as the excuse as our business used to have bigger impact. Our business with them in the last two years was very small & the calculation was based on the income on the two peak years.

23

D00300 a