## Cheung, Lawrence (L)

**From:** Cheung, Lawrence (L)
**Sent:** Thursday, February 14, 2002 8:03 AM
**To:** Ravi, Muthukrishnan; Wildi, Markus (M)
**Cc:** Fox, Graham (G); Yimoyines, John (JP); Cheung, Lawrence (L)
**Subject:** RE: Megavisa's settlement

Dear Ravi,
Let's talk more & work together to resolve the issue. See you in two weeks time.
Regards
Lawrence

PLAINTIFF'S EXHIBIT #91 8-5-05 JK

-----Original Message-----
**From:** Ravi, Muthukrishnan
**Sent:** Wednesday, February 13, 2002 10:26 PM
**To:** Wildi, Markus (M); Cheung, Lawrence (L)
**Cc:** Fox, Graham (G); Yimoyines, John (JP)
**Subject:** RE: Megavisa's settlement

I have recd the originals of the claim from Mv and will forward the same to you.
Lawrence,
I agree that MV has chosen artial discontinuation of Bz to time their request. But rest assured that this would have come up as and when you decide to discontinue the W&C bz. By the way we should also be prepared to sign a more structured and well defined agreement with MV in the short term. I can sense the unease in MV due to the loosely structured agreement that existed thus far

-----Original Message-----
**From:** Wildi, Markus (M)
**Sent:** Monday, February 11, 2002 11:15 AM
**To:** Cheung, Lawrence (L)
**Cc:** Ravi, Muthukrishnan; Fox, Graham (G); Yimoyines, John (JP)
**Subject:** RE: Megavisa's settlement

I take it from your below note that you are not aware of MV's claim that we owe them money ( over 2 million USD ) because they claim that you do and we will have to negotiate with them or at least take a position. I agree with you that they are using this because we are canceling some of the products from their distributorship. Nevertheless, this will not go away on its own so we really need to get on top of this and have a position that the lawyers also agree upon. In line with this please read their claims carefully and put something on paper on the history, the communication that has been done with MV, any agreements or positions that we took to settle the dispute, in details what we have done to resolve this and at what customers, open issues, etc... We need to make that we have a position and that Ravi is up to date with all the information as he is the person communicating with them on the termination of the various products. We also want to make sure that we get our receivables ( not just the W&C ). It may be a good idea to have a phone conference between yourself, Ravi and myself to go over the details. Also, you should probably spend some time with Ravi and perhaps make a joint call at MV during your next visit which I believe is later this month. In summary, lets make sure that we are very active on this issue, that we funnel the info via or together with Ravi back to MV, and that we have all the past and present info and a position. Since you have the history on this case you will need to be the focal point for our business. We need to make sure that we do not give MV any excuse not to pay their total receivables to Dow. Thanks for taking the lead on this.

Regards,

*M. Wildi*

-----Original Message-----
**From:** Cheung, Lawrence (L)
**Sent:** Monday, February 11, 2002 8:46 AM
**To:** Wildi, Markus (M)
**Cc:** Tan, Horace (H); Ungerleider, Howard (HI); Yimoyines, John (JP); Ungerleider, Howard (HI); Babu, Vipul (VH); Cheung, Lawrence (L)
**Subject:** RE: Megavisa's settlement

Dear Markus,
The W&C cases were caused by the change of the inventory position (17,000 MT to almost zero) in USA & the sudden increase of market prices (C4 at US$430 to US$700). Asia was also suffered the financial crisis & the UCC Team had decided to move the volume to India but subsequently UCC regretted the

1

decision & decided not to honor the contracts. The customers bought UCC to court & the Danbury legal dept. advised that we could not afford any risk in India & suggested we paid the claims. UCC decided to negotiate directly with customers instead of going via MegaVisa. UCC managed to settle some of the claims at a big discounts & some of them were small that UCC decided not to take care of them. No action or follow up from MegaVisa since then.

I was not aware of the termination of the negotiation of their distributorship of W&C business. The attached communication seems related more to the termination of other chemical business but they used W&C as the excuse as our business used to have bigger impact. Our business with them in the last two years was very small & the calculation was based on the income on the two peak years.

By copy to Vipul, pls advice our A/C receivables with MV & I believe that the amount is very small.
Regards
Lawrence

-----Original Message-----
**From:** Wildi, Markus (M)
**Sent:** Monday, February 11, 2002 2:02 AM
**To:** Cheung, Lawrence
**Cc:** Tan, Horace; Ungerleider, Howard; Yimoyines, John; Ungerleider, Howard
**Subject:** FW: Megavisa's settlement

Can you give me your position on the W&C claims. They are substantial. We should also limit our outstanding with MV until all claims are agreed upon. I do not want to be stuck with receivables that we cannot collect.

Regards,

*M. Wildi*

-----Original Message-----
**From:** Ravi, Muthukrishnan
**Sent:** Wednesday, February 06, 2002 12:08 PM
**To:** Wildi, Markus (M)
**Cc:** Percossi, Horacio; Fox, Graham (G)
**Subject:** FW: Megavisa's settlement

Markus,
attached is a note from megavisa. As you are aware we have communicated to them of our intent to discontinue using them as a channel for the perf chem & Chem business. This is a very sensitive stage for the transition as our credit exposure is still high. I am acting as a single point interface. Megavisa highlights three issues in the attached note pertaining to yet to be settled claims. All these reference to prior to merger period. They indicated to me that Lawrence Cheung is on top of these issues. If you agree we could adopt the following approach:
1. you take a business stand on these issues
2. I communicate to MV
3. We remain flexible on the timing of the communication
4. Suggest we avoid dialogue with MV. Singapore on this.

