UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. | CIVIL ACTION <br> NO. 3-02 CV 1107 (AVC) <br><br> November 16, 2005 |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION PURSUANT TO RULE 30**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd. and Megavisa Solutions (S) Pte. Ltd.*

I.   PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. (MMGS), MM Global Services Pte. Ltd. (MMGS-S), and MegaVisa Solutions (S) Pte. Ltd. (MVS) (collectively, "plaintiffs") hereby reply in further support of their Motion to Compel Production of Witnesses for Deposition Pursuant to Rule 30 (the "Motion to Compel"). Defendants[1] hinge their Opposition to Plaintiffs' Motion to Compel ("Def. Opp.") on the well-worn and misleading proclamation that "[t]his case involves the sale of products in India." Def. Opp. at 1. In fact, as this Court has already recognized on numerous occasions—despite defendants' incessant protestations to the contrary—this case involves far more than the sale of products in India.[2] Among other things, this case involves injuries plaintiffs sustained both in the United States and in India as a direct result of defendants' resale price-fixing conspiracy scheme in the United States, which was effectuated under their direction both domestically and abroad.[3] In that regard, on September 9, 2005, plaintiffs served defendants with a Notice of Deposition (the "Notice") pursuant to Rule 30 of the Federal Rules of Civil Procedure, calling for the depositions of Andrew Liveris, Michael Marinaccio, Graham

---

[1] Defendants The Dow Chemical Company (Dow), Union Carbide Corporation (UCC) and Union Carbide Asia Pacific, Inc. (UCAP) will be collectively referred to throughout this Brief as "defendants."

[2] *See, e.g.,* Ruling and Order on Defendants' Motion for Protective Order dated June 29, 2004, at 4 (noting plaintiffs' allegations tying defendants' resale price maintenance in India to broader pricing scheme "in the U.S. as well as in other jurisdictions"), and 8 (holding that the plaintiffs "must have the opportunity to discover documents regarding the sales of products outside of India in order to prove that the defendants' conduct had an effect on U.S. commerce"); *see also* August 17, 2004 Order on Motion for Clarification (holding that discovery relating to defendants' sales from all of their locations internationally "is probative and must be produced").

[3] As recently observed by the Southern District of New York, plaintiffs' claims in this case arise from their purchase of goods in the United States subject to defendants' resale price maintenance scheme, distinguishing this case from those in which antitrust claims have been dismissed for lack of subject matter jurisdiction. *Latino Quimica Amtex S.A. v. Akzo Nobel Chems. B.V.*, No. 03 civ. 10321 (HB)(DF), 2005 U.S. Dist. LEXIS 19788, at *19, 38-39 (S.D.N.Y. Sept. 19, 2005).

Fox, Muthukrishnan Ravi, Marcus Wildi, and Ashish Mitra. These men were key officers and/or employees of Dow or its wholly owned subsidiaries during the time periods relevant to plaintiffs' claims, and they are Dow's "managing agents" under applicable precedent.[4] Yet defendants have refused to produce these witnesses as requested, even as they continue to insist on reserving the right to call them to testify on defendants' behalf at trial or in support of summary judgment.

On October 13, 2005, plaintiffs filed with this Court its Motion to Compel the above six noticed depositions. That Motion laid out the reasons, both legal and factual, why the depositions should proceed as noticed. Defendants opposed that motion. For the reasons set forth in plaintiffs' original Motion and below, defendants should be compelled to produce each of these witnesses for their depositions in Hartford, Connecticut, as noticed.[5]

## II.   ARGUMENT

Notably, defendants concede (by their silence) that each of the noticed deponents possesses substantial personal knowledge and information about the core issues in this litigation. At the same time, they resist complying with the Notice on two grounds. First, they summarily contend—with neither citation nor analysis—that Ashish Mitra, Graham Fox, Muthukrishnan Ravi and Marcus Wildi are not "managing agents" of Dow because they are (or, in Mr. Mitra's case, were) employees of its foreign subsidiaries, rather than of Dow itself. Therefore, they

---

[4] Indeed, recent deposition testimony of a key defendant representative further confirms the central role these witnesses played in the events giving rise to this lawsuit. *See infra* at 5-6.

