UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC. <br><br> Defendants. | Civil No. 3:02 CV 1107 (AVC) <br><br><br> November 30, 2005 |

**DEFENDANT THE DOW CHEMICAL COMPANY'S REPLY IN SUPPORT OF
ITS MOTION FOR A PROTECTIVE ORDER PRECLUDING
THE DEPOSITION OF ANDREW N. LIVERIS**

Craig A. Raabe (ct 04116)
Edward J. Heath (ct 20992)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 05103-3497
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
71 S. Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company*

## INTRODUCTION

Nothing in plaintiffs' response refutes what The Dow Chemical Company ("TDCC") established in its earlier brief: that the deposition of its President and CEO, Mr. Andrew N. Liveris, would serve no purpose other than harassment and would provide no information that cannot be obtained from other deponents on a much less intrusive basis. Instead of confronting these central truths, plaintiffs are left to argue that Mr. Liveris's general, supervisory responsibility for certain businesses and his knowledge of the merger transaction between TDCC and Union Carbide Corporation ("UCC")—subsidiaries of which did business with plaintiffs—compels his testimony. Pl. Resp. 4, 7. In an effort to give this argument credence, plaintiffs are forced to engage in the pretense that their case for damages is not really about *their* Indian distributorship or *their* termination—*matters as to which they agree Mr. Liveris lacks knowledge*—but TDCC's supposed company-wide policies. *Id.* at 9. This, of course, is patently false and, in any event, would not supply any basis for the deposition.

Plaintiffs also urge, again incorrectly, that if Mr. Liveris has any modicum of "relevant knowledge," that is enough to depose him. *Id.* at 6. On this point, plaintiffs' argument entirely ignores both our opening brief and the settled standard for allowing an apex deposition to proceed—that the official has *unique* or *superior* personal knowledge of the matters in dispute *and* that other less burdensome avenues of obtaining the information sought have been exhausted. *See* TDCC Br. at 10-11. Plaintiffs do not even attempt to make this showing. Indeed, they never address why the depositions of other former or present senior company officials, identified as having knowledge on the same subjects as Mr. Liveris, are insufficient. Under the standards laid out in TDCC's opening brief—standards that are left completely undisputed in plaintiffs' response—Mr. Liveris's deposition should be quashed.

## PLAINTIFFS HAVE FAILED TO EXHAUST LESS INTRUSIVE MEANS OF DISCOVERY OR TO SHOW THAT MR. LIVERIS UNIQUELY POSSESSES PERSONAL KNOWLEDGE OF THE INFORMATION AT ISSUE.

We have demonstrated (at 11-15) both that Mr. Liveris has no unique or superior information probative of plaintiffs' claims related to their distributorship arrangement in India and that it is highly likely that plaintiffs may obtain the desired information through the depositions of lower-level employees. Plaintiffs respond, not with any contrary evidence on these matters, but by asserting that they have no burden in this regard, as long as Mr. Liveris may be considered a "potential source of discoverable information." Pl. Resp. 3, 6. That is not the law. As set forth in a case on which plaintiffs chiefly rely, *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001), their failure to establish that TDCC's President and CEO has "'some *unique* knowledge of the issues in the case'" makes it "'appropriate to preclude [the] redundant deposition of [this] highly-placed executive.'" *See also* TDCC Br. at 11-12, 13-14.

  **A.** **Any Generalized Knowledge Mr. Liveris May Have By Virtue Of His Job Responsibilities Is A Wholly Inadequate Basis On Which To Compel His Deposition.**

Plaintiffs' principal contention remains that Mr. Liveris must be deposed because, by virtue of the positions he has held within TDCC and his participation in the TDCC-UCC merger transaction, he must have some relevant knowledge. Pl. Resp. 3-4, 6-7. Yet nowhere do plaintiffs explain why either Mr. Liveris's part in any merger discussions or his oversight of the various global business units that manufactured the 150+ products (the "Products") supposedly at issue amounts to a *singular* knowledge of claims arising from *one* pre-merger distribution "agreement" related to *one* country such that the deposition is warranted. By this omission, plaintiffs effectively concede their design to burden defendants further in this litigation by

2

forcing CEO Liveris to sit for a deposition about his generalized knowledge about TDCC, despite the fact that they do not claim that he had any role in the termination of plaintiffs' distributorship or the prices at which Products would be sold in India. This places Mr. Liveris squarely in the category of high-level executives routinely granted protection because the proposed deposition would achieve little but "annoyance and harassment." *Cantor v. Equitable Life Assurance Soc'y*, No. CIV. A. 97-5711, 1998 WL 544962, at *2 (E.D. Pa. Aug. 27, 1998); *see In re Daisy Mfg. Co.*, 17 S.W. 3d 654, 657 (Tex. 2000) (CEO's "generalized opinion on the safety of one of his company's products" did not establish he was a superior source of information).

