UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, and UNION CARBIDE ASIA PACIFIC, INC. <br><br> Defendants. | Civil No. 3:02 CV 1107 (AVC) <br><br> December 8, 2005 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 37(a)(2)(B) TO COMPEL PRODUCTION OF DEFENDANTS' FINANCIAL STATEMENTS**

In October 2003, Defendants requested that Plaintiffs produce all financial statements in their possession, custody or control from 1993 to the time of the request. Plaintiffs indicated that they would do so. But Plaintiffs produced only a hodgepodge of statements, leaving significant gaps for each Plaintiff. In July 2005, Defendants identified specific sets of missing financial statements, primarily monthly financial reports, for each Plaintiff. Repeated follow-up efforts, in both correspondence and meet-and-confer sessions, have met with resistance.

There is no question that these documents are relevant to damages issues that are central to each of the remaining three claims in this litigation. Plaintiffs have refused to either confirm

that they have in fact produced all such documents in their possession or offer some reason why they should be relieved of compliance with this straightforward and minimally burdensome request. Defendants therefore respectfully move this Court for an order compelling each Plaintiff to produce all the financial reports Defendants requested in their first set of document requests on the merits, and in particular those documents specified by Defendants in July 2005, that are in that Plaintiff's possession, custody, or control.

## I.  FACTS

In October 2003, Defendants' first set of document requests called for, among other things: "All of your annual, quarterly, monthly, and other periodic financial statements, including, but not limited to, all balance sheets, income statements, accounting trial balances, and cash flow analyses, including all charts of accounts relating to such financial statements, from January 1, 1993 to the present." Defendants The Dow Chemical Company and Union Carbide Corporation's First Set of Document Requests on Merits Discovery (Oct. 9, 2003), ¶ 5.

Plaintiffs objected to the request on the grounds of overbreadth, burdensomeness, and irrelevance, but they declared that they "shall produce non-privileged documents in their possession, custody or control responsive to this request, to the extent such documents have not already been produced." Plaintiffs' Responses to Defendants' First Set of Document Requests on the Merits (Nov. 10, 2003), at 4. They subsequently produced financial statements for Plaintiffs on April 30, 2004 and, in response to a renewed request for financial statements, on November 23, 2004.    Their production, however, fell far short of fulfilling their discovery obligations. While Plaintiffs produced annual financial statements – in the case of MM Global Houston, only

2

unaudited compilations – not a single Plaintiff produced anything close to a full set of the requested monthly and quarterly financial statements. In fact, neither MM Global Singapore nor MegaVisa Singapore has produced a single audited monthly balance sheet, income statement, or cash flow statement, for any month in the entire Relevant Period, as defined by the Court's June 29, 2004 Order. While MM Global Houston has produced audited reports for some months in the Relevant Period for itself and its predecessor, Mega Global Services Inc. ("Mega Global Houston"), reports for numerous other months in the Relevant Period are missing. Moreover, MM Global Houston has produced no audited cash flow statements of any kind for any period in the Relevant Period.

Defendants raised this deficiency with Plaintiffs in late 2004 in a meet-and-confer session. In November 2004, Plaintiffs produced a subset of the financial statements they had produced already in April of the same year. They then mischaracterized this later production, telling the Court in January 2005 that they had "provided defendants with all relevant financial statements, as acknowledged by defendants' counsel during the December 22, 2004 conference call" (Ex. 1 (Letter from R. Taffet to Hon. J. Covello, January 13, 2005)), when in fact that production was limited to a set of previously produced annual statements, and did not contain the missing financial statements identified in the following paragraph.

On July 25, 2005, Defendants' counsel alerted Plaintiffs' counsel to Plaintiffs' manifest failure to produce responsive monthly balance sheets, income statements and cash flow statements. Ex. 2 (Letter from D.S. Douglas to A. Downey, July 25, 2005). Besides noting that Plaintiffs had failed to produce any financial statements whatever for their Indian affiliate

3

MegaVisa Marketing Solutions Ltd., the letter explicitly requested that Plaintiffs produce the following documents:

    a.    <u>MM Global Houston</u>

            i.    Audited monthly balance sheets for January 1994, February 1994, July 1994, March 1995, April 1995, January 1997, October 1998, and November 1998 for MM Global Houston and Mega Global Houston.

            ii.    Audited monthly income statements for January 1994, February 1994, March 1994, April 1994, July 1994, January 1997, October 1998, and November 1998 for MM Global Houston and Mega Global Houston.

            iii.    Audited cash flow statements falling within the Relevant Period for MM Global Houston and Mega Global Houston.

    b.    <u>MM Global Singapore</u>

            i.    Audited annual cash flow statements for 1993 and 1994.

            ii.    Audited monthly balance sheets, audited monthly income statements, and audited monthly cash flow statements, for the entire Relevant Period.

    c.    <u>MegaVisa Singapore</u>

            i.    Audited monthly balance sheets, audited monthly income statements, and audited monthly cash flow statements, for the entire Relevant Period.

*See* ex. 2, at 1-2.

