Exhibit 1

**BINGHAM McCUTCHEN**

Richard S. Taffet
Direct Phone: (212) 705-7729
Direct Fax: (212) 752-5378
richard.taffet@bingham.com

January 13, 2005

<u>Via Federal Express</u>

The Honorable Alfred V. Covello
United States District Court
District of Connecticut
450 Main Street
Hartford, CT 06103

Re: **MM Global Services et al. v. The Dow Chemical Company et al., No. 3:02 CV 1107 (AVC)**

Dear Judge Covello:

We submit this letter pursuant to your request, made during the status conference call held on December 22, 2004, for a summary of plaintiffs' repeated disclosures regarding the factual bases for their claim of negligent misrepresentation. As described below, such disclosures have been made in plaintiffs' pleadings, their discovery responses and in the course of the ceaseless motion practice pursued by defendants. Indeed, the issue raised by defendants now regarding the purported lack of particularity in plaintiffs' response to a specific interrogatory, is exactly the same as one that was unsuccessfully raised by defendants in their motions for a protective order, most recently on the motion adjudicated by the Court's June 29, 2004 Ruling and Order.

This showing lays bare the misstatements and mischaracterizations by defendants' counsel, which we pointed out during our December 22 conference call with the Court, that defendants have been deprived of adequate discovery responses, and that they lack sufficient information to prepare for and participate in the settlement conference with Judge Smith on January 18, 2005.

**Background**

The specific interrogatory at issue is Interrogatory No. 17 of The Dow Chemical Company's Third Set of Interrogatories. (A copy of plaintiffs' answers and objections to Dow's Third Set of Interrogatories, dated December 2, 2004, are attached at <u>Tab A</u> hereto.) It seeks facts concerning defendants' "interference with [plaintiffs'] business relationship" with end-user customers to whom plaintiffs resold defendants' products subject to the price-fixing conspiracy that is

Bingham McCutchen LLP
399 Park Avenue
New York, NY
10022-4689

212.705.7000
212.752.5378 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

The Honorable Alfred V. Covello
January 13, 2005
Page 2

the subject of this case. The interrogatory asks for the identity of each person, to plaintiffs' knowledge, who took part in the interference; the injury caused to plaintiffs by the interference; and the method used by plaintiffs to calculate their damages resulting from the interference.

Bingham McCutchen LLP
bingham.com

Plaintiffs objected generally to this interrogatory to the extent it requested information previously provided to defendants, or which can be derived by defendants from documents previously produced in this case. Plaintiffs more specifically objected on the ground that discovery is continuing concerning defendants' communications with end-users (indeed defendants have been wholly non-responsive in producing documents in this regard), and as a result plaintiffs have not been able to yet fully ascertain the nature and extent of defendants' unlawful conduct and the effect of such conduct on plaintiffs' business relationships with end-users. Further, plaintiffs expressly reserved the right to modify and/or supplement their answer to the interrogatory.

As stated during the December 22 status conference call, and as explained more fully below, the information sought by Interrogatory No. 17 has been previously requested by defendants (repeatedly), and all information known by plaintiffs at the present time has been produced to defendants in great detail. Further, as with all discovery, to the extent additional information is discovered by plaintiffs as the case proceeds, they will as required by the Federal Rules of Civil Procedure supplement their response. Indeed, as also stated during the December 22 status conference call, plaintiffs fully anticipate that there are additional facts regarding the subject matter of Interrogatory No. 17, and that such information and documents reflecting such information are fully in the possession of defendants, who have failed to produce such discovery, notwithstanding repeated demands for it since 2002. Moreover, as commented above, the position now asserted by defendants should be viewed as transparently pretextual, because it is the same as was previously proffered as the basis for defendants' unsuccessful motions for protective orders, and in each instance the arguments were found wanting.

