UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., AND MEGAVISA SOLUTIONS (S) PTE, LTD.,<br><br>                     Plaintiffs,<br><br>       v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>                   Defendants. | CIVIL ACTION<br>NO. 3-02 CV 1107 (AVC)<br><br><br>January 6, 2006 |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' AMENDED MOTION TO COMPEL PRODUCTION OF PLAINTIFFS' FINANCIAL STATEMENTS

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd.*
*and Megavisa Solutions (S) Pte. Ltd.*

## I.    PRELIMINARY STATEMENT

Plaintiffs MM Global Services, Inc. (MMGS), MM Global Services Pte. Ltd. (MMGS-S), and MegaVisa Solutions (S) Pte. Ltd. (MVS) (collectively, "plaintiffs") hereby oppose Defendants' Amended Motion to Compel Production of Plaintiffs' Financial Statements (the "Motion") as moot, as well as procedurally improper. Little would be served by a detailed, point-by-point response to defendants'[1] distorted recitation of the communications that supposedly compelled them to file their Motion. The Motion is moot. There is no dispute on which the Court need rule. Plaintiffs undertook to produce, have produced, and will produce whatever responsive financial statements are in their possession, custody or control, even while maintaining that many of the requested documents are irrelevant.[2]

Furthermore, plaintiffs are investigating and responding—although not instantaneously as defendants' counsel would like—to inquiries concerning whether additional responsive financial statements might exist. For example, in the recent 30(b)(6) deposition of Ajay Mittal on December 14-16, 2005, defendants' counsel noticed that certain annual financial statements appeared to be missing pages. Plaintiffs supplied the pages in question (which had simply been overlooked in the process of compiling the document production) on December 23, 2005.

This response time of less than one week should be compared to the months-long delays in defendants' responses to plaintiffs' discovery questions.[3] Likewise, more than eighteen

---

[1] The Dow Chemical Company (Dow), Union Carbide Corporation (UCC), and Union Carbide Asia Pacific, Inc. (UCAP) are referred to herein as "defendants."

[2] *See* Exhibit A hereto for a detailed listing of the financial statements produced by plaintiffs to date.

[3] *See, e.g.*, Memorandum in Support of Plaintiffs' Cross-Motion to Compel Further Responses to Discovery, to Remove "Counsel Only" Designations, and for Sanctions (Aug. 5,

months after the Court issued its June 29, 2004 discovery Order, and in response to questions

raised by plaintiffs in the fall of 2004, defendants are still supplementing their production of

"merger-related" documents, attributing the delay to vendor errors and the like. *See* Exhibit B,

Letter from A. Marovitz to A. Downey, dated December 20, 2005. In the same vein, plaintiffs

did not receive a privilege log from defendants until late July 2005—five months after

defendants were supposed to have completed their document production. After plaintiffs

challenged numerous privilege designations in August 2005, defendants admitted that hundreds

of designations were in fact improper. Yet it is now January 2006, and defendants have still not

produced a revised privilege log.

Defendants' Motion is not only moot but procedurally defective. In violation of Local

Rule 37(a)(2), defendants did not confer with plaintiffs' counsel "in a good faith effort to

eliminate or reduce the area of controversy" before filing their Motion. Had they done so, they

would have discovered that many documents they demanded had been produced, while others

either did not exist, were no longer in plaintiffs' possession, or were on the verge of being

produced independent of the filing of the motion.

At bottom, defendants have only two complaints about plaintiffs' production of financial

statements: (1) Plaintiffs questioned defendants' need for certain documents in a good faith

attempt to reduce the burden of further investigation; and (2) Plaintiffs have not been able to

verify, as quickly as defendants would like, that certain categories of requested documents were

not generated, maintained, or preserved in the ordinary course of their business. Neither of these

grievances, even if they were legitimate (and they are not), rises to the level of requiring Court

intervention. Defendants' Motion should be denied.

---

2005); Memorandum in Support of Plaintiffs' Motion to Compel Production of Improperly
Withheld and Redacted Documents (Oct. 11, 2005).

