UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL       :
SERVICES PTE. LTD., and MEGA VISA         :
SOLUTIONS (S) PTE. LTD.,                  :
                                          :
              Plaintiffs,                 :
                                          :   Civil No. 3:02 CV 1107 (AVC)
         v.                               :
                                          :
THE DOW CHEMICAL COMPANY, UNION           :
CARBIDE CORPORATION, and UNION            :
CARBIDE ASIA PACIFIC, INC., UNION         :
CARBIDE CUSTOMER SERVICES PTE. LTD.       :
and DOW CHEMICAL PACIFIC (SINGAPORE)      :
PTE. LTD.                                 :
                                          :
              Defendants.                 :   January 11, 2006

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT
UNION CARBIDE CUSTOMER SERVICES PTE. LTD. TO
THE FIRST AMENDED COMPLAINT

Defendant Union Carbide Customer Services Pte. Ltd. ("UCCS"), by its attorneys,

hereby answers the First Amended Complaint of Plaintiffs MM Global Services, Inc.

("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and Mega Visa Solutions (S) Pte. Ltd.

("MVS") (collectively, "Plaintiffs") as follows.

Except as otherwise expressly stated below, UCCS answers and responds only to

those allegations contained in the Complaint that are directed against it.  UCCS is without

sufficient knowledge or information to form a belief concerning the truth of the allegations in the

Complaint that are directed toward other defendants and on that basis denies all such allegations.

## NATURE OF ACTION

1.      Paragraph 1 of the Complaint states legal conclusions for which no answer is required. To the extent it is construed to present averments of fact, they are denied. Answering further, UCCS states that it lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph that are directed against other defendants and on that basis denies them.

## JURISDICTION AND VENUE

2.      Paragraph 2 of the Complaint states legal conclusions for which no answer is required. To the extent it is construed to present averments of fact, they are denied. Answering further, UCCS denies that the Court has subject matter jurisdiction over Plaintiffs' federal antitrust claims, denies that the Court has diversity jurisdiction, and denies that supplemental jurisdiction exists over Plaintiffs' state law claims.

3.      The allegations of Paragraph 3 are denied.

## PARTIES

4.      Upon information and belief, UCCS admits that (i) MMGS was a Texas corporation and (ii) the principal place of business of MMGS was located in Texas at the address alleged in this Paragraph. Except as specifically admitted, the remaining allegations in this Paragraph are denied.

5.      Upon information and belief, UCCS admits that (i) MMGS-S was a Singapore corporation, and (ii) the principal place of business of MMGS-S was located in Singapore at the

address alleged in this Paragraph.  Except as specifically admitted, the remaining allegations in this Paragraph are denied.

6.      Upon information and belief, UCCS admits that (i) MVS was a Singapore corporation, and (ii) the principal place of business of MVS was located in Singapore at the address alleged in this Paragraph.  Except as specifically admitted, the remaining allegations in this Paragraph are denied.

7.      Upon information and belief, UCCS admits that (i) MVMS is an Indian corporation, and (ii) the principal place of business of MVMS is located in Mumbai, India at the address alleged in this Paragraph.  **Answering further, UCCS admits, on information and belief, that Visa Petrochemicals Pvt. Ltd. was established in 1987 by several former employees of Union Carbide India Ltd. to facilitate the sale of certain Union Carbide products on an indent basis to customers in India, and that such company, and/or MVMS, served as an indentor of Union Carbide-produced goods in India throughout the relevant period.**  Except as specifically admitted, the remaining allegations of this Paragraph are denied.

8.      Admitted, except that, upon reasonable investigation, UCCS lacks sufficient knowledge or information to form a belief as to which chemicals, plastic and agricultural products are referred to in this Paragraph, and therefore lacks sufficient knowledge or information to form a belief as to where those unidentified chemicals, plastic and agricultural products were sold.

9.      Admitted.

10.     UCCS admits that, upon information and belief, UCAP (i) is a Delaware corporation, (ii) its principal place of business was in Singapore at the location alleged in this Paragraph, and (iii) is a wholly-owned subsidiary of UCC.  UCCS denies the remaining allegations in this Paragraph.

11.     UCCS admits that it (i) is a Singapore corporation, (ii) its principal place of business was located in Singapore, though not at the particular address alleged, and (iii) is a wholly-owned subsidiary of UCC.  UCCS denies the remaining allegations in this Paragraph.

12.     Upon information and belief, UCCS admits that, on or about February 6, 2001, Union Carbide Corporation ("UCC") merged with a subsidiary of The Dow Chemical Company ("TDCC") and UCC thereafter became a wholly-owned subsidiary of TDCC.  UCCS denies the remaining allegations in this Paragraph.

