UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., and MEGA VISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., DOW CHEMICAL COMPANY PACIFIC (SINGAPORE) PTE. LTD., and UNION CARBIDE CUSTOMER SERVICES PTE. LTD., <br><br> Defendants. | Civil No. 3:02 CV 1107 (AVC) <br><br> January 23, 2006 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
PURSUANT TO FED. R. CIV. P. 37(a)(2)(B) TO COMPEL
PRODUCTION OF PLAINTIFFS' FINANCIAL STATEMENTS (DOCKET ENTRY 383)**

On December 8, 2005, Defendants filed their motion to compel Plaintiffs to produce all their periodic financial statements in their possession, custody or control, as Defendants had requested in October 2003.[1] On January 6, Plaintiffs opposed the motion, telling the Court that they "undertook to produce, have produced, and will produce whatever responsive financial statements are in their possession, custody or control . . . ." Pls. Br. 1. In between those two

---

[1] On December 28, Defendants filed an Amended Motion and an Amended Memorandum in support of the Motion correcting typographical errors in the captions of the original filings.

dates, Plaintiffs produced over 500 pages of previously unproduced and unquestionably responsive documents, including eight annual financial statements of MegaVisa Marketing Solutions Ltd. ("MegaVisa India"), the parent of the now-dissolved Plaintiff MegaVisa Solutions (S) Pte. Ltd ("MegaVisa Singapore"). This was not a coincidence. While Plaintiffs argue that Defendants' motion is moot, the very fact of the new production while the motion was pending, over two years after the documents were first requested, shows that an order is necessary to ensure that Plaintiffs live up to their obligation to produce these fundamentally relevant documents.

Defendants' motion and supporting memorandum demonstrated that:

- Defendants requested the periodic financial statements of Plaintiffs, their parents and affiliates in October 2003;[2]

- In response, Plaintiffs produced only their annual statements and a handful of other periodic financial documents (Opening Br. 2-3);

- Beginning in late 2004 and continuing until shortly before the filing of this motion, Defendants repeatedly raised Plaintiffs' failure to comply in a series of meet-and-confer sessions with Plaintiffs, and in a letter specifically identifying missing documents (*id.*, 3-4);

---

[2] Defendants' first set of document requests called for, among other things: "All of your annual, quarterly, monthly, and other periodic financial statements, including, but not limited to, all balance sheets, income statements, accounting trial balances, and cash flow analyses, including all charts of accounts relating to such financial statements, from January 1, 1993 to the present." Defendants The Dow Chemical Company and Union Carbide Corporation's First Set of Document Requests on Merits Discovery (Oct. 9, 2003), ¶ 5.

- Those meet-and-confer sessions yielded no further production of documents, but rather only an indication that Plaintiffs were searching for such documents, accompanied by the assertion that Defendants were not even entitled to them (*id.*, 4-5).

Plaintiffs do not seriously dispute any of these facts. Instead, to show that the motion is moot, they assure the Court that they have indeed produced:

- *One* audited monthly balance sheet for Mega Global Services, Inc. ("Mega Global Houston"), predecessor to plaintiff MM Global Services, Inc. ("MM Global Houston");
- *three* audited monthly income statements for Mega Global Houston;
- *three* audited monthly balance sheets for MM Global Houston; and,
- annual reports for MegaVisa India for the years 1995 through 2002.

Pls. Br. 3. What is more, Plaintiffs contend, the motion violates Local Rule 37(a)(2) because, as far as they know, the individual attorney who signed the motion did not herself attempt to meet and confer with Plaintiffs' counsel to address Plaintiffs' failure to produce the requested documents. *Id.* 4.

Plaintiffs are unquestionably correct that they produced Mega Global Houston's March 31, 1994 balance sheet. But that was never in question; while Plaintiffs have failed to produce Mega Global's balance sheets for January and February 1994, Defendants never contended that they did not produce a balance sheet for March 1994. *See* Opening Br. 4. But in contending that they produced monthly income statements for Mega Global Houston for the first three months of 1994, they are either fundamentally misunderstanding the meaning of a monthly statement or

3

attempting to mislead the Court. What Plaintiffs produced is Mega Global Houston's *annual* financial statement for the entire period from its inception to March 31, 1994. *See* Ex. 1 (Mega Global Services, Inc. Balance Sheet March 31, 1994 and Mega Global Services, Inc. Income Statement from Inception (March 10, 1993) to March 31, 1994) (M10193-95). What they have *not* produced are Mega Global Houston's *monthly* income statements for January through March 1994. While Mega Global Houston's monthly income may be consolidated into its annual statement, the annual and monthly statements are two different things. As explained in the Opening Brief, the point of the request for the monthly statements is to determine what happened in specific months, so as to analyze Plaintiffs' damage claims with precision. See Opening Br. 8-9.

