UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL )
SERVICES PTE., LTD., MEGAVISA SOLUTIONS )
(S) PTE, LTD., AND ADVENT MANAGE LIMITED, )
                                           Plaintiffs, )
v. )    CIVIL ACTION
   )    NO. 3-02 CV 1107 (AVC)
THE DOW CHEMICAL COMPANY, UNION )
CARBIDE CORPORATION, UNION CARBIDE )
ASIA PACIFIC, INC., UNION CARBIDE )    April 6, 2006
CUSTOMER SERVICES PTE. LTD., AND DOW )
CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., )
                                        Defendants. )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO PROVIDE DOCUMENTS TO THE LIQUIDATORS**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd.
and Megavisa Solutions (S) Pte. Ltd., and Advent Manage Limited*

LITDOCS/636459.1

I. **PRELIMINARY STATEMENT**

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte. Ltd. ("Megavisa Solutions"), through their assignee-in-interest and co-party plaintiff Advent Manage Limited ("Advent") (collectively, "plaintiffs") oppose Defendants'[1] Motion to Provide Advent Manage Limit [*sic*] Documents to the Liquidators (the "Documents Motion").

The Documents Motion is both factually and procedurally ill-founded. If there were any real need for the Liquidators who control Megavisa Solutions to obtain the documents and information at issue, they have always had the opportunity to request them directly. Counsel's Joint Motion for Leave to Withdraw from the Representation of Megavisa Solutions made that opportunity even more obvious, by expressly inviting the Liquidators to appoint separate counsel for Megavisa Solutions, through which they could seek to become directly involved in this case—which their Singapore counsel, in December 2005, indicated they would do. *See* Documents Motion <u>Exhibit B</u>, at page 2.[2] Had they done so, the withdrawal motion and the instant Documents Motion both would have been rendered moot. As of the date of this Opposition, however, the Liquidators have declined either to timely respond to Counsel's Joint Motion to Withdraw, appoint separate counsel for Megavisa Solutions, or otherwise try to assert any discovery rights either here or in the liquidation proceedings in Singapore.

---

[1] The Dow Chemical Company ("Dow"), Union Carbide Corporation (UCC), Union Carbide Asia Pacific, Inc. (UCAP), Union Carbide Customer Services Pte. Ltd., and Dow Chemical Pacific (Singapore) Pte. Ltd.

[2] Unlike defendants' moving papers, this Opposition is not filed under seal because it does not on its face disclose protected information. Plaintiffs' references herein to sealed motions or documents do not and are not intended to waive any protections afforded by the Stipulated Protective Order.

In light of the Liquidators' inaction, defendants' unsubstantiated statements that they must act on the Liquidators' behalf are simply not plausible. The lack of a bona fide basis for the Documents Motion is further revealed by defendants' continuing refusal to explore various available mechanisms to avoid being subjected to duplicate recoveries if they settle the case now. If that concern were real they would have taken such steps, rather than insist, contrary to law and in the absence of any proof, that they need to provide documents and information to the Liquidators either "in the interest of justice" or to avoid settling with "the wrong party." Rather, the Documents Motion must be viewed as having been filed for prejudicial purposes in an attempt to manipulate the Court and undermine good faith settlement discussions. The Motion should be denied.

## II.   FACTS

### A.   Defendants' Pretextual Demands for Advent-Related Discovery.

By letter dated December 20, 2005, defendants' counsel asked the Court to stay all merits discovery to permit them to investigate the validity of the assignment under which the three original plaintiffs assigned their claims to Advent. *See* Declaration of Alicia L. Downey ("Downey Decl.") ¶ 2. Counsel's letter specifically advised the Court that "Counsel for the Liquidators wishes to become involved in these proceedings," and that defendants had "notified such counsel" of the status conference to be held the next day. *Id.*

During the December 21, 2005 status conference, defendants' counsel demanded that the Court direct plaintiffs to respond immediately to all pending Advent-related discovery, notwithstanding the numerous objections plaintiffs had interposed. Downey Decl. ¶ 3. The Court indicated only that plaintiffs should produce the assignment itself, which Advent did. It was further made clear that all other Advent-related discovery would remain on hold pending

further discussion. *Id.* The Liquidators' counsel did not attend the call, and at no time did defendants' counsel disclose an intent or desire to provide the discovery they sought to the Liquidators. *Id.*

