UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., MEGAVISA SOLUTIONS (S) PTE. LTD. and ADVENT MANAGE LTD. | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil No. 3:02 CV 1107 (AVC) |
| THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE, LTD., and DOW CHEMICAL PACIFIC (SINGAPORE) PTE., LTD. | : : : : : : : : : | |
| Defendants. | : | October 16, 2006 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF RULING AND ORDER RE: DISCOVERY MOTIONS**

Craig A. Raabe (ct 04116)
Jason M. Kuselias (ct20293)
Elizabeth R. Leong (ct24453)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  05103-3497
*Counsel for all Defendants*

Nathan P. Eimer (ct 23693)
Scott C. Solberg (phv 0234)
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL  60604
*Counsel for Defendants Union Carbide Corporation, Union Carbide Asia Pacific, Inc. and Union Carbide Customer Services Pte, Ltd.*

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
MAYER, BROWN, ROWE & MAW LLP
71 S. Wacker Drive
Chicago, Illinois  60606

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C.  20006-1157
*Counsel for Defendants The Dow Chemical Company and Dow Chemical Pacific (Singapore) Pte., Ltd.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I.    INTRODUCTION ................................................................................. 1

II.   APPLICABLE STANDARD FOR MOTION TO RECONSIDER ...................... 1

III.  THE COURT SHOULD RECONSIDER ITS DECISION PERMITTING PLAINTIFFS TO TAKE THE DEPOSITION OF ANDREW LIVERIS SINCE (A) PLAINTIFFS HAVE NOT SHOWN THAT ANY RELEVANT INFORMATION THEY SEEK IS UNAVAILABLE FROM OTHERS AND (B) HE HAS NO SUPERIOR OR UNIQUE KNOWLEDGE ................................................................................. 3

IV.   THE COURT SHOULD RECONSIDER THE ORDER WITH RESPECT TO INTERROGATORIES 11 AND 12 ........................................................... 10

V.    CONCLUSION ................................................................................. 12

DCDB01 20829447.4   16-Oct-06 14:52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99
(E.D. Va. 1983)...................................................................................................2

*Baine v. GM*, 141 F.R.D. 332 (M.D. Ala. 1991)...........................................................8

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)..................................10

*Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 61 (D.
Conn. 2000)...............................................................................................2, 10

*Colon v. Tucciarone, No. CIV 3:02CV891*, 2003 WL 22439588 (D.
Conn. Oct. 27, 2003).........................................................................................2

*Consol. Rail Corp. v. Primary Indus. Corp.*, Nos. 92 Civ. 4927, 92
Civ. 6313, 1993 WL 364471...............................................................................8

*Filetech, S.A. v. France Telecom, S.A.*, No. 95 Civ. 1848, 1999
U.S. Dist. LEXIS 4693 (S.D.N.Y. 1999).............................................................8

*Liberty Mut. Ins. Co. v. Sup. Ct. of San Mateo County*, 10 Cal.
App. 4th 1282 (1992).........................................................................................9

*Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002) .............................7

*Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) ..................................................7, 9

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ........................................2

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203
F.R.D. 98 (S.D.N.Y. 2001) ...............................................................................8

*Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995)............................................................7

*Vertrue Inc. v. Meshkin*, , Civ. No. 3:05cv1809, 2006 U.S. Dist.
LEXIS 37700 (D. Conn. June 8, 2006)..............................................................9

**Statutes**

Fed. R. Civ. P. 26(b)(1)..............................................................................................9

Fed. R. Civ. P. 26(b)(2)...............................................................................2, 6, 9, 10

Fed. R. Civ. P. 30(b)(6)...............................................................................................4

