UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., MEGAVISA SOLUTIONS (S) PTE, LTD., AND ADVENT MANAGE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>Defendants. | CIVIL ACTION<br>NO. 3-02 CV 1107 (AVC)<br><br>October 25, 2006 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF
RULING AND ORDER RE: DISCOVERY MOTIONS**

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs MM Global Services Inc., MM Global Pte. Ltd.
and Advent Manage Limited*

LITDOCS/656847.1

I.   INTRODUCTION

By Order dated September 29, 2006 (the "September 29 Order"), the Court, among other things, (i) granted in part and denied in part Plaintiffs' Motion to Compel Production of Witnesses for Deposition Pursuant to Rule 30, (ii) denied Defendant The Dow Chemical Company's Motion for a Protective Order Precluding the Deposition of Andrew N. Liveris, (iii) granted in part and denied in part Defendants' Motion for a Protective Order, and (iv) granted in part and denied in part Plaintiffs' Cross-Motion to Compel Further Responses to Discovery, to Remove "Counsel-Only" Designations, and for Sanctions.

The Dow Chemical Company ("Dow") has now moved for reconsideration of that portion of the September 29 Order permitting the deposition of Andrew Liveris.  In addition, Dow, Union Carbide Corporation ("UCC"), and Union Carbide Asia Pacific, Inc. ("UCAP") (collectively, "defendants") have jointly moved for reconsideration of that portion of the September 29 Order requiring sworn supplemental answers to Interrogatories 11 and 12 in Plaintiffs' Third Set of Interrogatories.

In support of their Motion for Partial Reconsideration, defendants argue that the Court failed to consider the law in such a way as to cause "clear error or manifest injustice," or otherwise "misapprehended" the facts or the law.  Reality is to the contrary.  As to both the Liveris deposition and the discovery requests calling for "information concerning defendants' sales of products," the Court considered detailed briefs submitted by the parties, and the September 29 Order reflects a full understanding of the relevant facts and applicable law, and a proper consideration of both.

Accordingly, the Motion for Partial Reconsideration should be denied forthwith.

II.   ARGUMENT

A.   **Defendants Fail to Meet the Standard for Reconsideration.**

Motions for reconsideration are disfavored and the standard for granting such a motion is rigorous.  *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict . . ."). "Reconsideration will generally only be granted when a

party can point to 'an intervening change of controlling law, the availability of new evidence, or the need to correct a <u>clear</u> <u>error</u> <u>or</u> <u>prevent</u> <u>manifest</u> <u>injustice</u>.'" *Book v. Lupinacci,* 2006 WL 1182275, at *2 (D. Conn. 2006) (emphasis added) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)). Defendants themselves concede that "<u>reconsideration</u> <u>will</u> <u>generally</u> <u>be</u> <u>denied</u> unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Def. Mem. at 2, *citing Shrader,* 70 F.3d at 257 (emphasis added). There has been no change of controlling law and defendants submit no new evidence. That leaves defendants with the heavy burden of persuading this Court that the September 29 Order, which is based on thoroughly briefed motions and cross-motions that were pending for more than a year, reflects a fundamental misapprehension of the facts and applicable law. Defendants fail to meet this heavy burden.

By their Motion, defendants do nothing more than restate the arguments submitted in their original briefs, all of which were rejected by the Court. This is not a proper basis for reconsideration. *See Bristol Tech., Inc. v. Microsoft Corp.,* 127 F. Supp. 2d 61, 62 (D. Conn. 2000) ("'[a] motion for reconsideration should not serve as a vehicle for relitigating issues already decided' . . . nor may such a motion 'be used to plug gaps in an original argument'") (quoting *Metro. Entm't Co. v. Koplik,* 25 F. Supp. 2d 367, 368 (D. Conn. 1998), and *Philbrick v. Univ. of Conn.,* 51 F. Supp. 2d 164, 165 (D. Conn. 1999)); *United States v. Gross,* 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously.") (citing *PAB Aviation, Inc. v. United States*, 2002 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000) ("Nor may the party merely reiterate or repackage an argument previously rejected by the court; that argument is for appeal.")). For example, Dow asserts with respect to the deposition of Andrew Liveris, that the Court did not address Fed. R. Civ. P. 26(b)(2) in its September 29 Order. In fact, the Court expressly cited Rule 26 in its reasoning. September 29 Order at 2, 12. The fact that it cited to subpart (b)(1) and not to subpart (b)(2) does not mean that the Court did not consider the entire Rule or the cases

