UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES INC., MM GLOBAL
SERVICES PTE. LTD., and MEGAVISA
SOLUTIONS (S) PTE. LTD.,

        Plaintiffs,

v.

THE DOW CHEMICAL COMPANY, UNION
CARBIDE CORPORATION, UNION CARBIDE
ASIA PACIFIC, INC.,

        Defendants.

Civil No. 302 CV 1107 (AVC)

June 21, 2005

### DECLARATION OF WILLIAM H. HERR

I, William H. Herr, pursuant to 28 U.S.C. § 1746, declare as follows:

*Background*

1. I am employed by The Dow Chemical Company ("TDCC") as a Managing Counsel in its Legal Department. I provide legal services to Union Carbide Corporation ("UCC") and Union Carbide Asia Pacific, Inc. under service agreements between TDCC and those entities. I have personal knowledge of the facts herein.

2. I have reviewed all of Plaintiffs' requests for documents and information to Defendants in the above-captioned case, including the discovery requests served on May 15, 2005.

3. I have been an attorney at TDCC for 25 years and am familiar with Defendants' functions and systems associated with conducting reviews and collections of records and information stored in both paper and electronic media within the Defendant organizations.

4.  I am familiar with Defendants' efforts to respond to Plaintiffs' requests and to comply with the parties' agreements and this Court's orders regarding discovery since September 2004.

### *The Costs of Defendants' Late 2004, Early 2005 Discovery Efforts*

5.  Pursuant to this Court's February 7, 2005 Order, Defendants recently produced approximately 1.5 million pages of documents responsive to Plaintiffs' previous discovery requests. Plaintiffs' requests sought documents that related to events spanning more than a decade, pertained to multiple legal entities, crossed business organizations and information systems infrastructures, covered more than 150 products and 160 End Users, and included diverse subject matters ranging from sales records, employee training materials, market studies, human resources records, marketing materials, business and strategic planning materials, pricing information and merger documents to general business records and travel and expense reports.

6.  Defendants collectively employ approximately 43,000 employees world-wide at approximately 165 sites in approximately 40 countries. Defendants collectively sell products in 175 countries. The expansive scope of Plaintiffs' requested discovery required Defendants to search a significant portion of their global organization.

7.  Defendants' review, collection and production effort included document reviews and collections at the corporate records centers for both TDCC and UCC in Michigan and Vermont. The effort also included international travel to India and Singapore and substantial travel within the United States in search of responsive materials at locations in Connecticut, New Jersey, Michigan, Illinois and Texas. The effort included interviewing and collecting documents from individuals factually involved in the business relationship between Plaintiffs and Defendants. The effort also involved interviewing and collecting documents from the global business directors for 12 responsive businesses that reside in North America, as well as members of their

respective marketing staffs. This effort additionally involved compilation of data from Defendants' accounting systems relevant to Plaintiffs' discovery requests. This compilation of accounting data required Defendants to reconstruct archival information from legacy (no longer used) computer systems as well as manually search through years of data that had been converted to microfiche from replaced historic electronic systems.

8. Defendants' information systems environment consists of a network of over 800 servers located at various sites globally. Servers are located on every continent except Antarctica. In the United States servers are located at multiple locations.

9. Servers that were identified and searched as potentially having information responsive to discovery requests in this matter were found in multiple locations. Specifically, 24 servers were identified at 13 locations in 12 countries outside of the United States; 31 servers were identified at seven locations in five states within the United States.

10. The burden and expense associated with this collection activity included the use of in-house resources, litigation discovery support vendors and outside counsel for reviewing materials for responsiveness, confidentiality and privilege.

11. In-house Information Systems security personnel expended in the range of 300 hours conducting electronic discovery in this matter during the fourth quarter of 2004 and the first quarter of 2005. This is time they had to divert from conducting normal security operations, such as responding to computer viruses, hacker attacks and other attempts to disrupt or jeopardize Defendants' information systems.

12. In-house legal personnel expended roughly 3,000 hours of attorney and paralegal time in responding to Plaintiffs' requests since September 2004.

13. Defendants have incurred approximately $1,000,000 in legal review expenses from September of 2004 through February 2005. Defendants have incurred over $2,500,000 in discovery support vendor costs from September 2004 through May 2005. These costs have been incurred primarily in collecting and reviewing electronic documents, although some paper materials were collected and produced.

