

-----Original Message-----
From: Cheung, Lawrence (L)
Sent: Saturday, March 02, 2002 4:36 PM
To: Yimoyines, John (JP); Wildi, Markus (M)
Cc: Fox, Graham (G); Ravi, Muthukrishnan; Babu, Vipul (VH); Tan, Horace (H); Cheung, Lawrence (L)
Subject: FW: Re: Dow/MV W&C distributorship & related issues


-----Original Message-----
From: Cheung, Lawrence (L)
Sent: Sunday, March 03, 2002 5:33 AM
To: Cheung, Lawrence (L)
Subject: Re: Dow/MV W&C distributorship & related issues

Dear Folks,
We have four rounds of meetings with MV last week and I would like to record the key points being discussed as below:

1) FEB 24 2002  Wildi M (Dow) & Cheung L (Dow) met with Zenyel C (MV Director)
Wildi showed concerns on the over dues and Zeynel explained to us the over dues were due to the changes of Dow system that MV did not receive invoices for a period of time. Zeynel emphasis again that MV is financially sound & the owner, Mittal family is a wealth & reputable family in Indian business society. Regarding the claims of historical W&C business, Zeynel believes that Mittal Ajay is angry with the Chemicals/Sp. Chemicals businesses' decisions & ways of negotiation as the market is taking about MV losing the distributorship with Dow and that could be the reason why MV is bringing all historical issues & asking for the compensation. Wildi & Cheung represented W&C business to state very clear to Zenyel that W&C has no intention to terminate the current distributor agreement up to this moment and the Chemicals/Sp. Chem. negotiation for termination should not affect W&C business at all. Wildi also told Zeynel that W&C may be forced to stop using MV if MV continue the unfriendly/unreasonable approach to deal the W&C issues.

2) FEB 26 2002   Mittal A ( MV ) Zenyel ( MV ) Ravi M ( Dow ) Fox G ( Dow )

1

Mittal complained that no senior management cares about MV and requested to meet with Fox. Ravi arranged the meeting & Fox spent an hour to listen the same story about MV's 14 years relationship with UCC & the organization was established for all the UCC products in India. The termination could be a disaster to MV & all issues (both historic & current for all products) needed to be put on the table for negotiation. Fox told Mittal that Dow is a fair company & will pay if the claims are legitimate but Dow will stay firm if the claims are not real &/or not reasonable. MV was requested to prepare the related documents to prove the claims & submit to Dow management for further comments.

3) FEB 27 2002   Mittal A (MV) Moti (MV) Jalani (MV) Babu (Dow) Cheung L (Dow) Fox G (Dow - Just said Hello)
Zeynel & Moti arranged this breakfast meeting. Ajay started the discussion with giving us the background (eg No invoices were issued due to SAP, Pacific to Europe) of the invoices overdue. Cheung emphasis that there are no change on the W&C relationship between Dow & MV so far despite of the decision of Chemical/Sp. chemical businesses. Mittal explained that MV was set up & organized to run the completed product line of UCC products. The separation will cause a lot of issues such as resources, cash flow & organization. Hence, he felt the relationship would be so different & it would be appropriate to settle everything first before we proceed further. Cheung told Mittal that W&C is not ready to discuss the subject matter further as we cannot represent all other businesses for the settlement of the termination. Fox came the table to say Hello & said again that Dow will be fair to handle the case. Mittal wanted to give the W&C related documents to Fox but Fox told Mittal that the documents could be given to CHEUNG & Mittal will be given a reply later. CHEUNG received the package addressed to FOX & told MITTAL that we should continue to talk & be reasonable.

4) FEB 28 2002   RAVI (Dow) BABU (Dow) CHEUNG (Dow)
The team met at 10:00 am to discuss the case in more details. The team believes that we should consult with the lawyers first & see if MV has the ground to create the legal case. It seems that MV is trying the max. the one time monetary returns as Dow does not really need MV as much as UCC. CHEUNG seek RAVI's judgment on Mittal's financial position & RAVI pointed out that we should not assume Mittal is not financially sound but he doubt that Mittal will go to fight with Dow in court especially if we can take the immediate legal actions to bring MV to court in SINGAPORE on the over dues because it will cause a lot more money in Singapore for legal proceeding than India & may bring MV nowhere but very bad reputation in the industry. One consideration is that MV has JV with BDP in Asia & Dow is a big customer for BDP. It does not worth the legal battle if Mittal is a logical business man unless Mittal plans to walk away from the business. RAVI also commented to the team that to be fair to MITTAL, MV did pay back Dow based on the schedules agreed by both companies after discovering the invoicing problems/over dues.

