# Halsbury's
# LAWS OF SINGAPORE

VOLUME 7

2005 Reissue

CONTRACT

2005
LexisNexis
Singapore

## EDITORIAL ADVISORY BOARD

The Honourable Chief Justice YONG PUNG HOW (Chairman)

The Honourable Attorney-General Mr CHAN SEK KEONG

The Honourable Justice CHAO HICK TIN

The Honourable Justice LAI KEW CHAI

Mr LP THEAN, LLB (Bristol), LLM (London); Advocate and Solicitor of the Supreme Court of Singapore

Mr TPB MENON, LLB (Hons) (Malaya); Advocate and Solicitor of the Supreme Court of Singapore

Mr SAT PAL KHATTAR, LLM, LLB (Hons) (Sing); Advocate and Solicitor of the Supreme Court of Singapore

Mr MICHAEL HWANG, BCL, MA (Oxon); of Gray's Inn, Barrister-at-Law; Advocate and Solicitor, Singapore and the States of Malaya; Barrister and Solicitor, Victoria, Australia

Associate Professor TAN CHENG HAN, LLB (Hons) (NUS), LLM (Cantab); Advocate and Solicitor of the Supreme Court of Singapore

## CONSULTANT EDITOR

Professor PETER ELLINGER, M Jur, D Phil (Oxon); Advocate and Solicitor of the Supreme Court of Singapore
Consultant, Rajah & Tann

Members of the LexisNexis Group worldwide

| | |
|---|---|
| Singapore | LexisNexis, 3 Killiney Road # 08-08, Winsland House I, SINGAPORE 239519 |
| Malaysia | Malayan Law Journal Sdn Bhd, SELANGOR DARUL EHSAN |
| Hong Kong | LexisNexis, HONG KONG |
| India | LexisNexis, NEW DELHI |
| Argentina | LexisNexis Argentina, BUENOS AIRES |
| Australia | LexisNexis Butterworths, CHATSWOOD, New South Wales |
| Austria | LexisNexis Verlag ARD Orac GmbH & Co KG, VIENNA |
| Canada | LexisNexis Butterworths, MARKHAM, Ontario |
| Chile | LexisNexis Chile Ltda, SANTIAGO DE CHILE |
| Czech Republic | Nakladatelství Orac sro, PRAGUE |
| France | Editions du Juris-Classeur SA, PARIS |
| Hungary | HVG-Orac, BUDAPEST |
| Ireland | Butterworths (Ireland) Ltd, DUBLIN |
| Italy | Giuffrè Editore, MILAN |
| New Zealand | LexisNexis Butterworths, WELLINGTON |
| People's Republic of China | LexisNexis Beijing Representative Office, BEIJING |
| Poland | Wydawnictwo Prawnicze LexisNexis, WARSAW |
| South Africa | Butterworths SA, DURBAN |
| Switzerland | Stämpfli Verlag AG, BERNE |
| United Kingdom | LexisNexis Butterworths Tolley, LONDON and EDINBURGH |
| USA | LexisNexis, DAYTON, Ohio |

© LexisNexis, a division of Reed Elsevier (Singapore) Pte Ltd, 2005

All rights reserved. No part of this publication may be reproduced or transmitted in any form or by any means, including photocopying and recording, without the written permission of the copyright holder, application for which should be addressed to the publisher. Such written permission must also be obtained before any part of this publication is stored in a retrieval system of any nature.

The publisher, authors, contributors and endorsers of this publication each excludes liability for loss suffered by any person resulting in any way from the use of, or reliance on this publication.

ISBN 981-236-000-X (Complete set)

ISBN 981-236-411-0 (Volume 7 Reissue)

Printed in Singapore by Utopia Press

[80.079]

or part payment on an *earlier date*.[5] However, this exception cannot be taken too far: in *D & C Builders Ltd v Rees*,[6] for example, it was held that payment by cheque was *no different from payment by cash*, so that the rule in *Pinnel's Case*[7] was *not avoided*. Having regard to this decision, it is submitted that the *local decisions* of *Jagat Singh v Heng Arthur*[8] and *Koh v Koh*[9] which held to the contrary must now be considered bad law.

Another exception pertains to *composition with creditors*, although the rationale for this exception has not been definitively settled: one rationale is based on the argument that each individual creditor agrees to forego part of his debt on the hypothesis that all other creditors would do the same, whilst another possible rationale is based on the argument that one creditor cannot go behind the composition agreement to the prejudice of other creditors as well as the debtor because there would otherwise be a fraud upon all the parties concerned. An excellent as well as succinct analysis of these alternatives is to be found in Professor Treitel's textbook, who appears to prefer the former rationale to the latter.[10]

A third exception has to do with *payment by a third party* which is apparently premised on the avoidance of a fraud being practised on the third party payor. It is submitted, however, that one has to be rather careful with this particular exception as it has only really been applied in rather dated cases, the leading one of which is *Hirachand Punamchand v Temple*.[11] Curiously, however, there have been not a few Singapore as well as Malaysian cases that have, in fact, endorsed and applied this particular precedent.[12] But Yong Pung How J (as he then was) did perceptively observe (albeit obiter) in *Re Ice-Mack Pte Ltd, AA Valibhoy & Sons (1907) Pte Ltd v Official Receiver* thus:

'As a possible precedent to follow, *Hirachand's* case is not without difficulties, but it was a decision of the English Court of Appeal, and I was of the opinion that, if the company's debt to the applicant had been proved, the settlement by Mr Valibhoy [the third party] to the applicant would also have extinguished the company's debt.'[13]

More recently, Goh Joon Seng J considered *Harachand Punamchand's* case in the Singapore Court of Appeal decision of *Deans Property Pte Ltd v Land Estates Apartments Pte Ltd*,[14] although the principle in the former case was held to be inapplicable because the defence concerned was never pleaded.

