LEXSEE 3 SLR 631

© 2003 LexisNexis Asia (a division of Reed Elsevier (S) Pte Ltd)

Singapore Law Reports

SEA-LAND SERVICE INC V CHEONG FOOK CHEE VINCENT

[1994] 3 SLR 631

CIVIL APPEAL NO 156 OF 1993

COURT OF APPEAL

HEARING-DATE-1: 16 AUGUST 1994

DECIDED-DATE-1: 1 SEPTEMBER 1994

YONG PUNG HOW CJ, KARTHIGESU AND LP THEAN JJA

**CATCHWORDS:**

Contract - Employment - Variation - Whether supported by consideration - Termination of employee's services under enhanced redundancy program - Whether employer bound to give enhanced severance pay

Labour Law - Redundancy - Benefits - Variation to include enhanced severance pay - Termination of employee's services under enhanced redundancy program - Whether employer bound to give the enhanced severance pay - Whether employee provided consideration for the variation by accepting the termination

Words and Phrases - 'Eligible'

**HEADNOTES:**

The appellants were the employers of the respondent. Under art 3.12 of the appellants' *Employee Rules and Benefits Handbook* (the handbook), the respondent was entitled to a severance pay of half a month's pay for each year of service in the event he was made redundant. In 1989, the respondent was informed by the CEO of the appellants that those employees affected by a redundancy exercise which was pending would be eligible to participate in an enhanced redundancy program. On 1 November 1991, the respondent received a letter informing him that his employment would be terminated on 30 November 1991 and that he was to receive severance pay of $ 23,000 and an enhanced severance pay of $ 14,340. He also received a document entitled 'Enhanced Redundancy Program Singapore' which gave notice of a pending redundancy exercise and provided that an affected employee would be eligible to receive the severance pay as specified under art 3.12 of the handbook and another half month's pay for each year's service up to a maximum of six months' pay as enhanced severance pay. When the respondent proceeded to collect his final payment of salary, he was informed by the appellants that there had been a calculation error and that he was only entitled to $ 23,000, as specified in art 3.12(B) of the handbook, and not to the enhanced severance pay. In place of the enhanced severance pay of $ 14,340, he was given an ex gratia payment of $ 4,780. The respondent accepted the payment under protest and took out proceedings for a declaration that he was entitled to the enhanced severance pay. The trial judge granted the declaration sought by the respondent on the basis that there was an enforceable agreement made between the two parties under which the respondent was to be paid the enhanced severance pay. See [1994] 2 SLR 340 .

On appeal, the appellants contended that any agreement made between the two parties to pay the respondent enhanced severance pay would be unenforceable for lack of consideration.

[*632]

**held,** allowing the appeal:
(1) The respondent's performance of his duties in his last month of

employment could not amount to valid consideration since he was merely fulfilling his obligations under his employment contract with the appellants.

(2) The appellants had not obtained any factual or practical benefit from the respondent working for them in the last month after he received the termination notice. There had also been no request by the appellants that the respondent complete his last month of employment in return for a promise by them to pay him enhanced benefits. Hence, the respondent's performance of his duties under the employment contract in the last month after he received the termination notice was not valid consideration.

(3) The word 'eligible' as used in the letters of 11 December 1989 and 1 November 1991 meant that the recipient of the letter was 'fit to be chosen or selected' to participate in an enhanced severance pay program and not that the recipient was 'entitled' to participate in such a program.

(4) Therefore, the appellants could not have, by the two letters, impliedly requested the respondent to forebear to sue them. There was therefore no consideration in the form of a forbearance to sue on the part of the respondent.

Cases referred to

*Re Birkbeck Permanent Benefit Building Society* [1913] 1 Ch 400

*Sanderson v Workington Borough Council* [1918] 34 TLR 386

*Williams v Roffey Bros & Nicholls (Contractors)* [1991] 1 QB 1, [1990] 1 All ER 512

*Asia Polyurethane Mfg v Woon Sow Liong* [1990] 2 MLJ 463

*Stilk v Meyrick* [1809] 2 Camp 317, (1809) 170 ER 1168

*Alliance Bank v Broom* [1864] 2 Dr & Sim 289, (1864) 62 ER 631

Chua Lee Ming (Lee & Lee) for the appellants.

Abdul Rashid Ghani and Terence Lim (Khattar Wong & Pnrs) for the respondent.

**JUDGMENTBY:** YONG PUNG HOW CJ (DELIVERING THE GROUNDS OF JUDGMENT OF THE COURT)

This was an appeal against the judgment of Kan Ting Chiu J (reported as *Cheong Fook Chee v Sea-Land Service Inc* [1994] 2 SLR 340), which declared that the appellants were bound to pay the respondent an enhanced severance pay of $ 14,340 in addition to his normal severance pay.

