# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE. LTD., AND MEGAVISA SOLUTIONS (S) PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. | CIVIL ACTION <br> NO. 3:02 CV 1107 (AVC) <br><br><br> October 12, 2005 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER AGAINST PRODUCING ANIL MITTAL FOR DEPOSITION

Plaintiffs MM Global Services, Inc. ("MMGS"), MM Global Services Pte. Ltd. ("MMGS-S"), and MegaVisa Solutions (S) Pte. Ltd. ("MVS") (collectively, "plaintiffs") submit this memorandum of law in support of their motion for an Order relieving them from producing Anil Mittal for deposition pursuant to a Notice of Deposition served by defendants on August 31, 2005 (the "Notice"). A protective order is sought to prevent the needless harassment of Mr. Mittal as well as the undue burden and expense of producing him for deposition.

Mr. Mittal, a full-time resident of Mumbai, India, lacks any unique, relevant personal knowledge; whatever knowledge he may have about the matters on which defendants say they wish to question him can readily be obtained through other means. Any benefit that defendants claim they may derive from taking his deposition is far outweighed by the harassment, burden and expense that would be incurred. The Court should therefore grant the instant Motion for Protective Order and vacate the Notice.

LITDOCS/617821.1

## I. RELEVANT FACTS

**A. Defendants' Notice and Plaintiffs' Objections Thereto.**

1. Defendants served the Notice on August 31, 2005, purporting to call for the production of Anil Mittal, under Fed. R. Civ. P. 30, for deposition on October 4, 2005, in Hartford, Connecticut. Declaration of Alicia L. Downey ("Downey Decl.") Ex. A.

2. On September 9, 2005, plaintiffs notified defendants' counsel of their multiple objections to the Notice and, in light of those objections, requested an offer of proof concerning the justification for pursuing Mr. Mittal's deposition. Downey Decl. Ex. B.

3. When counsel met and conferred by telephone on September 22, 2005, to discuss, among other things, plaintiffs' objections to producing Mr. Mittal, defendants' counsel stated they would take the objections under advisement. Downey Decl. ¶ 7. In a follow-up meet and confer call on September 30, 2005, defendants' counsel stated that they had decided not to withdraw the Notice, and would agree only to reschedule the date of the deposition and to accommodate Mr. Mittal's inability to travel overseas. *Id.* Plaintiffs reiterated their request for an offer of proof and were told, in the call, that defendants' desire to take the deposition was based on evidence that Anil Mittal was involved in the operations of MMGS-S for approximately six months in 1993 and, further, that he sat on the Mittal Family Finance Committee. *Id.* After being informed that this proffer did not justify the disruption and expense of taking Mr. Mittal's deposition overseas, defendants' counsel agreed to put their offer of proof into writing, and further stated that it would be "more expansive" than the disclosures made in the call. *Id.*

4. According to defendants' written proffer, they should be permitted to take Anil Mittal's deposition because of his short-lived experience with MMGS-S in 1993, his position as a director of the company, and his membership on the Mittal Family Finance Committee which, according to defendants' understanding of the evidence, denied a request made by plaintiffs' principal, Ajay Mittal, for credit. *See* Downey Decl. Ex. C. Defendants' proffer also notes that Anil Mittal signed certain annual reports produced to defendants in response to their document

10/12/2005 14:55 FAX 860 525 9380          WIGGIN & DANA                    ☐ 007

requests. *Id.* Nothing in the proffer indicates why Mr. Mittal's testimony about the matters asserted to be within his knowledge is necessary.

**B.   Anil Mittal's Lack of Relevant Knowledge.**

5.  Anil Mittal is not an officer or employee of any of the plaintiffs or their agent, Megavisa Marketing Solutions ("MVMS"). Declaration of Anil Mittal ("Anil Mittal Decl."), ¶ 3. He is a resident of Mumbai, India, occupied full-time with the management of a real estate business that has no connection to plaintiffs. *Id.* ¶ 1. His only link to plaintiffs is in his capacity as a non-executive member of the board of directors of MMGS-S, which has been substantially inactive since 2000. *Id.* ¶ 5.

6.  Mr. Mittal has no specific recollection of his experience in 1993 in MMGS-S's offices. *Id.* ¶ 6. All he can recall is that he held the position of non-executive director and his role was limited to acting under the instructions of his brother Ajay S. Mittal. *Id.* He possesses no unique personal knowledge about plaintiffs' businesses that is not also known to Ajay Mittal. *Id.* ¶¶ 7-8.

