# EXHIBIT 5

<u>TO BE FILED UNDER SEAL</u>
**Contains Material Designated by Plaintiffs as "Coun**s*el Only Confidential Material"*
**Pursuant to the December 18, 2002 Stipulated Protective Order**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MM GLOBAL SERVICES, INC., MM GLOBAL            :
SERVICES PTE. LTD. & MEGA VISA                 :
SOLUTIONS (S) PTE. LTD.,                        :
                                               :
**Plaintiffs**                                 :
                                               :       Civil No. 3:02 CV 1107 (AVC)
v.                                             :
THE DOW CHEMICAL COMPANY, UNION                :
CARBIDE CORPORATION & UNION CARBIDE            :
ASIA PACIFIC, INC.,                            :
                                               :
                                               :
**Defendants.**                                :       November 2, 2005

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR COMBINED
### MOTION TO COMPEL AND
### <u>OPPOSITION TO MOTION FOR PROTECTIVE ORDER</u>

From the initiation of this action, Defendants have argued that Plaintiffs' dispute is

centered in Asia, that a significant number of Plaintiffs' witnesses are located in Asia, that there

would be difficulty in obtaining their testimony in the United States, and consequently that this

action should be venued there. *See* Defs.' Mot. Dismiss for *Forum Non Conveniens* & Mem. in

Support at 14-15 (Sept. 9, 2002) (Ex. 1). In successfully opposing this argument, Plaintiffs

responded, and this Court agreed, that the availability of Plaintiffs' foreign witnesses would not

be a factor because they "routinely travel to the United States for general business purposes and

[would] be available to testify in Hartford." Order Denying Defs.' Mot. Dismiss at 20-21 (Apr.

17, 2003) (Ex. 2). As this litigation has progressed, Plaintiffs have persuaded the Court to compel Defendants' Rule 30(b)(6) witnesses from around the world to travel to Hartford for depositions, and Plaintiffs recently have gone so far as to file a motion to compel *non-party* foreign witnesses to travel to the United States for depositions. Pls. Mot. Compel Produc. Witnesses & Mem. in Support (Ex. 3). In short, after they persuaded this Court to deny a *forum non conveniens* motion, in part because the relevant witnesses were in the United States, Plaintiffs repeatedly have pushed this Court to order the production of foreign witnesses for depositions in the United States.

Now, the situation is reversed, and Plaintiffs seek to avoid the water they have boiled by asking this Court to issue a protective order blocking the production of Anil Mittal. On August 31, 2005, Defendants served upon Plaintiffs a Notice of Deposition of Anil Mittal, who possesses significant knowledge about the dispute at issue. Ex. 4. First, Ajay Mittal, the chairman of MegaVisa Marketing Solutions Limited and owner of the three MegaVisa Plaintiffs in this litigation, testified that his brother Anil Mittal oversaw the operations of Plaintiff Mega Visa Solutions (S) Pte. Ltd. ("Mega Visa Singapore") in 1993. Mittal Dep. 54 (July 27, 2005) (Ex. 5). Anil Mittal also admits that he currently serves as a Director on the Board of Mega Visa Singapore. Anil Mittal Decl. ¶ 5. Second, Ajay Mittal also testified that Anil was a member of The Mittal Group Finance Committee that denied a request for credit from Ajay Mittal, a member of the family and the owner of companies in which the Mittal Group had a sizeable

financial stake.[1]  Mittal Dep.153-60 (July 28, 2005) (Ex. 6).  Third, as a director of Mega Visa

Singapore, Anil Mittal may have knowledge of the reasons for the recent assignment of

Plaintiffs' claim to "Advent Manage Limited," an entity with a Singapore address.  *See* Mot. for

Substitution (Oct. 7, 2005) (Ex. 7).  Despite Anil Mittal's significant role in several aspects of

Plaintiffs' action, despite his role as a party deponent, and despite his frequent travels from

Mumbai to London—he admits that he makes the 9-hour flight every 4-6 months—Plaintiffs

seek to avoid the production of Anil Mittal because, in their view, Ajay Mittal is just as good a

witness and can testify about the same information.

