UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., MEGAVISA SOLUTIONS (S) PTE, LTD., AND ADVENT MANAGE LIMITED,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD.,<br><br>        Defendants.<br><br>UNION CARBIDE CUSTOMER SERVICES PTE. LTD.,<br><br>        Plaintiff-in-Counterclaim,<br><br>    v.<br><br>MM GLOBAL SERVICES PTE. LTD. AND AJAY MITTAL,<br><br>        Defendants-in-Counterclaim | CIVIL ACTION<br>NO. 3-02 CV 1107 (AVC)<br><br>February 16, 2007 |

**REPLY IN FURTHER SUPPORT OF MM GLOBAL SERVICES
PTE. LTD. AND AJAY MITTAL'S JOINT MOTION TO DISMISS THE
COUNTERCLAIMS OF UNION CARBIDE CUSTOMER SERVICES PTE. LTD.
PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6) AND 9(b)**

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT 06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY 10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

*Attorneys for Defendants-in-Counterclaim MM Global Services Pte. Ltd. and Ajay Mittal*

LITDOCS/669701.1

I.    PRELIMINARY STATEMENT

Plaintiff MM Global Services Pte. Ltd. ("Global Singapore") and Ajay Mittal (collectively, the "Counterclaim Defendants") hereby reply to the submission by Union Carbide Customer Services Pte. Ltd. ("UCCS") opposing the Counterclaim Defendants' Joint Motion to Dismiss.

UCCS's opposition characterizes the arguments in support of dismissal as nothing more than "two simple premises: (1) UCCS did not suffer injury; and (2) UCCS was not a party to the agreements." UCCS Brief at 2, 6. In actuality, the Counterclaim Defendants' motion to dismiss is premised on at least twelve different legal arguments supported by citations to over eighty legal authorities. UCCS says that "the volumes of facts (improperly) introduced by Defendants do nothing to support their position." *Id.* at 2. In actuality, the record evidence submitted by Counterclaim Defendants is properly before the Court under both Rules 12(b)(1) and the summary judgment provisions of 12(b)(6). That evidence certainly does support—indeed, it mandates—dismissal. By reframing the issues simplistically, UCCS avoids contending with numerous, independent arguments for dismissal to which it cannot respond. Consequently, its opposition is mostly an attack on simplistic, straw man arguments that Counterclaim Defendants have not made. Whether these straw men are "unsupportable as a matter of law" is beside the point.

UCCS's opposition to dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) insists, contrary to law, that the Court accept as true allegations that have been shown, conclusively, to be false. As set forth below and in Counterclaim Defendants' initial brief, UCCS paid for neither the settlements at issue nor any expenses in defense of this case. It has suffered no harm for which the Court may order redress in the form that UCCS demands, i.e., monetary damages or recoupment against any monetary recovery by Counterclaim Defendants. Despite any allegations to the contrary, therefore, UCCS lacks standing to bring its counterclaims.

The arguments for dismissal pursuant to Rule 12(b)(6) go far beyond simply denying that UCCS was a party to the written and oral contracts alleged in the counterclaims.[1] Even accepting all of UCCS's allegations as true—and assuming arguendo that UCCS had standing to bring claims that belonged, if ever to anyone, to UCC—the counterclaims cannot survive:

- With respect to Counts I and II, UCCS's allegations and the documents incorporated by reference into its pleading do not allow a reasonable inference that UCCS itself was a party to written or oral agreements to "handle" future claims to the satisfaction of UCC or never to sue "the UCC Companies."

- Counts I, II, and III also fail because, even if UCCS had been a party to the alleged agreements, there was no agreement to sufficiently definite terms so as to create enforceable contracts either to indemnify UCCS or to release claims against it.

- The applicable Statute of Frauds bars Count II, because the alleged oral contract (i.e., to "handle" or "resolve" all future claims and not to bring suit) imposed ongoing obligations not capable of being performed within one year of its making.

