UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD., MEGAVISA SOLUTIONS (S) PTE, LTD., AND ADVENT MANAGE LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE. LTD., AND DOW CHEMICAL PACIFIC (SINGAPORE) PTE. LTD., <br><br> Defendants. <br><br> UNION CARBIDE CUSTOMER SERVICES PTE. LTD., <br><br> Plaintiff-in-Counterclaim, <br><br> v. <br><br> MM GLOBAL SERVICES PTE. LTD. AND AJAY MITTAL, <br><br> Defendants-in-Counterclaim | CIVIL ACTION <br> NO. 3-02 CV 1107 (AVC) <br><br> February 16, 2007 |

**MEMORANDUM OF LAW IN OPPOSITION TO
UNION CARBIDE CUSTOMER SERVICES PTE. LTD.'S
<u>MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIMS</u>**

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

BINGHAM McCUTCHEN LLP
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

*Attorneys for Plaintiffs Advent Manage Limited, MM Global Services, Inc., and Plaintiffs and Defendants-in-Counterclaim MM Global Services Pte. Ltd. and Ajay Mittal*

I.     INTRODUCTION

Plaintiffs Advent Manage Limited ("Advent"), MM Global Services, Inc. ("MM Global"), and plaintiffs and Counterclaim Defendants MM Global Services Pte. Ltd. ("Global Singapore") and Ajay Mittal (all of which, collectively, are referred to herein as the "Opposing Parties"), respectfully ask the Court to deny the Motion of Defendant Union Carbide Customer Services Pte. Ltd. ("UCCS") for Leave to File Amended Counterclaims. UCCS proposes to add as a counterclaim defendant Megavisa Solutions (S) Pte. Ltd. ("Megavisa Singapore"), allegedly because it may be liable as the successor to Global Singapore. Yet, UCCS discovered the supposedly "new" evidence now claimed to support this position on January 12, 2006, only one day after it filed the original counterclaims naming Global Singapore and Mr. Mittal as Counterclaim Defendants. That was more than one year ago.

For the reasons set forth herein, UCCS's motion should be denied as untimely, unduly prejudicial, malicious, and futile. As a threshold matter, however, UCCS's proposed new counterclaims are predicated upon a finding of liability of Global Singapore, and thus, the absence of liability on Global Singapore's part necessarily eliminates any claims against Megavisa Singapore. For that reason, the Opposing Parties respectfully suggest that the Court first decide the threshold issues presented by the Counterclaim Defendants' pending Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b)—which, upon the filing of Counterclaims Defendants' Reply, will be fully briefed as of February 16, 2007—before considering UCCS's motion to add Megavisa Singapore as a counterclaim defendant. In the event that Counterclaim Defendants prevail on their motion to dismiss, UCCS's motion to amend will necessarily be moot.

UCCS's motion is a gross imposition on plaintiffs and the Court. Since January 11, 2006, the Opposing Parties, the former attorneys of record for Megavisa Singapore, and the Liquidators in present control of Megavisa Singapore have all affirmatively relied on the absence of any counterclaims against Megavisa Singapore in deciding their course of conduct in this

case. The Court, likewise, relied on the absence of such a counterclaim in granting counsel's Joint Motion to Withdraw, ordering Megavisa Singapore to appoint new counsel, and attempting to address defendants' stated concerns about Megavisa Singapore's status by various formal and informal mechanisms—including consideration of the parties' proposed Orders to Show Cause that would lead to the dismissal of Megavisa Singapore as a plaintiff in this case. Only after Megavisa Singapore was left unrepresented by counsel did UCCS seek to take advantage of that situation by moving to assert frivolous counterclaims against it.

UCCS's motion is not justified by the recent discovery of new evidence or any other acceptable excuse. Rather, it is a bad faith attempt to delay this case further and prejudice the Opposing Parties and Megavisa Singapore. If UCCS's motion for leave is granted and the counterclaims somehow survive the Counterclaim Defendants' pending Rule 12(b)(1) and 12(b)(6) motions to dismiss, their presence will unduly interfere with the orderly conduct of this case as well as the Court's efforts to bring this case to a speedy and definitive resolution through trial or settlement. The motion to add counterclaims should, therefore, be denied.