Appreciate your comments. I am replying to MV independently on the issue of notice period and compensation

-----Original Message-----
**From:** Ajay Mittal [mailto:mittal@megavisa.com]
**Sent:** Tuesday, February 05, 2002 7:24 PM
**To:** Ravi, Muthukrishnan
**Subject:** Megavisa's settlement

<< Message: Untitled Attachment >>   << File: Dow_OTS.doc >>   << File: loss of profit.xls >>

**Yimoyines, John (JP)**                                     REDACTED        <u>Exhibit C3</u>

**From:** Ravi, Muthukrishnan
**Sent:** Wednesday, February 13, 2002 8:26 AM
**To:** Wildi, Markus (M); Cheung, Lawrence (L)
**Cc:** Fox, Graham (G); Yimoyines, John (JP)
**Subject:** RE: Megavisa's settlement

I have recd the originals of the claim from Mv and will forward the same to you.
Lawrence,
I agree that MV has chosen artial discontinuation of Bz to time their request. But rest assured that this would have come up as and when you decide to discontinue the W&C bz. By the way we should also be prepared to sign a more structured and well defined agreement with MV in the short term. I can sense the unease in MV due to the loosely structured agreement that existed thus far

-----Original Message-----
**From:** Wildi, Markus (M)
**Sent:** Monday, February 11, 2002 11:15 AM
**To:** Cheung, Lawrence (L)
**Cc:** Ravi, Muthukrishnan; Fox, Graham (G); Yimoyines, John (JP)
**Subject:** RE: Megavisa's settlement

Regards,

*M. Wildi*

-----Original Message-----
**From:** Cheung, Lawrence (L)
**Sent:** Monday, February 11, 2002 8:46 AM
**To:** Wildi, Markus (M)
**Cc:** Tan, Horace (H); Ungerleider, Howard (HI); Yimoyines, John (JP); Ungerleider, Howard (HI); Babu, Vipul (VH); Cheung, Lawrence (L)
**Subject:** RE: Megavisa's settlement

Dear Markus,
The W&C cases were caused by the change of the inventory position (17,000 MT to almost zero) in USA & the sudden increase of market prices (C4 at US$430 to US$700). Asia was also suffered the financial crisis & the UCC Team had decided to move the volume to India but subsequently UCC regretted the decision & decided not to honor the contracts. The customers bought UCC to court & the Danbury legal dept. advised that we could not afford any risk in India & suggested we paid the claims. UCC decided to negotiate directly with customers instead of going via MegaVisa. UCC managed to settle some of the claims at a big discounts & some of them were small that UCC decided not to take care of them. No action or follow up from MegaVisa since then.
I was not aware of the termination of the negotiation of their distributorship of W&C business. The attached communication seems related more to the termination of other chemical business but they used W&C as the excuse as our business used to have bigger impact. Our business with them in the last two years was very small & the calculation was based on the income on the two peak years.

23

D00300 a

By copy to Vipul, pls advice our A/C receivables with MV & I believe that the amount is very small.
Regards
Lawrence

-----Original Message-----
**From:** Wildi, Markus (M)
**Sent:** Monday, February 11, 2002 2:02 AM
**To:** Cheung, Lawrence
**Cc:** Tan, Horace; Ungerleider, Howard; Yimoyines, John; Ungerleider, Howard
**Subject:** FW: Megavisa's settlement

Can you give me your position on the W&C claims. They are substantial. We should also limit our outstanding with MV until all claims are agreed upon. I do not want to be stuck with receivables that we cannot collect.

Regards,

*M. Wildi*

-----Original Message-----
**From:** Ravi, Muthukrishnan
**Sent:** Wednesday, February 06, 2002 12:08 PM
**To:** Wildi, Markus (M)
**Cc:** Percossi, Horacio; Fox, Graham (G)
**Subject:** FW: Megavisa's settlement

Markus,
attached is a note from megavisa. As you are aware we have communicated to them of our intent to discontinue using them as a channel for the perf chem & Chem business. This is a very sensitive stage for the transition as our credit exposure is still high. I am acting as a single point interface. Megavisa highlights three issues in the attached note pertaining to yet to be settled claims. All these reference to prior to merger period. They indicated to me that Lawrence Cheung is on top of these issues. If you agree we could adopt the following approach:
1. you take a business stand on these issues
2. I communicate to MV
3. We remain flexible on the timing of the communication
4. Suggest we avoid dialogue with MV. Singapore on this.

Appreciate your comments. I am replying to MV independently on the issue of notice period and compensation

-----Original Message-----
**From:** Ajay Mittal [mailto:mittal@megavisa.com]
**Sent:** Tuesday, February 05, 2002 7:24 PM
**To:** Ravi, Muthukrishnan
**Subject:** Megavisa's settlement

<< Message: Untitled Attachment >>   << File: Dow_OTS.doc >>   << File: loss of profit.xls >>

D00301

REDACTED

**Ylmoyines, John (JP)**

| | |
|---|---|
| From: | Ylmoyines, John (JP) |
| Sent: | Monday, February 11, 2002 8:35 AM |
| To: | Wildi, Markus (M) |
| Cc: | Cheung, Lawrence (L); Ungerleider, Howard (H); Petsalis, Spyro (SP); Tan, Horace (H) |
| Subject: | RE: Megavisa's settlement |