[5] Defendants have agreed to make Mr. Marinaccio available in Hartford, thus mooting Plaintiffs' Motion to Compel in this limited respect. Def. Opp. at 6. Defendants have separately moved this Court for a protective order precluding Mr. Liveris's deposition, and Plaintiffs have filed a separate brief opposing that motion. Plaintiffs address here only the claims raised by defendants with respect to the remaining four witnesses, Mssrs. Mitra, Fox, Ravi and Wildi.

claim, these witnesses are not subject to notice service under Rule 30(b)(1). Def. Opp. at 2, 3 n. 2.[6]

Second, defendants argue that Messrs. Fox, Ravi and Wildi should be deposed (if at all) in their respective countries of residence. Defendants advance the "general presumption" that non-residents be deposed in their district of residence, baselessly imply that plaintiffs are more concerned with their own convenience than with overall efficiency, and assert without substantiation that holding depositions in the forum will "be disruptive to the[ witnesses] and to their employers." Def. Opp. at 4. But they fail to dispute (or even to substantively engage) plaintiffs' demonstration that the equities in this case demand departure from any such presumption and warrant centralized depositions in the forum.

### A. Nothing in Defendants' Submission Undermines the Conclusion That Graham Fox, Muthukrishnan Ravi, Marcus Wildi and Ashish Mitra Are "Managing Agents" of Dow within the Meaning of Rule 30(b)(1).

In their opening brief, plaintiffs established that, under the applicable case-by-case, fact-intensive five-factor analysis, proposed deponents Fox, Ravi, Wildi and Mitra should be treated as Dow's "managing agents" for purposes of notice-only service under Rule 30(b)(1). *See* Pl. Mot. to Compel at 11-13. Defendants fail even to reference the established five-factor analysis, let alone make an attempt to rebut the plaintiffs' showing.

The full extent of defendants' "analysis" with respect to Mr. Mitra is their conclusory assertion that, as a former employee of a foreign affiliate, he simply cannot be a "managing agent." Def. Opp. at 2. But the point of the "managing agent" analysis is to determine whether someone <u>other</u> than a corporation's current officer or director is nevertheless subject to Rule 30(b). Whether an individual is a corporate party's managing agent is to be determined

---

[6] Thus, defendants implicitly concede that if this Court finds, even provisionally, that the proposed deponents are Dow's managing agents (as demonstrated in plaintiffs' opening brief and here), they are susceptible to service under Rule 30(b)(1) and must comply with the Notice.

3

pragmatically, not formulaically. *See Dubai Islamic Bank v. Citibank, N.A.*, No. 99 Civ. 1930 (RMB)(TH), 2002 WL 1159699, at *2 (S.D.N.Y. May 31, 2002). There is ample precedent for compelling Mr. Mitra's deposition, as various courts have allowed notice-only depositions of former employees and employees who are no longer working in a management capacity, finding them to be managing agents. *See Founding Church of Scientology of Washington, D.C. v. Webster*, 802 F.2d 1448 (D.C. Cir. 1986); *Dubai*, 2002 WL 1159699, at *3, 5-6 (collecting cases); *In re Manor Inv. Co.*, 43 F.R.D. 299 (S.D.N.Y. 1967); *Indep. Prod. Corp. v. Loew's, Inc.*, 24 F.R.D. 19 (S.D.N.Y. 1959); *Curry v. States Marine Corp. of Del.*, 16 F.R.D. 376 (S.D.N.Y. 1954). At the very least, plaintiffs should be provisionally permitted to depose Mr. Mitra, because defendants have not disclosed any facts about his post-employment relationship with Dow that sheds any light on their position that he is <u>not</u> its managing agent.