Unable to provide any legitimate justification for Mr. Liveris's testimony, plaintiffs manufacture several trumped-up reasons that his deposition should proceed. First, plaintiffs say TDCC's request for a protective order is "without elaboration" and so cannot be granted. Pl. Resp. 2. This simply ignores TDCC's submissions. Both Mr. Liveris's affidavit and TDCC's brief set out, in particular detail and with regard to specific allegations of the Complaint, why his deposition is improper—none of which plaintiffs refute (nor could they). Plaintiffs do not deny that Mr. Liveris had no involvement with the Indian distributorship agreement on which the Complaint is based. They do not deny that he had no communications with plaintiffs regarding that agreement—and thus is not alleged to have made any negligent misrepresentations. Nor do they deny that he had no role with respect to determining the price plaintiffs should charge for the Products or whether plaintiffs' orders would be fulfilled. *See* Liveris Aff., TDCC Br. Ex. 1; TDCC Br. 11-12. This completely substantiates, with "specific examples," Pl. Resp. 3, that Mr. Liveris lacks the requisite firsthand knowledge about plaintiffs' claims. *See, e.g. Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir. 1995) (senior official's affidavit testimony that he lacked personal

3

knowledge regarding plaintiff's employment or her discrimination claim supported issuance of protective order); *Consolidated Rail Corp. v. Primary Indus. Corp.*, Nos. 92 Civ. 4297 (PNL), 92 Civ. 6313 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (quashing depositions of president and vice-presidents because their affidavits established that their knowledge was limited to information gleaned from other company employees).

Plaintiffs next assert that whether Mr. Liveris had any direct dealings with them or direct knowledge regarding their Indian agreement is "immaterial" and "not dispositive." Pl. Resp. 6-7. Plaintiffs are wrong again. Only if Mr. Liveris were himself personally involved in any relationship with plaintiffs could they possibly show his purported knowledge to be anything but general and secondhand. Although plaintiffs charge that TDCC "take[s] liberties with the applicable precedent" (Pl. Resp. 8), the case law squarely supports TDCC's view. When, like Mr. Liveris, a high-level official attests to "no personal knowledge of the facts underlying the claims," courts have found that more than adequate to preclude the deposition. *Consolidated Rail*, 1993 WL 364471, at *1; *see also Colonial Capital Co. v. General Motors Corp.*, 29 F.R.D. 514, 518 (D. Conn. 1961) (prohibiting chairman's oral examination, "in light of [his] sworn statement that he has no personal knowledge of the matters involved in this litigation"); *Liberty Mut. Ins. Co. v. Superior Ct.*, 13 Cal. Rptr. 2d 363, 364-65 (App. 1992) (upholding protective order where president and CEO attested to not "personally" reviewing materials that would relate to plaintiff's claim).

In an effort to paint Mr. Liveris's knowledge as other than what it plainly is, plaintiffs submit that their "claims implicate questions of company-wide policy" and hence he may "possess * * * useful information." Pl. Resp. 9. Quite apart from the fact that whether a CEO has "useful information" is not the appropriate test, "this argument 'amount[s] to nothing more

4

than the simple, obvious recognition that the highest-ranking corporate officer of any corporation has the ultimate responsibility for all corporate decisions.'" *In re Daisy*, 17 S.W.3d at 659.