Plaintiffs have not produced any documents at all in response to this narrowly focused request. They have not suggested that the requested documents do not exist. Instead, in two meet-and-confer sessions in September, Plaintiffs' counsel indicated that they are searching for these documents, but has raised two new obstacles to their production. First, Plaintiffs' counsel

asked Defendants' counsel to explain why they need access to the documents. In an attempt to resolve the issue without resorting to the Court, Defendants' counsel provided this explanation in a letter to Plaintiffs' counsel. Ex. 3 (Letter from A.S. Marovitz to R. Taffet, and A. Downey Oct. 5, 2005). But Plaintiffs' counsel also asserted that Defendants' counsel had waived any right to the monthly financial statements, and in fact had indicated that Plaintiffs would not need to produce them. *See id.*

Surprised by this new and unfounded assertion, Defendants' counsel asked Plaintiffs' counsel to corroborate it; Plaintiffs' counsel agreed to do so. *See id.* ("During last week's meet-and-confer, Plaintiffs committed to find some support for their statement that the parties previously agreed that Plaintiffs would not need to produce monthly financial statements."). As of this filing, Plaintiffs have provided no corroboration whatsoever.

## II.     ARGUMENT

The "purpose of discovery is to find out additional facts about a well-pleaded claim . . . ." *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 129 (D. Conn. 1997) (quoting *Stoner v. Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y.1991)). To that end, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). "Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery." Order at 5 (June 29, 2004) (citing *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991)). Thus, it is

proper to request the production of "any designated documents . . . which constitute or contain matters within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a).

There can be little question that these documents are relevant to Plaintiffs' three remaining claims, each of which hinges on proof of financial damages. Yet despite repeated requests, these basic financial documents have gone unproduced for over two years now. While calling on the Court to address illusory failures by Defendants to respond to their sweeping discovery demands, Plaintiffs themselves have brazenly defied Defendants' good-faith attempts to obtain this narrow and critical discovery. Unlike Plaintiffs' entreaties to this Court, this motion does not ask the Court to enforce geographically boundless discovery based on far-fetched theories of relevance. Instead, these financial statements are a readily identifiable and discrete set of documents that are pivotal to Defendants' ability to defend themselves against Plaintiffs' claims. They are unquestionably "relevant to the claim or defense of any party" under Rule 26(b)(1).

A. The Requested Financial Statements Are Plainly Relevant To This Litigation

In general, documents reflecting a plaintiff's finances are directly relevant to the calculation of damages. Courts have repeatedly held as much as to antitrust plaintiffs. In *Kreuzer v. American Academy of Periodontology*, 516 F. Supp. 1034 (D.D.C. 1981), the antitrust plaintiff dentist claimed that the defendant's anticompetitive practices damaged his practice, causing him to lose patients. The court granted the defendant's motion to compel the production of plaintiff's accounting and patient records, which were probative of "injury or economic damage." *Id.* at 1041. The court granted a similar motion for discovery of antitrust plaintiffs'

6

financial records in *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420 (N.D. Ill. 1977). There, even though the plaintiffs had articulated damages theories based solely on overcharges, the court concluded that the plaintiffs' financial statements "may be relevant to the subject matter of the litigation," as "it is certainly possible that some or all [plaintiffs] may seek damages predicated on alleged injury to their competitive position or business." *Id.* at 431. Finding that "[d]iscovery as to any permissible theory of damages is appropriate," the court granted the defendants' motion to compel. *Id.*

Because proof of damages is just as critical to the maintenance of claims for breach of contract and business torts such as negligent misrepresentation as to antitrust claims, plaintiffs' financial statements are equally probative as to those claims. In *Pvd Plast Mould Indus. Inc. v. Polymer Group, Inc.*, No. 2:98-2929-23, 2001 U.S. Dist. LEXIS 23804 (D.S.C. Feb. 1, 2001), the court awarded sanctions to the defendants after an Indian plaintiff repeatedly refused to comply with court orders compelling the production of documents related to its financial condition. While the plaintiff had made piecemeal productions of its financial records, the court found that the defendants had been prejudiced by plaintiff's failure to produce all of its financial records because the documents were relevant to damages. *Id.* at *37. Likewise, in *Harper v. Applied Power, Inc.*, No. 79-2612-M, 1980 U.S. Dist. Lexis 16314 (W.D. Tenn. Aug. 28, 1980), the court granted the motion of a defendant to compel the production of the financial statements of a firm owned by plaintiff and his family. Plaintiff had gone to work at the firm after his termination by defendant, which gave rise to Plaintiff's breach of contract and age discrimination claim. Holding that the firm's financial statements for the prior two years "may lead to

7

admissible evidence on the issue of mitigation of damages," the court granted the motion to compel. *Id.* at *6.

Here, just as with the antitrust claim, Defendants' experts need to examine Plaintiffs' financial statements in order to identify, analyze and verify Plaintiffs' contention that they were harmed by Defendants' alleged breaches and negligent misrepresentation. Plaintiffs have produced their annual financial statements for the Relevant Period, but annual statements are not an adequate substitute for the monthly statements that have remained unproduced for over two years. Not only are these statements just as relevant as the annual statements to Plaintiffs' damage claims, their narrower focus makes them even more probative.