Thus, as set forth below, defendants' position that they are not in possession of the requested information, and that they therefore may be unable to participate in good faith in the settlement conference before Judge Smith on January 18, 2005, is nonsense.[1] It is a position offered either for the purpose of misleading the

---

[1] The arguments relating to the settlement conference are also a replay of the same approach taken by defendants in connection with the original settlement

(Footnote Continued on Next Page.)

The Honorable Alfred V. Covello
January 13, 2005
Page 3

Court or it is a confirmation of defendants' failure or refusal to review the record in this case before baselessly accusing plaintiffs of not meeting their discovery obligations. In either case, defendants' position is without merit, and reveals just a continued refusal to engage in any good faith conduct in connection with this lawsuit.[2]

Bingham McCutchen LLP
bingham.com

**Prior Disclosures**

A review of plaintiffs' prior disclosures in this case exposes the baselessness of defendants' position.

    1.    Plaintiffs' First Amended Complaint (attached at Tab C) at ¶¶ 32-51. Defendants' tortious conduct is alleged with the inclusion of specific dates on which specific conduct occurred and specific names of individuals who engaged

---

(Footnote continued from Previous Page.)

conferences before Judge Smith on December 3, 2002, and on February 6 and March 20, 2003. Then, too, defendants attempted to avoid their obligation to partake in good faith settlement discussions by pretextually asserting that they could not reasonably discuss settlement because they lacked specific information. Just as that position was shown to be fallacious then, it remains equally so now.

[2] The nature of defendants' position is highlighted by their continuing failure to produce documents and amend interrogatories consistent with their repeated representations to plaintiffs and the Court. For example, since the December 22 conference call, notwithstanding defendants' ongoing statements of how much effort is being exerted, only today were there additional boxes of documents received. Similarly, notwithstanding plaintiffs' request, by letter dated November 22, 2004 (copy attached at Tab B), that defendants produce "merger-related" documents in advance of the January 18 settlement conference, the only documents produced (as acknowledged during the December 22 call) were of the nature of the merger agreement between UCC and Dow and a list of pending litigations identified during due diligence. No "merger related" documents concerning competitive issues or how the merger was intended to affect and did affect defendants' distribution of products and their relationship with plaintiffs have been produced. Innumerable times it has been discussed, including with the Court, that this is the type of "merger related" documents that are requested, yet defendants could provide no assurances even during the December 22 call that any further documents of this nature could be produced prior to March 1, 2005.

The Honorable Alfred V. Covello
January 13, 2005
Page 4

in such conduct. *See, e.g.* ¶ 41 (conduct of Ravi Muthukrishnan in February 2001 and on July 2, 2001); ¶ 42 (defendants' manipulation of billing practices in November 2001); ¶ 43 (defendants' manipulation of credit terms); ¶ 44 (conduct of Ashish Mitra in misrepresenting facts to plaintiffs' customers to undermine existing relationships); ¶ 47 (misrepresentations of Ravi Muthukrishan in December 2001, and by Ashish Mitra on December 27, 2001).

The significance of these allegations has also been pointed out in plaintiffs' motion papers. *E.g.*, Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Defendants' Motion to Dismiss Plaintiffs' Antitrust Claims for Lack of Subject Matter Jurisdiction, May 23, 2003, at 9 (referencing Amend. Compl., ¶¶ 40 and 47); Memorandum of Law in Opposition to the Motions of Defendants Union Carbide Asia Pacific, Inc., Union Carbide Customer Services PTE Ltd., and Dow Chemical Pacific (Singapore) PTE Ltd. to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), July 3, 2003, at 13-14 (quoting Amend. Compl. ¶¶ 32, 33, 42 and 44), 15 & n. 34 (referencing Amend. Compl. ¶¶ 32, 33, 42, 43 and 86) and 16 (referencing Amend. Compl. ¶¶ 13, 48 and 49).