## II.    ARGUMENT

### A.    Defendants' Motion is Moot.

The Motion should be denied as moot. Plaintiffs have undertaken to produce, and have produced, numerous documents responsive to the request at issue, including the annual and monthly financial records in their possession. Any suggestion that plaintiffs are intentionally withholding responsive financial records is baseless speculation. Among other things, plaintiffs have produced:

- The audited monthly balance sheet and income statement for Mega Global Services, Inc. (predecessor to MMGS) for March 1994 (*see* Def. Mot. at page 3, Sections 8.a.i. and ii.) were produced as part of a consolidated balance sheet at M 10193.

- The audited income statements for Mega Global Services, Inc. (predecessor to MMGS) for January - February 1994 (*see* Def. Mot. at page 3, Section 8.a.i.) were produced as part of a consolidated balance sheet at M 10193.

- The audited monthly balance sheet and income statement for MMGS for October 1998 (*see* Def. Mot. at page 3, Sections 8.a.i. and ii.) was produced at M 09375.

- The audited monthly balance sheet for MMGS for March 1995 (*see* Def. Mot. at page 3, Section 8.a.i.) was produced at M 09622.

- The audited monthly balance sheet for MMGS for April 1995 (*see* Def. Mot. at page 3, Section 8.a.i.) was produced at M 09617.

- The annual financial statements for non-party MegaVisa Marketing Solutions Ltd. (*see* Def. Brief at pages 3-4) for 1995 to 2002 were produced at MM 000512 - MM 000647.

In the most recent 30(b)(6) deposition of plaintiffs taken December 14-16, 2005, Ajay Mittal testified that monthly records of the type sought by defendants were not retained in the ordinary course of business beyond the period of time required to perform the companies' annual audits. More importantly, to the extent such monthly reports still exist and are in plaintiffs' possession despite this practice, they have been produced. As and when any additional monthly

reports come to light, plaintiffs will produce them as promptly as practicable (as they have to date). At the same time, of course, plaintiffs cannot produce what does not exist.

### B.     Defendants' Motion Violates the Local Rules.

Ignoring the requirements of the Local Rules, defendants counsel failed to confer with plaintiffs' counsel "in a good faith effort to eliminate or reduce the area of controversy" before filing the Motion. *See* D. Conn. L. Civ. R. 37(a)(2). Neither Defendants' Motion nor their Amended Motion is accompanied by an "affidavit [of counsel] certifying that he or she has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without intervention of the Court, and has been unable to reach such an agreement." Instead, the Motion and the subsequently filed Amended Motion each contain a footnote stating, "The undersigned counsel certifies that Defendants have conferred and attempted to confer with counsel for Plaintiffs in an effort to secure the requested financial statements without court action, but the parties have been unable to reach a resolution on this dispute." This artfully drafted certification does not meet the requirements of the Local Rule, not least because Ms. Leong, "the undersigned counsel," did not confer (or, as far as we can tell, attempt to confer) with plaintiffs' counsel.

Furthermore, as is clear from defendants' submission, they never proposed, much less conferred in good faith about, any sort of agreement or compromise that might have avoided their Motion. In fact, a simple telephone call would have assured defendants that plaintiffs were diligently addressing their follow-up requests, even in the midst of several weeks consumed with trying to get answers from defendants to numerous, much more pressing discovery concerns about defendants' document production and the identity and scheduling of their 30(b)(6)

- 4 -

witnesses; preparing for, taking, and defending depositions; and briefing more than a dozen discovery motions and cross-motions.

Defendants' failure to comply with the Local Rules has led to precisely the situation the Rules were meant to avoid—a precipitously-filed motion to compel documents as to which there is no real dispute. Their Motion should be denied.

### C.    Defendants Should Be Ordered to Reimburse Plaintiffs for the Fees and Expenses Incurred in Responding to Their Unnecessary Motion.

Defendants failed to abide by the Local Rules, demanded judicial intervention to resolve a nonexistent dispute, and caused plaintiffs to incur time and expense in responding to an unnecessary Motion. *See* Fed. R. Civ. P. 37(a)(4)(B) (granting the court authority to order the moving party to pay costs and attorneys' fees if the motion to compel is denied). It is clear that defendants' real interest lies not in obtaining clarification about the status of a handful of financial records, but in diverting the Court's attention away from their own pervasive and systematic discovery misconduct. The timing of the Motion speaks volumes, as it was filed in the wake of plaintiffs' detailed factual submissions exposing defendants' willful violations of Court Orders and their discovery obligations. This fact, too, warrants an award of fees and costs in addition to denial of the Motion. *See Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999) (sanctions are appropriate when motions are motivated by improper purposes, such as harassment and delay).