13.     Upon information and belief, UCCS admits that Dow Singapore (i) is a Singapore corporation, (ii) has its principal place of business at the address alleged in this Paragraph, and (iii) is a wholly-owned subsidiary of Dow.  UCCS denies the remaining allegations in this Paragraph.

**FACTS**

14.     UCCS admits that (i) it sold certain Products to Plaintiffs, and (ii) the allegations of this Paragraph describe four broad categories of chemicals and polymers that encompass many of those Products.  Upon information and belief, UCCS admits that (i) Dow Singapore also sold certain Products to Plaintiffs, and (ii) the four broad categories of chemicals and polymers described in this Paragraph encompass many of those Products.  UCCS further admits that UCC

4

sold certain products to one of the Plaintiffs prior to 1998. Except as specifically admitted, the remaining allegations of this Paragraph are denied.

15.    Upon information and belief, UCCS admits that some, but not all, of the Products that Plaintiffs purchased from UCCS were manufactured in the Gulf States area of the United States. Answering further, UCCS states that the allegations concerning title and risk of loss constitute legal conclusions for which no response is required. To the extent the allegations are construed to present averments of fact they, and the remaining allegations of the Paragraph, are denied.

16.    UCCS lacks sufficient knowledge or information to form a belief as to truth of the allegations in this Paragraph regarding UCC's sale of Products in India prior to 1984, the Bhopal incident described in this Paragraph, civil or criminal charges brought against UCC by the Indian government, or any settlement thereof. UCCS further denies Plaintiffs' characterization of the Bhopal incident, and denies the remaining allegations in this Paragraph. By way of further answer, UCCS avers that the allegations in this Paragraph are immaterial and irrelevant to the claims in this lawsuit.

17.    UCCS states that the Letter dated November 16, 1987 (the "11/16/87 Letter") speaks for itself and denies any allegation in this Paragraph that is inconsistent with its terms. **Answering further, UCCS admits, on information and belief, that Visa Petrochemicals Pvt. Ltd. was created in 1987 by several former employees of Union Carbide India Ltd. to serve as indentor for Union Carbide goods in India.** Except as specifically admitted, the allegations of this Paragraph are denied.

18.    UCCS states that the 11/16/87 Letter speaks for itself and denies any allegation in this Paragraph that is inconsistent with its terms.  UCCS denies the remaining allegations in this Paragraph.

19.    Denied.

20.    Upon reasonable investigation, UCCS lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and on that basis denies them.

21.    UCCS states that the letter dated April 5, 1993 (the "04/05/93 Letter") speaks for itself.  UCCS denies the remaining allegations in this Paragraph.

22.    UCCS states that the 04/05/93 Letter speaks for itself and denies any allegation in this Paragraph that is inconsistent with its terms.  Upon reasonable investigation, UCCS is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and on that basis denies them.

23.    Upon information and belief, UCCS admits that MMGS-S was established as a Singapore corporation in or around 1993.  Upon reasonable investigation, UCCS lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and on that basis denies them.

24.    UCCS states that the letter dated September 8, 1995 (the "09/08/95 Letter") speaks for itself and denies any allegation in this Paragraph that is inconsistent with its terms.  UCCS denies the remaining allegations in this Paragraph.

25.    Upon information and belief, UCCS admits that, as of 1998, MMGS-S assumed certain responsibilities from MMGS, and that, in 2000, MVS assumed certain responsibilities

from MMGS-S.  UCCS states that the letter dated June 27, 2000 (the "06/27/00 Letter") speaks

for itself and denies any allegation in this Paragraph that is inconsistent with its terms.  UCCS

denies the remaining allegations in this Paragraph.

26.    Denied.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Denied.

31.    UCCS denies the allegations of Paragraph 31.  Answering further, UCCS states

that it lacks sufficient knowledge or information to form a belief as to whether resale of the

Products accounted for at least 85% of Plaintiffs' business, and on that basis denies such

allegations.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Denied.

36.    Denied.

37.    Upon information and belief, UCCS admits that two end-user customer in India,

Sterlite and Finolex, asserted claims against one or more of the Plaintiffs and/or UCC alleging

the breach of certain sales contracts for wire and cable products.  UCCS denies the remaining

allegations in this Paragraph.

38.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

39.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

40.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

41.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

42.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

43.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

44.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

45.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

46.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

47.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

48.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

49.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

50.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

51.     The allegations of this Paragraph are not directed against UCCS and, therefore, no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
**VIOLATION OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C. § 1)**

52.     UCCS incorporates by reference its answers to each and every allegation

contained in Paragraphs 1 through 51 above as if fully set forth herein.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
**BREACH OF CONTRACT**

58.     UCCS incorporates by reference its answer to each and every allegation contained

in Paragraphs 1 through 57 above as if fully set forth herein.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

**and**

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**FRAUDULENT MISREPRESENTATION AND NON-DISCLOSURE**

64. – 75.      The claims related to Paragraphs 64 through 75 of the Complaint were dismissed and therefore no response is required to the allegations therein.  To the extent that a response to Paragraphs 64 through 75 is required, UCCS denies each and every one of those allegations.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**NEGLIGENT MISREPRESENTATION**

76.      UCCS incorporates by reference its answer to each and every allegation contained in Paragraphs 1 through 75 above as if fully set forth herein.