Plaintiffs also mischaracterize the balance sheets and income statements they say they produced for Mega Global Houston and MM Global Houston. For example, while Plaintiffs tell the Court that they produced an "audited monthly balance sheet for [MM Global Houston] for March 1995," a review of the cover letter from MM Global Houston's accountant states plainly: "We have not audited or reviewed the accompanying financial statements," which "present[] in the form of financial statements information that is the representation of management." Ex. 2 (Letter from Jain & Jain to Board of Directors, Mega Global Services, Inc., April 25, 1995) (M9622). The same is true as to the balance sheets Plaintiffs cite for April 1995, *see* Ex. 3 (Letter from Jain & Jain to Board of Directors, Mega Global Services, Inc., May 17, 1995) (same disclaimer) (M9617), and October 1998, *see* Ex. 4 (MM Global Services, Inc. Balance Sheet October 31, 1998) ("unaudited") (M9375).

4

Still more remarkable is Plaintiffs' claim that their production of MegaVisa India's annual financial statements for 1995 through 2002 shows that "[a]ny suggestion that plaintiffs are intentionally withholding responsive financial records is baseless speculation," Pls. Br. 3. Perhaps this production would indeed have countered such "speculation" had it happened sooner. But what Plaintiffs do not tell the Court is that they produced these pivotal documents only on December 13, 2005 – *after* Defendants filed this motion to compel. Plaintiffs claimed then to be producing the MegaVisa annual reports "out of an abundance of caution," although they "believe[d] these documents were made available to defendants at least once." Ex. 5 (Letter from A. L. Downey to A.S. Marovitz, D.S. Douglas, N.P. Eimer and S.C. Solberg, Dec. 13, 2005). The only plausible meaning of this cryptic statement is that these annual statements were among the Plaintiffs' documents reviewed by Defendants' counsel in 2003 and/or 2005. The suggestion that eight years' worth of MegaVisa's annual financial statements would escape the notice of Defendants' counsel not once, but *twice* – and when, in the second review, Defendants' counsel electronically scanned each page that Plaintiffs made available – is ludicrous. This hollow claim only confirms that when Plaintiffs produced these documents on December 13 – the eve of a deposition of their principal, Ajay Mittal – they were producing them for the first time, and they knew it.[3]

In light of these facts, the Court cannot reasonably rely on Plaintiffs' representations that they "have produced, and will produce" responsive financial documents. Even if, as Mr. Mittal

---

[3] These were not the only documents Plaintiffs produced for the first time while this motion was pending. On December 23, for example, Plaintiffs produced several more documents, including Plaintiff MM Global Services Pte.'s annual financial statement for the year ending March 31, 2003. Ex. 6 (Letter from C. M. Guizzetti to A.S. Marovitz and S.C. Solberg, Dec. 23, 2005).

5

has testified, Plaintiffs MM Global Singapore and MegaVisa Singapore routinely destroyed their monthly financial statements after their accountant completed its annual audit, *see* Pls. Br. 3, the recent production of the MegaVisa annual reports and other documents suggests that there still may be many other existing documents to fill the gaps in Plaintiffs' production so far. Notably, Plaintiffs do not rule out the possibility that "additional monthly reports [will] come to light." Pls. Br. 3-4. If, on the other hand, Plaintiffs have now produced all relevant financial statements in their possession, custody or control, an order compelling them to do so will not work to their detriment. But if more documents remain to be produced, Plaintiffs' conduct indicates that an order is necessary to ensure that the production ever happens.

Even though they bear the burden of demonstrating why discovery of their financial records should be denied, *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975), Plaintiffs do not even try to address Defendants' motion on the merits. They do not contend seriously that the documents sought are not relevant, or that they should be excused from producing them. Instead, they attempt to distract the Court with baseless procedural objections. Their inability to even address the merits indicates their recognition that, if the facts are as Defendants have shown, only the threat of judicial compulsion is sufficient to get Plaintiffs to honor their obligation to produce their financial documents.