On January 30, 2006, counsel were advised that the Court would be issuing an Order stating, in relevant part, that the case was being referred to Magistrate Judge Smith for a settlement conference and that virtually all proceedings in this case except for "discovery in aid of the settlement conference" would be stayed.[3] Downey Decl. ¶ 4. It was agreed that counsel would confer on February 3 about which of the still-pending discovery efforts, including the Advent-related discovery in abeyance since December 21, 2005, fell within the exception to the overall stay directed by the Court. *Id.*

On February 2, 2006, in advance of the conference call, defendants' counsel proposed to narrow the focus of the Advent-related discovery to seven categories of documents. Downey Decl. ¶ 5, Exhibit 1. A conference between plaintiffs' and defendants' counsel took place late in the afternoon on February 3, 2006. The discussions were summarized in a letter sent the following Monday, February 6, 2006, from plaintiffs' counsel. Downey Decl. ¶ 6, Exhibit 2. As stated therein, defendants had repeatedly failed to respond to plaintiffs' repeated inquiries as to why, in view of what defendants already knew, additional Advent-related discovery was needed for the settlement conference. Defendants also did not respond to the point made by plaintiffs' counsel, more than once during that call, that the existence of the mere potential for a challenge, to the extent that it might expose defendants to any form of "double liability," was one that could be accommodated and addressed in a properly structured settlement agreement and, thus, lack of Advent discovery was irrelevant to the settlement process. Nevertheless, in the interest of

---

[3] The Order Staying Discovery issued on February 8, 2006.

- 3 -

eliminating defendants' asserted excuse for avoiding settlement discussions, plaintiffs' counsel undertook to investigate what documents might exist that would be relevant to the categories of documents sought by defendants. Downey Decl. ¶ 6.

At no time during the February 3, 2006 conference call did defendants' counsel disclose that they intended to provide whatever Advent-related discovery they obtained to the Liquidators. Had plaintiffs' counsel known of defendants' counsel's true intentions, they would have discontinued the negotiations. Downey Decl. ¶ 6.

In a letter dated February 7, 2006, defendants further modified their requests and identified six categories of document requests to which they insisted upon a response. *See* Downey Decl. ¶ 7, Exhibit 3. This correspondence, too, failed to explain how documents responsive to the requests would aid in the settlement conference and it did not disclose that defendants would seek to provide the discovery to Liquidators. *Id.*

Plaintiffs' counsel obtained and produced additional documents and information on February 14, 2006 and February 15, 2006. *Id.*; *see* Defendants' Brief, Exhibit E. The documents and page 2 of the February 14 letter were designated "Counsel Only" pursuant to the Stipulated Protective Order dated December 18, 2002. Downey Decl. ¶ 7, Exhibit 4. The February 14 letter set forth plaintiffs' objection to the continued lack of explanation of the connection between the Advent discovery and the settlement conference:

> We have explained to you why the discovery sought by the motion [to compel] will not, either as practical or legal matter, aid the settlement process. You have not responded with pertinent legal authorities or good faith explanations to the contrary. Indeed, you expressly refused to do so and instead filed the instant motion to compel,[4] which likewise fails to justify the discovery at issue. [Defendants' Brief, Exhibit E.]

---

[4] Defendants' Motion to Compel was denied by Order dated March 10, 2006.

- 4 -

Defendants' counsel were also reminded that plaintiffs' counsel had undertaken to discuss the information and documents as they might relate to the settlement process:

> As we further advised you, <u>once you have had an opportunity to review the referenced documents we are prepared to discuss their implications for the settlement conference</u>. [*Id.* (emphasis added).]

There has been no response to this invitation to further discussions. Downey Decl. ¶ 7. Long before defendants filed the instant Motion, moreover, defendants were advised unequivocally that there were no more documents responsive to the narrowed categories. *See, e.g.,* Documents Motion, <u>Exhibit E</u> at page 2; Plaintiffs' Memorandum in Opposition to Defendants' Motion to Compel Production of Documents and Information Relating to Advent Manage Limited and Success Achieve, filed March 6, 2006.

**B.     Defendants' Request to Provide Confidential Documents to the Liquidators.**

On February 22, 2006, <u>after</u> defendants had received plaintiffs' documents and explanatory letter (all of which were designated "Counsel Only"), defendants' counsel disclosed, for the first time, that the Liquidators had "asked us for any and all information we have about Advent . . . and MegaVisa's purported assignment of claims." *See* Documents Motion, <u>Exhibit C</u>. Counsel did not say when or how the Liquidators had made such a request. Mr. Solberg's letter further stated that defendants' counsel "would like to provide these documents to the Liquidators."[5] *Id.*

Plaintiffs' response made it clear that disclosure of the documents was inappropriate:

---

[5] Notably, Mr. Solberg's letter did not ask plaintiffs to justify the confidentiality designations on the documents, nor did it provide any explanation as to why, in the interest of furthering the settlement process, defendants thought it helpful to provide the documents to the Liquidators.