DCDB01 20829447.4   16-Oct-06 14:52

## I.    INTRODUCTION

Defendants recognize that, in its Ruling and Order Re: Discovery Motions ("Order") (Docket No. 447), the Court grappled with numerous motions and a host of briefs addressing complex and contentious legal issues.  Defendants further recognize that, pursuant to the Order, each party prevailed on some of the issues before the Court. Defendants do not reflexively submit this motion to reargue all of the motions on which they did not prevail.  But on two especially significant points, the Order warrants reconsideration.  In granting Plaintiffs' motion to compel, and denying the motion of Defendant The Dow Chemical Company ("TDCC") for a protective order against, the deposition of Andrew Liveris, TDCC's President, Chief Executive Officer and (since April 1 of this year) Chairman of the Board, the Order did not apply the appropriate standard for whether Plaintiffs should be allowed to depose the most senior executive of a major international corporation.[1]    Further, in granting Plaintiffs' motion to compel responses to Interrogatories 11 and 12 of Plaintiffs' Third Set of Interrogatories, the Order reflects a misunderstanding of the Interrogatories themselves.  Defendants TDCC, Union Carbide Corporation ("UCC") and Union Carbide Asia Pacific, Inc. ("UCAP") therefore respectfully move that the Court reconsider the Order with respect to these two points, and deny Plaintiffs' motions to compel as to them.

## II.    APPLICABLE STANDARD FOR MOTION TO RECONSIDER

In order to prevail on a motion for reconsideration, "the movant must demonstrate that newly discovered facts exist that require reconsideration, that there has been an intervening change in the law, or that the court has overlooked and thus failed to consider an aspect of the law presented by the [moving party] which, if left unredressed, would result in

---

[1] TDCC is a Fortune 50 company employing approximately 42,000 people worldwide.

clear error or cause manifest injustice." *Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 61, 62-63 (D. Conn. 2000); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). *Accord*, *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc..*, 99 F.R.D. 99, 101 (E.D. Va. 1983) ("The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension"). Reconsideration is also warranted when the court did not rule on an issue that was presented to it or further clarification is necessary for the parties to implement the order at issue. *See Colon v. Tucciarone*, No. 3:02CV891, 2003 WL 22439588, at *1 (D. Conn. Oct. 27, 2003) (noting that it is appropriate to reconsider issues that were not specifically ruled upon); *see also* Order Granting Mot. for Recons. re: Order on Mot. to Dismiss, July 9, 2004 (granting motion to reconsider dismissal of defendants for lack of personal jurisdiction).

This standard is satisfied here with respect to both the points as to which Defendants seek reconsideration. In granting Plaintiffs' motion to compel the deposition of Andrew Liveris (and in denying TDCC's motion for a protective order as to the same deposition), the Court did not address Rule 26(b)(2) of the Federal Rules of Civil Procedure and the many cases applying it when parties seek to depose senior executives of corporate litigants. And in granting Plaintiffs' motion to compel responses to Interrogatories 11 and 12 of Plaintiffs' Third Set of Interrogatories, the Court has made an "error . . . of apprehension," *Above the Belt*, 99 F.R.D. at 101, as to the nature of the

two interrogatories themselves.  In both instances, Defendants respectfully suggest that reconsideration will lead directly to denial of Plaintiffs' motions.

### III.   THE COURT SHOULD RECONSIDER ITS DECISION PERMITTING PLAINTIFFS TO TAKE THE DEPOSITION OF ANDREW LIVERIS SINCE (A) PLAINTIFFS HAVE NOT SHOWN THAT ANY RELEVANT INFORMATION THEY SEEK IS UNAVAILABLE FROM OTHERS AND (B) HE HAS NO SUPERIOR OR UNIQUE KNOWLEDGE.

Andrew Liveris has been President and Chief Executive Officer of TDCC since November 2004; in April of this year, he also became Chairman of the Board.  In these positions, he is ultimately responsible for the $46 billion in annual sales and 42,000 employees of TDCC and its consolidated subsidiaries, which serve customers in over 175 countries.  The job requires "an enormous time commitment and frequent international travel."  Decl. of Andrew N. Liveris ("Liveris Decl."), ¶ 5, attached as Ex. 1 to Def.'s Mem. Resp. to Pls.' Mot. to Compel & Supplemental Mot. for Protective Order Precluding Dep. of Andrew N. Liveris, Nov. 1, 2005.