cited by Dow. Similarly, defendants fail to show that the Court "misapprehended" Interrogatories 11 and 12 or the asserted burdens associated with responding to them. These matters were argued by defendants in their original briefs, and the Court simply found those arguments unpersuasive.

Further, if defendants' arguments on this motion seek to offer new grounds for the relief requested, it is too late. *See Bristol,* 127 F. Supp. 2d at 62 (holding that it is inappropriate to use a motion for reconsideration "to argue in the alternative once a decision has been made") (quoting *Philbrick,* 51 F. Supp. 2d at 165); *Gross,* 2002 WL 32096592 at *4 ("A motion for reconsideration cannot advance a new argument, as it is deemed waived.").

In sum, defendants have failed to show that reconsideration of the September 29 Order is proper, and the Court should deny the instant motion.

**B.      The Court Correctly Determined Andrew Liveris Could Be Deposed.**

The September 29 Order's conclusion regarding the deposition of Andrew Liveris is well grounded. *See* September 29 Order at 11-12. Indeed, Dow does not dispute the reasons offered by plaintiffs for taking his deposition or that it would be likely to lead to the discovery of relevant information:

- Dow acknowledges that Liveris was the President for Performance Chemicals, and does not deny that he had "global responsibility for [a] group[] of products" in that role. Def. Mem. at 3-4.

- Dow admits that Liveris was "one of approximately ten business leaders who formed one portion of the integration team." Def. Mem. at 3, 5.

- Dow admits that, post-merger, Liveris "assumed responsibility for all of the defendants' worldwide sales and distribution . . . of specialty chemical products." Def. Mem. at 3, 5.

In other words, it is undisputed that Liveris has direct and specific knowledge concerning the sale and distribution of products that were involved in the relationship between defendants

and plaintiffs, for which plaintiffs allege the prices were fixed, and that defendants improperly withheld from plaintiffs. This includes in connection with Liveris's role in the merger of Dow and Union Carbide that led to the unlawful termination of plaintiffs as respects the resale of the products over which Liveris had responsibility.

Thus, having all but conceded that Liveris has information properly subject to discovery under the Federal Rules, Dow resorts to suggesting that the Court neglected its duties and overlooked the law by not explicitly discussing the cases cited by Dow in its original brief seeking preclusion of Liveris's deposition. The absurdity of this argument is illuminated by the fact that, as shown below, the cases cited in no way undermine the Court's decision to deny Dow's Motion for Protective Order. Indeed, the key case relied upon by Dow is contrary to its position.

For example, it is evident that the Court did not misapprehend the law, or "forgo[] the apex doctrine altogether," as Dow asserts. Def. Mem. at 9. Instead, the Court applied the so-called "apex doctrine" in this case as courts elsewhere have in other antitrust cases. Here, plaintiffs allege that Union Carbide and Dow, alone and through their respective international subsidiaries, designed and implemented a corporate policy to fix resale prices. In support of reconsideration, Dow cites the decision in *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.,* 203 F.R.D. 98 (S.D.N.Y. 2001), an antitrust case, as an example of a case in which a court barred the deposition of a senior executive. Dow is correct that *Six West* is apt authority, but they are incorrect that it supports their position that a protective order should have issued here. The court in *Six West* <u>granted</u> motions to compel the depositions of multiple high-ranking executives.