14. Since September of 2004, Defendants have spent in excess of $3,500,000 responding to Plaintiffs' discovery requests.

*The Burden that Would Be Imposed by Plaintiffs' Current Requests*

15. On May 15, 2005 Plaintiffs served Defendants with another set of twenty-nine interrogatories and two document requests ("Current Requests"). Responding to Plaintiffs' requests would subject Defendants to inordinate and unreasonable burdens and costs.

16. The discovery activity just completed provides guidance regarding the effort that would be required in responding to the Current Requests. In the previous activity Defendants searched for, located, collected, reviewed and produced responsive information related to a 12 year period for 153 Products sold to approximately 160 End Users in India and the United States; doing this for two large corporations, one of which was acquired and became a subsidiary of the other during the responsive time period. These circumstances have not changed. A review of the interrogatories served by Plaintiffs indicates responding to them would subject Defendants to even more burden and expense than previously experienced.

17. Interrogatory Nos. 1-6 demand that Defendants identify *every distributor, sales agent and representative around the world* to whom they sold Products during the over 20-year "Relevant Period," and "all facts," "all documents," and "all price[s]" for *every transaction* with those distributors. Likewise, Interrogatory Nos. 7-8 demand that Defendants identify *every end-user –*

not just every "End User," a term defined to mean Plaintiffs' customers in India – *in and outside of the United States* to whom they sold products, and "all price[s]" for every transaction.

18.   In order to comply with these requests, Defendants would have to conduct even more onerous efforts than engaged in previously. Identifying distributors, sales agents and representatives, and end users would require going business by business and region by region for each of the 153 Products. Transactional materials would require resuming the effort commenced last fall and then ceased when the Court directed Defendants to stop looking for and producing routine transaction documents that contain information such as the price of individual transactions. As a result of this instruction, Defendants have not collected such routine transaction documents. At the time, approximately 1100 boxes at the UCC Records Center alone had been identified as containing potentially responsive transactional materials. If, as it appears, "end user" means "customer," then literally *every* transactional record of Defendants for over 20 years for 153 Products globally would have to be collected and produced.

19.   Numerous of Plaintiffs' requests (Interrogatory Nos. 9-12) ask Defendants to compile information regarding Defendants' competitors and competitive products. For example, Interrogatory No. 9 asks Defendants to identify each product Defendants contend was sold in competition with the Products globally during the "Relevant Period." For each product, Plaintiffs ask Defendants to identify its supplier, the geographic area in which it was sold for end use and the prices at which it was sold. Interrogatory No. 10 requires Defendants to identify "each communication between [Defendants] and any supplier of a competitive product" globally during the "Relevant Period." Defendants do not have lists of competitors or competitive products available that could enable Defendants to identify, with reasonable burden, responsive documents. Identifying Defendants' competitors would require going business-by-business and

5

region-by-region for each of the 153 Products. Furthermore, Defendants have not compiled information responsive to Plaintiffs' requests in connection with this case. Accordingly, the burden associated with complying with these requests is equal among the parties.

20. Interrogatory Nos. 13-15 ask Defendants to compile information related to the merger agreement between TDCC and UCC. Defendants have produced documents that provide information responsive to these requests, but have not compiled information responsive to Plaintiffs' requests in connection with this case. Accordingly, the burden associated with complying with these requests is equal among the parties.

21. Interrogatory Nos. 16-23 also ask Defendants to compile information related to Plaintiffs claims. Defendants previously produced documents that provide information responsive to these requests, but have not compiled information responsive to Plaintiffs' requests in connection with this case. Accordingly, the burden associated with complying with these requests is equal among the parties.

22. There is no easy way to provide Plaintiffs with information in response to their Current Requests. Defendants cannot produce this information "in short order" on a computer because TDCC does not maintain databases from which the responsive information could be easily generated. Rather, in order to comply with Plaintiffs' Current Requests, Defendants would be required to conduct yet another labor intensive and costly document collection and review in order to respond to Plaintiffs' Current Requests. The burden associated with this task would be staggering. In fact, such a task would involve efforts greater than those expended in the recently completed discovery activity. I estimate, based on my experience generally and my awareness of the recently completed work that having to respond to the Current Requests would result in additional discovery costs being incurred, going forward, in the range of $4,000,000. This would

bring Defendants' total discovery costs since September 2004 into the range of $8,000,000. This amount is astronomical and inconsistent with the value of this case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 21, 2005.

                                                William H. Herr