5) FEB 28 2002   FOX G (Dow) RAVI (Dow) BABU (Dow) CHEUNG (Dow)
The team met with FOX again to summarize the key findings & determinate the general direction plus action plan. FOX reported the key areas of discussion with MITTAL on FEB 26. RAVI also mentioned that the legal opinion is that Chemical/Sp. Chemicals businesses are ready to terminate the distributorship with MV without any complications. Dow is ready to pay for the non compete clause if MV accepts (option to MV). CHEUNG used 5-10 minutes to report on the history of MV's W&C business (eg Asian crisis with high inventory forced us to move to India which was a swing market & why UCC decided not to ship later on eg prices moved up & UCC made more money to ship to other markets as well as the out of court settlement with one customer plus a commercial settlement with another big customer under the direction of the corporate management with the pressure of legal advice from Bob Butler.) FOX suggested that the team should consult with both the Dow lawyer in India & the PO&E business lawyer to seek legal opinion before we advice MV on our position. It seems to FOX that the ultimate decision of either settlement or other actions will still remain as the W&C business decision rather an area decision although RAVI will still be the focal point to communicate with them on the overall distributorship issues. FOX will have to reply to MV on the documents provided by MV as the package was addressed to FOX.

6) Dow's positions
BEST - Assuming both area & business legal opinions are positive that MV has no ground to claim as the cases have been considered closed as MV continues to represent us to sell W&C products & no action/discussion/meeting being requested since we settled with the two biggest customers one and half year ago. We will just terminate the Dow/MV relationship.
WORST - Assuming legal opinions are not positive or uncertain on Dow's position on the UCC issues in India. MV teams up with the group of small customers & bought us to court. We may end up paying a lot more.
POSSIBLE DAMAGES - MV is aiming for US$300/MT or US$2 million for the claim of not shipping the contracted volume. On top of the US$2 million, MV also ask for the compensation of the plain that they shared for the two big accounts' settlement & the future losses of commission income.

7) Dow's target & options
TARGET - To pay nothing or minimum to walk away from MV without any current or future liability. I don't believe that we could or we should continue the business relationship with MV with the current development. In fact, it could be a golden opportunities to cut off MV that Dow W&C can re-establish the appropriate strategies in India as we can deal with Indian customers direct now and the import duty is coming down. (Govt. just announced on FEB 28 that import duty will be

Confidential                                                                                       DECO0013166

reduced by 7% from April 2002 & promised the import duty will come down to ASEAN level by 2004 ).
OPTIONS :
* Ship the balanced volume based on the contracted prices & settle all customers' issues. With this option, MV has no excuse to ask for the biggest portion of the claim. We could also earn back the reputation & relationship with all customers in India to prepare for future direct sales/market positioning. The reason why I put this as the first option is that Dow W&C has been pushing Pacific to take more Telecom volume in the last few weeks as we are running below capacity at our manufacturing sites. We have been requested to look into INDIA again with the same reasons as two-three years ago (eg India is an opportunistic market with huge swing volume potential but low netback pricing due to high import duty and very low possibilities for Indian customers to re-export the W&C compounds to interrupt other markets with the same duty reason).Instead to just give the products at current market prices away to Indian customers with netback not much different with the contracted prices that got us into trouble three years ago. It make more sense to make use of the volume to settle the problems and at the same time, rebuild our position. We need to negotiate with MV that BABU will have to go with MV to deal with all customers directly if we believe this option will work. Furthermore, I personally don't believe MV could have ground to claim the future losses of commission income & the historical shares of the compensation that paid to the two customers. Anyway, we have wait for legal dept. to comment.
* Stay firm with MV & see if Mittal is willing to take the risk to bring Dow to court.
* Take immediate legal action to sue MV in Singapore for the over dues & destroy MV's reputation in the market/industry
* Negotiate with MV for a commercial settlement.

8) Immediate action plan
*Yimonyines to advice the name of the business lawyer that the area lawyer can start working with her/him.
*RAVI/BABY/CHEUNG will form a team to continue dealing with MV, reporting the attitude changes and monitoring MV's payment performance ( not much for W&C ). Internally, the team will assist lawyers to understand the background, recent negotiations & the business/area related issues.
* FOX need to reply to MV that we received the package of documents & reply MV in due cources.
* Map a detailed action plan after receiving the lawyers' input

These are the key areas of discussion that I could recall after a short trip to India. By copy to the Graham, Ravi & Vipul, pls free feel to comment if I have missed any points.
We need your guidance and direction to proceed further.
Regards
Lawrence

Confidential

DEC00013167