---

1  *Pinnel's Case* (1602) 5 Co Rep 117a, [1558–1774] All ER Rep 612.
2  *Foakes v Beer* (1884) 9 App Cas 605, [1881–5] All ER Rep 106, HL.
3  See eg the Malaysian case of *Tiun Eng Jin v Wong Sie Kong* [1975] 2 MLJ 34 at 36, HC (Malaysia).
4  See generally [80.071].
5  These examples are stated in *Pinnel's Case* itself (1602) 5 Co Rep 117a, [1558–1774] All ER Rep 612. On payment at an earlier date, see the Malaysian decision of *Ting Hock Seng v Kong Sing Ping* [1964] MLJ 407, HC (Malaysia).
6  *D & C Builders Ltd v Rees* [1966] 2 QB 617, [1965] 3 All ER 837.
7  *Pinnel's Case* (1602) 5 Co Rep 117a, [1558–1774] All ER Rep 612.
8  *Jagat Singh v Heng Arthur* [1961] MLJ 399.
9  *Koh v Koh* [1965] MLJ 99. See also the Malaysian decisions of *Ting Hock Seng v Kong Sing Ping* [1964] MLJ 407, HC (Malaysia); and *Gooi Seang Tuck v Tan Peng*

[80.080]

*Loon* [1959] MLJ 153, HC (Malaysia); in the latter case, it was held that a negotiable instrument given by a third party was sufficient consideration — a holding that is supported by both statute and case law alike: see the Malaysian Contracts Act 1950 (Act 136) s 64 and illustration (c) thereto, and the Malaysian decision of *Kerpa Singh v Bariam Singh* [1966] 1 MLJ 38, FC (Malaysia).
10  See Treitel *The Law of Contract* (10th ed, 1999) p 118.
11  *Hirachand Punamchand v Temple* [1911] 2 KB 330, CA (Eng).
12  See eg (for Singapore) *G Ramchand v Lam Soon Cannery Co Ltd* [1954] MLJ 239, CA as well as *Jagat Singh v Heng Arthur* [1961] MLJ 399; and (for Malaysia) *Amusu Properties Sdn Bhd v Muruchadayah s/o AMS Pillay* [1989] 1 MLJ 451, HC (Malaysia). Indeed, in so far as Malaysia is concerned, the Contracts Act s 42 appears to settle the issue statutorily without any real need for case law support as such (and see *Haji Nik Ishak bin Haji Nik Daud v Nik Zainab binti Nik Jaafar* [1975] 2 MLJ 82, FC (Malaysia) and *Chin Swee Onn v Puchong Realty Sdn Bhd* [1990] 1 MLJ 108, SC (Malaysia)). It can, however, be argued that s 42 only applies to payments in *full*, albeit by third parties.
13  *Re Ice-Mack Pte Ltd, AA Valibhoy & Sons (1907) Pte Ltd v Official Receiver* [1990] 1 MLJ 79 at 82, HC (Malaysia).
14  *Deans Property Pte Ltd v Land Estates Apartments Pte Ltd* [1995] 2 SLR 371, CA.

[80.080] **A major exception — the doctrine of promissory estoppel**

By far, however, the most significant exception is to be found in the doctrine of *equitable or promissory estoppel*, the treatment of which would require at least a monograph. Owing to constraints of space, only a brief outline will be attempted here. It should be mentioned at the outset that the doctrine of promissory estoppel is still developing and provides, in this author's view at least, one of the best opportunities from which substantive fairness can be achieved in the context of the common law of contract in general and the doctrine of consideration in particular.

The modern version of the doctrine of promissory estoppel finds its source in the seminal judgment of Denning J (as he then was) in the very famous decision in *Central London Property Trust Ltd v High Trees House Ltd*,[1] better known (and hereafter referred to) as the *High Trees* case. Two preliminary points ought to be noted at this juncture. First, the doctrine is one of *promissory estoppel*, thus getting round the problem to the effect that estoppel had to be one premised upon a representation of fact.[2] Secondly, the doctrine is premised upon the rationale of unconscionability: see, eg per Robert Goff J (as he then was) in *Amalgamated Investment & Property Co v Texas Commerce International Bank*[3] and per Oliver J (as he was) in *Taylor Fashions v Liverpool Victoria Trustees Co Ltd*.[4]

The initial development of the doctrine of promissory estoppel was rather general. In the *High Trees* case,[5] for example, Denning J (as he then was) observed thus:

'… a promise intended to be binding, intended to be acted on and in fact acted on, is binding so far as its terms properly apply.'[6]

What was highly significant in so far as the *High Trees* case[7] was concerned, however, was that Denning J, faced with the virtually insurmountable hurdle of *Foakes v Beer*,[8] tapped the authority of a couple of cases in support of his modern formulation of the doctrine, viz, *Hughes v Metropolitan Rly Co*[9] and

*Birmingham & District Land Co v London & North Western Rly Co.*[10] By far, it was the former case that was critical to the learned judge's argument, for it was not only a House of Lords decision but also contained the following seminal and pivotal statement of principle by Lord Cairns LC which merits quotation in full:

"... it is the first principle upon which all Courts of Equity proceed, that if parties who have entered into definite and distinct terms involving certain legal results – certain penalties or legal forfeiture – afterwards by their own act or with their own consent enter upon a course of negotiation which has the effect of leading one of the parties to suppose that the strict rights arising under the contract will not be enforced, or will be kept in suspense, or held in abeyance, the person who otherwise might have enforced those rights will not be allowed to enforce them where it would be inequitable having regard to the dealings which have thus taken place between the parties."[11]

It is, in fact, submitted that this particular statement of principle is even more comprehensive than that laid down by Denning J in the *High Trees* case,[12] and should thus constitute the very first starting-point of any substantive consideration of the doctrine. It is also worthy to note the word 'inequitable' which was italicised in the above quotation: this, it is submitted, not only the key element in promissory estoppel but also points (in no uncertain terms) to the equitable nature of the doctrine, which is why (as we have seen) the doctrine is also known as 'equitable estoppel'.