The appellants were the employers of the respondent. Under art 3.12 of the appellants' *Employee Rules and Benefits Handbook* (the handbook), the respondent was entitled to a severance pay of half a month's pay for each year of service in the event he was made redundant. During a restructuring exercise in 1989, the chairman and chief executive officer of the appellants, by a letter dated 11 December 1989, informed the employees of the appellants that those affected by a redundancy exercise which was pending would be eligible to participate in an enhanced severance program.

[*633]

On 1 November 1991, the respondent received a letter from the appellants informing him that his employment would be terminated on 30 November 1991. At the same time, he was informed in a notice entitled 'Final Payment of Salary' that he was to receive severance pay of $ 23,900 and an enhanced severance pay of $ 14,340. In addition, he received a document entitled 'Enhanced Redundancy Program Singapore' which gave notice of a pending redundancy exercise and which provided that an affected employee would be eligible to receive:

(a) half month's pay for each year's service (severance pay); and

(b) another half month's pay for each year's service up to a maximum of six months' pay (enhanced severance pay).

When the respondent collected his final payment of salary, however, he received another letter from the appellants dated 13 December 1991 informing him that the 'Final Payment of Salary' which he had received earlier had been calculated wrongly. He was informed that he was not entitled to the enhanced severance pay of $ 14,340, but was only entitled to the amount payable under art 3.12(B) of the handbook. In place of the enhanced severance pay, there was an ex gratia allowance of $ 4,780 which was equivalent to two months' pay. The respondent accepted the payment under protest and took out these proceedings for a declaration that he was entitled to the enhanced severance pay.

The proceedings in the High Court were heard before Kan Ting Chiu J, who granted the declaration sought by the respondent. He found that there was an enforceable agreement made between the two parties under which the respondent was to be paid the enhanced severance pay. On the issue of consideration for the agreement, the learned judge found that there was consideration for the enhanced benefits when ' *the respondent accepted the termination of his employment under the program in the expectation of receiving the enhanced severance benefits*'.

The appeal came up for hearing before us. We allowed the appeal with costs, and now give our reasons. The main issue on appeal was whether the agreement to pay the respondent the enhanced severance pay was contractually unenforceable for lack of consideration. If there was no consideration, the respondent would not be entitled to the declaration sought as it would only be a gratuitous promise by the appellants. Since the money had not been paid out to the respondent, the 'gift' was not perfected and the respondent would not be able to sue for it.

It was common ground that, if there was consideration for the agreement to pay the enhanced benefits, it could only have arisen in three possible forms: first, by the respondent performing his existing contractual duties under the employment contract when he continued to work for the appellants after he received the termination notice; secondly, by the respondent forbearing to sue the appellants for breach of the employment contract as the termination of the respondent's employment was allegedly not in accordance with the employment contract; and, thirdly, by the respondent accepting the termination of his employment in the expectation of receiving the enhanced benefits. It was, however, the appellants' case that the third possibility was, in substance, similar to the second one.

Before us, counsel for the appellants submitted that the respondent had not continued to work for the one month after receiving the notice of termination in order to be entitled to the enhanced severance pay, but had done so in order to be [*634] entitled to one month's pay of his normal salary. That being so, the performance by the respondent of his existing contractual duties owed to the appellants could not be valid consideration. He cited *Re Birkbeck Permanent Benefit Building Society* [1913] 1 Ch 400 and *Sanderson v Workington Borough Council*. [1918] 34 TLR 386 On the other hand, counsel for the respondent submitted that, if the appellants had obtained a practical or factual benefit from the respondent's performance of his existing contractual duties, that would amount to valid consideration. For this proposition, he relied on *Williams v Roffey Bros & Nicholls (Contractors) Ltd* [1991] 1 QB 1; [1990] 1 All ER 512 and *Asia Polyurethane Mfg Pte Ltd v Woon Sow Liong* [1990] 2 MLJ 463 .

The material facts of *Williams v Roffey Brothers* [1991] 1 QB 1; [1990] 1 All ER 512 were as follows. The defendants were the main contractors for a building contract. The plaintiff entered into a sub-contract with the defendants for carpentry work. The plaintiff got into financial difficulties because the agreed price for the sub-contract was too low for him to operate satisfactorily and at a profit. As the main contract contained a time penalty clause and the defendants were worried that the plaintiff might not be able to complete the sub-contract on time, they made an oral agreement to pay the plaintiff an additional sum to fulfil his obligations under the sub-contract. Eventually, the plaintiff was able to substantially complete the carpentry work. However, the defendants failed to honour their oral promise. The plaintiff then sued the defendants for the additional sum promised. One of the main issues before the court was whether there was consideration for the agreement as the plaintiff's promise under the agreement was merely to perform his existing contractual obligations under the sub-contract.