7.  Although Anil Mittal was a member of the Mittal Family Finance Committee, he did not participate in any discussions or decisions relating to MVS's credit situation with Dow. *Id.* ¶ 7.

8.  In their Initial Disclosures under Rule 26(a)(1) and Answers to Interrogatories seeking the identity of persons with relevant knowledge of pertinent facts, neither plaintiffs nor defendants ever identified Anil Mittal. Downey Decl. ¶ 8.

9.  Plaintiffs stipulate that they have no intention of calling Anil Mittal as a witness to testify either in support of a motion for summary judgment or at trial.

10. Mr. Mittal has a chronic health condition that requires him to follow very strict dietary restrictions and prevents him from traveling from Mumbai, except to London two to three times per year. Anil Mittal Decl. ¶ 2. He does not travel there on business, but to see his son who is studying there and to consult doctors. *Id.* It would cause him considerable personal hardship and inconvenience to travel from Mumbai to prepare for and attend a deposition. *Id.*

11. Defendants have agreed to conduct Mr. Mittal's deposition overseas, but plaintiffs would still have to incur the expense of sending their counsel overseas in order to prepare for and defend Mr. Mittal's deposition. That estimated expense includes at least two full days of time merely for traveling back and forth, and two full days for the preparation and defense of the deposition. Depending on the ultimate location of the deposition, plaintiffs' expenses could easily amount to $50,000. Downey Decl. ¶ 9.

C. **Defendants Have Already Scheduled Depositions on the Same Issues.**

12. On July 27, 2005, defendants began the first day of depositions pursuant to the four Rule 30(b)(6) notices they served on March 24, 2005.[1] As the Court is already aware, the 30(b)(6) Notices specify a wide range of subject matters for deposition, including but not limited to myriad aspects of MMGS-S's business operations throughout the relevant time period and plaintiffs' creditworthiness. See, e.g., Downey Decl. Ex. D, Ex. E. Plaintiffs designated Ajay Mittal, plaintiffs' chairman and principal officer, to testify about these matters, and he has already begun to do so in the course of two full days of examination, to be continued for another three days on December 14, 15, and 16, 2005.

13. Defendants have served additional Notices of Deposition for depositions of three individuals formerly associated with plaintiffs: Navin Chandra, Riju Bowry, and Sanjiv Sanghvi. These depositions are expected to take place in October and November, or as otherwise agreed by the parties.

---

[1] All told, in addition to four Notices of Deposition Pursuant to Rule 30(b)(6), defendants have served at least four requests for production of documents and sets of interrogatories, including, most recently, a set of "supplemental" interrogatories and document requests served August 30, 2005. In the past three years since this case began, plaintiffs have supplemented their interrogatory answers on multiple occasions and produced to defendants over 100,000 pages of business records.

10/12/2005 14:56 FAX 860 525 9380         WIGGIN & DANA                    ☏009

## II.    ARGUMENT

### A.    The Notice Should Be Vacated.

Pursuant to the Federal Rules of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter . . . that is relevant to the claim or defense of any party . . . ." This rule may be limited by a Court, however, where "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).

The general rule of course is that a claimed lack of knowledge alone does not provide sufficient grounds for a protective order precluding the deposition of corporate officials, including the highest-ranking executives. *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 122 (D. Conn. 1974); *Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001). However, the general rule has exceptions to prevent harassment and the needless waste of time and expense: "Unless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a redundant deposition of a highly-placed executive' while allowing other witnesses with the same knowledge to be questioned." *Six West Retail*, 203 F.R.D. at 102 (citations omitted).

Where a noticing party appears to be more interested in causing needless inconvenience and expense than in pursuing legitimate discovery, courts have not hesitated to grant appropriate relief. *See Thomas v. International Bus. Mach.*, 48 F.3d 478, 483 (10th Cir. 1995) (affirming protective order where plaintiff sought deposition of management employee with no personal knowledge of plaintiff or her cause of action); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (affirming protective order where senior officer lacked personal

knowledge of facts pertinent to plaintiffs' action); *Harris v. Computer Associates Int'l, Inc.*, 204 F.R.D. 44, 46-47 (E.D.N.Y. 2001) (granting protective order precluding untimely deposition on further grounds that defendant's chairman and chief executive office had only second-hand knowledge of the facts giving rise to the action and lacked any unique personal knowledge of relevant facts); *Community Fed. Sav. & Loan v. Fed. Home Loan Bank*, 96 F.R.D. 619 (D.D.C. 1983) (granting protective order where plaintiff failed to demonstrate witnesses had unique personal knowledge and information unobtainable through interrogatories, designated witness, or other depositions taken).