Plaintiffs' argument lacks merit and is at odds with the Federal Rules of Civil Procedure,

this Court's rulings, and Plaintiffs' previous positions.  Plaintiffs brought this action, and while

Defendants believe it lacks merit, Defendants must have the opportunity to defend against it

consistent with the Federal Rules of Civil Procedure.  Those Rules do not afford Plaintiffs veto

power over which witnesses can testify, particularly when witnesses, such as Anil Mittal, have

knowledge on an issue that the Plaintiffs put into play—their creditworthiness—and that is

relevant under the discovery rules guiding all federal civil litigation.[2]  Moreover, there is a

---

[1]     Plaintiffs designated the relevant portions of their Rule 30(b)(6) witness's testimony, taken on July 28, 2005, as "Counsel Only Confidential Material."  Mittal Dep. 155-62 (Ex. 6). While Defendants do not agree that this material has been properly designated, they have decided not to challenge that designation now.  Accordingly, we are filing these motion papers under seal, consistent with the terms of the Stipulated Protective Order (signed on Dec. 18, 2002).

[2]     Anil Mittal's knowledge of a variety of issues, including some that Plaintiffs have raised, is what distinguishes his testimony from that demanded of Andrew Liveris, the President and Chief Executive Officer of Defendant The Dow Chemical Company.  Unlike Mr. Mittal, Mr. Liveris had no involvement in any relationship between Plaintiffs and Defendants, nor did he

striking inconsistency between Plaintiffs' desire to compel Defendants to produce *non-party* foreign witnesses, such as Fox, Muthukrishnan, Wildi, and Mitra, for deposition in the United States, and their refusal to make available a *party* deponent who was directly involved with several material aspects of this dispute. It is no less contradictory for Plaintiffs to base their motion for a protective order on the inconvenience of travel for their witness after Plaintiffs convinced this Court that inconvenience of the witnesses was not a justification for dismissal on *forum non conveniens* grounds, which would have permitted the case to proceed in locations more convenient for witnesses like Mr. Anil Mittal. For the reasons below, Plaintiffs' motion for a protective order should be denied and Defendants' motion to compel Anil Mittal's deposition should be granted.

## ARGUMENT

**I.     Under The Discovery Rules, Plaintiffs Should Be Compelled To Produce Anil Mittal Because They Have Failed To Shoulder Their Burden Of Proving That Good Cause Exists For A Protective Order.**

The application of the Federal Rules of Civil Procedure for discovery of relevant materials, motions for protective orders, and motions to compel strongly demonstrates that Anil Mittal must be produced for his deposition. The scope of the federal discovery rules is well-established, as Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain

---

have any communications or contact with Plaintiffs in regard to the matters identified in the Complaint. Moreover, Mr. Liveris had no involvement in or personal knowledge of any discussion or decision regarding any price Plaintiffs should charge customers for the sale of Products or any price Plaintiffs should pay to any Defendant or affiliate for Products. *See* The Dow Chemical Company's Mem. in Response to Pls.' Mot. Compel and in Support of Mot. for Prot. Or. Precluding Deposition of Andrew N. Liveris (filed Nov. 1, 2005) (includes Declaration from Mr. Liveris).

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The "deposition-discovery rules are to be accorded a broad and liberal treatment," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), and "[d]iscovery is normally allowed into any matter that bears upon the issues or reasonably could lead to relevant information." *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 167 (D. Conn. 2005) (internal quotation marks omitted).

In accordance with Rule 26(b)(1), Rule 30(a)(1), and Rule 30(b), Defendants issued a Notice of Deposition for Anil Mittal on August 31, 2005. *See* Ex. 4. Plaintiffs do not claim any deficiency in the Notice itself, but rather seek a protective order relieving them from their duty to produce Anil Mittal for deposition. They face an uphill battle: "In light of the broad scope of pre-trial discovery, the Second Circuit has held that 'an order to vacate a notice of taking [a deposition] is generally regarded as both unusual and unfavorable.'" *Gen. Star Indem. Co. v. Platinum Indem., Ltd.*, 210 F.R.D. 80, 82 (S.D.N.Y. 2002) (alteration in original), quoting <u>*Inv. Props. Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2d Cir. 1972)</u>. "[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition," *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997), and Plaintiffs have not come close to meeting that challenge.