- UCCS apparently concedes that its affirmative claim for promissory estoppel (Count III) does not exist under applicable (Singapore) law.

- UCCS's tort claims (Counts IV, V, and VI) are time-barred by UCCS's own admission, as well as deficient in other material respects.

- UCCS's recoupment claim (Count VII) is barred by UCCS's inability to state any cognizable claim for recovery of damages.

---

[1] UCCS expresses amazement that Global Singapore, having brought claims for breach of contract against UCCS, "suddenly" disputes UCCS's standing to bring "its own suit on the basis of the same facts." UCCS Brief at 7 n.3. This argument is disingenuous. The plaintiffs' surviving claims for breach of contract against defendants are based on the unexcused failure to fulfill certain orders placed by plaintiffs. *See MM Global Servs., Inc. v. The Dow Chemical Co.*, 283 F. Supp. 2d 689, 702 (D. Conn. 2003). UCCS's counterclaim are based on alleged breaches of totally different contracts: alleged agreements formed in 2000 to "handle" future third-party claims to UCC's satisfaction and not to sue "the UCC Companies" based on the 1999 Unfulfilled Orders.

Although UCCS argues otherwise, the Court may, under Rule 12(b)(6), choose to treat the motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6). In this case, the undisputed evidence proffered by Counterclaim Defendants eliminates any genuine issue of triable fact with respect to: (a) whether UCCS suffered any damages (the evidence proves it has not); (b) whether Counterclaim Defendants breached an alleged agreement to "handle" future claims to UCC's satisfaction (UCC and UCAP executives admit that there was no such breach); and (c) whether the UCC Companies reasonably relied on alleged promises and representations made by Counterclaim Defendants (Mr. Yimoyines's testimony and UCC business records prove any alleged reliance was unreasonable as a matter of law).

UCCS's opposition brief urges the Court to turn a blind eye toward this undisputed evidence, applicable law, and the manner in which UCCS pleaded its own claims. Taking the evidence, the law, and the allegations into proper consideration, however, the only rational conclusion is that the counterclaims are unsalvageable. The motion to dismiss should therefore be granted without further delay.[2]

## II.  LEGAL ARGUMENT

### A.  Dismissal Under Rule 12(b)(1) Is Mandated Where UCCS's Allegations of Injury Are Refuted by Undisputed Evidence.

Counterclaim Defendants seek dismissal under Rule 12(b)(1) on the ground that UCCS lacks standing and therefore the Court lacks subject matter jurisdiction. In asserting such a challenge, it is proper for Counterclaim Defendants to submit, and for the Court to consider, relevant extrinsic evidence. *See Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1107 (2d Cir. 1992). In opposition, UCCS argues that its pleading alone is sufficient to establish standing.

---

[2] As suggested in the Memorandum of Law in Opposition to Union Carbide Customer Services Pte. Ltd.'s Motion for Leave to File Amended Counterclaims, filed contemporaneously herewith on February 16, 2007, the Court should first rule on the instant Joint Motion to Dismiss UCCS's Counterclaims before considering UCCS's untimely and meritless Motion for Leave to File Amended Counterclaims. If the Court agrees that UCCS's counterclaims are barred as a matter of law, the proposed amendment would be futile.

3

UCCS Brief at 6-7. According to UCCS, the evidence before the Court as to "who 'funded' the settlement" and "who is paying for the defense of the lawsuit" is irrelevant, just as "payments from a collateral source" are irrelevant to the issue of mitigation of damages. *Id.* at 7 n.2. Both opposition arguments are wrong.