## II.    ARGUMENT

### A.    UCCS Should Not Be Allowed to Add Omitted Counterclaims After a Lengthy and Prejudicial Delay.

Although UCCS purports to move under Rule 15 to amend its counterclaims, its motion is a tardy request to add counterclaims it could have pleaded long ago, but omitted. The proper standard for determining whether to grant or deny UCCS's motion is set forth in Rule 13(f).[1] *Banco Para El Comercio Exterior de Cuba v. First Nat'l City Bank*, 744 F.2d 237, 243 (2d Cir. 1984) (" . . . Rule 13(f) supplements the general provisions of Rule 15 by setting forth a particular standard for allowing the late assertion of omitted counterclaims.") (quoting 6 C.

---

[1] Rule 13(f) of the Federal Rules of Civil Procedure provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."

Wright & A. Miller, *Federal Practice and Procedure* § 1430, at 159-60 (1971)). "A belated motion to [add counterclaims] may properly be denied where the delay is lengthy or where there is no reasonable explanation for the failure to assert it, or to make the motion, earlier." *Valley Disposal v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 365 (2d Cir. 1997) (citing *Crown Life Ins. Co. v. American Nat'l Bank & Trust Co.*, 35 F.3d 296, 300 (7th Cir. 1994) (affirming refusal to allow a counterclaim first asserted by defendant three months after the district court granted summary judgment for plaintiff); *Imperial Enter., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 293 (5th Cir. 1976) (same where defendant "was aware of the facts underlying its alleged counterclaim for almost a year before it made its motion"); *Kirbens v. Wodis*, 295 F.2d 372, 375 (7th Cir. 1961) (same where request to assert counterclaim for a setoff was made after entry of judgment for plaintiff though the defendant could have asserted the claim at least two and one-half years earlier)).

The failure to assert a plausible recent discovery of new facts likewise warrants denial of a motion under Rule 13. *McCulloch v. Hartford Life & Accident Co.*, 2006 WL 931723, slip copy at *2 (D. Conn. April 11, 2006) (denying motion to add counterclaim where delay was both lengthy and unreasonable and defendant failed to assert the existence of newly discovered evidence to justify its delay). As commented above, UCCS filed its Answer and Counterclaims on January 11, 2006. More than a year later, on January 31, 2007, UCCS moved to add Megavisa Singapore as a counterclaim defendant. UCCS admits in its motion that the facts underlying its successor liability theory were alleged on the face of the First Amended Complaint, which states in paragraph 25 that "in 2000, MVS succeeded MMGS-S <u>as respects all of MMGS-S's business activities</u>." First Amended Complaint ¶ 25 (emphasis added). UCCS seeks to excuse its delay by explaining that this allegation was "ambiguous" and thus an insufficient basis on which to bring counterclaims against Megavisa Singapore in its initial pleading—an explanation that defies both reason and credibility. But even if the Court were to credit UCCS's assertion that it only saw the light after the Sanghvi deposition on January 12,

2006 (*see* UCCS Brief at 2-3), the fact remains that UCCS never mentioned an intent to bring counterclaims against Megavisa Singapore for an entire year thereafter.

The partial stay order entered in February 2006 does not excuse UCCS's dilatory conduct.  When plaintiffs agreed to and the Court ordered that partial stay, they did so in the face of silence on UCCS's part about any need or desire to amend its recently filed counterclaims.  Furthermore, the stay was no longer in force after August 16, 2006 (the date on which the Court granted counsel's Joint Motion to Withdraw), and yet UCCS remained silent and did nothing with the supposedly new evidence it had discovered eight months earlier.  Even after UCCS knew, in December 2006, that the Counterclaim Defendants would be responding to the counterclaims on or before January 5, 2007, it did not move to add the proposed counterclaims until it was faced with having to defend a dispositive motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Based on the foregoing, it is apparent that UCCS's motion is not supported by good faith or any reasons of excusable neglect or inadvertence (neither of which UCCS even suggests reasons to allow its motion), or the requirements of justice.  What the law—and justice—require here is denial of the motion forthwith.