Markus,

The original attachment did not open, so I can't see Mega-Visa's position. As far as I am concerned W&C settled all issues related to the situation that Lawrence described. We paid two very large settlements (not claims) to the two largest customers who threatened and one who actually took court action against UCC in India at a sensitive time of the merger. The first settlement was supposed to end it, (MV negotiated on our part and took a share of the burden), but somehow (and there was a certain smell to this) the second one cropped up late in the 3rd quarter of 2000. Although MV was present UCC personally negotiated and settled a grievance for almost $3MM for about $1MM. UCC bore the total cost and the customer dropped the court action. Mega-Visa assured us that there would be no further issues-they would handle them-it would be important to find out if we have this in writing. Keith Lloyd (business manager-retired) and Tom Laforge(attorney retired) handled the details of the settlement. The legal files must have transferred to Midland at closing-there is no one left in the legal department in Danbury to consult.

Again- not having seen the attachment-there should be no further issues, but Mega-Visa could make trouble by encouraging the small customers to start legal proceeding against Dow in India. During this time period (actually in mid-1999, when it became obvious that we could make money in India) W&C withdrew from all business in India.

Regards,

John Ylmoyines
Business Vice President
Wire & Cable Compounds

-----Original Message-----
| | |
|---|---|
| From: | Wildi, Markus (M) |
| Sent: | Monday, February 11, 2002 12:45 AM |
| To: | Cheung, Lawrence (L) |
| Cc: | Ravi, Muthukrishnan; Fox, Graham (G); Ylmoyines, John (JP) |
| Subject: | RE: Megavisa's settlement |

I take it from your below note that you are not aware of MV's claim that we owe them money ( over 2 million USD) because they claim that you do and we will have to negotiate with them or at least take a position. I agree with you that they are using this because we are canceling some of the products from their distributorship. Nevertheless, this will not go away on its own so we really need to get on top of this and have a position that the lawyers also agree upon. In line with this please read their claims carefully and put something on paper on the history, the communication that has been done with MV, any agreements or positions that we took to settle the dispute, in details what we have done to resolve this and at what customers, open issues, etc... We need to make sure that we have a position and that Ravi is up to date with all this information as he is the person communicating with them on the termination of the various products. We also want to make sure that we get our receivables (not just the W&C). It may be a good idea to have a phone conference between yourself, Ravi and myself to go over the details. Also, you should probably spend some time with Ravi and perhaps make a joint call at MV during your next visit which I believe is later this month. In summary, lets make sure that we are very active on this issue, that we funnel the info via or together with Ravi back to MV, and that we have all the past and present info and a position. Since you have the history on this case you will need to be the focal point for our business. We need to make sure that we do not give MV any excuse not to pay their total receivables to Dow. Thanks for taking the lead on this.

Regards,

M. Wildi

---

**Ylmoyines, John (JP)**

| | |
|---|---|
| From: | Petsalis, Spyro (SP) |
| Sent: | Monday, February 11, 2002 2:47 PM |
| To: | Ylmoyines, John (JP) |
| Subject: | RE: Megavisa's settlement |

You may want to call Keith if needed to get some answers to this. I was not involved as product manager and keith and I never exchanged notes as it was believed that the issue was closed. His home number is 860-491-3708 and his email is keithillo@msn.com

Best Regards

Spyro Petsalis
Global Market Manager
Telecommunications Materials
☎ 203 794 2102
📠 203 794 2884
✉ petsalsp@dow.com

-----Original Message-----
| | |
|---|---|
| From: | Ylmoyines, John (JP) |
| Sent: | Monday, February 11, 2002 9:35 AM |
| To: | Wildi, Markus (M) |
| Cc: | Cheung, Lawrence (L); Ungerleider, Howard (H); Petsalis, Spyro (SP); Tan, Horace (H) |
| Subject: | RE: Megavisa's settlement |

Markus,

The original attachment did not open, so I can't see Mega-Visa's position. As far as I am concerned W&C settled all issues related to the situation that Lawrence described. We paid two very large settlements (not claims) to the two largest customers who threatened and one who actually took court action against UCC in India at a sensitive time of the merger. The first settlement was supposed to end it, (MV negotiated on our part and took a share of the burden), but somehow (and there was a certain smell to this) the second one cropped up late in the 3rd quarter of 2000. Lawrence is correct-the business felt that there was no basis for the complaints and wanted to fight the second one out in Indian court-we were over-ruled by the UCC legal department who escalated it to the UCC CEO. Although MV was present UCC personally negotiated and settled a grievance for almost $3MM for about $1MM. UCC bore the total cost and the customer dropped the court action. Mega-Visa assured us that there would be no further issues-they would handle them-it would be important to find out if we have this in writing. Keith Lloyd (business manager-retired) and Tom Laforge(attorney retired) handled the details of the settlement. The legal files must have transferred to Midland at closing-there is no one left in the legal department in Danbury to consult.

Again- not having seen the attachment-there should be no further issues, but Mega-Visa could make trouble by encouraging the small customers to start legal proceeding against Dow in India. During this time period (actually in mid- 1999, when it became obvious that we could make money in India) W&C withdrew from all business in India.