Defendants' analyses with respect to deponents Fox, Ravi and Wildi are even less substantive and less legally supportable. Defendants simply assert—again without analysis, and this time only in a footnote—that these proposed deponents are not Dow's managing agents because they are not employed by the parent corporation, named defendant Dow, but by foreign affiliates, such as Dow India. Def. Opp. at 3 n.2. In so arguing, they ignore both the substantive analysis and the numerous cases cited in plaintiffs' initial Motion, Pl. Motion to Compel at 10–13, while failing to offer any citations of their own on this point. Instead, they offer a single case for the irrelevant proposition that depositions of employees <u>other</u> <u>than</u> a party's officers, directors and managing agents must be obtained under either Rule 45 or Rule 28(d) and the Hague Convention. *Id.* (citing *Archer Daniels Midland, Co. v. Aon Risk Servs. Inc of Minn.*, 187 F.R.D. 578, 588 (D. Minn. 1999)).[7] Plaintiffs established in their Motion to Compel that the proposed

---

[7] In fact, "[t]he ordinary discovery provisions of the Federal Rules of Civil Procedure, rather than the more complicated procedures of the Hague Convention, generally apply to

4

deponents <u>are</u> defendants' managing agents and therefore subject to notice-only service under Rule 30(b)(1). Pl. Motion to Compel, at 10-13.

Defendants' failure is not surprising given the overwhelming evidence that Messrs. Fox, Ravi, Wildi and Mitra are, for all practical purposes, managing agents of Dow. During the relevant time period, they were all in positions that empowered them to exercise judgment and discretion in corporate matters. All have demonstrated their continuing ability to respond on behalf of and at the direction of Dow, and so can be "relied upon to give testimony . . . in response to the demands of the examining party." *Dubai*, 2002 WL 1159699, at *3. Further, while there may well be individuals of higher authority in the designated area of examination, the proposed deponents are not menial employees.[8] To the contrary, they are key managers with responsibility for and observation of facts and circumstances crucial to plaintiffs' case and were "responsib[le] . . . respecting the matters involved in the litigation." *Id.* They are, therefore, best suited to testify about their own conduct and statements related to the events at issue.

In his recent deposition, John P. Yimoyines, formerly Dow's business vice president for its Wire and Cable Compounds group, disclosed the central role each of the four witnesses played in defining defendants' relationship with plaintiffs. *See* Supplemental Declaration of Alicia L. Downey ("Suppl. Downey Decl.") <u>Exhibit 1</u> at 123-158, 175-181, 207-213 [111-143,

---

discovery of information in the custody or control of a party's foreign affiliate. This is true whether the information or witness is located in a foreign country, or whether the corporate entity from whom the discovery is sought is itself a party to the case." *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 78 (W.D.N.Y. 1996) (internal citations omitted) (granting motion to compel testimony from retired former employee of plaintiff's foreign affiliate where plaintiff and the affiliate were "corporate members of a unified worldwide business entity" under common ownership that had regular contact regarding product sales and marketing. *Id.* at 79.

[8] Moreover, given defendants' vehement resistance to Mr. Liveris's deposition, addressed in plaintiffs' concurrently filed Opposition to Defendants' Motion for Protective Order, it seems certain that they would resist any effort to depose these hypothetical "individuals of higher authority."

5

158-164, 187-193][9] (Excerpts of rough transcript of deposition of J. Yimoyines taken on November 10, 2005, "Yimoyines Tr."). Mr. Yimoyines described how Mr. Wildi, who was at the time Dow's commercial director for polyolefins and elastomers for Asia, met with former UCC representatives in "lockdown" sessions in the United States immediately after the merger, where he and others discussed not only the global Wire and Cable business strategy, but also specifically whether plaintiffs should be kept on as a distributor. *Id.* at 133-34, 141-42 [120-21, 127-28]. Mr. Yimoyines testified about communications before and after the lockdown involving each of Mssrs. Wildi, Ravi, Mitra and Fox relating to investigations of plaintiffs' business and assessments of whether and for how long MVS would be able to continue reselling any Dow product lines, including Wire and Cable. He described how it made him angry simply to read this correspondence and that it was "presumptuous" and "not authorized," because he had not been informed of any decision to evaluate MVS's Wire and Cable distributorship and, in his view, should have been, because the ultimate decision would be made by him and Wildi together. *E.g., id.* at 130-135, 146-147, 150 [118-22, 133, 135-36], Suppl. Downey Decl. Ex. 2, Defendants' Deposition Exhibit 25; *id.* Ex. 3, Plaintiffs' Deposition Exhibit 147.