Even if this case were about a "UCC/Dow policy" regarding "fix[ing] resale prices" and not "the particular conduct to which defendants subjected plaintiffs" (Pl. Resp. 9), plaintiffs still have not articulated how Mr. Liveris's presumed awareness of company policies somehow imbues him with unique or superior knowledge about their particular claims. In fact, in *Six West*, from which plaintiffs principally extract their argument that Mr. Liveris may be deposed on "company policy" grounds, the court permitted the CEO's deposition only after plaintiffs had questioned lower level officials with similar knowledge and established that the CEO was not only substantially involved in the transactions at the heart of the antitrust and breach of contract claims, but also had unique knowledge regarding several relevant issues. 203 F.R.D. at 102-04 (plaintiff provided "sufficient evidence to support an inference that Sony's CEO had been well-informed about the [relevant company] policies" and had unique information to offer). None of that has happened here, and there is no parallel between this case and *Six West*. Unless the strict limitations imposed by the apex doctrine are to be stripped of all meaning, the sort of "[a]llegations of ultimate responsibility and access" such as plaintiffs assert "[just] are not enough."[1] *In re Daisy*, 17 S.W.3d at 659; *accord Murray v. County of Suffolk*, 212 F.R.D. 108,

---

[1] Even if an expansive "company policy" exception to the apex doctrine existed and were applicable here (neither of which is so), plaintiffs remain obligated to show that such information would otherwise be out of reach. *See Thomas*, 48 F.3d at 483 (plaintiff who wanted to examine IBM policy must "demonstrate that the information she seeks to obtain from [the senior official] could not be gathered from other IBM personnel"). Plaintiffs' contention that several of the cases cited in TDCC's opening brief are "readily distinguishable" because the claims were unrelated to "corporate policy" is therefore off the mark. Pl. Resp. at 9 & n.9. In each, it was precisely because the superiority of the executive's testimony had not been borne out through alternate discovery that the courts ordered the depositions quashed. *See e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (refusing to compel apex deposition due to "failure to [first] take advantage of * * * inexpensive, convenient method[s] of discovery"); *Stone v. Morton Int'l, Inc.*, 170 F.R.D. 498, 504 (D. Utah 1997) (same); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (upholding order vacating president's deposition and requiring "plaintiff to [begin by] depos[ing] the other employees that Upjohn indicated had more knowledge of the facts"). Plaintiffs have yet to conclude or pursue the alternate means of discovery available to them and, indeed, have chosen to ignore this aspect of the apex deposition test, as we discuss next. Part B, *infra* pp. 6-9; *see also* TDCC Br. 12-14.

109 (E.D.N.Y. 2002) (rejecting argument that head of police department should be deposed because "'he is the ultimate individual in care of department policy'").

Nothing contained in this Court's discovery orders changes the preceding analysis or otherwise permits Mr. Liveris's deposition. *See* Pl. Resp. 2, 4. That this Court has previously permitted plaintiffs to access documents regarding defendants' sales of products internationally or discussions of Products in India with respect to the merger transaction does not speak to whether Mr. Liveris has relevant and focused knowledge on these issues which could not be gathered from any other company personnel or from the documents themselves. *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 334-335 (M.D. Ala. 1991) (setting out "unequivocal" authority that other discovery must prove insufficient and it must be demonstrated that high-level executive has "unique personal knowledge" before he may be deposed). In short, there is no "reasonable indication of [Mr. Liveris's] personal knowledge of the case," and, on that basis alone, his deposition should be quashed. *Liberty*, 13 Cal. Rptr. 2d at 365.

### B. Plaintiffs Do Not, And Cannot, Explain Why They Are Unable To Obtain The Desired Information Through Less Burdensome Means Than Deposing TDCC's President and CEO.

Because plaintiffs can provide no substantive rationale for Mr. Liveris's testimony under the apex deposition test, they instead resort to accusing TDCC of looking to "unfairly exempt Mr. Liveris from the [discovery] rules" (Pl. Resp. 1) due solely to his "self-proclaimed importance to the organization" (*id.* at 8). That accusation is unfounded. First, the "importance" of TDCC's *president* and *CEO* to the operation of the company can hardly be dismissed as "self-proclaimed"; it is self-evident. Second, TDCC most certainly is not engaged in "obstruction." *Id.* at 1. TDCC agrees with plaintiffs that highly-placed executives are not automatically conferred with "immunity" from discovery (*id.* at 7), but before deposing a senior

6

official, the onus is on the requesting party to first inquire with lower personnel regarding the information desired. *E.g., Filetech, S.A. v. France Telecom, S.A.*, No. 95 CIV. 1848 (CSH), 1999 WL 92517, at *2 (S.D.N.Y. Feb. 17, 1999) (requiring plaintiff to first "explore [the] likelihood" that "lesser" company employees could supply information and then to reassess need to depose president). In this way, unduly burdensome and oppressive discovery prohibited by the Federal Rules is avoided, and the "uniqueness" of the executive's knowledge, as just discussed, is assured. Fed. R. Civ. P. 26(b)(1), (c).