An annual financial statement provides an aggregate portrait of a firm's finances over the course of a year, whereas a monthly statement allows the reader to verify what happened during a very brief period. If accurate, the annual statement should combine the information contained in its monthly statements for that year. However, monthly statements allow an examiner to view income and expenses and a firm's balance sheet more precisely; they allow the examiner to ascertain more specifically exactly when and how unusual gains and losses occurred than does the annual statement, which blends together the details of monthly statements.

Monthly statements will thus be highly important for Defendants' economic experts in order to analyze and understand Plaintiffs' damages claims. They will help enable Defendants' experts to determine whether, for example, damages that, under Plaintiffs' theories, had to have been incurred in a particular month, do not appear in Plaintiffs' financial reports, whether damages that Plaintiffs attribute to Defendants' conduct is in fact due to some cause unrelated to

Plaintiffs' claims, and the extent to which Plaintiffs were able to mitigate claimed damages. Claims of lost sales and lost profits will be much more readily verified in the light of monthly statements that relate directly to the periods in which those losses allegedly occurred.

      B.      Plaintiffs Have Failed to Provide Any Reason Why They Should Be Excused From their Obligation To Produce The Requested Financial Statements.

The party opposing discovery has the burden of demonstrating why that discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Plaintiffs have attempted to shift that burden to Defendants, demanding that Defendants persuade *them* why the requested financial statements are relevant to the litigation. Courts have repeatedly rejected such attempts to "arrogate to themselves the power to determine what constitutes a relevant document." *Alexander v. F.B.I.*, 186 F.R.D. 54, 59 (D.D.C. 1998) (citing *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 648 (N.D. Ind. 1991) (party cannot withhold documents from production based on its own "ex parte determination of relevancy")); *Hyundai Merchant Marine v. United States*, No. 89 Civ. 2025, 1991 WL 190563, at *2 (S.D.N.Y. Sept. 16, 1991) ("The relevance of particular documents is often not easy to determine in isolation and certainly cannot be unilaterally determined by the party opposing production.").

Plaintiffs have never offered any reason why they should be relieved of their obligation to produce the monthly and other periodic financial statements. They have not contended that the Document Request does not call for the statements. They have not denied that they possess or control such statements. Instead, Plaintiffs have sought to force Defendants to explain why they should comply with their discovery obligations. Defendants respectfully suggest that the time

has come for the Court to remind Plaintiffs that it, not they, is the arbiter of discoverability, and that they may not forestall discovery of such a narrow, easily retrievable and clearly relevant class of documents by demanding that Defendants satisfy *them* that they should be produced.

### III.   CONCLUSION

For the foregoing reasons, the Court should issue an order compelling each Plaintiff to produce all monthly and quarterly financial statements, including those identified in Paragraphs 9.a-9.c of the Motion, for any Plaintiff during the Relevant Period.

Respectfully submitted,

*[signature]*
Elizabeth R. Leong

| | |
|---|---|
| Craig A. Raabe (ct 04116) | Andrew S. Marovitz (ct 25409) |
| Jason M. Kuselias (ct20293) | Dana S. Douglas (ct 25412) |
| Elizabeth R. Leong (ct24453( | MAYER, BROWN, ROWE & MAW LLP |
| ROBINSON & COLE LLP | 71 S. Wacker Drive |
| 280 Trumbull Street | Chicago, Illinois 60606 |
| Hartford, CT 05103-3497 | (312) 782-0600 |
| (860) 275-8304 | |
| | Christopher J. Kelly (ct 25410) |
| Nathan P. Eimer (ct 23693) | MAYER, BROWN, ROWE & MAW LLP |
| Scott C. Solberg (phv 0234) | 1909 K Street, N.W. |
| EIMER STAHL KLEVORN & SOLBERG LLP | Washington, D.C. 20006-1157 |
| 224 South Michigan Avenue, Suite 1100 | (202) 263-3000 |
| Chicago, IL 60604 | |
| (312) 660-7600 | |

*Counsel for Defendants The Dow Chemical Company,
Union Carbide Corporation and Union Carbide Asia Pacific, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was hand-delivered on this 1st day of December, 2005, to:

>Robert M. Langer
>WIGGIN & DANA LLP
>One City Place
>185 Asylum Street
>Hartford, CT 06103-3402

and via overnight delivery on the following:

>Richard S. Taffet
>BINGHAM MCCUTCHEN LLP
>399 Park Avenue
>New York, NY 10022-4689
>
>Alicia L. Downey
>BINGHAM MCCUTCHEN LLP
>150 Federal Street
>Boston, MA 02110-1726
>
>Suzanne Wachsstock, Esq.
>Wiggin & Dana LLP
>400 Atlantic Street
>P.O. Box 110325
>Stamford, CT 06911-0325

_____
Elizabeth R. Leong