2. Plaintiffs' Answers to Defendants' First Set of Interrogatories Related to Jurisdictional and Venue Issues, dated November 6, 2002 (attached at Tab <u>D</u>), at Answers to Interrogatories 9-11. Specific reference to the conduct of Messrs. Muthukrishnan and Mitra is discussed in Answer 9; to the manipulation of billing and credit terms in Answer 10, including by managers in Danbury, Connecticut identified in Answer 1; and to the manipulations of the billing and credit practices, as well as misrepresentations by defendants in Answer 11, including by John Yimoyines, Business Vice President of Wire and Cable in UCC's Performance Plastics Business Group and those reporting to him, and Messrs. Muthukrishanan and Mitra.

Defendants moved unsuccessfully to compel further answers to, *inter alia*, Interrogatories 9 and 10 in this round of discovery. In response, plaintiffs explained that they had identified and produced the documents that contained information in addition to that which was provided in the interrogatory answers, including as respects the source of defendants' misrepresentations, and that defendants' failure to produce responsive discovery limited plaintiffs' ability to provide more complete responses. *See* Plaintiffs' Memorandum in Opposition in Opposition to Defendants' Motion to Compel Discovery Responses and for a Protective Order, February 3, 2003, at 14-15, and Ex. 9 thereto.

The Honorable Alfred V. Covello
January 13, 2005
Page 5

Bingham McCutchen LLP
bingham.com

     3.    Plaintiffs' Answers and Objections to Defendants' First Set of Interrogatories on Merits Discovery, dated November 10, 2003 (attached at Tab E), at Answers to Interrogatories 7-9. Interrogatory 7 inquires about misrepresentations and omissions for which plaintiffs seek to hold defendants liable. In their answer, in addition to referring to Answers 9 and 10 to defendants First Set of Interrogatories Related to Jurisdictional and Venue Issues, plaintiffs direct defendants to approximately 790 pages of documents specifically identified by Bates number. Interrogatory 8 seeks the identification of each person having knowledge of the injuries and damages suffered by plaintiffs. In response, plaintiffs identify 101 individuals. Interrogatory 9 seeks the identification of the damages suffered by plaintiffs. Included in plaintiffs' response is the explanation of the methodology employed by plaintiffs to calculate their tort damages and the amount, at that time, of at least approximately $22.5 million. Plaintiffs further state in response to this interrogatory that they will produce documents, including financial records, supporting these calculations, which they subsequently did. *See* letter dated February 20, 2003 from Richard S. Taffet to William L. Webber [then defendants' counsel], without Exhibits (attached at Tab F). Plaintiffs have also provided defendants with all relevant financial statements, as acknowledged by defendants' counsel during the December 22, 2004 conference call. *See* transmittal letters from Richard S. Taffet to Andrew S. Marovitz, dated November 22 and 23, 2004 (attached at Tab G).

     4.    Plaintiffs' Supplemental Answers and Objections to Defendants' First Set of Interrogatories on Merits Discovery, dated April 30, 2004 (attached at Tab H), at Supplemental Answers 7 and 8. In Supplemental Answer 7, plaintiffs identify approximately an additional 160 documents produced by defendants that support plaintiffs' tort claim, bringing the total documents identified on this subject matter by Bates number to close to 1,000. In Supplemental Answer 8, plaintiffs provide specific information, pursuant to the parties' agreement, concerning the individuals with knowledge about the injuries and damages suffered by plaintiffs.

     5.    Discovery motions resulting in the June 29, 2004 Ruling and Order. In their briefing in opposition to defendants' most recent motion for a protective order and in support of their motion to compel, plaintiffs provided further explanations and identification of documents. *See, e.g.,* Plaintiffs' Opposition to Defendants' Motion for Protective Order and Memorandum in Support of Plaintiffs' Cross-Motion to Compel Production of Documents and Answers to Interrogatories, May 7, 2004, at 14-15 (discussion of April 26, 2001 memorandum concerning direct shipment by Dow to India as good way to proceed unaffected by Bhopal); 16 (explanation that defendants' own documents, including as submitted with memorandum, disclosed identity of plaintiffs'

The Honorable Alfred V. Covello
January 13, 2005
Page 6

Bingham McCutchen LLP
bingham.com

customers, and referencing Amend. Compl. ¶¶ 44 and 48); 19 & nn. 26 and 27 (discussion and identification of document concerning UCC and Dow plans prior to consummation of merger to drop plaintiffs). *See also* Plaintiffs' Reply Memorandum in Further Support of their Motion to Compel Production of Documents and Answers to Interrogatories, June 10, 2004, at 7 & n. 3 (discussion of evidence of defendants' contacts by defendants with plaintiffs' customers, including specifically identified documents, and need for full discovery from defendants on this issue).