### III.    CONCLUSION

As set forth above, defendants' Motion is moot, and should be denied in its entirety. Furthermore, pursuant to Rule 37(a)(4)(B), defendants' should be required to pay plaintiffs' reasonable attorneys' fees and costs incurred in responding to a wholly unnecessary and ill-conceived Motion.

-5-

Respectfully submitted,

**BINGHAM McCUTCHEN LLP,**

*Alicia L. Downey / cmf*

Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

- 6 -

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of January, 2006, a copy of the foregoing was sent by

telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT  06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL  60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC  20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

_____
Robert M. Langer

cc:     The Honorable Alfred V. Covello (via hand delivery)
        United States District Court
        450 Main Street
        Hartford, CT  06103

## EXHIBIT A

**MM Global Services, Inc. (and its predecessor, Mega Global Services, Inc.)**

- Balance Sheet and Related Statement of Income from March 10, 1993 to December 31, 1993 (M 08763, MM 000129)*
- Balance Sheet as of March 31, 1994 and the Related Statement of Income (M 10193)
- Balance Sheet as of May 31, 1994 and the Related Statement of Income (M 09099)
- Balance Sheet as of June 30, 1994 and the Related Statement of Income (M 09083)
- Balance Sheet as of August 31, 1994 and the Related Statement of Income (M 09071)
- Balance Sheet as of September 30, 1994 and the Related Statement of Income (M 09053)
- Balance Sheet as of October 31, 1994 and the Related Statement of Income (M 09047)
- Balance Sheet as of November 30, 1994 and the Related Statement of Income (M 09040)
- Balance Sheet as of December 31, 1994 and the Related Statement of Income for Year Ended (M 09004, MM 000130)
- Balance Sheet as of January 31, 1995 and the Related Statement of Income (M 09632)
- Balance Sheet as of February 28, 1995 and the Related Statement of Income (M 09627)
- Balance Sheet as of March 31, 1995 and the Related Statement of Income (M 09622)
- Balance Sheet as of April 30, 1995 and the Related Statement of Income (M 09617)
- Balance Sheet as of May 31, 1995 and the Related Statement of Income (M 09612)
- Balance Sheet as of June 30, 1995 and the Related Statement of Income (M 09607)
- Balance Sheet as of July 31, 1995 and the Related Statement of Income (M 09601)
- Balance Sheet as of August 31, 1995 and the Related Statement of Income (M 09596)
- Balance Sheet as of September 30, 1995 and the Related Statement of Income (M 09592)
- Balance Sheet as of October 31, 1995 and the Related Statement of Income (M 09586)
- Balance Sheet as of November 30, 1995 and the Related Statement of Income (M 09581)
- Balance Sheet as of December 31, 1995 and the Related Statement of Income for Year Ended (M 09566, MM 000133)
- Balance Sheet as of January 31, 1996 and the Related Statement of Income (M 09555)
- Balance Sheet as of February 29, 1996 and the Related Statement of Income (M 09548)
- Balance Sheet as of March 31, 1996 and the Related Statement of Income (M 09543)
- Balance Sheet as of April 30, 1996 and the Related Statement of Income (M 09538)
- Balance Sheet as of May 31, 1996 and the Related Statement of Income (M 09533)
- Balance Sheet as of June 30, 1996 and the Related Statement of Income (M 09528)
- Balance Sheet as of July 31, 1996 and the Related Statement of Income (M 09523)
- Balance Sheet as of August 31, 1996 and the Related Statement of Income (M 09519)
- Balance Sheet as of September 30, 1996 and the Related Statement of Income (M 09514)
- Balance Sheet as of October 31, 1996 and the Related Statement of Income (M 09509)
- Balance Sheet as of November 30, 1996 and the Related Statement of Income (M 09503)
- Balance Sheet as of December 31, 1996 and the Related Statement of Income for Year Ended (M 09491, MM 000136)
- Balance Sheet as of February 28, 1997 and the Related Statement of Income (M 09486)
- Balance Sheet as of March 31, 1997 and the Related Statement of Income (M 09481)
- Balance Sheet as of April 30, 1997 and the Related Statement of Income (M 09475)
- Balance Sheet as of May 31, 1997 and the Related Statement of Income (M 09470)