77.      Denied.

78.      Denied.

79.      Denied.

80.      Denied.

**SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES**

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**

**EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**UNFAIR COMPETITION**

**NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**

**TENTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**

**ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**

**and**

**TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**VIOLATION OF CONNECTICUT ANTITRUST ACT**

81. – 117.      The claims related to Paragraphs 81 through 117 of the Complaint were dismissed and therefore no response is required to the allegations therein.  To the extent that a response to Paragraphs 81 through 117 is required, UCCS denies each and every one of those allegations.

## PRAYER FOR RELIEF

To the extent an answer may be required to the Prayer for Relief following Paragraph 117 of the Complaint, UCCS denies each and every allegation contained therein.

## JURY DEMAND

To the extent an answer may be required to the Jury Demand at the end of Plaintiffs' Complaint, UCCS denies each and every allegation contained therein.

## DENIAL

UCCS denies each and every allegation of the Complaint not specifically admitted above.

## ADDITIONAL DEFENSES

Without assuming any burden that it would not otherwise bear, UCCS also asserts the following additional defenses:

### First Defense

The Court lacks subject matter jurisdiction over Plaintiffs' federal antitrust claim asserted in Plaintiffs' First Amended Complaint.

### Second Defense

The Court lacks diversity jurisdiction over this action.

### Third Defense

The Court lacks personal jurisdiction over UCCS.

### Fourth Defense

Some or all of the plaintiffs lack standing to bring this action due to the liquidation and transfer of their right or interest in this action to liquidator KPMG.

### Fifth Defense

All or a portion of Plaintiffs' claims for damages flowing from the alleged resale price maintenance in India is barred by the applicable statute of limitations.

### Sixth Defense

Plaintiffs' First Claim for Relief fails to state a claim on which relief can be granted.

### Seventh Defense

Plaintiffs lack standing under the federal antitrust laws.

### Eighth Defense

Plaintiffs' breach of contract claim, asserted as Plaintiffs' Second Claim for Relief, fails to state a claim for breach of contract on which relief can be granted.

### Ninth Defense

Plaintiffs have waived their breach of contract claim.

### Tenth Defense

Plaintiffs' alleged contract damages, if proven, are subject to a set-off in the approximate amount of $1.3 million.

### Eleventh Defense

Plaintiffs' contract damages claim is reduced or barred altogether by Plaintiffs' failure to mitigate their damages.

### Twelfth Defense

Plaintiffs' breach of contract claim is barred by the doctrine of accord and satisfaction.

### Thirteenth Defense

All or part of Plaintiffs' Second Claim for Relief is barred by the equitable doctrine of laches.

### Fourteenth Defense

Plaintiffs' Fifth Claim for Relief fails to state a claim for negligent misrepresentation on which relief can be granted.

### Fifteenth Defense

All of the Plaintiffs claims are barred by the doctrine of estoppel.

### Sixteenth Defense

UCCS adopts by reference any applicable defense pled by any other defendant no expressly set forth herein.

UCCS reserves the right to assert other defenses as discovery proceeds.

WHEREFORE, defendant Union Carbide Customer Services Pte. Ltd. requests that the Court enter judgment in its favor and against plaintiffs MM Global Services, Inc., MM Global Services Pte. Ltd., and Mega Visa Solutions (S) Pte. Ltd. on the remaining claims of the First Amended Complaint, and award Union Carbide Customer Services Pte. Ltd. the costs of this action and any other relief which this Court deems just and equitable.

## COUNTERCLAIMS

### Parties

1.      Defendant and counterclaim-plaintiff Union Carbide Customer Services Pte Ltd ("UCCS") is a Singaporean corporation that maintains a principal place of business in Singapore.

2.      Defendant and counterclaim-plaintiff UCCS together with defendants Union Carbide Asia Pacific, Inc. ("UCAP") and Union Carbide Corporation ("UCC") will hereinafter collectively be referred to as the "UCC Companies."

3.      Plaintiff and counterclaim-defendant MM Global Services PTE Limited ("Global Singapore") is a Singaporean corporation that maintains a principal place of business in Singapore.

4.      Upon information and belief, third-party defendant Ajay Mittal is citizen of India residing there and responsible for controlling and running Global Singapore.