Ignoring Defendants' persistent and long-running attempts to persuade them to comply with their discovery obligations, Plaintiffs focus instead on whether one particular member of the team of attorneys responsible for the motion and the Opening Brief had herself attempted to contact them. Pls. Br. 4. But Local Rule 37 does not support Plaintiffs' reading. The rule is

6

written in simple terms, as if parties were represented by a single counsel, rather than by teams of attorneys as are the parties here and in nearly every piece of complex federal litigation. Under Plaintiffs' strained reading, although five out of six attorneys for a party were involved in attempts to resolve a discovery dispute, an affidavit or certification as to the attempts signed by the sixth attorney would not satisfy the Rule. Such a reading would serve no useful purpose, making litigation only costlier and more cumbersome without creating any greater likelihood of avoiding motion practice. Similarly, Plaintiffs' insistence on an affidavit despite an affirmative and detailed certification, in compliance with Federal Rule 37(b)(2), would have the Court blind itself to ample and reliable assurance that judicial intervention is necessary.

Equally baseless is Plaintiffs' claim for attorneys' fees in connection with this motion. The straightforward factual basis for the motion demonstrates beyond doubt that "the making of the motion was substantially justified." Fed. R. Civ. P. 37(a)(4)(A). The relevance of the documents sought and Plaintiffs' failure to produce hundreds of pages of them until the motion was filed amply demonstrate the justification for the motion. *See also* D. Conn. L. Civ. R. 37(a)(4) (providing for sanctions where "party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law").

In sum, Plaintiffs have failed to demonstrate that they have already produced all the documents called for by this motion in their possession, custody or control, or that they now will do so promptly without being compelled to do so by this Court. The Court therefore should issue an order compelling each Plaintiff to produce all monthly and quarterly financial statements,

including those identified in Paragraphs 8.a-8.c of the Motion, for any Plaintiff during the Relevant Period.

                      Respectfully submitted,

                      Craig A. Raabe

| | | |
|---|---|---|
| Andrew S. Marovitz (ct 25409) | Nathan P. Eimer (ct 23693) | Craig A. Raabe (ct 04116) |
| Dana S. Douglas (ct 25412) | Scott C. Solberg (phv 0234) | Jason M. Kuselias (ct20293) |
| MAYER, BROWN, ROWE | EIMER STAHL KLEVORN | Elizabeth R. Leong (ct24453) |
| & MAW LLP | & SOLBERG LLP | ROBINSON & COLE LLP |
| 71 S. Wacker Drive | 224 South Michigan Avenue | 280 Trumbull Street |
| Chicago, Illinois 60606 | Suite 1100 | Hartford, CT 05103-3497 |
| (312) 782-0600 | Chicago, IL 60604 | (860) 275-8304 |
| | (312) 660-7600 | |
| Christopher J. Kelly (ct 25410) | | |
| MAYER, BROWN, ROWE | | |
| & MAW LLP | | |
| 1909 K Street, N.W. | | |
| Washington, D.C. 20006-1157 | | |
| (202) 263-3000 | | |
| | | |
| *Counsel for Defendants* | *Counsel for Defendants* | *Counsel for all Defendants* |
| *The Dow Chemical Company* | *Union Carbide Corporation,* | |
| *and Dow Chemical Pacific* | *Union Carbide Asia Pacific,* | |
| *(Singapore) Pte. Ltd.* | *Inc., and Union Carbide* | |
| | *Customer Services Pte. Ltd.* | |

## CERTIFICATE OF SERVICE

This is to certify that a copy of REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 37(a)(2)(B) TO COMPEL PRODUCTION OF PLAINTIFFS' FINANCIAL STATEMENTS was forwarded this 23rd day of January, 2006, via hand-delivery to:

> Robert M. Langer, Esq.
> Wiggin & Dana LLP
> One CityPlace
> 185 Asylum Street
> Hartford, CT 06103

and via Federal Express to:

> Alicia L. Downey, Esq.
> Bingham McCutchen, LLP
> 150 Federal Street
> Boston, MA 02110-1726
>
> Richard S. Taffet, Esq.
> Bingham McCutchen LLP
> 399 Park Avenue
> New York, NY 10022-4689
>
> Suzanne Wachsstock, Esq.
> Wiggin & Dana LLP
> 400 Atlantic Street
> P.O. Box 110325
> Stamford, CT 06911-0325

_____
Craig A. Raabe