> ... The request is denied. The information and documents in question are highly confidential and were provided to you for the specific limited purpose of facilitating a settlement in this matter. We do not see how granting the consent you seek will further that objective. <u>If the Liquidators wish to request certain documents from Advent, they should be referred to us and we will respond accordingly.</u> [*Id.* (emphasis added).]

Twenty-five days later—and only ten days after the Court denied as moot their Motion to Compel Production of Documents Relating to Advent—defendants filed the instant Motion.

### III.  ARGUMENT

#### A.  Defendants Have Not Shown Why They Have Standing to Seek a Discovery Order or Any Other Relief on Behalf of the Liquidators.

The Documents Motion provides no factual basis on which the Court may find that defendants have standing to demand any relief on behalf of others, especially the Megavisa Solutions Liquidators. Defendants have not shown, nor have they even tried to show, that the Liquidators are unable or unwilling to act in their own right. Similarly, they have not explained why defendants must be the conduit by which the Liquidators compel discovery from Advent, or, for that matter, what steps, if any, the Liquidators would take if they received the documents in question.

The Documents Motion also inexplicably fails to address the joint withdrawal motion, which specifically requests an Order directing the Liquidators to appoint new counsel for Megavisa Solutions. Despite having been personally served with that motion, however, the Liquidators and their Singapore counsel have not responded or objected in any way. Instead, the Court has been presented with nothing more than bald representations by defendants' counsel, unsupported by any facts or legal authority, that the Liquidators wish to employ them as a means of obtaining discovery from Advent. The fact that defendants seek to assume such a role with no apparent justification raises questions concerning the propriety of their conduct and the effort

they are making to interfere with the relationship between Megavisa Solutions and the other plaintiffs in this case. The Court should not allow itself to be made a part of this effort, and should deny defendants' Motion forthwith.

### B. The Stipulated Protective Order Does Not Authorize Granting the Relief Sought.

The defendants also cannot find support for their position in the Stipulated Protective Order dated December 18, 2002 (submitted herewith, Downey Decl. Exhibit 4). Nothing therein allows defendants to request an order permitting them to give confidential documents (and certainly not documents produced in the context of settlement negotiations) to third parties. As a threshold matter, defendants did not comply with the meet and confer requirements of either the Stipulated Protective Order (see Paragraph L) or Local Rule 37(a)(2). Defendants made no good faith effort to understand the basis of plaintiffs' confidentiality designations. Had they done so, they would have had to admit that they were not confused or prejudiced in any way by plaintiffs' confidentiality designations, but have been thwarted only in an attempt to interfere in matters having nothing to do with them. Apart from defendants' improper intent, their failure to follow the process outlined in the Stipulated Protective Order and the applicable Court rules requires denial of their Motion.[6]

---

[6] *See, e.g., Murphy v Barberino Bros., Inc.*, 208 F.R.D. 483, 484 (D. Conn. 2001) (denying motions to compel and for sanctions where "[i]n bringing these motions and failing to follow Rule 9(d)(2), plaintiffs' counsel has wasted the time of this Court and defense counsel and has incurred unnecessary attorneys' fees and costs for his client and defendant"); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, 1998 WL 67672, *2 (S.D.N.Y. 1998) (where moving party had written a single letter requesting production but had not indicated its plans to file a motion in the event of noncompliance, duty to confer was not satisfied and motion to compel would be denied on the grounds that the moving party inexcusably failed to meet the requirements of Rule 37(a)(2)(B)).

In addition, the Documents Motion mistakenly relies on a provision in the Stipulated Protective Order that permits disclosure of restricted documents to "any person that the Court designates in the interest of justice." In so doing, however, defendants neglect to mention the very first paragraph of the Stipulated Protective Order, which states, in the last sentence:

> Confidential Material and Counsel Only material shall be used by the recipient solely for the purpose of conducting this litigation.

The clear intent of the Stipulated Protective Order is to confine the use of protected documents to <u>this</u> litigation. The issue of the validity of the assignment is not, nor should it ever be, before this Court, nor can it properly be explored or determined in this litigation. The Motion should be denied, therefore, because not even the Court's ability to order disclosures "in the interest of justice" can nullify defendants' express agreement to use the material at issue "solely for the purpose of conducting this litigation."