Plaintiffs seek to compel Mr. Liveris' deposition on the following grounds:

1.   His "global responsibility for [a] group[] of products" as President for the Performance Chemicals Business Group from 2000 to 2003 (Pls.' Mem. in Supp. of Mot. to Compel Prod. of Witnesses for Dep. ("Pls.' Mot. to Compel Mem."), 5, Oct. 13, 2005);

2.   *Plaintiffs* themselves had identified him as a potential witness (*ibid*.);

3.   His role as what Plaintiffs described as "an integral member" of the TDCC-UCC integration team (*ibid*.);

4.   After the merger "he assumed responsibility for all of the defendants' worldwide sales and distribution . . . of specialty chemical products," a subgroup of the Performance Chemicals portfolio (*id*. at 6);

5.      Some of the 330 documents Defendants have produced to Plaintiffs, and for which the index Defendants provided lists him as either an author or a recipient, relate to the Products (*id.* at 8; Pls.' Mem. in Opp. to Defs.' Mot. for Protective Order Precluding Dep. of Andrew N. Liveris ("Pls.' Opp. Mem."), 4, Nov. 15, 2005); and

6.      Defendants purportedly "specifically identified" Mr. Liveris "in four sets of interrogatory answers . . . as having relevant knowledge of Dow's global sales and marketing of certain of the 'Products' . . . " (*Id.* at 5-6).

Each of these grounds is easily rebutted:

1.      As President of Performance Chemicals, Mr. Liveris oversaw a business that in 2001 had revenue of over $5 billion, nearly 7,000 employees, and more than 130 sites – including 60 manufacturing locations – around the world.  In contrast, total sales by UCCS and UCAP to Plaintiffs were only $8.15 million in 2000. Ex. 2 to Defs.' Combined Mem. in Supp. of Mot. for Protective Order, June 21, 2005.  This business group by itself is larger than many major multinational companies; even within this organization, Mr. Liveris was at the apex of a structure in which many other employees would have knowledge considerably more detailed than his.  In the deposition of John Yimoyines, for example, Plaintiffs elicited the names of four Vice Presidents who reported to Mr. Liveris in this position.  *Id.* at 5.  But Plaintiffs have not sought to depose any of them.   Moreover, Plaintiffs will also have the opportunity, pursuant to Rule 30(b)(6), to depose TDCC in search of the information that they would impute to Mr. Liveris.

2.      Before obtaining any discovery at all, Plaintiffs named Mr. Liveris as a potential witness in their Initial Disclosures.  In response, in accordance with their obligations, Defendants provided Plaintiffs with Mr. Liveris' title as Business Group

4

President for Performance Chemicals.  Supplemental Resp. & Objections of Def. to Pls.'
Second Set of Interrogs., 7, May 24, 2004.

3.     Plaintiffs point to no evidence supporting their baseless claim that Mr.
Liveris was an "integral" member of the team formed to coordinate the planning for the
integration of the businesses of UCC.  In fact, he was one of approximately ten business
leaders who formed one portion of the integration team.  *See*  Neri Dep. Ex. 101, 35,
Aug. 23, 2005 (attached as Ex. 1) (showing Mr. Liveris as one of 24 individuals
identified as part of Integration Team as of August 1999).  Nor can Plaintiffs point to any
evidence to support their spurious suggestion that Mr. Liveris was a member of any
"clean team" charged with analyzing sensitive competitive information in a setting
removed from TDCC's day-to-day business.  Rather, as UCAP's former president
testified, the participants in the clean teams were generally "retired people, recently
retired, that weren't directly involved with the [day-to-day] business."  Neri Dep., 92-93,
Aug. 23, 2005 (attached as Ex. 2).

4.     That Mr. Liveris assumed responsibility for specialty chemicals is
unremarkable, since they were part of the Performance Chemicals portfolio he oversaw.

5.     Although Plaintiffs assert that the documents "concern such matters as,"
among other things, "defendants' business dealings with plaintiffs" (*ibid*.), they have not
pointed the Court to any such document, even though such a document might have
squarely contradicted Mr. Liveris' declaration.  This is because no such document exists;
Plaintiffs recklessly copied this assertion from their earlier memorandum in support of
their motion to compel, which discussed not only the 330 documents relating to Mr.
Liveris, but also thousands either authored or received by Muthukrishnan Ravi and

Ashish Mitra, who, as Dow India's Country Manager and Sales Manager for chemicals and performance chemicals, respectively, indisputably dealt directly with Plaintiffs in the course of their work.  *See* Pls.' Mot. to Compel Mem., 8.