Like the defendants here, the defendants in *Six West* argued that the CEO of Sony Corporation should be protected from deposition because he: (1) was an extremely busy corporate executive; (2) "had no personal knowledge of what [defendants] try to portray as a very narrow dispute between the United States affiliates of Sony Corporation and [plaintiff] about the proper management of the plaintiff's three theatres located in Manhattan." 203 F.R.D.

at 104.  Recognizing that the plaintiff's allegations swept more broadly than as portrayed by defendants, the Court rejected this argument in its entirety.  The Court stated that:

> [The CEO] may not have had any inkling of the specific day-to-day management decisions which resulted in the plaintiff's injuries.  Nevertheless, Six West has offered sufficient evidence to support an inference that Sony's CEO had been well-informed about the general structure of Sony's film distribution policies, and that he also had <u>some</u> unique knowledge about the company's alleged block-booking practices in the United States, particularly in New York.

*Id.* (emphasis in original); *see also Travelers Rental Co. v. Ford Motor Co.,* 116 F.R.D. 140, 142 (D. Mass. 1987) (holding that antitrust claim required evidence of the "motives behind corporate action" and allowing plaintiff to depose four high-ranking Ford officers who approved of or administered the corporate action).  The remaining cases cited by Dow are entirely inapt and it is hardly surprising that the Court found them unpersuasive:

- *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir. 1979).  In this wrongful death case, the plaintiff already had the testimony of the witness given to the Senate Committee (which the plaintiff admitted contained substantially the same information sought at deposition) and the witness did not have any direct knowledge of the facts.  *Id.* at 651.

- *Patterson v. Avery Dennison Corp.,* 281 F.3d 676 (7th Cir. 2002).  In this gender discrimination case, the witness's involvement in plaintiff's termination was limited to sending one email asking a lower level employee "to look into the matter."  *Id.* at 679.

- *Thomas v. Int'l Business Mach.,* 48 F.3d 478 (10th Cir. 1995).  In this age discrimination case, the plaintiff sought the deposition of the Chairman of the Board of IBM because he allegedly authored a company policy to discriminate against older employees.  The court affirmed the grant of a protective order because company policy would only be relevant had the plaintiff brought a disparate impact claim, which she did not.  The court also noted that the plaintiff failed to give the witness adequate notice, waited until "the eleventh hour" of discovery to seek the deposition, and had not deposed any other IBM personnel.

- *Filetech, S.A. v. France Telecom, S.A.,* 1999 WL 92517 (S.D.N.Y. 1999).  The only issue before the court in this case was whether France Telecom was subject to the jurisdiction of the court.  The court properly precluded the deposition of the chairman of France Telecom in order to answer this very

narrow question. This case did not implicate corporate policies or practices that systematically violated the antitrust laws of the United States.[1]

- *Baine v. General Motors Corp.,* 141 F.R.D. 332 (M.D. Ala. 1991). In this products liability suit, the plaintiff sought the witness's deposition because, 15 years prior to the lawsuit, he had driven a car for several days and written a memorandum describing his observations of the prototype restraint system.

- *Liberty Mut. Ins. Co. v. Sup. Ct. of San Mateo County,* 10 Cal. App. 4th 1282 (Cal. Ct. App. 1992). In this worker's compensation case governed by California law, the court properly precluded the deposition of the president and CEO of Liberty Mutual, where his "only link to the handling of the [plaintiff's] claim was counsel's act of copying him, by title only, on two letters which would have been automatically rerouted to a lower level employee and which [the CEO] never saw." *Id.* at 1286.

Dow has not denied that Liveris is, or was, well-informed about Dow's global specialty chemical distribution policies and practices during the relevant time period, and it is indisputable that, by virtue of his unique position in the company at that time (before he became Dow's CEO), he has at least <u>some</u> unique knowledge of matters relevant to plaintiffs' claims. Accordingly, the Court correctly ruled that Liveris's busy schedule and alleged lack of knowledge of Dow's specific relationships with the plaintiffs were outweighed by plaintiffs' right to discovery.[2] *See Six West,* 203 F.R.D. at 102 ("'[h]ighly-placed executives are not immune from discovery[, and] 'the fact that [an executive] has a busy schedule'" cannot shield

---

[1] Indeed, the rationale behind the *Thomas* and *Filetech* cases were specifically rejected by the court in *Six West.* The court dispensed with *Thomas* on the grounds that, unlike *Six West*, the *Thomas* case did not raise questions of corporate policy. In distinguishing the *Filetech* case, the court noted that "[t]his court, unlike the court in *Filetech,* is not faced with a 'narrow' threshold inquiry, but with wide-ranging allegations that corporate policies ran afoul of antitrust laws." *Six West,* 203 F.R.D. at 105.