A more recent formulation is that by Lord Hodson in the Privy Council decision of *Emmanuel Ayodeji Ajayi v RT Briscoe (Nigeria) Ltd*:

"The principle which has been described as quasi estoppel and perhaps more aptly as promissory estoppel, is that when one party to a contract in the absence of fresh consideration agrees not to enforce his rights an equity will be raised in favour of the other party. This equity is, however, subject to the qualifications (1) that the other party has altered his position, (2) that the promisor can resile from his promise on giving reasonable notice, which need not be a formal notice, giving the promisee a reasonable opportunity of resuming his position, (3) the promise only becomes final and irrevocable if the promisee cannot resume his position."[14]

Yet another (more recent) formulation by Lord Denning MR is to be found in the English Court of Appeal decision of *WJ Alan & Co Ltd v El Nasr Export and Import Co*:

"If one party, by his conduct, leads another to believe that the strict rights arising under the contract will not be insisted upon, intending that the other should act on that belief, and he does act on it, then the first party will not afterwards be allowed to insist on the strict legal rights when it would be inequitable for him to do so. ... There may be no detriment to him by acting on it. ... His strict rights are at any rate suspended so long as the waiver lasts. He may on occasion be able to revert to his strict legal rights for the future by giving reasonable notice in that behalf, or otherwise making it plain by his conduct that he will thereafter insist upon them ... But there are cases where no withdrawal is possible. It may be too late to withdraw; or it cannot be done without injustice to the other party. In that event he is bound by his waiver.[15] He will not be allowed to revert to his strict legal rights. He can only enforce them subject to the waiver he has made."[16]

Probably the most recent observations on the doctrine are to be found in the judgment of Robert Goff J [as he then was] in *Société Italo-Belge pour le Commerce et l'Industrie SA v Palm and Vegetable Oils (Malaysia) Sdn Bhd, The Post Chaser*,[17] where the learned judge stated thus:

"To establish ... inequity, it is not necessary to show detriment; indeed, the representee may have benefited from the repudiation,[18] and yet it may be inequitable, at least without reasonable notice, for the representor to enforce his legal rights.[19] ... It does not follow that in every case in which the representee has acted, or failed to act, in reliance on the representation, it will be inequitable for the representor to enforce his rights for the nature of the action, or inaction, may be insufficient to give rise to the equity, in which event a necessary requirement stated by Lord Cairns LC[20] for the application of the doctrine would not have been fulfilled. ... although it is plain that [in this case] the sellers did actively rely on the buyer's representation, and did conduct their affairs in reliance on it, by presenting the documents, I cannot see anything which would render it inequitable for the buyers thereafter to enforce their legal right to reject the documents. In particular, having regard to the very short time which elapsed between the date of the representation and the date of presentation of the documents on the one hand and the date of rejection on the other hand, I cannot see that, in the absence of any evidence that the seller's position had been prejudiced by reason of their action in reliance on the representation, it is possible to infer that they suffered any such *prejudice*."[21]

The position at present appears to be that outlined above.[22] However, some difficulties with the doctrine remain, as evidenced from the preceding discussion and statements of principle quoted. First, whilst it is clear that an unequivocal representation[23] is required and that any reliance on the doctrine by the representee must *not* be accompanied by any inequitable conduct on the part of the *representee himself*,[24] it is, with respect, rather odd that many cases expressly *eschew* the requirement of *detriment*, holding that *only reliance*, resulting in the representee acting differently from what he might otherwise have done, is necessary.[25] It is abundantly clear that inequitability is a crucial requirement, and that inequitability *can* possibly exist *without* the presence of detriment. It is, however, submitted that, given that the doctrine is premised upon the equitable rationale of *unconscionability*,[26] *and* the fact that proof of detriment is probably the *most tangible* evidence and thus mode of proving inequitability, it is odd that the concept of detriment has been consciously downplayed. Given the inherent vagueness of the doctrine, it is further submitted that engrafting the requirement of detriment onto the doctrine of promissory estoppel can only ensure its viability and efficacy in the long term, simply because such engrafting would inject some stability into the doctrine itself, thus enhancing its utility in the law of contract as a whole.[27] Indeed, recent developments in *Australia* clearly embrace the concept of detriment as an integral part of the doctrine itself: see, for example, the Supreme Court of South Australia decision of *Je Maintiendrai Pty Ltd v Quaglia*,[28] and the more recent High Court of Australia decision of *Waltons Stores (Interstate) Ltd v Maher*.[29] In so far as *Singapore* is concerned, whilst cases such as *Koh v Koh*[30] have cited and applied *Pinnel's Case*[31] and *Foakes v Beer*,[32] the position with regard to the concept of detriment is at least undecided. The Federal Court decision of

*Wong Juat Eng v Tien Thaw Eu*[33] appears to suggest that detriment is an ingredient of promissory estoppel, whilst in the Privy Council decision of *Meng Leong Development Pte Ltd v Jip Hong Trading Co Pte Ltd*,[34] Lord Templeman, in distinguishing counsel's citation of a case on promissory estoppel,[35] stated (albeit, and arguably, obiter):[36] 'But in that case, and in similar cases, the promise was not intended to be irrevocable and the recipient of the promise did not act to his detriment'. The Singapore case, *Fu Loong Lithographer Pte Ltd v Mun Hean Realty Pte Ltd*,[37] does not, however, settle the issue, although the court's citation from Spencer Bower and Turner's famous treatise[38] does tend to support the argument (proffered in the instant work) that detriment should be a requirement and suggests, in any event, that detriment is almost invariably to be found in any successful invocation of the doctrine itself. It should, finally, be added that if detriment is indeed to be considered a requirement before a successful invocation of the doctrine may be effected, substantive evidence of such detriment must be proved by the party seeking to rely upon the doctrine.[39] In the more recent Malaysian Federal Court decision of *Boustead Trading (1985) Sdn Bhd v Arab-Malaysian Merchant Bank Bhd*,[40] however, the court eschewed the requirement of detriment. It is submitted, with respect, that such an approach was unfortunate as the court did not canvass the arguments centring around the concept of detriment (as set out in the present paragraph) more fully. Indeed, it bears repeating that detriment is in fact the most concrete manifestation of inequitability; significantly, in the *Boustead Trading* case itself, the court was at pains to emphasise the concepts of fairness and justice that underpin the doctrine of promissory estoppel itself.[41] There is also some recent case law that endorses the requirement of detriment itself.[42]