The Court of Appeal distinguished the established rule in *Stilk v Meyrick* [1809] 2 Camp 317; (1809) 170 ER 1168 and held that there was valid consideration for the agreement to pay the additional sums. The rule in *Stilk v Meyrick* [1809] 2 Camp 317; (1809) 170 ER 1168 states that a promise to perform an existing contractual obligation is not sufficient consideration since the promisee derives no additional benefit in law. The Court of Appeal in *Williams v Roffey Brothers* [1991] 1 QB 1; [1990] 1 All ER 512 identified the special circumstances that were present in that case and on p 15 Glidewell LJ was of the opinion that the present state of the law on this subject could be expressed in the following proposition:

   (1)   if A has entered into a contract with B to do work for B, in
        return for payment by B; and
   (2)   at some stage before A has completely performed his obligations

under the contract, B has reason to think or doubt whether A will or will not be able to complete his side of the bargain; and

(3) B thereupon promises A an additional payment in return for A's promise to perform his contractual obligations on time; and

(4) as a result of giving his promise, B obtains in practice a benefit, or avoids a detriment; and

(5) B's promise is not given as a result of economic duress or fraud on the part of A; then

(6) the benefit to B is capable of being consideration for B's promise, so that the promise will be legally binding.

The respondent's case was that by working for the appellants in the last month of his employment, he had provided valid consideration for the appellants' promise to pay the enhanced benefits. For the limited exception under *Williams v Roffey Brothers* [1991] 1 QB 1; [1990] 1 All ER 512 [*635] to apply, the appellants must have at least obtained a factual or a practical benefit from the respondent's performance of his existing contractual duties. The issue before us was whether the appellants had obtained such a factual or practical benefit.

Counsel for the appellants submitted that the facts of the present case did not fall within the limited exception as stated in *Williams v Roffey Brothers*. [1991] 1 QB 1; [1990] 1 All ER 512 First, they had derived no benefit from the respondent completing his last month of employment. Secondly, there had been no request by the appellants that the respondent complete his last month of employment (after he was notified of the termination of his employment) in return for their promise to pay enhanced benefits.

Counsel for the respondent submitted that the appellants benefited from the respondent's performance of his existing duties in the last month of his employment as the appellants could then:

(a) restructure and reorganize their corporate affairs;
(b) streamline their organization; and
(c) provide an organized and structured redundancy program.

Counsel for the respondent also submitted that the contributions of the respondent by way of understanding and helping in the appellants' retrenchment exercise was also a factual benefit to the appellants.

In our view, there was no merit in this submission of the respondent. The value of the last month's work by an employee about to be made redundant could hardly be other than minimal, since the management would only retrench workers that were not essential for their operations. Secondly, we agreed with the appellants' counsel that the appellants had not requested the respondent to complete his last month of employment in exchange for their payment of the enhanced benefits. The appellants were merely complying with their contractual obligations and had chosen to provide the respondent with one month's notice before his employment was terminated, instead of terminating his employment there and then and compensating him with a month's wages in lieu of notice. We were therefore of the view that the respondent's last month's work for the appellants would not amount to valid consideration and that it fell within the general rule that prohibits the performance of existing duties from constituting such consideration.

In *Asia Polyurethane v Woon Sow Liong*, [1990] 2 MLJ 463 which was relied on by the respondents, the defendant employee signed a secrecy deed with his plaintiff employers which contained a five-year covenant in restraint of trade. An argument was advanced by the defendant that the secrecy deed was unenforceable for lack of consideration since it had been entered into when the defendant was already in the employment of the plaintiffs and because the plaintiffs had made no new promise and provided no new benefits for this deed. Chan Sek Keong J (as he then was) stated obiter that, since the employers could have legally terminated the employee's employment, in continuing to employ him, they had furnished valid consideration for the secrecy deed. However, he held that the secrecy deed was unreasonable and was thus unenforceable against the defendant. Counsel for the respondent in relying on *Woon's case*, [1990] 2 MLJ 463 submitted that the respondent, in continuing to work for the appellants (after he had received the letter of termination) had similarly furnished valid consideration.

[*636]

In our view, *Woon's case* [1990] 2 MLJ 463 was not applicable to the present case. First, in *Woon's case*, [1990] 2 MLJ 463 it was the employer's right to legally terminate the employee's employment (with the adequate notice or payment) and it was their choice in not exercising that right that was found to be valid consideration. However, it was not the respondent's case on the reversed facts here that he had chosen not to exercise a right of resignation in return for the

promise of payment of enhanced benefits by the appellants. Secondly, on the facts of the present case, it was clear that there was no question of the respondent being able to rely on a 'right of resignation'.