The cases in which corporate officers and senior managers have been compelled to testify despite their asserted lack of knowledge and their busy calendars are inapplicable here. As set forth above, but for a six-month stint in 1993 at the direction of Ajay Mittal, Anil Mittal never was or acted as an officer or senior manager of any of the plaintiffs or their agent, and he has not been involved, directly or indirectly, in the management of business conducted by any of the plaintiffs since that time.

Defendants have not identified any good reason to take the deposition of Anil Mittal. Their proffer is wholly conclusory and fails to explain how his *de minimis* involvement bears any relevance to the issues in this case. As noted above, the parties completely omitted Anil Mittal from their Initial Disclosures Pursuant to Rule 26(a) and from their well-populated lists of persons likely to have relevant knowledge served in response to multiple sets of interrogatories over the past three years. Defendants have been in possession of copies of the annual reports that Anil Mittal signed since they were produced long ago. In all that time, they apparently saw no need to supplement their disclosures by adding Mr. Mittal's name.[2] The Notice was intended to, and it will, achieve nothing more than harassment and intimidation of plaintiffs' principal Ajay Mittal, by imposing on his family members overseas.

---

[2] Certainly, being a signatory to a corporate party's annual reports is not, in and of itself, a reason to take a corporate director's deposition.

In all events, Anil Mittal's fleeting experience with MMGS-S more than a decade ago, besides being a distant memory, was entirely under the direction of his brother Ajay Mittal. Whatever testimony he might offer about the business in the six-month period he was present in office will therefore be duplicative of Ajay Mittal's knowledge. Furthermore, setting aside the fact that the Mittal family's financial affairs are irrelevant to this case, Anil Mittal was not involved in denying any request for credit made on behalf of plaintiffs. Whatever defendants are fishing for in this regard, they will learn nothing from Anil Mittal.

At the very least, it is premature for defendants to press for the production of Anil Mittal, where there has been no showing that his testimony will not be duplicative, or that other, less expensive and burdensome avenues of discovery, including but not limited to the still-ongoing deposition of his brother Ajay Mittal, will not provide the information they seek. *See Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991) (granting motion for a protective order, where the court found that "deposing [the executive] at this time would be oppressive, inconvenient, and burdensome inasmuch as it has not been established that the information necessary cannot be had from [other employees], interrogatories, or the corporate deposition. . . . These avenues have not yet been exhausted or even pursued. It has also not been demonstrated that [the executive] has any superior or unique personal knowledge . . ."). *See also, e.g., M.A. Porazzi Co. v. S.S. Mormaclark*, 16 F.R.D. 383, 383-84 (S.D.N.Y. 1951) (vacating notice of deposition of apparently redundant deposition of corporate vice president without prejudice to renewal on showing that claims agent's testimony was deficient). Instead of suggesting this more sensible approach, however, defendants, bent on gaining as much leverage over plaintiffs and their principal officer as they can, insist on pursuing a harassing, expensive, and totally unnecessary deposition.

### III.   CONCLUSION

The burdens imposed by compliance with the Notice will include not only the needless harassment of Anil Mittal, but also the significant expense associated with traveling overseas, and preparing for and defending a pointless deposition. These burdens far outweigh any

legitimate discovery benefit that defendants can reasonably expect to obtain. For all the reasons set forth herein, therefore, the Court should issue a protective order vacating the Notice entirely, or, in the alternative, vacating the Notice without prejudice to renewal upon a sufficient showing of need by defendants, after they have completed their other depositions of plaintiffs and any current or former employees of plaintiffs.

        MM Global Services, Inc., MM Global Services Pte. Ltd., and MegaVisa Solutions (S) Pte. Ltd.

By /s/ Richard S Taffet
Richard S. Taffet
Alicia L. Downey
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689
Tel. (212) 705-7000
Fax. (212) 752-5378

and

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent via telecopier and first-class mail on this 12th of October 2005 to the following counsel of record:

Craig A. Raabe, Esq.
ROBINSON & COLE LLP
280 Trumbell Street
Hartford, CT 06103-3597

Andrew S. Marovitz
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606

Scott C. Solberg, Esq.
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

Christopher J. Kelly, Esq.
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

*[signature]*