Rule 26(c) authorizes the issuance of protective orders, but Plaintiffs have failed to meet their burden of showing that "good cause" exists to excuse the production of Anil Mittal. By contending that Defendants have failed to identify "any good reason to take the deposition of Anil Mittal" (Mem. at 6), Plaintiffs improperly attempt to reverse the burden of persuasion: "the

rules generally do not place any initial burden on parties to justify their deposition and discovery requests." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003). Rather, "the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981). "To establish good cause under Rule 26(c), courts require a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 26 (D. Conn. 2003). "Good cause" is supported neither by "a claimed lack of knowledge," *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 122 (D. Conn. 1974), nor by a "showing that discovery may involve inconvenience and expense." 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.104[1], at 26-252 (3d ed. 2005). Instead, the party seeking the protective order must show that the discovery sought fits within the limitations outlined in Rule 26(b)(2). Even then, "Rule 26 * * * is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983).

If a party resists discovery, as Plaintiffs have done, Defendants may seek an order compelling discovery pursuant to Rule 37, *In re PE Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 7569, at *21-22 (D. Conn. Apr. 8, 2005), and are entitled to such an order so long as the discovery sought is relevant, does not fall within the limitations of Rule 26(b)(2), and is requested in good faith. *See* 7 MOORE, *supra*, § 37.22[2][b], [d], at 37-38.1 to 37-38.3, 37-39 to

37-40 (3d ed. 2005).

Plaintiffs primarily base their argument on "Anil Mittal's Lack of Relevant Knowledge" (Mem.[3] at 3) and the inconvenience and expense of his attending a deposition (Mem. at 3-4). As demonstrated above, these are insufficient grounds to justify a protective order and by themselves are precisely the sort of "stereotyped and conclusory" claims that fail to constitute a concrete demonstration of fact. Plaintiffs' additional vague and unsupported arguments regarding harassment, duplicativeness, and comparative inconveniences similarly fail to satisfy their burden of overcoming the presumption in favor of discovery. In essence, Plaintiffs seek to avoid producing Anil Mittal simply because they do not want him to testify.

**II.     Anil Mittal's Testimony Is Relevant To Multiple Aspects Of Plaintiffs' Action, Is Not Duplicative, And His Production Is No Less A Burden Than That Plaintiffs Already Have Placed Upon Defendants' Foreign Witnesses.**

**A.     Anil Mittal's Deposition Is Relevant To This Litigation.**

In spite of Plaintiffs' blanket contention that Anil Mittal lacks any relevant knowledge— an argument that in any event fails to justify the issuance of a protective order—discovery taken thus far has revealed that Anil Mittal has relevant personal knowledge.[4] First, Anil Mittal "was overlooking the entire operations" at Mega Visa Singapore in 1993, Mittal Dep. 54 (Jul. 27, 2005) (Ex. 5), and continues to serve on the Board of Directors of Mega Visa Singapore. Anil

---

[3]     "Mem." refers to Plaintiffs' Memorandum in support of its motion for a protective order.

[4]     Plaintiffs' claim that the parties' initial Rule 26(a) disclosures failed to identify Anil Mittal is a red herring. Mem. at 6. *Plaintiffs* did not identify him as a potential witness until Ajay Mittal's deposition in July where it became apparent that Anil Mittal had run Mega Visa Singapore and served on the Mittal Family Finance Committee. It is more than a little odd to place on Defendants the onus of identifying Plaintiffs' own directors.