UCCS bears the burden of proving it has standing. *See Baker v. Property Investors of Conn.*, 338 F. Supp. 2d 321, 326 (D. Conn. 2004) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). In relying on allegations that are contradicted by undisputed evidence, UCCS fails to meet this burden. UCCS describes the three injuries it allegedly suffered as follows:

1. "UCCS paid US$280,000 in settlement of the Finolex action." Counterclaims ¶¶ 22, 44;

2. "UCCS was . . . forced to pay the US$1,000,000 to extinguish the Sterlite claim." *Id.* ¶¶ 30, 40, 45; and

3. " . . . the UCC Companies have been forced to pay the costs and fees associated with defending this action." *Id.* ¶¶ 46, 52, 59, 67, 75.

The evidence proves these allegations to be false as far as any such injury to UCCS is concerned. With regard to the alleged payment of the Finolex and Sterlite settlements (Items 1 and 2), UCCS does not—because it cannot—contest the evidence that, among other things:

- UCC recorded the charges for the settlements on its domestic books (Downey Decl. Ex. A, at D00543);

- John Yimoyines and Lawrence Cheung, both of whom were personally involved in negotiating the settlements, have admitted that it was UCC that paid for the settlements (*see* Counterclaim Defendants' Brief at 8-10);

- Internal company emails make it clear, contrary to UCCS's allegations, that UCC—not UCCS—"paid US$280,000 in settlement of the Finolex action" (Downey Decl. Ex. D, referring to "cash outlay from UCC");

- Cheung testified that UCCS merely "processed" the payments through its Singapore bank, an admission which is fully corroborated by the paperwork before the Court (*see* Counterclaim Defendants' Brief at 8).

The settlement payment paperwork refutes any theory that UCC's funding was in the nature of a collateral payment to an injured plaintiff. With respect to the Sterlite settlement,

4

UCC issued a $1,000,000 credit memo to UCCS on October 6, 2000. Downey Decl., Ex. A, at D00545. UCCS subsequently authorized the transfer of these funds to Global Singapore no earlier than October 10, 2000—four days after receiving UCC's $1,000,000. The paper trail shows a process by which UCC first supplied funds to UCCS, with instructions for UCCS subsequently to transfer those funds to Global Singapore. UCCS is in no way similar, therefore, to "an injured plaintiff" in a personal injury case who receives post-injury payments from collateral sources such as an insurance company.[3]

With respect to the third type of injury pleaded by UCCS, the evidence that it has paid nothing to fund the defense of this case is unchallenged. Bald allegations suggesting otherwise are entitled to no credit.

UCCS suggests that the mere fact that it has pleaded a material breach of oral and written contracts bestows standing upon it "to seek redress in accordance with law." UCCS Brief at 7, citing *Stone Forest Industries, Inc. v. U.S.*, 973 F.2d 1548, 1550 (Fed. Cir. 1992). The *Stone Forest* case on which UCCS relies concerned an appeal from a lower court's grant of summary judgment on the ground that the plaintiff was unable to prove that the defendant had materially breached the parties' contract. The case has nothing whatsoever to do with the determination of Article III standing or a motion to dismiss pursuant to Rule 12(b)(1). Even if the quotation relied on by UCCS were not so obviously taken out of context, the most that can be concluded is that parties pleading a material breach of contract are limited to seeking whatever redress is permitted by law. In this case, the law—copiously cited by the Counterclaims Defendants in their Brief at 15-16—does not permit a party to seek damages for injuries actually incurred by others. That is

---

[3] The *Savona v. General Motors Corporation* case cited by UCCS in support of this argument is inapposite. *See* 640 F. Supp. 6 (D. Conn. 1985). The *Savona* case was a product liability lawsuit in which the court held that an injured adult child could not state a cause of action under Conn. Gen. Stat. § 52-204 to recover expenses incurred by the parent, although the child could recover such expenses personally as damages. *Id.* Nothing in the *Savona* case suggests that a corporation may bring suit for recovery of payments it never made.

5

why UCCS lacks standing and why, pursuant to Rule 12(b)(1), its counterclaims must be dismissed in their entirety and with prejudice.