    **B.**    **UCCS's Motion Should Be Denied Under Rule 15 on Grounds of Undue Prejudice, Bad Faith, Undue Delay, Dilatory Motives, and Futility.**

        **1.**    **The Proposed Amendment Is Unduly Prejudicial.**

A motion to amend a pleading pursuant to Rule 15 should be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In evaluating a motion to amend, "[p]rejudice to the opposing party if the motion is granted [is] the most important reason for denying a motion to amend."  *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) (denying motion to amend where defending against proposed amended claim would require

additional discovery and might entail a different defense strategy); *see also McCulloch*, 2006 WL 931723, slip copy at *5 (denying motion to amend where party delayed in moving until two months before trial and had represented to the court almost two years previously that it did not intend to pursue the claims it later sought to bring). Undue prejudice results when the assertion of the proposed amended claims would "(1) require the opponent to spend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Messier v. Southbury Training School*, 1999 WL 20907, at *3 (D. Conn. Jan. 5, 1999) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). The first two factors—significant expense and significant delay—are relevant here.

UCCS's successor liability theory injects new matters for discovery into a complex case with a long history of contested discovery issues, the resolution of which has already imposed significant time and expense on plaintiffs and delayed the adjudication of their claims on the merits. Issues of successor liability are complicated enough, but UCCS's amendment would also likely create additional conflicts to be adjudicated among Advent, Global Singapore and Megavisa Singapore. Alternatively, should Megavisa Singapore decide to engage counsel to defend against the counterclaims, their appearance would cause further delay and unduly complicate the case. It is in the interest of <u>all</u> parties to come to final resolution of the issues in this case, and UCCS should not be allowed to cause undue prejudice by further delaying a definitive outcome, while burdening Advent with needless, significant expense—including the expenses associated with submitting this opposition.

As commented, until approximately January 10, 2007, UCCS evidenced no hint of any intention to amend its counterclaims, notwithstanding its knowledge for a year of the supposed facts upon which it now seeks to rely in support of amendment. Throughout 2006, as UCCS watched the cards unfold with regard to Megavisa Singapore's status in this case, it remained silent. The Court granted Advent's Motion to Substitute; referred the case to Magistrate Judge

Smith for settlement discussions; stayed discovery; and took numerous other actions in reliance on the absence of counterclaims against Megavisa Singapore. Still UCCS kept quiet.

In the absence of counterclaims against Megavisa Singapore, Advent agreed to partially stay the proceedings, determined its litigation strategy and planned for the upcoming trial. In early March 2006, former counsel for Megavisa Singapore moved to withdraw their appearance and in so doing, they expressly advised the Court that no prejudice would result because there were no counterclaims pending against Megavisa Singapore. *See* Joint Motion by Counsel for Leave to Withdraw as Counsel for Plaintiff Megavisa Solutions (Singapore) Pte Ltd., filed March 6, 2006, at 2. In response, UCCS did not deny this assertion—even though it admits that by then it knew of a basis for adding additional counterclaims. The Court relied on this representation and UCCS's silence when, on August 16, 2006, it allowed counsel's motion to withdraw and ordered Megavisa Singapore to obtain new counsel at the risk of being dismissed from the case. *See* Docket Nos. 444-445. The Liquidators for Megavisa Singapore were served with all these papers; they, too, have presumably relied on the absence of counterclaims in deciding whether to oppose the motion to withdraw or appoint successor counsel.

Had UCCS timely moved to pursue the counterclaims it now seeks to add, the posture of this case might now be different. Waiting until Megavisa Singapore was unrepresented reflects an intent solely to cause maximum and needless prejudice to other parties. Megavisa Singapore now faces the prospect of a default judgment entered on a claim that could have been brought and defended when it was represented by counsel. For Advent, the proposed additional counterclaims, if allowed, will impose additional delay and expense to litigate new issues. These are matters that the Court had no reason to anticipate when managing this case and issuing numerous substantive and procedural Orders since January 12, 2006. UCCS should not be allowed to hijack this case for reasons having nothing to do with the pursuit of legitimate claims, and its motion should therefore be denied.