Regards,

John Ylmoyines
Business Vice President
Wire & Cable Compounds

-----Original Message-----
| | |
|---|---|
| From: | Wildi, Markus (M) |
| Sent: | Monday, February 11, 2002 12:45 AM |
| To: | Cheung, Lawrence (L) |
| Cc: | Ravi, Muthukrishnan; Fox, Graham (G); Ylmoyines, John (JP) |
| Subject: | RE: Megavisa's settlement |

I take it from your below note that you are not aware of MV's claim that we owe them money ( over 2 million USD

Confidential

1

DECE0006463

D00313a

**Exhibit D1**

<u>Exhibit D2</u>

| | |
|---|---|
| **From:** | Petsalis, Spyro (SP) |
| **Sent:** | Monday, February 11, 2002 2:47 PM |
| **To:** | Yimoyines, John (JP) |
| **Subject:** | RE: Megavisa's settlement |

You may want to call Keith if needed to get some answers to this. I was not involved as product manager and keith and I never exchanged notes as it was believed that the issue was closed. His home number is 860-491-3708 and his email is keithllo@msn.com

Best Regards

*Spyro Petsalis*
Global Market Manager
Telecommunications Materials
☎ 203 794 2102
🖷 203 794 2984
✉ petsalsp@dow.com


-----Original Message-----
| | |
|---|---|
| **From:** | Yimoyines, John (JP) |
| **Sent:** | Monday, February 11, 2002 9:35 AM |
| **To:** | Wildi, Markus (M) |
| **Cc:** | Cheung, Lawrence (L); Ungerleider, Howard (HI); Petsalis, Spyro (SP); Tan, Horace (H) |
| **Subject:** | RE: Megavisa's settlement |

Markus,

The original attachment did not open, so I can't see Mega-Visa's position. As far as I am concerned W&C settled all issues related to the situation that Lawrence described. We paid two very large settlements (not claims) to the two largest customers who threatened and one who actually took court action against UCC in India at a sensitive time of the merger. The first settlement was supposed to end it, (MV negotiated on our part and took a share of the burden), but somehow ( and there was a certain smell to this) the second one cropped up late in the 3rd quarter of 2000. Lawrence is correct-the business felt that there was no basis for the complaints and wanted to fight the second one out in Indian court-we were over-ruled by the UCC legal department who escalated it to the UCC CEO. Although MV was present UCC personally negotiated and settled a grievance for almost $3MM for about $1MM. UCC bore the total cost and the customer dropped the court action. Mega-Visa assured us that there would be no further issues-they would handle them-it would be important to find out if we have this in writing. Keith Lloyd (business manager-retired) and Tom Laforge(attorney retired) handled the details of the settlement. The legal files must have transferred to Midland at closing-there is no one left in the legal department in Danbury to consult.

Again- not having seen the attachment-there should be no further issues, but Mega-Visa could make trouble by encouraging the small customers to start legal proceeding against Dow in India. During this time period (actually in mid- 1999, when it became obvious that we could make money in India) W&C withdrew from all business in India.


*Regards,*

*John Yimoyines*
*Business Vice President*
*Wire & Cable Compounds*

-----Original Message-----
| | |
|---|---|
| **From:** | Wildi, Markus (M) |
| **Sent:** | Monday, February 11, 2002 12:45 AM |
| **To:** | Cheung, Lawrence (L) |
| **Cc:** | Ravi, Muthukrishnan; Fox, Graham (G); Yimoyines, John (JP) |
| **Subject:** | RE: Megavisa's settlement |

I take it from your below note that you are not aware of MV's claim that we owe them money ( over 2 million USD

1

) because they claim that you do and we will have to negotiate with them or at least take a position. I agree with you that they are using this because we are canceling some of the products from their distributorship. Nevertheless, this will not go away on its own so we really need to get on top of this and have a position that the lawyers also agree upon . In line with this please read their claims carefully and put something on paper on the history , the communication that has been done with MV, any agreements or positions that we took to settle the dispute, in details what we have done to resolve this and at what customers, open issues, etc... We need to make that we have a position and that Ravi is up to date with all the information as he is the person communicating with them on the termination of the various products. We also want to make sure that we get our receivables ( not just the W&C ). It may be a good idea to have a phone conference between yourself, Ravi and myself to go over the details. Also, you should probably spend some time with Ravi and perhaps make a joint call at MV during your next visit which I believe is later this month. In summary, lets make sure that we are very active on this issue, that we funnel the info via or together with Ravi back to MV, and that we have all the past and present info and a position. Since you have the history on this case you will need to be the focal point for our business. We need to make sure that we do not give MV any excuse not to pay their total receivables to Dow. Thanks for taking the lead on this.

Regards,

*M. Wildi*

-----Original Message-----
**From:** Cheung, Lawrence (L)
**Sent:** Monday, February 11, 2002 8:46 AM
**To:** Wildi, Markus (M)
**Cc:** Tan, Horace (H); Ungerleider, Howard (HI); Yimoyines, John (JP); Ungerleider, Howard (HI); Babu, Vipul (VH); Cheung, Lawrence (L)
**Subject:** RE: Megavisa's settlement

Dear Markus,
The W&C cases were caused by the change of the inventory position (17,000 MT to almost zero) in USA & the sudden increase of market prices (C4 at US$430 to US$700). Asia was also suffered the financial crisis & the UCC Team had decided to move the volume to India but subsequently UCC regretted the decision & decided not to honor the contracts. The customers bought UCC to court & the Danbury legal dept. advised that we could not afford any risk in India & suggested we paid the claims. UCC decided to negotiate directly with customers instead of going via MegaVisa. UCC managed to settle some of the claims at a big discounts & some of them were small that UCC decided not to take care of them. No action or follow up from MegaVisa since then.
I was not aware of the termination of the negotiation of their distributorship of W&C business. The attached communication seems related more to the termination of other chemical business but they used W&C as the excuse as our business used to have bigger impact. Our business with them in the last two years was very small & the calculation was based on the income on the two peak years.
By copy to Vipul, pls advice our A/C receivables with MV & I believe that the amount is very small.
Regards
Lawrence