Finally, at least with respect to Mssrs. Fox, Ravi and Wildi, their ongoing substantial responsibilities within the broader Dow organization demonstrate that they "can be expected to identify with the interests of the corporation." *Dubai*, 2002 WL 1159699, at *3. For all of these reasons, any doubt—if there can be any—as to whether Graham Fox, Muthukrishnan Ravi, Marcus Wildi or Ashish Mitra are defendants' "managing agents" should be resolved in favor of permitting discovery. *See id.* at *4; *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D 166, 171 (S.D.N.Y. 1985). At the very least, the Court should permit the depositions to proceed

---

[9] The pagination of the rough transcript includes the page numbers appearing in the text, followed, in brackets, by the page numbers appearing at the bottom of each printed page.

in order to confirm whether the deponents are, in fact, defendants' managing agents. *See Dubai*, 2002 WL 1159699, at *4 ("The witness's deposition testimony itself may well provide the best evidence of his or her status."); *Boss Mfg. Co. v. Hugo Boss AG*, No. 97CIV.8495(SHS)(MHD), 1999 WL 20828, at *4 (S.D.N.Y. Jan. 13, 1999) ("[A] determination that the witness is a managing agent may be made provisionally . . . "). The depositions of Mssrs. Mitra, Fax, Ravi and Wildi should therefore proceed as noticed.

B.  **The Equities in This Case Militate Against Multiple, Geographically Dispersed Depositions and in Favor of Depositions Centralized in the Forum State.**

In their Motion to Compel, plaintiffs proffered five distinct reasons why the equities in this case demand that each of the noticed depositions be taken in the forum. Pl. Mot. to Compel at 14-15. Defendants respond in two ways. First, they admonish that "[t]he convenience of counsel is less compelling than any hardship to the witness." Def. Opp. at 4 (quoting *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 108 (S.D.N.Y. 2001)). Second, defendants assert, with neither support nor elaboration, that "[o]rdering the [proposed deponents] to travel to the United States for depositions will be disruptive to them and their employers." Def. Opp. at 5. In fact, as established in plaintiffs' Motion to Compel, centralization of depositions in this forum will reduce burdens and costs to all involved, not merely plaintiffs' counsel. Honest and practical considerations of litigation efficiency militate against taking the depositions abroad.

The proposed deponents are scattered across no fewer than four nations. *See* Def. Opp. at 2-3. The shortest route of travel from the United States to the most distant deponent, stopping at each deponent's country of residence along the way, would involve crossing 12 time zones. *See* http://www.travel.com.hk/region/timezone.htm. It strains credulity to contend that any party's cost or convenience are best served by transporting two (or more) teams of attorneys (and their

retinues) to each of the witnesses' four international locations, when the depositions can far more easily be centralized in the forum, as directed by the Notice. *See Sugarhill*, 105 F.R.D. at 171-72 (while the convenience of counsel is not dispositive, it is a relevant factor in the overall analysis of deposition location); *Rapoca Energy Co., L.P. v. AMCI Export Corp.*, 199 F.R.D 191, 193 (W.D. Va . 2001) (location of parties' counsel one of six enumerated factors). After all, it is the parties that will have to bear the cost of their attorneys' international travel.