Noticeably absent from plaintiffs' brief, however, is any mention at all of *why* the information they purportedly seek from Mr. Liveris is unavailable through alternative, less intrusive means. Plaintiffs must show both that they have exhausted these less intrusive discovery methods and that the methods have proven to be "unsatisfactory, insufficient or inadequate." *In re Daisy*, 17 S.W.2d at 656-57. Plaintiffs run roughshod over this requirement when they demand Mr. Liveris's deposition before they have deposed senior TDCC, UCC, and Union Carbide Pacific, Inc. ("UCAP") personnel with day-to-day responsibility for the Products. TDCC Br. 12-14. Given that nearly every one of these senior personnel was named in the same discovery responses that cite Mr. Liveris as an individual "with knowledge," it is critical to examine these officials first, if indeed the information plaintiffs seek is relevant at all. *See id.* at 4-6, 13.

Plaintiffs put great stock in the fact that one of the named individuals, John P. Yimoyines, a former TDCC vice-president for wire and cable who recently testified about that group, stated that he had "far less knowledge" about the TDCC performance chemicals business group for which Mr. Liveris was responsible from 2000-2003. Pl. Resp. 5. What plaintiffs conveniently omit from their brief is that Mr. Yimoyines also testified that the "best person" to consult about

7

the "structure" of the performance chemicals organization would be "*any* of the people who were in [it]." Yimoyines Trans. 79-80 (Pl. Resp., Suppl. Downey Decl. Ex.1) (emphasis added).[2] That leaves "four vice presidents reporting to Mr. Liveris" (Pl. Resp. 5) among those whose knowledge could be explored on the matter, and nothing demonstrably unique about what Mr. Liveris himself might contribute. *Salter*, 593 F.2d at 651 ("testimony of the other employees [must be] unsatisfactory" if high-ranking official is to be deposed).

Whether or not defendants' discovery responses identified every one of these vice presidents as having "relevant knowledge" has no bearing upon whether *only* Mr. Liveris could testify on "the structure and personnel" of performance chemicals during his tenure there.[3] Pl. Resp. 5. In any event, plaintiffs create a false significance out of the fact that Mr. Liveris is identified in TDCC's interrogatory answers. That plaintiffs were able to frame broad discovery requests eliciting an identification of scores of corporate officials, including the CEO, does nothing to demonstrate that the CEO's testimony has any special relevance. Indeed, it confirms the *non*-uniqueness of the CEO's testimony. *See* TDCC Br. 4-6. Mr. Liveris was named by TDCC in other interrogatory answers only because *plaintiffs* expressly asked for "identification of [his] job title," which amounts to no proof whatever that, with respect to plaintiffs' claims, his

---

[2] Mr. Yimoyines's lack of knowledge about chemicals is hardly surprising, in light of the fact that he was responsible for and was testifying on behalf of the wire and cable business, not the chemicals business. (The transcript references are to the numbers that appear at the bottom of each printed page.)

[3] Plaintiffs appear to believe that the fact that Mr. Liveris was promoted to President and CEO in 2004 bolsters their contention that TDCC is simply practicing "discovery abuse[]" in that he may have acquired relevant knowledge in his prior performance chemicals position. Pl. Resp. 7. Not so. The apex doctrine inquires into whether the executive has any unique personal knowledge of the matters in dispute, while evaluating any burden that may be imposed by the would-be deponent's responsibilities, importance, and schedule *at the time* his deposition is sought. A backward-looking assessment of the potential for "harassment" or "inconvenience" would make no sense. *See, e.g., Stone*, 170 F.R.D. at 499, 504 (although now promoted vice-president had been plaintiff's immediate superior at the time of the events complained of, his deposition would be quashed due to "slim indication of [vice-president's] participation or knowledge"); *Baine*, 141 F.R.D. at 334-35 (memorandum prepared by vice-president when he "was daily involved in General Motors' engineering activities" and that discussed performance of allegedly defective restraint system did not justify his deposition given the "proportions" of his current responsibilities and that his testimony may prove duplicative).