6.    Letter from Richard S. Taffet to Andrew S. Marovitz, dated July 6, 2004 (attached at Tab I). This letter was provided to defendants pursuant to the Court's June 29, 2004 Ruling and Order at 10-11, and identified for defendants a list of plaintiffs' end-user customers (notwithstanding that defendants possessed this information). Even in light of plaintiffs' immediate compliance with the Court's June 29, 2004 Ruling and Order, defendants still have not produced the documents and information relating to defendants' contacts with plaintiffs' customers, the "merger-related" documents concerning defendants' plans to eliminate plaintiffs, and other documents concerning defendants' tortious conduct directed to plaintiffs' relationships with such customers, all as ordered by the June 29 Ruling and Order.

**Conclusion**

There can be no question that plaintiffs have met if not exceeded their obligations under the discovery rules, including in connection with Interrogatory No. 17 of Dow's Third Set of Interrogatories. As the case proceeds, defendants will have the opportunity to explore the factual bases of plaintiffs' claim further through depositions.[3] Defendants, however, have no ground to complain now regarding the thoroughness and completeness of plaintiffs disclosures.

Moreover, defendants have been provided with more than sufficient information to allow them to understand the bases for plaintiffs' tort claim and to prepare for the January 18, 2005 settlement conference. Defendants' protestations to the contrary are hollow and just a replay of prior arguments that were revealed to be

---

[3] Indeed, defendants themselves have indicated their intent to proceed with depositions on these subject matters. *See* Notices of Deposition, dated August 10, 2004, to each plaintiff, attached hereto at Tab J.

The Honorable Alfred V. Covello
January 13, 2005
Page 7

nothing more than a ploy to avoid good faith participation in the Court ordered settlement process.

Respectfully submitted,

Richard S. Taffet

cc: Andrew S. Marovitz, Esq. (by Federal Express)
Craig A. Raabe, Esq. (by Federal Express)
Nathan P. Eimer, Esq. (by Federal Express)
Robert M. Langer, Esq. (by Federal Express)
Christopher J. Kelly, Esq. (by Federal Express)

Bingham McCutchen LLP
bingham.com



MAYER
BROWN
ROWE
& MAW

July 25, 2005

BY FACSIMILE

Alicia L. Downey, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

Re: *MM Global Services, et al. v. The Dow Chemical Company, et al.*, Civil No. 3:02 CV 1107 (AVC)

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Dana S. Douglas
Direct Tel (312) 701-7093
Direct Fax (312) 706-8662
dsdouglas@mayerbrownrowe.com

Dear Alicia:

Our review of Plaintiffs' production reveals that a number of financial statements for Plaintiffs or Plaintiffs' parents or affiliates have not been produced. Defendants first requested these documents nearly two years ago. *See* Defendant The Dow Chemical Company and Union Carbide Corporation's First Set of Document Requests on Merits Discovery, October 9, 2003 ("First Request"). First Request No. 5 sought production of:

> All of your annual, quarterly, monthly, and other periodic financial statements, including, but not limited to, all balance sheets, income statements, accounting trial balances, and cash flow analyses, including all charts of accounts relating to such financial statements, from January 1, 1993 to the present.

*Id.* at 2-3. As you know, "your" is defined to refer to "Plaintiffs MM Global Services, Inc., MM Global Services Pte. Ltd., and Mega Visa Solutions (S) Pte. Ltd., both collectively and individually, including their officers, directors, employees, corporate parents, subsidiaries, affiliates, agents, and other persons acting or purporting to act on their behalf." *Id.* at 1 (Definition 2). At a minimum, this definition takes in MegaVisa Marketing Solutions Ltd. (f/k/a Visa Petrochemicals Pvt Ltd.).