- Balance Sheet as of June 30, 1997 and the Related Statement of Income (M 09465)
- Balance Sheet as of July 31, 1997 and the Related Statement of Income (M 09460)
- Balance Sheet as of August 31, 1997 and the Related Statement of Income (M 09455)
- Balance Sheet as of September 30, 1997 and the Related Statement of Income (M 09450)
- Balance Sheet as of October 31, 1997 and the Related Statement of Income (M 09443)
- Balance Sheet as of November 30, 1997 and the Related Statement of Income (M 09436)
- Balance Sheet as of December 31, 1997 and the Related Statement of Income for Year Ended (M 09420, MM 000140)
- Balance Sheet as of January 31, 1998 and the Related Statement of Income (M 09414)
- Balance Sheet as of February 28, 1998 and the Related Statement of Income (M 09408)
- Balance Sheet as of March 31, 1998 and the Related Statement of Income (M 09402)
- Balance Sheet as of April 30, 1998 and the Related Statement of Income (M 09396)
- Balance Sheet as of May 31, 1998 and the Related Statement of Income (M 09391)
- Balance Sheet as of June 30, 1998 and the Related Statement of Income (M 09386)
- Balance Sheet as of July 31, 1998 and the Related Statement of Income (M 09383)
- Balance Sheet as of August 31, 1998 and the Related Statement of Income (M 09380)
- Balance Sheet as of September 30, 1998 and the Related Statement of Income (M 09377)
- Balance Sheet as of October 31, 1998 and the Related Statement of Income (M 09375)
- Balance Sheet as of December 31, 1998 and the Related Statement of Income for Year Ended (M 09373, MM 000143)

**MM Global Services Pte. Ltd.**

- Audited Financial Statements for the Period from June 24, 1993 (date of incorporation) to September 30, 1994 (MM 000113)
- Audited Financial Statements for the Year Ended September 30, 1995 (MM 000101)
- Audited Financial Statements for the Year Ended September 30, 1996 (MM 000089)
- Annual Report and Accounts for September 30, 1997 (MM 000074)
- Annual Report and Accounts for September 30, 1998 (MM 000060)
- Annual Report and Accounts for March 31, 2000 (MM 000046)**
- Annual Report and Accounts for March 31, 2001 (MM 000031)
- Annual Report and Accounts for March 31, 2002 (MM 000015)
- Annual Report and Accounts for March 31, 2003 (MM 001100)
- MMGS-S has also produced various general and sales ledgers.  (MM 000807, MM 000835, MM 000899, MM 001033)

**Megavisa Solutions (S) Pte. Ltd.**

- Annual Report and Accounts for September 30, 2001 (MM 000001)
- Annual Report and Accounts for March 31, 2003 (MM 001083)***
- MVS has also produced various general and sales ledgers.  (MM 000747, MM 000752, MM 000791, MM 000856, MM 000914, MM 000955)

**Megavisa Marketing Solutions Ltd. (and its predecessor, MegaVisa Engineering & Petrochemicals Ltd.)**

- 9th Annual Report for 1995-1996 (MM 000512)
- 10th Annual Report for 1996-1997 (MM 000534)
- 11th Annual Report for 1998 (MM 000556)
- 12th Annual Report for 1999 (MM 000576)
- Audited Financial Statements for the Year Ended March 31, 2000 (MM 000595)
- Audited Financial Statements for the Year Ended March 31, 2001 (MM 000622)
- 15th Annual Report for 2001-2002 (MM 000647)

*Only the beginning Bates number for each document is listed.
** MMGS-S changed its fiscal year this year; the 2000 report covers the period from the 1999 report.
***MVS changed its fiscal year this year; the 2003 report covers the period from the 2001 report.

MAYER
BROWN
ROWE
& MAW

December 20, 2005

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

BY E-MAIL (W/O ENCLS.) & COURIER (W/ENCLS.)

Alicia L. Downey, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726

**Andrew S. Marovitz**
Direct Tel (312) 701-7116
Direct Fax (312) 706-8651
amarovitz@mayerbrownrowe.com

Re:     *MM Global Services Inc. et al. v. The Dow*
        *Chemical Company et al.*

Dear Alicia:

We are in receipt of your letter of December 1, 2005.  Each of the eight issues raised in your
letter is addressed below.