## Jurisdiction

5.      This Court has subject matter jurisdiction over UCCS's counterclaims pursuant to

28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000 and there is complete

diversity among the parties.  Further, this Court has jurisdiction over UCCS's counterclaims

under the principle of supplemental jurisdiction, 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over third-party defendant Ajay Mittal

because he has traveled to this jurisdiction numerous times to conduct business with the UCC

Companies and has transacted business related to these claims in this jurisdiction.

## Venue

7.      Venue over third-party defendant Ajay Mittal is proper in this jurisdiction under

28 U.S.C. §§ 1391 (b) and (d) because Ajay Mittal has transacted business related to these claims

in this jurisdiction, because a substantial part of the events and omissions giving rise to the

claims alleged occurred in this jurisdiction, and because Ajay Mittal is an alien.

## Underlying Facts and General Allegations

8.      During 1999, the UCC Companies faced a feedstock shortage because of a

significant increase in the price of oil.

9.      As a result of the feedstock shortage, the UCC Companies were unable to fill all

of the wire and cable orders that had been placed by Global Singapore on behalf of purchasers in

India ("1999 Unfilled Orders").

10.     As a result of the 1999 Unfilled Orders, one purchaser, Finolex Cables Ltd.

("Finolex"), brought suit against, among others, Global Singapore, for failing to fill its orders.

11.     Shortly after Finolex filed suit, on or about March 29, 2000, Ajay Mittal, speaking

on behalf of himself and Global Singapore, told Lawrence Chung, a director of UCCS and area

director of UCAP, that he and Global Singapore would not initiate a legal action against the

UCC Companies seeking indemnification for the Finolex claim resulting from the 1999 Unfilled

Orders.

12.     Ajay Mittal told Mr. Chung that the he and Global Singapore desired to work

together with the UCC Companies to resolve the Finolex lawsuit and any future disputes, rather

than suing each other, and recommended to the UCC Companies that the case with Finolex

should be settled.

13.     To induce the UCC Companies' assistance in resolving the litigation against

Global Singapore, Ajay Mittal, speaking on behalf of himself and Global Singapore, repeatedly

made it clear to the UCC Companies in numerous telephone conversations with John Yimoyines

of UCC and others that neither he nor Global Singapore would bring suit against the UCC

Companies based on the 1999 Unfilled Orders.

14.     In addition to the numerous telephone conversations described above, Ajay Mittal

emailed John Yimoyines on May 4, 2000, and again assured him that neither he nor Global

Singapore would bring suit against the UCC Companies based on the 1999 Unfilled Orders: "I

am glad to inform you that with settlement between MM Global & Finolex in place, I can

confirm that there will be no more issues of any liability on part of Union Carbide." A true and correct copy of that email is hereto annexed as **Exhibit A** ("Ajay Mittal Email").

15.    Ajay Mittal has testified under oath that he told the UCC Companies that Global Singapore would not bring suit against them because he, together with Global Singapore, wanted the UCC Companies' help in settling the lawsuit with Finolex and wanted the UCC Companies to pay a portion of the settlement amount.

16.    Upon information and belief, Ajay Mittal and Global Singapore intended the UCC Companies to falsely understand that, if the UCC Companies cooperated and helped settle the Finolex lawsuit, Ajay Mittal and Global Singapore would not file suit against them based on the 1999 Unfilled Orders.

17.    Upon information and belief, at the time Ajay Mittal made the representations, promises and assurances to the UCC Companies, Ajay Mittal had no intention of keeping those representations, assurances and promises.

18.    Upon information and belief, Ajay Mittal's representations, promises and assurances to the UCC companies were false at the time they were made and Ajay Mittal knew of their falsity.

19.    In reliance on those repeated representations, promises, and assurances, the UCC Companies agreed to help Ajay Mittal and Global Singapore resolve the dispute with Finolex and pay a significant portion of the settlement based on the agreement with Ajay Mittal and Global Singapore that Ajay Mittal and Global Singapore would be responsible for resolving any future disputes regarding the 1999 Unfilled Orders and would not sue the UCC Companies.

20.     On June 5, 2000, Paresh Zaveri, Vice President of Global Singapore, sent a letter to Lawrence Cheung summarizing the terms of the Finolex settlement.  A true and correct copy of that letter is hereto annexed as **Exhibit B** ("Zaveri Letter").

21.     The Zaveri Letter memorialized the parties' agreement that Global Singapore would handle any other disputes regarding the 1999 Unfilled Orders on their own, without involving the UCC Companies:  "MM Global Services Pte. Ltd. further assures Union Carbide of its commitment to handle any other action/s instituted by any other Indian W & C customers to the satisfaction of Union Carbide."