Even assuming, *arguendo*, that defendants' interpretation of the Stipulated Protective Order were reasonable, "the interest of justice" in these circumstances lies in protecting the integrity of the settlement process in which the documents and information at issue came to light. Moreover, the documents do pertain to highly confidential financial and commercial matters that the parties concerned have not made public and do not wish to make public. *See* Stipulated Protective Order, Paragraphs B and D. They certainly are no less highly confidential in nature than the hundreds of thousands of documents designated by defendants as either "Confidential" or "Counsel Only." Indeed, defendants should not even be heard to question the propriety of plaintiffs' confidentiality designations in light of the undue expense and inconvenience caused

by defendants' systematic abuse of confidentiality designations.[7] In contrast, defendants demand an order that would strip Advent's and Mr. Zaveri's confidential financial documents of all protection based not on any showing of misdesignation or prejudice to defendants, but on vague claims that "justice" would served.

### C. Defendants' Motion Violates the Order Staying Discovery and Reflects Their Refusal to Engage in Settlement Discussions in Good Faith.

Defendants' motion also seeks a result in violation of the Court's February 8, 2006 Order, which stayed all proceedings except for discovery "in aid of the settlement conference." Given defendants' intransigence to engage in any good faith settlement discussions and their raising excuse after excuse to avoid doing so, disclosure of the documents and information at issue does not fall within the foregoing Order. Defendants' argument to the contrary—i.e., that handing over documents will aid the Liquidators in assessing the validity of the assignment and thereby allow defendants to know who owns the claim so they can negotiate with the proper party—is circular in its logic. If the Liquidators really needed or had an interest in obtaining the information at issue, they have had plenty of opportunity to do so, which they have so far declined to take. Indeed, the Liquidators have not taken any affirmative steps to challenge the assignment, and defendants have suggested little basis on which to assume that the Liquidators will ever do so.

As plaintiffs' counsel has also repeatedly pointed out in various conference calls and in papers filed with the Court, the mere potential for a challenge to the validity of the assignment,

---

[7] The details of defendants' misconduct in this regard are set forth in Plaintiffs' Memorandum of Law in Support of Their Cross-Motion to Compel Further Responses to Discovery, to Remove "Counsel Only" Designations, and For Sanctions, filed August 5, 2005 ("Plaintiffs' August 5, 2005 Submission"), at pages 4-5, 19-22, 42-43 and Plaintiffs' Reply in Further Support of The Cross-Motion [etc.], filed October 3, 2005, at pages 17-19.

to the extent that it might expose defendants to any form of "double liability," is one that can be accommodated and addressed in a properly structured settlement agreement.[8] Defendants' refusal to pursue such avenues reveals their true intent to use the Documents Motion as a pretext for painting Advent, Mr. Mittal and Mr. Zaveri in a negative light and thereby, somehow, influence the Liquidators to take some action. That this is the true purpose for their Motion cannot be denied, particularly in light of the inaccurate and opprobrious "time line" they have presented to the Court,[9] which is purportedly based on confidential information supplied by Advent in furtherance of the Court's February 8, 2006 Order. In such circumstances, granting defendants the relief they seek would not only be inconsistent with the Court's Stay Order, but would also undermine, not aid, any future settlement negotiations.

### IV.  CONCLUSION

Defendants have not shown why they have standing to seek discovery on behalf of the Liquidators, nor have they shown how providing them with confidential documents will aid in settlement efforts. In fact, the instant Motion demonstrates that defendants never intended to engage themselves in good faith settlement discussions, nor have they done so. For that reason and for all the other reasons set forth herein, the Motion should be denied in its entirety.

---

[8] *See, e.g.,* Downey Decl. ¶ 6; Plaintiffs' Memorandum in Opposition to Defendants' Motion to Compel, filed March 6, 2006, at page 12, n.6.

[9] *See, e.g.,* Documents Motion, Exhibit A.

Respectfully submitted,

**BINGHAM McCUTCHEN LLP,**

_____
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

LITDOCS/636459.1

## **CERTIFICATE OF SERVICE**

This is to certify that on this 6th day of April, 2006, a copy of the foregoing was sent by telecopier and first-class mail to the following:

Craig A. Raabe
Robinson & Cole LLP
280 Trumbull Street, 28th Floor
Hartford, CT 06103

Andrew S. Marovitz
Mayer Brown Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Christopher J. Kelly
Mayer Brown Rowe & Maw LLP
1909 K. Street, N.W.
Washington, DC 20006

Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604

_Alicia L. Downey/gcr_
Alicia L. Downey

cc:   The Honorable Alfred V. Covello (via hand delivery)
      United States District Court
      450 Main Street
      Hartford, CT 06103