6.     Besides responding to Plaintiffs' identification of Mr. Liveris as a potential witness, Defendants identified Mr. Liveris in the course of personal-jurisdiction discovery as someone who may have knowledge about TDCC's sales of Products to Defendants UCCS and Dow Chemical Pacific.  At no time, however, has any *Defendant* identified Mr. Liveris "as having *relevant* knowledge of Dow's global sales and marketing of certain of the 'Products' . . . ."  Pls.' Opp. Mem, 5-6 (emphasis added).  To the contrary, Mr. Liveris has declared categorically that he has "no firsthand knowledge regarding plaintiffs' allegations."  Liveris Decl. ¶ 3.  With regard to the Plaintiffs themselves, Mr. Liveris added that he has had "no involvement in any relationship with plaintiffs and no communications or contact with plaintiffs with respect to the matters identified in the complaint."  *Id*. ¶ 4.  Nor did he have any involvement in or knowledge of (a) any discussion or decision concerning any price Plaintiffs either charged or paid for Products; or (b) any discussion or decision on whether to release orders Plaintiffs placed in 2001.  *Ibid*.  Further, Mr. Liveris has no personal knowledge of who had responsibility for these matters or of their actions in carrying out these responsibilities.  *Ibid*.

Most importantly for the purposes of the present motion, Defendants cited the Court to the many cases in which courts have applied the "apex doctrine" to bar or delay, pursuant to Fed. R. Civ. P. 26(b)(2), senior executives' depositions where the same information could be obtained more conveniently through other, lower-ranking corporate employees.  These cases include:

- *Salter v. Upjohn Co.*, 593 F.2d 649, 650-51 (5th Cir. 1979) (in wrongful-death action, upholding trial court's grant of protective order against deposition of Upjohn's president "in light of defendant's reasonable assertions that [he] was extremely busy and did not have any direct knowledge of the facts," and where Upjohn had indicated that other employees had "more knowledge of the facts");

- *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002) (in gender discrimination action, upholding district court's refusal to compel deposition of defendant's corporate vice president and controller, a "high-ranking executive in a multinational corporation, who worked more than 1,000 miles away from the facility where [plaintiff] was employed"; deposition "would have been a quite costly and burdensome means for determining whether he had information bearing on [plaintiff's termination]"; plaintiff had deposed defendant's HR director and two additional employees, and had not attempted to serve interrogatories on the executive);

- *Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir. 1995) (upholding grant of protective order against deposition of IBM's Chairman in age discrimination action brought by ex-employee, where IBM submitted an affidavit in which the chairman stated that he "lacked personal knowledge of [plaintiff] and was unaware of her age, her performance ranking, any work evaluations that she might have received, or that she even worked for IBM," and plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the chairman] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome");

• *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (granting motion to compel depositions of CEO of Sony Corporation, President of Sony USA and other Sony Corp. senior executive, where plaintiff showed that they had "unique knowledge" as to issues in litigation; "[u]nless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a redundant deposition of [this] highly-placed executive' while allowing other witnesses with the same knowledge to be questioned" (quoting *Consol. Rail Corp. v. Primary Indus. Corp.*, Nos. 92 Civ. 4927, 92 Civ. 6313, 1993 WL 364471, at *1);

• *Filetech, S.A. v. France Telecom, S.A.*, No. 95 Civ. 1848, 1999 U.S. Dist. LEXIS 4693, at *4-*5 (S.D.N.Y. 1999) (granting protective order against deposition of France Telecom's president despite plaintiffs' contention that he "must have authorized [the] complained-of conduct"; where it is "likely that lesser . . . employees are available to furnish information sufficient to satisfy" the jurisdictional inquiry underway, plaintiffs must "explore that likelihood" instead of deposing president "until such time (should it arise) as plaintiff can demonstrate the reasonable necessity of taking that deposition . . . .");