[2] Dow's argument that plaintiffs should first take the deposition of other witnesses is similarly repudiated by *Six West*. Like the plaintiff in that case, plaintiffs here have already taken the deposition of lower level officials such John Yimoyines, Ronald Neri and others, none of whom claimed to be familiar with defendants' domestic and international distribution of specialty chemicals during the relevant time period. Even the potential that some of Liveris's testimony may be repetitive is not a bar to his deposition. *Id.* at 105 ("Given the extent of discovery already undertaken, the depositions of [the Sony CEO] and others may be cumulative to some degree, but not unreasonably so.") (citation omitted).

that witness from being deposed.") (quoting *Consol. Rail Corp.,* 1993 WL 364471) (changes in original).

Under these authorities and the specifics of this case, there can be no question that the Court properly denied Dow's motion for a protective order in connection with the Liveris deposition, and Dow has entirely failed to meet its burden on this motion for reconsideration.

### C. The Court Did Not Misapprehend Interrogatories 11 and 12.

Defenants' arguments asserting that the Court "misapprehended" Interrogatories 11 and 12 are equally off the mark and fail to establish any basis for reconsideration. In connection with this aspect of the September 29 Order, the Court, at the outset, correctly notes that Rule 26 is to be liberally construed. September 29 Order at 2 (citing *Vertrue Inc. v. Meshkin,* 2006 U.S. Dist. LEXIS 37700 (D. Conn. 2006). If a party objects to discovery, it bears "the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Expert Choice, Inc. v. Gartner, Inc.,* 2006 U.S. Dist. LEXIS 41466 (D. Conn. 2006) (quoting *Compagnie Francaise D' Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).

Interrogatories 11 and 12 easily meet the liberal standard of relevance under Rule 26, thereby shifting to defendants the heavy burden of justifying a protective order. Defendants do not claim that the information sought is irrelevant. Instead, defendants' argument on reconsideration is limited to complaining that the requests were made too late in time and would impose an undue burden. Def. Mem. at 11-12. These arguments, however, are identical to those made in support of the initial Motion for Protective Order. Defendants' Combined Memorandum In Support of their Motion for a Protective Order at 5-7, 10-12; *see also* Defendants' Combined Reply In Support of Motion for a Protective Order and Opposition to Cross-Motion to Compel Further Responses to Discovery, to Remove "Counsel Only"

Designations, and for Sanctions at 9-12.  On this ground alone no reconsideration is or can be warranted.

Even if the Court were to reach the merits of defendants' assertions of untimeliness and undue burden, they should still be rejected.  Defendants' position apparently is that any interrogatory plaintiffs served after defendants claim to have completed their document review is improper.  Def. Mem. at 11-12.  They go so far as to insinuate that the Court approves of this position.  *Id.* at 12 (stating that the Court approved of their document review and production protocol).  This is obviously false, as illustrated by the September 29 Order's rejection of defendants' position and the direction that defendants answer Interrogatories 11 and 12.

Moreover, it cannot be argued seriously that, because defendants followed a certain protocol for producing documents, that all subsequent discovery of relevant evidence, including discovery made necessary by the inadequacy or improper nature of defendants' responses, is to be precluded.  Plaintiffs certainly never agreed to such a limitation.  *See* Exhibit A (Letter from R. Taffet to A. Marovitz, dated October 8, 2004) (". . . the procedures we are now discussing [i.e., defendants' protocol] are without prejudice to or waiver of any party's rights concerning discovery.").  In fact, plaintiffs maintained a constant dialogue with defendants regarding the inadequacy of their discovery responses.  They did not wait until the eleventh hour to alert defendants of the need to revise their document review and production process.