A second difficulty has to do with the *duration* of operation of the doctrine: is it, in other words, suspensory in nature or does it operate so as to extinguish legal rights altogether? As the preceding paragraphs appear to suggest, the doctrine is probably *suspensory* in nature, the representor being able to resume his strict legal rights on reasonable notice being given to the representee to that effect. Where, of course, it is not possible for the representor to resume his strict legal rights, there may be a total extinguishment of such rights; such a situation is, however, by its very nature, likely to be rare.[43] There is, however, a dictum by Denning J (as he then was) in the *High Trees* case[44] which suggests that rights to a pure money debt may be extinguished; this opinion is highly problematic as it is in direct conflict with the House of Lords decision in *Foakes v Beer*.[45] There has, however, been no definitive ruling on this particular issue as yet.[46]

A third difficulty pertains to the *nature* of the doctrine itself. It has been long established under English (and, presumably, Singapore) law that the doctrine of promissory estoppel can only be utilised as a *shield* and *not as a sword*: this means, in essence, that the doctrine *cannot* be used as a cause of action *in and of itself*, although it does *not* mean that the doctrine is only available to defendants.[47] Indeed, the principle in this case was applied in the local decision of *Combe v Combe*.[48] Indeed, the principle in this case was applied in the local decision of *Liew Ah Hock v Malayan Rly*.[49] However, the effect of the recent High Court of Australian decision of *Waltons Stores (Interstate) Ltd v Maher*[50] is far-

reaching, for it enables the doctrine of promissory estoppel to be utilised as a *sword* as well.[51] It is unclear as to whether the English and/or Singapore courts will adopt this rather radical development.[52] I have, however, ventured to suggest elsewhere that the doctrine ought to be further developed, which development might usefully take this latest case into account.[53] A useful recent indication that the English courts might be willing to further develop the doctrine is to be found in *Williams v Roffey Bros & Nicholls (Contractors) Ltd*,[54] where both Glidewell LJ[55] and Russell LJ[56] referred to a possible argument based upon promissory estoppel in a '*Stilk v Myrick*[57] situation'!

At this juncture, it should also be noted that in the Malaysian High Court decision of *Hong Leong Leasing Sdn Bhd v Tan Kim Cheong*,[58] Visu Sinnadurai J, in a postscript to his judgment,[59] pertinently pointed out the more radical approach taken by the Australian High Court in the *Walton Stores* case;[60] however, the learned judge observed thus:

> '... I do not find it necessary to express any view as to the position of the law in Malaysia. It would have to wait until an opportunity arises for a court, after hearing full arguments on the issue, to express its views.'[61]

Although no definitive view was expressed, the trouble taken by the learned judge to raise the *Walton Stores* case as well as its possible applicability in the Malaysian context is to be welcomed for it provides the opportunity for the local (including Singapore) courts to reassess the general proposition in *Combe v Combe* with a view toward changing the law if necessary. There has, in fact, since been a very significant Malaysian Federal Court decision, *Boustead Trading (1985) Sdn Bhd v Arab-Malaysian Merchant Bank Bhd*,[62] which, whilst appearing to adopt a liberal approach towards this particular aspect of promissory estoppel, may not in fact have radically changed the law.[63]

Finally, it would appear that in order for the promisee to avail himself or herself of the doctrine of promissory estoppel, he or she must have acted equitably.[64] This broad principle has in fact been followed in Singapore and Malaysia. The 'clean hands' doctrine was endorsed (albeit in an arguably broad manner) in the Malaysian decision of *Cheng Chuan Development v Ng Ah Hock*.[65] A more direct authority is the Singapore High Court decision of *Liew Ah Hock v Malayan Rly*,[66] although in the Malaysian High Court decision of *Majlis Amanah Rakyat (Mara) v Tam Seek Hong*,[67] Abdul Malik bin Haji Ishak J referred to such a doctrine as 'a rather novel proposition'.[68] significantly, though, the learned judge in this last mentioned case nevertheless proceeded to apply the doctrine to the facts of the case itself.[69] It should also be noted that Abdul Wahab Patail J also referred to the doctrine in the (more recent) Malaysian High Court decision of *Lebbey Sdn Bhd v Chong Wool Leong*.[70] It is submitted that this doctrine ought to apply in the Singapore context, although the final result will obviously depend on the actual facts of the case itself.[71]

---

1 *Central London Property Trust Ltd v High Trees House Ltd* [1947] KB 130, [1956] 1 All ER 256.

| Vol 7 | Contract |
|---|---|

[80.080]

2  See *Jorden v Money* (1854) 5 HLC 185, [1843–60] All ER Rep 350. See also the Malaysian decision of *Sim Siok Eng v Government of Malaysia* [1978] 1 MLJ 15 at 20, FC (Malaysia).

3  *Amalgamated Investment & Property Co v Texas Commerce International Bank* [1982] QB 84 at 106–108, [1981] All ER 923 at 937–939.

4  *Taylor Fashions v Liverpool Victoria Trustees Co Ltd* [1982] QB 133 at 151–152, [1981] 1 All ER 897 at 915–916. See also *Sim Siok Eng v Government of Malaysia* [1978] 1 MLJ 15 at 20 per Lee Hun Hoe CJ (Borneo) (reference to 'a broad rule of equity and justice').

5  *Central London Property Trust Ltd v High Trees House Ltd* [1947] KB 130, [1956] 1 All ER 256.

6  *Central London Property Trust Ltd v High Trees House Ltd* [1947] KB 130 at 136, [1956] 1 All ER 256.