The second possible form of consideration relied on by the respondent was the respondent's act of forbearing to sue the appellants for improperly terminating his employment. Before us, counsel for the appellants submitted that there was no consideration in the form of a forbearance to sue by the respondent as:

(1) the respondent did not have any intention to forebear any action against the appellants;
(2) the respondent had no valid claim against the appellants since they had complied with the contractual terms in retrenching him; and
(3) in any case, the alleged forbearance had not been induced by the appellants' 'promise' to pay the enhanced benefits, whether express or implied.

Counsel for the respondent submitted that the letter dated 11 December 1989 from the chief executive officer of the appellants and the letter of 1 November 1991 constituted an implied request by the appellants to the respondent to forebear to sue for their breach of the employment contract. In support of his contentions, he relied in his written case on *Alliance Bank (Ltd) v Broom*. [1864] 2 Dr & Sim 289; (1864) 62 ER 631 In the *Alliance Bank* case,6 the defendants owed a sum of money to the plaintiff bank. The bank pressed them for security for this money, and they promised to give security, but the bank did not counter-promise not to sue them for the security. On the issue of whether the defendants had requested for the forbearance by the bank, the House of Lords held that it could be implied that the defendants requested for the forbearance from the bank. We were, however, of the view that, from the facts established by the parties in the present appeal, it could not possibly be suggested that there was an implied request by the appellants that the respondent forebear from suing them.

First, the letter of 11 December 1989 was of minimal relevance. In our view, it was written merely to update and inform the employees of the appellants about the company's future plans for a group scheme which would be applied to individual companies when it was finalized, and which included the possibility of a pending retrenchment exercise, and with it an enhanced severance pay program. At that point in time, however, nothing was certain, and in particular no plans had yet been made for the termination of the respondent's employment. In fact, counsel for the respondent conceded that, at that stage, it was not known whether the respondent would be made redundant. Nevertheless, he contended that the message the respondent received from the appellants' 11 December 1989 letter was that, if he were to be made redundant, he would be entitled to the enhanced benefits mentioned therein. Secondly, the letter of 1 November 1991 to the respondent was also not in the language of a request by the appellants for the respondent to forebear to sue the appellants. Instead, it was again written for the purpose of providing information to the respondent. The fact that this letter and the notice of termination were given to the respondent at the same time supported [*637] the appellants' argument that the respondent had not accepted the termination because he was promised an enhanced benefits program by the appellants.

Considering the two letters in greater detail, the material parts of the letter of 11 December 1989 were as follows:
Enhanced Severance Program:
As the organization structure is finalized, *eligible* employees will
be offered an enhanced severance program. This program will provide
severance equal to 12 to 52 weeks of base salary based primarily on
years of qualified service with Sea-Land. [Emphasis added.]

In the letter of 1 November 1991, the appellants represented, inter alia, that:
Eligibility
Any employee in Singapore will be *eligible* to participate in the
enhanced redundancy program if one of the following occurs:
- Employee is not offered a position
- Employee is offered a position with a decrease in base salary.
[Emphasis added.]

The respondent's case was that these two letters informed the respondent that he was to be paid enhanced benefits if he accepted the termination of his employment and constituted an implied request by the appellants to the respondent to forebear to sue them. In our view, these contentions of the respondent were wholly without merit. The two letters

merely informed the respondent of the class of employees that were *eligible* to participate in the enhanced severance program. The plain and ordinary meaning of the word '*eligible*' is 'fit to be chosen or selected'; it does not mean 'entitled'. As far as the letters were concerned, nothing had been finalized at that stage and the appellants could not be said to have committed themselves. Thus, the two letters could not amount to evidence of an implied request by the appellants to the respondent to forebear to sue them. We found therefore that the appellants had not impliedly requested the respondent to forebear to sue them, and it followed that there was no consideration in the form of a forbearance to sue on the part of the respondent.

Lastly, we considered briefly the third possible form of consideration that it was suggested might be present in this case. Reliance was placed on the judgment of the learned trial judge by the respondent in contending that the very act of his accepting the termination of his employment by the respondent in the expectation of receiving the enhanced benefits was itself valid consideration. However, as counsel for the appellants rightfully pointed out, the mere fact of a reliance by the respondent would not amount to valid consideration. It is trite law that promissory estoppel can only be used as a shield and not as a sword to enforce any rights. Further, there was no evidence of any reliance on the part of the respondent. Considering the statement of the learned trial judge, it was likely that he found consideration in the form of a forbearance to sue. He must have reasoned that the respondent, in accepting the termination ( *when he could have contested the termination*, in the expectation of receiving the enhanced benefits had provided valid consideration. As we have indicated that there was no forbearance to sue by the respondent, we have not felt a need to examine the third possibility in greater detail.

[*638]

We found therefore that there was no consideration for the agreement to pay the enhanced benefits. Accordingly, we allowed the appeal with costs here and below and ordered that the security deposit be released to the appellants' solicitors.

Appeal allowed.