Mittal Decl. ¶ 5. By virtue of these two positions, Anil Mittal will have knowledge of Mega

Visa Singapore's operations, finances, and structure. Mittal Dep. 54 (July 27, 2005) (Ex. 5)

(testifying that Anil Mittal was aware of the functioning of Mega Visa Singapore). His

knowledge continues well beyond 1993, as Anil Mittal: (1) signed an annual report for Mega

Visa Singapore containing financial information about the company in 2000, M58853-66

(Annual Report, Mar. 31, 2000) (Ex. 8); (2) signed a resolution passed by the Board of Directors

in 1997, M59685 (Resolution of Nov. 14, 1997) (Ex. 9); and (3) signed minutes from a meeting

of the Board of Directors that took place in 2002, two years after Mega Visa Singapore allegedly

became inoperative, M59712 (Minutes of Board Meeting, Apr. 30, 2002) (Ex. 10). As a result of

this pervasive involvement with a Plaintiff in this lawsuit, Anil Mittal may also have personal

knowledge of whether Mega Visa Singapore is no longer a functioning concern and the reasons

for its alleged inoperation. Indeed, Anil Mittal's alleged justification for his lack of

knowledge—"My only present link to plaintiffs is in my capacity as a non-executive member of

the board of directors of [Mega Visa Singapore], *which I am told has been substantially inactive*

*since 2000*," Anil Mittal Decl. ¶ 5 (emphasis added)—is more alarming than soothing because it

raises the question of why a director would need to be told the status of a company whose board

minutes he signed in 2002. The operations and viability of Mega Visa Singapore are relevant to

Plaintiffs' tort and contract claims and the defenses to those claims, and Anil Mittal's knowledge

about Mega Visa Singapore is thus probative of those claims and defenses.

Second, Anil Mittal may have knowledge about the events surrounding Ajay Mittal's

request that the Finance Committee of the Mittal Family Group extend credit to the Plaintiffs to

help shore up those businesses. In his deposition, Ajay Mittal revealed that he approached his
own family's Finance Committee (on which Anil Mittal sits, Anil Mittal Decl. ¶ 7) about
satisfying Mega Visa Singapore's need for working capital. Mittal Dep. 153-54 (July 28, 2005)
(Ex. 6). Mr. Mittal testified: "I was told that it is not viable to extend more money to Mega Visa
group since there were other commitments that the family had for other businesses." *Id.* at 161.
Because of these "other opportunities," the Finance Committee told Mr. Mittal to "go get credit
from the bank." *Id.* at 160. The Finance Committee's decision not to extend credit to a member
of the Mittal family and to companies in which the Mittal Group had a substantial stake is highly
relevant to Plaintiffs' claims concerning Defendants' alteration of its credit arrangement with
Mega Visa Singapore. Even though he claims that he "did not participate in any discussions or
decisions relating to [Mega Visa Singapore's] credit situation," Anil Mittal Decl. ¶ 7, he may still
have knowledge of what occurred and who participated in the discussions and decisions relating
to Mega Visa Singapore's request for credit, as well as the "other commitments" that the Finance
Committee had for the relatively small sum that its own family member, Ajay Mittal, sought to
borrow.

   Third, Anil Mittal, as a director of Mega Visa Singapore, may have knowledge relating to
Plaintiffs' recent alleged assignment of their claim to an entity called "Advent Manage Limited."
On October 7, 2005, Plaintiffs filed a "Motion for Substitution as Plaintiff." *See* Motion for
Substitution (Ex. 7). The Motion stated that the Plaintiffs "are no longer actively engaged in
business," and that Plaintiffs had assigned (on August 30, 2005) certain assets, including this
cause of action, to Advent, which Plaintiffs claimed should be recognized as the plaintiff party in

interest. *Id.* As an individual who has attended one of the Plaintiff's board meetings and signed

minutes from those meetings as late as 2002, Anil Mittal may be able to provide insight into a

variety of questions raised by this Motion, including the reasons why Mega Visa Singapore is no

longer actively engaged in business, the explanation for Mega Visa Singapore's assignment of its

claim, and background on "Advent Manage Limited."

 Anil Mittal has been identified as an individual with unique knowledge that may be

relevant to multiple aspects of this litigation. Beyond the three areas identified above, there may

be additional issues about which Anil Mittal can testify. Knowledge about any one of these

areas justifies his production, as his deposition "reasonably could lead to relevant information,"

*Ruran*, 226 F.R.D. at 167, and his combined knowledge makes his relevance inescapable.