### B. In Opposing Dismissal Under Rule 12(b)(6), UCCS Ignores Controlling Law.

Counterclaim Defendants seek dismissal under Rule 12(b)(6) on multiple independent grounds—not just because UCCS's allegations fail to establish that it was a party to the contracts alleged under Counts I and II. As set forth below, UCCS fails to address the Counterclaim Defendants' arguments fully and in light of applicable law.

#### 1. UCCS Has Proffered Nothing That Would Permit a Finding that UCCS Was a Party to or a Third-Party Beneficiary of the Alleged Contracts.

UCCS asserts that it is "abundantly clear" that UCCS was a party to the alleged contracts at issue; after all, the specific agreements to which UCCS refers "all involved Mr. Cheung," a UCCS director. UCCS Brief at 8. On their face, Exhibits B and C to the counterclaims show that Mr. Cheung's only "involvement" was in his capacity as area director of UCAP. Absent are any allegations explaining how Cheung's "involvement" necessarily rendered UCCS a party to the alleged contracts with Counterclaim Defendants. Contrary to UCCS's protestations, these are not "factual arguments." Rather, the only reasonable inference allowed by UCCS's own pleading is that regardless of whether the alleged agreements "involved" a UCCS director, UCCS itself was not a contracting party.

UCCS is mentioned nowhere in Exhibit B to the counterclaims, which supposedly comprised the written contract that forms the basis of Count I. Nor is there any mention of UCCS in Exhibits A and C, which supposedly "memorialized" the purported oral contract that forms the basis of Count II. UCCS tries backfilling its deficient allegations by pointing to three items: a snippet of Mr. Mittal's testimony regarding his view that the UCC Companies were a "singular entity"; Global Singapore's sales contracts with UCCS; and the mechanism by which UCCS processed payment of the settlement funds it received from UCC. All three arguments miss the target.

First, if UCCS wishes the Court to credit Mr. Mittal's testimony that the UCC Companies are, for purposes of the counterclaims, a "singular entity," then logically the Court should rule that UCC's and UCAP's waiver of their counterclaims likewise waived UCCS's counterclaims.

Second, as commented, whatever contracts for the sale of products might have existed between UCCS and the Global Singapore, those contracts are distinct from the alleged contracts that form the basis of UCCS's counterclaims. The mere fact that UCCS might have been a party to some contracts with Global Singapore does not necessarily mean that it was a party to the alleged contracts at issue here.

Third, UCCS argues that it is undisputed (although this is nowhere alleged in the counterclaims) that it "directly paid" Global Singapore to resolve the Finolex and Sterlite disputes, and thus its party status is assured. The evidence submitted by the Counterclaim Defendants establishes that UCCS's role in the payment of the settlement funds to Finolex and Sterlite was limited to mechanically transferring UCC's funds to Global Singapore. UCC, not UCCS, "bore the total cost" of both settlements and did so in advance of UCCS's mechanical processing of UCC's funds. *See, e.g.,* Downey Decl. Ex. M (Yimoyines Depo. Ex. 155). UCCS was no more injured by the settlement payments than was the Singapore bank that effectuated the transfer of funds from UCCS's bank account. The bank, too, "directly paid" Global Singapore—under UCCS's logic, it, too, should be permitted to sue the Counterclaim Defendants. Such a position is facially absurd.

In the alternative, UCCS asserts it should be deemed a third-party beneficiary of the alleged contracts because the other UCC Companies have (or at least it is undisputed that at one time UCC might have had) standing to sue. This is the weakest argument of them all. The counterclaims are devoid of any allegations that UCCS is a third party beneficiary of the alleged contracts. UCCS nonetheless gamely points to its use of the collectively defined term "the UCC Companies" and its asserted "interest" in the matters at issue as bases for ruling that it has third-party beneficiary rights. UCCS Brief at 9. However, a third party seeking to enforce a contract must allege that "the contracting parties intended that the promisor should assume a direct