## 2. UCCS's Motion Was Brought in Bad Faith After Undue Delay and With Dilatory Motives.

UCCS's bad faith, undue delay and dilatory motives are further grounds on which to deny its motion. *See, e.g., Evans v. Syracuse City School Dist.*, 704 F.2d 44, 48 (2d Cir. 1983) (denying motion to amend where defendant did not raise affirmative defense for more than two years after defense was available). The "longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Messier*, 1999 WL 20907 at *3, 5 (denying motion to amend complaint four years after original complaint was filed without adequate explanation for delay) (quoting *Block*, 988 F.2d at 350); *Collins v. Experian Credit Reporting Serv.*, 2006 WL 3703414, at *1 (D. Conn. Dec. 14, 2006) (denying motion to amend where moving parties had "already been given ample opportunity to amend their complaint in the two years this case has been pending").

The need to explain the delay is further heightened where a party has previously represented to the court that it did not intend to bring the counterclaims it later seeks to bring. *See McCulloch*, 2006 WL 931723, slip copy at *5 (denying motion to amend where party delayed in moving until two months before trial and had represented to the court almost two years previously that it did not intend to pursue the claims it later sought to bring); *Kellogg v. Key Bank of Maine*, 166 B.R. 504, 510 (Conn. Bankr. Ct. 1994) (denying motion to amend on basis of undue delay and prejudice where plaintiff knew relevant facts 13 months prior to moving to amend complaint). Furthermore, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Messier*, 1999 WL 20907 at *3 (quoting *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (affirming denial of leave to add a new claim known since the beginning of the case)). Regarding dilatory motive, courts have noted that "[w]hen it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims . . . the court is free to deny leave to amend." *PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 764 (S.D.N.Y. 1995)

(denying motion to amend complaint where plaintiff filed motion after defendants filed a motion to dismiss, finding that motion to amend was a dilatory tactic designed only to avoid dismissal).

Here, the period of delay is a full year, during which the case was actively being litigated with respect to various important issues, including Megavisa Singapore's presence as a party. UCCS's proffered justification for the proposed amendment—that deposition testimony received on January 12, 2006 clarified an "ambiguous" allegation concerning the corporate succession of Global Singapore and Megavisa Singapore—admits of the unwarranted and prejudicial nature of the delay in asserting counterclaims against Megavisa Singapore. Notwithstanding its knowledge of the supposed facts now sought to be relied upon for purposes of amending the counterclaims, UCCS stood silent as Megavisa Singapore, albeit through its own inaction, became unrepresented in this case. No less prejudicial is the overreaching position taken by UCCS and its co-defendants, in response to the still-pending Motion to Dismiss Megavisa Solutions (S) Pte, Ltd. dated October 6, 2006, to have Megavisa Singapore's claims dismissed based on its non-representation. In such circumstances, it is apparent that UCCS's motion to amend is a cynical, ill-founded strategy intended to cause prejudice and unduly burden plaintiffs and the Court. The proposed amendment should be denied.

### 3.    UCCS's Motion Should Be Denied as Futile.

"A district court may . . . deny leave to amend . . . if the proposed amendment would be futile." *Valenta v. Hoboken Wood Flooring Corp.*, 2004 WL 190435, at *1 (D. Conn. Jan 21, 2004) (citation omitted). "If the proposed amended complaint would not withstand a motion to dismiss, leave to amend need not be granted, because the proposed amendment would be futile." *Andrews v. City of Hartford Human Relations Comm'n*, 2005 WL 2416106, at *5 (D. Conn. Sept. 30, 2005) (denying motion to dismiss where proposed claims were barred by the statute of limitations); *Book v. Lupinacci*, 2006 WL 1182275, slip op. at *6 (D. Conn. April 28, 2006) (denying motion to amend as futile where proposed new claims would be barred by the statute of limitations).