-----Original Message-----
**From:** Wildi, Markus (M)
**Sent:** Monday, February 11, 2002 2:02 AM
**To:** Cheung, Lawrence
**Cc:** Tan, Horace; Ungerleider, Howard; Yimoyines, John; Ungerleider, Howard
**Subject:** FW: Megavisa's settlement

Can you give me your position on the W&C claims. They are substantial. We should also limit our outstanding with MV until all claims are agreed upon. I do not want to be stuck with receivables that we cannot collect.

Regards,

*M. Wildi*

-----Original Message-----
**From:** Ravi, Muthukrishnan

2

| | |
|---|---|
| **Sent:** | Wednesday, February 06, 2002 12:08 PM |
| **To:** | Wildi, Markus (M) |
| **Cc:** | Percossi, Horacio; Fox, Graham (G) |
| **Subject:** | FW: Megavisa's settlement |

Markus,
attached is a note from megavisa. As you are aware we have communicated to them of our intent to discontinue using them as a channel for the perf chem & Chem business. This is a very sensitive stage for the transition as our credit exposure is still high. I am acting as a single point interface . Megavisa highlights three issues in the attached note pertaining to yet to be settled claims. All these reference to prior to merger period. They indicated to me that Lawrence Cheung is on top of these issues.If you agree we could adopt the following approach:
1. you take a business stand on these issues
2. I communicate to MV
3. We remain flexible on the timing of the communication
4. Suggest we avoid dialogue with MV. Singapore on this.

Appreciate your comments. I am replying to MV independently on the issue of notice period and compensation

-----Original Message-----
| | |
|---|---|
| **From:** | Ajay Mittal [mailto:mittal@megavisa.com] |
| **Sent:** | Tuesday, February 05, 2002 7:24 PM |
| **To:** | Ravi, Muthukrishnan |
| **Subject:** | Megavisa's settlement |

<< Message: Untitled Attachment >>   << File: Dow_OTS.doc >>   << File: loss of profit.xls >>

3

<u>**Exhibit D3**</u>
REDACTED

## Ylmoyines, John (JP)

**From:** Ylmoyines, John (JP)
**Sent:** Monday, February 11, 2002 8:35 AM
**To:** Wildi, Markus (M)
**Cc:** Cheung, Lawrence (L); Ungerleider, Howard (HI); Petsalis, Spyro (SP); Tan, Horace (H)
**Subject:** RE: Megavisa's settlement

Markus,

The original attachment did not open, so I can't see Mega-Visa's position. As far as I am concerned W&C settled all issues related to the situation that Lawrence described. We paid two very large settlements (not claims) to the two largest customers who threatened and one who actually took court action against UCC in India at a sensitive time of the merger. The first settlement was supposed to end it, (MV negotiated on our part and took a share of the burden), but somehow ( and there was a certain smell to this) the second one cropped up late in the 3rd quarter of 2000. Although MV was present UCC personally negotiated and settled a grievance for almost $3MM for about $1MM. UCC bore the total cost and the customer dropped the court action. Mega-Visa assured us that there would be no further issues-they would handle them-it would be important to find out if we have this in writing. Keith Lloyd (business manager-retired) and Tom Laforge(attorney retired) handled the details of the settlement. The legal files must have transferred to Midland at closing-there is no one left in the legal department in Danbury to consult.

Again- not having seen the attachment-there should be no further issues, but Mega-Visa could make trouble by encouraging the small customers to start legal proceeding against Dow in India. During this time period (actually in mid-1999, when it became obvious that we could make money in India) W&C withdrew from all business in India.

Regards,

*John Ylmoyines*
*Business Vice President*
*Wire & Cable Compounds*

-----Original Message-----
**From:** Wildi, Markus (M)
**Sent:** Monday, February 11, 2002 12:45 AM
**To:** Cheung, Lawrence (L)
**Cc:** Ravi, Muthukrishnan; Fox, Graham (G); Ylmoyines, John (JP)
**Subject:** RE: Megavisa's settlement

I take it from your below note that you are not aware of MV's claim that we owe them money ( over 2 million USD ) because they claim that you do and we will have to negotiate with them or at least take a position. I agree with you that they are using this because we are canceling some of the products from their distributorship. Nevertheless, this will not go away on its own so we really need to get on top of this and have a position that the lawyers also agree upon . In line with this please read their claims carefully and put something on paper on the history, the communication that has been done with MV, any agreements or positions that we took to settle the dispute, in details what we have done to resolve this and at what customers, open issues, etc... We need to make that we have a position and that Ravi is up to date with all the information as he is the person communicating with them on the termination of the various products. We also want to make sure that we get our receivables ( not just the W&C ). It may be a good idea to have a phone conference between yourself, Ravi and myself to go over the details. Also, you should probably spend some time with Ravi and perhaps make a joint call at MV during your next visit which I believe is later this month. In summary, lets make sure that we are very active on this issue, that we funnel the info via or together with Ravi back to MV, and that we have all the past and present info and a position. Since you have the history on this case you will need to be the focal point for our business. We need to make sure that we do not give MV any excuse not to pay their total receivables to Dow. Thanks for taking the lead on this.