For these reasons, courts have not hesitated to centralize depositions in the forum when witnesses are scattered in disparate geographic locations. *See R.F. Baron Corp. v. Nuclear Fields (Australia) Pty. Ltd.*, No. 91 C 7610, 1992 WL 212602, at *2 (N.D. Ill. Aug. 28, 1992) (compelling depositions of Australian and Dutch defendants in Chicago and noting that "[t]he taking of defendants' depositions abroad would not appear to promote a just, speedy and inexpensive resolution of this litigation. Instead, the taking of these depositions in Chicago appears to be the more expeditious alternative."). Indeed, one of the cases upon which defendants rely observes that "[i]f [the] party-deponents were scattered throughout the country, we would be persuaded that conducting their depositions in [the forum] or some other central, convenient location would be the preferred course." *Archer Daniels*, 187 F.R.D. at 588 (cited in Def. Opp. at 3 n.2). The same reasoning applies equally here.

Nor is it reasonable for defendants to contend that the noticed deponents, managers within a multinational corporation, are strangers to international travel who would be unduly harmed by a brief United States trip for their depositions. *See, e.g., M & C Corp. v. Erwin Behr GmbH & Co.*, 165 F.R.D. 65, 67 (E.D. Mich. 1996) ("[T]his court finds that Erwin Behr's complaints of hardship are exaggerated. Erwin Behr concedes that several of the officers it intends to designate frequently travel to the United States to conduct business."). Mr. Liveris

admitted as much in his Affidavit, submitted in connection with defendants' Motion for a Protective Order with respect to his deposition. Liveris Aff. at ¶ 5.

Further, as observed in plaintiffs' Motion to Compel, the sad truth is that, if discovery up to this point is any indication, the noticed depositions will be marred by disputes requiring judicial intervention. Where, as here, discovery has been characterized by frequent discord, courts have not hesitated to order that depositions proceed in the forum. *See Custom Form Mfg., Inc. Omron Corp.*, 196 F.R.D. 333, 336-37 (N.D. Ind. 2000) ("What defendants' [position] fails to take into consideration, however, is that if the depositions do take place in Japan, this court's authority to intervene, if it should become necessary, is compromised . . . . First, the court's authority would be compromised by sovereignty issues . . . [and s]econd, the court's authority [would be] compromised by distance. Without a federal judge or magistrate in Japan, it would be difficult to resolve discovery disputes that might arise in this matter."); *see also Armsey v. Medshares Mgmt. Servs., Inc.*, 184 F.R.D. 569, 572 (W.D. Va. 1998) ("[B]ased on the tone of this litigation to date, I regret that I must anticipate the likelihood of additional discovery disputes arising which would necessitate resolution by the forum court. Therefore, I hold that Medshares [sic] corporate officers should be made available for depositions in this district.").

Plaintiffs believe that this Court would be understandably disinclined to receive discovery-related conference calls during Indian or Singaporean standard business hours. Nor would it be practical to suspend depositions pending judicial resolution each time a dispute arises, as such a practice would be an invitation to divisive behavior. This is yet another, independent reason why the noticed depositions should proceed as noticed.

Finally, in light of defendants' concession that each of these witnesses possesses centrally-important knowledge about the issues in this case, and their continuing insistence that

they may seek to introduce evidence through these witnesses in support of their own defenses, *see* Plaintiffs' Motion to Compel at 2-7, defendants should be compelled to produce these witnesses for their depositions in Connecticut in order to avoid undue surprise. In the alternative, if these witnesses are not compelled to testify in the forum, then defendants should be precluded from offering any evidence from them at trial.

### III.   CONCLUSION

For the reasons stated above and in plaintiffs' Motion to Compel, plaintiffs respectfully request that this Court compel the depositions of Graham Fox, Muthukrishnan Ravi, Marcus Wildi and Ashish Mitra in Hartford, Connecticut in accordance with the September 9, 2005 Notice.

Respectfully submitted,

**BINGHAM McCUTCHEN LLP,**

/s/ Alicia L. Downey / cmg

Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of November, 2005, a copy of the foregoing was sent by telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC 20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

/s/ Alicia L. Downey
Alicia L. Downey

cc: The Honorable Alfred V. Covello (via hand delivery)
United States District Court
450 Main Street
Hartford, CT 06103