8

testimony would be superior to that of other of defendants' personnel. TDCC's Suppl. Resp. & Obj. to Pls. Second Set of Interrogs., at 6-7 (TDCC Br., Ex. 3). Finally, as we noted in our opening brief, when Mr. Liveris was named, TDCC made clear that the "scope" of his knowledge was necessarily limited by his duties as then-president of performance chemicals— "general[] * * * global responsibility for products and groups of products"—and thus he may have information at that macro-level, but not about plaintiffs' "deal" with an Asian UCC subsidiary or even any particular familiarity with the precise details of other individual Product sales. Third Suppl. Resp. & Obj. of Defs. to Pls. First Set of Personal Jurisdiction Document Requests and Interrogs., Ans. to Interrog. No. 4, at 11-12 (TDCC Br., Ex. 4).[4]

Regardless of what has been revealed in discovery thus far, it is routine for courts to defer depositions of CEOs and the most senior executives unless they become absolutely necessary. *E.g., Filetech*, 1999 WL 92517, at *2; *Murray*, 212 F.R.D. at 110. The cases plaintiffs cite directly support this conclusion, holding that unless and until it appears that the high-level executives "have unique knowledge of the pertinent issues that less exalted individuals could not furnish" (*id.* at *1), their depositions cannot go forward. *See, e.g., Six* West, 203 F.R.D. at 104-05; *First Fidelity Bancorp. v. National Union Fire Ins. Co.*, Civ. A. No. 90-1866, 1992 WL 46881, at *4 (E.D. Pa. Mar. 5, 1992) (before deposing high-level executives, plaintiff "must first attempt to depose lower level employees").

---

[4] Plaintiffs summarily state that documents produced reveal that Mr. Liveris "personally" communicated with others about "the sale and distribution of the * * * [P]roducts at issue * * * in India and elsewhere, pricing of the Products, and defendants' business dealings with plaintiffs and other distributors of the Products." Pl. Resp. 4. Significantly, plaintiffs do not discuss the contents of a single document showing this to be so and only cite document titles as "evidence" of Mr. Liveris's "knowledge." *See* TDCC Br. 14-15. As such, their reference to these documents neither proves nor suggests anything about whether Mr. Liveris may be deposed. By contrast, Mr. Liveris has specifically attested that he "had no involvement in any relationship with plaintiffs" and "no involvement in or personal knowledge of any discussion or decision regarding any price plaintiffs should charge customers for the sale of Products." TDCC Br. Ex. 1 ¶4.

9

## CONCLUSION

One would expect that plaintiffs targeting an opponent's CEO for deposition would articulate a clear, unique basis of his knowledge relevant to the dispute between the parties. One would further expect that plaintiffs would be able to argue that they tried to elicit the relevant information from others, but were unsuccessful in their efforts. Plaintiffs' inability to make either point here in their brief or their affidavit is highly revealing of the reasons they have noticed Mr. Liveris's deposition.

For all of the foregoing reasons and those stated in our opening memorandum, TDCC respectfully requests that the Court enter an order denying plaintiffs' motion to compel and precluding the deposition of TDCC's President and CEO, Andrew N. Liveris.

Respectfully submitted,

Craig A. Raabe

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 05103-3497
(860) 275-8304

Nathan P. Eimer (ct 23693)
Scott Solberg (phv 0234)
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC 20006-1157
(202) 263-3000

*Counsel for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## CERTIFICATE OF SERVICE

I, Craig A. Raabe, do hereby certify that I caused a true and correct copy of DEFENDANT THE DOW CHEMICAL COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF ANDREW N. LIVERIS to be served this date via courier on the following:

Robert M. Langer
WIGGIN & DANA LLP
One City Place
185 Asylum Street
Hartford, CT 06103-3402


and via overnight delivery on the following:

Richard S. Taffet
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689

Alicia L. Downey
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726


Dated: November 30, 2005

_____
Craig A. Raabe

11