Defendants renew this request and seek production of the following documents heretofore missing from Plaintiffs' production:

1. Audited Monthly and Annual Financial Statements, including each monthly Audited Balance Sheet, monthly Audited Income Statement, monthly Audited Cash Flow Statements, annual Audited Balance Sheet, annual Audited Income Statement, and annual Audited Cash Flow Statement, for MegaVisa Marketing Solutions Ltd. that falls within the Relevant Period as defined by the Court's June

Berlin Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Alicia L. Downey, Esq.
July 25, 2005
Page 2

      29, 2004 Order. To date, Plaintiffs have not produced to Defendants any such documents for MegaVisa Marketing Solutions Ltd.

2. Audited Monthly Balance Sheets for Mega Global Services/MM Global Services, Inc. for the months of January 1994; February 1994; July 1994; March 1995; April 1995; January 1997; October 1998; and November 1998.

3. Audited Monthly Income Statements for Mega Global Services/MM Global Services, Inc. for the months of January 1994; February 1994; March 1994; April 1994; July 1994; January 1997; October 1998; and November 1998.

4. Audited Cash Flow Statements for Mega Global Services/MM Global Services, Inc. that fall within the Relevant Period as defined by the Court's June 29, 2004 Order. To date, Plaintiffs have not produced to Defendants any such documents for either Mega Global Services or MM Global Services, Inc.

5. Audited Annual Cash Flow Statements for MegaVisa Solutions (S) Pte. Ltd. and MM Global Services Pte. Ltd. for the years 1993 and 1994.

6. Audited Monthly Financial Statements, including each monthly Audited Balance Sheet, monthly Audited Income Statement, and monthly Audited Cash Flow Statement for MegaVisa Solutions (S) Pte. Ltd. and MM Global Services Pte. Ltd. that falls within the Relevant Period as defined by the Court's June 29, 2004 Order. To date, Plaintiffs have not produced to Defendants any such documents for either MegaVisa Solutions (S) Pte. Ltd. or MM Global Services Pte. Ltd.

Please send us copies of these documents as soon as possible or provide an explanation for your failure to include these documents in your production. Thank you for your attention to this matter.

Sincerely,

*Dana A. Douglas*

Dana S. Douglas

cc: Robert M. Langer, Esq.
    Richard Taffet, Esq.
    Craig A. Raabe, Esq.
    Nathan P. Eimer, Esq.
    Christopher J. Kelly, Esq.
    Andrew S. Marovitz, Esq.

3

| MAYER |
|---|
| BROWN |
| ROWE |
| & MAW |

October 5, 2005

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Richard S. Taffet, Esq. (By Facsimile)
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Andrew S. Marovitz
Direct Tel (312) 701-7116
Direct Fax (312) 706-8651
amarovitz@mayerbrownrowe.com

Alicia L. Downey, Esq. (By E-Mail)
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

Re:   *MM Global Services, et al. v. The Dow Chemical Company, et al.*, Civil No. 3:02 CV 1107 (AVC)

Dear Richard and Alicia:

I write to follow-up on a few issues regarding our recent meet-and-confer sessions.

1.   In light of Ajay Mittal's unavailability for his scheduled deposition last month due to other business, Plaintiffs will produce Mr. Mittal in Hartford for three days of deposition on December 14-16. Defendants have not agreed that three days is sufficient to cover all of the 30(b)(6) topics for which Mr. Mittal has been designated.