*First*, with respect to the Rule 30(b)(6) depositions to date, we do not agree with the analysis or
the assertions made in your letter of October 7.  To the extent that your complaint centers on the
UCAP witnesses' lack of detailed knowledge concerning contract forms, order processing,
billing and credit terms, the witnesses made clear that such matters were handled by UCCS
rather than UCAP.  As such, we believe that their testimony on these subjects satisfies UCAP's
responsibilities under Rule 30(b)(6).  Similarly, your complaint about the witnesses' "lack of
knowledge" on certain other subjects assumes that certain facts exist and that they are known to
UCAP.  UCAP, as you know, currently has no employees and we have endeavored to find the
former employees most knowledgeable on the various topics to testify on its behalf.  Your
attempt to minimize the extent of their preparations and their knowledge of the facts at issue is
misdirected.  In any event, if, as discovery progresses, new or additional information concerning
UCAP's knowledge of the Vimal Agency or Jigar Shah (Subject Matter 32), or any direct
dealings between UCAP and customers in India (Subject Matters 28 and 31), or any of the other
broad ranging subjects listed in your notice is discovered, UCAP's counsel will supplement its
discovery and designate new witnesses.

*Second*, Defendants continue to work diligently on the revised privilege log and supplemental
production.  Defendants expect to produce a revised privilege log after the holidays.  The
supplemental production of any documents removed from the privilege log will follow shortly
thereafter.

On December 1, 2005, Defendants produced documents that had been properly redacted on
grounds other than privilege.  It is my understanding that this production included all such
documents other than a handful of documents where highly personal and confidential

Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles Manchester New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Alicia L. Downey, Esq.
December 20, 2005
Page 2

information (such as credit card numbers and computer passwords) was redacted. Defendants
are working on a redaction log that specifically identifies such redactions.

*Third*, the newly produced documents from Dow Singapore consist of an affidavit and its
attachments, which was filed in the Singapore action between Dow Chemical Pacific (Singapore)
Pte Ltd. and Megavisa Solutions (Singapore) Pte Ltd. Plaintiff Megavisa Solutions (Singapore)
Pte Ltd. certainly was provided with a copy of these documents at the time the affidavit was
filed. Defendants were surprised to find that Plaintiffs had not produced these very same
documents as a part of their production in this case.

*Fourth*, we have located additional documents relating to the "merger integration" process that
Mr. Neri testified to at his deposition. While we continue to believe that these documents are
neither relevant nor responsive, and without waiving our prior objections on those grounds, we
are sending to you this week the documents (Bates Nos. D00472956-475179) for your review.
The disk that contains these documents also contains certain other "merger-related" documents
(Bates Nos. D00472514-955). It has recently come to our attention that certain of these
documents (which we believed had been produced in January 2005) may have been omitted from
production by our vendor. To ensure that you receive all such documents, we have included the
entire set on the disk.

*Fifth*, certain of the documents bates labeled as DE4000000-507 were not previously produced to
Plaintiffs. Defendants are working to determine which documents were produced and whether
the remaining documents are properly responsive to Plaintiffs' discovery requests and not
privileged.

Please make the reimbursement check for the December 1 re-production payable to The Dow
Chemical Company.

*Sixth*, we are not aware of any documents relating to the wire and cable "floor pricing" (as
identified by Gene Fisher) that were withheld from production. Any properly responsive
documents located on this point were produced.

*Seventh*, we have collected copies of Mr. Yimoyines's updated cv and the agency agreement
referenced in your letter. These documents have been bates stamped and are enclosed herewith
(D000475180-92 & DECE0006667-70). We are not aware of any "presentations used in post-
merger 'road shows'" that were both properly responsive to Plaintiffs' discovery requests and
were withheld from production.

*Eighth*, counsel's communications with Defendants' employees regarding their impressions of
this case and the types of documents responsive to Plaintiffs' requests have been properly
withheld from production. Defendants are reviewing the freeze letters referenced in Bill Herr's
deposition to determine whether privileged content can be redacted and the documents produced.

Mayer, Brown, Rowe & Maw LLP

Alicia L. Downey, Esq.
December 20, 2005
Page 3

If you have any questions or need additional information, please do not hesitate to call.

Very truly yours,

Andrew S. Marovitz

Encls.

cc:     Dana S. Douglas
        Nathan P. Eimer
        Christopher J. Kelly
        Robert M. Langer
        Craig A. Raabe
        Scott Solberg
        Richard S. Taffet