22.     On or about June 14, 2000, in reliance on the agreements made with Ajay Mittal and Global Singapore, their representations that they would bring no litigation against the UCC Companies, and further that they would resolve any future purchaser actions relating to the 1999 Unfilled Orders, UCCS paid US$280,000 in settlement of the Finolex action.

23.     Contrary to the parties' agreement memorialized in the Zaveri Letter, Global Singapore breached their repeated representations, promises, assurances and agreement to handle "any other action/s instituted by any other Indian W & C customers to the satisfaction of Union Carbide."

24.     Shortly after the Finolex settlement was complete (with UCCS paying US$280,000 and Global Singapore thus being dismissed from that suit), Ajay Mittal and Global Singapore informed the UCC Companies that another purchaser, Sterlite Industries (India) Limited ("Sterlite"), was upset about the 1999 Unfilled Orders.

25.    Ajay Mittal assured the UCC Companies that there would be no legal action brought by Sterlite because the father of the owner of Sterlite was a Mittal Family friend.

26.    In spite of Ajay Mittal's assurances, Sterlite brought an action against Global Singapore, UCC, and UCAP, seeking US$1.8 million.

27.    On or about September 15, 2000, Ajay Mittal met with employees of the UCC Companies and, asserting that Sterlite had a meritorious claim, recommended that a payment of roughly half of the US$1.8 million be made to Sterlite to settle the matter.

28.    Sterlite eventually agreed to settle the dispute for US$1,000,000, roughly the amount proposed by Ajay Mittal, and the agreement was signed on October 12, 2000.

29.    In spite of the parties' agreement memorialized in the Zaveri Letter and Ajay Mittal's belief that Sterlite had a meritorious claim, Ajay Mittal and Global Singapore refused to contribute any money to the settlement with Sterlite.

30.    UCCS was thus forced to pay the US$1,000,000 to extinguish the Sterlite claim (which also resulted in Global Singapore being dismissed from the lawsuit).

31.    At the time of the Sterlite Settlement, Mr. Sanjiv Sanghvi, a director of Global Singapore, sent Mr. Cheung a letter representing, promising and assuring that, in the event that Sterlite did not abide by the settlement, "any further action and consequences there of independently without any further recourse to or claim against Union Carbide." A copy of that letter is hereto annexed as **Exhibit C** ("Sanghvi Letter").

32.    In 2002, in spite of their repeated representations, promises and assurances to the contrary, Ajay Mittal and Global Singapore initiated this suit against the UCC Companies alleging breach of contract based on the 1999 Unfilled Orders.

### First Counterclaim—Breach of Contract

33.    UCCS hereby incorporates each and every allegation set-forth in paragraphs 1 - 32 of the Counterclaims as if fully set-forth at length herein.

34.    The UCC Companies and Global Singapore had a valid and enforceable contract regarding the disputes resulting from the 1999 Unfilled Orders.

35.    The UCC Companies agreed to pay US$280,000 to settle the Finolex dispute and Global Singapore agreed to "handle any other action/s instituted by any other Indian W & C customers to the satisfaction of Union Carbide."

36.    This valid and enforceable agreement was memorialized in the Zaveri Letter.

37.    Shortly after UCCS made its payment to settle the Finolex dispute, another Indian W & C purchaser, Sterlite, brought suit.

38.    Contrary to the parties' agreement memorialized in the Zaveri letter, Global Singapore did not handle the action to the satisfaction of the UCC Companies and thus breached the valid and enforceable contract.

39.    Ajay Mittal and Global Singapore refused to contribute any money towards the settlement in spite of the fact that Ajay Mittal believed Sterlite had a meritorious claim and the fact that the settlement was for roughly the amount Ajay Mittal proposed.

40.     As such, UCCS was forced to pay US$1,000,000 to settle the Sterlite dispute.

WHEREFORE, for this First Counterclaim, UCCS prays for judgment against Global Singapore

as follows:

   a)  damages for all sums to which it is entitled as a result of Global Singapore's

       breach of contract including, but not limited to, the US$1,000,000 UCCS was

       forced to pay to settle the Sterlite dispute and the US$280,000 UCCS was forced

       to pay to settle the Finolex dispute;

   b)  pre and post-judgment interest;

   c)  attorneys' fees, costs and expenses; and

   d)  such other and further relief as the Court may deem proper.

### Second Counterclaim—Breach of Oral Agreement

41.     UCCS hereby incorporates each and every allegation set-forth in paragraphs 1 -

40 of the Counterclaims as if fully set-forth at length herein.

42.     Global Singapore and Ajay Mittal told the UCC Companies that no suits would be

filed against them, including the following statement made by Ajay Mittal: "I am glad to inform

you that with settlement between MM Global & Finolex in place, I can confirm that there will be

no more issues of any liability on part of Union Carbide."