• *Baine v. GM*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (in wrongful-death action, court granted protective order against deposition of top Buick executive who 15 years earlier had prepared a memorandum on mechanism in question while involved in GM engineering activities; deposition "would be oppressive, inconvenient, and burdensome inasmuch as it has not been established that the

information necessary cannot be had from [any of several recipients of the executive's memorandum], interrogatories, or the [yet-to-be-taken] corporate deposition," and "[i]t has also not been demonstrated that [the executive] has any superior or unique personal knowledge . . .."); and

- *Liberty Mut. Ins. Co. v. Sup. Ct. of San Mateo County*, 10 Cal. App. 4th 1282, 1287, 1289 (1992) (issuing mandate to trial court to grant protective order blocking deposition of Liberty Mutual's president/CEO; " 'apex' depositions such as the one in this case, when conducted before less intrusive discovery methods are exhausted, raise a tremendous potential for discovery abuse and harassment"; following *Salter* and *Baine*, among other federal cases, court holds that trial court should grant protective order unless "plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information").

In its decision, the Court did not address, let alone analyze, any of the myriad cases, such as those mentioned above, that invoke Rule 26(b)(2) to bar depositions of high-ranking corporate executives unless and until other, less intrusive means of obtaining the same information have been used. Instead, foregoing the apex doctrine altogether, the Court relied on the general test of discoverability under Rule 26(b)(1): it determined that "the deposition at issue is 'reasonably calculated to lead to the discovery of admissible evidence,'" and on that basis alone denied the motion for a protective order. To support its determination, the Court cited only a single case – *Vertrue Inc. v. Meshkin*, No. 3:05cv1809, 2006 U.S. Dist. Lexis 37700 (D. Conn. June 8, 2006) – which does not even purport to address the question under Rule 26(b)(2) of the appropriateness of

deposing a multinational company's CEO that is presented here by the motions relating to Mr. Liveris' testimony.

Because the Court's decision did not address the apex doctrine and its application pursuant to Rule 26(b)(2), it is clear that the Order "has overlooked and thus failed to consider an aspect of the law presented by [TDCC] which, if left unredressed, would result in clear error or cause manifest injustice." *Bristol Tech.*, 127 F. Supp. 2d at 62-63.  By ignoring the rule set forth in the seven cases listed above, the Order fails to apply a well-settled application of Rule 26(b)(2), resulting in discovery that is unduly and disproportionately burdensome for TDCC and its CEO, especially when one considers the many other means by which Plaintiffs could obtain the same information.  This approach would subject corporate defendants of all kinds to harassing and costly depositions of their most senior executives, regardless of how many other corporate employees might be able to provide the same information in a more efficient and less intrusive manner.  The result would be exactly the "in terrorem" effect of which the Supreme Court warned in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)**.**

The Court therefore should reconsider its decision granting Plaintiffs' motion to compel Mr. Liveris' deposition and, instead, grant TDCC's motion for a protective order precluding the deposition, at the very least until such time as Plaintiffs can demonstrate that they have exhausted all the less burdensome sources of the information that is in Mr. Liveris' possession, including, for example, the four vice presidents identified by John Yimoyines.

## IV.    THE COURT SHOULD RECONSIDER THE ORDER WITH RESPECT TO INTERROGATORIES 11 AND 12.

In granting Plaintiffs' motion to compel responses to Interrogatories 11 and 12 of Plaintiffs' Third Set of Interrogatories, the Court stated that the Interrogatories "involve information concerning the defendants' sales of products in the United States."  Order at

5.  In fact, this information is exactly what the Interrogatories do *not* call for.  Instead, they call for information concerning sales in or into the United States by *third parties*. Interrogatory 11 calls for Defendants to:

> Identify each sale of any Product by a person located within the United States (*other than you*) to a purchaser in the United States, and for each such sale, identify (a) the person making such sale, (b) the person making such purchase, (c) the Product involved, (d) the price charged, and (e) all documents concerning such sale.