As to burden, defendants' merely conclude that answering the Interrogatories is "manifestly unfair and prejudicial" because they would need to review additional documents.  Def. Mem. at 11-12.  To be sure, someone will need to review documents to answer these Interrogatories, but defendants are certainly much better equipped to do so than plaintiffs.  Answering the Interrogatories causes no undue burden—it merely requires defendants to fulfill their discovery obligations under the Federal Rules.  In all events, this excuse was certainly insufficient to justify a protective order in the first instance, and with equal certainty is wholly inadequate to support a motion for reconsideration.

It is evident that these Interrogatories need to be answered. As previously explained by plaintiffs, the discovery sought by Interrogatories 11 and 12 go to the heart of the issues in this case.

> This is a case in which terminated distributors claim, among other things, that defendants engaged in unfair billing practices and applied their credit policies pretextually as part of a scheme to usurp the distributors' place in the market. *See, e.g.*, Amended Complaint ¶¶ 38-51. Plaintiffs also claim that defendants dictated the resale price of Products sold by plaintiffs. *E.g., id.* ¶¶ 27-30. Information and documents revealing who defendants' other distributors and agents were, and the terms on which they dealt with defendants, including obtaining price approvals, changes in billing practices, and credit terms, would allow comparison to defendants' treatment of plaintiffs during the relevant time period, and evoke evidence regarding circumstances in which plaintiffs were treated differently from or the same as other distributors. <u>The actual prices at which the Products were sold through these channels, as well as to end users and other purchasers both in and outside of the United States, are obviously relevant to plaintiffs' price-fixing claims, both as to liability and damages</u>.

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Protective Order and In Support of Plaintiffs' Cross-Motion to Compel Further Responses to Discovery, to Remove "Counsel Only" Designations, and for Sanctions at 32-33 (emphasis added). If an undue burden is to be felt, it is plaintiffs, not defendants, who will be prejudiced should defendants not provide this information.

The September 29 Order reflects the Court's considered judgment that plaintiffs' requests were not untimely and that defendants failed to meet their burden of demonstrating, with specificity, that compliance would be <u>unduly</u> burdensome. There are no grounds for reconsideration.

### III.     CONCLUSION

The Court should deny Defendants' Motion for Partial Reconsideration in its entirety. Not only have defendants failed to adduce any new law or evidence, but they have also failed to show that the Court overlooked or misapprehended any aspect of applicable law so as to cause clear error or manifest injustice. The Court properly rejected defendants' arguments, and there is no basis on which to disturb the Court's decisions.

                Respectfully submitted,

                BINGHAM McCUTCHEN LLP

By:   /s/ Richard S. Taffet
       Richard S. Taffet (ct 10201)
       Alicia Downey (ct 22066)
       399 Park Avenue
       New York, NY  10022-4689
       (212) 705-7000 (tel)
       (212) 752-5378 (fax)

       WIGGIN AND DANA LLP
       Robert M. Langer (ct 06305)
       Suzanne E. Wachsstock (ct 17627)
       One City Place
       185 Asylum Street
       Hartford, CT  06103
       (860) 297-3724 (tel)
       (860) 525-9380 (fax)

*Attorneys for Plaintiffs Advent Manage Limited; MM Global Services, Inc.; and MM Global Services Pte Ltd.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., MEGAVISA SOLUTIONS (S) PTE, LTD., AND ADVENT MANAGE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>Defendants. | CIVIL ACTION<br>NO.  3-02 CV 1107 (AVC)<br><br>October 18, 2006 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2006, a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Partial Reconsideration of Ruling and Order re: Discovery Motions was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the Court's system.

                        Respectfully submitted,

                        BINGHAM McCUTCHEN LLP

By:   /s/ Richard S. Taffet
        Richard S. Taffet (ct 10201)
        Alicia Downey (ct 22066)
        399 Park Avenue
        New York, NY  10022-4689
        (212) 705-7000 (tel)
        (212) 752-5378 (fax)

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs Advent Manage Limited; MM Global Services, Inc.; and MM Global Services Pte Ltd.*