7  *Central London Property Trust Ltd v High Trees House Ltd* [1947] KB 130 at 136, [1956] 1 All ER 256.

8  *Foakes v Beer* (1884) 9 App Cas 605, [1881–5] All ER Rep 106, HL.

9  *Hughes v Metropolitan Rly Co* (1877) 2 App Cas 439, [1874–80] All ER Rep 187, HL.

10  *Birmingham & District Land Co v London & North Western Rly Co* (1888) 40 Ch D 268, [1886–90] All ER Rep 620, CA (Engl).

11  *Hughes v Metropolitan Rly Co* (1877) 2 App Cas 439 at 448, [1874–80] All ER 187 at 191, HL (emphasis added).

12  *Central London Property Trust Ltd v High Trees House Ltd* [1947] KB 130, [1956] 1 All ER 256.

13  Readers are referred, in this connection, to the House of Lords decision of *Tool Metal Manufacturing Co v Tungsten Electric Co* [1955] 2 All ER 657, [1955] 1 WLR 761, HL.

14  *Emmanuel Ayodeji Ajayi v RT Briscoe (Nigeria) Ltd* [1964] 1 WLR 1326 at 1330, PC (on appeal from SC Nigeria).

15  On the problems that arise from the use of this term see [80.467]. And cf Lord Denning MR himself in the instant case, *WJ Alan & Co Ltd v El Nasr Export and Import Co* [1972] 2 QB 189 at 212, [1972] 2 WLR 800, where he observed: "The principle [of promissory estoppel] is much wider than waiver itself: but waiver is a good instance of its application'. See also *Brikom Investments Ltd v Carr* [1979] QB 467, [1979] 2 WLR 751, CA (Engl); and the local decision of *Wong Juat Eng v Then Thiaw Eu* [1965] 2 MLJ 213 at 214, FC (Malaysia), per Wylie CJ (Borneo); but cf *Fu Loong Lithographer Pte Ltd v Mun Hean Realty Pte Ltd* [1989] SLR 300, [1989] 2 MLJ 80 [revsd [1993] 1 SLR 713, CA (but not, apparently, on this point)]. Cf also the Malaysian decision of *Plenitude Holdings Sdn Bhd v Tan Sri Khoo Teck Puat* [1992] 2 MLJ 68 at 79, HC (Malaysia); as well as the Singapore Court of Appeal decision of *Abraham Aaron Issac v Management Corp Strata Title Plan No 664* [1999] 3 SLR 81 at ¶25, CA.

16  *WJ Alan & Co Ltd v El Nasr Export and Import Co* [1972] 2 QB 189 at 213, [1972] 2 WLR 800, CA (Engl).

17  *Société Italo-Belge pour le Commerce et l'Industrie SA v Palm and Vegetable Oils (Malaysia) Sdn Bhd, The Post Chaser* [1981] 2 Lloyd's Rep 695, [1982] 1 All ER 19.

18  See also per Lord Denning MR in *WJ Alan & Co Ltd v El Nasr Export and Import Co* [1972] 2 QB 189 at 213, [1972] 2 All ER 127 at 140, CA (Engl).

19  The learned judge cited *Central London Property Trust Ltd v High Trees House Ltd* [1947] KB 130, [1956] 1 All ER 256 as an illustration, observing that the lessee/representee had benefited from the reduction in rent, but that it might be inequitable for the lessor/representor to insist on his legal right to unpaid rent

— 94 —

| Vol 7 | Consideration | [80.080] |
|---|---|---|

because the lessee had conducted his affairs on the basis that he would only have to pay rent at the lower rate; but cf the characterisation and decision of the Supreme Court of South Australia of *Je Maintiendrai Pty Ltd v Quaglia* (1980) 26 SASR 101, Aust SC.

20  *Hughes v Metropolitan Rly Co* (1877) 2 App Cas 439 at 448, [1874–80] All ER Rep 187 at 191, HL; and see note 11, above.

21  *Société Italo-Belge pour le Commerce et l'Industrie SA v Palm and Vegetable Oils (Malaysia) Sdn Bhd, The Post Chaser* [1981] 2 Lloyd's Rep 695 at 701–702, [1982] 1 All ER 19 (emphasis added).

22  Cf the local decision of *Industrial & Commercial Realty Co Ltd v Merchant Credit Pte Ltd* [1978–1979] SLR 541, [1980] 1 MLJ 208, where reliance is placed upon Lord Denning's extralegal views in his book, *The Discipline of Law* (Butterworths, London, 1979). Also cf the Singapore Privy Council decision of *Bank Negara Indonesia v Hoalim Philip* [1973] 2 MLJ 3, PC (on appeal from Singapore). See also the Malaysian cases, a sampling of which include the following: *Murugappa Chettiar v Chinniah* [1962] MLJ 95, HC (Malaysia); *William Teo's House and Estate Agencies v Chan Eng Swee* [1965] 2 MLJ 89, HC (Malaysia); *Ong Tiaw Kok v Bian Chiang Bank Ltd* [1972] 2 MLJ 134, HC (Malaysia); *Tiun Eng Jin v Wong Sie Kong* [1975] 2 MLJ 34, HC (Malaysia); *Sim Siok Eng v Government of Malaysia* [1978] 1 MLJ 15, FC (Malaysia); *Abdullah bin S Pathmanathan v Amaravathi* [1979] 1 MLJ 38, HC (Malaysia); *Mamat v Pengarah Hutan Negeri Trengganu* [1982] 1 MLJ 342, HC (Malaysia); *Yap Yoke Luan v Ong Wee Tok* [1984] 1 MLJ 23, FC (Malaysia); *Leong Huat Sawmill (Pte) Ltd v Lee Man See* [1985] 1 MLJ 47, FC (Malaysia); *MAA Holdings Sdn Bhd v Ng Siew Wah* [1986] 1 MLJ 170, HC (Malaysia); and *Sediperak Sdn Bhd v Bahao Chowdhury* [1999] 5 CLJ 31, HC (Malaysia). Quaere the linkage (if any) between the doctrine of equitable or promissory estoppel and the Malaysian Contracts Act 1950 (Act 136) s 26(b) (cf *Leong Huat Sawmill (Pte) Ltd v Lee Man See* (above) which seems to suggest that both are separate, but not inconsistent, doctrines).