  **B.**  **Anil Mittal's Deposition Is Not Unnecessarily Duplicative.**

 Plaintiffs offer no support for their contention that Anil Mittal's deposition would be

"unreasonably" redundant. Plaintiffs suggest that Anil Mittal's deposition will overlap with the

currently noticed depositions of Navin Chandra, Riju Bowry, and Sanjiv Sanghvi. Mem. at 3-4.

Plaintiffs do not bother to explain how these depositions, whenever they may take place,[5] will

overlap with Anil Mittal's deposition, except to say that Chandra, Bowry, and Sanghvi are

"individuals formerly associated with plaintiffs." Mem. at 4. Anil Mittal is the only individual

noticed who sits on the Board of Directors of Mega Visa Singapore and also sits on the Mittal

Group Finance Committee. Furthermore, even if portions of their testimony did coincide, Rule

---

[5] Plaintiffs incorrectly state that these depositions will take place in October or November.
Defendants noticed these depositions for those months, but Plaintiffs advised Defendants that
Sanghvi and Bowry would not be available until January 12 and 19, respectively.

26(b)(2) is not an absolute prohibition on depositional overlap; the rule only places limitations on discovery that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2). Even if Anil Mittal did discuss some issues covered by the other individuals already noticed for deposition—which Plaintiffs have not demonstrated—he approaches issues concerning Mega Visa Singapore, a plaintiff in this action, and the Mittal Finance Committee from a unique vantage point.

Plaintiffs' Motion assumes that Plaintiffs have the right to decide who they can produce in response to a legitimate Notice of Deposition. Plaintiffs suggest that because Ajay Mittal had been designated as a Rule 30(b)(6) witness, Defendants are unable to seek the deposition of another individual with relevant knowledge. Rule 30 mandates the exact opposite. While an organization named in a party's notice of deposition may choose an individual to testify on its behalf pursuant to Rule 30(b)(c), that "subdivision * * * does not preclude taking a deposition by any other procedure authorized in these rules." Fed. R. Civ. P. 30(b)(6). Rule 30(b)(6) is not a screen behind which Plaintiffs can avoid the general rule that a party can take the deposition of "any person." Fed. R. Civ. P. 30(b)(1). Indeed, as an example of the non-prohibitive nature of Rule 30(b)(6), its drafters explained that "if the examining party believes that certain officials who have not testified pursuant to this subdivision have added information, he may depose them." Fed. R. Civ. P. 30(b)(6), 1970 Advisory Comm. Notes. It is simply incorrect to suggest that the presentation of a Rule 30(b)(6) witness excuses Plaintiffs from producing other persons who have been properly noticed under Rule 30, particularly when those individuals have additional information beyond that of the Rule 30(b)(6) witness.

**C.     The Claimed Burden On Anil Mittal Does Not Outweigh Its Benefit And Is Equivalent To The Burden Placed On Defendants' Witnesses.**

Plaintiffs' arguments regarding the burden on Anil Mittal have a familiar ring: they are the same arguments resisted by the Plaintiffs in earlier phases of this litigation. Plaintiffs have battled strenuously to keep this case in Connecticut and to force Defendants' witnesses to travel long distances to appear for depositions there. Plaintiffs should not be excused from their own successes.

Rule 26(b)(2)(iii) envisions a balancing test between the benefit of the deposition and its burden or expense. Yet, "[a] burden or expense is not 'undue' simply because it is burdensome or expensive. In deciding whether to issue the order, a court should compare the hardship to the party against whom discovery is sought with the probative value of the information to the other party." *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 26 (D. Conn. 2003). As explained above, Anil Mittal's knowledge regarding key aspects of this litigation is highly probative. And it is not offset by any "undue burden." Instead, the burden on Anil Mittal asserted by Plaintiffs is precisely the burden that has been minimized by Plaintiffs in the past. Plaintiffs argued in their papers opposing dismissal on *forum non conviens* grounds, and this Court recognized, that the availability-of-witnesses private-interest factor did not favor transfer because Plaintiffs' witnesses would be available to testify in Hartford. *See* Pls.' Opp. to *Forum Non Conveniens* Mot. at 31 & n.40 (Nov. 9, 2002) (Ex. 11); Order Denying Defs.' Mot. Dismiss at 20-21 (Apr. 17, 2003) (Ex. 2). Moreover, Plaintiffs fought vigorously to overcome Defendants' objections to any requirement that their Rule 30(b)(6) witnesses, such as Lawrence Cheung, be compelled

to come from Singapore to Hartford for a deposition.