7

obligation to the third party." *Grigerik v. Sharpe*, 247 Conn. 293, 315 (1998) (citation omitted); *see also RWP Consol., L.P. v. Salvatore*, 460 F. Supp. 2d 351, 357 (D. Conn. 2006) (dismissing contract claim where plaintiff alleged only that it derived a benefit from the agreement, not that it was a third-party beneficiary, and where contract did not evidence direct obligations to a third-party beneficiary); *Roberts v. Pepsico, Inc.*, 2006 WL 3411342, *2 (Conn. Super. Ct. Nov. 13, 2006) (dismissing claim where "plaintiffs have failed to sufficiently allege that the defendants intended to assume a direct obligation to the plaintiffs" and where plaintiffs "merely alleged that it was foreseeable that they would benefit" as a result of the agreement); *Wesconn Co. v. Konover Const. Corp.*, 2006 WL 1681060, at *2 (Conn. Super. Ct. June 1, 2006) (granting motion to strike where complaint failed to allege that plaintiff was an intended beneficiary of a contract); *cf. Travelers Property & Casualty Ins. Co. v. Triton Marine Constr. Corp.*, -- F. Supp. 2d --, 2007 WL 438160 (D. Conn. Feb. 9, 2007) (granting summary judgment to counterclaim defendant where "the language of the takeover agreement [did] not suggest that the parties intended for [counterclaim plaintiff] to be a third-party beneficiary under the contract"). Nothing in the "memorializing" documents or any other documents incorporated by reference into UCCS's pleading comes close to satisfying these stringent requirements.

Based on its own allegations, UCCS was not a party to the agreements at issue. On that basis, its counterclaims should be dismissed.

### 2. The Statute of Frauds Compels Dismissal of UCCS's Oral Contract Claims.

UCCS fares no better in taking on the Statute of Frauds, which renders unenforceable the oral agreements described in the counterclaims. Notably, UCCS takes no issue with the conclusion that an oral agreement not to bring suit against the UCC Companies would be unenforceable for the reasons submitted by the Counterclaim Defendants. *See* UCCS Brief at 12-13. UCCS argues that the Court should instead focus its attention on an alleged oral agreement, supposedly described in Paragraph 12 of the Counterclaim, "to resolve any disputes after the Finolex settlement." UCCS Brief at 12. This argument quickly reaches a dead end.

8

First, the allegations on which UCCS asks the Court to rely do not describe an oral contract to "resolve any disputes"—i.e., what UCCS equates with a contract to pay money to resolve any disputes—on the UCC Companies' behalf:

> 12.     Ajay Mittal told Mr. Cheung that [ ] he and Global Singapore <u>desired to work together with the UCC Companies to resolve the Finolex suit and any future disputes, rather than suing each other</u>, and recommended to the UCC Companies that the case with Finolex should be settled.  [Emphasis added.]

A stated "desire to work together" is quite different from an undertaking to pay to settle future claims on behalf of another party.

Second, even if the counterclaims alleged such an oral agreement, it would necessarily extend into the future for as long as "future disputes" might be brought.  Such an undertaking—just like the alleged covenant not to sue—entails continued performance for a period in excess of one year.  It is irrelevant that an alleged breach of this agreement occurred within a year of its making.  The Statute of Frauds bars UCCS's claim because performance of the alleged oral agreement could not be completed within one year.  *See* Counterclaim Defendants' Brief at 22-23, citing Singapore Civil Law Act, ch. 43 § 6.  Count II should therefore be dismissed.

### 3. The Alleged Contracts Lack Sufficiently Definite Terms to Be Enforceable.

UCCS deliberately ignores the legion of cases holding that contracts lacking in express, specific terms are insufficient as a matter of law to create binding agreements to indemnify another party or to permanently waive a party's important legal rights.  *See* Counterclaim Defendants' Brief at 21-22.  Instead, UCCS seeks to shore up its defective allegations by simply repeating them and summarily declaring them to be sufficient.  *See* UCCS Brief at 12.