The Counterclaim Defendants have moved to dismiss UCCS's counterclaims under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and under Rule 12(b)(6), because none of UCCS's causes of action state a claim under applicable law—indeed, half of the claims are time-barred based on UCCS's own allegations. The numerous independent grounds for dismissal are set forth in detail in the Memorandum of Law in support of the Counterclaim Defendants' Joint Motion to Dismiss filed January 5, 2007 and in Counterclaim Defendants' Reply Brief filed February 16, 2007. (Those submissions, to the extent applicable, are incorporated by reference herein.) By way of a brief summary, the following are the key legal defects in UCCS's counterclaims, which in turn require denial of the instant motion on grounds of futility:

- UCCS lacks standing to bring the counterclaims against any party. Undisputed record evidence (including business records and admissions by UCC and UCAP executives John Yimoyines, Ron Neri, and Lawrence Cheung) establishes that UCCS suffered no injury-in-fact from the alleged conduct; UCCS did not actually incur any of the monetary harm (i.e., payment of the Finolex and Sterlite settlements or legal expenses in this case) for which it seeks compensatory relief. The Court therefore lacks subject matter jurisdiction over all of the counterclaims, which, accordingly, must be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

- Neither the allegations that form the basis of UCCS's oral and written contract claims (Counts I and II), nor the documents incorporated by reference into its pleading permit an inference that UCCS itself was a party to the alleged agreements or that UCCS and the Counterclaim Defendants agreed to sufficiently definite terms so as to create enforceable contracts either to indemnify UCCS or to release claims against it.

- The Statute of Frauds independently bars UCCS's oral contract claim (Count II), because the alleged contract (i.e., to "handle" or "resolve" all future claims and

> not to sue "the UCC Companies") imposed ongoing obligations not capable of being performed within one year of its making.

- UCCS's affirmative claim for promissory estoppel (Count III) does not exist under applicable (Singapore) law.

- UCCS's tort-based counterclaims (Counts IV, V, and VI, asserting negligent misrepresentation, fraudulent misrepresentation, and fraud, respectively), are time-barred. UCCS accuses the Counterclaim Defendants of tortiously initiating this lawsuit "in 2002" based on claims that the "UCC Companies" had supposedly been led to believe were released. *See* Counterclaims ¶ 32. If UCCS, UCC, and UCAP ever thought they had legitimate fraud or negligent misrepresentation claims against plaintiffs based on the commencement of this case, they had until June 25, 2005—three years after plaintiffs filed their complaint—to do something about it in this forum. Instead, UCC and UCAP both declined to bring counterclaims within the limitations period, while UCCS's January 2006 counterclaims came more than six months too late.

- UCCS's recoupment claim (Count VII) is necessarily dependent on UCCS's ability to state a cognizable claim for recovery of damages. Logically, the fatal deficiencies in Counts I-VI require dismissal of this count.

As more fully discussed in the Counterclaim Defendants' Reply in further support of their motion to dismiss, UCCS offers no legal or factual basis on which to spare the counterclaims from dismissal on the grounds stated.

### III.   CONCLUSION

UCCS's motion to add omitted counterclaims is an untimely and prejudicial delay tactic that should not be condoned by the Court. Furthermore, the counterclaims it seeks to add are legally and factually meritless. For all of the foregoing reasons, the motion to amend should be denied.

Respectfully submitted,

BINGHAM McCUTCHEN LLP

By:   /s/ Alicia L. Downey
Richard S. Taffet (ct 10201)
Alicia L. Downey (ct 22066)
399 Park Avenue
New York, NY  10022-4689
(212) 705-7000 (tel)
(212) 752-5378 (fax)

-and-

WIGGIN AND DANA LLP
Robert M. Langer (ct 06305)
Suzanne E. Wachsstock (ct 17627)
One City Place
185 Asylum Street
Hartford, CT  06103
(860) 297-3724 (tel)
(860) 525-9380 (fax)

*Attorneys for Plaintiffs Advent Manage Limited, MM Global Services, Inc., and Plaintiffs and Defendants-in-Counterclaim MM Global Services Pte. Ltd. and Ajay Mittal*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 16, 2007, a copy of the foregoing Memorandum of Law in Opposition to Union Carbide Customer Services Pte. Ltd.'s Motion for Leave to File Amended Counterclaims was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

                                                /s/ Alicia L. Downey