Regards,

*M. Wildi*

6

D00313a

-----Original Message-----
**From:** Cheung, Lawrence (L)
**Sent:** Monday, February 11, 2002 8:46 AM
**To:** Wildi, Markus (M)
**Cc:** Tan, Horace (H); Ungerleider, Howard (HI); Yimoyines, John (JP); Ungerleider, Howard (HI); Babu, Vipu' (VH); Cheung, Lawrence (L)
**Subject:** RE: Megavisa's settlement

Dear Markus,
The W&C cases were caused by the change of the inventory position (17,000 MT to almost zero) in USA & the sudden increase of market prices (C4 at US$430 to US$700). Asia was also suffered the financial crisis & the UCC Team had decided to move the volume to India but subsequently UCC regretted the decision & decided not to honor the contracts. The customers bought UCC to court & the Danbury legal dept. advised that we could not afford any risk in India & suggested we paid the claims. UCC decided to negotiate directly with customers instead of going via MegaVisa. UCC managed to settle some of the claims at a big discounts & some of them were small that UCC decided not to take care of them. No action or follow up from MegaVisa since then.
I was not aware of the termination of the negotiation of their distributorship of W&C business. The attached communication seems related more to the termination of other chemical business but they used W&C as the excuse as our business used to have bigger impact. Our business with them in the last two years was very small & the calculation was based on the income on the two peak years.
By copy to Vipul, pls advice our A/C receivables with MV & I believe that the amount is very small.
Regards
Lawrence

-----Original Message-----
**From:** Wildi, Markus (M)
**Sent:** Monday, February 11, 2002 2:02 AM
**To:** Cheung, Lawrence
**Cc:** Tan, Horace; Ungerleider, Howard; Yimoyines, John; Ungerleider, Howard
**Subject:** FW: Megavisa's settlement

Can you give me your position on the W&C claims. They are substantial. We should also limit our outstanding with MV until all claims are agreed upon. I do not want to be stuck with receivables that we cannot collect.

Regards,

*M. Wildi*

-----Original Message-----
**From:** Ravi, Muthukrishnan
**Sent:** Wednesday, February 06, 2002 12:08 PM
**To:** Wildi, Markus (M)
**Cc:** Percossi, Horacio; Fox, Graham (G)
**Subject:** FW: Megavisa's settlement

Markus,
attached is a note from megavisa. As you are aware we have communicated to them of our intent to discontinue using them as a channel for the perf chem & Chem business. This is a very sensitive stage for the transition as our credit exposure is still high. I am acting as a single point interface. Megavisa highlights three issues in the attached note pertaining to yet to be settled claims. All these reference to prior to merger period. They indicated to me that Lawrence Cheung is on top of these issues.If you agree we could adopt the following approach:
1. you take a business stand on these issues
2. I communicate to MV
3. We remain flexible on the timing of the communication
4. Suggest we avoid dialogue with MV. Singapore on this.

Appreciate your comments. I am replying to MV independently on the issue of notice period and compensation

-----Original Message-----

7

D00314

**From:** Ajay Mittal [mailto:mittal@megavisa.com]
**Sent:** Tuesday, February 05, 2002 7:24 PM
**To:** Ravi, Muthukrishnan
**Subject:** Megavisa's settlement

<< Message: Untitled Attachment >>  << File: Dow_OTS.doc >>  << File: loss of profit.xls >>

**BINGHAM McCUTCHEN**

**Exhibit E**

Alicia L. Downey
Direct Phone: (617) 951-8187
alicia.downey@bingham.com

November 1, 2005

**BY TELECOPIER**

Andrew S. Marovitz, Esq. (via facsimile at 312-706-8651)
Dana S. Douglas, Esq. (via facsimile at 312-706-8662)
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Scott C. Solberg, Esq. (via facsimile at 312-692-1718)
Eimer Stahl Klevorn & Solberg LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

**Re:** *MM Global Services Inc. v. The Dow Chemical Co.*

Dear Counsel:

I am writing in further connection with Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents, regarding the documents identified as the India Orders Emails. *See, e.g.,* DEDC0037692. Recently, in the course of reviewing the case file, we became reacquainted with a document produced by plaintiffs at the inception of this case, which incorporates the India Orders Emails in their entirety. The pages are numbered M 5308, M 5313, M 5312, and M 5309. A copy is enclosed. As you can see, all of the material you claim to be privileged was fully disclosed, and any applicable privilege was therefore waived, upon transmittal of the India Orders Emails to Ajay Mittal on July 19, 2001.

The document received by Mr. Mittal in 2001 was also filed with the Court on November 12, 2002, as Exhibit 3 to Plaintiffs' Opposition to Defendants' Motions to Dismiss. Defendants made no objection to that submission on the grounds that the emails set forth therein were privileged. Your insistence, almost three years later, that the documents at issue contain privileged information and should be nearly totally redacted, or that they were inadvertently disclosed, cannot withstand scrutiny. The complete emails reveal, furthermore, the deliberate redaction of nonprivileged communications.

Bingham McCutchen LLP
150 Federal Street
Boston, MA
02110-1726

617.951.8000
617.951.8736 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

Andrew S. Marovitz, Esq.
Dana S. Douglas, Esq.
Scott C. Solberg, Esq.
November 1, 2005
Page 2 of 2

We note from the papers you served today in opposition to Plaintiffs' Motion to Compel that you maintain that the India Orders Emails are properly redacted. Please let us know whether, in light of the information above, you will withdraw your opposition immediately, as the continued assertion that the India Orders Emails remain privileged is plainly abusive.