2.   Plaintiffs have asked for "a written proffer concerning the need to depose Anil Mittal." Downey Letter at 2 (Aug. 31, 2005). As Alicia noted, Anil Mittal oversaw the operations of MM Global Services Pte. Ltd. in 1993. Downey Letter at 1 (Sept. 9, 2005). We further understand that Mr. Mittal served as a director of the company from 1996-2002; indeed, he signed (on behalf of the company) several reports that were produced in this litigation. Anil Mittal also was a member of the Mittal Finance Committee to which Ajay Mittal directed his request for credit – and which denied that request for credit – following Ajay Mittal's inability to receive all of the credit that he demanded from Defendants. Plaintiffs now cite Defendants' decisions on the extension of credit to Plaintiffs as a basis for their tort claim in this litigation.

All that said, while we are happy to provide some of the reasons that we wish to depose Mr. Mittal (this list is not intended to be exhaustive), it is not Defendants' burden to "establish any need to impose on Mr. Mittal or add to the time and expense already being spent on discovery." Downey Letter at 2 (Aug. 31, 2005). In light of all of these circumstances, any such burden to prevent Mr. Mittal's deposition is Plaintiffs'. Still, based upon your representations that Mr. Mittal does not travel to the United States and does not stay in hotel rooms, we have agreed to

Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles Manchester New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
Alicia L. Downey, Esq.
October 5, 2005
Page 2

accommodate him and take his deposition in London – where he has an apartment and where other depositions of other overseas witnesses in this case might be taken – or in India. You have not responded to that offer. Please let us know whether you intend to make him available or whether you will move for a protective order.

3.  As we advised, we will make available to Plaintiffs certain documents that Defendants previously produced but that Plaintiffs can no longer find. We mentioned last week that we would be pleased to make those hard copy documents available for your inspection where they are presently located: in our offices in Chicago. You have requested that we reproduce them in Hartford, which we will do provided that Plaintiffs agree to reimburse Defendants for the shipping costs to and from Chicago, as we do not have a set of the documents presently located in Hartford, and had no plans to send them there. Please let us know how you wish to proceed. Once we know whether we will be shipping the boxes to Hartford or you will be coming to Chicago, we can arrange dates for your inspection.

4.  During last week's meet-and-confer, Plaintiffs committed to find some support for their statement that the parties previously agreed that Plaintiffs would not need to produce monthly financial statements. (This topic was raised, again, in Dana Douglas's July 25, 2005 letter.) Plaintiffs also asked Defendants to describe why annual statements are insufficient.

Plaintiffs have provided insufficient detail to support the annual, 1993-2000 general sales data that they declare supports their claim for damages (*see* Taffet Letter Tab 9 (Feb. 20, 2003)). We need monthly sales data to help us replicate and understand the damages alleged, and to determine with more particularity the reasons for any lost profits claimed by Plaintiffs. We need more detailed data – not merely on an annual basis – to help us do that. In light of the highly specific sales figures demanded by Plaintiffs and actually produced by Defendants, we see no justification for Plaintiffs' decision to withhold relevant information that bears directly upon the purported value of their businesses and their claim for damages.

5.  During the past week, we have sent you the attachment report, 60+ boxes of in-process documents that you requested, the redacted version of PX 92, other redacted documents and an updated list of privileged documents to be returned. There remain several additional requests that we continue to work on, including an updated privilege log, information on certain merger documents and bates ranges, and the need to obtain several deposition dates in addition to the ones recently provided and now confirmed in your most recent letter.

6.  Finally, we asked, both orally and in writing, for the return of privileged documents inadvertently produced and identified in recent correspondence. Plaintiffs have rejected those requests. We had intended to discuss this with you further, but see that you have presented this issue to the Court in Plaintiffs' recent Reply. Accordingly, we will respond directly to the Court at the appropriate time.

Mayer, Brown, Rowe & Maw LLP

Richard S. Taffet, Esq.
Alicia L. Downey, Esq.
October 5, 2005
Page 3

Very truly yours,

Andrew S. Marovitz

cc: Robert M. Langer, Esq.
Craig A. Raabe, Esq.
Nathan P. Eimer, Esq. & Scott Solberg, Esq.
Christopher J. Kelly, Esq.
Dana S. Douglas, Esq.