43.     The UCC Companies had a valid and enforceable oral agreement with Ajay Mittal

and Global Singapore that if the UCC Companies helped Ajay Mittal and Global Singapore

22

resolve the dispute with Finolex, Global Singapore would not bring suit against the UCC Companies based on the 1999 Unfilled Orders.

44.    The UCC Companies helped Ajay Mittal and Global Singapore resolve the disputes with Finolex, with UCCS paying US$280,000, which resulted in Global Singapore being dismissed from the suit brought by Finolex.

45.    In spite of UCCS's payment to settle the Finolex dispute, UCCS was forced to pay an additional US$1,000,000 to settle the dispute with Sterlite.

46.    After being dismissed from the Finolex and Sterlite lawsuits, Ajay Mittal and Global Singapore, in breach of their oral agreement, initiated this suit against the UCC Companies to collect alleged damages resulting from the 1999 Unfilled Orders, and thus the UCC Companies have been forced to pay the costs and fees associated with defending this action.

WHEREFORE, for this Second Counterclaim, UCCS prays for judgment against Global Singapore and Ajay Mittal as follows:

a) damages for all sums to which it is entitled as a result of Ajay Mittal's breach of oral agreement including, but not limited to, the US$1,000,000 UCCS was forced to pay to settle the Sterlite dispute, the US$280,000 UCCS was forced to pay to settle the Finolex dispute, and the total cost and fees associated with defending this action;

b) pre and post-judgment interest;

c) attorneys' fees, costs and expenses; and

d)  such other and further relief as the Court may deem proper.

### Third Counterclaim—Promissory Estoppel

47.    UCCS hereby incorporates each and every allegation set-forth in paragraphs 1 - 46 of the Counterclaims as if fully set-forth at length herein.

48.    Ajay Mittal and Global Singapore represented and promised to the UCC Companies that they would "handle any other action/s instituted by any other Indian W & C customers to the satisfaction of Union Carbide."

49.    Ajay Mittal and Global Singapore repeatedly represented, promised, and assured the UCC Companies that they would not bring suit against the UCC Companies if the UCC Companies helped settle the Finolex dispute, including the statement by Ajay Mittal that "I can confirm that there will be no more issues of any liability on part of Union Carbide."

50.    The UCC Companies could reasonably be expected to believe and rely upon, and did, in fact, believe and rely upon Ajay Mittal's and Global Singapore's representations, promises, and assurances to their detriment by UCCS paying US$280,000 to resolve the Finolex dispute with the understanding that Ajay Mittal and Global Singapore would handle any subsequent disputes and that Ajay Mittal and Global Singapore would not bring suit against the UCC Companies relating to the 1999 Unfilled Orders.

51.    In spite of UCCS's payment to settle the Finolex dispute and contrary to the parties' agreement memorialized in the Zaveri letter, UCCS was forced to pay an additional US$1,000,000 to settle the dispute with Sterlite.

52.     After being dismissed from the Finolex and Sterlite lawsuits, Ajay Mittal and

Global Singapore, contrary to their repeated representations, promises, and assurances, initiated

this suit against the UCC Companies to collect alleged damages resulting from the 1999 Unfilled

Orders, and thus the UCC Companies have been forced to pay the costs and fees associated with

defending this action.

WHEREFORE, for this Third Counterclaim, UCCS prays for judgment against Ajay Mittal and

Global Singapore as follows:

> a)  an order barring Global Singapore from maintaining the breach of contract claim
>
>     against the UCC Companies for the 1999 Unfilled Orders;
>
> b)  damages for all sums to which it is entitled as a result of the UCC Companies'
>
>     reliance on Ajay Mittal's and Global Singapore's promises;
>
> c)  pre and post-judgment interest;
>
> d)  attorneys' fees, costs and expenses; and
>
> e)  such other and further relief as the Court may deem proper.

### Fourth Counterclaim—Negligent Misrepresentation

53.     UCCS hereby incorporates each and every allegation set-forth in paragraphs 1 -

52 of the Counterclaims as if fully set-forth at length herein.

54.     Ajay Mittal and Global Singapore supplied false material facts to the UCC

Companies regarding the settlement of the lawsuit with Finolex, including that Global Singapore

would "handle any other action/s instituted by any other Indian W & C customers to the satisfaction of Union Carbide."

55.     Ajay Mittal and Global Singapore supplied false material facts to the UCC Companies regarding their intention to not bring suit against the UCC Companies if the UCC Companies helped Ajay Mittal and Global Singapore resolve the Finolex dispute, including the statement by Ajay Mittal that "I can confirm that there will be no more issues of any liability on part of Union Carbide."

56.     Ajay Mittal and Global Singapore did not exercise reasonable care or competence in communicating their intentions to the UCC Companies.