Pls.' Third Set of Interrogs. & Fourth Req. to Defs. for Prod. of Docs. ("Pls.' Third Interrogs."), 3, May 16, 2005 (emphasis added), attached as Ex. 7 to Defs.' Combined Mem. in Supp. of Mot. for Protective Order ("Protective Order Mem."), June 21, 2005. Similarly, Interrogatory 12 directs Defendants to:

> Identify each sale of any Product by a person located outside the United States *other than you* to a purchaser in the United States, and for each such sale, identify (a) the person making such sale, (b) the person making such purchase, (c) the Product involved, (d) the price charged, and (e) all documents concerning such sale.

Pls.' Third Interrogs. at 3-4 (emphasis added).  *See* Protective Order Mem. at 6 (explaining Interrogs. 11 & 12).

The Court apparently misunderstood the Interrogatories and the nature of the information they called for.  Pursuant to the agreed document discovery protocols ratified by the Court, Defendants have already produced voluminous documents relating to their own sales of Products to customers in the United States.  Accordingly, the Court granted Defendants' motion for a protective order with respect to, among other items, Interrogatories 1 through 7, which concern sales by Defendants.  Order at 4.  Defendants did not argue that Interrogatories 11 and 12, unlike so many of the other interrogatories in the Third Set of Interrogatories, were duplicative of prior discovery requests.  Rather, the request of Interrogatories 11 and 12 for U.S. sales by third parties came far too late since

11

it was after Defendants had substantially completed their immense document review and production pursuant to an agreed protocol as approved by the Court. To require Defendants to now go back through their records in search of transaction-by-transaction documentation concerning sales by third parties, after having completed the agreed document retrieval and production would be manifestly unfair and prejudicial to Defendants. Therefore, the Court should reconsider its decision granting Plaintiffs' motion to compel with respect to Interrogatories 11 and 12 and should then deny Plaintiffs' motion and instead grant Defendants' motion for a protective order with respect to those same Interrogatories.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully urge the Court to: (1) reconsider its Order insofar as it grants Plaintiffs' motion to compel the deposition of TDCC's President, CEO and Chairman of the Board Andrew Liveris, grants Plaintiffs' motion to compel as to Interrogatories 11 and 12 in Plaintiffs' Third Set of Interrogatories, and denies Defendants' motions for protective orders with respect to Mr. Liveris' deposition and those two interrogatories; and (2) upon such reconsideration,

grant Defendants' motions for protective orders with respect to Mr. Liveris' deposition

and Interrogatories 11 and 12.

Respectfully submitted,

\s\ _____

Craig A. Raabe (ct 04116)                     Andrew S. Marovitz (ct 25409)
Jason M. Kuselias (ct20293)                   Dana S. Douglas (ct 25412)
Elizabeth R. Leong (ct24453)                  MAYER, BROWN, ROWE & MAW LLP
ROBINSON & COLE LLP                           71 S. Wacker Drive
280 Trumbull Street                           Chicago, Illinois  60606
Hartford, CT  05103-3497                      (312) 782-0600
(860) 275-8304
*Counsel for all Defendants*

Nathan P. Eimer (ct 23693)                    Christopher J. Kelly (ct 25410)
Scott C. Solberg (phv 0234)                   MAYER, BROWN, ROWE & MAW LLP
EIMER STAHL KLEVORN & SOLBERG LLP             1909 K Street, N.W.
224 South Michigan Avenue, Suite 1100         Washington, D.C.  20006-1157
Chicago, IL  60604                            (202) 263-3000
(312) 660-7600                                *Counsel for Defendants The Dow Chemical*
*Counsel for Defendants Union Carbide*        *Company and Dow Chemical Pacific*
*Corporation, Union Carbide Asia Pacific,*    *(Singapore) Pte., Ltd.*
*Inc. and Union Carbide Customer Services*
*Pte, Ltd.*

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of DEFENDANTS' MEMORANDUM IN SUPPORT OF

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF  RULING AND

ORDER RE:  DISCOVERY MOTIONS was filed electronically and served by mail on

anyone unable to accept electronic filing..  Notice of this filing will be sent by e-mail to

all parties by operation of the Court's electronic filing system or by mail to anyone

unable to accept electronic filing.  Parties may access this filing through the Court's

system.

\s\ _____

Craig A. Raabe – CT04116
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103-3597
Phone: (860) 275-8304
Fax: (860) 275-8299
E-mail: craabe@rc.com

14