23  Which was not, however, the case in the Singapore decision of *Chuan Hong Petrol Station Pte Ltd v Shell Singapore (Pte) Ltd* [1992] 2 SLR 729, CA (allegations of representations were suspect; alleged representations indeterminate and ambiguous). See also *Lemon Grass Pte Ltd v Peranakan Place Complex Pte Ltd* [2002] 4 SLR 439 (alleged representations were not made; claim based on proprietary estoppel failed); *Info-communications Development Authority of Singapore v Singapore Telecommunications Ltd (No 2)* [2002] 3 SLR 488 at [139] [no operative estoppel could be found 'in the absence of identifying specific representations which would lead to the beginnings of an estoppel']. For further local decisions see Phang Cheshire, Fifoot and Furmston's Law of Contract – Second Singapore and Malaysian Edition (1998) p 198 n 303 and p 199 n 305; cf also the Singapore Court of Appeal decision of *Abraham Aaron Issac v Management Corp Strata Title Plan No 664* [1999] 3 SLR 81 at ¶26, CA.

24  See *D & C Builders Ltd v Rees* [1966] 2 QB 617, [1965] 3 All ER 837, CA (Engl). Indeed, such conduct may amount to economic duress on the part of the representee (on 'Economic Duress', see generally [80.216]–[80.227]). See also the Singapore decision of *Liew Ah Hock v Malayan Rly* [1967] 1 MLJ 53; and the Malaysian decision of *Cheng Chuan Development Sdn Bhd v Ng Ah Hock* [1982] 2 MLJ 222, FC (Malaysia).

25  See especially note 16, above. Though cf *The Post Chaser* [1981] 2 Lloyd's Rep 695, [1982] 1 All ER 19 per Robert Goff J [as he then was] (see note 21, above) which is arguably ambiguous; though cf the interpretation of Gunn Chit Tuan SCJ, delivering the judgment of the court in *Associated Pan Malaysia Cement*

— 95 —

[80.080]  Contract  Vol 7

Sdn Bhd v Syarikat Teknikal & Kejuruteraan Sdn Bhd [1990] 3 MLJ 287 at 294, SC (Malaysia).

26  See notes 3 and 4, above, and the authorities cited therein.
27  Cf Phang 107 LQR 21 at 23–24; and Phang 4 JCL 46 at 50.
28  Je Maintiendrai Pty Ltd v Quaglia (1980) 26 SASR 101, Aust SC.
29  Waltons Stores (Interstate) Ltd v Maher (1988) 164 CLR 387, Aust HC.
30  Koh v Koh [1965] MLJ 99.
31  Pinnel's Case (1602) 5 Co Rep 117a, [1558–1774] All ER Rep 612.
32  Foakes v Beer (1884) 9 App Cas 605, [1881–5] All ER Rep 106, HL. And see the general discussion at [80.078].
33  Wong Juat Eng v Then Thaw Eu [1965] 2 MLJ 213, FC (Malaysia). See also the Malaysian decision of Cheng Chuan Development Sdn Bhd v Ng Ah Hock [1982] 2 MLJ 222, FC (Malaysia) where, however, the type of estoppel was not entirely clear. Cf Ong Tiaw Kok v Bian Chiang Bank Ltd [1972] 2 MLJ 134 at 147, HC (Malaysia).
34  Meng Leong Development Pte Ltd v Jip Hong Trading Co Pte Ltd [1984–1985] SLR 27, [1985] 1 MLJ 7, PC (on appeal from Singapore).
35  Viz Emmanuel Ayodeji Ajayi v RT Briscoe (Nigeria) Ltd [1964] 1 WLR 1326, PC (on appeal from SC Nigeria); see note 14, above.
36  Meng Leong Development Pte Ltd v Jip Hong Trading Co Pte Ltd [1984–1985] SLR 27, [1985] 1 MLJ 7 at 14, PC (on appeal from Singapore) [emphasis added].
37  Fu Loong Lithographer Pte Ltd v Mun Hean Realty Pte Ltd [1989] SLR 300, [1989] 2 MLJ 80; revsd [1993] 1 SLR 713, CA (Malaysia). CF also the Malaysian High Court decisions of Sunrise & Co Pte Ltd v Marco Shoe Sdn Bhd [1998] 5 MLJ 627 at 641, HC (Malaysia) and Curzet Transport SA v Shapadu Trans-System Sdn Bhd [1999] 4 MLJ 150 esp at 162–163, HC (Malaysia).
38  The learned judge, Grimberg JC, in Fu Loong Lithographer Pte Ltd v Mun Hean Realty Pte Ltd [1989] SLR 300, [1989] 2 MLJ 80 cites from p 392 of Spencer Bower and Turner, The Law Relating to Estoppel by Representation (3rd ed, 1977 by Sir Alexander Kingcome Turner) which, by itself is, perhaps, ambiguous. Further reference (to pp 393 and 394) of this work throws more definitive light on the author's views, as a whole, and which is summarised in the instant sentence.
39  Cf Je Maintiendrai Pty Ltd v Quaglia (1980) 26 SASR 101, Aust SC.
40  Boustead Trading (1985) Sdn Bhd v Arab-Malaysian Merchant Bank Bhd [1995] 3 MLJ 331, [1995] 4 CLJ 283, [1995] 3 AMR 2871, FC (Malaysia). CF also the Malaysian High Court decisions of Sunrise & Co Pte Ltd v Marco Shoe Sdn Bhd [1998] 5 MLJ 627 at 641, HC (Malaysia) and Curzet Transport SA v Shapadu Trans-System Sdn Bhd [1999] 4 MLJ 150 esp at 162–163, HC (Malaysia).
41  See Boustead Trading (1985) Sdn Bhd v Arab-Malaysian Merchant Bank Bhd [1995] 3 MLJ 331 at 344, FC (Malaysia), per Gopal Sri Ram JCA, delivering the judgment of the court as follows (emphasis added):
    'The time has come for the court to recognise that the doctrine of promissory estoppel is a flexible principle by which justice is done according to the circumstances of the case. It is a doctrine of wide utility and has been resorted to in varying fact patterns to achieve justice. Indeed, the circumstances in which the doctrine may operate are endless.'
    See also the court's reference to the underlying rationale of unconscionability in its application to the facts of the case itself: see [1995] 3 MLJ 331 at 348.
    See, further, Phang Cheshire, Fifoot and Furmston's Law of Contract – Second Singapore and Malaysian Edition (1998) pp 210–211.
42  See eg the recent English case of Gillett v Holt [2001] 3 Ch 210, [2000] 2 All ER 289, CA (Eng) (the overwhelming weight of authority showed that detriment was required but that detriment itself was not a narrow or technical concept; it need not consist of the expenditure of money or other quantifiable financial