Now, Plaintiffs face the turnabout. They claim that Anil Mittal is prevented from leaving Mumbai by a health condition. Mem. at 3; Anil Mittal Decl. ¶ 2. But he travels 2-3 times per year to London to visit his son (Mem. at 3), which is far more often than Lawrence Cheung traveled to the United States when he was compelled to attend a deposition in Hartford. Plaintiffs also correctly refer to Defendants' offer to conduct Mr. Mittal's deposition overseas (Mem. at 4) but complain that the costs of preparation and travel for the attorneys could exceed $50,000. If Plaintiffs wish, they can produce Anil Mittal in Hartford to avoid the $50,000 in costs they fear, which are minimal in comparison to the discovery costs Defendants have had to incur in producing foreign witnesses for deposition in the United States.

The burden claimed by Plaintiffs is far from undue. Instead, it is a mundane "showing that discovery may involve inconvenience and expense," 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.104[1], at 26-252 (3d ed. 2005), which fails to meet Plaintiffs' hefty burden of justifying the issuance of a protective order. Anil Mittal may possess knowledge about multiple areas of this litigation, and his probative value as a witness is not outweighed by any burden.

## CONCLUSION

Defendants did not bring this action, yet Plaintiffs now seek to determine how they can defend it. Anil Mittal has been identified as possessing relevant knowledge on a number of topics probative of the claims and defenses involved in this litigation. Discovery of that knowledge is permitted by Rule 26, the notice seeking his deposition was proper under Rule 30,

and Plaintiffs have failed to show any justification for the issuance of a protective order.

Nevertheless, Plaintiffs oppose his production on inconvenience grounds. They refuse to make

their overseas witnesses available (or unilaterally delay such depositions for 3 months on

"inconvenience" grounds as they did with Ajay Mittal's most recent deposition session, citing

other business commitments), yet they consistently demand that Defendants bring all of their

overseas witnesses here. This strategy of discovery gamesmanship must cease.

Defendants respectfully ask this Court to deny Plaintiffs' Motion for Protective Order and

grant Defendants' Motion to Compel the production of Anil Mittal.

Respectfully submitted,

Craig A. Raabe

Craig A. Raabe (ct 04116)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8304

Andrew S. Marovitz (ct 25409)
Dana S. Douglas (ct 25412)
Jeffrey A. Berger
MAYER, BROWN, ROWE & MAW LLP
71 S. Wacker Drive
Chicago, IL 60606-3441
(312) 782-0600

Christopher J. Kelly (ct 25410)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street
Washington, DC 20006-1157
(202) 263-3000

*Attorneys for Defendants The Dow Chemical Company, Union Carbide Corporation & Union
Carbide Asia Pacific, Inc.*

-14-

## CERTIFICATE OF SERVICE

I, Craig A. Raabe, do hereby certify that I caused a true and correct copy of Defendants'

Combined Motion to Compel and Opposition to Plaintiffs' Motion for Protective Order Against

Producing Anil Mittal For Deposition, and Memorandum in Support, to be served this 2nd day of

November, 2005 via courier on the following:

Robert M. Langer
WIGGIN & DANA LLP
One City Place
185 Asylum Street
Hartford, CT 06103-3402

and via overnight delivery on the following:

Richard S. Taffet
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689

Nathan P. Eimer
Scott C. Solberg
Eimer Stahl Klevorn & Solberg LLP
224 S. Michigan Avenue, Suite 1100
Chicago, IL 60604

Alicia L. Downey
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726

Suzanne Wachsstock, Esq.
Wiggin & Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

Craig A. Raabe