UCCS argues that evidence of Mr. Mittal's state of mind somehow provides the requisite clarity to its contract claims.  For obvious public policy reasons, however, indemnification contracts and covenants not to sue cannot be enforced on the basis of a party's alleged intent, when that intent is nowhere stated in writing, or on the basis of a writing that mentions only a commitment to "handle" future actions to another party's "satisfaction."  *See NatTel, LLC v. SAC*

9

*Capital Advisors*, 2005 WL 2253756, at *11 (D. Conn. Sept. 16, 2005) (dismissing plaintiff's claim for breach of contract because "a representation indicating an intent to treat plaintiff . . . 'fairly, equitably and honestly' at some undefined point in the future cannot give rise to contractual liability").  As noted in the Counterclaim Defendants' initial brief, there is nothing in the documents appended to the counterclaims that evidences an agreement to pay money to resolve all future disputes, including the Sterlite dispute.  Nowhere does the counterclaim point to any express, written covenant not to sue or other undertaking by the Counterclaim Defendants to forever waive their rights.  Where such agreements are concerned, it is simply not enough to demand that the Court accept UCCS's allegations as "well-pled."  Counts I and II must therefore be dismissed.

        **4.     Where UCCS Itself Alleges That Its Tort Claims Accrued in 2002, Such Claims Are Time-Barred.**

UCCS does not argue that its negligent misrepresentation claim (Count IV) is properly pleaded under applicable Singapore law.  *See* UCCS Brief at 10.  Instead, it urges the Court to allow this claim to survive based on what UCCS asserts (incorrectly) was the reasoning the Court employed in its 2003 opinion denying defendants' motion to dismiss plaintiffs' negligent misrepresentation claim under Indian law.  What UCCS fails to recognize, however, is that the Court need not even reach the issue of whether UCCS's causes of action state the proper elements under Singapore, Indian, or U.S. common law.  Nor does the Court need to analyze whether UCCS has alleged this claim and its two other fraud-based tort claims with the specificity required by Rule 9(b)—although UCCS has failed miserably in that task, too.  As a threshold matter, these claims are all time-barred.  UCCS has simply pleaded itself out of court.

UCCS offers the non sequitor that it "became a party to this suit on December 12, 2005, when the Court vacated its Order Dismissing UCCS from the lawsuit," and, hence, its January 2006 counterclaims were brought well within the three-year statute of limitations.  UCCS Brief at 14.  UCCS is wrong.  For purposes of the statute of limitations, the only relevant date is "the date of the act or omission complained of."  *See Stuart & Sons, L.P. v. Curtis Publishing Co.*,

10

456 F. Supp. 2d 336, 343 (D. Conn. 2006) (citation omitted). According to UCCS's own pleading, its tort claims arose "[i]n 2002," when, "in spite of their repeated representations, promises and assurances to the contrary, Ajay Mittal and Global Singapore initiated this suit against the UCC Companies alleging breach of contract based on the 1999 Unfulfilled Orders." Counterclaims ¶ 32. By UCCS's own reckoning, therefore, the tort claims it brought in 2006 are incontestably time-barred, and on this basis, Counts IV, V, and VI can and should be dismissed with prejudice.

### C. UCCS Does Not Oppose Dismissal of Count III.

The entirety of UCCS's discussion of Count III (promissory estoppel) appears in a footnote, where UCCS observes that even if no affirmative cause of action for promissory estoppel exists under Singapore law, the related allegations are nonetheless "relevant" to its defenses of "estoppel and set-off." UCCS Brief at 11, n.15. In the absence of any substantive reply argument in UCCS's brief, Count III should be dismissed.