Very truly yours,

Alicia L. Downey

Bingham McCutchen LLP
bingham.com

Enclosure

cc: Christopher J. Kelly, Esq.
Nathan Eimer, Esq.
Richard S. Taffet, Esq.
Craig A. Raabe, Esq.
Robert M. Langer, Esq.
 (all by facsimile, with enclosure)

LITDOCS/620662.1

From:     "Shyam Pednekar" <shyam@megavisa.com>
To:       "Ajay Mittal" <mittal@megavisa.com>
Sent:     Thursday, July 19, 2001 11.30 AM
Subject:  Fw: India Orders

----- Original Message -----
From: "Samtani, Arjun (AP)" <samtana@dow.com>
To: "'Ajay Mittal'" <mittal@megavisa.com>
Sent: Thursday, July 19, 2001 11:01 AM
Subject: FW: India Orders

> Ajay
>
> As per our discussion, it will be status quo for now. FYI, please.
>
> Rgds
> Arjun
> Tel : 65-7700-260
> Fax : 65-777-1269
> email  samtana@dow.com
>
> >   -----Original Message-----
> > From: Serizawa, Atsuko
> > Sent  Sunday, July 15, 2001 11:30 PM
> > To: Vildi, Markus (M); Kaminaga, Takashi; Jewsbury, Kenneth
> > Cc: Neunuebel, Edward; Ho, Patrick (PP); Samtani, Arjun (AP); Leong,
> > Julinda (J); Chia, Weng-Lock (WL)
> > Subject: RE: India Orders
> >
> > Currently in India, UCC products are being sold through Megavisa under
> > distributor agreement.  Actually Megavisa India, who has customers in
> > India and negotiates price, supply, etc, sends the orders to Megavisa
> > Singapore.  Then Megavisa Singapore places orders to Dow Singapore under
> > FOB term.
> >
> > Some question was asked if Dow India can now sell to Megavisa India
> > directly or not, which is the standard practice for Dow.
> >
> > However, upon consultation with legal, it was recommended not to change
> > the current practice / order process in India for UCC products.
> >
> > Kaminaga-san, I have already discussed with Arjun who is aware of this
> > decision.
> >
> > Ako
> > Ako Serizawa
> > Pacific Customer Interface
> > TEL  81-3-5460-2230
> > FAX : 81-3-5460-6249
> > E-mail: aserizawa@dow.com
> >
> >
> > -----Original Message-----
> > From: Neunuebel, Edward
> > Sent  Friday, July 06, 2001 11:58 PM
> > To: Serizawa, Atsuko

M 5308

09-Jul-02

```
>> Subject: RE: India Orders
>>
>> Country management and I are against this idea at the
>> present time due to the threat of litigation and the protest incident of a
>> couple of months ago.
>> Best regards,
>> Ed
>>
>> Edward R.J. Neunuebel       Dow Pacific Legal   -   Hong
>> Kong
>> Telephone: 852-2879-7385
>> E-mail:  eneunuebel@dow.com
>> Fax:  852-2827-1007
>> Mail: 47th Floor, Sun Hung Kai Centre, Wanchai, Hong Kong,
>> Peoples Republic of China
>>
>> -----Original Message-----
>> From: Serizawa, Atsuko
>> Sent: Friday, July 06, 2001 10:16 PM
>> To: Neunuebel, Edward
>> Subject: RE: India Orders
>>
>> Ed, thank you very much for such a speedy reply.
>> Then how about this question?
>>
>> * Actually Megavisa India has customers in India and negotiates price,
>> supply, etc
>> * Then Megavisa India will send that to Megavisa Singapore
>> * Megavisa Singapore is placing orders to Dow Singapore
>>
>> Then let me ask you this.
>> * Since Megavisa Singapore is a dummy company who negotiates nothing
>> and owns nothing, Dow India now would like to do the business with
>> Megavisa India direct. Assuming they get Dow India credit approval (and I
>> think they do), can Dow India supply UCC NA products to Megavisa India?
>>
>>
>> Ako
>> Ako Serizawa
>> Pacific Customer Interface
>> TEL: 81-3-5460-2230
>> FAX: 81-3-5460-6249
>> E-mail: aserizawa@dow.com
>>
>>
>> -----Original Message-----
>> From: Neunuebel, Edward
>> Sent: Friday, July 06, 2001 8:50 PM
>> To: Serizawa, Atsuko
>> Subject: RE: India Orders
>>
>> Ako  UCC products are to be sold to Megavisa per a
>> distribution agreement. Megavisa resells into India.
>>
>> Best regards,
>> Ed
>>
>> Edward R.J. Neunuebel       Dow Pacific Legal   -
```