57.     The UCC Companies justifiably and reasonably relied on these false material facts to their detriment by UCCS paying US$280,000 to resolve the Finolex dispute with the understanding that Ajay Mittal and Global Singapore would handle any subsequent disputes and that Ajay Mittal and Global Singapore would not bring suit against the UCC Companies relating to the 1999 Unfilled Orders.

58.     In spite of UCCS's payment to settle the Finolex dispute and contrary to the parties' agreement memorialized in the Zaveri letter, UCCS was forced to pay an additional US$1,000,000 to settle the dispute with Sterlite.

59.     After being dismissed from the Finolex and Sterlite lawsuits, Ajay Mittal and Global Singapore, contrary to their repeated representations, promises, and assurances, initiated this suit against the UCC Companies to collect alleged damages resulting from the 1999 Unfilled

Orders, and thus the UCC Companies have been forced to pay the costs and fees associated with defending this action.

WHEREFORE, for this Fourth Counterclaim, UCCS prays for judgment against Ajay Mittal and Global Singapore as follows:

      a)  damages for all sums to which it is entitled as a result of Ajay Mittal's and Global Singapore's negligent misrepresentation;

      b)  pre and post-judgment interest;

      c)  attorneys' fees, costs and expenses; and

      d)  such other and further relief as the Court may deem proper.

### Fifth Counterclaim—Fraudulent Misrepresentation

60.    UCCS hereby incorporates each and every allegation set-forth in paragraphs 1 - 59 of the Counterclaims as if fully set-forth at length herein.

61.    Ajay Mittal and Global Singapore made false representations of material facts to the UCC Companies regarding the settlement of the lawsuit with Finolex, including that Global Singapore would "handle any other action/s instituted by any other Indian W & C customers to the satisfaction of Union Carbide."

62.    Ajay Mittal and Global Singapore made false representations of material facts to the UCC Companies regarding their intention to not bring suit against the UCC Companies if the UCC Companies helped Ajay Mittal and Global Singapore resolve the Finolex dispute, including

the statement by Ajay Mittal that "I can confirm that there will be no more issues of any liability on part of Union Carbide."

63.    Ajay Mittal's and Global Singapore's representations of material facts were false and, upon information and belief, were known to be false when made.

64.    Upon information and belief, Ajay Mittal's and Global Singapore's false representations of material facts were made with the intent of inducing the UCC Companies' reliance on them.

65.    The UCC Companies justifiably relied on the false representations of material facts to their detriment by UCCS paying US$280,000 to resolve the Finolex dispute with the understanding that Ajay Mittal and Global Singapore would handle any subsequent disputes and that Ajay Mittal and Global Singapore would not bring suit against the UCC Companies relating to the 1999 Unfilled Orders.

66.    In spite of UCCS's payment to settle the Finolex dispute and contrary to the parties' agreement memorialized in the Zaveri letter, UCCS was forced to pay an additional US$1,000,000 to settle the dispute with Sterlite.

67.    After being dismissed from the Finolex and Sterlite lawsuits, Ajay Mittal and Global Singapore, contrary to their repeated representations, promises, and assurances, initiated this suit against the UCC Companies to collect alleged damages resulting from the 1999 Unfilled Orders, and thus the UCC Companies have been forced to pay the costs and fees associated with defending this action.

WHEREFORE, for this Fifth Counterclaim, UCCS prays for judgment against Ajay Mittal and Global Singapore as follows:

    a)  damages for all sums to which it is entitled, including punitive damages, as a result of Ajay Mittal's and Global Singapore's fraudulent misrepresentation;

    b)  pre and post-judgment interest;

    c)  attorneys' fees, costs and expenses; and

    d)  such other and further relief as the Court may deem proper.

### Sixth Counterclaim—Fraud

68.    UCCS hereby incorporates each and every allegation set-forth in paragraphs 1 - 67 of the Counterclaims as if fully set-forth at length herein.

69.    Ajay Mittal and Global Singapore made false representations of material facts to the UCC Companies regarding the settlement of the lawsuit with Finolex, including that Global Singapore would "handle any other action/s instituted by any other Indian W & C customers to the satisfaction of Union Carbide."

70.    Ajay Mittal and Global Singapore made false representations of material facts to the UCC Companies regarding their intention to not bring suit against the UCC Companies if the UCC Companies helped Ajay Mittal and Global Singapore resolve the Finolex dispute, including the statement by Ajay Mittal that "I can confirm that there will be no more issues of any liability on part of Union Carbide."

71.     Ajay Mittal's and Global Singapore's representations of material facts were false and, upon information and belief, were known to be false when made.

72.     Upon information and belief, Ajay Mittal's and Global Singapore's false representations of material facts were made with the intent of inducing the UCC Companies' reliance on them.