— 96 —

Vol 7  Consideration  [80.080]

detriment, provided that it was something substantial) and the Malaysian Court of Appeal decision of Kokomewah Sdn Bhd v Desa Hatchery Sdn Bhd [1995] 3 CLJ 511 at 518, [1995] 3 AMR 2319, CA (Malaysia); affg [1995] 1 MLJ 214, HC (Malaysia). Cf also the more recent Singapore Court of Appeal decision of Abraham Aaron Issac v Management Corp Strata Title Plan No 664 [1999] 3 SLR 81 at ¶26, CA.

43  One such instance is to be found in the rather dated decision of Birmingham & District Land Co v London & North Western Rly Co (1888) 40 Ch D 268, [1886–90] All ER Rep 620, CA (Eng). But is should be noted that even in this case, Bowen LJ acknowledged the prima facie suspensory nature of the doctrine ((1888) 40 Ch D 268 at 286; emphasis added): '... if persons who have contractual rights against others induce by their conduct those against whom they have such rights to believe that such rights will either not be enforced or will be kept in suspense or abeyance for some particular time, those persons will not be allowed by a Court of Equity to enforce the rights until such time has elapsed, without at all events placing the parties in the same position as they were before'. And cf Plentitude Holdings Sdn Bhd v Tan Sri Khoo Teck Puat [1992] 2 MLJ 68 at 84, HC (Malaysia).
44  Central London Property Trust Ltd v High Trees House Ltd [1947] KB 130 at 135, [1956] 1 All ER 256.
45  Foakes v Beer (1884) 9 App Cas 605, [1881–5] All ER Rep 106, HL.
46  Although there are local cases that at least suggest extinguishment of pure money debts, but without express consideration of the various issues and problems just briefly alluded to above; see eg the Malaysian cases of William Teo's House and Estate Agencies v Chan Eng Swee [1965] 2 MLJ 89, HC (Malaysia) and Tiun Eng Jin v Wong Sie Kong [1975] 2 MLJ 34, HC (Malaysia). But cf Sim Siok Eng v Government of Malaysia [1978] 1 MLJ 15 at 20 and 23, FC (Malaysia).
47  Ie plaintiffs may seek to invoke the doctrine provided it is only used as a 'defensive block' rather than as an 'offensive cause of action': see eg the fact situation in The Post Chaser [1981] 2 Lloyd's Rep 695, [1982] 1 All ER 19. See also the recent Malaysian case of American International Assurance Co Ltd v Koh Yen Bee [2002] 4 AMR 3855 at 3910, CA (Malaysia), per Abdul Hamid JCA. But cf the US Restatement of Contracts (Second) s 90(1) which reads as follows: 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of that promise. The remedy granted for breach may be limited as justice requires.'
48  Combe v Combe [1951] 2 KB 215, [1951] 1 All ER 767, CA (Eng).
49  Liew Ah Hock v Malayan Rly [1967] 1 MLJ 53. See also the Malaysian decisions of William Teo's House and Estate Agencies v Chan Eng Swee [1965] MLJ 89 at 91, HC (Malaysia) and Ong Tiaw Kok v Bian Chiang Bank Ltd [1972] 2 MLJ 134 at 145–146, HC (Malaysia). But of the Malaysian decisions of Abdullah bin Mamat v Pengarah Hutan Negeri Trengganu [1982] 1 MLJ 342, HC (Malaysia) and Leong Huat Saumill (Pte) Ltd v Lee Man Sre [1985] 1 MLJ 47, FC (Malaysia). The Malaysian case of Sim Siok Eng v Government of Malaysia [1978] 1 MLJ 15, FC (Malaysia), whilst expressly endorsing the principle in Combe v Combe [1951] 2 KB 215, [1951] 1 All ER 767, CA (Eng), may possibly pose a problem in so far as application is concerned, depending on how the cause of action therein is characterised.
50  Waltons Stores (Interstate) Ltd v Maher (1988) 164 CLR 387, Aust HC.

— 97 —

of contract applies to our law of contract (see *Kepong Prospecting Ltd v Schmidt*). See also the High Court of Sarawak case of *Jenis bin Drahman v Ong Teck Huat* [1950] SCR 5. On the doctrine of privity (or rather the lack of it between members) in relation to a 'hwei' see eg *Ngu Ee Nguok v Lee Ai Choon* [1965] 1 MLJ 32, HC (Malaysia) and *Lau Chuo Kiew v Hii Chee Soon* [1965] 1 MLJ 126, HC (Malaysia). On the role of privity in the context of adverse possession see *Anjalai Ammal v Abdul Kareem* [1968] 2 MLJ 92, HC (Malaysia). In so far as the linkage between privity and promissory estoppel is concerned see *S Pathmanathan v Amaravathi* [1979] 1 MLJ 38, HC (Malaysia). Cf also *Kannappa Chettiar v Vellasamy Pillai* [1977] 1 MLJ 255, HC (Malaysia).