### D. UCCS Agrees That Count VII Requires the Existence of a Separate Cognizable Claim for Relief.

UCCS's only response to the Counterclaim Defendants' position with regard to Count VII, its claim for "recoupment," is an assertion that, "[b]ecause UCCS has, in fact, stated claims for relief under which it is entitled to recover, Count VII should not be dismissed." UCCS Brief at 11 n. 15. UCCS thus agrees that if all of its other counterclaims are dismissed, Count VII cannot survive alone. For all the reasons set forth herein and in the Counterclaim Defendants' initial brief, UCCS has pleaded no viable causes of action and Count VII should therefore be dismissed.

### E. UCCS's Submission Fails to Create Any Genuine Issues of Material Fact Regarding the Elements of Damages, Breach of Contract, or Reasonable Reliance.

If a party could defeat summary judgment merely by proffering ad hoc assertions to contradict the record evidence, then UCCS might have successfully opposed the Counterclaim Defendants' motion for summary judgment. Of course, the standard for opposing a motion for

summary judgment is more exacting than that.  To obtain summary judgment, it need only be shown that UCCS cannot produce sufficient evidence to support one or more essential elements of its counterclaims.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)), *cert. denied,* 511 U.S. 88 (1994).  There is no requirement that a motion for summary judgment proffer evidence to defeat <u>all</u> the elements of an otherwise unprovable claim.  Additionally, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

In this case, all of UCCS's counterclaims require proof of damages; the contract claims require proof of a breach; and the negligent misrepresentation and fraud claims require proof of reasonable reliance.  Based on party admissions and company documents, the Counterclaim Defendants' submission establishes that the proof is to the contrary or that no such proof will be forthcoming, and for that reason, the counterclaims should be dismissed regardless of the sufficiency of UCCS's pleading with regard to any other elements.

      **1.**    **UCCS Is Unable, as a Matter of Law, to Prove That It Suffered Damages.**

As noted, the evidence affirmatively shows that UCC, not UCCS, paid for the settlements with Finolex and Sterlite.  At the same time, the record is devoid of any evidence—certainly none has been offered by UCCS—that it has paid a penny for the defense of this case.  Summary judgment is proper, therefore, as to both components of UCCS's alleged monetary damages.

UCCS's glib response is that "UCCS has clearly alleged damages," and "documentary evidence confirms that UCCS directly paid MM Global to settle the disputes."  UCCS Brief at 14.  Both of these assertions are addressed and refuted above, as is the specious argument that UCCS was "reimbursed" by its supplier and that such "reimbursement" was in the nature of payments from a collateral source.  *See supra* Section A.  From the relevant documents and witness testimony submitted by the Counterclaim Defendants, including admissions by UCC witnesses, the only rational conclusion to be drawn is that UCCS was not damaged.

In the absence of damages, there is no reason to permit any of the counterclaims to proceed through discovery and a trial. They should all be dismissed with prejudice.

### 2. UCCS Does Not Dispute the Evidence That UCC Personally Negotiated and Settled the Sterlite Dispute to Its Own Satisfaction.

UCCS argues that the Counterclaim Defendants offer little more than conclusory assertions in support of summary judgment on the claim for breach of the alleged agreement to "handle" future claims "to the satisfaction of Union Carbide." UCCS Brief at 16. In further opposition (and despite the fact that the Counterclaim Defendants never argued otherwise), UCCS points to evidence suggesting that Ajay Mittal "did advise the UCC Companies regarding settlement of the Sterlite dispute." *Id.* UCCS's first argument is inaccurate, while its second argument is irrelevant.