M 5313

09-Jul-02

```
> > Hong Kong
> > Telephone: 852-2879-7385
> > E-mail: eneunuebel@dow.com
> > Fax: 852-2827-1007
> > Mail: 47th Floor, Sun Hung Kai Centre, Wanchai,
> > Hong Kong, Peoples Republic of China
> >
> > -----Original Message-----
> > From: Serizawa, Atsuko
> > Sent: Friday, July 06, 2001 6:01 PM
> > To: Neunuebel, Edward
> > Subject: India Orders
> >
> >
> > Ed, please see the attached. Since you are an
> > expert on India, may I seek your legal advice on what was UCC's position
> > on material sent to India from UCC NA and whether Dow would continue with.
> > that position. In other words, UCC could not sell "UCC" products into
> > India, now Dow India (Actually DCPL) can sell UCC labeled products to
> > India?
> >
> > UCC's position is:
> > "It really does not matter which is the Selling
> > Company, whether Dow or Carbide, but as long as the Shipper on record is
> > UCC NA or any UCC legal entities, shipment showing port of discharge as
> > "India" is not allowed. Thus CIF delivery terms to India ports is
> > disallowed. Shipper must be any Company other than UCC. If title
> > transfer has taken place between UCC NA to Dow NA & shipped out under
> > shipper "Dow". CIF terms is not an issue."
> >
> > Appreciate your advise.
> >
> >
> > Ako
> > Ako Serizawa
> > Pacific Customer Interface
> > TEL 81-3-5460-2230
> > FAX: 81-3-5460-6249
> > E-mail: aserizawa@dow.com
> >
> > -----Original Message-----
> > From: Samtani, Arjun (AP)
> > Sent: Tuesday, July 03, 2001 4:06 PM
> > To: Serizawa, Atsuko
> > Subject: India Orders
> >
> > Ako san
> >
> > Re our talk yesterday. Here is the background and
> > future plans in which legal issues may play a part. This will also help
> > me to confirm my understanding. You may choose to get clarifications from
> > legal (and other groups if required) as you think fit.
> >
> > Background
> > In the old UCC, all sales to India were made on a
> > FAS basis with the title transfer taking place out of India. Invoicing
> > was done by UCCS to MM Global Singapore (Megavisa Singapore) on a FAS
> > basis. MMG would then sell the product into India taking the credit
```

M 5312

09-Jul-02

```
risk
>> and also arranging for logistics.  The physical flow of the product was
>> always from UCC plant/stocking point to customer in India.  All
commercial
>> negotiations was done on a CIF basis and freight and commission was
backed
>> out to arrive at FAS basis.  Currently, Dow Chemical Pacific S'pore is
>> doing the same thing for UCC products.
>>
>> Proposed Plan
>> The plan by Q4, 2001 is to have Dow India take the
>> order from the customer (could be end user or Megavisa India) and enter
>> into Dow Europe (Benelux or other company) irrespective of the source,
>> i.e. ex-UCC plant, Singapore tank etc.  Credit approval would then be by
>> Dow India overseen by Dow Europe.  All orders would be on a CIF basis.
>> Possible legal issue here is that if the product is shipped out of UCC
>> plan which still operates under UCC legal entity, shipper on record
would
>> be UCC although the invoicing would be done by Dow India.  Also,
believe
>> UCC is still on R3 and will change to R2 in Q4 2001 to Q1 2002, so there
>> could be system disconnect as
>> both systems are on different platform.
>>
>> Rgd
>> Arjun
>> Tel   65-7700-260
>> Fax   65-777-1269
>> email : samtana@dow.com
>>
>>
>>
>>
>
```

M 5309

09-Jul-02

|   |
|---|
| M A Y E R |
| B R O W N |
| R O W E |
| & M A W |

November 10, 2005

Mayer, Brown, Rowe & Maw LLP<br>71 South Wacker Drive<br>Chicago, Illinois 60606-4637<br><br>Main Tel (312) 782-0600<br>Main Fax (312) 701-7711<br>www.mayerbrownrowe.com

Alicia L. Downey, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

**Dana S. Douglas**<br>Direct Tel (312) 701-7093<br>Direct Fax (312) 706-8662<br>dsdouglas@mayerbrownrowe.com

*MM Global Services, et al. v. The Dow Chemical Company, et al.*, Civil No. 3:02 CV 1107 (AVC)

Dear Alicia:

This letter responds to your November 7, 2005 letter.

The cost of re-producing the documents that were previously produced to Plaintiffs is estimated to be $385.00. This estimate includes the vendor-related costs associated with copying the documents to production CDs, the cost of the production CDs themselves, and shipping. Notably, Defendants have not included any of the costs associated with the conversion of these hardcopy documents into electronic .TIFF images as a part of this estimate.

Defendants expect to produce documents related to the merger integration early next week. Scott Solberg's October 11, 2005 letter identified documents that are representative of the documents referenced during Eugene Fisher's deposition.

Andy either has spoken or will speak with you concerning the availability of Vipal Babu and Mukul Kumar. It is my understanding that he has asked you to confirm your availability on either January 26 or 27 and February 2 or 3 for these one-day depositions.

Because Plaintiffs raised the India Orders email with the Court rather than discussing the document during the meet-and-confer process, Defendants will address the presence of a version of the document in Plaintiffs' document production in Defendants' Reply Brief to the Cross-Motion to Compel Return of Privileged Documents.

Mayer, Brown, Rowe & Maw LLP

Alicia L. Downey, Esq.
November 10, 2005
Page 2

Defendants expect to begin producing documents that had been redacted on grounds other than privilege next week. Defendants continue to revise our Privilege Log and will provide a revised version as soon as it is complete. Any additional documents will be produced on a rolling basis as soon as they are processed for production.

Sincerely,

*Dana S. Douglas*

Dana S. Douglas

cc: Nathan P. Eimer
    Christopher Kelly
    Scott C. Solberg
    Robert M. Langer
    Andrew S. Marovitz
    Craig A. Raabe
    Richard S. Taffet