73.     The UCC Companies justifiably relied on the false representations of material facts to their detriment by UCCS paying US$280,000 to resolve the Finolex dispute with the understanding that Ajay Mittal and Global Singapore would handle any subsequent disputes and that Ajay Mittal and Global Singapore would not bring suit against the UCC Companies relating to the 1999 Unfilled Orders.

74.     In spite of UCCS's payment to settle the Finolex dispute and contrary to the parties' agreement memorialized in the Zaveri letter, UCCS was forced to pay an additional US$1,000,000 to settle the dispute with Sterlite.

75.     After being dismissed from the Finolex and Sterlite lawsuits, Ajay Mittal and Global Singapore, contrary to their repeated representations, promises, and assurances, initiated this suit against the UCC Companies to collect alleged damages resulting from the 1999 Unfilled Orders, and thus the UCC Companies have been forced to pay the costs and fees associated with defending this action.

WHEREFORE, for this Sixth Counterclaim, UCCS prays for judgment against Ajay Mittal and Global Singapore as follows:

a) damages for all sums to which it is entitled, including punitive damages, as a
result of Ajay Mittal's and Global Singapore's fraud;

b) pre and post-judgment interest;

c) attorneys' fees, costs and expenses; and

d) such other and further relief as the Court may deem proper.

**Seventh Counterclaim—Recoupment**

76.    UCCS hereby incorporates each and every allegation set-forth in paragraphs 1 -
75 of the Counterclaims as if fully set-forth at length herein by way of recoupment only.

77.    Global Singapore alleges that UCCS breached its contract relating to the 1999
Unfilled Orders (the "Transaction") and is thus seeking monetary damages.

78.    As part of the Transaction and arising from it, Ajay Mittal and Global Singapore
represented and agreed to "handle any other action/s instituted by any other Indian W & C
customers to the satisfaction of Union Carbide" and Ajay Mittal and Global Singapore
represented and agreed not bring suit against the UCC Companies if the UCC Companies helped
Ajay Mittal and Global Singapore resolve the Finolex dispute, including the statement by Ajay
Mittal that "I can confirm that there will be no more issues of any liability on part of Union
Carbide."

79.    In evaluating the Transaction that forms the basis of Global Singapore's breach of
contract cause of action, justice requires the entire Transaction be examined in all its aspects,
including Ajay Mittal's and Global Singapore's representation and agreement to "handle any
other action/s instituted by any other Indian W & C customers to the satisfaction of Union

31

Carbide" and Ajay Mittal's and Global Singapore's representation and agreement not to bring

suit against the UCC Companies if the UCC Companies helped Ajay Mittal and Global

Singapore resolve the Finolex dispute.

WHER0EFORE, for this Seventh Counterclaim, UCCS prays for judgment against Ajay Mittal

and Global Singapore by way of recoupment as follows:

a) in the event that Global Singapore is entitled to damages as a result of

Transaction, the damages UCCS suffered arising out of the same Transaction,

including, but not limited to, the payment of US$1,000,000 to settle the Sterlite

dispute, the payment of US$2280,000 to settle the Finolex dispute, and the

attorneys' fees, costs, and expenses associated with defending this action, ought to

be deducted from Global Singapore's recovery; and

b) such other and further relief as the Court may deem proper.

Respectfully Submitted,

_____
Elizabeth R. Leong

Nathan P. Eimer (ct 23693)
Scott C. Solberg (phv 0234)
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600

Attorneys for Defendants Union Carbide
Corporation, Union Carbide Asia Pacific,
Inc. and Union Carbide Customer Services
Pte. Ltd.

Craig A. Raabe (ct 04116)
Jason M. Kuselias (ct20293)
Elizabeth R. Leong (ct24453(
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

*Attorneys for All Defendants*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the ANSWER, AFFIRMATIVE DEFENSES AND

COUNTERCLAIM OF DEFENDANT UNION CARBIDE CUSTOMER SERVICE TO THE

FIRST AMENDED COMPLAINT was hand-delivered on this 11th day of January, 2006, to:

> Robert M. Langer
> WIGGIN & DANA LLP
> One City Place
> 185 Asylum Street
> Hartford, CT 06103-3402

and via overnight delivery on the following:

> Richard S. Taffet
> BINGHAM MCCUTCHEN LLP
> 399 Park Avenue
> New York, NY 10022-4689

> Alicia L. Downey
> BINGHAM MCCUTCHEN LLP
> 150 Federal Street
> Boston, MA 02110-1726

> Suzanne Wachsstock, Esq.
> Wiggin & Dana LLP
> 400 Atlantic Street
> P.O. Box 110325
> Stamford, CT  06911-0325

Elizabeth R. Leong