### [80.421] Privity and consideration

The rules that consideration must move from the promisee and that only a person who is a party to a contract can sue on it are fundamentally distinct. Thus, to be entitled to enforce a promise, a person must, generally, show (1) that the promise was made to him and (2) that consideration for it moved from him. The distinction was endorsed by the English Law Revision Committee in 1937.[2] This view, however, has been questioned[3] It has been persuasively argued that there is no basic distinction between the two principles; they are but different ways of saying the same thing. So long as consideration is an essential feature of English law, it would seem to be immaterial whether a person is forbidden to sue on the ground that he has given no consideration or on the ground that he is a stranger to the contract. This argument has yet to be tested in the English courts. In Australia, the High Court has got round the difficulty by relying on the doctrine of joint promisees in dealing with a situation where a person is a party to an agreement but has provided no consideration.[4] It is sufficient that consideration has moved from one of a number of joint promisees.[5] It should be noted that in the UK Law Commission's *Report* on the doctrine of privity of contract,[6] a favourable view was taken of the joint promisee doctrine,[7] although, not being the focus of the *Report* as such, no concluded view was expressed. The Commission, however, hoped that the courts would endorse the doctrine.[8] It is interesting to note that the Contracts (Rights of Third Parties) Act 1999, which came into force on 11 November 1999, contained no provision on the position of joint promisees, although the original draft Bill entitled the same had a provision on joint promisees.[9]

---

1  *Dunlop Pneumatic Tyre Co Ltd v Selfridge & Co Ltd* [1915] AC 847 at 853, HL; *Scruttons Ltd v Midland Silicones Ltd* [1962] AC 446, [1962] 1 All ER 1, HL. See also *Tweddle v Atkinson* (1861) 1 B & S 393, which was generally considered to have established the doctrine of privity in its present form. See further the Malaysian Privy Council decision in *Kepong Prospecting Ltd v Schmidt* [1968] 1 MLJ 170, PC (on appeal from Malaysia) [affg [1964] MLJ 416, FC (Malaysia)] [for a comment see Koh 10 Mal LR 125], where both privity and consideration were treated separately (although there was no express discussion as to the linkage as such). *Kepong Prospecting Ltd v Schmidt* (above) was applied in the Malaysian High Court decision of *Oversea Chinese Banking Corp Ltd v Woo Hing Bros (M) Sdn Bhd* [1992] 2 MLJ 86 at 95, HC (Malaysia). The two doctrines are treated as separate and distinct in *Lai Yew Seng Pte Ltd v Pilecon Engineering Bhd* [2002] 3 SLR 425 at [5].

---

2  Sixth Interim Report at 22.
3  See Smith and Thomas *A Casebook on Contract* (10th ed, 1996) p 273; Sa and Williams *The Law of Contracts* pp 99-100; Furmston 23 MLR 3; 382-384. See also Azmi 13 JILI 274. See further Furmston Cheshire, Fifoot Furmston's Law of Contract (14th ed, 2001) pp 86-88 concerning the ongoing controversy.
4  See *Coulls v Bagot's Executor and Trustee Co Ltd* [1967] ALR 385, 119 CLR 410, Aust HC. See also Coote [1978] CLJ 301.
5  See also *McEvoy v Belfast Banking Co Ltd* [1935] AC 24, [1934] All ER Rep 800, HL.
6  See *Privity of Contract: Contracts for the Benefit of Third Parties* (HMSO, Law Com No 242, Cm 3329, July 1996).
7  See generally *Privity of Contract: Contracts for the Benefit of Third Parties* (HMSO, Law Com No 242, Cm 3329, July 1996) paras 6.9-6.12.
8  *Privity of Contract: Contracts for the Benefit of Third Parties* (HMSO, Law Com No 242, Cm 3329, July 1996) para 6.11. See also Burrows [1996] LMCLQ 467 at 484.
9  See cl 8 of the original draft Bill.

### [80.422] Conferment of benefits: promise in favour of third parties

As already noted above, a third party is not entitled to the benefit provided in the contract made in his favour. The objection, based on an application of the doctrine of privity, is that he is not a party to the contract; in addition, no consideration has been furnished for the promise made.[1] The general assumption is that a contract, as a juristic concept, is the intimate if not the exclusive relationship between the parties who have made it.[2] Thus Roman law, innocent of consideration, declared that a third party could neither be liable nor entitled under a contract. In France, the Civil Code formulated the doctrine of 'relativity': 'contracts have effect only between the contracting parties'. It is, however, easier to proclaim a principle than to maintain it. Even Roman law was forced to admit exceptions, and French law, by developing another article of the Code which allowed certain 'stipulations *pour autrui*', has torn a wide breach in its doctrine.[3]

---

1  See *Tweddle v Atkinson* (1861) 1 B & S 393, [1861-73] All ER Rep 369; *Dunlop Pneumatic Tyre Co Ltd v Selfridge & Co Ltd* [1915] AC 847, [1914-5] All ER Rep 333, HL. See also the Malaysian Privy Council decision in *Kepong Prospecting Ltd v Schmidt* [1968] 1 MLJ 170, PC (on appeal from Malaysia).
2  See *Price v Easton* (1833) 4 B & Ad 433, 2 LJKB 51; *Tweddle v Atkinson* (1861) 1 B & S 393.
3  See Buckland and McNair *Roman Law and Common Law* (2nd ed) pp 214-217, and Amos and Walton *Introduction to French Law* (3rd ed) pp 175-177. On the present position in France, Lawson remarks in *A Common Lawyer Looks at the Civil Law* (1955) p 56, 'the French courts have so disturbed the balance between articles 1119 and 1120 of the code as to make the recognition of third party rights in contract normal instead of exceptional, as was assuredly the intention of the compilers'.