UCCS nowhere disputes the evidence that both John Yimoyines and Lawrence Cheung—the UCC and UCAP managers who were personally involved in the settlement negotiations—recalled in a series of internal emails that UCC negotiated directly with Sterlite and that UCC had independent reasons, including directives issued by UCC's CEO and the legal department, for agreeing to settle:

- "UCC decided to negotiate directly with customers instead of going through Mega Visa";

- "the business felt that there was no basis for the complaints and wanted to fight the second one out in Indian court—we were overruled by the UCC legal department who escalated it to the UCC CEO";

- "[there was] an out of court settlement with one customer plus a commercial settlement with another big customer under the direction of corporate management with the pressure of legal advice from Bob Butler";

- "we wanted, in fact, to settle this . . . we really did not need to be in court in India at this moment in time"

*See* Counterclaim Defendants' Brief at 12-13. Whether and in what way Ajay Mittal was also involved in the negotiations creates no genuine issue for trial regarding UCC's admitted "satisfaction" with how it resolved the Sterlite dispute. UCCS asserts that "[e]ven if the UCC

13

Companies were satisfied with the terms of the settlement under the circumstances at that time, intervening events—including Defendants filing the present suit—make Defendants' arguments irrelevant." UCCS Brief at 15. Such a remark is tantamount to an admission that the alleged breach of contract never occurred. For the foregoing reasons, the Court should dismiss any counterclaims that purport to base liability on the Counterclaim Defendants' supposed failure to ensure UCC's satisfaction with the Sterlite settlement.

### 3. The UCC Companies' Alleged Reliance Was Unreasonable as a Matter of Law.

UCCS makes the mistake of arguing that any proof of reliance suffices to create a genuine issue of material fact regarding the reasonableness of that reliance. UCCS Brief at 16-17. Of course, this is not the law. *See, e.g., Emergent Capital Investment Mgmt, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (affirming dismissal of fraud claim on grounds that reasonable reliance was lacking; "a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament").

John Yimoyines, a sophisticated businessman, admits his unilateral trust in Mr. Mittal was contrary to the express advice of UCC's own attorneys. *See* Counterclaim Defendants' Brief at 14 (citing Downey Decl. Ex. E, Yimoyines Tr. at 452-53). Documents in the record reveal that UCC outside and in-house counsel advised their clients every step of the way in connection with settling Sterlite's lawsuit; indeed, Mr. Cheung's recollection is that the UCC lawyers pressured the businesspeople to settle the case. Such admissions establish that any reliance placed on Mr. Mittal's alleged oral promises or assurances not to sue was either nonexistent or unreasonable as a matter of law. On this basis, the Court should grant summary judgment dismissing Counts III, IV, V, and VI with prejudice.

### III. CONCLUSION

UCCS's opposition to the motion to dismiss is as meritless as the counterclaims themselves. Rule 12(b)(1) requires dismissal of claims for which UCCS lacks standing, while

14

Rule 12(b)(6) requires dismissal of counterclaims that are unsupported by any allegations, vague, time-barred, and nonexistent under applicable law.  To the extent the counterclaims were ever viable, they belonged to UCC, and were waived long ago.  In addition, party admissions and undisputed evidence preclude finding that UCCS can satisfy the essential elements of damages, breach of at least one of the alleged contractual undertakings, and reasonable reliance.  For all these reasons, the counterclaims should be dismissed in their entirety and with prejudice.

    Respectfully submitted,

    BINGHAM McCUTCHEN LLP


    By:   /s/ Alicia L. Downey

    Richard S. Taffet (ct 10201)
    Alicia L. Downey (ct 22066)
    399 Park Avenue
    New York, NY  10022-4689
    (212) 705-7000 (tel)
    (212) 752-5378 (fax)

    -and-

    WIGGIN AND DANA LLP
    Robert M. Langer (ct 06305)
    Suzanne E. Wachsstock (ct 17627)
    One City Place
    185 Asylum Street
    Hartford, CT  06103
    (860) 297-3724 (tel)
    (860) 525-9380 (fax)

    *Attorneys for Defendants-in-Counterclaim MM Global Services Pte. Ltd. and Ajay Mittal*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2007, a copy of the foregoing Reply in Further Support of MM Global Services Pte. Ltd. and Ajay Mittal's Joint Motion to Dismiss the Counterclaims of Union Carbide Customer Services Ptd. Ltd. Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 9(b) was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

           /s/ Alicia L. Downey